**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING EMPLOYMENT AND RETENTION OF
RUST CONSULTING/OMNI BANKRUPTCY AS CLAIMS AND
NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request entry of an order (the "**Retention Order**") granting authorization to employ and retain Rust Consulting/Omni Bankruptcy ("**Rust/Omni**") as the official claims and noticing agent (the "**Claims and Noticing Agent**") in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date.  The terms of Rust/Omni's retention are set forth in the engagement agreement, dated as of April 29, 2015, between Rust/Omni and the Debtors (the "**Engagement Agreement**");[2] *provided, however*, that Rust/Omni is seeking approval solely of the terms and provisions of the Engagement Agreement as set forth in 28 U.S.C. § 156(c) and the proposed Retention Order.  In the event there is any

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]     The Engagement Agreement appears as <u>Exhibit B</u> to this Application.

inconsistency between this application (the "**Application**"), the Retention Order, and the Engagement Agreement, the Debtors respectfully request that the Retention Order govern.  In support of this Application, the Debtors rely on and incorporate by reference the *Declaration of William J. Nolan in Support Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed concurrently with this Application.[3]  In further support of this Application, the Debtors submit the *Declaration of Paul H. Deutch in Support of the Debtors' Application for Entry of an Order Authorizing Employment and Retention of Rust Consulting/Omni Bankruptcy as Claims and Noticing Agent, Nunc Pro Tunc to the Petition Date* (the "**Claims Agent Declaration**").[4]

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[5]

## BACKGROUND

2.      On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

---

[3]    Capitalized terms not otherwise defined in this Application have the meanings used in the First Day Declaration.

[4]    The Claims Agent Declaration appears as <u>Exhibit C</u> to this Application.

[5]    Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Application if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

3.       Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology.  As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees.  It also offered degrees online.

4.       Among its acquisitions, in January 2010, the Company purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

5.       Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

6.       By this Application, the Debtors respectfully request entry of the Retention Order, substantially in the form attached hereto as <u>Exhibit A</u>, under 28 U.S.C. § 156(c), Bankruptcy Code section 105(a), and Local Rule 2002-1(f), authorizing the employment and retention of Rust/Omni as Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date.

7.       By separate application, the Debtors will seek authorization to retain and employ Rust/Omni as an administrative advisor in these chapter 11 cases under Bankruptcy Code section 327(a), as the administration of these chapter 11 cases will require Rust/Omni to perform duties outside the scope of 28 U.S.C. § 156(c).

RLF1 11878651v.3

<u>**BASIS FOR RELIEF REQUESTED**</u>

**I.  FACTS SPECIFIC TO RELIEF REQUESTED**

**A.      Rust/Omni's Qualifications**

8.      Rust/Omni is a leading provider of administrative support services whose professional team has experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Rust/Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, including in matters of this size and complexity.  Rust/Omni's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide, including:  *In re Karmallop, Inc.*, Case No. 15-10635 (Bankr. D. Del. Mar. 25, 2015); In *re Phoenix Payment Systems*, Case No. 14-11848 (Bankr. D. Del. Aug. 4, 2014); *In re Gridway Energy Holdings, et al.*, Case No. 14-10833 (Bankr. D. Del. Apr. 10, 2014); *In re Restora Healthcare Holdings, LLC, et al.*, Case No. 14-10367 (Bankr. D. Del. Feb. 24, 2014); *In re First Mariner Bancorp*, Case No. 14-11952 (Bankr. D. Md. Feb. 10, 2014); *In re HDOS Enterprises*, Case No. 14-12028 (Bankr. C.D. Cal. Feb. 3, 2014); *In re FAH Liquidating Corp., et al.*, Case No. 13-13087 (Bankr. D. Del. Nov. 22, 2013); *In re SGK Ventures, LLC*, Case No. 13-37603 (Bankr. N.D. Ill. Sep. 24, 2013).

9.      Retaining Rust/Omni as Claims and Noticing Agent will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of these chapter 11 cases, and relieve the Office of the Clerk of the Bankruptcy Court (the "**Clerk**") of these administrative burdens.

**B.      Services to be Provided**

10.      By this Application, the Debtors seek to retain Rust/Omni as their Claims and Noticing Agent, under the Engagement Agreement, to provide, to the extent requested by the

Debtors, the following bankruptcy administration services (the "**Claims and Noticing Services**"), including:

a)    Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure in the form and manner directed by the Debtors and/or the Court, including:  (i) notice of the commencement of these chapter 11 cases, (ii) notice of any claims bar date, (iii) notices of transfers of claims (if any), (iv) notices of objections to claims and objections to transfers of claims (if any), (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' Plan, including under Federal Rule of Bankruptcy Procedure 3017(d), (vi) notice of the effective date of the Plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b)    Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "**Schedules**"), listing the Debtors' known creditors and the amounts owed, if requested;

c)    Maintain (i) a list of all potential creditors, equity holders, and any parties in interest and (ii) a "core" mailing list consisting of all parties described in Federal Rule of Bankruptcy Procedure 2002(i), (j), and (k) and those parties that have filed a notice of appearance under Federal Rule of Bankruptcy Procedure 9010, and update and make those lists available upon request by any party in interest or the Clerk;

d)    Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which Rust/Omni can carry out by including such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e)    For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven business days of service that includes: (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) an alphabetical list of persons to whom it was mailed with their addresses, (iii) the manner of service, and (iv) the date served;

f)      Process any proofs of claim received, including those received by the Clerk, check processing for accuracy, and maintain the original proofs of claim in a secure area;

g)      Maintain the official claims register (if any) for each Debtor (collectively, the "**Claims Registers**") on behalf of the Clerk, provide the Clerk, upon the Clerk's request, with certified, duplicate unofficial Claims Registers, and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority), (vi) the applicable Debtor, and (vii) any disposition of the claim;

h)      Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

i)      Record any transfers of claims and provide any notices of such transfers as required by Federal Rule of Bankruptcy Procedure 3001(e);

j)      Relocate, by messenger or overnight delivery, any court-filed proofs of claim to Rust/Omni's offices, not less than weekly;

k)      Upon completion of the docketing process for any claims received to date for each case, provide to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

l)      Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on or changes to the Claims Register (if any) and any service or mailing lists, including the identification and elimination of duplicative names and addresses from such lists;

m)      Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

n)      Assist in the dissemination of information to the public and respond to requests for administrative information on these chapter 11 cases as directed by the Debtors or the Court, including through a case website or call center;

o)      If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Rust/Omni of entry of the order converting the cases;

p)      Thirty days before the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order

dismissing Rust/Omni as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

q)  Within seven days of notice to Rust/Omni of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of these chapter 11 cases; and

r)  At the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

11.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Rust/Omni.

12.     Rust/Omni may not employ any past or present employee of the Debtors for work that involves the Debtors' chapter 11 cases.

## C.     Professional Compensation

13.     The Debtors respectfully request that the undisputed fees and expenses incurred by Rust/Omni in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates under 28 U.S.C. § 156(c) and Bankruptcy Code section 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  Rust/Omni agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on: (i) the Debtors; (ii) the Office of the United States Trustee; (iii) counsel to the Debtors; (iv) counsel for any official committee monitoring the expenses of the Debtors; and (v) any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt

to resolve the dispute; if they are unable to achieve resolution on their own, the parties may seek the Court's intervention.

14.     Prior to the Petition Date, the Debtors provided Rust/Omni a $40,000 retainer. Rust/Omni seeks to hold any amounts remaining in the retainer as of the Petition Date during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

15.     The Debtors will indemnify and hold harmless Rust/Omni, its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents under certain circumstances specified in the Engagement Agreement, provided that the Debtors will have no obligation to indemnify Rust/Omni, or provide contribution or reimbursement to Rust/Omni, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from Rust/Omni's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of Rust/Omni's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under *United Artists Theatre Co. v. Walton* (*In re United Artists Theatre Co.*), 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Rust/Omni should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement, as modified by the Retention Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

**D.      Representation of Disinterestedness**

16.     Although the Debtors do not propose by this Application to employ Rust/Omni under Bankruptcy Code section 327 (such retention, for Rust/Omni's proposed services as

- 8 -

administrative agent will be sought by separate application), Rust/Omni has nonetheless reviewed its electronic database to determine whether it has any relationships with the Debtors' creditors and other parties in interest identified by the Debtors.  To the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Claims Agent Declaration, Rust/Omni has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

17.    Moreover, in connection with its retention as Claims and Noticing Agent, Rust/Omni represents in the Claims Agent Declaration, among other things, that:

a)    Rust/Omni is not a creditor of the Debtors;

b)    Rust/Omni will not consider itself employed by the United States government and will not seek any compensation from the United States government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

c)    By accepting employment in these chapter 11 cases, Rust/Omni waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d)    In its capacity as Claims and Noticing Agent in these chapter 11 cases, Rust/Omni will not be an agent of the United States and will not act on behalf of the United States;

e)    Rust/Omni will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

f)    Rust/Omni is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) for the matters on which it is engaged;

g)    In its capacity as Claims and Noticing Agent in these chapter 11 cases, Rust/Omni will not intentionally misrepresent any fact to any person;

h)    Rust/Omni's receipt and recordation of claims (if any) and claim transfers will fall under the supervision and control of the Clerk's office;

i)    Rust/Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

> j) The Clerk's office will bear none of the costs of Rust/Omni's services as Claims and Noticing Agent in these chapter 11 cases.

Rust/Omni will supplement its disclosure to the Court if any facts or circumstances are discovered that would require additional disclosure.

**E.      Compliance with Claims Agent Protocol**

18.     The Debtors represent that this Application complies with the "Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)," dated February 1, 2012, and instituted by the Clerk (the "**Claims Agent Protocol**"), and that it substantially conforms to the standard section 156(c) application in use in this Court.

## II.  LEGAL BASIS FOR RELIEF REQUESTED

**A.      Retention and Employment of Rust/Omni as Claims and Noticing Agent is Permitted**

19.     Under 28 U.S.C. § 156(c), Bankruptcy Code section 105(a), Local Rule 2002-1(f), and the Claims Agent Protocol, the Debtors are permitted to retain and employ Rust/Omni as Claims and Noticing Agent in these chapter 11 cases in order for Rust/Omni to assume full responsibility for the distribution of notices and other administrative aspects of the Debtors' chapter 11 cases.

20.     The authority to employ the services of a claims and noticing agent is found in 28 U.S.C. § 156:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.     Bankruptcy Code section 105 also provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by any party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

22.     And Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the Claims and Noticing Services.

Del. Bankr. L.R. 2002-1(f).

23.     The Debtors anticipate that these chapter 11 cases will require approximately 65,000 entities to be noticed.  In view of that large number and the complexity of the Debtors' businesses, the Debtors submit that the employment and retention of a claims and noticing agent is both required by Local Rule 2002-1(f) and in the best interests of the Debtors' estates and creditors.  Relieved of the burdens associated with the Claims and Noticing Services, the Debtors will be able to devote their full attention and resources to maximizing value for their stakeholders and facilitating the orderly administration of these chapter 11 cases.

24.     In accordance with the Claims Agent Protocol, prior to the selection of Rust/Omni as Claims and Noticing Agent, the Debtors reviewed and compared engagement proposals from four court-approved claims and noticing agents, including Rust/Omni, to ensure a competitive

process.  The Debtors submit, based on the engagement proposals obtained and reviewed, that Rust/Omni's rates are competitive and reasonable given the quality of services and expertise Rust/Omni provides.  Although the terms of Rust/Omni's employment and retention are set forth in the Engagement Agreement, Rust/Omni is seeking approval solely of the terms and provisions as set forth in this Application and the Retention Order.  In the event of any inconsistency between the Engagement Agreement, the Application, and the Order, the Order governs.

**B.**     ***Nunc Pro Tunc* Relief Is Appropriate**

25.     In accordance with the Debtors' request, Rust/Omni has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that Rust/Omni can be compensated for services rendered before approval of this Application.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as proposed in this Application, because Rust/Omni has provided and continues to provide valuable services to the Debtors' estates in the interim period.  Courts in this District have routinely approved *nunc pro tunc* employment in chapter 11 cases.[6]

26.     Accordingly, the Debtors respectfully request entry of the Retention Order authorizing the Debtors to retain and employ Rust/Omni as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

---

[6]     *See, e.g.*, *In re Cal Dive International Inc., et al,* Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 6, 2015) (D.I. 58); *In re The Wet Seal, Inc., et al.*, Case No. 15-10081 (CSS) (Bankr. D. Del. Jan. 20, 2015) (D.I. 93); *In re Endeavour Operating Corporation, et al.*, Case No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 152); *In re AmCad Holdings, LLC, et al.*, Case No. 14-12168 (MFW) (Bankr. D. Del. Sept. 23, 2014) (D.I. 29); *In re Source Home Ent'mt, LLC, et al.*, Case No. 14-11553 (KG) (Bankr. D. Del. July 18, 2014) (D.I. 141); *In re The Dolan Co., et al.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 23, 2014) (D.I. 71); *In re Event Rentals, Inc., et al.*, Case No. 14-10282 (PJW) (Bankr. D. Del. Feb. 19, 2014) (D.I. 61).

- 12 -

## **NOTICE**

27.     The Debtors will provide notice of this Application by facsimile, e-mail, overnight delivery, or hand delivery to:  (i) Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; (v) the Internal Revenue Service; (vi) the Securities Exchange Commission; (vii) the United States Attorney for the District of Delaware; and (viii) all parties entitled to notice of this Motion pursuant to Local Rule 9013-1(m).

28.     As this Application is seeking "first day" relief, notice of this Application and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## **NO PRIOR APPLICATION**

29.     The Debtors have not made any prior application for the relief sought in this Application to this Court or any other.

RLF1 11878651v.3

The Debtors respectfully request entry of an order granting the relief requested and any other relief as is just and proper.

Dated:    May 4, 2015
        Santa Ana, CA

By:  _____
      William J. Nolan
      Chief Restructuring Officer
      Corinthian Colleges, Inc.

**<u>Exhibit A</u>**

**Proposed Retention Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| | § | |
| | § | |
| | § | |
| Debtors. | § | |

-----------------------------------------------------------------

## ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
## RUST CONSULTING/OMNI BANKRUPTCY AS CLAIMS AND
## NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "**Application**")[2] of the Debtors for entry of an order (this

"**Order**") authorizing the employment and retention of Rust Consulting/Omni Bankruptcy

("**Rust/Omni**") as Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc*

*pro tunc* to the Petition Date, as more fully set forth in the Application; and upon due and

sufficient notice of the Application having been provided under the particular circumstances, and

it appearing that no other or further notice need be provided; and the Court having jurisdiction to

consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334; and consideration of the Application and the relief requested therein being a core

proceeding under 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number,
are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida
Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career
Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc.
(9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336),
Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix,
Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald
Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC
(1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc.
(3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California
92707.

[2]     Capitalized terms used but not otherwise defined in this Order have the meanings used in the Application.

with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Application (the "**Hearing**"); and upon the Claims Agent Declaration submitted in support of the Application, the First Day Declaration, record of the Hearing and all the proceedings had before the Court; and the Court having found and determined that Rust/Omni has the capability and experience to provide the services described in the Application, that Rust/Omni does not hold an interest adverse to the Debtors or their estates with respect to the matters on which it is to be engaged, and that the employment and retention of Rust/Omni is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted as set forth herein.

2.      Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.  In the event of any inconsistency between the Engagement Agreement, the Application, and the Order, the Order shall govern.

3.      The Debtors are authorized to retain Rust/Omni as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement, and Rust/Omni is authorized and directed to perform Claims and Noticing Services to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Application.

- 2 -

4.      Rust/Omni will serve as the custodian of court records and will be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases, and Rust/Omni is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate upon the Clerk's request.

5.      Rust/Omni is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      Rust/Omni is authorized to take such other actions to comply with all duties set forth in the Application.

7.      The Debtors are authorized to compensate Rust/Omni in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Rust/Omni and the rates charged for each, and to reimburse Rust/Omni for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Rust/Omni to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

8.      Rust/Omni will maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and will serve monthly invoices on the Debtors, the Office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest that specifically requests service of the monthly invoices.

9.      The parties shall meet and confer in an attempt to resolve any dispute that might arise relating to the Engagement Agreement or monthly invoices.  If the parties, after meeting and conferring, are unable to resolve their dispute, they may seek resolution of the matter from the Court.

RLF1 11878651v.3

10.    Under Bankruptcy Code section 503(b)(1)(A), the fees and expenses of Rust/Omni under this Order will be an administrative expense of the Debtors' estates.

11.    The Debtors will indemnify Rust/Omni under the terms of the Engagement Agreement, as modified by this Order.

12.    Rust/Omni will not be entitled to indemnification, contribution, or reimbursement for services other than those provided under the Engagement Agreement, unless the Court approves such services and requires the Debtors' indemnification, contribution, or reimbursement.

13.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors will have no obligation to indemnify Rust/Omni, or provide contribution or reimbursement to Rust/Omni, for any losses, claims, damages, judgments, liabilities and expenses that are either (i) judicially determined (the determination having become final) to have resulted from, have arisen from, or be related to Rust/Omni's gross negligence or willful misconduct; (ii) a contractual dispute in which the Debtors allege the breach of Rust/Omni's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible under *United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Rust/Omni should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) or (ii) the entry of an order closing these chapter 11 cases, Rust/Omni believes that it is entitled to

- 4 -

payment by the Debtors on account of the Debtors' indemnification, contribution, or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Rust/Omni must file an application in this Court, and the Debtors will not be required to pay such amounts to Rust/Omni before this Court enters an order approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Rust/Omni for indemnification, contribution, or reimbursement, and not to limit the duration of the Debtors' obligation to indemnify Rust/Omni.  Any parties in interest will retain the right to object to any demand by Rust/Omni for indemnification, contribution, or reimbursement.

15.    If Rust/Omni is unable to provide the services set out in this Order, Rust/Omni will immediately notify the Clerk and the Debtors' counsel and, upon the Court's approval, turn over all original proofs of claim (if any) and computer information to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

16.    Rust/Omni may not cease providing claims processing services during these cases for any reason, including nonpayment, without prior order of the Court authorizing Rust/Omni to do so; *provided, however*, that Rust/Omni may seek such an order on expedited notice by filing a request with the Court and serving notice of such request on the Debtors, the Office of the U.S. Trustee, counsel for the Debtors, and any official committee of creditors appointed in these cases, by facsimile or overnight delivery; *provided further*, that except as expressly precluded herein, the Debtors and Rust/Omni under the Engagement Agreement may terminate or suspend other services.

17.    After entry of an order terminating Rust/Omni's services or upon the closing of these cases, Rust/Omni will be responsible for archiving all proofs of claim with the Federal

Archives Record Administration, if applicable, and will be compensated by the Debtors for those costs.

18.     Debtors' counsel shall notify the clerk of the Court and Rust/Omni within 7 days of an order of dismissal or conversion of the chapter 11 cases.

19.     The Debtors may submit a separate retention application, under Bankruptcy Code section 327 and/or any applicable law, for work that is to be performed by Rust/Omni but is not specifically authorized by this Order.

20.     Rust/Omni shall comply with all applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any other general orders or applicable guidelines issued by this Court.

21.     The Debtors and Rust/Omni are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order in accordance with the Application.

22.     Notwithstanding any term in the Engagement Agreement to the contrary, this Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

23.     Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, this Order is immediately effective and enforceable upon its entry.

Dated: May ____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Engagement Agreement**



April 29, 2015

Mr. Stan A. Mortensen
Executive Vice President and
General Counsel
Corinthian Colleges, Inc.
6 Hutton Centre Drive, Suite 400
Santa Ana, CA 92707

Re:    **Rust Consulting/Omni Bankruptcy**
       **-Retention letter**

Mr. Mortenson:

    This letter (the "Agreement") will acknowledge that you have requested Rust Consulting/Omni Bankruptcy ("Rust Omni") to provide services to Corinthian Colleges, Inc. and twenty-four (24) affiliated entities (collectively, the "Companies") in preparation of, and in connection with, the Companies anticipated chapter 11 filings. Rust Omni will make itself available to the Companies, as requested, for the purposes of assisting the Companies with pre- and post-petition case administration matters including preparation and management of the creditor matrices, preparation of schedules of assets and liabilities and statements of financial affairs, claims management, noticing, plan solicitation and tabulation, distribution, the development and maintenance of a virtual data room, the development and maintenance of an informational website, and any other services as may be requested by the Companies.

    The services to be rendered by Rust Omni will be billed at rates ranging from $20.00 to $125.00 per hour as per the attached rate sheet. In addition, Rust Omni has agreed to a ninety ($90.00) dollar blended rate cap, to be calculated on a quarterly basis. Rust Omni has further agreed to reduce, by $50,000, it's overall bill for services rendered on behalf of the Companies pursuant to 28 U.S.C. § 156(c) (excluding postage, publication and other pass-through charges). Such reduction will be effectuated by voluntarily reducing each monthly § 156(c) invoice by ten (10%) percent until the aforementioned $50,000 is reached. Rates are adjusted annually on January 2nd of each



Mr. Stan A. Mortensen
April 29, 2015
Page 2

year, and are subject to increases not to exceed ten (10%) percent per annum. Increases greater than ten (10%) percent per annum will be discussed with you, and be subject to your prior approval, before becoming effective.

For all such services rendered, we require a $40,000 deposit, which such deposit must be replenished immediately prior to the commencement of the Companies' chapter 11 proceedings. All charges will be on a portal to portal basis plus out-of-pocket expenses. Rust Omni shall be compensated on a monthly basis for those services performed by Rust Omni during the preceding calendar month. Invoices are payable upon submission.

Each of Rust Omni and the Companies, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

The parties understand that the software programs and other materials furnished by Rust Omni pursuant to this Agreement and/or developed during the course of this Agreement by Rust Omni are the sole property of Rust Omni. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Companies agree not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement. The Companies further agree that any ideas, concepts, know-how or techniques relating to data processing or Rust Omni's performance of its services developed during the course of its Agreement by Rust Omni shall be the exclusive property of Rust Omni. Upon the Companies' request at any time or times while this Agreement is in effect, Rust Omni shall immediately deliver to the Companies and/or the Companies retained professionals, at the Companies' expense, any or all of the non-proprietary data and records held by Rust Omni pursuant to this Agreement, in the form requested by the Companies.

This Agreement is terminable at will by the parties hereto upon thirty (30) days written notice. In the event that this Agreement is terminated, regardless of the reason for



Mr. Stan A. Mortensen
April 29, 2015
Page 3

such termination, Rust Omni shall cooperate with the Companies to maintain an orderly transfer of all records, data and information and record keeping functions, and shall provide all necessary staff, services and assistance required for an orderly transfer. The Companies agree to pay for such services in accordance with Rust Omni's then existing prices for such services.

Please acknowledge the above by signing and returning a copy of this letter. Should you have any questions regarding the above, please do not hesitate to call me.

Sincerely,

Paul H. Deutch
Executive Managing Director

Enc.

cc:    Brian Osborne
       Eric Schwarz

**CORINTHIAN COLLEGES, INC., *ET AL*.**

Date: 4/30/15                  By: _____

Mr. Stan A. Mortensen
Executive Vice President and
General Counsel



# Rate Sheet
**WWW.OMNIMGT.COM**

⊿ Hourly Rates for Standard and Custom Services    RATE/COST

| | |
|---|---|
| Clerical Support | $20.00 per hour |
| Project Specialists | $45.00 per hour |
| Project Supervisors | $65.00 per hour |
| Technology/Programming | $75.00 per hour |
| Consultants | $80.00 per hour |
| Senior Consultants | $125.00 per hour |
| **Blended Hourly Rate Cap Calculated Quarterly | $90.00 per hour ** |

⊿ Printing and Noticing Services

| | |
|---|---|
| Copy | $.07 per image |
| Document folding and insertion | No Charge |
| Labels/Envelope printing | No charge |
| E-mail noticing | No charge |
| Certified email | Quote upon request |
| Facsimile noticing | $.07/image |
| Postage | At cost (Advance payment required for postage charges over $10,000) |
| Envelopes | At cost - Varies by size |

⊿ Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notice | Quote prior to publishing |

⊿ Claims Management

| | |
|---|---|
| Inputting proofs of claim | Hourly rates (No per claim charges) |
| Scanning | $.07/image |
| Online Claim Filing | No Charge |
| Remote Internet access for claims management | |
|    Setup | No charge |
|    Access | No Charge |

⊿ Creditor Database

| | |
|---|---|
| Data storage | Waived - NO CHARGE |
| Per image storage | No charge |

⊿ Informational Website

| | |
|---|---|
| Creation, configuration, and initial setup | No charge |
| Data entry/information updates | $45.00 per hour |
| Programming and customization | $90.00 per hour |
| Debtor website hosting | No charge |
| Committee website hosting | No charge |
| Shareholder website hosting | No charge |
| Scanning | $.07/image |



# Rate Sheet

**WWW.OMNIMGT.COM**

▲ Virtual Data Rooms                                    Quote upon request

▲ Call Centers / Dedicated Line

| | |
|---|---|
| Creation, configuration and initial setup | No charge |
| Hosting fee | No charge |
| Usage | No charge |
| Service rates (actual talk and log-entry time) | $45.00 - $65.00 per hour |

▲ Case Docket / Claims Register                         No charge

▲ Solicitation and Tabulation

| | |
|---|---|
| Plan and disclosure statement mailings | Quoted prior to printing |
| Ballot tabulation | Standard hourly rates apply |

▲ Public Debt and Equities Securities and/Rights Offerings Services

| | |
|---|---|
| Noticing Services | Standard hourly rates apply |
| Solicitation, Balloting and Tabulation | Standard hourly rates apply |
| Rights Offerings | Standard hourly rates apply |
| Security Position Identification Reports | Standard hourly rates apply |

▲ Schedules / SoFA

| | |
|---|---|
| Preparation and updating of schedules and SoFAs | $45.00 - $125.00 per hour |

▲ Pre-Petition Consulting Services

| | |
|---|---|
| (e.g., preparation of cash flow, analysis of cash management system, evaluation of insurance coverage, assist with payroll, assist procurement and distribution of cashiers checks) | Standard hourly rates apply |

▲ UST Reporting Compliance

| | |
|---|---|
| (e.g., assist debtors to meet satisfy jurisdictional requirements, preparation of monthly operating and post-confirmation reports) | Standard hourly rates apply |

▲ Liquidating / Disbursing Agent

| | |
|---|---|
| (e.g., comply with Plan requirements, preparation of disbursement reports, payout calculations, check generation, bank reconciliations) | Standard hourly rates apply |

▲ Miscellaneous

| | |
|---|---|
| Telephone charges | At cost |
| Delivery | At cost |
| Archival DVD/CD-Rom | $40.00 per copy |



# Rate Sheet

**WWW.OMNIMGT.COM**

◢ Real-Time Reports

| | |
|---|---|
| Claims dashboard | No charge |
| Claim reports | No charge |
| Solicitation dashboard | No charge |
| Tabulation dashboard | No charge |
| Solicitation reports | No charge |

**Exhibit C**

**Claims Agent Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

### DECLARATION OF PAUL H. DEUTCH IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF RUST CONSULTING/OMNI BANKRUPTCY AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

I, Paul H. Deutch, under penalty of perjury, declare as follows:

1.      I am the Executive Managing Director of Rust Consulting/Rust/Omni Bankruptcy ("**Rust/Omni**"), an administrative services firm that specializes in the administration of large bankruptcy cases.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This Declaration is made in support of the above-captioned "Debtors' Application for Entry of an Order Authorizing Employment and Retention of Rust Consultation/Omni Bankruptcy as Claims and Noticing Agent, *Nunc Pro Tunc* to the Petition Date," which was filed contemporaneously herewith (the "**Application**").[2]

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]      Capitalized terms used but not otherwise defined in this Declaration have the meanings used in the Application.

3.      Rust/Omni is an industry leader whose professionals have significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Rust/Omni's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, including in matters of this size and complexity.  Rust/Omni's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this District and in other districts nationwide, including: *In re Phoenix Payment Systems*, Case No. 14-11848 (Bankr. D. Del. Aug. 4, 2014); *In re Gridway Energy Holdings, et al.*, Case No. 14-10833 (Bankr. D. Del. Apr. 10, 2014); *In re Restora Healthcare Holdings, LLC, et al.*, Case No. 14-10367 (Bankr. D. Del. Feb. 24, 2014); *In re First Mariner Bancorp*, Case No. 14-11952 (Bankr. D. Md. Feb. 10, 2014); *In re HDOS Enterprises*, Case No. 14-12028 (Bankr. C.D. Cal. Feb. 3, 2014); *In re FAH Liquidating Corp., et al.*, Case No. 13-13087 (Bankr. D. Del. Nov. 22, 2013); *In re SGK Ventures, LLC*, Case No. 13-37603 (Bankr. N.D. Ill. Sep. 24, 2013).

4.      As agent and custodian of court records under 28 U.S.C. § 156(c), Rust/Omni will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "**Clerk**"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.   In performing such services, Rust/Omni will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit B to the Application.

5.      Rust/Omni represents that:

a)      Rust/Omni is not a creditor of the Debtors;

b)      Rust/Omni will not consider itself employed by the United States government and will not seek any compensation from the United States

government in its capacity as Claims and Noticing Agent in these chapter 11 cases;

c)    By accepting employment in these chapter 11 cases, Rust/Omni waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d)    In its capacity as Claims and Noticing Agent in these chapter 11 cases, Rust/Omni will not be an agent of the United States and will not act on behalf of the United States;

e)    Rust/Omni will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases;

f)    Rust/Omni is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) for the matters on which it is engaged;

g)    In its capacity as Claims and Noticing Agent in these chapter 11 cases, Rust/Omni will not intentionally misrepresent any fact to any person;

h)    Rust/Omni's receipt and recordation of claims (if any) and claim transfers will fall under the supervision and control of the Clerk's office;

i)    Rust/Omni will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j)    The Clerk's office will bear none of the costs of Rust/Omni's services as Claims and Noticing Agent in these chapter 11 cases.

6.    Although the Debtors by this Application do not propose to retain Rust/Omni under Bankruptcy Code section 327 (such retention will be sought by separate application), I authorized our conflicts system to review the names of all known potential parties in interest (the "**Potential Parties in Interest**") in these chapter 11 cases.  The list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, directors and officers of the Debtors, equity interest holders, secured creditors, the Debtors' largest unsecured creditors on a consolidated basis, significant vendors and energy trading counterparties, and other parties.  Rust/Omni professionals under my supervision compiled and reviewed the results of the conflicts check.  As set forth in further detail herein,

Rust/Omni is not currently aware of any relationship that would present a disqualifying conflict of interest. Should Rust/Omni discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Rust/Omni will use reasonable efforts to promptly file a supplemental declaration.

7.      To the best of my knowledge, and based solely on information provided to me by the Debtors, and except as detailed herein, neither Rust/Omni nor any of its professionals has any materially adverse connection to the Debtors, their creditors, or other relevant parties. Rust/Omni may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Rust/Omni serves or has served in a neutral capacity as Claims and Noticing Agent or Administrative Advisor for another chapter 11 debtor or as class action settlement administrator.

8.      Rust/Omni has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, Rust/Omni has and will continue to have relationships in the ordinary course of its business with certain vendors, professionals, and other parties in interest that may be involved in the Debtors' chapter 11 cases. There is also a possibility that Rust/Omni will provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases—though such services would not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

9.      Rust/Omni and its personnel in their individual capacities regularly use the services of law firms, accounting firms, and financial advisors. Such firms engaged by Rust/Omni or its personnel may appear in these chapter 11 cases representing the Debtor or parties in interest. All engagements where such firms represent Rust/Omni or its personnel in their individual capacities are unrelated to these chapter 11 cases.

10.     To the best of my knowledge, neither Rust/Omni nor any of its partners or employees represents any interest materially adverse to the Debtors' estates with respect to any matter on which Rust/Omni is to be engaged.  Based on the foregoing, I believe that Rust/Omni is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14).

RLF1 11878651v.3

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on May 4, 2015

> /s/ Paul H. Deutch
> _____
> Paul H. Deutch
> Executive Managing Director