## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al*[1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

### DEBTORS' MOTION FOR ENTRY
### OF INTERIM AND FINAL ORDERS (I) AUTHORIZING
### THE DEBTORS TO (A) PAY CERTAIN EMPLOYEE-RELATED EXPENSES
### AND (B) CONTINUE THEIR WORKERS' COMPENSATION POLICY AND PAY ALL
### OBLIGATIONS IN RESPECT THEREOF AND (II) GRANTING RELATED RELIEF

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request entry of interim and final orders (i) authorizing the Debtors to (a) pay certain Employee-Related Expenses (defined below) and (b) continue their Workers' Compensation Policy (defined below) and pay any obligations with respect to the Workers' Compensation Policy, whether arising before or after the Petition Date (collectively, the "**Insurance Obligations**"); and (ii) granting certain related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

filed concurrently with this Motion.[2]   In further support of the Motion, the Debtors, by and

through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and

1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28

U.S.C. § 157(b).

## BACKGROUND

2.      On May 5, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary

petition with this Court for relief under chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**").  The Debtors continue to manage and operate their businesses as debtors

in possession under Bankruptcy Code sections 1107 and 1108.

3.      Corinthian was founded in February 1995, and through acquisitions became one

of the largest for-profit post-secondary education companies in the United States and Canada.

Corinthian offered career-oriented diploma and degree programs in diverse fields such as health

care, business, criminal justice, transportation technology and maintenance, construction trades,

and information technology.  As of March 31, 2014, Corinthian operated over 100 campuses and

provided educational opportunities to more than 74,000 students and had more than 10,000

employees.  It also offered degrees online.

4.      Among its acquisitions, in January 2010, Corinthian purchased Heald Capital,

LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates

Heald College, a 150 year old regionally accredited institution with 12 campuses offering

---

[2]     Capitalized terms not otherwise defined in this Motion have the meanings used in the First Day Declaration.

associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

5.    Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the First Day Declaration.

## RELIEF REQUESTED

6.    By this Motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**"), respectively, authorizing the Debtors to pay certain Employee-Related Expenses and continue their Workers' Compensation Policy on an uninterrupted basis, and to pay, in their discretion, the Insurance Obligations.

7.    Further, the Debtors request that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for Employee-Related Expenses and Insurance Obligations (or to re-issue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## BASIS FOR RELIEF REQUESTED

## I. FACTS SPECIFIC TO RELIEF REQUESTED

## A.    The Debtors' Employee-Related Expenses

a.   The Reimbursable Expenses

3

7.       Certain of the Debtors' former and current employees incurred expenses prior to the Petition Date in the course of performing their jobs, including expenses for travel, mobile phones, meals, meetings, and related business items (the "**Reimbursable Expenses**").  The Debtors believe that they pre-funded a majority of the Reimbursable Expenses prior to the Petition Date; however, employees may continue to submit Reimbursable Expenses that were incurred prior to the Petition Date.

8.       The Debtors seek authorization to pay the Reimbursable Expenses.  The Debtors estimate that as of the Petition Date they owe approximately $40,000 in accrued but unpaid Reimbursable Expenses for approximately 25 employees.

b.   The Prepetition Payroll

9.       Prior to the Petition Date, the Debtors' issued checks totaling approximately $7.4 million to former and current employees for all prepetition payroll obligations (the "**Prepetition Payroll Checks**") and paid the related employer payroll taxes (the "**Prepetition Payroll Taxes**" and together with the Prepetition Payroll Checks, the "**Prepetition Payroll**").  The Debtors believe that they have pre-funded the majority of the Prepetition Payroll Checks; however, the Debtors are aware of certain instances in which they may need to reissue a number of the Prepetition Payroll Checks and pay the corresponding Prepetition Payroll Taxes due to checks issued for an incorrect amount, employees that were inadvertently excluded from the distribution of the Prepetition Payroll Checks, employees who did not or were unable to cash their checks prior to the Petition Date, and other unintentional errors that prevented a limited number of the Prepetition Payroll obligations from being processed prior to the Petition Date.

10.     The Debtors seek authorization to reissue and pay any Prepetition Payroll obligations that were not processed, satisfied, or distributed prior to the Petition Date.  The

Debtors believe that with respect to the Prepetition Payroll Checks no employee is owed more than $12,475.   The Debtors estimate that as of the Petition Date they owe approximately $800,000 on account of the Prepetition Payroll obligations.

c.   The Payroll-Related Benefits

11.     The Debtors provided certain of their former and current employees with prepetition payroll benefits pursuant to transportation, healthcare, and other related voluntary benefits programs (the "**Payroll-Related Benefits**").   With respect to the Payroll-Related Benefits, the Debtors withhold these amounts from the employees' paychecks for the benefit of the employees and seek authorization to pay these amounts to third parties.   Such withholdings are derived from employee funds and held in trust for the benefit of the related payees and thus do not constitute property of the Debtors' estates.

12.     The Debtors estimate that as of the Petition Date they owe approximately $15,000 in accrued but unpaid Payroll-Related Benefits.

d.   The Healthcare Premium

13.     The Debtors maintain a health insurance policy for their employees with Kaiser Permanente.   Pursuant to the health insurance policy, the Debtors pay a monthly premium of approximately $490,000, which includes certain amounts withheld from employees' paychecks and certain amounts funded by the Debtor (together, the "**Healthcare Premium**" and, collectively with the Reimbursable Expenses, the Prepetition Payroll Obligations, and the Payroll-Related Benefits, the "**Employee-Related Expenses**").   Prior to the Petition Date, the Debtors attempted to prefund the Healthcare Premium for April, 2015; however, as of the Petition Date, the Debtors believe that the check for the Healthcare Premium for April, 2015 has

5

not cleared the Debtors' bank account. Accordingly, the Debtors seek authority to pay $488,417.30 for the Healthcare Premium for April 2015.

14.    It is essential to the successful administration of these chapter 11 cases that the Debtors be permitted to continue reimbursing and paying their former and current employees and third parties for the Employee-Related Expenses.

**B.    The Debtors' Workers' Compensation Policy**

15.    The Debtors maintain a workers' compensation and employers' liability insurance policy (the "**Workers' Compensation Policy**") with American Zurich Insurance Company ("**Zurich**"). The Workers' Compensation Policy currently in effect and the associated premium, insurance carrier, and policy term are listed on <u>Exhibit C</u> to this Motion.

16.    Pursuant to the Workers' Compensation Policy, the Debtors are required to pay fixed-cost premiums and monthly deductibles. The Debtors have paid all of the premiums due through July 1, 2015. The monthly deductible under the Workers' Compensation Policy is $350,000. In addition to their premium obligations, each month the Debtors receive an invoice on account of claims paid by Zurich during the previous month up to the monthly deductible amount. Accordingly, the Debtors' monthly obligations for claims paid under the Workers' Compensation Policy range from $150,000 to $350,000. Zurich fulfills claims over and above the monthly deductibles up to an aggregate policy term cap. Additionally, Zurich has the right to review and adjust the premium and deductible rates annually.

17.    Zurich provides the Debtors with an invoice detailing the Debtors' deductible obligations with respect to all claims made in the prior month within the first few weeks of each month. The Debtors then have approximately 15 to 20 days from receipt of the invoice to pay the deductible amount.

18.     Historically, the Debtors have provided Zurich with letters of credit in varying amounts, which Zurich has the right to draw on in the event of a default by the Debtors. Currently, Zurich has a $6.5 million letter of credit from Bank of America, N.A. securing the Debtors' obligations under the Workers' Compensation Policy.  Zurich has the right to review and adjust the required amount of the letter of credit annually.

19.     It is essential that the Debtors' maintain the Workers' Compensation Policy throughout these cases because any lapse in coverage would leave the Debtors exposed to significant, potentially crippling liability.  Accordingly, the Debtors seek to pay up to $350,000 in Insurance Obligations, consisting of the monthly deductible payment for claims paid in April 2015.  In addition, to preserve and maximize the value of the Debtors' estates, it is critical that the Court authorize the Debtors to continue, maintain, supplement, amend, extend, renew, or replace their Workers' Compensation Policy during these chapter 11 cases and to pay all obligations thereunder in the ordinary course of business.

**C.      Obligations Due During First 21 Days of These Cases**

20.     The Debtors anticipate approximately $1,343,417.30 in Employee-Related Expenses will be due during the first 21 days of these cases.  The anticipated Employee-Related Expenses consist of $40,000 in outstanding Reimbursable Expenses, $800,000 in Prepetition Payroll obligations that the Debtors need to reissue, $15,000 in accrued but unpaid Payroll-Related Benefits, and $488,417.30 in Healthcare Premium obligations for April 2015.  Further, the Debtors anticipate up to $350,000 in Insurance Obligations, consisting of the monthly deductible payment for claims paid in April 2015, will be due during the first 21 days of these cases.  Accordingly, by this Motion, the Debtors request authority, but not the direction, to pay

7

the Employee-Related Expenses in an amount not to exceed $1,343,417.30[3] and the Insurance

Obligations in an amount not to exceed $350,000 on or before entry of the Final Order.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A.    Continuation of the Workers' Compensation Policy is Required by the Bankruptcy Code, U.S. Trustee Operating Guidelines, and Various Regulations and Laws

21.    Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain

appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory

conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, the

operating guidelines issued by the Office of the United States Trustee for the District of

Delaware (the "**U.S. Trustee Operating Guidelines**") require the Debtors to remain current with

respect to the Workers' Compensation Policy.

22.    Additionally, many state laws and regulations require that the Debtors have and

maintain workers' compensation insurance.  For example, California state law generally requires

all employers in the state to have and maintain workers' compensation.  CAL. LABOR CODE

§§ 3200-3865 (West 2015).  Further, failure to have workers' compensation coverage is a

criminal offense in California and can lead to penalties, fines or imprisonment.  CAL. LABOR

CODE § 3700.5 (West 2015).

23.    Therefore, the Debtors believe that it is essential to their estates, and consistent

with the Bankruptcy Code and the U.S. Trustee Operating Guidelines, that they maintain and

continue to make all payments required under their Workers' Compensation Policy and have

authority to obtain, supplement, amend, extend, renew and/or replace their Workers'

Compensation Policy as needed, in their business judgment, without further order of the Court.

---

[3]    The Debtors have outstanding obligations with respect to deferred compensation and a Long Term Incentive Plan (the "**LTI**").  By this Motion, the Debtors do not seek authorization to pay the outstanding deferred compensation obligations or the LTI obligations.

**B.     Payment of the Employee-Related Expenses and the Insurance Obligations and Continuation of the Workers' Compensation Policy is Appropriate Under Bankruptcy Code Sections 363(b), 105(a), and the Doctrine of Necessity**

24.     Under Bankruptcy Code section 363(b)(1), a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition). For a court to apply Bankruptcy Code section 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (ruling that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization).

25.     Additionally, Bankruptcy Code section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R at 175. Bankruptcy Code section 105 permits a court to authorize the "pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NYR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).

26.     Payment of any Employee-Related Expenses and Insurance Obligations is necessary and appropriate and may be authorized under Bankruptcy Code sections 363(b) and 105(a) under the "doctrine of necessity."  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow

payment of prepetition claims.  *See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims when payment is essential to continued operation of debtor, such as where there is a "possibility that the creditor will employ an immediate economic sanction, failing such payment"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the "necessity of payment" doctrine "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (noting that section 105 and the necessity of payment doctrine provide courts with authority to permit payment of prepetition claims necessary to facilitate a successful reorganization).  The rationale for this "necessity of payment" doctrine is consistent with the paramount goal of chapter 11— "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176.

27.     Here, to facilitate the successful administration of these chapter 11 cases and to avoid potentially crippling liability, it is essential for the Debtors to pay all the Employee-Related Expenses and maintain the Workers' Compensation Policy on an ongoing and uninterrupted basis.  The Debtors' authority to continue making payments with respect to the Employee-Related Expenses and the Insurance Obligations is warranted under Bankruptcy Code sections 363(b) and 105(a).  Further, the nonpayment of any deductible, premium, or related fees under the Workers' Compensation Policy could result in Zurich terminating the existing policy, declining to renew the Workers' Compensation Policy, or refusing to enter into new insurance agreements with the Debtors in the future.

28.     It is also important for the Debtors to have the authority to renew or obtain new workers' compensation insurance arrangements without further order of the Court.   If the Workers' Compensation Policy is allowed to lapse without renewal, the Debtors could be exposed to substantial liability, which exposure could disrupt the Debtors' ability to administer these chapter 11 cases and impair the value of the Debtors' estates.   Furthermore, absent granting the relief requested, the Debtors may be required to obtain a replacement policy on an expedited basis at what would likely be a significantly higher cost.   It is therefore essential that the Workers' Compensation Policy be maintained on an ongoing and uninterrupted basis, and that the Debtors have the authority to revise, supplement, or change their insurance coverage by, among other things, renewing the current policy or purchasing any necessary new policies. Furthermore, Courts in this District have routinely granted similar relief.[4]

29.     The payment of the Payroll-Related Benefits will not prejudice the Debtors' estates because such withholdings are derived from employee funds and held in trust for the benefit of the related payees and thus do not constitute property of the Debtors' estates under Bankruptcy Code section 541.  *See Begier v. IRS*, 496 U.S. 53, 58-59 (1990).  *See also In re Columbia Gas Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property which a debtor holds in trust, either express or constructive, for another does not become property of the estate when the debtor files for bankruptcy, and stating that "Congress clearly intended the exclusion by section 541(d) to include not only funds held in express trust, but also funds held in

---

[4]     *See, e.g., In re AES Eastern Energy, L.P.*, Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 4, 2012) (D.I. 43); *DSI Holdings, Inc.*, Case No. 11-11941 (KJC) (Bankr. D. Del. June 28, 2011) (D.I. 52); *In re Los Angeles Dodgers LLC, et al.* Case No. 11-12010 (KG) (Bankr. D. Del. June 28, 2011) (D.I. 43); *In re Electrical Components Int'l, Inc., et al.*, Case No. 10-11054 (KJC) (Bankr. D. Del. Apr. 1, 2010) (D.I. 34); *In re Simmons Bedding Co., et al.*, Case No. 09-14037 (MFW) (Bankr. D. Del. Nov. 18, 2009) (D.I. 46); *In re Recycled Paper Greetings, Inc., et al.*, Case No. 09-10002 (KG) (Bankr. D. Del. Jan. 5, 2009) (D.I. 50); *In re Key Plastics LLC and Key Plastics Fin. Corp.*, Case No. 08-13324 (MFW) (Bankr. D. Del. Dec. 17, 2008) (D.I. 42); *In re Vertis Holdings, Inc., et al.*, Case No. 08-11460 (CSS) (Bankr. D. Del. July 16, 2008) (D.I. 47); *In re LandSource Communities Dev. LLC*, Case No. 08-11111 (KJC) (Bankr. D. Del. July 10, 2008) (D.I. 202)

constructive trust."); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.),* 243 B.R. 231 (Bankr. D. Del. 2000) (same).

30.     Accordingly, for these reasons, and the supporting authority found in Bankruptcy Code sections 105(a), 363(b), and 541, the Debtors submit that the relief requested is essential, appropriate, and in the best interests of their estates and should be granted.

**C.      The Prepetition Payroll Obligations Constitute Priority Claims Under Bankruptcy Code Section 507(a)**

31.     The Debtors believe that the majority of the Prepetition Payroll Checks constitute priority claims under Bankruptcy Code section 507(a)(4), which must be satisfied prior to any general unsecured claims against the Debtors' estate. 11 U.S.C. §§ 507(a)(4).  Specifically, under Bankruptcy Code section 507(a)(4)(A), claims of employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $12,475 per individual. 11 U.S.C. § 507(a)(4)(A).  As of the Petition Date, there are no employees with accrued unpaid wages exceeding that $12,475 cap.  Thus, virtually all the Prepetition Payroll Checks are priority claims that, in any event, will have to be paid in full.

32.     Further, payment of the Prepetition Payroll Taxes will not prejudice other creditors of the Debtors, as the relevant taxing authorities generally would hold priority claims under Bankruptcy Code section 507(a)(8) for such obligations.  *See* 11 U.S.C. § 507(a)(8).[5] Payment of the Prepetition Payroll obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.  Therefore, the

---

[5]     Bankruptcy Code section 507(a)(8) affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii) under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

Debtors respectfully request that they be authorized to pay all accrued but unpaid Prepetition Payroll obligations.

**D.    The Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay the Employee-Related Expenses and Insurance Obligations**

33.    The Debtors further request that the Court authorize their banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Employee-Related Expenses and the Insurance Obligations, whether such checks were presented prior to or after the Petition Date. Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as for an authorized payment of the Employee-Related Expenses or the Insurance Obligations.  As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Employee-Related Expenses and the Insurance Obligations or to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.  Finally, the Debtors submit that they have sufficient liquidity to pay the Employee-Related Expenses and to pay the Insurance Obligations as they become due in the ordinary course of business.

34.    Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral.

**E.    Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm**

35.    Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose

before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[6]

36.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## RESERVATION OF RIGHTS

37.     Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  If this Court grants the relief requested in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion shall not be deemed a direction to the Debtors to pay such claims.

## NOTICE

38.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) Office of the United States Trustee for the District of Delaware;

---

[6]     See the First Day Declaration filed concurrently with this Motion.

(ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) Zurich; (v) Kaiser Permanente; (vi) the Department of Education; (vii) the Internal Revenue Service; (viii) the Securities and Exchange Commission; (ix) the United States Attorney for the District of Delaware; (x) any banking or financial institution that holds the Debtors' accounts; and (xi) all parties entitled to notice of this Motion pursuant to Local Rule 9013-1(m).

39.     As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR MOTION

40.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.


Dated: May 4, 2015
      Wilmington, Delaware

*/s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
      merchant@rlf.com
      terranova@rlf.com
      steele@rlf.com

Proposed Counsel for the Debtors and Debtors in Possession

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al*[1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS
### TO (A) PAY CERTAIN EMPLOYEE-RELATED EXPENSES AND
### (B) CONTINUE THEIR WORKERS' COMPENSATION POLICY AND PAY ALL
### OBLIGATIONS IN RESPECT THEREOF AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**") (i) authorizing the Debtors to (a) maintain, supplement, amend, extend, renew, or replace their Workers' Compensation Policy on an uninterrupted basis, and (b) pay the Insurance Obligations and the Employee-Related Expenses; and (ii) granting certain related relief, as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]     Capitalized terms used but not defined in this Order have the meanings used in the Motion.

venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having

been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and

upon the First Day Declaration, the record of the Hearing, and all the proceedings before the

Court; and the Court having found and determined that the relief requested in the Motion is

necessary to avoid immediate and irreparable harm to the Debtors and their estates, as

contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best

interests of the Debtors, their estates and creditors and any parties in interest; and that the legal

and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion will be held on

_____, 2015, at__:__ _.m. (prevailing Eastern Time).  Any objections or responses to entry of a

final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____

_____, 2015, and served on the following parties:  (i) the Debtors; (ii) the Office of the

United States Trustee for the District of Delaware; (iii) any statutory committee appointed in

these chapter 11 cases; and (iv) counsel to Bank of America, N.A., in its capacity as

Administrative Agent to the Lenders.  A copy of the Motion and this Order will be served in

accordance with Local Rule 9013-1(m).  Due to the nature of the relief requested in the Motion,

no other or further notice need be given.  In the event no objections to entry of a final order on

the Motion are timely received, this Court may enter such final order without need for the Final

Hearing.

RLF1 11889241v.3

3.      The Debtors are authorized to maintain, supplement, amend, extend, renew, or replace their Workers' Compensation Policy in the ordinary course of business.

4.      The Debtors are authorized, but not required, to pay the Insurance Obligations in an amount not to exceed $350,000, as they come due in the ordinary course of business pursuant to the Interim Order.

5.      The Debtors are authorized, but not required, to pay the Employee-Related Expenses, in amounts not to exceed $40,000 in Reimbursable Expenses, $800,000 in Prepetition Payroll obligations, $15,000 in Payroll-Related Benefits, and $488,417.30 in Healthcare Premium obligations for April 2015.

6.      Notwithstanding any other provision of this Order, pending entry of a final order, payments to or on behalf of any one person on account of wages and other compensation obligations in the interim period shall be limited by sections 507(a)(4) and (5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections.

7.      The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Employee-Related Expenses and the Insurance Obligations that have not been honored and paid as of the Petition Date (or to re-issue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

3

8.       Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

9.       Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral.

10.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

11.      Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

12.      The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

13.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2015
         Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 11889241v.3

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

### FINAL ORDER (I) AUTHORIZING THE DEBTORS
### (A) TO PAY CERTAIN EMPLOYEE-RELATED EXPENSES AND
### (B) CONTINUE THEIR WORKERS' COMPENSATION POLICY AND PAY ALL
### OBLIGATIONS IN RESPECT THEREOF AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**")

(i) authorizing the Debtors to (a) maintain, supplement, amend, extend, renew, or replace their

Insurance Policies on an uninterrupted basis, and (b) pay the Insurance Obligations and the

Employee-Related Expenses; and (ii) granting certain related relief, as more fully set forth in the

Motion; and due and sufficient notice of the Motion having been provided under the particular

circumstances, and it appearing that no other or further notice need be provided; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with

28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein

being a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]   Capitalized terms used but not defined in this Order have the meanings used in the Motion.

consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and hearings having been held to consider the relief requested in the Motion on an interim basis and on a final basis (together, the "**Hearings**"); and the Court having entered an order granting the Motion on an interim basis; and upon the First Day Declaration, the record of the Hearings, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein on a final basis.

2.     The Debtors are authorized to maintain, supplement, amend, extend, renew, or replace their Workers' Compensation Policy in the ordinary course of business.

3.     The Debtors are authorized, but not required, to pay the Insurance Obligations as they come due in the ordinary course of business.

4.     The Debtors are authorized, but not required, to pay the Employee-Related Expenses.

5.     The Debtors' banks and financial institutions are authorized to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date for the Employee-Related Expenses and the Insurance Obligations that have not been honored and paid as of the Petition Date (or to re-issue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and are authorized to rely on the

Debtors' representations as to which checks, drafts, transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Order, *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

6.      Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) shall be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy, or lease under Bankruptcy Code section 365.

7.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral.

8.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

9.      Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

RLF1 11889241v.3

11.     This Court shall retain jurisdiction over all matters arising from or related to the

implementation or interpretation of this Order.

Dated: _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**Insurance Policies**

| Policy Type | Insurance Carrier | Policy Term | Policy Number | Total Estimated Annual Premium |
|---|---|---|---|---|
| Workers' Compensation and Employers' Liability | American Zurich Insurance Company | 2/2/2015 - 7/1/2015 | WC 9304937-14 | $338,235.00 |

RLF1 11889241v.3