## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

## DEBTORS' MOTION FOR AN ORDER
## AUTHORIZING THE DEBTORS TO CONDUCT *DE MINIMIS* ASSET
## SALES OF $25,000 OR LESS WITHOUT FURTHER ORDER OF THE COURT

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request the entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), (i) authorizing the Debtors to consummate certain asset sales of limited size without the need for further Court approval; and (ii) granting certain related relief. In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed concurrently with this Motion. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409 and Local Rules 2015-2 and 4001-3.  This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

### A.      General Background

2.      On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.      Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada.  Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology.  As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees.  It also offered degrees online.

4.      Among its acquisitions, in January 2010, Corinthian purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates Heald College, a 150 year old regionally accredited institution with 12 campuses

---

[2]      Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

5.     Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the First Day Declaration.

**B.     The Debtors' Miscellaneous Property**

6.     As detailed in the First Day Declaration, the Debtors closed each of their campus locations effective as of April 27, 2015 and are in the process of liquidating their assets and winding down their operations.  In connection with these efforts, the Debtors anticipate being in a position to reject many of the nonresidential real property leases relating to these campus locations within the first two weeks of the chapter 11 cases, thereby stemming the incurrence of additional administrative rent.  The Debtors submit, however, that there are miscellaneous assets located at many of these locations, which, but for the relief requested in this Motion, would need to be abandoned in order to effectuate an expedited rejection of the underlying nonresidential real property leases.

7.     Excluding the Debtors' headquarters, the Debtors currently own furniture or equipment at 31 locations (three locations also contain annexes).  Two of these locations, Fremont and Long Beach, CA (the **"Wyotech Locations"**), were campuses of the Debtors' Wyotech brand.  The Wyotech Locations are multi-building campuses which the Debtors believe may contain assets with significant value, including, but not limited to, auto repair and HVAC related equipment.  The Debtors intend to remain at the Wyotech Locations until they can perform and complete a fulsome sale process for the assets at these facilities.  This Motion is not intended to seek relief with respect to the assets to be sold at the Wyotech Locations, as any such transactions will be the subject of a separately filed sale motion.

8.      The Debtors' remaining locations consist of the former Everest and Heald campuses and certain other administrative offices. The Debtors believe that the remaining 29 locations contain furniture and equipment of considerably less value.  The Debtors have instructed the campus presidents at each of these remaining locations in California and Arizona to log and ship all equipment worth over $5,000 that is easily transportable to the nearer of the two Wyotech Locations to allow the Debtors additional time to properly market the assets.  The Debtors believe that the assets that will not be transferred to the Wyotech Locations consist mainly of office furniture and equipment, including, but not limited to, lab equipment (for example, dental chairs and x-ray machines), electronic blackboards or "smartboards", medical lab equipment and supplies and other items utilized in connection with the instruction provided at each respective campus location (the "**Miscellaneous Assets**").[3]

9.      Requiring Court approval of every miscellaneous asset sale would be administratively burdensome to the Court and costly for the Debtors' estates, especially in light of the small size of many of the contemplated sales.  The more significant obstacle in obtaining Court approval of each individual sale, however, is the time required to obtain such approval in light of the Debtors' pressing need to reject the underlying campus leases as quickly as possible.  Indeed, the Debtors anticipate filing a motion to reject many of these real property leases within the first few days of the chapter 11 cases.  Accordingly, the Debtors do not have the luxury of waiting an extended notice period for approval of each asset sale, as the additional accruing rent under the leases would likely outweigh any benefit to be realized from the sale transactions.[4]

---

[3]      Notably, the majority of the Debtors' computer equipment is leased, and therefore, is not property of the Debtors.

[4]      Attached as <u>Exhibit A</u> is a schedule detailing the Debtors' remaining locations, excluding its corporate headquarters and the two Wyotech Locations.  For each location, the schedule provides information regarding the size of the facility, the estimated rent expense and select information regarding certain

Thus, the miscellaneous asset sale procedures proposed herein (the "**Miscellaneous Sale Procedures**") will permit the Debtors to both maximize the proceeds realized for the Miscellaneous Assets while rejecting unnecessary real property leases in a timely manner.

## REQUESTED RELIEF

10.      The Debtors respectfully request the entry of an order, substantially in the form attached hereto as <u>Exhibit B</u>, (i) authorizing the Debtors to consummate certain asset sales of limited size without the need for further Court approval and (ii) granting certain related relief.

## The Miscellaneous Sale Procedures

11.      The Debtors propose to implement the Miscellaneous Sale Procedures on the terms described below.

### *Transactions Subject to the Miscellaneous Sale Procedures*

12.      The Miscellaneous Sale Procedures will apply only to asset sale transactions involving, in each case, the transfer of $25,000 or less in total consideration to a single buyer or related group of buyers for assets per location[5], as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold.[6]

---

(continued…)

programs that were offered at each location.  The Debtors estimate that the monthly rent at their non-Wyotech Locations to be approximately $2.3 million.

[5]      For the avoidance of doubt, the Miscellaneous Sale Procedures do contemplate that a buyer or group of related buyers could acquire more than $25,000 of Miscellaneous Assets from the Debtors, provided that total consideration relating to a single location is at or below the $25,000 cap.  For example, the Miscellaneous Sale Procedures would allow the Debtors to enter into a $75,000 transaction with a liquidation firm to acquire Miscellaneous Assets from three separate locations, provided that the consideration allocated to each campus location is no more than $25,000.

[6]      Section 363(h) of the Bankruptcy Code states, in pertinent part:

[T]he trustee may sell both the estate's interest . . . and the interest of any co-owner in property . . . only if:

(1)  partition in kind of such property among the estate and the co-owners is impracticable;
(2)   sale of the estate's undivided interest in such property would realize

*Bids for the Miscellaneous Assets*

13.    The Debtors will seek offers for the Miscellaneous Assets from liquidators, competitors and other potential purchasers on or before May 8, 2015.  If the Debtors receive an offer for the Miscellaneous Assets at a single location from a single buyer or group of related buyers that exceeds $25,000, then such sale will not be subject to these Miscellaneous Sale Procedures.  The Debtors will be filing a separate motion or motions with the Court seeking approval of any transaction that exceeds the $25,000 threshold (for a single buyer or group of related buyers at a single location).

*Notice and Opportunity to Object*

14.    After a Debtor enters into a contract or contracts (or bill of sale or other document evidencing a proposed transaction) contemplating a transaction that is subject to the Miscellaneous Sale Procedures (a "**Proposed Sale**"), the Debtor will serve a notice of the Proposed Sale (a "**Sale Notice**") by email (or overnight mail where email addresses are unavailable) on (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (ii) counsel to any statutory committee appointed in these cases (the "**Committee**") and (iii) all known parties holding or asserting liens on or other interests in the assets that are the subject of the Proposed Sale and their respective counsel, including, without limitation, counsel to Bank of America, N.A., as administrative agent for the prepetition lenders (collectively, the "**Interested Parties**").

---

(continued…)

significantly less for the estate than the sale of such property free of the interests of such co-owners; (3)  the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners;  and (4)  such property is not used in the production, transmission or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

RLF1 11896746v.3

15.    The Sale Notice will include the following information with respect to the Proposed Sale:

- a description of the assets that are the subject of the Proposed Sale and their locations;

- the identity of the nondebtor party or parties to the Proposed Sale and any relationship of the party or parties with the Debtors; provided, however, that the Miscellaneous Sale Procedures may not be used to consummate a sale of assets to any "insider" of the Debtors (as defined in section 101(31) of the Bankruptcy Code);

- the identities of any parties known to the Debtors to hold liens on or other interests in the assets and a statement indicating that all such liens or interests are capable of monetary satisfaction;

- the major economic terms and conditions of the Proposed Sale;[7] and

- instructions consistent with the terms described below regarding the procedures to assert objections to the Proposed Sale ("Objections").

16.    Interested Parties will have twenty-four (24) hours from transmission of the Sale Notice (the "**Notice Period**") to object to the Proposed Sale pursuant to the objection procedures described below.  If no Objections are properly asserted prior to expiration of the Notice Period, the applicable Debtor or Debtors will be authorized, without further notice and without further Court approval, to consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract, contracts or other documents.  In addition, the applicable Debtor or Debtors may consummate a Proposed Sale prior to expiration of the applicable Notice Period if each Interested Party either consents in writing (or indicates its non-objection) to the Proposed Sale.  Upon either (i) the expiration of the Notice Period without the receipt of any Objections or (ii) the written consent of all Interested Parties (or an indication that each Interested Party does not object to the Proposed Sale), the Proposed Sale will be deemed

---

[7]    This information may be provided by attaching the applicable contract or contracts (or other relevant documents) to the Sale Notice.

final and fully authorized by the Court.

17.    If any significant economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the applicable Debtor or Debtors must send a revised Sale Notice to all Interested Parties describing the Proposed Sale, as amended.  If a revised Sale Notice is required, the Notice Period will be extended for an additional twenty-four (24) hours.

***Objection Procedure***

18.    Any Objections to a Proposed Sale must be in writing and served on the Interested Parties, the Debtors and the Debtors' counsel so as to be received by all such parties prior to expiration of the Notice Period.  Each Objection must state with specificity the grounds for objection.  If an Objection to a Proposed Sale is properly served, the Proposed Sale may not proceed absent (i) written withdrawal of the Objection or (ii) entry of an order of the Court specifically approving the Proposed Sale.  If an Objection is not resolved on a consensual basis, the applicable Debtor or Debtors may schedule the Proposed Sale and the Objection for hearing at the next available omnibus hearing date in these chapter 11 cases.

***Effects of Sale***

19.    Buyers will take title to the assets free and clear of liens, claims, encumbrances and other interests, pursuant to section 363(f) of the Bankruptcy Code.  All such liens, claims, encumbrances and other interests will attach to the proceeds of the sale to the extent the underlying security agreement provides for the continuation of such liens, claims, encumbrances and other interests, with the same validity and priority as with respect to the assets.

## Legal Basis for Relief Requested

20.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   The notice and hearing requirements contained in section 363(b)(1) are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.   11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").   Generally, Rules 2002(a)(2) and 2002(i) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.   As noted above, the "notice" required by section 363(b)(1) of the Bankruptcy Code is "such notice as is appropriate in the particular circumstances."   11 U.S.C. § 102(1)(A).   Pursuant to Bankruptcy Rule 2002(i), courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code requesting notice.

21.     Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are "guided by fundamental notions of procedural due process."   In re Lomas Fin. Corp., 212 B.R. 46, 54 (Bankr. D. Del. 1997).   Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"   Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); In re Grand Union Co.,

9

204 B.R. 864, 871 (Bankr. D. Del. 1997). In sum, if basic due process is afforded to interested parties and appropriate cause is established, a court may determine that limited notice of an asset sale is appropriate.

22.     The Debtors seek the approval of the Miscellaneous Sale Procedures to maximize the net value realized from sales of relatively immaterial or de minimis assets. These procedures will accommodate the smooth and timely consummation of such small asset sales. Under the circumstances, the usual process of obtaining Court approval of each Proposed Sale (i) would impose unnecessary administrative burdens on the Court and use valuable Court time at omnibus hearings, (ii) would create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the underlying transactions and (iii) in some instances may hinder the Debtors' ability to take advantage of sale opportunities that are available only for a limited time. More importantly, the Debtors are likely to forego certain sale opportunities and simply abandon the assets in question given the need to reject the underlying real property leases as quickly as possible. Therefore, the Debtors propose to streamline the process as described herein. For the foregoing reasons, the Debtors submit that (i) sufficient cause exists to implement the modified notice provisions proposed herein and (ii) these modified notice procedures will make the sale process as efficient as possible, while preserving fully the rights of the Interested Parties.

23.     The Debtors also believe that limiting service of the Sale Notices to the Interested Parties is justified under the circumstances. The Interested Parties represent the key parties in interest who should receive notice of any Proposed Sale. In particular, Sale Notices would be served on (i) the primary parties representing the interests of unsecured creditors of the Debtors' estates (i.e., the U.S. Trustee and counsel to the Committees) and (ii) the other parties with potential interests in the assets at issue (i.e., counsel to the secured lenders). Under the

circumstances, the Debtors believe that this manner of notice is appropriate and fully preserves necessary due process rights.

### Approval of Transactions Without a Hearing

24.     As stated above, the sale of property outside of the ordinary course of business may occur only "after notice and a hearing."  11 U.S.C. § 363(b)(1).  Such sales are authorized without an actual hearing, however, if no party in interest timely requests such a hearing.  11 U.S.C. § 102(1)(B)(i) (notwithstanding any statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if such a hearing is not requested timely by a party in interest").  Moreover, as described above, due process is satisfied if parties in interest are given "an <u>opportunity</u> to present their objections."  <u>Mullane</u>, 339 U.S. at 314 (emphasis added).

25.     The Debtors believe that the Miscellaneous Sale Procedures comport with the hearing requirements of the Bankruptcy Code and due process by providing an opportunity for Interested Parties to present Objections and request a hearing on each Proposed Sale.  Under these circumstances, a Proposed Sale may be approved without a hearing if no Interested Party, after being presented with the opportunity to object and seek a determination of the Court, requests a hearing on such sale.

### Sales Free and Clear of Interests

26.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if (i) applicable nonbankruptcy law permits such a free and clear sale, (ii) the holder of the interest consents, (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property, (iv) the interest is in bona fide dispute or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11

27.     Assets encumbered by interests held by other parties may be sold pursuant to the Miscellaneous Sale Procedures only to the extent permitted by section 363(f) of the Bankruptcy Code.  As such, the relief requested in this Motion leaves the requirements of section 363(f) of the Bankruptcy Code unaltered.  Moreover, as noted above, the Debtors propose that such interests attach to the proceeds of the sales to the extent provided by the underlying security agreement.

## RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

28.     Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use, sell . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003.[8]

29.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## NOTICE

30.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a

---

[8]     See the First Day Declaration filed concurrently with this Motion.

consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the District of Delaware; (viii) any banking or financial institution that holds the Debtors' accounts; (ix) any other known party holding liens with respect to the Miscellaneous Assets; and (x) all parties entitled to notice of this Motion pursuant to Local Rule 9013-1(m).

31.     As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR MOTION

32.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of an order granting the relief requested in its entirety and any other relief as is just and proper.

Dated: May 4, 2015
   Wilmington, Delaware

*/s/ Mark D. Collins*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
  merchant@rlf.com
  terranova@rlf.com
  steele@rlf.com

Proposed Counsel for the Debtors and Debtors in Possession

# **EXHIBIT A**

## **Remaining Location Schedule**

**Corinthian Colleges**
**Remaining Campuses, Excluding Corporate Headquarters, Wyotech campuses.**

| Campus Name | Division | Floors | Sq Ft | Monthly Rent | Est. Daily Rent | Est. 14-Day Rent | Dental | Pharmacy | Medical Assistant | Massage Therapy | Nursing | Electronics Technology |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| San Francisco (Howard St) | Heald | 3 | 55,827 | $ 174,238 | $ 5,621 | $ 78,688 | | X | X | | | |
| Honolulu | Heald | 3 | 59,620 | 144,492 | 4,661 | 65,255 | X | X | X | | | X |
| Concord | Heald | 1 | 66,000 | 133,524 | 4,307 | 60,301 | X | X | X | | | |
| Hayward | Heald | N/A | 58,012 | 114,332 | 3,688 | 51,634 | X | X | X | | | |
| Gardena | Everest | 1 | 32,629 | 105,978 | 3,419 | 47,861 | X | X | X | X | | |
| Tempe On Line | ECP | 1 | 65,580 | 100,147 | 3,231 | 45,228 | | | | | | |
| Ontario | Everest | 1 | 34,032 | 98,485 | 3,177 | 44,477 | X | X | X | X | | |
| Ontario Metro | Everest | 2 | 40,817 | 94,017 | 3,033 | 42,459 | | | | | X | |
| San Jose - Milpitas | Heald | N/A | 55,430 | 93,125 | 3,004 | 42,056 | | X | X | | | X |
| Alhambra | Everest | 2 | 42,222 | 90,832 | 2,930 | 41,021 | X | X | X | X | | |
| Phoenix | ECP | 1 | 40,192 | 85,474 | 2,757 | 38,601 | | X | X | | X | |
| Reseda | Everest | 3 | 33,686 | 78,953 | 2,547 | 35,656 | X | X | X | X | | |
| Reseda Annex | Everest | 1 | 5,000 | 7,000 | 226 | 3,161 | | | | | | |
| Salinas | Heald | N/A | 37,914 | 75,548 | 2,437 | 34,118 | | X | X | | | |
| Anaheim | Everest | 3 | 35,345 | 73,797 | 2,381 | 33,328 | X | X | | X | X | |
| City of Industry | Everest | 2 | 39,373 | 72,655 | 2,344 | 32,812 | X | X | X | X | | |
| Santa Ana Civic Center | Everest | 4 | 38,916 | 64,858 | 2,092 | 29,291 | | X | X | X | | |
| Los Angeles West | Everest | 2 | 31,340 | 66,288 | 2,138 | 29,937 | X | X | X | X | | |
| Rancho Cordova | Heald | 2 | 45,816 | 52,007 | 1,678 | 23,487 | | X | X | | | |
| Rancho Cordova Annex | Heald | N/A | 6,322 | 12,391 | 400 | 5,596 | | | | | | |
| Portland - 78th Ct. | Heald | 2 | 39,600 | 62,186 | 2,006 | 28,084 | X | X | X | | | |
| Rochester | Everest | 1 | 34,650 | 62,129 | 2,004 | 28,058 | | | X | | | |
| Stockton | Heald | 2 | 34,283 | 57,597 | 1,858 | 26,012 | X | X | X | | | |
| Stockton Annex | Heald | N/A | 13,474 | 35,774 | 1,154 | 16,156 | | | | | | |
| Roseville | Heald | 2 | 50,030 | 56,790 | 1,832 | 25,647 | X | X | X | | | |
| San Bernardino | Everest | 1 | 40,451 | 55,426 | 1,788 | 25,031 | X | | X | X | | |
| Sacramento - Del Paso | Heald | 1 | 26,327 | 50,163 | 1,618 | 22,654 | | | | | | |
| Fresno | Heald | 2 | 37,600 | 42,681 | 1,377 | 19,275 | | X | X | | | |
| Mesa | ECP | 1 | 21,495 | 40,074 | 1,293 | 18,098 | | | X | | X | |
| Modesto | Heald | 2 | 30,000 | 27,000 | 871 | 12,194 | X | | X | | | |
| Heald Headquarters | Heald | 1 | 8,818 | 22,853 | 737 | 10,321 | | | | | | |
| Torrance | Everest | 1 | 7,749 | 20,441 | 659 | 9,231 | | X | X | | | |
| **Grand Total** | | | 1,168,550 | $ 2,271,253 | $ 73,266 | $ 1,025,727 | | | | | | |
| Average (excluding annexes) | | | | $ 76,417 | $ 2,465 | $ 34,511 | | | | | | |

Preliminary Draft
Subject to Material Change

**EXHIBIT B**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

### ORDER AUTHORIZING DEBTORS TO CONDUCT *DE MINIMIS*
### ASSET SALES OF $25,000 OR LESS WITHOUT FURTHER ORDER OF THE COURT

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**"):

(i) approving procedures by which the Debtors may consummate certain asset sales of limited

size without the need for further Court approval and (ii) granting certain related relief, all as

more fully set forth in the Motion; and due and sufficient notice of the Motion having been

provided under the particular circumstances, and it appearing that no other or further notice need

be provided; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the

relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and that this Court

may enter a final order consistent with Article III of the United States Constitution; and venue

being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]   Capitalized terms used but not defined in this Order have the meanings used in the Motion.

held to consider the relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is GRANTED to the extent set forth herein.

2. The Miscellaneous Sale Procedures, as set forth in the Motion, are approved, as follows:

(a) The Miscellaneous Sale Procedures shall apply only to asset sale transactions involving, in each case, the transfer of $25,000 or less in total consideration to a single buyer or group of related buyers per location, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold. The Debtors shall be permitted to sell assets that are encumbered by liens, encumbrances or other interests only to the extent permitted by section 363(f) of the Bankruptcy Code. Further, the Debtors shall be permitted to sell assets co-owned by a Debtor and a third party pursuant to the Miscellaneous Sale Procedures only to the extent that the sale does not violate section 363(h) of the Bankruptcy Code.

(b) The Debtors will seek offers for the Miscellaneous Assets from liquidators, competitions and other potential purchasers. If the Debtors receive offers for the Miscellaneous Assets from a single buyer or related group of buyers at a single location that exceed $25,000, then such sale will not be subject to these Miscellaneous

Sale Procedures.  The Debtors shall file a separate motion or motions with the Court seeking approval of any transaction that exceeds the $25,000 threshold (for a single buyer or group of related buyers at a single location).

(c)     After a Debtor enters into a contract or contracts (or bill of sale or other legal document) contemplating a Proposed Sale, the Debtors shall serve a Sale Notice by email (or overnight mail where email addresses are not available) on (i) the U.S. Trustee, (ii) the Committee (if appointed) and (iii) all known parties holding or asserting liens on or other interests in the assets that are the subject of the Proposed Sale and their respective counsel, including, without limitation, counsel to Bank of America, N.A., as administrative agent for the prepetition lenders (collectively, the "**Interested Parties**").

3.     The Sale Notice shall include the following information with respect to the Proposed Sale:

- a description of the assets that are the subject of the Proposed Sale and their locations;

- the identity of the nondebtor party or parties to the Proposed Sale and any relationship of the party or parties with the Debtors; provided, however, that the Miscellaneous Sale Procedures may not be used to consummate a sale of assets to any "insider" of the Debtors (as defined in section 101(31) of the Bankruptcy Code);

- the identities of any parties known to the Debtors to hold liens on or other interests in the assets and a statement indicating that all such liens or interests are capable of monetary satisfaction;

- the major economic terms and conditions of the Proposed Sale (which information may be provided by attaching the applicable contract or contracts or other relevant documents to the Sale Notice); and

- instructions consistent with the terms described below regarding the procedures to assert Objections.

(a)     Interested Parties shall have until the expiration of the Notice Period (24 hours from transmission of the Sale Notice) to object to the Proposed Sale pursuant to the objection procedures described below.  If no Objections are properly asserted prior to expiration of the Notice Period, the applicable Debtor or Debtors shall be authorized, without further notice and without further Court approval, to consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract, contracts or other documents.  In addition, the applicable Debtor or Debtors may consummate a Proposed Sale prior to expiration of the applicable Notice Period if each Interested Party consents in writing to the Proposed Sale (or indicates its non-objection to the Proposed Sale).  Upon either (i) the expiration of the Notice Period without the receipt of any Objections or (ii) the written consent (or indication of non-objection) of all Interested Parties, the Proposed Sale shall be deemed final and fully authorized by the Court.

(b)     If any significant economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period, the applicable Debtor or Debtors shall send a revised Sale Notice to all Interested Parties describing the Proposed Sale, as amended.  If a revised Sale Notice is required, the Notice Period shall be extended for an additional twenty-four (24) hours.

(c)     Any Objections to a Proposed Sale must be in writing and served on the Interested Parties so as to be received by all such parties prior to expiration of the Notice Period.  Each Objection must state with specificity the grounds for objection.  If an Objection to a Proposed Sale is properly served, the Proposed Sale may not proceed absent (i) written withdrawal of the Objection or (ii) entry of an order of the Court

- 4 -

specifically approving the Proposed Sale. If an Objection is not resolved on a consensual basis, the applicable Debtor or Debtors may schedule the Proposed Sale and the Objection for hearing at the next available omnibus hearing date in these chapter 11 cases.

        (d)      Buyers shall take title to the assets free and clear of liens, claims, encumbrances and other interests, pursuant to section 363(f) of the Bankruptcy Code. All such liens, claims, encumbrances and other interests shall attach to the proceeds of the sale to the extent the underlying security agreement provides for the continuation of such liens, claims, encumbrances and other interests, with the same validity and priority as with respect to the assets.

        4.      This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated:  May _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 11896746v.3