**<u>Exhibit A</u>**

**Motion**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

------------------------------------------------------------

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders (i) authorizing the Debtors to continue to use (a) their current centralized cash management system (the "**Cash Management System**"), and (b) their existing bank accounts, checks and business forms, including, authorizing the Debtors to open and close bank accounts, as set forth below; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee (the "**U.S. Trustee**"); (iii) extending the time to comply with section 345(b) of title 11 of the United States Code (the "**Bankruptcy Code**"); (iv) authorizing all banks participating in the Cash Management System to honor certain transfers and charge bank fees

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

and certain other amounts; (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions; (vi) and providing any additional relief as is necessary to effectuate the foregoing. In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed concurrently with this Motion.   In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.    This    Court    has    jurisdiction    to    consider    this    Motion    under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409 and Local Rules 2015-2 and 4001-3. This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

2.    On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.   The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.    Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology.  As of March 31, 2014, Corinthian operated over 100 campuses and

---

[2]    Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

provided educational opportunities to more than 74,000 students and had more than 10,000 employees.  It also offered degrees online.

4.      Among its acquisitions, in January 2010, the Company purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

<u>**RELIEF REQUESTED**</u>

5.      By this Motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibit A</u> (the "**Interim Order**") and <u>Exhibit B</u> (the "**Final Order**"), respectively, under Bankruptcy Code sections 105(a), 345, and 363(c) and Federal Rules of Bankruptcy Procedure 6003 and 6004 (i) authorizing the Debtors to continue use of (a) the Cash Management System, and (b) the Debtors' existing bank accounts listed on <u>Exhibit C</u> to this Motion (the "**Debtor Bank Accounts**"), checks and business forms, including authorizing the Debtors to open and close bank accounts, as set forth below; (ii) waiving certain bank account and related requirements of the U.S. Trustee; (iii) extending the time to comply with section 345(b) of the Bankruptcy Code; (iv) authorizing all banks participating in the Cash Management System to honor certain transfers and charge bank fees and certain other amounts; (v) authorizing Intercompany Transactions consistent with historical practice and granting administrative expense priority to Intercompany Transactions; and (vi) providing any additional relief as is necessary to effectuate the foregoing.

6.      Specifically, the Debtors seek authority to, subject to the terms of any order authorizing the use of cash collateral, (i) maintain and continue to use the Debtor Bank

Accounts, in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

7.      To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that their banks be authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, and in reliance on the Debtors' representations of such authority, provided the applicable Debtor Bank Accounts contain sufficient funds.

8.      Continuity of the Cash Management System is critical, but so is a measure of flexibility.  To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that they deem necessary or appropriate, including opening or closing any account, and that the applicable Banks (as defined below) be authorized to honor such changes.  The Debtors believe that this flexibility is particularly important as the Cash Management System, as described herein, was designed to facilitate the depository and payment needs of an operating company with campuses in multiple locations, receiving receipts/deposits

from many and varied sources. During the pendency of these chapter 11 cases, these operations will be greatly simplified and receipts/deposits will be limited to very few sources. Most specifically, the Debtors do not anticipate receiving any further Title IV funds and receipts/deposits from states and other prior funding sources are likely to be limited.

9.      Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued checks before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. As the Banks are not in position to independently verify or audit whether they may honor a particular Court-approved prepetition Disbursement, the Debtors further request that the Court's orders specify that no Bank will be liable to any party, or otherwise be in violation of such orders, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

10.     Finally, the Debtors request authority to continue, in the ordinary course, certain transactions between and among the different Debtors (the "**Intercompany Transactions**"). The Intercompany Transactions, as described below, are necessary to maintaining control over cash management among the Debtors and provide substantial benefits to the Debtors and their estates.

11.     The Debtors will suffer immediate and irreparable harm if the relief requested in this Motion is not granted, as attested in the First Day Declaration.

## BASIS FOR RELIEF REQUESTED

### I. FACTS SPECIFIC TO RELIEF REQUESTED

#### A.    Overview of the Cash Management System

12.    The Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these cases and, in turn, maximizing the value of the Debtors' estates.  Like typical chapter 11 debtors, the Debtors use the Cash Management System to collect cash from operations and to make cash disbursements—primarily payroll and payments to vendors—to manage their businesses.  Recognizing the importance of the Cash Management System, the Debtors take care to record all collections, transfers, and disbursements made through the Cash Management System as and when made.

13.    The Debtor Bank Accounts and other important features of the Cash Management System are discussed below.  For demonstrative purposes, a diagram illustrating the Cash Management System is attached hereto as Exhibit D.

#### B.    The Debtor Bank Accounts

14.    There are eighty Debtor Bank Accounts: twenty-seven at Bank of America ("**BofA**"), thirty-five at Bank of the West ("**Bank of the West**"), two at First Hawaiian Bank ("**FHB**"), two at BMO Harris Bank, N.A. ("**BMO Harris**"), eleven at Union Bank ("**Union**"), one at U.S. Bank, N.A. ("**U.S. Bank**"), one at Capital West ("**Capital West**"), and one at California Bank and Trust ("**CA Bank**").[3]  Each Debtor Bank Account is insured by the Federal Deposit Insurance Corporation ("**FDIC**").

---

[3]    In addition to the Debtor Bank Accounts, pursuant to the Operating Agreement, Corinthian established a separate, segregated escrow account with Citibank NA (the "**Escrow Account**"). This fund was established to create a reserve that would be available for student refunds. While Corinthian is a party to the Escrow Account, the Escrow Account is not a Debtor Bank Account.  While the Escrow Agreement is not a Debtor Bank Account, it is listed on Exhibit C so that all parties in interest have the appropriate information relating to this account.

15.     Prior to the Petition Date, the Debtors received funds from a variety of sources, including Title IV[4] funds from the federal government, other federal agency funds (such as funds received pursuant to the Workforce Investment Act, Native American funding, etc.), state grants, military-related sources of funding for tuition and related costs (such as the Post 9/11 GI Bill and Armed Forces Tuition Assistance Program), payments directly from students (including credit card and ACH receipts, cash and checks), and proceeds from asset sales.  These amounts are initially deposited into various accounts and eventually funneled into one or more concentration accounts before distribution to satisfy the Debtors' obligations, including payroll and debt service payments.

16.     **The Deposit Accounts**:    The majority of the Debtor Bank Accounts, approximately 50 of the 81 accounts, are deposit accounts.  The deposit accounts and the funding sources for each are discussed below:

- *The State Grant Accounts*: The Debtors maintain 13 accounts for receipt of state grant funds from California, Arizona and New York (the "**State Grant Accounts**").  Three of these accounts are held by Corinthian, and ten are held by Heald College, LLC ("**Heald**").  All State Grant Accounts are maintained at BofA.  These accounts are custodial, off balance sheet accounts where states deposited funds pending determination of student eligibility. Once students were eligible, the state gave the Debtors the authority to release funds from the account which then transferred into the Non-T4 Account (defined below). The Debtors need to maintain these accounts to complete the accounting of the existing balances in these accounts and distribute those funds as appropriate. It is anticipated that most, if not all, of the funds in these accounts will revert back to the states.

- *The T4 Accounts*: The Debtors maintain 34 accounts for receipt of Title IV funds from the federal government (the "**T4 Accounts**").  Three of these accounts are held by Sequoia Education, Inc., twenty-five are held by Corinthian Schools, Inc., two are held by Rhodes Business Group, Inc., two are held by Heald, and two are held by Everest College Phoenix, Inc.  All T4 Accounts are maintained by Bank of the West.  Funds deposited into the T4 Accounts are subsequently transferred into the T4 Concentration Account (defined below).  The Debtors are no longer eligible to receive Title IV Funds.  Notwithstanding that the Debtors are no longer receiving

---

[4]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to the in the First Day Declaration.

Title IV Funds, the Debtors submit that the T4 Accounts need to be kept open in the short term to address potential refund issues (and may require the completion of a regulatory audit before they can be closed).

- *The FHB Accounts*: The two bank accounts maintained by FHB are each deposit accounts (the "**FHB Accounts**").  One of these accounts is the depository account for the Hawaiian location.  The other is the deposit account for federal funds that are available to Hawaiian students.  Such federal funds are not Title IV Funds, and are only available to students in the State of Hawaii.  Funds from the FHB Accounts are transferred into the Non-T4 Account.

- *The U.S. Bank Account*:  The account maintained by U.S. Bank (the "**U.S. Bank Account**") receives incoming credit card and ACH receipts from students for tuition and fees.  Amounts in the U.S. Bank Account are transferred into the Non-T4 Account.  The Debtors anticipate that they will be able to close this account by May 31, 2015.

- *The Non-T4 Account*:  Corinthian maintains an account with BofA (the "**Non-T4 Account**," and together with the State Grant Accounts, the T4 Accounts, the FHB Accounts and the U.S. Bank Account, each a "**Deposit Account**," and collectively, the "**Deposit Accounts**") that is a hybrid between a deposit account and a concentration account as it serves as a collection account for all of the funds received by the Debtors from non-Title IV sources while also directly receiving deposits.  The funds in the State Grant Accounts, the U.S. Bank Account and the FHB Accounts are all transferred into the Non-T4 Account.  In addition, moneys are deposited directly into the Non-T4 Account from sources other than Debtor Bank Accounts, including funds from Veterans Affairs, proceeds from asset sales, corporate deposits, and miscellaneous wire and ACH transfers.  Finally, Non-Title IV Funds deposited into the BofA Concentration Account (defined below) are manually transferred on a weekly basis to the Non-T4 Account, as set forth in further detail below.  The Debtors segregate the Title IV funds from non-Title IV funds pursuant to Amendment No. 4 to the Credit Agreement with BofA, which requires separate accounts for these two types of funding.  Amounts in the Non-T4 Account are used for non-Title IV purposes, including debt repayments, legal settlements.  In addition, funds in the Non-T4 Account are sometimes manually transferred into the BofA Concentration Account, the Union Concentration Account or the BMO Harris Concentration Account (as each term is defined below), when required.

17.    **The Concentration Accounts**:  In addition to the Non-T4 Account, the Debtors

have several additional concentration accounts:.

- *The BofA Concentration Account*:  The Debtors' main concentration account (the "**BofA Concentration Account**"), held by Corinthian, is maintained at BofA.  From time to time, available funds from the BMO Harris Concentration Account, the Union Concentration Account, the T4 Concentration Account and the Heald Concentration Account are consolidated into the BofA Concentration Account for cash management

- 8 -

purposes.  The Debtors also periodically transfer funds from the Non-T4 Account into the BofA Concentration Account to support operating expenditures. In addition, non-Title IV funds are received directly into the BofA Concentration Account from the majority of campuses which deposit cash receipts into their local BofA bank branches.  This source of the funds deposited into the BofA Concentration Account is accounted for so that any non-Title IV funds can be manually transferred out of the BofA Concentration Account on a weekly basis into the Non-T4 Account.  The BofA Concentration Account directly funds the seven BofA Payroll Accounts (defined below) and the three Student Refund Accounts (defined below).  Funds from the BofA Concentration Account are also transferred to the Union Concentration Account, which, in turn, funds other accounts that pay obligations of the Debtors. The Debtors also make their required US dollar-denominated debt service payments to BofA from the BofA Concentration Account.

- *The T4 Concentration Account*: Corinthian maintains an account at Bank of the West, into which all Title IV funds from the T4 Accounts are transferred (the "**T4 Concentration Account**").  Bank of the West transfers the funds received in the T4 Concentration Account to the BMO Harris Concentration Account and the BofA Concentration Account.

- *The BMO Harris Concentration Account*: Corinthian also maintains a concentration account at BMO Harris (the "**BMO Harris Concentration Account**").  Funds from the T4 Concentration Account and the BofA Concentration Account are transferred, as needed, to the BMO Harris Concentration Account.  These funds are then manually transferred to the BMO Harris Accounts Payable Account (defined below). Funds from the BMO Harris Concentration Account are also transferred to the BofA Concentration Account and the Union Concentration Account, as required.

- *The Union Concentration Account*:  Corinthian also maintains a concentration account at Union (the "**Union Concentration Account**").  Funds are manually transferred to the Union Concentration Account from the T4 Concentration Account, the BofA Concentration Account and the BMO Harris Concentration Account.  Funds in the Union Concentration Account are used to fund the seven Union Payroll Accounts (defined below).  They are also used to satisfy certain other obligations of the Debtors, including vendor payments, taxes and benefits.  All of the Debtors' wire payments are made from the Union Concentration Account.  As necessary, funds in Union Concentration Account are transferred to the BofA Concentration Account.

- *The Heald Concentration Account*: Heald maintains a concentration account with BofA (the "**Heald Concentration Account**," and together with the BofA Concentration Account, the T4 Concentration Account, the BMO Harris Concentration Account and the Union Concentration Account, each a "**Concentration Account**," and collectively, the "**Concentration Accounts**").  Non-Title IV funds related to Heald locations are received directly into the Heald Concentration Account from all Heald campuses, other than Hawaii (which deposit cash receipts into the FHB Accounts).  The balance in the Heald Concentration Account is periodically transferred into the Non-T4 Account.

18.    **The Payroll Accounts**:  The Debtors maintain seven payroll accounts at BofA (the "**BofA Payroll Accounts**") and seven payroll accounts at Union (the "**Union Payroll Accounts**," and together with the BofA Payroll Accounts, the "**Payroll Accounts**").  Each of the fourteen Payroll Accounts relates to a separate legal entity and funds the payroll for the campuses that are part of that legal entity.  While the Debtors' campuses have been closed and ceased instruction at all locations, each location continues to employ a limited number of individuals who are working to wind down operations and preserve the Debtors' assets.  Accordingly, the Debtors must maintain the individual payroll accounts until this work is completed and the individual Debtors no longer have employees.

19.    **The Student Refund Accounts**:  The Debtors maintain three accounts with BofA that are used to pay refunds to their students (the "**Student Refund Accounts**").  Two of these accounts are in Corinthian's name and one is in Heald's name.  When an institution receives Title IV funds and/or non-Title IV funds associated with a student's financial aid package and the total amount of all Title IV funds and non-Title IV funds credited exceeds the amount of tuition and fees, books and supplies, room and board, and other authorized charges, the institution must pay the resulting credit balance directly to the student.  The Debtors need to maintain the Student Refund Accounts until they have finished the accounting of student credit balances and the reconciliation of amounts outstanding against these accounts.

20.    **The BMO Harris Accounts Payable Account**:   Corinthian maintains an accounts payable account with BMO Harris (the "**BMO Harris Accounts Payable Account**").  The BMO Harris Accounts Payable Account is manually funded from the BMO Harris Concentration Account.  All of the Debtors' accounts payable are paid through the BMO Harris Concentration Account.

21.    **The Investment Accounts**:  Corinthian maintains investment accounts with both BofA and Union, which were historically used to invest excess cash according to its investment policy which limits investments primarily to treasuries and government-backed securities.  The balance in both of these accounts is currently zero and the Debtors anticipate closing these accounts by May 18, 2015.

22.    **Miscellaneous Accounts**:  Finally, Corinthian maintains a few miscellaneous accounts for different purposes, including a Canadian account (for purposes of distributing Canadian currency, when necessary) with Union Bank and a flexible spending account reimbursement account with CA Bank.  In addition, MJB Acquisition Corporation holds an account with Capital West that is an escrow account for medical benefits for students at one of the Debtors' campuses.  While these funds are Debtor assets, they are managed by Capital West.  Finally, there is one account, an obsolete transcript checking account, that is closed or intended to be closed shortly after the Petition Date.

## C.    Bank Fees

23.    The Debtors pay, honor, or allow the deduction from the Debtor Bank Accounts service charges and other fees, costs, and expenses arising in the ordinary course (collectively, the "**Bank Fees**").  The Debtors estimate that they pay average monthly Bank Fees of approximately $85,000 and that they owe prepetition Bank Fees of approximately $80,000.  The Debtors' inability to pay prepetition or postpetition Bank Fees in the ordinary course could disrupt the Cash Management System and harm the Debtors' estates.

## D.

## E.    Intercompany Transactions

24.    Historically, the Debtors have engaged in Intercompany Transactions largely to centralize cash management and maintain control over the funds moving within the Debtors'

corporate group.    As described above, most of the Intercompany Transfers are from Concentration Accounts held by Corinthian to payroll accounts held by other Debtors or from the Deposit Accounts held by Debtors other than Corinthian to Concentration Accounts held by Corinthian.    Just as the Debtors can ascertain, trace, and account for all external fund transfers in their accounting system, they also carefully and accurately track Intercompany Transactions. Indeed, during these cases, the Debtors intend to segregate and separately track postpetition Intercompany Transactions and include a detailed accounting of such Intercompany Transaction in the Debtors' monthly operating reports.

25.    If the Intercompany Transactions were discontinued, the Cash Management System and the operations of the Debtors alike would be harmed, all to the detriment of the Debtors and their estates.

## II.  LEGAL BASIS FOR RELIEF REQUESTED

### A.    The Continued Use of the Cash Management System, Debtor Bank Accounts and Business Forms Is Warranted and Is in the Best Interests of the Debtors' Respective Estates and Creditors

26.    **Cash Management System**.  The Debtors' ability to continue to use their Cash Management System is essential to their operations and the administration of these cases. Absent the ability to maintain their Cash Management System, the Debtors would be required to alter significantly their business operations to comply with the UST Requirements.  The Cash Management System provides benefits to the Debtors, such as enabling them to (a) control and monitor corporate funds, (b) ensure cash availability and (c) reduce administrative expenses by facilitating the movement of funds.  These benefits are especially important here given the volume of cash transactions managed through the Cash Management System.

27.    In light of the structure of the Debtors' operations, any disruption in the Debtors' cash management procedures will hamper the Debtors' efforts to preserve and enhance the value

of their estates.  Altering the Cash Management System may disrupt payments to key vendors and employees.  Therefore, it is essential that the Debtors be permitted to continue to use their Cash Management System in accordance with their existing cash management procedures.

28.     The Debtors further seek authority to implement ordinary course changes to their Cash Management System, as they may determine are beneficial to their estates, including any changes necessitated by any orders authorizing the Debtors' use of cash collateral.

29.     As part of these ordinary course changes, the Debtors request authority to open and close bank accounts.  The Debtors request that, subject to the terms provided in paragraph 42 below, the Banks be authorized to honor the Debtors' requests to open or close any bank accounts, provided, however, that any new domestic account is established at a bank insured with the FDIC or the Federal Savings and Loan Insurance Corporation (the "**FSLIC**") and that is organized under the laws of the United States or any State therein or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the list of authorized bank depositories for the District of Delaware.

30.     The existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

31.     **Debtor Bank Accounts**.  To avoid substantial disruption to the normal operation of the Cash Management System, the Debtors hereby request that they be permitted to continue to use their Debtor Bank Accounts with the same account numbers.  Absent this relief, the UST Requirements would require the Debtors to close all their prepetition bank accounts and open

new accounts. Accordingly, the Debtors request a waiver of certain UST Requirements (as defined below). Allowing the Debtors to continue to use their prepetition bank accounts will assist the Debtors in accomplishing a smooth transition into chapter 11.

32.     To protect against the possible inadvertent payment of prepetition claims, all of the Debtors will immediately advise their Banks (as defined below) not to honor checks issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and requested by the Debtors. Importantly, the Debtors possess the capacity to draw the necessary distinctions between prepetition and postpetition obligations and payments without closing the Debtor Bank Accounts and opening new ones.

33.     Authority to continue the use of bank accounts has been granted in other chapter 11 cases.[5]

34.     **Business Forms**. In the ordinary course of business, the Debtors use pre-printed check stock with the relevant Debtor's name printed thereon. In addition, the Debtors maintain pre-printed correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms (collectively, along with the Debtors' checks, the "**Business Forms**"). To minimize expense, the Debtors seek authority to continue using their Business Forms, substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession. Accordingly, as set forth below, the Debtors seek a waiver of the U.S. Trustee Requirements to the extent necessary to authorize continued use of the Business Forms; provided

---

[5]     *See, e.g., In re AES Energy, L.P.*, Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 26, 2012) (D.I. 121) ("**AES Order**"); *In re William Lyon Homes*, Case No. 11-14019 (CSS) (Bankr. D. Del. Dec. 20, 2011) (D.I. 51) ("**William Lyon Order**"); *In re Lee Enters., Inc.*, Case No. 11-13918 (KG) (Bankr. D. Del. Dec. 13, 2011) (D.I. 60) ("**Lee Enterprises Order**"); *In re Graceway Pharmaceuticals, LLC*, Case No. 11-13036 (PJW) (Bankr. D. Del. Sept. 30, 2011) (D.I. 45) ("**Graceway Order**"); *In re Solyndra LLC*, Case No. 11-12799 (MFW) (Bankr. D. Del. Sept. 7, 2011) (D.I. 42) ("**Solyndra Order**"); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011) (D.I. 51) ("**Harry & David Order**).

that once the Debtors' existing checkstock has been depleted, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of entry of the Interim Order.

35.     Courts have allowed debtors to use prepetition checks and business forms without the "Debtor in Possession" label in other cases.[6]

36.     Bankruptcy Code section 363(c)(1) permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor flexibility to operate its businesses without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." (internal quotation omitted)). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" a debtor's cash management system require. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1)). Additionally, Bankruptcy Code section 105(a) empowers

---

[6]     *See, e.g.*, AES Order (authorizing debtors to continue using their existing business forms and checks without change); William Lyon Order (same); Lee Enterprises Order (same); Graceway Order (same); Solyndra Order (same); Harry & David Order (same).

the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

37.    The relief this Motion requests is consistent with these Bankruptcy Code provisions.  The Debtors seek authority to continue to use their Cash Management System and the Debtor Bank Accounts consistent with prepetition practices.  The Cash Management System is an ordinary-course and essential business practice that provides the Debtors significant benefits.  Through the Cash Management System, the Debtors maintain the ability to control corporate funds, ensuring maximum availability of funds when and where necessary.  Continued use of the Cash Management System and the Debtor Bank Accounts during these chapter 11 cases is essential to the Debtors' businesses and maximizing value of their estates.  Requiring the Debtors to adopt new cash management systems and open new bank accounts would be expensive, onerous, and disruptive, particularly given that the Debtors anticipate closing many of the Debtor Bank Accounts during the pendency of these cases.  It would be wasteful to the Debtors' estate to open new accounts only to close them again a few weeks or months later.  As one court in this District recognized, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

38.    The Debtors represent that if the Court grants this Motion, they will not pay, and each of the banks will be directed not to pay, any prepetition claims, except as the Court authorizes.  Maintaining the Cash Management System and Debtor Bank Accounts, and the continued use of the prepetition Business Forms and payment of the Bank Fees, without disruption is in the best interests of the Debtors, their estates, and all parties in interest.  Based on

- 16 -

the foregoing, the Debtors respectfully request that the Court authorize the Debtors to continue the collection, concentration, and disbursement of cash under their Cash Management System on the terms set forth herein pursuant to sections 363(c) and 105(a) of the Bankruptcy Code.

**B.    The Debtors Should Be Granted a Waiver of Certain Requirements Under Bankruptcy Code Sections 363 and 105(a)**

39.    The Debtors further request that this Court grant a waiver of certain bank account and related U.S. Trustee requirements.  The U.S. Trustee has established operating guidelines for debtors in possession to supervise the administration of chapter 11 cases.  These guidelines require a chapter 11 debtor to, among other things (the requirements set forth in (a) through (e) below collectively, the "**UST Requirements**"):

(a)    close all existing bank accounts;

(b)    open new bank accounts in a depositary approved by the U.S. Trustee that are designated as DIP Accounts, with separate DIP Accounts established for an operating account, a tax account, and a payroll account;

(c)    obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor In Possession" and contain other information about the debtor's chapter 11 case;

(d)    deposit all business revenues into the general operating DIP Account, with amounts needed to fund the other accounts being transferred to those accounts as necessary; and

(e)    deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

The UST Requirements are designed to provide a clear line of demarcation between a debtor's prepetition and postpetition transactions and operations, and to prevent inadvertent postpetition payment of prepetition claims.

40.    Under Bankruptcy Code sections 363 and 105(a), the Debtors seek a waiver of the UST Requirements that they close the Debtor Bank Accounts and open new DIP Accounts.  As discussed above, continued use of the Debtor Bank Accounts is essential to maximizing value of

the Debtors' estates and is in the best interests of all parties.  Among other things, the Debtors anticipate closing many of the Debtor Bank Accounts as these cases progress and accounts are no longer required, and pursuant to this Motion the Debtors request the authority to open any new bank accounts or close any existing Debtor Bank Accounts as they may deem necessary and appropriate in the ordinary course, provided that the Debtors give notice within 15 days after such opening of a new bank account or closing of an existing Debtor Bank Account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases, and provided further that the Debtors open any such new bank account at Banks that have executed a Uniform Depositary Agreement with the U.S. Trustee, or at such Banks willing to immediately execute such an agreement.

41.    Subject to the terms and conditions of the Interim Order or the Final Order (as applicable), any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under the Interim Order or the Final Order (as applicable), be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed herein.

42.    The Debtors also seek a waiver of the UST Requirement to establish specific DIP Accounts for payroll and for tax payments and to deposit into the tax accounts sufficient funds to pay any payroll tax liability (when incurred).  The Debtors believe that their payroll and tax obligations are most efficiently met through the Debtor Bank Accounts in accordance with existing practices, and that requiring new payroll and tax DIP Accounts would be both unnecessary and highly disruptive to their businesses.  The Debtors are—and expect to remain— current on all payroll taxes.  Requiring the Debtors to change their existing practices and deposit

sufficient funds to pay any tax liability associated with the Debtors' payroll would, therefore, be unnecessary and inefficient. Further, the Debtors will ensure that the U.S. Trustee can appropriately monitor that the Debtors' payroll taxes are satisfied.

43.    To minimize expense, the Debtors also seek authority to continue using the Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession, notwithstanding the UST Requirements.

44.    As required, the Debtors are providing notice of the commencement of these cases to creditors and parties in interest. Parties doing business with the Debtors, therefore, should be aware of the Debtors' status as debtors in possession. Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates. Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing Business Forms without being required to label them "Debtor In Possession;" provided that once the Debtors' existing checkstock has been depleted, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of entry of the Interim Order.

45.    Because parties that presently conduct business with the Debtors likely will be aware of the Debtors' status as debtors in possession and will receive notice of these cases, the alteration of the Debtors' checks and Business Forms at the outset of these cases would be

unnecessary and unduly burdensome.  Further, courts have allowed debtors to use their prepetition checks and business forms without the "Debtor in Possession" label in other cases.

46.     As indicated above, the Cash Management System is an ordinary course and essential business practice.  Compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements outlined above would risk disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for parties in interest.

**C.     The Debtors Should Be Authorized to Continue Their Deposit Practices Under Bankruptcy Code Section 345**

47.     Bankruptcy Code section 345(a) governs a debtor's deposit of cash during a chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit."  11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  *Id.* § 345(b).  Alternatively, the estate may require the entity to deposit governmental securities under 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.

48.     The Debtors understand that the majority of the Banks maintaining Debtor Bank Accounts have signed a Uniform Depositary Agreement with the U.S. Trustee, but to the extent that any banks have not signed such an agreement and to the extent the Debtors as of the Petition Date do not otherwise comply with deposit and investment guidelines under Bankruptcy Code

- 20 -

section 345(b), the Debtors request a 30-day extension (or such further extension as the U.S. Trustee may agree to) to do so.

49.    The Debtors believe that the benefits of the requested extension far outweigh any harm to the estates.  *See generally In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists for "relief from the strictures of § 345(b)" is whether benefits to the debtor outweigh the harm, if any, to the estate).  During the extension period, the Debtors will contact each of their Banks that is a party to a Uniform Depository agreement with the U.S. Trustee, provide such Banks with each of the Debtors' tax identification numbers, and identify each of their Debtor Bank Accounts at the Banks as being held by a debtor in possession.  For Banks that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors will use good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.

50.    Similar extensions have been granted in other chapter 11 cases in this District and elsewhere.[7]  Based on the foregoing, the Debtors submit that the relief requested is in the best interests of their estates and parties in interest, and, therefore, should be granted.

**D.    The Court Should Authorize Banks Participating in the Cash Management System to Honor Certain Transfers and Charge Bank Fees and Certain Other Amounts**

51.    Contemporaneously with the filing of this Motion, the Debtors have filed certain motions for authorization to pay certain prepetition debt.  With respect to some of this debt, prior to the Petition Date, the Debtors may have issued checks that may not yet have cleared the banking system.  With respect to other debt, the Debtors intend to issue checks postpetition on

---

[7]    *See, e.g., In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149) (granting 30-day extension); *In re Energy Futures Holding Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Apr. 29, 2014) (D.I. 304) (granting 60-day extension); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014) (D.I. 77) (granting 60-day extension); *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014) (D.I. 38) (granting 45-day extension); *In re Event Rentals Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 20, 2014) (D.I. 48) (granting 60-day extension).

account of such prepetition debt once the Court enters an order permitting the Debtors to take such action.  The Debtors intend to inform their Banks which prepetition checks the Banks should honor pursuant to orders of the Court authorizing such payment, and similarly intend to instruct their Banks to dishonor any Disbursements related to the payment of prepetition obligations unless such payments have been authorized by the Court.

52.     As a result of the foregoing, the Debtors request their banks and financial institutions (collectively, the "**Banks**") be authorized, effective *nunc pro tunc* to the Petition Date, to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all Disbursements on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, provided the applicable Debtor Bank Accounts contain sufficient funds and such payments are consistent with the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).  The Debtors shall timely furnish to the Banks stop payment orders for any checks or other payment orders issued prior to the Petition Date which the Debtors do not want to be honored.

53.     Pursuant to the relief requested in this Motion, the Banks shall be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored or dishonored pursuant to this or any other order of this Court.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court.  No Bank will be liable to any party, or otherwise be in violation of the orders of this Court, on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any

prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.  Such relief is reasonable and appropriate because the Banks are not in a position to verify or audit independently whether a particular item may be paid in accordance with a Court order or otherwise.

54.    Finally, the Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and postpetition Bank Fees.  The Debtors also request the Banks be authorized to charge back returned items to the Debtor Bank Accounts in the normal course of business.

55.    Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

56.    The Debtors require this relief to minimize the disruption of the Cash Management System and their Debtor Bank Accounts.  Authority for debtors to pay bank fees and banks to charge back returned items has been routinely granted in other chapter 11 cases.

**E.    The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business, and Such Transactions Should Be Granted Administrative Expense Priority**

57.    As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course.  As a result, at any given time there may be intercompany claims between the Debtors.  Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises like the Debtors, the Intercompany Transactions are ordinary course transactions under Bankruptcy Code section 363(c)(1) and do

- 23 -

not require Court approval.  Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions postpetition.

58.     Moreover, ordinary-course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets.  Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed.  The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources.  Moreover, the Intercompany Transactions provide the Debtors access to liquidity that may be necessary to fund ongoing operations.  Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

59.     Finally, the Debtors respectfully request, under Bankruptcy Code section 503(b)(1), that all payments between any Debtor and any other Debtors on account of a postpetition Intercompany Transaction be accorded administrative expense priority.  This relief will ensure that each Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions.[8]

60.     Similar relief has been granted in other multi-debtor chapter 11 cases in this and other districts.[9]

---

[8]     The Bankruptcy Code also provides a debtor in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without a notice and a hearing.  11 U.S.C. § 364(a); *In re Amdura Corp.*, 75 F.3d at 1453; *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 247 B.R. 38, 45 (S.D.N.Y. 2000); *Mulligan v. Sobiech*, 131 B.R. 917, 921 (S.D.N.Y. 1991).  The Debtors, therefore, seek authorization, to the extent necessary, to obtain unsecured credit in connection with the Intercompany Transactions and in the ordinary operation of their Cash Management System.

[9]     *See, e.g. In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (D.I. 99); *In re the Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (D.I. 82); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. Mar. 17, 2014) (D.I. 41); *In re ICL Holding Co. (f/k/a LCI Holding Co.)*, No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012) (D.I. 84).

- 24 -

**F.      Immediate Relief and Waiver of Stay Are Necessary to Avoid Immediate and Irreparable Harm**

61.     Pursuant to Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek immediate entry of an order granting the Debtors (a) the authority to continue to pay the Bank Fees and (b) a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of such order.

62.     Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable.[10]

63.     The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h)

64.     The continued use of the Debtor Bank Accounts, Cash Management System and Business Forms, and the payment of the Bank Fees, are necessary to prevent the immediate and irreparable damage to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the requested relief.

---

[10]     See the First Day Declaration filed concurrently with this Motion.

**RESERVATION OF RIGHTS**

65.     Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  If this Court grants the relief requested in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity as to any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

**NOTICE**

66.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the District of Delaware; (viii) any banking or financial institution that holds the Debtor Bank Accounts; and (ix) all parties entitled to notice of this Motion pursuant to Local Rule 9013-1(m).

67.     As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

RLF1 11879662v.5

**NO PRIOR MOTION**

The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

Dated: May 4, 2015  
       Wilmington, Delaware

/s/ Mark D. Collins
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
       merchant@rlf.com
       terranova@rlf.com
       steele@rlf.com

Proposed Counsel for the Debtors and Debtors in Possession

**<u>Exhibit A</u>**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| | § | |
| | § | |
| | § | |
| Debtors. | § | |

-----------------------------------------------------------------

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"):  (i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts located at various banks, as more fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); (iv) extending time to comply with Bankruptcy Code section

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]    Capitalized terms used but not defined in this Order have the meanings used in the Motion.

345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion will be held on _____, 2015, at__:__ _.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2015, and served on the following parties:  (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (ii) counsel to

Bank of America, N.A., in its capacity as administrative agent under that certain Fourth Amended and Restated Credit Agreement, dated as of May 17, 2012; and (iii) counsel to any statutory committee appointed in these chapter 11 cases.  A copy of the Motion and this Order will be served in accordance with the requirements of Local Rule 9013-1(m).  Due to the nature of the relief requested in the Motion, no other or further notice need be given.  In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      Except as otherwise provided herein, (i) the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and Debtor Bank Accounts consistent with their prepetition practices, and (ii) the existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such Bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

4.      The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of the bank accounts.  The Banks are authorized to honor the Debtors' requests to open or close such bank accounts in connection with authorized changes to the Cash Management System.

5.      The Debtors are authorized but not directed to (i) maintain and continue to use the Debtor Bank Accounts, in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse

transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts as set forth herein; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as DIP Accounts.

6.      All Banks are authorized, effective *nunc pro tunc* to the Petition Date, to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay Disbursements; provided, however, that no checks issued against the Debtor Bank Accounts prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by an order of this Court and requested by the Debtors.

7.      All Banks are authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court.  The Banks shall not be liable to any party, or otherwise in violation of orders of this Court, on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition Disbursement or other Disbursement in a good faith belief that the Court has authorized such Disbursement to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

8.      The Banks are authorized to charge and the Debtors are authorized to pay or honor the Bank Fees related to the Debtor Bank Accounts.  The Banks are also authorized to charge back returned items to the Debtor Bank Accounts in the normal course of business.

- 4 -

9.      The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

10.     All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under Bankruptcy Code section 503(b).  In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions on intercompany accounts and must include a detailed accounting of such Intercompany Transactions in the Debtors' monthly operating reports.

11.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived.  The Debtor Bank Accounts are deemed to be DIP Accounts.

12.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

13.     The Debtors are authorized to continue using all Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

14.     For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

15.     Within 15 days of the date of entry of this Order, with respect to Banks at which the Debtors hold the Debtor Bank Accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each Bank; (ii) provide the Bank with each of the Debtors' tax identification numbers; and (iii) identify each of their Debtor Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

16.     Within 30 days of the date of entry of this Order, with respect to Banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.  The Debtors will promptly direct such Banks to internally code the Debtors Bank Accounts as DIP Accounts.  The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17.     To the extent the Debtors seek to open any new bank accounts or close any existing Debtor Bank Accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall

give notice within 15 days after such opening of a new bank account or closing of an existing Debtor Bank Account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; **provided**, **further**, however that the Debtors are authorized to open any such new bank account at Banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such Banks that are willing to immediately execute such an agreement.

18.    Subject to the terms and conditions in this Order, any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under this Order, be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed under this Order.

19.    Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

20.    Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

21.    Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection,

or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

22.    The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

23.    Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

25.    This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: May _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 11879662v.5

**Exhibit B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| | § | |
| | § | |
| | § | |
| Debtors. | § | |

------------------------------------------------------------

## FINAL ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**"):

(i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts located at various banks, as more fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System; (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]    Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted as set forth herein on a final basis.

2.     Except as otherwise provided herein, (i) the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and Debtor Bank Accounts consistent with their prepetition practices, and (ii) the existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such Bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

RLF1 11879662v.5

3.      The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of the bank accounts.  The Banks are authorized to honor the Debtors' requests to open or close such bank accounts in connection with authorized changes to the Cash Management System.

4.      The Debtors are authorized but not directed to (i) maintain and continue to use the Debtor Bank Accounts, in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts as set forth herein; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as DIP Accounts.

5.      All Banks are authorized, effective <u>nunc pro tunc</u> to the Petition Date, to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay Disbursements; <u>provided</u>, <u>however</u>, that no checks issued against the Debtor Bank Accounts prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by an order of this Court and requested by the Debtors.

6.      All Banks are authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements

RLF1 11879662v.5

consistent with the orders of this Court.  The Banks shall not be liable to any party, or otherwise in violation of orders of this Court, on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition Disbursement or other Disbursement in a good faith belief that the Court has authorized such Disbursement to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

7.     The Banks are authorized to charge and the Debtors are authorized to pay or honor the Bank Fees related to the Debtor Bank Accounts.  The Banks are also authorized to charge back returned items to the Debtor Bank Accounts in the normal course of business.

8.     The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

9.     All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under Bankruptcy Code section 503(b).  In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions on intercompany accounts and must include a detailed accounting of such Intercompany Transactions in the Debtors' monthly operating reports.

10.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived.  The Debtor Bank Accounts are deemed to be DIP Accounts.

RLF1 11879662v.5

11.    The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

12.    The Debtors are authorized to continue using all Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

13.    For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

14.    Within 15 days of the date of entry of this Order, with respect to Banks at which the Debtors hold Debtor Bank Accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each Bank; (ii) provide the Bank with each of the Debtors' tax identification numbers; and (iii) identify each of their Debtor Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

RLF1 11879662v.5

15.     Within 30 days of the date of entry of this Order, with respect to Banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.  The Debtors will promptly direct such Banks to internally code the Debtors' Debtor Bank Accounts as DIP Accounts.  The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

16.     To the extent the Debtors seek to open any new bank accounts or close any existing Debtor Bank Accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; provided, however that the Debtors are authorized to open any such new bank account at Banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such Banks that are willing to immediately execute such an agreement.

17.     Subject to the terms and conditions in this Order, any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under this Order, be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed under this Order.

18.     Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

RLF1 11879662v.5

19.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

20.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

21.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

22.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

24.     This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: May ____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Debtor Bank Accounts List**

**EXHIBIT C**

**List of Bank Accounts**

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Bank of America | 9997 | Everest College Phoenix, Inc. | ECP Payroll (PR Account) |
| Bank of America | 9555 | SOCLE Education Inc. | SOCLE Payroll (PR Account) |
| Bank of America | 6737 | Corinthian Colleges, Inc. | Concentration Account |
| Bank of America | 3977 | Corinthian Colleges, Inc. | Electronic Receipts Account (Non T-4 Concentration) |
| Bank of America | 7570 | Heald College LLC. | HLD Payroll (PR Account) |
| Bank of America | 3059 | MJB Acquisition Corp | DBA Wyoming Technical Institute (PR Account) |
| Bank of America | 9250 | Heald College LLC. | Concentration Account |
| Bank of America | 3341 | Pegasus Education, Inc | DBA Learning Tree University (PR Account) |
| Bank of America | 1331 | Titan Schools, Inc. | Tsi Payroll (PR Account) |
| Bank of America | 3443 | Sequoia Education Inc | SEQ Payroll  (PR Account) |
| Bank of America | 1844 | Corinthian Colleges, Inc. | CA State Grant |
| Bank of America | 8904 | Corinthian Colleges, Inc. | AZ State Grant |
| Bank of America | 0092 | Corinthian Colleges, Inc. | NY State Grant |
| Bank of America | 5632 | Heald College LLC. | CA Grant for Concord (State Grant) |
| Bank of America | 5637 | Heald College LLC. | CA Grant for Fresno (State Grant) |
| Bank of America | 5651 | Heald College LLC. | CA Grant for Hayward/Modesto (State Grant) |
| Bank of America | 3664 | Heald College LLC. | CA Grant for Hayward/Modesto (State Grant) |
| Bank of America | 5656 | Heald College LLC. | CA Grant for Rancho Cordova (State Grant) |
| Bank of America | 5670 | Heald College LLC. | CA Grant for Roseville (State Grant) |
| Bank of America | 5675 | Heald College LLC. | CA Grant for Salinas (State Grant) |
| Bank of America | 5694 | Heald College LLC. | CA Grant  for San Fran (State Grant) |
| Bank of America | 5699 | Heald College LLC. | CA Grant for San Jose (State Grant) |
| Bank of America | 5712 | Heald College LLC. | CA Grant for Stockton (State Grant) |
| Bank of America | 7623 | Corinthian Colleges, Inc. | Campus Vue Student Refunds- U.S. (Student refunds, Control Disb. Acct) |
| Bank of America | 3634 | Corinthian Colleges, Inc. | Campus Vue Student Refunds- Texas (Student refunds, Control |
| Bank of America | 4774 | Heald College LLC. | Campus Vue Student Refunds- U.S. (Student refunds, Control Disb. Acct) |
| Bank of America | 3168 | Corinthian Colleges, Inc. | Investments |
| Bank of the West | 0672 | Corinthian Colleges, Inc. | FARE Concentration |
| Bank of the West | 8432 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds - Dir Loan) |
| Bank of the West | 8473 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds - ED Pay) |
| Bank of the West | 8598 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds- Perkins) |
| Bank of the West | 0974 | Corinthian Schools, Inc. | Everest College -ALHAMBRA (Federal Funds - ED Pay) |
| Bank of the West | 1089 | Corinthian Schools, Inc. | Everest College -ALHAMBRA (Federal Funds - Dir Loan) |
| Bank of the West | 1154 | Corinthian Schools, Inc. | Everest College -Alhambra  Perkins (Federal Funds- Perkins) |
| Bank of the West | 1204 | Corinthian Schools, Inc. | Everest College -RESEDA (Federal Funds - Dir Loan) |
| Bank of the West | 1253 | Corinthian Schools, Inc. | Everest College -RESEDA (Federal Funds - ED Pay) |
| Bank of the West | 1378 | Corinthian Schools, Inc. | Everest College -Reseda Perkins (Federal Funds- Perkins) |
| Bank of the West | 1469 | Corinthian Schools, Inc. | Everest College-Torrance Federal Grants (Federal Funds - ED Pay) |

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Bank of the West | 1741 | Corinthian Schools, Inc. | Everest College-Torrance DL (Federal Funds - Dir Loan) |
| Bank of the West | 2574 | Corinthian Schools, Inc. | Everest College-Anaheim Perkins (Federal Funds- Perkins) |
| Bank of the West | 2715 | Corinthian Schools, Inc. | Everest College-Anaheim DL (Federal Funds - Dir Loan) |
| Bank of the West | 2897 | Corinthian Schools, Inc. | Everest College-Anaheim Federal Grants (Federal Funds - ED Pay) |
| Bank of the West | 3036 | Corinthian Schools, Inc. | Everest College-LA Perkins (Federal Funds- Perkins) |
| Bank of the West | 3150 | Corinthian Schools, Inc. | Wyotech -LONG BEACH  (Federal Funds - ED Pay) |
| Bank of the West | 3200 | Corinthian Schools, Inc. | Wyotech -LONG BEACH  (Federal Funds - Dir Loan) |
| Bank of the West | 3333 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds- Perkins) |
| Bank of the West | 3341 | Corinthian Schools, Inc. | Everest College-San Jose Perkins (Federal Funds- Perkins) |
| Bank of the West | 3473 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds - ED Pay) |
| Bank of the West | 3481 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds - Dir Loan) |
| Bank of the West | 3580 | Corinthian Schools, Inc. | Everest College -HAYWARD (Federal Funds- Perkins) |
| Bank of the West | 3598 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds - Dir Loan) |
| Bank of the West | 3622 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds - ED Pay) |
| Bank of the West | 3648 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds- Perkins) |
| Bank of the West | 3739 | Corinthian Schools, Inc. | Everest College -ONTARIO (Federal Funds - Dir Loan) |
| Bank of the West | 3861 | Corinthian Schools, Inc. | Everest College -ONTARIO (Federal Funds - ED Pay) |
| Bank of the West | 3978 | Corinthian Schools, Inc. | Everest College -SAN FRANCISCO (Federal Funds- Perkins) |
| Bank of the West | 5155 | Rhodes Business Group, Inc. | Everest Institute -ROCHESTER (Federal Funds - ED Pay) |
| Bank of the West | 5171 | Rhodes Business Group, Inc. | Everest Institute -ROCHESTER (Federal Funds - Dir Loan) |
| Bank of the West | 0823 | Heald College, LLC | Heald College - San Fran/Honolulu/Portland (Federal Funds - Dir Loan) |
| Bank of the West | 0971 | Heald College, LLC | Heald College - San Fran/Honolulu/Portland (Federal Funds - ED Pay) |
| Bank of the West | 1437 | Everest College Phoenix, Inc. | Everest College Phoenix, Inc. (Federal Funds - Dir Loan) |
| Bank of the West | 1494 | Everest College Phoenix, Inc. | Everest College Phoenix, Inc. (Federal Funds - ED Pay) |
| First Hawaiian Bank | 2236 | Heald College LLC. | 11136 Depository |
| First Hawaiian Bank | 8391 | Heald Colleges of California | Federal Account |
| BMO Harris Bank, N.A. | 9278 | Corinthian Colleges, Inc. | Concentration |
| BMO Harris Bank, N.A. | 9286 | Corinthian Colleges, Inc. | A/P disbursements |
| Union Bank | 4999 | Corinthian Colleges, Inc. | Concentration Account |
| Union Bank | 5049 | Rhodes Business Group Inc. | RBGi Payroll  Account (PR Account-ZBA) |
| Union Bank | 6563 | Eton Education Inc | Eton Payroll Account (PR Account-ZBA) |

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Union Bank | 6571 | Ashmead Education Inc. | AEi Payroll Account (PR Account-ZBA) |
| Union Bank | 1082 | Corinthian Colleges, Inc. | Petty Cash (Transcript Checking) |
| Union Bank | 1139 | Corinthian Colleges, Inc. | CCi Payroll Account (PR Account-ZBA) |
| Union Bank | 1147 | Corinthian Schools Inc | CSi Payroll Account (PR Account-ZBA) |
| Union Bank | 1155 | Florida Metropolitan Univ | FMU Payroll Account (PR Account-ZBA) |
| Union Bank | 1163 | Rhodes College, Inc. | RCi Payroll Account (PR Account-ZBA) |
| Union Bank | 1488 | Corinthian Colleges, Inc. | CAD$ Funds |
| Union Bank | 7880 | Corinthian Colleges, Inc. | Investments |
| U.S. Bank, NA | 2585 | Corinthian Colleges, Inc. | Consolidation Account |
| Capital West | 9056 | MJB Acquisiton Corp | WyoTech/Student Insurance (Escrow for WyoTech Student |
| California Bank and Trust | 5741 | Corinthian Colleges, Inc. - Flex Account | FSA Reimbursement Account (Reimbursement to Employees) |
| Citibank, N.A. | 4768 | Corinthian Colleges, Inc. | Corinthian Colleges Inc. and Citibank, N.A. as Escrow Agent (DOE Escrow Account) |

**Exhibit D**

**Debtors' Cash Management System**



# Debtor Bank Accounts Cash Flow Chart

## File a First Day Motion:

15-10952-KJC Corinthian Colleges, Inc.

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 1 (Delaware) |
| Assets: y | Judge: KJC | Case Flag: PlnDue, DsclsDue, MEGA |

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Mark D. Collins entered on 5/4/2015 at 10:14 AM EDT and filed on 5/4/2015

**Case Name:**           Corinthian Colleges, Inc.
**Case Number:**      15-10952-KJC
**Document Number:** 9

**Docket Text:**
Motion to Maintain Bank Accounts *(Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (II) Waiving Certain United States Trustee Requirements; (III) Authorizing Continued Performance of Intercompany Transactions; and (IV) Granting Related Relief)* Filed By Corinthian Colleges, Inc. (Collins, Mark)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** W:\RVS\CCI FILINGS\CCI - Cash Management Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=5/4/2015] [FileNumber=13110696-0]
[37d4665bec891843c5109dd5ce978fa61550fce00fdbc1e6fe9c1f919614263ffd1b
ce2a5d856de3564a231854746e2d1b102aa040a63746138c83a249a5b042]]

**15-10952-KJC Notice will be electronically mailed to:**

Mark D. Collins on behalf of Debtor Corinthian Colleges, Inc.
rbgroup@rlf.com

Timothy Jay Fox, Jr. on behalf of U.S. Trustee United States Trustee
timothy.fox@usdoj.gov

Michael Joseph Merchant on behalf of Debtor Corinthian Colleges, Inc.
merchant@rlf.com, rbgroup@rlf.com

Richard L. Schepacarter on behalf of U.S. Trustee United States Trustee
richard.schepacarter@usdoj.gov

Amanda R. Steele on behalf of Debtor Corinthian Colleges, Inc.