## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Hearing Date:  May 27, 2015 at 2:00 p.m. (ET)** |
| | § | **Objection Deadline:  May 20, 2015 at 4:00 p.m. (ET)** |

-------------------------------------------------------------

### DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO CONDUCT AND CONSUMMATE ASSET SALES EXCEEDING THE THRESHOLDS SET FORTH IN THE *DE MINIMIS* ASSET SALE ORDER; (II) APPROVING SUCH SALES; AND (III) GRANTING CERTAIN RELATED RELIEF

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request the entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), (i) authorizing the Debtors to conduct and consummate sales of certain miscellaneous assets exceeding the thresholds set forth in the *De Minimis* Asset Sale Order (as defined herein); (ii) approving such sales; and (iii) granting certain related relief.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**")

---

[1]	The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[Docket No. 10]. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[2]

**BACKGROUND**

**A.    General Background**

2. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3. Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees. It also offered degrees online.

4. Among its acquisitions, in January 2010, Corinthian purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**"). Heald, through its subsidiaries,

---

[2]    Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

2

operates Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

5.     Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the First Day Declaration.

**B.    The Debtors' Miscellaneous Property**

6.     As detailed in the First Day Declaration, the Debtors closed each of their campus locations effective as of April 27, 2015 and are in the process of liquidating their assets and winding down their operations.  The Debtors anticipate that they will reject many, if not all, of the nonresidential real property leases relating to these locations.  Before doing so, however, the Debtors were required to devise a strategy for dealing with the miscellaneous assets which remain at each of the campus locations.  The relief requested in this Motion is a critical aspect of the Debtors' strategy for maximizing the proceeds received for these miscellaneous assets, while still being mindful of the administrative rent obligations accumulating under the related real property leases.

7.     Excluding the Debtors' headquarters, the Debtors currently own furniture or equipment at 31 locations (three locations also contain annexes).  Two of these locations, Fremont and Long Beach, CA (the "**Wyotech Locations**"), were campuses of the Debtors' Wyotech brand.  The Wyotech Locations are multi-building campuses which the Debtors believe may contain assets with significant value, including, but not limited to, auto repair and HVAC related equipment.  The Debtors intend to remain at the Wyotech Locations until they can perform and complete a fulsome sale process for the assets at these facilities.  This Motion is not

RLF1 11923429v.2

intended to seek relief with respect to the assets to be sold at the Wyotech Locations, as any such transactions will be the subject of a separately filed sale motion.

8.    The Debtors' remaining locations consist of the former Everest and Heald campuses and certain other administrative offices. The Debtors believe that the remaining 29 locations contain furniture and equipment of considerably less value.   The Debtors have instructed the campus presidents at each of these remaining locations in California and Arizona to log and ship all equipment worth over $5,000 that is easily transportable to the nearer of the two Wyotech Locations to allow the Debtors additional time to properly market the assets.   The Debtors believe that the assets that will not be transferred to the Wyotech Locations consist mainly of office furniture and equipment, including, but not limited to, lab equipment (for example, dental chairs and x-ray machines), electronic blackboards or "smartboards", medical lab equipment and supplies and other items utilized in connection with the instruction provided at each respective campus location (the "**Miscellaneous Assets**").[3]

9.    In an effort to maximize the value received for the Miscellaneous Assets, while stemming the unnecessary incurrence of administrative rent under the campus leases, the Debtors have implemented an orderly process for the marketing and solicitation of bids for the assets.   Specifically, immediately following the closing of the campus locations on April 27, 2015, the Debtors began contacting potential buyers, including liquidators and competitors, regarding the sale of the Miscellaneous Assets.   Many of these parties have begun touring the Debtors' facilities and have been asked to provide detailed bids for the assets on or before Friday, May 8, 2015.   The Debtors then, in exercising their business judgment, will need to

---

[3]    Notably, the majority of the Debtors' computer equipment is leased, and therefore, is not property of the Debtors.

determine how best to proceed with the bids received (in light of the accruing carrying costs associated with the leased locations at which the Miscellaneous Assets are located).

10.      For bids received involving the transfer of $25,000 or less in total consideration to a single buyer or group of related buyers per location (with total sales to a single buyer or group of buyers not to exceed $125,000 in the aggregate), the Debtors intend to sell such assets pursuant to the procedures approved by the Court pursuant to the *Order Authorizing Debtors to Conduct* De Minimis *Asset Sales of $25,000 or Less without Further Order of the Court* [Docket No. 23] (the "***De Minimis* Asset Sale Order**").  The *De Minimis* Asset Sale Order authorizes a process whereby the Debtor may consummate smaller sales of the Miscellaneous Assets on forty-eight (48) hours' notice without further order of the Court, provided that an objection has not been received from any of the identified notice parties.  An expedited notice process is required for these sales, as the proposed consideration from these smaller transactions does not justify further delaying the rejection of the underlying real property leases.

11.      With regards to bids received that exceed the thresholds set forth in the *De Minimis* Asset Sale Order, and for which the proposed sale consideration justifies delaying the rejection of the underling real property leases to the end of the month, the Debtors advised the Court that they would be filing this Motion.  This Motion proposes a procedure whereby the Debtors may afford interested parties greater notice of the proposed sales of the Miscellaneous Assets, while still being able to effectuate the rejection of the underlying leases before the end of May (thereby allowing the Debtors to avoid the incurrence of June rent under section 365(d)(3) of the Bankruptcy Code).

## REQUESTED RELIEF

12.      The Debtors respectfully request the entry of an order, substantially in the

RLF1 11923429v.2

form attached hereto as <u>Exhibit B</u>, (i) authorizing the Debtors to conduct and consummate the sales of Miscellaneous Assets exceeding the thresholds set forth in the *De Minimis* Asset Sale Order in accordance with the procedures set forth herein; (ii) approving the sales of such Miscellaneous Assets; and (iii) granting certain related relief.

**THE MISCELLANEOUS SALE PROCEDURES**

13.     The Debtors are implementing the following procedures with regards to the sale of Miscellaneous Assets that exceed the thresholds contained in the *De Minimis* Asset Sale Order (the "**Miscellaneous Sale Procedures**").

***Transactions Subject to the Miscellaneous Sale Procedures***

14.     The Miscellaneous Sale Procedures will apply to the sale of Miscellaneous Assets exceeding the thresholds contained in the *De Minimis* Asset Sale Order.  Generally, such transactions will involve bids for the Miscellaneous Assets exceeding $25,000 in total consideration to a single buyer or related group of buyers per location, as measured by the amount of cash and other consideration to be received by the Debtors on account of the assets to be sold.[4]  The Miscellaneous Sale Procedures would also apply to situations where a buyer or related group of buyers is seeking to purchase Miscellaneous Assets from multiple locations and the aggregate consideration to be received from that buyer in connection with the transaction

---

[4]     Section 363(h) of the Bankruptcy Code states, in pertinent part:

[T]he trustee may sell both the estate's interest . . . and the interest of any co-owner in property . . . only if:

(1)    partition in kind of such property among the estate and the co-owners is impracticable;
(2)  sale of the estate's undivided interest in such property would realize significantly less for the estate than the sale of such property free of the interests of such co-owners;
(3)  the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
(4)  such property is not used in the production, transmission or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

6

would exceed the $125,000 cap contained in the *De Minimis* Asset Sale Order.

***Notice and Opportunity to Object***

15.     The Debtors are requesting that this Motion be heard by the Court at the hearing scheduled in these cases for May 27, 2015 at 2:00 p.m. (Eastern Time) (the "**Hearing**"), and that the Court consider and approve any sale transactions proposed in accordance with the Miscellaneous Sale Procedures at the Hearing.  Accordingly, to provide ample notice of any such transactions, the Debtors intend to file with the Court a notice (each, a "**Sale Notice**") of any proposed transaction under the Miscellaneous Sale Procedures (each a "**Proposed Sale**", and collectively, the "**Proposed Sales**") on or before May 12, 2015.

16.     The Sale Notices will attach a copy of any contract or contracts (or bill of sale or other document) evidencing the Proposed Sales and will include the following information:

- a description of the assets, which clearly identifies the specific the assets, that are the subject of the Proposed Sale and their locations;

- the identity of the Debtor which owns such assets;

- the identity of the nondebtor party or parties to the Proposed Sale and any relationship of the party or parties with the Debtors; provided, however, that the Miscellaneous Sale Procedures may not be used to consummate a sale of assets to any "insider" of the Debtors (as defined in section 101(31) of the Bankruptcy Code);

- the identities of any parties known to the Debtors to hold liens on or other interests in the assets and a statement indicating that all such liens or interests are capable of monetary satisfaction;

- the major economic terms and conditions of the Proposed Sale;[5] and

- instructions consistent with the terms described below regarding the procedures to assert objections to the Proposed Sale ("**Objections**").

---

[5]     This information may be provided by attaching the applicable contract or contracts (or other relevant documents) to the Sale Notice.

17.     Each Sale Notice shall be served on the date that it is filed by overnight mail or by email (where email addresses are available) on (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis, <u>provided</u>, <u>however</u>, that the Debtors do not intend to serve such parties following the appointment of a statutory committee of unsecured creditors (the "**Committee**"), (iii) counsel to any Committee, (iv) the Department of Education, and (v) all known parties holding or asserting liens on or other interests in the assets that are the subject of the Proposed Sale and their respective counsel, including, without limitation, counsel to Bank of America, N.A., as Administrative Agent for the Lenders (collectively, the "**Interested Parties**").

18.     The Sale Notice(s) will provide that Interested Parties have ten (10) calendar days from the date of service of the Sale Notice (the "**Notice Period**") to object to the Proposed Sale.  Any Objections to a Proposed Sale should be in writing, filed with the Court, and served on the Interested Parties, the Debtors, and the Debtors' counsel so as to be received by all such parties prior to expiration of the Notice Period.  Each Objection should state with specificity the grounds for objection.  Prior to the Hearing, the Debtors will file with the Court a revised form of order attaching as <u>Exhibit 1</u> thereto, a complete list of the Proposed Sales to which the Debtors' seek the Court's approval and the corresponding information for each Proposed Sale included in the Sale Notice.  The Debtors intend to go forward at the Hearing with respect to all properly served Objections to a Proposed Sale that have not been resolved on a consensual basis.

19.     If any significant economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Notice Period (as defined below), the applicable Debtor or Debtors will file with the Court and serve a revised Sale Notice on all

RLF1 11923429v.2

Interested Parties describing the Proposed Sale, as amended.  If a revised Sale Notice is required, the Debtors propose that the Objection Deadline be extended for such Sale Notice until April 22, 2015 at 12:00 p.m. (Eastern Time), the deadline for filing the agenda for the Hearing, in accordance with Local Rules.

*Effects of Sale*

20.    Buyers will take title to the assets free and clear of liens, claims, encumbrances, and other interests, pursuant to section 363(f) of the Bankruptcy Code.  All such liens, claims, encumbrances, and other interests will attach to the proceeds of the sale to the extent the underlying security agreement provides for the continuation of such liens, claims, encumbrances, and other interests, with the same validity and priority as with respect to the assets.

21.    Further, purchasers will be afforded all of the protections under Bankruptcy Code section 363(m) as good faith purchasers.

## LEGAL BASIS FOR RELIEF REQUESTED

22.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   The notice and hearing requirements contained in section 363(b)(1) are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances.   11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").   Generally, rules 2002(a)(2) and 2002(i) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") require that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under

9

section 1102 of the Bankruptcy Code.   As noted above, the "notice" required by section 363(b)(1) of the Bankruptcy Code is "such notice as is appropriate in the particular circumstances."   11 U.S.C. § 102(1)(A).   Pursuant to Bankruptcy Rule 2002(i), courts are authorized to limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to any official committee appointed under section 1102 of the Bankruptcy Code requesting notice.

23.      Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are "guided by fundamental notions of procedural due process."   *In re Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997).   Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"   *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *In re Grand Union Co.*, 204 B.R. 864, 871 (Bankr. D. Del. 1997).   In sum, if basic due process is afforded to interested parties and appropriate cause is established, a court may determine that limited notice of an asset sale is appropriate.

24.      The Debtors submit that the Miscellaneous Sale Procedures will maximize the net value realized from sales of relatively immaterial assets.   These procedures will accommodate the smooth and timely consummation of the sale of the Miscellaneous Assets, while allowing the Debtors to consummate the sales and reject the underlying real property leases prior to June 1, 2015 (pursuant to a separately filed motion), which will avoid the incurrence of additional administrative rent claims under section 365(d)(3) of the Bankruptcy Code.   But for the relief requested in this Motion, the Debtors would likely be required to forego

certain sale opportunities and simply abandon the assets given the mounting rent obligations. While the Debtors are not requesting approval of the Miscellaneous Sale Procedures in advance of the hearing (simply due to time constraints and mounting rent obligations), they submit that implementation of the Miscellaneous Sale Procedures, including the notice provided thereunder, is a sound exercise of the Debtors' business judgment that will enable them to maximize the recoveries received for the Miscellaneous Assets.

25.     Moreover, the Debtors submit that limiting service of the Sale Notices to the Interested Parties is justified under the circumstances.  The Interested Parties represent the key parties in interest who should receive notice of any Proposed Sale.  In particular, Sale Notices will be served on (i) the primary parties representing the interests of unsecured creditors of the Debtors' estates (*i.e.*, the U.S. Trustee and the holders of the thirty (30) largest unsecured claims or counsel to the Committee) and (ii) the other parties with potential interests in the assets at issue (*i.e.*, counsel to the secured lenders and other potential lienholders).  Under the circumstances, the Debtors believe that this manner of notice is appropriate and fully preserves necessary due process rights.

***Approval of the Sale Transactions at the Hearing***

26.     As stated above, the sale of property outside of the ordinary course of business may occur only "after notice and a hearing."  11 U.S.C. § 363(b)(1).  As described above, due process is satisfied if parties in interest are given "an opportunity to present their objections."  *Mullane*, 339 U.S. at 314.

27.     The Debtors believe that the Miscellaneous Sale Procedures comport with the hearing requirements of the Bankruptcy Code and due process by providing an opportunity for Interested Parties to present Objections and appear at a hearing on the Proposed Sales.

RLF1 11923429v.2

*Sales Free and Clear of Interests*

28.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if (i) applicable nonbankruptcy law permits such a free and clear sale, (ii) the holder of the interest consents, (iii) the interest is a lien and the sales price of the property exceeds the value of all liens on the property, (iv) the interest is in bona fide dispute, or (v) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

29.     Assets encumbered by interests held by other parties may be sold pursuant to the Miscellaneous Sale Procedures only to the extent permitted by section 363(f) of the Bankruptcy Code.  As such, the relief requested in this Motion leaves the requirements of section 363(f) of the Bankruptcy Code unaltered.  Moreover, as noted above, the Debtors propose that such interests attach to the proceeds of the sales to the extent provided by the underlying security agreement.

*Buyers of the Miscellaneous Assets are Good Faith Purchasers*

30.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest in property purchased from the debtor notwithstanding that a sale conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

31.     The Debtors submit that all Proposed Sales shall be the product of arm's-length, good faith negotiations.  Accordingly, the Debtors request that the Court make a finding

12

in the Proposed Order that the buyers of the Miscellaneous Assets have purchased such assets in good faith and are entitled to the full protections of section 363(m) of the Bankruptcy Code.

## NOTICE

32.     The Debtors will provide notice of this Motion to:  (i) Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the District of Delaware; (viii) any banking or financial institution that holds the Debtors' accounts; (ix) any other known party holding liens with respect to the Miscellaneous Assets; and (x) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

## NO PRIOR MOTION

33.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of an order granting the relief requested in its entirety and any other relief as is just and proper.

Dated: May 6, 2015
      Wilmington, Delaware

        */s/ Amanda R. Steele*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
      merchant@rlf.com
      terranova@rlf.com
      steele@rlf.com

Proposed Counsel for the Debtors and Debtors in Possession

RLF1 11923429v.2