# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | **Hearing Date: May 27, 2015 @ 2:00 p.m. (EDT)** |
| | § | **Obj. Deadline: May 20, 2015 @ 4:00 p.m. (EDT)** |

-------------------------------------------------------

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. AS CRISIS MANAGER AND (II) DESIGNATING WILLIAM J. NOLAN AS CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO THE PETITION DATE

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request entry of an order (i) authorizing the Debtors to retain and employ FTI Consulting, Inc. ("**FTI**"), as crisis manager, and (ii) designating William J. Nolan as the Debtors' Chief Restructuring Officer ("**CRO**") *nunc pro tunc* to the Petition Date. In support of this application (this "**Application**"), the Debtors submit the declaration of William J. Nolan (the "**Nolan Declaration**"), attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

**Jurisdiction**

1.       The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**BACKGROUND**

3.       On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

4.       Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada.  Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology.  As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees.  It also offered degrees online.

RLF1 11926338v.2

5.      Among its acquisitions, in January 2010, Corinthian purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

6.      Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions* [D.I. 10]..

## Relief Requested

7.      By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit C, authorizing and approving *nunc pro tunc* to the Petition Date the (i) retention and employment of FTI as crisis manager for the Debtors, in accordance with the terms set forth herein and subject to that certain engagement letter made by and between FTI and Corinthian, dated as of May 4, 2015 (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "**Engagement Letter**"), a copy of which is attached hereto as Exhibit 1 to the Nolan Declaration, and (ii) designating William J. Nolan as CRO to the Debtors.

## FTI's Qualifications

8.      The Debtors are familiar with the professional standing and reputation of FTI. The Debtors understand that FTI is comprised of a worldwide network of 4,400 employees in 26 countries on six continents and has a wealth of experience providing financial advisory services in restructurings and reorganizations.  FTI enjoys an excellent reputation for services it has

3

rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States and is particularly well-qualified to advise the Debtors during these chapter 11 cases.

9.      FTI's professionals have assisted and advised, and provided strategic advice to, debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  FTI's business reorganization professionals have served as financial and strategic advisors in numerous cases, including most recently:  In re Allied Nevada Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); In re Seal123, Inc., Case No. 15-10081 (CSS) (Bankr. D. Del. Mar. 18, 2015); In re Suntech America, Inc., Case No. 15-10054 (CSS) (Bankr. D. Del. Mar. 17, 2015); In re RadioShack Corporation, Case No. 15-10197 (BLS) (Bankr. D. Del. Mar. 12, 2015); In re UniTek Global Services, Inc., Case No. 14-12471 (KG) (Bankr. D. Del. Dec. 12, 2014); In re Mineral Park, Inc., Case No. 14-11996 (KJC) (Bankr. D. Del. Sept. 23, 2014).

10.      William J. Nolan is proposed to serve as CRO for the Debtors.  Mr. Nolan has considerable experience working with senior management teams in the areas of financial and operational restructuring, loan workouts and business planning. He has assisted management in developing business plans, devising short to medium term financial strategies and projections for use in troubled debt restructures, and implementing controls over cash expenditures, overhead and operating costs.

11.      As set forth in the Nolan Declaration, as a result of the prepetition work performed on behalf of the Debtors, FTI acquired significant knowledge of the Debtors and their businesses and is now familiar with the Debtors' financial affairs, debt structure, former operations and related matters.  Likewise, in providing prepetition services to the Debtors, FTI's

4

professionals, including Mr. Nolan, have worked closely with the Debtors' management and their other advisors. Accordingly, FTI has developed relevant experience and expertise regarding the Debtors, their businesses, and their current situation and is thus well-qualified and uniquely suited to deal effectively and efficiently with any financial problems that may arise in the context of these cases.

## Terms of the Engagement

**A.      Scope of Services**

12.      As provided in the Engagement Letter, FTI has agreed that Mr. Nolan will serve as the Debtors' CRO. Working collaboratively with the Debtors' senior management team and board of directors, as well as the Debtors' other professionals, Mr. Nolan will assist the Debtors in evaluating and implementing strategic and tactical options through the restructuring process.

13.      In addition, FTI has agreed to provide certain temporary employees to assist Mr. Nolan in his role as CRO (collectively, the "**Engagement Personnel**"). These Engagement Personnel include, but are not limited to, Amir Agam, Tamara McGrath, James Chu, Michael Yoshimura and Jessica Liew. The Debtors anticipate that during these chapter 11 cases, Mr. Nolan and the Engagement Personnel will perform a broad range of services, including, without limitation, the following:

(a)      assist the Debtors in connection with their efforts in their chapter 11 cases;

(b)      lead sale processes for the Debtors' assets;

(c)      negotiate, on behalf of the Debtors, proposals received for the purchase of the Debtors' assets;

(d)      provide, on behalf of the Debtors, testimony and affidavits in litigation/bankruptcy matters, as required;

(e)      assist the Debtors with the preparation of Schedules of Assets and Liabilities and Statements of Financial Affairs as well as periodic reporting required in connection with the chapter 11 cases;

RLF1 11926338v.2

(f)     assist the Debtors with the development and variance reporting of financial projections/budget, including cash collateral budgets and cash flow forecasts;

(g)     advise and assist the Debtors in their communications with suppliers, landlords, external media, lenders, creditors and other parties in interest;

(h)     assist in the management of the Debtors' operations;

(i)     assist in the development and negotiation by the Debtors of a chapter 11 plan of liquidation, related disclosure statement, and other court filings as necessary;

(j)     coordinate the Debtors' communication efforts with all key constituents, including the Debtors' lenders, the United States Department of Education, other government agencies as necessary, and their professionals, suppliers, creditors, the Court and bankruptcy-related professionals; and

(k)     perform other tasks as agreed to among the Debtors and FTI.

14.     The Debtors intend and believe that FTI's services will complement, and not duplicate, the services rendered by any other professional retained in these chapter 11 cases. FTI understands that the Debtors have retained and may retain additional professionals during the term of FTI's engagement, including Richards, Layton & Finger, P.A., as bankruptcy counsel, and FTI agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and to avoid the unnecessary duplication of services.

**B.     Compensation and Expenses**

15.     In consideration of the services to be provided by FTI, and as more fully described in the Engagement Letter, the Debtors have agreed to pay FTI pursuant to the following fee structure (the "**Fee Structure**"):

(a)     a monthly advisory fee of $125,000 for the month of May 2015 and $75,000 for each month thereafter for services rendered in connection with Mr. Nolan's retention as CRO; and

(b)      Engagement Personnel will be billed at $480 per hour for all staff, rather than the customary individual rate of each professional.[2]

16.      In addition to compensation for professional services rendered by Mr. Nolan and the Engagement Personnel, FTI will seek reimbursement for reasonable and necessary expenses incurred in connection with the chapter 11 cases, including, but not limited to travel, lodging, computer research, and messenger and telephone charges.  In addition, FTI shall be reimbursed for the reasonable fees and expenses incurred in connection with the preparation and approval of this Application.  All fees and expenses due to FTI will be billed as frequently as weekly and will be billed not less frequently than monthly by agreement with the Debtors.  The Debtors may then pay such fees and expenses to FTI in the ordinary course in advance of filing and serving the Compensation Report (as defined herein).

17.      Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not submit quarterly fee applications pursuant to section 330 and 331 of the Bankruptcy Code.  FTI will, however, file with the Court, and provide to the Office of the United States Trustee for the District of Delaware U.S. Trustee, Bank of America, N.A., in its capacity as administrative agent for the Debtors' lenders, and any statutory committee appointed in these chapter 11 cases with copies of reports of compensation earned and expenses incurred on a monthly basis (the "**Compensation Reports**").  The Compensation Reports will summarize the services provided, identify the compensation earned by each executive officer and staff employee provided and itemize the expenses incurred.  Once filed, parties in interest will have twenty (20) days to object to the Compensation Reports, and the Court will review such Compensation Reports in the event an objection is filed.  The first Compensation Report will be

---

[2]      The customary hourly rates for each category of Engagement Personnel is set forth in the Engagement Letter. The Debtors believe that the flat hourly fee of $480 per  hour will result in a net savings to the Debtors' estates from what would otherwise be charged under the customary hourly rates.

RLF1 11926338v.2

submitted on June 15, 2015 and will cover the period from the Petition Date through and include May 31, 2015.  This procedure will continue at monthly intervals thereafter.

18.     FTI's strategic and financial expertise as well as its capital markets knowledge, financing skills and restructuring capabilities, some or all of which may be required by the Debtors during the term of FTI's engagement, were all important factors in determining the fee structure set forth in the Engagement Letter and summarized above.  Furthermore, the Debtors acknowledge and agree that the ultimate benefit to the Debtors of FTI's services likely could not be measured merely by reference to the number of hours to be expended by FTI's professionals in the performance of such services.

19.     The Debtors also acknowledge and agree that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of FTI and its professionals hereunder and in light of the fact that (a) such commitment may foreclose other opportunities for FTI and (b) the actual time and commitment required of FTI and its professionals to perform its services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for FTI.

20.     Accordingly, the Fee Structure is consistent with and typical of compensation arrangements entered into by FTI and other comparable firms in connection with the rendering of similar services under similar circumstances.  The Debtors believe that the Fee Structure is reasonable, on "market terms" and designed to fairly compensate FTI for its work and to cover fixed and routine overhead expenses.

21.     As set forth in the Nolan Declaration, FTI has not shared or agreed to share any of its compensation from the Debtors with any other persons, except among the members, associates and employees of FTI, as permitted by section 504 of the Bankruptcy Code.

RLF1 11926338v.2

22.    The Debtors do not owe FTI any amount for services performed or expenses incurred prior to the Petition Date; thus, FTI is not a prepetition creditor of the Debtors. According to the books and records of FTI, during the 90 days prior to the commencement of these chapter 11 cases, FTI received $1,966,059.55[3] for professional services performed and expenses incurred.  Those payments reflected replenishments of cash held by FTI "on account" as the cash on account was applied to FTI's fees and expenses incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities, including estimated fees for the period immediately prior to the Petition Date.  In addition, as of the Petition Date, FTI has an amount of $500,000.00[4] to be held "on account" to be applied to its professional fees, charges and disbursements during the course of its engagement.  To the extent that this amount exceeds FTI's remaining unpaid fees, charges and disbursements upon completion of the engagement, FTI will refund any unused portion.

## C.    Indemnification

23.    Notwithstanding anything in the Engagement Letter to the contrary, the Debtors are permitted to indemnify those persons serving as corporate officers, including Mr. Nolan, on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the company's D&O policies.  Subject to the foregoing, there shall be no other indemnification of FTI or its affiliates.

---

[3]    FTI received $1,966,059.55 in payments, excluding amounts held "on account," within 90 days prior to the commencement of these chapter 11 cases.

[4]    Amount held "on account" is subject to reconciliation for fees and expenses incurred prior to the commencement of these chapter 11 cases.

**FTI's Disinterestedness**

24.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Nolan Declaration, FTI:  (a) has no connection with the Debtors, its creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the Office of the U.S. Trustee or any person employed in the U.S. Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

25.     Although the Debtors respectfully submit that the retention of FTI is not governed by section 327 of the Bankruptcy Code, the Nolan Declaration discloses, among other things, any relationship that FTI, Mr. Nolan, or any individual member of the Engagement Personnel has with the Debtors, its significant creditors, or other significant parties in interest known to FTI.  Based upon such disclosures, the Debtors submit that FTI is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

26.     In addition, as set forth in the Nolan Declaration, if any new material facts or relationships are discovered or arise, FTI will provide the Court with a supplemental declaration disclosing, among other things, any newly identified potential conflicts between the Debtors, the Engagement Personnel, or other significant parties in interest.

**Dispute Resolution Provisions**

27.     The Debtors and FTI have agreed, subject to the Court's approval of this Application, that:  (a) any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application or the services provided by FTI to the Debtors as outlined in this Application, including any matter involving a successor in interest or agent of any of the Debtors or of FTI, shall be brought in the Bankruptcy Court or the District Court for the District of Delaware (if the reference is withdrawn); (b) FTI and the Debtors and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and

exclusive forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or lawsuits; (c) FTI and the Debtors, and any and all successors and assigns thereof, waive trial by jury, such waiver being informed and freely made; (d) if the Bankruptcy Court, or the District Court (if the reference is withdrawn), does not have or retain jurisdiction over the foregoing claims and controversies, FTI and the Debtors, and any and all successors and assigns thereof, will submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit B to this Application; and (e) judgment on any arbitration award may be entered in any court having proper jurisdiction.

### Basis for Relief

28.     The Debtors seek to employ and retain FTI and appoint Mr. Nolan as CRO pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date. Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).

29.     Under applicable case law, in this and other jurisdictions, if a Debtors' proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the Debtors, such use should be approved.   See, e.g., In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a §363(b)

application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the Debtors' conduct.").

30.    The relief requested herein is appropriate and warranted under each of the above standards. The decision to retain FTI and employ William J. Nolan as CRO should be authorized because it is based on a sound exercise of the Debtors' business judgment. First, as further described above, Mr. Nolan has extensive experience as an advisor for many troubled companies. The Debtors believe that Mr. Nolan, in his capacity as CRO, and the FTI Personnel will provide services that benefit the Debtors' estates and creditors. In addition, FTI has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

31.    Second, Mr. Nolan and the Engagement Personnel, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance in the Debtors' efforts in developing near-term projections, assisting in short-term cash management activities, evaluating strategic alternatives and coordinating the Debtors' efforts to prepare for chapter 11.

32.    Third, through negotiations, the Debtors have been able to retain FTI and secure the services of Mr. Nolan and the FTI Personnel during the chapter 11 cases on economic terms that are fair, reasonable, and beneficial to the Debtors' estates. Moreover, the compensation

RLF1 11926338v.2

arrangement provided for in this Application and the Engagement Letter is consistent with and typical of arrangements entered into by FTI and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

33.     In view of the foregoing, the Debtors believe that the retention of FTI and the employment of Mr. Nolan and the FTI Personnel is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases.  The Debtors additionally believe that FTI is well qualified and able to represent the Debtors in a cost effective, efficient, and timely manner.  FTI has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.  For the reasons set forth above, the Debtors respectfully request that the Court authorize the Debtors to retain FTI to provide the Debtors with a CRO, and additional Engagement Personnel as necessary, and to designate Mr. Nolan as the CRO *nunc pro tunc* to the Petition Date, all pursuant to section 363 of the Bankruptcy Code.

34.     Courts in this district and in other jurisdictions have approved relief similar to the relief requested in this Application.  See, e.g., In re Cal Dive International, Inc., Case No. 15-10458 (CSS) (Bankr. D. Del. Apr. 6, 2015); In re Phoenix Payment System, Inc., Case No. 14-11848 (MFW) (Bankr. D. Del. Aug. 28, 2014); In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Oct. 22, 2013); In re Veritis Holdings, Inc., No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); In re CHL, LTD., No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); In re Caribbean Petroleum Corp., No. 10-12553 (KG) (Bankr. D. Del. Sept. 23, 2010); In re Abitibibowater Inc., No. 09-11296 (KJC) (Bankr. D. Del. July 1, 2009); In re Sharper Image Corp., No. 08-10322 (KG) (Bankr. D. Del. Apr. 23, 2008).

13

35.     Based upon the foregoing, the Debtors submit that the retention of FTI, and the designation of William J. Nolan as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these chapter 11 cases.

### Notice

36.     The Debtors will provide notice of this Application to:  (i) the U.S. Trustee; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as administrative agent for the Debtors' lenders; (iv) any statutory committee appointed in these chapter 11 cases; (v) the Internal Revenue Service; and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice is necessary under the circumstances.

### No Prior Request

37.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other relief as is just.

Dated:  May 7, 2015

_____
Name:  Stan A. Mortensen
Title:   Executive Vice President and General
           Counsel of Corinthian Colleges, Inc.

RLF1 11926338v.2