## Exhibit A

**Declaration of William J. Nolan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |

---------------------------------------------------------

### DECLARATION OF WILLIAM J. NOLAN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF FTI CONSULTING, INC. AS CRISIS MANAGER AND (II) DESIGNATING WILLIAM J. NOLAN AS CHIEF RESTRUCTURING OFFICER, *NUNC PRO TUNC* TO THE PETITION DATE

Pursuant to 28 U.S.C. § 1746, I, William J. Nolan, hereby declare as follows under the penalty of perjury to the best of my knowledge, information, and belief:

1.      I am over the age of 18 and competent to testify.  I am a Senior Managing Director of FTI Consulting, LLC ("**FTI**"), which has an office located at 214 N. Tryon Street, Suite 1900, Charlotte, NC 28202.  I am duly authorized to make this declaration (the "**Declaration**") on behalf of FTI and in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of FTI Consulting, Inc. as Crisis Manager*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

*and (II) Designating William J. Nolan as Chief Restructuring Officer* Nunc Pro Tunc *to the Petition Date* (the "**Application**").[2]

2.      Except as otherwise noted, I have personal knowledge of the matter set forth herein and, if called as a witness, I would testify competently thereto.[3]

3.      FTI is a global business advisory firm that specializes in business reorganization consulting and financial restructuring.  FTI is equipped to address the interrelated challenges that can affect an organization's enterprise value and offers highly specialized expertise in the areas of compliance, risk, reputation, liability, performance, finance and information.  In particular, FTI's market-leading corporate finance division has advised management, senior lenders and unsecured creditors in many significant chapter 11 proceedings, including In re Allied Nevada Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); In re Seal123, Inc., Case No. 15-10081 (CSS) (Bankr. D. Del. Mar. 18, 2015); In re Suntech America, Inc., Case No. 15-10054 (CSS) (Bankr. D. Del. Mar. 17, 2015); In re RadioShack Corporation, Case No. 15-10197 (BLS) (Bankr. D. Del. Mar. 12, 2015); In re UniTek Global Services, Inc., Case No. 14-12471 (KG) (Bankr. D. Del. Dec. 12, 2014); In re Mineral Park, Inc., Case No. 14-11996 (KJC) (Bankr. D. Del. Sept. 23, 2014).

4.      The Debtors initially engaged FTI on May 30, 2014, and on July 1, 2014, I was appointed CRO by Corinthian's board of directors.  During FTI's engagement, the Engagement Personnel and I acquired significant knowledge of the Debtors and their businesses and are now familiar with the Debtors' financial affairs, debt structure, former operations and related matters.

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

[3]   Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by such professionals.

## Services to Be Provided

5.      As further detailed in the Application, and pursuant to the Engagement Letter, the Debtors seek an order authorizing the employment of FTI to provide crisis management services, in which I will act as CRO, and other individuals employed by FTI will provide professional services as deemed necessary.

6.      I believe that I and the members and associates of FTI who may perform services in this case are well qualified to perform the services requested by the Debtors.

7.      None of the services that FTI will render in connection with the Debtors' chapter 11 cases will be duplicative of the services rendered by any of the other professionals employed by the Debtors in these chapter 11 cases.

## Disinterestedness and Eligibility

8.      In connection with the proposed retention, FTI has searched its client database to ascertain FTI's relationship with the entities listed on Exhibit 2 hereto (collectively, the "**Potential Parties in Interest**").  We have utilized FTI's conflicts database management system, which is designated to reveal the potential for conflicts of interest and other connections to the Potential Parties in Interest.  Such results are printed and have been reviewed by myself and the Engagement Personnel.  Where needed, we contacted various individuals at FTI shown on the system report as having previously submitted relevant connections information to the system. We have also researched relevant "hits" for the information set forth herein.  From such individuals and these databases, we have obtained information and guidance with regard to FTI's particular connections to the Potential Parties in Interest.

9.      The attached Exhibit 3 identifies any relationships discovered through such investigation that FTI has with any Potential Party in Interest in matters unrelated to these chapter 11 cases.  To the best of my knowledge and after due inquiry, myself and FTI are not or

3

have not been employed by any entity other than the Debtors in matters related to these chapter 11 cases.  To the extent FTI discovers additional information that requires disclosure, FTI will file a supplemental disclosure with the Bankruptcy Court.

10.     By way of further disclosure, prior to the commencement of these chapter 11 cases, FTI's professionals provided restructuring and financial services to the Debtors.  Further, FTI is a crisis manager providing services and advice specifically in the areas of restructuring and distressed debt.  As a result, FTI has provided services, and likely will continue to provide services or may in the future represent, certain interested parties, including creditors of the Debtors, in matters wholly unrelated to these chapter 11 cases.

11.     Further, these unrelated matters involve numerous attorneys, financial advisors and other professionals, some of which may be claimants or parties with actual or potential interests in these cases, or may represent such parties.  FTI may also have business associations with certain creditors of the Debtors unrelated to these chapter 11 cases.  In addition, in the ordinary course of its business, FTI may engage counsel or other professionals in unrelated matters who are creditors or who now represent or who in the future may represent creditors or other interest holders.  Based on my current knowledge of the professionals involved, and to the best of my knowledge, none of these business relationships constitute an interest materially adverse to the Debtors herein in matters upon which FTI is to be employed, and none are in connection with these cases.

12.     FTI submits that it holds no adverse interest as to the matters for which it has been employed by the Debtors.  Certain individuals affiliated with FTI may render crisis and interim management services to the Debtors on a part-time basis, while others have been and will continue to be engaged full-time.  To the extent such individuals are employed on a part- time

4

basis, FTI submits that there are no simultaneous or prospective engagements existing which would constitute a conflict or adverse interest as to the matters for which it has been employed by the Debtors.  To the best of my knowledge, information and belief, insofar as I have been able to ascertain after due inquiry, FTI does not (a) have any connection with the Debtors, their creditors or any other party in interest herein, the Office of the United States Trustee for the District of Delaware, or any United States Bankruptcy Judge or District Judge for the District of Delaware or (b) have any connection with or hold or represent any interest materially adverse to the Debtors, their estates, their creditors or any other party in interest herein in the matters for which FTI is proposed to be retained.

13.    To the best of my knowledge, FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI:

(a)    is not a creditor, equity security holder or insider of the Debtors;

(b)    is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the Debtors (other than by virtue of FTI's employees serving in the roles of CRO and Engagement Personnel (pre and post petition) as described in the Application); and

(c)    does not have any interest materially adverse to the interest of the estate of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

## Compensation and Expenses

14.    The Debtors do not owe FTI any amount for services performed or expenses incurred prior to the Petition Date; thus, FTI is not a prepetition creditor of the Debtors. According to the books and records of FTI, during the ninety days prior to commencement of

these chapter 11 cases, FTI received $1,966,059.55[4] for professional services performed and expenses incurred.  Those payments reflected replenishments of cash held by FTI "on account" as the cash on account was applied to FTI's fees and expenses incurred in providing services to the Debtors in contemplation of, and in connection with, prepetition restructuring activities.

15.    In addition, as of the Petition Date, FTI has an amount of $500,000.00[5] to be held "on account" to be applied to its professional fees, charges and disbursements during the course of its engagement.  To the extent that this amount exceeds FTI's fees, charges and disbursements upon completion of the engagement, FTI will refund any unused portion.

16.    FTI reserves the right to supplement this Declaration in the event that FTI discovers any facts bearing on matters described in this Declaration regarding FTI's employment by the Debtors.

17.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 7, 2015

*/s/* William J. Nolan
William J. Nolan
Senior Managing Director of FTI Consulting, Inc.

---

[4]   FTI received $1,966,059.55 in payments, excluding amounts held "on account," within 90 days prior to the commencement of these chapter 11 cases.

[5]   Amount held "on account" is subject to reconciliation for fees and expenses incurred prior to the commencement of these chapter 11 cases.

**<u>Exhibit 1</u>**
**Engagement Letter**



CONFIDENTIAL

May 4, 2015

Stan A. Mortensen
Executive Vice President and General Counsel
Corinthian Colleges, Inc.
6 Hutton Centre Drive
Suite 400
Santa Ana, Ca. 92707

**Re: Corinthian Colleges, Inc.**

Dear Mr. Mortensen:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between Corinthian Colleges, Inc. (the "Company" or "Corinthian") and FTI Consulting, Inc. ("FTI") concerning the Company's engagement of FTI to provide certain temporary employees to the Company for certain interim management services (the "Services") in connection with the Company's Chapter 11 debtor in possession liquidation efforts. The Agreement and the acceptance of this engagement is conditioned at the time of execution and an ongoing condition of this engagement that an appropriately sized Directors and Officers Insurance Policy is in place. This Agreement is effective on May 4, 2015 (the "Effective Date"). The FTI Standard Terms and Conditions attached hereto as Exhibit "A" are also incorporated herein and forms part of this Agreement.

1.    **Temporary Officers, Hourly Temporary Employees and Services**

FTI will provide William Nolan to serve as the Company's Chief Restructuring Officer (the "CRO" and the "Temporary Officer") reporting to the Board of Directors (the "Board"), with Jack Massimino, the Chairman of the Board (the "Chairman"), as our Board liaison. The Temporary Officer, as well as any additional Hourly Temporary Staff (as defined below), shall have such duties as the Company may from time to time determine, and shall at all times report to and be subject to supervision by the Board and the Chairman. Without limiting the foregoing, the Temporary Officer, as well as any Hourly Temporary Staff, shall work with other senior management of the Company, and other professionals, to provide the Services.

In addition to providing the Temporary Officer, FTI may also provide the Company with additional staff (the "Hourly Temporary Staff" and, together with the Temporary Officer, the "FTI Professionals"), subject to the terms and conditions of this Agreement. The Hourly Temporary Staff may be assisted by or replaced by other FTI professionals reasonably satisfactory to the Board, as required, who shall also become Hourly Temporary Staff for purposes hereof. The initial schedule of Hourly Temporary Staff is set out on Exhibit "B". FTI will keep the Company and the Chairman reasonably informed as to FTI's staffing and will not add additional Hourly Temporary Staff to the assignment without first consulting with the Company.

The terms of FTI's role hereunder is subject to Bankruptcy Court approval. In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the Chapter 11 cases (the "Additional Cash on Account").

The services we will provide in connection with the Engagement will encompass services normally and reasonably associated with this type of engagement that we are requested and are able to provide and that are consistent with our ethical obligations. With respect to all matters of our Engagement, we will coordinate closely with the Company as to the nature of the services that we will render and the scope of our engagement.

As usual, our Engagement is to advise the Company and not its individual directors, officers, employees or shareholders. However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

The Services do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Company at Company's expense; or (ii) investment banking, including valuation or securities analysis, including advising any party or representation of the Company on the purchase, sale or exchange of securities or representation of the Company in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Company to provide any investment banking or broker-dealer services. The Company agrees to supply office space, and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

## 2.    Compensation to FTI

### Monthly Fee

For services rendered in connection with this assignment, the Company agrees to pay FTI for the services of William Nolan as Chief Restructuring Officer a monthly, non-refundable advisory fee of $125,000 for the month of May 2015 and $75,000 for each month thereafter,.

### Hourly Temporary Staff

Services rendered by Hourly Temporary Staff will be billed at $480 per hour for all staff, rather than the individual rate of each professional. Fees are payable in advance and may be billed as frequently as weekly and will be billed not less frequently than monthly. Cash on Account is for services rendered as each invoice is applied to the Cash on Account and then is replenished with the payment (as described below)

### Hourly Rates

The monthly fees for the CRO of $125,000 and $75,000 are less than the fees that the Company would incur if FTI were to bill it on an hourly basis. The normal hourly billing rates for the CRO or any additional professionals with the skills and experience needed for engagements of this kind, which are subject to periodic revision, are as follows:

United States

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $800- 975 |
| Directors / Managing Directors | 595- 795 |
| Consultants / Senior Consultants | 315- 575 |
| Administrative / Paraprofessionals | 125- 250 |

Canada

|  | Per Hour (USD) | Per Hour (CAD) |
|---|---|---|
| Senior Managing Directors | $815- 880 | $805- 840 |
| Directors / Managing Directors | 570- 760 | 540- 720 |
| Consultants / Senior Consultants | 310- 505 | 300- 470 |
| Administrative / Paraprofessionals | 110 | 110 |

Mexico

|  | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $785 |
| Directors | 660 |
| Consultant | 310 |

In addition to the fees outlined above, FTI will bill for reasonable direct expenses which are likely to be incurred on your behalf during this Engagement. Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement. Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at the blended hourly rate and reimbursed for direct expenses (including counsel fees) with respect thereto.

**Cash on Account**

Initially, the Company will forward to us the amount of $500,000, which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account") as they are incurred and billed on a weekly or monthly basis. To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to replenish or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred within the next month.

We will send the Company periodic invoices (not less frequently than monthly) for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain. Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services. Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as defined below, and replenished from time to time) in the amount of the invoice. The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice. We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to

time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

Now that the Company's entities have become debtors in possession under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of any prior retainers or cash on account, the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(I). The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1129(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment). It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

**FTI Employees**

The Company agrees to promptly notify FTI if any employee of the Company or any of its subsidiaries or affiliates who directly engages with FTI personnel during the engagement, extends, either directly or indirectly, (or makes inquiries to an FTI employee about his or her possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 100% of the first year's annualized cash compensation, including any guaranteed or target bonus, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

Company agrees that FTI is not an employee of the Company and the FTI employees and independent FTI contractors who perform the Services are not employees of the Company, and they shall not receive a W-2 from the Company for any fees earned under this engagement, and such fees are not subject to any form of withholding by the Company. The Company shall provide FTI a standard form 1099 on request

4

for fees earned under this Engagement.

a)  Copies of Invoices shall be sent by facsimile or email as follows:

To the Company at:
Corinthian Colleges, Inc.
6 Hutton Centre Drive
Suite 400
Santa Ana, Ca. 92707

Attention:  Robert Owen, Chief Financial Officer

## 3.    Availability of Information

In connection with FTI's activities on the Company's behalf, the Company agrees (i) to furnish FTI with all information and data concerning the business and operations of the Company which FTI reasonably requests, and (ii) to provide FTI with reasonable access to the Company's officers, directors, partners, employees, retained consultants, independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this agreement.

## 4.    Notices

Notices under this Agreement to the Company shall be provided as set forth in paragraph 2(f).

Notices to FTI shall be to:
214 North Tryon Street
Suite 1900
Charlotte, NC
28202

Attn:  William Nolan
Phone:  704.651.5646
Fax: 704.972.4121
Email: William.Nolan@fticonsulting.com
Notices shall be provided by (a) fax and email, (b) hand delivery, or (c) overnight delivery. If provided by fax and email or hand delivery, they shall be deemed effective the date given. If provided by overnight delivery, they shall be deemed effective on the date of actual receipt.

## 5.    Miscellaneous

This Agreement: represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns; may be executed by facsimile (followed by originals sent via regular mail), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of the Company and FTI. The provisions of this Agreement shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof.

Based on our understanding of the parties involved in this matter, we have compiled a list of interested parties (the "Potentially Interested Parties") and have undertaken a limited review of our records to determine FTI's professional relationships with the Company and such Potentially Interested Parties. From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world.  We are regularly engaged by new Companies, which may include one or more of the Potentially Interested Parties.  The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

If this letter correctly sets forth our understanding, please so acknowledge by signing below and returning a signed copy of this letter to us.

Very truly yours,

FTI CONSULTING, INC.

By: _____
Name: William Nolan
Title: Senior Managing Director


ACCEPTED AND AGREED this 4th  day of May 2015.

On behalf of Corinthian Colleges, Inc.

By: _____
    Name:    STAN A. MORTENSEN
    Title:   EVP & General Counsel

By: _____
    Name:
    Title:

Date:_____

6

EXHIBIT A

FTI CONSULTING, INC.

STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with the Corinthian College, Inc. dated as of May 4, 2015 (the "Engagement Letter"). The Engagement Letter and these Standard Terms and Conditions annexed thereto (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1.    **Reports and Advice**

1.1    **Use and purpose of advice and reports**— Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2.    **Information and Assistance**

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you subsequently learn that any material information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

7

3. **Additional Services**

3.1 **Responsibility for other parties**— You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract (including section 2 of the Engagement Letter with respect to the retention of certain agents and independent contractors), we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

4. **Confidentiality**

4.1 **Restrictions on confidential information**— All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1   is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2   is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information; or

4.1.3   is or has been independently developed by the recipient (without the use of confidential information).

4.2 **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3 **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our Company's and prospective Company's as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4 **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that we shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5 **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies; *provided*, that we shall keep such materials confidential in accordance with the terms of this Engagement Contract.

5. **Termination**

5.1 **Termination of Engagement with notice**— All parties (the Firm, the Company and FTI) may terminate the Engagement Contract for whatever reason upon written notice to the other parties. Upon receipt of such notice, we will stop all work immediately. Regardless of the terminating party, the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

a) The Company shall reimburse FTI for its out-of-pocket expenses (the "Termination Expenses") incurred in connection with commitments made by FTI prior to the Termination Date with respect to advance travel arrangements reasonably incurred, to the extent FTI is unable to obtain refunds of such expenses. FTI shall provide the Company with reasonable documentation to substantiate all Termination Expenses for which payment is requested; and

b) Unless FTI is in material breach of this Agreement, termination shall not affect Corinthian's consideration of a Completion Fee upon the successful conclusion of the engagement.

5.2    **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.    **Indemnification, Insurance and Liability Limitation**

6.1    **Indemnification** – The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination"). The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel, as incurred. FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

6.2    **Insurance** –In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

6.3    **Limitation of liability** – You agree that no Indemnified Person shall be liable to you, or your successors, affiliates or assigns for damages in excess of the total amount of the fees paid to FTI under this Engagement Contract. Without limiting the generality of the foregoing, in no event shall any Indemnified

9

Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

7.   **Governing Law, Jurisdiction and WAIVER OF JURY TRIAL** — The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The parties submit to the non-exclusive jurisdiction of New York Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.  TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

<u>Confirmation of Standard Terms and Conditions</u>

Subject to the terms and conditions of the Engagement Letter, we agree that FTI Consulting, Inc. is engaged upon the terms set forth in these Standard Terms and Conditions as outlined above.

**On behalf of Corinthian Colleges, Inc.**

By: _____

Name:  STAN A. MORTENSEN

Title:  EVP & General Counsel

Date: _____

## EXHIBIT B

## INITIAL SCHEDULE OF TEMPORARY STAFF

| Staff | Level |
|---|---|
| William Nolan | Senior Managing Director |
| Amir Agam | Senior Managing Director |
| Tamara McGrath | Managing Director |
| Walter Brown | Managing Director |
| James Chu | Senior Director |
| Jessica Liew | Consultant |
| Michael Yoshimura | Consultant |
| Krishan Sutharshana | Consultant |

11

**<u>Exhibit 2</u>**

**List of Potential Parties in Interest Searched**

**Debtor Affiliates**
- Ashmead Education, Inc.
- Career Canada C.F.P. Limited
- Career Choices, Inc.
- CDI Education USA, Inc.
- Corinthian Property Group, Inc.
- Corinthian Schools, Inc.
- ECAT Acquisition, Inc.
- ETON Education, Inc.
- Everest College Phoenix, Inc.
- Everest Colleges Canada, Inc.
- Florida Metropolitan University, Inc.
- Grand Rapids Educational Center, Inc.
- Heald Capital, LLC
- Heald College, LLC
- Heald Education, LLC
- Heald Real Estate, LLC
- MJB Acquisition Corporation
- National School of Technology
- Pegasus Education, Inc.
- QIC Acquisition Corporation
- Quickstart Intelligence Corporation
- Rhodes Business Group, Inc.
- Rhodes Colleges, Inc.
- SD III-B Heald Holdings Corp.
- Sequoia Education, Inc.
- Socle Education, Inc.
- SP PE VII-B Heald Holdings Corp.
- Titan Schools, Inc.
- Ward Stone College

**Current and Recent Former Officers and Directors**
- Adler, Hank
- Altschuler, Rupert
- Austin, Gloria
- Bereczky, Andrew
- Black, Kelly
- Bosic, Robert
- Buchanan, William
- Bunje, Robert
- Carnagey, Nikee
- Cassetta, Carmella

- Crow, Steve
- Dean, Kim
- Deshon, Eva
- Dionisio, John
- Dunlap, Anna Marie
- Ferguson, Mark
- Flores, Melissa
- Gold, Darren
- Guida, Anthony
- Hartshorn, Terry
- Kane, Alice
- Kennedy, Julia
- Lee, Robert
- Luedtke, Luther
- Massimino, Jack
- McCabe, Michael
- Mirr, Jim
- Morial, Marc H.
- Mortensen, Stan
- Ord, Kenneth
- Owen, Robert
- Pelesh, Mark
- Persavich, Jon
- Poldoian, David
- Rajasalu, Eric
- Ramsay, Sandra
- Rawls, Terry
- Robinson, Sharon P.
- Scherer, Diana
- Schnitker, Kelly
- Semaan, Hicham
- Simpson, Richard
- Skladany, Linda Arey
- St. Pierre, Paul
- Stiglich, Michael
- Streets, Fran
- Sullivan, Tim
- Van Duinen, Roger
- Vignone, Andrew
- Wade, Jim
- Wilson, Beth

**Banks**
- Bank of America
- Bank of the West
- BMO Harris Bank, N.A.
- California Bank and Trust
- Capital West
- Citibank, N.A.
- First Hawaiian Bank
- MUFG Union Bank, N.A.
- One West Bank N.A.
- U.S. Bank, N.A.
- Union Bank

**Surety Bondholders**
- Commonwealth of Massachusetts
- Commonwealth of Massachusetts, Division of Professional Licensure
- Fidelity and Deposit Company of Maryland
- State of Alabama
- State of Alabama, Dept. of Postsecondary Education
- State of Colorado
- State of Hawaii
- State of Kansas
- State of Kansas - Board of Regents
- State of Michigan
- State of Nebraska
- State of Nevada
- State of Nevada Commission on Postsecondary Education
- State of Nevada Dept. of Education
- State of Oklahoma
- State of Oregon, Higher Education Coordinating Commission, Private Career Schools Unit
- State of Washington
- State of West Virginia
- State of Wisconsin
- Western Surety Company

**Litigants and Litigants' Counsel**
- Aerotek, Inc.
- Chapin Fitzgerald & Bottini LLP

- Charlie Steinberg
- Eric T. Schneiderman, New York AG
- Frank Erickson
- Glancy Binkow & Goldberg LLP
- J.B. Van Hollen, Wisconsin AG
- Jason Pleggenkuhle, Asst. Minnesota AG
- Jimmy Elias Karam
- Johnson Bottini, LLP
- Jones Day
- Kamala Harris, California AG
- Lara Sutherlin, Asst. Wisconsin AG
- Law Offices of Kevin T. Barnes
- Law Offices of Scott D. Levy
- Lori Swanson, Minnesota AG
- Marriott Hotel Services, Inc.
- Martha Coakley, Massachusetts AG
- McKinley Avenue, LLC
- Melvin L. Goldberg, Asst. New York AG
- Michael G. Salemi, CPFB Counsel
- Nicholas G. Campins, Cal AG Counsel
- Peter Leight, Asst. Massachusetts AG
- Pomerantz Grossman Hufford Dahlstrom & Fross LLP
- Rene D. Harrod, Asst. Florida AG
- Robert C. Hannan, Sr.
- Rodney Fair, Office of Inspector General
- Shook, Hardy & Bacon L.L.P.
- StudentScout, LLC.
- Theresa Edwards, Asst. Florida AG
- Thomas J. Miller
- Yessyka Santana

**Insurers**
- American Zurich Insurance Company
- Axis Insurance Company
- Empire Indemnity Insurance Company
- Federal Insurance Company - Chubb

- Homeland Insurance Company of New York - One Beacon
- Liberty Insurance Underwriters, Inc.
- National Union Fire Insurance Company of Pittsburgh, PA (AIG)
- Navigators Specialty Insurance Co.
- RSUI Indemnity Company
- XL Specialty Insurance Company
- Zurich American Insurance Company

**Letters of Issuers and Credit Beneficiaries**
- Bank of America, N.A.
- Bank of America, N.A. Trade Operations
- Bank of the West
- Elavon, Inc.
- MUFG Union Bank, N.A.
- One West Bank, N.A.
- Plaza West Building, LLC
- Square 407 Limited Partnership
- U.S. Bank, N.A.
- Western Surety Company
- Zurich American Insurance Company
-

**Lienholders**
- ASFG, LLC
- Bank of American, N.A.
- California First National Bank
- Campus Student Funding, LLC
- CIT Finance LLC
- CIT Technology Financing Services, Inc.
- CSI Leasing, Inc.
- Department of Tax Administration, County of Fairfax, Virginia
- Employment Development Department
- First Financial Corporate Leasing, LLC
- First National Bank of St. Louis
- First National Capital, LLC

- G.E. Capital Corporation
- Henry Schein Inc.
- Hewlett-Packard Financial Services Company
- LaSalle Systems Leasing, Inc.
- MB Financial Bank, N.A.
- Prime Alliance Bank, Inc.
- U.S. Bancorp Equipment Finance, Inc.
- U.S. Bancorp Oliver-Allen Technology Leasing
- Variant Leasing Corporation
- Wells Fargo Equipment Finance, Inc.
- Winthrop Resources Corporation
-

**Professionals**
- Abernathy MacGregor Group Inc.
- Barclays Capital Inc.
- Carl Mark Advisory Group LLC
- Cooley LLP
- Deloitte Tax LLP
- Duane Morris LLP
- Eduvize, LLC
- Ernst & Young US LLP
- Fagre Baker Daniels LLP
- First Advantage Litigation Consulting
- Globalview Advisors LLC
- Hilco Real Estate, LLC
- Homer Bonner Jacobs, P.A.
- Hueston Hennigan LLP
- Irell & Manella LLP
- K&L Gates LLP
- Kirkland & Ellis
- Latham & Watkins LLP
- Munger, Tolles & Olson LLP
- O'Melveny & Myers LLP
- Payne & Fears LLP
- Proskauer Rose LLP
- PricewaterhouseCoopers LLP
- Richards Layton & Finger
- Sidley Austin LLP
- Skadden, Arps, Slate, Meagher & Flom LLP

3

- Weworski and Associates
- 

**Top Creditors**
- AcademixDirect, Inc.
- ACI Specialty Benefits
- Aerotek, Inc.
- Ambassador Education Solutions
- Atrilogy Solutions Group, Inc.
- BDA (Bensussen Deutsch & Associates)
- Bureau for Private Postsecondary Ed.
- Campus Management Corp.
- CareerBuilder, LLC
- Cebra B. Graves
- Comcast Spotlight
- Cooley LLP
- Deccan Plateau Corporation
- Drinker Biddle & Reath LLP
- Dyntek Services
- ECMC Solutions Corporation
- eLoyalty, LLC
- Gaylord National Resort & Convention Center
- Graebel Relocation Svc Worldwide, Inc.
- Guardsmark, LLC
- Hewlett-Packard Co, Inc.
- Inter Media Advertising
- Intralinks, Inc
- Jones Lang LaSalle Americas, Inc.
- Jones Lang LaSalle Brokerage, Inc.
- Lampert 25500 Industrial Blvd., LLC
- LBA Realty Fund II - WBP III, LLC
- Lead Pro Direct LLC
- Moraga Enterprises
- NASDAQ Stock Market, The LLC
- NBCU
- OptimalResume.com, Inc.
- P.R.G. Investment Fund, L.P.
- Payne & Fears LLP
- PCM Sales, Inc.
- Pocket Nurse Enterprises, Inc.

- PricewaterhouseCoopers LLP
- Profiles International, Inc.
- Qualtrics Labs, Inc.
- Rackspace Hosting
- Securitas Security Services USA, Inc.
- Squar, Milner, Peterson, Miranda & Williamson LLP
- Store Master Funding I, LLC
- StudentScout, LLC
- SuccessFactors, Inc.
- Tallan, Inc.
- Testout Corporation
- Tri Dimensional Solutions Inc.
- Walgreens of Hawaii, LLC
- Watt Long Beach, LLC

**United States Trustee and Court Personnel for the District of Delaware (and Key Staff Members)**
- Attix, Lauren
- Bello, Rachel
- Bird, David D.
- Buchbinder, David
- Capp, Laurie
- Carey, Kevin J.
- DeAngelis, Roberta A.
- Dortch, Shakima L.
- Farrell, Catherine
- Fox, Timothy J., Jr.
- Gadson, Danielle
- Giordano, Diane
- Green, Christine
- Gross, Kevin
- Grottini, Donna
- Hackman, Benjamin
- Haney, Laura
- Heck, Jeffrey
- Hunt, Nancy
- Johnson, Lora
- Kenney, Mark
- Leamy, Jane
- Marvel, Ivone
- Murray, Tony

4

- O'Malley, James R.
- Panacio, Michael
- Patton, Tiiara
- Sarkessian, Juliet
- Scaruzzi, Sherry
- Schepacarter, Richard
- Silverstein, Laurie S.
- Shannon, Brendan L.
- Sontchi, Christopher S.
- Szymanski, Cheryl
- Tinker, T. Patrick
- Vinson, Ramona
- Walker, Jill
- Walrath, Mary F.
- Werkheiser, Rachel
- West, Michael
- Wynn, Dion

**Other (Asset Buyers)**
- 360training.com
- Consumer Financial Protection Bureau
- Educational Credit Management Corporation
- Goal Structured Solutions
- HCA - HealthONE LLC
- Hillsborough Center, Inc.
- James Cole, U.S. ED
- James Runcie, U.S. ED
- Mushtaq Gunja, U.S. ED
- Office of the Attorney General – State of Arkansas
- Office of the Attorney General – State of Arizona
- Office of the Attorney General – State of California
- Office of the Attorney General – State of Colorado
- Office of the Attorney General – State of Connecticut
- Office of the Attorney General – State of Florida
- Office of the Attorney General – State of Hawaii
- Office of the Attorney General – State of Idaho
- Office of the Attorney General – State of Iowa

- Office of the Attorney General – State of Kentucky
- Office of the Attorney General – State of Minnesota
- Office of the Attorney General – State of Missouri
- Office of the Attorney General – State of Nebraska
- Office of the Attorney General – State of New Mexico
- Office of the Attorney General – State of New York
- Office of the Attorney General – State of North Carolina
- Office of the Attorney General – State of Oregon
- Office of the Attorney General – State of Pennsylvania
- Office of the Attorney General – State of Tennessee
- Office of the Attorney General – State of Washington
- Office of the Attorney General – State of Wisconsin
- Robin Minor, U.S. ED
- Store Capital Acquisitions, LLC
- Ted Mitchell, U.S. ED
- U.S. Department of Education
- Unity Church of Melbourne
- Zenith Education Group

**<u>Exhibit 3</u>**

**Disclosure of FTI Relationships**

**Debtor Affiliates**
- Corinthian Colleges, Inc.
- Heald Capital, LLC
- Heald College, LLC
- SD III-B Heald Holdings Corp.
- SP PE VII-B Heald Holdings Corp.

**Banks**
- Bank of America
- Bank of the West
- BMO Harris Bank, N.A.
- California Bank and Trust
- Citibank, N.A.
- First Hawaiian Bank
- MUFG Union Bank, N.A.
- One West Bank N.A.
- U.S. Bank, N.A.
- Union Bank

**Surety Bondholders**
- Commonwealth of Massachusetts
- Fidelity and Deposit Company of Maryland
- State of Alabama
- State of Colorado
- State of Kansas
- State of Michigan
- State of Nebraska
- State of Nevada
- State of Washington
- State of West Virginia
- State of Wisconsin

**Insurers**
- American Zurich Insurance Company
- Federal Insurance Company - Chubb
- National Union Fire Insurance Company of Pittsburgh, PA (AIG)
- Zurich American Insurance Company

**Letters of Credit Issuers and Beneficiaries**
- Bank of America, N.A.

- Bank of America, N.A. Trade Operations
- Bank of the West
- Elavon, Inc.
- MUFG Union Bank, N.A.
- One West Bank, N.A.
- U.S. Bank, N.A.
- Zurich American Insurance Company

**Lienholders**
- Bank of American, N.A.
- California First National Bank
- CIT Finance LLC
- CIT Technology Financing Services, Inc.
- Employment Development Department
- G.E. Capital Corporation
- Henry Schein Inc.
- Hewlett-Packard Financial Services Company
- MB Financial Bank, N.A.
- U.S. Bancorp Equipment Finance, Inc.
- U.S. Bancorp Oliver-Allen Technology Leasing
- Wells Fargo Equipment Finance, Inc.

**Litigants and Litigants' Counsel**
- Eric T. Schneiderman, New York AG
- J.B. Van Hollen, Wisconsin AG
- Jones Day
- Lara Sutherlin, Asst. Wisconsin AG
- Marriott Hotel Services, Inc.
- Martha Coakley, Massachusetts AG
- Shook, Hardy & Bacon L.L.P.
- Thomas J. Miller, Iowa AG

**Professionals**
- Barclays Capital Inc.
- Cooley LLP
- Deloitte Tax LLP
- Duane Morris LLP

- Ernst & Young US LLP
- Fagre Baker Daniels LLP
- Hueston Hennigan LLP
- Irell & Manella LLP
- K&L Gates LLP
- Kirkland & Ellis
- Latham & Watkins LLP
- Munger, Tolles & Olson LLP
- O'Melveny & Myers LLP
- Payne & Fears LLP
- Proskauer Rose LLP
- PricewaterhouseCoopers LLP
- Richards Layton & Finger
- Sidley Austin LLP
- Skadden, Arps, Slate, Meagher & Flom LLP

**Top Creditors**
- Comcast Spotlight
- Cooley LLP
- Drinker Biddle & Reath LLP
- Guardsmark, LLC
- Hewlett-Packard Co, Inc.
- Jones Lang LaSalle Americas, Inc.
- Jones Lang LaSalle Brokerage, Inc.
- NASDAQ Stock Market, The LLC
- NBCU
- Payne & Fears LLP
- PricewaterhouseCoopers LLP
- Securitas Security Services USA, Inc.
- Walgreens of Hawaii, LLC

**Other**
- Consumer Financial Protection Bureau
- HCA - HealthONE LLC
- Office of the Attorney General – State of Arkansas
- Office of the Attorney General – State of Arizona
- Office of the Attorney General – State of Colorado
- Office of the Attorney General – State of Connecticut

- Office of the Attorney General – State of Idaho
- Office of the Attorney General – State of Iowa
- Office of the Attorney General – State of Missouri
- Office of the Attorney General – State of Nebraska
- Office of the Attorney General – State of New Mexico
- Office of the Attorney General – State of New York
- Office of the Attorney General – State of Pennsylvania
- Office of the Attorney General – State of Tennessee
- Office of the Attorney General – State of Wisconsin
- U.S. Department of Justice

2