# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re  Corinthian Colleges, Inc., et al.            Case No.  15-10952(KJC)

Debtor

## INITIAL MONTHLY OPERATING REPORT
**File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.**

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation.
Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession."
Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit
agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| **12-Month Cash Flow Projection (Form IR-1)** | Refer to cash collateral budget attached | |
| **Certificates of Insurance:** | | |
| Workers Compensation | Refer to listing of insurance policies attached | |
| Property | | |
| General Liability | | |
| Vehicle | | |
| Other: | | |
| Identify areas of self-insurance w/liability caps | | |
| **Evidence of Debtor in Possession Bank Accounts** | | |
| Tax Escrow Account | Refer to cash management motion attached | |
| General Operating Account | | |
| Money Market Account pursuant to Local Rule 4001-3.  Refer to http://www.deb.uscourts.gov/ | | |
| Other: | | |
| **Retainers Paid (Form IR-2)** | Refer to schedule of retainers paid attached | |
| | | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached
are true and correct to the best of my knowledge and belief.

_____          _____
Signature of Debtor                              Date

_____          _____
Signature of Joint Debtor                          Date

_____          _____5/15/15_____
Signature of Authorized Individual*                  Date

_____Robert C. Owen_____          _____EVP & Chief Administrative Officer___
Printed Name of Authorized Individual                Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor
is a partnership; a manager or member if debtor is a limited liability company.

FORM IR
(4/07)

Cash Collateral Budget

Case 15-10952-JTD   Doc 121-1   Filed 05/15/15   Page 3 of 169

Preliminary Draft
Subject to Material Change

EXHIBIT "B"

## Corinthian Colleges, Inc. -- Consolidated
### Cash Collateral Budget

($ in Thousands)

| Week Ending: | 1 Projected 5/8/2015 | 2 Projected 5/15/2015 | 3 Projected 5/22/2015 | 4 Projected 5/29/2015 | 5 Projected 6/5/2015 | 6 Projected 6/12/2015 | 7 Projected 6/19/2015 | 8 Projected 6/26/2015 | 9 Projected 7/3/2015 | 10 Projected 7/10/2015 | 11 Projected 7/17/2015 | 12 Projected 7/24/2015 | 13 Projected 7/31/2015 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Receipts | – | 200 | 2,000 | 250 | 1,001 | – | 1,374 | 50 | – | – | 343 | – | 50 | 5,268 |
| **ORDINARY COURSE DISBURSEMENTS:** | | | | | | | | | | | | | | |
| Payroll Benefits and Taxes - Campus Staff | 1,303 | 927 | 170 | 82 | – | 7 | – | 7 | – | 7 | – | 7 | – | 2,510 |
| Payroll Benefits and Taxes - Corp Staff | 6 | 137 | 14 | 99 | – | 81 | 10 | 61 | – | 61 | – | 61 | 31 | 562 |
| Rent | – | – | 1,524 | 227 | – | – | – | 227 | – | – | – | – | – | 1,977 |
| CSC Rent | – | – | – | – | – | – | – | 35 | 35 | – | – | – | – | 70 |
| Transition Services Agreement Pmts/Accounting | – | 307 | 203 | – | 77 | 77 | 70 | 70 | 70 | – | – | – | – | 971 |
| Document Management | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | 70 | – | 840 |
| Moving / Location Expenses | – | 75 | 50 | 45 | – | – | – | – | 45 | 20 | – | 20 | 30 | 285 |
| Security | 60 | – | – | (30) | 5 | 5 | 5 | 5 | 5 | 100 | 5 | 5 | 55 | 280 |
| Utilities (including deposits) | 25 | – | 25 | – | – | – | – | – | – | – | – | – | – | 50 |
| Ordinary Course Professionals | – | – | – | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 250 |
| Other Operating Expenses & Consultants | 128 | 226 | 86 | 36 | 50 | 55 | 65 | 45 | 24 | 19 | 29 | 30 | 15 | 865 |
| **Total Op Expenses** | 1,697 | 1,818 | 2,141 | 615 | 162 | 250 | 150 | 415 | 175 | 217 | 52 | 103 | 806 | 8,600 |
| **OPERATING CASH FLOW** | (1,697) | (1,618) | (141) | (365) | 839 | (250) | 1,224 | (365) | (175) | (217) | 291 | (103) | (756) | (3,333) |
| **NON-OPERATING C/F:** | | | | | | | | | | | | | | |
| CCI Professional Fees | – | – | – | – | – | – | – | (340) | – | – | – | – | (512) | (852) |
| Committee Professional Fees | – | – | – | – | – | – | – | (125) | – | – | – | – | – | (125) |
| Lender Professional Fees | – | – | – | – | – | – | – | (275) | – | – | – | – | (175) | (450) |
| Noticing Costs / Plan Costs | – | – | – | (70) | – | – | – | (85) | – | – | – | (85) | – | (240) |
| UST Fees | – | – | – | – | – | – | – | – | (9) | – | – | – | – | (9) |
| Other Non-Operating Cash Flows | – | – | – | – | – | – | – | – | – | – | – | – | – | – |
| **Sub-Total Non-Operating** | – | – | – | (70) | – | – | – | (825) | (9) | – | – | (85) | (687) | (1,676) |
| **NET CASH FLOW** | (1,697) | (1,618) | (141) | (435) | 839 | (250) | 1,224 | (1,190) | (184) | (217) | 291 | (188) | (1,443) | (5,009) |
| Beg Book Balance* | 6,145 | 4,448 | 2,830 | 2,689 | 2,254 | 3,093 | 2,843 | 4,067 | 2,877 | 2,693 | 2,477 | 2,767 | 2,579 | 6,145 |
| Net Cash Flow | (1,697) | (1,618) | (141) | (435) | 839 | (250) | 1,224 | (1,190) | (184) | (217) | 291 | (188) | (1,443) | (5,009) |
| Ending Book Balance | 4,448 | 2,830 | 2,689 | 2,254 | 3,093 | 2,843 | 4,067 | 2,877 | 2,693 | 2,477 | 2,767 | 2,579 | 1,136 | 1,136 |
| **Payroll Headcount After Terminations by Week** | | | | | | | | | | | | | | |
| Campus Staff Remaining at End of Week | 171 | 96 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | |
| Corp Staff Remaining at End of Week | 11 | 11 | 9 | 8 | 8 | 8 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | |

*Beginning Book Balance is estimated based on closing balances at 5/1/15, but are subject to change based on activity between 5/1/15 and 5/4/15.

Certificates of Insurance

**Corinthian Colleges, Inc.**
**Insurance Policies**

| | NAME | CONTRACT NUMBER | CONTRACT DATE | CONTRACT DESCRIPTION | Documentation |
|---|---|---|---|---|---|
| 1 | ZURICH AMERICAN INSURANCE COMPANY | BAP 5532875-00 | 3/31/2014-7/1/2015 | Auto Insurance Policy | Attached |
| 2 | Federal Insurance Company | 7642-58-87 HOU | 3/31/2014-7/1/2015 | Machinery Breakdown Insurance | Attached |
| 3 | AXIS INSURANCE COMPANY | MNP772770-14 | 3/31/2014-7/1/2015 | General Liability Insurance - US | Attached |
| 4 | FEDERAL INSURANCE COMPANY | 662-70-40 | 3/31/2014-7/1/2015 | Commercial Property | Attached |
| 5 | Homeland Insurance Company of New York | 795001540 | 3/31/2014-7/1/2015 | Commercial Property | Attached |
| 6 | Empire Insurance Companies | XPP4603531 | 3/31/2014-7/1/2015 | Difference in Conditions EQ, Flood & Wind | Attached |
| 7 | AXIS INSURANCE COMPANY | MNU772789/01/2014 | 3/31/2014-7/1/2015 | Excess Liability | Attached |
| 8 | LIBERTY INSURANCE UNDERWRITERS INC. | AHV-102698003 | 5/23/2014-5/23/2015 | Student Medical Malpractice | Attached |
| 9 | LIBERTY INSURANCE UNDERWRITERS INC. | AHV-102696003 | 5/23/2014-5/23/2015 | Student Medical Malpractice | Attached |
| 10 | AMERICAN ZURICH INSURANCE COMPANY | WC 9304937-14 | 2/2/2015-7/1/2015 | Workers Compensation | Attached |
| 11 | Navigators Specialty Insurance Company | SF13ESP0A4L00NC | 3/31/2013-3-31/2016 | Pollution Legal Liability | Attached |
| 12 | National Union Fire Insurance Co of Pitt, Pa. (AIG) | 02-778-51-66 | 3/31/2015-3/31/2018 | D&O | Attached |
| 13 | XL Specialty Insurance Company | ELU133658-14 | 3/31/2015-3/31/2018 | D&O - Excess | Attached |
| 14 | RSUI Indemnity Company | NHS656563 | 3/31/2015-3/31/2018 | D&O - Excess | Attached |
| 15 | National Union Fire Insurance Co of Pitt, Pa. (AIG) | 02-791-51-56 | 3/31/2015-3/31/2018 | Side A DIC | Attached |
| 16 | National Union Fire Insurance Co of Pitt, Pa. (AIG) | 02-812-6265 | 3/31/2015-3/31/2018 | Fiduciary Liability | Attached |
| 17 | XL Specialty Insurance Company | ELU138421-15 | 3/31/2015-3/31/2016 | New D&O, Side A only | Attached |

# Amendatory Endorsement
**Zurich American Insurance Company**



**ZURICH**

**Endorsement No.1**

| Branch:<br>**LOS ANGELES OFFICE** | Policy Number<br>BAP 5532875-00 | Producer Code<br>18183-000 |
|---|---|---|

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Policy Effective:<br>From: 03/31/2014        To:  07/01/2015 | Policy Changes Effective:<br>**03/0312015** |
|---|---|

| Named Insured: Corinthian Colleges, Inc. | Authorized Representative: |
|---|---|

This endorsement modifies insurance provided under the following:

**COMMERCIAL AUTOMOBILE LIABILITY PART**

It is hereby agreed that the policy period has been extended to 07/01/2015.

This endorsement is subject to audit

All other terms and conditions of this policy remain unchanged.

Countersigned by: _____    _____
                                    Authorized Representative                                              Date

U-CA-388-A CW (07/94)
Page 1 of 1





# Disclosure Statement

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.



# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.





**ZURICH**

---

**COMMON POLICY DECLARATIONS**

| | |
|---|---|
| Policy Number   BAP 5532875-00 | Renewal of Number           NEW |

Named Insured and Mailing Address
CORINTHIAN COLLEGES, INC
6 HUTTON CENTRE DR
STE 400
SANTA ANA CA 92707-5745

Producer and Mailing Address
ARTHUR J. GALLAGHER & COMPANY
505 N BRAND BLVD STE 600
GLENDALE CA 91203-3914

Producer Code   18183-000

Policy Period: Coverage begins   03-31-2014 at 12:01 A.M.;   Coverage ends 03-31-2015 at 12:01 A.M.

The name insured is   ☐ Individual   ☐ Partnership   ☒ Corporation
☐ Other:

This insurance is provided by one or more of the stock insurance companies which are members of the Zurich-American Insurance Group. The company that provides coverage is designated on each Coverage Part Common Declarations. The company or companies providing this insurance may be referred to in this policy as "The Company", we, us, or our. The address of the companies of the Zurich-American Insurance Group are provided on the next page.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE(S):**

| | | |
|---|---|---|
| BUSINESS AUTOMOBILE | PREMIUM $ | 108,873.00 |
|  issued by ZURICH AMERICAN INSURANCE COMPANY | | |
| | | |
| CA AUTO SPECIAL PURPOSE SURCHARGE | $ | 23.00 |
| CO AUTO THEFT PREVENTION AUTHORITY FEE | $ | 2.00 |
| FL HURRICANE CATASTROPHE FUND | $ | 160.00 |
| KY SURCHARGE | $ | 21.00 |
| NY MOTOR VEHICLE LAW ENFORCEMENT FEE | $ | 20.00 |
| VA BIRTH-RELATED NEUROLOGICAL INJURY COMP FUND | $ | 2.00 |
| WA REGULATORY SURCHARGE | $ | 5.00 |

| | | | |
|---|---|---|---|
| **THIS PREMIUM MAY BE SUBJECT TO AUDIT.**<br>This premium does not include Taxes and Surcharges. | TOTAL | $ | 108,873.00 |
| **Taxes and Surcharges** | TOTAL | $ | 233.00 |

Form(s) and Endorsement(s) made a part of this policy at time of issue are listed on the **SCHEDULE of FORMS and ENDORSEMENTS.**

Countersigned this          day of

Authorized Representative

THIS DECLARATION TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART FORM(S), FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

U-GU-D-365-A (03/94)
Page 1 of 1





# Important Notice – In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).

*Nancy D. Mueller*

President

*D. King*

Corporate Secretary

---

**QUESTIONS ABOUT YOUR INSURANCE?**  Your agent or broker is best equipped to provide information about your insurance.  Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email:** info.source@zurichna.com

---

confidential

**POLICY NUMBER:**    BAP 5532875-00    **COMMERCIAL AUTO**

## ZURICH AMERICAN INSURANCE COMPANY

1400 American Lane
Schaumburg, Illinois 60196-1056
1-800-382-2150

# BUSINESS AUTO DECLARATIONS

**ITEM ONE**

**PRODUCER:**
ARTHUR J. GALLAGHER & COMPANY

**NAMED INSURED:**    CORINTHIAN COLLEGES, INC

**MAILING ADDRESS:**    6 HUTTON CENTRE DR
STE 400
SANTA ANA, CA 92707-5745

**POLICY PERIOD:**    From    03-31-2014    to    03-31-2015    at 12:01 A.M. Standard Time at your
mailing address shown above

**PREVIOUS POLICY NUMBER:**    NEW

**FORM OF BUSINESS:**

[X] CORPORATION    [ ] LIMITED LIABILITY COMPANY    [ ] INDIVIDUAL
[ ] PARTNERSHIP    [ ] OTHER _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception:  $    109,106.00 | | | | | |
|---|---|---|---|---|---|
| AUDIT PERIOD (IF APPLICABLE) | X | ANNUALLY | SEMI-ANNUALLY | QUARTERLY | MONTHLY |

**ENDORSEMENTS ATTACHED TO THIS POLICY:**
  **IL 00 17** — Common Policy Conditions (**IL 01 46** in Washington)
  **IL 00 21** — Broad Form Nuclear Exclusion (Not Applicable in New York)

SEE SCHEDULE OF FORMS AND ENDORSEMENTS

COUNTERSIGNED _____    BY _____
(Date)    (Authorized Representative)

**NOTE**
OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE
AT THE COMPANY'S OPTION.

U-CA-D-600B 06 10    Page 1



## ITEM TWO

**SCHEDULE OF COVERAGES AND COVERED AUTOS**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". **"Autos" are shown as covered "autos"** for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS | LIMIT | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $  1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | 5 | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS DEDUCTIBLE. | INCL |
| ADDED PERSONAL INJURY PROTECTION (or equivalent Added No-fault Coverage) | 5 | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | INCL |
| PROPERTY PROTECTION INSURANCE (Michigan only) | 5 | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS DEDUCTIBLE FOR EACH ACCIDENT. | INCL |
| AUTO MEDICAL PAYMENTS | 2,8 | $          5,000 | INCL |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | | SEPARATELY STATED IN THE MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | |
| UNINSURED MOTORISTS | 2 | SEE ENDT | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | SEE ENDT | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDORSEMENT DEDUCTIBLE FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR For Hired or Borrowed Autos. | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR For Hired Or Borrowed Autos. | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS SEE ENDORSEMENT DEDUCTIBLE, FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed Autos. | INCL |
| PHYSICAL DAMAGE TOWING AND LABOR | | FOR EACH DISABLEMENT OF A PRIVATE PASSENGER AUTO. | |
| | | **TAX/SURCHARGE/FEE** | $          233.00 |
| | | **PREMIUM FOR ENDORSEMENTS** | |
| | | **\*ESTIMATED TOTAL PREMIUM** | $      109,106.00 |

\*This policy may be subject to final audit.



**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | |
|---|---|---|
| **LIABILITY COVERAGE** | **ESTIMATED ANNUAL COST OF HIRE FOR ALL STATES** | **PREMIUM** |
| Primary Coverage | IF ANY | INCL |
| Excess Coverage | | |
| | TOTAL PREMIUM | |

For "autos" used in your motor carrier operations, cost of hire means:

(a) The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers), and if not included therein,

(b) The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

(c) The total dollar amount of any other costs (*i.e.*, repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| LIABILITY COVERAGE – Cost Of Hire Rating Basis for Autos NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| **LIABILITY COVERAGE** | **STATE** | **ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE** | **PREMIUM** |
| Primary Coverage | | | |
| Excess Coverage | | | |
| | | TOTAL PREMIUM | |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

confidential



**ITEM FOUR**
**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS (Cont'd)**

| COVERAGE | STATE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE FOR EACH STATE (Excluding Autos Hired With A Driver) | PREMIUM |
|---|---|---|---|---|
| **Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile or Farm Equipment)** | | | | |
| **COMPREHENSIVE** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS  $1,000,000  DEDUCTIBLE  FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. | | INCL |
| **SPECIFIED CAUSES OF LOSS** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS  DEDUCTIBLE FOR EACH COVERED AUTO FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. | | |
| **COLLISION** | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS, MINUS  $1,000,000  DEDUCTIBLE FOR EACH  COVERED AUTO. | | INCL |
| | | | **TOTAL PREMIUM** | INCL |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

confidential

confidential

Policy Number
BAP 5532875-00

ⓘ

**NEW YORK DECLARATIONS SUPPLEMENT**
THIS POLICY IS ISSUED BY THE
# ZURICH AMERICAN INSURANCE COMPANY

**ITEM ONE**

Named Insured    CORINTHIAN COLLEGES, INC

Effective Date:  03-31-14

12:01 A.M., Standard Time

Agent Name    ARTHUR J. GALLAGHER & COMPANY

Agent No.  18183-000

| COVERAGES | COVERED AUTO SYMBOLS | COVERAGE LIMIT | PREMIUM |
|---|---|---|---|
| SUPPLEMENTAL SPOUSAL LIABILITY | | See New York Supplemental Spousal Bodily Injury Liability Coverage Endorsement, CA 04 20 | |
| PERSONAL INJURY PROTECTION (OR EQUIVALENT NO-FAULT COVERAGE) | 5 | $   50,000 | INCL |
| OPTIONAL BASIC ECONOMIC LOSS (OBEL) NEW YORK ONLY | | $   25,000 for each covered auto | |
| ADDED PERSONAL INJURY PROTECTION (OR EQUIVALENT ADDED NO-FAULT COVERAGE | | | |
| AGGREGATE NO-FAULT BENEFITS NEW YORK ONLY | 5 | $   50,000 | INCL |
| MAXIMUM MONTHLY WORK LOSS NEW YORK ONLY | 5 | $   2,000 | INCL |
| DEATH BENEFIT NEW YORK ONLY | 5 | $   2,000 | INCL |
| OTHER NECESSARY EXPENSES (PER DAY) NEW YORK ONLY | 5 | $   25 | INCL |
| STATUTORY UNINSURED MOTORISTS | 2 | 25,000/50,000 | INCL |
| SUPPLEMENTARY UNINSURED/UNDERINSURED MOTORISTS (SUM) | | | |

NEW YORK SUPPLEMENTARY UNINSURED/UNDERINSURED MOTORISTS (SUM): The maximum amount payable under SUM coverage shall be the policy's SUM limits reduced and thus offset by motor vehicle bodily injury liability insurance policy or bond payments received from, or on behalf of, any negligent party involved in the accident, as specified in the SUM endorsement.

U-CA-D-398B (0807)

**Policy Number**
**BAP 5532875-00**



## SCHEDULE OF FORMS AND ENDORSEMENTS

### Zurich American Insurance Company

Named Insured  CORINTHIAN COLLEGES, INC

Effective Date: 03-31-14
12:01 A.M., Standard Time

Agent Name   ARTHUR J. GALLAGHER & COMPANY

Agent No.  18183-000

COMMON & AUTOMOBILE FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| U-GU-D-365-A | 03-94 | POLICY COMMON DECLARATIONS |
| U-GU-319-F | 01-09 | IMPORTANT NOTICE - IN WITNESS CLAUSE |
| U-CA-D-600B | 06-10 | BUSINESS AUTO DECLARATIONS |
| U-CA-D-398-B | 08-07 | NY AUTO SUPPLEMENT DEC |
| U-GU-619-A CW | 10-02 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| U-CA-388-A | 07-94 | BROAD FORM NAMED INSURED |
| CA 00 01 | 03-10 | BUSINESS AUTO COVERAGE FORM |
| U-CA-394-A | 07-94 | NY AUTO ACCIDENT INDEMNIFICATION ENDT |
| U-CA-411-D (CW) | 09-11 | PREMIUM AND REPORTS AGREEMENT-COMPOSITE |
| U-CA-424-E CW | 04-11 | COVERAGE EXTENSION ENDORSEMSNT |
| U-GU-1016-A CW | 06-10 | KNOWLEDGE BY POSITION OR DEPARTMENT |
| CA 01 12 | 01-14 | NY CHANGES IN BUSINESS AUTO AND TRUCKERS |
| CA 01 13 | 01-11 | COLORADO CHANGES |
| CA 01 16 | 08-08 | VA CHANGES BUSINESS AUTO COVERAGE FORM |
| CA 01 17 | 11-11 | WISCONSIN CHANGES |
| CA 01 18 | 11-13 | IDAHO CHANGES |
| CA 01 21 | 02-99 | LIMITED MEXICO COVERAGE |
| CA 01 25 | 12-02 | KENTUCKY CHANGES |
| CA 01 26 | 07-10 | NORTH CAROLINA CHANGES |
| CA 01 27 | 09-02 | HAWAII CHANGES |
| CA 01 35 | 01-08 | WASHINGTON CHANGES |
| CA 01 43 | 08-06 | CALIFORNIA CHANGES |
| CA 01 44 | 03-94 | WY CHANGES-DUTY TO DEFEND |
| CA 01 49 | 01-10 | OREGON CHANGES |
| CA 01 50 | 03-06 | SOUTH CAROLINA CHANGES |
| CA 01 66 | 03-06 | MISSOURI CHANGES - POLLUTION EXCLUSION |
| CA 01 70 | 03-10 | MARYLAND CHANGES |
| CA 01 72 | 10-13 | MT CHANGES - AUTO MED PAY COVERAGE |
| CA 01 75 | 07-04 | ARIZONA CHANGES |
| CA 01 77 | 04-12 | DELAWARE CHANGES |
| CA 02 01 | 12-04 | HI CHANGES - CANCELLATION & NONRENEWAL |
| CA 02 20 | 10-03 | MT CHANGES-CANCELLATION & NONRENEWAL |
| CA 02 25 | 01-14 | NEW YORK CHANGES - CANCELLATION |
| CA 02 55 | 04-12 | DE CHANGES - CANCELLATION & NONRENEWAL |
| CA 02 67 | 11-12 | FL CHANGES - CANCELLATION AND NONRENEWAL |
| CA 02 68 | 12-05 | VA CHANGES CANCELLATION AND NONRENEWAL |
| CA 03 05 | 02-97 | CALIFORNIA CHANGES - WAIVER OF COLL DED |
| CA 04 33 | 02-08 | INDIANA CHANGES-POLLUTION EXCLUSION |
| CA 04 40 | 01-11 | CO - AUTO MEDICAL PAYMENTS COVERAGE |
| CA 04 44 | 03-10 | WVR OF TRNSFR OF RGHTS OF RCVRY AGNST |
| CA 20 01 | 03-06 | ADDL INSD-LESSOR |
| CA 20 27 | 02-99 | REG PLATES NOT ISSUED FOR SPECIFIC AUTO |
| CA 20 48 | 02-99 | DESIGNATED INSURED |
| CA 21 03 | 11-11 | WI UNINSURED MOTORISTS COVERAGE |
| CA 21 04 | 12-12 | MISSOURI UNINSURED MOTORISTS COVERAGE |
| CA 21 05 | 01-10 | OREGON UM COVERAGE - BODILY INJURY |
| CA 21 10 | 03-06 | DELAWARE UNINSURED MOTORISTS COVERAGE |
| CA 21 11 | 01-09 | GA UM COV REDUCED BY AT-FAULT LIA LIMIT |
| CA 21 13 | 03-06 | MARYLAND UNINSURED MOTORISTS COVERAGE |
| CA 21 16 | 04-10 | NC UNINSURED MOTORISTS COVERAGE |
| CA 21 19 | 03-06 | SC UNINSURED MOTORISTS COVERAGE |
| CA 21 21 | 11-02 | VA UNINSURED MOTORIST ENDORSEMENT |
| CA 21 23 | 03-06 | WY UNINSURED MOTORISTS COVERAGE |

**U-GU-619-A CW (10/02)**



**Policy Number**
**BAP 5532875-00**

### SCHEDULE OF FORMS AND ENDORSEMENTS

## Zurich American Insurance Company

Named Insured   CORINTHIAN COLLEGES, INC

Effective Date: 03-31-14
12:01 A.M., Standard Time

Agent Name   ARTHUR J. GALLAGHER & COMPANY

Agent No.   18183-000

| | | |
|---|---|---|
| CA 21 26 | 01-11 | CO - UM COV. PD |
| CA 21 30 | 11-08 | IL UNINSURED MOTORISTS COVERAGE |
| CA 21 31 | 03-06 | MI UNINSURED MOTORISTS COVERAGE |
| CA 21 33 | 06-10 | OH UM AND UIM - BI |
| CA 21 34 | 01-08 | WA UNDERINSURED MOTORISTS COVERAGE |
| CA 21 36 | 01-09 | UT UM COVERAGE PROPERTY DAMAGE |
| CA 21 38 | 11-08 | IL UNDERINSURED MOTORISTS COV |
| CA 21 39 | 07-09 | AZ UNINSURED MOTORIST COVERAGE |
| CA 21 40 | 07-09 | AZ UNDERINSURED MOTORISTS COVERAGE |
| CA 21 44 | 12-11 | INDIANA UNINSURED MOTORISTS COVERAGE |
| CA 21 45 | 11-11 | WI UNDERINSURED MOTORISTS COVERAGE |
| CA 21 48 | 11-08 | LA UM COVERAGE - BODILY INJURY |
| CA 21 50 | 01-11 | CO UM COVERAGE - BODILY INJURY |
| CA 21 53 | 03-06 | IL UM COVERAGE PROPERTY DAMAGE |
| CA 21 59 | 03-06 | ALABAMA UM INSURANCE |
| CA 21 62 | 11-13 | UT UNINSURED MOTORISTS COVERAGE |
| CA 21 70 | 03-06 | NE UNINSURED & UNDERINSURED MOTORIST COV |
| CA 21 72 | 10-09 | FL UNINSURED MOTORISTS COV - NON STACKED |
| CA 21 76 | 09-06 | KENTUCKY UNINSURED MOTORISTS COVERAGE |
| CA 21 79 | 03-10 | KENTUCKY UNDERINSURED MOTORISTS COVERAGE |
| CA 21 81 | 01-10 | LA UM COVERAGE - PROPERTY DAMAGE |
| CA 21 84 | 09-09 | HAWAII UM COVERAGE (NONSTACKED) |
| CA 21 85 | 09-09 | HAWAII UIM COVERAGE (NONSTACKED) |
| CA 21 88 | 04-13 | SC UNDERINSURED MOTORISTS COVERAGE |
| CA 21 92 | 06-12 | PA UM COVERAGE NON-STACKED |
| CA 21 93 | 06-12 | PA UIM MOTORISTS COVERAGE NON-STACKED |
| CA 22 08 | 11-97 | DE PERSONAL INJURY PROTECTION ENDT |
| CA 22 10 | 01-13 | FL PERSONAL INJURY PROTECTION |
| CA 22 16 | 03-11 | KY PERSONAL INJURY PROTECTION |
| CA 22 19 | 02-13 | MD PERSONAL INJURY PROTECTION ENDT |
| CA 22 20 | 03-11 | MI PERSONAL INJURY PROTECTION |
| CA 22 24 | 03-06 | MI PROPERTY PROTECTION COVERAGE |
| CA 22 32 | 01-11 | NY MANDATORY PIP ENDORSEMENT |
| CA 22 36 | 01-10 | OR PERSONAL INJURY PROTECTION |
| CA 22 37 | 03-06 | PA BASIC FIRST PARTY BENEFIT |
| CA 22 44 | 03-06 | UTAH PERSONAL INJURY PROTECTION |
| CA 22 46 | 11-02 | VA MEDICAL EXPENSE & INCOME LOSS BENEFIT |
| CA 22 65 | 09-09 | HAWAII PERSONAL INJURY PROTECTION COV |
| CA 22 66 | 09-09 | HAWAII ADDED PERSONAL INJURY PROTECTION |
| CA 26 15 | 02-13 | MO - AMENDMENT OF SINGLE INT POL PROV |
| CA 31 04 | 09-10 | MO - UNDERINSURED MOTORISTS COVERAGE |
| CA 31 06 | 11-13 | UTAH UNDERINSURED MOTORISTS COVERAGE |
| CA 31 07 | 10-13 | NY SUPPLEMENTARY UM/UIM ENDT |
| CA 31 15 | 03-06 | IDAHO UNINSURED MOTORISTS COVERAGE |
| CA 31 16 | 12-11 | IN UNDERINSURED MOTORISTS COVERAGE |
| CA 31 18 | 11-11 | IDAHO UNDERINSURED MOTORISTS COVERAGE |
| CA 31 33 | 12-07 | MT UIM COVERAGE - NON-STACKED |
| CA 31 35 | 12-07 | MT UNINSURED COVERAGE - NON-STACKED |
| CA 99 03 | 03-06 | AUTO MEDICAL PAYMENTS COVERAGE |
| CA 99 12 | 10-97 | WY CHANGES FEDL EMPL USING AUTOS GOV'T |
| CA 99 16 | 03-10 | HIRED AUTO SPECIFIED AS COV AUTO YOU OWN |
| CA 99 23 | 03-10 | RENTAL REIMBURSEMENT COVERAGE |
| CA 99 24 | 11-11 | WI AUTO MEDICAL PAYMENTS COVERAGE |
| CA 99 33 | 02-99 | EMPLOYEES AS INSUREDS |
| CA 99 37 | 03-10 | GARAGEKEEPERS COVERAGE |
| IL 00 03 | 09-08 | CALCULATION OF PREMIUM |

**U-GU-619-A CW (10/02)**

**Policy Number**
**BAP 5532875-00**



## SCHEDULE OF FORMS AND ENDORSEMENTS

### Zurich American Insurance Company

Named Insured   CORINTHIAN COLLEGES, INC

Effective Date: 03-31-14
12:01 A.M., Standard Time

Agent Name   ARTHUR J. GALLAGHER & COMPANY

Agent No.  18183-000

| | | |
|---|---|---|
| IL 00 17 | 11-98 | COMMON POLICY CONDITIONS |
| IL 00 21 | 09-08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDT |
| IL 02 70 | 09-12 | CA CHANGES - CANCELLATION & NONRENEWAL |
| IL 02 77 | 03-12 | LOUISIANA CHANGES-CANC & NONRENL |
| U-GU-298-B CW | 04-94 | CANCELLATION BY US |
| U-CA-531-B | 02-08 | NOTICE REGARDING TERRORISM PREMIUM |
| CA 04 45 | 10-13 | GOLF CARTS AND LOW-SPEED VEHICLES |
| CA 04 24 | 04-06 | CA - AUTO MEDICAL PAYMENTS COVERAGE |
| CA 21 54 | 09-09 | CA UM COVERAGE - BODILY INJURY |
| CA 21 55 | 06-10 | CALIFORNIA UM COVERAGE - PROPERTY DAMAGE |
| U-GU-1169-A CO | 06-13 | CO CIVIL UNION ACT POLICYHOLDER NOTICE |
| CA 99 48 | 03-06 | POLLUTION LIABILITY - BROADENED COVERAGE |
| CA 99 60 | 03-06 | AUDIO, VISUAL AND DATA ELECTRONIC |

U-GU-619-A CW (10/02)



**ENDORSEMENT**

Insurance for this coverage part provided by:
ZURICH AMERICAN INSURANCE COMPANY

Policy Number
BAP 5532875-00
Renewal of Number
NEW

## BROAD FORM NAMED INSURED

CORINTHIAN COLLEGES, INC.
AND ANY SUBSIDIARY COMPANY AS NOW FORMED OR CONSTITUTED, AND ANY
OTHER COMPANY OVER WHICH THE NAMED INSURED HAS ACTIVE CONTROL SO LONG
AS THE NAMED INSURED OR ANY SUBSIDIARY COMPANY HAS AN OWNERSHIP
INTEREST OF MORE THAN 50% OF SUCH COMPANY.

U-CA-388-A (07-94)

 # CHUBB GROUP OF INSURANCE COMPANIES

2800 Post Oak Blvd., Suite 2400, Houston, Texas 77056-6118

Telephone  (713) 297-4600
Facsimile  (713) 297-4750



April 3, 2015

Patricia Goldberg
Arthur J Gallagher & Company
505 N. Brand Blvd. #600
Glendale, CA  91203-3944

| | | | | | |
|---|---|---|---|---|---|
| Subject: | **Corinthian Colleges, Inc.** | | | | |
| | Policy:  ATD ESP | Term: | 03/31/2015 | - | 07/01/2015 |

Dear Patricia:

BINDER BILL

CONDITIONS:     ALL STANDARD TERMS, PROVISIONS, CLAUSES AND EXCLUSIONS OF THE POLICY FORM SPECIFIED IN CHUBB'S PROPOSAL AND/OR DISCUSSED WITH CHUBB ARE IN EFFECT.

| POLICY TYPE | POLICY NO. | COMPANY | | ANNUAL PREMIUM |
|---|---|---|---|---|
| ATD ESP | 76425887 | Federal Insurance Company | $ | 8,476 |

| POLICY TYPE | COMM. | PAYMENT SCHEDULE |
|---|---|---|
| ATD ESP | 0% | Agency Bill |

IMPORTANT BINDER CONDITIONS:
Coverage has been bound on this account.  Premium is due 45 days after the last day of the month of the policy effective date shown above, which is May 15, 2015.

This binder is intended for use as evidence that insurance described above has been effected for the term indicated, against which the above policy/policies will be duly issued.  Please advise us immediately of any discrepancies, inaccuracies or necessary changes.

This binder does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from offering or providing insurance.  To the extent any such prohibitions apply, this binder is void ab initio.

Sincerely,

Tamara Toomey, CIC
Underwriting Specialist
Machinery Breakdown Unit
ttoomey@chubb.com
713-297-4735

Nora R. Autry
Underwriting Associate
Machinery Breakdown Unit
nautry@chubb.com
713-297-4737

*The Cornerstone Name and Logo is a designation that Chubb gives to those insurance agents with whom Chubb has established a mutually beneficial business relationship. The designation will be used in correspondence and advertising that is directed at Customers of Cornerstone agents, including quote letters, product advertising and related materials.*

②

## Energy Systems Select Coverage Binder

| Coverage Form: | Energy Systems Select | |
|---|---|---|
| | | Limit of Insurance |
| Combined Limit:<br>• Property Damage<br>• Business Interruption with Extra Expense<br>  365 Day Extended Period of Indemnity<br>  Included Payroll | | $100,000,000. |
| Additional Limits / Sub Limits of Insurance | | |
| - Expediting Expense: | | Included. |
| - Demolition & Increased Cost Of Construction: | | Included |
| - CFC Refrigerants: | | Included |
| - Brands and Labels: | | Included |
| - Extended Warranties: | | Included |
| - Joint Loss Agreement: | | Included |
| - Water Damage: | | Included |
| - Demolition Increased Cost of Construction<br>  including existing Green Standards: | | Included |
| - Pollutants: | | $5,000,000. |
| - Ammonia Contamination: | | $5,000,000. |
| - EDP Media: | | $5,000,000. |
| - Service Interruption: | | $5,000,000. |
| - Consequential Damage: | | |
| Spoilage-Scheduled Locations | | $5,000,000. |
| Spoilage-Utility Owned Equip | | $5,000,000. |
| Dependent Business Income: | | $5,000,000. |
| Debris Removal: | | $1,000,000. |
| Professional Fees | | $1,000,000. |
| Deductibles:<br>• Property Damage<br>• Business Interruption<br>• Consequential Damage / Spoilage<br>• Service Interruption<br>• Dependent Business Premises | | $25,000.<br>24 Hours<br>$10,000.<br>24 Hours<br>24 Hours |
| Endorsements:<br>• Notice of Cancellation – 90 days<br>• Extended Period of Restoration – 365 days<br>• Newly Acquired Extension – 365 days<br>• Omnibus locations (Reports of Values & Locations)<br>• Covered Property Definitions Amended | | |
| Valuation: | Repair / Replacement Cost | |
| Annual Premium*:<br>US locations | $8,476 including terrorism | |
| *Additional Fees: | N/A | |
| *Portion of Annual Premium included above attributable for US Terrorism is$84. | | |

③

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number  9

| POLICY NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| MNP772770-14 | 03-31-2015 | AXIS |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| Corinthian Colleges, Inc. | ARTHUR J. GALLAGHER & CO. INSURANCE OF CA INC.(GLE |

COVERAGE PARTS AFFECTED
COMMERCIAL GENERAL LIABILITY COVERAGE PART

CHANGES

IT IS AGREED FOR AN ADDITIONAL PREMIUM OF $93,227 THAT THE POLICY EXPIRATION DATE IS EXTENDED TO 07/01/2015.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

_____
Authorized Representative Signature

3

## SCHEDULE OF FORMS AND ENDORSEMENTS

**POLICY NUMBER:**  MNP772770-14                    **EFFECTIVE DATE:**  03-31-2015

**NAMED INSURED:**   Corinthian Colleges, Inc.

## FORMS

*The following forms have been added:*

| NUMBER | EDITION DATE | TITLE |
|--------|--------------|-------|
| IL1201 | 1185 | POLICY CHANGES |
|        |      | FORMS SCHEDULE |
| AXIS   |      | AXIS Signature |

POLICY NUMBER: MNP772770-14

IN WITNESS WHEREOF, the Company has caused the facsimile signatures of its President and secretary to be affixed hereto, and has caused this policy to be signed on the Declarations Page by an authorized representative of the Company.

**AXIS Insurance Company**

Gregory W. Springer
President

Andrew Weissert
Secretary



POLICY NUMBER:  MNP772770-14

**COMMERCIAL GENERAL LIABILITY**
**CG DS 01 10 01**

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

| | | |
|---|---|---|
| **AXIS** | AXIS<br>11680 Great Oaks Way<br>Alpharetta    GA    30022 | ARTHUR J. GALLAGHER & CO. INSURANCE OF CA I<br>505 N. Brand Blvd.<br>Glendale        CA    91203 |

NAMED INSURED:   Corinthian Colleges, Inc.
MAILING ADDRESS:   6 Hutton Centre Dr., Suite 400
                                     Santa Ana                                                    CA        92707
POLICY PERIOD:   FROM   03/31/2014            TO   03/31/2015            AT 12:01 A.M. TIME AT
YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | |
|---|---|
| EACH OCCURRENCE LIMIT | $          1,000,000 |
| DAMAGE TO PREMISES<br>RENTED TO YOU LIMIT | $          1,000,000 Any one premises |
| MEDICAL EXPENSE LIMIT | $               5,000 Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $          1,000,000 Any one person or organization |
| GENERAL AGGREGATE LIMIT | $          2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $          2,000,000 |
| TOTAL  POLICY AGGREGATE | $        10,000,000 |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.<br>RETROACTIVE DATE: _____<br>(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|
| FORM OF BUSINESS:<br><br>☐ INDIVIDUAL        ☐ PARTNERSHIP        ☐ JOINT VENTURE        ☐ TRUST<br><br>☐ LIMITED LIABILITY COMPANY   ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT IN-<br>CLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY<br>COMPANY)<br><br>BUSINESS DESCRIPTION:  SCHOOLS - COLLEGES & UNIVERSITIES |

③

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| Schedule of Locations on file with Carrier | |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| | Composite Rated | See IL1201 Composite Rating Endorsement | $ | $ | $ | $ | $ |

| | | | |
|---|---|---|---|
| | STATE TAX OR OTHER (if applicable) | $ | 11,668.00 |
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $ | 738,099.00 |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION | $ | 749,767.00 |
| | AT EACH ANNIVERSARY | $ | |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) | | |

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See Schedule of Forms |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

| Countersigned: | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSEWHERE AT THE COMPANY'S OPTION.



## Patricia Goldberg

**From:**    rlewis@chubb.com
**Sent:**    Friday, March 27, 2015 3:09 PM
**To:**    Patricia Goldberg
**Cc:**    ajnash@chubb.com; Barbara Nelson; zfawson@chubb.com
**Subject:**    Re: Corinthian Colleges, Inc - Extension March 1, 2015 to July 1, 2015.

Hi Pat,

Thanks for the update.  Consider coverage bound.  Policy number will remain the same.

**Rose Lewis**
Senior Underwriting Associate
Commercial Insurance

**Chubb & Son, a division of Federal Insurance Company**
555 S. Flower St., 3rd Floor, Los Angeles, CA 90071
Phone: 213-612-5671 | Fax: 213-612-5731 | rlewis@chubb.com
Follow us: Facebook - Pinterest - Risk Conversation - Twitter - YouTube



*This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.*

Patricia Goldberg ---03/27/2015 02:57:55 PM---Re: Federal Insurance Company (Chubb)     #662-70-40      Primary $25MM w $5MM CAT Rose,

**From:**    Patricia Goldberg <Patricia_Goldberg@ajg.com>

**To:**    "rlewis@chubb.com" <rlewis@chubb.com>

**Cc:**    "ajnash@chubb.com" <ajnash@chubb.com>, Barbara Nelson <Barbara_Nelson@AJG.com>, "zfawson@chubb.com" <zfawson@chubb.com>

**Date:**    03/27/2015 02:57 PM

**Subject:**    Corinthian Colleges, Inc - Extension March 1, 2015 to July 1, 2015.

---

### Re: Federal Insurance Company (Chubb)        #662-70-40        Primary $25MM w $5MM CAT

Rose,

Please issue the policy extension from March 31, 2015 to July 1, 2015 per your extension quote.  Please note that since the 2-2-15 SOV was sent, CCI has sold some of owned buildings at the Zenith locations .   These and any other changes will be included in the 4th or 5th quarterly reports.

Please confirm that the extension is bound by return e-mail.

Thanks again for all your help.  Let me know if you need anything else or would like to discuss further.

1

④

**Patricia D. Goldberg, ARM**
Area Executive Vice President



**Arthur J. Gallagher & Co.**
BUSINESS WITHOUT BARRIERS™
Arthur J. Gallagher & Co.
505 N. Brand Blvd., Suite 600 | Glendale, CA 91203-3944
P: 818.539.1302 | F: 818.539.1602 | M: 310.689.9553
www.ajg.com |
Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.
Corp. License No. 0726293

**From:** rlewis@chubb.com [mailto:rlewis@chubb.com]
**Sent:** Friday, March 20, 2015 5:25 PM
**To:** Patricia Goldberg
**Cc:** ajnash@chubb.com; Barbara Nelson; zfawson@chubb.com
**Subject:** Re: Corinthian Colleges, Inc - Post Zenith Sale Exposures & Extension Request

Hi Pat,

Based on these values, the premium to extend the property policy(#6627040) to 7/1/15 is $147,998 @ 10% comm.  We are not extending the Canadian policy or the Exporters Package policy.  It is understood that there will not be any stacking of limits with The Zenith policy.

| | BUILDINGS | TENANT IMPROV. | PERSONAL PROPERTY | EDP H/D/ M | SIGNS | Business Income / Extra Expense | TOTAL INSURABLE VALUES |
|---|---|---|---|---|---|---|---|
| Contingent, Excess & DIC Values - Leased / Subleased by Zenith | $109,833,400 | $119,154,533 | $28,943,271 | $17,803,242 | $755,000 | | $276,489,446 |
| Primary - CCI Operating Locations | $86,665,780 | $67,657,481 | $51,110,789 | $19,971,121 | $755,000 | $163,417,350 | $389,577,521 |
| **Total Values** | **$196,499,180** | **$186,812,014** | **$80,054,060** | **$37,774,363** | **$1,510,000** | **$163,417,350** | **$666,066,967** |

**Rose Lewis**
Senior Underwriting Associate
Commercial Insurance

**Chubb & Son, a division of Federal Insurance Company**
555 S. Flower St., 3rd Floor, Los Angeles, CA 90071
Phone: 213-612-5671 | Fax: 213-612-5731 | rlewis@chubb.com

**Follow us:** Facebook - Pinterest - Risk Conversation - Twitter - YouTube

**CHUBB**

*This email (which includes any attachments) is intended to be read only by the person(s) to whom it is addressed. This email may contain confidential, proprietary information and may be a confidential attorney-client communication, exempt from disclosure under applicable law. If you have received this email in error, do not print it, forward it or disseminate or use it or its contents. In such event, please notify the sender by return email (or by phone at the number shown above) and delete the email file immediately thereafter. Thank you for your cooperation.*



## Property Insurance

## Declarations

*Chubb Group of Insurance Companies*
*15 Mountain View Road*
*Warren, NJ 07059*

*Named Insured and Mailing Address*
CORINTHIAN COLLEGES, INC.
6 HUTTON CENTRE DR., #400
SANTA ANA, CA  92707

*Policy Number* **662-70-40**

*Effective Date:  March 31, 2014*

*Issued by the stock insurance company
indicated below, herein called the company.*

FEDERAL INSURANCE COMPANY

*Producer No.*   10311

*Incorporated under the laws of
INDIANA*

*Producer*    ARTHUR J. GALLAGHER  & COMPANY
505 N. BRAND BLVD. #600
GLENDALE, CA 91203-3944

---

## Policy Period

**From:**  March 31, 2014          **To:**    March 31, 2015
12:01 A.M. standard time at the Named Insured's mailing address shown above.

---

In consideration of the premium specified herein, this policy is issued (or renewed) for the period stated above, subject to its terms and conditions.

Loss Limit of Insurance: $25,000,000 Primary Layer

Premium:    $958,725

Terrorism:   $ 25,500

The Loss Limit of Insurance shown above is the total limit of the Company's liability applicable to each occurrence, as defined in the policy. Notwithstanding any other terms and conditions of this policy, in no event shall the liability of the Company exceed this limit irrespective of the number of locations or coverages involved.

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the Company.

President                               Secretary                          Authorized Representative



Schedule of Forms

Policy Period: March 31, 2014  To:  March 31, 2015

Effective Date:  March 31, 2014

Policy Number: 662-70-40

Insured:   CORINTHIAN COLLEGES, INC.

The following is a schedule of forms attached to this policy:

| Form Number | Form Name | Effective Date |
|---|---|---|
| Manuscript Form | Manuscript Policy Form | 03/31/2014 |
| Manuscript Form | Endt # 1 -Pollution Exclusion Endorsement | 03/31/2014 |
| Manuscript Form | Endt # 2 - Electronic Date Recognition Ednorsement P-1 | 03/31/2014 |
| Manuscript Form | Endt # 3 - Terrorism Endorsement | 03/31/2014 |
| Manuscript Form | Endt# 4 - Mold & Fungi Endorsment | 03/31/2014 |
| Manuscript Form | Endt # 5 - Special Electronic Data Provision | 03/31/2014 |
| Manuscript Form | Endt # 6 - Civil Authority/Ingress Egress Endorsement | 03/31/2014 |
| Manuscript Form | Endt # 7 - War Exclusion Endorsement | 03/31/2014 |
| Manuscript Form | Endt # 8 - Trade Sanctions Law Endorsement | 03/31/2014 |
| Manuscript Form | Endt # 9 – Pollutant Clean-up Or Removal | 03/31/2014 |

FEDERAL INSURANCE COMPANY                 confidential                 COMMERCIAL PROPERTY FORM

# CORINTHIAN COLLEGES, INC.



**AND ITS AFFILIATED, SUBSIDIARY, AND ASSOCIATED COMPANIES AND/OR CORPORATIONS AS NOW EXIST OR MAY HEREAFTER BE CONSTITUTED OR ACQUIRED HEREINAFTER REFERRED TO AS THE "INSURED"**

**Inception**      **March 31, 2014**          **Expiration**      **March 31, 2015**

**POLICY TERM**      Policy shall be effective and shall terminate at 12:01 a.m. at the location(s) of property involved on the inception and expiration dates specified

**TIME OF ATTACHMENT**      It is agreed that, anything in this policy to the contrary notwithstanding, the actual effective time of attachment of this insurance on the above date shall be the same time on the above date as the actual effective time of cancellation or expiration of policy(ies) replaced or renewed by this policy

**THE INSURANCE COMPANY(IES) SIGNATORY HERETO (Hereinbefore called the Company) EACH FOR ITSELF SEVERALLY BUT NOT JOINTLY DO INSURE FOR THE AMOUNT UNDERWRITTEN FOR EACH AND EVERY LOSS COVERED HEREUNDER AS SET FORTH UNDER THEIR RESPECTIVE NAMES**

In Witness whereof, the following Company(ies) execute and attest these presents, and subscribe for the amount of participation of the insurance provided hereunder as shown:

| Company | Policy # | Participation | Authorized Company Signature |
|---|---|---|---|
| Federal Insurance Company | 662-70-40 | $25,000,000 | *[signature]* 05/23/2014 |
|  |  |  |  |
|  |  |  |  |

**Corinthian Colleges, Inc.**                                            Page 1 of 31

FEDERAL INSURANCE COMPANY                    confidential                    COMMERCIAL PROPERTY FORM

## 1.  INSURED:

This policy insures Corinthian Colleges, Inc. and its affiliated, subsidiary, and associated companies and/or corporations, partnerships and joint ventures as now exist or may hereafter be constituted or acquired and any party in interest which the Insured is responsible to insure.

## 2.  INSURED - SOLE AGENT:

If this policy insures more than one entity the first one named in this policy will act as the Sole Agent on behalf of the others for all of the Insured's obligations and duties in this policy.

## 3.  PERILS INSURED:

This policy insures against all risks of direct physical loss or damage to property described herein, except as hereinafter excluded.

Physical loss or damage shall include any destruction, disruption, distortion or corruption of any computer data, coding, program or software except as hereinafter excluded

☐   If this box is checked, coverage is includes Equipment Breakdown Endorsement

## 4.  LIMITS OF LIABILITY:

This Company shall not be liable hereunder for more than the following limits of liability for the loss arising from any one loss or disaster:

**$25,000,000**          In any one occurrence as respects locations within the policy territory:

The Per Occurrence Loss Limit is subject to the following sublimits.  These sublimits do not increase the policy's total limit of liability payable in any one occurrence.

|   | Sublimit | Coverage |
|---|---|---|
| A. |  | **Earthquake** |
|   | $5,000,000 | Per Occurrence And In The Aggregate Annually For The Peril Of Earthquake - California. |
|   | $5,000,000 | Per Occurrence And In The Aggregate Annually For The Peril Of Earthquake – All Other States. |
|   | $5,000,000 | Per Occurrence And In The Aggregate Annually For The Peril Of Earthquake – All Covered Locations Combined |
|   |  | However, even if the peril of Earthquake is the predominant cause of loss or damage, this Limit of Liability shall not apply to loss or damage caused by or resulting from ensuing leakage from fire protective equipment or ensuing loss or damage not otherwise excluded under this policy.  In such case the Any One Occurrence Limit of Liability or any specific sublimit shall apply |
| B. |  | **Flood** |
|   | $5,000,000 | Per Occurrence And In The Aggregate Annually For The Peril Of Flood – All Locations. |

**Corinthian Colleges, Inc.**                    Page 2 of 31

FEDERAL INSURANCE COMPANY                  confidential                  COMMERCIAL PROPERTY FORM

(4)

|    | Sublimit | Coverage |
|----|----------|----------|
|    |          | However, even if the peril of Flood is the predominant cause of loss or damage, this Limit of Liability shall not apply to loss or damage caused by or resulting from ensuing leakage from fire protective equipment, back-up of sewers and drains or ensuing loss or damage not otherwise excluded under this policy. In such case the Any One Occurrence Limit of Liability or any specific sublimit shall apply |
| C. | $15,000,000 | Named Windstorm – Tier 1 and Tier 2 Wind Zones Only |
| D. | $25,000,000 | Terrorism – **TRIA "Certified Acts" Only** |
| E. | $25,000,000 | Terrorism – All Other including Non-Certified Acts |
| F. | $150,000 | 1956 Chevy Bel-Air |
|    | $30,000 | 1964 Mercury Cyclone |
|    | $150,000 | 2011 Orange County Choppers Custom Motorcycle – VIN # 1Z9RCV2G3BN170800 |
|    | $50,000 | 1964 Ford Truck F100 VIN #F10JE494417 |
|    |          | ▪ In Storage, Exhibition & while being shipped to or from such Exhibition – no coverage while being driven except for loading/ unloading or positioning for exhibitions |
| G. | $1,000,000 | Personal Property – Unscheduled Locations |
| H. | $1,000,000 | Personal Property – Exhibitions & Trade Shows |
| I. | 365 Days | Business Income – Extended Period of Recovery |
| J. | $5,000,000 | Business Income – Dependant/ Contingent Locations |
| K. | $5,000,000 | Business Income- Civil Authority Coverage – 30 Days |
|    |          | ▪ Coverage is Limited to a 5 Mile Radius |
| L. | $5,000,000 | Business Income- Ingress or Egress Coverage – 30 Days |
|    |          | ▪ Coverage is Limited to a 5 Mile Radius |
| M. | $25,000,000 | Earthquake Sprinkler Leakage |
| N. | $5,000,000 | Accounts Receivable |
| O. | $1,000,000 | Claims Expense |
| P. | $5,000,000 | Consequential Damage – Including Changes in Temperature & Spoilage |
| Q. | $10,000,000 | Debris Removal – Additional Limits |
| R. | $500,000 | Domestic Transit |
| S. | $100,000 | Fine Arts |
| T. | $5,000,000 | Leasehold Interest |
| U. | $100,000 | Outdoor Tree Shrubs & Plants |
| V. | $10,000,000 | Newly Acquired Real & Personal Property |
|    |          | ▪ Includes Builders Risk & Course of Construction |
|    | 180 | # Days to Report to Carrier |

**Corinthian Colleges, Inc.**

FEDERAL INSURANCE COMPANY                 confidential                COMMERCIAL PROPERTY FORM

(4)

| | Sublimit | Coverage |
|---|---|---|
| W. | $100,000 | Pollution Clean-up Coverage – Per Occurrence & Annual Aggregate <br><br> ▫ Excluding Earthquake & Flood Coverage |
| X. | $25,000,000 | Property in Course of Construction <br><br> ▫ Sublimit does not apply to alterations, additions, extensions and./ or remodeling project to existing structures or Newly Acquired Locations |
| Y. | $5,000,000 | Service Interruption – Business Income <br><br> ▫ However, this extension does not apply to transmission or distribution lines over 5 miles from the insured premises |
| Z. | $5,000,000 | Unintentional Errors & Omissions in Description of Locations and/or Unintentional Failure to Add Locations |
| AA. | $5,000,000 | Valuable Papers |
| | | **International / Canada Coverage Extensions** |
| BB. | $1,000,000 | Currency Devaluation |
| CC. | $1,000,000 | Co-Insurance Deficiency |
| DD. | $1,000,000 | Tax Liability. |
| EE. | $1,000,000 | Tax Equalization |
| FF. | $1,000,000 | Tenants & Neighbors Liability |
| | **Special Conditions** | |
| 1. | Electronic Data Processing Systems is extended to also include phone systems, copy machines, scanners and other similar office equipment | |
| 2. | Quarterly Reporting <br><br> ▫ An updated Statement of Values will be provided to the carrier on a quarterly basis to report and endorse newly acquired property & locations subject to the newly acquired sublimit and conditions. <br><br> ▫ The insured will report values in excess of the newly acquired sublimit but the endorsement will be done as part of the updated SOV | |

## 5. DEDUCTIBLES:

In the event that a single occurrence should produce a claim under this policy, this Company will adjust such losses, damages or expenses arising out of such occurrence as a single event. The single largest deductible shall apply to the total of the adjusted claims resulting from the single occurrence.

In any occurrence where loss or damage is caused by more than one peril insured against under this policy, the Insured shall have the right to separate the loss amount by peril for the purposes of application of the deductible(s) specified in this section

As respects theft, the term Occurrence as referred to elsewhere within the policy means the sum total of all losses of covered property resulting from one or more concealed acts committed by one person or more than one person acting in unison to the extent such loss is not otherwise excluded under this policy

**Corinthian Colleges, Inc.**                         Page 4 of 31

FEDERAL INSURANCE COMPANY              confidential                COMMERCIAL PROPERTY FORM

④

| | | |
|---|---|---|
| | | **Deductibles** |
| | | **All Other Direct Damage - Per Occurrence** |
| A | $ 25,000 | Property Losses Other Than Shown Below |
| B | $ 50,000 | Earthquake Sprinkler Leakage |
| C | $5,000 | Scheduled Vehicles – Limits of Liability 4. F |
| D | $25,000 | Civil Authority, Ingress & Egress |
| | | **All Other Time Element – Per Occurrence** |
| E | 12 Hours | Waiting Period - Off-Premises Services Failure – Business Income |
| | | **Wind** |
| F | $25,000 | Wind – All Locations – Per Occurrence |
| | | Named Windstorm - All Other Locations - Per Occurrence |
| G | 5% / $100,000 Minimum | Named Windstorm @ Tier One Wind Zone Locations |
| | | % of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown |
| H | 2% / $100,000 Minimum | Named Windstorm @ Tier 2 Wind Zone Locations |
| | | % of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown |
| | | However, these deductibles shall not apply to loss or damage caused by or resulting from ensuing leakage from fire protective equipment or perils not otherwise excluded under this policy.  In such case the deductible in A. above shall apply. |
| | | **Earthquake** |
| I | 10% / $100,000 Minimum | Earthquake – California |
| | | % of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown |
| J | 5% /$100,000 Minimum | Earthquake –All Other States |
| | | % of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown |
| | | However, this deductible shall not apply to loss or damage caused by or resulting from ensuing perils not otherwise excluded under this policy or leakage from fire protective equipment. In such a case the All Perils – Not Otherwise Shown or any specific deductible shown shall apply |
| | | **Flood** |
| K | $500,000 | Flood Zones  - A, D or V |
| | | Per Occurrence |

**Corinthian Colleges, Inc.**                              Page 5 of 31

FEDERAL INSURANCE COMPANY                    confidential                    COMMERCIAL PROPERTY FORM

④

| | | Deductibles |
|---|---|---|
| L | $100,000 | Flood Zones - B, X500, C or X within 1,000 feet of Zone A<br>Per Occurrence |
| M | 10% - $100,000 Minimum | Flood – Resulting from Named Windstorm @ Tier One Locations<br>% of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown. |
| N | 2% - $100,000 Minimum | Flood – Resulting from Named Windstorm @ Tier Two Locations<br>% of the values per unit (separately at each location) of insurance involved in loss or damage subject to the minimum per occurrence shown. |
| O | $50,000 | Flood – All Other Losses<br>Per Occurrence |
| | | However, these deductibles shall not apply to loss or damage caused by or resulting from ensuing leakage from fire protective equipment, back-up of sewers and drains or ensuing loss or damage not otherwise excluded under this policy.  In such a case the All Perils – Not Otherwise Shown or any specific deductible shown shall apply |
| P | | **Per Unit of Insurance** |
| | | As respects the deductibles shown above, a unit is defined as<br><br>• each building or structure including tenants improvements & betterments<br>• personal property within each building or structure<br>• personal property in each yard.<br>• business interruption & loss of rents<br>• Separately to All Other Interests not Stated in 1-4 above Including but not limited to Accounts Receivable, Valuable Papers, Contingent Business Income etal<br><br>This deductible applies separately to each item.  The applicable per unit of insurance deductible shall apply only to the unit of insurance which results in a claim payment under this policy |

## 6.  DEFINITIONS:

A.  **Occurrence** – Means any one loss, disaster or casualty, or series of losses, disasters or casualties arising out of one event.  As respects loss or damage by an act of god or nature including but not limited to Earthquake or Flood, it is agreed that all such loss or damage taking place within any continuous period of One Hundred, Sixty-Eight (168) hours (not limited by the date on which coverage under this policy ceases) shall be deemed to be one occurrence.  The Insured may elect the moment at which the 168 hour period shall be deemed to have commenced.

1   Should any time period referred to in Clause A. above commence prior to expiration or cancellation date of this policy, this Company shall pay all such earthquake or flood losses occurring during such period as if such period fell entirely within the term of this policy.

confidential

# OneBeacon

## S P E C I A L T Y  P R O P E R T Y



## SPECIALTY PROPERTY BINDER CONFIRMATION

**Date:** **April 1, 2015**

**Insured:** **Corinthian Colleges, Inc.**
Santa Ana, CA  92799

**Effective Date:** **March 31, 2015**
**Expiration Date:** **July 1, 2015**

**Broker:** **AJ Gallagher**
Glendale, CA
Patricia Goldberg

**Underwriter:** **George Skells**
t:913-945-3014: f:866-463-6309
email: GSkells@onebeacon.com

**Underwriting Company:** **Homeland Insurance Company of New York**
Non-Admitted

**Extension of Current Policy Number:** **795001540**

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# OneBeacon
### SPECIALTY PROPERTY

## Specialty Property Binder

Premium Summary

| Coverages | | Coverage Premium |
|---|---|---|
| Specialty Property Coverages | $ | 13,680 |
| Terrorism Coverage | $ | 1,245 |
| Total Premium | $ | 14,925 |

**Payment Plan**
Agency Bill - Annual - Payment in Full.  No Installments

## NO FLAT CANCELLATIONS

**Minimum Retained Premium:**    25% of the annual premium is earned at inception.

**The producing broker is responsible for filing surplus lines affidavits, if required, and the payment of all taxes and applicable fees. Applicable fees and taxes are not included in this quotation.**

**Surplus Lines Taxes to be filed in the insured's Home State of :        CA**

**Please provide the name, address and surplus lines license number of tax filing agent prior to binding.**

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# OneBeacon
### SPECIALTY PROPERTY

Thank you for the opportunity to provide you with the excess property BINDER.  We are able to BIND coverage under the terms and conditions as follows.

**Coverage:** All Real & Personal Property, EDP, TIB, Signs and Business Interruption / Extra Expense

**Perils:** Risks of Direct Physical Loss or Damage; Excluding Flood, Earthquake, and Wind/Hail/Named Windstorm coverage in Tier 1

**Limit:** $100,000,000    100.0%    p/o    $100,000,000    Per Occurrence

**Attachment Pt:** $25,000,000    Per Occurrence

**Sublimits:** $100,000,000 x/s $30,000,000 per Occurrence - Teir 2 Named Storm
(If applicable)

**TIV:** $666,066,967

**Commission:** 15.0%

**Valuation:** Property at Replacement Cost, if replaced, otherwise ACV
Time Element at actual loss sustained

**Cancellation** 90 days except 10 days for non-payment of premium

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# OneBeacon
### SPECIALTY PROPERTY

**Exclusions:**
- Pollution & Contamination/Asbestos Removal
- Terrorism, if not purchased
- Mold
- Cyber Crime
- Nuclear, Chemical & Biological
- Year 2000 / Date Change Exlcusion
- Boiler & Machinery

**Conditions:**
- Subject to OneBeacon forms and Endorsements pending receipt and review of primary policy.
- You must have our permission to bind coverage
- This Binder is valid until the proposed effective date or for 30 days if none is specified.
- The primary carrier will attach a Permission for Excess Clause

**Warranties**

**Forms:**
- As per Expiring AJG Manuscript Form
- OBSP endorsement to AJG manuscript policy form, per  expiring endorsement #1 attached to the policy.
- Excess Property Conditions
- Electronic Data Endorsement
- Mold, Spores or Fungus Exclusion
- Terrorism Exclusion
- Nuclear, Chemical and Biological Exclusion
- Year 2000 / Date Change Exclusion
- Minimum Earned Premium
- Service of Suit

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# OneBeacon

### SPECIALTY PROPERTY

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act (the Act), as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals  as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM,  SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW.  HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020 OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE.  THE PREMIUM TO BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION.  IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

## SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE
The prospective premium required for your terrorism coverage is:  $4,960

PHN 013 IL 01 15    Contains copyrighted material of National Association Of Insurance Commissioners with its permission.  Copyright 2015, OneBeacon Insurance Group LLC    Page 1 of 2

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# OneBeacon
### SPECIALTY PROPERTY

If you wish to reject this offer of coverage, you should check the box below, sign this notice and send it to your agent.  An exclusion of terrorism losses, as defined by the Act, will then be made part of your policy.

| | I hereby reject the offer of terrorism coverage.  I understand that I will have no coverage for losses arising from acts of terrorism, as defined in the act. |
|---|---|

**If your policy includes Property Coverage in one or more of these states: CA, CT, GA, HI, IA, IL, MA, ME, MO, NC, NJ, NY, OR, PA, RI, VA, WA, WI, or WV; the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) property fire losses resulting from an act of terrorism.  Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue.  If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States Government under the formula detailed above.

**If your policy includes Inland Marine Coverage in one or more of these states: CA, ME, MO, OR,  or  WI, the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) direct property damage fire losses resulting from an act of terrorism.  Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to direct property damage fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue.  If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States Government under the formula detailed above.

_____          Homeland Insurance Company of New York
Policyholder/Applicant's Signature               Insurance Company


_____          _____
Print Name                                                     Date

If you have any questions about this notice, please contact your agent.


Contains copyrighted material of National Association Of Insurance Commissioners with its permission. Copyright 2015, OneBeacon Insurance Group LLC

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy.  The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.

C:\Users\GSSKELL\Binders\R-Corinthian Colleges_3.31\2015_Und Template_V1.3_500_Bind Extension.xlsm





**OneBeacon**
SPECIALTY PROPERTY

**ENDORSEMENT #1**

INSURED:

POLICY NO.:

EFFECTIVE:

**In consideration of the premium already charged, the Manuscript Form Policy Declarations Section and Policy Coverage Section attached to this policy are amended as follows:**

## POLICY COVERAGE SECTION:

**3) Paragraph 33. is deleted and replace with the following:**

**33. SALVAGE AND RECOVERIES**
When, in connection with any loss hereunder, any salvage or recovery is received, subsequent to the payment of such loss, the loss shall be figured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

The expense of all proceedings necessary to such recoveries shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are conducted solely by this Company, the expense thereof shall be borne by this Company.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

This proposal contains only a general description of the coverages and does not include all of the benefits, terms, conditions, exclusions and limitations found in the policy. The insurance policy itself, not this descriptive proposal, will form the contract between the insured and the insurance company.



# EMPIRE INDEMNITY INSURANCE COMPANY

**NAMED INSURED:**    **CORINTHIAN COLLEGES, INC.**                **DIFFERENCE IN CONDITIONS**
                                                              **EXCESS PROPERTY**

**POLICY NUMBER:**    **XPP4603531**

**EFFECTIVE DATE:**    **03/31/2015**         **ENDORSEMENT NUMBER:**      **8**

**This endorsement modifies insurance provided under the following:**

    **DIFFERENCE IN CONDITIONS COVERAGE FORM**
    **EXCESS PROPERTY INSURANCE FORM**

This policy is amended as follows:

    It is agreed that this policy is extended to expire 07/01/2015 in lieu of 03/31/2015.

The change in premium for this endorsement is:        $73,635.00 Additional Premium



# EMPIRE INDEMNITY INSURANCE COMPANY

### COMMERCIAL PROPERTY POLICY

| POLICY NUMBER | POLICY PERIOD | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|
| XPP4603531 | 3/31/2014 to 3/31/2015 | EMPIRE INDEMNITY INSURANCE COMPANY | 720029 |

| NAMED INSURED | AGENT |
|---|---|
| CORINTHIAN COLLEGES, INC.<br>V# 15783-2- ACH ACCT PAY #00897<br>P. O. BOX 25115<br>SANTA ANA, CA 92799 | RISK PLACEMENT SERVICES INSURANCE BROKERS<br>701 S. PARKER ST., SUITE 6200<br>ORANGE, CA 92868-4720 |

### COMMON POLICY DECLARATIONS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

POLICY
PERIOD: FROM     **3/31/2014**     TO     **3/31/2015**     12:01 AM; Standard time at your mailing address shown above

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | | PREMIUM | |
|---|---|---|---|
| | COMMERCIAL PROPERTY COVERAGE PART | $ 407,700 | |
| | POLICY CATASTROPHE ANALYSIS FEE | $ 200 | **(Fully Earned)** |
| | INSPECTION FEE | $ 0 | **(Fully Earned)** |
| PREMIUM SHOWN IS PAYABLE AT INCEPTION. | ESTIMATED TERM PREMIUM | $ 407,900 | |
| | MINIMUM EARNED PREMIUM | $ 101,925 | **(Plus Fees)** |

June 02 2014

# EMPIRE INDEMNITY INSURANCE COMPANY

## COMMERCIAL PROPERTY POLICY

| POLICY NUMBER | POLICY PERIOD | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|
| XPP4603531 | 3/31/2014 to 3/31/2015 | EMPIRE INDEMNITY INSURANCE COMPANY | 720029 |

| NAMED INSURED | AGENT |
|---|---|
| CORINTHIAN COLLEGES, INC.<br>V# 15783-2- ACH ACCT PAY #00897<br>P. O. BOX 25115<br>SANTA ANA, CA 92799 | RISK PLACEMENT SERVICES INSURANCE BROKERS<br>701 S. PARKER ST., SUITE 6200<br>ORANGE, CA 92868-4720 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

IL 09 83 01 08 - WASHINGTON - AMENDMENT OF TERRORISM EXCLUSIONS
U-GU-1110-B IL - ILLINOIS CIVIL UNION ACT POLICYHOLDER NOTICE
U-GU-686-B CW - CONDITIONAL EXCLUSION OF TERRORISM
U-GU-695-C CW - POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE
U-GU-1169-A CO - COLORADO CIVIL UNION ACT
U-GU-630-C - DISCLOSURE OF INFORMATION RELATING TO TRIA
U-GU-692-C CW - DISCLOSURE OF PREMIUM RELATING TO DISPOSITION OF TRIA
STF-GU-199-B - IMPORTANT NOTICE
D-2 - SURPLUS LINES PLACEMENT NOTICE
0608 - MOLD EXCLUSION
U-GU-773-A - DISCLOSURE
U-GU-681-B CW - EXCLUSION OF CERTIFIED ACTS OF TERRORISM
RPS0100 - BROKER FORM
0102 - ADDITIONAL POLICY CONDITIONS
0103 - CANCELLATION AND NONRENEWAL PROVISIONS
0104 - POLICY MINIMUM EARNED PREMIUM
0405 - UNDERLYING ALL RISK COVERAGE ENDORSEMENT
0500 - THEFT EXCLUSION
0505 - NOTIFICATION OF CLAIMS
0506 - ELECTRONIC DATA AND COMPUTER SYSTEMS EXCLUSION
0600 - ASBESTOS EXCLUSION
0601 - TOTAL POLLUTION EXCLUSION
0602A - DEBRIS REMOVAL CLAUSE
0606 - EARTHQUAKE SPRINKLER LEAKAGE EXCLUSION
0611 - ENSUING LOSS EXCLUSION
0614 - AMENDED CANCELLATION PROVISION
0701 - EXCESS LIMIT OF LIABILITY AND PARTICIPATION CLAUSE
0999 - ENDORSEMENT NO. 1
0999 - ENDORSEMENT NO. 2
0999 - ENDORSEMENT NO. 3
0999 - ENDORSEMENT NO. 4





| Named Insured<br>CORINTHIAN COLLEGES, INC. | | Endorsement Number<br>1 |
|---|---|---|
| Policy Number<br>MNU772789/01/2014 | Policy Period<br>03/31/2014        to  03/31/2015 | Effective Date of Endorsement<br>03/31/2015 |
| Issued by<br>AXIS INSURANCE COMPANY | Broker<br>ARTHUR J GALLAGHER INSURANCE BROKERS OF<br>CALIFORNIA, INC. | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

It is agreed for an additional premium of $44,569  that the policy expiration date is extended to 07/01/2015.
The policy term on the Excess Liability policy declarations is amended to read as follows:

Item 2. POLICY PERIOD:        FROM 03/31/2014        TO        07/01/2015

| All other terms and conditions remain unchanged. | Authorized Representative |
|---|---|

ALE-7008-05-10                          Page 1 of 1

confidential





**POLICY NUMBER:** MNU772789/01/2014

**RENEWAL OF:** MNU772789/01/2013

# EXCESS LIABILITY POLICY DECLARATIONS

**COMPANY:**
**AXIS INSURANCE COMPANY**
**A STOCK COMPANY**
**303 WEST MADISON # 500**
**CHICAGO, IL 60606**

**BROKER:**
**ARTHUR J GALLAGHER INSURANCE BROKERS OF CALIFORNIA, INC.**
**505 NORTH BRAND BOULEVARD, 6TH FLOOR**
**GLENDALE, CA 91203**

---

**Item 1. NAMED INSURED:** CORINTHIAN COLLEGES, INC.

**MAILING ADDRESS:**    6 HUTTON CENTRE DRIVE, SUITE 400
SANTA ANA, CA 92707

**Item 2. POLICY PERIOD:** FROM  03/31/2014   TO  03/31/2015                AT 12:01 A.M. TIME AT
YOUR MAILING ADDRESS SHOWN ABOVE

---

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

---

**Item 3. LIMITS OF INSURANCE**

| | |
|---|---|
| EACH OCCURRENCE LIMIT | $ 10,000,000 |
| GENERAL AGGREGATE LIMIT | $ 10,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 10,000,000 |

---

**Item 4. DESCRIPTION OF BUSINESS**

FORM OF BUSINESS:

☐ INDIVIDUAL        ☐ PARTNERSHIP        ☐ JOINT VENTURE        ☐ TRUST

☐ LIMITED LIABILITY COMPANY    ☒ CORPORATION    OTHER ☐:_____

BUSINESS DESCRIPTION: <u>COLLEGE</u>

---

XDEC-0002-11-04                                         Page 1 of 4

confidential

POLICY NUMBER:  MNU772789/01/2014



## Item 5. POLICY PREMIUM

INSURED PURCHASED TRIA TERRORISM COVERAGE   ☒ YES ☐ NO

EXCESS LIABILITY COVERAGE PREMIUM:                                    $ 268,146
TRIA TERRORISM COVERAGE PREMIUM:                                     $   5,400

MINIMUM & DEPOSIT PREMIUM:                                               $ 273,546

FLAT PREMIUM: ☒   or   ADJUSTABLE PREMIUM: ☐

(check flat or adjustable)

If Adjustable: N/A
Rate: FLAT
Per:  N/A                    Basis: N/A

| AUDIT PERIOD (IF APPLICABLE) | ☐ ANNUALLY | ☐ SEMI-ANNUALLY | ☒ NOT AUDITABLE |
|---|---|---|---|

**Item 6. RETROACTIVE DATE:**  N/A

## Item 7. ENDORSEMENTS ATTACHED TO THIS POLICY:

|  | XDEC-0002-11-04 | EXCESS LIABILITY POLICY DECLARATIONS |
|---|---|---|
|  | XLP-0002 11-06 | EXCESS LIABILITY POLICY |
| A. | AMA-0001-10-10 | AMENDATORY ENDORSEMENT - WAIVER OF SUBROGATION |
| B. | AMA-0002-10-10 | AMENDATORY ENDORSEMENT - LIMITS OF INSURANCE |
| C. | AMA-0006-02-11 | AMENDATORY ENDORSEMENT – DUTY TO DEFEND |
| D. | AMA-0008-02-11 | AMENDATORY ENDORSEMENT - DELETION OF TERRORISM EXCLUSION |
| E. | AMA-0053-03-13 | UNDERLYING INSURANCE SUBLIMITS |
| F. | AMA-0054-03-13 | UNIMPAIRED AGGREGATES OF UNDERLYING INSURANCE |
| G. | XLX-4006-01-03 | AUTO NO-FAULT AND SIMILAR LAWS EXCLUSION |
| H. | XLX-4044-01-04 | LEAD EXCLUSION |
| I. | XLX-4054-06-04 | SILICA EXCLUSION |
| J. | XLX-4059-01-05 | EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, OR PHONE CALLS |
| K. | XLE-5023-01-04 | AMENDATORY ENDORSEMENT - DELETION OF POLLUTION EXCLUSION |
| L. | XLE-5045-01-14 | NOTICE TO POLICYHOLDERS - POTENTIAL RESTRICTIONS OF TERRORISM COVERAGE |
| M. | XLE-5046-01-14 | CONDITIONAL TERRORISM COVERAGE ENDORSEMENT |
|  | CLM-0001-07-12 | CLAIM NOTICE |
|  | LI-FS 001 0314 | STATE FRAUD STATEMENTS |

XDEC-0002-11-04                                                              Page 2 of 4



POLICY NUMBER:  MNU772789/01/2014

| Item 8. SCHEDULE A. - UNDERLYING INSURANCE | | |
|---|---|---|
| Carrier, Policy Number, Period | Type of Policy | Applicable Limits or Amounts of Insurance |
| First Underlying Insurance | | |
| AXIS Insurance Company<br>Policy #MNP772770-14<br>03/31/2014 to 03/31/2015 | Commercial<br>General<br>Liability<br><br>(Occurrence)<br><br>Employee<br>Benefits<br>Liability<br><br>(Claims Made) | $ 1,000,000   Each Occurrence<br>$ 2,000,000   General Aggregate<br>$ 2,000,000   Products/Completed<br>               Operations Aggregate<br>$10,000,000   Policy Aggregate<br><br>$ 1,000,000   Each Claim<br>$ 2,000,000   Aggregate<br><br><br>Defense Expense:  In Addition to Limits |
| AXIS Reinsurance Company<br>Policy #CTP/779927/01/2014<br>03/31/2014 to 03/31/2015 | Commercial<br>General<br>Liability<br><br>(Occurrence)<br><br><br>Employee<br>Benefits<br>Liability<br><br>(Claims Made)<br><br>(Canada)<br><br><br>Canada<br>Non-Owned & Hired Auto<br>Liability<br><br>Canada<br>Employers<br>Liability | $ 1,000,000   Each Occurrence<br>$10,000,000   General Aggregate<br>$ 2,000,000   Products/Completed<br>               Operations Aggregate<br><br>Defense Expense:  In Addition to Limits<br><br>$ 1,000,000   Each Claim<br>$ 1,000,000   Aggregate<br><br><br><br><br>Defense Expense:  Inclusive of Limits<br><br>$ 1,000,000   Each Accident<br><br><br>$ 1,000,000   Each Occurrence |
| General Star Indemnity Company<br>Policy #IYG418106<br>01/01/2014 to 03/31/2015 | Commercial<br>General<br>Liability<br><br>(Occurrence) | $1,000,000   Each Occurrence<br>$2,000,000   General Aggregate<br>$2,000,000   Products/Completed<br>              Operations Aggregate<br><br>Defense Expense:  In Addition to Limits |
| Great Northern Insurance Co.<br>Policy #3581-63-15<br>03/31/2014 to 03/31/2015 | Employee<br>Benefits<br>Liability<br><br>(Claims Made) | $1,000,000   Each Claim<br>$1,000,000   Aggregate<br><br><br>Defense Expense:  Inclusive of Limits |

confidential



POLICY NUMBER:  MNU772789/01/2014

| Zurich American Insurance Company Policy #BAP 5532875-00 03/31/2014 to 03/31/2015 | Commercial Automobile Liability | $1,000,000 | Combined Single Limit |
|---|---|---|---|
| | | Defense Expense: | In Addition to Limits |
| Zurich American Insurance Company Policy #9304938-10 07/01/2013 to 07/01/2014 | Employers Liability | | |
| | Bodily Injury by Accident | $1,000,000 | Each Accident |
| | Bodily Injury by Disease | $1,000,000 | Policy Limit |
| | Bodily Injury by Disease | $1,000,000 | Each Employee |
| American Zurich Insurance Company Policy #WC9304937-11 07/01/2013 to 07/01/2014 | Employers Liability | | |
| | Bodily Injury by Accident | $1,000,000 | Each Accident |
| | Bodily Injury by Disease | $1,000,000 | Policy Limit |
| | Bodily Injury by Disease | $1,000,000 | Each Employee |
| Great Northern Insurance Co. Policy #3581-63-15 03/31/2014 to 03/31/2015 | Foreign General Liability | $1,000,000 $2,000,000 $1,000,000 | Each Occurrence General Aggregate Products/Completed Operations Aggregate |
| | | Defense Expense: | In Addition to Limits |
| | Foreign Automobile Liability | $1,000,000 | Combined Single Limit |
| | | Defense Expense: | In Addition to Limits |
| | Foreign Employers Liability | | |
| | Bodily Injury by Accident | $1,000,000 | Each Accident |
| | Bodily Injury by Disease | $1,000,000 | Policy Limit |
| | Bodily Injury by Disease | $1,000,000 | Each Employee |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.
PLEASE SEE ATTACHED FORMS AND ENDORSEMENTS SCHEDULE.**

Countersigned:

By:

---------------------------------------------------
(Date)

---------------------------------------------------
(Authorized Representative)

confidential



# Healthcare Professional Liability



## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Company")
55 Water Street, 18th Floor
New York, NY 10041

### DECLARATIONS - SPECIFIED MEDICAL PROFESSIONAL LIABILITY
### OCCURRENCE INSURANCE POLICY

| Item | | |
|---|---|---|
| | **Policy Number:** AHV-102698003 | **Renewal Of:** AHV-102698002 |
| I. | **Named Insured** The Students of The School(s) of Corinthian Colleges, Inc. | |
| 2. | **MAILING ADDRESS** Suite 400<br>6 Hutton Centre Drive<br>Santa Ana CA 92707 | |
| 3. | Policy Period 12:01 A.M. Standard Time At Location of Designated Premises | From: 05/23/2014    To: 05/23/2015 |

| 4. | The insurance afforded is only with respect to such of the following types of insurance as indicated by specific premium charge or charges: | | |
|---|---|---|---|
| | **COVERAGE** | | **PREMIUM** |
| | A. Professional Liability | [X] | $136,499.00 |
| | B. General Liability | [X] | $0.00 |
| |    Terrorism Risk Insurance Act | [X] | $0.00 |
| | C. Endorsements | [ ] | |
| | TOTAL: | | $136,499.00 |

| 5. | LIMITS OF LIABILITY | |
|---|---|---|
| | $1,000,000 each Incident or Occurrence | $3,000,000 in the Aggregate |

| 6. | Deductible (if applicable):    $0    each Incident or Occurrence |
|---|---|

| 7. | The Named Insured is: | ☐ Sole Proprietor (including Individual)    ☐ Partnership    ☐ Corporation |
|---|---|---|
| | ☒ Other: | Affiliation: 3188 - Student Malpractice Blanket Liability |

| 8. | Business or Occupation of the Named Insured:    Student |
|---|---|

| 9. | This policy is made and accepted subject to the printed conditions of this policy together with the provisions, stipulations and agreements contained in the following form(s) or endorsement(s): HCPL-2157 (11/09), HCPL-2025-9000-CA(1109),  OFAC (08/09), HCPL-2025 (11/09), HCPL-2038 (11/09), TRIA-E003-0210, TRIA-N004-0208 |
|---|---|

| | Representative Agent: | Mercer Consumer, a service of<br>Mercer Health & Benefits Administration LLC<br>P.O. Box 14576<br>Des Moines IA 50306-3576 |
|---|---|---|

1    1

HCPL-2025D (11/09)



# Healthcare Professional Liability



## LIBERTY INSURANCE UNDERWRITERS INC.

(A Stock Insurance Company, hereinafter the "Company")
55 Water Street, 18th Floor
New York, NY 10041

## DECLARATIONS - SPECIFIED MEDICAL PROFESSIONAL LIABILITY
## OCCURRENCE INSURANCE POLICY

| Item | | | | |
|---|---|---|---|---|
| 1. | **Policy Number:** AHV-102696003 | | **Renewal Of:** AHV-102696002 | |
| 1. | **Named Insured** | The Students of Corinthian Colleges, Inc. dba Everest College | | |
| 2. | **MAILING ADDRESS** | Treasury Department 6 Hutton Centre Drive, Suite 400 Santa Ana CA 92707 | | |
| 3. | Policy Period   12:01 A.M. Standard Time At Location of Designated Premises | | **From:** 05/23/2014 | **To:** 05/23/2015 |

4. The insurance afforded is only with respect to such of the following types of insurance as indicated by specific premium charge or charges:

| **COVERAGE** | | **PREMIUM** |
|---|---|---|
| A. Professional Liability | [X] | $10,386.00 |
| B. General Liability | [X] | $0.00 |
| Terrorism Risk Insurance Act | [X] | $0.00 |
| C. Endorsements | [ ] | |
| **TOTAL:** | | $10,386.00 |

| | | |
|---|---|---|
| 5. | LIMITS OF LIABILITY | |
| | **$2,000,000** each Incident or Occurrence | **$6,000,000** in the Aggregate |
| 6. | Deductible (if applicable):    $0 | each Incident or Occurrence |
| 7. | The Named Insured is:    ☐ Sole Proprietor (including Individual)    ☐ Partnership    ☐ Corporation ☒ Other:    Affiliation: **3188 - Student Malpractice Blanket Liability** | |
| 8. | Business or Occupation of the Named Insured:    Student | |
| 9. | This policy is made and accepted subject to the printed conditions of this policy together with the provisions, stipulations and agreements contained in the following form(s) or endorsement(s): HCPL-2157 (11/09), HCPL-2025-9000-VA(1109), HCPL-9001-VA (1109) HCPL-2040 (11/09) OFAC VA (10/09), HCPL-2025 (11/09), HCPL-2038 (11/09), TRIA-E003-0210, TRIA-N004-0208 | |
| | Representative Agent:    Mercer Consumer, a service of Mercer Health & Benefits Administration LLC P.O. Box 14576 Des Moines IA 50306-3576 | |

HCPL-2025D (11/09)

**COMMERCIAL INSURANCE**

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY
INSURANCE POLICY – INFORMATION PAGE**

Servicing Office:

Insurance for this coverage part provided by:
**AMERICAN ZURICH INSURANCE COMPANY**

LOS ANGELES
777 SOUTH FIGUEROA STREET
SUITE 3900
LOS ANGELES,CA 90017

*(10)*

---

1.  Policy Number WC 9304937-14                 Renewal of Number WC 9304937-13
Named Insured and Mailing Address              Producer and Mailing Address
CORINTHIAN COLLEGES, INC                       ARTHUR J. GALLAGHER & COMPANY
6 HUTTON CENTRE DRIVE                           505 N. BRAND AVENUE
SUITE 400                                       SUITE 600
SANTA ANA CA 92707                              GLENDALE CA 91203

Producer Code   18183-000

---

Other workplaces not shown above:
FEIN: 33-0717312
NCCI Company No. 17965     ☐   New     ☒ Renewal     ☐ Rewrite   of Prior Policy No.

This information page, with policy provisions and endorsements, if any, completes this policy.

Insured is: CORPORATION

2.  Policy Period: From: 02-02-2015 to 07-01-2015   at 12:01 A. M. Standard Time at insured's mailing address.

Insured's Identification number(s):
917909687\3045167

---

3.  A.  Workers Compensation Insurance:   Part One of the policy applies to the Workers' Compensation Law of the states listed here: AZ,CA,DC,HI,MS,NY,OR

B.  Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3.A.

The Limits of Liability under Part Two are:   Bodily Injury by Accident:   1,000,000   each accident
Bodily Injury by Disease:   1,000,000   policy limit
Bodily Injury by Disease:   1,000,000   each employee

C.  Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
**See Endorsement**

D.  This Policy includes these endorsements and schedules:
**See Schedule of Forms and Endorsements.**

---

4.  The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans.   All information required on the following Classification Schedule is subject to verification and change by audit.
**See Classification Schedule**

| | | | |
|---|---|---|---|
| TOTAL ESTIMATED STANDARD PREMIUM | $ | 351,703.00 | If indicated below, adjustments of premium shall be made: |
| PREMIUM DISCOUNT | $ | -79.00 | |
| EXPENSE CONSTANT | $ | 200.00 | |
| PREMIUM FOR ENDORSEMENT | $ | | ☒ Annually   ☐ Monthly |
| TAXES AND SURCHARGES | $ | 22,529.00 | ☐ Semi-Annually   ☐ This is a Three Year Fixed Rate Policy |
| TOTAL ESTIMATED ANNUAL PREMIUM | $ | 374,353.00 | ☐ Quarterly |
| MINIMUM PREMIUM | $ | | |
| DEPOSIT PREMIUM | $ | | |

---

Agent or Producer                 Countersigned by Resident Licensed Agent                 Date

WC 00 00 01A

U WC-D-314-A (07-94)
Page 1 of 1



**COMMERCIAL INSURANCE**

**WORKERS COMPENSATION SUPPLEMENTAL INFORMATION PAGE**

Insurance for this coverage part provided by:
AMERICAN ZURICH INSURANCE COMPANY

| NAMED INSURED | POLICY NUMBER |
|---|---|
| CORINTHIAN COLLEGES, INC | WC 9304937-14 |

Item 3.C. Other States:
ALL STATES NOT LISTED IN ITEM 3.A. EXCEPT OH, ND, WA AND WY.

confidential



# SPECIFICATIONS TO PAID DEDUCTIBLE AND
## PAID LOSS RETROSPECTIVE AGREEMENT
### BETWEEN
### Corinthian Colleges, Inc.
### AND
### AMERICAN ZURICH INSURANCE COMPANY ("AZIC")
### ZURICH AMERICAN INSURANCE COMPANY ("ZAIC")

## Specifications Effective Date July 1, 2014

### A. Deductible Policy(ies)

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| Workers Compensation | American Zurich Insurance Company | WC 9304937-12 | 10/01/2014 |

### B. Retrospective Premium Policy(ies)

| Policy(ies) | Company | Policy Number | Expiration Date |
|---|---|---|---|
| Workers Compensation | Zurich American Insurance Company | WC 9304938-12 | 10/01/2014 |

### C. Loss Limit(s)

The following are the Loss Limit(s) applying to all losses, claims, suits, actions or other proceedings with respect to the coverages provided under the Policy(ies):

1. The first $ 350,000 under Workers' Compensation ("WC") coverage arising out of each accident involving one or more employees.

2. The first $ 350,000 under WC coverage arising out of occupational disease payable to each affected employee.

3. The first $ 350,000 under Employers' Liability ("EL") coverage arising out of each accident involving one or more employees.

4. The first $ 350,000 under EL coverage arising out of occupational disease payable to each affected employee.

5. With respect to 1 through 4 above, the amount of ALAE that You are obligated to pay Us will be determined as follows:

   ALAE is included within the Loss Limit(s) under the Policy(ies) and is reimbursed to Us by You up to the Loss Limit(s).  We pay the ALAE excess of the Loss Limit.

### D. Deductible Policy(ies)

1. **Deductible Premium**

   You are obligated to pay Us Deductible Premium.  The Deductible Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Deductible Policy. The Deductible Premium stated below is an estimated amount which is subject to adjustment.

confidential

confidential



Adjusted Deductible Premium due is payable to Us at the time We issue the premium audit bill.  In no event will the amount of the Deductible Premium be less than the Minimum Premium stated below.

| Policy(ies) | Exposure Base | Rate | Estimated Exposure | Deductible Premium | Minimum Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | $0.17 per $100 | $140,755,094 | $239,284 | $239,284 |

*Stop gap to be charged at a rate of $.01 per $100 stop gap payroll.

| State | Rate |
|---|---|
| AK | .06 |
| AL | .0068 |
| DC | .138 |
| DE | .043 |
| ID | .017 |
| KS | .030 |
| LA | .076 |
| ME | .009 |
| MI | .014 |
| NE | .003 |
| WI | |
| USL&HW* | .067 |

* and extensions, as applicable

## E.  Retrospective Premium Policy(ies)

### 1.  Standard & Deposit Premiums – Retrospective Premium Policy(ies)

You are obligated to pay Us the Deposit Premium.  The Deposit Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Retrospective Premium Policy.  In no event will the amount of Deposit Premium be less than the Deposit Premium amount stated below.  The Standard Premium stated below is an estimated amount. The premium audit billing will be deferred until We issue the first Retrospective Premium Adjustment billing.

| Policy(ies) | Exposure Base | Standard Premium Rate | Estimated Exposure | Standard Premium | Deposit Premium |
|---|---|---|---|---|---|
| WC/EL | Payroll excluding stop gap | Rates stated in policy | $1,447,756 | $Per Policy | Per Installment Schedule |

confidential



2.  **Retrospective Premium Elements**

a.  Basic Premium

Basic Premium is $0 and is adjustable at a rate of $0 applied per $100 of audited payroll including stop gap.

You are obligated to pay Us the adjusted Basic Premium amount times the Tax Multiplier.

Basic Premium shall never be less than $ 0.

b.  Unallocated Loss Adjustment Expense
You are obligated to pay the applicable ULAE charges.

c.  Tax Multiplier

The Tax Multiplier is based on Our current rates and is not adjustable based on the final audited premium.

The following are the rates charged based on the state distribution of Your premium:

| Policy(ies) / Line of Business | Tax Multiplier |
|---|---|
| WC / EL | 1.032 |

Terrorism Premium and CAT Premium
You are obligated to pay Us the adjusted amount for Terrorism Premium and CAT Premium upon Our issuance of the first Retrospective Premium Adjustment billing.

d.  Premium Surcharges and Other Special Charges

You are obligated to pay Us the adjusted amount for Premium Surcharges and Other Special Charges at each Retrospective Premium Adjustment billing.

3.  **Earned Retrospective Premium Formula**

For purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula:  {((IL + IALAE) x LCF) + Basic Premium} x TM = ERP

Upon conversion, for purposes of calculating the Earned Retrospective Premium, the following formula applies:

Formula:  {((IL + IALAE) x LDF x LCF) + Basic Premium} x TM = ERP

4.  **Retrospective Premium Adjustment**

a.  Retrospective Premium Adjustment Billings

You are obligated to pay Us each Retrospective Premium Adjustment billing.  We will calculate a Retrospective Premium Adjustment billing beginning with losses valued eighteen (18) months after the Specifications Effective Date and, at a minimum, annually thereafter.  Each Retrospective Premium Adjustment billing will be calculated as follows:

confidential



The sum of:

i.   Earned Retrospective Premium (ERP), plus
ii.  audited Terrorism Premium and CAT Premium, plus
iii. Premium Surcharges and Other Special Charges,

Less the sum of the following:

iv.  Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
v.   Loss billings; plus,
vi.  Terrorism Premium and CAT Premium billings, plus
vii. Prior Earned Retrospective Premium billings, plus
viii. the sum of (Loss Reserves and ALAE Reserves) times the LCF times the Tax Multiplier, plus
ix.  Premium Surcharges and Other Special Charges billings.

At each Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date. Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid [or upon completion of a close out as set forth in these Specifications ].

b. **Conversion of Retrospective Premium Policy(ies)**

Commencing ninety (90) months after the Specifications Effective Date and, at a minimum, annually thereafter, the Loss Billings will be replaced with Incurred Loss Retrospective Premium Adjustment billings.  We will bill You and You are obligated to pay Us each Incurred Loss Retrospective Premium Adjustment billing.

The following Retrospective Premium Policy(ies) are subject to Conversion to Incurred Loss Retrospective Premium Adjustment billings:

All Retrospective Premium Policy(ies) listed in these Specifications

c. Each Incurred Loss Retrospective Premium Adjustment billing will be calculated as follows:

The sum of:

i.   Earned Retrospective Premium (ERP), plus
ii.  audited Terrorism Premium and CAT Premium, plus
iii. Premium Surcharges and Other Special Charges

Less the sum of the following:

iv.  Billings for Deposit Premium for the Policy(ies) stated in Section E. 1., plus
v.   Loss billings, plus
vi.  Terrorism Premium and CAT Premium billings, plus
vii. Prior Earned Retrospective Premium billings, plus
viii. Premium Surcharges and Other Special Charges billings.

At each Incurred Loss Retrospective Premium Adjustment billing, You will pay the premium due Us within twenty (20) days of the billing date.  Incurred Loss Retrospective Premium Adjustment billings shall continue until We suspend billings when all losses have been paid [or upon completion of a close out as set forth in these Specifications].

## F.  Combined Elements

confidential



1. **Terrorism Premium And Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program)**

   You are obligated to pay Us a Terrorism Premium charge for risk of loss resulting from terrorism and Catastrophe Premium (including other than Certified Acts of Terrorism as defined by the Terrorism Risk Insurance Program) and hereinafter referred to as CAT Premium.

   Terrorism Premium and CAT Premium deposit(s) and installment(s), as applicable, are payable to Us as stated in each Policy.

   Terrorism Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill.  Terrorism Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing.

   a. The WC Terrorism Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

   CAT Premium applies with respect to WC Policy(ies) only.  CAT Premium for the Deductible Policy(ies) will be adjusted by Us at the time We issue the premium audit bill. CAT Premium for the Retrospective Premium Policy(ies) will be adjusted by Us at the time We issue the first Retrospective Premium Adjustment billing. CAT Premium is not included in the WC premium(s) or the WC rate(s) stated elsewhere in these Specifications and is subject to audit.

2. **Combined Aggregate – Deductible Policy(ies) and Retrospective Premium Policy(ies)**

   a. The Combined Aggregate is an estimated amount of $1,564,231

   b. The Combined Aggregate will be adjusted by Us at a rate of $1.1 per $100 of total audited payroll excluding stop gap upon completion of the premium audit for the Policy(ies).

   c. In no event will the Combined Aggregate be less than $1,564,231.

   d. The most You are obligated to pay Us for the sum of Paid Losses within the Loss Limit(s) plus applicable Paid ALAE, or on Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE, should the Loss Billings convert, times the LDF, shall be no greater than the Combined Aggregate.

   e. Your obligation to pay Us for the sum of the applicable Tax Multiplier plus LCF on Paid Loss and applicable Paid ALAE within the Loss Limit(s), or on Incurred Loss and applicable Incurred ALAE within the Loss Limit(s), should the Loss Billings convert, is in addition to the Combined Aggregate amount.  Loss Billings and Retrospective Premium Adjustments for these elements will cease once You have paid the Combined Aggregate amount.

3. **Unallocated Loss Adjustment Expense (ULAE)**

   At each Loss Billing and Retrospective Premium Adjustment, We will bill You the following LCF(s):

| Policy(ies) | LCF | Paid Loss Billings | Converted Loss Billings, if applicable, and Retrospective |
| --- | --- | --- | --- |
|  |  |  |  |

confidential

confidential

| | | | | Premium Adjustments |
|---|---|---|---|---|
| WC/EL | 1.0700 | Paid Loss & Paid ALAE subject to the applicable deductible/loss limits | Incurred Loss & Incurred ALAE subject to the applicable deductible/loss limit | |

The LCF charge is subject to a maximum amount of $87,500

4. **Loss Billings**

Loss Billings:

a. You are obligated to pay Us all Loss Billings.

b. You will be billed monthly following the effective date of the Policy(ies), for the following:

    1. With respect to the Deductible Policy(ies),

        i. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

        ii. less Recoveries within the Loss Limit(s) credited during the month,

        iii. times the LCF,

        iv. plus WC Paid Losses within the Loss Limit(s) paid during the month times the state LBA.

    2. With respect to the Retrospective Premium Policy(ies)

        i. Paid Losses within the Loss Limit(s) plus applicable Paid ALAE paid during the month,

        ii. less Recoveries within the Loss Limit(s) credited during the month,

        iii. times the LCF,

        iv. times the Tax Multiplier.

Loss Billings shall continue until either i) We suspend billings when all losses have been paid or ii) the conversion of the Loss Billings resulting in an alternate method of payment as may be provided for in the Loss Billing Conversion section of these Specifications with respect to the Deductible Policy(ies) and the Retrospective Premium Adjustment section of these Specifications with respect to the Retrospective Premium Policy(ies).

5. **Loss Billing Conversion for Deductible Policy(ies)**

a. Beginning ninety (90) months after the Specifications Effective Date, converted Loss Billings for the Deductible Policy(ies) will begin. You are obligated to pay Us all converted Loss Billings.

b. With respect to the Deductible Policy(ies) at the time of conversion and, at a minimum, annually thereafter, We will bill You:

    i. Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,

confidential

ii.   times the LDF
iii.  times the LCF
iv.   plus WC Incurred Losses within the Loss Limit(s) times the state LBA,
v.    less Loss Billings by Us.

c. Loss Billings shall continue until We suspend billings when all losses have been paid.

## 6.  Premium Surcharges and Other Special Charges
a. Premium Surcharges

You are obligated to pay Us Premium Surcharges in addition to the Deposit Premiums.  These sums are payable to Us as stated in the Policy(ies).

You are obligated to pay Us for Premium Surcharges which apply in any jurisdiction in which exposure exists or where exposure develops under the Policy(ies).  Premium Surcharges are subject to change without prior notice.  Premium Surcharges will be billed by Us based upon rates according to applicable regulatory or statutory requirements.

You will be billed and are obligated to pay Us for additional Premium Surcharges at the time We issue the premium audit billing for the Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at each Retrospective Premium Adjustment billing.

The applicable Premium Surcharges may apply to, but are not limited to, the following: Deductible Premium, Standard Premium, Earned Retrospective Premium, Excess Premium, Terrorism Premium, CAT Premium and audited exposures.

b. Other Special Charges

You are obligated to pay Us for Other Special Charges.  You will be billed for Other Special Charges at the time We issue the premium audit billing for Deductible Policy(ies) and, for the Retrospective Premium Policy(ies), at the time We issue each Retrospective Premium Adjustment billing unless otherwise required by law.  We will provide You with information about the purpose of the charges and, as applicable, the amount of the charge and the application thereof.  You will be billed based upon the information provided.

## 7.  Loss Fund

| Additional Loss Fund Adjustment: | $0 |
|---|---|

a. You are obligated to provide the Required/Amended Loss Fund amount stated above which is due on or before the Specifications Effective Date.

b. Adjustment of the Loss Fund will be computed at a minimum annually after the Specifications Effective Date.  We may adjust the Loss Fund at any time We determine the amount We require is greater than the Required/Amended amount stated above. Adjustments will be calculated and billed as follows:

i.   Paid Losses within the Loss Limit(s) and applicable Paid ALAE for 12 months prior to the adjustment date,
ii.  Times the LCF for 12 months prior to the adjustment date,

confidential



   iii.  plus WC Paid Losses within the Loss Limit(s) times the applicable state LBA,
   iv.  divided by 12 equals the monthly average payment,
   v.  monthly average payment times 2.5 equals the adjusted Loss Fund,
   vi.  Required/Amended Loss Fund less Loss Fund held equals the additional or return amount due.

c.  At the time of each Loss Fund adjustment, payment by You will be due within twenty (20) days of the billing date; payment by Us will be credited to Your subsequent Loss Billing.  When We have determined that We no longer require a Loss Fund, the remaining balance in the Loss Fund will be returned to You.

## 8.  Collateral

| | |
|---|---|
| Collateral on hand: | $4,875,000 |
| Adjustment: | $ 700,000 |
| Required/Amended Collateral amount: | $5,575,000 |

a.  The Required/Amended Collateral amount stated above is due on or before the Specifications Effective Date.  Collateral requirements will be reviewed periodically and We reserve the right to require additional Collateral at any time We deem necessary to secure Your obligations to Us under the Program.

b.  The adjustment of the Collateral will include, but not be limited to, the sum of i. and ii. below:

   i.  With respect to the Retrospective Premium Policy(ies):
     a.) Ultimate Retrospective Premium less
     b.) The sum of amounts billed by Us for all deposit amounts, premium audits, Loss Billings and Retrospective Premium Adjustment billings.

   ii.  With respect to the Deductible Policy(ies):
     a.) Incurred Losses within the Loss Limit(s) plus applicable Incurred ALAE,
     b.) times the applicable LDF,
     c.) times the LCF
     d.) plus the applicable LBA,
     e.) less the sum of amounts billed by Us for Loss Billings.

c.  For the Policies stated in these Specifications, LDFs used by Us to compute Your Required/Amended Collateral obligation will be determined by Us, at our sole discretion, at the time of each Collateral adjustment.

confidential

confidential





**CORINTHIAN**
**COLLEGES, INC.**

6 Hutton Centre Drive, Suite 400

Santa Ana, CA 92707-5764

*tel* 714.427.3000  *fax* 714.427.5111

www.cci.edu

## G. Notices

All notices, letters or other communications required under this Agreement shall be in writing and addressed as follows:

|  |  |
|---|---|
| If to You: | Corinthian Colleges, Inc.<br>Attn: Don King |
| Address: | 6 Hutton Centre Drive<br>Suite 400<br>Santa Ana, CA 92707 |
| Telephone: | (714) 427-3000 |
| Telefax: | (714) 427-3013 |
| | |
| If to Us: | Zurich American Insurance Company<br>American Zurich Insurance Company |
| Address: | Attention: GCiNA Casualty Regional Manager<br>777 S. Figueroa Street, Suite 3900<br>Los Angeles, CA  90017 |
| Telephone: | 213-270-0604 |
| Telefax: | 866-830-3662 |

The parties have caused the Specifications, effective July 1, 2014 to be signed by their duly authorized representatives and witnessed.

**Corinthian Colleges, Inc.**

By: _____

Title: _EVP, CFO_____

Witness: _Debra McLaughlin_____

Date: _8-5-2014_____

**AMERICAN ZURICH INSURANCE COMPANY**
**ZURICH AMERICAN INSURANCE COMPANY**

By: _____

Title: Vice President_____

Witness: _____

Date: 7/28/2014_____



## COMMON POLICY DECLARATIONS

POLICY NUMBER:  SF13ESP0A4L00NC

COVERAGE IS PROVIDED BY



## Navigators Specialty Insurance Company
### One Penn Plaza, New York, NY 10119

**ITEM 1.  NAMED INSURED**

Mailing Address:

Corinthian Colleges, Inc.

6 Hutton Centre Drive, Suite 400 - Treasury
Santa Ana, CA  92707

**ITEM 2.  POLICY PERIOD**

From:  March 31, 2013          To:     March 31, 2016

**at 12:01 A.M., Standard Time at your mailing address shown above.**

Agent or Broker
Office Address:

Arthur J. Gallagher Risk Management Services, Inc.
3697 Mt. Diablo Blvd, Suite 300
Lafayette, CA  94549

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A LIMIT IS INDICATED. WHERE NO LIMIT IS SHOWN, THERE IS NO COVERAGE.

**ITEM 3.  LIMIT OF LIABILITY, DEDUCTIBLE:**

| Coverage(s) | Deductible | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| **A. Pollution Liability For Your Insured Site(s)** | $25,000 | $5,000,000 | $5,000,000 |
| **B. Pollution Liability For Your Off-Site Activities** | $25,000 | $5,000,000 | $5,000,000 |

Policy Aggregate Limit  **$5,000,000**

**ITEM 4.  WASTE DISPOSAL FACILITY RETROACTIVE DATE:** March 31, 2013

**ITEM 5. POLICY PREMIUM**

Total Premium shown is payable at Policy Inception

| MINIMUM EARNED PREMIUM | 100% |
|---|---|
| TOTAL PREMIUM | $73,316 |
| TRIA PREMIUM | Included |

Terrorism Coverage Accepted

THESE POLICY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

COUNTERSIGNED :
Date:                    4/3/2013                 BY:

AUTHORIZED REPRESENTATIVE

NAV-ESP TLKT DEC (1/09) Form No. DC01



**National Union Fire Insurance Company of Pittsburgh, Pa.**
777 SOUTH FIGUEROA STREET
18TH FL
Los Angeles, CA 90017-5814
(213) 689-3500



### BINDER OF INSURANCE CONFIRMATION LETTER

March 31, 2015

CASSANDRA SHIVERS
ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL
505 N BRAND BLVD STE 600
GLENDALE, CA 91203-3018

RE:   **CORINTHIAN COLLEGES INC**
       **Executive Edge**

       **Name of Insurance Carrier: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**
       **Address of Insurance Carrier: 175 WATER STREET, NEW YORK, NY, 10038**

       **Tab#: 7037045, Submission #: 873146150**
       **Runoff of Policy#: 02-778-51-66**
       **Runoff Period Effective Date From: 03/31/2015 To 03/31/2018**

Dear Cassandra:

On behalf of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "Insurer"), I am pleased to confirm the binding of coverage in accordance with our agreement as set forth below and subject to the conditions set forth herein. Please review said Binder for accuracy and contact the Insurer **prior to the effective date** of policy coverage of any inaccuracy(ies) found within the issued Binder. If the Insurer does not hear from you prior to the effective date of policy coverage it will be understood that the Binder has been accepted as an accurate description of the agreed upon terms of coverage.

### ***IMPORTANT POLICY ISSUANCE VERIFICATION***

A policy will be issued with the name and address of the Insured exactly as referenced in the "Policy Information" Section of this Binder. If this information is inaccurate, please advise us immediately.

(12)

**POLICY INFORMATION**

**INSURED:**              CORINTHIAN COLLEGES INC

**INSURED'S ADDRESS:**    6 HUTTON CENTRE DRIVE SUITE 400
                         SANTA ANA, CA 92707

**TYPE OF POLICY:**       Executive Edge

**BASIC FORM:**           104123 (04/10)

**INSURANCE COMPANY:**    National Union Fire Insurance Company of Pittsburgh, Pa.

**POLICY NUMBER:**        02-778-51-66

**EFFECTIVE DATE:**       03/31/2014       **EXPIRATION DATE:**   03/31/2015*

**LIMIT OF LIABILITY:**   $10,000,000

**RETENTION:**            Securities Retention:                      $1,000,000
                         Employment Practices Retention:            $1,000,000
                         All other Loss to which a Retention applies: $1,000,000

**CONTINUITY DATES:**     Outside Entity Executive Coverage:    The date on which the Executive
                                                               first served as an Outside Entity
                                                               Executive of such Outside Entity
                         All other Coverage:                   07/01/1995

**PASSPORT:**             This policy ☐ serves, or ☒ does not serve, as a master Passport policy

**OTHER TERMS:**          Per Insurer Quote/Indication Letter dated 03/11/2014 except as
                         indicated below.

**PREMIUM:**              $514,962*

**COMMISSION:**           13.50%

**Important Conditions Of Binder:** See Below,  *See Endorsement #66 and #68 Below.

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002:
$2,562 included in policy premium. Any coverage provided for losses caused by an act of terrorism
as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula
established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated
by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for
the year preceding the act of terrorism.

The following will be added to the basic policy:

| # | Form # | Ed Dt | Title |
|---|--------|-------|-------|
| 1 | 104870 | 04/10 | Crisisfund Appendix |

<u>ENDORSEMENTS</u>



The following endorsements will be added to the basic policy:

| # | Form # | Ed Dt | Title |
|---|--------|-------|-------|
| 1 | 52133 | 03/07 | Ca Cancellation/ Nonrenewal Endorsement |
| 2 | MNSCPT | | State Amendatory Inconsistent |
| 3 | 90143 | 12/05 | California Punitive Damages Law Endorsement |
| 4 | 104949 | 04/10 | Nuclear Energy Liability Exclusion Endorsement |
| 5 | 104135 | 04/10 | Pending And Prior Litigation Exclusion For Excess Limits ($9M xs $1M Dated 02/04/1999) |
| 6 | 104962 | 04/10 | Securities Claim Definition - Common Law |
| 7 | MNSCPT | | Definition Of Insured Person Amended |
| 8 | MNSCPT | | Definition Of Insured Person (Trustees) |
| 9 | MNSCPT | | Specific Claim Exclusion |
| 10 | 104147 | 04/10 | Subsidiary-Auto-Subsidiary Percentage Decreased (15%) |
| 11 | MNSCPT | | Definition Of Employee Amended |
| 12 | 106828 | 09/10 | UK Corporate Manslaughter Act Defense Costs Amended Other Law |
| 13 | MNSCPT | | Defense Costs Amendatory |
| 14 | 106013 | 07/10 | Claim Definition Amended - Requests To Toll Statute Of Limitations |
| 15 | 107033 | 10/10 | Application And Underwriting Amended Reliance And Incorporation |
| 16 | 107034 | 10/10 | Conduct Exclusions Amended Final Non-Appealable Adjudication In Any Underlying Proceeding |
| 17 | 104940 | 04/10 | ERISA Exclusion Amended To Apply Solely To Company Benefit Plans |
| 18 | MNSCPT | | Other Insurance And Indemnification Clause Amended |
| 19 | 105002 | 04/10 | Shadow Directors Coverage |
| 20 | 107317 | 11/10 | Spousal Domestic Partner And Legal Representative Extension Amended Trust Or Estate Planning Vehicle |
| 21 | MNSCPT | | Pre-Claim Inquiry Amended Cost Of Producing Documents |
| 22 | MNSCPT | | Asset Protection Costs Amendatory |
| 23 | MNSCPT | | Sox 304 Costs Amendatory |
| 24 | 106818 | 09/10 | Recovery Of Limits Amended Delete Last Sentence |
| 25 | 106012 | 07/10 | Bankruptcy Waiver Added |
| 26 | MNSCPT | | Discovery Clause Amended (1 Year No More Than 75%; 2-6 Years TBD) |
| 27 | 106821 | 09/10 | Retention Amended Personal Reputation Expenses And Asset Protection Costs - $1,000,000 |
| 28 | MNSCPT | | Definition Of Transaction Amended (Delete Financial Impairment Activities) |
| 29 | 106825 | 09/10 | Conduct Exclusions Amended Personal Profit Financial Advantage |
| 30 | M114678 | | Subsidiary Additions Amended (90-Day Auto-Sub Period) |
| 31 | 108598 | 04/11 | Notice And Reporting Amended 90-Day Post Policy Reporting Period |
| 32 | 108599 | 04/11 | Notice And Reporting Amended Notice Of Circumstances Requirements |
| 33 | 104934 | 04/10 | Crisisplus Endorsement |
| 34 | 106829 | 09/10 | Extradition Amended Sought To Be Surrendered |
| 35 | 108595 | 04/11 | Dodd-Frank 954 Costs |

(12)

| 36 | MNSCPT | | Entity V Insured Exclusion Amended – 3 Years |
| 37 | MNSCPT | | Entity V. Insured Exclusion Amended - Amend Carveback C For Bankruptcy Constituencies |
| 38 | 106824 | 09/10 | Entity V Insured Exclusion Amended Whistleblower Carveback |
| 39 | MNSCPT | | Order Of Payments Amended - Majority Of Independent Directors |
| 40 | 106006 | 07/10 | Discovery Clause Amended Delete Or Replaced |
| 41 | 101036 | 04/09 | Cancellation Amendatory |
| 42 | 108590 | 04/11 | Application Amended Public Filings |
| 43 | 108591 | 04/11 | Conduct Exclusions Amended Add "Deliberately" Delete The "Portion Of" |
| 44 | 108594 | 04/11 | Derivative Investigation Costs Amended |
| 45 | 108596 | 04/11 | Entity V Insured Exclusion Amended Carvebacks A And B Delete In Defending Any Claim Against That Insured Person Whistleblower Carveback |
| 46 | 108604 | 04/11 | Pre-Claim Inquiry Amended Change And To Or |
| 47 | 107191 | 11/10 | Pending And Prior Litigation Exclusion Amended - Insured Party |
| 48 | 108589 | 04/11 | Alternative Dispute Resolution Amended Waiting Period Revised For Expiration Of Statute Of Limitations |
| 49 | 108587 | 04/11 | Advancement Amended Not In Default Of Payment Return Of Payments |
| 50 | 108597 | 04/11 | Loss Amended Applicable Law |
| 51 | 108603 | 04/11 | Personal Injury Exclusion Amended UK Corporate Manslaughter Act Defense Costs Carveback |
| 52 | 108592 | 04/11 | Control Person Capacity |
| 53 | MNSCPT | | Pre-Claim Inquiry Definition Amended |
| 54 | MNSCPT | | Former Subsidiaries Clause Amended |
| 55 | 104959 | 04/10 | Retention Erosion Through Side-A Insurance Fill-In |
| 56 | MNSCPT | | Severability Of Exclusions Amended |
| 57 | MNSCPT | | Choice Of Counsel Endorsement<br>• Munger, Tolles & Olsen LLP - Ca |
| 58 | M114801 | | Notice And Reporting Amended Prejudice Threshold |
| 59 | M114648 | | Allocation Amended (Defense Costs For Derivative) |
| 60 | 106832 | 09/10 | Loss Amended Cleanup Costs |
| 61 | M114757 | | Loss Definition Amended (UK Bribery Act) |
| 62 | 106010 | 07/10 | Transaction Amended Delete Subparagraph (3) |
| 63 | 107188 | 11/10 | Entity V Insured Exclusion Amended DIP Claims Against Former Insured Persons |
| 64 | 89644 | 06/13 | Economic Sanctions Endorsement |
| 65 | 78859 | 10/01 | Forms Index Endorsement |
| 66 | MNSCPT | | Pre-Paid Runoff Endorsement<br>• 3 Years<br>• Additional Premium of $643,703 |
| 67 | SYSLIB | 01/05 | Forms Index (Amended) |
| 68 | *MNSCPT* | | *Confirmation Of Runoff Endorsement*<br>• *Per Endt #66, Runoff Effective Time Is 03/31/2015* |
| 69 | *SYSLIB* | *01/05* | *Forms Index (Amended)* |

Executive Edge policyholders receive the benefit of eDiscovery Solutions, a value added program providing ediscovery advice and strategies. Bound policies include an introductory letter describing the program and how to access it.

(12)

CONDITIONS OF BINDER

When signed by the Insurer, the coverage described above is in effect from 12:01 AM of the Effective Date listed above to 12:01 AM of the Expiration Date listed above, pursuant to the terms, conditions and exclusions of the policy form listed above, any policy endorsements described above, and any modifications of such terms as described in this Binder section.Unless otherwise indicated, this Binder may be canceled prior to the Effective Date by the Insured, or by the Broker on the behalf of the Insured, by written notice to the Insurer or by the surrender of this Binder stating when thereafter such cancellation shall be effective. Unless otherwise indicated, this Binder may be canceled by the Insurer prior to the Effective Date by sending written notice to the Insured at the address shown above stating when, not less than thirty days thereafter, such cancellation shall be effective. Unless otherwise indicated, this Binder may be canceled by the Insurer or by the Insured on or after the Effective Date in the same manner and upon the same terms and conditions applicable to cancellation of the policy form listed above.Issuance by the Insurer and acceptance by or on the behalf of the Insured of the policy shall render this Binder void except as indicated below.

A condition precedent to coverage afforded by this Binder is that no material change in the risk occurs and no submission is made to the Insurer of a claim or circumstances that might give rise to a claim between the date of this Binder indicated above and the Effective Date.

Please note this Binder contains only a general description of coverages provided. For a detailed description of the terms of a policy you must refer to the policy itself and the endorsements bound herein.

PREMIUM PAYMENT

Our accounting procedures require that payment be remitted within 30 days of the effective date of coverage or 15 days from the billing date, whichever is later.

We appreciate your compliance with this procedure.


We appreciate your business and hope that we can be of further service to you in the future.

Sincerely,

NICHOLAS WALTRIP
Underwriting Specialist
Executive Liability
213-689-3648

If you have any questions regarding this policy, or for any other service needs, please contact our AIG Broker Services:

Monday-Friday  9:00 AM - 6:00 PM Eastern
Telephone: 1-877-TO-SERVE or (877)867-3783
E-mail: TOSERVE@aig.com
Fax: (800) 315-3896                    *Raising the bar with commitment to quality*

**ENDORSEMENT# *66***   

This endorsement, effective *12.01am*   *September 29, 2014*   forms a part of
policy number  *02-778-51-66*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PREPAID RUNOFF ENDORSEMENT**

In consideration of the additional premium of $643,703 (hereinafter " **Runoff Premium**") it
is hereby understood and agreed that as of the earlier of (i) the effective time of the "
**Runoff Transaction**," or (ii) the expiration date of the **Policy Period** as set forth in Item 2. of
the Declarations, (hereinafter " **Effective Time**") this policy shall be amended as follows:

(1)   This policy shall continue in full force and effect as to **Wrongful Acts** occurring prior
to the **Effective Time**, but there shall be no coverage afforded by any provision of
this policy for any **Wrongful Act** occurring after the **Effective Time**.

(2)   Clause 8, Discovery, of the policy is deleted in its entirety and replaced by the
following:

The **Named Entity** shall have the right to a period of three (3) years following the
**Effective Time** (" Discovery Period") in which to give written notice to the **Insurer** of:
(i) **Claims** first made against an **Insured(s)** for **Wrongful Acts** occurring on or prior to
the **Effective Time**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and
(iii) circumstances of which an **Organization** or an **Insured** shall become aware, but
in all events, with respect to (ii) and (iii) based upon, arising out of or related to
facts or circumstances and/or alleged facts or circumstances occurring on or prior
to the **Effective Time** and otherwise covered by this policy during said three (3) year
period.

(3)   The **Discovery Period** shall be subject to all the terms, conditions and limitations of
this policy. The **Discovery Period** shall <u>not</u> provide coverage for any **Wrongful
Act**(s) occurring after the **Effective Time**.

(4)   The **Limit of Liability** for the **Discovery Period** shall be part of and not in addition to
the remaining **Limit of Liability** of this policy as of the **Effective Time**. In no way
shall the language of this endorsement be construed to reinstate, renewed or
increased the **Limit of Liability** for this policy or the **Discovery Period**.

(5)   The term " **Runoff Transaction**" means a **Transaction** as defined in Clause 13.

(6)   **Transaction** shall <u>not</u> include divestiture of some or all of the schools or properties
listed in the table within PART 1, ITEM 1. BUSINESS, "Programs of Study" of the
**Insured's** Form 10-K Annual Report filed September 3rd, 2013.

(7)   Notwithstanding any other provision of this policy, this policy may not be canceled
other than by the **Insurer** for non-payment of premium after providing the **Named
Insured** fifteen (15) days advance notice. The premium for this policy, including the
**Runoff Premium**, shall be deemed fully earned as of the effective date of this
endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 66*

MNSCPT



**ENDORSEMENT# *67***

This endorsement, effective *12.01am*          *September 29, 2014*          forms a part of
policy number   *02-778-51-66*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PREPAID RUNOFF ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 067*

**ENDORSEMENT#** *68*

*(12)*

This endorsement, effective *12.01am*     *March 31, 2015*     forms a part of
policy number *02-778-51-66*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONFIRMATION OF RUN-OFF COVERAGE

Pursuant to Endorsement #66 (PREPAID RUNOFF ENDORSEMENT), and in consideration of the additional premium stated therein, it is hereby understood and agreed that the " **Effective Time**" (as defined in that endorsement) is 03/31/2015, and that the three (3) year run-off coverage option described in Endorsement #66 shall be afforded subject to all terms, conditions and limitations of Endorsement #66.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                          *END 68*

(12)

**ENDORSEMENT# _69_**

This endorsement, effective _12.01am_     _March 31, 2015_          forms a part of
policy number  _02-778-51-66_
issued to _CORINTHIAN COLLEGES INC_

by    _National Union Fire Insurance Company of Pittsburgh, Pa._

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | CONFIRMATION OF RUN-OFF COVERAGE |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**_END 069_**

confidential

 

## National Union Fire Insurance Company of Pittsburgh, Pa. ®
*A capital stock company*
(the "Insurer")

POLICY NUMBER: *02-778-51-66*            REPLACEMENT OF POLICY NUMBER: *01-878-50-23*

# Executive Edge®

### Broad Form Management Liability Insurance Policy

---

NOTICES: This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Inquiries** that an **Insured Person** first received, and (iii) **Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period**. Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the Notice and Reporting clause for details). Covered **Defense Costs**, **Pre-Claim Inquiry Costs** and **Derivative Investigation Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the retention amount. The **Insurer** does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

---

## DECLARATIONS

1.  **NAMED ENTITY:**        *CORINTHIAN COLLEGES INC*

    **Named Entity Address:**   *6 HUTTON CENTRE DRIVE*
    *SUITE 400*
    *SANTA ANA, CA 92707*

    **State of Formation:**     *Delaware*

2.  **POLICY PERIOD:**     From: *March 31, 2014*          To: *March 31, 2015*
    The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Entity Address**.

3.  **PREMIUM:**                                                              *$514,962*

4.  **LIMIT OF LIABILITY:**                                                   *$10,000,000*

5.  **RETENTION:** Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Crisis Loss** or
    (iii) **Derivative Investigation Costs**.

    (a) **Securities Retention:**                                            *$1,000,000*

    (b) **Employment Practices Retention:**                                  *$1,000,000*

    (c) All other **Loss** to which a Retention applies :                    *$1,000,000*

    If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

6.  **PASSPORT:**  This policy ☐ serves, or ☒ does not serve, as a master Passport policy.

*7037045*

℠ All rights reserved.

confidential

confidential

 

**DECLARATIONS** (Continued)

**7.   INSURER**

    (a) **INSURER ADDRESS:**    *175 Water Street*
*New York, NY 10038-4969*

    (b) **CLAIMS ADDRESS:**    By E-Mail: c-claim@AIG.com
By Mail: *AIG, Financial Lines Claims*
*P.O. Box 25947*
*Shawnee Mission, KS 66225*

    In either case, reference the Policy Number.

**8.   CONTINUITY DATES**

    (a) **Outside Entity Executive** Coverage--The date on which the **Executive** first served
as an **Outside Entity Executive** of such **Outside Entity**.

    (b) All other coverage:                                                      *July 1, 1995*

**9.   TRIA PREMIUM, TAXES AND SURCHARGES**

    (a) **TRIA Premium**                                                          *$2,562*

       '**TRIA Premium**' means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk
Insurance Act 2002.  Amount indicated above is included in **Premium**. A copy of the TRIA disclosure
sent with the original quote is attached hereto.

---

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President,
Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the
time of issuance by an authorized representative of the insurer.

          PRESIDENT          AUTHORIZED REPRESENTATIVE        SECRETARY

*ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL*
*505 N BRAND BLVD*
*STE 600*
*GLENDALE, CA 91203-3018*
  *7037045*

    ® All rights reserved.

confidential

confidential



**Policy Number:**    **ELU133658-14**

**Renewal of Number:**   ELU129366-13

☐ **Greenwich Insurance Company**

☒ **XL Specialty Insurance Company**
   Members of the XL America Companies

---

**EXCESS POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.**    **Name and Mailing Address of Insured Entity:**

Corinthian Colleges, Inc.
6 Hutton Center Drive
Santa Ana, CA 92707

---

**Item 2.**    **Policy Period:**    **From:**    March 31, 2014    **To:**    March 31, 2015

     **At 12:01 A.M. Standard Time at your Mailing Address Shown Above**

---

**Item 3.**    **Limit of Liability:**

$10,000,000 Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.**    **Schedule of Underlying Insurance:**

| | | Insurer | Policy No | Limit of Liability |
|---|---|---|---|---|
| (a) | Primary Policy | National Union Fire Insurance Company of Pittsburgh, Pa. | 02-778-51-66 | $10,000,000 |
| (b) | Underlying Excess Policy | | | |

---

**Item 5.**    **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT 06103
Toll Free Telephone: 877-953-2636

---

**Item 6.**    **Premium:**

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $319,000.00 |

---

**Item 7.**    **Policy Forms and Endorsements Attached at Issuance:**

EX 71 01 09 99   EX 82 01 07 07   XL 80 24 03 03   EX 80 107 10 03   EX 80 75 09 02   EX 83 22 11 01
EX 80 313 06 14   XL 80 38 02 05   EX 80 54 11 01   EX 80 187 03 07   EX 80 175 07 06   EX 80 234 04 09

---

EX 70 00 11 01

confidential

confidential

## EXCESS POLICY DECLARATIONS



Countersigned: _____    By: _____
                      Date                              Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**


Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

EX 70 00 11 01

confidential

confidential

# EXCESS LIABILITY POLICY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HS656563 | NHS651058 |

● THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY. ●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.** INSURED'S NAME AND MAILING ADDRESS                    PRODUCER'S NAME AND ADDRESS

CORINTHIAN COLLEGES, INC.
6 HUTTON CENTRE DRIVE, SUITE 400
SANTA ANA, CA 92707

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM ___3/31/2014___ TO ___3/31/2015___ 12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. LIMIT OF LIABILITY:** $ ___5,000,000___ (A) Aggregate Limit of Liability each policy period
$ ___20,000,000___ (B) Underlying Limits of Liability

**ITEM 4. PREMIUM:** $ ___110,500.00___

**ITEM 5. COVERAGE:**   Directors and Officers Liability

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 230014 1007 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 231007 0609 - EXCESS LIABILITY POLICY - 2009

**ITEM 7. FOLLOWED POLICY**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | #02-778-51-66 | $10,000,000 | $514,962.00 |

**ITEM 8. UNDERLYING INSURANCE**

### (A) Primary Policy:

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | #02-778-51-66 | $10,000,000 | $514,962.00 |

### (B) Underlying Excess Policy(ies):

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| XL Specialty Insurance Company | #ELU133658-14 | $10,000,000 xs $10,000,000 | $319,000.00 |

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____  ___May 07, 2014___  _signature_
                                          DATE                 AUTHORIZED REPRESENTATIVE

confidential

# EXCESS LIABILITY POLICY SUPPLEMENTAL DECLARATIONS



POLICY NUMBER:   NHS656563

## SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|---|---|
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0108 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204081 0108 |
| Exclusion - Prior and or Pending Litigation Backdated | |
| Recognize DIC Payments as Underlying Insurance | |
| State Amendatory Discrepancy | RSG 204150 1207 |

RSG 230014 1007

confidential

### ENDORSEMENT# 68

This endorsement, effective *12.01am*          *March 31, 2015*          forms a part of
policy number   *02-778-51-66*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONFIRMATION OF RUN-OFF COVERAGE

Pursuant to Endorsement #66 (PREPAID RUNOFF ENDORSEMENT), and in consideration of the additional premium stated therein, it is hereby understood and agreed that the " **Effective Time**" (as defined in that endorsement) is 03/31/2015, and that the three (3) year run-off coverage option described in Endorsement #66 shall be afforded subject to all terms, conditions and limitations of Endorsement #66.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 68*

ENDORSEMENT# *69*

This endorsement, effective *12.01am*    *March 31, 2015*    forms a part of
policy number  *02-778-51-66*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | CONFIRMATION OF RUN-OFF COVERAGE |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 069*

ENDORSEMENT# 66

This endorsement, effective 12.01am      September 29, 2014      forms a part of
policy number  02-778-51-66
issued to   CORINTHIAN COLLEGES INC

by     National Union Fire Insurance Company of Pittsburgh, Pa.

**PREPAID RUNOFF ENDORSEMENT**

In consideration of the additional premium of $643,703 (hereinafter "**Runoff Premium**") it is hereby understood and agreed that as of the earlier of (i) the effective time of the "**Runoff Transaction**," or (ii) the expiration date of the **Policy Period** as set forth in Item 2. of the Declarations, (hereinafter "**Effective Time**") this policy shall be amended as follows:

(1)     This policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the **Effective Time**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** occurring after the **Effective Time**.

(2)     Clause 8, Discovery, of the policy is deleted in its entirety and replaced by the following:

The **Named Entity** shall have the right to a period of three (3) years following the **Effective Time** ("**Discovery Period**") in which to give written notice to the **Insurer** of: (i) **Claims** first made against an **Insured(s)** for **Wrongful Acts** occurring on or prior to the **Effective Time**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, but in all events, with respect to (ii) and (iii) based upon, arising out of or related to facts or circumstances and/or alleged facts or circumstances occurring on or prior to the **Effective Time** and otherwise covered by this policy during said three (3) year period.

(3)     The **Discovery Period** shall be subject to all the terms, conditions and limitations of this policy. The **Discovery Period** shall not provide coverage for any **Wrongful Act**(s) occurring after the **Effective Time**.

(4)     The **Limit of Liability** for the **Discovery Period** shall be part of and not in addition to the remaining **Limit of Liability** of this policy as of the **Effective Time**. In no way shall the language of this endorsement be construed to reinstate, renewed or increased the **Limit of Liability** for this policy or the **Discovery Period**.

(5)     The term "**Runoff Transaction**" means a **Transaction** as defined in Clause 13.

(6)     **Transaction** shall not include divestiture of some or all of the schools or properties listed in the table within PART 1, ITEM 1. BUSINESS, "Programs of Study" of the **Insured's** Form 10-K Annual Report filed September 3rd, 2013.

(7)     Notwithstanding any other provision of this policy, this policy may not be canceled other than by the **Insurer** for non-payment of premium after providing the **Named Insured** fifteen (15) days advance notice. The premium for this policy, including the **Runoff Premium**, shall be deemed fully earned as of the effective date of this endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                          *END 66*

ENDORSEMENT# *67*

This endorsement, effective *12.01am*     *September 29, 2014*          forms a part of
policy number   *02-778-51-66*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PREPAID RUNOFF ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 067*

EX 80 48 09 01

**Endorsement No.: 12**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU133658-14**

**Effective: September 29, 2014**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**



# SPECIFICALLY FOLLOW FORM ENDORSEMENT

In consideration of the premium charged, the coverage provided under this Policy will specifically apply in conformance with Endorsement No(s). 66 of the Primary Policy as well as all other terms, conditions, endorsements and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 20 01 02

**Endorsement No.: 13**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU133658-14**

**Effective: September 29, 2014**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**



# ADD/DELETE AN ENDORSEMENT
# (FOR ADDITIONAL PREMIUM)

In consideration of an additional premium of $398,750.00 charged:

(1)     Endorsement No. 13 is added to this Policy.

(2)     Item 6. of the Declarations is amended to read in its entirety as follows:

"Item 6. Premium:  $717,750.00 Total Policy Premium"

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 06 04 00

**Endorsement No.: 14**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU133658-14**

**Effective: March 31, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**



# DELETE AN ENDORSEMENT

In consideration of the premium charged, Endorsement Nos. 12, 13   are deleted.

All other terms, conditions and limitations of this policy shall remain unchanged.

EX 80 48 09 01

**Endorsement No.: 15**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU133658-14**

**Effective: March 31, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**



# SPECIFICALLY FOLLOW FORM ENDORSEMENT

In consideration of the premium charged, the coverage provided under this Policy will specifically apply in conformance with Endorsement No(s). 66 of the Primary Policy as well as all other terms, conditions, endorsements and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 20 01 02

**Endorsement No.: 16**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU133658-14**

**Effective: March 31, 2015**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**



# ADD/DELETE AN ENDORSEMENT
# (FOR ADDITIONAL PREMIUM)

In consideration of an additional premium of $398,750.00 charged:

(1)     Endorsement No. 15 is added to this Policy.

(2)     Item 6. of the Declarations is amended to read in its entirety as follows:

"Item 6. Premium:  $717,750.00 Total Policy Premium"

All other terms, conditions and limitations of this Policy shall remain unchanged.

confidential



**Policy Number:** **ELU133658-14**
**Renewal of Number:** ELU129366-13

☐ **Greenwich Insurance Company**
☒ **XL Specialty Insurance Company**
**Members of the XL America Companies**

---

**EXCESS POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

---

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.** **Name and Mailing Address of Insured Entity:**

Corinthian Colleges, Inc.
6 Hutton Center Drive
Santa Ana, CA  92707

---

**Item 2.** **Policy Period:** **From:** March 31, 2014 **To:** March 31, 2015

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.** **Limit of Liability:**

$10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.** **Schedule of Underlying Insurance:**

| | | **Insurer** | **Policy No** | **Limit of Liability** |
|---|---|---|---|---|
| (a) | Primary Policy | National Union Fire Insurance Company of Pittsburgh, Pa. | 02-778-51-66 | $10,000,000 |
| (b) | Underlying Excess Policy | | | |

---

**Item 5.** **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**Item 6.** **Premium:**

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $319,000.00 |

---

**Item 7.** **Policy Forms and Endorsements Attached at Issuance:**
EX 71 01 09 99   EX 82 01 07 07   XL 80 24 03 03   EX 80 107 10 03   EX 80 75 09 02   EX 83 22 11 01
EX 80 313 06 14   XL 80 38 02 05   EX 80 54 11 01   EX 80 187 03 07   EX 80 175 07 06   EX 80 234 04 09

---

EX 70 00 11 01

confidential

⑬

confidential

## EXCESS POLICY DECLARATIONS

Countersigned: _____   By: _____
                      Date                         Authorized Representative

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.
President

Theresa M. Morgan
Secretary

**XL Specialty Insurance Company**

EX 70 00 11 01

confidential

RSUI INDEMNITY COMPANY



*This Endorsement Changes The Policy.  Please Read It Carefully*

# POLICY CHANGES

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY - NOT FOR PROFIT ORGANIZATION**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

In consideration of the additional premium of **$138,125**, this policy will follow coverage provided by Endorsement # 66 of the primary policy number **02-778-51-66**.

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  09/29/2014
forms part of Policy Number  NHS656563
issued to  Corinthian Colleges, Inc.

Endorsement No.: 1
Date Processed  : 10/23/2014

RSG 204127 0204

confidential

# EXCESS LIABILITY POLICY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HS656563 | NHS651058 |

● THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY. ●

THIS POLICY IS ISSUED BY:   RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.**  INSURED'S NAME AND MAILING ADDRESS        PRODUCER'S NAME AND ADDRESS

   CORINTHIAN COLLEGES, INC.

   6 HUTTON CENTRE DRIVE, SUITE 400

   SANTA ANA, CA 92707

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

   FROM   3/31/2014   TO   3/31/2015   12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. LIMIT OF LIABILITY:**   $   5,000,000   (A) Aggregate Limit of Liability each policy period

                     $   20,000,000   (B) Underlying Limits of Liability

**ITEM 4. PREMIUM:**   $  110,500.00

**ITEM 5. COVERAGE:**   Directors and Officers Liability

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 230014 1007 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 231007 0609 - EXCESS LIABILITY POLICY - 2009

**ITEM 7. FOLLOWED POLICY**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | #02-778-51-66 | $10,000,000 | $514,962.00 |

**ITEM 8. UNDERLYING INSURANCE**

**(A) Primary Policy:**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa. | #02-778-51-66 | $10,000,000 | $514,962.00 |

**(B) Underlying Excess Policy(ies):**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| XL Specialty Insurance Company | #ELU133658-14 | $10,000,000 xs $10,000,000 | $319,000.00 |

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____   May 07, 2014      _[signature]_
                                 DATE        AUTHORIZED REPRESENTATIVE




confidential

# EXCESS LIABILITY POLICY SUPPLEMENTAL DECLARATIONS

POLICY NUMBER:    NHS656563

### SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
| --- | --- |
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0108 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204081 0108 |
| Exclusion - Prior and or Pending Litigation Backdated | |
| Recognize DIC Payments as Underlying Insurance | |
| State Amendatory Discrepancy | RSG 204150 1207 |

RSG 230014 1007

confidential

15

National Union Fire Insurance Company of Pittsburgh, Pa.
777 SOUTH FIGUEROA STREET
18TH FL
Los Angeles, CA 90017-5814
(213) 689-3500



## TEMPORARY AND CONDITIONAL BINDER OF INSURANCE CONFIRMATION LETTER

March 31, 2015

CASSANDRA SHIVERS
ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL
505 N BRAND BLVD STE 600
GLENDALE, CA 91203-3018

RE:     **CORINTHIAN COLLEGES, INC.**
        **Executive Shield - Side-A Only Excess Executive Liability Insurance Coverage**

        Name of Insurance Carrier: **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**
        Address of Insurance Carrier: **175 WATER STREET, NEW YORK, NY, 10038**

        **Tab#: 1512882, Submission #: 835550218**
        **Runoff of Policy#: 02-791-51-56**
        **Runoff Period Effective Date From: 03/31/2015 To 03/31/2018**

Dear Cassandra:

On behalf of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "Insurer"), I am pleased to confirm the conditional binding of coverage in accordance with our agreement as set forth below and subject to the conditions set forth herein. Please review said Conditional Binder for accuracy and contact the Insurer **prior to the effective date** of policy coverage of any inaccuracy(ies) found within the issued Conditional Binder. If the Insurer does not hear from you prior to the effective date of policy coverage it will be understood that the Conditional Binder has been accepted as an accurate description of the agreed upon terms of coverage.

## ***IMPORTANT POLICY ISSUANCE VERIFICATION***

A policy will be issued with the name and address of the Insured exactly as referenced in the "Policy Information" Section of this Conditional Binder. If this information is inaccurate, please advise us immediately.

(15)

# POLICY INFORMATION

| | |
|---|---|
| **INSURED:** | CORINTHIAN COLLEGES, INC. |
| **INSURED'S ADDRESS:** | 6 HUTTON CNTRE DR STE 400<br>SANTA ANA, CA 92707 |
| **TYPE OF POLICY:** | Executive Shield - Side-A Only Excess Executive Liability Insurance Coverage |
| **BASIC FORM:** | 95476 (02/08) |
| **INSURANCE COMPANY:** | National Union Fire Insurance Company of Pittsburgh, Pa. |
| **POLICY NUMBER:** | 02-791-51-56 |
| **EFFECTIVE DATE:** | 03/31/2014          **EXPIRATION DATE:**          03/31/2015 * |

**CONTINUITY DATE:** 02/04/1999

Selected Insured Persons

- ☒ an independent member of the board of directors (or equivalent body) of the **Named Entity** as such directors are defined by the entity in accordance with applicable law, rules and regulations;
- ☒ a member of the board of directors (or equivalent body) of the **Named Entity**, who are not independent members of such body as described above;
- ☒ an **Executive** of the **Named Entity**;
- ☒ an **Executive** of any **Organization**; or
- ☐ an **Employee** of any **Organization**.

Unchecked capacities reflect that such coverage was not purchased and is not provided under the above referenced policy.

**Policy Aggregate Limit Of Liability:** $15,000,000
**Total Underlying Limits:** $25,000,000
**Schedule Of Primary and Underlying Policies:**

| | INSURER | POLICY NO. | LIMITS | POLICY PERIOD |
|---|---|---|---|---|
| **PRIMARY POLICY** | National Union Fire Insurance Company of Pittsburgh, Pa. | 02-778-51-66 | $10,000,000 | 03/31/2014 - 03/31/2015 |
| **UNDERLYING EXCESS POLICIES** | XL Specialty Insurance Company | ELU133658-14 | $10,000,000 | 03/31/2014 - 03/31/2015 |
| | RSUI Indemnity Company | NHS656563 | $5,000,000 | 03/31/2014 - 03/31/2015 |

**PRIMARY POLICY RETENTIONS:**

| | |
|---|---|
| Securities Retention | $1,000,000 |
| Employment Practices Retention | $1,000,000 |
| All other Loss to which a Retention applies | $1,000,000 |
| Non-Indemnifiable Loss | $0 |

(15)

| | | |
|---|---|---|
| **OTHER TERMS:** | Per Insurer Quote/Indication Letter dated 03/24/2014 except as indicated below. | |
| **PREMIUM:** | $162,207* | |
| **COMMISSION:** | 15.00% | |

**Important Conditions Of Conditional Binder: See Below, *See Endorsement #16 and #18 Below.**

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $807 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.

**OUTSTANDING SUBJECT TO INFORMATION**
1. Receipt, review and acceptance of copy of underlying runoff binders and endorsements

**ENDORSEMENTS**
The following endorsements will be added to the basic policy:

| # | Form # | Ed Dt | Title |
|---|--------|-------|-------|
| 1 | 52133 | 03/07 | Ca Cancellation/ Nonrenewal Endorsement |
| 2 | 101036 | 04/09 | Cancellation Amendatory (Return Pro Rata) |
| 3 | MNSCPT | | Conduct Exclusions Amended Final Non-Appealable Adjudication And Reference To Section 15 |
| 4 | 95673 | 09/07 | Exclusions - Follow Form (Endorsement #9: Specific Claim Exclusion) |
| 5 | 99758 | 08/08 | Notice Of Claim (Reporting By E-Mail) |
| 6 | 97493 | 02/08 | Pending And Prior Litigation Exclusion (02/04/1999) |
| 7 | MNSCPT | | Section 11, 12 Or 15 Endorsement |
| 8 | 97497 | 02/08 | Specific Term Condition Non Follow Form Endorsement Recognition Of Erosion<br>• Derivative Investigation Costs - $250,000 Sublimit<br>• Personal Reputation Expenses - $100,000/Executive And $500,000 Aggregate Sublimit<br>• Asset Protection Costs - $50,000/Executive And $250,000 Aggregate Sublimit |
| 9 | 97498 | 02/08 | Spousal And Legal Representative Extension |
| 10 | 94039 | 05/07 | State Amendatory Inconsistent |
| 11 | MNSCPT | | Notice Of Claims (CEO-CFO-GC) |
| 12 | MNSCPT | | Uk Corporate Manslaughter Act Defense Costs Carveback |
| 13 | MNSCPT | | Defense And Cooperation Provision Amended |
| 14 | 89644 | 06/13 | Economic Sanctions Endorsement |
| 15 | 78859 | 10/01 | Forms Index Endorsement |
| 16 | MNSCPT | | Pre-paid Runoff Endorsement<br>• 3 Years<br>• Additional Premium of $202,759 |
| 17 | SYSLIB | 01/05 | Forms Index (Amended) |



| 18 | MNSCPT | | Confirmation Of Runoff Endorsement<br>• Per Endt #16, Runoff Effective Time Is 03/31/2015 |
|----|--------|--|------------------------------------------------------------------|
| 19 | SYSLIB | 01/05 | Forms Index (Amended) |

CONDITIONS OF CONDITIONAL BINDER

When signed by the Insurer, the coverage described above is in effect from 12:01 AM of the Effective Date listed above to 12:01 AM of the Expiration Date listed above, pursuant to the terms, conditions and exclusions of the policy form listed above, any policy endorsements described above, and any modifications of such terms as described in this Conditional Binder section.Unless otherwise indicated, this Conditional Binder may be canceled prior to the Effective Date by the Insured, or by the Broker on the behalf of the Insured, by written notice to the Insurer or by the surrender of this Conditional Binder stating when thereafter such cancellation shall be effective. Unless otherwise indicated, this Conditional Binder may be canceled by the Insurer prior to the Effective Date by sending written notice to the Insured at the address shown above stating when, not less than thirty days thereafter, such cancellation shall be effective.  Unless otherwise indicated, this Conditional Binder may be canceled by the Insurer or by the Insured on or after the Effective Date in the same manner and upon the same terms and conditions applicable to cancellation of the policy form listed above.Issuance by the Insurer and acceptance by or on the behalf of the Insured of the policy shall render this Conditional Binder void except as indicated below.

Notwithstanding the payment of any premium or the issuance of any policy pursuant to this conditional binder, this conditional binder shall be considered to be a TEMPORARY AND CONDITIONAL BINDER and is conditioned upon receipt, review and written underwriting approval of the additional information specified in the section entitled Outstanding Subject To Information.  If such information is not received, reviewed and approved in writing by the Insurer within 90 days from the date that this conditional binder letter is executed by the Insurer, then this conditional binder and any policy issued pursuant thereto will be automatically null and void ab initio (void from the beginning) and have no effect. This conditional binder may be extended only in writing from the Insurer.

A condition precedent to coverage afforded by this Conditional Binder is that no material change in the risk occurs and no submission is made to the Insurer of a claim or circumstances that might give rise to a claim between the date of this Conditional Binder indicated above and the Effective Date.

Please note this Conditional Binder contains only a general description of coverages provided. For a detailed description of the terms of a policy you must refer to the policy itself and the endorsements bound herein.

PREMIUM PAYMENT

Our accounting procedures require that payment be remitted within 30 days of the effective date of coverage or 15 days from the billing date, whichever is later.

We appreciate your compliance with this procedure.


We appreciate your business and hope that we can be of further service to you in the future.

Sincerely,



NICHOLAS WALTRIP
Underwriting Specialist
Executive Liability
213-689-3648

If you have any questions regarding this policy, or for any other service needs, please contact our
AIG Broker Services:

Monday-Friday  9:00 AM - 6:00 PM Eastern
Telephone: 1-877-TO-SERVE or (877)867-3783
E-mail: TOSERVE@aig.com
Fax: (800) 315-3896                    *Raising the bar with commitment to quality*

**ENDORSEMENT# *16***



This endorsement, effective *12:01 am*        *September 29, 2014*        forms a part of
policy number    *02-791-51-56*
issued to    *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRE-PAID RUNOFF ENDORSEMENT

In consideration of the additional premium of $202,759 (hereinafter " **Runoff Premium**"), it is hereby understood and agreed as of the earlier of (i) the effective time of the " **Runoff Transaction**" (as defined in the **Followed Policy**), or (ii) the expiration date of the **Policy Period** as set forth in the Declarations, (hereinafter " **Effective Time**") the policy shall be amended as follows:

1.    *Runoff Period*:  In the event the this policy is not renewed or replaced:

    (a)    " **Discovery Period**" means the period of three (3) years immediately following the **Effective Time**

    (b)    For the **Discovery Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the **Effective Time**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** occurring after the **Effective Time.**

    (c)    Clause 10. **REPORTING CLAIMS AND CIRCUMSTANCES**, Paragraph (b), entitled DISCOVERY/EXTENDED REPORTING PERIOD, is deleted in its entirety and replaced with the following:

        (b)    DISCOVERY/EXTENDED REPORTING PERIOD

        This policy shall not follow form to the discovery/extended reporting period rights granted within the **Followed Policy** as of the inception of the **Policy Period.**

        During the **Discovery Period**, an **Insured Person** or an **Organization** may give written notice to the **Insurer** of: (i) **Claims** first made against an **Insured(s)** for **Wrongful Acts** occurring on or prior to the **Effective Time**; (ii) **Pre-Claim Inquiries** first received by an **Insured Person**; and (iii) circumstances of which an **Organization** or an **Insured** shall become aware, but in all events, with respect to (ii) and (iii) based upon, arising out of or related to facts or circumstances and/or alleged facts or circumstances occurring on or prior to the **Effective Time** and otherwise covered by this policy during the **Discovery Period.**

        The **Discovery Period** shall apply whether or not discovery is elected under the **Underlying Policies.**

    (d)    The **Limit of Liability** for the **Discovery Period** shall be part of and not in addition to the remaining **Limit of Liability** of this policy as of the **Effective Time.** In no way shall the language of this endorsement be construed to reinstate, renewed or increased the **Limit of Liability** for this policy, the **Followed Policy**, or the **Discovery Period.**

**ENDORSEMENT# *16*    (Continued)**



This endorsement, effective  *12:01 am*      *September 29, 2014*      forms a part of
policy number  *02-791-51-56*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

2.    *Non Cancelable Other Than For Non-Payment of Premium*: Notwithstanding any
other provision of this policy (including any endorsement attached to this policy
amending     cancellation     provisions,     like,     for     example,     any     state
cancellation/non-renewal amendatory endorsement):

(a)    This policy  may not  be canceled  by the **Named Entity**,  any **Insured**  or the
**Insurer**, except as indicated below.

(b)    This policy may only be canceled  by or on behalf of the  **Insurer** in the event
of non-payment of  premium. In  the event of  non-payment of  premium, the
**Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing
to the **Named Entity**, by  registered, certified, or other first  class mail, at the
**Named Entity's**  address as shown in  Item 1 of  the  Declarations,  written
notice stating when, not less  than 15 days thereafter, the  cancellation shall
be effective.  Proof  of mailing  notice as  provided above  shall be  sufficient
proof of notice. The cancellation shall become effective at the date and hour
specified in  such notice.   The **Insurer**  shall have  the  right to  the premium
amount for the  portion of the  **Policy Period**  during which the  policy was  in
effect.

(c)    The premium  for  this policy,  including  the **Runoff  Premium**,  shall be  fully
nonrefundable as of the effective date of this endorsement.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                    *END 16*

**ENDORSEMENT# 17**

(15)

This endorsement, effective *12:01 am*     *September 29, 2014*          forms a part of
policy number  *02-791-51-56*
issued to *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PRE-PAID RUNOFF ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Robert M Vellen
_____
AUTHORIZED REPRESENTATIVE

*END 017*

ENDORSEMENT# *18*



This endorsement, effective *12:01 am*    *March 31, 2015*    forms a part of
policy number  *02-791-51-56*
issued to  *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONFIRMATION OF RUN-OFF COVERAGE

Pursuant to Endorsement #16 (PRE-PAID RUNOFF ENDORSEMENT), and in consideration of the additional premium stated therein, it is hereby understood and agreed that the " **Effective Time**" (as defined in that endorsement) is 03/31/2015, and that the three (3) year run-off coverage option described in Endorsement #16 shall be afforded subject to all terms, conditions and limitations of Endorsement #16.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT                                   *END 18*

(15)

## ENDORSEMENT# 19

This endorsement, effective *12:01 am*      *March 31, 2015*                forms a part of
policy number   *02-791-51-56*
issued to *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | CONFIRMATION OF RUN-OFF COVERAGE |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 019*

confidential





## National Union Fire Insurance Company of Pittsburgh, Pa.®
A capital stock company

# EXECUTIVE SHIELD
### THE LAST LINE OF DEFENSE FOR TODAY'S EXECUTIVES

**POLICY NUMBER:** `02-791-51-56`    **REPLACEMENT OF POLICY NUMBER:** `N/A`

### NOTICES

COVERAGE WITHIN THIS POLICY IS LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD.

DEFENCE COSTS REDUCE THE LIMIT OF LIABILITY AND, ACCORDINGLY, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS. THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, IT MAY ADVANCE DEFENCE COSTS PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REVIEW THE POLICY FOR DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 **NAMED ENTITY** | (the "Named Entity") | *CORINTHIAN COLLEGES, INC.* |
| | MAILING ADDRESS: | *6 HUTTON CNTRE DR STE 400*<br>*SANTA ANA, CA 92707* |
| | STATE OF INCORPORATION/FORMATION: | *Delaware* |
| 2 **POLICY PERIOD** | From: *March 31, 2014* | To: *March 31, 2015* |
| | 12:01 A.M. at the mailing address stated in Item 1 above | |

**3 SELECTED INSURED PERSONS**

"Insured Person" means any natural person "Insured" under the **Followed Policy** who during or prior to the Policy Period serves or has served in any of the capacities checked below:

- [X] an independent member of the board of directors (or equivalent body) of the **Named Entity** as such directors are defined by the entity in accordance with applicable law, rules and regulations;
- [X] a member of the board of directors (or equivalent body) of the **Named Entity**, who are not independent members of such body as described above;
- [X] an **Executive** of the **Named Entity**;
- [X] an **Executive** of any **Organization**; or
- [ ] an **Employee** of any **Organization**.

Unchecked capacities reflect that such coverage was not purchased and is not provided under this policy.

*1512882*

95475 (8/07)                                     1                        ❖ All rights reserved.

confidential

## LIMITS AND ATTACHMENT

| | | |
|---|---|---|
| **4** **a)** | **LIMIT OF LIABILITY:**<br>Aggregate for all **Loss** and all **Insured Persons** afforded coverage under this policy combined, including **Defense Costs** (the **"Limit of Liability"**) | $15,000,000 (15) |
| **b)** | TOTAL UNDERLYING LIMITS: (see schedule below for details) | $25,000,000 |
| **c)** | RETENTIONS OF UNDERLYING POLICIES: | |
| | *Securities Retention* | *$1,000,000* |
| | *Employment Practices Retention* | *$1,000,000* |
| | *All other Loss to which a Retention applies* | *$1,000,000* |
| | *Non-Indemnifiable Loss* | *None* |

### SCHEDULE UNDERLYING POLICIES

| Notes | Underlying Insurer | Underlying Policy Number | Limits | Policy Period |
|---|---|---|---|---|
| **5** Followed Policy | *National Union Fire Insurance Company of Pittsburgh, Pa.* | *02-778-51-66* | *$10,000,000* | *03/31/2014-03/31/2015* |
| | *XL Specialty Insurance Company* | *ELU133658-14* | *$10,000,000 Excess of $10,000,000* | *03/31/2014-03/31/2015* |
| | *RSUI Indemnity Company* | *NHS656563* | *$5,000,000 Excess of $20,000,000* | *03/31/2014-03/31/2015* |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**6** PREMIUM  *$162,207*

> *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $807 included in policy premium.*
> *Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows:  85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
> *A copy of the TRIA disclosure sent with the original quote is attached hereto.*

*1512882*

95475 (8/07)                                  2                   © All rights reserved.

| 7 | INSURER | (the "Insurer") | National Union Fire Insurance Company of Pittsburgh, Pa. | |
|---|---|---|---|---|
| | | MAILING ADDRESS: | 175 Water Street<br>New York, NY 10038-4969 | (15) |
| 8 | NOTICE OF CLAIMS AND CIRCUMSTANCES | SEND TO: | **AIG, Financial Lines Claims**<br>P.O. Box 25947<br>Shawnee Mission, KS 66225<br><br>Reference: 02-791-51-56 | |

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE

_____
DATE

_____
COUNTERSIGNED AT

ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL
505 N BRAND BLVD
STE 600
GLENDALE, CA 91203-3018

1512882

95475 (8/07)                                        3                          © All rights reserved.



National Union Fire Insurance Company of Pittsburgh, Pa.
777 SOUTH FIGUEROA STREET
18TH  FL
Los Angeles, CA 90017-5814
(213) 689-3500



## BINDER OF INSURANCE CONFIRMATION LETTER

March 31, 2015

CASSANDRA SHIVERS
ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL
505 N BRAND BLVD STE 600
GLENDALE, CA 91203-3018

RE:    **CORINTHIAN COLLEGES, INC**
         **Fiduciary Liability Insurance Edge**

         Name of Insurance Carrier: **NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**
         Address of Insurance Carrier: **175 WATER STREET, NEW YORK, NY, 10038**

         **Tab#: 7324276, Submission #: 822652350**
         **Runoff of Policy#: 02-812-62-65**
         **Runoff Policy Period Effective Date From: 03/31/2015 To 03/31/2018**

Dear Cassandra:

On behalf of National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter "Insurer"), I am pleased to confirm the conditional binding of coverage in accordance with our agreement as set forth below and subject to the conditions set forth herein. Please review said Conditional Binder for accuracy and contact the Insurer **prior to the effective date** of policy coverage of any inaccuracy(ies) found within the issued Conditional Binder. If the Insurer does not hear from you prior to the effective date of policy coverage it will be understood that the Conditional Binder has been accepted as an accurate description of the agreed upon terms of coverage.

## ***<u>IMPORTANT POLICY ISSUANCE VERIFICATION</u>***

A policy will be issued with the name and address of the Insured exactly as referenced in the "Policy Information" Section of this Conditional Binder. If this information is inaccurate, please advise us immediately.

16

## POLICY INFORMATION

| | |
|---|---|
| **INSURED:** | CORINTHIAN COLLEGES, INC |
| **INSURED'S ADDRESS:** | 6 HUTTON CENTRE DRIVE SUITE 400<br>SANTA ANA, CA 92707 |
| **TYPE OF POLICY:** | Fiduciary Liability Insurance Edge |
| **BASIC FORM:** | 106075 (07/10) |
| **INSURANCE COMPANY:** | National Union Fire Insurance Company of Pittsburgh, Pa. |
| **POLICY NUMBER:** | 02-812-62-65 |

**EFFECTIVE DATE:** 03/31/2014     **EXPIRATION DATE:** 03/31/2015*

**LIMIT OF LIABILITY:** $10,000,000

**RETENTION:**
Securities Retention: $5,000
All other Loss to which a Retention applies: $5,000

**CONTINUITY DATE:** All coverages: 02/04/2005

**OTHER TERMS:** Per Insurer Quote/Indication Letter dated 03/31/2015 except as indicated below.

**PREMIUM:** $17,588*

**COMMISSION:** 13.50%

**Important Conditions Of Conditional Binder:** See Below, *See Endorsement #16 Below.

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $88 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.

## OUTSTANDING SUBJECT TO INFORMATION
    1. List of Plans for the wind down exception on the runoff endorsement

The following will be added to the basic policy:

| # | Form # | Ed Dt | Title |
|---|--------|-------|-------|
| 1 | 99544 | 06/08 | Employee Benefit Plan Fiduciary Liability Panel Counsel |
| 2 | 97885 | 04/08 | Policyholder Notice Regarding E-Discovery Consultant Services |
| 3 | 106002 | 07/10 | Pension Crisisfund Appendix |

## ENDORSEMENTS

The following endorsements will be added to the basic policy:

| # | Form # | Ed Dt | Title |
|---|--------|-------|-------|
| 1 | 52133 | 03/07 | Ca Cancellation/ Nonrenewal Endorsement |
| 2 | 111430 | 08/12 | State Amendatory Inconsistent |
| 3 | 106074 | 07/10 | Auto Plan Threshold Amended (15%) |
| 4 | 107589 | 01/11 | Conduct Exclusions Amended Final Nonappealable Adjudication In Any Underlying Proceeding |
| 5 | 107070 | 10/10 | Application Amended Written Representations Underwriting Of This Policy |
| 6 | 107073 | 10/10 | Severability Of The Application Amended (Advancement) |
| 7 | MNSCPT | | Claims Participation And Cooperation Amended |
| 8 | MNSCPT | | P&P Litigation Exclusion Amended |
| 9 | 99758 | 08/08 | Notice Of Claim (Reporting By E-Mail) |
| 10 | 111416 | 08/12 | Settlor Capacity Amendatory |
| 11 | 106032 | 07/10 | Continuity Dates For Excess Limits ($5Mxs$5M Dated 03/31/2013) |
| 12 | MNSCPT | | Defense Costs Amended |
| 13 | 117198 | 01/14 | Affordable Care Act Coverage |
| 14 | 89644 | 06/13 | Economic Sanctions Endorsement |
| 15 | 78859 | 10/01 | Forms Index Endorsement |
| 16 | *MNSCPT* | | *Runoff Endorsement (With Winding Down Exception)*<br>• *3 Years Effective 03/31/2015*<br>• *Additional Premium of $26,382* |
| 17 | *SYSLIB* | *01/05* | *Forms Index (Amended)* |

<u>CONDITIONS OF CONDITIONAL BINDER</u>

When signed by the Insurer, the coverage described above is in effect from 12:01 AM of the Effective Date listed above to 12:01 AM of the Expiration Date listed above, pursuant to the terms, conditions and exclusions of the policy form listed above, any policy endorsements described above, and any modifications of such terms as described in this Conditional Binder section.Unless otherwise indicated, this Conditional Binder may be canceled prior to the Effective Date by the Insured, or by the Broker on the behalf of the Insured, by written notice to the Insurer or by the surrender of this Conditional Binder stating when thereafter such cancellation shall be effective. Unless otherwise indicated, this Conditional Binder may be canceled by the Insurer prior to the Effective Date by sending written notice to the Insured at the address shown above stating when, not less than thirty days thereafter, such cancellation shall be effective.   Unless otherwise indicated, this Conditional Binder may be canceled by the Insurer or by the Insured on or after the Effective Date in the same manner and upon the same terms and conditions applicable to cancellation of the policy form listed above.Issuance by the Insurer and acceptance by or on the behalf of the Insured of the policy shall render this Conditional Binder void except as indicated below.

Notwithstanding the payment of any premium or the issuance of any policy pursuant to this conditional binder, this conditional binder shall be considered to be a TEMPORARY AND CONDITIONAL BINDER and is conditioned upon receipt, review and written underwriting approval of the additional information specified in the section entitled Outstanding Subject To Information.  If such information is not received, reviewed and approved in writing by the Insurer within 30 days from the date that this conditional binder letter is executed by the Insurer, then this conditional binder and any policy issued pursuant thereto will be automatically null and <u>void ab initio</u> (void from

16

the beginning) and have no effect. This conditional binder may be extended <u>only</u> in writing from the Insurer.

A condition precedent to coverage afforded by this Conditional Binder is that no material change in the risk occurs and no submission is made to the Insurer of a claim or circumstances that might give rise to a claim between the date of this Conditional Binder indicated above and the Effective Date.

Please note this Conditional Binder contains only a general description of coverages provided. For a detailed description of the terms of a policy you must refer to the policy itself and the endorsements bound herein.

PREMIUM PAYMENT

Our accounting procedures require that payment be remitted within 30 days of the effective date of coverage or 15 days from the billing date, whichever is later.

We appreciate your compliance with this procedure.


We appreciate your business and hope that we can be of further service to you in the future.

Sincerely,

NICHOLAS WALTRIP
Underwriting Specialist
Executive Liability
213-689-3648

---

If you have any questions regarding this policy, or for any other service needs, please contact our AIG Broker Services:

Monday-Friday  9:00 AM - 6:00 PM Eastern
Telephone: 1-877-TO-SERVE or (877)867-3783
E-mail: TOSERVE@aig.com
Fax: (800) 315-3896                    *Raising the bar with commitment to quality*

confidential

 

## National Union Fire Insurance Company of Pittsburgh, Pa.®
### *A capital stock company*
(the "Insurer")

**POLICY NUMBER:** *02-812-62-65*          **REPLACEMENT OF POLICY NUMBER:** *01-879-30-64*

# Fiduciary Liability Insurance Edge℠
### Employee Benefit Plan Fiduciary Liability Insurance Policy

> NOTICES: This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Voluntary Compliance Loss** first assessed by or against an **Insured**, (iii) **Pension Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period**. Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the Notice and Reporting clause for details).  Covered **Defense Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the Retention amount. The **Insurer** has the duty to defend; however, the **Insured** may elect to assume the duty to defend.  In all events, the **Insurer** must advance **Defense Costs** payments pursuant to the terms herein prior to the final disposition of a **Claim**.   Please read this policy carefully and review its coverage with your insurance agent or broker.

## DECLARATIONS

1.  **NAMED SPONSOR:**          *CORINTHIAN COLLEGES, INC*

    **Named Sponsor Address:**          *6 HUTTON CENTRE DRIVE*
    *SUITE 400*
    *SANTA ANA, CA 92707*

2.  **POLICY PERIOD:**     From: *March 31, 2014*               To: *March 31, 2015*

    The **Policy Period** incepts and expires as of 12:01 A.M. at the **Named Sponsor Address**.

3.  **PREMIUM:**                                                                *$17,588*

4.  **LIMIT OF LIABILITY** (for all **Loss** in the aggregate including **Defense Costs**):     *$10,000,000*

5.  **SUBLIMITS OF LIABILITY**  (All sublimits of liability shall be part of, and not in addition to, the **Limit of Liability** set forth in Item 4 of the Declarations):

| | |
|---|---|
| (a) **Voluntary Compliance Loss:** | $250,000 or 5% of the policy aggregate **Limit of Liability**, whichever is less |
| (b) **Section 502(c) Penalties:** | $250,000 or 5% of the policy aggregate **Limit of Liability**, whichever is less |
| (c) **Pension Protection Act Penalties:** | $250,000 or 5% of the policy aggregate **Limit of Liability**, whichever is less |
| (d) **HIPAA Penalties:** | $1.5 million or the policy aggregate **Limit of Liability**, whichever is less |
| (e) **Health Care Reform Penalties:** | $250,000 or 5% of the policy aggregate **Limit of Liability**, whichever is less |
| (f) **Section 4975 Penalties:** | $250,000 |
| (g) **Pension CrisisFund℠:** | $100,000 |

*7324276*

                        ◈ All rights reserved.

confidential

confidential



**DECLARATIONS** (Continued)

6.   **RETENTION**: Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Pension Crisis Loss**, (iii) **Voluntary Compliance Loss**, (iv) **Section 502(c) Penalties**, (v) **Pension Protection Act Penalties**, (vi) **HIPAA Penalties**, (vii) **Health Care Reform Penalties**, (viii) **Section 4975 Penalties**, or (ix) the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services**.

    (a) **Securities Retention**:                                           *$5,000*

    (b) All other **Loss** to which a Retention applies :                  *$5,000*

    If the **Sponsor Organization** and the relevant **Plan** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the Advancement Clause.

7.   **INSURER**

    (a) **INSURER ADDRESS**:          *175 Water Street*
                                       *New York, NY 10038-4969*

    (b) **CLAIMS ADDRESS**:        By E-Mail: c-claim@AIG.com

                          By Mail:   *AIG, Financial Lines Claims*
                                       *P.O. Box 25947*
                                       *Shawnee Mission, KS 66225*

                         In either case, reference the Policy Number.

8.   **CONTINUITY DATE**

      All coverages:                                 *February 4, 2005*

9.   **TRIA PREMIUM, TAXES AND SURCHARGES**

    (a) TRIA Premium:                              *$88*

    '**TRIA Premium**' means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002. Amount indicated above is included in **Premium**. A copy of the TRIA disclosure sent with the original quote is attached hereto.

*7324276*

105939 (7/10)                                        2                   &reg; All rights reserved.
confidential

confidential

(16)

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

*ARTHUR J. GALLAGHER & CO. INSURANCE BROKERS OF CAL*
*505 N BRAND BLVD*
*STE 600*
*GLENDALE, CA 91203-3018*

*7324276*

105939 (7/10)                               3                    ⬥ All rights reserved.

confidential



 **XL Group**
Insurance
Reinsurance

**XL Professional**

## CORNERSTONE A-SIDE MANAGEMENT LIABILITY BINDER

### INSURED INFORMATION

| | |
|---|---|
| Name: | Corinthian Colleges, Inc. |
| Address: | 6 Hutton Center Drive |
| | Santa Ana, CA  92707 |
| Policy Number: | **ELU138421-15** |
| Carrier: | XL Specialty Insurance Company |

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| CS 71 00 09 06 | Cornerstone A-Side Management Liability | March 31, 2015 to March 31, 2016 |
| **LIMIT of LIABILITY** | | **OPTIONAL EXTENSION PERIOD** |
| $10,000,000 | Aggregate each Policy Period (including defense expenses) | One year at 200% of the annual premium |
| **INSURANCE PROGRAM** | | |
| N/A | | |

**PREMIUM:** $190,000.00
The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.

### ENDORSEMENTS:

- Terrorism Insurance Disclosure
- Office of Foreign Asset Control Notice
- Privacy Notice/XL Specialty Notice
- In Witness Endorsement
- Preamble Correction Endorsement (XL 82 01 07 07)
- Terrorism Premium Endorsement (XL 80 24 03 03)
- California Amendatory Endorsement (CS 72 00 04 06)
- Prior and Pending Litigation Exclusion (CL 83 14 10 03) –Policy Inception
- Amend Mergers and Acquisitions Endorsement  (CL 80 34 12 02) 35%
- Prior Acts Exclusion (CL 83 08 09 02)
- Amend Definition of Company – DIP wording (CL 80 105 05 05)
- Amend Insurer's Rights of Subrogation (CS 80 12 03 07)
- Amend Definition of Change of Control Endorsement (CL 80 63 04 04)
- Amend Employment Wrongful Act Definition Endorsement (CS 80 39 10 07)
- Amend Conditions (F)(1) Endorsement (CS 80 78 10 08)
- Injunctive Relief Endorsement (CS 80 77 09 08)
- Amend Notice Of Claim (CS 80 26 08 07) RM or GC plus 90 days post policy

**IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.**



  **XL Group**
Insurance
Reinsurance

**XL Professional**
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone   860-246-1863
Fax      860-246-1899

- Delete Exclusion (A) (1) Endorsement (CS 83 21 05 08)
- State Amendatory Clarification Endorsement (Manuscript 1102 05 04)
- Amend Definition of Application (CS 80 43 11 07) -12 months
- Amend Definition of Loss Endorsement – taxes  (CS 80 74 08 08)
- Amend Loss Endorsement (FCPA and SOX) (CS 80 28 08 07)
- Amend Definition of Claim (to include Wells Notice) (CS 80 81 01 09)
- Statute of Limitations Endorsement (CS 80 33 10 07)
- Rating Endorsement (XL 80 60 09 08) A
- Inconsistency Endorsement (XL 80 38 02 05)
- Domestic Partner Endorsement (CS 80 05 10 06)
- Amend Conditions (I)(4) (Manuscript 6462 08 06) (non rescindable)
- Amend Definitions of "Outside Capacity Wrongful Act"  and "Outside Entity (CS 80 61 03 08)
- Amend Exclusion (A)(2) Endorsement (final, non-appealable) (CS 83 38 01 11)
- Amend Definition E Endorsement (SOX 304)  (CS 80 144 07 11)
- Amend Definition of Claim Endorsement (CS 80 55 02 08)
- Worldwide Endorsement (XL 80 02 03 00)
- Amend Claim Definition Endorsement (informal investigations) (CS 80 110 01 10)
- Section 11, 12 & 15 Endorsement (Manuscript 11931 03 11)
- Amend Definition of Loss endorsement (CL 80 72 07 04)
- Amend Definition of Subsidiary Endorsement  (CS 80 71 07 08)
- Amend Condition (D)(2) Endorsement (CL 80 98 03 05)
- Amend Condition (K) Endorsement  (CS 80 11 03 07)
- Amend Condition (E) (2) Endorsement (CS 80 102 12 09)
- Whistleblower Endorsement (CS 83 01 11 06)
- Injunctive Relief Endorsement (CS 80 77 09 08)
- Amend Condition (K) Endorsement (CS 80 68 07 08)
- Amend Definition (E) Endorsement (CS 80 227 02 15)
- Wind Down Coverage Endorsement (TBD)

## THE BINDER IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS.

- N/A

IF THE TOTAL PREMIUM IS NOT PAID BY THE PREMIUM DUE DATE SET FORTH ABOVE, THE INSURER WILL CANCEL THE COVERAGE FOR NON-PAYMENT OF PREMIUM.  THE EFFECT OF SUCH CANCELLATION WILL BE THAT THE OFFERED COVERAGE SHALL NOT INCEPT, AS IF SUCH OFFER OF COVERAGE HAD NEVER BEEN MADE.

Cash Management

Bank Accounts

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| Debtors. | § | |

-----------------------------------------------------------------

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request entry of interim and final orders (i) authorizing the Debtors to continue to use (a) their current centralized cash management system (the "**Cash Management System**"), and (b) their existing bank accounts, checks and business forms, including, authorizing the Debtors to open and close bank accounts, as set forth below; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee (the "**U.S. Trustee**"); (iii) extending the time to comply with section 345(b) of title 11 of the United States Code (the "**Bankruptcy Code**"); (iv) authorizing all banks participating in the Cash Management System to honor certain transfers and charge bank fees

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

and certain other amounts; (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions; (vi) and providing any additional relief as is necessary to effectuate the foregoing. In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), filed concurrently with this Motion. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION & VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409 and Local Rules 2015-2 and 4001-3. This is a core proceeding under 28 U.S.C. § 157(b).[2]

**BACKGROUND**

2. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3. Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, Corinthian operated over 100 campuses and

---

[2] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

provided educational opportunities to more than 74,000 students and had more than 10,000 employees.  It also offered degrees online.

4.      Among its acquisitions, in January 2010, the Company purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operates Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

<u>**RELIEF REQUESTED**</u>

5.      By this Motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as <u>Exhibit A</u> (the "**Interim Order**") and <u>Exhibit B</u> (the "**Final Order**"), respectively, under Bankruptcy Code sections 105(a), 345, and 363(c) and Federal Rules of Bankruptcy Procedure 6003 and 6004 (i) authorizing the Debtors to continue use of (a) the Cash Management System, and (b) the Debtors' existing bank accounts listed on <u>Exhibit C</u> to this Motion (the "**Debtor Bank Accounts**"), checks and business forms, including authorizing the Debtors to open and close bank accounts, as set forth below; (ii) waiving certain bank account and related requirements of the U.S. Trustee; (iii) extending the time to comply with section 345(b) of the Bankruptcy Code; (iv) authorizing all banks participating in the Cash Management System to honor certain transfers and charge bank fees and certain other amounts; (v) authorizing Intercompany Transactions consistent with historical practice and granting administrative expense priority to Intercompany Transactions; and (vi) providing any additional relief as is necessary to effectuate the foregoing.

6.      Specifically, the Debtors seek authority to, subject to the terms of any order authorizing the use of cash collateral, (i) maintain and continue to use the Debtor Bank

Accounts, in the same manner and with existing account numbers, styles, and document forms; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

7.       To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that their banks be authorized to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, wires, automated clearinghouse transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts (collectively, the "**Disbursements**") on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, and in reliance on the Debtors' representations of such authority, provided the applicable Debtor Bank Accounts contain sufficient funds.

8.       Continuity of the Cash Management System is critical, but so is a measure of flexibility.  To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that they deem necessary or appropriate, including opening or closing any account, and that the applicable Banks (as defined below) be authorized to honor such changes.  The Debtors believe that this flexibility is particularly important as the Cash Management System, as described herein, was designed to facilitate the depository and payment needs of an operating company with campuses in multiple locations, receiving receipts/deposits

- 4 -

from many and varied sources. During the pendency of these chapter 11 cases, these operations will be greatly simplified and receipts/deposits will be limited to very few sources. Most specifically, the Debtors do not anticipate receiving any further Title IV funds and receipts/deposits from states and other prior funding sources are likely to be limited.

9.       Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued checks before the Petition Date that have yet to clear. For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored. If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. As the Banks are not in position to independently verify or audit whether they may honor a particular Court-approved prepetition Disbursement, the Debtors further request that the Court's orders specify that no Bank will be liable to any party, or otherwise be in violation of such orders, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

10.       Finally, the Debtors request authority to continue, in the ordinary course, certain transactions between and among the different Debtors (the "**Intercompany Transactions**"). The Intercompany Transactions, as described below, are necessary to maintaining control over cash management among the Debtors and provide substantial benefits to the Debtors and their estates.

11.       The Debtors will suffer immediate and irreparable harm if the relief requested in this Motion is not granted, as attested in the First Day Declaration.

RLF1 11879662v.5

# BASIS FOR RELIEF REQUESTED

## I. FACTS SPECIFIC TO RELIEF REQUESTED

### A. Overview of the Cash Management System

12.     The Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these cases and, in turn, maximizing the value of the Debtors' estates.  Like typical chapter 11 debtors, the Debtors use the Cash Management System to collect cash from operations and to make cash disbursements—primarily payroll and payments to vendors—to manage their businesses.  Recognizing the importance of the Cash Management System, the Debtors take care to record all collections, transfers, and disbursements made through the Cash Management System as and when made.

13.     The Debtor Bank Accounts and other important features of the Cash Management System are discussed below.  For demonstrative purposes, a diagram illustrating the Cash Management System is attached hereto as Exhibit D.

### B. The Debtor Bank Accounts

14.     There are eighty Debtor Bank Accounts: twenty-seven at Bank of America ("**BofA**"), thirty-five at Bank of the West ("**Bank of the West**"), two at First Hawaiian Bank ("**FHB**"), two at BMO Harris Bank, N.A. ("**BMO Harris**"), eleven at Union Bank ("**Union**"), one at U.S. Bank, N.A. ("**U.S. Bank**"), one at Capital West ("**Capital West**"), and one at California Bank and Trust ("**CA Bank**").[3]  Each Debtor Bank Account is insured by the Federal Deposit Insurance Corporation ("**FDIC**").

---

[3]     In addition to the Debtor Bank Accounts, pursuant to the Operating Agreement, Corinthian established a separate, segregated escrow account with Citibank NA (the "**Escrow Account**"). This fund was established to create a reserve that would be available for student refunds. While Corinthian is a party to the Escrow Account, the Escrow Account is not a Debtor Bank Account.  While the Escrow Agreement is not a Debtor Bank Account, it is listed on Exhibit C so that all parties in interest have the appropriate information relating to this account.

15.      Prior to the Petition Date, the Debtors received funds from a variety of sources, including Title IV[4] funds from the federal government, other federal agency funds (such as funds received pursuant to the Workforce Investment Act, Native American funding, etc.), state grants, military-related sources of funding for tuition and related costs (such as the Post 9/11 GI Bill and Armed Forces Tuition Assistance Program), payments directly from students (including credit card and ACH receipts, cash and checks), and proceeds from asset sales.  These amounts are initially deposited into various accounts and eventually funneled into one or more concentration accounts before distribution to satisfy the Debtors' obligations, including payroll and debt service payments.

16.      **The Deposit Accounts**:    The majority of the Debtor Bank Accounts, approximately 50 of the 81 accounts, are deposit accounts.  The deposit accounts and the funding sources for each are discussed below:

- *The State Grant Accounts*: The Debtors maintain 13 accounts for receipt of state grant funds from California, Arizona and New York (the "**State Grant Accounts**").  Three of these accounts are held by Corinthian, and ten are held by Heald College, LLC ("**Heald**").  All State Grant Accounts are maintained at BofA.  These accounts are custodial, off balance sheet accounts where states deposited funds pending determination of student eligibility. Once students were eligible, the state gave the Debtors the authority to release funds from the account which then transferred into the Non-T4 Account (defined below). The Debtors need to maintain these accounts to complete the accounting of the existing balances in these accounts and distribute those funds as appropriate. It is anticipated that most, if not all, of the funds in these accounts will revert back to the states.

- *The T4 Accounts*: The Debtors maintain 34 accounts for receipt of Title IV funds from the federal government (the "**T4 Accounts**").  Three of these accounts are held by Sequoia Education, Inc., twenty-five are held by Corinthian Schools, Inc., two are held by Rhodes Business Group, Inc., two are held by Heald, and two are held by Everest College Phoenix, Inc.  All T4 Accounts are maintained by Bank of the West.  Funds deposited into the T4 Accounts are subsequently transferred into the T4 Concentration Account (defined below).  The Debtors are no longer eligible to receive Title IV Funds.  Notwithstanding that the Debtors are no longer receiving

---

[4]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to the in the First Day Declaration.

Title IV Funds, the Debtors submit that the T4 Accounts need to be kept open in the short term to address potential refund issues (and may require the completion of a regulatory audit before they can be closed).

- *The FHB Accounts*: The two bank accounts maintained by FHB are each deposit accounts (the "**FHB Accounts**"). One of these accounts is the depository account for the Hawaiian location. The other is the deposit account for federal funds that are available to Hawaiian students. Such federal funds are not Title IV Funds, and are only available to students in the State of Hawaii. Funds from the FHB Accounts are transferred into the Non-T4 Account.

- *The U.S. Bank Account*: The account maintained by U.S. Bank (the "**U.S. Bank Account**") receives incoming credit card and ACH receipts from students for tuition and fees. Amounts in the U.S. Bank Account are transferred into the Non-T4 Account. The Debtors anticipate that they will be able to close this account by May 31, 2015.

- *The Non-T4 Account*: Corinthian maintains an account with BofA (the "**Non-T4 Account**," and together with the State Grant Accounts, the T4 Accounts, the FHB Accounts and the U.S. Bank Account, each a "**Deposit Account**," and collectively, the "**Deposit Accounts**") that is a hybrid between a deposit account and a concentration account as it serves as a collection account for all of the funds received by the Debtors from non-Title IV sources while also directly receiving deposits. The funds in the State Grant Accounts, the U.S. Bank Account and the FHB Accounts are all transferred into the Non-T4 Account. In addition, moneys are deposited directly into the Non-T4 Account from sources other than Debtor Bank Accounts, including funds from Veterans Affairs, proceeds from asset sales, corporate deposits, and miscellaneous wire and ACH transfers. Finally, Non-Title IV Funds deposited into the BofA Concentration Account (defined below) are manually transferred on a weekly basis to the Non-T4 Account, as set forth in further detail below. The Debtors segregate the Title IV funds from non-Title IV funds pursuant to Amendment No. 4 to the Credit Agreement with BofA, which requires separate accounts for these two types of funding. Amounts in the Non-T4 Account are used for non-Title IV purposes, including debt repayments, legal settlements. In addition, funds in the Non-T4 Account are sometimes manually transferred into the BofA Concentration Account, the Union Concentration Account or the BMO Harris Concentration Account (as each term is defined below), when required.

17.     **The Concentration Accounts**: In addition to the Non-T4 Account, the Debtors

have several additional concentration accounts:.

- *The BofA Concentration Account*: The Debtors' main concentration account (the "**BofA Concentration Account**"), held by Corinthian, is maintained at BofA. From time to time, available funds from the BMO Harris Concentration Account, the Union Concentration Account, the T4 Concentration Account and the Heald Concentration Account are consolidated into the BofA Concentration Account for cash management

purposes. The Debtors also periodically transfer funds from the Non-T4 Account into the BofA Concentration Account to support operating expenditures. In addition, non-Title IV funds are received directly into the BofA Concentration Account from the majority of campuses which deposit cash receipts into their local BofA bank branches. This source of the funds deposited into the BofA Concentration Account is accounted for so that any non-Title IV funds can be manually transferred out of the BofA Concentration Account on a weekly basis into the Non-T4 Account. The BofA Concentration Account directly funds the seven BofA Payroll Accounts (defined below) and the three Student Refund Accounts (defined below). Funds from the BofA Concentration Account are also transferred to the Union Concentration Account, which, in turn, funds other accounts that pay obligations of the Debtors. The Debtors also make their required US dollar-denominated debt service payments to BofA from the BofA Concentration Account.

- *The T4 Concentration Account*: Corinthian maintains an account at Bank of the West, into which all Title IV funds from the T4 Accounts are transferred (the "**T4 Concentration Account**"). Bank of the West transfers the funds received in the T4 Concentration Account to the BMO Harris Concentration Account and the BofA Concentration Account.

- *The BMO Harris Concentration Account*: Corinthian also maintains a concentration account at BMO Harris (the "**BMO Harris Concentration Account**"). Funds from the T4 Concentration Account and the BofA Concentration Account are transferred, as needed, to the BMO Harris Concentration Account. These funds are then manually transferred to the BMO Harris Accounts Payable Account (defined below). Funds from the BMO Harris Concentration Account are also transferred to the BofA Concentration Account and the Union Concentration Account, as required.

- *The Union Concentration Account*: Corinthian also maintains a concentration account at Union (the "**Union Concentration Account**"). Funds are manually transferred to the Union Concentration Account from the T4 Concentration Account, the BofA Concentration Account and the BMO Harris Concentration Account. Funds in the Union Concentration Account are used to fund the seven Union Payroll Accounts (defined below). They are also used to satisfy certain other obligations of the Debtors, including vendor payments, taxes and benefits. All of the Debtors' wire payments are made from the Union Concentration Account. As necessary, funds in Union Concentration Account are transferred to the BofA Concentration Account.

- *The Heald Concentration Account*: Heald maintains a concentration account with BofA (the "**Heald Concentration Account**," and together with the BofA Concentration Account, the T4 Concentration Account, the BMO Harris Concentration Account and the Union Concentration Account, each a "**Concentration Account**," and collectively, the "**Concentration Accounts**"). Non-Title IV funds related to Heald locations are received directly into the Heald Concentration Account from all Heald campuses, other than Hawaii (which deposit cash receipts into the FHB Accounts). The balance in the Heald Concentration Account is periodically transferred into the Non-T4 Account.

- 9 -

18. **The Payroll Accounts**: The Debtors maintain seven payroll accounts at BofA (the "**BofA Payroll Accounts**") and seven payroll accounts at Union (the "**Union Payroll Accounts**," and together with the BofA Payroll Accounts, the "**Payroll Accounts**"). Each of the fourteen Payroll Accounts relates to a separate legal entity and funds the payroll for the campuses that are part of that legal entity. While the Debtors' campuses have been closed and ceased instruction at all locations, each location continues to employ a limited number of individuals who are working to wind down operations and preserve the Debtors' assets. Accordingly, the Debtors must maintain the individual payroll accounts until this work is completed and the individual Debtors no longer have employees.

19. **The Student Refund Accounts**: The Debtors maintain three accounts with BofA that are used to pay refunds to their students (the "**Student Refund Accounts**"). Two of these accounts are in Corinthian's name and one is in Heald's name. When an institution receives Title IV funds and/or non-Title IV funds associated with a student's financial aid package and the total amount of all Title IV funds and non-Title IV funds credited exceeds the amount of tuition and fees, books and supplies, room and board, and other authorized charges, the institution must pay the resulting credit balance directly to the student. The Debtors need to maintain the Student Refund Accounts until they have finished the accounting of student credit balances and the reconciliation of amounts outstanding against these accounts.

20. **The BMO Harris Accounts Payable Account**: Corinthian maintains an accounts payable account with BMO Harris (the "**BMO Harris Accounts Payable Account**"). The BMO Harris Accounts Payable Account is manually funded from the BMO Harris Concentration Account. All of the Debtors' accounts payable are paid through the BMO Harris Concentration Account.

- 10 -

21.     **The Investment Accounts**:  Corinthian maintains investment accounts with both BofA and Union, which were historically used to invest excess cash according to its investment policy which limits investments primarily to treasuries and government-backed securities.  The balance in both of these accounts is currently zero and the Debtors anticipate closing these accounts by May 18, 2015.

22.     **Miscellaneous Accounts**:  Finally, Corinthian maintains a few miscellaneous accounts for different purposes, including a Canadian account (for purposes of distributing Canadian currency, when necessary) with Union Bank and a flexible spending account reimbursement account with CA Bank.  In addition, MJB Acquisition Corporation holds an account with Capital West that is an escrow account for medical benefits for students at one of the Debtors' campuses.  While these funds are Debtor assets, they are managed by Capital West.  Finally, there is one account, an obsolete transcript checking account, that is closed or intended to be closed shortly after the Petition Date.

## C.     Bank Fees

23.     The Debtors pay, honor, or allow the deduction from the Debtor Bank Accounts service charges and other fees, costs, and expenses arising in the ordinary course (collectively, the "**Bank Fees**").  The Debtors estimate that they pay average monthly Bank Fees of approximately $85,000 and that they owe prepetition Bank Fees of approximately $80,000.  The Debtors' inability to pay prepetition or postpetition Bank Fees in the ordinary course could disrupt the Cash Management System and harm the Debtors' estates.

## D.

## E.     Intercompany Transactions

24.     Historically, the Debtors have engaged in Intercompany Transactions largely to centralize cash management and maintain control over the funds moving within the Debtors'

- 11 -

corporate group. As described above, most of the Intercompany Transfers are from Concentration Accounts held by Corinthian to payroll accounts held by other Debtors or from the Deposit Accounts held by Debtors other than Corinthian to Concentration Accounts held by Corinthian. Just as the Debtors can ascertain, trace, and account for all external fund transfers in their accounting system, they also carefully and accurately track Intercompany Transactions. Indeed, during these cases, the Debtors intend to segregate and separately track postpetition Intercompany Transactions and include a detailed accounting of such Intercompany Transaction in the Debtors' monthly operating reports.

25. If the Intercompany Transactions were discontinued, the Cash Management System and the operations of the Debtors alike would be harmed, all to the detriment of the Debtors and their estates.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A. The Continued Use of the Cash Management System, Debtor Bank Accounts and Business Forms Is Warranted and Is in the Best Interests of the Debtors' Respective Estates and Creditors

26. **Cash Management System**. The Debtors' ability to continue to use their Cash Management System is essential to their operations and the administration of these cases. Absent the ability to maintain their Cash Management System, the Debtors would be required to alter significantly their business operations to comply with the UST Requirements. The Cash Management System provides benefits to the Debtors, such as enabling them to (a) control and monitor corporate funds, (b) ensure cash availability and (c) reduce administrative expenses by facilitating the movement of funds. These benefits are especially important here given the volume of cash transactions managed through the Cash Management System.

27. In light of the structure of the Debtors' operations, any disruption in the Debtors' cash management procedures will hamper the Debtors' efforts to preserve and enhance the value

- 12 -

of their estates.  Altering the Cash Management System may disrupt payments to key vendors and employees.  Therefore, it is essential that the Debtors be permitted to continue to use their Cash Management System in accordance with their existing cash management procedures.

28.     The Debtors further seek authority to implement ordinary course changes to their Cash Management System, as they may determine are beneficial to their estates, including any changes necessitated by any orders authorizing the Debtors' use of cash collateral.

29.     As part of these ordinary course changes, the Debtors request authority to open and close bank accounts.  The Debtors request that, subject to the terms provided in paragraph 42 below, the Banks be authorized to honor the Debtors' requests to open or close any bank accounts, provided, however, that any new domestic account is established at a bank insured with the FDIC or the Federal Savings and Loan Insurance Corporation (the "**FSLIC**") and that is organized under the laws of the United States or any State therein or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the list of authorized bank depositories for the District of Delaware.

30.     The existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

31.     **Debtor Bank Accounts**.  To avoid substantial disruption to the normal operation of the Cash Management System, the Debtors hereby request that they be permitted to continue to use their Debtor Bank Accounts with the same account numbers.  Absent this relief, the UST Requirements would require the Debtors to close all their prepetition bank accounts and open

new accounts. Accordingly, the Debtors request a waiver of certain UST Requirements (as defined below). Allowing the Debtors to continue to use their prepetition bank accounts will assist the Debtors in accomplishing a smooth transition into chapter 11.

32.     To protect against the possible inadvertent payment of prepetition claims, all of the Debtors will immediately advise their Banks (as defined below) not to honor checks issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and requested by the Debtors. Importantly, the Debtors possess the capacity to draw the necessary distinctions between prepetition and postpetition obligations and payments without closing the Debtor Bank Accounts and opening new ones.

33.     Authority to continue the use of bank accounts has been granted in other chapter 11 cases.[5]

34.     **Business Forms**. In the ordinary course of business, the Debtors use pre-printed check stock with the relevant Debtor's name printed thereon. In addition, the Debtors maintain pre-printed correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms (collectively, along with the Debtors' checks, the "**Business Forms**"). To minimize expense, the Debtors seek authority to continue using their Business Forms, substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession. Accordingly, as set forth below, the Debtors seek a waiver of the U.S. Trustee Requirements to the extent necessary to authorize continued use of the Business Forms; provided

---

[5]     *See, e.g., In re AES Energy, L.P.*, Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 26, 2012) (D.I. 121) ("**AES Order**"); *In re William Lyon Homes*, Case No. 11-14019 (CSS) (Bankr. D. Del. Dec. 20, 2011) (D.I. 51) ("**William Lyon Order**"); *In re Lee Enters., Inc.*, Case No. 11-13918 (KG) (Bankr. D. Del. Dec. 13, 2011) (D.I. 60) ("**Lee Enterprises Order**"); *In re Graceway Pharmaceuticals, LLC*, Case No. 11-13036 (PJW) (Bankr. D. Del. Sept. 30, 2011) (D.I. 45) ("**Graceway Order**"); *In re Solyndra LLC*, Case No. 11-12799 (MFW) (Bankr. D. Del. Sept. 7, 2011) (D.I. 42) ("**Solyndra Order**"); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011) (D.I. 51) ("**Harry & David Order**).

that once the Debtors' existing checkstock has been depleted, the Debtors will, when reordering

checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case

number on all checks; provided further that, with respect to electronic checks that the Debtors or

their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend

on such items within 10 days of entry of the Interim Order.

35.     Courts have allowed debtors to use prepetition checks and business forms without

the "Debtor in Possession" label in other cases.[6]

36.     Bankruptcy Code section 363(c)(1) permits a debtor to "use property of the estate

in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The

purpose of section 363(c)(1) is to provide a debtor flexibility to operate its businesses without

unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)

("Section 363 is designed to strike [a] balance, allowing a business to continue its daily

operations without excessive court or creditor oversight and protecting secured creditors and

others from dissipation of the estate's assets." (internal quotation omitted)). Included within the

purview of section 363(c) is a debtor's ability to continue the "routine transactions" a debtor's

cash management system require. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura

Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to

continue operating its business," including performing "routine transactions necessitated by the

[existing] cash management system"); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter

Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to

employ a cash management system that was "usual and customary in the past" was "entirely

consistent" with section 363(c)(1)). Additionally, Bankruptcy Code section 105(a) empowers

---

[6]     *See, e.g.*, AES Order (authorizing debtors to continue using their existing business forms and checks without change); William Lyon Order (same); Lee Enterprises Order (same); Graceway Order (same); Solyndra Order (same); Harry & David Order (same).

the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

37.    The relief this Motion requests is consistent with these Bankruptcy Code provisions.  The Debtors seek authority to continue to use their Cash Management System and the Debtor Bank Accounts consistent with prepetition practices.  The Cash Management System is an ordinary-course and essential business practice that provides the Debtors significant benefits.  Through the Cash Management System, the Debtors maintain the ability to control corporate funds, ensuring maximum availability of funds when and where necessary.  Continued use of the Cash Management System and the Debtor Bank Accounts during these chapter 11 cases is essential to the Debtors' businesses and maximizing value of their estates.  Requiring the Debtors to adopt new cash management systems and open new bank accounts would be expensive, onerous, and disruptive, particularly given that the Debtors anticipate closing many of the Debtor Bank Accounts during the pendency of these cases.  It would be wasteful to the Debtors' estate to open new accounts only to close them again a few weeks or months later.  As one court in this District recognized, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).

38.    The Debtors represent that if the Court grants this Motion, they will not pay, and each of the banks will be directed not to pay, any prepetition claims, except as the Court authorizes.  Maintaining the Cash Management System and Debtor Bank Accounts, and the continued use of the prepetition Business Forms and payment of the Bank Fees, without disruption is in the best interests of the Debtors, their estates, and all parties in interest.  Based on

- 16 -

the foregoing, the Debtors respectfully request that the Court authorize the Debtors to continue the collection, concentration, and disbursement of cash under their Cash Management System on the terms set forth herein pursuant to sections 363(c) and 105(a) of the Bankruptcy Code.

**B.      The Debtors Should Be Granted a Waiver of Certain Requirements Under Bankruptcy Code Sections 363 and 105(a)**

39.      The Debtors further request that this Court grant a waiver of certain bank account and related U.S. Trustee requirements.  The U.S. Trustee has established operating guidelines for debtors in possession to supervise the administration of chapter 11 cases.  These guidelines require a chapter 11 debtor to, among other things (the requirements set forth in (a) through (e) below collectively, the "**UST Requirements**"):

(a)      close all existing bank accounts;

(b)      open new bank accounts in a depositary approved by the U.S. Trustee that are designated as DIP Accounts, with separate DIP Accounts established for an operating account, a tax account, and a payroll account;

(c)      obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor In Possession" and contain other information about the debtor's chapter 11 case;

(d)      deposit all business revenues into the general operating DIP Account, with amounts needed to fund the other accounts being transferred to those accounts as necessary; and

(e)      deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

The UST Requirements are designed to provide a clear line of demarcation between a debtor's prepetition and postpetition transactions and operations, and to prevent inadvertent postpetition payment of prepetition claims.

40.      Under Bankruptcy Code sections 363 and 105(a), the Debtors seek a waiver of the UST Requirements that they close the Debtor Bank Accounts and open new DIP Accounts.  As discussed above, continued use of the Debtor Bank Accounts is essential to maximizing value of

- 17 -

the Debtors' estates and is in the best interests of all parties. Among other things, the Debtors anticipate closing many of the Debtor Bank Accounts as these cases progress and accounts are no longer required, and pursuant to this Motion the Debtors request the authority to open any new bank accounts or close any existing Debtor Bank Accounts as they may deem necessary and appropriate in the ordinary course, provided that the Debtors give notice within 15 days after such opening of a new bank account or closing of an existing Debtor Bank Account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases, and provided further that the Debtors open any such new bank account at Banks that have executed a Uniform Depositary Agreement with the U.S. Trustee, or at such Banks willing to immediately execute such an agreement.

41.     Subject to the terms and conditions of the Interim Order or the Final Order (as applicable), any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under the Interim Order or the Final Order (as applicable), be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed herein.

42.     The Debtors also seek a waiver of the UST Requirement to establish specific DIP Accounts for payroll and for tax payments and to deposit into the tax accounts sufficient funds to pay any payroll tax liability (when incurred). The Debtors believe that their payroll and tax obligations are most efficiently met through the Debtor Bank Accounts in accordance with existing practices, and that requiring new payroll and tax DIP Accounts would be both unnecessary and highly disruptive to their businesses. The Debtors are—and expect to remain— current on all payroll taxes. Requiring the Debtors to change their existing practices and deposit

sufficient funds to pay any tax liability associated with the Debtors' payroll would, therefore, be unnecessary and inefficient. Further, the Debtors will ensure that the U.S. Trustee can appropriately monitor that the Debtors' payroll taxes are satisfied.

43. To minimize expense, the Debtors also seek authority to continue using the Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession, notwithstanding the UST Requirements.

44. As required, the Debtors are providing notice of the commencement of these cases to creditors and parties in interest. Parties doing business with the Debtors, therefore, should be aware of the Debtors' status as debtors in possession. Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates. Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing Business Forms without being required to label them "Debtor In Possession;" provided that once the Debtors' existing checkstock has been depleted, the Debtors will, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtor in Possession" legend on such items within 10 days of entry of the Interim Order.

45. Because parties that presently conduct business with the Debtors likely will be aware of the Debtors' status as debtors in possession and will receive notice of these cases, the alteration of the Debtors' checks and Business Forms at the outset of these cases would be

- 19 -

unnecessary and unduly burdensome. Further, courts have allowed debtors to use their prepetition checks and business forms without the "Debtor in Possession" label in other cases.

46.     As indicated above, the Cash Management System is an ordinary course and essential business practice. Compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements outlined above would risk disruption to the Debtors' businesses and jeopardize the Debtors' ability to maximize value for parties in interest.

## C.     The Debtors Should Be Authorized to Continue Their Deposit Practices Under Bankruptcy Code Section 345

47.     Bankruptcy Code section 345(a) governs a debtor's deposit of cash during a chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a). If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code section 345(b) requires the debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety. *Id.* § 345(b). Alternatively, the estate may require the entity to deposit governmental securities under 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.

48.     The Debtors understand that the majority of the Banks maintaining Debtor Bank Accounts have signed a Uniform Depositary Agreement with the U.S. Trustee, but to the extent that any banks have not signed such an agreement and to the extent the Debtors as of the Petition Date do not otherwise comply with deposit and investment guidelines under Bankruptcy Code

- 20 -

section 345(b), the Debtors request a 30-day extension (or such further extension as the U.S. Trustee may agree to) to do so.

49.      The Debtors believe that the benefits of the requested extension far outweigh any harm to the estates.  *See generally In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (noting that some of the factors to consider in determining whether cause exists for "relief from the strictures of § 345(b)" is whether benefits to the debtor outweigh the harm, if any, to the estate).  During the extension period, the Debtors will contact each of their Banks that is a party to a Uniform Depository agreement with the U.S. Trustee, provide such Banks with each of the Debtors' tax identification numbers, and identify each of their Debtor Bank Accounts at the Banks as being held by a debtor in possession.  For Banks that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors will use good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.

50.      Similar extensions have been granted in other chapter 11 cases in this District and elsewhere.[7]  Based on the foregoing, the Debtors submit that the relief requested is in the best interests of their estates and parties in interest, and, therefore, should be granted.

**D.      The Court Should Authorize Banks Participating in the Cash Management System to Honor Certain Transfers and Charge Bank Fees and Certain Other Amounts**

51.      Contemporaneously with the filing of this Motion, the Debtors have filed certain motions for authorization to pay certain prepetition debt.  With respect to some of this debt, prior to the Petition Date, the Debtors may have issued checks that may not yet have cleared the banking system.  With respect to other debt, the Debtors intend to issue checks postpetition on

---

[7]      *See, e.g., In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149) (granting 30-day extension); *In re Energy Futures Holding Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Apr. 29, 2014) (D.I. 304) (granting 60-day extension); *In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014) (D.I. 77) (granting 60-day extension); *In re Quantum Foods, LLC*, No. 14-10318 (KJC) (Bankr. D. Del. Feb. 20, 2014) (D.I. 38) (granting 45-day extension); *In re Event Rentals Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 20, 2014) (D.I. 48) (granting 60-day extension).

account of such prepetition debt once the Court enters an order permitting the Debtors to take such action.  The Debtors intend to inform their Banks which prepetition checks the Banks should honor pursuant to orders of the Court authorizing such payment, and similarly intend to instruct their Banks to dishonor any Disbursements related to the payment of prepetition obligations unless such payments have been authorized by the Court.

52.    As a result of the foregoing, the Debtors request their banks and financial institutions (collectively, the "**Banks**") be authorized, effective *nunc pro tunc* to the Petition Date, to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all Disbursements on account of any claim arising before the Petition Date that this Court has granted the Debtors approval to pay, provided the applicable Debtor Bank Accounts contain sufficient funds and such payments are consistent with the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).  The Debtors shall timely furnish to the Banks stop payment orders for any checks or other payment orders issued prior to the Petition Date which the Debtors do not want to be honored.

53.    Pursuant to the relief requested in this Motion, the Banks shall be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored or dishonored pursuant to this or any other order of this Court.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements consistent with the orders of this Court.  No Bank will be liable to any party, or otherwise be in violation of the orders of this Court, on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any

- 22 -

prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to verify or audit independently whether a particular item may be paid in accordance with a Court order or otherwise.

54. Finally, the Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and postpetition Bank Fees. The Debtors also request the Banks be authorized to charge back returned items to the Debtor Bank Accounts in the normal course of business.

55. Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

56. The Debtors require this relief to minimize the disruption of the Cash Management System and their Debtor Bank Accounts. Authority for debtors to pay bank fees and banks to charge back returned items has been routinely granted in other chapter 11 cases.

**E.      The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business, and Such Transactions Should Be Granted Administrative Expense Priority**

57. As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course. As a result, at any given time there may be intercompany claims between the Debtors. Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises like the Debtors, the Intercompany Transactions are ordinary course transactions under Bankruptcy Code section 363(c)(1) and do

not require Court approval. Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions postpetition.

58.     Moreover, ordinary-course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets. Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed. The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources. Moreover, the Intercompany Transactions provide the Debtors access to liquidity that may be necessary to fund ongoing operations. Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

59.     Finally, the Debtors respectfully request, under Bankruptcy Code section 503(b)(1), that all payments between any Debtor and any other Debtors on account of a postpetition Intercompany Transaction be accorded administrative expense priority. This relief will ensure that each Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions.[8]

60.     Similar relief has been granted in other multi-debtor chapter 11 cases in this and other districts.[9]

---

[8]     The Bankruptcy Code also provides a debtor in possession the freedom to obtain unsecured credit and incur unsecured debt in the ordinary course of business without a notice and a hearing. 11 U.S.C. § 364(a); *In re Amdura Corp.*, 75 F.3d at 1453; *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 247 B.R. 38, 45 (S.D.N.Y. 2000); *Mulligan v. Sobiech*, 131 B.R. 917, 921 (S.D.N.Y. 1991). The Debtors, therefore, seek authorization, to the extent necessary, to obtain unsecured credit in connection with the Intercompany Transactions and in the ordinary operation of their Cash Management System.

[9]     *See, e.g. In re Endeavour Operating Corporation*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 6, 2014) (D.I. 149); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (D.I. 99); *In re the Dolan Company*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (D.I. 82); *In re QCE Finance LLC*, No. 14-10543 (PJW) (Bankr. D. Del. Mar. 17, 2014) (D.I. 41); *In re ICL Holding Co. (f/k/a LCI Holding Co.)*, No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012) (D.I. 84).

**F.      Immediate Relief and Waiver of Stay Are Necessary to Avoid Immediate and Irreparable Harm**

61.      Pursuant to Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors seek immediate entry of an order granting the Debtors (a) the authority to continue to pay the Bank Fees and (b) a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the effectiveness of such order.

62.      Under Bankruptcy Rule 6003, the Court may grant a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Bankruptcy Rule 6003, if applicable.[10]

63.      The urgency of the relief requested justifies immediate relief.  To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h)

64.      The continued use of the Debtor Bank Accounts, Cash Management System and Business Forms, and the payment of the Bank Fees, are necessary to prevent the immediate and irreparable damage to the Debtors' estates.  Accordingly, the Debtors submit that ample cause exists to justify the requested relief.

---

[10]      See the First Day Declaration filed concurrently with this Motion.

## RESERVATION OF RIGHTS

65.     Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  If this Court grants the relief requested in this Motion, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity as to any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.  In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtors to pay such claims.

## NOTICE

66.     The Debtors will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the United States Attorney for the District of Delaware; (viii) any banking or financial institution that holds the Debtor Bank Accounts; and (ix) all parties entitled to notice of this Motion pursuant to Local Rule 9013-1(m).

67.     As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

RLF1 11879662v.5

## NO PRIOR MOTION

The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of interim and final orders granting the relief requested in its entirety and any other relief as is just and proper.

| | |
|---|---|
| Dated: May 4, 2015<br>Wilmington, Delaware | /s/ Mark D. Collins<br>Mark D. Collins (No. 2981)<br>Michael J. Merchant (No. 3854)<br>Marisa A. Terranova (No. 5396)<br>Amanda R. Steele (No. 5530)<br>RICHARDS, LAYTON & FINGER, P.A.<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Telephone:  302-651-7700<br>Facsimile:  302-651-7701<br>Email:  collins@rlf.com<br>          merchant@rlf.com<br>          terranova@rlf.com<br>          steele@rlf.com<br><br>Proposed Counsel for the Debtors and Debtors in Possession |

- 27 -

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (___) |
| | § | |
| | § | Joint Administration Requested |
| | § | |
| | § | |
| | § | |
| Debtors. | § | |

------------------------------------------------------------

### INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this "**Order**"): (i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts located at various banks, as more fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System (subject to certain reasonable changes to the Cash Management System that the Debtors may implement); (iv) extending time to comply with Bankruptcy Code section

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]     Capitalized terms used but not defined in this Order have the meanings used in the Motion.

345(b); and (v) authorizing Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates, as contemplated by Federal Rule of Bankruptcy Procedure 6003, and that such relief is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      The final hearing (the "**Final Hearing**") on the Motion will be held on _____, 2015, at__:__ _.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion must be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2015, and served on the following parties:  (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (ii) counsel to

RLF1 11879662v.5

Bank of America, N.A., in its capacity as administrative agent under that certain Fourth Amended and Restated Credit Agreement, dated as of May 17, 2012; and (iii) counsel to any statutory committee appointed in these chapter 11 cases. A copy of the Motion and this Order will be served in accordance with the requirements of Local Rule 9013-1(m). Due to the nature of the relief requested in the Motion, no other or further notice need be given. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.        Except as otherwise provided herein, (i) the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and Debtor Bank Accounts consistent with their prepetition practices, and (ii) the existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such Bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

4.        The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of the bank accounts. The Banks are authorized to honor the Debtors' requests to open or close such bank accounts in connection with authorized changes to the Cash Management System.

5.        The Debtors are authorized but not directed to (i) maintain and continue to use the Debtor Bank Accounts, in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse

RLF1 11879662v.5

transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor

Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts

as set forth herein; (iv) perform their obligations under the Debtor Bank Accounts' governing

documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as DIP

Accounts.

6.      All Banks are authorized, effective *nunc pro tunc* to the Petition Date, to continue

to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without

interruption and in the ordinary course, and to receive, process, honor, and pay Disbursements;

provided, however, that no checks issued against the Debtor Bank Accounts prior to the

commencement of these chapter 11 cases shall be honored except as otherwise authorized by an

order of this Court and requested by the Debtors.

7.      All Banks are authorized to accept and honor all representations from the Debtors

as to which of these Disbursements should be honored.  If any Banks nevertheless dishonor

Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements

consistent with the orders of this Court.  The Banks shall not be liable to any party, or otherwise

in violation of orders of this Court, on account of (a) following the Debtors' instructions or

representations as to any order of this Court, (b) the honoring of any prepetition Disbursement or

other Disbursement in a good faith belief that the Court has authorized such Disbursement to be

honored or (c) an innocent mistake made despite implementation of reasonable item-handling

procedures.

8.      The Banks are authorized to charge and the Debtors are authorized to pay or

honor the Bank Fees related to the Debtor Bank Accounts.  The Banks are also authorized to

charge back returned items to the Debtor Bank Accounts in the normal course of business.

9.      The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

10.     All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under Bankruptcy Code section 503(b).  In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions on intercompany accounts and must include a detailed accounting of such Intercompany Transactions in the Debtors' monthly operating reports.

11.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived.  The Debtor Bank Accounts are deemed to be DIP Accounts.

12.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

13.     The Debtors are authorized to continue using all Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

- 5 -

14.     For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

15.     Within 15 days of the date of entry of this Order, with respect to Banks at which the Debtors hold the Debtor Bank Accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each Bank; (ii) provide the Bank with each of the Debtors' tax identification numbers; and (iii) identify each of their Debtor Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

16.     Within 30 days of the date of entry of this Order, with respect to Banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.  The Debtors will promptly direct such Banks to internally code the Debtors Bank Accounts as DIP Accounts.  The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

17.     To the extent the Debtors seek to open any new bank accounts or close any existing Debtor Bank Accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall

give notice within 15 days after such opening of a new bank account or closing of an existing Debtor Bank Account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; **provided**, **further**, however that the Debtors are authorized to open any such new bank account at Banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such Banks that are willing to immediately execute such an agreement.

18.     Subject to the terms and conditions in this Order, any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under this Order, be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed under this Order.

19.     Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

20.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

21.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection,

- 7 -

or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

22.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

23.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

25.     This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: May ____, 2015
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Proposed Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-_____ (____) |
| | § | |
| | § | Joint Administration Requested |
| | § | |
| | § | |
| | § | |
| Debtors. | § | |

-------------------------------------------------------------

## FINAL ORDER (I) AUTHORIZING CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; (III) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Order**"):

(i) authorizing the Debtors to continue to use their centralized cash management system (the "**Cash Management System**") and bank accounts located at various banks, as more fully set forth in the Motion; (ii) waiving certain bank account and related requirements of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (iii) authorizing the Debtors to continue their existing deposit practices under the Cash Management System; (iv) extending time to comply with Bankruptcy Code section 345(b); and (v) authorizing

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]    Capitalized terms used but not defined in this Order have the meanings used in the Motion.

Intercompany Transactions (as defined below) consistent with historical practice and granting administrative expense priority to Intercompany Transactions, all as more fully set forth in the Motion; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the First Day Declaration, the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein on a final basis.

2.      Except as otherwise provided herein, (i) the Debtors are authorized and empowered to continue to maintain and use their Cash Management System and Debtor Bank Accounts consistent with their prepetition practices, and (ii) the existing agreements between the Debtors and any applicable Bank (as such term is defined below) shall continue to govern the postpetition cash management relationship between the Debtors and such Bank, and all of the provisions of such agreements shall remain in full force and effect, and the Debtors are authorized to comply with the terms of such agreements.

RLF1 11879662v.5

3.      The Debtors are authorized to implement such changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, opening any new bank accounts or closing any of the bank accounts.  The Banks are authorized to honor the Debtors' requests to open or close such bank accounts in connection with authorized changes to the Cash Management System.

4.      The Debtors are authorized but not directed to (i) maintain and continue to use the Debtor Bank Accounts, in the same manner and with existing account numbers, styles, and document forms as are currently employed; (ii) deposit funds in, and withdraw funds from, the Debtor Bank Accounts by usual means, including check, wire transfer, automated clearinghouse transfer, draft, electronic fund transfer, or other items presented, issued, or drawn on the Debtor Bank Accounts; (iii) pay prepetition and ordinary course bank fees for the Debtor Bank Accounts as set forth herein; (iv) perform their obligations under the Debtor Bank Accounts' governing documents and agreements; and (v) treat the Debtor Bank Accounts for all purposes as DIP Accounts.

5.      All Banks are authorized, effective nunc pro tunc to the Petition Date, to continue to administer, service, and maintain the Debtor Bank Accounts, as they were prepetition, without interruption and in the ordinary course, and to receive, process, honor, and pay Disbursements; provided, however, that no checks issued against the Debtor Bank Accounts prior to the commencement of these chapter 11 cases shall be honored except as otherwise authorized by an order of this Court and requested by the Debtors.

6.      All Banks are authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored.  If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors are authorized to issue replacement Disbursements

- 3 -

consistent with the orders of this Court. The Banks shall not be liable to any party, or otherwise in violation of orders of this Court, on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition Disbursement or other Disbursement in a good faith belief that the Court has authorized such Disbursement to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.

7.      The Banks are authorized to charge and the Debtors are authorized to pay or honor the Bank Fees related to the Debtor Bank Accounts. The Banks are also authorized to charge back returned items to the Debtor Bank Accounts in the normal course of business.

8.      The Debtors are authorized to continue performing Intercompany Transactions arising from or related to the operation of their businesses in the ordinary course.

9.      All payments from any postpetition Intercompany Transactions authorized hereunder are hereby accorded administrative expense priority under Bankruptcy Code section 503(b). In connection with the Intercompany Transactions, the Debtors must continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, properly recorded, and distinguished between prepetition and postpetition transactions on intercompany accounts and must include a detailed accounting of such Intercompany Transactions in the Debtors' monthly operating reports.

10.     The UST Requirement that the Debtors close all existing bank accounts and open new DIP Accounts is hereby waived. The Debtor Bank Accounts are deemed to be DIP Accounts.

RLF1 11879662v.5

11.     The UST Requirement that the Debtors open separate DIP Accounts for payroll and taxes is hereby waived.

12.     The Debtors are authorized to continue using all Business Forms, substantially in the forms existing immediately prior to the Petition Date without reference to the Debtors' status as debtors in possession; provided that once the Debtors' existing checks have been used, the Debtors will, when reordering checks, require the designation 'Debtor in Possession' and the corresponding bankruptcy case number on all checks; provided further that, with respect to electronic checks and checks which the Debtors or their agents print themselves, the Debtors will begin printing the 'Debtor in Possession' legend on such items within 10 days of the date of entry of this Order.

13.     For Banks that have not signed a Uniform Depository Agreement with the U.S. Trustee, the Debtors have 30 days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to comply with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or waiver of the requirements of Bankruptcy Code section 345(b) in these cases. For Banks that have signed a Uniform Depository Agreement with the U.S. Trustee, all Debtor Bank Accounts with such banks are deemed to satisfy Bankruptcy Code section 345(b).

14.     Within 15 days of the date of entry of this Order, with respect to Banks at which the Debtors hold Debtor Bank Accounts that are party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must (i) contact each Bank; (ii) provide the Bank with each of the Debtors' tax identification numbers; and (iii) identify each of their Debtor Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

- 5 -

15.     Within 30 days of the date of entry of this Order, with respect to Banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the U.S. Trustee, the Debtors must use their good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee.  The Debtors will promptly direct such Banks to internally code the Debtors' Debtor Bank Accounts as DIP Accounts.  The U.S. Trustee's rights to seek relief from this Court on notice in the event that the aforementioned Banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

16.     To the extent the Debtors seek to open any new bank accounts or close any existing Debtor Bank Accounts as permitted pursuant to paragraph 4 hereof, the Debtors shall give notice within 15 days after such opening of a new bank account or closing of an existing bank account to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases; provided, however that the Debtors are authorized to open any such new bank account at Banks that have executed a Uniform Depository agreement with the U.S. Trustee, or at such Banks that are willing to immediately execute such an agreement.

17.     Subject to the terms and conditions in this Order, any and all bank accounts opened by the Debtors on or after the Petition Date at any Bank shall, for all purposes under this Order, be deemed a Debtor Bank Account (as if it had been opened prior to the Petition Date), and any and all Banks at which such bank accounts are opened shall similarly be subject to the rights and obligations imposed under this Order.

18.     Despite the use of a consolidated cash management system, the Debtors will calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on disbursements made for the benefit of each Debtor, regardless of whether such Debtor actually makes such disbursements.

19.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors regarding the use of cash collateral (including, without limitation, any applicable budget).

20.     Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors) will be construed as (i) an admission of the validity of any claim against the Debtors; (ii) an admission with respect to the validity, extent, or perfection of any lien; (iii) a waiver of the Debtors' rights or those of any party in interest to dispute, contest, setoff, or recoup any claim, or assert any rights, claims, or defenses related thereto; (iv) a waiver of the Debtors' rights or those of any party in interest over the validity, extent, perfection, or possible avoidance of any lien; or (v) an approval or assumption of any agreement, contract, program, policy or lease under Bankruptcy Code section 365.

21.     The requirements set forth in Federal Rule of Bankruptcy Procedure 6004(a) are hereby waived.

22.     Notwithstanding the applicability of Federal Rule of Bankruptcy Procedure 6004, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

23.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

24.     This Court will retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: May ____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 11879662v.5

**Exhibit C**

**Debtor Bank Accounts List**

**EXHIBIT C**

**List of Bank Accounts**

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Bank of America | 9997 | Everest College Phoenix, Inc. | ECP Payroll (PR Account) |
| Bank of America | 9555 | SOCLE Education Inc. | SOCLE Payroll (PR Account) |
| Bank of America | 6737 | Corinthian Colleges, Inc. | Concentration Account |
| Bank of America | 3977 | Corinthian Colleges, Inc. | Electronic Receipts Account (Non T-4 Concentration) |
| Bank of America | 7570 | Heald College LLC. | HLD Payroll (PR Account) |
| Bank of America | 3059 | MJB Acquisition Corp | DBA Wyoming Technical Institute (PR Account) |
| Bank of America | 9250 | Heald College LLC. | Concentration Account |
| Bank of America | 3341 | Pegasus Education, Inc | DBA Learning Tree University (PR Account) |
| Bank of America | 1331 | Titan Schools, Inc. | Tsi Payroll (PR Account) |
| Bank of America | 3443 | Sequoia Education Inc | SEQ Payroll  (PR Account) |
| Bank of America | 1844 | Corinthian Colleges, Inc. | CA State Grant |
| Bank of America | 8904 | Corinthian Colleges, Inc. | AZ State Grant |
| Bank of America | 0092 | Corinthian Colleges, Inc. | NY State Grant |
| Bank of America | 5632 | Heald College LLC. | CA Grant for Concord (State Grant) |
| Bank of America | 5637 | Heald College LLC. | CA Grant for Fresno (State Grant) |
| Bank of America | 5651 | Heald College LLC. | CA Grant for Hayward/Modesto (State Grant) |
| Bank of America | 3664 | Heald College LLC. | CA Grant for Hayward/Modesto (State Grant) |
| Bank of America | 5656 | Heald College LLC. | CA Grant for Rancho Cordova (State Grant) |
| Bank of America | 5670 | Heald College LLC. | CA Grant for Roseville (State Grant) |
| Bank of America | 5675 | Heald College LLC. | CA Grant for Salinas (State Grant) |
| Bank of America | 5694 | Heald College LLC. | CA Grant  for San Fran (State Grant) |
| Bank of America | 5699 | Heald College LLC. | CA Grant for San Jose (State Grant) |
| Bank of America | 5712 | Heald College LLC. | CA Grant for Stockton (State Grant) |
| Bank of America | 7623 | Corinthian Colleges, Inc. | Campus Vue Student Refunds- U.S. (Student refunds, Control Disb. Acct) |
| Bank of America | 3634 | Corinthian Colleges, Inc. | Campus Vue Student Refunds- Texas (Student refunds, Control |
| Bank of America | 4774 | Heald College LLC. | Campus Vue Student Refunds- U.S. (Student refunds, Control Disb. Acct) |
| Bank of America | 3168 | Corinthian Colleges, Inc. | Investments |
| Bank of the West | 0672 | Corinthian Colleges, Inc. | FARE Concentration |
| Bank of the West | 8432 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds - Dir Loan) |
| Bank of the West | 8473 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds - ED Pay) |
| Bank of the West | 8598 | Sequoia Education, Inc. | Wyotech -FREMONT (Federal Funds- Perkins) |
| Bank of the West | 0974 | Corinthian Schools, Inc. | Everest College -ALHAMBRA (Federal Funds - ED Pay) |
| Bank of the West | 1089 | Corinthian Schools, Inc. | Everest College -ALHAMBRA (Federal Funds - Dir Loan) |
| Bank of the West | 1154 | Corinthian Schools, Inc. | Everest College -Alhambra  Perkins (Federal Funds- Perkins) |
| Bank of the West | 1204 | Corinthian Schools, Inc. | Everest College -RESEDA (Federal Funds - Dir Loan) |
| Bank of the West | 1253 | Corinthian Schools, Inc. | Everest College -RESEDA (Federal Funds - ED Pay) |
| Bank of the West | 1378 | Corinthian Schools, Inc. | Everest College -Reseda Perkins (Federal Funds- Perkins) |
| Bank of the West | 1469 | Corinthian Schools, Inc. | Everest College-Torrance Federal Grants (Federal Funds - ED Pay) |

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Bank of the West | 1741 | Corinthian Schools, Inc. | Everest College-Torrance DL (Federal Funds - Dir Loan) |
| Bank of the West | 2574 | Corinthian Schools, Inc. | Everest College-Anaheim Perkins (Federal Funds- Perkins) |
| Bank of the West | 2715 | Corinthian Schools, Inc. | Everest College-Anaheim DL (Federal Funds - Dir Loan) |
| Bank of the West | 2897 | Corinthian Schools, Inc. | Everest College-Anaheim Federal Grants (Federal Funds - ED Pay) |
| Bank of the West | 3036 | Corinthian Schools, Inc. | Everest College-LA Perkins (Federal Funds- Perkins) |
| Bank of the West | 3150 | Corinthian Schools, Inc. | Wyotech -LONG BEACH (Federal Funds - ED Pay) |
| Bank of the West | 3200 | Corinthian Schools, Inc. | Wyotech -LONG BEACH (Federal Funds - Dir Loan) |
| Bank of the West | 3333 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds-Perkins) |
| Bank of the West | 3341 | Corinthian Schools, Inc. | Everest College-San Jose Perkins (Federal Funds- Perkins) |
| Bank of the West | 3473 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds - ED Pay) |
| Bank of the West | 3481 | Corinthian Schools, Inc. | Everest College -SAN BERNARDINO (Federal Funds - Dir Loan) |
| Bank of the West | 3580 | Corinthian Schools, Inc. | Everest College -HAYWARD (Federal Funds- Perkins) |
| Bank of the West | 3598 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds - Dir Loan) |
| Bank of the West | 3622 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds - ED Pay) |
| Bank of the West | 3648 | Corinthian Schools, Inc. | Everest College -GARDENA (Federal Funds- Perkins) |
| Bank of the West | 3739 | Corinthian Schools, Inc. | Everest College -ONTARIO (Federal Funds - Dir Loan) |
| Bank of the West | 3861 | Corinthian Schools, Inc. | Everest College -ONTARIO (Federal Funds - ED Pay) |
| Bank of the West | 3978 | Corinthian Schools, Inc. | Everest College -SAN FRANCISCO (Federal Funds- Perkins) |
| Bank of the West | 5155 | Rhodes Business Group, Inc. | Everest Institute -ROCHESTER (Federal Funds - ED Pay) |
| Bank of the West | 5171 | Rhodes Business Group, Inc. | Everest Institute -ROCHESTER (Federal Funds - Dir Loan) |
| Bank of the West | 0823 | Heald College, LLC | Heald College - San Fran/Honolulu/Portland (Federal Funds - Dir Loan) |
| Bank of the West | 0971 | Heald College, LLC | Heald College - San Fran/Honolulu/Portland (Federal Funds - ED Pay) |
| Bank of the West | 1437 | Everest College Phoenix, Inc. | Everest College Phoenix, Inc. (Federal Funds - Dir Loan) |
| Bank of the West | 1494 | Everest College Phoenix, Inc. | Everest College Phoenix, Inc. (Federal Funds - ED Pay) |
| First Hawaiian Bank | 2236 | Heald College LLC. | 11136 Depository |
| First Hawaiian Bank | 8391 | Heald Colleges of California | Federal Account |
| BMO Harris Bank, N.A. | 9278 | Corinthian Colleges, Inc. | Concentration |
| BMO Harris Bank, N.A. | 9286 | Corinthian Colleges, Inc. | A/P disbursements |
| Union Bank | 4999 | Corinthian Colleges, Inc. | Concentration Account |
| Union Bank | 5049 | Rhodes Business Group Inc. | RBGi Payroll Account (PR Account-ZBA) |
| Union Bank | 6563 | Eton Education Inc | Eton Payroll Account (PR Account-ZBA) |

| Financial Institution | Account Number (Last 4 Digits) | Debtor | Type |
|---|---|---|---|
| Union Bank | 6571 | Ashmead Education Inc. | AEi Payroll Account (PR Account-ZBA) |
| Union Bank | 1082 | Corinthian Colleges, Inc. | Petty Cash (Transcript Checking) |
| Union Bank | 1139 | Corinthian Colleges, Inc. | CCi Payroll Account (PR Account-ZBA) |
| Union Bank | 1147 | Corinthian Schools Inc | CSi Payroll Account (PR Account-ZBA) |
| Union Bank | 1155 | Florida Metropolitan Univ | FMU Payroll Account (PR Account-ZBA) |
| Union Bank | 1163 | Rhodes College, Inc. | RCi Payroll Account (PR Account-ZBA) |
| Union Bank | 1488 | Corinthian Colleges, Inc. | CAD$ Funds |
| Union Bank | 7880 | Corinthian Colleges, Inc. | Investments |
| U.S. Bank, NA | 2585 | Corinthian Colleges, Inc. | Consolidation Account |
| Capital West | 9056 | MJB Acquisiton Corp | WyoTech/Student Insurance (Escrow for WyoTech Student |
| California Bank and Trust | 5741 | Corinthian Colleges, Inc. - Flex Account | FSA Reimbursement Account (Reimbursement to Employees) |
| Citibank, N.A. | 4768 | Corinthian Colleges, Inc. | Corinthian Colleges Inc. and Citibank, N.A. as Escrow Agent (DOE Escrow Account) |

**Exhibit D**

**Debtors' Cash Management System**



Debtor Bank Accounts Cash Flow Chart

Retainers Paid to Bankruptcy Professionals

**Corinthian Colleges, Inc.**
**Schedule of Retainers/ Amount "Held on Account" for Bankruptcy Professionals**

| Name of Payee | Date Paid | Name of Payor | Retainer/ Amount "Held on Account" | Amount Applied to Date [1] | Balance |
|---|---|---|---|---|---|
| Corinthian Colleges, Inc. | Various (pre-petition) | FTI Consulting | $  500,000.00 | TBD | TBD |
| Corinthian Colleges, Inc. | Various (pre-petition) | Richard, Layton & Finger | $  405,000.00 | TBD | TBD |
| Corinthian Colleges, Inc. | 4/30/2015 | Rust Consulting/ Omni Bankruptcy | $  40,000.00 | TBD | TBD |
| | | Total | $  945,000.00 | | |

TBD - To be determined
[1] Retainers and amounts held "on account" are subject to reconciliation for fees and expenses incurred pre and post-petition.