## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>CORINTHIAN COLLEGES, INC., et al.,[1]<br><br>Debtors. | Case No. 15-10952 (KJC)<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**Hearing Date: June 8, 2015 at 1:00 p.m. (ET)**<br>**Objection Deadline: June 1, 2015 at 4:00 p.m. (ET)** |

## MOTION OF CURRENT AND FORMER DIRECTORS, OFFICERS, AND EMPLOYEES OF CORINTHIAN COLLEGES, INC., FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT OF DEFENSE COSTS AND OTHER LOSSES UNDER DIRECTORS AND OFFICERS INSURANCE POLICIES

This motion is brought by the following current and former directors, officers, and employees of Corinthian Colleges, Inc. ("Corinthian" or, together with its debtor-subsidiaries, the "Debtors"):  Hank Adler, Robert Bosic, Michael Brase, Linda Buchanan, William Buchanan, Nicole Carnagey, Eeva Deshon, Christian Dieckman, John Dionisio, Anna Marie Dunlap, John Fioretto, Barbara Gordon, Terry Hartshorn, Alice Kane, Robert Kenyon, Don King, Robert Lee, Jack Massimino, David Moore, Marc Morial, Kenneth Ord, Robert Owen, David Poldoian, Terry Rawls, Sharon Robinson, Karen Rose, Sumi Shrishrimal, Linda Skladany, Paul St. Pierre, Tim Sullivan, Peter Waller, Beth Wilson, and Michelle Zagorski (collectively, "Movants").  Movants respectfully seek entry of an order, substantially in the form attached hereto, confirming that the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).

automatic stay does not apply to the proceeds of certain directors and officers liability insurance policies or, in the alternative, granting immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), so that Movants may receive payments, advances and/or reimbursements of their defense costs and other expenses, consistent with their rights under the policies.

## I.
## PRELIMINARY STATEMENT

1.      By this Motion, Movants seek access to proceeds of directors and officers insurance policies (the "D&O Policies").  Those policies provide urgently-needed coverage for losses, including defense costs, that Movants have incurred, and will continue to incur, in connection with several pending lawsuits and investigations that relate to Movants' service as directors, officers, and employees of Corinthian.  As discussed below, Corinthian – which, along with the other Debtors, does not oppose the relief requested herein – purchased the D&O Policies in order to protect Movants against such claims, and the policies were negotiated to ensure that Movants would have access to policy proceeds in the event that Corinthian or its subsidiaries filed for bankruptcy.  For several years, the primary carrier under the D&O Policies, AIG, was advancing Movants' defense costs in these suits and investigations.  Nevertheless, in light of the Debtors' bankruptcy petitions and resulting automatic stay, AIG has requested that Movants obtain an order from this Court (i) confirming that the proceeds of the D&O Policies are not subject to the automatic stay or, in the alternative, (ii) granting relief from the automatic stay. This Court has granted similar relief in analogous cases, and it should do so here.

2.      *First*, the automatic stay does not apply to the proceeds of the D&O Policies, because those proceeds are not property of the Debtors' estates.  This Court has made clear that, where an insurance policy exclusively covers a debtor's directors and officers, the proceeds of that policy are not property of the debtor's estate.  *See, e.g., In re Downey Fin.*

*Corp*., 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc*., 369 B.R. 805, 811 (Bankr. D. Del. 2007).  Here, while the D&O Policies cover certain claims against the Debtors (such as securities claims), that coverage is subordinate to the coverage for the Movants under the express, unambiguous terms of the policies.  In a case that is on point factually and legally, this Court relied on materially indistinguishable order-of-payment provisions to hold that the proceeds of a directors and officers insurance policy were *not* property of a corporate debtor's estate subject to the automatic stay.  *See Downey*, 428 B.R. at 604-08.  As this Court recognized, a contrary holding would contravene the established principle that bankruptcy should not confer upon a debtor "greater rights in [insurance policy proceeds] than the debtor had before filing for bankruptcy."  *Id*. at 608 (internal quotation marks and citations omitted).

3.      *Second*, and in the alternative, this Court should grant relief from the stay to allow Movants access to the D&O Policy proceeds, consistent with the terms of the policies. Courts in this and other districts have granted such relief where, as here, a policy covers both a corporate debtor and its officers and directors, but the corporate coverage is contractually subordinate to coverage of the individuals.  *See, e.g*., *Downey*, 428 B.R. at 608-12; *In re MF Global Holdings Ltd*., 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012).

4.      This case law recognizes that it would be inequitable to construe the automatic stay to frustrate the ability of directors and officers to fund their legal expenses.  Here, absent relief from the stay (or an order confirming that the stay does not apply), Movants are at risk of significant and potentially irreparable harm because Movants rely on the proceeds of the D&O Policies to pay for their legal expenses and related costs in connection with the lawsuits and investigations discussed above (and summarized in greater detail below).

5.      There is more than money at stake here.  The Securities and Exchange Commission ("SEC") is currently conducting an investigation of Corinthian that could give rise to claims against one or more Movants.  Indeed, the SEC recently asked some of the Movants to execute agreements to toll the statute of limitations on claims that it may bring against them based on its investigation.  More immediately, the SEC – which has already taken testimony from certain Movants – is seeking testimony from several Movants (all current or former officers of Corinthian) as early as next month.  In addition, the United States Attorney's Office ("USAO") in the Central District of California is conducting a criminal investigation of Corinthian, and federal prosecutors have subpoenaed former Corinthian employees to testify before a grand jury.  In short, the stakes for the Movants – and the potential prejudice they face if they cannot fund their defense costs – could not be higher.

6.      By contrast, Corinthian will not suffer any prejudice from granting the requested stay relief.  Even if the stay remained in place, the Debtors could not receive any of the proceeds of the D&O Policies.  As noted above, any interest that the Debtors might have in the proceeds of the D&O Policies is subordinate to that of Movants.  Because the balance of hardships weighs decisively in Movants' favor, relief from the stay is warranted.

## II.
## JURISDICTION

7.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.

8.      This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.

9.      The statutory predicate for the relief requested herein is section 362 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

### III.
### FACTUAL BACKGROUND

**A.      The Bankruptcy Proceedings**

10.      On May 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the District of Delaware (the "Court").  *See* Chapter 11 Voluntary Petitions [Docket No. 1].  No party has sought the appointment of a trustee or an examiner, and none has been appointed.

**B.      The D&O Policies**

11.      Before the Petition Date, Corinthian purchased the D&O Policies for the benefit of its directors, officers, and employees (collectively, the "Insured Persons").  The D&O Policies are "claims-made" policies that insure against any Loss arising from any Claim against Insured Persons and, in some cases, Corinthian itself that is made (or deemed to be made) during the applicable policy period.[2]  The policies apply over successive one-year periods.  This Motion concerns the policies for the 2010-11 and 2012-13 periods.[3]

12.      Like most directors and officers insurance, the D&O Policies comprise several "layers," with a separate policy for each layer.  The first, or "primary," policy covers Losses up to a specified limit, subject to a retention.  When the primary policy is exhausted, in each policy period, there are at least two excess D&O policies that generally "follow the form"

---

[2]      Capitalized terms, such as "Claim" and "Loss," not defined herein shall have the meaning ascribed to them in the D&O Policies.

[3]      The D&O Policies for 2010-11 and 2012-13 are attached hereto as Exhibit A and Exhibit B, respectively.

of the primary policy – that is, these policies provide coverage on the same terms and conditions as the primary policy, except as otherwise provided in the excess policy.  Because the terms of the policies do not differ across the policy periods in any way relevant to this Motion, Movants refer to the primary policies collectively as the "Primary D&O Policy," and the excess policies collectively as the "Excess D&O Policies."

13.    In each policy period, the Primary Policy provides three types of coverage: (a) "Side A" coverage, which directly covers the Insured Persons for Losses on a covered Claims; (b) "Side B" coverage, which covers Corinthian for any Losses arising from Corinthian's indemnification of an officer, director, or other insured person on a covered Claim; and (c) "Side C" coverage, which covers Corinthian for solely Securities Claims, Derivative Investigation Costs, and certain defense costs in seeking dismissal of derivative claims against an insured.  Because they follow the form of the Primary Policy, the Excess Policies also provide these types of coverage.

14.    While the D&O Policies provide coverage for certain claims against Corinthian and the other Debtors, that coverage is not on equal contractual footing with the coverage afforded to the Insured Persons.  In particular, the Primary D&O Policy includes an order-of-payments clause (the "Order-of-Payment Clause"), which expressly gives priority to Side A coverage over Side B and Side C coverage – meaning that the Insurer must pay covered Losses of all Insured Persons *before* it pays any Losses of the Debtors.  The Order-of-Payments Clause in the 2012-13 policy, for example, provides:

> In the event of **Loss** arising from a covered **Claims(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the **Insurer** shall in all events:
>
> (1) First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage;*

(2) Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the **Limit of Liability** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered in Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3) Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the **Liability Limit** shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund Coverage.*

*See* Ex. B at EX B-8.[4]  The primary policy for the 2010-11 policy period contains a materially identical Order-of-Payments Clause.  *See* Ex. A at EX A-21.

15.     By virtue of the Order-of-Payments Clause, the rights of Insured Persons in the proceeds of the D&O Policies are superior to any rights of the Debtors in the proceeds of the policies.

16.     Subject to certain conditions that are not relevant to this Motion, Movants and other Insured Persons are entitled under the D&O Policies (1) to have legal fees and expenses incurred in the defense of covered Claims advanced to them by the Insurers and (2) to be indemnified for other Losses suffered in connection with covered Claims, including damages, judgments and settlements up to policy limits.

17.     In addition to the D&O Policies, in each policy period, there are one or two additional Side A-only policies (the "Side A-Only Policies"), which provide excess coverage to Insured Persons when and if the Excess D&O Policies are exhausted.[5]  As their name implies, the Side A-Only Policies only provide coverage for the Insured Persons (directors, officers, and employees); they do not provide any coverage for Corinthian or its subsidiaries, and those entities, therefore, have no interest in the proceeds of those policies.

---

[4]     The "Side D" coverage provisions, or "Crisisfund coverage," is not relevant to this Motion.

[5]     The Side A-Only Policies also provide "drop down" coverage when the Insured Persons cannot obtain coverage on an underlying policy for various reasons.

C.    **The Actions**

18.    In the years leading up to the Petition Date, various groups of the Movants have been subjected to a multitude of lawsuits alleging wrongdoing in connection with Corinthian's business activities.  While Corinthian and some of its subsidiaries were named as defendants in these suits as well, all litigation against the Debtors has been stayed as a result of the bankruptcy.  In addition to the lawsuits, Movants require representation in several ongoing criminal and civil investigations that – while putatively concerned with Corinthian's business activities – are clearly aimed at certain Insured Persons, including some of the Movants.

19.    These lawsuits and government investigations (collectively, the "Actions"), as they concern the Movants and other Insured Persons, constitute Claims that, subject to any reservation of rights by the Insurers, are covered under the Side A provisions under the D&O Policies.  Movants have set out below an overview of the Actions, including a summary of Insured Persons who have incurred or are likely to incur covered losses in connection with the Actions, and the policy year, if any, to which the Action has been assigned by AIG, the primary insurer of each policy period.

(i)    **Private Securities and Derivative Actions**

20.    *Karam v. Corinthian et al.*, Case No. 2:10-cv-06523 ("*Karam*").  This is a putative class action against Corinthian and Movants Jack Massimino, Peter C. Waller, Matthew Ouimet, and Kenneth Ord alleging violations of the federal securities laws over the period from October 30, 2007 to August 19, 2010.  The case was filed in the United States District Court for the Central District of California in August 2010.  The district court dismissed the claims with prejudice and subsequently denied a motion for relief from judgment.  An appeal is currently pending in the Ninth Circuit.  AIG has assigned *Karam* to the 2010-11 policy period.

21.     *Erickson v. Corinthian et al.*, Case No. 2:13-cv-07466 ("*Erickson*").  This is a putative class action against Corinthian and Movants Jack Massimino, Robert Owen, and Kenneth Ord, alleging violations of the federal securities laws over the period from February 1, 2011 to October 11, 2013.  The case was filed in the United States District Court for the Southern District of New York on June 20, 2013, and then transferred to the United States District Court for the Central District of California, where it remains pending.  On April 22, 2015, the court denied defendants' motion to dismiss.  AIG has related *Erickson* to *Karam* as a single Claim under the 2010-11 policy.

22.     *Steinberg v. Massimino et. al.*, Case No. 8:13-CV-01797 ("*Steinberg*").  This is a shareholder derivative action alleging claims for breach of fiduciary duty against Movants Jack Massimino, Kenneth Ord, Robert Bosic, Beth Wilson, Paul St. Pierre, Terry Hartshorn, Hank Adler, Robert Lee, Alice Kane, John Dionisio, Linda Skladany, Timothy Sullivan, Sharon Robinson, and Marc Morial.  *Steinberg* was filed on November 14, 2013 in the United States District Court for the Central District of California and, until recently, it was stayed by stipulation of the parties.  The parties recently submitted a proposed stipulation to the court to stay the case for a period of 90 days, or until a party successfully moves to lift the stay, or upon the effective date of a confirmed reorganization plan of Corinthian, whichever occurs first.

23.     AIG has related *Steinberg* to *Karam* as a single Claim under the 2010-11 policy.

(ii)     **SEC Investigation**

24.     Since 2013, the SEC has been conducting an investigation of Corinthian and certain of its officers.  In connection with that investigation, the SEC has subpoenaed

documents from Corinthian and taken testimony from several current and former Corinthian officers, including some of the Movants.  In April of this year, several Movants entered into tolling agreements with the SEC that toll the statute of limitations on any claims that the SEC may bring through August 30, 2015.  The SEC, moreover, has indicated that it will subpoena approximately nine of the Movants to testify in June and July of this year.

25.     AIG has related the SEC investigation to *Karam* as a single Claim first made in the 2010-11 policy period.

(iii)     **California Attorney General Action**

26.     In October 2013, the California Attorney General ("AG") filed suit against Corinthian and several of its subsidiaries in California state court, alleging violations of California securities law and of the California Business and Professions Code.  *See California v. Heald Colleges*, LLC, Case No. CGC-13-434793 (Cal. Sup. Ct., County of San Francisco).  The claims alleging violations of California securities laws are covered claims under the Side C provisions of the D&O Policies, but the other claims are not covered.  While the California AG action did not name any individuals as defendants, Movants and other Insured Persons may incur covered defense costs in connection with the case if it proceeds to discovery.  AIG has related the California AG Action to the 2012-13 policy period.

(iv)     **USAO Investigation**

27.     As noted above, the USAO for the Central District of California is conducting a criminal investigation relating to Corinthian.  On information and belief, the USAO is investigating a wide range of issues, including representations concerning placement rates, graduation rates, transferability of credits, and other matters.  The USAO has subpoenaed at least two former Corinthian employees to testify before a grand jury.

28.     AIG has assigned the USAO investigation to the 2012-13 policy period. Under 2012-13 policies, if the USAO interviews or subpoenas testimony from any Movant as part of its investigation, defense costs associated with such testimony will be reimbursable under the policies.  Ex. B at EX B-6 (providing coverage to Insured Persons of "Pre-Claim Inquiry"); *id*. at EX B-28-29 (definition "Pre-Claim Inquiry" and related costs).  In addition, any Insured Person who is named as a target of the investigation is entitled to advancement of his or her legal expenses and related costs.  *See* Ex. B at EX B-22 (defining "Claim" to include "Insured Persons Investigation"); *id*. at EX B-26 (defining "Insured Person Investigation" to include any criminal investigation of an Insured Person "once the Insured Persons is identified in writing by an "Enforcement Body," which would include the USAO, "as a target of an investigation that may lead to a criminal . . . proceeding").

29.     By contrast, because the USAO investigation is neither a securities nor an indemnification Claim, Corinthian's legal expenses and other costs in connection with the investigation are not covered under the D&O Policies.

(v)     **False Claims Act ("FCA") Suits**

30.     As of the Petition Date, there were four *qui tam* actions against Corinthian pending in federal district courts in California and Georgia, and a fifth pending on appeal before the Ninth Circuit.  *See United States ex rel. Marion v. Heald Colleges*, LLC, Case No. 12-02067 (N.D. Cal.) ("*Marion*"); *United States ex rel. Hays v. Corinthian Colleges, Inc*., Case No. 11-cv-1395 (C.D. Cal.); *United States ex rel. Salazar v. Corinthian Colleges, Inc*., 11-CV-0053 (N.D. Ga.); *United States ex rel. Andrews v. Corinthian Colleges, Inc*., Case No. 11-CV-1675 (C.D. Cal.); *United States ex rel. Lee v. Corinthian Colleges*, No. 13-5570 (9th Cir.).  The plaintiff in one of these lawsuits, *Marion*, has named as defendants the following Movants:  Eeva Deshon,

Barbara Gordon, Terry Rawls, and Karen Rose.

31.     The *Marion* plaintiff's claims against Movants are covered Claims under the D&O Policies.  *See* Ex. A at EX A-6; Ex. B at EX B-6.  By contrast, the claims in *Marion* and the other FCA suits against Corinthian are not covered, because they do not constitute securities or indemnification claims.

**D.**     **The Need for This Motion**

32.     As the above summary of the Actions indicates, Movants face multiple, complex, and high-stakes legal challenges in which they need legal representation.  For several years before the Petition Date, AIG advanced the Movants' defenses costs, including legal fees of counsel, in the Actions, consistent with its obligations under the D&O Policies to pay defenses costs for covered Claims.

33.     The Debtors' bankruptcy filing did not change the Movants' need for these payments any more than it altered their contractual rights to coverage.  While the automatic stay has stayed further litigation against the Debtors, the litigation (including investigations) against the Movants is moving forward unabated.

34.     AIG remains willing to continue advancing Movants' defense costs in the Actions, consistent with the Order-of-Payments Clause and other terms of the D&O Policies.  Before doing so, however, it has requested that Movants obtain confirmation from this Court that such payments will not violate the automatic stay.

**IV.**
**RELIEF REQUESTED**

35.     By this Motion, Movants seek an Order from the Court (i) confirming that the proceeds of the D&O Policies are not property of the estate subject to the automatic stay or,

in the alternative, (ii) granting relief from the automatic stay to allow the Insurers to make payments or advancements of defense costs or other losses to Movants, consistent with the terms and conditions of the D&O Policies.

## V.
## BASIS FOR RELIEF REQEUSTED

**A.    The Automatic Stay Does Not Apply to Proceeds Payable to the Movants From the D&O Policies Because Those Proceeds Are Not Property of the Estates**

36.    This Court has held that, in determining whether the automatic stay applies to the D&O Policy proceeds, the "threshold issue" is whether those proceeds are property of the estate.  *Downey*, 428 B.R. at 602.  "If the proceeds are not property of the estate, then [the Insurers]… would not be violating the automatic stay by paying the [Movants'] defenses costs" and other covered losses.  *Id.*

37.    Whether the policy proceeds are property of the estate, in turn, is "controlled by the language and scope of the [specific] polic[ies] at issue."  *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004).  Specifically, where, as here a "liability insurance policy provides direct coverage to both the debtor and the directors and officers, 'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'"  *Downey*, 428 B.R. at 603 (quoting *In re Allied Digital*, 306 B.R. at 512).

38.    Here, the use of the D&O Policy proceeds to pay Movants' defense costs and other covered losses in the Actions – consistent with the terms of the policies – would not have any adverse effect on the Debtors' estates.  As discussed above, Movants are entitled to coverage under the Side A provisions of the D&O Policies.  Those provisions provide coverage only to Insured Persons, not to Corinthian.  Accordingly, Side A proceeds plainly do not

constitute property of the Debtors' estates.  *See Downey*, 428 B.R. at 602 ("When a [corporate] debtor's liability insurance policy only provides direct coverage to the directors and officers, courts generally hold that the proceeds are not property of the estate."); *see also In re Matter of Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir. 1995) ("[W]hen a debtor corporation owns a liability policy that exclusively covers its directors and officers, . . . the proceeds of that D&O policy are not part of the debtor's bankruptcy estate.").

39.    The potential for coverage of the Debtors under the Side B and C provisions of the D&O Policies does not alter this conclusion.  As noted above, the Side B provisions apply only to the extent that Corinthian actually indemnifies a director or officer for losses on a covered claim.  In several cases, this Court has made clear that held that indemnification coverage does not constitute property of the estate where indemnification is "hypothetical or speculative" and thus, "is no longer protecting the estate's other assets from diminution."  *Downey*, 428 B.R. at 607; *see also World Health Alternatives,* 369 B.R. 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'") (quoting *Allied Digital*, 306 B.R. at 512)).

40.    Here, the likelihood that Corinthian will indemnify Movants or any other Insured Person – and thereby trigger Side B coverage – is extremely remote.  None of the Movants has filed a proof of claim for indemnification against the Debtors.  The Debtors, moreover, have not given any indication that they have the intention, let alone the financial wherewithal, to advance Movants' defense costs (or to otherwise indemnify Movants) going forward.  Because indemnification coverage is speculative at best, the Side B coverage provisions do not give the Debtors a property interest in the proceeds of the D&O Policies.

41.     Finally, while the D&O Policies provide Side C coverage for Securities Claims, under the Order-of-Payments Clause, that coverage is contractually subordinate to Movants' right to coverage under the Side A provisions.  Moreover, all pending securities claims against the Debtors are stayed and are subject to subordination under 11 U.S.C. § 510(b). Accordingly, the Side C coverage provisions, even if they were not contractually subordinated to Side A coverage, are not necessary to protect the assets of the Debtors' estates from diminution, and the Debtors lack a property interest in the proceeds of the D&O Policies.

42.     This Court's decision in *Downey* is squarely on point.  There, former officers and directors of a Chapter 7 debtor moved for an order that the automatic stay did not preclude their access to proceeds of a D&O insurance policy in connection with a securities action that had been filed against them.  *Downey*, 428 B.R. at 598.  Like Corinthian's D&O Policies, the debtor's policy in *Downey* provided for Side A, Side B, and Side C coverage.  *Id*. at 604.  This Court granted the directors' and officers' motion, holding that the policy proceeds were not property of the estate.  *Id*. at 604-08.

43.     In so holding, this Court relied on an order-of-payments clause under which the debtor's interest in the Side B and Side C coverage was "under all circumstances, junior to Coverage A, which provide[d] direct coverage to the [directors and officers]."  *Id*. at 600-01, 608 (noting that the policy preserved "this chain of priority in the event of bankruptcy"). Noting the established principle that bankruptcy should not expand a debtor's rights "against others beyond what rights existed at the commencement of the case[,]" this Court recognized that the order-of-payments clause "provide[d] a clear chain of priority among the three types of coverage[,]" which was not affected by the bankruptcy filing.  *Id*. at 607 (internal quotation marks omitted).  "This is significant[,]" this Court explained, "because were the Court to hold

that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing for bankruptcy.'"  *Id*. at 608 (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc*., 124 F.3d 487, 492 (3d Cir. BAP 1997)).  Thus, the Court concluded that the policy proceeds were "not property of the estate" subject to the automatic stay.  *Id*. at 608.

44.    The same reasoning applies here.  The Order-of-Payments Clause in Corinthian's Primary D&O Policy is materially identical to the order-of-payment clause in the policy at issue in *Downey*.  *Compare Downey*, 428 B.R. at 607-8 *with* Ex. A at EX A-21 and Ex. B at EX B-8.  Outside of bankruptcy, the Debtors' interest in the proceeds of the D&O Policies would be subordinate to the interests of Movants in the Side A coverage.  Thus, if the policy proceeds were deemed property of the Debtors' estates, the Debtors would be granted greater rights in the policy proceeds than they would have had outside of bankruptcy, contrary to established principles of bankruptcy law.  *See Downey*, 428 B.R. at 608.

45.    For the foregoing reasons, the Court should enter an order confirming that the proceeds of the D&O Policies are not property of the Debtors' estates, and thus not subject to the automatic stay, so that Movants may have access to the policy proceeds, consistent with their contractual rights.

**B.    The Court Should, in the Alternative, Grant Relief from the Automatic Stay**

46.    Even if the proceeds of the D&O Policies are subject to the automatic stay, the Court should grant relief from the stay so that the Movants can access the policy proceeds to pay for these defense costs and other covered Losses.  *See Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay).  Courts in this and other Circuits routinely grant such relief.  *See, e.g., MF*

*Global*, 469 B.R. at 192 ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the [director]"); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07-10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor").

47.     Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]"  11 U.S.C. § 362(d)(1).  In considering whether to grant relief from the stay under this provision, the Court should consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor."  *Downey*, 428 B.R. at 609.[6]  As described below, these factors strongly weigh in favor of lifting the automatic stay.

---

[6]  In *Downey*, the court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate.  *Downey*, 428 B.R. at 609.  Movants submit that this factor does not apply here.  If Movants were seeking stay relief to pursue litigation *against* the Debtors, the merits of that litigation would be relevant to whether the automatic stay should be lifted.  *See, e.g.*, *In re Continental Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993).  But Movants do not seek to pursue ligation against the Debtors.  And the relief that Movants do seek – access to the proceeds of the D&O Policies, consistent with their terms – is not contingent on the merits of any litigation claim, but instead follows from the

48.     First, there would not be any prejudice to the estate or to Corinthian from lifting the stay to allow the Insurers to pay their coverage obligations to Movants.  Even if Corinthian's estate is deemed to have an interest in proceeds of the D&O Policies, that interest would not be impaired by lifting the automatic stay because Corinthian's interest is subordinate to the rights of the Movants and other Insured Persons.  *See Laminate*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid.").  Stated simply, Corinthian would not be prejudiced by being held to the terms of its contract.  *See, e.g.*, *In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted).

49.     Second, absent stay relief, the Movants would suffer substantial and potentially irreparable harm.  Without the D&O Policy proceeds, the Movants would not have the resources to pay their attorney's fees and other defense costs in the Actions, thereby undermining their ability to present an effective defense.  The Movants thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (quoting *CyberMedica*, 280 B.R. at 18); *Allied Digital*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").  The risk of prejudice is magnified – and the need for lifting the stay made that much more urgent – by the

---

plain and unambiguous terms of the D&O Policies.

fact that the Actions include the ongoing USAO and SEC investigations.

50.     While Movants, in theory, could seek coverage under the "drop-down" provisions of the Side A-Only Policies in the event that proceeds of the D&O Policies are not available, they should not be forced to choose between depleting those policies – which provide a critical, but limited, source of *excess* coverage above the D&O Policies – and their contractual rights under the Order-of-Payments Clause.

51.     In short, the balance of equities is not a close question here.  Absent stay relief, the Movants face significant and potentially irreparable harm, as they would be deprived of the critical funds that they need – and to which they are unambiguously entitled – to fund their defense of the Actions.  By contrast, Corinthian would not be harmed by lifting the stay because it is not entitled to the proceeds payable to the Movants.

52.     For the foregoing reasons, Movants respectfully request that the Court enter an Order providing that the automatic stay, to the extent applicable, is lifted to allow the Insurers to advance and/or reimburse the defense costs and other Losses of the Movants pursuant to the terms and conditions of the Policies.

# VI.
## NOTICE

53.     Notice of this Motion has been given via United States first class mail or served electronically, to the parties listed on the Master Service List and all parties who have filed a notice of appearance in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002(i).

54.     No previous motion for the relief sought herein has been made by Movants to this or any other court.

**VII.**
**CONCLUSION**

55.     For all the foregoing reasons,  Movants respectfully request that the Court
enter an order:

(1)     Confirming that the proceeds payable under the D&O Policies to
Movants are not subject to the automatic stay, and that the
automatic stay of 11 U.S.C. § 362(a) does not preclude, or subject
to any liability, any of the Insurers from advancing past, present
and/or future defense costs and other Losses incurred by any
Movants in connection with the Actions or any other action or
Claim covered by the D&O Policies, subject to any reservation of
rights by the Insurers;

(2)     Alternatively, granting relief from or modifying the automatic stay
under 11 U.S.C. §362(d)(1), to the extent that it may be deemed
applicable, for all purposes, with regard to the proceeds of the
D&O Policies as to all Movants, and without limiting the
generality of the foregoing, directing that the automatic stay shall
not preclude, or subject to any liability, any of the Insurers for
advancing any past, present or future defense costs or other Loss
incurred by any Movants in connection with the Actions or any
other Claim covered by the D&O Policies, subject to any
reservation of rights by the Insurers;

(3)     Providing that any disputes that may arise out of this Order shall be
subject to the jurisdiction of this Court; and

(4)     Granting Movants any other just and proper relief.

DATED:  May 18, 2015
        Wilmington, Delaware                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                         _____/s/ Matthew R. Koch_____
                                         Robert J. Dehney (No. 3578)
                                         Curtis S. Miller (No. 4583)
                                         Matthew R. Koch (No. 6048)
                                         1201 North Market Street
                                         P.O. Box 1347
                                         Wilmington, Delaware 19899-1347
                                         Telephone: (302) 658-9200
                                         Facsmile: (302) 658-3989
                                         rdehney@mnat.com
                                         cmiller@mnat.com
                                         mkoch@mnat.com

                                         *Attorneys for Hank Adler, Robert Bosic, Michael Brase,
                                         Linda Buchanan, William Buchanan, Nicole Carnagey,
                                         Eeva Deshon, Christian Dieckman, John Dionisio, Anna
                                         Marie Dunlap, John Fioretto, Barbara Gordon, Terry
                                         Hartshorn, Alice Kane, Robert Kenyon, Don King, Robert
                                         Lee, Jack Massimino, David Moore, Marc Morial, Kennet
                                         Ord, Robert Owen, David Poldoian, Terry Rawls, Sharon
                                         Robinson, Karen Rose, Sumi Shrishrimal, Linda Skladany
                                         Paul St. Pierre, Tim Sullivan, Peter Waller, Beth Wilson,
                                         and Michelle Zagorski.*

9165437.1

- 21 -