**ENDORSEMENT#** *12*

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number    *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED
### (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS
### ARISING OUT OF A SECURITIES CLAIM)

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

(1)    The Definition of and all provisions referring to **"No Liability"** are hereby deleted in their entirety.

(2)    Clause 6 **RETENTION CLAUSE** is deleted in its entirety and replaced by the following:

**6.    RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i)     Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;

(ii)    Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii)   Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

(3)    Item 4 of the Declarations is hereby deleted in its entirety and replaced by the following:

| 4 | RETENTION: Not applicable to Non-Indemnifiable Loss | | |
|---|---|---|---|
| 4(a) | Securities Claims: *$1,000,000* | 4(b) | Employment *$1,000,000* Practices Claims: |
| 4(c) | All other Claims:  *$1,000,000* | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
**END 012**

89371 (5/05)

This endorsement, effective *12:01 am*     *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to   *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CONDUCT EXCLUSIONS - FINAL ADJUDICATION**

**(OTHER THAN A COVERAGE PROCEEDING INITIATED BY INSURER)**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
4. **EXCLUSIONS**, paragraphs (a), (b) and (c) are deleted in their entirety and replaced with
the following:

- (a)    arising out of, based upon or attributable to the gaining of any profit or
  advantage to which any final adjudication in an action or proceeding other
  than an action or proceeding initiated by the **Insurer** to determine coverage
  under the policy establishes the **Insured** was not legally entitled;

- (b)    arising out of, based upon or attributable to payments to an **Insured** of any
  remuneration without the previous approval of the stockholders or members
  of an **Organization** if any final adjudication in an action or proceeding other
  than an action or proceeding initiated by the **Insurer** to determine coverage
  under the policy establishes such payment was illegal;

- (c)    arising out of, based upon or attributable to the committing of any deliberate
  criminal or deliberate fraudulent act by the **Insured** if any final adjudication in
  an action or proceeding other than an action or proceeding initiated by the
  **Insurer** to determine coverage under the policy establishes that such
  deliberate criminal or deliberate fraudulent act was committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
103195 (10/09)            *END 13*

EX A - 41

**ENDORSEMENT#** *14*

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 7 (a) AMENDED
### POST POLICY REPORTING WINDOW AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 7 **NOTICE/CLAIM REPORTING PROVISIONS** is hereby amended by deleting subparagraph (a) in its entirety and replacing it with the following:

(a)    An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager, or General Counsel (or equivalent position), first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1)    the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2)    within *45* days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final *45* days of the **Policy Period** or the **Discovery Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 014*

96340 (10/07)                                    EX A - 421

**ENDORSEMENT#** *15*

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number    *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADVANCEMENT OF LOSS AND RIGHT OF DIRECT RECOVERY ENDORSEMENT
### FINAL ADJUDICATION

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1.    Clause 6. **RETENTION CLAUSE** is amended to include the following paragraph at the end of such Clause:

It is further understood and agreed that in the event an **Organization** refuses or is unable to pay **Indemnifiable Loss** due to **Financial Insolvency**, then the **Insurer** shall commence advancing such **Indemnifiable Loss** within the Retention, and shall pay such **Indemnifiable Loss** in excess of the Retention, subject to the other terms, conditions and exclusions of this policy, provided that the **Insurer** shall be entitled to recover the amount of such **Indemnifiable Loss** advanced within the Retention from the **Organization** pursuant to Clause 13. **SUBROGATION AND RIGHT OF DIRECT RECOVERY AGAINST INSUREDS**, as amended herein.

"**Financial Insolvency**" means the: (i) appointment by any state or federal official, agency or court of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate an **Organization**; (ii) the **Organization** becoming a debtor-in-possession pursuant to the United States bankruptcy law; or (iii) a bankruptcy petition is filed by or against the **Organization**, and as to (i), (ii) or (iii), the equivalent status outside the United States of America.

2.    Clause 13. **SUBROGATION** shall be deleted in its entirety and replaced with the following:

13.    **SUBROGATION AND RIGHT OF DIRECT RECOVERY AGAINST INSUREDS**

(a)    In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization**'s and **Insured**'s rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights (including, without limitation, the assertion of indemnification or contribution rights), including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless (i) the **Insurer** is seeking recovery from the **Organization** pursuant to subparagraph (b)(i) of this Clause, or (ii) such **Insured** has been convicted of a deliberate criminal act, or been determined by any final adjudication to have committed a deliberate fraudulent act, or been determined by any final adjudication to have obtained any profit or advantage to which such **Insured** was not legally entitled.

(b)    In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss**, the **Insurer**:

© All rights reserved.
**END 015**

**ENDORSEMENT#** *15*   (continued)

(i)   shall be subrogated to the **Insured Person's** right of recovery from the **Organization**, or in the event of a bankruptcy of the **Organization**, from the debtor-in-possession (or equivalent status outside the United States), of the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Organization** (hereinafter "**Retention Loss**"); and

(ii)   shall have a direct contractual right under the policy to recover from the **Organization**, or in the event of a bankruptcy of the **Organization**, from the debtor-in-possession (or equivalent status outside the United States), the **Retention Loss**. Such direct contractual right of recovery against the **Organization** shall be in addition to and independent of the **Insurer's** subrogation rights pursuant to subparagraph (i) above.

(c)   The **Insurer** shall have a direct contractual right under the policy to recover **Loss** paid under the policy from each and every **Insured**, severally and according to their respective interests, in the event and to the extent that such **Insureds** shall not be entitled under this policy to payment of such **Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 015*

EX A - 44

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number   *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPECIFIC CLAIM EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of Clause 4. **EXCLUSIONS** (d) or (e) of the policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions referred to in items (1) through (11) below; (hereinafter " **Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

### EVENTS

(1)  Conway Investment Club, et al. v. Corinthian Colleges, Inc., et al. , Case No. 2:04-CV-05025-R-CW in the United States District Court, Central District of California;

(2)  Jonathan Collet, et. al. v. David G. Moore, et al. and Frederick Davila, et. al. v. David G. Moore, et al., Lead Case No. 04-CC-07844 (consolidated with Case No. 04-CC-07895) in the Superior Court of the State of California, County of Orange;

(3)  Adrienne L. Travis, v. Rhondes Colleges, Inc., et al ., Case No. 04-CA-1999 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(4)  Michael Satz, v. Rhodes Colleges, Inc et al ., Case No. 04-CA-3954 in the Circuit Court for the Seventeenth Judicial Circuit of the State of Florida;

(5)  Jennifer Baker, et al. v. Corinthian Colleges, Inc., et al ., Case No. 04-CA-4116 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(6)  Alan Alvarez, et al. v. Rhodes Colleges, Inc., et al.,  Case No. 04-CA-11323 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(7)  Nancy Tsai, et al. v. Corinthian Colleges, Inc., et al. , Case No. BC326573 in the Superior Court of the State of California, County of Los Angeles;

(8)  (Alisa Kaputikyan v. Bryman College, et al. , Case No. SC084791 in the Superior Court of the State of California, County of Los Angeles;

This endorsement, effective  12:01 am      March 31, 2010       forms a part of
policy number   01-691-05-30
issued to   CORINTHIAN COLLEGES INC

by     National Union Fire Insurance Company of Pittsburgh, Pa.

- (9)  Litigation served upon the Organization on February 4, 2005, and brought by twenty-four current or former medical assisting students from the Organization's National Institute of Technology campus in Long Beach, California, as referenced in the Organization's Form 10-Q dated February 9, 2005;

- (10)  SEC informal inquiry of the Organization commenced by September 16, 2004 notification from SEC;

- (11)  Inquiry by the California Attorney General's Office, including request by the Office that the Organization provide documentation regarding three of the Organization's California Bryman Colleges and certain other general Organization policies and procedures, as referenced in the Organization's Form 10-Q dated February 9, 2005;

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with:

- (A)  any restatement, retraction, amendment or revision of in part or in whole:

  - (i)  any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports);

  resulting from, arising out, based upon or attributable to any **Event** or the resolution of said **Events**; and

- (B)  any **Claim** alleging, arising out of, based upon, attributable to or in any way related to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an " **Interrelated Wrongful Act** " means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in any **Event(s)**.

EX A - 46

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number    *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is understood and agreed that in the event a Claim is excluded pursuant to this
endorsement, then such Claim shall be deemed to be noticed to the Insurer pursuant to an
in satisfaction of Clause 7 (b) of Policy No. 931-86-09 issued to the Named Entity, subject
to all terms conditions and conditions of such policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 16*

**ENDORSEMENT#** *17*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SEVERABILITY OF THE APPLICATION ENDORSEMENT WITH ADVANCEMENT
(FULL INDIVIDUAL SEVERABILITY; TOP 2 ORGANIZATION POSITIONS IMPUTED TO
ORGANIZATION; NON-RESCINDABLE A SIDE COVER)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

**1.   SIDE A NON-RESCINDABLE**

Solely with respect to any **Loss** of any **Insured Person** under either COVERAGE A or
COVERAGE C of the policy, under no circumstances shall the coverage provided by
this policy be deemed void, whether by rescission or otherwise, but such coverage
will be subject to all other terms, conditions and exclusions of the policy.

**2.   ADVANCEMENT**

Solely with respect to this endorsement, the **Insurer** agrees to advance payments of
**Loss** unless and until an order by a court of competent jurisdiction provides either
that such advancement is not required or that coverage is void *ab initio*, subject to
the condition that such advance payments by the **Insurer** shall be repaid to the
**Insurer** by the **Organization**, severally according to their respective interests, as
soon as reasonably practicable after an order provides that such advancement is
not required or that coverage is void *ab initio*. Clause 17, Alternative Dispute
Resolution Process, of the policy shall not apply to this paragraph.

**3.   SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon
the statements, warranties and representations contained in the **Application** as
being accurate and complete. All such statements, warranties and representations
are the basis for this policy and are to be considered as incorporated into this
policy.

The **Insureds** agree that in the event that the statements, warranties and
representations contained in the **Application** are not accurate and complete and
materially affect either the acceptance of the risk or the hazard assumed by the
**Insurer** under the policy, then this policy shall be void *ab initio* solely with respect to
any of the following **Insureds**:

(1)   an **Organization**, under Clause 1. Insuring Agreement, COVERAGE B(ii), to the
extent it indemnifies any **Insured Person** who knew as of the inception date
of the **Policy Period**, the facts that were not accurately and completely
disclosed, and

(2)   an **Organization**, under Clause 1. Insuring Agreement, COVERAGE B(i), if any
past or present chief executive officer or chief financial officer of the
**Organization** knew as of the inception date of the **Policy Period**, the facts that
were not accurately and completely disclosed in the **Application**,

whether or not such **Insured Person** knew that such facts were not accurately and
completely disclosed in the **Application**.

◊ All rights reserved.
*END 017*

99637 (7/08)                                                         EX A 1-48

**ENDORSEMENT#** *17*   (continued)

For purposes of this endorsement, the **Application** will be construed as a separate application for coverage by each **Insured Person**, and the knowledge of an **Insured Person** shall not be imputed to any other **Insured Person**.

It is understood and agreed that this endorsement supersedes any inconsistent language contained in the **Application**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 017*

This endorsement, effective *12:01 am*      *March 31, 2010*      forms a part of
policy number   *01-691-05-30*
issued to      *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
EXCLUSIONS, paragraph(i) is deleted in its entirety and replaced with the following:

(i)   which is brought by or on behalf of an **Organization** or any **Insured Person**, other
      than an **Employee** of an **Organization**; or which is brought by any security holder
      or member of an **Organization**, whether directly or derivatively, unless such
      security holder's or member's **Claim** is instigated and continued totally
      independent of, and totally without the solicitation of, or assistance of, or active
      participation of, or intervention of, any **Executive** of an **Organization** or any
      **Organization**; provided, however, this exclusion shall not apply to:

      (1)   any **Claim** brought by an **Insured Person** in the form of a cross-claim or
            third-party claim for contribution or indemnity which is part of, and results
            directly from, a **Claim** that is covered by this policy;

      (2)   any **Employment Practices Claim** brought by an **Insured Person,** other than
            an **Insured Person** who is or was a member of the Board of Directors (or
            equivalent governing body) of an **Organization**;

      (3)   in any bankruptcy proceeding by or against an **Organization**, any **Claim**
            brought by the examiner, trustee, receiver, liquidator, rehabilitator or
            creditors' committee (or any assignee thereof) of such **Organization**, if any;

      (4)   any **Claim** brought by any past **Executive** of an **Organization** who has not
            served as a duly elected or appointed director, officer, trustee, governor,
            management committee member, member of the management board,
            General Counsel or Risk Manager (or equivalent position) of or consultant
            for an **Organization** for at least three (3) years prior to such **Claim** being
            first made against any person; or

      (5)   any **Claim** brought by an **Executive** of an **Organization** formed and operating
            in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof,
            provided that such **Claim** is brought and maintained outside the United
            States, Canada or any other common law country (including any territories
            thereof);

      (6)   any **Securities Claim**, provided that such **Securities Claim** is instigated and
            continued totally independent of, and totally without the solicitation of, or
            assistance of, or active participation of, or intervention of, any **Organization**
            or any **Executive** of an **Organization**; provided, however, solely with respect
            to this subsection (6):

This endorsement, effective *12:01 am*      *March 31, 2010*      forms a part of
policy number  *01-691-05-30*
issued to   *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

> (a)  an **Executive**'s engaging in any protected activity specified in 18
> U.S.C. 1514A(a) ("whistleblower" protection pursuant to the
> Sarbanes-Oxley Act of 2002) or any protected activity specified in
> any other "whistleblower" protection pursuant to any similar state,
> local or foreign securities laws; shall not be deemed to trigger this
> exclusion.

Notwithstanding the forgoing exception, this exclusion (i) shall apply where the
actions of any **Executive** includes the filing of any proceeding or voluntarily
testifying, voluntarily participating in or voluntarily assisting (other than de
minimis assistance) in the filing or prosecution of any proceeding against an
Insured relating to any violation of any rule or regulation of the Securities and
Exchange Commission or any similar provision of any federal, state, local or
foreign rule or law relating to fraud against shareholders, other than such actions
in connection with a proceeding that is brought by the Securities and Exchange
Commission, any similar state, local or foreign regulatory body that regulates
securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 18*
EX A - 51

**ENDORSEMENT#** *19*

This endorsement, effective *12:01 am*     *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DOMESTIC PARTNER COVERAGE**

In consideration of the premium charged, it is hereby understood and agreed that such coverage as is afforded by this policy pursuant to Clause 20. **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION** to the lawful spouse of an **Insured Person** under this policy shall also extend to any **"Domestic Partner"** of such **Insured Person**, whether or not such person would be deemed a "spouse" under the applicable law.

**"Domestic Partner"** means any individual person legally recognized as a domestic or civil union partner under: (1) the provisions of any applicable federal, state, or local law; or (2) the provisions of any formal program established by the **Named Entity** or any **Subsidiary**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 019*

91712 (6/07)                                   EX A-521

**ENDORSEMENT#** *20*

This endorsement, effective *12:01 am*       *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SUBSIDIARY - AUTO- SUBSIDIARY PERCENTAGE DECREASED**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 12. **ORGANIZATIONAL CHANGES,** subparagraphs (b)(1) and (b)(2) are hereby
amended by decreasing the automatic **Subsidiary** threshold from *25* % to *15* %.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 020*

83591 (11/03)                        EXA-531

**ENDORSEMENT#** *21*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY EXECUTIVE
### (No Written Request)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 2. **DEFINITIONS**, paragraph (V), **Outside Entity Executive**, is hereby deleted in its entirety and replaced with the following:

(V)    "**Outside Entity Executive**" means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

It is further understood and agreed that, in the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," it is hereby understood and agreed that this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made. In the event no determination is made within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 021*

83555 (11/03)                    EX A - 54

**ENDORSEMENT#** *22*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SECTION 11 OR 12 ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that Clause 2, **DEFINITIONS**, paragraph (p) **"Loss,"** is amended by deleting subparagraph (6) thereof in its entirety and replacing it with the following:

(6)     matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (6), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss and shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

It is further understood and agreed that Clause 4, **EXCLUSIONS** is amended by adding the following at the end thereof:

Notwithstanding anything stated in Clause 4, **EXCLUSIONS** above, Exclusions (a) and (b) shall not apply, in a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 022*

95282 (8/07)                                EX A - 55

This endorsement, effective *12:01 am*      *March 31, 2010*      forms a part of
policy number   *01-691-05-30*
issued to   *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (j) AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4. **EXCLUSIONS**, paragraph (j) is deleted in its entirety and replaced with the following:

(j)     for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**; provided, however, this exclusion shall not apply to:

(1)     any **Claim** brought by any **Executive** of the **Outside Entity** in the form of a cross-claim or third-party claim or other claim for contribution or indemnity which results directly from a **Claim** that is covered by this policy;

(2)     any **Employment Practices Claim** brought by an **Executive** of the **Outside Entity**, other than an **Executive** of the **Outside Entity** who is or was a member of the Board of Directors (or equivalent governing body) of an **Outside Entity**;

(3)     in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Outside Entity**, if any;

(4)     any **Claim** brought by any past **Executive** of an **Outside Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Outside Entity** for at least four (4) years prior to such **Claim** being first made against any person; or

(5)     any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 23*
EX A - 56

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to   *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PUNITIVE DAMAGES

### (OTHER THAN EMPLOYMENT PRACTICES CLAIMS)

In consideration of the premium charged, it is hereby understood and agreed that Definition (p) " **Loss** " is hereby amended by deleting the second paragraph thereof and replacing it with the following:

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages imposed upon an **Insured**. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiplied damages.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 24*
EX A - 57

**ENDORSEMENT#** *25*

This endorsement, effective *12:01 am*   *March 31, 2010*   forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INVESTIGATION COSTS
### FOR DERIVATIVE DEMANDS

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   Clause 1 **INSURING AGREEMENTS** is amended to add the following new insuring agreement:

**COVERAGE E: INVESTIGATION COSTS FOR DERIVATIVE DEMANDS**

This policy shall pay the **Investigation Costs** of the **Organization** arising from an **Investigation** in response to a **Derivative Demand** first made upon the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy.

2.   Clause 5 **LIMIT OF LIABILITY (FOR ALL LOSS-INCLUDING DEFENSE COSTS)** is amended to add the following:

The maximum limit of the **Insurer's** liability for **Investigation Costs** arising from all **Investigations** combined occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be   *$250,000*   . This limit shall be the maximum limit of the **Insurer** under this policy regardless of the number of such **Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Investigations**. Provided, however, that the **Investigation Costs** limit shall be part of and not in addition to the **Limit of Liability** stated in the Declarations of this policy, which shall, in all events, be the maximum liability of the **Insurer** for all **Loss** under this policy.

3.   There shall be no Retention amount applicable to **Investigation Costs**, and the **Insurer** shall pay such **Loss** from first dollar, subject to the other terms, conditions and limitations of this endorsement and this policy.

4.   It shall be the duty of the **Organization** and not the duty of the **Insurer** to conduct, investigate, and evaluate any **Investigation** against its own **Executives**, provided that the **Insurer** shall be entitled to effectively associate in the **Investigation** and in the evaluation and negotiation of any settlement of any such **Investigation**.

5.   Nothing in this endorsement shall be construed to afford coverage under this policy for any **Claim** brought by the **Organization** against one or more of its own **Executives** other than **Investigation Costs** incurred in a covered **Investigation**. Payment of any **Investigation Costs** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

6.   The **Organization** shall be entitled to payment of its covered **Investigation Costs** 90 days after: (i) it has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**, and (ii) such decision has been communicated to the **Complaining Shareholders**. Such payment shall be subject to an undertaking by the **Organization** , in a form acceptable to the **Insurer**, that the **Organization** shall return to the **Insurer** such payment in the event any

◊ All rights reserved.
*END 025*

EX A - 582

**ENDORSEMENT#** *25*   (continued)

**Organization** or **Complaining Shareholders** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

7.   Solely for the coverage extended by this endorsement under Coverage E, the following shall apply:

"**Claim**" shall also mean any **Derivative Demand**.

"**Complaining Shareholder**" means any shareholder or shareholders, other than any **Insured**, that makes a **Derivative Demand**.

"**Derivative Demand**" means a written demand by shareholders upon the board of directors (or equivalent management body) of an **Organization** asking it to bring, on behalf of the **Organization**, a civil proceeding in a court of law against any **Executive** of the **Organization** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts.**

"**Investigation**" means the investigation by the **Organization** or, on behalf of the Organization by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Organization** should bring the civil proceeding demanded in the **Derivative Demand**.

"**Investigation Costs**" means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the **Executives** or **Employees** of the **Organization**) incurred by the **Organization** or its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), incurred solely in connection with an **Investigation**.

"**Loss**" shall also mean **Investigation Costs.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 025*

89386 (3/07)                                          EX A - 59

This endorsement, effective *12:01 am*     *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF EXCLUSIONS

### (TOP 2 IMPUTE TO ORGANIZATION)

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
**EXCLUSIONS** is amended by deleting the last two paragraphs thereof in their entirety and
replacing them with the following:

  For the purpose of determining the applicability of the foregoing Exclusions, except
  for Exclusions 4(d), 4(e) and 4(i): (1) the facts pertaining to and knowledge
  possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2)
  only facts pertaining to and knowledge possessed by any past, present or future
  chief executive officer or chief financial officer (or equivalent position) of an
  **Organization** shall be imputed to an **Organization.**

  This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 26*

This endorsement, effective *12:01 am*      *March 31, 2010*      forms a part of
policy number     *01-691-05-30*
issued to     *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SPECIFIED FILINGS 12 MONTHS BACK**

In consideration of the premium charged, it is hereby understood and agreed as follows:

The definition of " **Application** " is deleted in its entirety and replaced with the following:

" **Application** " means as of the inception of the **Policy Period**:

(1)     each and every signed application, any attachments to such applications, any separate written warranty or representation, or other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer** or any of its affiliates of which this policy is a renewal, replacement or which it succeeds in time (other than public filings by or on behalf of an **Organization** made with the Securities and Exchange Commission (SEC)); and

(2)     each and every public filing by or on behalf of an **Organization** made with the SEC including, but not limited to, the **Organization's** Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the period of time:

    (i)     beginning at the start of the 12 month period immediately preceding the first submission to the **Insurer** in connection with the underwriting of this policy; and

    (ii)     ending at the inception of the **Policy Period**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 27*

**ENDORSEMENT#** *28*

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number    *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXTRADITION COVERAGE**
*(2/2000 Version)*

In consideration of the premium charged, it is understood and agreed that, where permitted by law:

1. **"Claim"** also means any:

   (a)   official request for **Extradition** of any **Insured Person**; or

   (b)   the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

2. **"Defense Costs"** also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Insured Person** lawfully:

   (a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

   (b)   appealing any order or other grant of **Extradition** of that **Insured Person**.

3. **"Extradition"** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4. Clause 9 does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 028*

91490 (8/06)                                   EX A - 621

**ENDORSEMENT# *29***

This endorsement, effective *12:01 am*      *March 31, 2010*      forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### POLLUTION EXCLUSION EXCEPTION
### FOR SECURITIES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that Exclusion (k) of the policy shall not apply to **Indemnifiable Loss** arising from a **Securities Claim**, other than **Indemnifiable Loss** constituting **Cleanup Costs** (as defined in Exclusion (k)), provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured** or the **Organization**.

### DEFINITIONS

For the purpose of this endorsement the following definitions are hereby added to the policy:

(1)    **"Cleanup"** means to test for, monitor, clean up, remove, contain, treat, neutralize, detoxify or assess the effects of **Pollutants**.

(2)    **"Continuity Date"** means *July 1, 1995*       .

(3)    **"Environmental Audit"** means the process by which a site is reviewed to determine the presence of **Pollutants** in the land, the atmosphere or any watercourse or body of water (including ground water and surface water) through the use of: (i) investigative and other reports; (ii) a physical inspection of the site; (iii) interviews with persons at the site and otherwise; (iv) a review of the regulatory history and a review of the prior use of the site. Any audit which would fall into the category of a "Phrase I Audit" as that term is commonly used in the industry shall be automatically considered an **"Environmental Audit"** for the purposes of this policy.

(4)    **"Governmental Authority"** means any federal, state or local authority, agency or body in the United States of America, its territories or possessions or any political subdivision thereof, including any sovereign nation within the geographical confines of the United States of America, other than the Securities and Exchange Commission, Commodities Futures Trading Commission or any other authority which regulates securities or commodities markets.

(5)    **"Pollution Condition"** means the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** into or upon, or the presence of **Pollutants** in or upon, the land, the atmosphere or any watercourse or body of water.

(6)    **"Potentially Liable Party"** means a person or entity legally liable for **Cleanup** and/or **Cleanup Costs**.

### EXCLUSIONS

As respects the coverage provided by this endorsement, the **Insurer** shall also not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(1)    arising as a result of liability of others for a **Pollution Condition** assumed by the **Organization** or any **Insured** under any oral or written contract or agreement,

◊ All rights reserved.
*END 029*

89421 (6/05)                                    EX A - 63

**ENDORSEMENT#** *29*   (continued)

unless such liability would attach to the **Insured** in the absence of such contract or agreement;

(2)   alleging, arising out of, based upon or attributable to: (1) asbestos or asbestos-containing materials, or (2) acid rain conditions;

(3)   alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

    (a)   any **Wrongful Act** occurring or **Pollution Condition** existing prior to the **Continuity Date** if as of the **Continuity Date**, the **Organization**, an **Insured** or any **Employee** of the **Organization** with managerial responsibilities over environmental affairs, control or compliance, knew or could reasonably have foreseen that such **Pollution Condition** or **Wrongful Act** could give rise to a **Claim** under this policy;

    (b)   any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was listed on the United States Environmental Protection Agency's Comprehensive Environment Response Compensation and Liability Information System or final or proposed National Priorities List or any similar system or list maintained by a **Governmental Authority;**

    (c)   any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was the subject of a direction, request or claim by any **Governmental Authority** or any other person or entity to investigate a **Pollution Condition**, or for **Cleanup Costs;**

    (d)   any **Pollution Condition** at or originating from a site any part of which, on or before the **Continuity Date**, was the subject of a notification to the **Organization** or any **Executive** or **Employee** thereof by a **Governmental Authority** or any other person or entity that the **Organization** or any **Insured** is or may be a **Potentially Liable Party;**

(4)   for **Cleanup** of **Pollutants** or to recover **Cleanup Costs**, or for injury from oral or written publication of a libel or slander or of other defamatory or disparaging material or of material that violates a person's right of privacy;

(5)   arising out of, based upon or attributable to the committing in fact by the **Organization**, an **Organization** or any **Employee** of the **Organization** with managerial responsibilities over environmental affairs, control or compliance, of any intentional, knowing, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any **Governmental Authority;**

(6)   alleging, arising out of, based upon or attributable to any **Pollution Condition** at or originating from a site the **Organization** acquired, whether by direct purchase or by exercising control over, after October 17, 1986 and prior to the **Continuity Date**, if prior to such acquisition, lease or commencement of exercise of control no **Environmental Audit** of such site was performed by or on behalf of the **Organization**; or

(7)   alleging, arising out of, based upon or attributable to any **Pollution Condition** at or originating from a site the **Organization** acquired (whether by direct purchase or by purchase of the controlling stock of another **Organization**), leased, or commenced exercising control over, after the **Continuity Date** if as of the date of acquisition, lease or commencement of exercise of control, the **Organization**, an **Insured** or any **Employee** of the **Organization** with managerial responsibilities over environmental

◊ All rights reserved.
*END 029*

**ENDORSEMENT#** *29*   (continued)

affairs, control or compliance, knew or should have known of the existence of a **Pollution Condition** existing with respect to such site; provided, however, that this exclusion shall not apply in the event the **Insurer** has added such site to this policy by written endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 029*

89421 (6/05)                                     Page 3 of 3

**ENDORSEMENT#** *30*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 21 - DELETE MATERIALITY

In consideration of the premium charged, it is hereby understood and agreed that Clause
21. **RENEWAL APPLICATION PROCEDURE** is deleted in its entirety and replaced with the
following:

21.   **RENEWAL APPLICATION PROCEDURE**

If this policy is a renewal of, a replacement of, or succeeds in time any policy
(providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in
granting coverage under this policy it is agreed that the **Insurer** has relied upon the
**Application** as being accurate and complete in underwriting this policy. This Clause
21 together with the **Application** constitute the complete **Application** that is the
basis of this policy and form a part hereof. No written renewal application form
need be completed by the **Named Entity** in order to receive a renewal quote from
the **Insurer**, although the **Insurer** reserves the right to require specific information
upon renewal.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◇ All rights reserved.
**END 030**

96347 (10/07)                                     EXA-661

This endorsement, effective *12:01 am*        *March 31, 2010*              forms a part of
policy number   *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFINITION OF EMPLOYEE AMENDED

In consideration of the premium charged it is hereby understood  and agreed that Clause 2.
DEFINITIONS, paragraph (g), Definition of **"Employee"** is amended by adding the following
at the end thereof:

> An individual who is leased to the  **Organization** or any other individual  who is an
> independent contractor,  volunteer or intern for the  **Organization** shall also be an
> **Employee** of the **Organization.**    The **Organization** will be conclusively  deemed to
> have indemnified such  individuals to the  maximum extent  that the  **Organization** is
> permitted or required pursuant to  law or contract or  the charter, bylaws, operating
> agreement or similar  documents of an  **Organization** (which are  hereby deemed  to
> adopt the broadest provisions of the law which determined or defines such rights of
> indemnity). The  **Organization** hereby agrees to  indemnify such  individuals to the
> fullest extent permitted  by law including  the making  in good faith  of any required
> application for court approval.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 31*
EX A - 67

**ENDORSEMENT#** *32*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CLAIM DEFINITION AMENDED- WELLS NOTICE**

In consideration of the premium charged, it is hereby understood and agreed that in
Clause 2. **DEFINITIONS**, paragraph (b), "**Claim**," subparagraph (3) is deleted in its entirety
and replaced with the following:

  (3)   a civil, criminal, administrative or regulatory investigation of an **Insured**
        **Person**:

        (i)   once such **Insured Person** is identified in writing by such investigating
              authority as a person against whom a proceeding described in Definition
              (b)(2) may be commenced; or

        (ii)  in the case of an investigation by the SEC or a similar state or foreign
              government authority, after:

              1.   the service of a subpoena upon the **Insured Person**; or

              2.   once the **Insured Person** is identified in a written "Wells" or other
                   notice from the SEC or a similar state or foreign government
                   authority that describes actual or alleged violations of securities or
                   other laws by such person.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 032*

98913 (4/08)                                              EX A - 68

**ENDORSEMENT#** *33*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LIBERALIZATION CLAUSE**

In consideration of the premium charged, it is hereby understood and agreed that the
following clause shall be added to the policy:

**Liberalization Clause**

In the event that the **Insurer** shall begin selling on an admitted basis in the state
indicated in Item 1 of the Declarations, either: (1) a new Public Company Executives and
Organization Liability primary policy form sold as a replacement of or alternative to this
"2/2000" form; or (2) an enhancement of coverage endorsement to this policy form, which
is to be made available to all **Insureds** and for which no additional premium is required,
then the **Named Entity** shall have the right to such new policy or such new coverage
enhancement endorsement subject to all underwriting information or particulars as the
**Insurer** may require for such new policy or enhanced coverage.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 033*

98920 (4/08)                          EX A - 69

This endorsement, effective  *12:01 am*     *March 31, 2010*      forms a part of
policy number    *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## WORLDWIDE EXTENSION CLAUSE AMENDED
## (DEFINITION OF FOREIGN POLICY AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

1.    Clause 2. **DEFINITIONS**, is amended by deleting the Definition of "Foreign Policy" in its entirety and replacing it with the following:

"**Foreign Policy**" means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "**Foreign Policy**" means the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any other company of AIG in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

2.    Clause 3. **WORLDWIDE EXTENSION** is deleted in its entirety and replaced with the following:

### WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** approved by AIG to be sold within such **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy; provided that if more than one such policy exists, then the standard basic policy form most recently offered for sale for comparable risks by the **Insurer** or any other company of AIG in such **Foreign Jurisdiction**, that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

*END 34*EX A - 70

This endorsement, effective  *12:01 am*       *March 31, 2010*       forms a part of
policy number   *01-691-05-30*
issued to    *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

All premiums, limits, retentions, **Loss** and other amounts under this Policy are
expressed and payable in the currency of the United States of America. If judgment
is rendered, settlement is denominated or other elements of  **Loss** are stated or
incurred in a currency other than United States of America dollars, payment of
covered **Loss** due under this policy (subject to the terms, conditions and limitations
of this policy) will be made either in such other currency (at the option of the
**Insurer** and if agreeable to the **Named Entity**) or, in United States of America
dollars, at the rate of exchange published in  The Wall Street Journal  on the date the
Insurer's obligation to pay such **Loss** is established (or if not published on such date
the next publication date of  The Wall Street Journal ).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 34*
EX A - 71

**ENDORSEMENT#** *35*

This endorsement, effective *12:01 am*     *March 31, 2010*     forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 035*

This endorsement, effective *12:01 am*     *March 31, 2010*       forms a part of
policy number    *01-691-05-30*
issued to     *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DISCOVERY CLAUSE AMENDED

### ONE YEAR BILATERAL PREMIUM @ 125%
### ALL OTHERS TBD

In consideration of the premium charged, it is hereby understood and agreed that the policy
(and any endorsement amending Clause 10. **DISCOVERY CLAUSE**) is hereby amended to
the extent necessary for the policy to provide the following:

1.    Clause 10. **DISCOVERY CLAUSE** is deleted in its entirety and replaced with the
      following:

      ### 10.   DISCOVERY CLAUSE

      Except as indicated below, if the **Named Entity** shall cancel or the **Named
      Entity** or **Insurer** shall refuse to renew this policy, the **Named Entity** shall
      have the right to a period of up to six years following the effective date of
      such cancellation or nonrenewal (the " **Discovery Period**"), upon payment of
      an " **Additional Premium Amount**" described below in which to give to the
      **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i)
      **Claims** first made against an **Insured**; and (ii) circumstances of which an
      **Organization** or an **Insured** shall become aware, in either case during said
      **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to
      the end of the **Policy Period** and otherwise covered by this policy.

      The **Additional Premium Amount** for: (1) one year shall be 125% of the **Full
      Annual Premium** in the event of nonrenewal by the Insurer, and shall be
      125% of the **Full Annual Premium** in the event of cancellation or nonrenewal
      by the **Named Entity**; and (2) two to six years in an amount as shall be
      determined by the **Insurer** in its sole and absolute discretion. As used herein,
      " **Full Annual Premium**" means the premium level in effect immediately prior
      to the end of the policy period.

      In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity**
      shall have the right to request an offer from the **Insurer** of a **Discovery Period**
      (with respect to **Wrongful Acts** occurring prior to the effective time of the
      **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such
      terms, conditions, exclusions and additional premium as the **Insurer** may
      reasonably decide. In the event of a **Transaction**, the right to a **Discovery
      Period** shall not otherwise exist except as indicated in this paragraph.

This endorsement, effective *12:01 am*     *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to     *CORINTHIAN COLLEGES INC*


by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

> The **Discovery Period** is not cancelable and the additional premium charged
> shall be fully earned at inception.  This Clause 10 shall not apply to any
> cancellation resulting from non-payment of premium.  The rights contained in
> this Clause 10 shall terminate unless written notice of election of a
> **Discovery Period** together with any additional premium due is received by the
> **Insurer** no later than thirty (30) days subsequent to the effective date of the
> nonrenewal or **Transaction**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 36*
EX A - 74

**ENDORSEMENT#** *37*

This endorsement, effective *12:01 am*    *March 31, 2010*    forms a part of
policy number    *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT SECURITIES CLAIM EXCEPTION

In consideration of the premium charged, it is hereby understood and agreed that Clause 4. **EXCLUSIONS**, paragraph (h) is deleted in its entirety and replaced with the following:

(h)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to a **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

® All rights reserved.
*END 037*

**ENDORSEMENT#** *38*

This endorsement, effective *12:01 am*     *March 31, 2010*        forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CANCELLATION AMENDATORY
### (RETURN PRO RATA)

Wherever used herein: (1) "Policy" means the policy or bond to which this endorsement or rider is made part of; (2) "Insurer" means the "Insurer," "Underwriter," "Company" or other name specifically ascribed in this Policy as the insurance company or underwriter for this Policy; (3) "Company" means the "Named Entity," "Named Corporation," Named Organization," "Named Sponsor," "Named Insured," "First Named Insured," "Insured's Representative," "Policyholder" or equivalent term stated in Item 1 of the Declarations; and (4) "Period" means the "Policy Period," "Bond Period" or equivalent term stated in the Declarations.

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding anything to the contrary in any CANCELLATION or TERMINATION clause of this Policy (and any endorsement or rider amending such cancellation or termination clause, including but not limited to any state cancellation/non-renewal amendatory attached to this policy), if this Policy shall be canceled by the Company, the Insurer shall return to the Company the unearned pro rata proportion of the premium as of the effective date of cancellation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
**END 038**

101036 (4/09)                                    EX A - 76
Page 1 of 1

**ENDORSEMENT#** *39*

This endorsement, effective *12:01 am*      *March 31, 2010*                forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 75010 | 02/00 | DO0200 ADMITTED - DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 75011 | 02/00 | DO0200 ADMITTED - POLICY |
| 75013 | 02/00 | APPENDIX B CRISISFUND |
|  | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
|  |  | STATE AMENDATORY INCONSISTENT |
| 90143 | 12/05 | CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT |
| 83550 | 11/03 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
|  |  | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION |
| 90496 | 03/08 | EXCLUSION (M) AMENDED (FLSA) |
|  |  | PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS |
| 96344 | 10/07 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
|  |  | ADDITION TO TERM DIRECTORS OR OFFICERS |
|  |  | DEFINITION OF INSURED PERSON (TRUSTEES) |
| 89371 | 05/05 | "NO LIABILITY" PROVISION DELETED (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS ARISING OUT OF A SECURITIES CLAIM) |
| 103195 | 10/09 | CONDUCT EXCLUSIONS - FINAL ADJUDICATION |
| 96340 | 10/07 | CLAUSE 7 (A) AMENDED POST POLICY REPORTING WINDOW AMENDED |
| 97892 | 04/08 | ADVANCEMENT OF LOSS AND RIGHT OF RECOVERY ENDORSEMENT - FINAL ADJUDICATION |
|  |  | SPECIFIC CLAIM EXCLUSION |

*END 039*
EX A - 77

## ENDORSEMENT# *39*

This endorsement, effective *12:01 am*   *March 31, 2010*   forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 99637 | 07/08 | SEVERABILITY OF THE APPLICATION ENDORSEMENT WITH ADVANCEMENT (FULL INDIVIDUAL SEVERABILITY; TOP 2 ORGANIZATION POSITIONS IMPUTED TO ORGANIZATION; NON-RESCINABLE A SIDE COVER) |
| | | INSURED V. INSURED EXCLUSION AMENDED |
| 91712 | 06/07 | DOMESTIC PARTNER COVERAGE |
| 83591 | 11/03 | SUBSIDIARY - AUTO-SUBSIDIARY PERCENTAGE DECREASED |
| 83555 | 11/03 | OUTSIDE ENTITY EXECUTIVE (NO WRITTEN REQUEST) |
| 95282 | 08/07 | SECTION 11 OR 12 ENDORSEMENT |
| | | EXCLUSION (J) AMENDATORY ENDORSEMENT |
| | | PUNITIVE DAMAGES |
| 89386 | 03/07 | INVESTIGATION COSTS FOR DERIVATIVE DEMANDS |
| | | SEVERABILITY OF EXCLUSIONS |
| | | SPECIFIED FILINGS 12 MONTHS BACK |
| 91490 | 08/06 | EXTRADITION COVERAGE |
| 89421 | 06/05 | POLLUTION EXCLUSION EXCEPTION FOR SECURITIES CLAIMS |
| 96347 | 10/07 | CLAUSE 21 - DELETE MATERIALITY |
| | | DEFINITION OF EMPLOYEE AMENDED |
| 98913 | 04/08 | CLAIM DEFINITION AMENDED - WELLS NOTICE |
| 98920 | 04/08 | LIBERALIZATION CLAUSE |
| | | WORLDWIDE EXTENSION CLAUSE AMENDED |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| | | DISCOVERY CLAUSE AMENDED |
| 97888 | 04/08 | ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT SECURITIES CLAIM EXCEPTION |

**ENDORSEMENT#** *39*

This endorsement, effective *12:01 am*        *March 31, 2010*              forms a part of
policy number   *01-691-05-30*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 101036 | 04/09 | CANCELLATION AMENDATORY (RETURN PRO RATA) |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

POLICYHOLDER NOTICE
REGARDING
E- DISCOVERY CONSULTANT SERVICES

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)   "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b)   "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)   "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d)   "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1.   assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2.   assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3.   serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4.   such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

The list of approved E- Consultant Firms is accessible through our online directory at http://www.chartisinsurance.com/panelcounseldirectory.   To access the applicable online E- Consultant Firm Directory, please go to the website and click on the "e- Consultant Panel Members" link.

References in this policy to the list of E- Consultant Firms or related appendices are deemed amended to refer to the applicable online E- Consultant Firm Directory at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

◎ All rights reserved.

97886 (4/08)                                    EX A¹- 80