# **<u>EXHIBIT B</u>**



## National Union Fire Insurance Company of Pittsburgh, Pa.®

*A capital stock company*
(the "Insurer")

**POLICY NUMBER:** *01-708-73-53*          **REPLACEMENT OF POLICY NUMBER:** *01-658-84-43*

# Executive Edge®

### Broad Form Management Liability Insurance Policy

---

NOTICES: This policy provides claims-made coverage. Such coverage is generally limited to liability for (i) **Claims** first made against **Insureds**, (ii) **Inquiries** that an **Insured Person** first received, and (iii) **Crises** first occurring, in each case, during the **Policy Period** or, if applicable, the **Discovery Period**. Coverage under this policy is conditioned upon notice being timely provided to the **Insurer** as required (see the Notice and Reporting clause for details). Covered **Defense Costs, Pre-Claim Inquiry Costs** and **Derivative Investigation Costs** shall reduce the **Limits of Liability** available to pay judgments or settlements, and shall be applied against the retention amount. The **Insurer** does not assume any duty to defend. Please read this policy carefully and review its coverage with your insurance agent or broker.

---

## DECLARATIONS

**1.**  **NAMED ENTITY:**          *CORINTHIAN COLLEGES, INC.*

   **Named Entity Address:**     *6 HUTTON CENTRE DRIVE*
   *SUITE 400*
   *SANTA ANA, CA 92707*

   **State of Formation:**       *Delaware*

**2.**  **POLICY PERIOD:**     From: *March 31, 2012*          To: *March 31, 2013*

   The Policy Period incepts and expires as of 12:01 A.M. at the **Named Entity Address**.

**3.**  **PREMIUM:**                                                    *$416,774*

**4.**  **LIMIT OF LIABILITY:**                                          *$10,000,000*

**5.**  RETENTION: Not applicable to: (i) **Non-Indemnifiable Loss**, (ii) **Crisis Loss** or
                (iii)   **Derivative Investigation Costs.**

   (a) **Securities Retention:**                                    *$1,000,000*

   (b) **Employment Practices Retention:**                          *$1,000,000*

   (c) All other **Loss** to which a Retention applies :            *$1,000,000*

   If the **Organizations** fail or refuse to satisfy an applicable Retention, this policy shall advance the **Loss** of an **Insured Person** pursuant to the ADVANCEMENT Clause.

**6.**  **PASSPORT:**   This policy ☐ serves, or ☒ does not serve, as a master Passport policy.

*7037045*

104122 (4/10)          EX B - 1          © Chartis Inc. All rights reserved.

**DECLARATIONS (Continued)**



**7.    INSURER**

    **(a) INSURER ADDRESS:**    *175 Water Street*
                                    *New York, NY 10038-4969*

    **(b) CLAIMS ADDRESS:**    By E-Mail: c-claim@chartisinsurance.com
                               By Mail:  *Chartis, Financial Lines Claims*
                                           *P.O. Box 25947*
                                         *Shawnee Mission, KS 66225*

                          In either case, reference the Policy Number.

**8.    CONTINUITY DATES**

    **(a) Outside Entity Executive** Coverage–The date on which the **Executive** first served
        as an **Outside Entity Executive** of such **Outside Entity.**

    (b) All other coverage:                                       *July 1, 1995*

**9.    TRIA PREMIUM, TAXES AND SURCHARGES**

    (a) TRIA Premium                                          *$2,074*

'TRIA Premium' means the premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002. Amount indicated above is included in **Premium.** A copy of the TRIA disclosure sent with the original quote is attached hereto.

---

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

      **PRESIDENT**                       **AUTHORIZED REPRESENTATIVE**           **SECRETARY**

*ARTHUR J. GALLAGHER & CO INS BROKERS OF CA, INC.*
*505 N BRAND BLVD*
*STE 600*
*GLENDALE, CA 91203-3018*
    *7037045*

104122 (4/10)                                EX B - 2                   © Chartis Inc. All rights reserved.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON- CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury- in concurrence with the Secretary of State, and the Attorney General of the United States- to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *CORINTHIAN COLLEGES, INC.*

Policy Number: *01-708-73-53*
Policy Period Effective Date From: *March 31, 2012*     To: *March 31, 2013*

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from the Chartis companies.  Chartis insurance companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by Chartis insurance companies to brokers and independent agents in the United States by visiting our website at www.chartisinsurance.com/producercompensation  or by calling 1-800-706-3102.

## Executive Edge®
### BROAD FORM MANAGEMENT LIABILITY INSURANCE POLICY

CHARTIS

**1. INSURING AGREEMENTS** — 1
   A. *Insured Person Coverage* — 1
   B. *Indemnification Of Insured Person Coverage* — 1
   C. *Organization Coverage* — 1
   D. *Crisisfund® Coverage* — 1
**2. EXTENSIONS** — 2
   A. *Executive Protection Suite* — 2
   B. *First Dollar E-Discovery Consultant Services* — 2
   C. *Worldwide & Cross-Border* — 2
**3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE** — 3
   A. *Advancement* — 3
   B. *Order of Payments* — 3
   C. *Bankruptcy And Insolvency* — 3
**4. EXCLUSIONS** — 4
**5. RETENTION** — 5
**6. LIMITS OF LIABILITY** — 6
**7. NOTICE AND REPORTING** — 6
**8. DISCOVERY** — 8
**9. DEFENSE AND SETTLEMENT** — 9
   A. *For Claims And Pre-Claim Inquiries* — 8
   B. *Pre-Authorized Securities Defense Attorneys* — 10
   C. *Pre-Approved E-Consultant Firms* — 10
   D. *Allocation* — 10
**10. CHANGES TO INSUREDS** — 10
   A. *Transactions* — 11
   B. *Subsidiary Additions* — 11
   C. *Former Subsidiaries* — 11
   D. *Scope of Subsidiary Coverage* — 11
**11. APPLICATION AND UNDERWRITING** — 12
   A. *Application And Reliance* — 12
   B. *Renewal Application Procedure* — 12
   C. *Insured Person Coverage Non-Rescindable* — 12
   D. *Severability Of The Application* — 12
**12. GENERAL TERMS AND CONDITIONS** — 13
   A. *Payments And Obligations Of Organizations And Others* — 13
   B. *Cancellation* — 14
   C. *Notice And Authority* — 14
   D. *Currency* — 14
   E. *Assignment* — 14
   F. *Disputes* — 15
   G. *Spousal, Domestic Partner And Legal Representative Extension* — 16
   H. *Conformance To Law* — 16
   I. *Headings* — 16
**13. DEFINITIONS** — 17

EX B - 5

© Chartis Inc. All rights reserved.

Executive Edge



In consideration of the payment of the premium, and each of their respective rights and obligations in this policy, the Insureds and the Insurer agree as follows:

## 1. INSURING AGREEMENTS

All coverage granted for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an **Insured**, (ii) **Pre-Claim Inquiries** first received by an **Insured Person**, and (iii) **Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the **Insurer** as required by this policy. Subject to the foregoing and the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### A. Insured Person Coverage

This policy shall pay the **Loss** of any **Insured Person** that no **Organization** has indemnified or paid, and that arises from any:

(1) **Claim** (including any **Insured Person Investigation**) made against such **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; or

(2) **Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**.

### B. Indemnification Of Insured Person Coverage

This policy shall pay the **Loss** of an **Organization** that arises from any:

(1) **Claim** (including any **Insured Person Investigation**) made against any **Insured Person** (including any **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**; and

(2) **Pre-Claim Inquiry**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**;

but only to the extent that such **Organization** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Insured Person**.

### C. Organization Coverage

This policy shall pay the **Loss** of any **Organization**:

(1) arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**;

(2) incurred as **Derivative Investigation Costs**, subject to a $250,000 aggregate sublimit of liability; or

(3) incurred by an **Organization** or on its behalf by any **Executives** of the **Organization** (including through any special committee) as **Defense Costs** in seeking the dismissal of any **Derivative Suit** against an **Insured**.

### D. Crisisfund® Coverage

This policy shall pay the **Crisis Loss** of an **Organization**, up to the $100,000 **CrisisFund®**: provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

© Chartis Inc. All rights reserved.

Executive Edge



## 2. EXTENSIONS

### A. Executive Protection Suite

Loss shall also mean the following items, provided that they arise out of a Claim:

(1) SOX 304 Costs;

(2) Extradition Costs;

(3) UK Corporate Manslaughter Act Defense Costs;

(4) Personal Reputation Expenses, subject to a $100,000 per Executive and a $500,000 aggregate sublimit of liability; and

(5) Asset Protection Costs, subject to a $50,000 per Executive and a $250,000 aggregate sublimit of liability.

### B. First Dollar E-Discovery Consultant Services

For any Securities Claim, no Retention shall apply to the first $25,000 in Defense Costs incurred as E-Discovery Consultant Services.

### C. Worldwide & Cross-Border

**Worldwide Territory**    The coverage afforded by this policy shall apply anywhere in the world.

**Global Liberalization**    For Loss from that portion of any Claim maintained in a Foreign Jurisdiction or to which the law of a Foreign Jurisdiction is applied, the Insurer shall apply the terms and conditions of this policy as amended to include those of the Foreign Policy in the Foreign Jurisdiction that are more favorable to Insureds in the Foreign Jurisdiction. This *Global Liberalization Clause* shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability (primary, excess or sublimits), retentions, other Insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

**Passport Master Policy Program**    If the Passport option box has been checked on the Declarations, then this policy shall act as a master policy and the coverage afforded by this policy shall be provided in conjunction with the Passport foreign underlyer policy issued in each jurisdiction selected by the Named Entity. The specific structure of the coverage provided by this master policy in conjunction with each Passport foreign underlyer policy is set forth in the Passport Structure Appendix attached to this policy.

EX B - 7

© Chartis Inc. All rights reserved.

Executive Edge



## 3. PROTECTIONS WHEN INDEMNIFICATION IS UNAVAILABLE

### A. Advancement

If for any reason (including but not limited to insolvency) an **Organization** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until either (i) an **Organization** has agreed to make such payments, or (ii) the Retention has been satisfied. In no event shall any such advancement by the **Insurer** relieve any **Organization** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person.**

Advancement, payment or indemnification of an **Insured Person** by an **Organization** is deemed "failed" if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request; and advancement, payment or indemnification by an **Organization** is deemed "refused" if an **Organization** gives a written notice of the refusal to the **Insured Person**. Advancement, payment or indemnification of an **Insured Person** by an **Organization** shall only be deemed "failed" or "refused" to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Organization**. Any payment or advancement by the **Insurer** within an applicable Retention shall apply towards the exhaustion of the **Limits of Liability**.

### B. Order Of Payments

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for which payment is due under the provisions of this policy, the **Insurer** shall in all events:

(1)    First, pay all **Loss** covered under Insuring Agreement A. *Insured Person Coverage*;

(2)    Second, only after payment of **Loss** has been made pursuant to subparagraph (1) above and to the extent that any amount of the Limit of Liability shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured Person Coverage*; and

(3)    Lastly, only after payment of **Loss** has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the Limit of Liability shall remain available, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of **Loss** covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund® Coverage*.

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3) above, then the **Insurer** shall, at such time and in such manner as shall be set forth in instructions of the chief executive officer of the **Named Entity**, remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

### C. Bankruptcy And Insolvency

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations under this policy.

In such event, the **Insurer** and each **Organization** and **Insured Person** agree to cooperate in any efforts by the **Insurer** or any **Organization** or **Insured Person** to obtain relief for the benefit of the **Insured Persons** from any stay or injunction applicable to the distribution of the policy proceeds.

EX B - 8                         © Chartis Inc. All rights reserved.

Executive Edge



## 4. EXCLUSIONS

### A. *Full Severability Of Exclusions For Insured Persons*

In determining whether any of the following Exclusions apply, the **Wrongful Acts** of any **Insured Person** shall not be imputed to any other **Insured**. For Insuring Agreement C. *Organization Coverage*, only the **Wrongful Acts** of any chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Organization** shall be imputed to such **Organization**.

### B. *Exclusions*

The **Insurer** shall not be liable to make any payment for **Loss**, other than **Crisis Loss**, in connection with any **Claim** made against an **Insured**:

| | |
|---|---|
| (1) *Conduct* | arising out of, based upon or attributable to any: |

      (a) remuneration, profit or other advantage to which the **Insured** was not legally entitled; or

      (b) deliberate criminal or deliberate fraudulent act by the **Insured**;

if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under the policy;

provided, however:

      (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

      (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

| | |
|---|---|
| (2) *Pending & Prior Litigation* | alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (a) litigation; or (b) administrative or regulatory proceeding or investigation of which any **Insured** had notice; or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; |
| (3) *Personal Injury* | for emotional distress or mental anguish of any person, or for injury from libel, slander, defamation or disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim** or a **Securities Claim**; |
| (4) *Bodily Injury & Property Damage* | for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to **UK Corporate Manslaughter Act Defense Costs** or a **Securities Claim**; |

© Chartis Inc. All rights reserved.

## Executive Edge

CHARTIS

B. *Exclusions* (Continued)

(5) *Entity v. Insured*

that is brought by or on behalf of any **Organization** against any **Insured**, or by any **Outside Entity** against any **Outside Entity Executive**; provided, however, this exclusion shall not apply:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; or

(c) if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), unless the **Claim** is brought, controlled or materially assisted by any **Organization or Outside Entity**, the resulting debtor-in-possession (or foreign equivalent) of the debtor **Organization or Outside Entity** or any **Executive** of the foregoing;

(6) *ERISA*

for any violation of responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA), as amended, or any similar provisions of any state, local or foreign statutory or common law; or

(7) *Compensation & Labor Liability*

for any violation of responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification (WARN) Act, the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Occupational Safety and Health Act (OSHA), or any federal, state, local or foreign law, amendment to a law, or any rule or regulation, that imposes or expands responsibilities, obligations or duties relating to compensation, retirement, benefits, deductions, withholdings, breaks or the workplace; provided, however, this exclusion shall not apply to the extent that a **Claim** is for discrimination, sexual or other harassment, wrongful termination or hostile work environment, or for **Retaliation**, or to the extent that a **Claim** is a **Securities Claim**.

## 5. RETENTION

No Retention is applicable to the following: (i) **Non-Indemnifiable Loss**; (ii) **Derivative Investigation Costs**; or (iii) **Crisis Loss**.

Except as provided above and in the *First Dollar E-Discovery Consultant Services Extension*, for each **Claim** or **Pre-Claim Inquiry**, the **Insurer** shall only be liable for the amount of covered **Loss** arising from such **Claim** or **Pre-Claim Inquiry** which is in excess of the applicable Retention set forth on the Declarations or in any endorsement to this policy. Amounts within the Retention shall remain uninsured.

A single Retention shall apply to **Loss** arising from all **Related Claims** and all **Related Pre-Claim Inquiries**. In the event a **Claim** or **Pre-Claim Inquiry** triggers more than one Retention, then, as to such **Claim** or **Pre-Claim Inquiry**, the highest of such Retentions shall be deemed the Retention applicable to **Loss** arising from such **Claim** or **Pre-Claim Inquiry** unless this policy expressly provides otherwise.

© Chartis Inc. All rights reserved.

Executive Edge



## 6. LIMITS OF LIABILITY

The Limit of Liability stated in the Declarations is the aggregate limit of the Insurer's liability for all Loss (including Defense Costs and Pre-Claim Inquiry Costs) under this policy. The Limit of Liability and all sublimits of liability are collectively referred to in this policy as the "Limits of Liability."

Each aggregate sublimit of liability in this policy is the maximum limit of the Insurer's liability for all Loss under this policy that is subject to that aggregate sublimit of liability. Each per Executive sublimit of liability in this policy is the maximum limit of the Insurer's liability for all Loss of each Executive under this policy that is subject to that per Executive sublimit of liability. All sublimits of liability shall be part of, and not in addition to, the Limit of Liability. Each per Executive sublimit of liability shall be part of, and not in addition to, its corresponding aggregate sublimit of liability.

The Limits of Liability for the Discovery Period shall be part of, and not in addition to, the Limits of Liability for the Policy Period. Further, all Related Claims and all Related Pre-Claim Inquiries that are considered made or received during the Policy Period or Discovery Period pursuant to subparagraph (b) or (c) of Clause 7. *Notice And Reporting*, shall also be subject to the applicable Limits of Liability set forth in this policy.

Defense Costs are not payable by the Insurer in addition to the Limits of Liability. Defense Costs are part of Loss and as such are subject to the Limits of Liability for Loss.

## 7. NOTICE AND REPORTING

Notice hereunder shall be given in writing to the Insurer at the Claims Address indicated in the Declarations. If mailed or transmitted by electronic mail, the date of such mailing or transmission shall constitute the date that such notice was given and proof of mailing or transmission shall be sufficient proof of notice.

(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis*

An Organization or an Insured shall, as a condition precedent to the obligations of the Insurer under this policy:

(1) notify the Insurer in writing of a Claim made against an Insured or a Crisis; or

(2) if an Insured elects to seek coverage for Pre-Claim Inquiry Costs in connection with any Pre-Claim Inquiry, notify the Insurer in writing of that Pre-Claim Inquiry;

as soon as practicable after (i) the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim or Pre-Claim Inquiry; or (ii) the Crisis commences. In all such events, notification must be provided no later than 60 days after the end of the Policy Period or the Discovery Period (if applicable).

EX B - 11

© Chartis Inc. All rights reserved.

**Executive Edge**



<table>
<tr>
<td valign="top">

(b)  *Relation Back to the First Reported Claim or Pre-Claim Inquiry*

</td>
<td>

Solely for the purpose of establishing whether any subsequent Related Claim was first made or a Related Pre-Claim Inquiry was first received during the Policy Period or Discovery Period (if applicable), if during any such period:

(1) a Claim was first made and reported in accordance with Clause 7(a) above, then any Related Claim that is subsequently made against an Insured and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time that such previously reported Claim was first made; and

(2) a Pre-Claim Inquiry was actually first received by an Insured Person and reported in accordance with Clause 7(a) above, then:

   (i) any Related Pre-Claim Inquiry that is reported in accordance with Clause 7(a) above shall be deemed to be a Pre-Claim Inquiry first received at the time that such previously reported Pre-Claim Inquiry was first received by an Insured Person; and

   (ii) any subsequent Related Claim that is reported in accordance with Clause 7(a) above shall be deemed to be a Claim first made at the time that such previously reported Pre-Claim Inquiry was first received by an Insured Person.

</td>
</tr>
</table>

With respect to any subsequent Related Pre-Claim Inquiry, this policy shall not cover Loss incurred before such subsequent Related Pre-Claim Inquiry is actually received by an Insured Person, and with respect to any subsequent Related Claim, this policy shall not cover Loss incurred before such subsequent Related Claim is actually made against an Insured. Claims actually first made or deemed first made prior to the inception date of this policy, Pre-Claim Inquiries first received or deemed first received by an Insured Person prior to the inception date of this policy, and Claims or Pre-Claim Inquiries arising out of any circumstances of which notice has been given under any directors and officers liability insurance policy in force prior to the inception date of this policy, are not covered under this policy.

(c)  *Relation Back to Reported Circumstances Which May Give Rise to a Claim*

If during the Policy Period or Discovery Period (if applicable) an Organization or an Insured Person becomes aware of and notifies the Insurer in writing of circumstances that may give rise to a Claim being made against an Insured and provides details as required below, then any Claim that is subsequently made against an Insured that arises from such circumstances and that is reported in accordance with Clause 7(a) above shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent Claim was first made during the Policy Period or during the Discovery Period (if applicable). Coverage for Loss arising from any such subsequent Claim shall only apply to Loss incurred after that subsequent Claim is actually made against an Insured. In order to be effective, notification of circumstances must specify the facts, circumstances, nature of the alleged Wrongful Act anticipated and reasons for anticipating such Claim, with full particulars as to dates, persons and entities involved; however, notification that includes a copy of an agreement to toll a statute of limitations shall be presumed sufficiently specific as to the potential Claims described within that agreement.

© Chartis Inc. All rights reserved.

**Executive Edge**



## 8. DISCOVERY

*Bilateral Discovery Options*

Except as indicated below, if the Named Entity shall cancel or the Named Entity or the Insurer shall refuse to renew or replace this policy, the Insureds shall have the right to a period of one to six years following the effective date of such cancellation or nonrenewal (the "Discovery Period"), upon payment of the respective "Additional Premium Amount" described below, in which to give to the Insurer written notice pursuant to Clause 7(a) and Clause 7(c) of the policy of: (i) Claims first made against an Insured; (ii) Pre-Claim Inquiries first received by an Insured Person; and (iii) circumstances of which an Organization or an Insured shall become aware, in any such case, during said Discovery Period and solely with respect to a Wrongful Act that occurs prior to the end of the Policy Period.

*Discovery Premium*

The Additional Premium Amount for: (a) one year shall be no more than 125% of the Full Annual Premium; (b) two to six years shall be an amount to be determined by the Insurer. As used herein, "Full Annual Premium" means the premium level in effect immediately prior to the end of the Policy Period.

*Transaction Option*

In the event of a Transaction, the Named Entity shall have the right to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction). The Insurer shall offer such Discovery Period pursuant to such terms, conditions, exclusions and additional premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The Discovery Period is not cancelable and the additional premium charged is non-refundable in whole or in part. This *Discovery Clause* shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this *Discovery Clause* shall terminate unless written notice by any Insured of election of a Discovery Period, together with the additional premium due, is received by the Insurer no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or Transaction.

© Chartis Inc. All rights reserved.

Executive Edge



## 9.  DEFENSE AND SETTLEMENT

### A. For Claims And Pre-Claim Inquiries

(1) *No Duty to Defend or Investigate*

The Insureds shall defend and contest any Claim made against them. The Insurer does not assume any duty to defend or investigate.

(2) *Advancement*

Once the Insurer has received written notice of a Claim or Pre-Claim Inquiry under this policy, it shall advance, excess of any applicable Retention, covered Defense Costs or Pre-Claim Inquiry Costs, respectively, on a current basis, but no later than 90 days after the Insurer has received itemized bills for those Defense Costs or Pre-Claim Inquiry Costs. Such advance payments by the Insurer shall be repaid to the Insurer by each and every Insured Person or Organization, severally according to their respective interests, in the event and to the extent that any such Insured Person or Organization shall not be entitled under this policy to payment of such Loss.

(3) *Claims Participation and Cooperation*

The Insurer shall have the right, but not the obligation, to fully and effectively associate with each and every Organization and Insured Person in the defense and prosecution of any Claim or Pre-Claim Inquiry that involves, or appears reasonably likely to involve, the Insurer, including, but not limited to, negotiating a settlement. Each and every Organization and Insured Person shall give the Insurer full cooperation and such information as it may reasonably require.

The failure of any Insured Person to give the Insurer cooperation and information as required in the preceding paragraph shall not impair the rights of any other Insured Person under this policy.

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any Defense Costs or Pre-Claim Inquiry Costs, without the prior written consent of the Insurer. Such consent shall not be unreasonably withheld.

(4) *Full Settlement Within Retention/ Consent Waived*

If all Insured defendants are able to dispose of all Claims and/or Pre-Claim Inquiries which are subject to one Retention (inclusive of Defense Costs) for an amount not exceeding the Retention, then the Insurer's consent shall not be required for such disposition.

(5) *Applicability*

This *Defense and Settlement Clause* is not applicable to Crisis Loss or Personal Reputation Expenses. Nevertheless the Insurer does not, under this policy, assume any duty to defend.

© Chartis Inc. All rights reserved.

## Executive Edge



### B. Pre-Authorized Securities Defense Attorneys

The list of approved panel counsel law firms ("Panel Counsel") is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "Directors & Officers (Securities Claims)" link.  The list provides the Insureds with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any Securities Claim made against such Insureds.  With the express prior written consent of the Insurer, an Insured may select a Panel Counsel different from that selected by another Insured defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.   The list of Panel Counsel may be amended from time to time by the Insurer. However, if a firm is removed from the list during the Policy Period, the Insureds shall be entitled to select such firm to conduct the defense of any Securities Claim made against such Insureds during the Policy Period.

The Insureds shall select a Panel Counsel to defend the Securities Claim made against the Insureds in the jurisdiction in which the Securities Claim is brought.  In the event the Claim is brought in a jurisdiction not included on the list, the Insureds shall select a Panel Counsel in the listed jurisdiction which is the nearest geographic jurisdiction to either where the Securities Claim is brought or where the corporate headquarters of the Named Entity is located. In such instance the Insureds also may, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, select a non-Panel Counsel in the jurisdiction in which the Securities Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel which will function as "lead counsel" in conducting the defense of the Securities Claim. This *Pre-Authorized Securities Defense Attorneys Clause* does not apply to Defense Costs solely relating to Extradition even if the underlying Wrongful Acts relate to a Securities Claim.

### C. Pre-Approved E-Consultant Firms

The list of pre-approved e-discovery consulting firms ("E-Consultant Firms") is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "e-Consultant Panel Members" link.  The list provides the Insureds with a choice of firms from which a selection of an E-Consultant Firm shall be made.  Any E-Consultant Firm may be hired by an Insured to perform E-Discovery Consultant Services without further approval by the Insurer.

### D. Allocation

An Organization is covered, subject to the policy's terms, conditions and limitations, only with respect to: (1) its indemnification of its Insured Persons as respects a Claim against or Pre-Claim Inquiry received by such Insured Persons; (2) a Securities Claim against such Organization; (3) Crisis Loss; and (4) Derivative Investigation Costs. Accordingly, the Insurer has no obligation under this policy for defense or other costs incurred by, judgments against or settlements by an Organization arising out of a Claim made against an Organization except as respects coverage for a Securities Claim, or any obligation to pay loss arising out of any legal liability that an Organization has to a claimant, except as respects a covered Securities Claim against such Organization.

With respect to: (i) Defense Costs jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any Organization and any Insured Person in connection with any Claim other than a Securities Claim, such Organization and such Insured Person and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between such Organization, such Insured Person and the Insurer, taking into account the relative legal and financial exposures, and the relative benefits obtained by such Insured Person and such Organization. In the event that a determination as to the amount of Defense Costs to be advanced under this policy cannot be agreed to, then the

                          © Chartis Inc. All rights reserved.

Executive Edge



Insurer shall advance **Defense Costs** excess of any applicable Retention which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

## 10.   CHANGES TO INSUREDS

### A. Transactions

In the event of a **Transaction** during the **Policy Period**, this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any **Wrongful Act** alleged to have occurred after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and no portion of the premium paid for this policy shall be refundable. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the *Transaction Option* paragraph of Clause 8. *Discovery*.

### B. Subsidiary Additions

In addition to the definition of "**Subsidiary**" set forth in Clause 13. *Definitions*, **Subsidiary** also means any for-profit entity: (i) that is not formed as a partnership, (ii) of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and (iii) whose assets amount to:

(1) less than 25% of the total consolidated assets of each and every **Organization** as reported in the **Named Entity**'s most recent public filing; or

(2) 25% or more of those total consolidated assets, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, whichever expires or ends first (the "**Auto-Subsidiary Period**");

provided that, with respect only to entities described in subparagraph (2) above, the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in subparagraph (2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

### C. Former Subsidiaries

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue until termination of this policy but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**.

### D. Scope Of Subsidiary Coverage

Coverage as is afforded under this policy with respect to a **Claim** made against any **Subsidiary** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed during the time that such **Subsidiary** and such **Insured Person** meet the respective definitions of **Subsidiary** and **Insured Person** set forth in this policy.

104123 (04/10)                                    EX B - 16                    © Chartis Inc. All rights reserved.

Executive Edge



## 11. APPLICATION AND UNDERWRITING

### A. Application And Reliance

The **Insurer** has relied upon the accuracy and completeness of the statements, warranties and representations contained in the **Application**. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

### B. Renewal Application Procedure

A written renewal application form is not required in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

### C. Insured Person Coverage Non-Rescindable

Under no circumstances shall the coverage provided by this policy for Loss under Insuring Agreement A. *Insured Person Coverage* be deemed void, whether by rescission or otherwise, once the premium has been paid.

### D. Severability Of The Application

The **Application** shall be construed as a separate application for coverage by each **Insured Person**. With respect to the **Application**, no knowledge possessed by any **Organization** or any **Insured Person** shall be imputed to any other **Insured Person**.

If the statements, warranties and representations in the **Application** were not accurate and complete and materially affected either the acceptance of the risk or the hazard assumed by the **Insurer** under the policy, then the **Insurer** shall have the right to void coverage under this policy, *ab initio*, with respect to:

(1) **Loss** under Insuring Agreement B. *Indemnification Of Insured Person Coverage* for the indemnification of any **Insured Person** who knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed; and

(2) **Loss** under Insuring Agreement C. *Organization Coverage* if any **Insured Person** who is or was a chief executive officer or chief financial officer of the **Named Entity** knew, as of the inception date of the **Policy Period**, the facts that were not accurately and completely disclosed.

The foregoing applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure had been provided to the **Insurer** or included within the **Application**.

© Chartis Inc. All rights reserved.

Executive Edge



## 12.  GENERAL TERMS AND CONDITIONS

### A. Payments And Obligations Of Organizations And Others

#### 1.  INDEMNIFICATION BY ORGANIZATIONS

The Organizations agree to indemnify the Insured Persons and/or advance Defense Costs to the fullest extent permitted by law. If the Insurer pays under this policy any Indemnification or advancement owed to any Insured Person by any Organization within an applicable Retention, then that Organization shall reimburse the Insurer for such amounts and such amounts shall become immediately due and payable as a direct obligation of the Organization to the Insurer. The failure of an Organization to perform any of its obligations to indemnify the Insured Persons and/or advance Defense Costs under this policy shall not impair the rights of any Insured Person under this policy.

#### 2.  OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible directors and officers liability insurance, unless such other insurance is specifically written as excess insurance over the Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss. Such insurance as is provided by this policy shall apply as primary to any personal "umbrella" excess liability insurance purchased by an Insured Person.

With respect to Employment Practices Claims, such insurance as is provided by this policy shall apply only as excess of any other valid and collectible employment practices liability insurance, unless such other insurance is specifically written as excess insurance over the Limit of Liability provided by this policy. If according to the terms and conditions of any employment practices liability insurance policy providing coverage for an Employment Practices Claim made against an Insured, an Insurer issuing such policy is not liable for Loss, then the Insurer shall be liable for payment of the portion of such Loss constituting covered Loss under this policy (specifically excess of any other valid and collectible employment practices liability insurance providing coverage for such Loss).

In the event of a Claim made against an Outside Entity Executive, coverage as is afforded by this policy, whether under the Insured Person Coverage or the Indemnification Of Insured Person Coverage, shall be specifically excess of: (a) any indemnification provided by an Outside Entity; and (b) any insurance coverage afforded to an Outside Entity or its Executives applicable to such Claim.  Further, in the event such other Outside Entity insurance is provided by the Insurer or any other insurance company affiliate thereof ("Other Policy") (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required), then the Insurer's maximum aggregate Limit of Liability for all Loss under this policy, as respects any such Claim, shall be reduced by the amount recoverable under such Other Policy for loss incurred in connection with such  Claim.

#### 3.  SUBROGATION

To the extent of any payment under this policy, the Insurer shall be subrogated to all of the Organizations' and Insureds' rights of recovery. Each Organization and each Insured Person shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the Insurer to exercise subrogation rights or any other rights, directly or in the name of the Organization or any Insured Person.

In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless the Conduct Exclusion applies with regard to such  Insured.

© Chartis Inc. All rights reserved.

## Executive Edge



### 4. *RECOVERY OF LIMITS*

In the event the Insurer recovers amounts it paid under this policy, the Insurer will reinstate the **Limits of Liability** of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this policy. The Insurer, In Its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the **Limits of Liability**.

### B. *Cancellation*

The **Named Entity** may cancel this policy at any time by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity Address**, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect. If the **Named Entity** shall cancel this policy, the **Insurer** shall retain the *pro rata* proportion of the premium herein.

### C. *Notice And Authority*

The **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of a **Claim, Pre-Claim Inquiry, Crisis** or circumstance, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, and the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**; provided, however, that the foregoing shall not limit the ability of an **Organization** or **Insured** to provide notice of a **Claim, Pre-Claim Inquiry, Crisis** or circumstance in accordance with Clause 7. *Notice And Reporting*, or to elect discovery and pay the **Additional Premium Amount** (as defined in Clause 8. *Discovery*).

### D. *Currency*

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

### E. *Assignment*

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

EX B - 19 © Chartis Inc. All rights reserved.

## Executive Edge

CHARTIS

### F. Disputes

#### 1. ALTERNATIVE DISPUTE RESOLUTION

**ADR Options**

All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause. The Named Entity may elect the type of ADR process discussed below; provided, however, that absent a timely election, the Insurer may elect the type of ADR. In that case, the Named Entity shall have the right to reject the Insurer's choice of the type of ADR process at any time prior to its commencement, after which, the Insured's choice of ADR shall control.

**Mediation**

In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 90 days shall have elapsed from the date of the termination of the mediation.

**Arbitration**

In the event of arbitration, the decision of the arbitrator(s) shall be final, binding and provided to both parties, and the arbitration award shall not include attorney's fees or other costs.

**ADR Process**

*Selection of Arbitrator(s) or Mediator*: The Insurer and the Named Entity shall mutually consent to: (i) in the case of arbitration, an odd number of arbitrators which shall constitute the arbitration panel, or (ii) in the case of mediation, a single mediator. The arbitrator, arbitration panel members or mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the absence of agreement, the Insurer and the Named Entity each shall select one arbitrator, the two arbitrators shall select a third arbitrator, and the panel shall then determine applicable procedural rules.

*ADR Rules*: In considering the construction or interpretation of the provisions of this policy, the mediator or arbitrator(s) must give due consideration to the general principles of the law of the State of Formation of the Named Entity. Each party shall share equally the expenses of the process elected. At the election of the Named Entity, either choice of ADR process shall be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state reflected in the Named Entity Address. The Named Entity shall act on behalf of each and every Insured under this *Alternative Dispute Resolution Clause*. In all other respects, the Insurer and the Named Entity shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the arbitrator(s) or mediator shall specify commercially reasonable rules.

EX-B - 20

© Chartis Inc. All rights reserved.

Executive Edge



### 2. ACTION AGAINST INSURER

Except as provided in Clause 12.F.1. *Alternative Dispute Resolution*, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against such Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer.

Any Insured or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against any Insured or Organization to determine the Insured's liability, nor shall the Insurer be impleaded by any Insured Person, his or her spouse or legally recognized domestic partner, any Organization or any legal representative of the foregoing.

### G. Spousal, Domestic Partner And Legal Representative Extension

If a Claim against an Insured Person includes a Claim against: (i) the lawful spouse or legally recognized domestic partner of such Insured Person; or (ii) a property interest of such spouse or domestic partner, and such Claim arises from any actual or alleged Wrongful Act of such Insured Person, this policy shall pay covered Loss arising from the Claim made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such Loss does not arise from a Claim for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered Loss arising from a Claim made against the estates, heirs, or legal representatives of any deceased Insured Person, and the legal representatives of any Insured Person in the event of incompetence, insolvency or bankruptcy, who was an Insured Person at the time the Wrongful Acts upon which such Claim is based were alleged to have been committed.

### H. Conformance To Law

In the event that there is an inconsistency between: (i) any period of limitation in this policy relating to the giving of notice of cancellation or discovery/extended reporting election, and (ii) the minimum or maximum period required by applicable law, where such law allows, the Insurer will resolve the inconsistency by applying the notice period that is more favorable to the Insureds. Otherwise, the notice period is hereby amended to the extent necessary to conform to applicable law.

Coverage under this policy shall not be provided to the extent prohibited by any law.

### I. Headings

The descriptions in the headings and the Guide of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

Executive Edge



## 13. DEFINITIONS

Terms with "**Bold**" typeface are used in this policy with the meanings and values ascribed to them below and/or in the Declarations:

**Application**   means:

(1) the written statements and representations made by an **Insured** and provided to the **Insurer** during the negotiation of this policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this policy;

(2) all warranties executed by or on behalf of an **Insured** and provided to the **Insurer** in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time; and

(3) each and every public filing by or on behalf of an **Organization** made with the SEC, including but not limited to the **Organization**'s Annual Report(s), 10Ks, 10Qs, 8Ks and proxy statements, any financial information in such filings, and any certifications relating to the accuracy of the foregoing, provided that such public filing was filed during the 12 month period immediately preceding the inception of the **Policy Period**.

**Asset Protection**   means reasonable and necessary fees, costs and expenses consented to by
**Costs**            the **Insurer** incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

**Claim**   means:

(1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges;

(3) an **Insured Person Investigation**;

(4) a **Derivative Demand**;

(5) an official request for **Extradition** of any **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

"**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

**Crisis**   has the meaning as defined in the CrisisFund® Appendix attached to this policy.

**CrisisFund®**   means in the case of all Crisis Loss, including **Delisting Crisis Loss**, $100,000 for all **Crisis Loss** in the aggregate for all **Crises** first occurring during the **Policy Period** or any applicable **Discovery Period**.

     © Chartis Inc. All rights reserved.

## Executive Edge



**Crisis Loss**    has the meaning as defined in the CrisisFund® Appendix attached to this policy. "Delisting Crisis Loss" means a Crisis Loss resulting solely from a Delisting Crisis (as defined in the CrisisFund® Appendix).

**Defense Costs**    means reasonable and necessary fees, costs and expenses consented to by the Insurer (including the cost of E-Discovery Consultant Services and premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from:

(1) the investigation, adjustment, defense and/or appeal of a Claim against an Insured; or

(2) an Insured Person lawfully: (i) opposing, challenging, resisting or defending against any request for or any effort to obtain the Extradition of that Insured Person; or (ii) appealing any order or other grant of Extradition of that Insured Person.

Defense Costs shall not include: (i) Derivative Investigation Costs, (ii) Pre-Claim Inquiry Costs, or (iii) the compensation of any Insured Person.

**Derivative Demand**    means a written demand by any shareholder of an Organization upon the board of directors (or equivalent management body) of such Organization to commence a civil action on behalf of the Organization against any Executive of the Organization for any actual or alleged wrongdoing on the part of such Executive.

**Derivative Investigation**    means, after receipt by any Insured of a Claim that is either a Derivative Suit or a Derivative Demand, any investigation conducted by the Organization, or on behalf of the Organization by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the Organization should respond.

**Derivative Investigation Costs**    means reasonable and necessary costs, charges, fees and expenses consented to by the Insurer and incurred by the Organization, or on behalf of the Organization by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), in connection with a Derivative Investigation. Derivative Investigation Costs shall not include the compensation of any Insured Person.

**Derivative Suit**    means a lawsuit purportedly brought derivatively on behalf of an Organization by a shareholder of such Organization against an Executive of the Organization.

**E-Discovery Consultant Services**    means solely the following services performed by an E-Consultant Firm:

(1) assisting the Insured with managing and minimizing the internal and external costs associated with the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information ("E-Discovery");

© Chartis Inc. All rights reserved.

Executive Edge



(2) assisting the Insured in developing or formulating an E-Discovery strategy which shall include interviewing qualified and cost effective E-Discovery vendors;

(3) serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E-Discovery strategy; and

(4) such other services provided by the E-Consultant Firm that the Insured, Insurer and E-Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

**Employee**
means any past, present or future employee, other than an Executive of an Organization, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

**Employment Practices Claim**
means a Claim alleging any:

(1) Employment Practices Violation; or

(2) Third-Party EPL Violation.

**Employment Practices Retention**
means the Retention applicable to Loss that arises out of an Employment Practices Claim.

**Employment Practices Violation**
means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including workplace bullying, sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability);

(4) Retaliation;

(5) employment-related misrepresentation(s) to an Employee of the Organization;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity with the Organization, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure; or

© Chartis Inc. All rights reserved.

Executive Edge



(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the Employment Practices Violation relates to an Employee of an Organization or an Outside Entity, or an applicant for employment with an Organization or an Outside Entity, whether committed directly, indirectly, intentionally or unintentionally.

**Enforcement Body**   means: (i) any federal, state, local or foreign law enforcement authority or other governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or (ii) the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

**Executive**   means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a Foreign Jurisdiction that is equivalent to an executive position listed in subparagraph (1) above, or a member of the senior-most executive body (including, but not limited to, a supervisory board); and

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the Named Entity.

**Extradition**   means any formal process by which an Insured Person located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

**Extradition Costs**   means Defense Costs incurred by an Insured in lawfully opposing any effort to obtain the Extradition of an Insured Person.

**Foreign Jurisdiction**   means any jurisdiction, other than the United States of America or any of its territories or possessions.

**Foreign Policy**   means the standard executive managerial liability policy (including all mandatory endorsements, if any) approved by the Insurer or any of its affiliates to be sold within a Foreign Jurisdiction that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "Foreign Policy" means the standard basic policy form most recently offered for sale for comparable risks by the Insurer or any of its affiliates in that Foreign Jurisdiction. The term "Foreign Policy" shall not include any partnership managerial, pension trust or professional liability coverage.

**Insured**   means any:

(1) Insured Person; or

(2) Organization.

© Chartis Inc. All rights reserved.

## Executive Edge

CHARTIS

| | |
|---|---|
| **Insured Person** | means any: |

(1) **Executive** of an **Organization**;

(2) **Employee** of an **Organization**; or

(3) **Outside Entity Executive**.

**Insured Person Investigation**    means any civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(1) once the **Insured Person** is identified in writing by an **Enforcement Body** as a target of an investigation that may lead to a criminal, civil, administrative, regulatory or other enforcement proceeding;

(2) in the case of an investigation by the SEC or any state, local or foreign body with similar regulation or enforcement authority, after the service of a subpoena (or in a **Foreign Jurisdiction**, the equivalent legal process) upon the **Insured Person**; or

(3) commenced by the arrest and detainment or incarceration for more than 24 hours of an **Insured Person** by any law enforcement authority in a **Foreign Jurisdiction**.

Writings which may identify an **Insured Person** as a target can include a target or "Wells" letter, whether or not labeled as such.

**Liberty Protection Costs**    means:

(1) reasonable and necessary fees, costs and expenses consented to by the **Insurer** and incurred by an **Insured Person** in order for an **Insured Person** to lawfully seek the release of the **Insured Person** from any pre-**Claim** arrest or confinement to a (i) specified residence or (ii) secure custodial premises operated by or on behalf of any law enforcement authority; or

(2) reasonable and necessary premiums (but not collateral) consented to by the **Insurer** and incurred by an **Insured Person** for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Person** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (i) arise out of an actual or alleged **Wrongful Act**, or (ii) are incurred solely by reason of such **Insured Person's** status as an **Executive** or **Employee** of an **Organization**; and, in either case, no **Claim** has been made and no **Pre-Claim Inquiry** is known.

**Loss**    means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs**, **Crisis Loss**, **Derivative Investigation Costs**, **Liberty Protection Costs** and **Pre-Claim Inquiry Costs**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) cleanup costs relating to hazardous materials, pollution or product defects; (6) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (7) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (7), the **Insurer** shall not assert that, in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of

   EX B - 26    © Chartis Inc. All rights reserved.

Executive Edge



1933, as amended, the portion of any amounts incurred by **Insureds** which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and **Defense Costs** as constituting **Loss** under this policy.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to the Conduct Exclusion): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

**Management Control**      means:

(1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

(2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

**Non-Indemnifiable Loss**    means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

**Organization**       means:

(1) the **Named Entity**;

(2) each **Subsidiary**; and

(3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

       © Chartis Inc. All rights reserved.

Executive Edge



| | |
|---|---|
| **Outside Entity** | means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy. |
| **Outside Entity Executive** | means any: (1) Executive of an Organization who is or was acting at the specific request or direction of an Organization as an Executive of an Outside Entity; or (2) any other person listed as an Outside Entity Executive in an endorsement attached to this policy. |

In the event of a disagreement between the Organization and an Outside Entity Executive as to whether such Insured was acting "at the specific request or direction of the Organization," this policy shall abide by the determination of the Organization on this issue and such determination shall be made by written notice to the Insurer within ninety (90) days after the Claim against such Outside Entity Executive is made.  In the event no notice of any such determination is given to the Insurer within such period, this policy shall apply as if the Organization determined that such Outside Entity Executive was not acting at the Organization's specific request or direction.

| | |
|---|---|
| **Personal Reputation Crisis** | means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an Executive of an Organization made during the Policy Period by any individual authorized to speak on behalf of an Enforcement Body. |
| **Personal Reputation Expenses** | means reasonable and necessary fees, costs and expenses of a Crisis Firm (as defined in the CrisisFund® Appendix attached to this policy) retained within 30 days of a Personal Reputation Crisis solely and exclusively by an Executive to mitigate the adverse effects specifically to such Executive's reputation from a Personal Reputation Crisis.  "Personal Reputation Expenses" shall not include any fees, costs or expenses of any Crisis Firm incurred by an Executive if such Crisis Firm is also retained by or on behalf of an Organization. |
| **Policy Period** | means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy. |
| **Pre-Claim Inquiry** | means any pre-Claim: |

(1) verifiable request for an Insured Person of any Organization: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that Organization or that Insured Person's insured capacities, but only if the request came from any:

    (i) **Enforcement Body**; or

    (ii) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

        (A) arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Organization** or that **Insured Person's** insured capacities; or

        (B) as part of its **Derivative Investigation**; and

© Chartis Inc. All rights reserved.

Executive Edge



(2) arrest or confinement of an Executive of an Organization to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an Enforcement Body, in connection with the business of any Organization or an Insured Person's capacity as an Executive or Employee of an Organization.

"Pre-Claim Inquiry" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in an Organization's and/or Enforcement Body's normal review or compliance process.

**Pre-Claim Inquiry Costs**    means the reasonable and necessary pre-Claim fees, costs and expenses consented to by the Insurer and incurred by an Insured Person solely in connection with his/her preparation for and response to a Pre-Claim Inquiry directed to such Insured Person, including attendance at an interview or meeting requested by an Enforcement Body, but excluding (i) any compensation of any Insured Person; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of an Organization, the requestor or any other third party .

**Related Claim**    means a Claim alleging, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were either: (i) alleged in another Claim made against an Insured; or (ii) the subject of a Pre-Claim Inquiry received by an Insured Person.

**Related Pre-Claim Inquiry**    means a Pre-Claim Inquiry involving, arising out of, based upon or attributable to any facts or Wrongful Acts that are the same as or related to those that were either: (i) alleged in a Claim made against an Insured; or (ii) the subject of another Pre-Claim Inquiry received by an Insured Person.

**Retaliation**    means a retaliatory act of an Insured alleged to be in response to any of the following activities: (i) the disclosure or threat of disclosure by an Employee of the Organization or an Outside Entity to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (ii) the actual or attempted exercise by an Employee of the Organization or an Outside Entity of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (iii) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (iv) strikes of an Employee of the Organization or an Outside Entity.

**Executive Edge**



| Securities Claim | means a Claim, other than an administrative or regulatory proceeding against, or Investigation of an **Organization**, made against any **Insured**: |
|---|---|

(1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

   (i) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

   (ii) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

(2) which is a **Derivative Suit**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization** that meets the requirements of subparagraph (1) above, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

**Securities Retention**     means the Retention applicable to Loss (including **Pre-Claim Inquiry Costs**) that arises out of (i) a **Securities Claim**, or (ii) **Pre-Claim Inquiry Costs** incurred in response to: (a) a **Pre-Claim Inquiry** by an **Enforcement Body** charged with the regulation of securities, or (b) a **Derivative Investigation**.

**SOX 304 Costs**     means the reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

**Subsidiary**     means:

(1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has or had **Management Control** on or before the inception of the **Policy Period** either directly or indirectly through one or more of its other **Subsidiaries**; and

(2) any not-for-profit entity sponsored exclusively by an **Organization**.

A for-profit entity ceases to be a **Subsidiary** when the **Named Entity** no longer maintains **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**. A not-for-profit entity ceases to be a **Subsidiary** when such entity is no longer sponsored exclusively by an **Organization**.

        © Chartis Inc. All rights reserved.

**Executive Edge**



| | |
|---|---|
| **Third-Party EPL Violation** | means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs (2) and (3) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Insured Person** or applicant for employment with the **Organization** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers. |
| **Transaction** | means: |

(1) the **Named Entity** consolidating with or merging into another entity such that the **Named Entity** is not the surviving entity, or selling all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

(2) any person or entity or group of persons or entities acting in concert acquiring **Management Control** of the **Named Entity**; or

(3) the appointment by any **Enforcement Body** of, or where any **Enforcement Body** assumes the role of, a trustee, receiver, conservator, rehabilitator, liquidator or similar official to take control of, supervise or oversee the **Named Entity**, or to liquidate or sell all or substantially all of the assets of the **Named Entity**.

| | |
|---|---|
| **UK Corporate Manslaughter Act Defense Costs** | means **Defense Costs** incurred by an **Insured Person** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Organization** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction. |
| **Wrongful Act** | means: |

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation** or **Third-Party EPL Violation**:

   (i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

   (ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

   (iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

© Chartis Inc. All rights reserved.

## CRISISFUND® APPENDIX

### I.  DEFINITIONS

(a)  "**Crisis**" means:

(1)  a **Delisting Crisis**; or

(2)  one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a "**Material Effect on an Organization's Common Stock Price**":

(i)  *Negative earning or sales announcement*
The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

(ii)  *Loss of a patent, trademark or copyright or major customer or contract*
The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

(iii)  *Product recall or delay*
The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

(iv)  *Mass tort*
The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

(v)  *Employee layoffs or loss of key executive officer(s)*
The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

(vi)  *Elimination or suspension of dividend*
The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

(vii)  *Write-off of assets*
The public announcement that an **Organization** intends to write off a material amount of its assets.

(viii)  *Debt restructuring or default*
The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix)  *Bankruptcy*
The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x)  *Governmental or regulatory litigation*
The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)   *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund** has been exhausted.

(b) "**Crisis Firm**" means any public relations firm, crisis management firm or law firm on the list of approved firms that is accessible through the online directory at http://www.chartisinsurance.com/panelcounseldirectory under the "CrisisFund®" link. Solely for **Delisting Crises**, "**Crisis Firm**" shall also include any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to handle **Securities Claims**. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c) "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1) the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2) the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3) travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d) "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e) "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange** at the initiation of such **Exchange**.

(f) "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g) "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.  EXCLUSIONS

The term **Crisis** shall not include any event relating to any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time.

## ENDORSEMENT# *1*

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CALIFORNIA AMENDATORY ENDORSEMENT

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added any supersedes any provision to the contrary:

CANCELLATION

The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

(1)     Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

(2)     A judgment by a court or an administrative tribunal that the named Insured has violated any law of this state of or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

(3)     Discovery of fraud or material misrepresentation by either of the following:

a)     The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

b)     The named Insured or his or her representative in pursuing a claim under the policy.

(4)     Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

(5)     Failure by the named Insured or Other Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

(6)     A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

◊ All rights reserved.
*END 001*

## ENDORSEMENT# *1*   (continued)

(7)  A determination by the commissioner that a continuation of the policy coverage could place the insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the insurer.

(8)  A change by the named insured or Other insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named insured at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

## CONDITIONAL RENEWAL AND NONRENEWAL

If the insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the insurer shall mail or deliver to the producer of record and the named insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1)  If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the insurer and a member of the insurance group.

(2)  If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3)  If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)  If the policy is for a period of no more than 60 days and the insured is notified at the time of issuance that it will not be renewed.

(5)  If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)  If the insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

◊ All rights reserved.
**END 001**

## ENDORSEMENT# 2

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____
**AUTHORIZED REPRESENTATIVE**

© All rights reserved.
**END 002**

**ENDORSEMENT# 3**

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number  *01-708-73-53*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of  the premium  charged, it is  hereby understood  and agreed that  in the
event that there  is an inconsistency  between a state  amendatory attached  to this policy
and any  term or  condition of  this  policy, then  it is  understood  and agreed  that, where
permitted  by law,  the  **Insurer** shall  apply  those terms and  conditions of  either  the
amendatory or the policy which are more favorable to the  **Insured**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 3*
EX B - 37

MNSCPT

**ENDORSEMENT# 4**

This endorsement, effective 12.01am        March 31, 2012         forms a part of
policy number   01-708-73-53
issued to    CORINTHIAN COLLEGES, INC.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

## CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that any
coverage provided under this policy for punitive, exemplary or multiple damages is subject
to any limitation of such coverage provided by California law, if applicable.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.

90143 (12/05)                    *END 4*
                                 EX B - 38

## ENDORSEMENT# *5*

This endorsement, effective *12.01am*      *March 31, 2012*      forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom;

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**;

   (3)   the furnishing by an Insured or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**; or

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear facility"** means:

   (a)   any nuclear reactor;

   (b)   any equipment or device designed or used for:
      (1)   separating the isotopes of uranium or plutonium,
      (2)   processing or utilizing spent fuel, or
      (3)   handling, processing or packaging wastes;

◊ Chartis Inc. All rights reserved.
### *END 005*

ENDORSEMENT# 5   (continued)

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear Material" means source material, special nuclear material or byproduct material.

"Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Source Material," "Special Nuclear Material," and "Byproduct Material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"Waste" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any Nuclear Facility included within the definition of nuclear facility under paragraph (a) or (b) thereof.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Robert M Vell

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 005*

## ENDORSEMENT# 6

This endorsement, effective 12.01am      March 31, 2012      forms a part of
policy number   01-708-73-53
Issued to CORINTHIAN COLLEGES, INC.

by      National Union Fire Insurance Company of Pittsburgh, Pa.

### PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS

In consideration of the premium charged, it is hereby understood and agreed that with
respect to the $9,000,000 excess of the first $1,000,000 Limit of Liability of this policy,
the Insurer shall not be liable to make any payment for Loss in connection with any Claim
made against an Insured: alleging, arising out of, based upon or attributable to, as of
February 4, 1999, any pending or prior: (a) litigation; or (b) administrative or regulatory
proceeding or investigation of which any Insured had notice; or alleging or derived from the
same or essentially the same facts as alleged in such pending or prior litigation or
administrative or regulatory proceeding or investigation.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 006*

**ENDORSEMENT# 7**

This endorsement, effective *12.01am*     *March 31, 2012*          forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECURITIES CLAIM DEFINITION - COMMON LAW

In consideration of the premium charged, it is hereby understood and agreed that the
policy's definition of "Securities Claim," is deleted in its entirety and replaced with the
following:

"**Securities Claim**" means a Claim, other than an administrative or regulatory
proceeding against, or investigation of an **Organization**, made against any **Insured**:

(1)   alleging a violation of any law, rule or regulation, whether statutory or
common law (including but not limited to the purchase or sale or offer or
solicitation of an offer to purchase or sell securities), which is:

(a)   brought by any person or entity alleging, arising out of, based upon or
attributable to the purchase or sale or offer or solicitation of an offer to
purchase or sell any securities of an **Organization**; or

(b)   brought by a security holder or purchaser or seller of securities of an
**Organization** with respect to such security holder's, purchaser's or
seller's interest in securities of such **Organization**; or

(2)   which is a **Derivative Suit**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall:

(1)   include an administrative or regulatory proceeding against an **Organization**
that meets the requirements of subparagraph (1) above, but only if and only
during the time that such proceeding is also commenced and continuously
maintained against an **Insured Person**; and

(2)   not include any Claim brought by any **Executive** or **Employee** of an
**Organization** alleging, arising out of, based upon or attributable to the loss of,
or failure to receive or obtain, the benefit of stock, stock warrants, stock
options or other securities of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 007**

**ENDORSEMENT# 8**

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFINITION OF INSURED PERSON AMENDED

In consideration of the premium charged, it is hereby understood and agreed that the term **Insured Person** is amended to include any Governing Board Members of the Board of Directors of the **Organization.**

It is further understood and agreed that for the purposes of the applicability of this endorsement, the **Organization** will be conclusively deemed to have indemnified such Individuals to the extent that the **Organization is** permitted or required to grant such indemnification pursuant to law, common or statutory, or contract or the Charter or By-laws of the **Organization** (which are hereby deemed to adopt the broadest provisions of the law which determines or defines such rights of indemnity). The **Organization** hereby agrees to indemnify the individuals to the fullest extent permitted by law including the making in good faith of any required application for court approval.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 8*

MNSCPT

EX B - 43

**ENDORSEMENT# 9**

This endorsement, effective 12.01am     March 31, 2012        forms a part of
policy number   01-708-73-53
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DEFINITION OF INSURED PERSON (TRUSTEES)

In consideration of the premium charged, it is hereby understood and agreed that this
policy is amended as follows:

The Definition of Insured Person shall be amended to include the following at the end
thereof:

Insured Person shall also include any past, present or future member of the faculty,
student teacher, teaching assistant, faculty aide, representative to an education
association of which the  Organization is a member,  and any president, regent,
chancellor, provost, treasurer, vice-president, dean,  personnel director,  governor,
executive director, risk manager, university counsel, trustees/members of the board of
trustees or other comparable senior administrator of the  Organization, regardless of
whether they are considered as an  Employee of the Organization or  as an independent
contractor. Insured Person shall also include any administrator, association member,
member manager or alumni council member of the  Organization.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 9*

MNSCPT

*ENDORSEMENT# 10*

This endorsement, effective  *12.01am*      *March 31, 2012*          forms a part of
policy number  *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPECIFIC CLAIM EXCLUSION

In consideration of the premium charged, it is  hereby understood and agreed that, without
limiting the effectiveness of Clause 4. EXCLUSIONS, Exclusion (2) of the policy, the
**Insurer s**hall not be liable to  make any payment for  **Loss**  in  connection with: (i) any of the
**Claim(s)**, notices,  events, investigations  or actions  referred to  in items  (1)  through (13)
below; (hereinafter  " **Events**"); (ii) the  prosecution,  adjudication,  settlement,  disposition,
resolution  or defense of: (a)  any  **Event(s)**; or (b) any  **Claim(s)** arising from any **Event(s)**;  or
(iii) any  **Wrongful Act**,  underlying facts,  circumstances,  acts  or omissions  in  any  way
relating to any  **Event(s).**

#### EVENTS

(1)  Conway Investment Club, et al. v. Corinthian Colleges, Inc., et al. , Case No.
2:04-CV-05025-R-CW in  the  United  States District Court,  Central District of
California;

(2)  Jonathan  Collet,  et.  al.  v.  David G.  Moore,  et al. and  Frederick Davila,  et.  al. v.
David G. Moore,  et al. , Lead  Case No.  04-CC-07844  (consolidated with Case  No.
04-CC-07895) in the Superior Court of the State of California, County of Orange;

(3)  Adrienne L.  Travis, v. Rhondes  Colleges, Inc., et al. , Case No. 04-CA-1999  in the
Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(4)  Michael Satz,  v. Rhodes  Colleges, Inc et  al. , Case  No. 04-CA-3954 in  the Circuit
Court for the Seventeenth Judicial Circuit of the State of Florida;

(5)  Jennifer Baker,  et al. v.  Corinthian Colleges, Inc., et al ., Case  No. 04-CA-4116 in
the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(6)  Alan Alvarez, et al. v. Rhodes Colleges,  Inc., et al.,  Case  No. 04-CA-11323 in the
Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(7)  Nancy Tsai,  et al.  v. Corinthian Colleges,  Inc., et al. , Case  No. BC326573 in  the
Superior Court of the State of California, County of Los Angeles;

(8)  Alisa Kaputikyan v.  Bryman College, et al. ,  Case  No. SC084791  in  the  Superior
Court of the State of California, County of Los Angeles;

(9)  Litigation  served  upon  the  **Organization**  on February 4, 2005, and  brought  by
twenty-four current  or former  medical assisting  students  from the   **Organization's**
National Institute of Technology campus in Long Beach,  California, as referenced in
the **Organization's** Form 10-Q dated February 9, 2005;

**ENDORSEMENT#** *10*   **(Continued)**

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number  *01-708-73-53*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(10) SEC informal inquiry of the **Organization** commenced by September 16, 2004 notification from SEC;

(11) Inquiry by the California Attorney General's Office, including request by the Office that the **Organization** provide documentation regarding three of the **Organization's** California Bryman Colleges and certain other general **Organization** policies and procedures, as referenced in the **Organization's** Form 10-Q dated February 9, 2005;

(12) All matters referenced in "Note 8 Commitments and Contingencies" of the **Named Entity's** Form 10-Q filed with the U.S. Securities and Exchange Commission on or about February 2, 2011;

(13) Sandra Muniz, et al. v. Corinthian Colleges, Inc., et al. , Case No. SACV11-00259 CJC (MLGx) in the United States District Court for the Central District of California;

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with:

(A) any restatement, retraction, amendment or revision of in part or in whole:

(i) any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports);

resulting from, arising out of, based upon or attributable to any **Event** or the resolution of said **Events**; and

(B) any **Claim** alleging, arising out of, based upon, attributable to or in any way related to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an " **Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in any **Event(s)**.

**ENDORSEMENT# 10   (Continued)**

This endorsement, effective *12.01am      March 31, 2012*          forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that in the event a   **Claim** is excluded pursuant to this
endorsement, then such   **Claim** shall be deemed to be noticed to the   **Insurer** pursuant to
and in satisfaction of Clause 7  (b) of Policy No. 931-86-09 issued to the   **Named Entity**,
subject to all terms conditions and conditions of such policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.

**END 10**

MNSCPT

EX B - 47

**ENDORSEMENT#** *11*

This endorsement, effective *12.01am*      *March 31, 2012*      forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY - AUTO-SUBSIDIARY PERCENTAGE DECREASED

In consideration of the premium charged, it is hereby understood and agreed that in Clause
10.B. *Subsidiary Additions*, subparagraphs (a) and (b) are hereby amended by decreasing
the automatic **Subsidiary** threshold from  *25%* to  *15%*.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 011*

104147 (4/10)                    EX B - 48

**ENDORSEMENT# *12***

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DEFINITION OF EMPLOYEE AMENDED

In consideration of the premium charged it is hereby understood and agreed that in Clause
13. DEFINITIONS, the definition of  Employee is amended by adding the following at the
end thereof:

> An individual who is leased to the   Organization or any other individual who is an
> independent contractor, volunteer or intern for the   Organization shall also be   an
> **Employee** of the Organization.   The Organization will be conclusively  deemed to have
> indemnified such individuals to the  maximum extent that the  Organization is permitted
> or required pursuant to law  or contract or the charter,  bylaws, operating agreement or
> similar documents of an  Organization (which  are hereby deemed to adopt the  broadest
> provisions of the  law which determines  or defines  such rights of indemnity).  The
> Organization hereby agrees to indemnify such individuals to the fullest extent permitted
> by law including the making in good faith of any required application for court approval.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 12*

MNSCPT

EX B - 49

ENDORSEMENT# *13*

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number    *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED
### OTHER LAW

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of "UK Corporate Manslaughter Act
Defense Costs" in its entirety and replacing it with the following:

**UK Corporate
Manslaughter Act
Defense Costs**

means Defense Costs incurred by an Insured Person that result
solely from the investigation, adjustment, defense and/or appeal
of a Claim against an Organization for violation of the United
Kingdom Corporate Manslaughter and Corporate Homicide Act of
2007 or any similar statute or other law in any jurisdiction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 013*

ENDORSEMENT# 14

This endorsement, effective 12.01am    March 31, 2012    forms a part of
policy number  01-708-73-53
issued to    CORINTHIAN COLLEGES, INC.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

## DEFENSE COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of "Defense Costs" in its entirety
and replacing it with the following:

**Defense Costs**    means reasonable and necessary fees, costs and expenses consented
to by the Insurer, such consent not to be unreasonably withheld,
(including the cost of E-Discovery Consultant Services and premiums
for any appeal bond, attachment bond or similar bond arising out of a
covered judgment, but without any obligation to apply for or furnish
any such bond) resulting solely from:

(1) the investigation, adjustment, defense and/or appeal of a Claim
against an Insured; or

(2) an Insured Person lawfully: (i) opposing, challenging, resisting
or defending against any request for or any effort to obtain the
Extradition of that Insured Person; or (ii) appealing any order or
other grant of Extradition of that Insured Person.

**Defense Costs** shall not include: (i) Derivative Investigation Costs, (ii)
Pre-Claim Inquiry Costs, or (iii) the compensation of any Insured
Person.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 14*

MNSCPT

EX B - 51

ENDORSEMENT# *15*

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAIM DEFINITION AMENDED
## REQUESTS TO TOLL STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. In Clause 13. DEFINITIONS, the definition of "**Claim**" shall be amended by adding the
   following subparagraph (6) as follows:

   (6)      the receipt by an **Insured** of any written request to toll a period or statute of
            limitations which may be applicable to any **Claim** that may be made for any
            **Wrongful Act** of any **Insured**.

2. In Clause 7. NOTICE AND REPORTING, the last sentence of subparagraph (c), entitled
   *"Relation Back to Reported Circumstances Which May Give Rise to a Claim,"* is deleted
   and replaced with the following:

   In order to be effective, notification of circumstances must specify the facts,
   circumstances, nature of the alleged Wrongful Act anticipated and reasons for
   anticipating such Claim, with full particulars as to dates, persons and entities
   involved.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

*Robert M. Vell*
_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 015*

106013 (7/10)

ENDORSEMENT# *16*

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## APPLICATION AND UNDERWRITING AMENDED
## RELIANCE AND INCORPORATION

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended by deleting Clause 11.A. *Application And Reliance* in its entirety and replacing
it with the following:

A. *Application And Reliance*

The Insurer has relied upon the statements, warranties and representations
contained in the Application, and all such statements, warranties and
representations are to be considered as incorporated into this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 016*

107033 (10/10)    EX B - 53

**ENDORSEMENT# 17**

This endorsement, effective *12.01am*      *March 31, 2012*      forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONDUCT EXCLUSIONS AMENDED
### FINAL, NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(1) *Conduct Exclusion* is deleted in its entirety and replaced with the following:

(1) *Conduct*   arising out of, based upon or attributable to any:

    (a) remuneration, profit or other advantage to which the Insured was not legally entitled; or

    (b) deliberate criminal or deliberate fraudulent act by the Insured;

    if established by any final, non-appealable adjudication in any underlying proceeding;

    provided, however:

    (i) Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the portion of any **Loss** attributable to such violations; and

    (ii) with respect to Conduct Exclusion (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred;

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

_Robert M Vella_

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 017**

## ENDORSEMENT# *18*

This endorsement, effective *12.01am*    *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ERISA EXCLUSION AMENDED TO APPLY
### SOLELY TO COMPANY BENEFIT PLANS

In consideration of the premium charged it is hereby understood and agreed that Clause
4.B *Exclusions* is amended by deleting Exclusion (6) in its entirety and replacing it with the
following:

(6) *ERISA*      for any violation of responsibilities, obligations or duties imposed by
the Employee Retirement Income Security Act of 1974 (ERISA), as
amended, or any similar provisions of any state, local or foreign
statutory or common law (**"ERISA"**) with respect to any benefit plans
sponsored (solely or jointly) by the **Organization**; or

It is further understood and agreed that the **Insurer** shall not be liable to make any
payment for **Loss** in connection with any **Claim** made against any **Insured** for violation(s)
of any of the responsibilities, obligations or duties imposed upon fiduciaries by the **ERISA**
with respect to any benefit plan not sponsored (solely or jointly) by the **Organization**:

(1)     for discrimination based upon local, state or federal law, statutory or common,
including but not limited to **ERISA**;

(2)     for failure to fund the a benefit plan in accordance with **ERISA** or the plan
instrument or the failure to collect contributions owed to the plan;

(3)     for plan benefits, or that portion of any settlement or award in an amount equal to
such plan benefits;

(4)     alleging, arising out of, based upon or attributable to any failure or omission on the
part of any **Insured(s)** to effect and maintain insurance or bonding for plan property,
assets or obligations;

(5)     for any **Wrongful Act** if as of *March 31, 2012* the **Insured(s)**, as of such date, knew
or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**.

Furthermore, coverage as is afforded by virtue of this endorsement shall be specifically
excess of any insurance in force, including but not limited to any insurance in force for
**ERISA** claims, suits or demands including but not limited to any administrative or
regulatory proceedings or investigations.

Further, if said other insurance in force as respects any such coverage is provided by the
**Insurer** or any other insurance company affiliate thereof (**"Other Policy"**), (or would be
provided but for the application of the retention amount, the exhaustion of the limit of
liability or the failure to submit a claim), then the **Limit of Liability** for all **Loss** by virtue
of this endorsement with respect to any such claims, suits or demands including but not
limited to any administrative or regulatory proceedings or investigations shall be reduced
by the limit of liability as set forth on the Declarations of such **Other Policy** provided to

© Chartis Inc. All rights reserved.
### *END 018*

ENDORSEMENT# *18*   (continued)

such claims, suits or demands including but not limited to any administrative or regulatory proceedings or investigations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 018*

104940 (4/10)

**ENDORSEMENT# 19**

This endorsement, effective  12.01am        March 31, 2012         forms a part of
policy number   01-708-73-53
issued to   CORINTHIAN COLLEGES, INC.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### OTHER INSURANCE AND INDEMNIFICATION CLAUSE AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause
12. GENERAL TERMS AND CONDITIONS, section A. *Payments And Obligations Of
Organizations And Others*, subsection 2. OTHER INSURANCE AND INDEMNIFICATION is
deleted in its entirety and replaced with the following:

Such insurance as is provided by this policy shall apply only as excess over any other
valid and collectible directors and officers liability insurance, unless such other
insurance is specifically written as excess insurance over the Limit of Liability provided
by this policy.   This policy shall specifically be excess over any other valid and
collectible insurance pursuant to which any other insurer has a duty to defend a Claim
for which this policy may be obligated to pay Loss. Such insurance as is provided by
this policy shall apply as primary to any personal "umbrella" or personal D&O policy
excess liability insurance purchased by an Insured Person.

With respect to Employment Practices Claims, such insurance as is provided by this
policy shall apply only as excess of any other valid and collectible employment
practices liability insurance, unless such other insurance is specifically written as
excess insurance over the Limit of Liability provided by this policy. If according to the
terms and conditions of any employment practices liability insurance policy providing
coverage for an Employment Practices Claim made against an Insured, an insurer
issuing such policy is not liable for Loss, then the Insurer shall be liable for payment of
the portion of such Loss constituting covered Loss under this policy (specifically excess
of any other valid and collectible employment practices liability insurance providing
coverage for such Loss).

In the event of a Claim made against an Outside Entity Executive, coverage as is
afforded by this policy, whether under the Insured Person Coverage or the
Indemnification Of Insured Person Coverage, shall be specifically excess of: (a) any
indemnification provided by an Outside Entity; and (b) any insurance coverage afforded
to an Outside Entity or its Executives applicable to such Claim. Further, in the event
such other Outside Entity insurance is provided by the Insurer or any other insurance
company affiliate thereof (" Other Policy") (or would be provided but for the application
of the retention amount, exhaustion of the limit of liability or failure to submit a notice
of a claim as required), then the Insurer's maximum aggregate Limit of Liability for all
Loss under this policy and such Other Policy shall not be greater than each policy's
respective Limit of Liability, and in all events shall be subject to a maximum aggregate
Limit of Liability in the amount of $30,000,000. Nothing in this paragraph shall be
construed to increase the Limit of Liability afforded under each Other Policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 19**

MNSCPT

EX B - 57

**ENDORSEMENT# 20**

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SHADOW DIRECTORS COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that the term "**Executive**" is amended to include any natural person who, as a consequence of being a director, officer or **Employee** of an **Organization**, is deemed a "shadow director" as defined under Section 741 of the United Kingdom's Companies Act 1985, as amended but solely for **Wrongful Acts** committed in his or her respective capacity as a "shadow director", of any **Subsidiary** of the Company that is incorporated and/or domiciled in the United Kingdom or the Republic of Ireland.

For the purpose of the applicability of the coverage provided by this endorsement, the **Organization** will be conclusively deemed to have indemnified the persons afforded coverage by this endorsement to the extent that the **Organization** is permitted or required to indemnify such persons pursuant to law (common or statutory), contract, or the charter or by-laws of the **Organization** (which are hereby deemed to adopt the broadest provision of the law which determines, or defines such rights of indemnity). The **Organization** hereby agrees to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract.

Solely for the purposes of this endorsement the term **Continuity Date** means the effective date of this endorsement.

Only as respects any additional coverage granted by this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim(s)** made against an **Insured**:

(1)    alleging, arising out of, based upon or attributable to any pending or prior litigation as of the **Continuity Date** listed above, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation; and

(2)    alleging any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_Robert M Vella_
_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 020**

**ENDORSEMENT# *21***

This endorsement, effective *12.01am*     *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPOUSAL, DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE

In consideration of the premium charged, it is hereby understood and agreed that Clause 12.G. *Spousal, Domestic Partner And Legal Representative Extension* is deleted in its entirety and replaced with the following:

### G. *Spousal, Domestic Partner And Legal Representative Extension*

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse or legally recognized domestic partner of such **Insured Person**; or (ii) a property interest of such spouse or domestic partner, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall pay covered **Loss** arising from the **Claim** made against such spouse or domestic partner or the property of such spouse or domestic partner to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse or domestic partner. This policy shall pay covered **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, or any **Claim** against a trust or estate planning vehicle of an **Insured Person**, and the legal representatives of any **Insured Person** in the event of incompetence, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were alleged to have been committed.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_Robert M Velle_
_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 021*

ENDORSEMENT# 22

This endorsement, effective 12.01am     March 31, 2012        forms a part of
policy number   01-708-73-53
issued to   CORINTHIAN COLLEGES, INC.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

### PRE-CLAIM INQUIRY AMENDED COST OF PRODUCING DOCUMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of " Pre-Claim Inquiry Costs" in its
entirety and replacing it with the following:

Pre-Claim Inquiry Costs   means the reasonable and necessary pre- Claim fees, costs and
expenses consented to by the Insurer, such consent not to be
unreasonably withheld; provided that the Insureds shall have
complied with all of the terms and conditions of the policy, and
incurred by an Insured Person solely in connection with his/her
preparation for and response to a Pre-Claim Inquiry directed to
such Insured Person, including attendance at an interview or
meeting requested by an Enforcement Body and the cost of
such Insured Person in producing documents in his or her
possession, but excluding any compensation of any Insured
Person.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 22*

MNSCPT

**ENDORSEMENT# 23**

This endorsement, effective 12.01am     March 31, 2012     forms a part of
policy number   01-708-73-53
issued to   CORINTHIAN COLLEGES, INC.

by     National Union Fire Insurance Company of Pittsburgh, Pa.

## ASSET PROTECTION COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of "Asset Protection Costs" in its entirety and replacing it with the following:

**Asset Protection Costs**  means reasonable and necessary fees, costs and expenses consented to by the **Insurer**, such consent not to be unreasonably withheld, incurred by an **Executive** of an **Organization** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 23*

MNSCPT

EX B - 61

**ENDORSEMENT# 24**

This endorsement, effective *12.01am*          *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SOX 304 COSTS AMENDATORY

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting the definition of " SOX 304 Costs" in its entirety
and replacing it with the following:

**SOX 304 Costs**    means the reasonable and necessary fees, costs and expenses
consented to by the Insurer, such consent not to be unreasonably
withheld; provided that the Insureds shall have complied with all of
the terms and conditions of the policy, (including the premium or
origination fee for a loan or bond) and incurred by the chief
executive officer or chief financial officer of the Named Entity to
facilitate the return of amounts required to be repaid by such
Executive pursuant to Section 304(a) of the Sarbanes-Oxley Act of
2002. SOX 304 Costs provided by this coverage extension do not
include the payment, return, reimbursement, disgorgement or
restitution of any such amounts requested or required to be repaid
by such Executive pursuant to Section 304(a).


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.

**MNSCPT**                                    *END 24*
EX B - 62

ENDORSEMENT# *25*

This endorsement, effective *12.01am*       *March 31, 2012*         forms a part of
policy number    *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*


by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## RECOVERY OF LIMITS AMENDED
## DELETE LAST SENTENCE

In consideration of the premium charged, it is hereby understood and agreed that Clause
12.A.4. *RECOVERY OF LIMITS* is deleted in its entirety and replaced with the following:

   4. *RECOVERY OF LIMITS*

      In the event the insurer recovers amounts it paid under this policy, the insurer will
      reinstate the Limits of Liability of this policy to the extent of such recovery, less its
      costs incurred in administering and obtaining such recovery. The insurer assumes
      no duty to seek a recovery of any amounts paid under this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 025*

106818 (9/10)                    EX B - 63

ENDORSEMENT# *26*

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF EXCLUSIONS AMENDED
## GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.A. *Full Severability of Exclusions For Insured Persons* is amended by adding the following
to the end thereof:

> Provided, however, that the Wrongful Acts of, any past, present or future General
> Counsel shall not be imputed to an Organization if the General Counsel took timely
> corrective and/or remedial action upon learning of the Wrongful Acts upon which
> said exclusions are predicated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 026*

106823 (9/10)    EX B - 64

ENDORSEMENT# *27*

This endorsement, effective *12.01am*      *March 31, 2012*         forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### BANKRUPTCY WAIVER ADDED

In consideration of the premium charged, it is hereby understood and agreed that Clause
3.C. *Bankruptcy And Insolvency* is amended by adding the following to the end thereof:

It is further understood and agreed that the coverage provided under this policy is
intended to protect and benefit the **Insured Persons**. Further, if a liquidation or
reorganization proceeding is commenced by the **Named Entity** and/or any other
**Organization** (whether voluntarily or involuntarily) under Title 11 of the United States
Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy
Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in
such proceeding to the proceeds of this policy under such   **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain
relief from any stay or injunction applicable to the proceeds of this policy as a result
of the commencement of such liquidation or reorganization proceeding.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 027*

106012 (7/10)

ENDORSEMENT# 28

This endorsement, effective 12.01am    March 31, 2012    forms a part of
policy number  01-708-73-53
issued to  CORINTHIAN COLLEGES, INC.

by  National Union Fire Insurance Company of Pittsburgh, Pa.

### DISCOVERY CLAUSE AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 8,
DISCOVERY, *Discovery Premium* is deleted in its entirety and replaced with the following:

*Discovery Premium*    The **Additional Premium Amount** for: (a) one year  shall be  no
more than  75%  of the  **Full Annual Premium**; (b) two to  six
years shall be an  amount to be  determined by the   **Insurer**. As
used herein, " **Full Annual Premium**" means the premium level in
effect immediately prior to the end of the  **Policy Period**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 28*

MNSCPT

ENDORSEMENT# *29*

This endorsement, effective *12.01am*     *March 31, 2012*     forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## RETENTION AMENDED
## PERSONAL REPUTATION EXPENSES AND ASSET PROTECTION COSTS

In consideration of the premium charged, it is hereby understood and agreed that Clause
2.A. *Executive Protection Suite* is amended by deleting subparagraphs (4) and (5) in their
entirety and replacing them with the following:

   (4) Personal Reputation Expenses, subject to a *$1,000,000* Retention, and a $100,000
       per Executive and a $500,000 aggregate sublimit of liability; and

   (5) Asset Protection Costs, subject to a *$1,000,000* Retention, and a $50,000 per
       Executive and a $250,000 aggregate sublimit of liability.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 029*

106821 (9/10)             EX B - 67

**ENDORSEMENT# 30**

This endorsement, effective *12.01am*        *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DEFINITION OF TRANSACTION AMENDED (DELETE FINANCIAL IMPAIRMENT ACTIVITIES)**

In consideration of the premium charged, it is hereby understood and agreed that in Clause
**13. DEFINITIONS**, paragraph (3) of the Definition of Transaction is deleted in its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.

MNSCPT                     *END 30*

EX B - 68

ENDORSEMENT# *31*

This endorsement, effective *12.01am*       *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONDUCT EXCLUSIONS AMENDED
## PERSONAL PROFIT AND FINANCIAL ADVANTAGE

In consideration of the premium charged, it is hereby understood and agreed that Clause
**4.B.(1)** *Conduct Exclusion* is amended by deleting subparagraph (a) in its entirety and
replacing it with the following:

   (a) remuneration, personal profit or other financial advantage to which the **Insured** was
       not legally entitled; or

   ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 031*

105825 (9/10)                    EX B - 69