**ENDORSEMENT# *32***

This endorsement, effective *12.01am*     *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SUBSIDIARY ADDITIONS AMENDED
### 90-DAY AUTO-SUBSIDIARY PERIOD

In consideration of the premium charged, it is hereby understood and agreed that Clause
10.B. *Subsidiary Additions* is amended by deleting subparagraph (2) in its entirety and
replacing it with the following:

> (2) 25% or more of those total consolidated assets, but such entity shall be a
> "**Subsidiary**" only: (i) for a period of ninety (90) days from the date the **Named
> Entity** first had **Management Control** of such entity; or (ii) until the end of the
> **Policy Period**, whichever expires or ends first (the  "**Auto-Subsidiary Period**");

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

*[signature]*
_____
**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.
*END 032*

108686 (4/11)              EX B - 70

**ENDORSEMENT# *33***

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE AND REPORTING AMENDED
### 90-DAY POST POLICY REPORTING PERIOD

In consideration of the premium charged, it is hereby understood and agreed that Clause
7.(a) *Reporting a Claim, Pre-Claim Inquiry or Crisis* is amended by deleting the last
sentence thereof and replacing it with the following:

> In all such events, notification must be provided no later than 90 days after the end
> of the Policy Period or the Discovery Period (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 033*

108598 (4/11)                    EX B - 71

**ENDORSEMENT# *34***

This endorsement, effective *12.01am*      *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NOTICE AND REPORTING AMENDED
### NOTICE OF CIRCUMSTANCES REQUIREMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause
7.(c) *Relation Back to Reported Circumstances Which May Give Rise to a Claim* is
amended by deleting the last sentence thereof and replacing it with the following:

> In order to be effective, notification of circumstances must specify the facts,
> circumstances, nature of the anticipated allegations arising from a possible
> **Wrongful Act** and reasons for anticipating such **Claim**, with available particulars as
> to dates, persons and entities involved; however, notification that includes a copy
> of an agreement to toll a statute of limitations shall be presumed sufficiently
> specific as to the potential  **Claims** described within that agreement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Vell*

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 034*

108599 (4/11)                        EX B - 72

**ENDORSEMENT#** *35*

This endorsement, effective *12.01am*     *March 31, 2012*         forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CRISISPLUS ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that he policy is
hereby amended as follows:

**I.   CRISISFUND® AMENDED**

(1)   Solely for the purposes of a **Financial Statement Crisis**, the CrisisFund® Appendix
is hereby amended as follows:

(i)   Definition (a) **Crisis** shall also mean:

(3)   a **Financial Statement Crisis.**

(ii)   Definition (b) **Crisis Firm** is hereby amended by adding the following at the
end thereof:

(b)   Solely for **Financial Statement Crisis**, "**Crisis Firm(s)**" shall also include
any **Panel Counsel** (as defined in Clause 9.B. of the policy) approved to
handle **Securities Claims** and/or any public accounting firm.

(iii)   Definition (d) **Crisis Services** is hereby deleted in its entirety and replaced by
the following:

"**Crisis Services**" means any legal or accounting services performed by a
**Crisis Firm(s)** in investigating and responding to a **Financial Statement
Crisis.**

(iv)   The following additional definitions are hereby added:

"**Financial Statement Crisis**" means the written public announcement by an
**Organization** of the need or potential need for a restatement(s) of an
**Organization**'s previously publicly filed financial statements; provided
however, that **Financial Statement Crisis** shall not include any
announcements regarding restatement(s) resulting, in whole or in part, from a
change in any rule, law or statute relating to financial reporting (including but
not limited to any change in Generally Accepted Accounting Principles);
further provided that payment of any **Crisis Loss** under this policy shall not
waive any of the **Insurer**'s rights under this policy or at law.

"**Financial Statement Crisis Loss**" means a **Crisis Loss** resulting solely from
a **Financial Statement Crisis.**

**II.   DEFINITION OF EXECUTIVE AMENDED**

In Clause 13. DEFINITIONS, the Definition of **Executive** is hereby amended to include the
following:

© Chartis Inc. All rights reserved.
*END 035*

**ENDORSEMENT#** *35*    (continued)

(4)    **Executive** as defined in (1)-(3) above or any **Employee** of an **Organization** serving as a past, present or future member of any internal committee established by and for an **Organization**, including but not limited to an **Organization's** "audit committee," as that committee is described in the Securities and Exchange Commission Release No. 34-42266- Audit Committee Disclosure Rule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Velle*

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 035**

ENDORSEMENT# *36*

This endorsement, effective *12.01am*       *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXTRADITION AMENDED
## SOUGHT TO BE SURRENDERED

In consideration of the premium charged, it is hereby understood and agreed that Clause
**13. DEFINITIONS** is amended by deleting the definition of **"Extradition"** in its entirety and
replacing it with the following:

**Extradition**              means any formal process by which an **Insured Person** located in any
                             country is sought to be surrendered to any other country for trial or
                             otherwise to answer any criminal accusation.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 036*

**ENDORSEMENT# *37***

This endorsement, effective *12.01am*   *March 31, 2012*   forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DODD-FRANK 954 COSTS

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.  Clause 2.A Executive Protection Suite is amended by deleting subparagraph (1) and
    replacing it with the following:

    (1) SOX 304 Costs and Dodd-Frank 954 Costs;

2.  Clause 13. DEFINITIONS is amended by the addition of the following definition:

    **Dodd-Frank 954**       means the reasonable and necessary fees, costs and expenses
    **Costs**                consented to by the Insurer (including the premium or origination
                             fee for a loan or bond) and incurred by an Executive solely to
                             facilitate the return of amounts required to be repaid by such
                             Executive pursuant to Section 954 of the Dodd-Frank Wall Street
                             Reform and Consumer Protection Act.  Dodd-Frank 954 Costs do
                             not include the payment, return, reimbursement, disgorgement or
                             restitution of any such amounts requested or required to be repaid
                             by such Insured Person pursuant to Section 954.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Vella*
_____

**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.
*END 037*

ENDORSEMENT# 38

This endorsement, effective 12.01am       March 31, 2012          forms a part of
policy number   01-708-73-53
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ENTITY V INSURED EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(5) *Entity v. Insured Exclusion* is amended by deleting subparagraph (b) thereof in its
entirety and replacing it with the following:

(b)     to any **Derivative Suit** not brought, controlled or materially assisted by any
        **Organization**, any **Outside Entity** or any **Executive** of the foregoing (other than an
        **Executive** who has not served as a duly elected or appointed director, officer,
        trustee, governor, management committee member, member of the
        management board, General counsel or Risk Manager (or equivalent position) of
        or consultant for an **Organization** for at least three (3) years prior to such
        **Derivative Suit** being first made); or

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 38*

MNSCPT

**ENDORSEMENT# 39**

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ENTITY V. INSURED EXCLUSION AMENDED - AMEND CARVEBACK C FOR BANKRUPTCY CONSTITUENCIES

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(5) *Entity v. Insured Exclusion* is amended by deleting subparagraph (c) in its entirety and replacing it with the following:

(c)    if the **Organization** or **Outside Entity** is the subject of a bankruptcy case (or the equivalent in a **Foreign Jurisdiction**), to **Claim** brought by the examiner, trustee, receiver, liquidator, rehabilitator, creditors committee, bondholder committee, equity committee or any other creditor or group of creditors (or any assignee thereof) on behalf of or in the right of such **Organization** or **Outside Entity** (or the resulting debtor-in-possession);

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 39*

MNSCPT

EX B - 78

ENDORSEMENT# *40*

This endorsement, effective *12.01am*          *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ENTITY V. INSURED EXCLUSION AMENDED
## WHISTLEBLOWER CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause
**4.B.(5)** *Entity v. Insured Exclusion* is amended by adding the following to the end thereof:

> With respect to this *Entity v. Insured Exclusion*, the term "materially assisted" shall
> not be triggered by any Insured Person engaging in protected "whistleblower"
> activity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 040**

106824 (9/10)                    EX B - 79

**ENDORSEMENT# 41**

This endorsement, effective *12.01am      March 31, 2012*      forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ORDER OF PAYMENTS AMENDED - MAJORITY OF INDEPENDENT DIRECTORS

In consideration of the premium charged, it is hereby understood and agreed that Clause
3B. Order of Payments is deleted in its entirety and replaced with the following:

**B. Order Of Payments**

In the event of **Loss** arising from a covered **Claim(s)** and/or **Pre-Claim Inquiry(ies)** for
which payment is due under the provisions of this policy, the **Insurer** shall in all
events:

(1) First, pay all **Loss** covered under Insuring Agreement A. *Insured Person
Coverage*;

(2) Second, only after payment of **Loss** has been made pursuant to
subparagraph (1) above and to the extent that any amount of the **Limit of
Liability** shall remain available, at the written request of the majority of the
**Independent Directors** of the **Named Entity**, either pay or withhold payment
of **Loss** covered under Insuring Agreement B. *Indemnification Of Insured
Person Coverage*; and

(3) Lastly, only after payment of **Loss** has been made pursuant to subparagraphs
(1) and (2) above and to the extent that any amount of the **Limit of Liability**
shall remain available, at the written request of the majority of the
**Independent Directors** of the **Named Entity**, either pay or withhold payment
of **Loss** covered under Insuring Agreement C. *Organization Coverage* and
Insuring Agreement D. *Crisisfund® Coverage*.

In the event the **Insurer** withholds payment pursuant to subparagraphs (2) and/or (3)
above, then the **Insurer** shall, at such time and in such manner as shall be set forth
in instructions of the majority of the **Independent Directors** of the **Named Entity**,
remit such payment to an **Organization** or directly to or on behalf of an **Insured
Person**.

Solely for purposes of this endorsement:

"**Independent Director**" means, with respect to an **Organization**, a
"Non-Employee Director" as that term is defined in Rule 16b-3 promulgated
under the Securities Exchange Act of 1934 provided that the term "issuer" as
used in that Rule shall be deemed to refer to such **Organization**.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

® Chartis Inc. All rights reserved.
*END 41*

MNSCPT

**ENDORSEMENT# 42**

This endorsement, effective *12.01am      March 31, 2012*      forms a part of
policy number   *01-708-73-53*
issued to    *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DISCOVERY CLAUSE AMENDED
### DELETE "OR REPLACED"

In consideration of the premium charged, it is hereby understood and agreed that in Clause
8. DISCOVERY, the section entitled " *Bilateral Discovery Options*" is deleted in its entirety
and replaced with the following:

*Bilateral Discovery Options*      Except as indicated below, if the **Named Entity** shall
cancel or the **Named Entity** or the **Insurer** shall refuse to
renew this policy, the **Insureds** shall have the right to a
period of one to six years following the effective date of
such cancellation or nonrenewal (the " **Discovery Period**"),
upon payment of the respective " **Additional Premium
Amount**" described below, in which to give to the **Insurer**
written notice pursuant to Clause 7(a) and Clause 7(c) of
the policy of: (i) **Claims** first made against an **Insured**; (ii)
**Pre-Claim Inquiries** first received by an **Insured Person**;
and (iii) circumstances of which an **Organization** or an
**Insured** shall become aware, in any such case, during said
**Discovery Period** and solely with respect to a **Wrongful
Act** that occurs prior to the end of the **Policy Period**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
*END 42*

MNSCPT

ENDORSEMENT# 43

This endorsement, effective 12.01am      March 31, 2012        forms a part of
policy number   01-708-73-53
issued to   CORINTHIAN COLLEGES, INC.

by   National Union Fire Insurance Company of Pittsburgh, Pa.

### CANCELLATION AMENDATORY
### (RETURN PRO RATA)

Wherever used herein: (1) "Policy" means the policy or bond to which this endorsement or
rider is made part of; (2)"Insurer" means the "Insurer," "Underwriter," "Company" or other
name specifically ascribed in this Policy as the insurance company or underwriter for this
Policy; (3) "Named Entity" means the "Named Entity," "Named Corporation," Named
Organization," "Named Sponsor," "Named Insured," "First Named Insured," "Insured's
Representative," "Policyholder" or equivalent term stated in Item 1 of the Declarations;
and (4) "Period" means the "Policy Period," "Bond Period" or equivalent term stated in the
Declarations.

In consideration of the premium charged, it is hereby understood and agreed that
notwithstanding anything to the contrary in any CANCELLATION or TERMINATION clause
of this Policy (and any endorsement or rider amending such cancellation or termination
clause, including but not limited to any state cancellation/non-renewal amendatory
attached to this policy), if this Policy shall be canceled by the Named Entity, the Insurer
shall return to the Named Entity the unearned pro rata proportion of the premium as of the
effective date of cancellation.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.

101038 (04/09)                    END 43

EX B - 82

ENDORSEMENT# *44*

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### APPLICATION AMENDED
### PUBLIC FILINGS

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (1) of the definition of **Application**
and replacing it with the following:

> (1) the written statements and representations made by an **Insured** and provided to
> the **Insurer** during the negotiation of this policy, or contained in any application
> or other materials or information provided to the **Insurer** in connection with the
> underwriting of this policy; provided that public filings by or on behalf of an
> **Organization** made with the SEC shall only include those as set forth in
> subparagraph (3) below;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 044*

ENDORSEMENT# *45*

This endorsement, effective *12.01am*     *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*


by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONDUCT EXCLUSIONS AMENDED
### ADD "DELIBERATELY"
### DELETE "THE PORTION OF"

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(1) *Conduct Exclusion* is amended as follows:

1.  Subparagraph (b) is deleted in its entirety and replaced with the following:

    (b) deliberately criminal or deliberately fraudulent act by the  Insured;

2.  Subparagraph (i) is deleted in its entirety and replaced with the following:

    (i)  Conduct Exclusion (a), above, shall not apply in a **Securities Claim** alleging
    violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended,
    to any **Loss** attributable to such violations; and


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.
*END 045*

108591 (4/11)                     EX B - 84

ENDORSEMENT# *46*

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DERIVATIVE INVESTIGATION COSTS AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by deleting the definition of Derivative Investigation Costs in its entirety and replacing it with the following:

**Derivative**
**Investigation Costs**    means reasonable and necessary costs, charges, fees and expenses consented to by the Insurer and incurred by the Organization, or on behalf of the Organization by its board of directors (or the equivalent management body) or any committee of the board of directors or formed as such by the board of directors (or equivalent management body), in connection with a **Derivative Investigation**. **Derivative Investigation Costs** shall not include the compensation of any **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_Robert M. Weller_

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 046*

108594 (4/11)    EX B - 85

**ENDORSEMENT# *47***

This endorsement, effective *12.01am*     *March 31, 2012*     forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ENTITY V. INSURED EXCLUSION AMENDED
### CARVEBACKS A & B
### DELETE "IN DEFENDING ANY CLAIM AGAINST THAT INSURED PERSON"
### WHISTLEBLOWER CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(5) *Entity v. Insured Exclusion* is amended by deleting subparagraphs (a) and (b) in their entirety and replacing them with the following:

(a) to any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person**;

(b) to any **Derivative Suit** not brought, controlled or materially assisted by any **Organization**, any **Outside Entity** or any **Executive** of the foregoing; provided that the term "materially assisted" shall not be triggered by any **Insured Person** engaging in protected "whistleblower" activity; or

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Vello*
_____
**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.
*END 047*

ENDORSEMENT# *48*

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRE-CLAIM INQUIRY AMENDED
### CHANGE "AND" TO "OR"

In consideration of the premium charged, it is hereby understood and agreed that Clause
13. DEFINITIONS is amended by deleting subparagraph (1)(ii)(B) of the definition of Pre-
Claim Inquiry in its entirety and replacing it with the following:

(B) as part of its **Derivative Investigation**; or


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 048*

ENDORSEMENT# *49*

This endorsement, effective *12.01am*      *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PENDING AND PRIOR LITIGATION EXCLUSION AMENDED - INSURED PARTY

In consideration of the premium charged, it is hereby understood and agreed that Clause
4.B.(2) *Pending & Prior Litigation Exclusion* is deleted in its entirety and replaced with the
following:

(2)   *Pending & Prior Litigation*     (i)  alleging, arising out of, based upon or attributable
                                             to, as of the **Continuity Date**, any pending or
                                             prior:

                                             (a) litigation; or
                                             (b) administrative or regulatory proceeding or
                                                 investigation;

                                             of which any **Insured** had notice and to which an
                                             **Insured** is or was a party or a reasonable person
                                             would suspect that an **Insured** may become a
                                             party; or

                                       (ii) alleging or derived from the same or essentially the
                                             same facts as alleged in such pending or prior
                                             litigation or administrative or regulatory
                                             proceeding or investigation as described in
                                             subparagraph (i) above;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 49*

**ENDORSEMENT# *50***

This endorsement, effective *12.01am*     *March 31, 2012*          forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ALTERNATIVE DISPUTE RESOLUTION AMENDED
### WAITING PERIOD REVISED FOR EXPIRATION OF STATUTE OF LIMITATIONS

In consideration of the premium charged, it is hereby understood and agreed that Clause
12.F.1. *ALTERNATIVE DISPUTE RESOLUTION* is amended by deleting the paragraph
entitled, *Mediation*, in its entirety and replacing it with the following:

Mediation            In the event of mediation, either party shall have the right to
                     commence a judicial proceeding; provided, however, that no such
                     judicial proceeding shall be commenced until the mediation shall
                     have been terminated and at least 60 days shall have elapsed
                     from the date of the termination of the mediation. In the event,
                     however, that the applicable statute of limitations shall expire
                     during such 60 day period, the Insurer and Insureds agree to toll
                     such statute of limitations to a date at least 60 days after the end
                     of the initial 60 day period.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*Robert M Vell*

_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
*END 050*

108589 (4/11)

**ENDORSEMENT# *51***

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number  *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADVANCEMENT AMENDED
### NOT IN DEFAULT OF PAYMENT
### RETURN OF PAYMENTS

In consideration of the premium charged, it is hereby understood and agreed that Clause
3.A. *Advancement* is deleted in its entirety and replaced with the following:

### A. *Advancement*

If for any reason (including but not limited to insolvency) an **Organization** fails or
refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the
applicable **Retention**, if any, then the **Insurer** shall advance such amounts on behalf
of the **Insured Person** until either (i) an **Organization** agrees to make, and is not in
default of making, such payments, or (ii) the **Retention** has been satisfied.  In no
event shall any such advancement by the **Insurer** relieve any **Organization** of any
duty it may have to provide advancement, payment or indemnification to any
**Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Organization**
is deemed "failed" if it has been requested by an **Insured Person** in writing and has
not been provided by, agreed to be provided by or acknowledged as an obligation by
an **Organization** within 60 days of such request; and advancement, payment or
indemnification by an **Organization** is deemed "refused" if an **Organization** gives a
written notice of the refusal to the **Insured Person**.  Advancement, payment or
indemnification of an **Insured Person** by an **Organization** shall only be deemed
"failed" or "refused" to the extent such advancement, payment or indemnification
is not provided, or agreed to be provided, or acknowledged by and collectible from
an **Organization**.  Any payment or advancement by the **Insurer** within an applicable
**Retention** shall apply towards the exhaustion of the **Limits of Liability**, but the **Limit
of Liability** shall be restored to the extent that any such payments are subsequently
returned or repaid to the **Insurer**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 051*

108687 (4/11)    EX B - 90

**ENDORSEMENT# 52**

This endorsement, effective 12.01am      March 31, 2012      forms a part of
policy number   01-708-73-53
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**LOSS AMENDED
APPLICABLE LAW**

In consideration of the premium charged, it is hereby understood and agreed that Clause 13. DEFINITIONS is amended by adding the following to the end of the second paragraph of the definition of Loss:

> Applicable law shall include, but not be limited to, the address or place of domicile of the Insurer, any Organization's place of domicile, the address of the Named Entity or of any other Organization involved in the Claim, or the place of residence of any Insured Person involved in the Claim.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.
*END 052*

108697 (4/11)

**ENDORSEMENT# 53**

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PERSONAL INJURY EXCLUSION AMENDED
### UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.B.(3) *Personal Injury Exclusion* shall not apply to **UK Corporate Manslaughter Act Defense Costs.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

*END 053*

108603 (4/11)                    EX B - 92

## ENDORSEMENT# *54*

This endorsement, effective *12.01am    March 31, 2012*        forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONTROL PERSON CAPACITY

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1. Clause 13. DEFINITIONS is amended by the addition of the following definition:

   **Controlling**      means any **Executive** that controls an **Organization** within the
   **Person**           meaning of Section 15 of the Securities Act of 1933 (as
                        amended) or Section 20(a) of the Securities Exchange Act of
                        1934 (as amended) or any similar law.

2. Clause 13. DEFINITIONS is amended by deleting subparagraph (1)(i) of the definition of
   **Wrongful Act** and replacing it with the following:

   (i)  with respect to any **Executive** of an **Organization**, (a) by such **Executive** in his or
        her capacity as such, (b) by such **Executive** in his or her capacity as a
        **Controlling Person**; or (c) any matter claimed against such **Executive** solely by
        reason of his or her status as such;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

© Chartis Inc. All rights reserved.

*END 054*

**ENDORSEMENT# 55**

This endorsement, effective *12.01am*     *March 31, 2012*        forms a part of
policy number   *01-708-73-53*
issued to   *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PRE- CLAIM INQUIRY DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

**Pre-Claim Inquiry means any pre- Claim:**

(1)   verifiable request for an **Insured Person** of any **Organization**: (a) to appear at a
      meeting or interview; or (b) produce documents that, in either case, concerns the
      business of that **Organization** or that **Insured Person's** insured capacities, or by
      virtue of their status as such but only if the request came from any:

    (i) **Enforcement Body**; or

    (ii) **Organization**, or, on behalf of an **Organization**, by its board of directors (or the
         equivalent management body) or any committee of the board of directors (or the
         equivalent management body):

        (A) arising out of an inquiry or investigation by an **Enforcement Body** concerning
            the business of that **Organization** or that **Insured Person's** insured capacities;
            or

        (B) as part of its **Derivative Investigation**; and

(2)   arrest or confinement of an **Executive** of an **Organization** to a: (a) specified
      residence; or (b) secure custodial premises operated by or on behalf of an
      **Enforcement Body**, in connection with the business of any **Organization** or an
      **Insured Person's** capacity as an **Executive** or **Employee** of an **Organization**.

" **Pre-Claim Inquiry**" shall not include any routine or regularly scheduled regulatory or
internal supervision, inspection, compliance, review, examination, production or audit,
including any request for mandatory information from a regulated entity, conducted in an
**Organization's** and/or **Enforcement Body's** normal review or compliance process.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

_Robert M Veller_
_____
AUTHORIZED REPRESENTATIVE

° Chartis Inc. All rights reserved.
**END 55**

EX B - 94

**ENDORSEMENT# 56**

This endorsement, effective 12.01am      March 31, 2012      forms a part of
policy number   01-708-73-53
issued to   CORINTHIAN COLLEGES, INC.

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### FORMER SUBSIDIARIES CLAUSE AMENDED

C.   **Former Subsidiaries**

In the event the **Named Entity** loses **Management Control** of a **Subsidiary** during or prior to the **Policy Period**, coverage with respect to such **Subsidiary** and its **Insured Persons** shall continue but only with respect to **Claims** for **Wrongful Acts** that occurred or are alleged to have occurred during the time that the **Named Entity** had **Management Control** of such entity either directly or indirectly through one or more of its **Subsidiaries**.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.

**END 56**

MNSCPT

**ENDORSEMENT# *57***

This endorsement, effective *12.01am*    *March 31, 2012*    forms a part of
policy number    *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  The following paragraph is added to the end of Clause 5. RETENTION:

    If an **Organization** fails or refuses to advance, pay or indemnify covered
    **Indemnifiable Loss** of an **Insured Person** within an applicable **Retention**, then solely
    to the extent an insurer agrees to pay or pays such **Loss** pursuant to the terms and
    conditions of a Side A-Excess DIC **Insurance Policy**, the **Insurer** shall recognize that
    the **Side A-Excess DIC Insurance Policy** payments erode (contribute to and reduce)
    the applicable **Retention** amount.

2.  As a precondition to such recognition of the erosion of the **Retention** amount, an
    **Insured** shall provide the **Insurer** with written proof, to the **Insurer's** satisfaction, of
    the payment of such **Loss** under the Side A-Excess DIC **Insurance Policy**.

3.  Advancement, payment or indemnification of an **Insured Person** by an **Organization**
    is deemed "failed" if it has been requested by an **Insured Person** in writing and has
    not been provided by, agreed to be provided by or acknowledged as an obligation
    by an **Organization** within 60 days of such request; and advancement, payment or
    indemnification by an **Organization** is deemed "refused" if an **Organization** gives a
    written notice of the refusal to the **Insured Person**. Advancement, payment or
    indemnification of an **Insured Person** by an **Organization** shall only be deemed
    "failed" or "refused" to the extent such advancement, payment or indemnification is
    not provided, or agreed to be provided, or acknowledged by and collectible from an
    **Organization**.

4.  "Side A-Excess DIC **Insurance Policy**" means any insurance policy written
    specifically as excess over this policy that provides "Side A" (non-indemnifiable or
    non-indemnified loss) coverage with difference-in-conditions features.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


*Robert M Yelle*
_____
AUTHORIZED REPRESENTATIVE

© Chartis Inc. All rights reserved.
**END 057**

**ENDORSEMENT#** *58*


This endorsement, effective *12.01am      March 31, 2012*                forms a part of
policy number  *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 104122 | 04/10 | D&O ADMITTED DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 104123 | 04/10 | D&O ADMITTED GUTS |
| 104870 | 04/10 | CRISISFUND APPENDIX |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| MNSCPT | | STATE AMENDATORY INCONSISTENT |
| 90143 | 12/05 | CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT |
| 104949 | 04/10 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| 104135 | 04/10 | PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS |
| 104962 | 04/10 | SECURITIES CLAIM DEFINITION - COMMON LAW |
| MNSCPT | | DEFINITION OF INSURED PERSON AMENDED |
| MNSCPT | | DEFINITION OF INSURED PERSON (TRUSTEES) |
| MNSCPT | | SPECIFIC CLAIM EXCLUSION |
| 104147 | 04/10 | SUBSIDIARY-AUTO-SUBSIDIARY PERCENTAGE DECREASED |
| MNSCPT | | DEFINITION OF EMPLOYEE AMENDED |
| 106828 | 09/10 | UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS AMENDED OTHER LAW |
| MNSCPT | | DEFENSE COSTS AMENDATORY |
| 106013 | 07/10 | CLAIM DEFINITION AMENDED - REQUESTS TO TOLL STATUTE OF LIMITATIONS |
| 107033 | 10/10 | APPLICATION AND UNDERWRITING AMENDED RELIANCE AND INCORPORATION |
| 107034 | 10/10 | CONDUCT EXCLUSIONS AMENDED FINAL NON-APPEALABLE ADJUDICATION IN ANY UNDERLYING PROCEEDING |
| 104940 | 04/10 | ERISA EXCLUSION AMENDED TO APPLY SOLELY TO COMPANY BENEFIT PLANS |

*END 058*

**ENDORSEMENT#** *58*

This endorsement, effective *12.01am*     *March 31, 2012*         forms a part of
policy number  *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | OTHER INSURANCE AND INDEMNIFICATION CLAUSE AMENDED |
| 105002 | 04/10 | SHADOW DIRECTORS COVERAGE |
| 107317 | 11/10 | SPOUSAL DOMESTIC PARTNER AND LEGAL REPRESENTATIVE EXTENSION AMENDED TRUST OR ESTATE PLANNING VEHICLE |
| MNSCPT | | PRE-CLAIM INQUIRY AMENDED COST OF PRODUCING DOCUMENTS |
| MNSCPT | | ASSET PROTECTION COSTS AMENDATORY |
| MNSCPT | | SOX 304 COSTS AMENDATORY |
| 106818 | 09/10 | RECOVERY OF LIMITS AMENDED DELETE LAST SENTENCE |
| 106823 | 09/10 | SEVERABILITY OF EXCLUSIONS AMENDED GC IMPUTATION EXCEPTION FOR TIMELY REMEDIAL ACTION |
| 106012 | 07/10 | BANKRUPTCY WAIVER ADDED |
| MNSCPT | | DISCOVERY CLAUSE AMENDED |
| 106821 | 09/10 | RETENTION AMENDED PERSONAL REPUTATION EXPENSES AND ASSET PROTECTION COSTS |
| MNSCPT | | DEFINITION OF TRANSACTION AMENDED (DELETE FINANCIAL IMPAIRMENT ACTIVITIES) |
| 106825 | 09/10 | CONDUCT EXCLUSIONS AMENDED PERSONAL PROFIT FINANCIAL ADVANTAGE |
| 108586 | 04/11 | SUBSIDIARY ADDITIONS AMENDED 90-DAY AUTO-SUB PERIOD |
| 108598 | 04/11 | NOTICE AND REPORTING AMENDED 90-DAY POST POLICY REPORTING PERIOD |
| 108599 | 04/11 | NOTICE AND REPORTING AMENDED NOTICE OF CIRCUMSTANCES REQUIREMENTS |
| 104934 | 04/10 | CRISISPLUS ENDORSEMENT |
| 106829 | 09/10 | EXTRADITION AMENDED SOUGHT TO BE SURRENDERED |
| 108595 | 04/11 | DODD-FRANK 954 COSTS |
| MNSCPT | | ENTITY V INSURED EXCLUSION AMENDED |

**END 058**

**ENDORSEMENT# *58***

This endorsement, effective *12.01am*      *March 31, 2012*            forms a part of
policy number   *01-708-73-53*
issued to *CORINTHIAN COLLEGES, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | ENTITY V. INSURED EXCLUSION AMENDED - AMEND CARVEBACK C FOR BANKRUPTCY CONSTITUENCIES |
| 106824 | 09/10 | ENTITY V INSURED EXCLUSION AMENDED WHISTLEBLOWER CARVEBACK |
| MNSCPT | | ORDER OF PAYMENTS AMENDED - MAJORITY OF INDEPENDENT DIRECTORS |
| MNSCPT | | DISCOVERY CLAUSE AMENDED |
| 101036 | 04/09 | CANCELLATION AMENDATORY |
| 108590 | 04/11 | APPLICATION AMENDED PUBLIC FILINGS |
| 108591 | 04/11 | CONDUCT EXCLUSIONS AMENDED ADD DELIBERATELY DELETE THE PORTION OF |
| 108594 | 04/11 | DERIVATIVE INVESTIGATION COSTS AMENDED |
| 108596 | 04/11 | ENTITY V INSURED EXCLUSION AMENDED CARVEBACKS A AND B DELETE IN DEFENDING ANY CLAIM AGAINST THAT INSURED PERSON WHISTLEBLOWER CARVEBACK |
| 108604 | 04/11 | PRE-CLAIM INQUIRY AMENDED CHANGE AND TO OR |
| 107191 | 11/10 | PENDING AND PRIOR LITIGATION EXCLUSION AMENDED - INSURED PARTY |
| 108589 | 04/11 | ALTERNATIVE DISPUTE RESOLUTION AMENDED WAITING PERIOD REVISED FOR EXPIRATION OF STATUTE OF LIMITATIONS |
| 108587 | 04/11 | ADVANCEMENT AMENDED NOT IN DEFAULT OF PAYMENT RETURN OF PAYMENTS |
| 108597 | 04/11 | LOSS AMENDED APPLICABLE LAW |
| 108603 | 04/11 | PERSONAL INJURY EXCLUSION AMENDED UK CORPORATE MANSLAUGHTER ACT DEFENSE COSTS CARVEBACK |
| 108592 | 04/11 | CONTROL PERSON CAPACITY |
| MNSCPT | | PRE-CLAIM INQUIRY DEFINITION AMENDED |
| MNSCPT | | FORMER SUBSIDIARIES CLAUSE AMENDED |
| 104959 | 04/10 | RETENTION EROSION THROUGH SIDE-A INSURANCE FILL-IN |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

*END 058*

EX B - 99

**ENDORSEMENT# *58***

This endorsement, effective *12.01am*     *March 31, 2012*                    forms a part of
policy number   *01-708-73-53*
Issued to *CORINTHIAN COLLEGES, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**



## CLAIM REPORTING FORM

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number: __01-708-73-53__          Date: _____

Type of Coverage: D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*CORINTHIAN COLLEGES, INC.*

_____

_____

Contact Person: _____

Title: _____

Phone: (_____) _____ - _____ Ext _____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *ARTHUR J. GALLAGHER & CO INS BROKERS OF CA, INC.*

Address: *505 N BRAND BLVD, STE 600*

Address: *GLENDALE, CA 91203-3018*

Contact: *EMILY LOUPEE*          Phone: _____

eMail: *Mark Knepshield@AJG.com*

Send Notice of Claims to:    Chartis              Phone: (888) 602-5246
                             Financial Lines Claims   Fax:   (866) 227-1750
                             P.O. Box 25947       Email:  c-Claim@chartisinsurance.com
                             Shawnee Mission, KS 66225



## CLAIM REPORTING FORM
### FIDELITY SUPPLEMENTAL

(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)

Issuing Company: *National Union Fire Insurance Company of Pittsburgh, Pa.*

Reported under Policy/Bond Number: __01-708-73-53__

Date of Discovery: _____   Estimated Amount of loss: _____

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | _____ | if Other, describe: | _____ |

Send Notice Of Claims To:   Chartis                           Phone: (888) 602- 5246
                             Financial Lines Claims            Fax:   (866) 227- 1750
                             P.O. Box 25947                    Email: c- Claim@chartisinsurance.com
                             Shawnee Mission, KS 66225

*centralized Customer* EXHAND INPormation *Management*



## Executive Liability Value Proposition

### Why Choose Chartis for your Executive Liability Coverage needs?

#### UNDERWRITING EXPERTISE & MARKET DEDICATION

- Named the #1 provider of Directors & Officers insurance and Employment Practices Liability insurance [1]
- More than four decades of experience and commitment to the market, offering stable, high-limit capacity with a diverse appetite for risk
- Broad and innovative product offering, including unrivaled international capabilities via our Passport platform
- Ongoing pursuit of outstanding client service through continuous dialogue and client feedback response
- Over 350 dedicated underwriting professionals with an average of 10 years of industry experience
- A dedicated legal staff skilled in developing manuscript solutions tailored to client coverage needs
- Regional offices provide local underwriting presence and authority, delivering expertise and solutions across all lines of business
- Specialized underwriting and claims units focused on key segments, including Errors and Omissions, Financial Institutions, Fidelity and Private and Non-Profit
- Large geographic footprint that benefits companies doing business in multiple international jurisdictions
- Nearly 20,000 unique policyholders [2]

#### SUPERIOR CLAIMS MANAGEMENT

- We have a claims staff of 300 who manage 30,000 new claims per year, averaging 2,250 new claims per month
- Our claims management team has an average of 15 years of industry experience for management
- Total payments made by Executive Liability on behalf of its insureds in 2008 totaled more than $1.9 billion
- Resolved claims exceeding $8 million in value have increased over 850 percent since 1986 [3]
- The top 25 claims paid by Executive Liability in 2008 totaled over $300 million

#### CHARTIS FINANCIAL SNAP-SHOT

- Chartis U.S. Policyholder Surplus is $28 billion [4] (increased 58% from 12/31/05 to 12/31/09)
- In 2008, Chartis companies wrote in excess of $40 billion gross written premiums worldwide
- Chartis has ample resources to pay policyholder claims, paying $71 million in claims worldwide every business day in 2008
- Objective sources confirm our company's strong financial standing. From rating agencies to broker assessments, metrics in the insurance industry indicate that Chartis remains one of the most financially secure insurance organizations
- Our financial strength combined with our experience, global reach and broad range of product and service offerings, solve the insurance needs of 40 million clients worldwide

#### STAYING POWER

Our consistent market leadership and commitment has lasted for more than four decades, while other carriers shift their focus and support from year-to-year. Our global underwriting capacity, philosophy and expertise-coupled with our local presence-enables Executive Liability to assess the most complex risks and respond rapidly when unforeseen events occur.

1 The Risk and Insurance Management Society 2009 Benchmark Survey http://www.rims.org/resources/BenchmarkSurvey/Pages/default.aspx.
2 Does not include Programs or Small Business accounts.
3 NERA Economic Consulting.
4 Year ended December 31, 2009.

## INNOVATIVE SOLUTIONS

### Management Liability

**Executive Edge℠**: Primary public company D&O coverage with market leading features, including advancement of covered loss for directors and officers when the company fails or refuses to indemnify for any reason, worldwide investigation and inquiry coverage and a simplified "entity vs. insured" exclusion in place of the "insured vs. insured" exclusion.

**Executive Shield**: Follow form excess Side-A Directors & Officers Liability Insurance with Difference in Conditions coverage that is distinct from other Side-A DIC policies. The policy provides individual directors and officers with the coverage they need to protect themselves and their assets when facing a claim.

**PrivateEdge Plus**: A flexible modular package that offers market-leading management and professional liability coverage for private companies of any size. Choose one or combine multiple coverage options to customize a comprehensive program that meets specific business needs.

**Not-for-Profit-Risk-Protector®**: A flexible modular package policy designed to help non-profit organization clients manage their management liability and other liability risks. Choose one or combine multiple coverage options to customize a comprehensive program that meets specific business needs. The policy is available to all non-profit organizations regardless of revenue, asset size or employee count.

**Public Entity Plan and Trustee Protector**: A policy that protects individuals who manage governmental entity employee benefit plans from fiduciary liability exposures.

**Financial Institutions Risk Protector®**: A modular package of management and professional liability coverages for private and public financial institutions. Coverages can be bundled into one policy to provide flexible protection tailored for a financial institution's full spectrum of management and professional liability risks.

**Excess Edge℠**: Follow form excess management and professional liability coverage that reduces the administrative burden facing brokers and their clients when placing excess insurance for directors and officers liability, employment practices liability, fiduciary liability, errors and omissions liability, and other executive liability exposures.

### Professional Liability

**Specialty Risk Protector®**: A modular package of professional liability and data network security coverages for all types of businesses. Businesses can bundle multiple lines of coverage into one policy.

**Corporate Counsel Premier®**: Provides general counsel and other in-house attorneys employed by public and private companies with coverage for claims alleging professional malpractice.

**Lawyers Professional Liability Program**: This admitted program provides broad coverage for attorneys and includes crisis management coverage to help mitigate damage to a law firm's reputation.

**Personal Identity Coverage**: Enables organizations to extend expert assistance and financial relief to employees, customers or members who are victims of identity theft. This innovative program combines extensive recovery support as well as reimbursement of costs related to a theft incident.

### Value Added Services

**Passport**: State-of-the-market approach for multinationals to secure locally-admitted insurance that is in sync with local requirements and customs, and written in local language worldwide.

**EPL Pak® Premier**: The Employment Practices Liability Loss Prevention Pack offered through Jackson Lewis, LLP, helps insureds proactively mitigate employment practices exposures. The program includes both training programs that help instill proper employment practices within an organization and resources to keep employers informed of changing statutes, regulations and court decisions shaping the employment landscape.

**CrisisFund®**: Built-in crisis management enhancement provides policyholders with professional support, including a 24-hour hotline with access to claims specialists, and immediate funds in the event of a serious crisis. Up to $250,000 of additional policy limits available to cover immediate expenses and an additional $50,000 limit to retain the services of a public relations or crisis management firm.

**Fidelity Research and Investigative Settle Clause (FRISC)**: A unique provision in Fidelity policies that allows the insured to select an investigative specialist or forensic accountant to determine the facts of the case and quantify the loss. This sets the stage for an efficient, cooperative loss investigation and settlement process that can save the insured time and money. Even if the loss is ultimately determined to not be covered under the policy, the insurer still pays half of the investigation expenses.

**eDiscovery Solutions**: A litigation-management tool devised to create a strategy to handle the collection of electronically stored information throughout litigation.

**Panel Counsel**: Comprised of some of the nation's premier litigators who specialize in defending securities, employment practices, fiduciary liability and technology litigation. Participating law firms have a proven record of achieving litigation success while maximizing litigation efficiency. Consistent superior performance is required to maintain a position on the panel.

For more information about Executive Liability, please contact us at executiveliability@chartisinsurance.com or visit www.chartisinsurance.com.



CHARTIS
Your world, insured

Chartis is a world leading property-casualty and general insurance organization serving more than 40 million clients in over 160 countries and jurisdictions. With a 90-year history, one of the industry's most extensive ranges of products and services, deep claims expertise and excellent financial strength, Chartis enables its commercial and personal insurance clients alike to manage virtually any risk with confidence.

Chartis is the marketing name for the worldwide property-casualty and general insurance operations of Chartis Inc. For additional information, please visit our website at www.chartisinsurance.com. All products are written by insurance company subsidiaries or affiliates of Chartis Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

| | | |
|---|---|---|
| **Policy Number:** | **ELU125015-12** | ☐ **Greenwich Insurance Company** |
| **Renewal of Number:** | ELU120907-11 | ☒ **XL Specialty Insurance Company** |

Members of the XL America Companies

---

**EXCESS POLICY DECLARATIONS**

Executive Offices
70 Seaview Avenue
Stamford, CT 06902-6040
Telephone 877-953-2636

THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.

---

**Item 1.** **Name and Mailing Address of Insured Entity:**

Corinthian Colleges, Inc.
6 Hutton Center Drive
Santa Ana, CA  92707

---

**Item 2.** **Policy Period:** **From:** March 31, 2012 **To:** March 31, 2013

At 12:01 A.M. Standard Time at your Mailing Address Shown Above

---

**Item 3.** **Limit of Liability:**

$10,000,000  Aggregate each **Policy Period** (including Defense **Expenses**)

---

**Item 4.** **Schedule of Underlying Insurance:**

| | | Insurer | Policy No | Limit of Liability |
|---|---|---|---|---|
| (a) | Primary Policy | National Union Fire Insurance Company of Pittsburgh, Pa. | 01-708-73-53 | $10,000,000 |
| (b) | Underlying Excess Policy | | | |

---

**Item 5.** **Notices required to be given to the Insurer must be addressed to:**

Executive Liability Underwriters
One Constitution Plaza, 16th Floor
Hartford, CT  06103
Toll Free Telephone: 877-953-2636

---

**Item 6.** **Premium:**

| | |
|---|---|
| Taxes, Surcharges or Fees: | $0.00 |
| Total Policy Premium: | $247,000.00 |

---

**Item 7.** **Policy Forms and Endorsements Attached at Issuance:**

EX 71 01 09 99   EX 82 01 07 07   XL 80 24 03 03   EX 80 107 10 03   EX 80 75 09 02   EX 83 22 11 01
EX 80 279 08 11   XL 80 38 02 05   EX 80 54 11 01   EX 80 187 03 07   EX 80 175 07 06

---

EX 70 00 11 01

EX B - 105

### EXCESS POLICY DECLARATIONS

Countersigned: _____   By: _____
                         Date                                            Authorized Representative

---

THESE **DECLARATIONS** AND THE POLICY, WITH THE ENDORSEMENTS, ATTACHMENTS, AND THE **APPLICATION** SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE **INSURED** RELATING TO THIS INSURANCE.

---

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers, but this Policy will not be valid unless countersigned on the Declarations page, if required by law, by a duly authorized representative of the Insurer.**

Nicholas M. Brown, Jr.                          Theresa M. Morgan
President                                                Secretary

**Greenwich Insurance Company**

Nicholas M. Brown, Jr.                          Theresa M. Morgan
President                                                Secretary

**XL Specialty Insurance Company**

EX B - 106

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-0636
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Insurer.

Bernard R. Horovitz
President

Toni Ann Perkins
Secretary

LAD 400 XLS 0710

© 2010 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Program Reauthorization Extension Act of 2007, the definition of "act of terrorism" has changed.  As defined in Section 102(1) of the Act:  The term "act of terrorism" means any act that is certified by the Secretary of the Treasury in concurrence with the Secretary of the State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses caused by certified acts of terrorism may be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  However, your policy may contain other exclusions that may affect your coverage.  The Terrorism Risk Insurance Program Reauthorization Extension Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.  Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION EXTENSION ACT OF 2007, ANY LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE WILL BE PARTIALLY REIMBURSED BY THE UNITED STATES AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **ELU125015-12**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.   You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*.   This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran*.  This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©2010 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

# PRIVACY POLICY

The XL America, Inc. insurance group ("We" or "Our Group"), respects the privacy of all personal information. Thus, the information We collect from our customers, or potential customers, is treated with the highest degree of privacy.

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws.

The term "personal information" includes all information we obtain about a customer and maintain in our files. All persons with access to personal information are required to follow this policy.

## Our Privacy Promise

Your privacy rights are important to us. Analysis of your private information allows us to provide to you excellent service and products. Your trust in us depends upon the security and integrity of our records. Thus, We promise to:

1) Follow strict security standards. This will protect any information you share with us, or that we receive about you.
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management. We will obtain only reputable references and services.
3) Collect and use the least amount of information necessary to:
   a. advise you and deliver excellent service and products; and
   b. conduct our business.
4) Train our employees to securely handle private information. We will only permit authorized employees to have access to such information.
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a. we disclose to you our intent to do so; or
   b. we are required to do so by law.
6) Not disclose medical information unless:
   a. you give us written consent to do so; or
   b. We disclose for any exception provided in the law.
7) Attempt to keep our records complete and exact.
8) Advise you how and where to access your account (unless prohibited by law).
9) Advise you how to correct errors or make changes to your account.
10) Inspect our procedures to ensure your privacy.

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services.

The information we collect comes from the following sources:
- **Submission** – In the application, you provide: your name; address; phone number; e-mail address; and other types of private information.
- **Quotes** – We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost.

The data we collect will vary with the type of insurance you seek.
- **Transactions** – We maintain records of all transactions with Our Group and our third party providers. Our records include:

      1)    your coverage choices;
      2)    premiums; billing; and payment records,
      3)    claims history; and
      4)    other data related to your account.

- **Claims** – We maintain records on any claims that are made under your policies.  The investigation of a claim involves collection of a broad range of information.  It also involves many issues, some of which do not directly involve you.  We will share with you facts that we collect about your claim; unless prohibited by law.  The process of claim investigation also involves advice; opinions; and comments from many people.  These may include attorneys and experts.  This will help us determine how best to handle your claim.  To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you.
- **Credit and Financial Reports** – We may receive your credit history.  This is to support information you provided during the submission and quote processes.  This history will help to underwrite your coverage.

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods.  If we become aware that any information may be incorrect, we will make reasonable effort to correct it.

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes.  This is true unless such sharing is permitted by law.  Information may be shared with a third party for necessary servicing of the product.  It may also be disclosed for other business reasons as permitted by law.

We do not share personal data outside of Our Group for servicing or joint marketing reasons.  We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party.

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group.  "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc.); solvency, etc.

We also do not disclose outside of Our Group personal information for use in marketing.  We may share information within Our Group regarding our experience and dealings with the customer.

We may disclose private information about a customer as allowed or otherwise required by law.  The law allows us to share a customer's financial data within Our Group for marketing purposes.  The law does not allow customers to limit or prevent such disclosures.

We may also disclose personal information about you or your business to:
- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies.  This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order.  This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation.  This applies whether the transaction is proposed or complete;

- a professional peer review group.  This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer.  However, such consent shall not be prohibited, limited or sought for certain insurance functions.  This includes, but is not limited to:

    a.    claims administration;
    b.    fraud prevention;
    c.    underwriting; policy placement or issuance; loss control or auditing.

## Access to Your Information

The following persons will have access to personal information we collect:
employees of Our Group and third party service providers.  Information will only be collected as is needed in transactions with you.

## Violation of the Privacy Policy

Any person violating this Policy will be subject to discipline. This may include termination.

For questions regarding this privacy statement, please contact your broker.

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EX B - 113

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.
EX B - 115

# NOTICE TO POLICYHOLDERS

**IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA**

In the event you need to contact someone about this Policy for any reason please contact your agent.  If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

>XL Insurance
>Seaview House
>70 Seaview Avenue
>Stamford, CT  06902-6040
>1-800-622-7311

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

>California Department of Insurance
>Consumer Communications Bureau
>300 South Spring Street, South Tower
>Los Angeles, CA  90013
>
>1-800-927-4357
>213-897-8921 (if calling from within the Los Angeles area)
>1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EX B - 116

**Endorsement No.: 1**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# CHANGE OF INSURER ADDRESS AND PREAMBLE ENDORSEMENT

(1)     The Declarations of the Policy are amended as follows:

**Notices required to be given to the Insurer must be addressed to:**

**Notice to Claim Dept:**
XL Professional
One Hundred Constitution Plaza, 18th Floor
Hartford, CT 06103
Attn: Claim Dept.

**All other Notices:**
XL Professional
One Hundred Constitution Plaza, 17th Floor
Hartford, CT 06103
Attn: Underwriting

All references in the policy to other addresses for Notice to the Insurer shall be deemed amended.

(2)     The preamble to this Policy is amended to read in its entirety as follows:

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 24 03 03

**Endorsement No.: 2**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# TERRORISM PREMIUM ENDORSEMENT

Please note: The portion of your annual premium set forth in Item 6. of the Declarations that is attributable to coverage for acts of terrorism is: $ waived.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX B - 118

EX 80 107 10 03

**Endorsement No.: 3**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCESS TERRORISM ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that any endorsement of the Underlying Insurance which specifically precludes coverage for an "insured loss" resulting from an "act of terrorism" (as such terms are defined in the Terrorism Risk Insurance Act of 2002) which would otherwise be provided coverage under the Underlying Insurance shall be inapplicable to this Policy (any such endorsement, a "Terrorism Endorsement"). Subject to all other terms, conditions and limitations of the Policy and the Underlying Insurance, other than the Terrorism Endorsement, coverage for acts of terrorism is included in this Policy. In any event, coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, regardless of whether any such Terrorism Endorsement is included in any Underlying Insurance. The Insurer will not be liable under this Policy to any earlier degree than the Insurer would have had this Endorsement not been a part of this Policy.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 75 09 02

**Endorsement No.: 4**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# EXCESS ENDORSEMENT

In consideration of the premium charged:

(1)     It is understood and agreed that the Limit of Liability for this Policy as set forth in Item 3 of the Declarations is the maximum amount payable, including Defense Expenses, by the Insurer under this Policy.  Any provision of the Underlying Insurance indicating any ability or right to any reinstatement of such policy's limit of liability shall be inapplicable to this Policy, including any provision indicating a reinstatement of such policy's limit of liability during any extended discovery or reporting period.  The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

(2)     It is understood and agreed that the Insurer is under no obligation to renew this Policy upon its expiration. Any provision of the Underlying Insurance indicating any automatic renewal of this Policy shall be inapplicable to this Policy.   The Insurer shall not be liable to the Insureds or any other person or entity claiming through or in the name or right of the Insureds for any loss or other liability based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the application or enforcement of any such provision of the Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 83 22 11 01

**Endorsement No.: 5**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PENDING AND/OR PRIOR LITIGATION EXCLUSION

In consideration of the premium charged, no coverage will be available under this Policy for claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, event or wrongful act, underlying or alleged in any prior and/or pending litigation or administrative or regulatory proceeding or arbitration which was brought prior to February 04, 1999.

All other terms, conditions and limitations of this Policy shall remain unchanged.

**Endorsement No.: 6**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# PAYMENT OF LOSS ENDORSEMENT

In consideration of the premium charged:

(1)     Section I Insuring Agreement is amended to read in its entirety as follows:

"I.      INSURING AGREEMENT

The Insurer will provide the Insured with insurance coverage for claims first made against the Insured during the Policy Period excess of the Underlying Insurance stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the Primary Policy together with the terms, conditions, endorsements and warranties of any other Underlying Insurance. The coverage hereunder will attach only after all of the Underlying Insurance has been exhausted by the actual payment of loss by the applicable insurers thereunder, by the Insured, by the insurer(s) of any A-side Excess Policy, as defined below, (the "A-side Insurer"), or any third party and in no event will the coverage under this Policy be broader than the coverage under any Underlying Insurance."

(2)     Section III Depletion of Underlying Limits of Liability is amended to read in its entirety as follows:

"III.     DEPLETION OF UNDERLYING LIMITS OF LIABILITY

(A)     This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the Underlying Insurance, will continue to apply to loss as excess insurance remaining under such Underlying Insurance, in the event of the reduction or exhaustion of the limits of liability of the Underlying Insurance solely as the result of the actual payment of loss by the applicable insurer thereunder, by the Insured, by the A-side Insurer or any third party.

(B)     This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the Underlying Insurance, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such Underlying Insurance solely as the result of the actual payment of loss by the applicable insurer thereunder, by the Insured, by the A-side Insurer or any third party.

(C)     Any risk of uncollectibility with respect to the Underlying Insurance will be expressly retained by the Insured and will not be assumed by the Insurer.

This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the Underlying Insurance or for any other reason except for the actual payment of loss by the applicable Insurer thereunder, by the Insured, by the A-side Insurer or any third party."

(3)     Solely for the purposes of this endorsement, the term "A-Side Excess Policy" means the following policy(ies) scheduled below:

N/A

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 38 02 05

**Endorsement No.: 7**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# INCONSISTENCY ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this Policy and any term or condition of this Policy modified by another endorsement attached to this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of the endorsement which are more favorable to the Insured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

XL 80 38 02 05

Page 1 of 1

**EX 80 54 11 01**

**Endorsement No.: 8**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# DELETE POLICY TERMINATION CLAUSE

In consideration of the premium charged, Section VIII. Policy Termination is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 187 03 07

**Endorsement No.: 9**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# NOTICE OF CLAIM ENDORSEMENT

In consideration of the premium charged:

(1)     Section VII Notice (A) of the Policy is deleted in its entirety.

(2)     The coverage provided under this Policy will specifically apply in conformance with, and subject to, Section 7 of the Primary Policy, along with any endorsements thereto; provided that any notice required or permitted under such section of the Primary Policy must also be provided in writing to the Insurer at the address set forth in Item 5 of the Declarations.

(3)     Except as specifically set forth in this Endorsement, coverage under this Policy will, subject to its terms, conditions, limitations and endorsements, apply in conformance with the terms, conditions, limitations, endorsements and warranties of any other Underlying Insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 187 03 07

Page 1 of 1

EX 80 175 07 06

**Endorsement No.: 10**
**Named Insured: Corinthian Colleges, Inc.**
**Policy No.: ELU125015-12**

**Effective: March 31, 2012**
**12:01 A.M. Standard Time**
**Insurer: XL Specialty Insurance Company**

# FOLLOW FORM OF SUBLIMITED COVERAGE ENDORSEMENT

In consideration of the premium charged:

(1)     For the purposes of this endorsement, the term "Sublimit" means any limit of liability of any Underlying Insurance which:

    (a)     applies only to a particular grant of coverage under such Underlying Insurance; and

    (b)     is part of, and not in addition to, the otherwise applicable limits of liability of such Underlying Insurance set forth in Item 4 of the Declarations.

(2)     It is understood and agreed that in the event of the exhaustion of any Sublimit solely as the result of actual payment of claims or losses under the Underlying Insurance, the limit of liability available under this Policy shall, subject to such limits of liability and to all other terms, conditions and limitations of the Policy (including but not limited to the application of the terms and conditions of the Underlying Policy with respect to such Sublimit) shall apply to such claims.  With respect to this Policy, it is understood and agreed that the Sublimit shall be part of, and not in addition to, the applicable maximum aggregate Limit of Liability of this Policy as set forth in Item 3 of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

EX 80 175 07 06

Page 1 of 1

# EXCESS POLICY COVERAGE FORM

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY INSURED. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**In consideration of the payment of the premium, and in reliance on all statements made and information furnished to Executive Liability Underwriters, the Underwriting Manager for the Insurer identified in the Declarations (hereinafter the Insurer) and to the issuer(s) of the Underlying Insurance, and subject to all of the terms, conditions and endorsements of this Policy, the Insurer and the Insured Entity, on its own behalf and on behalf of all persons and entity(s) entitled to coverage hereunder, agree as follows:**

## I.    INSURING AGREEMENT

The Insurer will provide the **Insured** with insurance coverage for claims first made against the **Insured** during the **Policy Period** excess of the **Underlying Insurance** stated in ITEM 4 of the Declarations. Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of the **Primary Policy** together with the terms, conditions, endorsements and warranties of any other **Underlying Insurance**.  The coverage hereunder will attach only after all of the **Underlying Insurance** has been exhausted by the actual payment of loss by the applicable insurers thereunder and in no event will the coverage under this Policy be broader than the coverage under any **Underlying Insurance**.

## II.    DEFINITIONS

(A)    "**Insured**" means, either in the singular or plural, those persons or organizations designated as insureds in the **Underlying Insurance**.

(B)    "**Policy Period**" means the period designated in ITEM 2 of the Declarations, or to any earlier cancellation date.

(C)    "**Primary Policy**" means the policy designated in ITEM 4 (A) of the Declarations.

(D)    "**Underlying Insurance**" means all policy(s) designated in ITEM 4 of the Declarations.

## III.    DEPLETION OF UNDERLYING LIMITS OF LIABILITY

(A)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue to apply to loss as excess insurance remaining under such **Underlying Insurance**, in the event of the reduction or exhaustion of the limits of liability of the **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(B)    This Policy, subject to the terms, conditions, limitations and endorsements of this Policy and the **Underlying Insurance**, will continue for subsequent claims or loss as primary insurance in the event of the exhaustion of all of the limits of liability of such **Underlying Insurance** solely as the result of the actual payment of loss by the applicable insurer thereunder.

(C)    Any risk of uncollectibility with respect to the **Underlying Insurance** will be expressly retained by the **Insured** and will not be assumed by the **Insurer**.

This Policy, subject to all its terms, conditions and endorsements, will not drop down for any reason including, but not limited to uncollectibility (in whole or in part) whether because of financial impairment or insolvency of the **Underlying Insurance** or for any other reason except for the actual payment of loss by the applicable Insurer thereunder.

## IV.    MAINTENANCE OF UNDERLYING INSURANCE

(A)    The limit(s) of liability of the **Underlying Insurance** designated in ITEM 4 of the Declarations shall be maintained during the Policy Period in full effect except for any reduction or exhaustion of the aggregate limits of liability available under the **Underlying Insurance** solely by reason of actual payment of loss thereunder. Failure to comply with the foregoing will not invalidate this Policy but the Insurer will not be liable to a greater extent than if this condition had been complied with. If for any reason the **Underlying Insurance** is not maintained, then the **Insured** will be deemed to be self-insured for that amount of the limit(s) of liability of such **Underlying Insurance**.

(B)    In the event of a change of any kind to any **Underlying Insurance** by endorsement, rewrite or otherwise, the coverage under this Policy will become subject to such change only if and to the extent that the Insurer consents to such change by written endorsement to this Policy.

(C)    The Insurer will not be liable under this Policy earlier or to any greater extent than it would have been as a result of the actual or alleged failure by the **Insureds** to give notice or to exercise any extensions under any **Underlying Insurance**, or misrepresentation or breach of warranty with respect to any **Underlying Insurance**.

## V.    CLAIM PARTICIPATION

The Insurer may, at its sole discretion, elect to participate in the investigation, settlement and/or defense of any claim against the **Insured** even if the **Underlying Insurance** has not been exhausted and the **Insured** will provide such information and cooperation as is reasonably requested.

## VI.    LIMIT OF LIABILITY

The amount stated in ITEM 3 of the Declarations is the limit of liability of the Insurer and shall be the maximum amount payable, including Defense Expenses, by the Insurer under this Policy. Defense Expenses are part of and not in addition to the limit of liability and the payment of such will reduce the limit of liability.

## VII.    NOTICE

The **Insured** will, as a condition precedent to the coverage available under this Policy, give written notice as soon as practicable to the Insurer of:

(A)    any claim under any **Underlying Insurance**, or any situation that is required to be reported under any **Underlying Insurance** that could give rise to a claim under any **Underlying Insurance**;

(B)    the cancellation of any **Underlying Insurance**;

(C)    any change to the **Underlying Insurance** by rewrite, endorsement or otherwise; or

(D)    any additional or return premiums charged or allowed in connection with any **Underlying Insurance**.

The Insured Entity will be the sole agent for and will act on behalf, of the **Insured** with respect to all matters under this Policy, including but not limited to giving and receiving notices and other communications, effecting or accepting any endorsements to or notice of cancellation of this Policy, paying premium and receipt of any return premiums.

Notice given to any underlying insurer of any claim or any situation that could give rise to a claim under any **Underlying Insurance** scheduled in ITEM 4 of the Declarations will not be deemed notice to the Insurer. Notice of any claim or situation that could give rise to a claim must be sent by certified mail or the equivalent to the address set forth in ITEM 5 of the Declarations; Attention: Claim Department.

### VIII.    POLICY TERMINATION

(A)    The **Insured Entity** may cancel this Policy by mailing to the Insurer written notice when such cancellation shall be effective, provided the date of cancellation is not later than the Expiration Date set forth in ITEM 2 of the Declarations.

(B)    The Insurer will refund the unearned premium computed at the customary short rate if the Policy is canceled by the **Insured Entity**. Under all other circumstances, any unearned premium will be computed pro rata.

(C)    This Policy will terminate immediately upon the termination of any of the policies scheduled in ITEM 4 of the Declarations, whether canceled by the **Insured Entity** or the applicable insurer. Notice of cancellation or non-renewal of any such policies duly given by any of the applicable insurers shall serve as notice of the cancellation or non-renewal of this Policy by the Insurer.

### IX.    ALTERATION

No change in or modification of this Policy shall be effective unless made by endorsement signed by an authorized employee of the Insurer.

# EXCESS LIABILITY POLICY DECLARATIONS



Corporate Office
945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

| COMPANY SYMBOL | POLICY PREFIX & NUMBER | RENEWAL OF |
|---|---|---|
| N | HS645655 | NHS640847 |

●THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.●

THIS POLICY IS ISSUED BY:  RSUI Indemnity Company (hereinafter referred to as the Insurer)

**ITEM 1.** INSURED'S NAME AND MAILING ADDRESS                                    PRODUCER'S NAME AND ADDRESS

CORINTHIAN COLLEGES, INC.

6 HUTTON CENTRE DRIVE, SUITE 400

SANTA ANA, CA 92707

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS HEREIN OR ATTACHED HERETO, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE INSURER AGREES TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM 2. POLICY PERIOD:**

FROM      3/31/2012      TO      3/31/2013      12:01 AM Standard Time at the Insured's address as stated herein

**ITEM 3. LIMIT OF LIABILITY:**     $      5,000,000     (A) Aggregate Limit of Liability each policy period

$      20,000,000     (B) Underlying Limits of Liability

**ITEM 4. PREMIUM:**     $      85,500.00

**ITEM 5. COVERAGE:**     Directors and Officers Liability

**ITEM 6. POLICY FORM AND ENDORSEMENTS MADE A PART OF THIS POLICY AT THE TIME OF ISSUE:**
SEE RSG 230014 1007 - SUPPLEMENTAL DECLARATIONS - SCHEDULE OF ENDORSEMENTS; RSG 231007 0609 - EXCESS LIABILITY POLICY - 2009

**ITEM 7. FOLLOWED POLICY**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | #01-708-73-53 | $10,000,000 | $416,774.00 |

**ITEM 8. UNDERLYING INSURANCE**

**(A) Primary Policy:**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | #01-708-73-53 | $10,000,000 | $416,774.00 |

**(B) Underlying Excess Policy(ies):**

| Insurer | Policy Number | Limits | Premium |
|---|---|---|---|
| XL Specialty Insurance Company | #ELU125015-12 | $10,000,000 xs $10,000,000 | $247,000.00 |

THESE DECLARATIONS TOGETHER WITH THE COMPLETED, SIGNED AND DATED APPLICATION, POLICY FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: _____     April 19, 2012     _Wallace_____

DATE     AUTHORIZED REPRESENTATIVE

# EXCESS LIABILITY POLICY SUPPLEMENTAL DECLARATIONS



POLICY NUMBER:    NHS645655

## SCHEDULE OF ENDORSEMENTS

| TITLE | FORM NUMBER |
|-------|-------------|
| Disclosure Pursuant to Terrorism Risk Insurance Act | RSG 204123 0108 |
| Cap on Losses From Certified Acts of Terrorism | RSG 204081 0108 |
| Exclusion - Prior and or Pending Litigation Backdated | |
| Recognize DIC Payments as Underlying Insurance | RSG 234026 0608 |

**RSUI INDEMNITY COMPANY**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE A PART OF THIS POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THIS POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE*

| | |
|---|---|
| **Terrorism Premium (Certified Acts)** | $   Waived |
| **Additional information, if any, concerning the terrorism premium:** | |

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations Page.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act, the **Insurer** is required to provide the **Insured** with a notice disclosing the portion of the **Insured's** premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of the **Insured's** premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations Page.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals eighty-five percent (85%) of that portion of the amount of such insured losses that exceeds the applicable **Insurer's** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Policy No.:** NHS645655     **Effective:** 3/31/2012

RSG 204123 0108

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EX B - 132

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**DIRECTORS AND OFFICERS LIABILITY POLICY – NOT FOR PROFIT ORGANIZATIONS**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PUBLIC COMPANY**
**DIRECTORS AND OFFICERS LIABILITY POLICY - PRIVATE COMPANY**
**EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY**
**EXCESS LIABILITY POLICY**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and the **Insurer** has met our insurer deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHS645655     **Effective:** 3/31/2012

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# EXCLUSION-PRIOR AND OR PENDING LITIGATION BACKDATED- FOLLOWING PRIMARY

This endorsement modifies insurance provided under the following:

### EXCESS DIRECTORS AND OFFICERS LIABILITY POLICY
### EXCESS LIABILITY POLICY

The Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured Person** alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any **Insured Person** that was commenced or initiated prior to, or pending as of <u>February 04, 1999,</u> or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such poor or pending litigation.

Notwithstanding the preceding paragraph, which is provided solely for identification and reference purposes, the Insurer shall follow form of and incorporate into this policy, the substantively similar exclusion or endorsement of the **Followed Policy** except that the operative date of such exclusion or endorsement shall remain as set forth in the preceding paragraph.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHS645655    **Effective:** 3/31/2012

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

# RECOGNIZE DIC PAYMENT AS UNDERLYING INSURANCE

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY POLICY**

SECTION III. - LIMIT OF LIABILITY AND PAYMENTS UNDER UNDERLYING INSURANCE, A. is deleted and replaced by the following:

**A.** The Insurer shall be liable to pay **Loss** only after all Insurers that issued the **Underlying Insurance**, the **Insureds** and/or the Insurers of any excess DIC Side A policy specifically excess of this policy shall have paid the full amount of the limits provided by the **Underlying Insurance**.  The Insurer shall then be liable to pay only such additional amount up to the Limit of Liability set forth in Item 3. (A) of the Declarations Page.

SECTION IV. – MAINTENANCE OF UNDERLYING INSURANCE, B. and C. are deleted and replaced by the following:

**B.** The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the aggregate limits contained therein (as provided for in this Endorsement, or otherwise in this policy), and such maintenance shall be a condition precedent to the attachment of any liability of the Insurer under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force and no difference in conditions carrier paid, the **Insured** shall be deemed to be self-insured for the amount of the **Underlying Insurance** limit (s) that is not maintained.

**C.** The Insurer's obligation under this policy shall not be increased, expanded or otherwise modified or changed as a result of the receivership, insolvency, inability or refusal to pay any **Underlying Insurance**. It is agreed that the Insurer shall not pay any amount until all retentions and all **Underlying Insurance** limits have actually been paid by Insurers that issued the **Underlying Insurance**, the **Insureds** and/or the Insurers of any excess DIC Side A policy specifically excess of this policy.

All other terms and conditions of this policy remain unchanged.

**Policy No.:** NHS645655        **Effective:** 3/31/2012

RSG 234026 0608



**RSUI Indemnity Company**

**Corporate Office**
945 East Paces Ferry Rd.
Atlanta, GA 30326-1160

# EXCESS LIABILITY POLICY

**NOTICE:** THIS IS A **CLAIMS** MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE **CLAIMS** FIRST MADE AGAINST THE **INSURED** DURING THE **POLICY PERIOD** AND REPORTED TO THE INSURER DURING THE **POLICY PERIOD**.  THE LIMIT OF LIABILITY AVAILABLE TO PAY **LOSS** MAY BE REDUCED OR TOTALLY EXHAUSTED BY PAYMENT OF DEFENSE EXPENSES. PLEASE REFER TO THE **FOLLOWED POLICY** FOR MORE INFORMATION.

**PLEASE READ YOUR POLICY CAREFULLY**

## CLAIM NOTICE

| | |
|---|---|
| **Mail notices to:** | **RSUI Group, Inc.**<br>**945 East Paces Ferry Rd.**<br>**Suite 1800**<br>**Atlanta, GA 30326-1160** |
| **Fax notices to:** | **(404) 260-3997**<br>**Attn: Claims Department** |
| **E-mail notices to:** | **reportclaims@rsui.com** |

*A member of Alleghany Insurance Holdings LLC*

Words and phrases that appear in **bold** text have special meaning.  Refer to SECTION II. - DEFINITIONS.

**I.    INSURING AGREEMENT**

The Insurer designated on the Declarations Page, in consideration of the payment of the premium and in reliance upon all applications, documents and information provided or made available to it by or on behalf of the **Insured**, and subject to all of the terms, conditions and other provisions of this policy, including endorsements hereto, agrees with the **Insured** that the Insurer shall provide the **Insured** with insurance during the **Policy Period** which is in excess of the total limits of liability and any retention or deductible amounts under the **Underlying Insurance**, as set forth in Item 8. of the Declarations Page, and shall pay **Loss** arising from a **Claim** for a **Wrongful Act** first made during the **Policy Period.**

**II.   DEFINITIONS**

**A.**   **Followed Policy** means the policy indicated in Item 7. of the Declarations page**.**

**B.**   **Insured** means any natural person or entity designated as such in the **Underlying Insurance**.

**C.**   **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations Page or any earlier cancellation or termination date.

**D.**   **Underlying Insurance** means the **Primary Policy** and **Underlying Excess Policy(ies)** listed in Item 8. of the Declarations page.

**E.**   The terms **Wrongful Act**, **Loss** and **Claim** shall each have the same meaning as defined in the **Primary Policy**.

**III.  LIMIT OF LIABILITY AND PAYMENTS UNDER UNDERLYING INSURANCE**

**A.**   The Insurer shall be liable to pay **Loss** only after any combination of the **Insured** and all Insurers that issued the **Underlying Insurance** shall have paid the full amount of the limits provided by the **Underlying Insurance**.   The Insurer shall then be liable to pay only such additional amount up to the Limit of Liability set forth in Item 3. (A) of the Declarations Page.

**B.**   Any **Claim**, **Loss** or coverage that is subject to any Sublimit shall not be considered a covered **Loss** under this policy, but shall, for purposes of this policy's attachment, be deemed to have reduced or exhausted the **Underlying Insurance** limits.

**C.**   In the event of the reduction or exhaustion of the aggregate limits of liability in the **Underlying Insurance** by reason of **Loss** paid thereunder for **Claim(s)** first made during the **Policy Period**, this policy shall (1) in the event of reduction, continue in force in excess of the remaining amount of **Underlying Insurance**; or (2) in the event of total exhaustion, continue in force as would the **Followed Policy**, subject to all terms, conditions and other provisions of this policy, including endorsements hereto; provided that in the event of this policy becoming primary insurance, it shall only pay excess of the retention or deductible amount, if any, that would be applicable in the absence of **Underlying Insurance** exhaustion, which retention or deductible amount shall be applied to any subsequent **Loss**. Notice of reduction or exhaustion of any limits of liability within the **Underlying Insurance** shall be given to the Insurer promptly upon such reduction or exhaustion. Nothing herein shall be construed to provide for any duty on the part of the Insurer to defend any **Insured** or to pay defense costs or any other part of **Loss** in addition to the Limit of Liability set forth in Item 3. (A) of the Declarations Page.

**IV.  MAINTENANCE OF UNDERLYING INSURANCE**

**A.**   This policy is subject to the same terms, conditions, other provisions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in the **Followed Policy** as such policy has been represented to the Insurer to be issued, or as may be added at a later time to restrict coverage. Any changes made to such **Followed Policy** to expand or broaden it shall be effective as part of this policy solely where accepted in writing by the Insurer.

**B.**   The **Underlying Insurance** shall be maintained in full effect while this policy is in force, except for any reduction of the aggregate limits contained therein (as provided for in Section III. C. above), and such maintenance shall be a condition precedent to the attachment of any liability of the Insurer under this policy. To the extent that any **Underlying Insurance** is not maintained in full effect while this policy is in force, the **Insured** shall be deemed to be self-insured for the amount of the **Underlying Insurance** limit(s) that is not maintained.

**C.**   The Insurer's obligation under this policy shall not be increased, expanded or otherwise modified or changed as a result of the receivership, insolvency, inability or refusal to pay any **Underlying Insurance**. It is agreed that the Insurer shall not pay any amount until all retentions and all **Underlying Insurance** limits have actually been paid by any combination of the **Insured** and all Insurers constituting the **Underlying Insurance**.

**V.   CLAIM AND OTHER NOTICES**

The Insurer shall be given notice in writing as soon as practicable: (a) in the event of cancellation or non-renewal of any **Underlying Insurance**; and (b) of any additional or return premiums assessed in connection with any **Underlying Insurance**. Any changes in policy provisions in the **Underlying Insurance** or any changes in the **Insured** that would require notice under the **Underlying Insurance** shall be reported to the Insurer in writing as soon as practicable, provided always that the Insurer shall not be bound by any such changes without its consent.

Written notice of **Claim** made against any **Insured** or any circumstances or matters that might later result in a **Claim** shall be given to the Insurer in the same manner and at the same time as given to the **Followed Policy**.

**In Witness Whereof**, the Insurer has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned on the Declarations Page by a duly authorized agent of the Insurer.

Secretary

President