IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., *et al.*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 15-10952 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: June 22, 2015 at 10:00 a.m.<br>(prevailing Eastern Time)<br><br>Objection Deadline: June 15, 2015 at 4:00 p.m.<br>(prevailing Eastern Time)] |

**DECLARATION OF WAYNE P. WEITZ IN SUPPORT OF THE APPLICATION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN
ORDER APPROVING THE EMPLOYMENT AND RETENTION OF
GAVIN/SOLMONESE LLC *NUNC PRO TUNC* TO
MAY 13, 2015 AS FINANCIAL ADVISOR TO
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

I, Wayne P. Weitz, hereby declare under penalty of perjury:

1. I am a Managing Director of the firm Gavin/Solmonese LLC ("Gavin/Solmonese"), with offices at 919 N. Market Street, Suite 600; Wilmington, DE 19801 and other locations, and I am duly authorized to make this statement on behalf of Gavin/Solmonese. This Declaration is given in support of the *Application of the Official Committee of Unsecured Creditors for an Order Pursuant to Bankruptcy Code Sections 328 and 1103 and Bankruptcy Rule 2014(a) Approving the Employment and Retention of*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505, SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

*GAVIN/SOLMONESE LLC* Nunc Pro Tunc *to May 13, 2015, as Financial Advisor to the Official Committee of Unsecured Creditors*, in part on personal knowledge and in part on information and belief based on discussions with individuals at Gavin/Solmonese whom I consider reliable for the purposes of the matters discussed, and in part on reviewing records provided to me by Gavin/Solmonese colleagues and employees.

2. With headquarters in Wilmington, DE and offices in Chicago, New York and Washington, DC, Gavin/Solmonese has extensive experience and expertise as financial advisors and turnaround management specialists in bankruptcy and reorganization proceedings. The Official Committee of Unsecured Creditors (the "Committee") in these cases seeks the employment of Gavin/Solmonese to provide financial advisory services for the Committee in connection with carrying out its fiduciary duties and responsibilities under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") consistent with §1103(c) and other provisions of Title 11.

3. Gavin/Solmonese is well qualified to provide financial advisory services to the Committee of Corinthian Colleges, Inc. *et al.* (the "Debtors") in these Chapter 11 cases. Gavin/Solmonese professionals have broad-based experience and a respected reputation as financial advisors in bankruptcy and reorganization proceedings. In fact, Gavin/Solmonese, formerly known as NHB Advisors, Inc., is one of the country's premier mid-market turnaround and crisis management firms. Through Gavin/Solmonese, the Committee will have the benefit of such knowledge and experience as may be needed.

4. Gavin/Solmonese is not a law firm and does not "represent" clients in the sense that attorneys do, nor is Gavin/Solmonese subject to licensing requirements or conflicts of interest regulations pursuant to state law.

5. Gavin/Solmonese has numerous employee professionals ("Employees") and several non-employee independent contractors ("Associates"). Compensation received by the Employees is substantially unrelated to fees received by Gavin/Solmonese from any particular client. The Associates each have written independent contractor agreements with Gavin/Solmonese or its predecessor entities pursuant to which they provide services to Gavin/Solmonese or its predecessor and, through Gavin/Solmonese, to its clients, through a business entity owned by each Associate and of which the Associate is the sole employee, except possibly for family members. Each of the Associates are considered regular members of Gavin/Solmonese's professional staff and may be featured in Gavin/Solmonese's marketing literature and on its website. Compensation received by the Associates or their respective entities is based in substantial part upon fees received by Gavin/Solmonese from each of Gavin/Solmonese's clients.

6. Gavin/Solmonese has undertaken an extensive examination of its database of existing and former clients to determine whether it had or has any connections with parties in interest in these cases. Specifically, based upon the information provided by the Debtors, Gavin/Solmonese's analysis included: the Debtors; the Debtors' insiders, the thirty (30) largest unsecured creditors of the Debtors as listed on the Debtors' voluntary petition; professionals for the Debtors; the United States Trustee's Office; current officers and directors; and any known parties to any known executory contracts sought to be rejected by the Debtors.

7. Based on the database examination specified above, Gavin/Solmonese wishes to disclose as follows: The Official Committee of Unsecured Creditors has proposed to retain Brown Rudnick LLP and The Rosner Law Group LLP as its counsel. In

addition, the Debtors have retained Richards, Layton & Finger P.A. as counsel. The Official Committee of Student Creditors has retained Robins Kaplan LLP and Polsinelli PC as its counsel. Gavin/Solmonese has in the past, either directly or through predecessors, worked in the same cases as, and may currently work in the same cases as, some of the professional firms that will be involved in these cases, including those set forth above, in connection with matters wholly unrelated to these Chapter 11 proceedings. One or more individual creditors of the Debtors may also be creditors in other, unrelated, cases in which Gavin/Solmonese is employed, either as an advisor or as a post-confirmation liquidating trustee. In addition, Gavin/Solmonese has been in the past and may, in the future, be referred to companies by some or all of the professional firms referenced herein and/or refer opportunities for work to the professional firms referenced herein.

8. In an effort to comply with recent guidance with respect to disclosures pursuant to Bankruptcy Rule 2014 and the means by which these disclosures are best managed, Gavin/Solmonese has implemented a series of steps to be followed by all Employees and Associates when seeking engagement in a case by an Official Committee (the "Creditor Contact Disclosure Protocol"). Gavin/Solmonese trifurcates the members of the creditors body into distinct groups for purposes of this disclosure, based on the degree of contact Gavin/Solmonese had with the respective creditors prior to the organizational meeting of the Committee: Creditor Discussions; Creditor Contacts, and; Creditor No-Contacts.

a. Creditor Discussions are those instances where Gavin/Solmonese contacted a member of the largest creditors list as filed by the Debtors with their bankruptcy petitions and where the creditor invited Gavin/Solmonese to send along overview information about Gavin/Solmonese via email and where the creditor may have initiated con-

tact with the firm or where substantive discussions occurred with between Gavin/Solmonese, the creditor and/or the creditor's counsel. Creditor Discussions did not occur with any creditors in this case.

    b. Creditor Contacts are those instances where Gavin/Solmonese made telephonic or email contact with a creditor but, either due to lack of interest in serving on the committee on the creditors' part or because the creditor did not wish to receive any information from Gavin/Solmonese (for any reason), no information about Gavin/Solmonese was sent and no further contact occurred. Creditor Contacts did not occur with any creditors in this case.

    c. No-Contact Creditors are those instances where, for any reason, no contact was made with a creditor. No-Contact Creditors include all creditors listed on the list of largest creditors.

    9.  Gavin/Solmonese, through its processor firm NHB Advisors, has an affiliated separate legal entity, NHB Capital Partners, LP ("NHBCP"). NHBCP is an affiliate that sources investment capital to be invested as debt or equity in distressed companies in North America, and sources investment and/or lending opportunities for NHBCP's Limited Partner(s) (the "LP" or "LPs"). NHBCP earns a transaction fee for each funded transaction. The amount of the transaction fee is a fixed percentage of the total funding transaction amount.

    10.  As of the date of this Declaration, NHBCP currently has a single Limited Partner. NHBCP may, in the future, have different or additional LPs. At no time in the past, nor at any time in the future, will NHBCP LPs be affiliates of Gavin/Solmonese.

They are independent unrelated entities with their own fiduciary obligations to their own investors. Gavin/Solmonese is not an investor in any LPs.

11. Due diligence responsibilities related to potential transactions involving NHBCP transactions are those of the LPs and neither Gavin/Solmonese, nor its Employees or Associates, are involved in such transactions, unless engaged separately by the LPs on a basis unrelated to any existing Gavin/Solmonese engagements.

12. The terms of the Joint Venture and Partnership agreements provide that Gavin/Solmonese has no requirement to show opportunities to NHBCP in cases where Gavin/Solmonese is engaged by a party in interest in a case filed under Chapter 11 of the Bankruptcy Code, or in any matter that is court-supervised (such as an Assignment for the Benefit of Creditors, Receivership or other court-supervised disposition of assets). Therefore, NHBCP will not participate in these cases.

13. In cases in which Gavin/Solmonese has been retained with Bankruptcy Court approval, Gavin/Solmonese may show opportunities for investment, issuance of debt or purchase of assets to entities that may be LPs. Such transactions are unrelated to NHBCP. Therefore, Gavin/Solmonese may, in the course of informing potentially interested parties of the opportunity to acquire some or all of the Debtors' assets, show this opportunity to one or more LPs or to parties who are, without Gavin/Solmonese's knowledge, investors in the LPs. Gavin/Solmonese has no economic interest in the investment activities of NHBCP LPs in transactions that are not initiated by NHBCP. Thus, a LP executing an acquisition that is not sourced by NHBCP results in no economic benefit to NHBCP or Gavin/Solmonese.

14. Gavin/Solmonese's standard agreements (which are utilized only in non-bankruptcy engagements or in those bankruptcy cases where Gavin/Solmonese is engaged by a Debtor in Possession) include a disclosure of NHBCP and provide both Gavin/Solmonese's clients and the lenders to Gavin/Solmonese's clients with "opt-in" and "opt-out" rights with respect to NHBCP consideration of any financing, investment or sale opportunities that might arise with respect to that client. At all times, NHBCP and Gavin/Solmonese adhere strictly to the Turnaround Management Association's Code of Ethics and, in particular with respect to NHBCP, Ethical Standard 2.7 (Ownership)[2].

15. Additionally, neither I, nor Gavin/Solmonese, nor any Employee or professional of Gavin/Solmonese, nor any Associate of Gavin/Solmonese, insofar as I have been able to ascertain:

    a.    is a creditor of the Debtors;

    b.    is a direct or indirect equity interest holder of the Debtors;

    c.    is or has been an officer within two years before commencement of these Chapter 11 cases, director or employee of the Debtors or an "insider" of the Debtors as that term is defined in § 101(31) of Title 11 of the United States Code, 11 U.S.C. § 101 (the "Bankruptcy Code");

    d.    presently provides services to a creditor or equity interest holder of the Debtors, or a person otherwise adverse or potentially adverse to the Debtors or the

---

[2] **E.S. 2.7 Ownership:**
(A) TMA recognizes the difficulties involved with respect to equity ownership of a troubled company client; (B) If a member owns or obtains a direct or indirect financial interest in a client, such interest must be disclosed to creditors and stockholders of the client on a timely basis, must be negotiated prior to the assignment and additional equity ownership should not be negotiated during the course of an engagement; (C) If an equity interest in a troubled business client results in the member gaining control of the client, the conditions and circumstances whereby the interest is obtained should be set forth in writing and agreed to prior to commencement of the engagement. Equity interests held by parties affiliated with the member shall be aggregated with the member's direct interest to determine whether or not the member would control the client. The member should insist that the client obtain legal counsel to represent the client with respect to negotiating and documenting the equity interest to be obtained by the member.

Debtors' estates on any matter that is related to the Debtors or the Debtors' estates or, except as described in paragraph 7 above, on any matter that is unrelated to the Debtors or the Debtors' estates;

      e.     except as described in paragraph 7 above, has any other connection with the Debtors, their creditors, the Trustee, the Office of the United States Trustee or any employee of that office or any other parties in interest; or

      f.     has any other interest, direct or indirect, which may affect or be affected by the provision of services proposed hereunder.

16.    Gavin/Solmonese will provide services to no entity other than the Committee in connection with these Chapter 11 cases.

17.    To the best of my knowledge, information and belief, except as set forth herein, there are no other instances where Gavin/Solmonese has, has had, or might be deemed to have or have had connections with the Debtors, creditors, or other parties in interest.

18.    Gavin/Solmonese has not received a retainer.

19.    Gavin/Solmonese has agreed to be employed by the Committee at the firm's customary, hourly rates for comparable matters and understands that the firm's compensation is to be paid and the expenses and costs are to be reimbursed upon application to the Court and is subject to the Court's approval and/or pursuant to any administrative procedures established by order of the Court, after notice and a hearing. Gavin/Solmonese anticipates that the following are the core team of advisors who will be primarily responsible for this engagement and the current hourly rates, which Gavin/Solmonese customarily charges for their services:

| | |
|---|---|
| Edward T. Gavin, CTP | $625.00 /hour |
| Wayne P. Weitz | $525.00 /hour |
| Kathryn McGlynn | $400.00 /hour |
| Charles F. Lewis | $295.00/hour |

20.  Other professionals, Employees and Associates at Gavin/Solmonese may be called upon from time to time as the need and issues arise to provide services to the Committee in respect of certain aspects of these Chapter 11 cases. Hourly rates of Employees and associates of Gavin/Solmonese range from $250.00 to $650.00 per hour. Reasonable travel time will be charged at one-half of the applicable hourly rate unless actual work is performed during such travel time, in which case the full hourly rate will be charged. Gavin/Solmonese's rates may change from time to time in accordance with Gavin/Solmonese's established billing practices and procedures. Gavin/Solmonese will maintain detailed, contemporaneous records of time and necessary expenses provided or incurred in connection with the rendering of the financial advisory services described above by category and nature of the services rendered.

21.  Gavin/Solmonese customarily and generally charges clients for the costs of support services the firm provides in connection with provision of professional services, including, without limitation, photocopying charges, long distance telephone calls, facsimile transmissions, messengers, courier mail, secretarial and administrative overtime and temporary services, travel, lodging and catering for meetings. Some of these services are provided by Gavin/Solmonese, in which case the charges are set by Gavin/Solmonese, and others are provided by third party service providers, in which case the charges are set by the providers. Gavin/Solmonese will charge the cost of these expenses in a manner and at

{00746769;v1}
9

rates consistent with charges generally made to the firm's other clients. All such charges for which Gavin/Solmonese seeks payment are subject to Court approval and/or pursuant to any administrative procedure established by Order of the Court.

22. No agreement or understanding exists between Gavin/Solmonese and any other person (other than members or employees of the firm as disclosed herein) to share compensation received for services to be rendered in connection with services to be provided hereunder. No representations have been received or made by Gavin/Solmonese nor any member or associate thereof, in respect of compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

23. By reason of the foregoing, I believe that Gavin/Solmonese is eligible for employment and retention by the Committee pursuant to Sections 328 and 1103 of the Bankruptcy Code and applicable rules of bankruptcy procedure.

Dated: June 1, 2015

By: _____
Wayne P. Weitz, Managing Director

61959239