UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 15-10952(KJC)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


CORINTHIAN COLLEGES, INC., et al.,


            Debtors.


- - - - - - - - - - - - - - - - - - - -x


            United States Bankruptcy Court

            824 North Market Street

            Wilmington, Delaware


            May 27, 2015

            2:01 PM


B E F O R E:

HON. KEVIN J. CAREY

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  AL LUGANO

2

1

2  Debtors' Motion for Entry of Interim and Final Orders (I)

3  Authorizing the Debtors to (A) Pay Certain Employee-Related

4  Expenses and (B) Continue Their Workers' Compensation Policy

5  and Pay All Obligations in Respect Thereof and (II) Granting

6  Related Relief [Docket No. 5 - filed May 4, 2015]

7

8  Debtors' Motion for an Order (I) Authorizing the Debtors to

9  Conduct and Consummate Asset Sales Exceeding the Thresholds Set

10  Forth in the De Minimis Asset Sale Order; (II) Approving Such

11  Sales; and (III) Granting Certain Related Relief [Docket No. 41

12  - filed May 6, 2015]

13

14  Debtors' Motion for Entry of an Order Authorizing the

15  Employment and Compensation of Certain Professionals Utilized

16  in the Ordinary Course of Business, Nunc Pro Tunc to the

17  Petition Date [Docket No. 43 - filed May 6, 2015]

18

19  Debtors' Motion for Entry of an Order Extending Time for

20  Debtors to File Schedules and Statements [Docket No. 45 - filed

21  May 6, 2015]

22

23  Debtors' Motion for Entry of an Order (I) Authorizing Payment

24  of Certain Prepetition Taxes and (II) Granting Related Relief

25  [Docket No. 53 - filed May 7, 2015]

1   Debtors' Application for Entry of an Order (I) Authorizing the

2   Retention and Employment of FTI Consulting, Inc. as Crisis

3   Manager and (II) Designating William J. Nolan as Chief

4   Restructuring Officer Nunc Pro Tunc to the Petition Date

5   [Docket No. 55 - filed May 7, 2015]

6

7   Debtors' Motion for Entry of Interim and Final Orders (I)

8   Prohibiting Utilities from Altering, Refusing, or Discontinuing

9   Service; (II) Approving the Debtors' Proposed Form of Adequate

10  Assurance of Payment for Utilities; and (III) Establishing

11  Procedures for Resolving Objections to the Debtors' Proposed

12  Form of Adequate Assurance [Docket No. 6 - filed May 4, 2015]

13

14  Debtors' Motion for Entry of an Order (I) Authorizing the

15  Debtors to Reject Certain Unexpired Leases of Nonresidential

16  Real Property Effective Nunc Pro Tunc to the Date that the

17  Debtors Surrendered Possession; (II) Approving the Nunc Pro

18  Tunc Abandonment of any Personal Property Remaining at the

19  Lease Locations; and (III) Granting Certain Related Relief

20  [Docket No. 46 - filed May 6, 2015]

21

22

23

24

25  Transcribed by:  Penina Wolicki

4

1

2   A P P E A R A N C E S :

3   RICHARDS, LAYTON & FINGER, P.A.

4        Attorneys for Debtors

5   BY:   MARK D. COLLINS, ESQ.

6        MARISA A. TERRANOVA, ESQ.

7        AMANDA R. STEELE, ESQ.

8

9

10   UNITED STATES DEPARTMENT OF JUSTICE

11        Attorneys for Office of the United States Trustee

12   BY:   RICHARD SCHEPACARTER, ESQ.

13        TIMOTHY J. FOX, JR., ESQ.

14

15

16   BROWN RUDNICK LLP

17        Attorneys for Official Committee of Unsecured Creditors

18   BY:   BENNETT S. SILVERBERG, ESQ. (TELEPHONICALLY)

19

20

21   ROBINS KAPLAN LLP

22        Attorneys for Student Committee

23   BY:   SCOTT GAUTIER, ESQ. (TELEPHONICALLY)

24

25

1

2  SIDLEY AUSTIN LLP

3          Attorneys for Bank of America

4  BY:   ANA GUMPORT, ESQ. (TELEPHONICALLY)

5

6

7  POTTER ANDERSON & CORROON, LLP

8          Attorneys for Bank of America

9  BY:   JEREMY RYAN, ESQ.

10

11

12  MORRIS NICHOLS ARSHT & TUNNELL

13          Attorneys for Current and Former Directors, Officers

14          and Employees of the Debtors

15  BY:   MATTHEW R. KOCH, ESQ.

16

17

18  FLASTER/GREENBERG PC

19          Attorneys for Square 407

20  BY:   WILLIAM J. BURNETT, ESQ.

21

22

23  COLE SCHOTZ P.C.

24          Attorneys for FTI Consulting

25  BY:   PATRICK REILLEY, ESQ.

1

2  POLSINELLI PC

3         Attorneys for Student Committee

4  BY:   CHRISTOPHER A. WARD, ESQ.

5

6

7  CONNOLLY GALLAGHER LLP

8         Attorneys for C.W. Swenson, Inc.

9  BY:   KAREN C. BIFFERATO, ESQ.

10

11

12  THE ROSNER LAW GROUP LLC

13         Attorneys for GUC Committee

14  BY:   JULIA KLEIN, ESQ.

15

16

17  JEFFER MANGELS BUTLER & MITCHELL LLP

18         Attorneys for Corinthian Colleges, Inc., et al.

19  BY:   BARRY V. FREEMAN, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

1                        P R O C E E D I N G S

2                THE CLERK:  All rise.  Be seated, please.

3                THE COURT:  Good afternoon, everyone.

4                IN UNISON:  Good afternoon, Your Honor.

5                MS. STEELE:  Good afternoon, Your Honor.  Amanda

6    Steele of Richards, Layton & Finger on behalf of the debtors.

7    I'm joined today by my colleagues Mark Collins and Marisa

8    Terranova.  In addition, we have William Nolan, who's the chief

9    restructuring officer of the debtors.  He's also a managing

10   director -- senior managing director with FTI Consulting.

11               Your Honor, we have a number of items on the agenda

12   today.  We've worked hard to resolve as many open matters as

13   possible.  We would like to thank the Office of the United

14   States Trustee and counsel for the official committee of

15   unsecured creditors that was appointed on May 13th, for their

16   cooperation in resolving as many matters as possible prior to

17   the hearing.

18               Your Honor, if it's acceptable, I will quickly run

19   through which matters have been resolved by continuance or

20   revised order that we have filed under certification of

21   counsel.  And then we will turn to the few matters that remain.

22               THE COURT:  That's fine.

23               MS. STEELE:  We filed a second amended agenda this

24   morning.  I don't know if you have a copy.

25               THE COURT:  I have it.

1          MS. STEELE:  Okay, great.  Turning to the agenda,

2    agenda item number 1, the debtors' cash collateral motion, we

3    have continued that motion to the hearing on June 8th.  With

4    respect to agenda item number 2, the motion for interim and

5    final orders on employee-related expenses, after discussions

6    with the committee, the debtors filed a revised proposed form

7    of interim order under certification of counsel, and the final

8    relief is continued to the June 8th hearing.

9          I don't know if you've had an opportunity to review

10   the interim order.

11         THE COURT:  I have.  The order has been signed.

12         MS. STEELE:  Great, thank you, Your Honor.

13         Orders were entered on agenda items number 3, 4, 7,

14   10, and 12.  And we thank you for entering orders on those.

15         In addition, revised proposed forms of order were

16   filed last evening and early this morning resolving any

17   outstanding comments for the following matters.  Agenda item

18   number 8, the motion for an extension of time to file the

19   schedules and statements, we received a comment from the Office

20   of the United States Trustee and revised the relief we

21   requested in that motion.

22         THE COURT:  That order has been signed.

23         MS. STEELE:  Thank you, Your Honor.  Agenda item

24   number 8, the motion -- or agenda item number 9, I apologize --

25   the debtors' motion for payment of certain pre-petition taxes,

1    we filed a revised order based on discussions with the

2    committee.

3              THE COURT:  That order has been signed.

4              MS. STEELE:  Okay, great, thank you.

5              And finally, agenda item number 11, debtors'

6    application to retain FTI Consulting.

7              THE COURT:  That order has been signed.

8              MS. STEELE:  Thank you.  Your Honor, that leaves us

9    with four matters going forward:  agenda item number 5, the

10   debtors' motion for an order authorizing the debtors to conduct

11   asset sales exceeding the thresholds set forth in the de

12   minimis asset sale motion; agenda item number 6, the debtors'

13   motion to retain ordinary-course professionals; agenda item

14   number 13, the utility motion; and agenda item number 14, the

15   debtors' rejection motion.

16             I will be addressing the sale motion, and then I'll

17   cede the podium over to Ms. Terranova to address the remaining

18   matters.

19             THE COURT:  All right.

20             MS. STEELE:  Your Honor, pursuant to the sale motion,

21   the debtors are seeking to consummate sales of certain

22   miscellaneous assets exceeding the threshold set forth in the

23   de minimis sale order approved by the Court at the first-day

24   hearing.

25             As you may recall from the first-day hearing, the

1  debtors closed each of their campus locations effective April

2  27th and were in the process of rejecting many if not all of

3  those leases.  Accordingly, the debtors devised a strategy for

4  dealing with the miscellaneous assets which remained at each of

5  the campus locations.

6      As discussed at the first-day hearing, the debtors

7  instructed the campus presidents at twenty-nine of the

8  locations to ship all the equipment over 5,000 dollars, that

9  was easily transportable, to their WyoTech locations so they

10  could be subject to a more fulsome sale process.

11     For the assets that remained at the campus locations,

12  the debtors implemented a process to maximize value while

13  stemming unnecessary incurrence of administrative rent.  The

14  debtors contacted potential interested parties and received

15  bids for the assets on or before May 8th.  The de minimis sale

16  order entered on the first day authorized sales involving the

17  transfer of 25,000 dollars or less in total consideration to a

18  single buyer or group of related buyers, per location, with

19  total sales to a single buyer or group of related buyers, not

20  to exceed 125,000 dollars in the aggregate.

21     Pursuant to the de minimis sale order procedures

22  approved, the debtors filed and served thirteen notices of

23  sale.  The debtors received no objections to any of the

24  proposed notices of sale, and pursuant to the de minimis sale

25  order, the debtors have consummated those sales.

1        The debtors filed this motion shortly after the first-
2   day hearing to address bids received that exceeded the
3   thresholds set forth in the de minimis asset sale motion --
4   sale order.  The debtors received only -- the debtors received
5   two bids that exceeded those thresholds, only one of them --
6   for the same location -- and one of them was the winning bid.
7   That bid was from San Joaquin Valley Colleges, Inc., or SJVC,
8   for the assets located at the debtors' Ontario Metro California
9   Campus.  The aggregate purchase price from SJVC for the assets
10  was 200,000 dollars.
11        Pursuant to the procedures outlined in the motion, the
12  debtors filed a notice of proposed sale on May 12th that
13  identified SJVC as the potential purchaser, included a
14  description of the assets subject to the proposed sale, the
15  identity of the debtor that owned the assets, the proposed bill
16  of sale which included the economic terms of the sale, and
17  identity of any parties known to the debtors to hold liens or
18  other interests in the assets.
19        The debtors served the notice of the proposed sale via
20  e-mail and overnight mail on the interested parties identified
21  in the motion.  The objection deadline for the proposed sale
22  was May 22nd, 2015 at noon; and that deadline was clearly set
23  forth in the notice.  The debtors received no objections or
24  responses to the proposed sale.
25        The debtors received a few comments from the Office of

1    the United States Trustee to the proposed sale procedures, and

2    after discussions with the United States Trustee, the Trustee

3    has asked the debtor to put on evidence regarding the good

4    faith of the purchaser.  We prepared a very short proffer of

5    Mr. Nolan to address this issue.  If it is acceptable to Your

6    Honor, we can proceed with the proffer now.  Mr. Nolan is in

7    the courtroom and available for cross-examination.

8             THE COURT:  You may proceed.

9             MS. STEELE:  If called to testify, William J. Nolan is

10   a senior managing director in the corporate financing

11   restructuring practice of FTI Consulting, FTI.  As set forth in

12   his first-day declaration, Mr. Nolan has over twenty years of

13   diverse financial consulting and management experience.  FTI

14   was engaged by the debtors on May 30th, 2014.  In July 1st,

15   2014 he was appointed chief restructuring officer by the

16   debtors' board of directors.

17            Mr. Nolan's considerable experience in working with

18   senior management teams in areas of financial and operational

19   restructuring, loan workouts and business planning, in- and

20   out-of-court restructurings, and in formal bankruptcy

21   proceedings is set forth in the first-day declaration.

22            In his capacity as CRO, Mr. Nolan has personal

23   knowledge of the matters set forth in the asset sale motion, or

24   has gained knowledge of such matters from the debtors'

25   representatives or retained advisors that report to Mr. Nolan

1    in the ordinary course of his responsibilities.

2          If called upon to testify, Mr. Nolan would testify

3    with regards to the asset sale motion as follows.  The debtors

4    received two bids for the assets at one location that exceeded

5    the thresholds contained in the de minimis asset sale order

6    that was approved at the first-day hearing.  No other bids

7    received by the debtors for the miscellaneous assets exceeded

8    the thresholds contained in the de minimis asset sale order.

9          With respect to the relief requested in the asset sale

10   motion, the debtors received a bid from San Joaquin Colleges

11   (sic), Inc., SJVC to the purchase of certain assets located at

12   the debtors' Ontario Metro California Campus for the aggregate

13   purchase price of 200,000 dollars.  The debtors filed a notice

14   of proposed sale at docket number 84 containing the terms of

15   the proposed sale to SJVC on May 12th, 2015.  The proposed sale

16   to SJVC was a product of good-faith, arm's-length negotiation

17   between the debtors and SJVC.

18         SJVC did not exert an undue influence on the debtors.

19   There are a no -- there was no improper collusion by either

20   SJVC or the debtors.  Further, SJVC is not an insider of the

21   debtor as defined in Section 101(31) of the Bankruptcy Code.

22         In the exercise of their business judgment, the

23   debtors have determined that the consideration offered by SJVC

24   is fair and reasonable and represents the highest and best

25   value offered for the purchased assets.  Accordingly, the

1    consummation of the proposed sale to SJVC is in the best
2    interests of the debtors, their creditors, their estates, and
3    other parties-in-interest.

4            That would conclude the testimony of Mr. Nolan.

5            THE COURT:  Does anyone wish to cross-examine Mr.
6    Nolan?

7            I hear no response.

8            Does the debtor have anything further in support of
9    this motion?

10            MS. STEELE:  That is all, Your Honor.

11            THE COURT:  Is there anyone else who wishes to be
12    heard in connection with this motion?

13            I hear no response.  I don't have any questions.
14    Based upon the record that's been made, I'm prepared to grant
15    the relief that's been requested.

16            MS. STEELE:  Thank you, Your Honor.  I have the
17    proposed form of order.  There were no changes to the one that
18    we filed under notice.

19            THE COURT:  Thank you.  That order has been signed.

20            MS. STEELE:  Thank you, Your Honor.  I will now cede
21    the podium to Ms. Terranova for the remaining matters.

22            THE COURT:  All right.

23            MS. TERRANOVA:  Good afternoon, Your Honor.  Marisa
24    Terranova from Richards, Layton & Finger on behalf of the
25    debtors.

1        THE COURT:  Nice to see you.

2        MS. TERRANOVA:  Thank you.  Item number 6 on the

3   agenda is the debtors' motion to retain certain professionals

4   utilized in the ordinary course of business.  We did receive

5   certain comments to this motion from the Office of the United

6   States Trustee.  Those comments have been resolved by the

7   filing of the declaration of Mr. Mortensen, which we filed this

8   morning.

9        THE COURT:  I've read it.

10       MS. TERRANOVA:  So I have a proposed form of order.

11  There was one change to the form of order.  May I approach?

12       THE COURT:  You may.  Thank you.

13       MS. TERRANOVA:  As set forth in Mr. Mortensen's

14  declaration, at the request of the Office of the United States

15  Trustee, the debtors have removed one of the professionals from

16  the list that appears as Exhibit 1 to the proposed form of

17  order, Abernathy MacGregor Group, and they have added Latham &

18  Watkins as an ordinary-course professional.  The debtors have

19  provided information regarding Latham & Watkins in the

20  declaration.

21       We respectfully request that the Court enter the

22  order.

23       THE COURT:  All right, thank you.  Does anyone else

24  wish to be heard in connection with this application?

25       I hear no response.  I don't have any questions.

1          MS. TERRANOVA:  Thank you.

2          THE COURT:  That order has been signed.

3          MS. TERRANOVA:  Thank you.  Item number 13 on the

4    agenda is the debtors' motion to continue utility services.

5    There were certain changes to the form of order to resolve

6    certain issues.  May I approach?

7          THE COURT:  You may.

8          MS. TERRANOVA:  The debtors received comments from the

9    Office of the United States Trustee to the proposed form of

10   order, and those comments were to conform this final order to

11   the change that we made to the interim order.  In addition, the

12   debtors received objections from four utilities prior to the

13   hearing.  The debtors have resolved -- not resolved those

14   objections, but they have adjourned final hearing on this

15   motion with respect to the objecting utilities.  And the

16   language related to that is set forth in paragraph 14 -- new

17   paragraph 14.  So the debtors respectfully request that you

18   enter -- the Court enter this order granting the relief with

19   respect to all utilities other than the objecting utilities and

20   adjourn the final hearing on the motion until the June 8th

21   hearing with respect to the objecting utilities.

22          In addition, the debtors received certain comments to

23   paragraph 8 from the committee -- the creditors' committee.

24   These comments have been reviewed by Bank of America, and Bank

25   of America has consented to our submitting this order for entry

1  today.

2           THE COURT:  Thank you.  Does anyone else wish to be

3  heard in connection with the utility motion?

4           I hear no response.  I don't have any questions.  That

5  order has been signed.

6           MS. TERRANOVA:  Thank you, Your Honor.  Item number 14

7  on today's agenda is the debtors' motion to reject certain

8  unexpired leases of nonresidential real property.  The leases

9  relate to certain of the debtors' former campus locations, many

10 of which the debtors were operating through April 26th, 2015.

11 The debtors have worked diligently to surrender possession of

12 these locations in a timely and orderly fashion.

13          Key among the debtors' concerns in this process has

14 been preservation of the assets that can be liquidated for the

15 benefit of the debtors' estates and creditors.  Another major

16 concern has been the preservation of personally identifiable

17 information and student records.

18          Pursuant to the motion, the debtors seek to reject the

19 leases listed on Exhibit 1 to the proposed form of order, nunc

20 pro tunc to the date that the debtors' actually surrendered

21 possession of the premises covered by each lease.  The

22 surrender of each premises was accompanied by the debtors

23 handing over all keys, key cards, access cards, and anything

24 else required for the landlord to access the property.  This

25 key handover was accompanied with a letter indicating the

1    debtors' unequivocal intent to surrender the premises.

2          The debtors also filed notices with this court when

3    premises were surrendered.  These notices were included in Your

4    Honor's hearing binder.

5          The debtors have not surrendered possession of all the

6    premises covered by leases listed on Exhibit 1 to the proposed

7    form of order filed with the motion.  With respect to one of

8    these locations, the debtors have negotiated a sale of property

9    located at the leased premises.  The sale was actually approved

10   by Your Honor as agenda item number 5 that Ms. Steele presented

11   earlier this afternoon.  Now that the sale has been approved,

12   the purchaser will access the property to remove its purchased

13   assets.  The debtors anticipate that the purchaser will

14   complete this removal process and that the debtors will be able

15   to surrender possession of this premises by this Friday.

16         The two other locations were occupied pursuant to

17   subleases with Zenith's teach-out locations.  The debtors

18   understand that all instruction has been completed at these

19   locations and is awaiting confirmation from Zenith that they

20   have vacated these locations so that the debtors can surrender

21   them to the landlords.

22         Because the debtors have not surrendered possession of

23   the premises related to these three leases, these leases have

24   been removed from Exhibit 1 to the proposed form of order that

25   the debtors will submit to the Court this afternoon.

1          If I may approach, I have a revised form of Exhibit 1

2     to the order with the comparison version showing all of the

3     changes that have been made.

4          THE COURT:  All right.

5          MS. TERRANOVA:  As set forth in the black-line, the

6     debtors have removed the three leases that I just discussed.

7     We have also added the rejection effective date of each lease.

8     For each lease, this is the date that the debtors surrendered

9     possession of the premises.

10          Finally, the debtors have updated the lease

11     description for the Decatur location, at the request of counsel

12     for the landlord of that lease.

13          The debtors intend to submit an additional order

14     approving this motion with respect to the three omitted leases

15     when the premises covered by such leases have been surrendered

16     to the applicable landlords.  And I note that we did not

17     receive objections from the landlords for those three

18     locations.

19          In addition, pursuant to this motion, the debtors seek

20     to abandon all personal property remaining at the lease

21     locations, effective as of the date the debtors surrendered

22     possession of the underlying premises.

23          Because the average rent cost per day per lease

24     location was approximately 2,500 dollars, the debtors analyzed

25     whether the cost to remain in certain locations plus the

1  expense of moving certain assets outweighed the value that the

2  debtors could realize in the sale of such assets.  Where the

3  debtors determined that the cost of removing personal property

4  outweighed the value of such property, the debtors abandoned

5  such personal property.

6         As noted in one of the objections filed to this motion

7  and a joinder to that objection, certain of the personal

8  property remaining at the leased location was equipment leased

9  from Hewlett Packard and Ricoh.  The debtors rejected the

10 equipment leases with HP and Ricoh pursuant to a motion filed

11 on the petition date, and approved by this Court yesterday.

12 This was agenda item number 4 on today's agenda.  Notably, the

13 debtors did not receive any objections or informal comments to

14 the motion to reject the equipment leases, and the form of

15 order that Your Honor had entered was submitted under

16 certification of no objection.

17        The order authorized the rejection of such equipment

18 leases nunc pro tunc to the petition date.  The debtors

19 notified HP and Ricoh of the rejection of the equipment leases

20 on May 4, 2015 and requested that HP and Ricoh recover all of

21 the leased equipment by no later than May 8th, 2015.  The

22 debtors also contacted HP and Ricoh by e-mail and phoned

23 multiple times after the initial request was made on May 4th,

24 2015.  In addition, HP and Ricoh were served with several of

25 the notices -- the rejection notices that were filed and served

1  on the landlords indicating the unequivocal surrender of the

2  premises.

3         The debtors have received two objections from

4  landlords to this motion.  The objections raise two arguments.

5  First, that the debtors have not unequivocally surrendered

6  possession of the leased premises because certain leased

7  equipment remains at the leased locations.  Both objecting

8  landlords have raised this argument, C.W. Swenson in an

9  objection, and Square 407 in a joinder to the C.W. Swenson

10  objection.

11         Second, Square 407 has requested in its objection that

12  the debtors revise the order approving this motion to provide

13  for modification of the automatic stay for the limited purpose

14  of permitting the landlord to send a notice of termination of

15  its lease to the debtors.

16         With respect to the first argument, the debtors

17  respectfully submit that they have taken every action possible

18  to surrender possession of the leased premises to the landlords

19  as of the date of the notices filed, with respect to each

20  lease.  This unconditional surrender includes contacting HP and

21  Ricoh several times since the petition date to coordinate

22  retrieval of their equipment.  The debtors also provided

23  counsel for C.W. Swenson with contact information for these

24  equipment lessors.

25         Because the debtors have rejected their interest in

 1   the leased equipment and have made considerable effort to

 2   coordinate the removal of this equipment, the debtors should

 3   not be required to incur additional administrative rent

 4   obligations because the equipment lessors have failed to

 5   recover their property.

 6         Accordingly, the debtors respectfully submit that the

 7   rejection of the affected leases nunc pro tunc to the date that

 8   the debtors surrendered possession of the premises, by

 9   returning all keys and other means to access the property, is

10   appropriate.

11         In an effort to resolve these objections, however, the

12   debtors have revised the language of the order approving this

13   motion.  The revised order provides that the landlord shall

14   have no liability to any third parties, including equipment

15   lessors, on account of any action that such landlords take with

16   respect to the property remaining at the surrendered premises.

17         And if I may approach, Your Honor, I have a revised

18   form of order and a black-line.

19         THE COURT:  You may.  Thank you.

20         MS. TERRANOVA:  The language that we added to address

21   this concern is in -- sorry I have the old one -- is in

22   paragraph 2 -- I'm sorry, paragraph 3.  And you'll note in both

23   the clean and the black-line, I struck some language.  This was

24   at the request of counsel for C.W. Swenson.  We're happy to

25   submit a clean version without the struck language, if Your

1  Honor would like us to do so.

2          THE COURT:  Does the debtor have anything further in

3  support of this motion?

4          MS. TERRANOVA:  No.  The only -- I have -- I can

5  address the other argument that was made by Square 407.

6          THE COURT:  All right.

7          MS. TERRANOVA:  With respect to the objection of

8  Square 407, the debtors submit that the request to modify the

9  order to provide for termination of the lease is inappropriate

10 at this time.  The rejection of the lease is equivalent to a

11 pre-petition breach of that lease, it does not terminate the

12 lease.  Termination of the lease could trigger additional

13 obligations of the debtors under the lease.

14         Your Honor, first we believe the relief is

15 unnecessary.  Square 407 claims that the lease must be

16 terminated in order to relet the premises.  The debtors have

17 rejected the lease and have no continuing interest in the

18 premises.  Second, the landlord can do whatever it would like

19 post-rejection, but it should not be part of this order.

20         We do not know if the lease contains additional

21 obligations that are required to be done pre-termination.  And

22 we do not want to open up an argument --

23         THE COURT:  Well, let me ask you this.  If the lease

24 has been rejected, one effect of which is to relieve the debtor

25 from performance, what else could the debtor be required to do?

1     MS. TERRANOVA:  So we're concerned that as opposed

2  just a pre-petition breach of the lease, that if there's a

3  termination of the lease, a termination will trigger other

4  obligations under the lease.

5     THE COURT:  Well, like what, for example?

6     MS. TERRANOVA:  An example can be -- could be having

7  to turn the property over in a certain condition, which we

8  understand --

9     THE COURT:  But rejection relieves the debtor of

10  performance.  The only consequence, as I listen to you, that

11  comes to mind immediately, would affect the rejection damage

12  claim, right?

13     MS. TERRANOVA:  And --

14     THE COURT:  Or I guess in theory what you're saying,

15  it may create a claim not subject to the cap.  But give me an

16  example of that.

17     MS. TERRANOVA:  Well, our concern would be, for

18  example, that if the termination is deemed effective either

19  immediately before rejection or contemporaneous with rejection

20  that they could say the termination occurred post-petition.

21  And then the obligations would be administrative expense

22  obligations as opposed to rejection damages, which are not

23  priority -- or general unsecured claims.  So that's our

24  concern, and that's why we don't want to add the termination

25  language to the order.

1       We're just -- it's rejected -- it's pre-petition

2    relief.  You can relet and we have -- no longer have an

3    interest in the property.  So I don't know if you have any

4    further questions.

5            THE COURT:  No, I do not.

6            MS. BIFFERATO:  Good afternoon, Your Honor.  Karen

7    Bifferato on behalf of C.W. Swenson, Inc., one of the

8    objectors.  I believe that with the revised language, with the

9    struck language that was just handed up to you by counsel to

10   the debtors, that my objection is resolved, but I believe

11   there's one left.

12           MR. BURNETT:  Good afternoon, Your Honor.  William

13   Burnett, Flaster/Greenberg, on behalf of Square 407.  I think

14   that the colloquy before Your Honor certainly resolved the

15   first issue where we joined C.W. Swenson in terms of the copier

16   equipment.  With respect to the stay relief issue, I can't

17   really state my position any better than your dialog with

18   debtors' counsel.

19           I suppose -- the only issue that we have -- we don't

20   want to change the characterization of our claim.  We don't

21   want to make an additional out-of-cap -- or above-the-cap

22   rejection damage claim and the like.  I think the reason that

23   we want it is for the exact issue that we stated in the papers,

24   which is we want a clarification that we can relet the

25   premises, that there's not going to be any technical stay

1    issue, because obviously rejection just equals breach.  And

2    there's an issue about termination.  We're certainly not trying

3    to change the characterization of the landlord's claim in the

4    case.

5            So from our perspective, Your Honor, either an

6    acknowledgment which debtors' counsel basically did acknowledge

7    that we're entitled to relet the premises, that there's no stay

8    issue with respect to continuing to proceed to do so, or some

9    specific language in the order which indicates that we have

10   stay relief, but -- and that we can terminate the lease, that

11   obviously that it will not impact the characterization of our

12   claim.  We're not trying to make any changes to 502(b)(7) and

13   the like.  We're not trying to skirt around that.

14           So that's really what our issue is.  We just want to

15   make sure that we're not tripping anything up on the back end.

16           THE COURT:  Well, so you're still requesting that

17   language be added to the order?

18           MR. BURNETT:  Yes, Your Honor, unless -- yes.

19           THE COURT:  Okay.  So here are my thoughts about that.

20   The request is not unreasonable.  The debtors' response, I

21   think, is legitimate.

22           MR. BURNETT:  Um-hum.

23           THE COURT:  So if language could be worked out, it

24   seems to me that putting it in the order, in this instance,

25   would be okay.

1        Now, let's look at the systemic issue that occurs to
2   me.

3        MR. BURNETT:  Yeah.

4        THE COURT:  Am I going to get this request in every
5   lease rejection?  I know what happens here.

6        MR. BURNETT:  Right.

7        THE COURT:  And the answer is, I'm going to see it
8   again.  Now, I guess if a form of order is developed that
9   addresses it, it appears in every form of order, then it's not
10  an issue for anybody, but I'm concerned about that a little
11  bit.  I hate to do something that's going to create more
12  discussion or issues or eat up professional time or court time,
13  for that matter.

14       MR. BURNETT:  I can understand that, Your Honor.  In
15  fact, I had that concern when we proceeded with the objection,
16  because I understand it's obviously well beyond just our
17  particular issue.

18       I'm sorry, I didn't see you.

19       MS. TERRANOVA:  Your Honor, I'm so sorry.  Your Honor,
20  the debtors would be willing to stipulate with Square 407 to
21  you're free to relet.  We won't interfere.  And to proceed in
22  that way.

23       As Your Honor expressed, we would not like to see this
24  in this particular form of order.  However, we are happy to
25  work with Square 407.

1        THE COURT:  Well, will that be enough for you?

2        MR. BURNETT:  Yeah, I think the statement on the

3    record that it's unnecessary, that we're free to do that

4    without violating the stay, is sufficient, as long as that's on

5    the record.  I think that will work for us --

6        THE COURT:  All right.

7        MR. BURNETT:  -- without creating new Delaware law on

8    the issue.

9        THE COURT:  Thank you.  Does anyone else wish to be

10   heard in connection with this motion?

11       I hear no further --

12       MR. GAUTIER:  Your Honor, this is Scott Gautier with

13   Robins Kaplan on behalf of the committee of student creditors.

14       THE COURT:  Yes.

15       MR. GAUTIER:  We have a concern.  And I hate to bring

16   it up for the first time here in court.  We were retained last

17   Monday.  And we've looked through the motions.  Our question

18   relates to the maintenance of student records and whether the

19   abandonment of personal property includes the abandonment of

20   student records.

21       MS. TERRANOVA:  Your Honor, I'm happy to speak to

22   that.

23       THE COURT:  I'm sorry, let me first -- Mr. Gautier,

24   has this question been directed to the debtors?

25       MR. GAUTIER:  It has not.  And we apologize.  We

 1  haven't had an opportunity yet to have a conference call with

 2  the debtors and their counsel.

 3          THE COURT:  Listen, I understand what happens in terms

 4  of trying to get up to speed, but you should have placed a

 5  phone call.  Okay?  It doesn't take that long.  All you have to

 6  do is say look, we're new -- they've heard it before, by the

 7  way -- we don't know what's going on.  Here's our concern; can

 8  you address it?  That should have happened before today.

 9          But with that, I'll allow the debtor to respond.

10          MS. TERRANOVA:  Thank you, Your Honor.  The debtors

11  have taken every effort to preserve the student records as best

12  as they possibly can.  Part of the reason that we weren't able

13  to get out of every location on May 8th, which had been the

14  hope initially, is because of the effort to make sure that the

15  student records were preserved in the best way possible.  And

16  so they have been.  We understand the concern.

17          THE COURT:  Well, to ask it in the same way that Mr.

18  Gautier posed it, and that is:  are any of the assets to be

19  abandoned, do they include student records?

20          MS. TERRANOVA:  We don't believe so, no.

21          THE COURT:  Okay.  Mr. Gautier?

22          MR. GAUTIER:  Thank you, Your Honor.

23          THE COURT:  Is there anything further for you, sir?

24          MR. GAUTIER:  No.  Thank you, Your Honor.

25          THE COURT:  All right.  Does anyone else wish to be

1  heard in connection with this motion?

2          MS. GUMPORT:  Your Honor, this is Anna Gumport

3  substituting for Jennifer Hagle, on behalf of Bank of America,

4  from Sidley Austin.

5          THE COURT:  All right.  Maybe speak up a little bit.

6          MS. GUMPORT:  I just had a --

7          THE COURT:  Go ahead.

8          MS. GUMPORT:  Your Honor, this is Anna Gumport from

9  Sidley Austin substituting for Jennifer Hagle on behalf of Bank

10  of America.  I just had a question about the revised form of

11  order.  There was a reference to language saying that the

12  landlords shall not have any liability to other parties for

13  actions taken.  I was just curious -- and this is essentially a

14  question for the debtors and the landlords -- is the notion

15  that that language would remove obligations on the part of the

16  landlords under state law to provide notice to parties of what

17  they're doing with the abandoned assets on the property?

18          MS. TERRANOVA:  I'm so sorry, I didn't hear the

19  question.

20          MS. GUMPORT:  Yeah, and I apologize.  I'll try to

21  clarify.  We're coming from the perspective of potentially

22  having liens on abandoned assets on the properties, and we're

23  just curious as to whether the proposed insert to the form of

24  order that would protect the landlord from liability to any

25  third parties, whether the goal is to remove any obligations

1   under state law on the part of the landlords to provide notice

2   to third parties about the disposition of those assets?

3            THE COURT:  Well, I'll let the debtor respond.  But

4   the language is unqualified.

5            MS. GUMPORT:  So it's a blanket removal of liability

6   to third parties.

7            THE COURT:  That's what is proposed.

8            MS. GUMPORT:  I think our only concern there is that

9   we aren't -- I know that the debtor has provided a general

10  description of the assets.  We are -- we're just concerned that

11  we might want to know more about those assets for purposes of

12  determining what we will do outside of the bankruptcy case with

13  respect to them.  In other words, it may very well be that

14  these are assets that nobody wants, and we have no interest,

15  and we're not pursuing them.  But we would like just the

16  opportunity to work with the landlords in terms of assessing

17  what those assets are to determine our rights outside of the

18  bankruptcy case.

19           MS. BIFFERATO:  If I could just jump in here?  Karen

20  Bifferato on behalf of one of the landlords, C.W. Swenson.  Our

21  goal was not to affect or impact any kind of state law that may

22  or may not be out there.  It was more or less in requesting

23  that the language that's now in the order so that we could be

24  protected from the equipment lessors from coming after us,

25  because we are simply going to be taking action so we can relet

1  the premises, and there's a lot of items remaining on our

2  property.

3          So I'm sure that my client would be willing to work

4  with anyone.  But we are talking about property, at least in

5  our case, that is owned, I guess, by the equipment lessors.  So

6  it's not -- as it's being abandoned now, it's not estate

7  property.  I'm not sure what liens do or do not attach --

8          THE COURT:  All right.  Look, I understand here that

9  things are happening quickly for good reason.  Let me suggest

10  this.  Let me ask the debtor to consult with Bank of America

11  and the landlords here to see if you can work out some kind of

12  language or process that's satisfactory, and submit a proposed

13  order under certification.  If you cannot reach an agreement,

14  I'll hear it on the next hearing.

15          MS. TERRANOVA:  Thank you, Your Honor.  We'll do that.

16          THE COURT:  Okay.

17          MS. GUMPORT:  Thank you, Your Honor.

18          MS. TERRANOVA:  And then Mr. Schepacarter requested

19  that I make an additional representation with respect to the

20  student records.  They have been put into boxes and put in a

21  segregated place.  For the most part, I understand they're all

22  together for all of the different campus locations.

23          THE COURT:  Where?

24          MS. TERRANOVA:  In Sacramento.

25          THE COURT:  All right.

1        MS. TERRANOVA:  So -- it's a 30,000 square foot

2  warehouse in Sacramento.

3        THE COURT:  All right.  Satisfied, Mr. Schepacarter?

4        MR. SCHEPACARTER:  Yes, Your Honor.

5        THE COURT:  All right.  Is there anything further for

6  today, or is there anything else that we need to talk about?

7        MS. TERRANOVA:  That completed the agenda.  Thank you,

8  Your Honor.

9        THE COURT:  Thank you all very much.  That concludes

10  this hearing.  Court will stand in recess.

11      (Whereupon these proceedings were concluded at 2:36 PM)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              I N D E X

3

4                              RULINGS

5                                        PAGE      LINE

6  Debtors' motion to consummate asset sales    14        15

7  exceeding the thresholds is granted.

8  Debtors' motion to employ ordinary course    16         3

9  professionals, granted.

10 Debtors' interim utility motion is granted   17         6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                     C E R T I F I C A T I O N

3

4   I, Penina Wolicki, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8                                            June 2, 2015

9

10  _____        _____

11  PENINA WOLICKI                  DATE

    AAERT Certified Electronic Transcriber CET**D-569

12

13  eScribers, LLC

14  700 West 192nd Street, Suite #607

15  New York, NY 10040

16  (973)406-2250

17  operations@escribers.net

18

19

20

21

22

23

24

25

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 36 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)

May 27, 2015

**A**

**abandon (1)**
19:20
**abandoned (5)**
20:4;29:19;30:17,
22;32:6
**abandonment (2)**
28:19,19
**Abernathy (1)**
15:17
**able (2)**
18:14;29:12
**above-the-cap (1)**
25:21
**acceptable (2)**
7:18;12:5
**access (4)**
17:23,24;18:12;
22:9
**accompanied (2)**
17:22,25
**Accordingly (3)**
10:3;13:25;22:6
**account (1)**
22:15
**acknowledge (1)**
26:6
**acknowledgment (1)**
26:6
**action (3)**
21:17;22:15;31:25
**actions (1)**
30:13
**actually (2)**
17:20;18:9
**add (1)**
24:24
**added (4)**
15:17;19:7;22:20;
26:17
**addition (6)**
7:8;8:15;16:11,22;
19:19;20:24
**additional (6)**
19:13;22:3;23:12,
20;25:21;32:19
**address (6)**
9:17;11:2;12:5;
22:20;23:5;29:8
**addresses (1)**
27:9
**addressing (1)**
9:16
**adjourn (1)**
16:20
**adjourned (1)**
16:14
**administrative (3)**
10:13;22:3;24:21
**advisors (1)**
12:25

**affect (2)**
24:11;31:21
**affected (1)**
22:7
**afternoon (8)**
7:3,4,5;14:23;
18:11,25;25:6,12
**again (1)**
27:8
**agenda (21)**
7:11,23;8:1,2,4,13,
17,23,24;9:5,9,12,13,
14;15:3;16:4;17:7;
18:10;20:12,12;33:7
**aggregate (3)**
10:20;11:9;13:12
**agreement (1)**
32:13
**ahead (1)**
30:7
**al (1)**
6:18
**allow (1)**
29:9
**Amanda (1)**
7:5
**amended (1)**
7:23
**America (7)**
5:3,8;16:24,25;
30:3,10;32:10
**among (1)**
17:13
**ANA (1)**
5:4
**analyzed (1)**
19:24
**ANDERSON (1)**
5:7
**Anna (2)**
30:2,8
**anticipate (1)**
18:13
**apologize (3)**
8:24;28:25;30:20
**appears (2)**
15:16;27:9
**applicable (1)**
19:16
**application (2)**
9:6;15:24
**appointed (2)**
7:15;12:15
**approach (4)**
15:11;16:6;19:1;
22:17
**appropriate (1)**
22:10
**approved (6)**
9:23;10:22;13:6;
18:9,11;20:11
**approving (3)**
19:14;21:12;22:12

**approximately (1)**
19:24
**April (2)**
10:1;17:10
**areas (1)**
12:18
**argument (4)**
21:8,16;23:5,22
**arguments (1)**
21:4
**arm's-length (1)**
13:16
**around (1)**
26:13
**ARSHT (1)**
5:12
**assessing (1)**
31:16
**asset (8)**
9:11,12;11:3;
12:23;13:3,5,8,9
**assets (25)**
9:22;10:4,11,15;
11:8,9,14,15,18;
13:4,7,11,25;17:14;
18:13;20:1,2;29:18;
30:17,22;31:2,10,11,
14,17
**attach (1)**
32:7
**Attorneys (9)**
5:3,8,13,19,24;6:3,
8,13,18
**AUSTIN (3)**
5:2;30:4,9
**authorized (2)**
10:16;20:17
**authorizing (1)**
9:10
**automatic (1)**
21:13
**available (1)**
12:7
**average (1)**
19:23
**awaiting (1)**
18:19

**B**

**back (1)**
26:15
**Bank (7)**
5:3,8;16:24,24;
30:3,9;32:10
**bankruptcy (4)**
12:20;13:21;
31:12,18
**BARRY (1)**
6:19
**based (2)**
9:1;14:14
**basically (1)**

**26:6**
**behalf (8)**
7:6;14:24;25:7,13;
28:13;30:3,9;31:20
**benefit (1)**
17:15
**best (4)**
13:24;14:1;29:11,
15
**better (1)**
25:17
**beyond (1)**
27:16
**bid (3)**
11:6,7;13:10
**bids (5)**
10:15;11:2,5;13:4,
6
**BIFFERATO (5)**
6:9;25:6,7;31:19,
20
**bill (1)**
11:15
**binder (1)**
18:4
**bit (2)**
27:11;30:5
**black-line (3)**
19:5;22:18,23
**blanket (1)**
31:5
**board (1)**
12:16
**Both (2)**
21:7;22:22
**boxes (1)**
32:20
**breach (3)**
23:11;24:2;26:1
**bring (1)**
28:15
**BURNETT (10)**
5:20;25:12,13;
26:18,22;27:3,6,14;
28:2,7
**business (3)**
12:19;13:22;15:4
**BUTLER (1)**
6:17
**buyer (2)**
10:18,19
**buyers (2)**
10:18,19

**C**

**California (2)**
11:8;13:12
**call (2)**
29:1,5
**called (2)**
12:9;13:2
**campus (8)**

**26:6**
**behalf (8)**
7:6;14:24;25:7,13;
28:13;30:3,9;31:20
**benefit (1)**
17:15
**best (4)**
13:24;14:1;29:11,
15
**better (1)**
25:17
**beyond (1)**
27:16
**bid (3)**
11:6,7;13:10
**bids (5)**
10:15;11:2,5;13:4,
6
**BIFFERATO (5)**
6:9;25:6,7;31:19,
20
**bill (1)**
11:15
**binder (1)**
18:4
**bit (2)**
27:11;30:5
**black-line (3)**
19:5;22:18,23
**blanket (1)**
31:5
**board (1)**
12:16
**Both (2)**
21:7;22:22
**boxes (1)**
32:20
**breach (3)**
23:11;24:2;26:1
**bring (1)**
28:15
**BURNETT (10)**
5:20;25:12,13;
26:18,22;27:3,6,14;
28:2,7
**business (3)**
12:19;13:22;15:4
**BUTLER (1)**
6:17
**buyer (2)**
10:18,19
**buyers (2)**
10:18,19

**10:1,5,7,11;11:9;
13:12;17:9;32:22**
**can (14)**
12:6;17:14;18:20;
23:4,18;24:6;25:2,
24;26:10;27:14;
29:7,12;31:25;32:11
**cap (1)**
24:15
**capacity (1)**
12:22
**cards (2)**
17:23,23
**case (4)**
26:4;31:12,18;
32:5
**cash (1)**
8:2
**cede (2)**
9:17;14:20
**certain (15)**
8:25;9:21;13:11;
15:3,5;16:5,6,22;
17:7,9;19:25;20:1,7;
21:6;24:7
**certainly (2)**
25:14;26:2
**certification (4)**
7:20;8:7;20:16;
32:13
**change (4)**
15:11;16:11;
25:20;26:3
**changes (4)**
14:17;16:5;19:3;
26:12
**characterization (3)**
25:20;26:3,11
**chief (2)**
7:8;12:15
**CHRISTOPHER (1)**
6:4
**claim (6)**
24:12,15;25:20,
22;26:3,12
**claims (2)**
23:15;24:23
**clarification (1)**
25:24
**clarify (1)**
30:21
**clean (2)**
22:23,25
**clearly (1)**
11:22
**CLERK (1)**
7:2
**client (1)**
32:3
**closed (1)**
10:1
**Code (1)**
13:21

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 37 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)

May 27, 2015

**COLE (1)**
5:23
**collateral (1)**
8:2
**colleagues (1)**
7:7
**Colleges (3)**
6:18;11:7;13:10
**Collins (1)**
7:7
**colloquy (1)**
25:14
**collusion (1)**
13:19
**coming (2)**
30:21;31:24
**comment (1)**
8:19
**comments (9)**
8:17;11:25;15:5,6;
16:8,10,22,24;20:13
**Committee (8)**
6:3,13;7:14;8:6;
9:2;16:23,23;28:13
**comparison (1)**
19:2
**complete (1)**
18:14
**completed (2)**
18:18;33:7
**concern (9)**
17:16;22:21;
24:17,24;27:15;
28:15;29:7,16;31:8
**concerned (3)**
24:1;27:10;31:10
**concerns (1)**
17:13
**conclude (1)**
14:4
**concluded (1)**
33:11
**concludes (1)**
33:9
**condition (1)**
24:7
**conduct (1)**
9:10
**conference (1)**
29:1
**confirmation (1)**
18:19
**conform (1)**
16:10
**connection (5)**
14:12;15:24;17:3;
28:10;30:1
**CONNOLLY (1)**
6:7
**consented (1)**
16:25
**consequence (1)**
24:10

**considerable (2)**
12:17;22:1
**consideration (2)**
10:17;13:23
**consult (1)**
32:10
**Consulting (5)**
5:24;7:10;9:6;
12:11,13
**consummate (1)**
9:21
**consummated (1)**
10:25
**consummation (1)**
14:1
**contact (1)**
21:23
**contacted (2)**
10:14;20:22
**contacting (1)**
21:20
**contained (2)**
13:5,8
**containing (1)**
13:14
**contains (1)**
23:20
**contemporaneous (1)**
24:19
**continuance (1)**
7:19
**continue (1)**
16:4
**continued (2)**
8:3,8
**continuing (2)**
23:17;26:8
**cooperation (1)**
7:16
**coordinate (2)**
21:21;22:2
**copier (1)**
25:15
**copy (1)**
7:24
**Corinthian (1)**
6:18
**corporate (1)**
12:10
**CORROON (1)**
5:7
**cost (3)**
19:23,25;20:3
**counsel (10)**
7:14,21;8:7;19:11;
21:23;22:24;25:9,
18;26:6;29:2
**course (2)**
13:1;15:4
**COURT (64)**
7:3,22,25;8:11,22;
9:3,7,19,23;12:8;
14:5,11,19,22;15:1,

9,12,21,23;16:2,7,
18;17:2;18:2,25;
19:4;20:11;22:19;
23:2,6,23;24:5,9,14;
25:5;26:16,19,23;
27:4,7,12;28:1,6,9,
14,16,23;29:3,17,21,
23,25;30:5,7;31:3,7;
32:8,16,23,25;33:3,
5,9,10
**courtroom (1)**
12:7
**covered (3)**
17:21;18:6;19:15
**create (2)**
24:15;27:11
**creating (1)**
28:7
**creditors (4)**
7:15;14:2;17:15;
28:13
**creditors' (1)**
16:23
**CRO (1)**
12:22
**cross-examination (1)**
12:7
**cross-examine (1)**
14:5
**curious (2)**
30:13,23
**Current (1)**
5:13
**CW (8)**
6:8;21:8,9,23;
22:24;25:7,15;31:20

**D**

**damage (2)**
24:11;25:22
**damages (1)**
24:22
**date (9)**
17:20;19:7,8,21;
20:11,18;21:19,21;
22:7
**day (3)**
10:16;11:2;19:23
**de (8)**
9:11,23;10:15,21,
24;11:3;13:5,8
**deadline (2)**
11:21,22
**dealing (1)**
10:4
**debtor (12)**
11:15;12:3;13:21;
14:8;23:2,24,25;
24:9;29:9;31:3,9;
32:10
**Debtors (87)**
5:14;7:6,9;8:6;

9:10,21;10:1,3,6,12,
14,22,23,25;11:1,4,4,
12,17,19,23,25;
12:14;13:3,7,10,13,
17,18,20,23;14:2,25;
15:15,18;16:8,12,13,
17,22;17:10,11,18,
22;18:2,5,8,13,14,17,
20,22,25;19:6,8,10,
13,19,21,24;20:2,3,4,
9,13,18,22,22;21:3,5,12,
15,16,22,25;22:2,6,8,
12;23:8,13,16;25:10;
27:20;28:24;29:2,
10;30:14
**debtors' (21)**
8:2,25;9:5,10,12,
15;11:8;12:16,24;
13:12;15:3;16:4;
17:7,9,13,15,20;
18:1;25:18;26:6,20
**Decatur (1)**
19:11
**declaration (5)**
12:12,21;15:7,14,
20
**deemed (1)**
24:18
**defined (1)**
13:21
**Delaware (1)**
28:7
**description (3)**
11:14;19:11;31:10
**determine (1)**
31:17
**determined (2)**
13:23;20:3
**determining (1)**
31:12
**developed (1)**
27:8
**devised (1)**
10:3
**dialog (1)**
25:17
**different (1)**
32:22
**diligently (1)**
17:11
**directed (1)**
28:24
**director (3)**
7:10,10;12:10
**Directors (2)**
5:13;12:16
**discussed (2)**
10:6;19:6
**discussion (1)**
27:12
**discussions (3)**
8:5;9:1;12:2
**disposition (1)**

31:2
**diverse (1)**
12:13
**docket (1)**
13:14
**dollars (6)**
10:8,17,20;11:10;
13:13;19:24
**done (1)**
23:21

**E**

**earlier (1)**
18:11
**early (1)**
8:16
**easily (1)**
10:9
**eat (1)**
27:12
**economic (1)**
11:16
**effect (1)**
23:24
**effective (4)**
10:1;19:7,21;
24:18
**effort (4)**
22:1,11;29:11,14
**either (1)**
13:19;24:18;26:5
**else (8)**
14:11;15:23;17:2,
24;23:23,25;28:9;
29:25;33:6
**e-mail (2)**
11:20;20:22
**employee-related (1)**
8:5
**Employees (1)**
5:14
**end (1)**
26:15
**engaged (1)**
12:14
**enough (1)**
28:1
**enter (3)**
15:21;16:18,18
**entered (3)**
8:13;10:16;20:15
**entering (1)**
8:14
**entitled (1)**
26:7
**entry (1)**
16:25
**equals (1)**
26:1
**equipment (17)**
10:8;20:8,10,14,
17,19,21;21:7,22,24;

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 38 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)

May 27, 2015

**22:**1,2,4,14;25:16;
31:24;32:5
**equivalent (1)**
23:10
**ESQ (9)**
5:4,9,15,20,25;6:4,
9,14,19
**essentially (1)**
30:13
**estate (1)**
32:6
**estates (2)**
14:2;17:15
**et (1)**
6:18
**evening (1)**
8:16
**everyone (1)**
7:3
**evidence (1)**
12:3
**exact (1)**
25:23
**example (4)**
24:5,6,16,18
**exceed (1)**
10:20
**exceeded (4)**
11:2,5;13:4,7
**exceeding (2)**
9:11,22
**exercise (1)**
13:22
**exert (1)**
13:18
**Exhibit (5)**
15:16;17:19;18:6,
24;19:1
**expense (2)**
20:1;24:21
**expenses (1)**
8:5
**experience (2)**
12:13,17
**expressed (1)**
27:23
**extension (1)**
8:18

**F**

**fact (1)**
27:15
**failed (1)**
22:4
**fair (1)**
13:24
**faith (1)**
12:4
**fashion (1)**
17:12
**few (2)**
7:21;11:25

**file (1)**
8:18
**filed (17)**
7:20,23;8:6,16;
9:1;10:22;11:1,12;
13:13;14:18;15:7;
18:2,7;20:6,10,25;
21:19
**filing (1)**
15:7
**final (5)**
8:5,7;16:10,14,20
**finally (2)**
9:5;19:10
**financial (2)**
12:13,18
**financing (1)**
12:10
**fine (1)**
7:22
**Finger (2)**
7:6;14:24
**first (7)**
10:16;21:5,16;
23:14;25:15;28:16,
23
**first- (1)**
11:1
**first-day (6)**
9:23,25;10:6;
12:12,21;13:6
**FLASTER/GREENBERG (2)**
5:18;25:13
**following (1)**
8:17
**follows (1)**
13:3
**foot (1)**
33:1
**form (18)**
8:6;14:17;15:10,
11,16;16:5,9;17:19;
18:7,24;19:1;20:14;
22:18;27:8,9,24;
30:10,23
**formal (1)**
12:20
**Former (2)**
5:13;17:9
**forms (1)**
8:15
**forth (10)**
9:11,22;11:3,23;
12:11,21,23;15:13;
16:16;19:5
**forward (1)**
9:9
**four (2)**
9:9;16:12
**free (2)**
27:21;28:3
**FREEMAN (1)**
6:19

**Friday (1)**
18:15
**FTI (6)**
5:24;7:10;9:6;
12:11,11,13
**fulsome (1)**
10:10
**Further (7)**
13:20;14:8;23:2;
25:4;28:11;29:23;
33:5

**G**

**gained (1)**
12:24
**GALLAGHER (1)**
6:7
**GAUTIER (9)**
28:12,12,15,23,25;
29:18,21,22,24
**general (2)**
24:23;31:9
**goal (2)**
30:25;31:21
**Good (8)**
7:3,4,5;12:3;
14:23;25:6,12;32:9
**good-faith (1)**
13:16
**grant (1)**
14:14
**granting (1)**
16:18
**great (3)**
8:1,12;9:4
**GROUP (4)**
6:12;10:18,19;
15:17
**GUC (1)**
6:13
**guess (3)**
24:14;27:8;32:5
**GUMPORT (10)**
5:4;30:2,2,6,8,8,
20;31:5,8;32:17

**H**

**Hagle (2)**
30:3,9
**handed (1)**
25:9
**handing (1)**
17:23
**handover (1)**
17:25
**happened (1)**
29:8
**happening (1)**
32:9
**happens (2)**
27:5;29:3

**happy (3)**
22:24;27:24;28:21
**hard (1)**
7:12
**hate (2)**
27:11;28:15
**hear (7)**
14:7,13;15:25;
17:4;28:11;30:18;
32:14
**heard (6)**
14:12;15:24;17:3;
28:10;29:6;30:1
**hearing (15)**
7:17;8:3,8;9:24,
25;10:6;11:2;13:6;
16:13,14,20,21;18:4;
32:14;33:10
**Here's (1)**
29:7
**Hewlett (1)**
20:9
**highest (1)**
13:24
**hold (1)**
11:17
**Honor (39)**
7:4,5,11,18;8:12,
23;9:8,20;12:6;
14:10,16,20,23;17:6;
18:10;20:15;22:17;
23:1,14;25:6,12,14;
26:5,18;27:14,19,19,
23;28:12,21;29:10,
22,24;30:2,8;32:15,
17;33:4,8
**Honor's (1)**
18:4
**hope (1)**
29:14
**HP (6)**
20:10,19,20,22,24;
21:20

**I**

**identifiable (1)**
17:16
**identified (2)**
11:13,20
**identity (2)**
11:15,17
**immediately (2)**
24:11,19
**impact (2)**
26:11;31:21
**implemented (1)**
10:12
**improper (1)**
13:19
**in- (1)**
12:19
**inappropriate (1)**

23:9
**Inc (5)**
6:8,18;11:7;13:11;
25:7
**include (1)**
29:19
**included (3)**
11:13,16;18:3
**includes (2)**
21:20;28:19
**including (1)**
22:14
**incur (1)**
22:3
**incurrence (1)**
10:13
**indicates (1)**
26:9
**indicating (2)**
17:25;21:1
**influence (1)**
13:18
**informal (1)**
20:13
**information (3)**
15:19;17:17;21:23
**initial (1)**
20:23
**initially (1)**
29:14
**insert (1)**
30:23
**insider (1)**
13:20
**instance (1)**
26:24
**instructed (1)**
10:7
**instruction (1)**
18:18
**intend (1)**
19:13
**intent (1)**
18:1
**interest (4)**
21:25;23:17;25:3;
31:14
**interested (2)**
10:14;11:20
**interests (2)**
11:18;14:2
**interfere (1)**
27:21
**interim (4)**
8:4,7,10;16:11
**into (1)**
32:20
**involving (1)**
10:16
**issue (13)**
12:5;25:15,16,19,
23;26:1,2,8,14;27:1,
10,17;28:8

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 39 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)                                                                May 27, 2015

issues (2)
16:6;27:12
item (15)
8:2,4,17,23,24;9:5,
9,12,13,14;15:2;
16:3;17:6;18:10;
20:12
items (3)
7:11;8:13;32:1

## J

JEFFER (1)
6:17
Jennifer (2)
30:3,9
JEREMY (1)
5:9
Joaquin (2)
11:7;13:10
joinder (2)
20:7;21:9
joined (2)
7:7;25:15
judgment (1)
13:22
JULIA (1)
6:14
July (1)
12:14
jump (1)
31:19
June (3)
8:3,8;16:20

## K

Kaplan (1)
28:13
KAREN (3)
6:9;25:6;31:19
Key (3)
17:13,23,25
keys (2)
17:23;22:9
kind (2)
31:21;32:11
KLEIN (1)
6:14
knowledge (2)
12:23,24
known (1)
11:17
KOCH (1)
5:15

## L

landlord (6)
17:24;19:12;
21:14;22:13;23:18;
30:24
landlords (15)

18:21;19:16,17;
21:1,4,8,18;22:15;
30:12,14,16;31:1,16,
20;32:11
landlord's (1)
26:3
language (16)
16:16;22:12,20,23,
25;24:25;25:8,9;
26:9,17,23;30:11,15;
31:4,23;32:12
last (2)
8:16;28:16
later (1)
20:21
Latham (2)
15:17,19
LAW (5)
6:12;28:7;30:16;
31:1,21
Layton (2)
7:6;14:24
lease (24)
17:21;19:7,8,10,
12,20,23;21:15,20;
23:9,10,11,12,12,13,
15,17,20,23;24:2,3,
4;26:10;27:5
leased (9)
18:9;20:8,8,21;
21:6,6,7,18;22:1
leases (15)
10:3;17:8,8,19;
18:6,23,23;19:6,14,
15;20:10,14,18,19;
22:7
least (1)
32:4
leaves (1)
9:8
left (1)
25:11
legitimate (1)
26:21
less (2)
10:17;31:22
lessors (5)
21:24;22:4,15;
31:24;32:5
letter (1)
17:25
liability (4)
22:14;30:12,24;
31:5
liens (3)
11:17;30:22;32:7
limited (1)
21:13
liquidated (1)
17:14
list (1)
15:16
listed (2)

17:19;18:6
listen (2)
24:10;29:3
little (1)
27:10;30:5
LLC (1)
6:12
LLP (4)
5:2,7;6:7,17
loan (1)
12:19
located (3)
11:8;13:11;18:9
location (7)
10:18;11:6;13:4;
19:11,24;20:8;29:13
locations (17)
10:1,5,8,9,11;17:9,
12;18:8,16,17,19,20;
19:18,21,25;21:7;
32:22
long (2)
28:4;29:5
longer (1)
25:2
look (3)
27:1;29:6;32:8
looked (1)
28:17
lot (1)
32:1

## M

MacGregor (1)
15:17
mail (1)
11:20
maintenance (1)
28:18
major (1)
17:15
management (2)
12:13,18
managing (3)
7:9,10;12:10
MANGELS (1)
6:17
many (4)
7:12,16;10:2;17:9
Marisa (2)
7:7;14:23
Mark (1)
7:7
matter (1)
27:13
matters (10)
7:12,16,19,21;
8:17;9:9,18;12:23,
24;14:21
MATTHEW (1)
5:15
maximize (1)

10:12
May (23)
7:15;9:25;10:15;
11:12,22;12:8,14;
13:15;15:11,11,12;16:6,
7;19:1;20:20,21,23;
22:17,19;24:15;
29:13;31:13,21,22
Maybe (1)
30:5
means (1)
22:9
Metro (2)
11:8;13:12
might (1)
31:11
mind (1)
24:11
minimis (8)
9:12,23;10:15,21,
24;11:3;13:5,8
miscellaneous (3)
9:22;10:4;13:7
MITCHELL (1)
6:17
modification (1)
21:13
modify (1)
23:8
Monday (1)
28:17
more (4)
10:10;27:11;
31:11,22
morning (3)
7:24;8:16;15:8
MORRIS (1)
5:12
Mortensen (1)
15:7
Mortensen's (1)
15:13
most (1)
32:21
motion (43)
8:2,3,4,18,21,24,
25;9:10,12,13,14,15,
16,20;11:1,3,11,21;
12:23;13:3,10;14:9,
12;15:3,5;16:4,15,
20;17:3,7,18;18:7;
19:14,19;20:6,10,14;
21:4,12;22:13;23:3;
28:10;30:1
motions (1)
28:17
moving (1)
20:1
much (1)
33:9
multiple (1)
20:23
must (1)

23:15

## N

need (1)
33:6
negotiated (1)
18:8
negotiation (1)
13:16
new (3)
16:16;28:7;29:6
next (1)
32:14
Nice (1)
15:1
NICHOLS (1)
5:12
nobody (1)
31:14
Nolan (10)
7:8;12:5,6,9,12,22,
25;13:2;14:4,6
Nolan's (1)
12:17
nonresidential (1)
17:8
noon (1)
11:22
Notably (1)
20:12
note (2)
19:16;22:22
noted (1)
20:6
notice (8)
11:12,19,23;
13:13;14:18;21:14;
30:16;31:1
notices (7)
10:22,24;18:2,3;
20:25,25;21:19
notified (1)
20:19
notion (1)
30:14
number (18)
7:11;8:2,4,13,18,
24,24;9:5,9,12,14,
14;13:14;15:2;16:3;
18:10;20:12
nunc (3)
17:19;20:18;22:7

## O

objecting (4)
16:15,19,21;21:7
objection (9)
11:21;20:7,16;
21:9,10,11;23:7;
25:10;27:15
objections (10)

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 40 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)

May 27, 2015

10:23;11:23;
16:12,14;19:17;20:6,
13;21:3,4;22:11
**objectors (1)**
25:8
**obligations (8)**
22:4;23:13,21;
24:4,21,22;30:15,25
**obviously (3)**
26:1,11;27:16
**occupied (1)**
18:16
**occurred (1)**
24:20
**occurs (1)**
27:1
**offered (2)**
13:23,25
**Office (6)**
7:13;8:19;11:25;
15:5,14;16:9
**officer (2)**
7:9;12:15
**Officers (1)**
5:13
**official (1)**
7:14
**old (1)**
22:21
**omitted (1)**
19:14
**one (13)**
11:5,6;13:4;14:17;
15:11,15;18:7;20:6;
22:21;23:24;25:7,
11;31:20
**only (6)**
11:4,5;23:4;24:10;
25:19;31:8
**Ontario (2)**
11:8;13:12
**open (2)**
7:12;23:22
**operating (1)**
17:10
**operational (1)**
12:18
**opportunity (3)**
8:9;29:1;31:16
**opposed (2)**
24:1,22
**order (56)**
7:20;8:7,10,11,15,
22;9:1,3,7,10,23;
10:16,21,25;11:4;
13:5,8;14:17,19;
15:10,11,17,22;16:2,
5,10,11,11,18,25;
17:5,19;18:7,24;
19:2,13;20:15,17;
21:12;22:12,13,18;
23:9,16,19;24:25;
26:9,17,24;27:8,9,

24;30:11,24;31:23;
32:13
**orderly (1)**
17:12
**orders (3)**
8:5,13,14
**ordinary (2)**
13:1;15:4
**ordinary-course (2)**
9:13;15:18
**out (4)**
26:23;29:13;
31:22;32:11
**outlined (1)**
11:11
**out-of-cap (1)**
25:21
**out-of-court (1)**
12:20
**outside (2)**
31:12,17
**outstanding (1)**
8:17
**outweighed (2)**
20:1,4
**over (5)**
9:17;10:8;12:12;
17:23;24:7
**overnight (1)**
11:20
**owned (2)**
11:15;32:5

## P

**Packard (1)**
20:9
**papers (1)**
25:23
**paragraph (5)**
16:16,17,23;22:22,
22
**part (5)**
23:19;29:12;
30:15;31:1;32:21
**particular (2)**
27:17,24
**parties (9)**
10:14;11:17,20;
22:14;30:12,16,25;
31:2,6
**parties-in-interest (1)**
14:3
**PATRICK (1)**
5:25
**payment (1)**
8:25
**PC (3)**
5:18,23;6:2
**per (3)**
10:18;19:23,23
**performance (2)**
23:25;24:10

**permitting (1)**
21:14
**personal (6)**
12:22;19:20;20:3,
5,7;28:19
**personally (1)**
17:16
**perspective (2)**
26:5;30:21
**petition (3)**
20:11,18;21:21
**phone (1)**
29:5
**phoned (1)**
20:22
**place (1)**
32:21
**placed (1)**
29:4
**planning (1)**
12:19
**please (1)**
7:2
**plus (1)**
19:25
**PM (1)**
33:11
**podium (2)**
9:17;14:21
**POLSINELLI (1)**
6:2
**posed (1)**
29:18
**position (1)**
25:17
**possession (10)**
17:11,21;18:5,15,
22;19:9,22;21:6,18;
22:8
**possible (4)**
7:13,16;21:17;
29:15
**possibly (1)**
29:12
**post-petition (1)**
24:20
**post-rejection (1)**
23:19
**potential (2)**
10:14;11:13
**potentially (1)**
30:21
**POTTER (1)**
5:7
**practice (1)**
12:11
**premises (21)**
17:21,22;18:1,3,6,
9,15,23;19:9,15,22;
21:2,6,18;22:8,16;
26:7;32:1
**prepared (2)**

12:4;14:14
**pre-petition (4)**
8:25;23:11;24:2;
25:1
**presented (1)**
18:10
**preservation (2)**
17:14,16
**preserve (1)**
29:11
**preserved (1)**
29:15
**presidents (1)**
10:7
**pre-termination (1)**
23:21
**price (2)**
11:9;13:13
**prior (2)**
7:16;16:12
**priority (1)**
24:23
**pro (3)**
17:20;20:18;22:7
**procedures (3)**
10:21;11:11;12:1
**proceed (4)**
12:6,8;26:8;27:21
**proceeded (1)**
27:15
**proceedings (2)**
12:21;33:11
**process (6)**
10:2,10,12;17:13;
18:14;32:12
**product (1)**
13:16
**professional (2)**
15:18;27:12
**professionals (3)**
9:13;15:3,15
**proffer (1)**
12:4,6
**properties (1)**
30:22
**property (19)**
17:8,24;18:8,12;
19:20;20:3,4,5,8;
22:5,9,16;24:7;25:3;
28:19;30:17;32:2,4,7
**proposed (24)**
8:6,15;10:24;
11:12,14,15,19,21,
24;12:1;13:14,15,15;
14:1,17;15:10,16;
16:9;17:19;18:6,24;
30:23;31:7;32:12
**protect (1)**
30:24
**protected (1)**
31:24
**provide (4)**
21:12;23:9;30:16;

31:1
**provided (3)**
15:19;21:22;31:9
**provides (1)**
22:13
**purchase (2)**
11:9;13:11,13
**purchased (2)**
13:25;18:12
**purchaser (4)**
11:13;12:4;18:12,
13
**purpose (1)**
21:13
**purposes (1)**
31:11
**pursuant (8)**
9:20;10:21,24;
11:11;17:18;18:16;
19:19;20:10
**pursuing (1)**
31:15
**put (3)**
12:3;32:20,20
**putting (1)**
26:24

## Q

**quickly (2)**
7:18;32:9

## R

**raise (1)**
21:4
**raised (1)**
21:8
**reach (1)**
32:13
**read (1)**
15:9
**real (1)**
17:8
**realize (1)**
20:2
**really (2)**
25:17;26:14
**reason (3)**
25:22;29:12;32:9
**reasonable (1)**
13:24
**recall (1)**
9:25
**receive (3)**
15:4;19:17;20:13
**received (15)**
8:19;10:14,23;
11:2,4,4,23,25;13:4,
7,10;16:8,12,22;21:3
**recess (1)**
33:10
**record (3)**

14:14;28:3,5

**records (7)**
17:17;28:18,20;
29:11,15,19;32:20
**recover (2)**
20:20;22:5
**reference (1)**
30:11
**regarding (2)**
12:3;15:19
**regards (1)**
13:3
**REILLEY (1)**
5:25
**reject (3)**
17:7,18;20:14
**rejected (5)**
20:9;21:25;23:17,
24;25:1
**rejecting (1)**
10:2
**rejection (15)**
9:15;19:7;20:17,
19,25;22:7;23:10;
24:9,11,19,19,22;
25:22;26:1;27:5
**relate (1)**
17:9
**related (4)**
10:18,19;16:16;
18:23
**relates (1)**
28:18
**relet (6)**
23:16;25:2,24;
26:7;27:21;31:25
**relief (9)**
8:8,20;13:9;14:15;
16:18;23:14;25:2,
16;26:10
**relieve (1)**
23:24
**relieves (1)**
24:9
**remain (2)**
7:21;19:25
**remained (2)**
10:4,11
**remaining (6)**
9:17;14:21;19:20;
20:8;22:16;32:1
**remains (1)**
21:7
**removal (3)**
18:14;22:2;31:5
**remove (3)**
18:12;30:15,25
**removed (3)**
15:15;18:24;19:6
**removing (1)**
20:3
**rent (3)**
10:13;19:23;22:3

**report (1)**
12:25
**representation (1)**
32:19
**representatives (1)**
12:25
**represents (1)**
13:24
**request (9)**
15:14,21;16:17;
19:11;20:23;22:24;
23:8;26:20;27:4
**requested (6)**
8:21;13:9;14:15;
20:20;21:11;32:18
**requesting (1)**
26:16;31:22
**required (4)**
17:24;22:3;23:21,
25
**resolve (3)**
7:12;16:5;22:11
**resolved (6)**
7:19;15:6;16:13,
13;25:10,14
**resolving (2)**
7:16;8:16
**respect (15)**
8:4;13:9;16:15,19,
21;18:7;19:14;
21:16,19;22:16;
23:7;25:16;26:8;
31:13;32:19
**respectfully (4)**
15:21;16:17;
21:17;22:6
**respond (2)**
29:9;31:3
**response (5)**
14:7,13;15:25;
17:4;26:20
**responses (1)**
11:24
**responsibilities (1)**
13:1
**restructuring (4)**
7:9;12:11,15,19
**restructurings (1)**
12:20
**retain (3)**
9:6,13;15:3
**retained (2)**
12:25;28:16
**retrieval (1)**
21:22
**returning (1)**
22:9
**review (1)**
8:9
**reviewed (1)**
16:24
**revise (1)**
21:12

**revised (11)**
7:20;8:6,15,20;
9:1;19:1;22:12,13,
17;25:8;30:10
**Richards (2)**
7:6;14:24
**Ricoh (7)**
20:9,10,19,20,22,
24;21:21
**right (14)**
9:19;14:22;15:23;
19:4;23:6;24:12;
27:6;28:6;29:25;
30:5;32:8,25;33:3,5
**rights (1)**
31:17
**rise (1)**
7:2
**Robins (1)**
28:13
**ROSNER (1)**
6:12
**run (1)**
7:18
**RYAN (1)**
5:9

**S**

**Sacramento (2)**
32:24;33:2
**sale (33)**
9:12,16,20,23;
10:10,15,21,23,24,
24;11:3,4,12,14,16,
16,19,21,24;12:1,23;
13:3,5,8,9,14,15,15;
14:1;18:8,9,11;20:2
**sales (5)**
9:11,21;10:16,19,
25
**same (2)**
11:6;29:17
**San (2)**
11:7;13:10
**satisfactory (1)**
32:12
**Satisfied (1)**
33:3
**saying (2)**
24:14;30:11
**schedules (1)**
8:19
**Schepacarter (3)**
32:18;33:3,4
**SCHOTZ (1)**
5:23
**Scott (1)**
28:12
**seated (1)**
7:2
**second (3)**
7:23;21:11;23:18

**Section (1)**
13:21
**seek (2)**
17:18;19:19
**seeking (1)**
9:21
**seems (1)**
26:24
**segregated (1)**
32:21
**send (1)**
21:14
**senior (3)**
7:10;12:10,18
**served (4)**
10:22;11:19;
20:24,25
**services (1)**
16:4
**set (10)**
9:11,22;11:3,22;
12:11,21,23;15:13;
16:16;19:5
**several (2)**
20:24;21:21
**shall (2)**
22:13;30:12
**ship (1)**
10:8
**short (1)**
12:4
**shortly (1)**
11:1
**showing (1)**
19:2
**sic (1)**
13:11
**SIDLEY (3)**
5:2;30:4,9
**signed (7)**
8:11,22;9:3,7;
14:19;16:2;17:5
**simply (1)**
31:25
**single (2)**
10:18,19
**SJVC (12)**
11:7,9,13;13:11,
15,16,17,18,20,20,
23;14:1
**skirt (1)**
26:13
**sorry (6)**
22:21,22;27:18,
19;28:23;30:18
**speak (2)**
28:21;30:5
**specific (1)**
26:9
**speed (1)**
29:4
**Square (10)**
5:19;21:9,11;23:5,

8,15;25:13;27:20,25;
33:1
**stand (1)**
33:10
**state (4)**
25:17;30:16;31:1,
21
**stated (1)**
25:23
**statement (1)**
28:2
**statements (1)**
8:19
**States (7)**
7:14;8:20;12:1,2;
15:6,14;16:9
**stay (6)**
21:13;25:16,25;
26:7,10;28:4
**STEELE (14)**
7:5,6,23;8:1,12,23;
9:4,8,20;12:9;14:10,
16,20;18:10
**stemming (1)**
10:13
**still (1)**
26:16
**stipulate (1)**
27:20
**strategy (1)**
10:3
**struck (3)**
22:23,25;25:9
**Student (9)**
6:3;17:17;28:13,
18,20;29:11,15,19;
32:20
**subject (3)**
10:10;11:14;24:15
**subleases (1)**
18:17
**submit (7)**
18:25;19:13;
21:17;22:6,25;23:8;
32:12
**submitted (1)**
20:15
**submitting (1)**
16:25
**substituting (2)**
30:3,9
**sufficient (1)**
28:4
**suggest (1)**
32:9
**support (2)**
14:8;23:3
**suppose (1)**
25:19
**sure (4)**
26:15;29:14;32:3,
7
**surrender (8)**

Case 15-10952-JTD    Doc 258    Filed 06/02/15    Page 42 of 43

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952(KJC)

May 27, 2015

17:11,22;18:1,15,
20;21:1,18,20
**surrendered (10)**
17:20;18:3,5,22;
19:8,15,21;21:5;
22:8,16
**Swenson (8)**
6:8;21:8,9,23;
22:24;25:7,15;31:20
**systemic (1)**
27:1

**T**

**talk (1)**
33:6
**talking (1)**
32:4
**taxes (1)**
8:25
**teach-out (1)**
18:17
**teams (1)**
12:18
**technical (1)**
25:25
**TELEPHONICALLY (2)**
5:4;6:19
**terminate (2)**
23:11;26:10
**terminated (1)**
23:16
**termination (9)**
21:14;23:9,12;
24:3,3,18,20,24;26:2
**terms (5)**
11:16;13:14;
25:15;29:3;31:16
**Terranova (30)**
7:8;9:17;14:21,23,
24;15:2,10,13;16:1,
3,8;17:6;19:5;22:20;
23:4,7;24:1,6,13,17;
27:19;28:21;29:10,
20;30:18;32:15,18,
24;33:1,7
**testify (3)**
12:9;13:2,2
**testimony (1)**
14:4
**theory (1)**
24:14
**third (4)**
22:14;30:25;31:2,
6
**thirteen (1)**
10:22
**thoughts (1)**
26:19
**three (4)**
18:23;19:6,14,17
**threshold (1)**
9:22

**thresholds (5)**
9:11;11:3,5;13:5,8
**timely (1)**
17:12
**times (2)**
20:23;21:21
**today (5)**
7:7,12;17:1;29:8;
33:6
**today's (2)**
17:7;20:12
**together (1)**
32:22
**total (2)**
10:17,19
**transfer (1)**
10:17
**transportable (1)**
10:9
**trigger (2)**
23:12;24:3
**tripping (1)**
26:15
**Trustee (8)**
7:14;8:20;12:1,2,
2;15:6,15;16:9
**try (1)**
30:20
**trying (4)**
26:2,12,13;29:4
**tunc (3)**
17:20;20:18;22:7
**TUNNELL (1)**
5:12
**turn (2)**
7:21;24:7
**Turning (1)**
8:1
**twenty (1)**
12:12
**twenty-nine (1)**
10:7
**two (5)**
11:5;13:4;18:16;
21:3,4

**U**

**Um-hum (1)**
26:22
**unconditional (1)**
21:20
**under (9)**
7:20;8:7;14:18;
20:15;23:13;24:4;
30:16;31:1;32:13
**underlying (1)**
19:22
**undue (1)**
13:18
**unequivocal (2)**
18:1;21:1
**unequivocally (1)**

21:5
**unexpired (1)**
17:8
**UNISON (1)**
7:4
**United (7)**
7:13;8:20;12:1,2;
15:5,14;16:9
**unless (1)**
26:18
**unnecessary (3)**
10:13;23:15;28:3
**unqualified (1)**
31:4
**unreasonable (1)**
26:20
**unsecured (2)**
7:15;24:23
**up (7)**
23:22;25:9;26:15;
27:12;28:16;29:4;
30:5
**updated (1)**
19:10
**upon (2)**
13:2;14:14
**utilities (5)**
16:12,15,19,19,21
**utility (3)**
9:14;16:4;17:3
**utilized (1)**
15:4

**V**

**vacated (1)**
18:20
**Valley (1)**
11:7
**value (4)**
10:12;13:25;20:1,
4
**version (2)**
19:2;22:25
**via (1)**
11:19
**violating (1)**
28:4

**W**

**wants (1)**
31:14
**WARD (1)**
6:4
**warehouse (1)**
33:2
**Watkins (2)**
15:18,19
**way (4)**
27:22;29:7,15,17
**weren't (1)**
29:12

**what's (1)**
29:7
**Whereupon (1)**
33:11
**who's (1)**
7:8
**WILLIAM (4)**
5:20;7:8;12:9;
25:12
**willing (2)**
27:20;32:3
**winning (1)**
11:6
**wish (5)**
14:5;15:24;17:2;
28:9;29:25
**wishes (1)**
14:11
**without (3)**
22:25;28:4,7
**words (1)**
31:13
**work (3)**
27:25;28:5;31:16;
32:3,11
**worked (3)**
7:12;17:11;26:23
**working (1)**
12:17
**workouts (1)**
12:19
**WyoTech (1)**
10:9

**Y**

**years (1)**
12:12
**yesterday (1)**
20:11

**Z**

**Zenith (1)**
18:19
**Zenith's (1)**
18:17

**1**

**1 (6)**
8:2;15:16;17:19;
18:6,24;19:1
**10 (1)**
8:14
**10131 (1)**
13:21
**11 (1)**
9:5
**12 (1)**
8:14
**125,000 (1)**
10:20

**12th (2)**
11:12;13:15
**13 (2)**
9:14;16:3
**13th (1)**
7:15
**14 (4)**
9:14;16:16,17;
17:6
**1st (1)**
12:14

**2**

**2 (2)**
8:4;22:22
**2,500 (1)**
19:24
**2:36 (1)**
33:11
**200,000 (2)**
11:10;13:13
**2014 (2)**
12:14,15
**2015 (6)**
11:22;13:15;
17:10;20:20,21,24
**22nd (1)**
11:22
**25,000 (1)**
10:17
**26th (1)**
17:10
**27th (1)**
10:2

**3**

**3 (2)**
8:13;22:22
**30,000 (1)**
33:1
**30th (1)**
12:14

**4**

**4 (3)**
8:13;20:12,20
**407 (9)**
5:19;21:9,11;23:5,
8,15;25:13;27:20,25
**4th (1)**
20:23

**5**

**5 (2)**
9:9;18:10
**5,000 (1)**
10:8
**502b7 (1)**
26:12

**CORINTHIAN COLLEGES, INC., et al.**
**Case No. 15-10952(KJC)**

**6**

**6 (2)**
　9:12;15:2

**7**

**7 (1)**
　8:13

**8**

**8 (3)**
　8:18,24;16:23
**84 (1)**
　13:14
**8th (6)**
　8:3,8;10:15;16:20;
　20:21;29:13

**9**

**9 (1)**
　8:24