**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | § |
| | §  Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § |
| | §  Case No. 15-10952 (KJC) |
| | § |
| | §  Jointly Administered |
| Debtors. | §  **Objection Deadline: June 16, 2015 at 4:00 p.m. (EDT)** |
| | §  **Hearing Date: June 30, 2015 at 2:00 p.m. (EDT)** |

---

**DEBTORS' MOTION FOR AUTHORIZATION TO (A) ASSUME
EMPLOYMENT AGREEMENTS WITH PRICEWATERHOUSECOOPERS, LLP
AND (B) EMPLOY AND RETAIN PRICEWATERHOUSECOOPERS, LLP
AS TAX ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request entry of an order authorizing the Debtors to (a) assume that certain State Reverse Sales/Use Tax Refund and Income Tax Refund Engagement Letters (the "**Engagement Agreements**") between Corinthian and PricewaterhouseCoopers, LLP ("**PwC**") and (b) employ and retain PwC as tax advisor to the Debtors effective *nunc pro tunc* to May 4, 2015 (the "**Petition Date**") to continue providing the Sales/Use Tax Refund Services, Income Tax Refund Services and California's Franchise Tax Board (the "**CA FTB**") Audit Support Services (as such terms are defined here). In support of this motion (the "**Motion**"), the Debtors respectfully state as follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

2.     On the Petition Date, each of the Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees. It also offered degrees online.

4.     Among its acquisitions, in January 2010, the Corinthian purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**"). Heald, through its subsidiaries, operated Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

---

[2]    Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

5.      Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases and the Debtors' goals for these cases, is set forth in the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") [D.I. 10].

### RELIEF REQUESTED

6.      Pursuant to sections 327(a), 328, 365(a) and 1107(b) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rule 2014-1, the Debtors hereby file this Motion and request entry of an order, a proposed form of which is attached hereto as Exhibit E (the "**Proposed Order**"):  (a) authorizing the Debtors to assume the Engagement Agreements; (b) authorizing the Debtors to employ and retain PwC effective *nunc pro tunc* to the Petition Date to continue providing the Sales/Use Tax Refund Services, Income Tax Refund Services and CA FTB Audit Support Services; and (iii) approving the terms and conditions of PwC's compensation structure, including approval of the contingency fee arrangement relating to the provision of the Sales/Use Tax Refund Services and Income Tax Refund Services.  In support of this Motion, the Debtors rely on and incorporate by reference the *Declaration of Chris Whitney in Support of the Debtors' Motion for Authorization to (A) Assume Engagement Agreement with PricewaterhouseCoopers, LLP and (B) Employ and Retain PricewaterhouseCoopers, LLP as Tax Advisor,* Nunc Pro Tunc *to the Petition Date*, a copy of which is attached hereto as Exhibit A (the "**Whitney Declaration**").

### PwC SERVICES

7.      Prior to the Petition Date, the Debtors retained PwC pursuant to the terms of the Engagement Letter, dated March 7, 2014, to perform a reverse sales and use tax audit relating to

3

the Debtors' U.S. operations (the "**Sales/Use Tax Refund Services**").  A copy of the Engagement Letter is attached hereto as <u>Exhibit B</u> (the "**Sales/Use Tax Refund Agreement**"). Specifically, the Sales/Use Tax Refund Services involved, among other things, a review of past and current accounts payable and sales and use tax reporting systems within the Debtors' domestic operations to determine an efficient method to quantify, document and obtain refunds (and, where deemed appropriate, to pursue such refunds).

8.  The Sales/Use Tax Refund Agreement included a contingent fee structure, whereby PwC would be paid twenty-five (25) percent of the "project savings" realized by Corinthian.  "Project savings" realized include any sales and use tax refunds or credits identified by PwC, which are ultimately approved by vendors and/or taxing authorities, and interests thereon.  The "project savings" also included any overpayments identified within the project, including related interest and penalties, which, as a result of a taxing jurisdiction's review, were applied as offsets against past, current or future liabilities to the taxing jurisdiction and/or vendors.  Following the Petition Date, on May 12, 2015, Corinthian received a refund check from the State of California in the amount of $403,309.06 as a result of the Sales/Use Tax Refund Services, for which PwC has yet to be compensated.

9.  Prior to the Petition Date, the Debtors retained PwC pursuant to the terms of the Engagement Letter, dated March 7, 2014, to perform a state income tax refund review relating to the Debtors' U.S. operations (the "**Income Tax Refund Services**").  A copy of the Engagement Letter is attached hereto as <u>Exhibit C</u> (the "**Income Tax Refund Agreement**", collective with the State/Use Tax Refund Agreement, the "**Engagement Agreements**").  Specifically, the Income Tax Refund Services involved, among other things, a review of past and current state

income tax returns to identify refund opportunities and file amended returns to claim these refunds.

10. The Income Tax Refund Agreement included a contingent fee structure, whereby PwC would be paid twenty-five (25) percent of the "tax savings" realized by Corinthian. "Tax savings" realized include any income and franchise tax refunds including any related interest or penalties. As of the Petition Date, the CA FTB is finalizing its findings to approve a refund of approximately $800,000 related to the Enterprise Zone credit. In addition, on June 24, 2014, PwC also filed an income tax refund claim with the State of Michigan in the amount of $588,313 plus any applicable interest related to the years ended June 30, 2009 and June 30, 2010. The income tax refund claim is based on ability to make an election under the Multistate Tax Compact to utilize an evenly weighted three factors (property, payroll, and sales) apportionment formula.

11. On April 27, 2015, PwC presented a Statement of Work (the "**SOW**"), a copy of which is attached hereto as Exhibit D, which expanded the scope of services to be provided by PwC. Pursuant to the SOW, PwC agreed to provide advice and assistance with respect to matters relating to the ongoing CA FTB examination of Corinthian's California corporate income tax returns for fiscal years ending June 30, 2009 through June 30, 2012, which are outside the scope of the services covered under the prior Engagement Agreements referred to in Exhibits B and C (the "**FTB Services**"). Although Corinthian has not yet signed the SOW, PwC has commenced providing the FTB Services. A significant amount of the FTB Services remain outstanding as of the Petition Date. Pursuant to the SOW, PwC shall be compensated for the FTB Services on an hourly basis.

**BASIS FOR RELIEF REQUESTED**

A.     **Assumption of the Engagement Agreement is Appropriate**

12.     Given the contingency fee structure contained in the Engagement Agreements, the Debtors submit that assumption of the Engagement Agreements is a necessary component of PwC's retention.  Indeed, assumption of the Engagement Agreements will ensure that the contingency fee structure agreed to by the parties will remain intact postpetition, while ensuring the continued provision of the Sales/Use Tax Refund Services and Income Tax Refund Services following the Petition Date.  Bankruptcy Code section 365(a) provides, in relevant part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a); *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).  The decision to assume an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 120-21 (Bankr. D. Del. 2001).

13.     Assumption of an executory contract is appropriate where such assumption would benefit the estate.  *See In re Rickel Home Ctrs.*, 209 F.3d 291, 299 (3d Cir. 2000) ("Section 365 enables the [debtor] to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not"); *In re Vaso Active Pharms., Inc.*, 500 B.R. 384, 397-98 (Bankr. D. Del. 2013) (same); *In re IT Grp., Inc.*, 350 B.R. 166, 177 (Bankr. D. Del. 2006) (same).

6

14. When applying the "business judgment" standard in connection with a decision under Bankruptcy Code section 365, courts show great deference to a debtor's business decisions. *See e.g.*, *In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."); *In re Wheeling-Pittsburg Steel Corp.*, 72 B.R. 845, 849 (Bankr. W.D. Penn. 1987) ("[o]rdinarily, courts accord the debtor's business judgment a great amount of deference since the decision to assume or reject an executory contract is an administrative not a judicial matter") (citations omitted). Application of the business judgment standard requires a court to approve a debtor's business decision unless the decision is the product of bad faith, whim or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Caribbean Petroleum Corp.*, 444 B.R. 263, 268 (Bankr. D. Del. 2010).

15. The Debtors' decision to assume the Engagement Agreements is an exercise of their sound business judgment. The Sales/Use Tax Refund Services and Income Tax Refund Services provided by PwC have and will continue to confer a substantial benefit upon the Debtors' estates in the form of tax refunds, credits and other savings. Unlike the CA FTB Audit Support Services that will be provided on an hourly basis, PwC is compensated for the Sales/Use Tax Refund Services and Income Tax Refund Services under a contingency fee arrangement. Accordingly, to maintain this payment structure going forward (and therefore retain the benefit of PwC's services), the Debtors submit that it is necessary to assume the Engagement Agreements in connection with the retention of PwC under section 327(a) of the Bankruptcy Code.

7

**B.      Retention of PwC under Section 327(a) of the Bankruptcy Code**

16.     The Debtors seek to retain PwC, pursuant to section 327(a) of the Bankruptcy Code, to continue providing the Sales/Use Tax Refund Services, the Income Tax Refund Services and the CA FTB Audit Support Services on a postpetition basis.  Under section 327(a) of the Bankruptcy Code, a debtor in possession "with the court's approval, may employ one or more accountants . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title."  11 U.S.C. § 327(a).  Such employment may be based "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

17.     Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1(a).  The Debtors believe that the retention of PwC meets all of the standards and requirements set forth in Bankruptcy Code sections 327 and 328, Bankruptcy Rule 2014 and Local Rule 2014-1.

1. **PwC's Qualifications**

18. The Debtors believe that PwC is well qualified to serve as their tax advisor during the pendency of their bankruptcy cases in an efficient and timely manner. The Debtors have selected PwC because of the organization's prior history with the Debtors, as they have had a working relationship since March of 2014. PwC is intrinsically linked with the Debtors' efforts given PwC's rendering of Sales/Use Tax Refund Services and Income Tax Refund Services, and CA FTB Audit Support Services on a prepetition basis. Additionally, PwC is a leading full-service accounting, consulting and financial services firm with over 75 offices and over 30,000 employees in the United States. It has considerable experience providing accounting, auditing, tax and financial advisory services to businesses in a chapter 11 environment. PwC acted as a tax consultant in both in-court and out-of-court restructuring of companies of various sizes across a wide array of industries and has been employed in numerous chapter 11 cases including: *In re Altegrity, Inc.*, Case No. 15-10226 (LSS); *In re USEC Inc.*, Case No. 14-10475 (CSS); *In re Handy Hardware Wholesale, Inc.*, Case No. 13-10060 (MFW); *In re Ritz Camera & Image, L.L.C.*, Case No. 12-11868 (KG); *In re Allied Systems Holdings, Inc.*, Case No. 12-11564 (CSS); *In re Urban Brands, Inc.*, Case No. 10-13005 (KJC); *In re Trico Marine Services, Inc.*, Case No. 10-12653 (BLS); *In re Tribune Co.*, Case No. 08-13141 (KJC). PwC's services in connection with the Debtors' tax matters, which will mirror those provided in earlier cases, will increase the estates assets.

19. Denying the relief requested herein would deprive the Debtors of the assistance of a highly qualified tax service provider and would disadvantage the Debtors and all parties in interest. Absent authorization to retain PwC, the Debtors would have to expend time and resources engaging a new firm which would lack the same understanding of the Debtors'

business as PwC. This difficulty would be compounded by the multitude of tasks the Debtors now find themselves engaged in due to the commencement of the chapter 11 cases. Accordingly, the Debtors respectfully submit that the services provided by PwC are critical to the success of the chapter 11 cases and request that this Court authorize the retention of PwC on the terms set forth herein.

**2.    Professional Compensation**

**a.    Contingent Fee Structure for Sales/Use Tax Refund Services and Income Tax Refund Services**

20.    Under the terms of the Engagement Agreement, PwC's compensation for the Sales/Use Tax Refund Services and the Income Tax Refund Services is based on a contingency fee arrangement. Indeed, PwC is entitled to 25% of any refund or credit received by the Debtors (as further detailed in the Engagement Agreements). This contingency fee arrangement is beneficial to the estate, in that it does not require the Debtors to pay any fees to PwC (though it does require the reimbursement of certain reasonable out-of-pocket expenses) absent receipt of an actual benefit by the Debtors (most likely in the form of refunded sales/use tax amounts and income tax amounts).

**b.    Hourly Rates for FTB Services**

21.    In addition to the contingency fee arrangement for Sales/Use Tax Refund Services and Income Tax Refund Services, PwC will charge its standard hourly rates for any CA FTB Audit Support Services provided pursuant to the SOW. PwC intends to apply to the Court for allowance of compensation for any fees and expenses relating to the CA FTB Audit Support Services in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court. Subject to those provisions, the

Debtors propose to pay PwC its customary hourly rates for CA FTB Audit Support Services as set forth in the Whitney Declaration. The Debtors submit that these rates are reasonable.

22.  PwC's current hourly rates for matters related to these chapter 11 cases are expected to be within the following ranges:

| Position | Range of Hourly Rates |
|---|---|
| Partners | $719 an hour |
| Director | $488 an hour |
| Manager | $389 an hour |
| Senior Associates | $289 an hour |
| Associates and other staff | $158-$215 an hour |

23.  The principal professionals designated to assist the Debtors and their current positions within the organization are as follows:

| | |
|---|---|
| Chris Whitney | Partner |
| George Yashou | Director |
| Nicole Rayhan | Senior Associate |

24.  PwC's hourly rates are set at a level designed to compensate PwC fairly for the work of its professionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first PwC fee application following such adjustments) and are consistent with the rates charged elsewhere.

25.  Other than the periodic adjustments described above, PwC's hourly rates and financial terms for the services performed prior to the Petition Date are identical to the hourly rates and financial terms of the postpetition engagement proposed herein. The Debtors understand that these hourly rates are consistent with the rates that PwC charges other entities seeking equivalent tax and accounting assistance and advice. Notwithstanding the consistent

11

hourly rates, PwC as a practice reviews all time charges and makes adjustments as necessary to correct any inefficiency that may appear before billing.

26. Pursuant to Local Rule 2016-2(d), in a motion for compensation and reimbursement of expenses, activities must be billed in tenths of an hour. It is not the general practice of PwC employees to keep records in such increments. PwC's customary practice is to provide a detailed description of the services rendered and the amount of time spent on each date in half-hour increments. The Debtors believe that PwC's customary practice with respect to time descriptions will still provide this Court with the ability to appropriately review and evaluate the services provided by PwC. Furthermore, because of both the contingent fee agreement, which will constitute a vast majority of PwC's compensation from the Debtors, and the substantial cost in altering PwC's time-keeping practices, the Debtors respectfully seek a waiver of Local Rule 2016-2(d) to permit PwC to submit its time records in half-hour increments.

27. The PwC professionals providing services to the Debtors will consult with internal PwC bankruptcy retention and billing advisors to ensure compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the United States Trustee and any other applicable procedures and orders of the Court, as well as to decrease the overall fees associated with the administrative aspects of PwC's engagement. The services provided by these bankruptcy retention and billing advisors shall include, but are not limited to: (a) assistance with preparation of the bankruptcy retention documents; (b) assistance with the disinterestedness disclosures; and (c) preparation of monthly fee statements and interim and final fee applications. Given the specialized nature of

these services, specific billing rates exist for these PwC bankruptcy retention and billing advisors.[3]

28.     Other than as set forth herein, no other arrangement is proposed between the Debtors and PwC for compensation to be paid in these chapter 11 cases. PwC has informed the Debtors that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

### c.     Expenses

29.     PwC will also bill the Debtors for reasonable out-of-pocket expenses, use or value added tax, as applicable, and internal per-ticket charges for booking travel. PwC will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to PwC's other clients or as previously fixed by this Court. PwC believes that it is fair to charge these expenses to the clients incurring them instead of increasing hourly rates and spreading these expenses among all clients.

### 3.     Disinterestedness

30.     PwC has informed the Debtors that, except as is detailed in the Whitney Declaration, PwC (a) has no connection with the Debtors, its creditors, or any other parties in the chapter 11 cases, (b) does not hold any interest materially adverse to the Debtors' estates and (c) believes it is a "disinterested person" as defined by Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b) and as required by Bankruptcy Code section 327(a). The Debtors' knowledge, information and belief regarding the matters set forth in this paragraph is based, and made in reliance, upon the Whitney Declaration.

---

[3] The rate per hour for these PwC bankruptcy retention and billing advisors by level of experience will be as follows: Director: $550; Manager: $400; Senior Associate: $290; Associate: $225 and Paraprofessional: $150. These rates also are subject to periodic adjustments.

13

### 4. Rule 5002

31. As set forth in the Whitney Declaration, no partner, director, manager, senior associate, associate or staff member of PwC is a relative of, or has been so connected with, any United States Bankruptcy Judge for the District of Delaware, any of the District Court Judges for the District of Delaware who handle bankruptcy cases, the United States Trustee for Region 3, the Assistant United States Trustee for the District of Delaware, the attorney for the United States Trustee assigned to these chapter 11 cases or any other employee of the Office of the United States Trustee. Accordingly, the appointment of PwC is not prohibited by Bankruptcy Rule 5002.

### NOTICE

32. The Debtors will provide notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii) proposed counsel to the Official Committee of Unsecured Creditors; (iii) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (iv) the Department of Education; and (v) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

### NO PRIOR REQUEST

33. The Debtors have not made any prior motion for the relief sought herein to this Court or any other.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit E</u>, granting the relief requested herein and such other and further relief as it deems just and proper.

Dated: June 2, 2015
      Santa Ana, California

Respectfully Submitted,

**Corinthian Colleges, Inc.**
(for itself and on behalf of its affiliated debtors as Debtors and Debtors in Possession)

By:    /s/ Stan A. Mortensen
      Stan A. Mortensen
      Executive Vice President and General Counsel