## EXHIBIT B

**Sales/Use Tax Refund Agreement**



March 7, 2014

Corinthian Colleges, Inc.
Mr. John Fioretto
VP of Tax
6 Hutton Centre Dr., Suite 400
Santa Ana, CA 92707

**Re: State Reverse Sales and Use Tax Audit Engagement**

Dear Mr. Fioretto:

This engagement letter confirms that Corinthian Colleges, Inc. ("Corinthian" or "you" or "Client") has engaged PricewaterhouseCoopers LLP ("we" or "us" or "PwC") to provide the services described below. Client may procure services under this engagement letter for itself and for those of its consolidated subsidiaries or affiliates that Client binds to this engagement letter by its signature or which separately agree to the provisions of this engagement letter (collectively, the "Subsidiaries").

**Project Scope**

Reverse sales and use tax audits are performed to help identify, quantify, and document opportunities for the receipt of significant refunds/credits that are available with respect to payments made to vendors and tax jurisdictions.

Refunds/credits may result from failure to apply certain sales/use tax exemptions within purchasing and accounts payable systems.

Our approach is to keep you fully informed of the project as it progresses and discuss all findings with you prior to preparing amended returns, claims for refund, or claims for vendor credits for your review, approval and filing. This will help Corinthian Colleges, Inc. develop and implement corrective measures during the course of the project and make appropriate and informed decisions as to steps to be taken.

**Scope of Our Services**

You are engaging us to provide the following services (the "Services") in connection with a reverse sales and use tax audit project.

PwC and Client will perform a reverse sales and use tax audit of mutually agreed upon Client's disbursements for its U.S. operations. Excluded from this engagement are all items/issues/subsidiaries listed in the "Reverse Sales and Use Tax Audit Exclusion Listing." The purpose of the Reverse Sales and Use Tax Audit Exclusion Listing is for PwC and Client to have a mutual understanding at the start of the engagement of any items, issues, or subsidiaries which Client does not wish us to consider as part of this engagement. A sample Reverse Sales and Use Tax Audit Exclusion Listing is provided as Exhibit A to this engagement letter. The Reverse Sales and Use Tax Audit Exclusion Listing is to be provided to PwC by



Client within 15 days of signing this engagement letter. The Reverse Sales and Use Tax Audit Exclusion Listing can be mailed to James Levinson at 5375 Mira Sorrento Place, Suite 300, San Diego, CA 92121, or emailed to james.b.levinson@us.pwc.com. The period of this review will be the greater of three years past or the periods open under state tax statutes of limitation for which returns have been filed.

We will provide no opinion, attestation, or other form of assurance with respect to the work performed under this engagement or the information upon which our work is based. The procedures we will be performing will not constitute an examination or a review in accordance with generally accepted auditing standards or attestation standards. We will not audit or otherwise verify the information supplied to us in connection with this engagement, from whatever source, except as specified during the course of the engagement.

The scope of our service is limited and is not directed towards the discovery of material errors, fraud, or other illegal acts. Further, this engagement does not include procedures necessary to provide assurance on the effectiveness of internal controls over financial reporting or otherwise. For these reasons we cannot ensure that errors, fraud or other illegal acts, or weaknesses in internal controls, if present, will be detected.

We will conduct the engagement in the following steps:

Step I - Initial Scoping and Analysis

During Step I, we will review past/current accounts payable and sales/use tax reporting systems within Client's domestic operations to determine an efficient method to quantify, document, and obtain refunds. In this regard, a test of the current accounts payable and sales/use tax reporting systems will be performed. Sample data will be obtained and validated against supporting documentation. Interviews with accounts payable, purchasing, production, information technology, and tax personnel will be conducted to confirm our understanding of the pertinent accounting and tax reporting systems and to determine the nature of specific transactions highlighted as a result of our review.

We will review recently completed and on-going sales/use tax audits to determine the extent to which we can utilize taxing authority audit methodologies to identify, quantify, and assist in obtaining additional refunds/credits. This review will also enable us to identify items that are included on the Reverse Sales and Use Tax Exclusion Listing and which are excluded from this engagement.

At the end of Step I, we will determine and, to the extent possible, quantify the potential refund/credit opportunities in order to facilitate a go/no-go decision regarding the reverse sales and use tax audit. If it is determined that it is not cost-effective to continue this project with respect to all potential refund/credit items, PwC reserves the right to discontinue/modify all or that portion of the project scope related to non-cost effective items. If our mutual decision is to continue the project into the next step, we will develop a refund plan that will outline the most cost-effective procedures to identify, quantify, document, and prepare refund/credit claims for review, approval and filing by Client.



**pwc**

Step II - Quantification and Documentation

During Step II, we will expand our review using the plan agreed upon in Step I to include significant accounts payable and tax reporting systems open to refund. Step II may be facilitated through a review of electronic data or existing historical summaries and special reports. Cost/benefit analyses will be performed during this step so that consideration is given to those identified transactions where the greatest opportunity for refund/credit exists and to those procedures that are the least intrusive to Client's personnel.

We will review significant accounts payable transactions, examine the related purchase orders/contracts, interview purchasing/production personnel, and identify those transactions for which overpayments may exist. Attention will be given to significant transactions to which sales/use tax exemptions may apply within the various taxing jurisdictions under review.

During the course of our review, it is possible that we may also identify potential liabilities for underpayment of tax and/or failures to file required returns. We will inform you of such matters and will recommend follow-up or corrective action.

The results of Step II will be discussed with Client's and an agreement will be reached as to the validity of the refund/credit potential of each transaction.

Step III - Refund Filing and Verification

During Step III, refund claims will be categorized and prepared for review, approval and filing by Client. Once the refund claims are filed by Client, we will assist Client in working with the respective taxing authorities and/or vendors to the extent that verification of any item on the refund claim is requested. Our assistance will be to help gather and explain information pertaining to the refund claims. Client will retain all decision making authority and responsibility, as well as responsibility for processing, requesting, and collecting vendor refunds. If other matters arise during such verification that necessitate additional efforts outside the scope of this project, fees for those services will be discussed in advance and will be billed separately. A listing of states which require vendors to file sales/use tax claims is provided as Exhibit B to this engagement letter.

Step IV - Corrective Measures

We will prepare a memorandum that outlines procedures utilized, details our findings, summarizes the refund/credit issues identified during our review, and sets forth corrective measures related to any potential system enhancements noted during the project.



<u>Optional Services</u>

*Implementation of Corrective Measures/Recommendations*

If requested, we will provide assistance in the implementation of any recommendations made as a result of our findings during the sales and use tax reverse audit project. Fees for these services will be discussed in advance and billed separately. Recommendations for enhancement of the current system may include:

- conducting training seminars for tax, accounts payable, and/or purchasing personnel;

- compilation of a tax reference matrix or manual; and

- implementation of automated sales/use tax software or related enhancements.

Sales/use tax audit defense is not included in our fee for this reverse sales and use tax audit engagement, except for defense or verification of refund claims filed by Client pursuant to this engagement. Upon request, a separate engagement letter for additional sales/use tax audit assistance services can be provided.

**Ownership and Use**

We are providing these Services and deliverables solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility or duty of care to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material prepared for and delivered to you under this engagement letter, except as follows: we own our working papers, preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which we may have discovered or created as a result of the Services. You have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

In addition to deliverables, we may develop software or electronic materials (including spreadsheets, documents, databases and other tools) to assist us with an engagement.

If we make these available to you, they are provided "as is" and your use of these materials is at your own risk.

**Confidentiality**

"Confidential Information" means non-public information that Client marks as "confidential" or "proprietary" or that otherwise should be understood by a reasonable person to be confidential in nature. All terms of this engagement letter, including but not limited to fee and expense structure, are considered Confidential Information. Confidential Information does not include any information which(i) is rightfully known to PwC prior to its disclosure; (ii) is released to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by PwC without use of or reliance on Confidential Information; or



(iv) is or later becomes publicly available without violation of this engagement letter or may be lawfully obtained by PwC from a non-party. PwC will protect the confidentiality of Confidential Information that it receives, except as required by applicable law, statute, rule, regulation or professional standard. If disclosure is required by law, statute, rule or regulation (including any subpoena or other similar form of process), or by professional standards, PwC shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the Client with prior prompt written notice thereof and, if practicable under the circumstances, allow the Client to seek a restraining order or other appropriate relief.

**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us.

**Your Responsibilities**

To facilitate our work, you will need to provide PwC access to information (e.g., tax returns, reports, other data) that PwC deems necessary to perform the Services contracted for herein and access to Corinthian personnel knowledgeable in the subject matter of this engagement.

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain your internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

**Fees and Expenses**

Our fee for this engagement will be 30% [handwritten: 25% ✓] of the project savings realized by Client. We reasonably expect that any amended tax returns or tax refund claims will undergo substantive review and consideration by the taxing authorities.

Project savings realized include any sales/use tax refunds or credits identified by PwC, which are approved by vendors and/or taxing authorities, and interest thereon. Project savings realized also include any overpayments identified within the project, including related interest and penalties, which, as a result of the taxing jurisdiction's review, are applied as offsets against past, current or future liabilities to the taxing jurisdiction and/or vendors, regardless of the source for these liabilities. If we identify errors and you file returns correcting such errors, the resulting sales/use tax, interest and penalties will not be netted against sales/use tax refunds or credits in arriving at the project savings.

Our fees for all refunds/credits resulting from this project will be due at the earlier of:



- acknowledgement by the tax jurisdiction(s), vendors, or Client that the refunds are valid;

- the documented offset of the refund to reduce any proposed tax or vendor liability; or

- actual receipt by Client of refunds from the tax jurisdiction(s) or vendors.

If Client requests us to review any states for refund claims/credits for prior years and the state's laws preclude charging a contingent fee on such refund claims/credits, Client agrees to discuss with PwC a fee amount (fixed fee or hourly rates) at the completion of Phase I.  Whether to proceed to Phase II and III in any state that precludes the use of a contingent fee is at the sole discretion of Client.  The fee will be determined based upon the services to be provided in Phases II and III.  The scope of services, fee determination and payment terms will be made by mutual agreement between PwC and Client and will be included in an addendum to this engagement letter.

We also will bill Client for our reasonable out-of-pocket expenses, any applicable sales, use or value added tax, and PwC's internal per ticket charges for booking travel.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this engagement letter.  We will work closely with Client in identifying and requesting the needed information and assistance.  The amount of the fee is also based upon the understanding that Client has disclosed all over/underpayment reviews (sales/use tax and account payable) that have been performed by internal or external parties for the project period. In the event we believe an additional fee is required as the result of the failure of Client to meet any of these requests or for any other reason, we will inform you promptly.

In the unlikely event that Client unilaterally elects not to proceed with the sales and use tax refund and/or credit/vendor claim efforts recommended by PwC, Client agrees to pay PwC's hourly rates for time spent during Phases II and III of this engagement up to the time of the decision not to proceed with the sales and use tax refund and/or credit/vendor claim efforts, plus expenses, as described above.

Further, in the event that Client terminates the engagement, but files the sales and use tax refund and/or credit/vendor claims identified by PwC during this engagement, our fees will be determined as follows:

(1)     For all refunds/credits, our fee will be 25% of the project savings realized by Client.

(2)     For states that preclude the use of a contingent fee, we will negotiate a mutually agreeable fee prior to termination.

**Fees for Optional Services**

Fees for optional services requested, including those discussed above, will be incurred only to the extent Client requests our assistance.  We will submit a separate engagement letter for your approval prior to commencing any work.



**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 15 days of the invoice date.

**Termination and Dispute Resolution**

Either party may terminate the Services by giving notice to that effect.

Any unresolved dispute relating in any way to the Services or this engagement letter shall be resolved by arbitration. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("Rules") then in effect. The arbitration will be conducted before a panel of three arbitrators selected using the screened process provided in the Rules. The arbitration panel, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this engagement letter. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below or any other terms in this engagement letter. Judgment on any arbitration award may be entered in any court having jurisdiction. All aspects of the arbitration shall be treated as confidential. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and, in any event, no later than two years after the cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

**Limitations on Liability**

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our aggregate liability for all claims, losses, liabilities or damages in connection with this engagement letter or the Services, whether as a result of breach of contract, tort (including negligence) or otherwise, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular Service giving rise to the liability under this engagement letter. In addition, we will not be liable in any event for lost profits, consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

**Indemnification**

You agree to indemnify and hold PwC and the Beneficiaries (defined below) harmless from and against any and all third party claims, losses, liabilities and damages arising from or relating to the Services or deliverables under this engagement letter, except to the extent finally determined to have resulted from PwC's gross negligence or intentional misconduct relating to such Services and/or deliverables.



**Other PricewaterhouseCoopers Firms and Subcontractors**

PwC is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of PwC, the "Other PwC Firms"). PwC may draw on the resources of and/or subcontract to its subsidiaries, the Other PwC Firms and/or third party contractors and subcontractors, in each case within or outside of the United States (each, a "PwC Subcontractor") in connection with the provision of Services and/or for internal, administrative and/or regulatory compliance purposes. Client agrees that PwC may provide information PwC receives in connection with this engagement letter to the PwC Subcontractors for such purposes. PwC will be solely responsible for the provision of the Services (including those performed by the PwC Subcontractors) and for the protection of the information provided to the PwC Subcontractors. The PwC Subcontractors and theirs and PwC's respective partners, principals or employees (collectively, the "Beneficiaries") shall have no liability or obligations arising out of this engagement letter. Client agrees to: (a) bring any claim or other legal proceeding of any nature arising from the Services against PwC and not against the Beneficiaries; and (b) ensure or procure that the Subsidiaries do not assert any such claim or other legal proceeding against PwC or the Beneficiaries. If any of the Subsidiaries receive Services under this engagement letter, Client agrees to provide a copy of this engagement letter to such Subsidiaries, and Client will notify them that although the Beneficiaries may interact with them, the delivery of the Services is governed by the terms of this engagement letter (including the liability limitations herein), and Client's Subsidiaries should notify Client of any disputes or potential claims arising from the Services. PwC disclaims any contractual or other responsibility or duty of care to any other subsidiaries or affiliates. While PwC is entering into this engagement letter on its own behalf, this section also is intended for the benefit of the Beneficiaries.

**Consents to Disclose Client Information**

Notwithstanding anything to the contrary in this engagement letter, Client agrees that PwC may disclose Client's current and/or prior years' tax return information to PwC Subcontractors within or outside the United States for the purposes described above. Client authorizes PwC to participate in discussions with and to disclose your information, including your tax return information, to your agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as you may direct. The foregoing consents are valid until further notice by Client. Client may request in writing a more limited disclosure than the foregoing.

**Regulatory Matters**

Notwithstanding anything to the contrary in this engagement letter, you have no obligation of confidentiality with respect to any portion of any materials, advice or deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed, including, but not limited to penalties that may apply



if the transaction that is the subject of our engagement is found to lack economic substance or fails to satisfy any other similar rule of law. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Certain federal and state regulations require taxpayers to disclose their participation in certain reportable transactions to the taxing authorities. Client shall advise PwC if Client determines that any matter covered by this engagement letter is a reportable transaction that is required to be disclosed. Certain federal and state regulations also require PwC to submit information returns and maintain lists of certain client engagements if PwC is a material advisor to clients that have participated in a reportable transaction.

Therefore, if PwC determines, after consultation with Client, that Client has participated in a transaction causing PwC to have a registration and/or list maintenance obligation, PwC will place Client's name and other required information on a list. PwC will contact Client if PwC is required to provide Client's name to the U.S. Internal Revenue Service or any state in connection with any matter under this engagement letter.

**Federal (Internal Revenue Code Section 6694) and State Preparer Standards**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.

Our work may require consultation with a PwC subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

No party to this engagement letter may assign or transfer this engagement letter, or any rights, obligations, claims or proceeds from claims arising under it, without the prior written consent of the other party, and any assignment without such consent shall be void and invalid. If any provision of this engagement letter is found to be unenforceable, the remainder of this engagement letter shall be enforced to the extent permitted by law. If we perform the Services prior to both parties executing this engagement letter, this engagement letter shall be effective as of the date we began the Services. Neither party shall be liable to the other for any delay or failure to perform any of the Services or obligations in this engagement letter due to causes beyond its reasonable control.

You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.



**pwc**

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the Services, non-CPA owners may be involved in providing Services under this engagement letter.

\* \* \* \* \*

We are pleased to have the opportunity to provide services to you. If you have any questions about this engagement letter, please discuss them with Chris Whitney at (213) 356-6007. If the Services and terms outlined in this engagement letter are acceptable, please sign one copy of this engagement letter in the space provided and return it to the undersigned. You may return the signed copy to the undersigned by mail or air courier 601 S. Figueora Street, Los Angeles CA 90017, by facsimile to the undersigned's attention at 813-741-5167 or attached as a pdf, jpeg or similar file type to an e-mail to the undersigned at chris.whitney@us.pwc.com.

Very truly yours,

PricewaterhouseCoopers LLP

By: _____

Chris Whitney, Partner

**ACKNOWLEDGED AND AGREED:**

**Corinthian Colleges, Inc., on behalf of itself and its Subsidiaries**

**Signature of client official:** _John G. Fiore_

**Please print name:** _John A. Fioretto_

**Title:** _VP, TAX_

**Date:** _3/18/14_



**Exhibit A**
**Sample Reverse Sales and Use Tax Audit**



**Exhibit B**
**States Which Require Vendors to File Sales/Use Tax Claims**

I.    Sales tax refund claims and use tax refund claims must be filed with vendors in the following states:

Alabama
Arizona
Arkansas
Idaho
Illinois
Michigan
Mississippi
Missouri
Nevada
New Mexico
North Dakota
South Dakota
Tennessee
Wyoming

II.   Sales tax refund claims must be filed with vendors in the following states.  Use tax claims can be filed directly with the state.

California
Kentucky
Virginia

III.  Sales tax refund claims and use tax refund claims must generally be filed with the vendors in the following states:

Florida - DOR has discretion to allow purchaser to obtain assignment of rights from vendor to file claim directly with DOR

North Carolina - if purchaser is under audit, they may request assignment from vendor and obtain credit in audit

Washington State - if vendor will not cooperate and refuses or neglects to process/pursue the claim, or if auditor agrees to handle claim as an accommodation, purchaser can file refund claim directly with the State

West Virginia - DOR has discretion to allow purchaser to obtain assignment of rights from vendor to file claim directly with DOR