## **EXHIBIT C**

**Income Tax Refund Agreement**



March 7, 2014

Corinthian Colleges, Inc.
Mr. John Fioretto
VP of Tax
6 Hutton Centre Drive, Suite 400
Santa Ana, CA 92707

> **Re:**    **State Income and Franchise Tax Audit Engagement to Provide State and Local Tax Services**

Dear Mr. Fioretto:

This engagement letter confirms that Corinthian Colleges, Inc. ("you" or "Client") has engaged PricewaterhouseCoopers LLP ("we" or "us" or "PwC") to provide the services described below.  Client may procure services under this engagement letter for itself and for those of its consolidated subsidiaries or affiliates that Client binds to this engagement letter by its signature or which separately agree to the provisions of this engagement letter (collectively, the "Subsidiaries").

**Scope of Our Services**

You are engaging us to provide the following services (the "Services"):

PwC will review Client's state income tax returns for the states and years listed in Exhibit A, for which returns have been filed, in order to determine whether state tax savings can be achieved through the filing of refund claims.  Excluded from this engagement are the operations of subsidiaries or divisions, and the refund issues, listed in the "Exclusion Listing".  The purpose of the Exclusion Listing is for PwC and Client to have a mutual understanding at the start of the engagement of any refund items already identified or being independently pursued by Client, and to also indicate the subsidiaries or divisional operations which will not be considered as part of the State Reverse Income Tax Audit ("RITA") engagement.  A sample Exclusion Listing is attached as Exhibit B.  Client is to supply the Exclusion Listing to PwC within fifteen days of signing this engagement letter.

Our services will be performed in two phases.   In Phase I, we will review the tax returns and work papers, and gain an understanding of your business to identify opportunities for refund claims.  We will discuss with you our preliminary findings and the potential refund claim opportunities for the states evaluated during Phase I.  Upon request, we will prepare a Report of Findings to accompany this discussion.  If Client agrees to proceed with filing claims for refund, we will proceed with Phase II for the states that Client indicates.

During the course of our Phase I review, it is possible that we may also identify potential liabilities for underpayment of tax and/or failures to file required returns (hereinafter referred to as "errors").  Accordingly, we will inform you of errors and will recommend corrective action.

In Phase II, we will research and fully develop the filing positions and prepare refund claims (net of any errors) for review, approval, and filing by Client.  At your request we will also assist you in correcting any errors other than those reflected in the refund claims.  PwC and Client will mutually agree on the scope of



services, fee arrangement and payment terms to assist you in correcting any errors other than those reflected in the refund claims. This agreement will be included in an addendum to this engagement letter. We will draft, for your review and approval, other communications to the states as are necessary from time to time in connection with the claims for refund. Upon your request, we will accompany Client to all hearings, conferences, or settlement meetings in connection with the claims for refund.

We will consult with you as necessary to determine the appropriate scope of our fact finding, preparation of refund claims, preparation for hearings or conferences, and assistance in the evaluation of offers or proposals to resolve any disputes. Client shall have final discretion over the pursuit of any particular claim or opportunity. In the event that refund claims cannot be resolved administratively and you decide to pursue the matter in court, you will need to hire an attorney to represent you and must pay his/her fee and any court costs to pursue the matter. PwC is not permitted to represent taxpayers in Federal or state court

**Ownership and Use**

We are providing these Services and deliverables solely for your use and benefit and pursuant to a client relationship exclusively with you. We disclaim any contractual or other responsibility or duty of care to others based upon these Services or upon any deliverables or advice we provide.

You will own all tangible written material prepared for and delivered to you under this engagement letter, except as follows: we own our working papers, preexisting materials and any general skills, know-how, processes, or other intellectual property (including a non-client specific version of any deliverables) which we may have discovered or created as a result of the Services. You have a nonexclusive, non-transferable license to use such materials included in the deliverables for your own use as part of such deliverables.

In addition to deliverables, we may develop software or electronic materials (including spreadsheets, documents, databases and other tools) to assist us with an engagement. If we make these available to you, they are provided "as is" and your use of these materials is at your own risk.

**Confidentiality**

"Confidential Information" means non-public information that Client marks as "confidential" or "proprietary" or that otherwise should be understood by a reasonable person to be confidential in nature. All terms of this engagement letter, including but not limited to fee and expense structure, are considered Confidential Information. Confidential Information does not include any information which (i) is rightfully known to PwC prior to its disclosure; (ii) is released to any other person or entity (including governmental agencies) without restriction; (iii) is independently developed by PwC without use of or reliance on Confidential Information; or (iv) is or later becomes publicly available without violation of this engagement letter or may be lawfully obtained by PwC from a non-party. PwC will protect the confidentiality of Confidential Information that it receives, except as required by applicable law, statute, rule, regulation or professional standard. If disclosure is required by law, statute, rule or regulation (including any subpoena or other similar form of process), or by professional standards, PwC shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement) provide the Client with prior prompt written notice thereof and, if practicable under the circumstances, allow the Client to seek a restraining order or other appropriate relief.



**Our Responsibilities**

We will perform the Services in accordance with the Statements on Standards for Tax Services established by the American Institute of Certified Public Accountants. Accordingly, we will not provide an audit or attest opinion or other form of assurance, and we will not verify or audit any information provided to us.

**Your Responsibilities**

To facilitate our work, you will need to provide the following assistance:

PwC will need access to certain tax information, returns, reports, data, etc. The needed information and the timing of providing such information will be mutually agreed upon. In addition, we will need access to certain Corinthian Colleges, Inc. personnel that can answer questions in connection with the tax information provided by Corinthian Colleges, Inc.

You are responsible for all management functions and decisions relating to this engagement, including evaluating and accepting the adequacy of the scope of the Services in addressing your needs. You are also responsible for the results achieved from using any Services or deliverables, and it is your responsibility to establish and maintain your internal controls. You will designate a competent member of your management to oversee the Services.

We expect that you will provide timely, accurate and complete information and reasonable assistance, and we will perform the engagement on that basis.

**Fees and Expenses**

Our fee for this engagement will be 30% of the tax savings. We reasonably expect that the refund claims will undergo substantive review and consideration by the state taxing authorities.

For this purpose, "tax savings" are defined to include refunds of tax and penalties, plus interest on those amounts identified and documented by PwC for prior tax years, as finally determined by any governmental authorities, including a state or federal court. Tax savings also include any overpayments identified within the project, including related interest and penalties, which, as a result of either the taxing jurisdiction's review or a federal or state court ruling, are applied as offsets against past, current or future taxing jurisdictions' liabilities for tax, interest and penalties, regardless of the source for these liabilities. If we identify errors and you file returns correcting such errors, the resulting tax, interest and penalties will not be netted against refunds and offsets in arriving at the tax savings.

The contingent portion of our fee will be due at the earlier of:

- acknowledgement by the tax jurisdiction(s) or Client that the refunds are valid;
- the documented offset of the refund to reduce any proposed tax liability; or
- actual receipt by Client of refunds from the tax jurisdiction.



For certain tax credits, tax incentives, and net operating losses that have not been previously reported on a tax return, that are available as a carryforward to future taxable years or that have been claimed on an amended tax return/refund claim but have not been utilized on an amended tax return/refund claim because of a limitation based on the tax liability in the refund claim year(s) and/or a statutory provision which allows tax credits/tax incentives/net operating losses to be claimed over several years, which we reasonably expect to undergo substantive consideration and review by taxing authorities in the year of the amended tax return/refund claim (hereafter collectively referred to as "carryforwards") and which are mutually agreed upon between Client and PwC, we will bill Client 30% of the estimated net present value of the carryforwards. The amount of tax credits/tax incentives/net operating losses referred to above is determined after any and all audit adjustments to the tax credits/tax incentives/net operating losses claimed. The determination of the net present value of these carryforwards must be made within thirty days of the receipt of the approval by the taxing jurisdiction and the amount so determined is fixed and not subject to true-up based on a subsequent tax return. If tax credits/tax incentives/net operating losses do not reasonably expect to undergo substantive consideration and review by taxing/governmental authorities, Client agrees to pay PwC a fee based upon our time incurred or fixed fee to perform the Services. This determination will be made at the completion of Phase I. Whether to pursue any tax credits/tax incentives/net operating losses that do not reasonably expect to undergo substantive consideration and review by taxing/governmental authorities is at the sole discretion of Client. The fee for these services will be based on the Services to be performed after the completion of Phase I. This agreement and scope of services will be included in an addendum to this engagement letter along with payment terms.

If at the conclusion of the first phase you choose to develop and apply opportunities and/or filing positions identified by PwC to the current year ("optional services"), we will discuss with you the fee (fixed fee) that we will charge for such optional services. We will then send you an addendum to this engagement letter reflecting the fixed fee for the optional services, along with the payment terms.

In the event that PwC identifies opportunities and/or filing positions which Client chooses to implement on a prospective basis, Client agrees to pay PwC a fee equal to 30% of the "estimated first year state tax savings" realized by Client. For this purpose, the "estimated first year state tax savings" is defined as the difference between the total estimated state tax liability that would be payable if the opportunity were not implemented and the total estimated state tax liability that would be payable after implementation of the opportunity.

Both computations will be made for the first full taxable year for which the opportunity is in place and will be computed before any consideration of the federal income tax benefit. For purposes of the preceding sentence, the first full taxable year must not begin before this engagement is completed. Client agrees that any fees paid hereunder shall be paid in full no later than 30 days from the completion of services. The estimated first year state tax savings and our fee will be summarized in an addendum to this engagement letter, along with the payment terms.

If Client requests us to review any states for refund claims/credits for prior years and the state's laws preclude charging a contingent fee on such refund claims/credits, Client agrees to discuss with PwC a fee amount (fixed fee or hourly rates) at the completion of Phase I. Whether to proceed to Phase II in any state that precludes the use of a contingent fee is at the sole discretion of Client. The fee will be determined based upon the Services to be provided in Phase II. The scope of services, fee determination



and payment terms will be made by mutual agreement between PwC and Client and will be included in an addendum to this engagement letter.

In the unlikely event that Client unilaterally elects not to proceed with the refund claims recommended by PwC, Client agrees to pay PwC's hourly rates for any and all time spent during Phase II on refund claims up to the time of the decision not to proceed with the refund claims. Further, in the event that Client terminates the engagement, but files the refund claims and/or implements the tax planning opportunities identified by PwC during Phase I of this engagement, our fees will be determined as follows:

(1)     For refund claims, our fee will be equal to 30% [25] of the tax savings realized by Client with respect to the refund claims.

(2)     For tax planning opportunities, our fee will be equal to 30% [25] of the estimated first year state tax savings, as previously defined.

(3)     For carryforwards, our fee will be equal to 30% [25] of the estimated net present value of the carryforwards as defined above.

(4)     For tax credits/tax incentives/net operating losses that do not reasonably expect to undergo substantive consideration and review, we will negotiate a mutually agreeable fee prior to termination.

(5)     For states that preclude the use of a contingent fee, we will negotiate a mutually agreeable fee prior to termination.

(6)     For current year opportunities, we will negotiate a mutually agreeable fee prior to termination.

We also will bill Client for our reasonable out-of-pocket expenses, any applicable sales, use or value added tax, and PwC's internal per ticket charges for booking travel.

The amount of our fee is based on the assumption that we will receive the information and assistance as detailed throughout this engagement letter. In the event we believe an additional fee is required as the result of the failure of Client to meet any of these requests or for any other reason, we will inform you promptly.

**Payment Schedule**

Our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due on presentation and expected to be received within 15 days of the invoice date.

**Termination and Dispute Resolution**

Either party may terminate the Services by giving notice to that effect.

Any unresolved dispute relating in any way to the Services or this engagement letter shall be resolved by arbitration. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("Rules") then in effect. The arbitration will be



conducted before a panel of three arbitrators selected using the screened process provided in the Rules. The arbitration panel, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this engagement letter. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award damages inconsistent with the Limitations on Liability provisions below or any other terms in this engagement letter. Judgment on any arbitration award may be entered in any court having jurisdiction. All aspects of the arbitration shall be treated as confidential. You accept and acknowledge that any demand for arbitration arising from or in connection with the Services must be issued within one year from the date you became aware or should reasonably have become aware of the facts that give rise to our alleged liability and, in any event, no later than two years after the cause of action accrued.

This engagement letter and any dispute relating to the Services will be governed by and construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply.

## Limitations on Liability

Except to the extent finally determined to have resulted from our gross negligence or intentional misconduct, our aggregate liability for all claims, losses, liabilities or damages in connection with this engagement letter or the Services, whether as a result of breach of contract, tort (including negligence) or otherwise, regardless of the theory of liability asserted, is limited to no more than the total amount of annual fees paid to us for the particular Service giving rise to the liability under this engagement letter. In addition, we will not be liable in any event for lost profits, consequential, indirect, punitive, exemplary or special damages. Also, we shall have no liability arising from or relating to any third party hardware, software, information or materials selected or supplied by you.

## Indemnification

You agree to indemnify and hold PwC and the Beneficiaries (defined below) harmless from and against any and all third party claims, losses, liabilities and damages arising from or relating to the Services or deliverables under this engagement letter, except to the extent finally determined to have resulted from PwC's gross negligence or intentional misconduct relating to such Services and/or deliverables.

## Other PricewaterhouseCoopers Firms and Subcontractors

PwC is the U.S. firm of the global network of separate and independent PricewaterhouseCoopers firms (exclusive of PwC, the "Other PwC Firms"). PwC may draw on the resources of and/or subcontract to its subsidiaries, the Other PwC Firms and/or third party contractors and subcontractors, in each case within or outside of the United States (each, a "PwC Subcontractor") in connection with the provision of Services and/or for internal, administrative and/or regulatory compliance purposes. Client agrees that PwC may provide information PwC receives in connection with this engagement letter to the PwC Subcontractors for such purposes. PwC will be solely responsible for the provision of the Services (including those performed by the PwC Subcontractors) and for the protection of the information provided to the PwC Subcontractors. The PwC Subcontractors and theirs and PwC's respective partners, principals or employees (collectively, the "Beneficiaries") shall have no liability or obligations arising out of this engagement letter. Client agrees to: (a) bring any claim or other legal proceeding of any nature arising from the Services against PwC and not against the Beneficiaries; and (b) ensure or procure that the Subsidiaries do not assert any such



claim or other legal proceeding against PwC or the Beneficiaries. If any of the Subsidiaries receive Services under this engagement letter, Client agrees to provide a copy of this engagement letter to such Subsidiaries, and Client will notify them that although the Beneficiaries may interact with them, the delivery of the Services is governed by the terms of this engagement letter (including the liability limitations herein), and Client's Subsidiaries should notify Client of any disputes or potential claims arising from the Services. PwC disclaims any contractual or other responsibility or duty of care to any other subsidiaries or affiliates. While PwC is entering into this engagement letter on its own behalf, this section also is intended for the benefit of the Beneficiaries.

**Consents to Disclose Client Information**

Notwithstanding anything to the contrary in this engagement letter, Client agrees that PwC may disclose Client's current and/or prior years' tax return information to PwC Subcontractors within or outside the United States for the purposes described above. Client authorizes PwC to participate in discussions with and to disclose your information, including your tax return information, to your agents, representatives, administrators or professional advisors (including accountants, attorneys, financial and other professional advisors), their respective officers, directors or employees, and other parties as you may direct. The foregoing consents are valid until further notice by Client. Client may request in writing a more limited disclosure than the foregoing.

**Regulatory Matters**

Notwithstanding anything to the contrary in this engagement letter, you have no obligation of confidentiality with respect to any portion of any materials, advice or deliverables to the extent they concern the tax structure or tax treatment of any transaction.

**Codification of Economic Substance**

Federal law (IRC Section 6662(b)) subjects taxpayers to a strict liability penalty equal to 40% (or 20% if adequately disclosed in a tax return) of any underpayment of tax attributable to that portion of a transaction which is determined to lack economic substance under IRC Section 7701(o) or fails to satisfy any other similar rule of law. The higher penalty will be due if the transaction that is determined to lack economic substance is not "adequately disclosed" in the taxpayer's return; therefore, it is important that you advise your tax return preparers of transactions to which this penalty provision might apply, recognizing that no guidance has yet been issued on the substantive aspects of the codified economic substance doctrine. Penalties can also be imposed by states to the extent that state laws have adopted similar provisions.

To the extent that we provide any advice with respect to the potential impact of the economic substance doctrine included in IRC Section 7701(o) or similar state provisions or any related penalties that might be imposed, such advice rendered as part of our Services will be based on applicable case law, reasonable interpretation of legislation and available guidance. Under IRC Section 6664(c), no exceptions (including the reasonable cause exception) to the imposition of such penalties are available and therefore no advice will protect you from any such penalties. Therefore, PwC shall not be liable for any federal or state penalties imposed on you if any portion of a transaction is determined to lack economic substance or fails to satisfy any similar rule of law or if the disclosure of such transaction is determined to be inadequate.



**Other Written Advice**

Based on our discussions, it is anticipated that the written advice PwC provides during the course of this engagement will be Other Written Advice as defined by Circular 230. Accordingly, unless otherwise prohibited or we agree to issue a Covered Opinion as defined by Circular 230, our written advice may include a disclosure stating that the advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding tax penalties that may be imposed, including, but not limited to penalties that may apply if the transaction that is the subject of our engagement is found to lack economic substance or fails to satisfy any other similar rule of law. Our advice will contain any other disclosures required by Circular 230.

**Tax Return Disclosure and Tax Advisor Listing Requirements**

Certain federal and state regulations require taxpayers to disclose their participation in certain reportable transactions to the taxing authorities. Client shall advise PwC if Client determines that any matter covered by this engagement letter is a reportable transaction that is required to be disclosed. Certain federal and state regulations also require PwC to submit information returns and maintain lists of certain client engagements if PwC is a material advisor to clients that have participated in a reportable transaction. Therefore, if PwC determines, after consultation with Client, that Client has participated in a transaction causing PwC to have a registration and/or list maintenance obligation, PwC will place Client's name and other required information on a list. PwC will contact Client if PwC is required to provide Client's name to the U.S. Internal Revenue Service or any state in connection with any matter under this engagement letter.

**Federal (Internal Revenue Code Section 6694) and State Preparer Standards**

Federal law and certain state laws impose obligations on tax return preparers with respect to a position reported on a tax return or claim for refund that does not meet certain standards regarding levels of confidence. If during the course of this engagement we identify a position that does not meet these standards, we will advise you about your penalty exposure and whether you can avoid penalty through disclosure. If we are preparing the return or claim for refund and it is concluded that disclosure is required, we will prepare the disclosure and provide it to you.

Our work may require consultation with a PwC subject matter specialist to reach and document the level of technical support for the position. We will discuss with you any additional fees that may be incurred as a result of complying with these requirements.

**Other Matters**

No party to this engagement letter may assign or transfer this engagement letter, or any rights, obligations, claims or proceeds from claims arising under it, without the prior written consent of the other party, and any assignment without such consent shall be void and invalid. If any provision of this engagement letter is found to be unenforceable, the remainder of this engagement letter shall be enforced to the extent permitted by law. If we perform the Services prior to both parties executing this engagement letter, this engagement letter shall be effective as of the date we began the Services. Neither party shall be liable to the other for any delay or failure to perform any of the Services or obligations in this engagement letter due to causes beyond its reasonable control.



You agree we may use your name in experience citations and recruiting materials. This engagement letter supersedes any prior understandings, proposals or agreements with respect to the Services, and any changes must be agreed to in writing.

PwC is owned by professionals who hold CPA licenses as well as by professionals who are not licensed CPAs. Depending on the nature of the Services, non-CPA owners may be involved in providing Services under this engagement letter.

*   *   *   *   *

We are pleased to have the opportunity to provide services to you. If you have any questions about this engagement letter, please discuss them with Chris Whitney. If the Services and terms outlined in this engagement letter are acceptable, please sign one copy of this engagement letter in the space provided and return it to the undersigned. You may return the signed copy to the undersigned by mail or air courier to 601 S. Figueroa Street, Los Angeles CA 90017, by facsimile to the undersigned's attention at 813-741-5167 or attached as a pdf, jpeg or similar file type to an e-mail to the undersigned at chris.whitney@us.pwc.com.

Very truly yours,

PricewaterhouseCoopers LLP

By: _____

   Chris Whitney, Partner

Attachments :   Exhibit A
                Exhibit B

9 of 12



ACKNOWLEDGED AND AGREED:

**Corinthian Colleges, Inc., on behalf of itself and its Subsidiaries**

Signature of client official: _John G. Fiorett_

Please print name: _John A. Fioretto_

Title: _VP, Tax_

Date: _3/15/14_



Exhibit A

State Income Tax Returns and Years



**Exhibit B**

**Sample Reverse Income Tax Audit Exclusion Listing**