## EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re: Docket No. 145** |

-----------------------------------------------------------------

## ORDER APPROVING SETTLEMENT
## AGREEMENT WITH ECC ACQUISITION INC. AND OWAIS HASHMI

Upon consideration of the motion of Corinthian Colleges Inc. and its affiliate debtors and debtors in possession (the "**Debtor**s") for an order approving the agreement attached to this order as Exhibit 1 (the "**Agreement**") under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Motion**"); and it appearing that the Court has jurisdiction over this matter; and due notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and it further appearing that the Agreement is fair, reasonable, and in the best interests of the Debtors and their estates and stakeholders, and all parties in interest; and after due deliberation and due and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Agreement is approved.

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

3.      The Debtors are authorized and directed to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate and fully execute the Agreement and effectuate its terms.

4.      This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated:      _____, 2015
        Wilmington, Delaware


_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

2

**EXHIBIT 1**

Court File No: CV-15-520449

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

B E T W E E N:

FLORIDA METROPOLITAN UNIVERSITY, INC., AND
CORINTHIAN COLLEGES, INC.

Plaintiffs

– and –

ECC ACQUISITION INC., OWAIS HASHMI AND
JOHN1 DOE, JOHN2 DOE, JOHN3 DOE, JOHN4 DOE, JOHN5 DOE

Defendants

### MINUTES OF SETTLEMENT

**WHEREAS** the Plaintiffs commenced an action, being Ontario Superior Court of Justice file number CV-15-520449 ("the Action") against the Defendants on January 28, 2015 alleging, among other things, breach of contract, breach of the duties to act in good faith and honestly in the performance of a contract, breach of confidentiality, and tortious misrepresentation;

**WHEREAS** the Defendants denied the Plaintiffs' allegations and filed a counterclaim to the Action (the "Counterclaim");

**WHEREAS** the Plaintiffs did not file a Defence to the Counterclaim and Reply, but were prepared to do so and would have denied all allegations in the Counterclaim;

**WHEREAS** all parties have carried on settlement negotiations in order to resolve all matters between them related to the Action and the Counterclaim; and

**WHEREAS** the parties wish to fully and finally resolve all matters between them;

**NOW THEREFORE** the Plaintiffs and Defendants agree as follows:

1.      The parties acknowledge the accuracy of the recitals set out above, and agree that the recitals shall be incorporated by reference into the terms of these Minutes of Settlement.

2.      Without limiting anything else in these Minutes of Settlement and the attached Full and **Final Mutual Release (the "Release"), the Minutes of Settlement and the Release** are the full and final settlement of any and all claims related to the Action and the Counterclaim.

3.      The Plaintiffs will execute and abide by the Release attached as Schedule "A" and deliver such Release to Osler to be held in escrow.

- 2 -

4.   The Defendants will execute and abide by the Release attached as Schedule "A" and deliver such Release to Osler to be held in escrow.

5.   The Defendants will prepare, serve and file an Amended Statement of Defence and Counterclaim which strikes out paragraphs 11, 13, 14, and 18 of the original Statement of Claim, in the form attached as Schedule "B".

6.   Following the deliverance and filing of the Amended Statement of Defence and Counterclaim, the Action and the Counterclaim shall be dismissed on a no costs basis. The Defendants shall take out the order and shall have authority to execute the requisite consent on behalf of the Plaintiffs and the Defendants.

7.   The Releases shall be held in escrow by Osler, and shall be released to the Plaintiffs and the Defendants upon Osler's receipt of an entered and issued copy of the dismissal order.

8.   These Minutes of Settlement and the Releases required by these Minutes shall constitute the entire agreement between the parties with respect to the settlement of the matters raised or referred to herein.

9.   All parties acknowledge that they have received independent legal advice in connection with these Minutes of Settlement.

10.  These Minutes of Settlement shall be deemed to have been made in, and shall be construed in accordance with, the laws of the Province of Ontario.

11.  These Minutes may be executed in any number of counterparts with the same effect as if all parties had executed the same document. All counterparts shall be construed together and shall constitute one and the same Minutes of Settlement. Each counterpart of these Minutes of Settlement may be executed in either original, faxed, or electronic mail form.

May 1, 2015

_____
Witness

_____
Florida Metropolitan University, Inc.
Per: WILLIAM CALHOUN

_____
Witness

_____
Corinthian Colleges, Inc.
Per: WILLIAM CALHOUN

_____
Witness  Syed Zeeshan

_____
Owais Hashmi
Per:

_____
Witness  Syed Zeeshan

_____
ECC Acquisition Inc.
Per: Owais Hashmi

## SCHEDULE "A"

## FULL AND FINAL MUTUAL RELEASE

1.  In consideration of the mutual covenants contained in this Full and Final Mutual Release, and other consideration, including the agreed upon dismissal of the Action and Counterclaim (defined below) on a without costs basis, the receipt and sufficiency of which is hereby acknowledged,

> **Florida Metropolitan University, Inc. and Corinthian Colleges, Inc. (the "Corinthian Plaintiffs")**

hereby release and discharge

> **ECC Acquisition Inc. and Owais Hashmi (the "ECC Defendants"), and**

> each of their affiliated corporations (including but not limited to subsidiaries, trusts, partnerships and other entities, and each of the respective past, present and future directors, shareholders, trustees, officers, employees, representatives and agents of the **ECC Defendants** or any such affiliate (collectively the "**Additional ECC Releasees**")

and

> The **ECC Defendants**

hereby release and discharge

> The **Corinthian Plaintiffs**, and

> each of their affiliated corporations (including but not limited to subsidiaries, trusts, partnerships and other entities, and each of the respective past, present and future directors, shareholders, trustees, officers, employees, representatives and agents (including, but not limited to, Matt Haggenmiller), lawyers and counsel (including, but not limited to, Osler Hoskin & Harcourt LLP and all of its partners, employees, and agents) of the **Corinthian Plaintiffs** or any such affiliate (collectively the "**Additional Corinthian Releasees**")

- 2 -

of and from all claims, counterclaims, or demands whatsoever, presently known or unknown, foreseeable or unforeseeable, which the **Corinthian Plaintiffs** or the **ECC Defendants**, as the case may be, ever had, now has or may hereafter have, arising from or in connection with or in consequence of any cause, matter or thing existing up to the date of this Full and Final Mutual Release, including, without limiting the generality of the foregoing, all claims and demands in respect of or arising from or in connection with the agreement respecting the sale of the shares of Everest Colleges Canada, Inc. dated January 14, 2015 (the "Agreement"), including without limitation all claims in respect of the negotiation and execution of the Agreement and events pertaining to the uncompleted closing of the transactions contemplated by the Agreement, and all claims and demands which are or could have been asserted in a proceeding in *Florida Metropolitan University, Inc. et al v. ECC Acquisitions Inc. et al* bearing Court File No. CV-15-520449 (the "Action and Counterclaim").

2.    And for the said consideration,

(a)    The **Corinthian Plaintiffs** further covenant and agree that they will not take or continue, and will not permit any entity which they now or hereafter controls to take or continue, proceedings of any kind against any person who might claim contribution, indemnity or other relief over against the **ECC Defendants** or any of the **Additional ECC Releasees** in respect of any matter falling with the scope of the matters described in paragraph 1. The **Corinthian Plaintiffs** agree that this Full and Final Mutual Release constitutes sufficient grounds to enjoin the taking or continuation of any such proceedings. The **Corinthian Plaintiffs** further agree to indemnify the **ECC Defendants** and the **Additional ECC Releasees** against any loss or damages, including legal fees on a full indemnity basis, incurred by any of them in consequence of proceedings taken or continued in breach of this covenant; and

(b)    The **ECC Defendants** further covenant and agree that they will not take or continue, and will not permit any entity which they now or hereafter controls to take or continue, proceedings of any kind against any person who might claim contribution, indemnity or other relief over against the **Corinthian Plaintiffs** or

any of the **Additional Corinthian Releasees** in respect of any matter falling with the scope of the matters described in paragraph 1. The **ECC Defendants** agree that this Full and Final Mutual Release constitutes sufficient grounds to enjoin the taking or continuation of any such proceedings. The **ECC Defendants** further agree to indemnify the **Corinthian Plaintiffs** and the **Additional Corinthian Releasees** against any loss or damages, including legal fees on a full indemnity basis, incurred by any of them in consequence of proceedings taken or continued in breach of this covenant.

3. Each of the **Corinthian Plaintiffs** and the **ECC Defendants** represents and warrants to the other that it has not assigned or otherwise disposed of any of the claims or demands which are the subject of this Full and Final Mutual Release.

4. (a) The **Corinthian Plaintiffs** agree that the **Additional Corinthian Releasees** are third-party beneficiaries of this Full and Final Mutual Release and that they intends to confer a benefit upon each of them which is enforceable by each of them.

(b) The **ECC Defendants** agree that the **Additional ECC Releasees** are third-party beneficiaries of this Full and Final Mutual Release and that they intends to confer a benefit upon each of them which is enforceable by each of them.

5. The **Corinthian Plaintiffs** and the **ECC Defendants** agree that neither of them, and none of the **Additional Corinthian Releasees** or the **Additional ECC Releasees**, admit liability in respect of the matters which are the subject of this Full and Final Mutual Release, and that such liability is expressly denied by each of them.

6. The **Corinthian Plaintiffs** and the **ECC Defendants** undertake and agree to maintain confidential both the fact of the settlement, in connection with which this Full and Final Mutual Release is delivered, and the terms of such settlement, except to the extent that disclosure is required by law, provided that they may disclose the settlement and its terms to their respective professional advisers for the purpose of receiving their professional advice.

7. This Full and Final Mutual Release shall be governed by the laws of the Province of Ontario and the laws of Canada applicable therein. The **Corinthian Plaintiffs** and the

- 4 -

**ECC Defendants** attorn to the non-exclusive jurisdiction of the courts of the Province of Ontario in respect of any dispute arising from or in connection with or in consequence of this Full and Final Mutual Release.

8.  Each of the **Corinthian Plaintiffs** and the **ECC Defendants** acknowledges and agrees that it fully understands the terms of this Full and Final Mutual Release and has delivered same voluntarily, after receiving independent legal advice, for the purpose of making full and final compromise and settlement of the claims and demands which are the subject of this Full and Final Mutual Release.

9.  This Full and Final Mutual Release may be executed in any number of counterparts with the same effect as if all parties had executed the same document. All counterparts shall be construed together and shall constitute one and the same Full and Final Mutual Release. Each counterpart of this Full and Final Mutual Release may be executed in either original, faxed, or electronic mail form.

Executed as of May 1, 2015.

**The Corinthian Plaintiffs**

Per:

I have authority to bind the corporation

Name: William Calhoun
Title: SVP & Deputy General Counsel

**The ECC Defendants**

Per:

I have authority to bind the corporation

Name: Owais Hashmi
Title: President

## SCHEDULE "B"

Court File No: CV-15-520449

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE

BETWEEN:

### FLORIDA METROPOLITAN UNIVERSITY, INC. AND
### CORINTHIAN COLLEGES, INC.

Plaintiffs

-and-

### ECC ACQUISITION INC., OWAIS HASHMI AND
### JOHN1 DOE, JOHN2 DOE, JOHN3 DOE, JOHN4 DOE, JOHN5 DOE

Defendants

AND BETWEEN:

### ECC ACQUISITION INC. AND OWAIS HASHMI

Plaintiffs by
Counterclaim

-and-

### FLORIDA METROPOLITAN UNIVERSITY, INC. AND
### CORINTHIAN COLLEGES, INC.

Defendants to the
Counterclaim

### AMENDED STATEMENT OF DEFENCE OF THE DEFENDANTS OWAIS HASHMI AND ECC ACQUISITION INC. AND COUNTERCLAIM OF THE DEFENDANTS OWAIS HASHMI AND ECC ACQUISITION INC.

### TO THE DEFENDANTS TO THE COUNTERCLAIM:

**A LEGAL PROCEEDING** has been commenced against you by way of a counterclaim in an action in this court. The claim against you is set out in the following pages:

**IF YOU WISH TO DEFEND THIS COUNTERCLAIM,** you or an Ontario lawyer acting for you must prepare a defence to counterclaim in Form 27C prescribed by the Rules of Civil Procedure, serve it on the plaintiff by counterclaim's lawyer or, where the plaintiff by counterclaim does not have a lawyer, serve it on the plaintiff by counterclaim, and file it, with proof of service, in this court, WITHIN TWENTY DAYS after this statement of defence, crossclaim and counterclaim is served upon you.

- 2 -

If you are not already a party to the main action and you are served in another province or territory of Canada or in the United States of America, the period for serving and filing your defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

If you are not already a party to the main action, instead of serving and filing a defence to counterclaim, you may serve and file a notice of intent to defendant in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your defence to counterclaim.

**IF YOU FAIL TO DEFEND THIS COUNTERCLAIM, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABS.ENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LEGAL AID OFFICE.**

Date: March 4, 2015

## SCHEDULE "B"

## DEFENCE

1.      The defendants ECC Acquisition Inc. ("ECC" or the "Purchaser") and Owais Hashmi ("Mr. Hashmi") admit the facts alleged in paragraphs 2-5, 7-9 and 13 of the amended statement of claim.

2.      The Defendants deny the allegations contained in paragraphs 1, 6, 10-12 and 14-24 of the amended statement of claim.

3.      Florida Metropolitan, Inc (the "Vendor") is a corporation governed by the laws of Florida with its head office in Santa Ana, California. The Vendor, directly or indirectly, carries on the business of running private community colleges. The Vendor beneficially owns and controls all of the issued and outstanding shares of Everest Colleges Canada Inc., a corporation governed by the laws of Canada ("Everest").

4.      Corinthian Colleges, Inc. ("Corinthian") is a corporation governed by the laws of Delaware with its head office in Santa Ana, California. Corinthian beneficially owns and controls all of the issued and outstanding shares of the Vendor. The Vendor and Corinthian are sometimes referred together as the "Plaintiffs" or "the Defendants to the Counterclaim".

5.      ECC is a corporation incorporated under the laws of the Province of Ontario with its registered office in Toronto, Ontario.

6.      Mr. Hashmi is a resident of Toronto, Ontario and is a shareholder of ECC

7.      ECC and Mr. Hashmi are sometimes referred to together as the "Defendants" or the "Plaintiffs to the Counterclaim".

- 4 -

8.        In early December 2014, ECC and Mr. Hashmi began negotiating a share sale transaction with the Vendor and Corinthian in which ECC would acquire shares in Everest (the "Transaction"). The Defendants' interest in pursuing the Transaction was based on numerous representations from the Vendor and Corinthian. These representations included information about Everest's financial situation including available working capital, student enrolment numbers, Everest's compliance with applicable laws and regulations, Everest's license to operate as a private career college in Ontario being and remaining in good standing, Everest's capacity to continue its business operations, Everest's compliance with applicable accounting standards and so forth.

9.        Multiple drafts of a share sale agreement in relation to the Transaction were exchanged between Mr. Hashmi, the Vendor and Corinthian from early December 2014 until after January 14, 2015. ECC and Mr. Hashmi did not have legal representation at any time from the beginning of the negotiations until after the statement of claim was issued. Neither the Plaintiffs nor the Plaintiff's lawyer suggested to Mr. Hashmi that he or ECC retain legal counsel during the negotiation of the Transaction.

10.       On or about January 14, 2015, the execution copy of the share sale agreement (the "Contract") was finalized under which ECC was to purchase all of the shares of Everest from the Vendor for the purchase price of $1,000.00. The Contract provided that ECC would provide up to $1.8 million to partially cash collateralize certain letters of credit and Mr. Hashmi would act as a guarantor.

11.       ~~Unbeknownst to the Defendants, the Contract was unilaterally modified by the Plaintiff's lawyer, Osler, Hoskin and Harcourt LLP ("Osler") before signing. Specifically, section 13.9 entitled "Independent Legal Advice" was inserted by Osler without notifying either Mr. Hashmi or ECC. A previous draft of the share sale agreement dated December 22, 2014 does not~~ *(Owais Hashmi)*

- 5 -

~~have a section on independent legal advice. Osler never informed the Defendants of this new~~
~~clause.~~

12.      Mr. Hashmi signed the signature page of the Contract on January 14th 2014;
however, adjustments to the Contract were continuing and the parties were still negotiating the
$1.8 million from ECC at closing time.

(Owais Hashmi)

13.      ~~On January 20, 2015, Mr. Hashmi was called to the Vendor's lawyer's office (i.e.~~
~~Osler) to pre-close the Transaction. Mr. Hashmi was not represented by legal counsel at Osler's~~
~~office on January 20. During the meeting, the Vendor disclosed that there was only $37,000~~
~~remaining in Everest's bank account after payroll. This revelation came as a huge shock to Mr.~~
~~Hashmi as he was assured by the Plaintiffs throughout the negotiations that Everest had several~~
~~million dollars available to fund Everest's operations. When Mr. Hashmi put on his coat to leave,~~
~~Ms. Victoria Graham, a partner at Osler who was representing the Vendor, asked Mr. Hashmi to~~
~~sign some documents before he left. Given the late hour of the day (it was around 5 p.m.), Mr.~~
~~Hashmi signed the documents without receiving legal advice not realizing that he was potentially~~
~~entering into any binding legal commitments on behalf of himself and ECC.~~

(Owais Hashmi)

14.      ~~When Mr. Hashmi went to leave again, James Brown – another of the Vendor's~~
~~lawyers at Osler – asked Mr. Hashmi to come back later that evening (January 20, 2015) to sign~~
~~more documents which were prepared by Bank of America's counsel. Bank of America was the~~
~~secured lender of Everest Colleges and Corinthian. Mr. Hashmi came back later that evening~~
~~again, without his lawyer and on the request of the Vendor's lawyer and signed additional~~
~~documents.~~

15.      After signing the Agreement on January 20, 2015, Mr. Hashmi discussed the newly
learned precarious financial situation of Everest with advisors and potential stake-holders of ECC.

It was decided collectively that ECC was not going to proceed with the transaction given the previously undisclosed deteriorating financial condition of Everest - which was actually insolvent or bordering on insolvency –

16.      On the morning of January 21, 2015, ECC and Mr. Hashmi informed Sandra Muzzi-Pedota and Michelle Crawford of the Ministry that Mr. Hashmi and ECC were not moving forward with the Transaction.

17.      Shortly after contacting the Ministry, Mr. Hashmi informed Osler that he and ECC were not going to proceed with the Transaction. Mr. Hashmi e-mailed the Vendor's lawyer Osler to request the documents signed the previous day. Mr. Hashmi never received the documents nor did he receive any response to the e-mail.

**The Contract was Never Valid**

*(Owais Hashmi)*

18.      ~~The Defendants were put under extreme pressure and were unduly influenced by the experienced lawyers of the Vendor and Corinthian. Given the extreme pressure applied by the Vendor's lawyers, that the contract was unilaterally modified by Osler, that the Contract was still being negotiated after January 14, 2015 and that Mr. Hashmi and ECC did not have independent legal advice, the Defendants state that there never was a meeting of the minds between the Defendants, the Vendor and Corinthian, and hence, the Contract was never valid.~~

19.      The Defendants further plead that upholding the Contract would be unconscionable given the gross imbalance in legal and business bargaining power between the Vendor and the Defendants, and the multitude of misrepresentations made by and deceitful conduct of the Plaintiffs during the negotiations leading up to the signing of the Contract.

- 7 -

**The Agreement Was Frustrated**

20.        On February 19, 2015, the Superintendent of Private Career Colleges in Ontario issued to Everest a notice of suspension of Everest's registration as a private career college and a notice of proposal to revoke Everest's registration as a private career college in Ontario. In a press release, the Ministry stated that "The superintendent was no longer satisfied that Everest could be expected to be financially responsible in the operation of a private career college and in the offering of its vocational programs."

21.        On February 20, 2015, Everest applied for filed for an assignment in bankruptcy under the *Bankruptcy and Insolvency Act*, R.S.C., 1985, c. B-3

22.        If the Contract is held valid, the Defendants plead that the Contract was frustrated since intervening events such as the suspension of Everest's license to operate as a private career college relieves the Defendants from having to perform any obligations under the Contract. The suspension of Everest's license, Everest's declining financial situation, and non-disclosed insolvency leading to Everest's assignment in bankruptcy makes any performance of the contract far removed from its original intention.

**Rescission**

23.        The Plaintiffs made false representations that induced the Defendants to enter into the Agreement. These misrepresentations include but are not limited to Everest's financial situation including its ability to conduct its business in the normal course, Everest's working capital, student enrolment numbers, Everest's precarious registration status as a private career college, and Everest's commitment to follow and abide by the laws and regulations in the jurisdictions in which it operates. The Defendants state that they properly exercised their right to

- 8 -

rescind the Contract given that Defendants entered into the Contract based on false pretenses, negligent and reckless misstatements and deceitful conduct by the Plaintiffs.

24.     The Defendants state that even if the Contract is held valid, the Defendants properly exercised their right of termination under section 8.7 of the Contract due to the misrepresentations and deceit of the Plaintiffs, which released the Defendants from any performance under the Contract.

25.     The Defendants deny that the Plaintiff suffered any losses, injuries, and/or damages as alleged in the Statement of Claim and puts the Plaintiff to the strict proof thereof.

26.     In the alternative, if the Plaintiff has suffered any losses, injuries, and/or damages, which is not admitted but denied, the Defendants deny that such losses, injuries, and/or damages were caused by or are in any way the result of any acts undertaken or omissions made by it.

27.     In the alternative, the Defendants state that any losses, injuries, and/or damages claimed are exaggerated, remote, and unforeseeable and the Plaintiff has failed to mitigate same. In particular, the Defendants state that, if the Plaintiff has sustained any losses, injuries, and/or damages as alleged, which is not admitted but denied, the Plaintiff failed to mitigate same by failing to ensure it was complying with all laws and regulations, that proper accounting standards were adhered to and enforced within Everest, and that the business of Everest was run in a competent manner.

28.     The Defendants state that, if the Plaintiff has suffered any losses, injuries, and/or damages, which is not admitted but denied, such losses, injuries, and/or damages relate to incidents which pre-date or post-date those described in the Statement of Claim.

29.      The Defendants specifically deny that its conduct in the matters alleged in the Statement of Claim or otherwise was such that aggravated, punitive, special and/or exemplary damages ought to be awarded to the Plaintiff.

30.      These defendants therefore submit that this action should be dismissed as against them, with costs on a substantial indemnity basis.

## COUNTERCLAIM

31.      Mr. Hashmi and ECC claim damages in an amount of at least $500,000 against the Defendants to the Counterclaim, jointly and severally, as follows:

(a)      Against the Vendor and Corinthian for:

   (i)      tortious misrepresentation including fraudulent misrepresentation relating to the internal state of Everest;

   (ii)     deceit by recklessly or willfully misrepresenting or concealing material facts relating to Everest;

   (iii)    negligence in the negotiation and consummation of the transaction, operation of Everest Colleges as a competent business including abiding by accepted accounting and financial standards, performing contracts with third parties including the Government of Ontario, and following applicable laws and regulations in multiple jurisdictions;

   (iv)     In the event that the Contract is held valid, breach of contract, including breach of express and implied terms, covenants and representations;

- 10 -

    (v)    In the event that the Contract is held valid, breach of duties to act in good faith and honestly in the performance of a contract;

(b)    Pre-judgment and post-judgment interest in accordance with the *Court of Justice Act*, RSO 1990, c. C.43;

(c)    Costs of this action on a substantial indemnity basis, plus applicable taxes; and

(d)    Such further and other relief as this Honourable Court may deem just.

**Tortious and Fraudulent Misrepresentation and Deceit**

32.    The Defendants by Counterclaim made representations to Mr. Hashmi and ECC that Everest had working capital of several million dollars which was sufficient for Everest to continue its operations going forward. ECC and Mr. Hashmi were only told the truth about Everest's real financial condition at the eleventh hour, when the Defendant by Counterclaim's lawyers unduly pressured Mr. Hashmi and ECC to sign documents without legal representation.

33.    The Defendants by Counterclaim made false representations to Mr. Hashmi and ECC about Everest's student enrolment numbers.

34.    The Defendants by Counterclaim made false representations in the Contract and otherwise to Mr. Hashmi and ECC that Everest had the legal capacity to conduct its business. Mr. Hashmi and ECC were not told the truth that Everest was insolvent, on the cusp of bankruptcy, and was about to lose its license to operate as a private career college in Ontario.

35.    The Defendants by Counterclaim made implicit and explicit false representations in the Contract and otherwise that Everest was abiding by the applicable law and regulations in the jurisdictions in which Everest conducted business. The truth is that Everest was flagrantly violating

- 11 -

Laws and regulations in Ontario and was failing to abide by even the minimum standards in the *Private Career Colleges Act, 2005*, S.O. 2005, Ch. 28, of Ontario, and associated regulations, which is why the Ministry revoked Everest's license to operate as a private career college.

36.        Through their implicit and explicit representations in the Contract and otherwise, including during the negotiations leading up to the transaction and the due diligence process, the Vendor and Corinthian knowingly misled Mr. Hashmi and ECC about Everest's financial situation, its student enrolment levels, its legal capacity to operate as a private career college in Ontario, and its flagrant violation of laws, regulations and accounting standards in multiple jurisdictions. Such misrepresentations and deceitful conduct induced ECC and Mr. Hashmi to enter into the Agreement on false pretenses.

37.        Mr. Hashmi and ECC have suffered significant financial harm, including lost time and business opportunities, due to the tortious misrepresentations and deceit of the Vendor and Corinthian.

**Negligence**

38.        The Defendants by Counterclaim were negligent in at least the following ways: the negotiation and consummation of the transaction including disclosing false documents and making false representations as to Everest's actual state, the operation of Everest as a going concern, complying with accounting and financial standards, and in complying with applicable laws and regulations.

39.        Mr. Hashmi and ECC have suffered significant financial harm, including lost time and business opportunities, due to the negligence of the Vendor and Corinthian.

40.        The Defendants plead and rely on the *Negligence Act*, R.S.0. 1990, CHAPTER N.1

- 12 -

**Breach of Contract**

41.  If the Contract is held valid, the breaches of the Contract include but are not limited to:

(a)  Breach of sections 4.l(a) and 4.l(b) requiring Everest (and its subsidiary Career Canada) to have capacity to carry on its business as presently conducted;

(b)  Breach of section 8.1 regarding the truth and accuracy of the Vendor's representations;

(c)  Breach of section 8.2 relating to the Vendor not breaching or complying with covenants, agreements and conditions under the Contract;

(d)  Implied representations of operating a business competently, complying with applicable laws and regulations, and complying with appropriate accounting standards; and

(e)  implied duties of good faith and honesty.

42.  Pursuant to section 4.1, the Vendor represented that Everest and Career Canada had the capacity to carry on their businesses as conducted at that time. Everest was on such shaky financial footing that the Ministry suspended its license to operate as a private career college on February 19, 2015.

43.  The Defendants by Counterclaim willfully and recklessly concealed and misrepresented the actual internal situation at Everest including that Everest was insolvent, on the cusp of bankruptcy and was mere days away from losing its license to operate as a private career college in Ontario.

- 13 -

44.        The breaches of expressed and implied terms of contract and covenants, the misrepresentations, both negligent and intentional, and the deceitful conduct constitute breaches of the duties to act in good faith and honesty in performance of a contract, and willful misconduct by the Vendor and Corinthian.

**Punitive Damages**

45.        Mr. Hashmi and ECC state that the misconduct of the Defendants to the Counterclaim, including a multitude of negligent and fraudulent misrepresentations, negligence in the operation of its business, and deceit in representing the state of Everest's business, are a marked departure from ordinary standards of decent behaviour. The misconduct of the Defendants to the Counterclaim shocks the conscience of society and therefore punitive damages should be awarded against the Vendor and Corinthian.

**Special Damages**

46.        ECC and Mr. Hashmi have incurred monetary and other damages as a result of the misconduct of the Vendor and Corinthian. These damages include but are not limited to lost time and investment opportunity, and legal costs. The particulars of these damages will be provided prior to trial.

March 4, 2015                    **Robert Maki** (LSUC# 54061Q)
                                500-439 University Ave.
                                Toronto, ON M5G 2H6
                                Tel: 519.504.0692
                                Fax: 437 836 3101

                                Lawyer for the Defendants,
                                Plaintiffs by Counterclaim,
                                ECC Acquisition Inc.,
                                Owais Hashmi