**EXHIBIT A**

**Proposed Final Order**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | Case No. 15-10952 (KJC) |
| Debtors. | Jointly Administered |
| | **Related Doc. Entry: 8, 24 & 37** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 507 (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (III) GRANTING RELATED RELIEF

This matter is before the Court on the motion dated May 4, 2015 (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (each a "**Debtor**" and collectively, the "**Debtors**") in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order and a final order (this "**Final Order**"), under sections 105, 361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]    All defined terms shall have the meaning ascribed to them in the Motion unless otherwise defined herein.

RLF1 11915387v.2
ACTIVE 207960840v.7

(1)      authorization for the Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, but excluding any cash collateral subject to Permitted Prior Liens (as defined below)) on an interim basis, effective as of the Petition Date through the time of the hearing on the Motion on a final basis, pursuant to the terms and conditions set forth in this Final Order;

(2)      authorization to provide adequate protection, including, *inter alia*, replacement liens and superpriority administrative claims, to the Prepetition Secured Parties (as defined herein) under that certain Fourth Amended and Restated Credit Agreement, dated as of May 17, 2012 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition Credit Agreement**"), between and among Corinthian Colleges, Inc. ("**Corinthian**") and Corinthian's non-Debtor Canadian affiliate, Everest Colleges Canada, Inc. (the "**Canadian Borrower**"), as borrowers, the other Debtors, as guarantors, the lenders from time to time party thereto (such lenders in such capacities, the "**Prepetition Lenders**"), and Bank of America, N.A, as administrative agent (in such capacity, the "**Administrative Agent**"), on account of the Debtors' use of Cash Collateral, the imposition of the automatic stay, and any diminution in value of the Prepetition Secured Parties' interests in the Prepetition Collateral (as defined herein), as more fully set forth in this Final Order;

(3)      the waiver by the Debtors of any right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

RLF1 11915387v.2
ACTIVE 207960840.7

(4)     an emergency interim hearing on the Motion for this Court to consider entry of the Interim Order (as defined herein), which, among other things, (i) authorized the Debtors' use of the Cash Collateral; and (ii) granted certain adequate protection;

(5)     the scheduling of a final hearing on the Motion to consider entry of this Final Order authorizing the use of Cash Collateral on a final basis and approve the form of notice procedures with respect thereto; and

(6)     modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Prepetition Lenders and the Administrative Agent to implement the terms of this Final Order; and

(7)     waiver of any applicable stay (including under Bankruptcy Rules 4001 or 6004) and provision for immediate effectiveness of this Final Order.

This Court having held an interim hearing on May 5, 2015 (the "**Interim Hearing**") and a final hearing on June 8, 2015[3] (the "**Final Hearing**") to consider the Motion and the relief requested therein, and after considering all of the pleadings filed with this Court, and after consideration of the evidence presented on the record at the Interim Hearing and the Final Hearing, and having considered any objections to the Motion, and having found that, under the circumstances, due and sufficient notice of the Motion and the Interim Hearing and the Final Hearing was provided by the Debtors in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable Local Rules as set forth in the Interim Order and in Paragraph E herein; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is a sound and prudent exercise of the Debtors' business judgment, and is essential for the continued operation

---

[3]     The final hearing on the Motion was originally scheduled for May 27, 2015 pursuant to the Interim Order (as defined herein), but was continued to June 8, 2015 upon agreement of the parties.

of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]:**

A.    **Petition Date**.  On May 4, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions with this Court commencing the Chapter 11 Cases.  The Debtors are continuing to operate their businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    **Committee Appointment**.  On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code.  On May 15, 2015, the U.S. Trustee appointed the Committee of Student Creditors (the "**Students Committee**," and together with the Creditors Committee, the "**Committees**," and each a "**Committee**") pursuant to section 1102(a)(1) of the Bankruptcy Code.

C.    **Jurisdiction; Venue**.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.  Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[4]    Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

D.    **Interim Order**.    Based on the Motion, the Interim Hearing, and all relevant pleadings filed with this Court, the Court approved the Debtors' use of cash collateral as well as all other requested interim relief and entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [D.I. 24] (the "**Interim Order**").    Pursuant to the Interim Order, the Debtors were authorized to, among other things, use Cash Collateral and grant adequate protection.

E.    **Notice**.    The Final Hearing was held pursuant to the authorization of Bankruptcy Rule 4001.    Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, on [May _, 2015], in accordance with the Interim Order, to certain parties in interest, including:  (a) the U.S. Trustee, (b) counsel to the Creditors Committee, (c) counsel to the Students Committee, (d) creditors holding the thirty (30) largest unsecured claims as set forth in the list filed with the Debtors' petition, (e) Sidley Austin, as counsel to the Administrative Agent, (f) the Department of Education, (g) the Internal Revenue Service, (h) the Securities and Exchange Commission, (i) the United States Attorney for the District of Delaware, (j) any other known parties holding liens, and (k) those parties entitled to notice pursuant to Rule 2002. Under the circumstances, such notice of the Motion, the relief requested therein, entry of the Interim Order and the Final Hearing complies with Bankruptcy Rule 4001 and the Local Rules.

F.    **Debtors' Stipulations with Respect to Prepetition Secured Obligations**.    Subject to the limitations thereon described below in Paragraph 12, the Debtors hereby admit, acknowledge, agree and stipulate that:

(i)        As of the Petition Date, Corinthian, as borrower and as guarantor for the obligations of the Canadian Borrower, and each of the other Debtors, as guarantors for the obligations of Corinthian and the Canadian Borrower, were truly and justly indebted to the Prepetition Lenders and the Administrative Agent (collectively, the "**Prepetition Secured Parties**") under the Prepetition Loan Documents (as defined below), without defense, counterclaim or offset of any kind, in the aggregate principal amount of $94,433,363.55, in respect of prepetition domestic loans, in the aggregate principal amounts of $8,913,476.61, in respect of domestic letters of credit issued, and CAD $2,337,248.00, in respect of Canadian letters of credit issued, *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents) now or hereafter due under the Prepetition Loan Documents.  All obligations of the Debtors arising under the Prepetition Loan Documents (including, without limitation, the "Obligations" as defined in the Prepetition Credit Agreement) shall collectively be referred to herein as the "**Prepetition Secured Obligations**";

(ii)       pursuant to the Prepetition Credit Agreement and certain security agreements, deposit and pledged account control agreements, and other collateral documents and agreements (together with the other Loan Documents as defined in the Prepetition Credit Agreement, as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "**Prepetition Loan Documents**"), the Debtors granted to and/or for the benefit of the Administrative Agent and the other

6

Prepetition Secured Parties a first priority valid, perfected and enforceable security interest (the "**Prepetition Liens**") in substantially all of the Debtors' assets, both tangible and intangible, real and personal, including, without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, intellectual property, letter-of-credit rights and letters of credit, supporting obligations, and the proceeds and recoveries of the foregoing, all as more particularly and with the priorities described in the Prepetition Credit Agreement (the "**Prepetition Collateral**"), subject to certain other liens permitted under Section 7.01 of the Prepetition Credit Agreement (to the extent such permitted liens were valid, binding, enforceable, properly perfected, unavoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Permitted Prior Liens**"); and

(iii)      (a) the Prepetition Secured Obligations constitute legal, valid and binding Obligations (as defined in the Prepetition Credit Agreement) of the Debtors; (b) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition Secured Obligations exist; (c) no portion of the Prepetition Secured Obligations is subject to challenge, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Loan Documents are valid and enforceable by the Administrative Agent for the benefit of the Prepetition Secured Parties against the Debtors; (e) the liens and security interests of the Administrative Agent for the benefit of the other Prepetition Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition Collateral, having the priority set forth in the Prepetition Loan Documents and subject only to (after giving effect to any applicable intercreditor or

subordination agreement) Permitted Prior Liens,[5] and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Prepetition Secured Obligations constitute allowed secured claims against the Debtors' estates; and (g) no claim of or cause of action held by the Debtors exists against the Administrative Agent, the other Prepetition Secured Parties or their agents, whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), Prepetition Secured Obligations or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery;

(iv)    all of the Debtors' cash and cash equivalents, including any cash in deposit accounts (but excluding any cash and cash equivalents that are held in escrow by Citibank, N.A., as escrow agent, pursuant to that certain *Agreement Between Citibank, N.A. as Escrow Agent and Corinthian Colleges, Inc. and The United States Department of Education*, dated September 12, 2014 (the "**Escrowed Funds**")), wherever located, and all cash that constitutes proceeds of Prepetition Collateral (as defined in the Prepetition Loan Documents) are part of the Prepetition Collateral and, therefore, are Cash Collateral subject to the Prepetition Liens of the Administrative Agent.

---

[5]    Nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Administrative Agent, or the Prepetition Lenders to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Liens.

RLF1 11915387v.2
ACTIVE 207960840.7

G.      **Approved Budget**.   Attached hereto as <u>Exhibit A</u> is a rolling 10-week cash flow budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis (the "**Final Approved Budget**"), which modifies and supplements the Initial Approved Budget (as defined in the Interim Order).   The Final Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and that are consented to by the Administrative Agent, with a copy provided to counsel to the Creditors Committee and counsel to the Students Committee, without subsequent notice to or order of the Court (each such additional budget, a "**Supplemental Approved Budget**" and together with the Initial Approved Budget as modified and supplemented by this Final Approved Budget, the "**Approved Budget**").   The Final Approved Budget is an integral part of this Final Order and has been relied upon by the Administrative Agent and the other Prepetition Secured Parties in consenting to this Final Order, to permit the use of the Cash Collateral.   The Debtors represent that the Approved Budget (a) includes and contains the Debtors' projection of all operational receipts and all operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by the Debtors during the period covered by the Approved Budget and (b) based on the Debtors' projection, is achievable and will allow the Debtors to operate in the Chapter 11 Cases, sell assets, as authorized by the Court, and pay postpetition obligations as they come due.   The Debtors shall be permitted a variance between the aggregate actual disbursements on a consolidated basis and the amounts projected in the Approved Budget of 15% in the aggregate, measured every four (4) weeks on a rolling basis.   As for postpetition cash receipts, the Debtors may vary from the amounts projected in the Approved Budget, <u>provided</u> they continue to maintain sufficient liquidity to pay their postpetition obligations as they come

9

due.  By July 3, 2015 and every four (4) weeks thereafter, the Debtors shall provide the Prepetition Secured Parties and counsel for the Committees with a report of actual cash receipts and disbursements for the prior four (4) weeks, with a comparison to the forecast in the Approved Budget and a written narrative as to variances.

H.     **Immediate Need for Funding**.    Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to permit the Debtors to, among other things, effectuate an orderly liquidation of their assets, market certain assets for sale, and satisfy other short-term operational needs without the use of Cash Collateral.  In the absence of the authority of this Court to use Cash Collateral, the Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of the Debtors' operations and a resulting loss of value.  The preservation, maintenance and enhancement of the value of the Debtors' remaining business and assets are of the utmost significance and importance to a successful liquidation under chapter 11 of the Bankruptcy Code.

I.     **No Credit on More Favorable Terms**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, given the Debtors' current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing and are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or unsecured credit with administrative priority under section 364(c)(1) of the Bankruptcy Code.  The Debtors are unable to obtain the Prepetition Secured Parties' consent to use of Cash Collateral without the Debtors (i) granting to the Prepetition Secured Parties, subject to the Carve-Out as provided herein, (x) the Superpriority Claims (as

10

defined below) and (y) the Adequate Protection Liens, as provided herein, and (ii) providing the Prepetition Secured Parties the adequate protection as provided herein.

J.       **Reasonable; Good Faith**.  The terms of the Cash Collateral arrangement described in this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.   The terms concerning the Debtors' use of Cash Collateral as provided for in this Final Order were negotiated in good faith and at arms' length between the Debtors and the Prepetition Secured Parties.  The Prepetition Secured Parties are consenting to the use of Cash Collateral under the terms of this Final Order in good faith as that term is used in section 363 of the Bankruptcy Code, and are entitled to the benefits attendant to such finding.

K.       **Use of Cash Collateral**.  An immediate and critical need exists for the Debtors to use the Cash Collateral.  The Debtors have represented that they lack sufficient available sources of working capital and financing to effectuate an orderly wind-down of their remaining business.   The Debtors have further represented that, without the use of Cash Collateral, the continued operation of the Debtors' business and the preservation of the value of the Debtors' remaining assets would not be possible.  Accordingly, the Debtors and their estates would suffer immediate and irreparable harm unless the Debtors are authorized to use Cash Collateral on the terms and conditions set forth herein.

L.       **Consent by Prepetition Secured Parties**.   The Prepetition Secured Parties have consented to the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in the Interim Order and this Final Order, and such consent is binding on all Prepetition Secured Parties.

RLF1 11915387v.2
ACTIVE 207960840.7

M.    **Adequate Protection**.    The adequate protection provided to the Prepetition Secured Parties for any diminution in the value of such parties' respective interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the use of the Cash Collateral, pursuant to the provisions of the Interim Order and this Final Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 105, 361, 362 and 363 of the Bankruptcy Code.    The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to protect the Prepetition Secured Parties from the diminution in value of their Prepetition Collateral and obtain the foregoing consents and agreements.

N.    **Good Cause Shown; Best Interest**.    For the reasons stated above and in the Interim Order, continued use of Cash Collateral in accordance with this Final Order is in the best interest of the Debtors' estates and consistent with the Debtors' fiduciary duties.    Absent entry of this Final Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.    This Court concludes that good cause has been shown and that entry of this Final Order is in the best interest of the Debtors' estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses, and enhance the Debtors' prospects of maximizing the value of their remaining assets.

O.    **No Deemed Control**.    The Debtors stipulate and the Court finds that none of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors solely by virtue of permitting the Debtors to use Cash Collateral, accepting the Interim Approved Budget, the Final Approved Budget or any future

12

Supplemental Approved Budget or taking any other actions expressly permitted by the Interim Order or this Final Order.

P.    **Section 552**.  In light of the subordination of their liens and super-priority administrative claims to the Carve-Out, each of the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.    **Approval of Final Order**.  The Motion is approved on the terms and conditions set forth in this Final Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Final Order shall become effective immediately upon its entry.  All objections to the entry of this Final Order that have not been withdrawn are hereby overruled.

2.    **Ratification of Interim Order**.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent modified by this Final Order, and all payments made and protections afforded to the Administrative Agent for the benefit of the Prepetition Secured Parties, including the Adequate Protection Liens, are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.

3.    **Authorization to Use Cash Collateral**.  In accordance with and pursuant to the terms and provisions of this Final Order during the period from the Petition Date until the Termination Date (as defined below), the Debtors are authorized on a final basis to use the Cash Collateral, provided that any proposed use of Cash Collateral is consistent with the terms of the Approved Budget and this Final Order.  The Debtors' right to use the Cash Collateral (other than

13

Cash Collateral necessary to fund the Carve-Out) as herein authorized shall terminate (a "**Termination**") on the earliest of (i) three (3) business days after service of written notice by the Prepetition Secured Parties in accordance with Paragraph 13 below of the occurrence of an Event of Default (as defined in Paragraph 13 below); (ii) 5:00 p.m. (prevailing eastern time) on August 7, 2015; (iii) the effective date of a chapter 11 plan of liquidation in any of the Chapter 11 Cases; or (iv) as otherwise ordered by the Court (the "**Termination Date**").  Any Termination shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order as of the Termination Date, which rights, remedies, benefits and protections shall survive such Termination.

4.      **Deposit Accounts**.  From the Petition Date until the Termination Date, all cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of the Collateral (as defined below) and all other proceeds of such Collateral of any kind which is now or shall come into the possession or control of the Debtors, or to which the Debtors are now or shall become entitled, shall be promptly deposited into the bank accounts upon which the Administrative Agent has perfected Prepetition Liens (the "**Deposit Accounts**"), and such collections and proceeds (a) shall be subject to and (b) shall be treated in accordance with this Final Order.

5.      **Perfection in Cash**.  Subject to the Carve-Out and other provisions of this Final Order and other than with respect to the Escrowed Funds (except to the extent the Escrowed Funds are released to the Debtors), all financial institutions in which the Debtors' accounts are located are authorized and directed to comply with any request of the Administrative Agent to turn over to the Administrative Agent all funds therein without offset or

14

deduction of any kind, which funds shall be deposited by the Administrative Agent, or remitted to and deposited by the Debtors, into Deposit Accounts for use by the Debtors to the extent authorized under the Interim Order and this Final Order.   The Debtors are authorized and directed to enter into such blocked account agreements with cash dominion with the Administrative Agent and such financial institutions as the Administrative Agent may require, or alternatively, the Administrative Agent shall be entitled to enjoy the benefit of all prepetition control agreements to which the Administrative Agent is a party without the need to enter into new blocked account agreements.   The Administrative Agent may also direct the Debtors to, or may directly, instruct all account debtors of existing and future accounts receivable included in the Collateral (as defined below) to make payments directly into the Deposit Accounts.   Until the Termination Date, the Debtors shall maintain their cash management system pursuant to the Final Order (I) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (II) Waiving Certain United States Trustee Requirements; (III) Authorizing Continued Performance of Intercompany Transactions; and (IV) Granting Related Relief [D.I. 199], as may be modified with the prior written consent of the Administrative Agent by any order that may be entered by this Court (the "**Cash Management Order**").   Other than as expressly provided in the Cash Management Order or this Final Order, no modifications to the Debtors' cash management system may be made without the prior approval of the Administrative Agent.

6. **Letters of Credit**.  In consideration of the benefits afforded to the Debtors pursuant to the Interim Order and this Final Order, with respect to any prepetition Letters of Credit (as defined in the Prepetition Credit Agreement), (a) the L/C Issuer (as defined in the Prepetition Credit Agreement) is hereby authorized and permitted (but not obligated) to extend, renew, amend or replace any prepetition Letter of Credit (each a "**Prepetition L/C**," and

RLF1 11915387v.2
ACTIVE 207960840v.7

collectively, the "**Prepetition L/Cs**") in accordance with its terms and the terms of the other Prepetition Loan Documents, as applicable (as so extended, renewed, amended or replaced, each a "**New L/C**," and collectively, the "**New L/Cs**"), and (b) any "claims" (as defined under the Bankruptcy Code) that the L/C Issuer or any Prepetition Lender may have against any of the Debtors in respect of any New L/C (including for the reimbursement of any payment made on such New L/C) shall constitute Prepetition Secured Obligations, entitled to treatment as prepetition claims *pari passu* with those under the applicable Prepetition L/C, and, as such, shall be entitled to the adequate protection afforded by the Adequate Protection Obligations pursuant to this Final Order.

7.      **Reporting**.  The Debtors shall file monthly operating reports with the Court each month as required by the U.S. Trustee and concurrently serve copies upon counsel for the Prepetition Secured Parties, counsel for the Committees and the U.S. Trustee.  Additionally, the Debtors shall report as and to the extent provided in Paragraph G, and shall provide to the Prepetition Secured Parties and counsel for the Committees on a monthly basis (and within thirty (30) days following the prior month end), in substance and form acceptable to the Prepetition Secured Parties, (i) an accounts payable aging schedule, and, with respect to the Domestic Borrower (as defined in the Prepetition Credit Agreement), (ii) a consolidated balance sheet, (iii) a consolidated statement of income, and (iv) a cash reconciliation report setting forth the cash bank balance, float and cash book balance.

8.      **Proofs of Claim**.  None of the Administrative Agent or the Prepetition Lenders will be required to file proofs of claim or requests for payment of administrative expenses on account of any of the Prepetition Secured Obligations (and all rights, defenses, rights of offset or recoupment that the Administrative Agent or the Prepetition Lenders may have

16

are expressly preserved) in these Chapter 11 Cases, or, if any of the Chapter 11 Cases are converted to chapter 7, in any such chapter 7 cases. Any order entered by the Court in relation to the establishment of a bar date for any claims (including, without limitation, administrative claims) in the Debtors' bankruptcy cases or any successor cases shall not apply to the Administrative Agent or the Prepetition Lenders.

9.    **Adequate Protection**. Until the indefeasible repayment of the Prepetition Secured Obligations, the Prepetition Secured Parties are entitled to adequate protection for their interests in the Prepetition Collateral as a result of (a) authorizing the use of Cash Collateral; (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or (c) otherwise, pursuant to sections 105(a), 361(a), 363(c) and 363(e) of the Bankruptcy Code. The Administrative Agent, on behalf and for the benefit of the Prepetition Secured Parties, was, by the Interim Order, and is hereby granted on a final basis, solely to the extent of the diminution in value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date, all of the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens. The Administrative Agent, on behalf and for the benefit of the Prepetition Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "**Adequate Protection Liens**") in all prepetition and postpetition assets and property (tangible, intangible, real, personal, and mixed) of each of the Debtors of every kind, nature, and description, whether now existing or hereafter acquired or arising, and wherever located, including but not limited to all contracts, accounts, deposit accounts, chattel paper, inventory, equipment, general intangibles, goods, real property, leases, cash and cash equivalents (including any funds released to the Debtors from escrow or other

17

segregated accounts), claims, causes of action and proceeds thereof (including, without limitation, any property received or recovered with respect to claims and causes of action of the Debtors or their estates under sections 502(d), 544, 545, 547, 548, 550 and 553 and any other avoidance actions under the Bankruptcy Code (the "**Avoidance Action Proceeds**")) (collectively, the "**Postpetition Collateral**," and together with the Prepetition Collateral, the "Collateral"); provided, however, that Postpetition Collateral shall not include the Escrowed Funds unless and until released to the Debtors. The Adequate Protection Liens shall be supplemental to and in addition to the Prepetition Liens, shall attach with the same priority as enjoyed by the Prepetition Liens immediately prior to the Petition Date, and shall be junior to the Permitted Prior Liens and subject to the Carve-Out (the "**Adequate Protection Liens**"). The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases. Except as otherwise set forth in this Final Order, the Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise. The Adequate Protection Liens are deemed to be perfected automatically as of the Petition Date, without the necessity of filing of any UCC-1 financing statement, state or federal notice, mortgage or other similar instrument or document in any state or public record or office and without the necessity of taking possession or control of any collateral.

(b)     Prepetition Secured Parties' Superpriority Claims. The Administrative Agent, on behalf and for the benefit of the Prepetition Secured Parties, is hereby granted on a final basis superpriority administrative expense claims (the

18

"**Superpriority Claims**") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Collateral, which Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code; provided that at all times while such Superpriority Claims are in full force and effect pursuant to this Final Order, they shall be subject to the Carve-Out. The Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including Avoidance Action Proceeds.

(c)      Fees and Expenses.   Subject to and in accordance with the Approved Budget, the Administrative Agent and the Prepetition Lenders are hereby granted, and shall receive payments in cash from the Debtors on a current basis of all professional fees, costs and expenses of and payable to the Administrative Agent and the Prepetition Lenders under the Prepetition Credit Agreement as in effect on the Petition Date, including but not limited to, the reasonable fees and disbursements of counsel, financial and other third party advisors, appraisers and consultants for the Administrative Agent and the Prepetition Lenders, within fifteen (15) business days (if no written objection is received within ten (10) business days) after such professional has delivered

19

an invoice to the Debtors (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications, including such amounts arising (A) before the Petition Date and (B) after the Petition Date to the extent such amounts arise in connection with the Chapter 11 Cases.  Copies of all such invoices to the Debtors shall also be sent simultaneously to the U.S. Trustee and to counsel for the Committees.  If an objection to a professional's invoice is received within ten (10) business days after such professional's invoice has been delivered to the Debtors, the Committees, and the U.S. Trustee, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

(d)   <u>Right to Seek Additional Adequate Protection</u>.  This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Administrative Agent or the other Prepetition Secured Parties to seek additional forms of adequate protection or additional restrictions on the Debtors' use of Cash Collateral at any time.

10.   **<u>No Waiver of Prepetition Credit Agreement Provisions; Reservation of Rights</u>**.  Except as otherwise specifically provided in this Final Order, nothing contained in this Final Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Credit Agreement by the Prepetition Secured Parties, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtors, the incurrence of any lien in connection therewith or the making of any payment by the Debtors. Further, notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the rights of the

RLF1 11915387v.2
ACTIVE 207960840.7

Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors, (b) the rights of the Prepetition Secured Parties under the Prepetition Loan Documents, the Bankruptcy Code or other applicable law, or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.  Entry of this Final Order likewise does not constitute a waiver, expressly or implicitly, of the Debtors' or any other party-in-interest's right to oppose any further relief requested in accordance with the immediately preceding sentence.

　　　　11.　　**Carve-Out**.　　Upon written notice by the Administrative Agent to the Debtors and their counsel, the Committees and their respective counsel and the U.S. Trustee of the occurrence of a Termination Date and the implementation of the Carve-Out (as defined below) limitation provided in this Paragraph 11 (the "Trigger Date"), to the extent unencumbered funds are not available to pay administrative expenses in full, the Superpriority Claims, Adequate Protection Liens, and Prepetition Liens, shall be subject to the payment of (x) the unpaid and outstanding fees and expenses actually incurred on or after the Petition Date and prior to the Trigger Date, so long as approval is ultimately sought and allowed by a final order of the Court pursuant to Bankruptcy Code sections 326, 328, 330, or 331 by attorneys, accountants and other professionals retained by the Debtors and the Committees (collectively, the "**Professionals**"), in an amount not to exceed the respective line-item amounts set forth for such Professional for the applicable period prior to the Trigger Date in the Approved Budget, plus (y) those fees, costs and expenses incurred by the Professionals after the Trigger Date and subsequently allowed by order of this Court (and, if applicable, in compliance with the Approved Budget) in an amount not to exceed $75,000 in the aggregate, plus (z) fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930 (collectively, the

21

"**Carve-Out**"); provided further that following the Trigger Date, any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis; provided further, that no portion of the Carve-Out, Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors and the Committees, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the Prepetition Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, Superpriority Claims or security interests and liens of the Prepetition Secured Parties in respect thereof or (ii) asserting any claims or causes of action; provided further, that no more than an aggregate amount of $25,000 of the Collateral or any proceeds of the Collateral may be used to fund a reasonable investigation by both of the Committees appointed in these Chapter 11 Cases into the existence of any causes of action or other type of litigation against the Prepetition Secured Parties with respect to the Prepetition Secured Obligations. Notwithstanding the foregoing, so long as the Termination Date has not occurred: (i) the Debtors shall be permitted to pay, subject to and in accordance with the Approved Budget, administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately permitted by the Court). Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, Prepetition Secured Parties, the Committees, U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

RLF1 11915387v.2
ACTIVE 207960840.7

12.     **Investigation Rights**.  The Committees and any other non-debtor party-in-interest shall have through and including the earlier of (i) confirmation of a plan of liquidation for the Debtors or (ii) August 15, 2015 (the "**Investigation Termination Date**") to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Secured Obligations, or to assert any other claims or causes of action against the Prepetition Secured Parties.  If either Committee or any non-debtor party-in-interest hereafter vested with authority by this Court, determines that there may be a challenge to the Prepetition Secured Parties by the Investigation Termination Date, such party shall be permitted to file and prosecute an objection or claim related thereto (each, a "**Challenge**"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action (it being understood that a timely and properly filed motion for standing and authority to prosecute such Challenge with a copy of the proposed complaint attached shall satisfy this requirement).  If a Challenge is not filed on or before the Investigation Termination Date: (a) the agreements, acknowledgements and stipulations contained in Paragraph F of this Final Order, shall be deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the Committees, and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, without further action by any party or any further order of this Court, the Committees, any  other party-in-interest and any and all successors-in-interest as to any of the foregoing, shall thereafter be barred from bringing any Challenge; (b) the liens and security interests of the Prepetition Secured Parties shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured Obligations shall be deemed to be finally

allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph F and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged each of the Prepetition Secured Parties (whether in their prepetition or postpetition capacity), together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Lien Obligations or their prepetition relationship with the Debtors or any affiliate thereof relating to any of the Prepetition Loan Documents or any transaction contemplated thereby, including, without limitation, any claims or defenses as to the extent, validity, priority, or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, any claims or defenses under chapter 5 of the Bankruptcy Code or any other causes of action.    The Administrative Agent shall cooperate in all reasonable requests for information in order to assist the Committees in their investigation under this Paragraph 12.    Notwithstanding anything to the contrary herein: (a) if any such Challenge is timely commenced, the stipulations contained in Paragraph F of this Final Order shall nonetheless remain binding on all parties-in-interest not party to such Challenge and preclusive except to the extent that such stipulations are successfully challenged in such Challenge; and (b) the Prepetition Secured Parties reserve all of their rights to contest on any grounds any Challenge.    For the avoidance of doubt, any trustee appointed or elected in these cases shall, until the Investigation Termination Date and thereafter (if a Challenge is commenced by the Investigation Termination Date) for the duration of any adversary proceeding or contested  matter commenced pursuant to this Paragraph with respect to a Challenge (whether commenced by such trustee or commenced by any other party in interest

RLF1 11915387v.2
ACTIVE 207960840v.7

on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Final Order.

13.     **Default, Termination of Cash Collateral Usage**.  Anything in this Final Order to the contrary notwithstanding, the Debtors shall be prohibited from using the Cash Collateral, absent further order of this Court, upon Termination, including Termination effected through the service by the Prepetition Secured Parties of written notice to the Debtors and their counsel, the Court, the Committees and their respective counsel (as and to the extent applicable) and the U.S. Trustee that an Event of Default has occurred and is continuing.  For purposes of this Final Order, an "Event of Default" shall occur upon:

(a)     The failure by the Debtors to comply with any of the material terms or conditions of this Final Order, including, without limitation, the failure by the Debtors to comply with the Approved Budget pursuant to the terms of Paragraph G;

(b)     Any representation or warranty made by the Debtors in any pleading, certificate, report, or financial statement delivered to any of the Prepetition Secured Parties in the Chapter 11 Cases proving to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty, or statement not misleading);

(c)     The commencement of any action by any Debtor against the Administrative Agent or any Prepetition Lender;

(d)     Without the prior written consent of the Prepetition Secured Parties, the appointment of a Chapter 11 trustee or examiner;

RLF1 11915387v.2
ACTIVE 207960840v.7

(e)       Without the prior written consent of the Prepetition Secured Parties, the granting of a motion seeking to grant a third party a security interest or lien upon all or part of any property of the Debtors that has a priority which is senior to, or equal with, the Prepetition Secured Parties' Prepetition Liens or the Adequate Protection Liens in all or any portion of such property;

(f)       Without the prior written consent of the Prepetition Secured Parties, the granting by the Court of a motion for relief from the automatic stay in favor of any party, other than the Prepetition Secured Parties, with respect to any material portion of the Prepetition Collateral or postpetition collateral (including, but not limited to, any Cash Collateral);

(g)       The conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(h)       Without the prior written consent of the Prepetition Secured Parties, the granting of any motion to amend or modify the terms of this Final Order; or

(i)       The reversal or vacatur of this Final Order by the Court or any appellate court.

To the extent that an Event of Default is a payment default or otherwise susceptible to cure, the written notice from the Prepetition Secured Parties shall afford the Debtors five (5) days' opportunity to cure such Event of Default.

14.       **Further Assurances**.  The Debtors shall execute and deliver to the Administrative Agent and the Prepetition Secured Parties all such agreements, financing statements, instruments and other documents as the Administrative Agent and Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the Adequate

26

Protection Liens granted pursuant hereto. Further, the Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and shall pay fees and expenses that may be required or necessary for the Debtors' performance under this Final Order.

15.    **506(c) Waiver**.   Upon the entry of this Final Order, the Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Parties upon the Prepetition Collateral.  In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral or the Prepetition Collateral (as applicable).

16.    **Restrictions on Granting Post-Petition Liens**.   Other than the Carve-Out, or as otherwise provided in this Final Order, no claim or lien having a priority superior or *pari passu* with those granted by this Final Order to the Prepetition Secured Parties shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, while any portion of the Prepetition Secured Obligations are outstanding.

17.    **Automatic Effectiveness of Liens**.   The Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors or the Prepetition Secured Parties and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office or the Library of

Congress, or other documents or the taking of any other actions.  If the Administrative Agent hereafter requests that the Debtors execute and deliver to the Administrative Agent financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the Adequate Protection Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Administrative Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order.

18.    **Binding Effect**.  Subject to Paragraph 12, the provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, the Committees and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors). To the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estates of the Debtors, whether in the Chapter 11 Cases or, in the event of the conversion of any of the Chapter 11 Cases, to any liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Final Order.

19.    **Survival**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of liquidation or reorganization in the Chapter 11 Cases; (ii) converting the Chapter 11 Cases to chapter 7; or (iii)

dismissing the Chapter 11 Cases, and the terms and provisions of this Final Order as well as the Adequate Protection Liens and Superpriority Claims granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Final Order, and to the maximum extent permitted by law, until all of the Prepetition Secured Obligations and the Adequate Protection Obligations are indefeasibly paid in full and discharged.  If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to actual receipt of written notice to the Administrative Agent of the effective date of such reversal, stay, modification or vacatur.  Prior to actual receipt of written notice by the Administrative Agent of the effective date of any reversal, stay, modification or vacatur, any use of Collateral (including Cash Collateral) or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the Adequate Protection Obligations, provided thereunder.

20.    **Reallocation.**    For the avoidance of doubt, in the event that it is determined by this Court that the Prepetition Secured Parties did not maintain valid, perfected and enforceable liens on the Prepetition Collateral, the Court reserves the right to reallocate any payments made to the Prepetition Secured Parties and modify any liens and claims granted pursuant to this Final Order, including the grant of adequate protection to the Prepetition Secured Parties.

21.     **Restriction on Use of Cash Collateral**.     Notwithstanding anything

herein to the contrary, for so long as the Debtors are authorized to use the Prepetition Secured

Parties' Cash Collateral with the consent of the Prepetition Secured Parties, no Cash Collateral of

the Prepetition Secured Parties may be used directly or indirectly by the Debtors, the Committees

or any other person or entity to object to or contest in any manner the Prepetition Secured

Obligations or Prepetition Liens, or to assert or prosecute any actions, claims or causes of action

against any of the Prepetition Secured Parties without the consent of the applicable Prepetition

Secured Parties.

22.     **Effect of Dismissal of Chapter 11 Cases**.  If the Chapter 11 Cases are

dismissed, converted or substantively consolidated, then neither the entry of this Final Order nor

the dismissal, conversion or substantive consolidation of these Chapter 11 Cases shall affect the

rights of the Prepetition Secured Parties under their respective Prepetition Loan Documents or

this Final Order, and all of the respective rights and remedies thereunder of the Prepetition

Secured Parties shall remain in full force and effect as if the Chapter 11 Cases had not been

dismissed, converted, or substantively consolidated.  If an order dismissing the Chapter 11 Cases

is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the

Bankruptcy Code) that: (i) those Prepetition Liens, Adequate Protection Liens and Superpriority

Claims granted to and conferred upon the Prepetition Secured Parties, as applicable, shall

continue in full force and effect and shall maintain their priorities as provided in this Final Order

until all Prepetition Secured Obligations shall have been paid and satisfied in full (and that such

Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested

parties); and (iii) to the greatest extent permitted by permissible law, this Court shall retain

RLF1 11915387v.2
ACTIVE 207960840.7

jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens, and Superpriority Claims referred to herein.

23. **Retention of Jurisdiction**. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any and all disputes or matters under, or arising out of or in connection with, this Final Order.

24. **Order Effective**. This Final Order shall be effective as of the date of the signature by the Court and, notwithstanding anything to the contrary in Bankruptcy Rules 4001(a)(3) or 6004(h), shall not be stayed absent the grant of a stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors and the Administrative Agent.

25. **No Requirement to Accept Title to Collateral**. The Prepetition Secured Parties shall not be obligated to accept title to any portion of the Prepetition Collateral in payment of the indebtedness owed to such party by the Debtors, in lieu of payment in cash or cash equivalents, nor shall any of the Prepetition Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the Prepetition Secured Parties.

26. **Controlling Effect of Final Order**. To the extent any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or any prepetition agreement, the provisions of this Final Order shall control.

27. **Reservation of Rights of Campus Student Funding**. Notwithstanding anything to the contrary in this Final Order or the Interim Order, to the extent Campus Student Funding, LLC, f/k/a ASFG, LLC ("**Campus Student Funding**") holds any liens on property of any or all of the Debtors granted in connection with the Educational Loan Portfolio Recourse Purchase and Sale Agreement between Career Choices, Inc. and ASFG, LLC dated September

16, 2011, the Educational Loan Portfolio Recourse Purchase and Sale Agreement between Career Choices, Inc. and ASFG, LLC dated September 26, 2012, or the ASFG Agreements (as defined in the Prepetition Credit Agreement) that were valid, binding, enforceable, properly perfected, unavoidable and senior in priority to the Prepetition Liens as of the Petition Date (the "**Existing Liens**"), nothing in this Final Order or the Interim Order shall alter, impair, waive or otherwise affect (i) the rights of Campus Student Funding to assert – solely with respect to property of the Debtors validly encumbered by such Existing Liens and recourse thereto – that the Adequate Protection Liens and/or the Adequate Protection Claims are junior to and subject to the Existing Liens, and (ii) the rights of the Administrative Agent, the Debtors or any other party in interest to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of such Existing Liens.

Dated: June _____, 2015

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

RLF1 11915387v.2
ACTIVE 207960840v.7

## **EXHIBIT A**

RLF1 11915387v.2
ACTIVE 207960840.7

EXHIBIT "A"

Preliminary Draft
Subject to Material Change

## Corinthian Colleges, Inc. - Consolidated
### Cash Collateral Budget

| ($ in Thousands) | 1 Projected 6/5/2015 | 2 Projected 6/12/2015 | 3 Projected 6/19/2015 | 4 Projected 6/26/2015 | 5 Projected 7/3/2015 | 6 Projected 7/10/2015 | 7 Projected 7/17/2015 | 8 Projected 7/24/2015 | 9 Projected 7/31/2015 | 10 Projected 8/7/2015 | Projected Post 8/7/15 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week Ending:** | | | | | | | | | | | | |
| **RECEIPTS** | | | | | | | | | | | | |
| Receivables / Education Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Proceeds from Sale of Equipment / FF&E | - | - | - | - | - | 1,535 | - | - | - | - | - | 1,535 |
| Zenith Indemnification Escrow | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Cash Receipts | 121 | 10 | 10 | 10 | 5 | 527 | 5 | 5 | 5 | 5 | - | 703 |
| **Total Receipts** | **121** | **10** | **10** | **10** | **5** | **2,062** | **5** | **5** | **5** | **5** | **-** | **2,238** |
| **ORDINARY COURSE DISBURSEMENTS** | | | | | | | | | | | | |
| Payroll Benefits and Taxes - Campus Staff | $ 400 | $ 7 | $ 200 | $ 7 | $ - | $ 7 | $ - | $ 7 | $ - | $ - | $ - | 628 |
| Payroll Benefits and Taxes - Corp Staff | - | 81 | - | 81 | 7 | 68 | - | 68 | 34 | 0 | - | 338 |
| Return of Student Deposits | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent | - | - | - | - | 108 | - | - | - | 108 | 1,084 | - | 1,300 |
| CSC Rent | - | - | - | - | 35 | - | - | - | 35 | - | - | 70 |
| Transition Services Agreement Pmts/Accounting | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | - | 50 |
| Document Management | 25 | 23 | - | - | 45 | - | - | 750 | 45 | - | - | 888 |
| Moving / Location Expenses | 12 | 106 | - | - | - | 20 | - | - | - | 20 | - | 158 |
| Security | - | - | - | - | - | - | - | - | 5 | 5 | - | 10 |
| Utilities (including deposits) | 65 | - | - | - | 5 | - | - | - | 5 | - | - | 75 |
| PricewaterhouseCoopers | - | 100 | - | - | - | - | - | - | - | - | - | 100 |
| Ordinary Course Professionals | 25 | 25 | 25 | 25 | 25 | 100 | 25 | - | - | - | - | 250 |
| Other Operating Expenses & Consultants | 197 | 112 | 73 | 68 | 57 | 27 | 31 | 26 | 20 | 20 | - | 629 |
| **Total Op Expenses** | **729** | **458** | **303** | **186** | **287** | **227** | **61** | **855** | **257** | **1,134** | **-** | **4,495** |
| **OPERATING CASH FLOW** | **(608)** | **(448)** | **(293)** | **(176)** | **(282)** | **1,835** | **(56)** | **(850)** | **(252)** | **(1,129)** | **-** | **(2,258)** |
| **NON-OPERATING C/F** | | | | | | | | | | | | |
| CCI Financial Advisors Professional Fees | - | (93) | (150) | (150) | (66) | (121) | (46) | (22) | (41) | (116) | (68) | (873) |
| CCI Counsel Professional Fees | - | - | - | - | - | - | (293) | - | - | - | (632) | (925) |
| Student Committee Professional Fees | - | - | - | - | - | - | (55) | - | - | - | (220) | (275) |
| Unsecured Creditors Committee Professional Fees | - | - | - | - | - | - | (75) | - | - | - | (200) | (275) |
| Lender Professional Fees | - | - | - | (275) | - | - | - | - | (175) | - | - | (450) |
| Noticing Costs / Plan Costs | (103) | - | - | (100) | - | - | - | (100) | - | - | (50) | (353) |
| UST Fees | - | - | - | - | - | - | (13) | - | - | - | - | (13) |
| Other Non-Operating Cash Flows | - | - | - | - | - | - | (211) | - | - | - | - | (211) |
| **Sub-Total Non-Operating** | **(103)** | **(93)** | **(150)** | **(525)** | **(66)** | **(121)** | **(693)** | **(122)** | **(216)** | **(116)** | **(1,170)** | **(3,375)** |
| **NET CASH FLOW** | **(711)** | **(541)** | **(443)** | **(701)** | **(348)** | **1,714** | **(748)** | **(972)** | **(468)** | **(1,245)** | **(1,170)** | **(5,633)** |
| **Beg Book Balance*** | $ 6,531 | $ 5,820 | $ 5,279 | $ 4,836 | $ 4,135 | $ 3,788 | $ 5,502 | $ 4,754 | $ 3,781 | $ 3,313 | $ 2,068 | $ 6,531 |
| *Net Cash Flow* | (711) | (541) | (443) | (701) | (348) | 1,714 | (748) | (972) | (468) | (1,245) | (1,170) | (5,633) |
| **Ending Book Balance** | $ 5,820 | $ 5,279 | $ 4,836 | $ 4,135 | $ 3,788 | $ 5,502 | $ 4,754 | $ 3,781 | $ 3,313 | $ 2,068 | $ 898 | $ 898 |

*Beginning Book Balance is estimated based on estimated actuals through 5/29/15, but are subject to further adjustment.

**Payroll Headcount After Terminations By Week**

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Campus Staff Remaining at End of Week* | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | - | - | | |
| *Corp Staff Remaining at End of Week* | 8 | 8 | 6 | 6 | 6 | 6 | 6 | 6 | 1 | 1 | | |

Cash Collateral Budget  6-4-15.xlsx

Preliminary Draft
Subject to Material Change

Corinthian Colleges, Inc.
Professional Fees Accrued

| Week Ending: | 5/4 - 5/22/15 | 5/29/15 | 6/5/15 | 6/12/15 | 6/19/15 | Statement Paid 6/26/15 | 7/3/15 | 7/10/15 | 7/17/15 | 7/24/15 | Statement Paid 7/31/15 | 8/7/15 | Statement Paid Final | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FTI Consulting, Including CRO** | | | | | | | | | | | | | | |
| Accrued | $ 585 | $ 150 | $ 150 | $ 66 | $ 121 | $ 46 | $ 22 | $ 41 | $ 116 | $ 36 | $ 32 | | $ - | 1,365 |
| Paid | | | | (93) | (150) | (150) | (66) | (121) | (46) | (22) | (41) | (116) | (68) | (873) |
| Retainer Applied | | | | (492) | | - | | | | | - | | - | (492) |
| Retainer Outstanding | 492 | 492 | 492 | - | - | - | - | - | - | - | - | - | | |
| Accrued and Unpaid Fees | 585 | 735 | 885 | 366 | 337 | 233 | 189 | 109 | 179 | 193 | 184 | 68 | - | |
| **Richards Layton** | | | | | | | | | | | | | | |
| Accrued | $ - | $ 366 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 9 | | 1,050 |
| Paid | | | | | | | | | (293) | | | | (632) | (925) |
| Retainer Applied | | | | | | - | | | | | - | | (125) | (125) |
| Retainer Outstanding | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | 125 | - | |
| Accrued and Unpaid Fees | - | 366 | 441 | 516 | 591 | 666 | 741 | 816 | 598 | 673 | 748 | 757 | - | |
| **Robins Kaplan and Public Counsel** | | | | | | | | | | | | | | |
| Accrued | $ 15 | $ 15 | $ 15 | $ 15 | $ 15 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | | | 225 |
| Paid | | | | | | | | | (45) | | | | (180) | (225) |
| Retainer Applied | | | | | | | | | | | - | | - | - |
| Retainer Outstanding | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Accrued and Unpaid Fees | 15 | 30 | 45 | 60 | 75 | 100 | 125 | 150 | 130 | 155 | 180 | 180 | - | |
| **Polsinielli** | | | | | | | | | | | | | | |
| Accrued | $ 5 | $ 5 | $ - | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | | | 50 |
| Paid | | | | | | | | | (10) | | | | (40) | (50) |
| Retainer Applied | | | | | | | | | | | - | | - | - |
| Retainer Outstanding | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Accrued and Unpaid Fees | 5 | 10 | 10 | 15 | 20 | 25 | 30 | 35 | 30 | 35 | 40 | 40 | - | |
| **UCC Professionals** | | | | | | | | | | | | | | |
| Accrued | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | $ 25 | | | 275 |
| Paid | | | | | | | | | (75) | | | | (200) | (275) |
| Retainer Applied | | | | | | | | | | | - | | - | - |
| Retainer Outstanding | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Accrued and Unpaid Fees | 25 | 50 | 75 | 100 | 125 | 150 | 175 | 200 | 150 | 175 | 200 | 200 | - | |
| **Total Payments** | | | | - | (93) | (150) | (150) | (66) | (121) | (469) | (22) | (41) | (116) | (1,120) | (2,348) |

Cash Collateral Budget  6-4-15.xlsx