IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 15-10952-KJC |

**DECLARATION OF TASHA COURTRIGHT IN SUPPORT OF COMMITTEE OF STUDENT CREDITORS' MOTION FOR AN ORDER SUPPLEMENTING OR EXTENDING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A) AND GRANTING RELATED RELIEF**

I, Tasha Courtright, declare as follows:

1. My name is Tasha Courtright, I am over the age of 18, and I live in Lake Elsinore, California. I have personal knowledge of the matters set forth herein and if called as a witness, I could and would testify competently thereto.

2. I attended Everest College from January 2008 through July 2012. I was enrolled in the Associates Criminal Justice Program & Bachelors Program for Applied Management.

3. At the time of enrolling in the Criminal Justice Program, I was informed by the admissions representative that approximately 91% of graduates of the Criminal Justice

---

[1] The Debtors in these cases, along with the case numbers, are: Corinthian Schools, Inc. 15-10955 (KJC); Rhodes Colleges, Inc. 15-10957 (KJC); Florida Metropolitan University, Inc., 15-10962 (KJC); Corinthian Property Group, Inc. 15-10966 (KJC); Titan Schools, Inc. 15-10970 (KJC); Career Choices, Inc. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., 15-10961 (KJC); Ashmead Education, Inc., 15-10967(KJC) ; MJB Acquisition Corporation, 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975 ; (KJC) Pegasus Education, Inc., 15-10953 (KJC); Grand Rapids Education Center, Inc., 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., 15-10960 (KJC); CDI Education USA, Inc. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); Socle Education, Inc., Case No. 15-10976 (KJC).

Program obtained employment in the Criminal Justice field with a starting average salary of approximately $45,000.

4. Upon graduation, I was unable to obtain employment in the field related to my Criminal Justice Degree or Applied Management Degree and instead found employment as a part time server at a Farmer Boys Restaurant with a starting salary of $8.50 per hour. My duties at Farmer Boys Restaurant had nothing to do with what I learned while attending Everest College.

5. To the best of my recollection, I was unaware that funds were being provided to the Debtors[2] in the amount of $ 43,000 to cover the cost of tuition/fees associated with my enrollment at Everest College.

6. I am currently being asked to pay approximately $43,000 for amounts advanced to the Debtors under Title IV of the Higher Education Act of 1965 in connection with my enrollment at Everest College (the "Federal College Funding").

7. Navient is making efforts to collect the Federal College Funding in the approximate amount of $43,000.

---

[2] The Debtors are: Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

8. I have been subjected to phone calls in attempt to collect from Navient and Education Credit Management Corporation.

9. Attached hereto as Exhibit A is a true and accurate copy of my Everest College Application/Enrollment Agreement dated January 14, 2010. To the best of my knowledge, the attached contains a class-action waiver and a binding arbitration agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of June 2015 in Lake Elsinore, California.

_____
Tasha Courtright

# EXHIBIT A

06-01-'15 15:52 FROM- LMV I AFFORDABLE LP   951-674-6075   T-740   P0002/0026   F-726

# Everest COLLEGE (The School)

- ○ ALHAMBRA CAMPUS
- ○ ANAHEIM CAMPUS
- ○ CITY OF INDUSTRY CAMPUS
- ○ GARDENA CAMPUS
- ○ HAYWARD CAMPUS
- ○ LOS ANGELES-WILSHIRE CAMPUS
- ○ ONTARIO CAMPUS
- ● ONTARIO METRO CAMPUS
- ○ RESEDA CAMPUS
- ○ SAN BERNARDINO CAMPUS
- ○ SAN FRANCISCO CAMPUS
- ○ SAN JOSE CAMPUS
- ○ TORRANCE CAMPUS
- ○ WEST LOS ANGELES CAMPUS

*Please see page 3 for address, phone/fax number and branch status.*

## APPLICATION/ENROLLMENT AGREEMENT

### PERSONAL INFORMATION

| LAST NAME | FIRST NAME | MIDDLE INITIAL | MAIDEN NAME | SEX |
|---|---|---|---|---|
| Courtright | Tasha | REDACTED | | ○ MALE  ● FEMALE |

| PRESENT ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| REDACTED | REDACTED | REDACTED | REDACTED |

| PERMANENT ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

| HOME TELEPHONE NUMBER | MOBILE TELEPHONE NUMBER (PROVIDING THIS # AUTHORIZES THE SCHOOL TO SEND ME TEXT MESSAGES) | WORK/OTHER TELEPHONE NUMBER |
|---|---|---|
| REDACTED | REDACTED | |

| EMAIL ADDRESS | DATE OF BIRTH | SOCIAL SECURITY NUMBER | DRIVER LICENSE/ID NUMBER, STATE |
|---|---|---|---|
| REDACTED | REDACTED | REDACTED | REDACTED |

RACE:
- ○ ALASKAN NATIVE OR AMERICAN INDIAN
- ○ ASIAN
- ○ BLACK OR AFRICAN AMERICAN
- ○ HISPANIC
- ○ NATIVE HAWAIIAN OR OTHER PACIFIC ISLANDER — REDACTED
- ○ UNKNOWN
- ○ TWO OR MORE RACES

ARE YOU A: REDACTED

ELIGIBLE FOR VETERAN'S BENEFITS?: REDACTED

### PREVIOUS EDUCATION

| WILL YOU BE A HIGH SCHOOL GRADUATE BEFORE THE START DATE OF YOUR PROGRAM, GIVEN BELOW? | NAME OF LAST HIGH SCHOOL ATTENDED | CITY | STATE | ZIP CODE | GRADUATION YEAR |
|---|---|---|---|---|---|
| REDACTED | REDACTED | REDACTED | REDACTED | | REDACTED |

| HAVE YOU RECEIVED AN... | DATE OF ISSUE | WHERE ISSUED |
|---|---|---|
| REDACTED | | |

| HAVE YOU PREVIOUSLY ATTENDED THIS INSTITUTION? ○ YES ○ NO | IF YES, LAST DATE ATTENDED | HAVE YOU PREVIOUSLY ATTENDED ANOTHER POSTSECONDARY SCHOOL OR INSTITUTION? REDACTED |
|---|---|---|

#### LIST ALL POSTSECONDARY INSTITUTIONS ATTENDED AFTER HIGH SCHOOL

| SCHOOL NAME | CITY AND STATE | FROM (MO/YR) | TO (MO/YR) | DEGREE EARNED |
|---|---|---|---|---|
| REDACTED | REDACTED | REDACTED | REDACTED | REDACTED |
| | | | | |
| | | | | |

### PROGRAM (FOR SCHOOL USE ONLY)

| PROGRAM REQUESTED | START DATE | SCHEDULED COMPLETION DATE |
|---|---|---|
| REDACTED | REDACTED | REDACTED |

| NO. OF QUARTERS | NO. OF MODULES | TOTAL CONTACT HOURS | TOTAL CREDITS | TOTAL MONTHS (REQUIRED FOR ABHES SCHOOLS AND IN NV, OH, OR, TX, WA, MD, MO) |
|---|---|---|---|---|
| REDACTED | | REDACTED | REDACTED | REDACTED |

| CREDENTIAL AWARDED UPON COMPLETION |
|---|
| REDACTED |

| SESSION SCHEDULE (REQUIRED IN STATES: WA, OH, OR AND ACCSCT SCHOOLS) | EACH: |
|---|---|
| REDACTED | REDACTED |

Any questions or problems concerning this school which have not been satisfactorily answered or resolved by The School should be directed to the Department of Consumer Affairs, Consumer Information Division, P.O. Box 980818, Suite N 112, Sacramento, CA 95798, (800) 952-5210.

## FINANCIAL (FOR SCHOOL USE O...)

Fill program charges in EITHER the Quarter-Based Programs OR the Modular Programs section, whichever is applicable, and strike the section that does not apply.

### ☑ QUARTER-BASED PROGRAMS

Tuition and fees listed below are current as of the date of this agreement and will be charged for the student's first quarter (or mini-term) in attendance. Tuition and fees for subsequent quarters will be charged at the published rate in effect at the beginning of that quarter, provided that the student is given one week's advance notice of any increase in tuition rates. Refunds will be based on the portion of the quarter that the student has completed.

**FEE**     **CURRENT RATE**

| | |
|---|---|
| TUITION PER CREDIT HOUR | $ REDACTED PER CREDIT HR |
| FEES (SPECIFY) _____ | $ _____ PER QUARTER |
| _____ | $ _____ PER QUARTER |
| _____ | $ _____ PER QUARTER |
| ONLINE FEE | $ _____ PER COURSE |
| MINI-TERM START (IF APPLICABLE) | $ _____ PER CREDIT HR |
| AVERAGE ESTIMATED COST OF BOOKS* | $ REDACTED PER QUARTER |

*The cost of books will vary each quarter in relation to the number of classes taken or cost of textbooks. The minimum full-time course load is 12 credits per quarter. Non-credit-bearing coursework will be charged at the same rate as credit-bearing coursework. Textbook costs per quarter are dependent upon the classes taken. Arrangements to cover the cost of tuition, books and fees must be completed prior to registration each quarter. The student's total tuition for a given quarter is determined by multiplying the number of credit hours for which the student is registered at the end of the add/drop period by the then current tuition rate for the number of credit hours for which the student is registered.

### ○ MODULAR PROGRAMS

Students will be charged tuition based on an academic year. Refunds will be based on the portion of the academic year that the student has completed.

| | 1ST YEAR | 2ND YEAR† | 3RD YEAR† | TOTAL | |
|---|---|---|---|---|---|
| TUITION | | | | | |
| FEES (SPECIFY) _____ | | | | | TOTAL PROGRAM COST |
| TEXTBOOKS AND EQUIPMENT†† | | | | | PAYMENT MADE TODAY |
| OTHER (SPECIFY) _____ | | | | | IF RE-ENTRY, CREDIT FOR PREVIOUS ENROLLMENT |
| TOTAL | | | | | BALANCE DUE |

† OR PORTION THEREOF
†† TEXTBOOK AND EQUIPMENT COSTS ARE ESTIMATED. THE COST OF BOOKS MAY VARY DUE TO PUBLISHER'S COSTS.

I HAVE REVIEWED THE CHARGES ABOVE _____ (STUDENT'S INITIALS)

## ENROLLMENT AGREEMENT

**The Student Understands:**

1. The School will evaluate postsecondary education completed at another school and/or prior vocational/occupational institution, including military training. I will be given appropriate credit if, at the sole discretion of The School, such education meets The School's standards for transfer of credit.
2. This School does not guarantee job placement to graduates upon program/course completion or upon graduation, and does not guarantee a salary or salary range to graduates.
3. The School will not be responsible for any statement of policy, placement assistance activities, curriculum or facility that does not appear in The School catalog or in this Enrollment Agreement.
4. The School reserves the right to discontinue my education for unsatisfactory progress or failure to abide by School rules as stated in The School catalog or in this Enrollment Agreement.
5. **This Enrollment Agreement is not binding until accepted in writing by all parties.**
6. If I receive any loan through the federal financial aid programs, I understand that if I fail to repay the loan in accordance with the terms under which it was provided, my income tax refund could be taken away and I may be unable to get other financial aid or government housing assistance until I pay off such loan.
7. If I am unable to pay my tuition in full on or before the start date of the period for which I have been charged, either through federal financial aid, third-party private loans or other means, I understand that I may arrange to participate in a cash payment plan with The School for the balance. The terms of such payment plan, and whether I qualify for such a plan, will be disclosed in the cash payment plan documentation provided to me upon my application for such plan. The terms of any other financing (federal financial aid or third party loans), and whether I qualify for such financing, will be disclosed to me as required by law or by the lender thereunder. I understand that third parties who may make private loans to me to finance my education may subsequently sell such loans and related receivables to The School or to an affiliate of The School.
8. I understand and agree that repaying any financial obligations related to my education at The School is my responsibility, and that my failure to repay my financial obligation as agreed could have a direct, adverse impact on The School's operations, including without limitation, the ability of the School to make financial assistance available to other students and the ability of other students to obtain financial assistance for their education from other sources, including federal financial aid programs. I

further understand and agree that if I fail to comply with the terms of any financial assistance made available to me through The School or any other source or any cash payment plan offered to me, in addition to any other remedies available to The School by contract or under law, The School may take action with respect to my continued enrollment, up to and including suspension or termination of my enrollment.

- The School further reserves the right to change instructors, textbooks, course curricula, accreditation, schedules, prerequisites and requirements, or cancel a course or program for which there is insufficient enrollment. The School will provide me a full refund for courses or programs that I have enrolled in and which are cancelled. Should the start date as indicated in this Enrollment Agreement change, I will be given the opportunity to negotiate a new Enrollment Agreement, and this Enrollment Agreement shall be null and void.

0. The School does not guarantee the transferability of credits to any school, university or institution. I acknowledge that it is my sole responsibility to contact a receiving institution regarding any possible transfer of credit from The School prior to enrollment.
1. Any holder of a consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant to or with the proceeds thereof. Recovery by the debtor shall not exceed amounts paid by the debtor. (FTC Rule effective 5/14/76)
2. The applicant may cancel this Enrollment Agreement and receive a full refund of all monies paid to date if cancellation is made in writing to The School and mailed/delivered at the address stated herein within five (5) business days after the first day of class attended by the student.
3. The School reserves the right to verify all graduate employment information.
4. I acknowledge and consent to the sale/transfer of this Enrollment Agreement or any note or other receivable obligation to a third party for collection if deemed desirable by The School.
5. I expressly consent to The School, or its affiliates, using prerecorded/artificial voice messages, text messages and/or automatic dialing equipment to contact me, as the law allows. In doing so, I agree that such party may use any telephone number I provide to The School or that The School gets from another source, even if the number is for a mobile telephone and/or using the number results in charges to me. I authorize The School and any affiliate or subsequent assignee, from time to time, to collect and disclose my personal and credit information from and to credit reporting agencies, credit bureaus, financial institutions, my creditors, and my employer.
16. Do not sign this Enrollment Agreement before you read it or if it contains any blank spaces.

| Campus | Address |
|---|---|
| ALHAMBRA CAMPUS | 2215 W. Mission Road, Alhambra, CA 91803, Phone: (626) 979-4940. Fax: (626) 979-4960 |
| ANAHEIM CAMPUS | 511 North Brookhurst, Ste. 300, Anaheim, CA 92801, Phone: (714) 953-6500, Fax: (714) 953-4163 |
| CITY OF INDUSTRY CAMPUS | 12801 Crossroads Parkway South, City of Industry, CA 91746, Phone: (562) 908-2500, Fax: (562) 908-7656 A Branch of WyoTech, Long Beach, CA |
| GARDENA CAMPUS | 1045 W. Redondo Beach Blvd., Suite 275, Gardena, CA 90247, Phone: (310) 527-7105, Fax: (310) 523-3766 |
| HAYWARD CAMPUS | 22336 Main Street, 1st Floor, Hayward, CA 94541, Phone: (510) 582-9500, Fax: (510) 582-9645 |
| LOS ANGELES, WILSHIRE CAMPUS | 3460 Wilshire Blvd., Ste. 500, Los Angeles, CA 90010, Phone: (213) 388-9950, Fax: (213) 388-9907 |
| ONTARIO CAMPUS | 1460 S. Milliken Avenue, Ontario, CA 91761, Phone: (909) 984-5027, Fax: (909) 988-9339 |
| ONTARIO METRO CAMPUS | 1819 S. Excise Avenue, Ontario, CA 91761, Phone: (909) 484-4311 Fax: (909) 484-1162 |
| RESEDA CAMPUS | 18040 Sherman Way, Ste. 400, Reseda, CA 91335, Phone: (818) 774-0550, Fax: (818) 774-1577 |
| SAN BERNARDINO CAMPUS | 217 E. Club Center Drive, Suite A, San Bernardino, CA 92408, Phone: (909) 777-3300, Fax: (909) 777-3313 |
| SAN FRANCISCO CAMPUS | 814 Mission Street, Ste. 500, San Francisco, CA 94103, Phone: (415) 777-2500, Fax: (415) 495-3457 |
| SAN JOSE CAMPUS | 1245 South Winchester Blvd, Ste 102, San Jose, CA 95128, Phone: (408) 246-4171, Fax: (408) 557-9874 |
| TORRANCE CAMPUS | 1231 Cabrillo Avenue, Ste. 201, Torrance, CA 90501, Phone: (310) 320-3200, Fax: (310) 320-7030 |
| WEST LOS ANGELES CAMPUS | 3000 S. Robertson Blvd., Ste. 300, Los Angeles, CA 90034, Phone: (310) 840-5777, Fax: (310) 287-2344 |

I hereby acknowledge receipt of The School catalog which contains information describing programs offered and equipment/supplies provided and which is incorporated herein by this reference. I acknowledge and agree that The School may modify, amend, or replace The School catalog or any of its terms from time to time and at any time in its sole discretion and that if The School catalog is modified, amended, or replaced, then I will be provided a copy of any modified, amended, or replacement catalog, which will be binding upon me after my receipt thereof. Also, I have carefully read and received an exact copy of this Enrollment Agreement. I understand that my enrollment may be terminated for any of the following reasons (in addition to any grounds for such termination in the catalog): if I fail to comply with The School's attendance and academic requirements; if I fail to comply with the terms of this Enrollment Agreement or any financial assistance accepted by me; or if I disrupt the normal activities of The School. While enrolled at The School, I understand that I must maintain Satisfactory Academic Progress as described in The School catalog before a credential may be awarded and that failure to maintain such progress may be cause for loss of financial assistance and/or termination of enrollment.

My signature below certifies that I have read, understood, and agreed to my rights and responsibilities in this Enrollment Agreement and The School catalog, and that The School's cancellation and refund policies have been clearly explained to me.

**Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules**

By my signature, I acknowledge that I understand that both I and The School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding, and not merely advisory. I also acknowledge that I may at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association, at no cost, from The School President.

### SIGNATURES

| SIGNATURE OF STUDENT | DATE | IF UNDER 18, SIGNATURE OF PARENT OR GUARDIAN | DATE |
|---|---|---|---|
| [signed] | 1/14/10 | | |

| SIGNATURE OF ADMISSIONS OFFICER | DATE | SIGNATURE OF ADMINISTRATIVE OFFICIAL | DATE |
|---|---|---|---|
| [signed] | 1/14/10 | [signed] O'man | 3/16/10 |

Representative's Certification: I hereby certify that _____ Tasim Cantouf _____ (student's printed name) has been interviewed by me. I further certify that there have been no verbal or written agreements or promises other than those appearing on this agreement and the Enrollment Agreement Addendum and Disclosures, which is hereby incorporated into this agreement and a part hereof by this reference.

By: [signed]    Date: 1/19/10

This agreement is a legally binding instrument when it has been signed by the student and accepted by The School as evidenced by the signature of the accepting officer and becomes operative when the student attends the first class session.

**BE SURE TO READ THE BACK OF THIS AGREEMENT SINCE IT IS PART OF YOUR CONTRACT WITH THE SCHOOL.**

3/6

**CANCELLATIONS**
The Enrollment Agreement does not constitute a contract until it has been approved by an official of The School. If the agreement is not accepted by The School, all monies paid will be refunded. A student who has not visited The School prior to enrollment may withdraw without penalty following either the regularly scheduled orientation procedures or a tour of The School and inspection of the equipment. A student has the right to cancel the Enrollment Agreement until midnight of the fifth business day following the first scheduled class session.
Cancellation will occur when the student gives a signed and dated written notice of cancellation to the Director of Admissions or President at the address shown on the front of this agreement. The written notice of cancellation need not take any particular form, and, however expressed, is effective if signed and dated by the student and if it states that the student no longer wishes to be bound by the Enrollment Agreement. A notice of cancellation may be given by mail, hand delivery or telegram. The notice of cancellation, if sent by mail, is effective when deposited in the mail, properly addressed, with postage prepaid.

**OFFICIAL WITHDRAWALS**
A student has the right to withdraw at any time. An official withdrawal must be documented in writing. An official withdrawal is considered to have occurred on the earlier of a) the date that the student provides to The School official notification of his or her intent to withdraw or b) the date that the student begins the withdrawal process. Students who must withdraw from The School are requested to notify the office of the Academic Dean/Director of Education by telephone, in person, or in writing, to provide official notification of their intent to withdraw. Students will be asked to provide the official date of withdrawal and the reason for withdrawal in writing at the time of official notification. When the student begins the process of withdrawal, the student or the office of the Academic Dean/Director of Education will complete the necessary form(s).
Quarter-Based Programs: After the cancellation period, students in quarter-based programs who officially withdraw from The School prior to the end of The School's official add/drop period will be dropped from enrollment, and all monies paid will be refunded.
Modular Programs: Although there is no add/drop period in modular programs, for students who officially withdraw within the first five class days (or for weekend classes within seven calendar days from the date they started class, including the day they started class), all monies paid will be refunded.

**REFUND POLICIES**
This School is certified by the U.S. Department of Education as an eligible participant in the Federal Student Financial Aid (SFA) programs established under the Higher Education Act of 1965 (HEA), as amended (Title IV programs).
When a student withdraws, The School must complete both a "Return to Title IV" and a refund calculation.
- First, if the student is a Title IV recipient, The School must determine how much federal grant and loan assistance the student has earned under the Federal Return of Title IV Funds Policy. If the student (or parent, in the case of a PLUS Loan) is eligible for additional funds at the time of withdrawal, the student may receive additional SFA funds. If the student received more SFA funds than he or she earned under the Federal Return of Title IV Funds policy, The School, and in some cases the student, is required to return the unearned funds to the Federal program(s) or lender, as applicable. The federal Return to Title IV policy is explained below.
- Second, The School must determine how much of the tuition and fees it is eligible to retain using the applicable refund policies. A refund will be calculated on the basis of the institutional refund policy and any applicable state refund policies. If a state or accrediting agency refund policy applies, it will be included on this agreement. (See below.)

**The student will be given the benefit of the refund policy that results in the largest refund to the student.**
Any unpaid balance of tuition and fees that remains after calculating the refund and applying the amount of SFA funds earned based on the Federal Return of Title IV Funds policy must be paid by the student to The School.
The refund calculation will be based on the date of withdrawal. Any monies due the applicant or student will be refunded within 30 days of the date of cancellation, termination, or determination of withdrawal. If a student received a loan for tuition, a refund will be made to the lender to reduce the student's loan debt. If the amount of refund exceeds the unpaid balance of the loan, the balance of funds will then be applied in the following order:
1. to pay authorized charges at the institution;
2. with the student's permission, applied to reduce the student's Title IV loan debt (not limited to the student's loan debt for the period of enrollment);
3. returned to the student.

In cases of prolonged illness or accident, death in the family, or other circumstances that make it impractical to complete the program, The School will make a settlement that is reasonable and fair to both parties.

**Date of Withdrawal versus Date of Determination (DOD)**
The date of withdrawal for purposes of calculating a refund is the student's last date of attendance. The date of determination, from which The School has 30 days to issue a refund, is the earlier of the date the student officially withdraws or the date The School determines the student has violated an academic standard. For example, when a student is withdrawn for violating an academic rule, the date of the student's withdrawal shall be the student's last date of attendance. The date of determination shall be the date The School determines the student has violated the academic rule, if the student has not filed an appeal. If the student files an appeal and the appeal is denied, the date of determination is the date the appeal is denied. If the student ceases attendance without providing official notification, the DOD shall be no more than 14 days from the student's last date of attendance.

**Effect of Leaves of Absence on Refunds**
If a student does not return from an approved leave of absence (where applicable) on the date indicated on the written request, the refund will be made within 30 days from the date the student was scheduled to return (DOD), but the refund calculation will be based on the student's last date of attendance.

**Textbook and Equipment Return/Refund Policy**
If a student who was charged for and paid for textbooks, uniforms, or equipment, returns unmarked textbooks, unworn uniforms, or new equipment within 30 days following the date of the student's cancellation, termination, or withdrawal, the institution shall refund the charge for the textbooks, uniforms, or equipment paid by the student. Uniforms that have been worn cannot be returned because of health and sanitary reasons. If the student fails to return unmarked textbooks, unworn uniforms or new equipment within 30 days following the date of the student's cancellation, termination, or withdrawal, the institution may retain the cost of the items that have been paid by the student. The student may then retain the equipment without further financial obligation to The School.

FA-CA-MAIN (09-0506)

4

**Federal Return of Title IV Funds Policy**
The Financial Aid Office is required by federal statute to determine how much financial aid was earned by students who withdraw, drop out, are dismissed, or take a leave of absence prior to completing 60% of a payment period or term.
For a student who withdraws after the 60% point-in-time, there are no unearned funds. However, a school must still complete a Return calculation in order to determine whether the student is eligible for a post-withdrawal disbursement.
The calculation is based on the percentage of earned aid using the following Federal Return of Title IV funds formula:
Percentage of payment period or term completed = the number of days completed up to the withdrawal date divided by the total days in the payment period or term. (Any break of five days or more is not counted as part of the days in the term.) This percentage is also the percentage of earned aid.
Funds are returned to the appropriate federal program based on the percentage of unearned aid using the following formula:
Aid to be returned = (100% of the aid that could be disbursed minus the percentage of earned aid) multiplied by the total amount of aid that could have been disbursed during the payment period or term.
If a student earned less aid than was disbursed, the institution would be required to return a portion of the funds and the student would be required to return a portion of the funds. Keep in mind that when Title IV funds are returned, the student borrower may owe a debit balance to the institution.
If a student earned more aid than was disbursed to him/her, the institution would owe the student a post-withdrawal disbursement which must be paid within 120 days of the student's withdrawal.
The institution must return the amount of Title IV funds for which it is responsible no later than 45 days after the date of the determination of the date of the student's withdrawal unless state policy indicates a shorter time frame (see state refund policy, if applicable).
Refunds are allocated in the following order:
1. Unsubsidized Federal Stafford Loans
2. Subsidized Federal Stafford Loans
3. Unsubsidized Direct Stafford Loans (other than PLUS loans)
4. Subsidized Direct Stafford Loans
5. Federal Perkins Loans
6. Federal PLUS Loans
7. Direct PLUS Loans
8. Federal Pell Grants for which a return of funds is required
9. Academic Competitiveness Grants for which a return of funds is required
10. National Smart Grants for which a return of funds is required
11. Federal Supplemental Educational Opportunity Grants (FSEOG) for which a return of funds is required

**Return of Unearned SFA Program Funds**
The School must return the lesser of:
- The amount of SFA program funds that the student did not earn; or
- The amount of institutional costs that the student incurred for the payment period or period of enrollment multiplied by the percentage of funds that were not earned.

The student (or parent, if a Federal PLUS loan) must return or repay, as appropriate, the amount by which the original overpayment amount exceeds 50% of the total grant funds received by the student for the payment period or period of enrollment, if the grant overpayment is greater than $50.
(Note: If the student cannot repay the grant overpayment in full, the student must make satisfactory arrangements with the U.S. Department of Education to repay any outstanding grant balances. The Student Financial Aid Department will be available to advise the student in the event that a student repayment obligation exists. The individual will be ineligible to receive additional student financial assistance in the future if the financial obligation(s) are not satisfied.)

## CALIFORNIA BUYER'S RIGHT TO CANCEL

(a) The student shall have the right to cancel an agreement for a program of instruction including any equipment, until midnight of the fifth business day after the day on which the student did any of the following:
   (A) Attended the first class of the program of instruction that is the subject of the agreement or received the first lesson in a home study or correspondence course.
   (B) Received a copy of the notice of cancellation as provided in Section 94868.
   (C) Received a copy of the agreement and the disclosures as required by subdivision (a) of Section 94859, whichever is later.
(b) Cancellation shall occur when the student gives written notice of cancellation to the institution at the address specified in the agreement.
(c) The written notice of cancellation, if given by mail, is effective when deposited in the mail properly addressed with postage prepaid.
(d) The written notice of cancellation need not take a particular form and, however expressed, is effective if it indicates the student's desire not to be bound by the agreement.
(e) Except as provided in subdivision (f), if the student cancels the agreement, the student shall have no liability, and the institution shall refund any consideration paid by the student within 10 days after the institution receives notice of the cancellation.
(f) If the institution gave the student any equipment, the student shall return the equipment within 10 days following the date of the Notice of Cancellation. If the student fails to return the equipment

within this 10 day-period, the institution may retain that portion of the consideration paid by the student equal to the documented cost to the institution of the equipment and shall refund the portion of the consideration exceeding the documented cost to the institution of the equipment within 10 days after the period within which the student is required to return the equipment. The student may retain the equipment without further obligation to pay for it.

## REFUNDS

In addition to the return to Title IV, The School will calculate the refund due under either the modular or the quarter-based refund policy, depending on whether a student is enrolled in a modular or quarter-based program.

## CALIFORNIA REFUND POLICY

**California Modular Program Refund Policy**
The School will earn tuition on a pro rata basis. Refunds will be calculated as follows: For students enrolled in modular programs the refund is based on the total hours completed in the program using the following steps.
1. Determine the total tuition for the program.
2. Divide this figure by the total number of hours in the program.
3. The answer to the calculation in step (2) is the hourly charge for instruction.
4. The amount owed by the student for the purposes of calculating a refund is derived by multiplying the total hours attended by the hourly charge of instruction and adding in any book or equipment charges.
5. The refund shall be any amount in excess of the figure derived in step (4) that was paid by the student.

**Modular Students Please Note:** Since students enrolled in modular programs are charged tuition by academic year, the charges earned and amount due under the institutional refund policy is based on the charges for the portion of the academic year completed.

**Sample Calculation**
A student enrolls in a 720 clock hour program at a total tuition cost of $8,500. The student drops from school after attending 300 hours of the program and has paid $4,000 toward tuition. The student has also paid $250 for books and equipment that were not returned for a total of $4,250.
1. The total tuition is $8,500 for 720 hours of instruction.
2. The total tuition divided by the total hours in the program equals the cost per hour of instruction.
3. $8,500 divided by 720 equals $11.80, which is the cost per hour of instruction.
4. The student owes $3,540 (300 hours multiplied by $11.80, the cost per hour) plus $250 for books and equipment ($3,790 total).
5. Since $4,250 was paid on the account, $460 will be refunded ($4,250 minus $3,790).

**California Quarter-based Program Refund Calculation**
The School will perform a pro rata refund calculation for students who terminate their training before completing the period of enrollment. Under a pro rata refund calculation, The School is entitled to retain only the percentage of charges (tuition, fees, room, board, etc.) proportional to the period of enrollment completed by the student. The period of enrollment completed by the student is calculated by dividing the total number of weeks in the period of enrollment into the number of weeks completed in that period (as of the withdrawal date). The percentage of weeks attended is rounded up to the nearest 10 percent and multiplied by the school charges for the period of enrollment. A reasonable administrative fee not to exceed $75 or 5% of the total institutional charges, whichever is less, will be excluded from total charges used to calculate the pro rata refund.

## STUDENTS CALLED TO ACTIVE MILITARY DUTY

**Newly Admitted Students**
Students who are newly admitted to the school and are called to active military duty prior to the first day of class in their first term/module shall receive a full refund of all tuition and fees paid. Textbook and equipment charges shall be refunded to the student upon return of the textbooks/unused equipment to the school.

**Continuing Students**
Continuing students called to active military duty are entitled to the following:
- If tuition and fees are collected in advance of the withdrawal, a strict pro rata refund of any tuition, fees, or other charges paid by the student for the program and a cancellation of any unpaid tuition, fees, or other charges owed by the student for the portion of the program the student does not complete following withdrawal for active military service ("WZ")

Note: The pro rata refund will be calculated as follows:
The total number of scheduled classroom hours up to and including the student's LDA divided by the total number of classroom hours in the program.

## REQUIREMENTS FOR GRADUATION

A student must:
1. Successfully complete the program with a 2.0 (70%) cumulative grade point average within the maximum time frame for completion as stated in The School catalog.
2. Successfully complete all externship hours (if applicable).
3. Meet any additional program specific requirements as stated in The School catalog.

## SEVERABILITY

If any provision or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

## MISCELLANEOUS

Nothing in this Enrollment Agreement shall be construed to be a restriction of venue.

BE SURE TO READ THE FRONT OF THIS AGREEMENT SINCE IT IS PART OF YOUR CONTRACT WITH THE SCHOOL.

# Enrollment Agreement Addendum & Disclosures

Please take your time while you read the following information regarding your education program. Please ask as many questions as you like. Do not sign until you fully understand and agree with each paragraph. Put your initials at the end of each paragraph indicating your understanding of, and agreement with, each item. When you have finished reading the entire form, please sign your name in the space provided.

**PLACEMENT**
This School will provide assistance to students, upon graduation, in their search for employment. The School will offer placement assistance in the form of resume development, interview preparation and other job search skills to help me achieve my career goals. **However, the School does not guarantee employment, and no guarantee of employment has been made to me by any employee of the School.** I understand that poor attendance, poor grades and inability to provide the Career Services department with the necessary requirements to help me in my job search can impact my ability to obtain employment.
INITIALS: _____

**SALARIES**
Salary information is provided for general informational purposes only. I understand that such salary statistics are estimated, and can vary by employer, geographic location, my qualifications and characteristics and actual job responsibilities. No employee of the School has guaranteed I will earn a specific salary or salary range upon graduation.
INITIALS: _____

**FINANCIAL AID**
I understand that financial aid may be available, but that it is not guaranteed and that I must qualify in order to be eligible. If financial aid is awarded, I agree that the amount or amounts disbursed to the School on my behalf are to be applied upon receipt to my outstanding tuition balance. As with any accredited School, student loans and/or Pell grants are made available depending upon financial information provided by the applicant. No employee of the School has guaranteed I will receive a grant or a loan. If I receive a loan, I understand that I will be responsible for repaying the loan and that I will only receive the balance of any refunds or settlements after all my loan obligations are fully satisfied.
INITIALS: _____

**NOTICE CONCERNING TRANSFERABILITY OF UNITS AND DEGREES EARNED AT OUR SCHOOL**
As with any accredited school, the transferability of credits to another institution is determined exclusively by each receiving institution. Units I earn in my programs, in most cases, will probably not be transferable to any other college or university. For example, if I entered the School as a freshman, I will likely still be a freshman if I enter another college or university at some time in the future, even though I earned units here at our School. In addition, if I earn a degree, diploma or certificate in one of the programs offered by this School, in most cases, it will probably not serve as a basis for obtaining a higher level degree at another college or university. I acknowledge that it has not been guaranteed or implied by any employee of the School that my credits, diploma or degree will be transferable to another institution.
INITIALS: _____

**CURRICULUM CHANGES**
As career training programs are modified and updated to meet the needs of the students and community, the School may need to change, modify or terminate courses, or instructors or accreditation. No employee of the School has told me that the courses, instructors or accreditation will not be changed or modified while I am attending School.
INITIALS: _____

**SCHOOL CATALOG**
I understand that the School catalog contains the terms and conditions, attendance policies, grievance and complaint procedures, and program completion and graduation requirements pertaining to my educational program at this institution. I acknowledge that I have received a School catalog, I have read it, and agree to be bound by its contents.
INITIALS: _____

**CAMPUS TOUR AND ORIENTATION**
I acknowledge that I have received a tour of the campus and its facilities, and have been sufficiently and satisfactorily oriented to the School, its equipment, services, staff and faculty and all my questions have been answered to my satisfaction.
INITIALS: _____

**HEPATITIS B WAIVER**
I understand that due to occupational exposure to blood and/or other potentially infectious materials I may be at risk of acquiring diseases such as the Hepatitis B viral (HBV) infection. As a student I am encouraged to receive the Hepatitis "B" immunization series. I further acknowledge that receipt of the Hepatitis "B" immunization will be at my expense and that the School does not administer or reimburse for the Hepatitis "B" immunization. I understand that by not getting the Hepatitis B vaccination I am at greater risk of acquiring the HBV infection. No School representative has told me anything to the contrary.  INITIALS: ___

**REQUIREMENTS FOR CERTIFICATION AND LICENSING – MEDICAL BACKGROUND CHECKS**
I understand that upon graduation, I may be required to obtain licensure or certification in order to obtain employment in my chosen field. Medical background clearances may be part of the licensing procedure and externship requirements for allied health programs. The regulation of allied health certification and licensing requirements are governed by individual state codes. Medical conditions such as Hepatitis A, B, C, TB (tuberculosis), HIV/AIDS and related conditions may prevent me from obtaining a license or externship. This limitation is due to background checks, facility requirements, and city, county or state licensing standards. I am encouraged to learn the licensing and certification requirements for my program of study. I understand that I am ultimately responsible for knowing specific regulations in the city, county or state in which I plan to work. In addition, there may be a testing or licensing fee that I may be responsible for paying. I am aware that without a license in some allied health fields (e.g., Massage Therapy), I may not be employable. No School employee has guaranteed my eligibility for any certification or licensure.  INITIALS: ___

**DENTAL ASSISTING TRAINING**
I am aware that in some states I must become a Registered Dental Assistant (RDA) or Certified Dental Assistant (CDA) prior to working in the field. I have not been promised by any School employee that my program renders me eligible to sit for the RDA or CDA examinations, or eligible for any license. The regulations and requirements for Dental Assisting students to obtain a Radiography License and Coronal Polish, and other expanded functions are governed by individual state codes. I understand that I am responsible for obtaining this licensing information for the state in which I intend to work.  INITIALS: ___

**ALLIED HEALTH TRAINING**
The allied health programs, such as massage therapy and medical assisting, include training and practice of various techniques on the bodies of fellow classmates and others. The practice will include activities such as injections, blood withdrawals and appropriate disrobing to provide access to the individual body part on which training will occur. A private changing area designed for disrobing is available. I will participate in this training as a student and have no health issues which would prevent or affect fellow students from or when training on me. *I understand and assume the risks involved in such training.* Student practitioners, patients and clients are expected to learn, and are required to adhere to all professional practices at all times during the performance of training on fellow students and others. No School employee has told me anything to the contrary.  INITIALS: ___

**PHARMACY TECHNICIAN TRAINING**
The requirements for obtaining employment in the Pharmacy Technician industry are highly regulated and can vary by state. I understand that a failed medical or criminal background check may affect employability by some employers and my ability to become licensed or registered as a Pharmacy Technician. I understand that a background check failure may prohibit me from completing the pharmacy program externship, which in turn, will prevent me from completing the training program. Depending on state requirements, a failed background check may or may not impact my eligibility to sit for the Pharmacy Technician Certification Board National Exam. No School representative has promised or told me anything to the contrary.  INITIALS: ___

**ADDITIONAL TRAINING DISCLOSURE**
I understand that some industries may require additional training, even after completion of my program at this School. Certain cities, counties, states and employers may have specific regulations for employment including a minimum number of training hours and successful completion of a written and or practical exam. This might impact the availability of externship and employment positions. No School representative has told me anything to the contrary.  INITIALS: ___

**DISABILITY SERVICES**
The School might be required to provide reasonable accommodations should a student require them. I understand that to facilitate receipt of these accommodations, I must complete a Disability Services Request Form, which will be provided to me by the School upon request.  INITIALS: ___

**DRUG AND ALCOHOL ABUSE & CODE OF CONDUCT POLICIES**
I acknowledge that I have received, and agree to abide by, the School's policy on drug and alcohol use. I also acknowledge that I have reviewed the information on drug and alcohol abuse prevention included in the catalog. I acknowledge receipt of the School's Code of Conduct Policy included in the catalog. I have read and understand the policy, and agree to abide by its terms and conditions.    INITIALS: ___

**CREDENTIAL AWARDED**
The School's catalog outlines the type of graduation confirmation I will receive (i.e., degree, diploma or certificate). I have explored the different credentials offered by Everest Institute, Everest College and Everest University and I understand the credential I will receive based upon my enrollment. No employee of the School has stated I will receive a confirmation of graduation different from that described in the School catalog.    INITIALS: ___

**SATISFACTORY ACADEMIC PROGRESS**
I understand that I must maintain Satisfactory Academic Progress as defined by the School catalog. I also understand that failure to maintain Satisfactory Academic Progress may result in probation, suspension or dismissal, and may impact my eligibility for financial aid and cause me to incur payback obligations.    INITIALS: ___

**EXTERNSHIP/CLINICALS**
Externship/clinical sites are not restricted to regular business hours and may require distant travel, different shifts or weekend work to allow for completion of required clinical hours. Requests for particular scheduling or locations will not be accommodated. If a medical facility or hospital requires employees to have drug screening prior to hire, I may also need to satisfactorily pass any background check requirements that may be necessary to participate in the externship/clinical.    INITIALS: ___

**COMPLETION AND PLACEMENT RATES**
I acknowledge that I have been notified that I may request completion/graduation rate information for this School. If I have been provided job placement rate information by the School, I acknowledge and agree that no School employee has provided different information to me verbally. No School representative has made any guarantees to me related to completion and/or placement.    INITIALS: ___

**SEX OFFENDER REGISTRY & CAMPUS SECURITY REPORT**
In compliance with federal law, I acknowledge that I have been provided the website address for this School's local sex-offender registry included in the catalog. I have been informed of the availability of the campus security report for this School, and how to obtain a copy of it. If applicable, I certify I have made the proper disclosures and registrations related to past proceedings involving me.    INITIALS: ___

**FIELD TRIP LIABILITY WAIVER**
In attending a course field trip, I hereby release the School, including all its subdivisions, instructors, employees and agents from all liability for any accidents or injuries that may arise from attending this event. I understand that the School is not acting as a common carrier for hire, and that as a student, I am responsible for my own transportation to and from the field trip location. I agree that this release not only binds myself, but also my family, heirs, assigns, administrators and executors.    INITIALS: ___

**GENERAL RELEASE OF CLAIMS**
I hereby release and hold this School harmless from and against any and all claims of any kind whatsoever, including allegations related to needle sticks, allied health and automotive practice and techniques, slips and falls and quality of equipment and instruction, (collectively, "Claims"), against the School (including its present and former parent companies, insurers, representatives and all persons acting by or through them), which I may have for any reason arising out of or relating to my education. I am aware of the risks involved with my education and knowingly assume those risks following my investigation into possible injuries and the nature and quality of my education. I further agree that if I bring any Claim against the School, I shall reimburse the School for its attorney's fees and costs incurred as a result thereof. **I may opt out of this general release of Claims provision by delivering a written statement to that effect received by the School within 30 days of my first execution of an Enrollment Agreement with the School.**    INITIALS: ___

**BACKGROUND CHECK DISCLOSURE**
I understand that a background check and clearance may be required for externship/clinical site placement and employment in the field for which I am training. Should I desire to complete my externship/clinical or become employed at a hospital or any medical facility requiring a background check, I authorize the School to conduct, via a third party, a background check. I hereby give my permission for the background check clearance to be shared with hospital externship sites where I may be placed, and the results of the background check will be maintained in my student file. I understand that clearance will not be obtained if my background check identifies a conviction, pending case or uncompleted deferral/diversion for crimes committed within the last seven years. I have the right to dispute the information reported. Upon written request, I am entitled to a complete accurate disclosure of the investigation's nature and scope, as well as a written summary of my rights and remedies under the law.

To obtain employment in the security, justice or legal fields, I may be required to submit the following to a prospective employer: either a criminal history check from the Police department or Sheriff's office in the jurisdiction where I reside or an FBI background report. I understand that employers in many public safety organizations, such as law enforcement agencies, fire and rescue services, government security offices, as well as other employers, may require applicants to undergo a series of applicant screening processes that may include a background investigation, physical agility test and/or psychological examination. Students who have a confirmed background of drug abuse, poor credit, arrests or convictions for domestic violence, felonies or other crimes, or who have association with extremist groups and/or terrorists, street gangs or known felons, may face difficulty finding employment, and may not be eligible for employment in certain career positions.

I understand that if I am convicted of crimes of violence, drug-related crimes or felonies while enrolled at the School, I may become ineligible for certain externship, clinical or career positions in the field for which I am in training and for government financial aid. I acknowledge that I will remain responsible for any and all financial obligations to the School. No School employee has told me anything contrary to the foregoing.    INITIALS: ____

**MESSAGING AND CREDIT REPORTING DISCLOSURE**
I expressly consent to The School, or its affiliates, using prerecorded/artificial voice messages, text messages and/or automatic dialing equipment to contact me, as the law allows. In doing so, I agree that such party may use any telephone number I provide to The School or that The School gets from another source, even if the number is for a mobile telephone and/or using the number results in charges to me. I authorize The School and any affiliate or subsequent assignee, from time to time, to collect and disclose my personal and credit information from and to credit reporting agencies, credit bureaus, financial institutions, my creditors, and my employer.    INITIALS: ____

**PREGNANCY DISCLOSURE**
School programs may teach skills involving invasive procedures that may expose students to pathogens that could be harmful to an unborn child. In addition, I may find that my program requires substantial physical demands (patient lifting, moving, etc.). I am aware that I will be expected to participate in all lab courses required to complete my training, and this requirement will not be waived due to my pregnancy. I also understand that I will need a doctor's release in order to participate in the lab sessions, both during my pregnancy and upon returning to School after delivery of the baby. No School representative has told me anything to the contrary.    INITIALS: ____

**STATEMENT OF GENERAL HEALTH**
In accordance with regulatory requirements, students seeking enrollment in an allied health program must submit a statement of general health. Under applicable federal and state laws, the School does not discriminate against age, sex, or health status. However, I am advised that many programs (especially allied health) have specific physical, cognitive, and/or other technical standards of performance that I will need to complete as part of my training. These standards may include, but are not limited to, manual dexterity, physical strength, auditory ability, visual acuity, communication clarity, reading comprehension, critical thinking acumen, decision-making ability, and emotional stability. I hereby attest that I am in good general health to meet the program requirements of the technical performance standards for my chosen program. No School employee has told me anything to the contrary.    INITIALS: ____

**AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL**
I agree that any dispute arising from my enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Consumer Rules.    INITIALS: ____

06-01-'15 15:55 FROM- LMV I AFFORDABLE LP    951-674-6075    T-740  P0012/0026 F-726

**Terms of Arbitration**

1. Both I and the School irrevocably agree that any dispute between us shall be submitted to Arbitration.
2. Neither I nor the School shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement. Both I and the School agree that filing a court action will cause damage to the other party. We agree that an appropriate measure of this damage includes the costs and attorney's fees actually incurred in compelling arbitration. Such damages shall be paid by the party who has filed an action in court within 30 days of the court's order compelling arbitration.
3. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by the School, to the extent that these fees are greater than the applicable Court filing fee. The School shall not be solely responsible for arbitration costs beyond those for an individual student's claim.
4. I agree not to combine or consolidate any Claims with those of other students, such as in a class or mass action. I may opt out of this no-consolidation provision by delivering a written statement to that effect received by the School within 30 days of my first execution of an Enrollment Agreement with the School.    INITIALS: ___

   This does not apply to Washington State residents.
5. Any remedy available from a court under the law shall be available in the arbitration.    INITIALS: ___
6. Nothing in this Agreement prohibits me from filing a complaint with the state regulatory agency.

**Procedure for Filing an Arbitration**

1. I am strongly encouraged, but not required, to utilize the Grievance Procedure described in the Catalog, prior to filing an Arbitration.
2. If I desire to file an Arbitration, I should first contact the School's President, who will provide me with a copy of the AAA Consumer Rules. If I desire to file an Arbitration, I should then contact the AAA which will provide the appropriate forms and detailed instructions. I should bring this document to AAA.
3. I may, but need not be, represented by an attorney at the arbitration.

**ACKNOWLEDGMENT OF WAIVER OF JURY TRIAL AND AVAILABILITY OF AAA RULES**

By my signature, I acknowledge that I understand that both I and the School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding and not merely advisory.    INITIALS: ___

**ENTIRE AGREEMENT & SEVERABILITY**

The Enrollment Agreement, this Addendum & Disclosure document and the School Catalog constitute my entire agreement with the School and supercede all prior written and oral statements to me. If any provision or sub-provision of this Enrollment Agreement Addendum & Disclosures document is held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.    INITIALS: ___

**MISCELLANEOUS**

Nothing in this Enrollment Agreement Addendum & Disclosures document shall be construed to be a restriction of venue.    INITIALS: ___

**SIGNATURES**

By signing my name in the space provided below, I verify that I have read, understood and agree with the statements and agreements contained in this Enrollment Agreement Addendum & Disclosures form. I acknowledge that the School is relying on my agreements and representations when considering my admission. I will be bound by my agreements and representations.

_____    Tasha Cartwright    1-14-10
SIGNATURE OF STUDENT         PRINTED NAME OF STUDENT    DATE

_____    _____    3-16-10
SIGNATURE OF SCHOOL REPRESENTATIVE    PRINTED NAME OF SCHOOL REPRESENTATIVE    DATE