**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CORINTHIAN COLLEGES, INC., *et al.*,[1] | : | Case No. 15-10952 (KJC) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | **Hearing Date: June 23, 2015 at 11:00 a.m. (EDT)** |
|  | : | **Objections Due:  June 16, 2015 at 4:00 p.m.  (EDT)** |
|  | : | **Related to Docket No. 171** |
|  | : |  |

**LIMITED OBJECTION OF WATT MANAGEMENT COMPANY TO THE DEBTORS'
SECOND MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS
TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL
PROPERTY EFFECTIVE *NUNC PRO TUNC* TO THE DATE THAT THE DEBTORS
SURRENDER POSSESSION; (II) APPROVING THE ABANDONMENT OF ANY
PERSONAL PROPERTY REMAINING AT THE LEASE LOCATIONS; AND (III)
<u>GRANTING CERTAIN RELATED RELIEF</u>**

TO THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY JUDGE:

Watt Management Company, as agent for Watt Long Beach, LLC (collectively, the

"<u>Landlord</u>") hereby files this limited objection (the "<u>Objection</u>") to the Debtors' Second Motion

for Entry of an Order (I) Authorizing the Debtors to Reject Certain Unexpired Leases of

Nonresidential Real Property Effective *Nunc Pro Tunc* to the Date That the Debtors Surrender

Possession; (II) Approving the Abandonment of any Personal Property Remaining at the Lease

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

Locations; and (III) Granting Certain Related Relief (the "Rejection Motion"),[2] and respectfully represents as follows:

## I.   BACKGROUND FACTS

1.      Corinthian Colleges, Inc., and its affiliated co-debtors (collectively, the "Debtors") filed their voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on May 4, 2015.  The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2.      The Debtors lease commercial space (the "Premises") from the Landlords where they operated one of their college campuses known as a Wyotech Location, pursuant to an unexpired lease of nonresidential real property dated May 9, 2003 (the "Lease"), which Premises is known as 2161-2181 Technology Place, Long Beach, California.  The Premises consists of an industrial building of approximately 42,712 square feet, and a parking lot containing approximately 94,362 square feet.

3.      The Debtors and Landlord are party to a second lease for space that adjoins the Premises, which lease is not the subject of the Rejection Motion.

4.      The Debtors filed the Rejection Motion on May 21, 2015. The Landlord does not object to the rejection of the Lease, provided the effective date is not before the date that Landlord received the keys to the Premises, May 26, 2015.  In addition, Landlord is concerned with the property that may remain at the Premises, including property belonging to third parties and potentially toxic or hazardous materials.  Finally, any property that is abandoned at the

---

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Rejection Motion.

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

Premises, should be abandoned such that Landlord can dispose of same without further notice or liability to any other parties.

## II.   <u>ARGUMENT</u>

**A.   The effective date of any lease rejection cannot occur until the Premises is properly turned over to the Landlord.**

5.     The Debtors seek to reject the Leases *nunc pro tunc* to the date set forth in the Rejection Motion.  Landlord does not oppose rejection, but the effective date of rejection cannot precede the date that Landlord receives the keys and possession of the Premises.

6.     In order for Debtors to properly turn over the Premises, Debtors must turn over all keys and alarm codes to Landlord, and all inventory, furnishings, fixtures and equipment ("<u>FF&E</u>") and signs must be removed, along with written confirmation that Debtors have vacated the Premises to Landlord, which written confirmation should include information necessary to effect the transfer utilities to the Landlord, as well as any other information to facilitate transition of the Premises.  If the rejection is effective prior to the removal of all property, or the date that such property is abandoned free and clear to Landlord, Landlord is placed in the position of involuntarily providing free storage to Debtors or some third party claiming an interest in such property.  Landlord did not receive the keys and the letter indicating surrender of the Premises until May 26, 2015, and such date is the earliest date that rejection can be effective.

7.     Finally, should a party other than Landlord object to the rejection of the Lease, the effective date of rejection must be the later of the turnover date (as set forth above), and the date that the Court enters an order authorizing rejection of the Lease.  This is consistent with Section 365 and protects the rights of Landlord in the event a delay occurs through no fault of its own. Rejection of a lease is generally not effective until it is so ordered by the Bankruptcy Court. Until the entry of the rejection order, a debtor is obligated to pay the full amount of rent specified

in the lease, and otherwise perform all obligations.  *See* In re Thinking Machines Corp., 67 F.3d 1021, 1025-1028 (1st Cir. 1995) (reversing judgment of District Court setting rejection date as of the motion filing date); In re Federated Department Stores, Inc., 131 B.R. 808, 815 (S.D. Ohio 1991) (reversing bankruptcy court's approval of retroactive rejection as requested by debtor); In re Arizona Appetito's Stores, Inc., 893 F.2d 216 (9th Cir. 1990); In re Worth's Stores, Corp., 130 B.R. 531 (Bankr. E.D. Mo. 1991); In re Paul Harris Stores, Inc., et al., 148 B.R. 307 (S.D. Ind. 1992); Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994).  Additionally, pending the resolution of such objection, Landlord cannot market or otherwise control the Premises.  In the situation of an objection by a third party, there is no reason to permit any retroactive rejection of the Lease.

**B.      The rejection order should require Debtors to remove all personal property prior to rejection, or provide that any property that remains is abandoned to Landlords free and clear of all claims and interests of Debtors and of third party claims.**

8.      The Rejection Motion does not adequately protect Landlord with respect to property that may remain at the Premises.  The abandonment of property – especially at a property as large as this – can result in significant costs to Landlord as debtors typically leave vacated spaces cluttered with inventory, supplies, and FF&E.  This burdens Landlord with the task of cleaning up the Premises, removing and/or storing remaining property, and potentially dealing with any unknown third party security interests that may exist with respect to the abandoned property.  Resolving this issue at the outset will benefit Debtors and assist in minimizing administrative rent exposure.  In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994).

9.      Landlord does not object to the abandonment of property pursuant to Section 554, so long as the order provides that upon the effective date of rejection of the Lease, the Landlord

may dispose of any remaining property without further notice, and free and clear of all liens, claims, encumbrances, interests and/or other rights of the Debtors or third parties, and without any liability to the Debtors or any third party.  Because Debtors specifically indicated that leased property belonging to third parties may be present at the Premises, any abandonment should be free and clear of the interest of any such third parties as well.  Landlord understands that Debtors have advised all parties of the time to retrieve such property, and understands that such time may have passed.  However, Landlord should not bear the risk on this issue, and Landlord must have clarity that it may dispose of any remaining property at the Premises, without exception, and without the potential of Landlord facing liability from such third parties.   If leased property remains that Landlord is not free to dispose of without liability, the effective date of rejection should not occur until such property is removed from the Premises by the Debtors or affected third party. Section 365 does not contemplate an effective rejection until the Premises is fully turned over to the Landlord, such it has complete control of the Premises (without the additional burden of storing property for a third party).

10.    Finally, in light of Debtors' curriculum at the Premises, it is possible that Debtors utilized and stored certain hazardous or toxic materials.  The Court should not permit Debtors to abandon any such toxic or hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) material, at the Premises.  The Debtors must identify and remove such hazardous materials prior to rejection.

11.    It does not serve the purposes of the Bankruptcy Code to shift the risks of damage to the Premises, storage, or other issues attendant to rejection to the Landlord.  The Debtors control the timing of the rejection of the Lease, not Landlord.  If Debtors seek to reject the Lease, Debtors must: (a) remove of all property as required by the Lease; (b) include procedures to

adequately protect Landlord's rights and interests; or (c) agree that the costs arising from removal, storage, or potential liability for dealing with third party security interests or equipment leases shall be an administrative expense of the bankruptcy estate.  The Debtors are responsible for Landlord's legitimate claims arising from the removal and disposal of such property, as well as costs associated with the restoration of the Premises to the condition required under the Lease.

12.     Any order approving rejection should clearly provide that no rejection shall take effect until all property is removed from the Premises, or that any property left at the Premises is abandoned to Landlord free and clear of all liens, claims, encumbrances, and rights of Debtors or any third party, and that Landlord may dispose of such abandoned property in its sole discretion, and without further notice or liability to Debtors or any third party.

## III.   <u>CONCLUSION</u>

In order to protect the interests of Landlord, Landlord requests the Court modify any form of rejection order to:

a.     provide that the effective date of rejection should be the date the keys and premises were received by Landlord, and after the removal of all personal property as required by the Lease;

b.     provide that any property remaining at the Premises on the effective date of rejection is abandoned to Landlord free and clear of any liens, claims and interests of any other party, so that the Landlord may dispose of such property in its discretion and without further notice or liability to Debtors or any third party;

c.     provide that Debtors shall not abandon any hazardous (as such term is defined in any federal, state or local law, rule, regulation or ordinance) material, at the Premises; and

d.     grant such other and further relief as may be just and proper.

Dated:  June 16, 2015
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Matthew G. Summers, Esquire (No. 5533)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  summersm@ballardspahr.com
           heilmanl@ballardspahr.com

        and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (SBN:  174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com

Attorneys for Watt Management Company, as
agent for Watt Long Beach, LLC