**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Corinthian Colleges, Inc., *et al.* | Case No. 15-10952 (KJC) |
| Debtors. | **Hearing Date:** June 30, 2015 at 2:00 p.m.<br>**Objections Due:** June 23, 2015 by 4:00 p.m.<br>**Extended for the U.S. Trustee** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING DEBTORS TO ENTER INTO
CONSULTING/AUCTION AGREEMENT WITH GREAT AMERICAN GLOBAL
PARTNERS, LLC AND APPROVING THE TERMS THEREOF; (II) AUTHORIZING
SALE OF ASSETS IN ACCORDANCE WITH AGREEMENT; AND (III) GRANTING
CERTAIN RELATED RELIEF (D.I. 375)**

In support of his objection (the "Objection") to Debtors' Motion For Entry Of An Order (I) Authorizing Debtors to Enter Into Consulting/Auction Agreement With Great American Global Partners, LLC and Approving The Terms Thereof; (II) Authorizing Sale of Assets In Accordance With Agreement; And (III) Granting Certain Related Relief (D.I. 375, the "Auctioneer Motion" or "Motion") [1] Andrew R. Vara, Acting United States Trustee for Region 3 (" U. S. Trustee"), by and through his undersigned counsel, states as follows:

1.      This Court has jurisdiction to hear the above-referenced Objection.

2.      Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir.

---

[1] Capitalized terms not otherwise defined should be ascribed the definition set forth in the related documents to this Objection.

1

1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to this Objection.

## I.      PRELIMINARY STATEMENT

4.      The relief sought by the Debtors in the Auctioneer Motion is not sought under the correct statutory provisions of Bankruptcy Code based on the facts and circumstances of this case. The Debtors seek to retain Great American Global Partners, LLC ("Great American") to serve as an auctioneer of the Debtors' remaining assets without seeking approval to retain Great American under Section 327 and Federal Rule of Bankruptcy Procedure 2014.   Auctioneers are one of the four specifically enumerated professionals that the trustee or debtor-in-possession must seek the court's approval under Section 327(a) before they can perform services for the estate.   The Debtors attempt to justify this departure from the Code by citing arrangements approved in a number of non-precedential orders in retail going-out-of-business sale cases.   The Debtors in these cases are far removed from that factual scenario.   Here, the Debtors have already sold or abandoned the bulk of their furniture, fixtures, and equipment, and only have property remaining at two locations.   The Debtors' remaining property here is fundamentally different from the inventory of a liquidating retailer.   Additionally, while the retail cases cited involved a competitive bidding process to become the debtors' agent in selling inventory, the Debtors here seek approval of this arrangement without having supplied sufficient evidence to substantiate their bidding process.   Because Great American will explicitly be serving as an auctioneer, the Motion does not seek relief under the proper statutory provisions, as Great American must be vetted

through the 327(a) retention process.

## II.    BACKGROUND AND FACTS

5.    The Debtors' business dates back to February 1995.   Through several acquisitions the Debtors became one of the largest for-profit post-secondary education companies in the United States and Canada. The Debtors offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, the Debtors operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees. They also offered programs online. Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions ("Nolan Declaration") at ¶ 8 (D.I. 10).

6.    On May 4, 2015, the Debtors, Corinthian Colleges, Inc. and twenty-four subsidiaries filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code in this Court, Case Nos. 15-10952 through 15-10976. The Nolan Declaration was filed contemporaneously with the petitions.   On May 13, 2015, the U.S. Trustee appointed an Official Committee of Unsecured Creditors ("OCUC").   The U.S. Trustee also appointed an Official Student Creditors' Committee ("Student Committee") on May 15, 2015.

7.    The First Meeting of Creditors pursuant to Section 341 of the Bankruptcy Code ("341 Meeting") was conducted on June 12, 2015 pursuant to Section 343 and the applicable rules of this Court.

8.    The Debtors filed the Auctioneer Motion on June 9, 2015 (D.I. 375). The Auctioneer Motion seeks to retain Great American as the Debtors' Auctioneer to facilitate the liquidation of the Debtors' Wyotech Assets, which consist of automotive, electrical, plumbing, HVAC, and healthcare related equipment.   Auctioneer Motion at ¶ 9.   Based on the Bankruptcy

Schedules and Statements of Financial Affairs, it appears that the bulk of the property is the fleet of cars owned by the Debtors and assorted tools related to the vocational training programs. The Auctioneer Motion seeks to approve a Consulting Agreement between the Debtors and Great American, through which Great American will conduct an orderly liquidation sale of the assets followed by an auction of the assets at the Wyotech locations and/or on the Internet.  *Id.* at 14. Great American expects the auction to begin on the date the Court enters the order approving the Auctioneer Motion and to last approximately sixty (60) days.[2] *Id.*

9.      The terms of the Consulting Agreement expressly contemplate Great American will be retained by the Debtors. *See* Consulting Agreement Section 2.1 ("Subject to the entry of the Approval Order, the Company hereby retains Consultant, and Consultant hereby agrees to serve, as an independent consultant to the Company in connection with the conduct of the Sale as set forth herein. With respect to the Sale, Consultant shall serve as the Company's sole and exclusive consultant relative thereto throughout the Sale Term. Consultant shall implement an orderly liquidation and auction for the liquidation of the Assets.").

10.      Title to the Wyotech Assets being "sold" does not pass to Great American, but rather Section 2.5 of the Consulting Agreement provides: "The Assets will be sold in such lots as Consultant may determine. Title to the Assets shall remain with the Company throughout the Sale Term, unless and until paid for by, and transferred to, a purchaser through the Sale." The Company is defined in the Consulting Agreement to be the Debtors.

11.      The Auctioneer Motion contemplates Great American paying the Debtors $1.535

---

[2] Pursuant to relief from the Miscellaneous Asset Sale Orders (D.I. 23 & 224), the Debtors have consolidated their property at two Wyotech Locations, Fremont and Long Beach, California.   Auctioneer Motion at ¶ 7.   The Debtors have rejected approximately forty (40) leases at the other campuses where they have sold, abandoned, or shipped property from.       Id. at ¶ 8.

million two days after entry of the order approving the Motion, and if sales exceed $1.635 million from the auction any additional proceeds shall be distributed 95% to the Debtors, and 5% to Great American.   Auctioneer Motion at ¶ 15.   Great American will also receive a buyer's premium on each transaction of 15% with an additional 3% surcharge on any assets sold online.   *Id.*

12.    The Auctioneer Motion seeks approval of the proposed arrangement, with no mechanism for further bidding.   Auctioneer Motion at ¶ 22 ("Based on the process conducted to date, and the decision of the second highest bidder not to overbid at the telephonic auction, the Debtors submit that they have maximized the value to be received for the Assets and that no further bidding process for the Assets is warranted.")

13.    The Debtors did not attach a declaration to the Auctioneer Motion to provide a factual basis for the representations they made regarding the postpetition marketing of the subject assets discussed at paragraphs 10 through 13 of the Motion.

## III.    GROUNDS/BASIS FOR RELIEF

*A. Great American is a Professional and Must be Retained Pursuant to § 327 and Compensated Pursuant to § 330*

14.    11 U.S.C. §327(a) provides that the trustee or debtor-in-possession, "with the court's approval, may employ one or more attorneys, accountants, appraisers, *auctioneers*, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (emphasis added).   An auctioneer is defined as, "A person legally authorized to sell goods or lands of other persons at public auction for a commission or fee."   BLACK'S LAW DICTIONARY (9th ed. 2009). Great American as a consultant/auctioneer must satisfy the requirements of Section 327(a) and the corresponding rules in order to be retained and

compensated under Section 330.

15.     In the present case, the Debtors seek the services of Great American to facilitate the liquidation of a substantial portion of the Debtors remaining assets, contemplating Great American as the auctioneer of the assets currently held at the Wyotech locations. Great American will be responsible for all aspects of managing the auction of the assets.  Great American will be responsible for handling proceeds of the sales of the assets and providing 95% of any funds in excess of $1.635 million to the Debtors.

16.     To qualify as an auctioneer and be retained under Section 327, Great American must: (1) submit a Section 327(a) application; (2) submit a declaration of disinterestedness pursuant to Federal Rule of Bankruptcy Procedure 2014; (3) actually be disinterested; (4) disclose its fees; and (5) have its fees subject to court approval.  The Debtors have not filed any of the above required documents, nor sought approval of the fee structure proposed in the retention. The Debtors acknowledge that Great American is going to provide services for compensation, and that a good portion of those services relate to an auction of the Debtors' property.  While the Debtors attempt to characterize Great American as a "consultant," Great American is simply an auctioneer.  Great American must be retained pursuant to Section 327(a) and thoroughly vetted in that process.  Until an application to retain Great American is made and approved by the Court, any auction is improper.  *See In re Borders Group, Inc.*, 453 B.R. 477, 485 (Bankr. S.D.N.Y. 2011) ("Applications to retain brokers, auctioneers and liquidators to conduct de minimis asset sales are commonplace it need not be an expensive or time-consuming process.").[3]

17.     The Third Circuit has previously held that equitable principles cannot be used to

---

[3] Any auction or sale of the Debtors property should also satisfy the requirements of such sales under 11 U.S.C. § 363. *See, e.g.*, *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

otherwise circumvent clear congressional intent.  *See, e.g.*, *United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994). The retention of Great American is governed by Section 327(a) and not Sections 105(a) and 363.  Courts have denied similar attempts to evade a specific portion of the Code with more general ones.  *See In re Lehman Bros. Holdings Inc.*, 508 B.R. 283 (S.D.N.Y. 2014) *motion to certify appeal denied,* No. 13 CIV. 2211 RJS, 2014 WL 3408574 (S.D.N.Y. June 30, 2014). Additionally, the Debtors' invocation of Section 105(a) is of no effect. *See*, *Law v. Siegel*, 134 S. Ct. 1188, 1195 (2014).

18.     It is a canon of statutory construction that "the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).  This canon "is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 132 S.Ct. 2065, 2071 (2012).  This canon "is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction." *Id.*  Great American is unambiguously sought to be retained as an auctioneer, and the Auctioneer Motion in its current form is defective, as Section 327(a) is the sole mechanism for retaining such professionals.

*B. The "Sale" Is Not a Real Sale as Title Never Transfers to Great American, Further Demonstrating the Auctioneer Motion Circumvents § 327(a)*

19.     The Consulting Agreement in Section 2.1 unambiguously provides for the "retention" of Great American by the Debtors. Section 2.5 further provides that Great American does not take title to the assets, but rather title remains with the Debtors until Great American sells

the assets to a third party. The structuring of the proposed transaction without title passing to Great American removes it from being any sort of valid Section 363 sale.   Instead, Great American is serving as a professional hired to liquidate assets that are the Debtors' property until Great American's efforts result in a third party taking title to the assets.

20.     The Debtors also attempt to color this proposed transaction as akin to a retail "going-out-of-business" sales approved in other cases.   However, retail "going-out-of-business" sales typically involve the coordination of a myriad of locations and a tremendous amount of simultaneous activity, often utilizing the debtors' own employees as the debtors sell inventory as part of their business.   Here, the Debtors' have consolidated their assets at two locations, and already rejected approximately 40 leases.   Retail "going-out-of-business" sales also typically do not deviate much from the debtors' traditional business operations.   These Debtors operated institutions of higher learning which makes this sales process very much outside the ordinary course of business for the Debtors. Retail "going-out-of-business" sales are very much a common occurrence, whereas the proposed transaction here can only be described as extraordinary in terms of the Debtors' previous operations.

*C. There is an Insufficient Record to Support the Marketing Process*

21.     The Debtors allege that they have conducted extensive marketing to determine that this transaction is the best one available.   However, they did not vet the process they were undertaking with the Court through a sale procedures motion regarding these assets, and have not supplied any evidence to support the thoroughness of the marketing or whether potential better bids may now exist.[4]

---

[4] The Debtors must provide evidence that the sale is for fair value and that a good business reason exists. *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983). To receive approval for a pre-confirmation sale of substantially all o 2/ f its

8

## Conclusion

22.    The U. S. Trustee leaves the moving party to its burden and the U. S. Trustee reserves and any all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this Objection and to conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE the U. S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate.

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

By: */s/ Timothy J. Fox*
Timothy J. Fox, Jr., Esq.
Richard L. Schepacarter, Esq.
Trial Attorneys
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 fax
Email: Richard.Schepacarter@usdoj.gov
Email: Timothy.Fox@usdoj.gov

Dated: June 23, 2015

---

assets, a debtor must demonstrate that a sound business reason exists for the sale. In addition, a debtor must show that the sale has been proposed for fair value and in good faith. *See In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The Court must determine that the bidding procedures will bring the best and highest price for the Debtors' assets. The Debtors must show that the assets have been fully marketed and that the sale is sufficiently publicized in order to prove that the assets will be sold for a fair and reasonable price. But the Court must also find that the sale is free of any collusion. Any relationship to the purchaser must be fully disclosed including any employment agreements  or other agreements or understandings. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d at 147.