**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                                             :    **Case No. 15-10952-KJC**
**In re**                                      :    **(Chapter 11/Jointly Administered)**
                                             :
**CORINTHIAN COLLEGES, INC.,** *et al.*        :    **Hearing Date:**
                                             :         **June 30, 2015 at 2:00 p.m.**
                          **Debtors.**          :
-------------------------------------------------------------x    **Docket Number 363**

**UNITED STATES' OBJECTION TO MOTION**
**OF THE COMMITTEE OF STUDENT CREDITORS FOR AN ORDER**
**APPLYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A)**
**AND GRANTING RELATED RELIEF**

Many persons borrowed from the United States, acting through its Department of

Education ("ED"), to enroll as students (each, a "Student") at one of the debtors (each, a

"Debtor"), some of which were for-profit colleges.  For several reasons, ED should not be

enjoined from participating in any proceeding concerning these loans ("Student's Loan Debt to

U.S.") - including ED's ongoing administrative proceedings ("Administrative Proceedings") to

determine whether the Students should be relieved from repaying this debt.  An adversary

proceeding needed to obtain such injunctive relief has not been initiated.  Any action to collect,

assess or adjust the Student's Loan Debt to U.S. (including the Administrative Proceedings)

would not violate the automatic stay of the Bankruptcy Code ("Code") because it would not

address or affect an obligation or asset of any of the Debtors.  In addition, the requested stay also

should be denied because no unity of interest between Students and the Debtors exists, and the

Debtors do not appear to need the stay to reorganize.  Finally, the requested stay should be

denied because the prerequisites under the four-part standard for injunctive relief cannot be

satisfied.  For these reasons, the United States objects to the June 8, 2015 motion (Docket No.

363) (the "Motion" or "Mot.") of the Committee of Student Creditors (the "Student Committee")

for an order applying the automatic stay pursuant to 11 U.S.C. §§ 362(a) and 105(a) and granting

related relief.

## NON-BANKRUPTCY STATUTORY AND REGULATORY FRAMEWORK

The Higher Education Act ("HEA") charges the Secretary of Education with

responsibility to "enforce, . . . compromise, waive or release" Federal education loans.  20 U.S.C.

§ 1082(a)(6) (Federal Family Education Loan Program [FFELP] loans), § 1087a(b)(2) (providing

that Direct loans have same "terms and conditions" as FFELP loans).  HEA *requires* the

Secretary to discharge the obligation of a FFELP or Direct loan borrower who was unable to

complete his or her education because the Student's school closed.  20 U.S.C. §§ 1087(c)(1),

1087a(b)(2).  ED's implementing regulations provide that the "Secretary discharges the

borrower's (and any endorser's) obligation to repay a Direct Loan in accordance with the

provisions of this section if the borrower . . . did not complete the program of study for which the

loan was made *because the school at which the borrower (or student) was enrolled closed. . . .*"

34 C.F.R. § 685.214(a)(1) (emphasis added).

The HEA further directs the Secretary to "specify in regulations which acts or omissions

of an institution of higher education a borrower may assert as a defense to repayment of a

[Direct] loan. . . ."  20 U.S.C. § 1087e(h).  ED's implementing regulations state, "In any

proceeding to collect on a Direct Loan, the borrower may *assert as a defense against repayment*,

any act or omission of the school attended by the student that would *give rise to a cause of action*

*against the school under applicable State law*."  34 C.F.R. § 685.206(c)(1) (emphasis added).

## FACTS

ED's Administrative Proceedings Will Determine
<u>Whether ED Will Discharge The Students' Loan Debt To U.S.</u>

The Motion (filed in the Debtors' jointly administered bankruptcies, not an adversary

proceeding) asserts various facts about the Debtors and their relationships with the Students.  ED

and other federal agencies are investigating the accuracy of these assertions and the underlying

facts about these relationships.  ED has already taken significant steps based on what it has

learned.  *See* Appel Decl. ¶¶ 10-14, June 23, 2015 (attached as Exhibit 1).

For example, shortly before the Debtors filed their chapter 11 petitions on May 4, 2015

(the "Petition Date"), ED notified one of the Debtors, Heald College, LLC ("Heald"), of ED's

finding that Heald had "misrepresent[ed] its placement rates to current and prospective students,"

and of ED's intention to fine Heald nearly $30 million.  Letter from Robin S. Minor, Acting

Director, ED's Administrative Actions and Appeals Service Group to Jack D. Massimino,

President/Chief Executive Officer, Corinthian Colleges, Inc. (Apr. 14, 2015) (attached to Appel

Decl. as Exh. B).

Beginning in April, 2015, ED revealed plans for Administrative Proceedings to

adjudicate whether ED would discharge the Students' Loan Debt to U.S.  Appel Decl. ¶ 25.  The

Motion mentions the Administrative Proceedings only once, Mot. at ¶ 2 n.2.

If a Student follows procedures announced by ED, ED will place this Student's Loan

Debt to U.S. in forbearance.  Appel Decl. ¶ 22-24, 29-36.  ED recently informed Students whose

schools closed about these procedures.  *See* Appel Decl. ¶ 25;

https://studentaid.ed.gov/sa/about/announcements /corinthian#forbearance-stopped-collections.

Specifically, any Student who attended Heald and who completes an attestation form (available

at https://studentaid.ed.gov/sa/sites/default

/files/heald-attestation-form.pdf) may obtain stoppage of ED's collection activity.  Upon receipt

of this request, ED will also direct a Student's loan servicer to halt collections.  Appel Decl. ¶ 29.

Similarly, ED will promptly stop collections efforts on loans of a Student at a Debtor other than

Heald once ED receives a Student's written borrower defense claim initiating an Administrative Proceeding or a form stating the Student's intent to make such a claim.  Appel Decl. ¶¶ 31-32.  A form for this is available at https://borrowerdischarge.ed.gov/.  Appel Dec. ¶ 32.  Whether the Student attended Heald or another Debtor, on receipt of these forms, ED will inform the servicer for the Student's Loan Debt to U.S. to stop collection efforts on that loan.  Appel Decl. ¶¶ 29, 33-34.

Despite the ongoing Administrative Proceedings, the Motion seeks an order "stay[ing] *all* entities from any *act to collect, assess* or recover" on the Students' loans to attend any Debtor, Mot. ¶ 1 (emphasis added).  The Student Committee evidently intends this requested relief to include the Student's Loan Debt to U.S., *see* Mot. ¶¶ 59, 61, and the related Administrative Proceedings, *see id.* ¶ 2 n.2.

The Debtors' Secured Debt, Asset Values, And Intention To Propose Liquidating Plan Soon

The Debtors admit that they owe their secured lenders approximately $105.2 million "without defense, counterclaim or offset of any kind," and that these secured lenders have "a first priority valid, perfected and enforceable security interest in substantially all of the Debtors' assets, both tangible and intangible, real and personal . . . ."  Final Order Authorizing The Use Of Cash Collateral, Granting Adequate Protection To Prepetition Secured Parties, And Granting Related Relief (June 8, 2015) (Docket No. 346), recital F(i) and (ii).  This secured indebtedness totals more than five times the value of the Debtors' assets, as estimated by them as of the Petition Date.  *See* Debtors' Voluntary Petition (Docket No. 1), Exh. A (estimating value of the Debtors' assets as $19.2 million).  The Debtors recently estimated their assets as having significantly higher value.  Summary of Schedules (June 8, 2015) (Docket No. 290) (estimating personal property value at $721.6 million).

The Debtors closed their schools and are winding down operations by terminating leases of buildings where they formerly provided instruction and by selling equipment. *See* Declaration sworn to May 4, 2015 of William J. Nolan, Debtors' Chief Restructuring Officer (Docket No. 10) (the "Nolan Decl.") ¶¶ 18, 31-33, 49, 72. At the Debtors' request, the Court has approved asset sales, e.g., Docket Nos. 23, 224, and several sales have already occurred, e.g., Docket Nos. 84-97.

The Debtors have informed the Court and parties in interest that they intend to propose a plan of liquidation in the next few weeks and to seek the plan's confirmation at a hearing scheduled for August 26, 2015. Debtors' Motion To Shorten The Objection Period For Motion For Order Establishing Bar Dates For Filing Claims (June 9, 2011) (Docket No. 377) ¶ 11. After a plan is confirmed, the Debtors appear likely to make distributions on allowed unsecured claims from liquidation proceeds to the extent funds – if any – remain after administrative expenses are paid and the secured creditors receive their share.

## ARGUMENT

### I.    THE REQUESTED INJUNCTIVE RELIEF SHOULD BE DENIED BECAUSE IT HAS BEEN SOUGHT BY MOTION RATHER THAN AN ADVERSARY PROCEEDING

The Motion should be denied because the Student Committee has not sought its requested injunctive relief in conformity with applicable rules. A stay may be imposed "under the equitable provisions of section 105(a), *provided that the debtor has properly applied for such injunctive relief.*" *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Group, Ltd. (In re Wedgewood Realty Grp., Ltd.)*, 878 F.2d 693, 701 (3d Cir.1989) (emphasis added) (reversing stay because debtor had not satisfied procedural prerequisite for obtaining stay under section 105(a)). Fed. Bankr. R. P. 7001(7) provides that "adversary proceedings [include] *a proceeding to obtain an injunction or other equitable relief* . . . ." "Under Rule 7001, [obtaining] an

injunction [pursuant to Code section 105] requires an adversary proceeding." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762 (5th Cir. 1995).

Likewise in this district, courts recognize this "requirement that . . . proceedings [seeking injunctive relief under Code section 105] be filed as an adversary proceeding . . . ." *MFS Telecom, Inc. v. Motorola, Inc.* (*In re Conxus Commc'ns, Inc.*), 262 B.R. 893, 899 (D. Del. 2001). In *MFS Telecom*, this Court held that a movant's "fail[ure] to file the required adversary proceeding was alone sufficient reason for the Bankruptcy Court to deny [movant's] request for an injunction." *Id.* This Court similarly has held, "based on the plain reading of Rule 7001(7), [that] the Court may not prevent or enjoin an action . . . based on the Motion and responses before it," but "might enjoin the occurrence" "if the [movants] were to file an[] adversary action along with a motion for an injunction." *In re SS Body Armor I, Inc.*, 527 B.R. 597, 607 (Bankr. D. Del. 2015). This principle is widely followed.[1]

"Courts have been near universal in reversing [section 105] injunctions which have been issued without compliance with Rule 7001." Lawrence P. King, *Collier on Bankruptcy* ¶ 105.03 (16th ed. 2015) (citing *Wedgewood*, 878 F.2d at 701); *see, e.g.*, *Zale*, 62 F.3d at 763 (reversing section 105 injunction imposed in an approved settlement agreement because failure to file an adversary proceeding "does not satisfy the procedural rules required by Rule 7001"); *MFS Telecom, Inc.*, 262 B.R. at 899 (reversing grant of injunction under Code § 105).

---

[1] *See, e.g.*, *In re Stacy*, 167 B.R. 243, 249 (N.D. Ala. 1994) (affirming bankruptcy court's decision striking motion seeking injunctive relief, explaining that the "relief sought . . . could not have been obtained by motion but rather necessitated the institution of an adversary proceeding"); *In re Hart*, 530 B.R. 293, 309 (Bankr. E.D. Pa. 2015) ("in order for the Debtor to have obtained the protections of the automatic stay under § 362(a) to stay [action involving third parties] . . . , she needed to affirmatively request such relief by filing an adversary complaint seeking an injunction under § 105(a) to extend the automatic stay to the proceedings against" a third party) (collecting cases).

Accordingly, the Motion should be denied because its requested injunctive relief may be obtained only via an adversary proceeding.

## II.    THE REQUESTED RELIEF SHOULD BE DENIED ON THE MERITS

### A.    The Motion's Requested Relief Cannot Be Granted As An "Application" Of The Automatic Stay

The automatic stay of Code section 362(a) does not prevent proceedings outside of bankruptcy on the Students' Loan Debt to U.S., including the Administrative Proceedings.  The Student Committee has not contended and could not plausibly contend otherwise.  "[T]he clear language of [Code] section 362(a) stays actions only against a 'debtor'." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997).  "[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).  Thus, for example, "'an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor.'" *Id.* (quoted citation omitted).

Here, any action by ED on the Students' Loan Debt to U.S., including the Administrative Proceedings, would not violate the automatic stay because the action would not address or purport to address any property of any Debtor's estate.  The Students are not debtors in these jointly administered cases.  For this reason, the Student Committee's assertion that the relief requested in the Motion would merely "appl[y]" the automatic stay of Code section 362 "to maintain the status quo," Mot. ¶ 37, is mistaken.  Instead, as the Student Committee acknowledges, enjoining action on the Students' Loan Debt to U.S. would "extend[]," Mot. ¶ 37, the scope of actions automatically stayed by Code section 362.  The Court should deny this requested expansion of the automatic stay for these and the additional reasons explained below.

**B.    The Motion's Requested Relief Should Not Be Granted As An "Extension" Of The Automatic Stay**

**1.    "Unusual Circumstances" Are Absent, As The Students Lack A Unity Of Interest With The Debtors, And The Requested Stay Is Not Needed For The Debtors To Reorganize**

Code section 105 "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004, as amended Feb. 23, 2005) (quoting *Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680–81 (2d Cir. 2003)).  Instead, Section 105(a) must be "applied in a manner consistent with the Code." *In re Morristown & Erie R.R.*, 885 F.2d 98, 100 (3d Cir. 1989) (citing *Southern Ry. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985)).  "Importantly for this case, § 105(a) does not 'give the court the power to create substantive rights that would otherwise be unavailable under the Code.'" *Combustion Eng'g*, 391 F.3d at 236 (quoting *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992) (internal quotation marks omitted)).

Code section 362's automatic stay has been extended to third parties only in "unusual circumstances," as where "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor'" or where "stay protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997).  Because the Students fit into neither of these "unusual circumstances," an "identity of interest" between the Students and the Debtors does not exist.  The Student Committee's contrary argument, Mot. ¶ 38, is, at best, simply mistaken.

*First*, the Students are not so closely aligned with the Debtors that a judgment against any of them would effectively be a judgment or finding against any Debtor.  The Student Committee

does not contend otherwise, and for good reason.  The Student Committee does not argue that any Debtor would automatically be liable for the conduct of, claims against, or demands on, any Student, or vice-versa.  The Student Committee does not suggest that a Debtor is a guarantor or surety of any obligation of any Student.  In an analogous circumstance, the Third Circuit reversed a Code section 105(a) injunction precluding suits against non-debtors absent some basis for a debtor's liability creating liability for them.  *Combustion Eng'g*, 391 F.3d at 235-37.  The court noted that confirmation of a plan containing such an injunction had the inappropriate "practical effect . . . [of] extend[ing] bankruptcy relief to . . . non-debtor[s] . . . outside of bankruptcy."  *Id.* at 237.  Indeed, far from having a unity of interest with the Debtors, the Students have interests adverse to them, as the Students intend to assert claims against the Debtors' estates.  *See* Mot. ¶¶ 3, 20, 37, 42-44, 47-78.  Because the Students and the Debtors lack an identity of interest, the Court should not enjoin ED from actions concerning the Students' Loan Debt to U.S., including the Administrative Proceedings.  The cases cited by the Student Committee, Mot. ¶ 38, do not suggest that the Students' relationships to the Debtors are sufficiently aligned to merit extension of the automatic stay to bar creditors of the non-debtor Students from taking action against them.[2]

---

[2] The cases cited by the Student Committee (Mot. ¶ 38) presented very different circumstances from the Students' relationships to the Debtors. In *Midway Games, Inc. v. Anonuevo (In re Midway Games, Inc.)*, 428 B.R. 327, 334 (Bankr. D. Del. 2010), the court declined to dismiss for failure to state a claim an adversary complaint seeking to extend the automatic stay to debtors' officers.  The court reasoned that "the investigatory actions and proposed lawsuit" (to prevent a state agency's suit concerning allegedly unlawfully withheld paid time off wages) were "an effort to circumvent the automatic stay."  *Id.*  The court reasoned that case's "[d]ebtors [were] the real target of the alleged . . . [c]laims," since "[d]ebtors will be forced to shoulder indemnity obligations to the [debtor's] [o]fficers."  *Id.*  Likewise, in *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 386 B.R. 17, 28, 37 (Bankr. D. Del. 2008), the court extended a preliminary injunction to include actions against a non-debtor, explaining that these actions "could have a direct impact on the estates" based on the debtor's "contractual indemnification agreements" with this non-debtor.  Here, by contrast, the Student Committee has not suggested that the

*Second,* a stay of the Administrative Proceedings is not essential to a Debtor's reorganization efforts.  The Student Committee does not argue otherwise.  Evidently, none of the Students is employed by a Debtor as an officer, director, or high-level employee.  For this reason, to reorganize, the Debtors do not require any Student's undistracted efforts.  Consequently, the Student Committee's reliance (Mot. ¶ 49) on cases staying proceedings involving a debtor's high-level management is misplaced.[3]  Moreover, the Debtors' secured debt relative to asset values, ongoing asset sales efforts, and stated intentions, *see supra* __ [4-5] belie the Committee's position that the requested relief is needed for the Debtors' reorganization.  Consequently, proceedings (including the Administrative Proceedings) on Students' Loan Debt to U.S. will not interfere with the Debtors' reorganization prospects.

In short, the Motion should be denied because the relationship between the Debtors and Students presents neither an "unusual" identity of their interests nor circumstances showing that the requested stay would facilitate the Debtors' ability to reorganize.

## 2.    Because The Student Committee Cannot Satisfy The Four-Prong Test For Injunctive Relief, A Section 105 Stay Should Not Issue

"In order to obtain section 105(a) injunctive relief, the [movant] . . . has the burden of demonstrating to the [C]ourt the following:  substantial likelihood of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the nonmovant, and injunctive relief would not violate public interest." *In re Wedgewood Realty Group, Ltd.*, 878

---

Debtors agreed to indemnify the Students for any liability they may have on Students' Loan Debt to U.S., and such indemnification appears highly unlikely.

[3] *E.g.*, *Johns-Manville Corp. v. Asbestos Lit. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 426 (Bankr. S.D.N.Y. 1983) (staying discovery from debtor's "key operating personnel" based on "massive drain on [their] . . . time and energy" during "crucial hour of plan formulation") (cited in Mot. ¶ 49), *vacated in part*, 41 B.R. 926 (S.D.N.Y. 1984) (permitting resumption of discovery by debtor's co-defendant).

F.2d at 700-01; *see also In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1188 (5th Cir. 1986) (holding that section 105 stays "are granted only 'under the usual rules for the issuance of an injunction'") (citing Code's legislative history).  The Student Committee concedes that for the requested stay to issue, this four-prong test must be satisfied.  Mot. ¶ 53.  Moreover, even if the Student Committee had filed the necessary adversary complaint, *see supra* __ [5-6], any injunction prior to a decision on the merits would be merely preliminary, and the issuance of a preliminary injunction is considered "an extraordinary remedy" that "should be granted only in limited circumstances."  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).  "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo . . . ."  *Kos Pharms., Inc.,* 369 F.3d at 708.

Here, the Motion's requested relief should be denied because it would alter, not preserve, the status quo.  The requested stay would prevent ED from taking any action on the Students' Loan Debt to U.S., including by preventing ED from continuing the Administrative Proceedings (of which nearly 4,000 Students already have availed themselves, Appel Decl. ¶ 25).  The Student Committee may prefer to have this Court address the Students' Loan Debt to U.S., but as detailed below, the status quo neither requires nor permits that approach.

The Motion's requested relief also should be denied because the Student Committee has not met its burden to satisfy the four-prong standard for injunctive relief, as detailed below.

### a)       The Student Committee Has Failed To Show That It Is Likely To Prevail On The Merits

The Court should deny the Motion's requested injunctive relief because the Student Committee is unlikely to prevail on the merits.  The Student Committee seeks to force "the Debtors, [S]tudents, the government, other creditors and parties in interest to focus on

formulation of a consensual plan . . . address[ing] . . . the relative obligations of each

constituency. . . ." Mot. ¶ 41. The Student Committee assumes that a reorganization plan for the

Debtors could provide not just "availability of estate funds" to pay claims against the Debtors,

but also "*relief from student debt obligations . . . and third party relief*." Mot. ¶ 57 (emphasis

added).

      This assumption is mistaken for at least three reasons. *First*, the Student Committee is

not likely to prevail because the Court should not permanently enjoin proceedings on the

Students' Loan Debt to U.S. *Second*, the Court lacks subject matter jurisdiction to decide the

validity of claims arising from the Students' Loan Debt to U.S. *Third*, even if the Court had

subject matter jurisdiction, given the Administrative Proceedings, the Court should abstain or

defer to them to resolve the Students' Loan Debt to U.S.

> **(1)    Because The Students Are Not The Debtors, This Court
> Should Not Permanently Enjoin Proceedings On The
> Students' Loan Debt to U.S.**

      Code section 524(e) "states generally that a discharge of a debtor's obligations in

bankruptcy does not relieve non-debtor parties of liability for debts." *Gillman v. Continental

Airlines (In re Continental Airlines*, 203 F.3d 203, 208 (3d Cir. 2000). Thus, the discharge does

not normally affect those who have "not formally availed themselves of the benefits and burdens

of the bankruptcy process." *Id.* at 211. Yet the Motion's requested relief appears to be premised

on the Court's eventually granting just such relief via a to-be-negotiated reorganization plan.

Because this premise is faulty, the Motion should be denied.

      In *Gillman*, non-debtors objected to the discharge in a reorganization plan of their claims

against the debtors' directors and officers (also non-debtors). 203 F.3d at 207. The court found

that the district court's order "was not accompanied by any findings that the release was fair to

the [third-parties with claims against non-debtors] and necessary to the [] Debtors' reorganization.  Without such findings, a release and permanent injunction cannot stand on their merits under any of the standards set forth in the case law of other circuits." *Id*. at 214.  The Third Circuit noted that it had "not ruled previously on the validity of provisions in chapter 11 plans of reorganization releasing and permanently enjoining third party actions against non-debtors," *id.* at 211, and examined the holdings of other circuits and of the district courts in this Circuit.  *Id.* at 212-14.  The court expressly declined to issue a "blanket rule." *Id.* at 213-14.  But in reversing the district court's affirmance of the releases and permanent injunction, it found them to be "clearly invalid under any standard." *Id.* at 214 n.11.

Similarly here, the Motion's requested relief should be denied because the Student Committee has failed to show that a permanent stay of any action on the Students' Loan Debt to the U.S. would be fair or that ED would be adequately compensated for a permanent stay – functionally, a release of ED's claims against non-debtors.  Without such evidence, the Court should not permanently enjoin proceedings on the Students' Loan Debt to U.S.  *See Gillman*, 203 F.3d at 214; *see also Landsing Diversified Properties-II v. Abel (In re Western Real Estate Fund, Inc.),* 922 F.2d 592, 601-02 (10th Cir. 1990) (holding that a stay under Code section 105 "may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the non[-]debtor from its own liability to the creditor").

Thus, the Student Committee has failed to show that it likely would prevail in its effort to prevent proceedings on the Students' Loan Debt to U.S.

(2)    **This Court Lacks Subject Matter Jurisdiction To Adjudicate The Merits Of Students' Loan Debt To The U.S., Including Any Available Defenses**

The Court lacks subject matter jurisdiction over matters not affecting the Debtors' estates.  "While [Code] § 105(a) . . . allows a bankruptcy court to issue any order necessary to carry out the provisions of the Code, it 'does not provide an independent source of federal subject matter jurisdiction.'"  *In re W.R. Grace & Co.*, 591 F.3d 164, 170 (3d Cir. 2009) (quoting *In re Combustion Eng'g*, 391 F.3d at 225).  "Therefore, before proceeding to the merits of an injunction under section 105(a), it is the duty of the Bankruptcy Court to establish that it has subject matter jurisdiction to issue the injunction."  *Lane v. Phila. Newspapers, LLC (In re Phila. Newspapers, LLC)*, 423 B.R. 98, 103 (E.D. Pa. 2010) (citing *W.R. Grace & Co.*, 591 F.3d at 170-71 and *Combustion Eng'g*, 391 F.3d at 225 n. 35).

"[T]he party asserting a federal court's jurisdiction bears the burden of proving that jurisdiction exists."  *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012).  "Federal courts are presumed not to have jurisdiction without affirmative evidence of this fact."  *Id.*  The Student Committee asserts that this Court has jurisdiction "to consider th[e] Motion," Mot. ¶ 4, but does not address whether the Court has jurisdiction to enjoin proceedings (including the Administrative Proceedings) that arise from the Students' Loan Debt to U.S.  To the extent the Students are not before the Court in their own bankruptcies (and the Student Committee does not assert that any are), this Court lacks jurisdiction over these claims for the reasons explained below.

The only possible basis for this Court to assert jurisdiction over the Students' Loan Debt to U.S. is its authority over civil proceedings "related to cases under title 11."  28 U.S.C. § 1334(b).  "The usual articulation of the test for determining whether a civil proceeding is

related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." *Pacor Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original), *overruled on other grounds*, *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 134-35 (1995).  Put differently, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

"[T]he *Pacor* 'related to' test remains good law in the Third Circuit." *In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 441 n.16 (2014) (Carey, J.) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)).  "The Supreme Court endorsed *Pacor*'s conceivability standard with the caveats that 'related to' jurisdiction 'cannot be limitless,' and that the critical component of the *Pacor* test is that 'bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor.'" *Nuveen*, 692 F.3d at 294 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n. 6 (1995)).  "[T]he boundaries of bankruptcy jurisdiction cannot be extended simply to facilitate a particular plan of reorganization." *In re Combustion Eng'g*, 391 F.3d at 228.

The Administrative Proceedings (or other actions on the Students' Loan Debt to U.S.) could not "'conceivably' have an effect on the bankruptcy proceeding," *Pacor*, 743 F.2d at 994. The Third Circuit has made clear that this phrase, as properly construed, prompts courts to "inquire[] [into] whether the allegedly related lawsuit would affect the bankruptcy *without the intervention of yet another lawsuit*." *In re Combustion Eng'g*, 391 F.3d at 227 (emphasis added) (quoting *In re Federal–Mogul Global*, 300 F.3d 368, 382 (3d Cir. 2002)).

Here, the Debtors would not be liable without other proceedings (presumably, a claim – by the Students, ED or both).  ED may choose to file a claim against one or more Debtors based on a Student's successful defense in an Administrative Proceeding.  *See* 34 C.F.R. § 685.206(c)(3) ("The Secretary may initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the loan to which the defense applies.").  If ED filed such a claim, the Debtor would remain free to object, *see* 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3007(a), perhaps by contending that the Student lacked a valid defense against repayment of a particular Student's Loan Debt to U.S.  ED's decision in an Administrative Proceeding about the validity of a Student's defense to a Student's Loan Debt to U.S. would not bind any of the Debtors because none of them would be parties to the Administrative Proceeding. *See Pacor*, 743 F.2d at 995 ("Since Manville[, the debtor,] is not a party to the Higgins-Pacor [third-parties'/non-debtors'] action, it could not be bound by res judicata or collateral estoppel."). Put differently, proceedings between the Students and ED "would in no way bind [the Debtors], in that [they] could not determine any rights, liabilities, or course of action of the [D]ebtor[s]," *Id*.  Consequently, even if ED discharged the Students' Loan Debt to U.S. in Administrative Proceedings, ED "would still be obligated to bring an entirely separate proceeding," *Pacor*, 743 F.2d at 995, to receive from the Debtors payment on the claim resulting from the discharge, and any action on the Students' Loan Debt to U.S. would not establish any claim against any Debtor (including any claim by ED) or have any impact on any issue affecting their estates.

"Relating to" jurisdiction also is absent where the bankruptcy estate has no unencumbered assets.  *See Nuveen*, 692 F.3d at 298.  The breadth of the Court's "relating to" jurisdiction focuses on whether the claims between non-debtors may impact the pool of assets

available for distribution.  This principle may apply here based on the Debtors' description of the value of their assets (approximately $19.2 million) relative to amount of secured claims against them (approximately $105.2 million).  *See supra* __[4].

Moreover, "[i]f a creditor's recovery from a non-debtor definitely will not affect the amount of its payment from a bankruptcy estate, a third-party action is not 'related to' the bankruptcy proceeding, for purpose of establishing subject matter jurisdiction."  *Nuveen*, 692 F.3d at 297; *see also In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 443 (D. Del. 2014) (Carey, J.) (citing *Pacor,* 743 F.2d at 994).  Here, relieving Students in the Administrative Proceedings from repaying the Students' Loan Debt to U.S. would merely shift to ED ownership of certain Student claims, not increase the amount that Debtors will need to pay on these claims.  *See* 34 C.F.R. § 685.206(c)(3) (discussed *supra* __ [15]).

> **(3)** **Even If The Court Had Subject Matter Jurisdiction Over The Students' Loan Debt To U.S., The Court Should Abstain Or Defer To The Administrative Proceedings For A Determination Of The Students' Defenses**

The Court may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11 . . . ."  28 U.S.C. § 1334(c)(1).  "Abstention is proper . . . where considerations of comity with . . . federal administrative proceedings would dictate that the Bankruptcy Court stay its hand in order to prevent undue interference or entanglement with . . . federal administrative and regulatory schemes."  *In re First Financial Enterprises, Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989).[4]  Discretionary abstention is particularly appropriate

---

[4] Thus, in numerous cases bankruptcy courts have abstained in deference to administrative processes.  *See, e.g.*, *Hickman v. BWC State Ins. Fund (In re Hickman)*, 265 B.R. 873, 877-78 (Bankr. N.D. Ohio 2001) (abstaining from exercising jurisdiction to decide whether debtor was an "employer" of injured worker under Ohio workers' compensation law because such claims are determined by state administrative agency subject to review by state courts); *Fyfe v. United*

where non-bankruptcy "federal law issues predominate over the bankruptcy issues," *Plum Run Serv. Corp. v. US. Dep't of the Navy (In re Plum Run Serv. Corp.)*, 167 B.R. 460, 465-66 (Bankr. S.D. Ohio 1994), and where the dispute turns on "specialized area[s] of the law," *United States v. Am. Pouch Foods, Inc.*, 30 B.R. 1015, 1024 (N.D. Ill. 1983).  Because federal non-bankruptcy law provides for administrative adjudication about the validity of the Students' Loan Debt to U.S., *see* 20 U.S.C. §§ 1087(c) and 1087a(b)(2) and 34 C.F.R. § 685.214(a)(1) (discussed *supra* __ [2]), the Court should abstain to allow completion of that process using experts in laws applicable to ED.

Alternately, the Court should defer to the Administrative Proceedings for resolving the Students' Loan Debt to U.S.  *See Gary Aircraft Corp. v. United States (In re Gary Aircraft Corp.)*, 698 F.2d 775, 782 (5th Cir. 1983) ("'[W]here the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision. . . .'") (quoting *Nathanson v. NLRB*, 344 U.S. 25, 30 (1952)); *see also In re Page-Wilson Corp.*, 37 B.R. 527, 529 (Bankr. D. Conn. 1984) ("If a specialized area of federal law is involved in liquidating a claim and a specialized federal tribunal has been provided, the bankruptcy court will defer to that tribunal.").

Thus, the Student Committee is not likely to prevail on the merits of its efforts to have this Court stay proceedings concerning, or rule on the merits of, the Students' Loan Debt to U.S.: a stay would inappropriately interfere with ED's rights, the Court lacks jurisdiction over claims

---

*States (In re Fyfe)*, 186 B.R. 290, 292 (Bankr. N.D. Ga. 1995) (abstaining from deciding debtor's tax liabilities on the ground that debtor "should exhaust all other administrative and legal remedies, because those procedures were designed to deal with the specific issues the Debtor raises"); *In re Larocque*, 47 B.R. 83, 85 (Bankr. D. Vt. 1985) (denying bankruptcy trustee's motion to transfer to the bankruptcy court a post-petition federal administrative proceeding in which federal agency's local board had determined that the debtor must refund subsidy payments for failing to satisfy the conditions for the subsidy).

on the Students' Loan Debt to U.S., and even if it had jurisdiction, the Court should abstain from

deciding these claims in view of, or defer to, the Administrative Proceedings.

### b)       Denying The Requested Stay Would Not Cause Students Any Irreparable Injury

No Student would be irreparably harmed by denial of the relief requested in the Motion.

This is so for several reasons.  First, in light of applicable law on discharge by ED of the

Students' Loan Debt to U.S., *see supra __* [2], *staying the Administrative Proceedings may well*

*harm many Students*.  Moreover, as to this debt, any Student could simply initiate an

Administrative Proceeding.  Upon initiation of such a proceeding, ED *ceases* collection activity

for that Student's Student Loan Debt to U.S.  *Supra _* [3-4].  And as of June 11, 2015, ED had

already approved for discharge Students' Loan Debt to U.S. for 4,901 Students.  Appel Decl.

¶ 25.  Beyond all these protections, to any extent a Student's Loan Debt to U.S. is not discharged

in an Administrative Proceeding, a Student in a sufficiently precarious financial situation could

initiate his own bankruptcy proceeding, thus gaining for himself Code section 362(a)'s automatic

stay protection.  In light of these various alternatives, the assertions in the Motion (¶¶ 37-38, 59,

61) and supporting declarations about ED's collection efforts ring hollow.  Simply put, the

Motion's requested relief is not needed to "relieve[] [the Students] of the harassment and undue

hardships caused by the continuing collection proceedings," Mot. 37.

### c)       The Threatened Injury To The Students Does Not Outweigh The Harm That The Requested Stay Would Cause ED

Courts have recognized that stays under Code section 105 may injure governmental

entities by delaying their enforcement of non-bankruptcy laws.  *See Cournoyer v. Lincoln (In re*

*Cournoyer)*, 43 B.R. 354 (Bankr. D.R.I. 1984), *aff'd in part and rev'd in part on other grounds*,

53 B.R. 478 (D.R.I. 1985)*, aff'd*, 790 F.2d 971(1st Cir. 1986).  Consequently, a stay may be

denied in view of governmental interests in enforcing such laws.  *Id.*  Code section 105 "does not

give bankruptcy judges the authority to circumvent the restrictions on their authority . . . ."  *City*

*of New York v. 1820-1838 Amsterdam Equities, Inc. (In re 1820-1838 Amsterdam Equities, Inc.)*,

191 B.R. 18, 21 (S.D.N.Y. 1996) (reversing bankruptcy court's 45-day stay of enforcement of

fire and safety code violations to allow estate time to sort out affairs, explaining that a

bankruptcy court should not "disturb" exercise of governmental powers "in protecting its

citizens").

Here, the Motion's requested relief would deprive ED of its existing rights as a creditor

and interfere with the Administrative Proceedings.  The Administrative Proceedings are designed

to protect the Students by providing them with a relatively easy and inexpensive forum for

impartial administrative adjustment (and possible discharge) of the Students' Loan Debt to U.S.

*See* Appel Decl. ¶ 38.  Any interference by this Court with this administrative effort would

undermine policy concerns analogous to those showing that the Court should abstain or defer to

the Administrative Proceedings, *supra* _ [16-17].  To any extent these Administrative

Proceedings do not result in a discharge of the Students' Loan Debt to U.S., the Court should

decline to interfere with ED's rights as a creditor under the Students' Loan Debt to U.S..  *See*

*supra* __ [12-13].

> **d)**     **Staying The Administrative Proceedings Would Disserve The Public Interest**

Finally, the public interest weighs decidedly against a stay.  Code section 105 stays are

denied where, as here, their issuance would interfere with interests of the public being protected

by a public agency's activity.  *See Thomassen v. Division of Med. Quality Assurance, (In re*

*Thomassen*), 15 B.R. 907, 910 (B.A.P. 9th Cir. 1981).  Specifically, this Court may refuse to stay

the Administrative Proceedings because the impact on the public may reasonably be left to ED.

*Id.*; *accord Newport Assembly Rest., Inc. v. Edwards (In re Newport Assembly Rest., Inc.)*, 142 B.R. 22, 23-24 (D.R.I. 1992) (debtor failed to show that injunction preventing administrative proceeding would serve public interest).

Here, the Administrative Proceedings would vindicate the various elements of the public's interest in the Student's Loan Debt to U.S.  *First,* the public has an interest in the just determination of whether the Students are obligated on Student's Loan Debt to U.S. or whether they have valid defenses on this debt.  That interest would be amply satisfied by the Administrative Proceedings and any follow-on proceedings under the Administrative Procedure Act, which provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Of course, the Student Committee may attempt to negotiate *with the Debtors* "to achieve a consensual plan" on behalf of "the class of aggrieved students" on the *Students'* claims against the Debtors.  Mot. ¶ 38.  But whether Students have valid defenses *on the Students' Loan Debt to U.S.* - beyond school closure, *see* 34 C.F.R. § 685.214(a)(1) - may well turn on individualized factual determinations not capable of being accurately made in the aggregated manner suggested by the Committee.  *Second*, the public has a pecuniary interest in retaining a payment right for any Student's Loan Debt to U.S. as to which a valid defense does not exist.  That is particularly so given the quantity of the Students' Loan Debt to U.S., *see* Mot. ¶ 30 (suggesting that the "Debtors may have received in excess of $1 billion of revenue each year through funds supplied" by ED).  *Third*, the public has an interest in judicial economy, which would not be furthered by embroiling this Court unnecessarily in whether particular Students have valid defenses to paying the Students' Loan Debt to U.S.  Many of the types of defenses that might be asserted for this debt will require individualized factual

scrutiny of a sort that can most efficiently be performed in an administrative proceeding by an officer with specialized expertise in student loans.  More than 4,000 Students have already sought such relief from ED.  Appel Decl. ¶ 25.

In short, the Motion should be denied on the merits because Code section 362(a)'s stay does not cover non-estate assets, the Students lack a unity of interest with the Debtors, a stay is not needed for the Debtors to reorganize, and the Student Committee has failed to satisfy the four-prong test for injunctive relief.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated:  June 23, 2015                                      Respectfully submitted

BENJAMIN C. MIZER                                  /s/  Lloyd H. Randolph
Principal Deputy Assistant Attorney General        RUTH A. HARVEY
                                                   TRACY J. WHITAKER
CHARLES M. OBERLY, III                             LLOYD H. RANDOLPH
United States Attorney                             (D. C. Bar No. 376009)
                                                   JOHN R. KRESSE
ELLEN SLIGHTS                                      Civil Division
Assistant United States Attorney                   U. S. Department of Justice
                                                   P. O. Box 875
                                                   Ben Franklin Station
                                                   Washington, D.C.  20044-0875
                                                   (202) 307-0356

                                                   ATTORNEYS FOR THE UNITED
                                                   STATES

CERTIFICATE OF SERVICE

I, Lloyd H. Randolph, hereby certify that on the 23d day of June, 2015, I caused a true and correct copy of the foregoing **UNITED STATES' OBJECTION TO MOTION OF THE COMMITTEE OF STUDENT CREDITORS FOR AN ORDER APPLYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A) AND GRANTING RELATED RELIEF and the exhibit thereto DECLARATION OF JEFF APPEL (attached)** to be served electronically through the Court's ECF system upon those who have entered an appearance in this proceeding, and through electronic mail on the parties listed below.

Dated: June 23, 2015

/s/ Lloyd H. Randolph
Lloyd H. Randolph

Christopher A. Ward, Esq.
Shanti M. Katona, Esq.
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
cward@polsinelli.com
skatona@polsinelli.com

Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
Cynthia C. Hernandez, Esq.
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
sgautier@robinskaplan.com
lball@robinskaplan.com
chernandez@robinskaplan.com

Mark Rosenbaum, Esq.
Anne Richardson, Esq.
Alisa Hartz, Esq.
Dexter Rappleye, Esq.
PUBLIC COUNSEL LLP
610 S. Ardmore Avenue
Los Angeles, CA 90005
mrosenbaum@publiccounsel.org
arichardson@publiccounsel.org
ahartz@publiccounsel.org
drappleye@publiccounsel.com

Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Marisa A. Terranova, Esq.
Amanda R. Steele, Esq.
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
collins@rlf.com
merchant@rlf.com
terranova@rlf.com
steele@rlf.com

Richard L. Schepacarter, Esq.
Timothy Jay Fox, Jr., Esq.
Office of the United States Trustee
U. S. Department of Justice
844 King Street, Suite 2207
Lockbox #35
Wilmington, DE 19801
timothy.fox@usdoj.gov
richard.schepacarter@usdoj.gov