# Exhibit 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.,* | Case No. 15-10952 (KJC) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF JEFF APPEL

I, Jeff Appel, declare as follows:

1. My name is Jeff Appel, I am over the age of 18, and serve as Deputy Under Secretary of the United States Department of Education ("ED"). I have personal knowledge of the matters set forth herein and if called as a witness, I could and would testify competently thereto.

2. As Deputy Under Secretary, I oversee policy development regarding federal student financial aid and work directly with the Federal Student Aid office ("FSA") which administers federal student financial aid programs.

3. Through my duties as Deputy Under Secretary, my review of documents related to Corinthian Colleges, Inc. and its subsidiaries' (collectively, "CCI") petition for bankruptcy, and my discussions with ED staff working directly with CCI and its former students, I am generally familiar with the claims made by the Committee of Student Creditors against CCI.

## I. ED FINDINGS AND FINES LEVIED AGAINST CCI

4. CCI was a participant in the federal student financial assistance programs authorized under Title IV of the Higher Education Act of 1965 (HEA), as amended, 20 U.S.C. §§ 1070 *et seq.* and 42 U.S.C. §§ 2751 *et seq.* (Title IV, HEA programs).

1

5. As a participant in the Title IV, HEA programs, CCI students were eligible for federal education loans through: (1) the William D. Ford Federal Direct Loan Program ("Direct Loans") (20 U.S.C. §§ 1087a-1087j); (2) the Perkins Loan Program (20 U.S.C. §§ 1087aa-1087ii); and (3) the Federal Family Education Loan Program ("FFEL") (20 U.S.C. §§ 1071-1087-4).

6. Beginning July 1, 2010, the authority to reinsure new loans under the FFEL program was terminated. After that date, any federal education loans were primarily made through the Direct Loans program. Direct Loans are made by ED through FSA.

7. Effective July 1, 2010, institutions participating in the Title IV, HEA programs, such as CCI schools, are required to provide enrolled or prospective students with information concerning the placement of, and types of employment obtained by graduates of the institution's degree or certificate programs. 34 C.F.R. § 668.41(d)(5).

8. In addition, effective July 1, 2011, institutions that offer programs that prepare students for gainful employment in recognized occupations and that are required by their accrediting or state agencies to calculate placement rates on a program basis must disclose the rates and identify the accrediting agency or State agency under whose requirements the rates were calculated. 34 C.F.R. § 668.6(b).

9. The institution must include the information required under 34 C.F.R. § 668.6(b) in promotional materials it makes available to prospective students, post this information on its website, prominently provide this information in a simple and meaningful manner on the home page of its program website, and provide a prominent and direct link on any other webpage containing general information about the program to a single webpage with the required information. 34 C.F.R. § 668.6(b)(2).

10. In January 2014, ED sent a letter to CCI requesting a copy of school performance disclosure documents, including placement rates for all gainful employment programs, for each CCI location for the calendar years 2010, 2011, 2012, and, when available, 2013. In addition, ED asked CCI to provide the evidence upon which CCI relied to derive placement rates cited in the disclosures. Letter from Robin S. Minor, Chief Compliance Officer, FSA to Jack D. Massimino, President/Chief Executive Officer, Corinthian Colleges, Inc. (Jan. 23, 2014). A true and correct copy of this letter is attached as Exhibit A.

11. CCI eventually produced some of the disclosure documents requested by ED, including some disclosure documents for the Heald College institutions.

12. ED's analysis of the documentation provided by CCI revealed that CCI and Heald failed to fully and accurately disclose Heald's placement rates and the methodology used to calculate them. ED determined that Heald misrepresented its placement rates in numerous ways, including failing to specify the cohort of graduates whose results were being reported and counting graduates whose employment began prior to graduation or before they started at Heald.

13. These misrepresentations led to significant inflation in the job placement rates published by Heald and served to mislead thousands of students about Heald's programs.

14. In April 2015, ED informed CCI that it intended to fine Heald College $29,665,000 based on violations found during an analysis of the documentation provided by CCI regarding Heald's job placement rates. Letter from Robin S. Minor, Acting Director, ED's Administrative Actions and Appeals Service Group to Jack D. Massimino, President/Chief Executive Officer, Corinthian Colleges, Inc. (Apr. 14, 2015). A true and correct copy of this letter is attached as Exhibit B.

15. In February 2015, following enforcement actions by ED and other agencies, CCI finalized a sale of most of its locations to Zenith Education Group.

16. On April 27, 2015, CCI abruptly closed its remaining 30 locations—including two satellite campuses—across the country.

## II. ADMINISTRATIVE PROCEEDINGS REGARDING CCI STUDENT LOAN DEBT

17. Prior to and immediately following ED's notifying CCI of its intent to fine Heald College and CCI's subsequent sale or closure of most of its locations, CCI students began inquiring about forgiveness for federal loans used to attend CCI schools.

18. ED determined that relief could be provided to CCI student borrowers through two options: 1) closed school loan discharge, 34 CFR § 685.214(a)(1); or 2) borrower defense to repayment. 34 CFR § 685.206 (c)(1).

19. The HEA and ED regulations permit the discharge of a borrower's Direct Loans if the borrower did not complete the program of study for which the loan was made because

the school at which the borrower was enrolled closed. 20 U.S.C. §§ 1087(c), 1087a(b)(2), 34 CFR § 685.214(a)(1).

20. A CCI student may qualify for a closed school loan discharge if: 1) the student did not finish his or her program at a CCI school; 2) the student is not completing a similar program at another school that accepted CCI credits for that borrower; and 3) the student was attending the school when it closed, or withdrew on or after June 20, 2014.

21. CCI students may apply for a closed school loan discharge by completing an application (https://studentaid.ed.gov/sa/sites/default/files/closed-school-loan-discharge-form.pdf) and returning it to their loan servicer. *See* Exhibit C.

22. ED regulations provide the option of forbearance while a student's application for closed school loan discharge is being processed. 34 C.F.R. 685.205(b)(6)(1). When forbearance is granted, no one is permitted to collect on the loan until it is determined whether the student is eligible for a loan discharge. In addition, ED will report a successful closed school loan discharge to credit bureaus so as to delete any adverse credit history associated with the loan.

23. By statute and regulation, interest will continue to accrue on Direct Loans placed in forbearance while a student's application for a closed school loan discharge is being processed. 20 U.S.C. § 1078(c)(3)(ii), 1078a(b)(2), 34 C.F.R. § 685.205.

24. If a closed school loan discharge is granted, the entire loan amount, including any accrued interest, will be discharged. Any payments made on an existing loan will be refunded to the student. Those students who do not receive a discharge or prove a defense to repayment on the loan, discussed later, will be required to pay the interest accrued while their loans were in forbearance.

25. On April 27, 2015, ED posted a notice on the FSA website to inform an estimated over 13,500 former CCI students whose schools closed of the option of seeking a closed school loan discharge. In addition, loan servicers of students at closed CCI schools sent closed school loan discharge applications to all borrowers via email and postal mail. ED is currently processing almost 4,000 applications from CCI students for loan discharges based on school closure. As of June 11, 2015, ED has approved the loan discharges of 491 of CCI students based on school closure.

26. ED regulations also permit the discharge of some or all of a borrower's Direct Loan obligation if the borrower successfully demonstrates, as a defense against repayment,

4

any act or omission of the school attended by the borrower that would give rise to a cause of action against the school under applicable State law. 34 CFR § 685.206 (c)(1).

27. Prior to 2015, ED had granted loan discharges based on the borrower defense regulation in fewer than ten instances.

28. Despite the infrequent occurrence of claims for relief under this regulation, on June 8, 2015, ED announced that it would provide an expedited process for all eligible Heald students (ED estimates there are approximately 40,000 such students) to seek loan discharges based on the borrower defense regulation. While borrower defense claims typically require the borrower to specifically show that his or her school's conduct gave rise to an actionable claim under state law, the Department's April 2014 Heald College findings qualify students enrolled in covered programs and time periods to apply for an expedited process to discharge their federal Direct Loans using a simple attestation form, available at: https://studentaid.ed.gov/sa/sites/default/files/heald-attestation-form.pdf.  *See* Exhibit D.

29. The attestation form for Heald students provides students with the opportunity to request forbearance on their loans. ED will direct that the student's loan servicer place the loan in forbearance and will direct collection contractors to stop collection attempts upon receipt of the attestation form. ED estimates that it takes 10 days from the time the form is received to place a loan in forbearance  and up to 21 days to stop collection activity.

30. Loans may be placed in forbearance and collection activity halted for up to 12 months. ED estimates that the vast majority of Heald students will have their borrower defense claims processed in that time period. The Secretary of Education has the discretion to extend the period of forbearance past 12 months.

31. In addition to announcing an expedited process for Heald students, ED announced a process for other CCI students (non-Heald), to pursue a borrower defense loan discharge. Other CCI students may submit a written claim explaining the actions the school committed that may constitute a cause of action under state law.

32. By submitting the form available at: https://borrowerdischarge.ed.gov/, any CCI student may notify ED of their intent to file a borrower defense claim and request forbearance on their loans or a halt to collection activity. *See* Exhibit E.

33. Non-Heald CCI students who file a written claim (https://studentaid.ed.gov/sa/about/announcements/corinthian) will have their loans placed in forbearance and collections stopped on their loans once ED receives their claim and notifies their servicer of their application for a loan discharge. ED estimates that it takes 10 days from the time the form is received to place a loan in forbearance and up to 21 days to stop collection activity. *See* Exhibit F.

34. Loans of these non-Heald CCI borrowers will also be placed in forbearance and collections halted for up to 12 months. The Secretary of Education has the discretion to extend the period of forbearance past 12 months. In addition, ED will report a successful borrower defense loan discharge to credit bureaus so as to delete any adverse credit history associated with the loan.

35. By statute and regulation, interest will continue to accrue on Direct Loans placed in forbearance while a student's application for a borrower defense discharge is being processed. 20 U.S.C. § 1078(c)(3)(ii), 1078a(b)(2), 34 C.F.R. § 685.205.

36. If a borrower defense loan discharge is granted in full, the entire loan amount, including any accrued interest, will be discharged. Any payments made on an existing loan will be refunded to the student. Those students who do not receive a borrower defense discharge (or qualify for closed school discharge, described above) will be required to pay the interest accrued while their loans were in forbearance.

## III.  CONCLUSION

37. ED has committed to a public and transparent process by which any CCI student can pursue a discharge of loans taken out to attend any CCI school.

38. Students need only submit a request to have their loans placed in forbearance or to stop collections as a part of the closed school loan or borrower defense discharge process. This process imposes the least burden on CCI students to receive forbearance or halt collections that ED can craft.

39. The Secretary of Education has adopted regulations that allow the Department to grant forbearance and halt collection action for borrowers who apply for closed school or borrower defense loan discharge relief. 34 C.F.R. § 685.205(b). The Secretary exercises this power without conditions or limitations other than the requirement that interest must continue accruing on students' loans.

40.  I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of June 2015 in Washington, DC.

Jeff Appel