# EXHIBIT B

RLF1 3615725v.1



David E. Mills
+1 202 776 2865
dmills@cooley.com

**VIA HAND DELIVERY**

May 5, 2015

Robin S. Minor
Acting Director
Administrative Actions and Appeals Service Group
Federal Student Ad / PC / SEC
U.S. Department of Education
830 First Street, NE
Room 84F2
Washington, DC 20002-8019

    RE:    Notice of Intent to Fine Heald College, OPE-ID 00723400

Dear Ms. Minor:

Enclosed is a written request for a hearing and written material indicating why the fine described in your letter dated April 14, 2015, should not be imposed.

Please do not hesitate to contact me if you have any questions regarding this filing.

Very truly yours,

David E. Mills

Enclosures

cc:        Jack D. Massimino (via Federal Express)

UNITED STATES DEPARTMENT OF EDUCATION
ADMINISTRATIVE ACTIONS AND APPEALS SERVICE GROUP
WASHINGTON, D.C.

**REQUEST FOR HEARING AND MOTION TO DISMISS
INTENDED FINE OF HEALD COLLEGE (OPE-ID 00723400)**

David E. Mills
dmills@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C. 20004

Dated: May 5, 2015          Counsel for Heald College

Heald College ("Heald" or "the School") respectfully submits this Request for Hearing and Motion to Dismiss pursuant to 34 C.F.R. Part 668, Subpart G, including Section 668.84. On April 14, 2015, the Office of Federal Student Aid ("FSA") of the U.S. Department of Education ("ED" or "Department") issued a Notice of Intent to Fine Heald College, OPE-ID: 00723400 ("Notice of Intent"), seeking to impose a fine of $29,665,000 for an alleged 946 instances of incomplete, inaccurate or misrepresented placement rate disclosures. The School vigorously denies the allegations on both substantive and procedural grounds.

## **INTRODUCTION**

The Notice of Intent is fundamentally flawed and should be dismissed under both well-established precedent of ED's Office of Hearing Appeals ("OHA") and fundamental principles of due process. In its inexplicable haste to publicly impose severe punishment against Heald, the Department has failed to provide fair notice of the grounds for nearly a thousand separate violations, let alone the basis for its sweeping conclusion that the conduct allegedly underlying each violation—even conduct that the Department appears to admit may amount to mere inadvertence—justifies the imposition of maximum penalties across the board. Rather than examine each circumstance separately, as the law requires, the Department indiscriminately lumps together broad categories of allegedly erroneous disclosures and seeks the imposition of the maximum allowable fine in each instance to reach its headline-grabbing sum of nearly $30 million in penalties. These procedural deficiencies are exacerbated by, or perhaps cover for, the serious substantive errors with respect to the few allegations that can be tested.

The Department's rash action fails to comport with principles of fundamental fairness and due process. As recently as one month ago, the OHA enforced this very principle, holding that the Department not only must identify the *conduct* underlying *each* fine but also must justify

2

the *amount* of each fine *separately*, emphasizing that, "since a fine is a punishment that results in the deprivation of a protected property interest, the concept of due process must be adhered to or else the action would violate the United States Constitution." *In the Matter of Lincoln University*, Docket No. 23-68-SF (March 16, 2015) at 5.

Even the timing of the Notice of Intent demonstrates that it was issued prematurely and without adequate thought and notice to Heald. The Department was nearly two years into an incomplete program review, a review that had neither issued a preliminary determination nor afforded the School an opportunity to respond—much less resulted in a final program review or audit determination. In fact, many of the allegations relate to easily rebuttable allegations (at least where they can be identified) had the Department simply asked for clarifying information and documentation. Nonetheless, the Department abruptly and very publicly[1] issued the Notice of Intent. Rather than proceed with a final program review or audit determination based on not only the Department's review but also an institution's response, the Department has rushed forward and publicly issued the Notice of Intent to Fine.

The Notice of Intent suffers several fatal flaws, including its use of vague categories and anonymous examples of alleged misconduct, rather than setting forth the specific facts underlying each alleged violation, and including its failure to explain the basis for a maximum fine for each occurrence.[2] The Department's failure to provide adequate notice of the facts and

---

[1] The public disclosure of the Notice of Intent further undermines its objectivity and fundamental fairness while underlining the procedural deficiencies, not only because it reads more like a press release but also because the decision appears to be conclusively predetermined.

[2] Even from the general descriptions and citations provided in the Notice of Intent, it is clear that the Department is erroneously taking issue with disclosures of calculations that were voluntarily prepared and are not subject to any required formula by an external agency. As a result, Heald was free to develop its own formula and had no agency definitions of what constitutes an acceptable "job," no limitation on permitted exclusions due to continuing education (which were disclosed), and no rule that prevented the inclusion of certain graduates already employed. In an attempt to provide clear information without any regulatory guidance from agencies that regulated the institution, Heald relied on elements that were very similar to those used by other accrediting agencies

basis for each fine makes it impossible for Heald to respond adequately to the allegations and imposition of a nearly $30 million aggregate penalty. Accordingly, Heald requests that it receive a notification that the fine will not be imposed, pursuant to 34 C.F.R. § 668.84(b)(2)(i).

## FACTS RELEVANT TO MOTION TO DISMISS

According to the Notice of Intent, in a letter dated January 23, 2014, the Department first sought massive amounts of information from Corinthian regarding placement rate percentages and grade and attendance changes at all Corinthian campuses over a four-year period. Corinthian, at significant expense including the hiring of special employees to work solely on the production full time, provided documentation over the course of several months, including a large volume of documents concerning annual placement disclosures, specific student information, newly generated information demanded by the Department, web-based publications and many categories of placement rates and information concerning the calculation of various rates. It is apparent from the Notice that the Department has not reviewed all of this material.

In June and July of 2013, the Department made site visits to the Heald Stockton and Heald Salinas campuses as part of program reviews. Nearly two years later, the Department has not completed either program review, however, and has not issued even a draft program review report for review and comment by Heald.

Notwithstanding that the Department has not completed the program review, has not made any final program review determination, and has not even completed its review of the placement information provided to the Department, on April 14, 2015, the Department published its Notice of Intent to Fine, stating that it had decided that "Heald College and its officers have

---

recognized by the Secretary. Notably, factors and conditions the Department cites as questionable here are currently required by recognized accrediting agencies and the hundreds of colleges and universities they accredit to calculate placement rates. Heald reserves the right to contest these erroneous determinations once (and if) Heald receives proper notice of the conduct underlying each alleged violation and the basis for the determination in each instance that the conduct justified a maximum penalty.

4

failed to adhere to a fiduciary standard of conduct with regard to the calculation and disclosure of job placement rates." The Department relies on the obligation, imposed on institutions participating in Title IV, HEA programs as of July 1, 2010, "to make available to enrolled or prospective students, through appropriate publications, mailings, or electronic media, information concerning the placement of, and types of employment obtained by, graduates of the institution's degree or certificate programs. 34 C.F.R. § 668.41(d)(5)."

In the Notice of Intent, the Department alleges that Heald failed to comply with its placement disclosure obligations in three ways: (1) allegedly omitting "essential and material information concerning the methodology" used to calculate the rates; (2) purportedly misrepresenting job placement rates for a single medical assistant program to its programmatic accreditor (MAERB); and (3) allegedly having backup documentation that did not entirely support the placement rates. The School disputes each of these allegations.

The Department alleges that Heald committed 946 separate violations of its fiduciary duty by making various erroneous placement rate disclosures, but it does not identify each instance of violation. Instead, to support this allegation, the Department provides just over 6 pages of general descriptions and anecdotal examples of allegedly omitted details and alleged misrepresentations. Repeatedly using phrases like, "For instance," "In many instances," "In other instances," and "Examples of these are...," the Department attempts to create the appearance of widespread misconduct and inattention to detail.

Notably, the gravamen of the Department's allegation is that placement rates were "false and inflated" because the *disclosure* "failed to inform students that waivers are excluded from the placement rate calculation." This allegation founders in light of guidance provided by the

Department itself, the plain language of the disclosure, and the limitations imposed on the disclosure by the Department's own mandated template.[3]

The Department also includes Enclosure A, which, according to the Department, "contains examples of placement rates that were not supported by Heald's backup data, and the actual rate that Heald's backup data did support." Enclosure A includes 18 "examples" of allegedly incorrect placement rates, out of the 946 placement rates for which the Department seeks to assess maximum fines. This constitutes less than 2% of the alleged instances of erroneous placement rate disclosures. The Notice of Intent does not indicate whether these 18 unsubstantiated "examples" constitute a representative sampling or represent, in the Department's opinion, the most egregious instances, or, indeed, given the complete absence of transparency, how the examples were selected at all. More to the point, even the "examples" themselves lack any degree of specificity.

With regard to the amount of the fines, the Department categorically determines in the Notice of Intent that that all 946 placement rates "evidenced a blatant disregard for the statutes and regulations governing the Title IV HEA programs," and that all 946 placement rates posed severe potential harm to students and to the government. Notice of Intent at 10. Accordingly, the Department imposed the maximum allowable fines for each alleged violation: $27,500 for each of the alleged 464 rates disseminated before October 2, 2012, and $35,000 for each of the alleged 482 rates disseminated after the maximum fine was increased effective October 2, 2012, totaling $29,665,000. *See* 20 U.S.C. § 1094(c)(3)(B); C.F.R. § 668.84(a)(1); 77 Fed. Reg. 60047

---

[3] A review of many disclosures by other institutions using the mandated template reveals almost identical descriptions of "who's included in the calculation of this rate?" The fact that many other institutions have interpreted and implemented this disclosure in the same way as the School reflects the inherent limitations of the template and the lack of any clear guidance indicating that the disclosure must discuss waivers.

(2012). As discussed below, notwithstanding the clear direction in the law, the bases for the size of each of these fines are entirely absent.

## ARGUMENT

1.  **Dismissal of the Notice of Intent to Fine is Appropriate Because It Neither Provides Adequate Notice of the Basis for Imposing Each Fine Being Levied Nor Adequately Explains How the Department Has Determined the Size of Each Fine.**

Dismissal is appropriate where the Department fails to provide adequate notice of the alleged violations. *In the Matter of Euro Hair Design Inst.*, Docket No. 03-94-SA (Feb. 11, 2004) (dismissing fine against school because FSA's notice to school did not identify how fine was calculated or justified). Where fines might be imposed, "[i]nstitutions are not required at risk or peril of a property interest to speculate as to the meaning of the allegations or findings against it." *Id.* (Subpart H proceeding); *see also In the Matter of Atlanta College of Medical and Dental Careers*, Docket No. 91-93-SA (Dec. 30, 1993). Notice requires, at a minimum, that the respondent be afforded sufficient facts to be able to adequately present pertinent objections. *In the Matter of Euro Hair Design Inst.*, Docket No. 03-94-SA; *Mennonite Board Of Missions v. Adams*, 462 U.S. 791, 799 (1983). These due process principles apply to notice of the basis for a fine. *See also In the Matter of Lincoln University*, Docket No. 23-68-SF (March 16, 2015) at 5.

There can be no argument that the *quantity* of the alleged violations somehow excuses the Department from its fundamental due process and regulatory obligations to provide adequate notice of the grounds for *each* alleged violation and the basis for the amount of each fine. Whether the Department elects to assess a few or a multitude of fines, its obligation to justify each one – and the respondent's right to notice and a fair opportunity to defend itself – remains intact. *See Gray Panthers v. Schweiker*, 652 F.2d 146, 168-69 (D.C. Cir. 1980) ("It is universally agreed that adequate notice lies at the heart of due process. Unless a person is

adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose and resembles more a scene from Kafka than a constitutional process." (footnote omitted)).

### a. The Notice of Intent to Fine Fails to Identify the Vast Majority of Placement Rates for Which It Seeks to Punish Heald.

The Notice of Intent to Fine announces the Department's decision to impose 946 separate fines for claimed errors relating to placement rates – 464 disseminated prior to October 2, 2012 and 482 after. Conspicuously missing from the Notice of Intent is any attempt to identify with any specificity 98% of the 946 specific placement rates for which the Department has claimed a right to levy nearly $30 million in fines. Indeed, to the limited extent the Notice of Intent makes any attempt to identify the particular placement rates that are the subject of fines, it merely provides a conclusory, single-page list of 18 examples of Heald Campuses and Programs for which placement rate variances are claimed. *See* Notice of Intent, Enclosure A.

This unquestionably convenient approach allowed the Department to levy nearly a thousand fines in a mere twelve-page Notice of Intent, but what was gained in clerical economy was lost in constitutional integrity. The OHA has recognized that, "[a] fine is a pecuniary punishment," and as such it must be "tailored to fit the violation" and is "subject to the principles of Constitutional Due Process." *In the Matter of HDS Truck Driving Institute*, Docket No. 07-57-SF (Feb. 1, 2008). As the D.C. Circuit has emphasized, the most basic aspect of due process is receiving notice sufficient to identify the reasons for the denial of a legal interest. *Gray Panthers v. Schweiker*, 652 F.2d 146, 168 (D.C. Cir. 1980). By failing even to identify clearly the specific acts underlying the fines, the Notice of Intent seeks to deprive Heald of property without clearly disclosing the claimed basis for its action and thus violates due process.

b. **The Notice of Intent to Fine Fails to Identify the Specific Ways in Which it Contends Each of the Allegedly Faulty Placement Rates Deviates from Legal Requirements.**

Not having clearly identified the specific placement rates for which it has levied sanctions, the Department discusses the grounds for the 946 fines it seeks to impose by reference to general categories of deficiency that it ascribes broadly to Heald's placement rates. *See* Letter of Intent at 5-10. However, this broad categorical approach fails adequately to link the claimed deficiencies with the specific placement rates for which fines are being levied. The result is that the Notice of Intent fails to identify with requisite specificity the ways in which the individual placement rates are claimed to violate the applicable legal requirements.

For example, the Department argues broadly and without substantiation that Heald "falsely represented in its 2013/2014 web-based disclosures that its placement rates were supported by attestations." Notice of Intent at 6. However in its truncated attempt to define the extent of this alleged error, the Department merely alludes to the existence of "many instances" in which it claims the attestation was improperly signed by Heald personnel. *Id.* The Department makes no attempt to identify how many of the hundreds of relevant placement rates are alleged to suffer from this defect, much less to identify them individually. Instead, the Notice of Intent simply moves on to another non-specific allegation that in some unidentified number of "other instances" the attestation improperly came from data maintained in Heald's CampusVue computerized information system. *Id.*

The Department resorts to similarly generalized references in presenting its position that placement rates were rendered improper whenever they included unnamed and unidentified graduates who had obtained employment within Heald's own campuses. *See* Notice of Intent at 7-8. Although this alleged flaw is claimed to have been seen only in "some instances," it is

9

nonetheless offered as part of the undifferentiated listing of defects justifying *all* of the 946 fines levied by the Department.

The same is true of the Department's claim that fines were justified because Heald "counted placements that were clearly out of the student's field." *See* Notice of Intent at 8-9. Although the Department passingly refers to the alleged flaw as being "routine," the Department's entire analysis identifies only *three* specific instances in which this type of erroneous placement classification occurred. There is an unsupported assumption underlying the example that all employees of a restaurant are "burger flippers." This inaccurate assumption could have been easily rebutted had the normal program review process been followed by the Department. Moreover, each instance related to a single student, and they were confined to a mere two programs. *Id.* Even assuming that the misclassification of one or two student placements could somehow have been sufficient to render an entire placement rate materially inaccurate (and leaving aside whether the placements were incorrect under then-existing standards and definitions), these isolated incidents could not have affected more than two placement rates. And yet this alleged defect is offered as undifferentiated evidence in support of all 946 fines. *Id.*

As these examples illustrate, the Department's decision to announce nearly one thousand fines in a single twelve-page document required it to employ a broad-brush, scattershot form of notice. It prevents any meaningful appraisal of the claims as to each of the many hundreds of fines being levied wholesale on Heald.

Instead, Heald has been presented with a document that leaves it guessing at the conduct alleged to serve as the basis for each of the 946 individual claims, for each of which the Department asserts a right to require the maximum forfeiture. This is the essence of a denial of

due process. As the *Schweiker* court observed: "It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose and resembles more a scene from Kafka than a constitutional process. Without notice of the specific reasons for denial, a claimant is reduced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument against denial at the risk of missing the critical one altogether." 652 F.2d at 168-69.

### c. The Notice of Intent Indiscriminately Imposes the Maximum Possible Fine for Each and Every One of the 946 Fines It Announces.

The Notice of Intent is also defective in that it indiscriminately seeks to impose the maximum possible fine on Heald for each of the 946 placement rates it deems improper. As the Department was unable or unwilling to delineate each violation and justify each fine, one wonders whether the entire exercise was really an attempt to manufacture the largest possible total fine rather than assess a fine for specific conduct. In any event, the Department's approach in this case is improper and cannot be condoned.

As the OHA emphasized as recently as last month, any decision as to the magnitude of a fine must weigh a wide range of considerations, including "the seriousness of the violation as well as the degree of culpability of the violator … the intent or lack thereof of the perpetrator; and the possible deterrent effect punishment might have." *In the Matter of Lincoln University*, Docket No. 13-68-SF (March 16, 2015) at 5; *see also In the Matter of DeMarge College*, Docket No. 04-49-SF (July 19, 2010) at 4-21 (analyzing in detail multiple acts of alleged misconduct and appropriateness of each fine). In fact, the failure to differentiate the magnitude of fines and an agency's imposition of heavy fines without individualized consideration raises additional due process concerns. *In the Matter of Lincoln University*, Docket No. 13-68-SF (March 16, 2015) at

5 ("[T]he law has always abhorred the multiplication of charges in order to enhance punishment, regularly finding such action to violate due process.").

Here, the Department has failed to engage in the type of careful analysis required when determining the magnitude of a fine. For example, the Notice of Intent places significant emphasis on its finding that the wording of Heald's placement disclosures was imprecise as to which graduates they encompassed. Notice of Intent at 6. However, the analysis does not consider whether these imprecisions might have been honest attempts at defining the relevant parameters, as opposed to intentional decisions to mislead, particularly in light of the vague guidance provided by and the template disclosure imposed by the Department. *Id.* Plainly, the Department simply assumed the worst in each and every case. The same is true of the Department's conclusion that it was improper to treat students as placed when they became employed during their studies and maintained their positions after graduation. *Id.* at 7. Again, leaving aside (for now) whether this violates any clear standard or definition, the Department plainly failed to consider whether this approach was adopted in good faith (let alone was proper in the first place).

The same defect can be found in the portion of the Notice of Intent that provides the scant analysis upon which the Department bases its decision to impose maximum penalties across the board for all 946 fines levied against Heald. Despite failing to identify the placement rates for which fines were being levied, much less the specific shortcomings attributed to each of those placement rates, the Department offers only the conclusory assertion that all 946 placement rates categorically "evidenced a blatant disregard for the statutes and regulations governing the Title IV HEA programs." *Id.* at 10. The Department employed a similarly categorical and conclusory

approach in announcing that all 946 placement rates posed severe potential harm to students and to the government.

The OHA has flatly rejected this type of *carte blanche* approach, which eschews individualized analysis and favors uniform imposition of maximum fines. *In the Matter of Lincoln University* involved only ten fines imposed at the maximum rate, but the OHA vehemently rejected this approach, and its observations apply equally—if not more—here:

> [T]he only indication of any consideration of the amount of the fine is a reference to the maximum permissible fine, $27,500 per violation, and a generalized statement to the effect that each violation is serious because, without correct information, students, parents and employees are unable to make informed decisions . . . . [S]pecific mandatory factors must be considered in deciding the range of penalties. If FSA . . . seeks to impose the maximum fine in all fine proceedings, it is clearly not in compliance with the express requirements of the regulation and borders on being arbitrary.

Docket No. 13-68-SF at 6.

It is difficult to imagine a better example of arbitrary decision-making that the blanket imposition of maximum fines for each of 946 undifferentiated instances of alleged placement rate disclosures in the Notice of Intent. The Department made no room for the possibility that *any* of the placement rate disclosures had a reasonable explanation determinable upon closer examination negating any fine at all, or were inadvertent errors or good-faith mistakes that might justify only a small fine. This flaw in the Department's analysis is hidden, of course, in the non-specific, undifferentiated and homogenized method of describing the alleged violations and the presumptive approach to assessing fines. Under the most fundamental concept of due process, a respondent required to answer to such accusations is entitled to more than that.

## CONCLUSION

For the reasons set forth above and any other grounds asserted in further submissions or a hearing in this matter, Heald College respectfully requests that it receive a notification that the fine will not be imposed, pursuant to 34 C.F.R. § 668.84(b)(2)(i), or that the Notice of Intent to Fine be dismissed. To the extent such relief is not granted immediately, Heald College respectfully requests a hearing in this matter pursuant to 34 CFR §§ 668.84(b)(1)(iii) and 668.88.

Respectfully submitted,

David E. Mills
COOLEY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 776-2865

Dated: May 5, 2015                              Counsel for Heald College