# EXHIBIT 3

1  IRELL & MANELLA LLP
   John C. Hueston (164921)
2  Brian J. Hennigan (86955)
   Andra B. Greene (123931)
3  Khaldoun Shobaki (232864)
   Andrew K. Walsh (273763)
4  1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
5  Telephone:    (310) 277-1010
   Facsimile:    (310) 203-7199
6  E-mail:       jhueston@irell.com
                 bhennigan@irell.com
7                agreene@irell.com
                 kshobaki@irell.com
8                awalsh@irell.com

9  HOMER BONNER JACOBS
   Peter W. Homer (pro hac vice)
10 1200 Four Seasons Tower
   1441 Brickell Avenue
11 Miami, Florida 33131
   Telephone:    (305) 350-5100
12 Facsimile:    (305) 372-2738
   E-mail:       phomer@homerbonner.com

13
   Attorneys for Defendants
14
                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
15
                 FOR THE COUNTY OF SAN FRANCISCO
16

17
   THE PEOPLE OF THE STATE OF          )  Case No. CGC-13-534793
18 CALIFORNIA,                         )
                                       )  THE SCHOOL'S AMENDED VERIFIED
19              Plaintiff,             )  ANSWER
                                       )
20      vs.                            )  Assigned to Hon. Curtis E.A. Karnow, Dept.
                                       )  304
21 HEALD COLLEGE, LLC; CORINTHIAN      )
   COLLEGES, INC.; CORINTHIAN          )  Action Filed: October 10, 2013
22 SCHOOLS, INC.; SEQUOIA EDUCATION,   )
   INC.; CAREER CHOICES, INC.; MJB     )
23 ACQUISITION CORPORATION; TITAN      )
   SCHOOLS, INC.; RHODES COLLEGES,     )
24 INC.; FLORIDA METROPOLITAN          )
   UNIVERSITY, INC.; EVEREST COLLEGE   )
25 PHOENIX, INC.; and DOES 1 through 100, )
   INCLUSIVE,                          )
26                                     )
                Defendants.            )
27 _____    )

28

1    Pursuant to California Code of Civil Procedure § 446, Defendants Heald College LLC,

2  Corinthian Colleges, Inc., Corinthian Schools, Inc., Sequoia Education, Inc., Career Choices, Inc.,

3  MJB Acquisition Corporation, Titan Schools, Inc., Rhodes Colleges, Inc., Florida Metropolitan

4  University, Inc. and Everest College Phoenix, Inc. (collectively, "the School") hereby answer the

5  numbered paragraphs of the People of the State of California's (hereinafter, "the Government")

6  First Amended Complaint for Civil Penalties, Permanent Injunction, and Other Relief

7  ("Complaint") as follows:

8                              **PRELIMINARY STATEMENT**

9    The Government's false allegations and the aspersions cast on the School's relationship with

10  its students are offensive and demeaning—to the School and its employees; to its students who are

11  striving for a career and a better life; and to the employers who hire its thousands of qualified

12  graduates.  The Government's Complaint also implies that state regulators and accreditation

13  agencies have failed to provide proper oversight of the School.  This is ill informed and

14  demonstrably untrue.

15    The Complaint suggests that the School's employees go to work every day for the express

16  purpose of preying on students.  This is insulting and preposterous.  The School and its employees

17  are passionately dedicated to providing quality career education, to helping students overcome

18  academic and personal obstacles that stand in the way of completing their programs, and to

19  helping graduates find meaningful work in their fields of study.  Most of the School's students

20  have not succeeded in a traditional academic environment; approximately 40% have tried

21  community college before enrolling at one of its institutions.  Frequently, the School's students

22  have few people in their lives who can provide the support and encouragement they need to

23  achieve a career goal.  The School and its employees are committed to honoring the trust that its

24  students place in them.  Its campus teams work in concert to teach, mentor, counsel, coach and

25  cheerlead their students to success.  Across the School's network of campuses, it has one career

26  services employee for approximately every 108 students; in a typical community college, that ratio

27  is typically one counselor for approximately 1,000 students, including all types of counseling,

28  from personal to academics to career.  The School's substantial and on-going investment in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 2 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1   placement services has helped tens of thousands of graduates find work in their fields, even during

2   the recent deep and prolonged recession.

3       As a career institution, the School is subject to a complex, oft-times conflicting, and extensive

4   web of federal and state regulation, along with myriad accreditation, licensing and reporting

5   requirements.  The School has been, and continues to be an industry leader in its commitment to

6   integrity and to the implementation and enhancement of processes and training to promote

7   compliance.  The School has devoted substantial resources to not only meet these regulatory

8   requirements, but to exceed them.  Rather than acknowledging and commending the School's

9   aspirational goals, the Government is seeking to punish the School.  The Complaint is replete with

10  selective, misleading and out-of-context quotations that attempt to turn the School's commitment

11  to high standards against it.

12      In California, the School has cooperated extensively with the Government.  It has done so

13  openly and because it has confidence in its internal controls and its people.  The School provided

14  several hundred thousand pages of documents, voice recordings and answers to new questions

15  posed on an almost-weekly basis by the Government.  The School repeatedly offered to present

16  information and explanation on any issues about which the Government had concerns.  Without

17  accepting those offers and without any notice, the Government filed this Complaint—a document

18  built on a foundation of misquoted, deceptively excerpted, and—at best—misunderstood

19  materials.  For example, the Government cites a slide from a presentation in paragraph 51(e) for

20  the proposition that there was a "placement file error rate of 53.6 percent to 70.6 percent."  In

21  reality, that slide does not even include the word "placement," and the internal review in question

22  did not reflect a single suspect, let alone false placement, contrary to the Government's

23  insinuation.

24      Since filing its Complaint on October 10, 2013, the Government has not substantiated its false

25  and misleading allegations against the School.  Instead, it has amended the Complaint to add

26  claims that it had already investigated well before filing the original Complaint.  This intentional

27  delay and the additional baseless allegations have further harmed the School.  The School still

28  stands ready to address and expose the Government's mischaracterizations before this Court.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 3 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

**INTRODUCTION**

1.      The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the Government's representations about its purported reasons for bringing this action, and denies the allegations in paragraph 1 on that basis.  What's past is prologue:  In 2007, the Government received $4,300,000 to distribute to students as part of the stipulated judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior Court).  More than *six years* later, over $1.7 million still sits in the Government's coffers because it has failed to diligently locate and disburse the funds to the students—although the Government recently attempted to distribute more of this money after it received the School's original answer.  The balance of the allegations in paragraph 1 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 1.

2.      The School vehemently denies that it engages in "unlawful, unfair and fraudulent practices" as alleged in paragraph 2.  The School admits that the costs and fees for the programs listed in paragraph 2 are accurate.  Education costs have risen significantly for all education sectors, and have been driven higher by the federal government's 90/10 rule in the proprietary sector.  Except as expressly admitted herein, the School denies the allegations in paragraph 2.

3.      The School serves non-traditional students with varied demographics.  The School's research has revealed insights about how these students *view themselves*, and what kinds of models and services the School can provide to help these students succeed in their stated educational goals.  In the Complaint, the Government selectively quoted from a slide contained in a presentation in an attempt to misleadingly cast the School's view of its students in a negative light.  A copy of the complete slide is attached hereto as **Exhibit A**.  For students who described themselves as "isolated," the School saw a need for a "[s]ense of belonging, place where they can succeed."  For students who described themselves as having "low self esteem," the School saw a need for a "[c]onfident, capable, real adult, role model for kids."  For those who said they have "few people in their lives who care about them," the School saw a need to provide "[e]ncouragement, someone who believes in them."  And for those who said they were "[s]tuck,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 4 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  unable to see and plan well for the future," the School offered "[s]omeone who can show them

2  how so they can gain independence."  The School admits that it is proud to offer a meaningful,

3  nurturing environment that responds to the self-professed needs of its students.  The School admits

4  that it uses Internet, telemarketing and television advertisement to publicize its programs and

5  encourage students to better their lives through education.  Except as expressly admitted herein,

6  the School denies the allegations in paragraph 3.

7      4.      The School admits that the stipulated judgment in *People v. Corinthian Schools, Inc.,*

8  *et al.*, No. BC374999 (Los Angeles Superior Court) includes injunctive relief.  The stipulated

9  judgment speaks for itself, including the obligation of the Government to distribute funds to

10  students, which it has failed to do.  Except as expressly admitted herein, the School denies the

11  allegations in paragraph 4.

12      5.      The allegations in paragraph 5 are conclusions of law and a prayer for relief, to which

13  no response is required.  To the extent that they may be construed as factual allegations, the

14  School denies the allegations in paragraph 5.  Nonetheless, the School prays that the Government

15  take nothing by the Complaint, that the requested injunctive and equitable relief be denied, that the

16  School be awarded judgment in this action.

17                                              **THE PARTIES**

18      6.      The School admits that Kamala D. Harris is the Attorney General of the State of

19  California.  The allegations in paragraph 6 are conclusions of law to which no response is

20  required.  Except as expressly admitted herein, the School denies the allegations in paragraph 6.

21      7.      The School admits the factual allegations of paragraph 7, noting that Heald College

22  LLC is an indirect subsidiary of Corinthian Colleges, Inc.

23      8.      The allegation in paragraph 8 is the Government's definition of what it means when it

24  uses the term "Heald," and no responsive pleading is required, except that Heald College LLC has

25  no subsidiaries.

26      9.      The School admits the factual allegations of paragraph 9 related to Corinthian

27  Colleges, Inc.'s incorporation, principal place of business, subsidiary ownership and enrollment of

28  students in California.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 5 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    10.    The School admits the factual allegations regarding its stock symbol and listing in

2 paragraph 10.  The remaining allegations in paragraph 10 are conclusions of law to which no

3 response is required.  Except as expressly admitted herein, the School denies the allegations in

4 paragraph 10.

5    11.    The allegation in paragraph 11 is the Government's definition of what it means when it

6 uses the term "Corinthian Colleges, Inc.," and no responsive pleading is required.

7    12.    The School admits the factual allegations regarding Corinthian Schools, Inc.'s

8 incorporation, principal place of business and nature as a wholly-owned subsidiary found in

9 paragraph 12, but denies that Corinthian Schools, Inc. owns the Ontario Metro campus, and denies

10 that Corinthian Schools, Inc. currently owns the Los Angeles – Wilshire, San Francisco, Hayward

11 and San Jose campuses.

12    13.    The allegation in paragraph 13 is the Government's definition of what it means when it

13 uses the term "Corinthian Schools, Inc.," and no responsive pleading is required.

14    14.    The School admits the factual allegations regarding Sequoia Education, Inc.'s

15 incorporation, principal place of business and ownership.

16    15.    The allegation in paragraph 15 is the Government's definition of what it means when it

17 uses the term "Sequoia Education, Inc.," and no responsive pleading is required.

18    16.    The School admits the factual allegations regarding Career Choices, Inc.'s

19 incorporation, principal place of business, subsidiary ownership and nature as a wholly-owned

20 subsidiary.

21    17.    The allegation in paragraph 17 is the Government's definition of what it means when it

22 uses the term "Career Choices, Inc.," and no responsive pleading is required.

23    18.    The School admits the factual allegations regarding MJB Acquisition Corporation's

24 incorporation, principal place of business and ownership.

25    19.    The allegation in paragraph 19 is the Government's definition of what it means when it

26 uses the term "MJB Acquisition Corporation," and no responsive pleading is required.

27    20.    The School admits the factual allegations regarding Titan Schools, Inc.'s incorporation,

28 principal place of business, subsidiary ownership and nature as a wholly-owned subsidiary.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 6 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1      21.     The allegation in paragraph 21 is the Government's definition of what it means when it

2  uses the term "Titan Schools, Inc.," and no responsive pleading is required.

3      22.     The School admits the factual allegations regarding Rhodes Colleges, Inc.'s

4  incorporation, principal place of business, subsidiary ownership, nature as a wholly-owned

5  subsidiary and that it conducts business in California.

6      23.     The allegation in paragraph 23 is the Government's definition of what it means when it

7  uses the term "Rhodes Colleges, Inc.," and no responsive pleading is required.

8      24.     The School admits the factual allegations regarding Florida Metropolitan University,

9  Inc.'s incorporation, principal place of business, subsidiary ownership, nature as a wholly-owned

10  subsidiary and that it conducts business in California.

11      25.     The allegation in paragraph 25 is the Government's definition of what it means when it

12  uses the term "Florida Metropolitan University, Inc.," and no responsive pleading is required.

13      26.     The School admits the factual allegations regarding Everest College Phoenix, Inc.'s

14  incorporation, principal place of business and ownership and that it conducts business in

15  California.

16      27.     The allegation in paragraph 27 is the Government's definition of what it means when it

17  uses the term "Everest College Phoenix, Inc.," and no responsive pleading is required.

18      28.     The School is without knowledge or information sufficient to form a belief as to the

19  truth or falsity of the allegations of paragraph 28 and denies the allegations on that basis.

20      29.     The allegation in paragraph 29 is the Government's definition of what it means when it

21  uses the term "DOE Defendants 1 to 50," and no responsive pleading is required.

22      30.     The allegation in paragraph 30 is the Government's definition of what it means when it

23  uses the term "DOE Defendants 51 to 100," and no responsive pleading is required.

24      31.     The allegation in paragraph 31 is the Government's explanation of what it means when

25  it uses the terms "CCI" or "Defendants," and no responsive pleading is required.

26      32.     No responsive pleading is required to paragraph 32.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 7 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    33.    The allegations in paragraph 33 are conclusions of law to which no response is

2  required.  To the extent that they may be construed as factual allegations, the School denies the

3  allegations in paragraph 33.

4    34.    The allegations in paragraph 34 are conclusions of law to which no response is

5  required.  To the extent that they may be construed as factual allegations, the School denies the

6  allegations in paragraph 34.

7    35.    No responsive pleading is required to paragraph 35.

8    36.    The allegations in paragraph 36 are conclusions of law to which no response is

9  required.  To the extent that they may be construed as factual allegations, the School denies the

10  allegations in paragraph 36.

11    37.    The allegations in paragraph 37 are conclusions of law to which no response is

12  required.  To the extent that they may be construed as factual allegations, the School denies the

13  allegations in paragraph 37.

14    38.    The allegation in paragraph 38 is a conclusion of law to which no response is required.

15    39.    The allegations in paragraph 39 are conclusions of law to which no response is

16  required.  To the extent that they may be construed as factual allegations, the School denies the

17  allegations in paragraph 39.

18                            **JURISDICTION AND VENUE**

19    40.    The allegation in paragraph 40 is a conclusion of law to which no response is required.

20    41.    The allegation in paragraph 41 is a conclusion of law to which no response is required.

21    42.    The allegation in paragraph 42 is a conclusion of law to which no response is required.

22  To the extent that this is construed as a factual allegation, the School is without knowledge or

23  information sufficient to form a belief as to the truth or falsity of the allegation in paragraph 42,

24  and denies the allegation on that basis.

25    43.    The allegation in paragraph 43 is a conclusion of law to which no response is required.

26    44.    The allegation in paragraph 44 is a conclusion of law to which no response is required.

27    45.    The allegation in paragraph 45 is a conclusion of law to which no response is required.

28  The Government bases its claim of jurisdiction on the July 31, 2007 Final Judgment in *People v.*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 8 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    *Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior Court).  The judgment

2    speaks for itself, including the Government's obligation to distribute funds to students and the

3    benefit to the Government should it fail to do so.  In the judgment, the Los Angeles Superior Court

4    retained jurisdiction over actions to enforce the terms of the judgment.  Instead of seeking to

5    enforce the judgment before the court that entered it, the Government has chosen to bring this case

6    in a venue more than 400 miles away from the School's headquarters, operations center and many

7    potential trial witnesses in Santa Ana, California.

8                                **THE GOVERNMENT'S ALLEGATIONS**

9        46.    The School admits that it educates students through nationally and regionally

10    accredited campuses and online, including the identified schools.

11          **The School Accurately Reports Job Placement Rates to Students and Accreditors**

12        47.    The School calculates and reports student placement statistics based on formulae and

13    criteria established by a variety of regulatory bodies.  The nature of these calculations varies

14    widely between, on the one hand, accreditors like ACCSC and ACICS and on the other hand,

15    reports mandated by the United States Department of Education's Program Integrity Rules and the

16    State of California's Bureau for Private Postsecondary Education.  The School has robust

17    compliance, accreditation and licensing processes in place to ensure that its reports are accurate

18    and comply with the applicable rules and regulations.  The School denies that its July 1, 2012

19    disclosures do not "match or agree" with the School's placement data.  The Government's

20    allegations in paragraph 47 are vague and ambiguous as to the purported representations and

21    advertisements at issue.  As such, the School is without knowledge or information sufficient to

22    form a belief as to the truth or falsity of the Government's allegations in paragraph 18 about

23    "representations and advertisements," and denies them on that basis.  To the extent the allegation

24    is based on the out-of-context and misleading documents cited in paragraph 51, see the School's

25    response to that paragraph.  Except as expressly admitted herein, the School denies the allegations

26    in paragraph 47.

27        48.    The School admits that Executive Vice President of Operations, Bob Bosic, wrote in a

28    November 30, 2011 e-mail quoted by the Government in paragraph 48 that: "Successfully placing

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 9 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  our students in quality jobs is extremely important to [the School]. Our students come to us

2  primarily to gain skills and find a position that will help them launch a successful career." This

3  statement reflects the School's long-standing and continued commitment to the success of its

4  graduates. The School admits that a 2012 marketing study on student enrollment decisions at

5  Everest campuses showed that for some students, those decisions were driven primarily by

6  "affordability & placement concerns," while other students were "more driven by programmatic

7  virtues." Except as expressly admitted herein, the School denies the allegations in paragraph 48.

8      49.     The School admits that it issues standardized disclosures for each campus. These

9  disclosures are related to, among other things, job placement, in order to assist prospective

10  students in making the best educational decision for themselves with the help of their trusted

11  advisors. The School encourages prospective students to visit and tour a campus prior to

12  enrollment and to bring family and trusted advisors with them. The School denies that it makes

13  these disclosures to "help sell its programs to prospective students" as alleged by the Government

14  in paragraph 49. While such disclosures may benefit a student's informed enrollment decision,

15  their existence and content are mandated by the United States Department of Education's Program

16  Integrity Rules and the State of California's Bureau for Private Postsecondary Education. Thus,

17  the School makes these disclosures to assist students and to comply with requirements put in place

18  by Government agencies. The School admits that the standardized disclosures "contain placement

19  rates for each program" where such information is available. Except as expressly admitted herein,

20  the School denies the allegations in paragraph 49.

21      50.     The School admits that published placement rates for some cohorts and programs are

22  accurately as high as 100 percent. The School's enrollment documents, catalog and training to

23  admissions representatives are unmistakably clear that post-graduation placement is not

24  guaranteed. The School collects information to support its disclosures as is prudent and required

25  by regulatory agencies. The School is without knowledge or information sufficient to form a

26  belief as to the truth or falsity of the allegation about the beliefs of prospective students in

27  paragraph 50 and denies the allegations on that basis. Except as expressly admitted herein, the

28  School denies the allegations in paragraph 50.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 10 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

51.     The School denies the out-of-context and intentionally-misleading allegations in paragraph 51.

    a.  The School's Executive Leadership Team meets periodically to discuss strategic initiatives and plans.  During these strategic planning sessions, the leadership engages in frank discussions of potential issues the School faces.  The School admits that CEO Jack Massimino circulated a 64-page presentation prior to the team meeting in September 2011.  The school admits that, in the context of a series of slides discussing Government funding, the presentation includes one slide titled "Implications," with the following text: "We had a [cohort default rate] problem and fixed it.  We had a retention compliance problem and got back into compliance. We have a placement compliance problem now *and need to get back into compliance*.  Do we need to execute against standards higher than just compliance?" (emphasis added).  The concerns expressed in this slide about placement compliance refer to the fact that the School had too many programs on placement reporting status with its accreditors—meaning that in a challenging employment environment amid the worst recession in generations, School leadership was concerned about not placing a sufficient number of its graduates. This slide does not, as the Government insinuates, mean that the School's leadership believed that the School had issues with the falsification of student placements.  Except as expressly admitted herein, the School denies the allegations in paragraph 51(a).

    b.  The School admits that by letter dated December 7, 2011, ACCSC granted Everest College Hayward a renewal of accreditation for five years subject to a single stipulation.  The School admits that the selectively, and misleadingly, quoted portions of the ACCSC communications are part of a broader dialogue between the School and ACCSC related to the renewal of Hayward's accreditation.  What the Government fails to mention is that the School provided ACCSC with documentation showing that the placements with Select Staffing were paid,

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 11 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    sustainable, appropriate based on the educational objectives of the Medical

2    Assistant diploma program, aligned with the objectives of and directly related to

3    that program.  These were not just single-day or two-day assignments, but rather

4    repeated work at varying health fairs throughout the Bay Area.  Such variety and

5    flexible scheduling are appealing characteristics of employment to some graduates.

6    Further, ACCSC accepted the documentation regarding the sustainable nature of

7    the placements with Select Staffing, removed the stipulation and on March 6, 2013,

8    provided written notice that the stipulation had been satisfied.  Except as expressly

9    admitted herein, the School denies the allegations in paragraph 51(b).

10    c.    The School admits that Executive Vice President of Operations, Bob Bosic and

11          West Division President Nicole Carnagey exchanged a series of e-mails on

12          February 10, 2012 about job placement issues at Everest College Hayward and

13          Everest College San Francisco.  This e-mail discussion demonstrates that

14          leadership moves swiftly and decisively to deal with any alleged irregularities.  The

15          Government fails to include that the questionable student placements were

16          investigated, removed and never reported to accreditors or included on a student

17          disclosure form.  Except as expressly admitted herein, the School denies the

18          allegations in paragraph 51(c).

19    d.    The School admits that an Unannounced Compliance Audit Report for Everest

20          College San Francisco covering the period from July 1, 2011 to March 3, 2012 was

21          circulated by e-mail to the School's senior executives and management on March

22          19, 2012.  Unannounced compliance audits are regularly conducted by the School

23          to promote compliant, ethical behavior and to identify and remedy irregularities.

24          Such self-critical analysis is a hallmark of the School's efforts to do what is right

25          by students and to comply with multiple layers of regulation—an effort the

26          Government seeks to punish.  Internal audit reports such as this are routinely

27          circulated to senior executives and management as part of the School's effort to

28          demonstrate to the campuses the importance of these compliance audits.  The

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 12 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    School admits that the report includes a finding that Career Services was missing

2    employment verification forms for eight of fifteen students randomly sampled

3    during the audit.  The audit report does not include a finding that those students

4    were not in fact placed, only that some hard-copy documentation was missing from

5    the student files.  The Government omits the report's finding of exceptions in only

6    2.03% of the campus's Career Services Department.  Except as expressly admitted

7    herein, the School denies the allegations in paragraph 51(d).

8    e.   The School admits that a 69-page document titled "Quarter 3 Compliance Review:

9    EOU Divisional" was e-mailed to Executive Vice President David Poldoian on

10   April 13, 2013.  The document is a summary of a self-audit conducted to promote

11   compliance with accreditor, governmental and auditor standards.  The School

12   denies that the document shows "a placement file error rate of 53.6 percent to 70.6

13   percent."  The Government's deceptive quotation is highlighted by:  a) the

14   document itself identifying that the percentages are based on the measurement of

15   individual *attributes* and not *files*; and b) the quoted page clearly indicating the vast

16   majority of findings relate, not to placement, but to retention of students in various

17   programs.  The page of the presentation from which the Government has plucked

18   these percentages does not even include the words "placement" or "placement file."

19   Not one of the findings relates to an improper placement.  Except as expressly

20   admitted herein, the School denies the allegations in paragraph 51(e).

21   f.   The School admits that Executive Vice President of Operations Bob Bosic sent an

22   e-mail containing the language quoted in paragraph 51(f).  Contrary to the

23   Government's aspersions, the e-mail shows that the School's executives are

24   focused on continually improving internal processes and addressing and resolving

25   audit issues that come to their attention.

26   g.   The School admits that Executive Vice President of Operations Bob Bosic sent an

27   e-mail attaching an eleven-page presentation containing the language quoted in

28   paragraph 51(g).  The presentation is a summary of a call between campus and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 13 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    regional representatives and Michelle Reed, the Vice President of Compliance.  On

2    that call, the campus representatives expressed their frustration about the time

3    required for the Compliance Employment Verification Team to re-confirm job

4    placements made by the campuses.  Contrary to the Government's insinuation, at

5    this time the School had a comprehensive written policy on placements (RA023) in

6    addition to the long-standing accreditor guidelines defining job placements.  The

7    definitional issue resulted not from the absence of guidelines, but rather multiple,

8    competing and contradictory definitions from different sources combined with the

9    inherent subjectivity in determining a placement.  The presentation reflects a

10   discussion about suggestions for methods to streamline second-pass verification so

11   that it did not create bottlenecks for the campuses or dissatisfaction among

12   employers.  Far from reflecting a lack of verification as the Government suggests,

13   the document includes claims that employers were being contacted *from three up to*

14   *six times* to confirm placements.

15   h.    The School admits that on May 18, 2012, Western Division President Nicole

16         Carnagey and Executive Vice President of Operations Bob Bosic engaged in the e-

17         mail exchange excerpted by the Government in paragraph 51(h).  In this e-mail,

18         Carnagey and Bosic discussed the fact that Everest Renton had failed an internal

19         audit.  The type of forms required internally by the School for record-keeping in

20         student files was changed in the middle of the audit year, causing some confusion

21         on campuses about the correct form to use.  At the Renton campus student data was

22         re-recorded on the newer version of those forms for dates before that version of the

23         form was created.  This irregularity was found and reported by internal audit,

24         leading to a failing score for the campus.  To the extent that the Government's

25         characterization in paragraph 51(h) differs from the plain language of the e-mail

26         exchange, the School denies those allegations.  Except as expressly admitted

27         herein, the School denies the allegations in paragraph 51(h).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 14 -

i.  The School admits that on June 14, 2012, Executive Vice President of Operations Bob Bosic forwarded the e-mail message selectively quoted by the Government. The forwarded message is a preliminary assessment of needs to support an information-technology platform to, among other things, better link the campuses with the School's placement verification team. The author of the message, Greg McHugh, is an outside consultant who had just started working to understand the project needs and was unfamiliar at this time with the operational details of placement verification and re-verification and the relevant policy guidance documents. The School, at this time, had a written placement evaluation policy (RA023), placement definitions from accreditors and a suite of supporting materials to help the School's employees assess the validity of student job placements. The exchange clearly denotes continuous improvement, not danger of falsified placements. To the extent that the Government's characterization in paragraph 51(i) differs from the plain language of the e-mail exchange, or selectively omits information that is necessary to convey the context and full meaning of the e-mail exchange, the School denies those allegations. Except as expressly admitted herein, the School denies the allegations in paragraph 51(i).

j.  The School admits that on July 13, 2012, Vice President of Compliance Michelle Reed e-mailed Executive Vice President Beth Wilson about some irregularities that Reed had investigated with regards to self-employed job placements at the Long Beach Wyotech campus. The School discovered and investigated these placement issues through its internal controls, and, after a rigorous review of records, removed a number of job placements on its own initiative. Contrary to the Government's unfounded assertion, the removed students were not part of a cohort that was reported in student disclosures published in July 2012, and thus, contrary to the Government's insinuation, there was no need for an amendment of any disclosures. The School admits that the July 2012 student disclosures for the Long Beach Wyotech campus have not been amended as there was no need to do so. To the

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 15 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1 extent that the Government's characterization in paragraph 51(j) differs from the

2 plain language of Ms. Reed's e-mail, the School denies those allegations. Except

3 as expressly admitted herein, the School denies the allegations in paragraph 51(j).

4 k. The School admits that Christian Dieckmann, Assistant Vice President of Student

5 Outcomes, sent the e-mail partially and misleadingly quoted in paragraph 51(k).

6 The Government fails to quote the next line, which states that directors of career

7 services "and campuses have been requesting that we provide more clarity on what

8 procedures to follow in order to stay consistent with current Internal Audit and

9 Compliance requirements." In other words, the operations and audit/compliance

10 divisions of the School were working together to ensure that campuses could

11 understand and comply with the requirements of, among other things, the

12 Compliance Employment Verification Team. This e-mail reflects the School's

13 commitment to continuous improvement in processes. The standard operating

14 procedures discussed in the email were additional documents to be created on top

15 of already-existing standards for job placement.

16 l. The School admits that the results of a third-party audit conducted by Hyper Core

17 Solutions on behalf of ACCSC were e-mailed to Executive Vice President Beth

18 Wilson and Chief Academic Officer Richard Simpson on August 28, 2012. The

19 School submitted responses and supporting documentation from its files to ACCSC

20 for each of the student job placements identified by Hyper Core. ACCSC accepted

21 the School's submissions without any further requests for information. The audit

22 report and related communications speak for themselves and demonstrate the

23 challenges of employment verification, particularly by those with undeveloped

24 skills conducting verifications long after the placement was made. To the extent

25 that the Government's characterization in paragraph 51(l) differs from the plain

26 language of the audit report and accompanying communications, or selectively

27 omits information necessary to convey the context and full meaning of these

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 16 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    communications, the School denies those allegations.  Except as expressly admitted

2    herein, the School denies the allegations in paragraph 51(l).

3    52.    The School denies the allegations in paragraph 52.

4    **The School's Accurate Statements to Investors**

5    53.    The School denies the allegations in paragraph 53.

6        a.    The School admits the allegation in paragraph 53(a) that quotes a statement

7        contained in the School's 2012 Annual Report (Form 10-K).

8        b.    The School admits that the statement "CY 11 placement 68.1% vs. 67.6% in CY

9        10" appears in investor presentations dated August 20, 2012 and October 31, 2012.

10        This statement is included as a sub-bullet on a slide that is identical in both twenty-

11        three page presentations, titled "Focused on Student Perspectives."  Except as

12        expressly admitted herein, the School denies the allegations in paragraph 53(b).

13        c.    The School admits that on January 24, 2013 it completed a Registration Statement

14        (Form S-8), for the School's Employee Stock Purchase Plan, and that the S-8

15        incorporated by reference, among other things, the School's 2012 Annual Report

16        (Form 10-K).  The Form S-8 is a document that speaks for itself.

17        d.    The School admits that presentations prepared for investors and dated January 31,

18        2013, March 11, 2013, and April 30, 2013 include a slide with a bar chart that

19        shows 48,930 "eligible graduates by cohort" for 2011, with 33,316 "eligible

20        graduates placed in field" for 2011, and that the School's CEO used the March 11,

21        2013 document as part of a presentation to investors.  Except as expressly admitted

22        herein, the School denies the allegations in paragraph 53(d).

23        e.    The School admits the allegations in paragraph 53(e).

24        f.    The School admits the allegations in paragraph 53(f).

25    54.    The School denies that statements made about the 2011 graduation cohort were false

26    when made and that its senior executives made knowing false statements.  The School's own data

27    and files indicate that the statements are materially accurate.  The School denies the allegations in

28    paragraph 54.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 17 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

a.   The School admits that on July 31, 2012 Executive Vice President Beth Wilson exchanged communications by e-mail about excluding graduates from closed campuses in calculating placement rates.  The School denies that any such decision or instruction was made "to bring the placement rate higher."  The teach-outs of the campuses at Fife, Washington, Ft. Lauderdale, Florida, Chicago, Illinois, Decatur, Georgia and Arlington, Virginia were disclosed to investors in the School's 2012 Form 10-K, among other places.  Except as expressly admitted herein, the School denies the allegations in paragraph 54(d).

b.   The School denies the allegations in paragraph 54(b) and does not believe it has included placements from outside the cohort period.

c.   The Government's allegations in paragraph 54(c) are vague and ambiguous as to what it means by a "substantial number of double-counted placements."  The School believes that it properly counts placements.  As such, the School is without knowledge or information sufficient to form a belief as to the truth or falsity of the Government's allegations in paragraph 54(c) and denies them on that basis.

d.   The School admits that on November 16, 2012, Michelle Reed e-mailed a spreadsheet related to the transition of the School's Compliance Employment Verification Team to a new database management system for tracking their second-level re-verifications of student job placements or waivers.  Such re-verification is not required and is an example of the School going above and beyond to promote accuracy in record keeping and reporting.  As required by ACCSC and ACICS, each of the student job placements or waivers listed in the spreadsheet cited by the Government had already been verified at least once by a campus-level career services representative who assisted the student in finding employment.  No further verification was required by those accrediting agencies or any other regulator.  The spreadsheet relied upon by the Government for its false accusation simply identifies the open student verification files at the time of database transition that had neither been confirmed nor refuted by the Compliance Employment Verification Team.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 18 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1          Except as expressly admitted herein, the School denies the allegations in paragraph

2          54(d).

3      55.    The School denies the allegations in paragraph 55.

4      56.    The School denies the allegations in paragraph 56 particularly in light of the reliance

5  on the misleadingly misquoted documents from paragraph 51.

6      57.    The School denies the allegations in paragraph 57.

7      58.    The allegations in paragraph 58 are conclusions of law to which no response is

8  required.  To the extent that they may be construed as factual allegations, the School denies the

9  allegations in paragraph 58.

10          a.  To the extent that the statements in paragraph 58(a) are construed as allegations and

11              not argument or conclusions of law, the School denies the allegations in paragraph

12              58(a).

13          b.  The School admits that the ACCSC and ACICS have minimum accreditation

14              placement rates which are not the same as the benchmark rates.  The standards

15              quoted by the Government in paragraph 58(b) are not minimum compliance

16              standards although the Government implies they are.  To the extent that the other

17              statements in paragraph 58(b) are construed as allegations and not argument or

18              conclusions of law, the School denies the allegations in paragraph 58(b).

19          c.  The School admits that the cohort default rate (CDR) is a measure used by some

20              regulators.  To the extent that the other statements in paragraph 58(c) are construed

21              as allegations and not argument or conclusions of law, the School denies the

22              allegations in paragraph 58(c).

23          d.  To the extent that the statements in paragraph 58(d) are construed as allegations

24              and not argument or conclusions of law, the School denies the allegations in

25              paragraph 58(d).

26      59.    The School sets high standards for itself in serving students.  When considerable effort

27  has been expended and those standards are not met and students are less likely to obtain

28  employment in a certain city, then the School will close the campus.  The e-mail cited in

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 19 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  paragraph 59 speaks for itself.  The Government's allegations in paragraph 59 about it being the

2  School's "strategy" to close schools imply that the School is attempting to manipulate placement

3  figures when the School is actually acting in the students' best interest for a particular geography.

4  Except as expressly admitted herein, the School denies the allegations in paragraph 59.

5  **Internet Advertising**

6  60.    The School admits the allegations in paragraph 60.

7  61.    The School denies the allegations in paragraph 61.  Many prospective students

8  searching for more information about educational opportunities do not know with specificity what

9  programs interest them.  They may begin their search broadly or specifically based on a recent

10  doctor's visit or following an ultrasound or X-ray.  The School provides such prospective students

11  with the opportunity to learn more about its allied health offerings in the clearly marked, shaded

12  section labeled "Ads related to" in Google searches.  The landing pages accessed from these ads

13  clearly identify the programs offered by the School's campuses.  These ads and the associated web

14  pages are not misleading.  Indeed, not a single prospective student who clicked on the ads attached

15  as Exhibit A to the Complaint actually started at any School.

16  62.    The School is without knowledge or information sufficient to form a belief as to the

17  truth or falsity of the allegations of paragraph 62 and denies the allegations on that basis.  To the

18  best of the School's knowledge, no students have been "routinely tricked" by related ads as stated

19  in paragraph 61.

20  63.    The School denies the allegations in paragraph 63.  The School's enrollment process is

21  designed to be low pressure and to encourage prospective students to ask many questions, tour the

22  campus and bring their trusted advisors to assist them.  A simple review of the Government

23  Accountability Office recordings of the School's admissions representatives reveals how

24  unthreatening, low pressure and information-filled the enrollment process is.  The School trains its

25  admissions representatives to be open, honest and truthful in their interactions with potential

26  students.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

1    64.    The School denies the allegations in paragraph 64.  The School trains its employees to

2    be honest and truthful in conversations with everyone.  It does not discipline employees, including

3    call center employees, for being honest.

4    **Military Advertising**

5    65.    The School denies the allegations in paragraph 65.

6    66.    The School denies the allegation in paragraph 66.  The School denies that the Armed

7    Services seals were displayed "prominently" or implied any endorsement by the various branches.

8    67.    The School values its military students, providing quality educational experiences with

9    the respect veterans and their family members deserve.  All of the School's California Everest and

10   Heald campuses are recognized by the Department of Veteran's Affairs for participation in the

11   Yellow Ribbon Program and are recognized by organizations such as Military Friendly Schools,

12   which employs a vigorous vetting process.  The School admits that the official seals of the United

13   States Department of the Army, the United States Department of the Navy, the United States

14   Department of the Air Force, the United States Marine Corps and the United States Coast Guard

15   (collectively, "Armed Services") were displayed on the web site www.healdmilitary.com from

16   2012 through April 2013.  The School denies that the Armed Services seals were displayed

17   "prominently" or implied any endorsement by the various branches.  The Government's

18   allegations in paragraph 67 are vague and ambiguous as to where and how Armed Forces seals

19   "continue to be prominently displayed in online ads run by Heald."  The School denies that it

20   continues to use the Armed Services seals in online advertisements, and denies that the example

21   advertisement attached as Exhibit B to the Complaint is an advertisement "run by" or otherwise

22   authorized by the School.  Except as expressly admitted herein, the School denies the allegations

23   in paragraph 67.

24   68.    The Government's allegations in paragraph 68 are vague and ambiguous as to what

25   constitutes an "express connection with or approval by" the Armed Services.  As such, the School

26   is without knowledge or information sufficient to form a belief as to the truth or falsity of the

27   Government's allegations in paragraph 68.  The School is committed to meeting the needs of

28   veterans of the Armed Services, is a participant in the Yellow Ribbon Program and has numerous

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 21 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  programs in California and nationally that have been approved by United States Department of

2  Veteran's Affairs.  Except as expressly admitted herein, the School denies the allegations in

3  paragraph 68.

4      69.    The allegation in paragraph 69 is a conclusion of law to which no response is required.

5      **Enrollment Agreements**

6      70.    The School admits that its current enrollment agreements contain clauses substantially

7  identical to the language cited in paragraph 70, noting that each such clause—including the one

8  quoted—also contains an opt-out provision for each student.  The other allegations in paragraph

9  70 are conclusions of law to which no response is required.  Except as expressly admitted herein,

10  the School denies the allegations in paragraph 70.

11      71.    The allegations in paragraph 71 are conclusions of law to which no response is

12  required.

13      72.    The allegations in paragraph 72 are conclusions of law to which no response is

14  required.

15      **Education Loans and Financial Responsibility**

16      73.    The allegations about federal regulations governing for-profit colleges are conclusions

17  of law to which no response is required.  The School admits that it entered into arrangements with

18  third-party lenders to make loans to some of its students.  Those arrangements are disclosed and

19  discussed in detail in the School's regulatory filings, investor reports and other disclosures.

20  Except as expressly admitted herein, the School denies the allegations in paragraph 73.

21      74.    The School admits, as disclosed in regulatory filings and investor reports that it entered

22  into arrangements with ASFG, LLC (now known as Campus Student Funding, LLC) for Liberty

23  Bank, N.A. to provide third-party loans to students.  Except as expressly admitted herein, the

24  School denies the allegations in paragraph 74.

25      75.    The School admits that the term "Genesis Loans" has at times been used to refer to

26  both the ASFG, LLC loans and a prior loan arrangement with Genesis Lending Services, Inc.  No

27  responsive pleading is required to the balance of paragraph 75.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 22 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

76.     The School admits that it has received student loan distributions in connection with the loans funded by Liberty Bank, N.A.  Except as expressly admitted herein, the School denies the allegations in paragraph 76.

77.     The allegations in paragraph 77 are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 77.  Except as expressly admitted herein, the School denies the allegations in paragraph 77.

    a.   The School denies that its practice is to remove students from class often during instruction time when they are a few days delinquent on in-school loan payments. The School employs a wide range of tools and outreach to help its students learn financial literacy.  In the context of Genesis Loans, the School uses a series of measures to help students avoid falling behind on their in-school loan payments, which usually amount to approximately $35 per month.  When the School learns that a student is delinquent it sends written notices by e-mail, text and letter and attempts to connect the student with the lender directly.  The School then calls students and encourages them to make payments.  If those measures fail, the School reaches out to the student on campus to inform them about the ability to seek a forbearance.  Finally, if the student refuses to respond, a student accounts representative may have the student taken out at the start of class or during a break for a brief discussion about their loan payment obligations before having them return to class.  Tutoring and other options exist to assist students who miss class time.

    b.   The School realleges and incorporates its answer paragraph 77(a).  The School admits that if its efforts to counsel students described in paragraph 77(a) fail, that it may temporarily limit their access to School services until they become current on their in-school loan payments, which may include relief of some sort for the student, such as forbearance.  Except as expressly admitted herein, the School denies the allegations in paragraph 77(b).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

The School's Amended Verified Answer (Case No. CGC-13-534793)

c.  The School realleges and incorporates its answer to paragraph 77(b).  The School admits that a limitation of access to some School services due to delinquent in-school loan payments or refusal to engage with the School about the loans may impact access to externship programs.  The balance of paragraph 77(c) is speculation to which no response is required.

d.  The School realleges and incorporates its answer to paragraph 77(c).  The School admits that, in rare instances when a student becomes very delinquent in their in-school loan payments and refuses to work with the lender or the business office to address the issue, the campus president may consider terminating the student's enrollment as a last resort.

78.  The allegations in paragraph 78 that the School engages in unlawful and unfair practices are conclusions of law to which no response is required.  The School admits that an e-mail exchange took place between Lisa Montenegro and Lisa Miller on May 30, 2013.  The e-mail cited in paragraph 78 speaks for itself, and reflects both the close relationship between employees and students and efforts by employees to help a student avoid delinquency on her loan.  Except as expressly admitted herein, the School denies the allegations in paragraph 78.

79.  The allegations in paragraph 79 that the School engages in unlawful and unfair practices are conclusions of law to which no response is required.  The School denies that executive compensation is tied to the performance of the Genesis Loan program.  The School admits that the e-mail exchange excerpted in paragraph 79 took place on June 21, 2012.  The e-mail cited in paragraph 79 is a document that speaks for itself.  Except as expressly admitted herein, the School denies the allegations in paragraph 79.

80.  The School denies the allegations made in paragraph 80.  The School and its employees are passionately dedicated to providing quality career education, to helping students overcome academic and personal obstacles that stand in the way of completing their education and career objectives.

a.  The School admits that an e-mail exchange took place between employees Sally Mounlasy, Jennifer Luciano, and Grace Cisneros on April 26, 2012.  The e-mail

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 24 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    cited in paragraph 80(a) reflects the fact that some of the School's students face

2    significant personal obstacles in pursing their education.  The tenor of this cherry-

3    picked e-mail does not accurately reflect the School or its employees' concerns for

4    and commitment to the success of their students.  Except as expressly admitted

5    herein, the School denies the allegations in paragraph 80(a).

6    b.   The School admits that the e-mail exchange excerpted in paragraph 80(b) took

7         place on January 9, 2013.  The e-mail cited in paragraph 80(b) speaks for itself and

8         demonstrates the "diverse demographics" of the School's non-traditional student

9         body.  Except as expressly admitted herein, the School denies the allegations in

10        paragraph 80(b).

11   **The School's Preferred Lender Lists**

12   81.    The School admits that it provides private education loan preferred lender lists.  Those

13   documents speak for themselves.  Except as expressly admitted herein, the School denies the

14   allegations in paragraph 81.

15   a.   The School admits that its private education loan preferred lender lists do not

16        contain a statement making the disclosure identified in paragraph 81(a) because it is

17        not required to do so.

18   b.   The School admits that its private education loan preferred lender lists do not

19        contain a statement making the disclosure identified in paragraph 81(b) because it

20        is not required to do so.

21   c.   The School admits that its private education loan preferred lender list do not

22        contain a statement making the disclosure identified in paragraph 81(c) because it is

23        not required to do so.

24   d.   The School admits that its private education loan preferred lender lists do not

25        contain a statement making the disclosure identified in paragraph 81(d) because it

26        is not required to do so.

27   82.    The School admits that its private education loan preferred lender lists include a

28   number of disclosures, including that "The lender listed below has expressed a willingness to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

1  make private education loans to . . . students who meet its eligibility and credit criteria.  In

2  addition, while we do not promote or endorse this lender, we expect this lender to provide

3  satisfactory customer service and representatives who can assist borrowers to make informed

4  decisions."  The School's disclosures also explain that the student "may receive a private

5  education loan from any lender [they] choose."  Except as expressly admitted herein, the School

6  denies the allegations in paragraph 82.

7      83.    The allegations in paragraph 83 are conclusions of law to which no response is

8  required.

9      **Heald College Credits Transfer to California State Universities**

10      84.    The School denies the allegations made in paragraph 84.

11      85.    The School admits that the documents attached as Exhibit C to the First Amended

12  Complaint are Heald disclosures identifying partner colleges.  Those documents speak for

13  themselves.

14      86.    The documents attached as Exhibit C to the First Amended Complaint speak for

15  themselves.  Notably, both documents include a clear statement that "It is always up to the

16  receiving institution to make the final determination regarding acceptance of transfer credits and

17  class standing," and invite the reader to contact the School for more information about the

18  transferability of credits.  The School provides information about the transfer of credits in its

19  catalogs and other documentation and counseling provided to students who are seeking to transfer

20  credits.  The School denies that it fails to disclose limitations on the transfer of credits earned at

21  Heald College, LLC.  Except as expressly admitted herein, the School denies the allegations in

22  paragraph 86.

23          a.    The School denies the allegations made in paragraph 86(a).

24          b.    The School admits that students who complete Heald diploma, certificate or AAS

25              programs do not, without further coursework, appear to qualify for admission as

26              upper division transfers to CSU.  However, just as the School cannot guarantee

27              credit transfer, neither can it know for sure how another college will treat incoming

28              students or credits.  In any event, the Heald College catalog discloses that transfer

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

2995166

- 26 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1    of credits depends, among other things on admissions requirements, that "Heald

2    makes no representation or guarantee that credits earned at Heald will be

3    transferable to any other college or university," and that "[i]f a student's education

4    plans rely on another college or university's acceptance of Heald credits, the

5    student should check with that institution prior to enrollment." Except as expressly

6    admitted herein, the School denies the allegations in paragraph 86(b).

7    87.    The School denies that Heald College, LLC has a policy or practice of misrepresenting

8    the transferability of credits to students. The Heald College catalog includes disclosures about the

9    transferability of credits. Further, the enrollment agreement addendum and disclosures provided

10    to and signed by incoming students includes a disclosure titled "Notice Concerning Transferability

11    of Units and Degrees Earned at Our School," which provides in part that: "As with any accredited

12    school, the transferability of credits to another institution is determined exclusively by each

13    receiving institution. Units I earn in my programs, in most cases, will not be transferable to any

14    other college or university. . . . I acknowledge that it has not been guaranteed or implied by any

15    employee of the School that my credits, diploma or degree will be transferable to another

16    institution."

17    **FIRST CAUSE OF ACTION**

18    **(ALL DEFENDANTS)**

19    88.    No responsive pleading is required to paragraph 88. The School realleges and

20    incorporates its answer to the paragraphs enumerated in paragraph 88.

21    89.    The allegations in paragraph 89 are conclusions of law to which no response is

22    required. The School realleges and incorporates its answer to the paragraphs enumerated in

23    paragraph 89. Except as expressly admitted herein, the School denies the allegations in paragraph

24    89.

25    a.    The School denies the allegations in paragraph 89(a). The School realleges and

26    incorporates its answers to paragraphs 47 to 52.

27    b.    The School denies the allegations in paragraph 89(b). The School realleges and

28    incorporates its answers to paragraphs 60 to 64.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 27 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1          c.   The School denies the allegations in paragraph 89(c).  The School realleges and

2              incorporates its answers to paragraphs 65 to 69.

3          d.   The School denies the allegations in paragraph 89(d).  The School realleges and

4              incorporates its answers to paragraphs 81 to 83.

5          e.   The School denies the allegations in paragraph 89(e).  The School realleges and

6              incorporates its answers to paragraphs 84 to 87.

7    90.    The School denies the allegations in paragraph 90.

## SECOND CAUSE OF ACTION

## (ALL DEFENDANTS)

10    91.    No responsive pleading is required to paragraph 91.  The School realleges and

11   incorporates its answer to the paragraphs enumerated in paragraph 91.

12    92.    The allegations in paragraph 92 are conclusions of law to which no response is

13   required.  To the extent that they may be construed as factual allegations, the School denies the

14   allegations in paragraph 92.

15    93.    The allegations in paragraph 93 are conclusions of law to which no response is

16   required.

17          a.   The allegations in paragraph 93(a) are conclusions of law to which no response is

18              required.  To the extent that they may be construed as factual allegations, the

19              School denies the allegations in paragraph 93(a).

20          b.   The allegations in paragraph 93(b) are conclusions of law to which no response is

21              required.  To the extent that they may be construed as factual allegations, the

22              School denies the allegations in paragraph 93(b).

23          c.   The allegations in paragraph 93(c) are conclusions of law to which no response is

24              required.  To the extent that they may be construed as factual allegations, the

25              School denies the allegations in paragraph 93(c).

26          d.   The allegations in paragraph 93(d) are conclusions of law to which no response is

27              required.  To the extent that they may be construed as factual allegations, the

28              School denies the allegations in paragraph 93(d).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional  Corporations

1    e. The allegations in paragraph 93(e) are conclusions of law to which no response is

2     required.  To the extent that they may be construed as factual allegations, the

3     School denies the allegations in paragraph 93(e).

4    f. The allegations in paragraph 93(f) are conclusions of law to which no response is

5     required.  To the extent that they may be construed as factual allegations, the

6     School denies the allegations in paragraph 93(f).

7    g. The allegations in paragraph 93(g) are conclusions of law to which no response is

8     required.  To the extent that they may be construed as factual allegations, the

9     School denies the allegations in paragraph 93(g).

10    h. The allegations in paragraph 93(h) are conclusions of law to which no response is

11     required.  To the extent that they may be construed as factual allegations, the

12     School denies the allegations in paragraph 93(h).

13    i. The allegations in paragraph 93(i) are conclusions of law to which no response is

14     required.  To the extent that they may be construed as factual allegations, the

15     School denies the allegations in paragraph 93(i).

16    j. The allegations in paragraph 93(j) are conclusions of law to which no response is

17     required.  To the extent that they may be construed as factual allegations, the

18     School denies the allegations in paragraph 93(j).

19 94. The allegations in paragraph 94 are conclusions of law to which no response is

20 required.

21    a. The allegations in paragraph 94(a) are conclusions of law to which no response is

22     required.  The School realleges and incorporates its answer to the paragraphs

23     enumerated in paragraph 94(a).

24    b. The allegations in paragraph 94(b) are conclusions of law to which no response is

25     required.  The School realleges and incorporates its answer to the paragraphs

26     enumerated in paragraph 94(b).

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 29 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

c.  The allegations in paragraph 94(c) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(c).

d.  The allegations in paragraph 94(d) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(d).

e.  The allegations in paragraph 94(e) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(e).

f.  The allegations in paragraph 94(f) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(f).

g.  The allegations in paragraph 94(g) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(g).

h.  The allegations in paragraph 94(h) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(h).

i.  The allegations in paragraph 94(i) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(i).

j.  The allegations in paragraph 94(j) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 94(j).

95.  The allegation in paragraph 95 is a conclusion of law to which no response is required.

a.  The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 95(a) and denies the allegations on that basis.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

b. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 95(b) and denies the allegations on that basis.

c. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 95(c) and denies the allegations on that basis.

d. The allegations in paragraph 95(d) include conclusions of law to which no response is required. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the factual allegations of paragraph 95(d) and denies the allegations on that basis.

e. The allegations in paragraph 95(e) include conclusions of law to which no response is required. The School realleges and incorporates its answers to paragraphs 77(a) to 77(d).

f. The School denies the allegations in paragraph 95(f).

g. The School denies the allegations in paragraph 95(g).

h. The School denies the allegations in paragraph 95(h).

96. The allegations in paragraph 96 are conclusions of law to which no response is required.

## THIRD CAUSE OF ACTION

## (CORINTHIAN COLLEGES, INC.)

97. No responsive pleading is required to paragraph 97. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 97.

98. The California Corporations Code speaks for itself, and the interpretation of the code is a matter of law as to which no response is required.

99. The School admits that the common stock of Corinthian Colleges, Inc. is traded on the Nasdaq National Market System. The remaining allegations are conclusions of law to which no response is required. Except as expressly admitted herein, the School denies the allegations in paragraph 84.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 31 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

100.    The School admits that on February 1, 2013 it filed a Registration Statement (Form S-8), for the School's Employee Stock Purchase Plan.  The remaining allegations are conclusions of law to which no response is required.  Except as expressly admitted herein, the School denies the allegations in paragraph 100.

101.    The allegations in paragraph 101 are conclusions of law to which no response is required.

102.    The allegations in paragraph 102 are conclusions of law to which no response is required.

103.    The allegations in paragraph 103 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 103.

104.    The allegations in paragraph 104 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 104.

105.    The School denies that, as alleged in paragraph 105, it misrepresented "the job placement rate of its graduates; the methodology it used to calculate the job placement rate of its graduates; the number of graduates it placed; the number of eligible graduates; the reliability of its placement and placement verification process; the stringency of its definitions regarding job placements; its compliance with accreditor mandated policies; and its compliance with its own policies."  The remaining allegations in paragraph 105 are conclusions of law to which no response is required.  Except as expressly admitted herein, the School denies the allegations in paragraph 105.

**FOURTH CAUSE OF ACTION**

**(CORINTHIAN COLLEGES, INC.)**

106.    No responsive pleading is required to paragraph 106.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 106.

107.    The California Corporations Code speaks for itself, and the interpretation of the code is a matter of law as to which no response is required.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

1    108.    The Government's allegations in paragraph 108 are vague, ambiguous and

2  unintelligible as to whether it asserts that "others" or the School's stock are traded "on the Nasdaq

3  National Market System."  As such, the School is without knowledge or information sufficient to

4  form a belief as to the truth or falsity of the Government's allegations in paragraph 108 about

5  "others" and denies them on that basis.  The remaining allegations are conclusions of law to which

6  no response is required.  Except as expressly admitted herein, the School denies the allegations in

7  paragraph 108.

8    109.    The School admits that on February 1, 2013 it filed a Registration Statement (Form S-

9  8), for the School's Employee Stock Purchase Plan.  The remaining allegations are conclusions of

10  law to which no response is required.  Except as expressly admitted herein, the School denies the

11  allegations in paragraph 109.

12    110.    The allegations in paragraph 110 are conclusions of law to which no response is

13  required.

14    111.    The allegations in paragraph 111 are conclusions of law to which no response is

15  required.

16    112.    The allegations in paragraph 112 are conclusions of law to which no response is

17  required.  To the extent that they may be construed as factual allegations, the School denies the

18  allegations in paragraph 112.

19    113.    The allegations in paragraph 113 are conclusions of law to which no response is

20  required.  To the extent that they may be construed as factual allegations, the School denies the

21  allegations in paragraph 113.

22    114.    The School denies that, as alleged in paragraph 114, it misrepresented "the job

23  placement rate of its graduates; the methodology it used to calculate the job placement rate of its

24  graduates; the number of graduates it placed; the number of eligible graduates; the reliability of its

25  placement and placement verification process; the stringency of its definitions regarding job

26  placements; its compliance with accreditor mandated policies; and its compliance with its own

27  policies."  The remaining allegations in paragraph 114 are conclusions of law to which no

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 33 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  response is required.  Except as expressly admitted herein, the School denies the allegations in

2  paragraph 114.

3      115.    The School denies the allegations made in paragraph 115.

4                           **FIFTH CAUSE OF ACTION**

5                           **(CORINTHIAN SCHOOLS, INC.)**

6      116.    No responsive pleading is required to paragraph 116.  The School realleges and

7  incorporates its answer to the paragraphs enumerated in paragraph 116.

8      117.    The School admits that on July 31, 2007 the Los Angeles Superior Court entered a

9  final judgment pursuant to a stipulation between the parties in *People v. Corinthian Schools, Inc.,*

10  *et al.*, No. BC374999.  The text of the final judgment speaks for itself.  To the extent that the

11  interpretation of the final judgment is an issue of law, no response is required.  To the extent that

12  the Government's characterization in paragraph 117 differs from the terms and correct

13  interpretation of the final judgment, the School denies those allegations.  Except as expressly

14  admitted herein, the School denies the allegations in paragraph 117.

15          a.   The text of the final judgment speaks for itself.  To the extent that the interpretation

16               of the final judgment is an issue of law, no response is required.  To the extent that

17               the Government's characterization in paragraph 117(a) differs from the terms and

18               correct interpretation of the final judgment, the School denies those allegations.

19               Except as expressly admitted herein, the School denies the allegations in paragraph

20               117(a).

21          b.   The text of the final judgment speaks for itself.  To the extent that the interpretation

22               of the final judgment is an issue of law, no response is required.  To the extent that

23               the Government's characterization in paragraph 117(b) differs from the terms and

24               correct interpretation of the final judgment, the School denies those allegations.

25               Except as expressly admitted herein, the School denies the allegations in paragraph

26               117(b).

27          c.   The text of the final judgment speaks for itself.  To the extent that the interpretation

28               of the final judgment is an issue of law, no response is required.  To the extent that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 34 -
The School's Amended Verified Answer (Case No. CGC-13-534793)

1    the Government's characterization in paragraph 117(c) differs from the terms and

2    correct interpretation of the final judgment, the School denies those allegations.

3    Except as expressly admitted herein, the School denies the allegations in paragraph

4        117(c).

5    118.    The School denies the allegations in paragraph 118.

6        a.    The School denies the allegations in paragraph 118(a).  The School realleges and

7            incorporates its answers to paragraphs 47 to 52.

8        b.    The School denies the allegations in paragraph 118(b).  The School realleges and

9            incorporates its answers to paragraphs 60 to 64.

10        c.    The School denies the allegations in paragraph 118(c).  The School realleges and

11            incorporates its answers to paragraphs 65 to 69.

12    119.    The allegations in paragraph 119 are conclusions of law to which no response is

13    required.

14    ### SIXTH CAUSE OF ACTION

15    ### (CORINTHIAN SCHOOLS, INC.)

16    120.    No responsive pleading is required to paragraph 120.  The School realleges and

17    incorporates its answer to the paragraphs enumerated in paragraph 120.

18    121.    The School admits that on July 31, 2007 the Los Angeles Superior Court entered a

19    final judgment pursuant to a stipulation between the parties in *People v. Corinthian Schools, Inc.,*

20    *et al.*, No. BC374999.  The text of the final judgment speaks for itself.  To the extent that the

21    interpretation of the final judgment is an issue of law, no response is required.  To the extent that

22    the Government's characterization in paragraph 121 differs from the terms and correct

23    interpretation of the final judgment, the School denies those allegations.  Except as expressly

24    admitted herein, the School denies the allegations in paragraph 121.

25        a.    The text of the final judgment speaks for itself.  To the extent that the interpretation

26            of the final judgment is an issue of law, no response is required.  To the extent that

27            the Government's characterization in paragraph 121(a) differs from the terms and

28            correct interpretation of the final judgment, the School denies those allegations.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 35 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1  Except as expressly admitted herein, the School denies the allegations in paragraph

2  121(a).

3  b. The text of the final judgment speaks for itself. To the extent that the interpretation

4  of the final judgment is an issue of law, no response is required. To the extent that

5  the Government's characterization in paragraph 121(b) differs from the terms and

6  correct interpretation of the final judgment, the School denies those allegations.

7  Except as expressly admitted herein, the School denies the allegations in paragraph

8  121(b).

9  c. The text of the final judgment speaks for itself. To the extent that the interpretation

10  of the final judgment is an issue of law, no response is required. To the extent that

11  the Government's characterization in paragraph 121(c) differs from the terms and

12  correct interpretation of the final judgment, the School denies those allegations.

13  Except as expressly admitted herein, the School denies the allegations in paragraph

14  121(c).

15  122.  The School denies the allegations in paragraph 122.

16  a. The School denies the allegations in paragraph 122(a). The School realleges and

17  incorporates its answers to paragraphs 47 to 52.

18  b. The School denies the allegations in paragraph 122(b). The School realleges and

19  incorporates its answers to paragraphs 60 to 64.

20  c. The School denies the allegations in paragraph 122(c). The School realleges and

21  incorporates its answers to paragraphs 65 to 69.

22  123.  The allegations in paragraph 123 are conclusions of law to which no response is

23  required.

24  Except as expressly admitted in the preceding responsive paragraphs, the School denies the

25  allegations in the Complaint.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 36 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1

## **AFFIRMATIVE DEFENSES**

2      Without admitting or acknowledging that the School bears the burden of proof as to any of

3    them, the School asserts the following affirmative defenses as to all causes of action:

4

### **First Affirmative Defense**

5

### **(Failure to State a Claim)**

6      124.    The Complaint fails to state a claim upon which relief may be granted.

7

### **Second Affirmative Defense**

8

### **(Statute of Limitations)**

9      125.    The Complaint is barred in whole or in part by the statute of limitations prescribed by,

10    but not limited to, Civil Code § 1783, Code of Civil Procedure §§ 337, 337.5(b), 338(a), 340(a),

11    340(b), 343, 359, Business and Professions Code § 17208 and Corporations Code § 25506.

12

### **Third Affirmative Defense**

13

### **(Unclean Hands)**

14      126.    The Complaint is barred because the Government has unclean hands with respect to the

15    claims alleged therein, and particularly with regard to its attempts to enforce the stipulated

16    judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior

17    Court) after it has failed to distribute funds to students as required by that judgment.

18

### **Fourth Affirmative Defense**

19

### **(Laches)**

20      127.    The Complaint is barred by the doctrine of laches.

21

### **Fifth Affirmative Defense**

22

### **(Waiver)**

23      128.    The Complaint is barred by the doctrine of waiver.

24

### **Sixth Affirmative Defense**

25

### **(Mootness)**

26      129.    The Complaint is moot in whole or in part.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 37 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1

## Seventh Affirmative Defense

2

### (Ripeness)

3    130.    The Complaint is barred in whole or in part because the claims are not ripe for

4 adjudication.

5

## Eighth Affirmative Defense

6

### (Alternate Remedies Exist at Law)

7    131.    The Complaint is barred in whole or in part because the Government has adequate

8 alternate remedies at law.

9

## Ninth Affirmative Defense

10

### (Collateral Estoppel and Res Judicata)

11    132.    The Complaint is barred in whole or in part by the doctrines of collateral estoppel and

12 res judicata.

13

## Tenth Affirmative Defense

14

### (Judicial Estoppel)

15    133.    The Complaint is barred in whole or in part by the doctrine of judicial estoppel.

16

## Eleventh Affirmative Defense

17

### (Standing)

18    134.    The Government lacks standing to bring the claims asserted.

19

## Twelfth Affirmative Defense

20

### (No Damages)

21    135.    The Complaint fails to plead facts showing that the Government has suffered any

22 cognizable damages.

23

## Thirteenth Affirmative Defense

24

### (No Injury)

25    136.    The Complaint fails to plead facts showing that the Government has suffered any

26 cognizable injury.

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 38 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1

## Fourteenth Affirmative Defense

2

### (Lack of Jurisdiction)

3   137.    This Court lacks jurisdiction over this Complaint for reasons identified in other

4   affirmative defenses and because Judge Kenneth R. Freeman retained jurisdiction over the Final

5   Judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior

6   Court).

7

## Fifteenth Affirmative Defense

8

### (Discretion Not to Exercise Jurisdiction)

9   138.    Even if this Court had jurisdiction, which it does not, it should decline to exercise

10  jurisdiction here.

11

## Sixteenth Affirmative Defense

12

### (Lack of Redressability)

13  139.    The Complaint is barred in whole or in part because any injury alleged by the

14  Government cannot be redressed by the relief sought in the Complaint.

15

## Seventeenth Affirmative Defense

16

### (Inconsistent Judgments)

17  140.    The Complaint is barred in whole or in part because it seeks to subject the School to

18  inconsistent obligations under court orders.

19

## Eighteenth Affirmative Defense

20

### (Equity)

21  141.    Principles of equity bar the Government from seeking the relief it request.

22

## Nineteenth Affirmative Defense

23

### (Preemption)

24  142.    The Complaint is barred in whole or in part because it conflicts with or is preempted by

25  federal law.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 39 -

The School's Amended Verified Answer (Case No. CGC-13-534793)

1

**Twentieth Affirmative Defense**

2

**(Reservation)**

3    143.    The School reserves the right to allege other affirmative defenses as they may become

4    known during the course of discovery.

5    **PRAYER FOR RELIEF**

6    WHEREFORE, the School prays that the Government take nothing by the Complaint, that the

7    requested injunctive and equitable relief be denied, that the School be awarded judgment in this

8    action and costs of suit incurred herein, and for other such relief as the Court deems just and

9    proper.

10

11    Dated: March 17, 2014                           IRELL & MANELLA LLP
                                                        John C. Hueston
12                                                      Brian J. Hennigan
                                                        Andra B. Greene
13                                                      Khaldoun Shobaki
                                                        Andrew K. Walsh

14

15

16
                                                        By: _____/s/ John C. Hueston_____
17                                                          John C. Hueston (164921)
                                                            Attorneys for Defendants
18

19

20

21

22

23

24

25

26

27

28

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

- 40 -

# Exhibit A

Demand
Generation

## Summary of insights about our prospects

| Who they are | What they need |
|---|---|
| • Low self-esteem, few base hits | • Confident, capable, real adult, role model for kids |
| • Stuck, unable to see and plan well for future | • Someone who can show them how so they can gain independence |
| • Few people in their lives who care about them | • Encouragement, someone who believes in them |
| • Isolated | • Sense of belonging, place where they can succeed |
| • Authenticity rules! | • Don't BS me, tell it like it is |
| • Peers are most credible | • Trust is earned, not automatic |
| • Impatient, want quick solutions | • Can't afford to waste time, need quick solutions |

www.cci.edu

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### VERIFICATION

I, Michelle Reed, declare as follows:

I have read the forgoing THE SCHOOL'S AMENDED VERIFIED ANSWER and know its contents.

I am employed by Corinthian Colleges, Inc., a party to this action, and am authorized to make this verification for and on its behalf.  The facts stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief; as to those matters I am informed and believe that they are true.

Executed this 17th day of March, 2014, at Santa Ana, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
Michelle Reed

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2995166

1    **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900,

3    Los Angeles, California 90067-4276.

4        On March 17, 2014, at approximately 2:30 PM Pacific Time, I served the foregoing document described as **The School's Amended Verified Answer** on each interested party, as

5    follows:

6            Kamala D. Harris
             Frances T. Grunder

7            Nicklas A. Akers
             Nicholas G. Campins

8            David A. Jones
             California Department of Justice

9            455 Golden Gate Avenue, Suite 11000
             San Francisco, CA 94102-7004

10

11        [X]        (BY ELECTRONIC FILING AND SERVICE)  I posted the foregoing document
                    on the Court's File & ServeXpress web site.

12

13        Executed on March 17, 2014, at Los Angeles, California.

         I declare under penalty of perjury under the laws of the State of California that the

14    foregoing is true and correct.

15

16    _____          _____
         Khaldoun Shobaki                                      (Signature)

17        (Type or print name)

18

19

20

21

22

23

24

25

26

27

28