## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | Case No. 15-10952 (KJC) |
| Debtors. | **Re: Docket Nos. 363, 461, & 465** |

## COMMITTEE OF STUDENT CREDITORS' OMNIBUS REPLY TO OBJECTION AND RESPONSE TO MOTION FOR AN ORDER APPLYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A) AND GRANTING RELATED RELIEF[2]

The Committee of Student Creditors (the "Student Committee") appointed in these jointly administered chapter 11 cases of Corinthian Colleges, Inc. and twenty-three debtor affiliates (the "Debtors") respectfully replies to the (1) *United States' Objection To Motion Of The Committee Of Student Creditors For An Order Applying The Automatic Stay Pursuant To 11 U.S.C. §§ 362(a) And 105(A) Granting Related Relief (Corrected)* [Docket No. 461] (the "Objection"); and (2) *Debtors' Response To the Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant To 11 U.S.C. §§ 362(a) And 105(A) Granting Related Relief* [Docket No. 465] ("Debtors' Response") as follows:

---

[1] The Debtors' bankruptcy cases are: Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

[2] Capitalized terms that are used but no otherwise defined herein shall have the meanings ascribed to such terms in the *Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant To 11 U.S.C. §§ 362(a) And 105(A) Granting Related Relief* [Docket No. 363] (the "Motion").

## PRELIMINARY STATEMENT

The Student Committee does not seek application or extension of the automatic stay to interfere with any Administrative Proceeding (as defined in the Objection) that relates solely to the cancellation of alleged student loan debt. The Student Committee is only seeking the application or extension of the automatic stay to prevent the *collection* of the alleged obligations. To the extent that the Motion or the Amended Proposed Order (as defined below) provides otherwise, the Student Committee will make the appropriate modifications and submit a revised Amended Proposed Order.

For every dollar advanced to the Debtors through the Title IV FSA Programs, there is a resulting repayment obligation to the Department of Education ("ED"). One of the primary questions that must be answered in the Debtors' bankruptcy proceeding is: "who" is liable to repay the Title IV FSA Program funds advanced to the Debtors? Is it the Debtors, because of their alleged misconduct, or is it the students, because there was no misconduct?

The extent of the automatic stay and the liabilities of the Debtors' estates is within the core jurisdiction of this Court. The Motion seeks to stop ED from coming after students for alleged loans that were not legally issued or are not legally binding because of the Debtors' misconduct. The Debtors' estates are solely responsible for these alleged 'student loans' and that liability will be addressed in the Debtors' bankruptcy cases.

A chapter 11 bankruptcy proceeding can be an efficient process for the collective resolution of issues involving debtor-creditor and inter-creditor relationships related to an insolvent estate. The Objection is based largely upon the incorrect assertion that the Higher Education Act ("HEA") provides the exclusive process by which the Debtors and the students' relative liability to ED and each other can be resolved. On this point, the Objection necessarily fails because the bankruptcy process is the proper forum for recognizing the extent of the Debtors' liability and the treatment of the claims that arise therefrom.

50653514.1

## DISPUTED FACTS

As between the Student Committee and the only objecting party, ED, there are no disputed facts raised by the Motion and the Objection.  The Student Committee acknowledges that the Debtors are not in agreement with the factual allegations made by entities outside of this proceeding and cited by the Student Committee.  As the Debtors' Response illustrates, there are significant factual differences that, in the absence of a collective consensual resolution with respect to the Debtors' estates, may require extended discovery and litigation.  However, litigation to resolve these significant factual disputes may not be required if the parties are able to agree upon the treatment of claims and fashion other creative relief in a consensual chapter 11 plan, or otherwise.

Importantly, the Student Committee, the Debtors, the General Unsecured Creditors Committee, Bank of America, and other constituencies in these cases are committed to efforts to propose and confirm a consensual chapter 11 plan.  Indeed, the Student Committee reached an agreement with many of these parties to continue a portion of the Motion to August 26, 2015, to allow the parties to discuss and negotiate the terms of a consensual plan.[3]  The remaining requested relief as to ED—the application and, if necessary, extension of the automatic stay— will help to preserve the *status quo* of the relative claims amongst the Debtors, the student creditors, and ED which will aid in the successful resolution of the Debtors' bankruptcy cases in a consensual plan process.

## ARGUMENT

**A.**     **The Relief Requested Is Appropriately Sought By Motion**

1.     Courts in the Third Circuit and other jurisdictions routinely consider requests to extend the scope of the automatic stay on the motion of a party in interest brought in accordance

---

[3] On June 24, 2015, the Student Committee filed a *Notice Of Partial Continuance Of The Committee Of Student Creditors' Motion For An Order Applying The Automatic Stay Pursuant To 11 U.S.C. §§ 362(A) And 105(A) And Granting Related Relief* [Docket No. 470] (the "Notice of Partial Continuance") evidencing the agreement of the non-governmental parties and amending the form of the Proposed Order (the "Amended Proposed Order") to reflect the agreement.

50653514.1

with Bankruptcy Rule 9014. *See W.R. Grace & Co. v. Chakarian,* 2008 Bankr. LEXIS 1048, at *36 (Bankr. D. Del. Apr. 11, 2008) (considering motion to extend the scope of the automatic stay); *Rossiter v. Simon*, 412 B.R. 677 (D.N.J. 2008) (considering motion to extend the scope of the stay and denying the motion on substantive grounds); *In re Loewen Grp., Inc., Sec. Litig.*, 2001 U.S. Dist. LEXIS 6482, at *10 (E.D. Pa. May 16, 2001) (considering motion to extend the scope of the stay to non-debtors); *see also In re QA3 Fin. Corp.*, 466 B.R. 142, 143 (Bankr. D. Neb. 2012) (considering debtor's motion to extend the automatic stay to non-debtors).

2.      Providing for resolution of these issues by motion and in accordance with Rule 9014, as opposed to the more formal adversary proceeding, permits the expeditious resolution of matters that affect a fundamental purpose of the Bankruptcy Code that is advanced by the automatic stay—to provide the debtor with freedom from harassing creditor demands, preserving property of the estate and providing a platform for a collective process among the debtor, and creditor constituencies. *See, e.g.*, *In re Benjamin,* 2013 Bankr. LEXIS 3942, at *3-9 (Bankr. N.D.N.Y. Sept. 18, 2013) (finding that relief under 362(k) was more appropriately sought by motion, rather than the extended adversary proceeding applicable to "proceedings to recover money" under Bankruptcy Rule 7001(1), because of the fundamental purposes that the automatic stay serves in bankruptcy cases). The practice of permitting relief related to the stay to be sought by motion makes sense when viewed against the backdrop of Congress's treatment of other matters concerning the automatic stay. *Id; see also* 11 U.S.C. §§ 362(c)(3)(B) & (c)(4)(B); Bankruptcy Rule 4001(a).

3.      Moreover, in the present circumstance, the filing of an adversary proceeding would belie movants' motivation in seeking the requested relief— to preserve the *status quo* and provide the opportunity for efficient, cooperative and consensual resolution of these cases without protracted and burdensome litigation.

4.      Accordingly, the Court should reject the Objection's attempts to apply an over-reaching application of Bankruptcy Rule 7001 and to stretch the holdings of the cases cited. Although Bankruptcy Rule 7001(7) indicates that a proceeding to *obtain* an injunction is an

adversary proceeding, it does not necessarily command that all proceedings *relating* to injunctive relief must be brought by adversary proceeding.

5.      The cases cited by ED do not support such a broad application of Bankruptcy Rule 7001(7).  In *Wedgewood Inv. Fund, Ltd. v. Wedgewood Realty Grp., Ltd. (In re Wedgewood Realty Grp., Ltd.)*, 878 F.2d 693, 701 (3d Cir.1989), the court noted that because the stay had expired, the debtor would need to seek to reimpose the stay, rather than extend the stay.  Further, although the *Wedgewood* court cited to the debtor's failure to comply with Bankruptcy Rule 7065, a reading of the case clearly indicates that the court was not concerned with the technical distinction between expedited motion practice and adversary proceedings.  Rather, the court expressed concern solely with the debtor's failure to meet the burdens required to justify the relief requested—(i) notice of the requested relief and (ii) demonstration of the four elements that will typically justify extension of the stay.  As further set forth below, those same concerns are not present here.  The remaining cases cited by ED similarly do not support the proposition that a motion to apply or extend the scope of the automatic stay must be viewed as a "proceeding to obtain an injunction" such that relief must be sought through an adversary proceeding.

6.      Moreover, even if the Court were to determine that the filing of an adversary proceeding would have been appropriate, the Court may still consider and grant the requested relief upon the Motion if sufficient notice has been provided and there has been no prejudice to an objecting party.  *See*, *e.g.*, *Lernout & Hauspie Speech Prods.*, 264 B.R. 336, 339 (Bankr. D. Del. 2001) (stating, the court "will decline to elevate the form of the proceeding . . . , if the substance of the hearing on that issue is such that the objecting party has been afforded due process.").  ED has not complained of any prejudice by way of these proceedings, and there has been no prejudice—ED received appropriate notice of the relief requested and had ample opportunity to respond.  For the reasons stated herein, it is appropriate for the Court to consider the requested relief pursuant to the Student Committee's Motion.

B.    <u>Application and Extension of the Automatic Stay Is Appropriate</u>

7.    The Motion seeks, among other things, to halt ED's collection efforts with respect to obligations created when funds were dispersed to the Debtors as alleged "student loans." There can be no debate that ED's collection efforts would fall squarely within the parameters of the automatic stay if ED sought to collect the obligations solely and directly from the Debtors. However, ED wrongfully continues to seek to collect from students, which gives rise to shifting claims and positions as among the students, ED, and the Debtors' estates. Because the obligations to repay ED are either solely the Debtors' obligations or indirectly the Debtors' obligations, application or extension of the scope of the automatic stay is appropriate and will help facilitate a consensual plan that will address the relative liability and treatment of the Debtors, the students, and ED.

8.    ED's Objection to the requested relief is disheartening because the Debtors' culpability and liability flow directly from the misconduct that ED investigated and uncovered. Based on ED's findings and admissions, the Court and parties in interest have reason to believe that the Debtors deceived the government and students in connection with the administration of the Title IV FSA Programs under which funds were advanced from the government to the Debtors. (Mot. ¶¶ 14-16, 39, RJN Ex. H at 1). The Debtors were, at all relevant times, ED's fiduciary agent with respect to the administration of the Title IV FSA Programs and the issuance of alleged 'student loans' in connection with the Debtors' education programs.  *See*, *e.g*., 34 C.F.R. § 668.82(a) ("A participating institution . . . acts in the nature of a fiduciary in the administration of the Title IV, HEA programs."). The students cannot be held liable to ED for funds advanced to the Debtors if, by ED's own admission, ED's agent—the Debtors—deceived ED and the students in connection with administering the Title IV FSA Programs. The extent of the Debtors' culpability and liability must be determined within the Debtors' bankruptcy cases, which will naturally determine the extent of any student liability. For the reasons cited in the Motion and below, until the extent of the Debtors' culpability and liability is addressed in the

- 6 -

Debtors' bankruptcy proceeding, it is appropriate to apply and extend the automatic stay on all collection efforts with respect to these obligations.

> **1.  There is a Clear Identity of Interests Between The Debtor and The Students**

9.      ED advanced billions of taxpayer dollars to the Debtors through the Title IV FSA Programs. Either (i) the Debtors' "failed to adhere to a fiduciary standard of conduct" with respect to administering the Title IV FSA Programs (as ED has admitted), and should therefore be held liable to return the funds that it received; or (ii) the Title IV FSA Programs were appropriately administered and students received valid loans based on accurate representations and procedures. The Debtors' and the students' relative liability with respect to any advance by ED is absolutely linked; either the student is liable to ED or the Debtors are liable. Moreover, according to ED's investigations, the Debtors intentionally misled both ED and the Debtors' students.

10.     ED mischaracterizes the nature of an "identity of interest" and argues solely that the students and the Debtors do not have a unity of interest. The argument is misleading and rings hollow.

11.     To be certain, these cases present an incredibly unique circumstance. In typical cases, the stay might be extended to protect the debtor's officers or guarantors that might have an *identity of interest* with respect to claims against the non-debtor because the non-debtor has indemnity claims against the debtor. *See Midway Games, Inc. v. Anonuevo (In re Midway Games, Inc.)*, 428 B.R. 327, 334 (Bankr. D. Del. 2010); *see also In re W.R. Grace & Co.*, 2008 Bankr. LEXIS 1048, at *28, 37.

12.     The current situation, though unique, is analogous. Though the resulting claims against the Debtor from ED's continued pursuit of collection from the students would arise from equitable restitution or reimbursement, rather than indemnity, resulting claims against the Debtor would still exist. The legal or equitable basis for the claims by the non-debtor is irrelevant, it is the mere existence of a resulting claim that provides the "identity of interest." *Id.*

- 7 -

     **2.**    **The Court Has Jurisdiction To Consider The Motion And Confirm A Plan And Should Not Abstain**

        **a.**    **The Application of The Automatic Stay Is A "Core" Proceeding**

13.     ED's analysis of the Court's jurisdiction is fundamentally flawed. Contrary to ED's contentions, this Court has core jurisdiction to consider the extent of the Debtors' misconduct which may absolutely resolve or, at a minimum, have a preclusive effect as to such finding in any related action by a student (if required) to avoid alleged student loan obligations.

14.     Pursuant to 28 U.S.C. § 157(b)(1) bankruptcy judges have the power to "hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11." The mere request to extend the automatic stay to stop ED's collection efforts while the Debtors' liabilities are determined is a "core" proceeding that may be adjudicated by the Court under 28 U.S.C. §157(b)(2)(G). As well, the Debtors' culpability as to any alleged misconduct and resulting liability to students and ED that arises from such misconduct is a "core" matter that can be determined by the Court under 28 U.S.C. §157(b)(2)(B).

15.     Further, because the Debtors' culpability and liability with respect to its misconduct in administering the Title IV FSA Programs will directly affect the students' liability to ED, the Court has, at a minimum, "related to" jurisdiction over these issues. *See Copelin v. Spirco, Inc.*, 182 F.3d 174, 178 (3d Cir. 1999) (quoting *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999)). Bankruptcy jurisdiction will exist so long as it is possible that the proceeding may impact on the "debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and the "handling and administration of the bankrupt estate." *Id.*

16.     ED's reliance on *Nuveen Mun. Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283 (3rd Cir. 2012) is misplaced. *Nuveen* does not stand for the proposition that a court lacks "related to" jurisdiction over the relative claims and treatment of two separate creditors. *Nuveen* addresses solely whether "related to" jurisdiction exists for third-party litigation that will be resolved after a debtor's estate is fully administered. *Id.* at 297. Because the Motion does not contemplate any third-party litigation, *Nuveen* is inapplicable.

- 8 -

**b.**    **The Court Should Not Abstain From Determining The Obligations Of The Debtors Relating To Student Loan Debt**

17.     "A federal court should exercise abstention sparingly." *ANC Rental Corp. v. Dallas Cnty. (In re ANC Rental Corp.)*, 316 B.R. 153, 158 (Bankr. D. Del. 2004).

18.     As a preliminary matter, the request for abstention is premature and procedurally improper. For abstention to be a viable option in any situation, there must be an alternative forum to consider the relief requested. The only relief requested in the Motion is the extension of the automatic stay to collection efforts against students while the parties attempt to negotiate a consensual resolution of the student loan issues. The power to grant such relief is limited to this Court and ED does not suggest to the contrary. Therefore, the abstention argument must be denied.

19.     ED's abstention argument is really targeted at something else, which, if the parties cannot reach a consensual resolution through a plan or otherwise, is whether the Court is the appropriate forum to adjudicate certain issues relating to alleged student loan debt. The issue of whether or not the Court should be such a forum is not presented by the Motion and granting the Motion will not prejudice ED's right to raise abstention at an appropriate time. Furthermore, the propriety of the Court as a forum will only be contested if the parties cannot reach consensus. Because the entire point of the Motion is to afford the parties the time and space to attempt to reach consensus, there is no need for the Court to try and judge now whether consensus will be reached in the future. Therefore, ED's arguments for abstention are premature and should be denied.

20.     Even if the Court believes consideration of the request for abstention is ripe, abstention should be denied. ED argues that this Court should defer to ED's Administrative Proceedings. The Student Committee concedes that, if the administrative adjudication were the sole avenue for relief or if administrative adjudication must be exhausted before other relief is available, abstention might be appropriate. *See*, *e.g.*, *In re Hodges*, 364 B.R. 304 (Bankr. N.D.

- 9 -

Ill. 2007) (abstention appropriate with respect to objection to claim of social security administration because federal law required exhaustion of administrative remedies).

21.    However, because complete relief cannot be granted in the Administrative Proceeding, abstention is entirely inappropriate. The ultimate relief sought by the Student Committee can only be granted by this Court in these bankruptcy cases utilizing unique powers granted under the Bankruptcy Code. "A bankruptcy court should not abdicate its responsibility to decide core matters." *In re Texaco, Inc.*, 77 B.R. 433, 438 (Bankr. S.D.N.Y. 1987).

### c.    Administrative Proceedings Are Not The Sole or Exclusive Remedy Available To Students

22.    There are three related, but distinct, remedies available to a student that seeks relief from student loan debt. First, the student may seek affirmative relief pursuant to 20 U.S.C. § 1087, which provides the student with a non-bankruptcy discharge of liability for student loan debt if certain statutory criteria are satisfied. In order to obtain relief under 20 U.S.C. § 1087, the student must exhaust all Administrative Proceedings before seeking affirmative relief from a court under that statute. *See*, *e.g.*, *Barton v. Educ. Credit Mgmt. Corp. (In re Barton),* 266 B.R. 922 (Bankr. S.D. Ga. 2001). As clarified above, the Student Committee does not seek to enjoin Administrative Proceedings related to the cancellation of student loan debt and encourages all students to seek relief in an Administrative Proceeding.

23.    An Administrative Proceeding is not, however, the exclusive vehicle to obtain a discharge of student loan debt. As an alternative to an Administrative Proceeding, a student may seek a discharge under the Bankruptcy Code. 11 U.S.C. § 523(a)(8). While there is overlap between the criteria for a discharge under 20 U.S.C. § 1087 and 11 U.S.C. § 523(a)(8), the criteria are materially different and relief might be available under one statute but not the other. *Dorsey v. United States Dep't of Educ.,* 528 B.R. 137, 144 (E.D. La. 2015) ("A debtor may be entitled to a § 523(a)(8) discharge but not qualify for a [total and permanent disability] discharge and vice-versa.").Therefore, there is no requirement that a student exhaust administrative remedies before seeking relief under the Bankruptcy Code. *Id.* at 144 (stating, "the

- 10 -

overwhelming consensus of the courts that have faced this issue is that a debtor is not precluded from seeking an undue hardship discharge under § 523(a)(8) of the Bankruptcy Code solely because the debtor did not first pursue an administrative option he was eligible for.").

24.     Finally, and very pertinent to the relief sought by the Student Committee, students have a third remedy, which is to defend against a repayment claim by challenging the existence, validity and enforceability of the underlying debt under applicable state law ("State Law Defenses"). The relief available under 20 U.S.C. § 1087 is not preemptive of most State Law Defenses. *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 317-19 (D.N.J. 1997) ("[T]the contention of the moving defendants that the HEA preempts all of the plaintiff's state law claims is meritless and must be rejected."); *In re Goldberg*, 297 B.R. 465 (Bankr. W.D.N.C. 2003) (after rejecting argument that the bankruptcy court did not have jurisdiction to disallow a student loan lender claim because the debtor failed to exhaust administrative remedies, the bankruptcy court disallowed the claim pursuant to §502(a) of the Bankruptcy Code based upon a finding that the debtor was a victim of fraud and, therefore, the claim was unenforceable for lack of consideration).

25.     In fact, not only are State Law Defenses not preempted, the Code of Federal Regulations specifically provides that any State Law Defense that could be asserted against the school can be asserted against the student loan lender as well. 34 C.F.R. 685.206(c) ("In any proceeding to collect on a Direct Loan, the borrower may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a cause of action against the school under applicable State law."). If a student successfully defends against a repayment claim based upon the misconduct of the school, then the lender has a corresponding claim against the school. *Id.* ("The Secretary may initiate an appropriate proceeding to require the school whose act or omission resulted in the borrower's successful defense against repayment of a Direct Loan to pay to the Secretary the amount of the loan to which the defense applies.").

26.     ED has determined that Debtor entities committed acts and omissions that warranted the imposition of significant fines and ultimately resulted in the closure of the

- 11 -

Debtors' facilities. In light of those determinations, which are presumably preclusive admissions in any proceeding between a student and ED, it is highly likely that substantially all of the Debtors' students at those colleges have a complete defense to repayment of their loans and that ED has corresponding claims against the Debtors. In addition, ED continues to investigate and assess misconduct by other Debtor entities which are highly likely to result in a complete defense to repayment for large numbers of additional students.

27.     The Student Committee believes it would be extremely inefficient to require each and every student affected by the Debtors' misconduct to go through the formality of initiating an individual Administrative Proceeding in order to obtain the inevitable relief mandated by ED's own findings and conclusions, and then have ED assert corresponding individual claims against the Debtors. Instead, under the circumstances, it makes much more sense for the parties to negotiate a collective resolution utilizing the powers granted under the Bankruptcy Code.

28.     There is no need for the Court to determine at this time the scope of the collective relief that could be obtained in these cases. Instead, utilizing the "breathing spell" created by the automatic stay and the extension of the stay proposed by the Student Committee, the parties should be afforded the opportunity to negotiate a consensual resolution that is practical and cost-effective. While there is no certainty that a consensual resolution will be achieved, the Student Committee submits that the temporary stay of collection activity requested in the Motion is a critical element that will maximize the possibility of consensus.

### 3.     The Students And The Public Will Be Helped And ED Isn't Harmed By Application of the Automatic Stay

29.     Individualized Administrative Proceedings are ineffective at delivering complete relief to a significant population of students. Among other things, notice of the process by which students might seek relief is inadequate. The failure is evidenced by the fact, to date, a mere six percent of qualifying students have availed themselves of a closed school discharge. *See* Supplemental Request for Judicial Notice filed concurrently herewith ("Supplemental RJN"), *Ex. A*. As well, ED acknowledges that it has granted loan discharges in fewer than 10 instances

- 12 -

before 2015. *See* ¶ 27 of the Appel Declaration attached as Exhibit 1 to Objection (the "Appel

Declaration").

30.     ED suggests that the Debtors' former students, the same students who were

targeted by the Debtors as "isolated," "unable to see and plan well for the future" and having

"few people in their lives who care about them,"[4] are expected to learn of the availability of

relief from a posting on a government website.[5] *See* Appel Decl. ¶¶ 25-33. Such expectations are

unrealistic. In fact, from the thousands of students who attended the Debtors' colleges, only a

fraction of those have availed themselves of ED's Administrative Proceedings. As of June 23,

2015, ED reported that it received  only "180 completed [attestation] claim forms" from the

approximately 40,000 students who attended Heald College from June 2010 through April 2015.

Supplemental RJN ¶ 2.

31.     The processes announced by ED unnecessarily place the burden on students to

provide information readily available to ED and the Debtors. Those students who manage to

learn of ED's announcement by visiting a government website will be asked to report to ED "the

state and applicable law or cause of action" and "specific acts . . . of alleged misconduct" that

support their requests—legal conclusions that most students cannot draw without legal advice or

access to discovery.[6] The process also requires that students submit documentation of enrollment

and other documents which many students have struggled for years to obtain from the Debtors,

and which have only become less accessible with the closure of the Debtors' colleges.

32.     The Student Committee is not looking to interfere with ED's Administrative

Proceedings. To the contrary, the Student Committee is attempting to find the most efficient way

to address student claims and, to that end, the Student Committee wants ED to participate as a

---

[4] RJN Ex. F ¶¶ 47, 51.

[5] The weakness of the notice provided by ED is evident when contrasted with these bankruptcy proceedings, where the Debtors sent notice of the deadline to file proofs of claim to approximately 100,000 students who were enrolled as of June 20, 2014.

[6] For instance, the California Attorney General relied on internal Debtor communications and student records to establish that the Debtors misrepresented their job placement rates. RJN Ex. F ¶¶ 47, 51.

major creditor in the Debtors' bankruptcy cases in order to find and put into place the most efficient means of addressing student loan issues.

33.     The public's interest is paramount in these cases because the underlying misconduct that precipitated the Debtors' insolvency has been the subject of federal and state investigations and the thousands of victims are truly John and Jane Q Public—the student victims and U.S. taxpayers. Public interest requires that students' claims be resolved in the most efficient and comprehensive way possible. ED's contrary position here is puzzling and inconsistent with the actions it and other governmental entities have already undertaken.

34.     It is more efficient to address the students' rights and obligations collectively within these bankruptcy cases than to require thousands of individual students to pursue individual relief, which will require each student to access the legal and factual basis necessary to prove their claims. It is wholly against the public interest to leave such claims unresolved, leaving a vast number of students wrongfully indebted and encumbered in their attempt to lead productive, self-sufficient lives.

35.     The public's pecuniary interest is better served by resolving the students' claims in the context of the bankruptcy proceedings where ED will also have the opportunity to obtain the indemnification to which it is entitled. 34 C.F.R. § 685.206(c)(3). If, as appears certain, there are insufficient funds in the estate to cover all of the Debtors' liability, the burden should not fall on the shoulders of individual student victims.

36.     The requested relief will not deprive ED of its existing rights as a creditor nor will it interfere with the Administrative Proceedings. Rather, application and extension of the automatic stay will provide the parties, including the students, with a "breathing spell" to negotiate the possibility of permanent class-wide relief to students.

<u>**CONCLUSION**</u>

37.     For the reasons set forth in the Motion and in this Reply, the application or extension of the automatic stay as necessary to stay enforcement and collection of alleged

student loan debt is essential to facilitating a meaningful chapter 11 process in these cases and the circumstances presented justify extension of the automatic stay.

WHEREFORE, the Student Committee respectfully requests that the Court enter the Amended Proposed Order granting the requested relief and such other relief as the Court deems appropriate.

Dated: June 26, 2015
Wilmington, Delaware

**POLSINELLI PC**

*/s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Ave.,, Suite 1100
Wilmington, DE 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com

and

Scott F. Gautier, CA Bar No. 211742
Lorie A. Ball, CA Bar No. 210703
Cynthia C. Hernandez, CA Bar No. 285770
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
sgautier@robinskaplan.com
lball@robinskaplan.com
chernandez@robinskaplan.com

and

- 15 -

50653514.1

Mark Rosenbaum, CA Bar No. 59940
Anne Richardson, CA Bar No. 151541
Alisa Hartz, CA Bar No. 285141
Dexter Rappleye, CA Bar No. 302182
**Public Counsel LLP**
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
arichardson@publichcounsel.org
ahartz@publiccounsel.org
drappleye@publiccounsel.com

*Proposed Special Counsel to the Official Committee of
Student Creditors*

- 16 -