# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | Case No. 15-10952 (KJC) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE IN SUPPORT COMMITTEE OF STUDENT CREDITORS' OMNIBUS REPLY TO OBJECTION AND RESPONSE TO MOTION FOR AN ORDER APPLYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(A) AND 105(A) AND GRANTING RELATED RELIEF**

Pursuant to Federal Rules of Evidence 101, 201, 1101, and Federal Rule of Bankruptcy Procedure 9017, the Committee of Student Creditors, (the "Student Committee") by it undersigned counsel, request that the Court take judicial notice of the following documents that were publicly filed in consideration of the *Omnibus Reply To Objection And Response To Motion For An Order Applying The Automatic Stay Pursuant To 11 U.S.C. §§362(a) and 105(a)* filed concurrently herewith:

1. Paul Fain, Best of a Bad Situation, Dec. 9, 2014, Inside Higher Ed, *available at* https://www.insidehighered.com/news/2014/12/09/feds-respond-criticism-bid-ecmc-buy-most-corinthian, (last accessed June 25, 2015), attached hereto as *Exhibit A*; and

2. Secretary Ted Mitchell and Special Master Joseph A. Smith, Press Call Re:

---

[1] The Debtors' bankruptcy cases are: Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

50653587.1

Education Department Appoints Special Master to Inform Debt Relief Process, June 25, 2015, *available at* http://www2.ed.gov/news/av/audio/2015/06252015.mp3, (last accessed June 25, 2015). The Press Call audio must be accessed via the link above.

### **The Court May Properly Take Judicial Notice of the Requested Information**

Pursuant to the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED R. EVID. 201(b)(1)-(2) (2015). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* 201(c)(2). The Federal Rules of Evidence are applicable to these proceedings as set forth therein and as further detailed in the Federal Rules of Bankruptcy Procedure. *See id.* 101(a) ("[t]hese rules apply to proceedings in United States courts"); *Id.* 1101(a) ('[t]hese rules apply to proceedings before . . . United States bankruptcy . . . judges"); FED. R. BANKR P. 9017 (2015) ("The Federal Rules of Evidence . . . apply in cases under the Code"). At the evidentiary hearing to consider the *Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant To 11 U.S.C. §§ 362(a) And 105(A) Granting Related Relief* [Docket No. 363] (the "Motion"), this Court should take judicial notice of each exhibit attached hereto.

The Court may take judicial notice of facts within the public record, including federal government or agency documents and materials published on websites. *Sea Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on official government website); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 755 n. 2 (E.D. Pa. 2003) (taking judicial notice of federal agency documents published on websites). The Court may also take judicial notice of information in news media articles. *Ieradi v. Mylan Lab.*,

- 3 -

*Inc.*, 230 F.3d 594, 597-98 (3rd Cir. 2000) (taking judicial notice of information in a newspaper article).

Here, the attached exhibit and referenced press call are materials published in the public domain. The press call is retrievable on the U.S. Department of Education website referenced and is not attached hereto. The attached exhibit and referenced materials are public records that the Student Committee has made available to the Court. Thus, the Court may properly take judicial notice of items 1 and 2.

WHEREFORE, the Student Committee respectfully requests that the Court take judicial notice of items 1 and 2 and that the Court grant the Student Committee such other and further relief as is just.

Dated: June 26, 2015
Wilmington, Delaware

**POLSINELLI PC**

 /s/ Christopher A. Ward
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com

and

**ROBINS KAPLIN LLP**
Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
Cynthia C. Hernandez, Esq.
2049 Century Park East, Suite 3400
Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
sgautier@robinskaplan.com
lball@robinskaplan.com
chernandez@robinskaplan.com

and

50653587.1

- 4 -

**Public Counsel LLP**
Mark Rosenbaum, CA Bar No. 59940
Anne Richardson, CA Bar No. 151541
Alisa Hartz, CA Bar No. 285141
Dexter Rappleye, CA Bar No. 302182
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
mrosenbaum@publiccounsel.org
arichardson@publichcounsel.org
ahartz@publiccounsel.org
drappleye@publiccounsel.com

*Proposed Special Counsel to the Official Committee of Student Creditors*

# EXHIBIT A



(https://www.insidehighered.com)





# Feds respond to criticism of bid by ECMC to buy most of Corinthian

Submitted by Paul Fain on December 9, 2014 - 3:00am

WASHINGTON -- The U.S. Department of Education last week defended the deal it helped broker for Corinthian Colleges, a disintegrating for-profit chain, to sell 56 of its campuses to a nonprofit student loan guarantee agency, ECMC.

If approved, the proposed $24 million purchase [1] "fends off disastrous consequences," the department said in a written statement [2]. It averts "disruption and displacement" for roughly 40,000 students, and strengthens their "education prospects."

Ted Mitchell, the under secretary of education, has praised ECMC's promise to slash tuition by 20 percent for most new students. And in an interview last week, he said the deal would help many students who are close to earning their credentials.

The guarantee agency is trying to buy campuses and online programs that enroll 11,000 students who are within five months of completion, according to the department, and 8,600 who are within three months.

"Pulling the rug out from under them under any circumstances would be problematic," Mitchell said of the affected students. "This is a very vulnerable population of learners."

That argument probably won't sway consumer and student advocates who have been critical [3] of the purchase, which will not be final until the department and various state agencies sign off on it. Some even doubt that students will be better off if they earn credentials from ECMC-owned Everest and WyoTech campuses, given the relatively poor job market returns for many programs at those institutions.

Selling off Corinthian's campuses is far from the best solution, advocates say. Many have released [4] forceful [5] statements [6] since news of the deal broke last month, revealing an unusually deep fault line between the administration and natural allies.

"You don't have to have a sale to allow students to complete," said Robyn Smith, a lawyer at the National Consumer Law Center, which represents low-income student loan borrowers.

For example, academic programs can be closed gradually, through so-called "teachouts," which allow current students to finish their studies. ECMC will do that for 12 additional campuses and for Corinthian's associate degree programs in criminal justice, according to the department's "term sheet [7]," which describes the deal's conditions.

The center and other consumer groups also have pushed for the feds to give Corinthian's students a choice of a tuition refund or loan disbursement.

That option could get expensive, however, both for a possible buyer of the for-profit's programs and for the federal government.

If every one of the 40,000 students affected by the purchase were eligible for a full refund, meaning total cost of attendance, not just tuition, department officials said that bill would be roughly $600 million. The buyer would be on the hook for that amount, which obviously dwarfs the proposed sale price of $24 million.

Likewise, the U.S. Treasury would cover loan discharges for Corinthian students at closed campuses. It's difficult to project those costs, department officials said, given unpredictability around the number of students filing for discharges. But they estimated at least $30 million for discharges (6 percent of slightly less than $600 million in borrowing) at the campuses ECMC instead wants to buy, and maybe much more.

There is also the issue of students' lost time and work. Getting their money back might not keep students from quitting their pursuit of a college credential.

Most of Corinthian's students are working adults, who Mitchell said already face an uphill battle with family commitments and multiple part-time jobs. They are also among the neediest of student populations in higher education. Fully 35 percent of Corinthian's students are from households with incomes under $10,000.

In previous cases of colleges shutting down, Mitchell said only 6 percent of students even reached out to the department about having their loans discharged.

"It's not as easy as just giving them a refund and having them start over," Mitchell said. "These are students who have been disappointed time and time again, and are likely to just walk away. We don't think that's good for the national economy and we don't think that's good for these students."

**'Negative Cash Flow'**

ECMC is creating a new, nonprofit subsidiary, Zenith Education Group, to run the colleges. About half of the Corinthian students who would be affected by the deal -- 19,224 students -- are enrolled in online programs.

If approved, Zenith would run the nation's largest nonprofit career college chain.

ECMC may have gotten a bargain price for most of Corinthian. But the ECMC Group's CEO and president, David Hawn, said he does not expect the troubled campuses to turn a profit anytime soon.

"We expect to operate this negative cash flow for at least two years," said Hawn. "When it becomes a sustainable program, it remains a nonprofit."

Under the proposed deal, half of the $24 million from ECMC goes directly to the department. Some portion of that payment could be used to reimburse Corinthian students.

"We will use those $12 million to best serve students," Mitchell said, "and we're still discussing the best way to do that."

ECMC agreed to pay up to an additional $17.25 million to the department over the next seven years. That money would be taken from Zenith earnings that exceed the feds' targets, according to the terms of the deal.

Mitchell said ECMC also agreed to hire an independent monitor to keep an eye on Zenith. The monitor will scrutinize the chain's performance, marketing and data disclosures, among other things. Zenith will weed out poor-performing programs, Mitchell said, and put enrollment caps on ones with low job-placement rates.

"I love all of the things that they are doing in preparation for running these places," he said.

**State Agency Hurdles?**

California won't be part of Zenith, even though 20,000 Corinthian students are located there.

The state is home to 10 of 12 Heald College campuses. Many observers say the chain of business colleges is Corinthian's most attractive asset. Heald holds regional accreditation, something only one other Corinthian campus can boast (the Everest College campus [8] in Phoenix).

The department and Corinthian still are trying to find a buyer for Heald and the remaining Everest properties, Mitchell said.

Kamala Harris, California's attorney general, has sued Corinthian [9], accusing the for-profit of false and predatory advertising as well as securities fraud. Concerns about that ongoing legal challenge, ECMC said, kept Corinthian's California holdings off the table.

Harris's office would not release ECMC from liability for Corinthian's alleged violations, according to a report [10] from *KQED News*. Hawn has said he is hopeful that Zenith will be able to avoid taking on Corinthian's many legal and regulatory problems.

Even so, other states must sign off on the deal. Experts said that might not be a sure thing, particularly in states where regulators are investigating or suing Corinthian.

Smith, who worked previously in the California attorney general's office, said various state agencies will need to approve the change of ownership and control of Corinthian's campuses. So will accreditors. State attorneys general may have Corinthian investigations in the works that have yet to be revealed publicly. And Smith said the transfer of legal responsibility to the 56 campuses' new owner remains a possibility.

"It is something for ECMC to be worried about," she said. "They still might have to fight that battle."

Illinois could be one state to watch. ECMC is seeking to buy five Everest campuses in Illinois. But U.S. Sen. Dick Durbin, an Illinois Democrat, has been a fierce critic of Corinthian and the for-profit sector. When Corinthian first began to topple, he joined with other Senate Democrats in calling for the chain to freeze [11] new enrollments. The department has not backed that request, in part because it would have made the for-profits' already-tarnished assets even less attractive.

Earlier this year Durbin was critical of ECMC's aggressive pursuit of student debtors, particularly those who claim bankruptcy.

U.S. Rep. Steve Cohen, a Tennessee Democrat, joined Durbin in that criticism [12]. Last week Cohen and two other Congressional Democrats wrote [13] to the department to express concern about the pending sale. In addition to ECMC's "checkered history in student loans," they questioned the guarantee agency's lack of experience running colleges.

ECMC has responded to criticism about its loan collection practices by saying its "role is not to determine social policy on student loan repayment, but to present the law fairly and consistently."

As for never running a college, Hawn said Zenith would hire administrators with plenty of higher education experience.

"You're going to be impressed by who we bring in," he said. "Give us a little bit of time."

For-Profit Higher Ed [14]

**Source URL:** https://www.insidehighered.com/news/2014/12/09/feds-respond-criticism-bid-ecmc-buy-most-corinthian?width=775&height=500&iframe=true

**Links:**
[1] https://www.insidehighered.com/news/2014/11/21/guaranty-agency-buys-most-crumbling-profit-corinthian-colleges-us
[2] http://www.ed.gov/blog/2014/12/a-bold-new-plan-to-protect-students/
[3] http://www.edcentral.org/ecmc/
[4] http://views.ticas.org/?p=1416
[5] http://higherednotdebt.org/blog/happens-college-sale
[6] http://www.edcentral.org/ecmc-bankruptcy/
[7] http://www2.ed.gov/documents/press-releases/term-sheet-sale-corinthian-campuses.pdf
[8] http://www.everestcollegephoenix.edu/about/accreditation
[9] http://oag.ca.gov/news/press-releases/attorney-general-kamala-d-harris-seeks-immediate-halt-corinthian-colleges%E2%80%99-false
[10] http://ww2.kqed.org/news/2014/11/25/corinthian-colleges-sell-off-no-deal-yet-for-california-students/
[11] https://www.insidehighered.com/quicktakes/2014/06/27/12-senators-ask-education-dept-freeze-