**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORINTHIAN COLLEGES, INC., et al.,[1] | ) | Case No. 15-10952 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered. |
| | ) | |
| | ) | **Objections Due By: August 19, 2015** |
| | ) | **Hearing Date: August 26, 2015** |

**MOTION OF COMMONWEALTH OF MASSACHUSETTS, PEOPLE OF THE STATE OF CALIFORNIA, AND STATE OF WISCONSIN FOR DETERMINATION THAT THE AUTOMATIC STAY PROVISION DOES NOT APPLY TO THE STATES' ACTIONS AGAINST DEBTORS**

The Commonwealth of Massachusetts, the People of the State of California, and the State of Wisconsin (collectively the "States") respectfully request entry of an order pursuant to section 362(b)(4) of title 11 of the United State Bankruptcy Code confirming that the automatic stay does not apply to the States' consumer protection actions in *Commonwealth of Massachusetts v. Corinthian Colleges, Inc*., Sup. Ct. C.A. 14-1093E ("Massachusetts or MA Case"), *People v. Heald College, LLC et al*, CGC-13-534793 (SF Superior Court) ("California or CA Case"), and *State v. Corinthian Colleges, Inc.*, Milwaukee Co. Case No. 2014CX000006 ("Wisconsin or WI Case") (collectively the "States' Cases").

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425, Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Educations, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

While debtors have filed Suggestions of Bankruptcy in all three cases indicating that the cases are stayed, 11 U.S.C § 362(b)(4) explicitly excepts the States' actions from the automatic stay provision of the Bankruptcy Code.[2]

## Jurisdiction and Venue

The Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 362.

## The States' Cases

The States' Cases were brought against debtors under the States' consumer protection laws, and under California's state securities laws, M.G.L. c. 93A, § 4, Cal. Bus. & Prof. Code §§ 17200, 17207, 17500, 17535.5, Cal. Corp. Code §§ 25400, 25401, and Wis. Stat. Sec. 100.18. The California and Massachusetts Cases were filed over a year prior to debtors' bankruptcy filing, and the Wisconsin case six months before the bankruptcy filing.[3] The States' Cases seek injunctive relief, penalties, restitution for consumers injured by debtors' violations of state consumer protection and false advertising laws, as well as costs (CA Case pp. 37-39; MA Case pp. 45-47; WI Case pp. 22-23). California's case also seeks relief for debtors' violation of an

---

[2] In *Consumer Prot. Div. v. Nanticoke Homes, Inc.*, 2003 WL 22287387 (D. Del. 2003), the Delaware District Court observed that, "given the statutory exception to enforcement of the automatic stay [under § 362(b)(4)], it was not incumbent on the Division to file a motion to lift the automatic stay." *Nanticoke*, 2003 WL 22287387, at *2 n.3. But because the debtors have filed Suggestions of Bankruptcy in the state cases, the States believe the entry of an order in the bankruptcy court will provide clarity to the courts in their States.

[3] The California First Amended Complaint, filed February 19, 2014, and the complaints in the Massachusetts and Wisconsin cases, filed on April 3, 2014 and October 27, 2014 respectively, are attached to this memorandum as Exhibits A, B, and C.

existing state court injunction, and injunctive relief, penalties, disgorgement, and damages to investors who were harmed by debtors' violations of the state's securities laws (CA Case pp. 37-38).

The States' Cases all allege that the debtors committed unfair or deceptive and/or fraudulent practices in their States by, *inter alia*, misrepresenting their schools as legitimate educational opportunities when in fact they provided little or no education to students, but were primarily created to obtain federal grants and loans and pass these monies to company insiders and shareholders. The States' Cases also allege that debtors misrepresented job placement rates and the job prospects of graduates and numerous other material facts.

--The California Case alleges that debtors, which targeted single parents and low income persons described "in internal company documents as 'isolated,' 'impatient,' individuals with 'low self-esteem,' who have 'few people in their lives who care about them' and who are 'stuck' and 'unable to see and plan well for future,' through aggressive and persistent internet and telemarketing campaigns and through television ads on daytime shows like Jerry Springer and Maury Povich", misrepresented job placement rates to students and investors, advertised for programs they did not offer, unlawfully used military seals in advertising, inserted unlawful clauses into enrollment agreements that purport to bar student claims, subjected students to unlawful debt collection practices, and failed to disclose debtors' role in private loan programs (CA Case ¶¶ 1, 3).

--The Massachusetts Case alleges that debtors "deceived and misled the public and prospective students in order to aggressively enroll students at its Massachusetts campuses with the goal of increasing tuition and fee revenues, and consequently profits, for the company and its

shareholders. In advertisements on television and other media, on its website, and in written and oral statements made to recruit and enroll prospective students, [debtors] misrepresented:

- the urgency of enrollment and the need to enroll immediately in Corinthian schools,
- Everest MA's influence and historical success in finding jobs in the students' field of study,
- the employment opportunities available to Everest MA graduates,
- the earnings of Everest MA graduates,
- the assistance Everest MA schools provide graduates in obtaining employment in their fields of study,
- the nature, character, and quality of Everest MA programs,
- the transferability of Everest MA credits,
- the availability of externships in the students' fields of study, together with the training provided by and employment opportunities accompanying externships, and
- the nature and availability of financial aid." (MA Case ¶¶ 2, 3)

In addition, debtors' schools "recruited and enrolled students in the Everest MA schools that it knew were unable to benefit from the programs and/or were legally unable to obtain employment in their fields of study." (*Id.*, ¶ 5)

--The Wisconsin Case alleges that debtors made "false, misleading and deceptive representations to induce students to enroll in its post-secondary school 'Everest College, Milwaukee.' Among Corinthian's many misrepresentations were deceptive statements about critical facts such as the availability of externships in fields of study the school offered and the job placement rates of the school's graduates." (WI Case, Introduction)

As one student stated, "that school is a scam." (MA Case, ¶ 8)

**UNDER SECTION 362 THE AUTOMATIC STAY DOES NOT APPLY**
**TO THE STATES' CASES**

Section 362(b)(4) of the Bankruptcy Code provides an exception to the automatic stay provision of the Code for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power." 11 U.S.C § 362(b)(4). The section 362(b)(4) exception "applies to instances where the governmental unit sues a debtor to enforce consumer protection laws, antifraud acts, safety regulations, or similar police or regulatory laws. Furthermore, governmental actions which seek to fix damages for violation of such police or regulatory laws are not stayed." 2 Norton Bankr. L. & Prac. 3d § 43:19.

The cases plainly show that the States' Cases, which seek injunctive relief, penalties, and restitution under the States' consumer protection laws and, in California's case, the state's securities laws, are not stayed. In *United States v. Nicolet, Inc.*, 857 F. 2d 202 (3d Cir. 1988), the Court of Appeals, quoting from the Senate and House Committee reports, stated that "'where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or *attempting to fix damages for violation of such a law*, the action or proceeding is not stated under the automatic stay.'" *Id.*, at 208 (citations omitted; emphasis in case). *See also In re Nortel Networks, Inc.*, 669 F.3d 128, 139 (3d Cir. 2011); *In re Mystic Tank Lines Corp.*, 544 F. 3d 524, 526-27 (3d Cir. 2008).

In *Nicolet*, the Court ruled that the government's action to recover funds from the debtor for past environmental clean-up costs was not stayed, *id*. at 207-209. The Court ruled that the

automatic stay provision does not apply to a regulatory action to obtain a money judgment—only seizure of debtor's property to satisfy a judgment is proscribed: "[b]y simply permitting the government's claim to be reduced to a judgment, no seizure of property takes place." *Id*., at 209. The Court stated:

> Moreover, that Congress carefully made only enforcement of a money judgment subject to the automatic stay indicates strongly that mere entry of the judgment was not intended to be proscribed. This implication is entirely consistent with the legislative history to which we earlier referred.

*Id.* The Court addressed the "pecuniary interest/public policy analysis" that has been used by some courts to determine whether the government is acting to enforce its "policy or regulatory power", *id*. The Court held that when the government is not "seeking redress for private wrongs or a remedy for a private contract breach… [and] is not suing in its role as a consuming participant in the national economy, *i.e.*, suing a negligent motorist for damage to a GSA van or a paperclip manufacturer for a defective order", the government is acting pursuant to its police or regulatory authority. *Id.*

To the extent a governmental unit's action to recover funds from the debtor under its police or regulatory authority is exempted from the automatic stay provision, it is *a fortiori* that a government action for injunctive relief is exempted from the stay provision. *See, e.g., Penn Tera Ltd. v. Dep't of Envtl. Resources*, 733 F. 2d 267 (3d Cir. 1984).

All appellate courts that have considered the issue have agreed with *Nicolet* that a regulatory action by the government, whether it seeks money or injunctive relief, is exempt from the automatic stay provision of the Bankruptcy Code. *See, e.g., In re First Alliance Mortgage Co.*, 263 B. R. 99 (9th Cir. BAP 2001) (consumer protection laws); *Safety-Kleen, Inc. v. Wyche*, 274 F. 3d 846 (4th Cir. 2001) (environmental laws); *SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000) (securities laws disgorgement); *City of New York v. Exxon Corp*., 932 F.2d 1020 (2d Cir. 1991)

(environmental laws); *Eddleman v. United States Dep't of Labor,* 923 F. 2d 782 (10th Cir. 1991) (labor laws); *In re Commonwealth Cos*., 913 F. 2d 518 (8th Cir. 1990) (False Claims Act); *In re Commerce Oil Co*., 847 F. 2d 291 (6th Cir. 1988) (environmental laws); *Brock v. Rusco Indus., Inc*., 842 F. 2d 270, 273 (11th Cir. 1988) (labor laws).

In *In re First Alliance Mortgage Co.*, 263 B.R. 99 (9th Cir. 2001 BAP), the Ninth Circuit Bankruptcy Appellate Panel addressed the Massachusetts consumer protection law under which the Massachusetts Case against debtors was filed (M.G.L. c. 93A) and held that "§ 362(b)(4) exempts the Commonwealth's prosecution to judgment of its claims for civil penalties and attorneys' fees from the automatic stay" and that "the bankruptcy court erred by determining that the commonwealth's restitution claims were not exempt from the automatic stay pursuant to § 362(b)(4)", 263 B.R. at 115.

In considering the Commonwealth's claim for penalties, the Court stated:

> From legislative history and case law, it is well-established that consumer protection is a valid exercise of the police and regulatory power for purposes of § 362(b)(4). Here, the Commonwealth sought to impose civil penalties against FAMCO for its alleged unfair and deceptive loan practices. This action falls squarely within its public policy of protecting consumers and deterring violators.

*Id*., at 108. The States' Cases against debtors, which similarly seek to impose penalties on debtors for their unfair and deceptive acts and practices, are "squarely within [the States'] public policy of protecting consumers and deterring violators," and as such, are exempt from the automatic stay provision.

With respect to the restitution claims, the Court analyzed the pecuniary interest and public purpose tests and found:

> [the Commonwealth's] money claims, which are part of the totality of its consumer protection remedies, are for a public purpose, and not solely for the pecuniary gain to the Commonwealth or its individual citizens. Nor does the entry of a monetary judgment reduce the estate or interfere with the bankruptcy. Such a judgment only serves to liquidate the

> Commonwealth's claim against the estate. FAMCO will be entitled to all of its defenses to the Commonwealth's action in the Massachusetts state court action. Furthermore, these cases support the conclusion that the Commonwealth was not seeking to adjudicate private rights, but was primarily pursuing remedies for alleged violations of its consumer protection laws.

*Id.*, at 111. The States' Cases seek restitution as part of their consumer protection remedies, and the California action, in addition, seeks disgorgement and damages as investor remedies, and the Cases are brought, like the *First Alliance* case, for a public purpose. The automatic stay provision does not apply to these cases.

In the event that a monetary judgment is obtained in the States' Cases, the judgment will not be enforced in the States but will be subject to treatment in bankruptcy, either through a chapter 11 plan or otherwise. *See* Bankruptcy Code § 362(b)(4) (permitting "the enforcement of a judgment other than a money judgment"); *First Alliance*, 263 B.R. at 110-14. However, non-monetary relief may be enforced in the State courts.

The District Court of Delaware has similarly ruled that a consumer protection action seeking injunctive relief, penalties, and restitution is exempt from the automatic stay provision. In *Consumer Prot. Div. v. Nanticoke Homes, Inc.*, 2003 WL 22287387, *2 (D. Del. 2003), the Court found that the State's consumer protection action "was not intended to protect the government's interest in the debtor's property, but related to matters of public safety and welfare and was intended to effectuate public policy." See also *In re W.R. Grace & Co.*, 412 B.R. 657, 664 (D. Del. 2009) (following *Nanticoke* and holding that "efforts to fix a penalty constitute a permissible exception to the automatic stay"); *In re Luskins, Inc.*, 213 B.R. 107 (D. Md. 1997); *Commonwealth of Pennsylvania v. Burns*, 2008 WL 3246244 (Bankr. M.D. Pa. 2008).

The debtors have raised two concerns with respect to the automatic stay. First, the debtors note that they have ceased doing business. However, the statutory exception to the automatic stay provision is not limited to actions against entities that continue to do business.

Government actions for injunctive relief, penalties, and restitution are deterrent actions, and this is true whether or not an entity violating State law continues to do business. The *First Alliance* court explicitly ruled that the fact that the debtor has ceased doing business is irrelevant to the determination of the application of the automatic stay:

> FAMCO also contends that these causes of action are unnecessary since it has already ceased its loan origination business. However, civil penalties may be assessed for violations of the statute. Mass. Gen. Laws ch. 93A § 4. The penalties imposed for consumer fraud meet both the pecuniary purpose test and the public policy test. Under § 362(b)(4), the bankruptcy court need not also determine whether the government's exercise of its police or regulatory power is a legitimate one.

263 B.R. at 109 (citation omitted).

The debtors also state that it will cost money to defend the State Cases and will distract the debtors' employees. Again, the statute exempting government regulatory actions from the stay is not limited to actions that are costless or to actions that do not require the attention of a debtor's employees. Even the existence of multiple prosecutions by the governments of several States is not pertinent to the analysis of the application of the automatic stay provision; the *First Alliance* Court stated:

> The bankruptcy court in the case at bar expressed concern about the potential for multiple prosecutions in the various States where FAMCO did business, and the financial effect of such litigation on the bankruptcy estate. However, to hold that a governmental action does not come within § 362(b)(4) for such reason would run counter to the fundamental policy behind the exception, which is to prevent the bankruptcy court from becoming a haven for wrongdoers.

*Id*. (citation omitted).

While it is understandable that the debtors would prefer not to deal with the consequences of their State law violations, under the Bankruptcy Code the inquiry is an objective one based solely on the existence of a governmental policy or regulatory action. It does not permit consideration of the cost to the debtor or the impact on debtor's employees. A debtor may not

violate State law and then use the stay provision as a shield to prevent the State from prosecuting an action based on the debtor's violation.

## CONCLUSION

The automatic stay does not apply to the States' Cases. The States respectfully request that the Court enter an order granting the States' motion.

Dated: July 15, 2015

COMMONWEALTH OF MASSACHUSETTS
MAURA HEALEY
MASSACHUSETTS ATTORNEY GENERAL

By: /s/ *Peter Leight*

Peter Leight, BBO #631580
Glenn Kaplan, BBO #567308
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
Fax: 617-722-0184
peter.leight@state.ma.us
glenn.kaplan@state.ma.us

THE PEOPLE OF THE STATE OF CALIFORNIA
KAMALA D. HARRIS
CALIFORNIA ATTORNEY GENERAL

By: /s/ *Bernard A. Eskandari*

Bernard A. Eskandari
Deputy Attorney General
300 S. Spring St., Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-2652
Fax: (213) 897-2802
Email: bernard.eskandari@doj.ca.gov
Attorney for the People of the State of California

STATE OF WISCONSIN
BRAD D. SCHIMEL
WISCONSIN ATTORNEY GENERAL

By: *<u>/s/ F. Mark Bromley</u>*

F. Mark Bromley, State Bar #1018353
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6201
(608) 267-2223 (fax)
bromleyfm@doj.state.wi.us