## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | | |
|---|---|---|
| | : | **Case No. 15-10952-KJC** |
| **In re** | : | **(Chapter 11/Jointly Administered)** |
| | : | |
| **CORINTHIAN COLLEGES, INC.,** *et al.* | : | **Hearing Date:** |
| | : | **July 22, 2015 at 3:00 p.m.** |
| **Debtors.** | : | |

-------------------------------------------------------------x    **Docket Numbers 520, 521**

### UNITED STATES' OBJECTION TO DEBTORS' MOTION FOR APPROVAL FOR SOLICITATION PURPOSES OF DEBTORS' COMBINED DISCLOSURE STATEMENT AND LIQUIDATING PLAN

In numerous respects, Debtors' Combined Disclosure Statement And Chapter 11 Plan of Liquidation (Docket No. 520) (the "Disclosure Statement" or "DS") fails to provide the "adequate information" required by 11 U.S.C. § 1125 to holders of claims. For these reasons, the United States, on behalf of its Department of Education ("ED"), objects to the July 1, 2015 motion (Docket No. 521) (the "Motion" or "Mot.") of the debtors (each, a "Debtor") to the extent it seeks approval of the Disclosure Statement for solicitation purposes. The United States reserves its right to object separately at the appropriate time to the confirmability of the chapter 11 reorganization plan (the "Plan") associated with the Disclosure Statement.[1]

### ARGUMENT

1.  The Disclosure Statement should be disapproved because it inappropriately collapses the Plan into itself. DS 1 (characterizing the Disclosure Statement as a "Combined Plan and Disclosure Statement"). An integrated plan and disclosure statement is permitted for small business bankruptcies. 11 U.S.C. § 1125(f). To qualify, the debtor's debts cannot exceed approximately $2.5 million. 11 U.S.C. § 101(51D). By authorizing a combined disclosure

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Disclosure Statement.

statement and plan for chapter 11 bankruptcies of small businesses, Congress implicitly prohibited them for other chapter 11 bankruptcies. *See Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). Here, even by Debtors' estimates, their obligations are more than one hundred times the ceiling to qualify as a small business. DS 44 (estimating claims as totaling $274.36 million). Because "[t]he court cannot make an order that is inconsistent with the Bankruptcy Code or Rules," it should not approve the Disclosure Statement improperly combining the Plan and the Disclosure Statement. *See In re Amster Yard Assocs.*, 214 B.R. 122, 124 (Bankr. S.D.N.Y. 1997) (holding that "'[a]n order combining the disclosure statement and confirmation hearings is inconsistent with Section 1125 except in prepackaged cases or 'small business' cases'") (quoting 2 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 105.08, at 105-83 to 105-84 (rev. 15th ed.1997)).

2. The Disclosure Statement should be disapproved because it does not "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). Instead, the Disclosure Statement (at 44) concedes that the recovery for unsecured creditors (i.e., those in Plan class 4) is "undetermined." Among Debtors' unsecured creditors are ED and thousands of persons who borrowed from the United States, acting through ED, to enroll as Students at one of the Debtors. More disclosure is required to enable the Students and ED to make informed decisions about how to cast their ballots on the Plan.

3. The Disclosure Statement fails to provide the requisite adequate information in part because it does not describe completely the estate's "available assets and their value," *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988); *accord In re U.S. Brass*

*Corp.*, 194 B.R. 420, 424 (Bankr. E.D. Tex. 1996); *In re A.C. Williams Co.*, 25 B.R. 173, 176

(Bankr. N.D. Ohio 1982) (holding that disclosure statement should include "a description of

available assets and their value"); *see also Ferretti*, 128 B.R. at 18 (collecting cases).

    a.  Under the Plan, unsecured creditors' recovery would turn on what assets qualify as

"Distribution Trust Assets."  Subject to enumerated exceptions, these are defined as

"all interests of any and every kind owned or otherwise held by the Debtors and their

Estates in any and all property of any kind."  DS 9.

    b.  One type of asset evidently falling within this definition that may provide a basis for

recovery are Insurance Policies, including the D&O Policies.  DS 62.  For these

policies, the Disclosure Statement should – but does not – describe the dollar limits of

the coverage applicable to each Debtor, the insurers' names, the risks covered, the

amount Debtors estimate will be recovered under the Insurance Policies, and the risks

of recovery on these claims.  *See* DS 7, 9, 13, 22, 60, 62.  These disclosures are

needed to provide ED and other creditors with adequate information about the

prospects for recovery under the Plan.  *See U.S. Brass*, 194 B.R. at 426 (approving

disclosure statement detailing "that the extent of insurance coverage is highly

contested and may be substantially less than the listed face amount of the policies").

    c.  Additional disclosure is also needed for the Student Refund Reserve.  DS 26-27.  The

Disclosure Statement should explain why this Fund had a balance of just $4.3 million

as of the Petition Date.  DS 26.  The Student Refund Reserve was "to be used

exclusively for [S]tudent refunds," and was to be for an amount "no less than $30

million."  Operating Agreement § 5.F between Debtors and ED (July 8, 2014)

("Operating Agreement") (Harold Jenkins Certification. Ex. (July 15, 2015) ("Jenkins

Cert.") (attached as Ex. 1 to this Objection). Under an amendment to the Operating Agreement, Debtors were to make bi-weekly deposits of $250,000, and a $5 million deposit on October 23, 2014, Second Amendment to Operating Agreement §§ 2, 3 (Sep. 12, 2014) (Jenkins Cert. Ex.) ("Op. Ag. 2d Amend."). The Disclosure Statement should reveal these facts and disclose whether the Debtor made all of these deposits. The Disclosure Statement also should reveal what draws were made on the Student Refund Reserve and on what grounds. The Disclosure Statement should acknowledge that in certain circumstances, "refunding" amounts in the Student Refund Reserve required Debtors to return Students' loan proceeds to ED to reduce the Students' loan balances. Operating Agreement § 5(C)(2)(i). The Disclosure Statement should explain why, under the proposed Plan, unsecured creditors other than Students and ED should be permitted to share in the amounts in the Student Refund Reserve. *See* DS 9, 12-13, 57-58. The Disclosure Statement also should state whether Debtors contend that a "determination" has been made that the Student Refund Reserve contains more than "the total Corinthian student refund liability," Op. Ag. 2d Amend. § 4, and whether funds from the Student Refund Reserve have been released to the Prepetition Lenders.

d.  The circumstances under which these Chapter 11 Cases arose, *see* DS 24-26 (describing numerous governmental suits against Debtors and ED's expressed intention to fine one Debtor nearly $30 million for misrepresenting its placement rates), likely D&O Policy claims, possible misallocation of the Student Refund Reserve, and the Plan's exculpation clause releasing Debtors' insiders, Plan XII.B, DS at 72-73, suggest that Debtors' estates may have claims against certain Debtor

insiders.  Because any such claims are estate assets, disclosure about these claims is required.  *In re Microwave Prods. of Am., Inc.*, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (disapproving disclosure statement that failed to "address claims involving officers or insiders"); *see In re Cardinal Congregate I*, 121 B.R. 760, 767 (Bankr. S.D. Ohio 1990) (disapproving disclosure statement failing to "identif[y] and discuss[] . . . all causes of action which the debtor may pursue" and "debtor's intentions as to these causes of actions").

In short, for the Disclosure Statement to provide the requisite "adequate information," additional details are needed about these assets, the conditions to collection on them, and associated risks and costs.

4.  The Disclosure Statement should not be approved because it characterizes governmental investigations and actions as "politically and ideologically driven."  DS 24.  With this phrase, Debtors appear to be ascribing motives for the actions of others, including government officials. Debtors' knowledge about governmental motives and the accuracy of this inflammatory phrase appear lacking.  The phrase should be removed from the Disclosure Statement.

5.  The Disclosure Statement should not be approved because it includes discussion about a motion that now has been withdrawn with prejudice.  Specifically, the Student Committee has withdrawn with prejudice the "Student Committee Stay Motion" (Docket No. 363).  *See* Student Committee's July 10, 2015 Notice of Withdrawal (Docket No. 555).  In light of this withdrawal, references to it in the Disclosure Statement (at 40) likely would confuse, not enlighten, and so are inappropriate.  *See In re Georgetown South Apartments of Tuscarawas Cnty., II, Ltd.*, 136 B.R. 160, 162-63 (Bankr. S.D. Ohio 1992) (denying approval of disclosure statement, explaining that "nonpertinent information should not be included to avoid potential confusion").

6. The Disclosure Statement should not be approved because it includes discussion about an "Alternate Plan," DS 41-42, whose provisions are inconsistent with the Plan for which Debtors seek to solicit votes. The risk of confusion from inclusion of this material – about terms other than those for the proposed Plan – suggests that the Disclosure Statement in its current form should be disapproved. *See Georgetown South*, 136 B.R. at 162.

7. The Disclosure Statement should not be approved because it fails to provide any information about the contributions by non-Debtors benefitting from the "Exculpation" Clause in Plan XII.B or the "Releases" Clause in Plan XII.C. DS 72-74. Specifically, the Disclosure Statement should detail what the Debtors' estates have received or would receive in exchange for granting these exculpations and releases, why the release of these claims is fair to creditors (who may share in any recovery against the released parties), and whether – and if so why – this release is necessary to the Debtors' reorganization. Code section 524(e) "states generally that a discharge of a debtor's obligations in bankruptcy does not relieve non-debtor parties of liability for debts." *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 207-08 (3d Cir. 2000). Thus, the discharge does not normally affect those who have "not formally availed themselves of the benefits and burdens of the bankruptcy process." *Id.* at 211. In *Gillman*, non-debtors objected to the discharge in a reorganization plan of their claims against the debtors' directors and officers (also non-debtors). 203 F.3d at 207. The court found that the district court's order "was not accompanied by any findings that the release was fair to the [third parties] and necessary to the . . . Debtors' reorganization. Without such findings, a release and permanent injunction cannot stand on their merits under any of the standards set forth in the case law of other circuits." *Id.* at 214. *Cf. U.S. Brass*, 194 B.R. at 423 (approving disclosure

statement providing that a third party would not be released if it did not make substantial monetary contribution).

8.   The Disclosure Statement should not be approved because it fails to detail what books and records would be retained by the Debtor after the Confirmation Date and so would be subject to destruction (instead of being transferred to the Liquidation Trust).  DS 68.  This unspecified, possible document destruction could improperly affect the ability of various persons, including governmental authorities and the Distribution Trustee, to pursue their rights.  Consequently, further disclosure is needed for parties, including ED, to decide how to vote on the Plan.

## CONCLUSION

For the foregoing reasons, the Court should not approve the Disclosure Statement.

Dated:  July 15, 2015                    Respectfully submitted

                                         BENJAMIN C. MIZER
                                         Principal Deputy Assistant Attorney General

                                         CHARLES M. OBERLY, III
                                         United States Attorney

                                         ELLEN SLIGHTS
                                         Assistant United States Attorney

                                         /s/  Lloyd H. Randolph
                                         RUTH A. HARVEY
                                         TRACY J. WHITAKER
                                         LLOYD H. RANDOLPH
                                         (D. C. Bar No. 376009)
                                         JOHN R. KRESSE
                                         Civil Division
                                         U. S. Department of Justice
                                         P. O. Box 875
                                         Ben Franklin Station
                                         Washington, D.C.  20044-0875
                                         (202) 307-0356

                                         ATTORNEYS FOR THE UNITED STATES

<u>CERTIFICATE OF SERVICE</u>

I, Lloyd H. Randolph, hereby certify that on the 15th day of July, 2015, I caused a true and correct copy of the foregoing **UNITED STATES' OBJECTION TO DEBTORS' MOTION FOR APPROVAL FOR SOLICITATION PURPOSES OF DEBTORS' COMBINED DISCLOSURE STATEMENT AND LIQUIDATING PLAN and accompanying Certification of Harold Jenkins** to be served electronically through the Court's ECF system upon those who have entered an appearance in this proceeding, and through electronic mail on the parties listed below.

Dated: July 15, 2015

/s/ Lloyd H. Randolph
Lloyd H. Randolph

Christopher A. Ward, Esq.
Shanti M. Katona, Esq.
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
cward@polsinelli.com
skatona@polsinelli.com

Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
Cynthia C. Hernandez, Esq.
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
sgautier@robinskaplan.com
lball@robinskaplan.com
chernandez@robinskaplan.com

Mark Rosenbaum, Esq.
Anne Richardson, Esq.
Alisa Hartz, Esq.
Dexter Rappleye, Esq.
PUBLIC COUNSEL LLP
610 S. Ardmore Avenue
Los Angeles, CA 90005
mrosenbaum@publiccounsel.org
arichardson@publiccounsel.org
ahartz@publiccounsel.org
drappleye@publiccounsel.com

Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Marisa A. Terranova, Esq.
Amanda R. Steele, Esq.
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
collins@rlf.com
merchant@rlf.com
terranova@rlf.com
steele@rlf.com

Richard L. Schepacarter, Esq.
Timothy Jay Fox, Jr., Esq.
Office of the United States Trustee
U. S. Department of Justice
844 King Street, Suite 2207
Lockbox #35
Wilmington, DE 19801
timothy.fox@usdoj.gov
richard.schepacarter@usdoj.gov