**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10952-KJC<br><br>**Objection Deadline: August 5, 2015 at 4:00 p.m.**<br>**Hearing Date: August 13, 2015 at 1:30 p.m.** |

**MOTION FOR AN ORDER ALLOWING STUDENT COMMITTEE TO FILE A COLLECTIVE PROOF OF CLAIM PURSUANT TO 11 U.S.C. §§ 105(A), 501, AND 502 AND GRANTING RELATED RELIEF**

The Committee of Student Creditors (the "Student Committee") [2] appointed in the above-captioned jointly administered chapter 11 cases respectfully requests entry of an order authorizing the Student Committee to file a collective proof of claim in the estimated amount of $2.5 billion (the "Collective Student Claim") on behalf of all individuals that attended the Debtors' colleges (each a "Student," and collectively, the "Students"), but have not yet filed a proof of claim in these Bankruptcy Cases. The basis for the relief includes sections 105(a), 501 and 502 of title 11 of the United States Code (the "Bankruptcy Code"), rules 3001, 3002, 3003(c), 7023, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425, Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Educations, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2] The members of the Student Committee are: Tasha Courtright, Jessica King, Amber Thompson, Crystal Loeser, Michael Adorno-Miranda, Krystle Powell and Brittany Ann Smith Jackl.

Rules") and rules 3003-1 and 9013-1 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules").

**PRELIMINARY STATEMENT**

Given the complexity of issues related to the Debtors' bankruptcy, the speed at which these Bankruptcy Cases are progressing and the breadth of the Debtors' former student body, Students have not received notice that is effective to inform them of the existence of these Bankruptcy Cases, their right to file a claim, the basis of such claims or the importance of filing a proof of claim. By this Motion, the Student Committee is seeking to file a single collective proof of claim to insure procedural due process by preserving the rights of all Students that have been affected by the Debtors' misconduct or the collapse of the Debtors' business to (i) participate in an appropriate relative amount of claims in these Bankruptcy Cases; and (ii) be afforded a fair opportunity to receive a share of any relief that is to be afforded to creditors in these Bankruptcy Cases. By preserving the Students' rights through the Collective Student Claim, rather than extending the Bar Date in these Bankruptcy Cases, the Student Committee hopes to assist the Estates in moving toward confirmation of a consensual chapter 11 plan that may provide more meaningful relief for Students than the alternative of a chapter 7 liquidation.

In support of this Motion, the Student Committee relies upon and incorporates by reference the Declarations of Tasha Courtright, Amber Thompson, Brittany Ann Smith Jackl, Jessica King, Crystal Loeser and Michael Adorno-Miranda (the "Student Committee Declarations"); the Supplemental Declaration of Tasha Courtright (the "Courtright Supplemental Declaration"); the Supplemental Declaration of Jessica King (the "King Supplemental Declaration"); the Declaration of Kathryn Mills (the "Mills Declaration"); the Declaration of Michael Armstrong (the "Armstrong Declaration"); the Declaration of Estrellita Hurtado (the "Hurtado Declaration"); the Declaration of Catherine Nownes Whitaker (the "Nownes Declaration") and the Request For Judicial Notice ("RJN"), filed concurrently with this Motion. In further support of the Motion, the Student Committee, by and through its undersigned counsel, respectfully represents as follows:

## JURISDICTION & VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[3] The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 501 and 502.

## PROCEDURAL BACKGROUND

2. On May 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

3. On May 15, 2015, the United States Trustee ("UST") appointed the Student Committee to represent the interests, and act on behalf, of all student creditors of the Debtors.

4. On June 18, 2015, the Court entered an order establishing July 20, 2015 (the "Bar Date") as the deadline for non-governmental creditors to file proofs of claim [Dkt. No. 429] (the "Bar Date Order"). Pursuant to the Bar Date Order, a Notice of the Bar Date, including a proof of claim, was sent to parties listed on the Debtors' Schedules and the creditor matrix. *See* Bar Date Order.

5. On July 1, 2015, the Debtor filed a combined Disclosure Statement (the "Disclosure Statement") and Plan of Liquidation [Dkt. No. 521] (the "Plan"). A hearing to approve the Disclosure Statement was held on July 22, 2015 and a hearing to approve the Plan is currently scheduled for August 26, 2015. Since the Debtors' filed the Plan, the Debtors, the Student Committee, the secured lenders and the General Unsecured Creditors Committee, among others, have been engaged in ongoing discussions and negotiations regarding a possible consensual plan of liquidation.

---

[3] Under Local Rule 9013(b), the Student Committee hereby consents to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders consistent with Article III of the United States Constitution.

**RELIEF REQUESTED**

6. By this Motion, the Student Committee requests entry of an Order, substantially in the form filed concurrently herewith, authorizing a member of the Student Committee, pursuant to Bankruptcy Code sections 105(a), 501 and 502, to file a Collective Student Claim in the amount of $2.5 billion as an authorized agent representative for all Students that attended the Debtors' colleges and were damaged by the Debtors' misconduct, that have not filed proofs of claim.[4]

**BASIS FOR REQUESTED RELIEF**

7. Several governmental agencies have conducted significant investigations, filed lawsuits and issued substantial fines and penalties—based upon findings of wide-spread misrepresentations and misconduct with respect to the Debtors' recruiting and student loan practices—that resulted in the Debtors' collapse. [See RJN, Exhs. A through H.] The Debtors deny the findings and allegations, hence, the nature, extent and allowability of claims by Students related to the Debtors' misconduct will not be established until the Debtors admit wrongdoing, stipulate to findings of wrongdoing or the Debtors' misconduct is established by a court of competent jurisdiction. In the circumstance presented, fairness, justice and procedural due process require that all Students are afforded the opportunity to develop a full understanding of the Debtors' misconduct and how it relates to their individual rights, including the right to participate in the Debtors' chapter 11 cases and what benefits that may afford them, before the right to participate in these Bankruptcy Cases is cut-off by an arbitrary Bar Date.

8. The Collective Student Claim is necessary and appropriate because the Court has approved a Bar Date that, upon reflection, denies Students effective notice of their rights before their claims against the Estates must be presented. Although individual Students may be able to

[4] In order to comply with the Bar Date, on July 20, 2015, the Student Committee filed *identical* Collective Student Claims in each of the Debtors' Bankruptcy Cases. For convenience of the Court, a copy of the Collective Student Claim filed in the lead Debtor case (15-10952-KJC) and assigned Claim No. 2709 is attached hereto as Exhibit A attached hereto.

afford “the price of a stamp”[5] to mail in an individual proof of claim, given (i) the Estates’ limited resources, (ii) the complexity of the issues raised by the Debtors’ misconduct, (iii) the contingent nature of Student claims (contingent upon findings of misconduct), and (iv) the enormous size and transiency of the Student population, the vast majority of Students have not been provided with notice of the filing of the Bankruptcy Cases or the Bar Date that is effective to convey why they should buy the stamp or what their basis would be for the proof of claim to be mailed with that stamp. *See infra* section I; *see also,* Armstrong Declaration; Hurtado Declaration; and Mills Declaration. Moreover, the Student Committee is informed that many Students may have been expressly told by the Department of Education (“ED”) operators covering the “ED Helpline” (defined below) that Students “do not need to file” the proof of claim in these Bankruptcy Cases, and not to “worry about” the proof of claim. *See* Courtright Supplemental Declaration and King Supplemental Declaration. Whether intentional or not, the instructions are very misleading to Students, many of whom do not understand the differences between the bankruptcy court proceedings and ED’s administrative proceedings.

9. Although extending the Bar Date in these Bankruptcy Cases might also remedy due process concerns, the Collective Student Claim is a more efficient remedy because the Estates have very limited resources and are moving expeditiously to attempt to confirm a consensual chapter 11 plan. A chapter 11 plan may provide an opportunity for meaningful collective treatment of student creditors that may not be available in a chapter 7 liquidation and the Student Committee would like to support that process. Accordingly, the Collective Student Claim is essential to providing due process to the Students and to uphold fundamental bankruptcy purposes and policies; failure to use a collective device either would upset the ability to achieve a consensual chapter 11 plan or unjustly disenfranchise hundreds of thousands of individual Students in these Bankruptcy Cases.

[5] *In re Musicland Holding Corp.*, 362 B.R. 644, 650 n.8 (Bankr. S.D.N.Y. 2007).

## I. FACTS SPECIFIC TO THE REQUESTED RELIEF

### A. The Student Body

10. The Student Committee is informed and believes that between 2000 and 2015 approximately 500,000 students enrolled in the Debtors' programs and incurred fees and expenses or lost wages in connection with their attendance that ranged from tens of thousands to over a hundred thousand dollars depending upon, among other things, their dates of attendance and the program for which they were enrolled. *See* the Proofs of Claim filed by members of the Student Committee that are attached hereto as Exhibit B; *see also,* RJN Exh. I through X[6]; Student Committee Declarations.

### B. The Debtors' Misconduct

11. The Debtors consistently misled prospective and current students, the government and accreditation agencies about the value and successes of the Debtors' programs. For example, in 2007, the Debtors were fined and thereafter permanently enjoined from, among other things, engaging in misleading practices related to the recruitment of students and pressuring prospective students to sign documents related to student loans before reasonable review. [*See* RJN Exh. G at pp. 3-6.]

12. Even after 2007, the Debtors consistently misrepresented job placement rates and starting salaries for graduates of their educational programs. Prior to the Petition Date, litigation

[6] At the June 30, 2015 hearing on the Student Committee's Stay Motion (as defined herein), counsel for ED indicated that over 500,000 students borrowed funds to attend the Debtors' colleges. [*See* RJN Exh. X, p. 52:17-20]. Additionally, the Debtors publicly reported in SEC Form 10-Q and 10-K filings that their student enrollments from 2000 through 2014 were as follows: 2000 – 19,400 students [See RJN Exh. I]; 2001 – 25,600 students [See RJN Exh. J]; 2002 - 34,200 students [See RJN Exh. K]; 2003 - 43,200 students [See RJN Exh. L]; 2004 – 64,800 students [See RJN Exh. M]; 2005 - 66,100 students [See RJN Exh. N]; 2006 – 64,500 students [See RJN Exh. O]; 2007 – 62,115 students [See RJN Exh. P]; 2008 - 69,200 students [See RJN Exh. Q]; 2009 - 86,088 students [See RJN Exh. R]; 2010 - 110,580 students [See RJN Exh. S]; 2011 - 93,457 students [See RJN Exh. T]; 2012 - 91,460 students [See RJN Exh. U]; 2013 - 81,284 students [See RJN Exh. V]; and 2014 - 77,584 students [See RJN Exh. W].

related to the Debtors' deception and misrepresentations was expanding rapidly. [See RJN Exhs. B, D, E, and F.]

13. In April, 2015, ED levied a $30 million fine against the Debtors after a comprehensive investigation which found that the Debtors "failed to meet the fiduciary standard of conduct by misrepresenting its [job] placement rates to current and prospective students and to its accreditors, and by failing to comply with federal regulations requiring the complete and accurate disclosure of its placement rates." [RJN Exh. H at 1.]

**C. Notice To Students**

14. According to the Debtors, the Debtors' schedules and creditor matrix filed in these Bankruptcy Cases list only those Students that were attending the Debtors' colleges on the date that such schools were closed. Thus, the Debtor mailed or e-mailed the Notice of Bar Date [Dkt. No. 431], including a proof of claim, only to an estimated 18,519 students. *See* Nownes Declaration.

15. Pursuant to a compromise with the Student Committee, the Debtors mailed postcards with notification of the Bar Date (the "Student Postcard") to an estimated 85,652 students attending the Debtors' colleges between June 20, 2014 and September 27, 2014. *See* Bar Date Order; *see also,* Nownes Declaration. The Student Committee is informed that, as of the date of this Motion, approximately 5,500 of these postcards have been returned as undeliverable. *See* Nownes Declaration. A copy of the Student Postcard is attached as Exhibit A to the Nownes Declaration.

16. On June 8, 2015, the Student Committee filed a motion for an order applying the automatic stay to the collection efforts of the private student loan lenders and ED (the "Stay Motion") [Dkt. No. 363]. As a result of the Stay Motion, ED agreed to provide (i) individually-directed notice regarding the Students' rights to obtain a discharge of their student loans and (ii) a toll-free helpline (the "ED Helpline"), both directed to Students attending Heald College after 2010 (approximately 50,000 Students). [*See* Dkt. No. 555, Exh. A.]

17. The Student Committee is informed that some Students that called the ED Helpline for information regarding their student loans and the Debtors' bankruptcy were told either that they did not need to file, or shouldn't worry about filing, a proof of claim in these Bankruptcy Cases. *See* Courtright Supplemental Declaration and King Supplemental Declaration. While ED may or may not have intended to provide misleading information, the instructions were misleading to Students.

**D. Filed Student Claims**

18. Despite the publicity that these cases have attracted and the fact that the Debtors mailed Notice of the Bar Date and Student Postcards to approximately 100,000 Students, as of the date of this Motion, the Debtors' claims agent reports that only approximately 2150 Students have filed a proof of claim. *See* Nownes Declaration.

## II. LEGAL BASIS FOR THE REQUESTED RELIEF

### A. Students Have Not Received Effective Notice Of The Bar Date

19. For notice to be effective, it must provide information sufficient for the recipient to be apprised that it has rights, to assess whether those rights are meaningful and how to exercise or preserve such rights before they are terminated. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objections… .The notice must be of such nature as reasonable to convey the required information,…and it must afford a reasonable time for those interested to make their appearance… .").

20. Procedural due process requires that Students be given sufficient notice of the nature of a claim in bankruptcy, their rights to file a proof claim form, how to file a proof of claim form and the importance of filing a proof of claim form before their rights to participate in the Debtors' Bankruptcy Cases are terminated. *See White v. Jacobs (In re New Century TRS Holdings, Inc.*), 528 B.R. 251, 260 (D. Del. 2014) (holding that "the adequacy of the notice

provided in this case has not been meaningfully explored and likely was not reasonably calculated to apprise appellants of the bar date. The court concludes that '[d]ue process affords a re-do' under the circumstances of this case").

21. The "bar date" is a date certain after which all creditors that have not filed a proof of claim may not vote on the treatment of claims in a plan or participate in distributions under a plan. *See In re Energy Future Holdings Corp*., 522 B.R. 520, 527 (Bankr. Del. 2015) (quoting *In re Waterman S.S. Corp*., 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986) "'[As] provided in Rule 3003(c)(2), a creditor who fails to file a claim within the time allowed is precluded from being treated as a creditor and from both voting on a plan and receiving a distribution from estate property." ).

22. The Student population is enormous, diverse and transient. Without significant resources and time, it is impossible to accurately measure how many Students have received effective notice of the Debtors' misconduct, the Bankruptcy Cases or the bankruptcy claims process, but the evidence clearly suggests that Students are unaware of their rights:

- Due to the extremely limited resources of the Debtors' estates, approximately 17% of the former Student population received the Student Postcard.
- It will take significant resources to reach a substantial portion of the Student population.
- Coverage in the press and newspaper ads are insufficient. There has been a tremendous amount of press regarding the lawsuits against the Debtors and efforts to persuade ED to provide collective discharges to Students. Yet, despite all of the press coverage, barely more than 1% of Students with outstanding student loans have sought a discharge based upon the Debtors' misconduct. [See RJN Exh. X p. 36:3-15]
- Students are confused about their rights to a discharge of their student loan debt and how the Debtors' misconduct and bankruptcy filing relate to Students' rights. The recent releases of information related to government discharge proceedings

and the proof of claim process has only further confused those Students that are getting some notifications. The worst example includes those Students that may have been told that they do not need to file a proof of claim.

- Students are not lawyers and cannot be expected to understand the types of contingent claims they may have or how to file a proof of claim for such claims.

23. The Students have not received effective notice of the Bar Date for filing proofs of claim to preserve their rights to participate in the Plan confirmation process and to receive distributions under a Plan, or otherwise, in these Bankruptcy Cases. The Collective Student Claim will provide an efficient remedy.

**B. <u>A Collective Proof Of Claim Is Appropriate</u>**

24. Courts, including those in the Third Circuit, permit the filing of a proof of claim in a chapter 11 case on behalf of a class of persons who have not filed individual proofs of claim. *Reid v. White Motor Corp*., 886 F.2d 1462, 1472 (6th Cir. 1989); *In re American Reserve Corp*., 840 F.2d 487 (7th Cir. 1988); *In re Charter Co.,* 876 F.2d 866, 873 (11th Cir. 1989); *In re Kaiser Grp., Int'l,* 278 B.R. 58, 62 (Bankr. Del. 2002); *see also, In re United Cos. Fin. Corp*., 276 B.R. 368, 371(Bankr. Del. 2002).

25. Federal Rule of Bankruptcy Procedure 9014(c) permits the Court to apply any of the rules governing adversary proceedings to motions; courts permitting class proofs of claim typically apply the elements of Bankruptcy Rule 7023 to determine whether such relief is warranted. *See, e.g., In re American Reserve Corp*., 840 F.2d at 489.

26. Specifically, in cases involving allegations that the Debtors' misrepresentations affected a large class of potential claimants, bankruptcy courts have permitted a putative class representative to file a proof of claim on behalf of all creditors that were similarly situated. *See, e.g., In re Kaiser Grp., Int'l,* 278 B.R. at 66. In *Kaiser Group*, a shareholder filed a class action lawsuit alleging that the Debtors made false and misleading statements and failed to disclose information to shareholders. *Id.* at 64. Prior to certification of the class, the court allowed the class representative to file the class proof of claim on behalf of 47 shareholders because the

issues arose from the same course of conduct and an adjudication of all of the common issues at once would promote judicial economy and efficiency. *Id.* at 66; s*ee also, In re United Cos. Fin. Corp*., 276 B.R. at 368 (Bankr. Del. 2002) (allowing class proof of claim to be filed by putative class representative on behalf of persons solicited by brokers using illegal solicitation procedures).

27. Moreover, the existence of a pending class action lawsuit is not necessary for the court to permit a collective "class" proof of claim. *See In re REA Express, Inc*., 10 B.R. 812, 813 (Bankr. SDNY 1981) ("a unified response appears to be the only means by which all non-union employees may meaningfully participate" in the claim process).

28. The Bankruptcy Code seeks to achieve equitable distribution of the estate and the "class [proof of claim and] action permits the aggregation and litigation of many small claims that may lie dormant." *In re American Reserve Corp.*, 840 F.2d at 489. With respect to small or contingent claims like those held by many Students, a creditor may not "recognize their entitlement to file [a proof of claim] unless some champion appears." *Id.* "The combination of a contingent claim and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing." *Id*.

29. In this case, there were, in fact, four representative actions pending against various of the Debtors at the time of the Debtors filed these Bankruptcy Cases. These four lawsuits, brought by the Federal Consumer Protection Bureau ("FCPB") and the Attorneys General of California, Massachusetts, and Wisconsin, were brought against the Debtors under each States' consumer protection laws, and under California's state securities laws alleging widespread misconduct and misrepresentations perpetrated by the Debtors. [*See, generally,* RJN Exhs. B through F]. The California and Massachusetts cases were filed over a year prior to Debtors' bankruptcy filing, the FCPB case eight months before the bankruptcy filing and the Wisconsin case six months before the bankruptcy filing. Thus, this is not a case where the Debtors have "fashioned a plan of reorganization based on known claims only to be surprised

when a Johnny-come-lately creditor asserts a cause of action against the estate, throwing the bankruptcy case into disarray." *In re First Alliance*, 269 B.R. 428, 439 (C.D. Cal. 2001).

**C. The Bankruptcy Code Supports The Use Of Class Proofs Of Claim**

30. Section 501 of the Bankruptcy Code generally provides a list of parties that may file a proof of claim. Although section 501 does not specifically allow for class proofs of claims, the majority of courts now recognize that section 501 is not exhaustive and class proofs of claim are permissible. *See, e.g., In re American Reserve Corp.*, 840 F.2d at 492-93. In *American Reserve*, the court noted that "[t]he principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned," and held that "[i]f [debtor] is liable for fraud, the victims are entitled to recovery – according to their entitlements under substantive law – just as the firm's landlords and vendors of typewriters are entitled to recovery." *Id*. at 489. The court looked at the legislative history and structure of the then 1978 Code and held that section 501 could not possibly be an exclusive list because it omits "the most common representative filing of all:" claims by an authorized agent on behalf of a creditor, which is governed by Bankruptcy Rule 3001(b). *Id.* at 493.

31. The majority of courts now recognize that by applying Bankruptcy Rule 7023, class proofs of claims may be utilized to permit the efficient administration of an estate. *See In re Kaiser Grp., Int'l*, 278 B.R. at 62.

**D. The Legislative History Of The Bankruptcy Code Supports Class Proofs Of Claim**

32. The legislative history supports the conclusion that the Student Committee should be allowed to file a Collective Student Claim to ensure that the Students are adequately represented in these Bankruptcy Cases. While the legislative history is silent on the specific issue, it evinces a congressional intent to open bankruptcy proceedings to the widest possible range of players.

33. For example, in the 1978 revision of title 11, the legislature expressly expanded the definition of the term "claim," noting that the broader definition "contemplates that all legal

obligations of the debtor no matter how remote or contingent, will be able to be dealt with in the bankruptcy court. It permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), U.S. Code Cong & Admin. News 1978, pp. 5787, 6266 (reprinted in notes following 11 U.S.C.A. §101 (1979)).

**E. The Court Can Apply FRBP 7023 To Determine That A Collective Proof of Claim Is Appropriate**

34. Many courts will treat a Motion to permit a collective or class proof of claim as a motion to apply Bankruptcy Rule 7023 and will authorize a class proof of claim "if (1) the class claim proponent has shown compliance with the requirements of Civil Rule 23 and (2) after consideration of consistency with bankruptcy needs and concerns, the bankruptcy court directs that Rule 23 should apply." *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011).

35. Rule 23(a) establishes four prerequisites for class certification: numerosity, commonality, typicality and adequacy. *See* FED. R. CIV. P. 23(a) (2012); *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 302 (3d Cir. 2005) (citing FED. R. CIV. P. 23(a)(1)). Additionally, the party seeking certification must qualify under one of the three criteria set forth in Rule 23(b).

36. To the extent necessary for the relief requested hereby, the Student Committee seeks permission under Rule 23(b)(3), which authorizes action as a "class" upon a finding "that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Collective Student Claim proposed by the Student Committee satisfies each of the requirements of Rule 23(a) and (b)(3).

**1. Numerosity**

37. Numerosity requires a finding that the class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d

154, 182 (3d Cir. 2001). The requirement of numerosity does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be "inefficient, costly, time-consuming, and probably confusing." *See In re Kaiser Grp., Int'l.*, 278 B.R. at 64 (quoting *Audrey v. Fed. Kemper Ins. Co*., 142 F.R.D. 105, 111 (E.D. Pa. 1992)). A court may make common sense assumptions in order to support the finding of numerosity. *Id*. "No single magic number exists satisfying the numerosity requirement." *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 1989). However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 440 (E.D. Pa. 2008) (citing *Steward v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

38. In this case, approximately 500,000 Students attended the Debtors' colleges and hold individual claims against the Debtors so as to make joinder of all Students impractical. The "numerosity" requirement is thus easily satisfied.

**2. Commonality**

39. The commonality requirement requires existence of at least one question of law or fact common to the class. FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low. *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 440 (E.D. Pa. 2008) (citing *Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)). It does not require "an identity of claims or facts among class members." *Behrend*, 245 F.R.D. at 202. Further, the commonality requirement will be satisfied if Students share at least one question of fact or law. *See In re Kaiser Grp., Int'l.*, 278 B.R. at 64.

40. The wrongs suffered and the remedies sought by each of the Students in these Bankruptcy Cases arise from the same facts – a scheme in which the Students were misled regarding job placement rates, starting salaries and whether, and to what extent, federal and private loans were being taken out in their name. Students have direct claims against the Debtors for the Debtors' deception and misconduct, including claims of unfair competition, false advertising and misrepresentation. Students will also have rights to cancellation of any alleged "student loan" obligations arising from the Debtors' misconduct to the government or a private

lender. *See, e.g., Guzman v. Bridgepoint Educ., Inc*., 2012 U.S. Distr. LEXIS 74767, at *12-17 (S.D. Cal. May 30, 2012) (student plaintiffs could bring claims against defendant school for tuition paid, education costs, future lost wages and other damages based on misleading recruitment tactics, misrepresentations of costs and fees, quality of instruction, accreditation status, and employability.); *see also,* 34 C.F.R. 685.206(c).

41. Therefore, each Student's claim will depend on proof of the same misconduct and the commonality requirement is met.

**3. <u>Typicality</u>**

42. Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc*., 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55); *see* Fed. R. Civ. P. 23(a)(3). "This requirement 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citing FED. R. CIV. P. 23(a)(3)). "Factual differences will not render atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class member, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (quoting *Baby Neal*, 43 F.3d at 55).

43. Typicality is satisfied here. None of the Students allege that they were singled out; instead, they allege that they suffered harm as a result of the same conduct that allegedly injured all other Students, that they were misled by the Debtors. *See generally*, Student Committee Declarations. Accordingly, the typicality requirement is met.

**4. <u>Adequacy Of Representation</u>**

44. Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at

296. Thus, the Court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Gates*, 248 F.R.D. at 441 (citing *Johnston v. HBO Film Mgmt*., 265 F.3d 178, 185 (3d Cir. Pa. 2001)).

45. The Court should find that the Student Committee and counsel for the Student Committee, including Robins Kaplan LLP ("RK"), Polsinelli PC ("Polsinelli") and Public Counsel adequately represent the interests of the Students. The members of the Student Committee were appointed by the UST on May 15, 2015, after reviewing the applications of numerous Students requesting to be included on the Student Committee. The members of the Student Committee have educated themselves regarding the plight of students and are involved in a number of student liaison groups that are monitoring and reporting on the Debtors' actions and these Bankruptcy Cases. Four of the members of the Student Committee recently flew to Delaware and met with ED. Indeed, the vigor and tenacity with which the members of the Student Committee have become involved in these Bankruptcy Cases is quite remarkable.

46. Moreover, as demonstrated by the applications to employ RK [Dkt. No. 438], Polsinelli [Dkt. No. 436], and Public Counsel [Dkt. No. 437], and the Courts orders approving the applications, counsel for the Student Committee have substantial experience in the areas of students' rights, bankruptcy law, education law, class actions, and complex and multi-jurisdiction litigation and are thus, amply qualified to represent the Students in connection with the Collective Student Claim.

**F. <u>Predominance And Superiority Under Rule 23(b)(3)</u>**

**1. <u>Predominance</u>**

47. Once the requirements of Rule 23(a) have been met, Rule 23(b)(3) permits the maintenance of a class action if "the court finds [a] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (U.S.

1997). The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy." *Id.* "In this vein, a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 309 (3d Cir. 2005).

48. Just as typicality exists, predominance also exists. All of the claims arise from the Debtors' misrepresentations and failure to provide Students with a valuable and quality education. While specific inquiries with respect to each class member may be necessary, because there is a common course of conduct by the Debtors–the Debtors misrepresented and/or failed to disclose information, predominance is met. *See In re United Cos. Fin. Corp*., 276 B.R. at 374-76 (more efficient to order separate trials to determine individual issue of reliance than to eliminate class action). Moreover, while the damages that Students suffered may vary, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010). Accordingly, the Court should find that the predominance requirement is met; all of the Students' claims arise from the same alleged scheme.

**2. Superiority**

49. Civil Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). In effect, "the superiority requirement asks the court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication.'" *Krell v. Prudential Inc. Co. (In re Prudential Inc., Co.),* 148 F.3d 283, 316 (3d Cir. 1998).

50. Allowing the Student Committee to file the Collective Student Claim in these Bankruptcy Cases is unquestionably superior to extending the bar date and delaying the chapter 11 plan process and risk a chapter 7 scenario. Indeed, it is the only way to truly afford any meaningful opportunity to the Students to participate in the Bankruptcy Cases and any potential

distribution. As evidenced by the efforts of ED and other agencies that are backed by the financial behemoth of the government, each individual Student claim could not be established without considerable factual and legal investigation and the tenacity of a bulldog. Undoubtedly, the vast majority of the Students simply would have no reason to know the basis, and would not understand the magnitude and complexities, of the illegal scheme upon which their claims are based. Truly, paraphrasing *American Reserve*, it is the class claim or nothing for the Students. *See* 840 F.2d at 489; *see also, In re United Cos. Fin. Corp.*, 276 B.R. at 76.

51. Moreover, the diversion of critical estate resources, including personnel, from the plan negotiation and confirmation efforts that would be occasioned by the breadth of individual proofs of claim and class action lawsuits favors the use of class proofs of claim. *See, e.g., Ionosphere Clubs*, 111 B.R. 423 at 435 (Bankr. SDNY 1990); *Johns-Manville Corp. v. Asbestos lit. Grp. (In re Johns-Manville Corp.*), 26 B.R. 420, 426 (Bankr. SDNY 1983)("The massive drain on [key personnel's] time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan . . . ."), *vacated in part by,* 41 B.R. 926, 928 (S.D.N.Y. 1984).

**G. <u>Allowing the Student Committee to File the Collective Student Claim Is Consistent With Bankruptcy Purposes, Policies, And Needs</u>**

52. Under the particular circumstances of this case, the denial of a collective proof of claim would deny Students procedural due process and would be wholly inconsistent with the "bedrock" goals of the Bankruptcy Code – facilitating creditor compensation and achieving equal distribution. *See, In re Chateaugay Corp.*, 104 B.R. 626, 632 (S.D.N.Y. 1989); *see also, In re Charter Co.,* 876 F.2d 866, 871 (11th Cir. 1989). The Court should recognize that hundreds of thousands of Students have not received effective notice of the Bankruptcy Cases or the Bar Date. Hence, allowing the Student Committee to file the Collective Student Claim will provide an efficient and effective means of preserving Students' rights.

53. Permitting the filing of a collective proof of claim will enhance the administration of these chapter 11 cases in the best interest of creditors. Allowing all of the common Student claims to be preserved and handled collectively, without extending the Bar Date or unnecessarily upsetting the chapter 11 Plan negotiation, solicitation and confirmation process, will permit the Students, the true victims of the Debtors' actions, to participate in these Bankruptcy Cases and enjoy the best possible chance of meaningful relief.

## III. CONCLUSION

For the reasons set forth herein, allowing the Student Committee to file the Collective Student Claim insures due process and promotes efficient resolution of these Bankruptcy Cases in the best interest of creditors. Wherefore, the Student Committee respectfully requests that the Court enter an Order granting the requested relief and such other relief as the Court deems appropriate.

Dated: July 22, 2015
Wilmington, Delaware

**POLSINELLI PC**

/s/ *Shanti M. Katona*

Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
**cward@polsinelli.com**
**skatona@polsinelli.com**

*Counsel to the Official Committee of Student Creditors*

-and-

**ROBINS KAPLAN LLP**
Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
Cynthia C. Hernandez, Esq.
2049 Century Park East, Suite 3400
Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
**sgautier@robinskaplan.com**
**lball@robinskaplan.com**
**chernandez@robinskaplan.com**

*Counsel to the Official Committee of Student Creditors*

-and-

**PUBLIC COUNSEL LLP**
Mark Rosenbaum, CA Bar No. 59940
Anne Richardson, CA Bar No. 151541
Alisa Hartz, CA Bar No. 285141
Dexter Rappleye, CA Bar No. 302182
610 S. Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
Facsimile: (213) 385-9089
**mrosenbaum@publiccounsel.org**
**arichardson@publiccounsel.org**
**ahartz@publiccounsel.org**
**drappleye@publiccounsel.org**

*Special Counsel to the Official Committee of Student Creditors*