IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | **Re: Docket No. 572** |
| | § | |
| | § | **Hearing Date: July 27, 2015 at 11:00 a.m. (ET)** |
| | § | **Obj. Deadline: July 24, 2015 at 12:00 p.m. (ET)** |

---------------------------------------------------------------

**DEBTORS' AMENDED MOTION FOR AN ORDER (I) AUTHORIZING
THE DEBTORS TO TRANSFER CERTAIN ASSETS FREE AND CLEAR OF
ALL LIENS, CLAIMS AND ENCUMBRANCE IN CONNECTION WITH THE
SETTLEMENT OF CORPORATE RIDGE OFFICE, LLC'S ADMINISTRATIVE
RENT CLAIMS; AND (II) GRANTING CERTAIN RELATED RELIEF**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004(h) and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "**Local Rules**"), entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to transfer the Assets (as defined below), pursuant to that certain Purchase Agreement, dated as of July 14,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

RLF1 12571675v.2

2015 (the "**Purchase Agreement**")[2] between Debtor Florida Metropolitan University, Inc. and Corporate Ridge Office, LLC (the "**Purchaser**"), free and clear of all liens, claims, encumbrances and other interests in connection with the settlement by and between the Debtors and the Purchaser of the Purchaser's administrative rent claims; and (iii) granting certain related relief.  In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[3]

## GENERAL BACKGROUND

2. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3. On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**").  Additionally, the U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

4. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of*

---

[2] A true and correct copy of the Purchase Agreement is attached to the Sale Order as <u>Exhibit 1</u> thereto.

[3] Under rule 9013-1(f) of the Local Rules, the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

2

RLF1 12571675v.2

*William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "**First-Day Declaration**").

## SALE OF ASSETS AT COLORADO SPRINGS LOCATION

### A.    The Miscellaneous and Wyotech Asset Sales

5.    As detailed in the First Day Declaration, the Debtors closed each of their campus locations effective as of April 27, 2015 and are in the process of liquidating their assets and winding down their operations.  With respect to the Debtors' closed and other remaining locations, including the teach-out locations, this Court entered three orders [Docket Nos. 23, 224 & 283] (the "**Miscellaneous Asset Sale Orders**") authorizing the Debtors to sell the miscellaneous assets at those locations.  Additionally, on July 1, 2015, the Court entered an order [Docket No. 519] (the "**WyoTech Sale Order**") authorizing the Debtors to retain Great American Global Partners, LLC, as consultant, in connection with the disposition of more valuable assets that are located at the Debtors' Fremont and Long Beach, California WyoTech locations or had been transferred there in an effort to maximize value.

6.    To date, the Debtors have realized approximately $2 million in gross proceeds as a result of sales conducted in accordance with the Miscellaneous Asset Sales Orders and the WyoTech Sale Order.  Moreover, in an effort to reduce the administrative rent obligations to their estates, the Debtors have rejected approximately seventy-six (76) leases of nonresidential real property and will be rejecting an additional nineteen (19) leases relating to teach-out locations on or before August 31, 2015.

### B.    The Colorado Springs Assets

7.    Corinthian, as lessee, and the Purchaser, as lessor, are parties to a lease of nonresidential real property (the "**Lease**") relating to the Debtors' former call center in Colorado Springs, Colorado (1575 Garden of the Gods) (the "**Colorado Springs Location**").  The

Colorado Springs Location was a call center that provided support to the students at the Debtors' colleges across the United States, including assistance with financial aid and career services. The Colorado Springs Location also provided online faculty administration and support.

8. As discussed in the First-Day Declaration, the Debtors entered into an asset purchase agreement with Zenith Education Group, Inc. ("**Zenith**") prior to the Petition Date, whereby the Debtors sold fifty-six (56) Everest and WyoTech locations to Zenith. As part of that transaction, the Debtors and Zenith entered into a transition services agreement (the "**Transition Services Agreement**"), which, among other things, allowed the Debtors to retain access to the back office services for the Debtors' continued operations following the transaction for the remaining schools owned by the Debtors. As part of the Transition Services Agreement, Zenith agreed to operate the Colorado Springs call center and to reimburse the Debtors for the rent thereunder through December 31, 2015. The Debtors understanding is that Zenith is no longer operating the call center and has not directly paid the rent under the Lease to the Purchaser, or reimbursed the Debtors for such amounts, in a number of months (including any postpetition rent for the months of May through July 2015).

9. Notwithstanding Zenith's obligations under the Transition Services Agreement with respect to the Lease through December 31, 2015, Corinthian remains the lessee under the Lease. Given that Zenith is no longer occupying the Colorado Springs call center and has failed to pay or reimburse any rent under the Lease for the postpetition period, the Debtors determined that it was in the best interests of their estate to liquidate their personal property remaining at the Colorado Springs Location and then immediately reject the Lease. The assets at the Colorado Springs Location consist of furniture, fixtures and equipment (including, but not limited to, desks, chairs, tables, lighting fixtures, cable and wiring, telecommunications

equipment, projectors, whiteboards, computer monitors, computer keyboards, and personal hardware) (collectively, the "**Assets**").

C. **Marketing of the Assets**

11. As part of their marketing efforts, the Debtors and/or their advisors contacted over 300 interested parties to solicit interest in purchasing any of the Debtors assets. In connection with this process, the Debtors contacted potential bidders regarding the sale of the Assets at the Colorado Springs Location. The Debtors received a total of three (3) bids for the sale of the Assets, including the bid from the Purchaser, a bid from another party seeking to purchase the Assets outright and a third bid from a national liquidation firm to sell the Assets on the Debtors' behalf out of the Colorado Springs Location. The Debtors ultimately determined that the bid received from the Purchaser was the highest and best bid for the Assets (and addressed the issue of unpaid administrative rent under the Lease for the postpetition period). Moreover, the bid received from the national liquidation firm would have required the Debtors to remain at the premises beyond the month of July and to carry the obligations under the Lease for such period (approximately $92,000 per month) or to seek reimbursement of such amounts from Zenith.

D. **The Purchase Agreement (Local Rule 6004-1 Disclosures)**

11. In accordance with Local Rule 6004-1, the salient terms of the Purchase Agreement are set forth below:

   a. **Purchase Price**. The Purchase Price shall be in the form of a credit bid of up to $275,363.30 consisting of (i) a credit bid in the amount of $183,768.84 consisting of the estimated amount of the Purchaser's administrative rent claim for amounts outstanding under the Lease from the Petition Date through June 30, 2015; and (ii) a credit bid in the amount of $91,884.42 (the "**July Rent**") consisting of the estimated amount of the Purchaser's administrative rent claim under the Lease for the month of July 2015, provided that the credit bid of July Rent shall be reduced by fifty (50) percent of any amount that the Debtors are able to

5

        recover from Zenith under the Transition Services Agreement on account of the July Rent.

b.   **Assets**. The Assets include all personal property located at Colorado Springs Location (1575 Garden of the Gods), including all furniture and equipment (including, but not limited to, desks, chairs, tables, lighting fixtures, cable and wiring, telecommunications equipment, projectors, whiteboards, computer monitors, computer keyboards and personal computer hardware.

c.   **Treatment of July Rent.** The Debtors shall pay the Purchaser any amounts due and owing on account of July Rent, subject to the terms of the Purchase Agreement, within fourteen (14) days of the Debtors receiving any payment from Zenith pursuant to the terms of the Transition Services Agreement on account of July Rent. Purchaser acknowledges that no amounts will be allocated to July Rent unless the amounts received by the Debtors from Zenith on account of outstanding rent obligations under the Lease exceed $183,768.84 (as the first $183,768.84 will be allocated to May and June rent). The Debtors shall have no obligation to pay any July Rent to the Purchaser unless and until Zenith has paid July Rent to the Debtors pursuant to the Transition Services Agreement. In the event that the Debtors fail to recover any July Rent from Zenith under the Transition Services Agreement, the entirety of July Rent shall be part of Purchaser's credit bid for the Purchased Assets pursuant to Paragraph 2 of the Purchase Agreement.

d.   **Waiver of Additional Rent Claims and Rejection of Lease.** Purchaser waives any and all additional administrative rent claims that it may have against the Debtors for rents accruing from August 1, 2015 forward until the consummation of the proposed transaction; provided that the Debtors shall seek to reject the Lease, pursuant to section 365 of the Bankruptcy Code, immediately following the consummation of the sale of the Purchased Assets to Purchaser.

e.   **Private Sale**. As set forth herein, the Debtors submit that the terms memorialized in the Purchase Agreement constitute the highest and otherwise best offer for the Assets. The Debtors do not believe that conducting a formal auction with respect to the Assets would result in a higher and otherwise better offer.

f.   **Relationship with the Purchaser**. The Purchaser is not an insider (as defined in section 101(31) of the Bankruptcy Code) or in any way affiliated with any of the Debtors.

g.  **Relief from Bankruptcy Rule 6004(h)**. Pursuant to paragraph 8 the Sale Order, the Debtors seek a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

E.  **Settlement of the Purchaser's Administrative Rent Claim**

12. The Debtors filed a motion on July 14, 2015 [Docket No. 572] (the "**Motion**") seeking to approve the proposed transaction pursuant to the sections 105(a) and 363(b) of the Bankruptcy Code. Following discussions with the U.S. Trustee, the Debtors agreed to amend the Motion to reflect that the proposed transaction embodied in the Purchase Agreement also contemplates a settlement of Purchaser's postpetition administrative rent claims under the Lease (and that approval of such settlement pursuant to Bankruptcy Rule 9019 is both necessary and appropriate).

13. As set forth above, the average monthly rent under the Lease for the Colorado Springs Location is approximately $92,000 a month. The Purchase Agreement embodies a settlement of any rent claims for the period of the Petition Date through July 2015, whereby the Debtors will transfer the Assets to the Purchaser free and clear of any liens, claims and encumbrances in satisfaction of the estimated outstanding administrative rent under the Lease for the period of the Petition Date through July 2015, provided that the credit bid of the July Rent shall be reduced by fifty (50) percent of any amount that the Debtors are able to recover from Zenith under the Transition Services Agreement.

14. The Debtors submit that the settlement of Purchaser's administrative rent claims in accordance with the Purchase Agreement is a sound exercise of the Debtors' business judgment, in that it will relieve the Debtors from any obligation to pay such claims and stem the incurrence of further administrative rent under the Lease. As detailed above, the consideration offered by the Purchaser in exchange for the Assets far exceeds the consideration offered by

other potential purchasers of the Assets.  Moreover, at least one other bid received for the Assets was from a national liquidation firm that intended to sell the Assets out of the Colorado Springs Location for an extended period of time.  This proposal would have required the Debtors to cover the rent for such additional period (and leave unresolved the issue of outstanding rent for period of the Petition Date through July).  Further, the settlement of the Purchaser's administrative rent claim does not impact the Debtors' ability to recover the payment of the rent from Zenith pursuant to the Transition Services Agreement.  Accordingly, the settlement of Purchaser's administrative rent claims embodied in the Purchase Agreement provides the Debtors with the best option for maximizing the consideration received for the Assets, satisfying their postpetition rent obligations under the Lease and preserving their claims against Zenith.

**F.     Expedited Consideration of Motion**

15.    On July 15, 2015, the Court entered an order [Docket No. 577] setting a hearing on the Motion for July 27, 2015 at 11:00 a.m. (Eastern Time) (the "**Hearing**").  The deadline for filing objections to the Motion, if any, is July 24, 2015 at 12:00 p.m. (Eastern Time). While the Debtors have agreed to amend the motion to address the concerns raised by the U.S. Trustee, the Debtors do not believe that the amendments affect the substance of the relief requested in the Motion and intend to seek approval of the Motion, as amended, at the Hearing.

**RELIEF REQUESTED**

16.    By this Motion, the Debtors seek entry of the Proposed Order (i) authorizing the transfer of the Assets to the Purchaser pursuant to the Purchase Agreement free and clear of all liens, claims, encumbrances, and other interests in accordance with the settlement of the Purchaser's administrative rent claims embodied in the Purchase Agreement; and (ii) granting related relief.

## LEGAL BASIS FOR RELIEF REQUESTED

A.  **The Sale of the Assets is a Sound Exercise of the Debtors' Business Judgment**

17. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

18. The decision to sell property of the estate outside the ordinary course of business is entrusted to the sound business judgment of the debtor. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that to obtain court approval to sell property under section 363(b), a debtor must show a "sound business reason" for the proposed action); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (same).

19. Where the "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that a debtor acted "in good faith and in the honest belief that the action taken was in the best interests of the company*." In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

9

20. The Debtors' decision to transfer the Assets pursuant to the Purchase Agreement is based upon an exercise of their sound business judgment. Given the marketing process, the Debtors believe that Purchaser's credit bid of up to $275,363.30 represents the highest and otherwise best offer for the Assets. Further, the proposed transaction is in the best interests of the Debtors' estates because, among other things, it will allow the Debtors to exit the Colorado Springs Location so that the Purchaser may re-let the premises. This will benefit the estates by reducing the amount of any rejection damages claim against the Debtors' estates.

21. Additionally, the transfer of the Assets to the Purchaser will facilitate a quick and efficient disposition of the Assets. The Debtors are no longer operating and therefore have no further use for the Assets. A further prolonged sale process will be to the detriment of the Debtors and their estates because such process may depress the purchase price for the Assets, could result in the Debtors incurring additional administrative rent obligations with respect to the Colorado Springs Location and could impair the Purchaser's ability to re-let the premises (which would increase the amount of any rejection damages claim against the Debtors' estates). Accordingly, the Debtors submit that the transfer of the Assets to the Purchaser pursuant to the Purchase Agreement is a sound exercise of the Debtors' business judgment.

B. **A Sale Free and Clear of Liens, Claims and Encumbrances is Appropriate**

22. The Debtors further submit that it is appropriate for the Assets to be transferred free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

   (1)  applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

   (2)  such entity consents;

   (3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   (4)  such interest is in bona fide dispute; or

   (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section. *See Folger Adam Sec. Inc. v. De Matteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

   23.  To the extent there are any entities with an interest in any of the Assets that have not already consented to the proposed transaction, such entity could be compelled to accept a money satisfaction of such interest. Specifically, the Debtors propose that any liens, claims or encumbrances asserted against the Assets attach to any proceeds payable to the Debtors, in the same priority and subject to the rights, claims, defenses and objections, if any, of all parties with respect thereto.

## C. The Purchaser Should be Entitled to the Protections of Section 363(m)

24. Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *See In re Abbotts Dairies*, 788 F.2d at 147; *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain V. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

25. The Debtors request a finding that the Purchaser is a good faith purchaser entitled to the protections of section 363(m). The terms and conditions of the Purchase Agreement were negotiated by the Debtors and the Purchaser at arm's length and in good faith. The Debtors do not believe that the Purchaser engaged in any conduct that would indicate or constitute a lack of good faith. *See In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) ("Good faith of a purchaser is shown by the integrity of his conduct during the course of sale proceedings . . . ."); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) (stating that a purchaser's good faith status would be destroyed only by conduct involving "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). Accordingly, the Debtors believe that the Purchaser is entitled to the protections that section 363(m) of the Bankruptcy Code provides to good faith purchasers.

## D. The Court Should Approve the Settlement of the Purchaser's Administrative Rent Claim Pursuant to the Settlement Agreement

26. Bankruptcy Code section 363(b)(1) is the statutory basis governing approval of settlement agreements. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 & n.2 (3d Cir. 1996). This section provides that the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

27. Bankruptcy Code section 105(a) provides, in pertinent part, that the "[c]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Rule 9019 governs the procedural prerequisites to approval of a settlement and provides that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Together, Bankruptcy Code section 105(a) and Rule 9019(a) empower a bankruptcy court to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998); *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997); *Vaughn v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert Group)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *In re Texaco*, 84 B.R. 893, 901-02 (Bankr. S.D.N.Y. 1988).

28. A settlement should be approved if it falls within the range of reasonableness. *In re Capmark Fin. Group Inc.*, 438 B.R. 471, 515 (Bankr. D. Del. 2010). Courts in this district consider four factors in determining whether a settlement falls with within the range of reasonableness: (i) the probability of success in the litigation; (ii) difficulties to be encountered in collection; (iii) the complexity of the litigation and related expense, inconvenience and delay; and (iv) the interests of the creditors. *Id.* (citing *In re Martin*, 91 F.3d at 393).

29. In assessing these factors, "[t]he court is not supposed to have a 'mini trial' on the merits, but should 'canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.'" *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D. N.J. 2000) (citing *In re Neshaminy Office Building Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986)); *see also Capmark*, 438 B.R. at 515. The decision to approve a settlement lies within the Court's

sound discretion. *Capmark*, 438 B.R. at 515. The court should exercise its discretion in light of the general public policy favoring settlements. *Id.*; *see also In re Martin*, 91 F.3d at 393 (citing COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)) (explaining that "compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting administration of a bankruptcy estate").

30. The settlement here falls well within the range of reasonableness because the Purchase Agreement settles the administrative rent claims of the Purchaser without the Debtors incurring any additional administrative claims. In essence, in exchange for the Assets, the Debtors get the following benefits: (i) liquidation of the Assets in a quick and efficient manner so that the Debtors may exit the Colorado Springs Location and the Purchaser may re-let the premises; and (ii) the ability to recover the costs of the administrative rent from Zenith. While the Debtors believe that they will be able to recover the costs of the administrative rent from Zenith, the resolution of the Purchaser's administrative rent claim allows the Debtors to exit the Colorado Springs Location and immediately reject the Lease thereby stemming the incurrence of any additional administrative rent claims against the Debtors or their Estates related to the Lease.

31. In sum, the settlement of the Purchaser's administrative rent claims pursuant to the Purchase Agreement was a product of arm's-length negotiations between the Debtors and the Purchaser, avoids the continuation of administrative rent and is consistent with the Debtors' plans to move towards the resolution of these chapter 11 cases. Therefore, the settlement pursuant to the Purchase Agreement falls well within the range of reasonableness.

E.     **The Court Should Waive the Stay Under Bankruptcy Rule 6004(h)**

32.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* 10 Collier on Bankruptcy ¶ 6004.11 at 6004-19 (citing *Advisory Committee on the Federal Rules of Bankruptcy Procedure, Committee Notes on Rules – 1999 Amendment at subdivision (g)* (1999)).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy ¶ 6004.10 at 6004-20 (15th ed. 2008).  The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

33.     The Debtors submit that under the circumstances, ample cause exists to justify the waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).  For the reasons set forth above, any delay in the Debtors' ability to sell the Assets would be detrimental to the Debtors and their estates and creditors.  Accordingly, the Debtors seek a waiver of the fourteen (14) day stay of any order approving this Motion and request that each sale under the procedures described in this Motion, be deemed immediately approved when consummated thereunder.

**NOTICE**

34.     The Debtors will provide notice of this Motion to:  (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to Student Committee; (iv) counsel to Bank of

15

America, N.A., in its capacity as Administrative Agent for the Lenders; (v) the Department of Education; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the United States Attorney for the District of Delaware; (ix) any other known party holding liens with respect to the Assets; (x) Zenith; (xi) all entities known to have expressed an interest in the Assets; and (xii) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

35. Debtors submit that no other or further notice is necessary under the circumstances.

## **NO PRIOR MOTION**

36. The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

The Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in its entirety and any other relief as is just and proper.

Dated: July 23, 2015
    Wilmington, Delaware

*/s/ Amanda R. Steele*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
    merchant@rlf.com
    terranova@rlf.com
    steele@rlf.com

Attorneys for the Debtors and Debtors in Possession