## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |
| | § | **Hearing Date:  Aug. 13, 2015 at 1:30 p.m. (ET)** |
| | § | **Obj. Deadline:  Aug. 6, 2015 at 4:00 p.m. (ET)** |

-------------------------------------------------------------

## DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING THE DEBTORS TO SELL CERTAIN INTELLECTUAL PROPERTY ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (II) GRANTING CERTAIN RELATED RELIEF

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request the entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the "**Local Rules**"), for entry of an order (the "**Sale Order**"), substantially in the form attached hereto as Exhibit A, (i) authorizing the Debtors to sell certain intellectual property assets (subsequently defined herein as the Assets), pursuant to that certain

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

Purchase Agreement, dated as of July 21, 2015 (the "**Purchase Agreement**")[2] between Debtors Heald College, LLC and Corinthians Colleges Inc. and Perry Enterprises (the "**Purchaser**"), free and clear of all liens, claims, encumbrances and other interests and (ii) granting certain related relief.  In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION & VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b).[3]

## GENERAL BACKGROUND

2.      On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3.      On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**").  Additionally, the U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

4.      Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of*

---

[2]      A true and correct copy of the Purchase Agreement is attached to the Sale Order as <u>Exhibit 1</u> thereto.

[3]      Under rule 9013-1(f) of the Local Rules, the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

*William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10] (the "**First-Day Declaration**").

**SALE OF HEALD INTELLECTUAL PROPERTY ASSETS**

**A.    The Heald Intellectual Property Assets**

5.    As set forth in the First Day Declaration, in January 2010, the Debtors purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**").  Heald, through its subsidiaries, operated Heald College, a 150 year old regionally accredited institution with 12 campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.  In the last ten (10) years, over 110,000 students attended a Heald College.

6.    The intellectual property assets of Heald include the assets described on Exhibit A to the Purchase Agreement, including without limitation, the trademarks "Heald College," "Heald," "Get In-Get Out. Get Ahead," certain domain names (as identified in the Purchase Agreement), Heald historical items and all other intellectual property assets related thereto (collectively, the "**Assets**").

**B.    Marketing of the Assets**

7.    After the Petition Date, the Debtors, in consultation with their advisors, began the process of determining all the potential intellectual property assets of the Debtors that may generate value for the benefit of the Debtors' and their estates.  The Debtors reviewed the individual intellectual property assets with their advisors, outside intellectual property brokers and internal resources to determine potential interest and costs associated with the marketing and sale of each asset.  Specifically, the Debtors contacted eight (8) firms that specialize in intellectual property sales and valuation to determine (i) the interest in assisting the Debtors with the sale of any intellectual property, (ii) if the Debtors had overlooked any areas of potential

3

intellectual property, and (iii) their views as to the value of the Debtors' intellectual property. The Debtors had detailed conversations with three (3) of the firms contacted. These firms did not uncover any other potential intellectual property and expressed the view that the market for the intellectual property assets was limited and that, due to the publicity surrounding the Debtors' closure, the value for the assets was hard to determine. Two (2) of the firms declined to submit offers to assist in the sale of the intellectual property given the size of the transaction. One (1) firm submitted an offer to assist the Debtors with the sale process of their intellectual property.

    8.  In evaluating whether to engage the firm to assist the Debtors' with the marketing and sale of the intellectual property assets, the Debtors, in consultation with their advisors, considered: (i) the costs of using an outside firm; (ii) the time it would take for an outside firm to become familiar with the assets; (iii) the limited universe of potential buyers; and (iv) the value of the indications of interest for the assets previously received. Specifically, the only offer received from a firm to assist the Debtors with the sale of the intellectual property was costly in relation to the potential value received from any sale. As a result, the Debtors, in consultation with their advisors, determined that it would be in the best interests of their estates and creditors to utilize internal resources, with the assistance of their advisors, to conduct the sale process of the intellectual property rather than engage an outside firm to assist in the process. Following the Debtors' decision to use internal resources to market the assets, the Debtors determined that the Heald Assets were likely to generate the most value. The Debtors then consulted with counsel and advisors to Bank of America, N.A., as Administrative Agent to the prepetition lenders, and the Creditors' Committee regarding the process for the sale of the Heald Assets.

9. The Debtors identified 160 parties as potential purchasers of the Heald Assets (collectively, the "**Interested Parties**"). The Debtors prepared a teaser describing the Heald Assets that was sent to Interested Parties on or about June 24, 2015. The teaser requested that bids for the Heald Assets be received on or before July 10, 2015. Six (6) Interested Parties expressed an interest in the Heald Assets. Two (2) Interested Parties submitted bids for the Heald Assets. Following receipt of the bids, the Debtors contacted the two (2) bidders with follow-up questions and in an effort to get each bidder to improve their respective bids. Each bidder subsequently submitted a revised bid reflecting substantial improvements requested by the Debtors. After carefully reviewing the revised bids, the Debtors, in consultation with their advisors, determined that they should request that each bidder submit their best and final offer for the Heald Assets. Following the receipt of the best and final offers from each bidder and after careful review and consideration by the Debtors and their advisors, the Debtors determined that the Purchaser submitted the highest and best bid for the Heald Assets.

**C.      The Purchase Agreement (Local Rule 6004-1 Disclosures)**

10. In accordance with Local Rule 6004-1, the salient terms of the Purchase Agreement are set forth below:

   a. **Purchase Price**. The Purchase Price shall be a cash payment of $80,000.

   b. **Assets**. The Assets include the Assets listed on Exhibit A to the Purchase Agreement, including, but not limited to the trademarks "Heald College," "Heald," "Get In-Get Out. Get Ahead," all domain names attached to Exhibit A of the Purchase Agreement and all other intellectual property assets related thereto.

   c. **No Further Auction**. As set forth herein, the Debtors submit that the terms memorialized in the Purchase Agreement constitute the highest and otherwise best offer for the Assets. The Debtors do not believe that conducting a formal auction with respect to the Assets would result in a higher and otherwise better offer.

d.   **Relationship with the Purchaser**.  The Purchaser is not an insider (as defined in section 101(31) of the Bankruptcy Code) or in any way affiliated with any of the Debtors.

e.   **Relief from Bankruptcy Rule 6004(h)**.  Pursuant to paragraph 8 the Sale Order, the Debtors seek a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## RELIEF REQUESTED

11.    By this Motion, the Debtors seek entry of the Sale Order (i) authorizing the sale of the Assets to the Purchaser pursuant to the Purchase Agreement free and clear of all liens, claims, encumbrances, and other interests and (ii) granting related relief.

## LEGAL BASIS FOR RELIEF REQUESTED

A.    **The Sale of the Assets is a Sound Exercise of the Debtors' Business Judgment**

12.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).

13.    The decision to sell property of the estate outside the ordinary course of business is entrusted to the sound business judgment of the debtor.  *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that to obtain court approval to sell property under section 363(b), a debtor must show a "sound business reason" for the proposed action); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (same).

6

14.     Where the "debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that a debtor acted "in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

15.     The Debtors' decision to sell the Assets pursuant to the Purchase Agreement is based upon an exercise of their sound business judgment.  Given the marketing process by which the Debtors contacted 160 Interested Parties, the Debtors believe that Purchaser's bid of a cash payment of $80,000 represents the highest and otherwise best offer for the Assets.  In addition, the proposed transaction is in the best interests of the Debtors' estates because, among other things, it will facilitate a quick and efficient disposition of the Assets.  The Debtors are no longer operating and therefore have no further use for the Assets.  The Debtors submit that the marketing and bidding process described herein enabled the Debtors to maximize the value received for the Assets for the benefit of all stakeholders of the Debtors' estates. Accordingly, the Debtors submit that the sale of the Assets to the Purchaser pursuant to the Purchase Agreement is a sound exercise of the Debtors' business judgment.

**B.     A Sale Free and Clear of Liens, Claims and Encumbrances is Appropriate**

16.     The Debtors further submit that it is appropriate for the Assets to be sold free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of

7

the Bankruptcy Code.  Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property under Bankruptcy Code section 363(b) free and clear of any liens, claims, encumbrances, and other interests of an entity other than the estate if one of the following conditions is satisfied:

> (1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Because section 363(f) is stated in the disjunctive, when selling property of the estate, it is only necessary to meet one of the five conditions listed in that section.  *See Folger Adam Sec. Inc. v. De Matteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (noting that a debtor is authorized to sell property free and clear of "any interest" if any one of the five prescribed conditions under section 363(f) is met); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.") (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988).

17.    To the extent there are any entities with an interest in any of the Assets that have not already consented to the proposed transaction, such entity could be compelled to accept a money satisfaction of such interest.  Specifically, the Debtors propose that any liens,

claims or encumbrances asserted against the Assets attach to any proceeds payable to the Debtors, in the same priority and subject to the rights, claims, defenses and objections, if any, of all parties with respect thereto.

**C.     The Purchaser Should be Entitled to the Protections of Section 363(m)**

18.     Pursuant to section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies*, 788 F.2d at 147; *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain V. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

19.     The Debtors request a finding that the Purchaser is a good faith purchaser entitled to the protections of section 363(m).  The terms and conditions of the Purchase Agreement were negotiated by the Debtors and the Purchaser at arm's length and in good faith. The Debtors do not believe that the Purchaser engaged in any conduct that would indicate or constitute a lack of good faith.  *See In re Gucci*, 126 F.3d 380, 392 (2d Cir. 1997) ("Good faith of a purchaser is shown by the integrity of his conduct during the course of sale proceedings . . . ."); *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) (stating that a purchaser's good faith status would be destroyed only by conduct involving "'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  Accordingly, the Debtors believe that the Purchaser is entitled to the protections that section 363(m) of the Bankruptcy Code provides to good faith purchasers.

**D.     The Court Should Waive the Stay Under Bankruptcy Rule 6004(h)**

20.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

RLF1 12583428v.1

entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The purpose of

Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an

order can be implemented.  *See* 10 Collier on Bankruptcy ¶ 6004.11 at 6004-19 (citing *Advisory*

*Committee on the Federal Rules of Bankruptcy Procedure, Committee Notes on Rules – 1999*

*Amendment at subdivision (g)* (1999)).  Although Bankruptcy Rule 6004(h) and the Advisory

Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce

the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be

eliminated to allow a sale or other transaction to close immediately "where there has been no

objection to the procedure."  10 Collier on Bankruptcy ¶ 6004.10 at 6004-20 (15th ed. 2008).

The treatise further provides that if an objecting party informs the court of its intent to appeal, the

stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

    21. The Debtors submit that under the circumstances, ample cause exists to

justify the waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).  For the reasons set

forth above, any delay in the Debtors' ability to sell the Assets would be detrimental to the

Debtors and their estates and creditors.  Accordingly, the Debtors seek a waiver of the fourteen

(14) day stay of any order approving this Motion and request that each sale under the procedures

described in this Motion, be deemed immediately approved when consummated thereunder.

### NOTICE

    22. The Debtors will provide notice of this Motion to:  (i) the U.S. Trustee; (ii)

counsel to the Creditors' Committee; (iii) counsel to Student Committee; (iv) counsel to Bank of

America, N.A., in its capacity as Administrative Agent for the Lenders; (v) the Department of

Education; (vi) the Internal Revenue Service; (vii) the Securities and Exchange Commission;

(viii) the United States Attorney for the District of Delaware; (ix) any other known party holding

liens with respect to the Assets; (x) all entities known to have expressed an interest in the Assets; and (xi) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

23.     Debtors submit that no other or further notice is necessary under the circumstances.

## NO PRIOR MOTION

24.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

WHEREFORE, the Debtors respectfully request entry of the Sale Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in its entirety and any other relief as is just and proper.

Dated: July 23, 2015
       Wilmington, Delaware

*/s/ Amanda R. Steele*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
        merchant@rlf.com
        terranova@rlf.com
        steele@rlf.com

Attorneys for the Debtors and Debtors in Possession

RLF1 12583428v.1