# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., ET AL.,<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10952 (KJC)<br><br>Jointly Administered<br><br>Hearing Date: July 27, 2015, at 11 a.m. |

## SECOND OBJECTION OF THE PEOPLE OF THE STATE OF CALIFORNIA AND THE COMMONWEALTH OF MASSACHUSETTS TO DEBTORS' MOTION TO APPROVE DISCLOSURE STATEMENT [DOCKET NO. 521]

The People[1] and the Commonwealth submit this second objection ("Second Objection") to the Debtor's Motion to Approve Disclosure Statement ("Motion") [Docket No. 521]. Since Debtors filed their initial Combined Disclosure Statement and Plan [Docket No. 520], Debtors have filed a First Amended and Modified Combined Disclosure Statement and Plan [Docket No. 615] and a Second Amended and Modified Combined Disclosure Statement and Plan [Docket No. 646] ("Current Disclosure Statement and Plan"). The States object to the Current Disclosure Statement and Plan and respectfully state the following:

## **OBJECTION**

1.  The Court should deny the Motion because the Current Disclosure Statement still provides inadequate information and describes a plan that is patently unconfirmable.

    **A.  The Current Disclosure Statement Is Still Woefully Inadequate**

2.  There are a number of glaring inadequacies in the Current Disclosure Statement. It does not provide sufficient information concerning (i) the sweeping releases—including now

---

[1] Unless otherwise specified, capitalized terms used, but not otherwise defined, have the same meaning as in the People and Commonwealth's Objection to Debtors' Motion to Approve Disclosure Statement [Docket No. 576] ("First Objection"). The States incorporate by reference the entirety of their First Objection.

1

third-party releases—for Bank of America and others, (ii) the assertion of Privileges by the Distribution Trustee, or (iii) the treatment of the States' claims. As such, it falls far short of providing "adequate information." 11 U.S.C § 1125(a)(1).

3. First, although the Court has already overruled a similar objection and the States do not intend to argue for reconsideration, to preserve the issue for a possible appeal, the States reassert their position that the Current Disclosure Statement does not provide adequate information concerning the Debtors' sweeping release of Bank of America and other Prepetition Lenders. Plan, Art. XIII.C. The Current Disclosure Statement has added language that "the Debtors are not aware of any Causes of Action against the Administrative Agent, the Prepetition Lenders or their Related Persons." Plan, Art. I. However, no further information is provided as to what investigation or due diligence—if any—Debtors have conducted to arrive at this critical conclusion. As detailed in the First Objection [Docket No. 576], which is incorporated by reference, this lack of transparency concerning the nature of the conduct being released is particularly troubling given the apparent involvement by Bank of America in the management of Debtors' affairs as they wound down operations and in the large cash transfer received outside the bankruptcy process. Without this information, creditors cannot make a meaningful decision whether to approve the Current Plan because claims against Bank of America and others may be Debtors' most valuable assets. Explanation of their release is inadequate in the Current Disclosure Statement.

4. Second, the Current Plan expands the releases to third parties—providing not just a debtor release of Bank of America and others, but also a release by all unsecured creditors. Third-party releases are "a rare thing," permissible only "upon a showing of exceptional circumstances . . . ." *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994). The Current Plan includes these improper third-party releases in favor of Bank of America and others by employing a creative negative "opt out," for which creditors must tick a box on their ballot if they do not wish to participate. Plan, Art. V.A.8. But disclosure concerning these third-party releases is entirely absent. As discussed, there continues to be

absolutely no disclosure of the claims being released or the investigation into them. This alone prevents creditors from making a meaningful decision whether to "opt out." Further, there is absolutely no disclosure of the consideration given in exchange for these third-party releases—nor could there because *no consideration is given*. A creditor's decision to "opt out" or not has zero effect on its distribution. These third-party releases are being offered without consideration, and are therefore gratuitous and unenforceable. *See, e.g., In re Kaplan,* 143 F.3d 807, 812 n.8 (3d Cir. 1998) (absent consideration, promise is "an unenforceable gratuitous gift"). This should all be fully disclosed to creditors; the Current Disclosure Statement is incomplete, misleading, and inadequate.

5. Next, the Current Disclosure Statement provides insufficient information concerning the treatment of Privileges. The Current Plan contemplates that "[a]ll Privileges" will be "transferred, assigned, and delivered" to the Distribution Trustee without waiver. Plan, Art. XI.M. Even assuming this were permitted—which it is not (discussed below)—the Current Disclosure Statement provides no further information about when and under what circumstances the Distribution Trustee will assert Privileges or waive them. This information is critical to the States, both of which have enforcement actions pending against certain of the Debtors. Indeed, the Current Disclosure Statement neither identifies the Distribution Trustee nor provides even a description of the terms of the controlling trust agreement, providing no insight into the operation of the Distribution Trust.

6. Finally, the Current Disclosure Statement omits basic information concerning the treatment of "Government Education Claims," which appear to apply only to the States.[2] A disclosure statement "must clearly and succinctly inform" the States what they are "going to get, when [they are] going to get it, and what contingencies there are to getting [their] distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Current Disclosure Statement

---

[2] And possibly the U.S. Department of Education. However, a deal between that agency and Debtors appears to be in the works, in which the agency's claim will be placed in Class 4 with other general unsecured claimants.

identifies none of this. It does state that Government Education Claims will receive a pro rata share of the Student Trust Assets, but this is only after the Student Trustee "first pay[s] full, and reserve[s] for as reasonable and appropriate, the Student Trust Operating Expenses," which includes a "Student Claims Benefit Program" for student outreach. Plan, Art. VII.A.5.c. There is no estimate of the costs of these expenses or programs and therefore no insight into how much is expected to be available for Government Education Claims. There is insufficient information for the States to meaningfully vote to approve or reject the Current Plan.

> B. **The Breadth of the Proposed Injunction, the Retention of Privileges Renders, and the Classification of the States' Claims Render the Current Plan Patently Unconfirmable**

7. Although the Court has determined that the injunction issue is to be assessed at the confirmation stage and has allowed the States to include language in the Disclosure Statement, the States reiterate their position for purposes of non-waiver that the Current Plan includes an impermissible discharge injunction.[3] The Current Plan also now includes an improper transfer of evidentiary privileges to the Distribution Trust and wrongly classifies the States' claims, both of which render the Current Plan "patently unconfirmable." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012).

8. Debtors continue to seek a permanent discharge injunction that is impermissible under 11 U.S.C. § 1141. Plan, Art. XIII.A. Corporate debtors are not entitled to a discharge provided by 11 U.S.C. § 524(a) if "(A) the plan provides for the liquidation of all or substantially all of the property of the estate; (B) the debtor does not engage in business after consummation of the plan; and (C) the debtor would be denied a discharge . . . if the case were a [chapter 7 case]." 11 U.S.C. § 1141(d)(3). All are true here: the Plan is a liquidation plan; Debtors are winding down and going out of business; and a Chapter 7 discharge is available only to

---

[3] At the July 22, 2015 hearing on the Motion, the Court directed Debtors to include in their disclosure statement language drafted by the States setting forth the States' position. The language provided by the States has been edited by Debtors and appears in Article XIII.A. The States object to Debtors' edits and to the language's location, which the States requested appear in Article I.

individuals, not corporations, 11 U.S.C § 727(a)(1). Nonetheless, Debtors seek a permanent discharge injunction that tracks § 524(a), purporting to permanently enjoin "all Persons and Entities who have held, hold or may hold Claims against or interest in the Debtors" from taking any actions of any kind against Debtors, other than those consistent with the terms of the Plan. Plan, Art. XIII.A. Section 1141(d)(3) precludes Debtors from obtaining such an injunction.

9. Again, the States reassert their objection, which will be asserted again at the confirmation stage that even if the injunctive language of Article XIII.A were permissible in a liquidating, corporate Chapter 11—which it is not—this language is still improperly broad because it does not include an appropriate and express carve-out for the commencement or continuation of an action or proceeding by a governmental unit to enforce its police or regulatory power, "including the enforcement of a judgment other than a money judgment." 11 U.S.C. § 362(b)(4). Such actions are clearly excepted from the automatic stay under § 362(b)(4), and it is well established that such actions are similarly excepted from "the post-discharge injunction under § 524(a)." *In re Pincombe*, 256 B.R. 774, 783 (Bankr. D. Ill. 2000). The Current Plan instead carves out only "any action for *non-monetary relief* that is excepted from the automatic stay pursuant to section 362(b)(4) of the Bankruptcy Code." Plan, Art. XIII.A (emphasis added). This is impermissibly narrow. Under § 362(b)(4), any police-power or regulatory action is excepted, *including actions seeking monetary relief*; it is only enforcement of a money judgment that is not excepted. Accordingly, Debtors continue to seek a permanent discharge injunction that is even broader than that provided by § 524(a) and that is contrary to § 362(b)(4).

10. The States now assert as a new objection that the Current Plan provides that Debtors' evidentiary Privileges will "be transferred, assigned, and delivered to the Distribution Trust, without waiver or release . . . ." Plan, Art. XI.M. This is improper. The Current Plan contemplates dissolution of Debtors "immediately" upon the Effective Date, and therefore any Privileges will cease to exist at that point. *See, e.g., S.E.C. v. Carrillo Huettel LLP,* 2015 WL 1610282, at *2 (S.D.N.Y. 2015) ("[A] dissolved or defunct corporation retains no privilege."). Debtors cannot retain their Privileges from beyond the grave by "transferring" them to the

5

Distribution Trust.  "[A] transfer of assets, without more, is not sufficient to effect a transfer of the privileges; control of the entity possessing the privileges must also pass for the privileges to pass." *Am. Int'l Specialty*, 240 F.R.D. 401, 407 (N.D.Ill. 2007) (quotation omitted) (collecting cases).

11. Finally, the States now assert as a new objection that the Current Plan places the "Government Education Claims"—which appear to include the States—in Class 5 along with the Student Claims.  The States' claims do not belong in Class 5.  "[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a).  The States' claims are not "substantially similar" to Student Claims.  This is evident from Class 5 treatment, which contemplates implementing Student Claims Benefit Program, "includ[ing] outreach programs and assistance for Students in seeking discharges or releases of their student loan obligations." While such programs might be beneficial to students, they are certainly not appropriate for the States.  The Current Plan cannot be confirmed with the States' claims placed in Class 5 with Student Claims. *See, e.g.*, *In re U.S. Truck Co.,* 800 F.2d 581, 585 (6th Cir. 1986) ("dissimilar claims" may not be "included in the same class").

12. These deficiencies are facial defects in the Plan that cannot be cured by a creditor vote and that concern facts not in dispute.  *See In re Am. Capital Equip.*, 688 F.3d at 154-55.  For these reasons too, the Motion should be denied.

## RESERVATION OF RIGHTS

13. To the extent any objection, in whole or in part, contained herein is deemed to be an objection to confirmation of the Plan, the States reserve the right to assert such objection, as well as any other objections, to confirmation of the Plan.  Furthermore, to the extent that Debtors file any supplements or amendments to the Disclosure Statement or Plan, the States reserve the right to object.

/ / /

## **CONCLUSION**

14. For these reasons, the States respectfully request that the Court deny the Motion.


Dated: July 24, 2015

KAMALA D. HARRIS
Attorney General of California

By:    /s/ Bernard A. Eskandari
NICKLAS A. AKERS
Senior Assistant Attorney General
NICHOLAS G. CAMPINS
BERNARD A. ESKANDARI
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Telephone: (213) 897-2652
  Fax: (213) 897-4951
  Email: bernard.eskandari@doj.ca.gov

*Attorneys for the People of the State of California*


MAURA HEALEY
Attorney General of Massachusetts

By:    /s/ Peter Leight
PETER LEIGHT
GLENN KAPLAN
Assistant Attorneys General
  One Ashburton Place, 18th Floor
  Boston, MA 02108
  Telephone: (617) 727-2200
  Fax: (617) 722-0184
  Email: peter.leight@state.ma.us

*Attorneys for the Commonwealth of Massachusetts*