1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF DELAWARE

4  - - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:                    Main Case No.

6  CORINTHIAN COLLEGES, INC., et al.,    15-10952(KJC)

7              Debtors.

8  - - - - - - - - - - - - - - - - - - - - -x

9  GUY REYNOLDS, ON BEHALF OF HIMSELF AND    Adv. Case No.

10 ALL OTHERS SIMILARLY SITUATED,            15-50309 (KJC)

11                  Plaintiffs,

12        -against-

13 CORINTHIAN COLLEGES, INC., et al.

14                  Defendants.

15 - - - - - - - - - - - - - - - - - - - - -x

16              United States Bankruptcy Court

17              824 North Market Street

18              Wilmington, Delaware

19              July 22, 2015

20              1:05 PM

21

22 B E F O R E:

23 HON. KEVIN J. CAREY

24 U.S. BANKRUPTCY JUDGE

25 ECR OPERATOR:  AL LUGANO

1

2  Debtors' Second Motion for Entry of an Order (I) Authorizing

3  the Debtors to Reject Certain Unexpired Leases of

4  Nonresidential Real Property Effective Nunc Pro Tunc to the

5  Date That the Debtors Surrender Possession; (II) Approving the

6  Abandonment of Any Personal Property Remaining at the Lease

7  Locations; and (III) Granting Certain Related Relief [Docket

8  No. 171 -- filed May 21, 2015]

9

10  Debtors' Motion for the Entry of an Order (A) Approving the

11  Disclosure Statement, (B) Establishing Procedures for

12  Solicitation and Tabulation of Votes to Accept or Reject Plan

13  of Liquidation, (C) Approving the Forms of Ballot and

14  Solicitation Materials, (D) Establishing Voting Record Date,

15  (E) Fixing the Date, Time and Place for the Confirmation

16  Hearing and the Deadline for Filing Objections Thereto, and (F)

17  Approving Related Notice Procedures [Docket No. 521 -- filed

18  July 1, 2015]

19

20

21

22

23

24

25  Transcribed by:  Jennifer Hamilton

1

2  A P P E A R A N C E S :

3  RICHARDS, LAYTON & FINGER, P.A.

4        Attorneys for Debtors

5  BY:   MARK D. COLLINS, ESQ.

6        MICHAEL J. MERCHANT, ESQ.

7        AMANDA R. STEELE, ESQ.

8

9

10  UNITED STATES DEPARTMENT OF JUSTICE

11        Office of the United States Trustee

12  BY:   TIMOTHY J. FOX, JR., ESQ.

13        RICHARD SCHEPACARTER, ESQ.

14

15

16  BROWN RUDNICK LLP

17        Attorneys for Official Creditors' Committee

18  BY:   H. JEFFREY SCHWARTZ, ESQ.

19        BENNETT S. SILVERBERG, ESQ. (TELEPHONICALLY)

20

21

22  THE ROSNER LAW GROUP LLC

23        Attorneys for Official Creditors' Committee

24  BY:   FREDERICK B. ROSNER, ESQ.

25

1

2  ROBINS KAPLAN LLP

3      Attorneys for Student Committee

4  BY:  SCOTT F. GAUTIER, ESQ.

5      LORIE A. BALL, ESQ. (TELEPHONICALLY)

6

7

8  POLSINELLI PC

9      Attorneys for Student Committee

10  BY:  SHANTI M. KATONA, ESQ.

11

12

13  SIDLEY AUSTIN LLP

14      Attorneys for Bank of America

15  BY:  JENNIFER C. HAGLE, ESQ.

16      ANNA GUMPORT, ESQ., (TELEPHONICALLY)

17

18

19  POTTER ANDERSON & CORROON, LLP

20      Attorneys for Bank of America

21  BY:  JEREMY RYAN, ESQ.

22

23

24

25

1

2 ASHBY & GEDDES, P.A.

3        Attorneys for Campus Student Funding, LLC

4 BY:   LEIGH-ANNE M.  RAPORT, ESQ.

5

6

7 OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA

8        Attorneys for State of California

9 BY:   NICHOLAS G. CAMPINS, ESQ. (TELEPHONICALLY)

10

11

12 CALIFORNIA DEPARTMENT OF JUSTICE

13        Attorneys for State of California

14 BY:   BERNARD ARDAVAN ESKANDARI, ESQ. (TELEPHONICALLY)

15

16

17 KATTEN MUCHIN ROSENMAN LLP

18        Attorneys for Watt Long Beach, LLC

19 BY:   JESSICA MICKELSEN SIMON, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.

3          Be seated, please.

4          THE COURT:  Afternoon, everyone.

5          IN UNISON:  Good afternoon.

6          MR. CAMPINS:  Good afternoon.

7          MS. STEELE:  Good afternoon, Your Honor.  Amanda

8   Steele, Richards, Layton & Finger on behalf of the debtors.

9   I'm going to walk you through the agenda this morning, and then

10  present one of the motions, and then Mr. Collins will take the

11  podium for the disclosure statement.

12         THE COURT:  Very well.

13         MS. STEELE:  Your Honor, we filed the third amended

14  agenda earlier today.  Do you have a copy?

15         THE COURT:  No.  I only have the second amended.

16         MS. STEELE:  May I approach?

17         THE COURT:  Yes, you may.

18         Thank you.

19         MS. STEELE:  The only change on the third amended

20  agenda is to note that the pre-trial scheduling conference with

21  the WARN Act claimants, that you entered an order and that has

22  been canceled.

23         THE COURT:  Very well.

24         MS. STEELE:  Your Honor, the first item scheduled to

25  go forward today is agenda item umber 10.  It's the debtors'

1  motion for entry of an order to reject certain leases.  If you

2  remember from last hearing, Ms. Terranova presented that we are

3  rejecting leases for certain premises on a rolling basis.  As

4  of today, prior to the hearing, we have surrendered three

5  additional properties subject to the motion, and so we seek to

6  reject those leases at this time.

7          I have a proposed form of order.  We have no

8  objection -- you've seen no objections with respect to those

9  three leases.

10          THE COURT:  You may approach.

11          MS. STEELE:  Thank you, Your Honor.

12          THE COURT:  Thank you.

13          Does anyone else wish to be heard in connection with

14  this matter?

15          I hear no response.

16          I don't have any questions.  That order has been

17  signed.

18          MS. STEELE:  Your Honor, that takes us to the final

19  matter on the agenda, agenda item number 11, the debtors'

20  disclosure statement, approval of the disclosure statement.

21  I'll now cede the podium over to Mr. Collins.

22          THE COURT:  All right.

23          MR. COLLINS:  Good afternoon, Your Honor.  For the

24  record, Mark Collins of Richards, Layton & Finger on behalf of

25  the debtors.

1          Your Honor, we were last before you on June 30th, I
2    believe, and we announced at that time that we were intending
3    to file a plan and disclosure statement within the next day or
4    so, and we, in fact, did that on July 1 by filing a combined
5    plan and disclosure statement.

6          Since that time, Your Honor, there have been good
7    faith and very productive negotiations amongst the key
8    constituencies in these cases, that being the debtors, the
9    lenders, represented by Bank of America as agent, the student
10   committee, and the official committee of unsecured creditors.
11   And those negotiations have led to what we believe is a global
12   compromise, at least among those parties, and that has been
13   embodied in the revised first amended plan and disclosure
14   statement that we filed yesterday afternoon.

15         Your Honor, that modified plan contemplates a two-
16   trust structure.  We originally, in our original plan, had a
17   single -- only a pot plan where all assets and liabilities
18   would go, and there would be pro rata distributions out to
19   creditors in accordance with the absolute priority ruling.
20   That plan had some issues with it.

21         The student committee raised concerns of having such a
22   trust really not provide the relief and benefits that the
23   student committee was interested in obtaining in these cases.
24   And it also raised concerns for both the lenders and the
25   official committee of unsecured creditors by having the student

1   claims be participating in a liquidating trust, given the
2   potential delays and uncertainties with respect to the claims
3   process associated with all of that.

4           So we devised a two-trust structure, Your Honor.  One
5   being what we call the student trust into which the
6   beneficiaries of the student trust, as currently contemplated,
7   would be student claimholders, as well as governmental
8   claimholders.  And those governmental claimholders are, for
9   example, the Department of Education and other state attorney
10  generals (sic) who have filed various lawsuits against the
11  company in various jurisdictions.

12          And into that trust would go 4.3 million dollars,
13  which is the student refund reserve that the debtors currently
14  have in its possession through an escrow agreement with
15  Citibank.  In addition, the student trust would participate in
16  up to five million dollars though a waterfall distribution out
17  of the distribution trust.  In that, we believe, while not
18  definitive agreement by the student committee, they have been
19  actively involved the development of the trust structure and
20  the assets that would go into that.

21          The distribution trust, which was originally
22  contemplated as the sole trust in the original plan, will
23  continue to exist, and into that trust will really go all of
24  the debtors' remaining assets other than those that are
25  distributed to the student trust, as well as assets that are

1  being distributed to the pre-petition lender on the effective
2  date, primarily being cash as that the zenith escrow, and some
3  additional identified assets.  And from that trust, Your Honor,
4  there will be a waterfall of distributions.

5          First -- let me back up.  The distribution trust will
6  also be the trust into which all -- not only tangible assets of
7  the debtor's estates would go, which are delineated in detail
8  in our liquidation analysis which is now attached as Exhibit B,
9  but also all claims and causes of action that the debtors'
10  estates have, but for those that are being released under the
11  plan.

12          And the releases are very limited, Your Honor.  We
13  have an exculpation provision solely with respect to post-
14  petition activities by estate fiduciaries in connection with
15  the Chapter 11 case and the plan, as well as a release to the
16  lenders with respect to the consideration they are providing,
17  as well as retained professionals in these cases.

18          Going back for a moment, now, to the waterfall.

19          THE COURT:  Let me just finish with releases.

20          MR. COLLINS:  Yes.

21          THE COURT:  Third-party releases are being proposed
22  with respect to general unsecured creditors' --

23          MR. COLLINS:  You Hon -- correct, Your Honor.

24          THE COURT:  -- potential claims, is that correct?

25          MR. COLLINS:  Thank you for reminding me of that.  We

1  have, at the request of Bank of America, included a consensual

2  third-party release for Class 4.

3          THE COURT:  So what will the ballot look like, just --

4          MR. COLLINS:  We will have an opt-out --

5          THE COURT:  -- so that I'm clear?

6          MR. COLLINS:  -- provision on that ballot.

7          THE COURT:  Okay.

8          MR. COLLINS:  And whether that party opts out or not,

9  they still receive the distribution under the terms of the

10 plan.

11         THE COURT:  Very well.

12         MR. COLLINS:  The waterfall, Your Honor, is pretty

13 straightforward.  To the extent we do not have sufficient cash

14 on the effective date to fully pay all administrative and

15 priority claims that are allowed as of that date, they will be

16 the first proceeds out of that distribution trust.

17         As we currently sit here today, Your Honor, we do

18 believe we'll have proceeds sufficient to pay all

19 administrative and -- administrative expense and priority

20 claims on the effective date, the one caveat being the WARN Act

21 litigation that is currently before the Court.  That is a

22 disputed priori -- asserted priority claim, and we hope to

23 resolve that at some point, whether through litigation or a

24 comp -- or through settlement prior to confirmation.

25         THE COURT:  Okay, so if the cash isn't sufficient on

1   the effective date, I think it -- with the consent of the

2   lenders, the adequate protection claim will wait?

3           MR. COLLINS:  That's right.  They're subordinating

4   their adequate protection claim to those unpaid, allowed,

5   administrative, and priority claims.

6           THE COURT:  Okay.

7           MR. COLLINS:  Following the payment or reserv -- or

8   reservation of funds for the disputed claims, the next monies

9   go to the lenders on account of their adequate protection

10  claim, which we have calculated to be 10.3 million dollars.

11  And that really is the amount of cash collateral we have used

12  from and after the petition date through these Chapter 11 cases

13  to maintain the businesses, including the wind-down of the

14  debtors' operations, the payment of professionals, the payment

15  of employees, rent, utilities, and the like.

16          Following that, Your Honor, it's currently

17  contemplated that the next fifteen million dollars out of the

18  trust would go to the lender's deficiency claim, which we'd

19  calculate to be approximately ninety to ninety-five million

20  dollars, and to all of the general unsecured creditors other

21  than the government, education claims, and the student claims.

22  And through negotiations between the committee and the lenders,

23  the lenders have agreed to reduce the pro rata distribution out

24  of that amount to forty percent to the lenders' sixty percent

25  to the other general unsecured creditors.

1          THE COURT:  Other -- apart from the deficiency claim?

2   Excluding the deficiency claim, I take it?

3          MR. COLLINS:  No, that's including the deficiency

4   claim.

5          THE COURT:  Oh.

6          MR. COLLINS:  So the net next fifteen million would go

7   forty percent to the lenders, fifteen -- sixty percent to all

8   of the other creditors.

9          Following that, Your Honor, the --

10         THE COURT:  I'm sorry.  I thought -- when I said that,

11  I meant -- I thought that sixty percent to general unsecured

12  creditors excluded --

13         MR. COLLINS:  That's correct.

14         THE COURT:  All right.

15         MR. COLLINS:  I'm sorry.

16         THE COURT:  Now I get it.

17         MR. COLLINS:  Yeah.  The next ten million dollars,

18  Your Honor, is contemplated to be split fifty-fifty between the

19  two trusts such that the student trust would receive up to the

20  next five -- up to five million dollars out of that next

21  tranche.

22         Following that ten millions dollars -- and I -- this

23  is all subject to the money still being available out of this;

24  it's the waterfall -- would go to the unsecured creditors in

25  Class 4.  Again, the same pro rata distribution between the

1  lenders and general unsecured creditors.

2       Your Honor, we have -- just given the fluid nature of

3  the negotiations and the time line that we are on, we have made

4  some additional changes to the plan and disclosure statement

5  from what was filed yesterday, and Mr. Merchant will walk Your

6  Honor through those changes in a moment.

7       THE COURT:  Okay.

8       MR. COLLINS:  But I wanted to pause and advise Your

9  Honor of, I guess, some late-breaking developments.  We've had

10 some very positive negotiations and discussions with the

11 Department of Education, and to be clear with the Court, they

12 were brought in on these negotiations fairly recently, and

13 that's primarily because we needed to first get an agreement

14 amongst the two committees and the lenders.  And once we had

15 the framework of that agreement, we then contacted the

16 Department -- I think it may have been Monday -- to advise them

17 of this, immediately sent them, as soon as we could, a copy of

18 the blackline for them to review and walk them through the

19 primary or material changes.

20      We were pleased to hear from the Department yesterday

21 that there could be a construct or potential modifications to

22 this modified plan that could obtain the consent of the

23 Department to the plan process, which would be wonderful news

24 for, really, everyone, as it would expedite plan confirmation

25 and reduce time and expense.  And the concept of this, at least

1    as what the debtor has proposed to the Department, would modify

2    the terms that are currently before the Court.  And I'll very

3    briefly put those on the record so people can understand what

4    might happen in the coming days.

5            THE COURT:  All right.

6            MR. COLLINS:  Your Honor, what we would do is move the

7    Department of Education's claim from the student trust to

8    treatment under the distribution trust.  We would cap the

9    Department of Education's claim out of proceeds from the

10   distribution trust at forty-five million dollars.  So people

11   would know this is an important part for, really, the economic

12   creditors around the table, knowing that the Department's claim

13   is fixed and is not going to be subject to significant

14   litigation.  For example, come November the Department would

15   not be filing a billion dollar claim that everyone else in the

16   distribution trust would then have to litigate to get down to a

17   more appropriate number.

18           So the Department would then participate as a

19   distribution trust beneficiary, and that five million dollars

20   that was out of the waterfall to go over to the student trust

21   would be eliminated, and that would then stay fully with the

22   distribution trust because the Department of Education is now

23   participating in the distribution trust.

24           The 4.3 million dollars would still go to the student

25   trust, and would be utilized by the student trust for the

1  benefit of student claimants and any other government claimants

2  that have, in fact, monetary claims.

3          The Department is considering this proposal, and we're

4  hopeful to hear positive word back from them.  If so, what we

5  would do, Your Honor, is submit a further revised plan and

6  disclosure statement to the Court, and we would ask that we

7  could be heard on Monday when we have a hearing currently set

8  on one matter, a sale matter, for 11 a.m., I believe, on

9  Monday.

10         THE COURT:  That's correct.

11         MR. COLLINS:  And what we'd like to do, Your Honor,

12  is, again, be in a position where we could maybe submit on

13  consent the modified plan with the Department of Education.

14  Now, that may or may not happen, and so what we would propose

15  to do, Your Honor, is move forward with the current plan,

16  advise Your Honor of the changes, work through, I think, some

17  fairly limited objections of the Department to the current plan

18  that's before the Court.

19         Also deal with the objection on the State of

20  California, and I believe they are on the telephone.  And I

21  would attempt to deal with those two objections following Mr.

22  Merchant's presentation of the additional modifications to the

23  plan since yesterday.

24         THE COURT:  All right.

25         MR. COLLINS:  Thank you, Your Honor.

1          MR. CAMPINS:  Your Honor, this is Nick Campins for the

2    people of the state of California.  My apologies for the brief

3    interruption, but we haven't seen the plan that is about to be

4    presented to Your Honor, and so we would just object on

5    principle, you know, that it's completely unfair to have the

6    Court consider a plan that we haven't even seen.  We haven't

7    seen these modifications that Mr. Merchant is about to show

8    Your Honor.

9          MR. COLLINS:  We understand that concern, Your Honor.

10   We have, today, or a very few minutes ago, e-mailed by PDF the

11   version that Mr. Merchant will hand up to Your Honor and walk

12   you through the changes, along with others in the courtroom.

13   The changes from what was yesterday, I don't think are that

14   significant, and I think Mr. Campins can either follow along

15   with the document he'll be receiving by the computer or hearing

16   the exchange between you and Mr. Merchant over those changes.

17         THE COURT:  Mr. Campins, have you received -- so that

18   I'm clear, have you received the version filed yesterday?

19         MR. CAMPINS:  I did receive the version filed

20   yesterday.  I have not yet -- I'm checking my e-mail.  I do not

21   see the version -- I don't know if they can send it again --

22         THE COURT:  Well, we'll be --

23         MR. CAMPINS:  -- but I don't have it before me.

24         THE COURT:  We'll be looking at it for the first time,

25   then, together.

1          MR. COLLINS:  Correct, Your Honor.

2          MR. CAMPINS:  Okay.

3          MS. STEELE:  And I will say, Your Honor, some of the

4    changes were made to resolve or at least ameliorate certain of

5    the California's objections to the disclosure statement.

6          THE COURT:  All right.

7          MR. MERCHANT:  Good afternoon, Your Honor.  Mike

8    Merchant of Richards, Layton & Finger on behalf of the debtors.

9    Your Honor, may I approach with the further blackline?

10         THE COURT:  Yes, you may.

11         Is there anyone in the courtroom who would like a copy

12   who does not yet have one?

13         And has this been filed on the docket, yet?

14         MR. MERCHANT:  It has not, Your Honor.

15         THE COURT:  All right.

16         MR. MERCHANT:  Your Honor, most of the changes

17   contained in the document are plan-related changes as opposed

18   to disclosure-type changes, but I'm -- my plan is to walk Your

19   Honor through the more material changes to the document.

20         THE COURT:  Is this -- the blackline that I've been

21   handed, is that a cumulative blackline or does it reflect only

22   the changes most recently made?

23         MR. MERCHANT:  Your Honor, it's a blackline against

24   the version of the plan that was filed yesterday.

25         THE COURT:  All right.  Thank you.

1          MR. MERCHANT:  You're welcome.  Your Honor, the first
2     change I would like to point out to the Court is actually on
3     page 1.  It's not a numbered page, but it's the page with the
4     introduction at the top.  And the changes on this page are
5     simply to reflect -- the language initially provided that the
6     creditors' committee and the student committee supported the
7     plan and encouraged their holders to vote in favor of the plan.
8          But we were informed late last night that the student
9     committee, while actively involved in the negotiations over the
10    plan, they're still reviewing and just simply asked that we not
11    include them in that language for now.  They may come to a
12    point where they may support the plan and encourage their
13    holders to vote in favor of the plan, but they did not want
14    that language in there.
15         THE COURT:  Well, they're students.  They've been
16    taught to read things, right?  I can understand that.
17         MR. MERCHANT:  On page 3, Your Honor, of the
18    blackline, there is a sentence added to the end of the
19    paragraph which a number of the objections pointed to the
20    releases of the pre-petition secured parties.  And it drew
21    questions as to what claims are being released pursuant to
22    those releases.  We simply wanted to add a sentence to say the
23    debtors are not aware of any causes of action against the pre-
24    petition secured parties, so we added that.
25         Your Honor, on page 10 of the blackline, defined term

1    number 43.  There are -- there are two concepts that were

2    added.  There are no additional language; these changes did not

3    affect the releases whatsoever, but the term "debtor releases"

4    and, I believe -- "debtor releasees" and "holder releasees",

5    which is another defined term were added -- were simply added

6    to clarify some language in the release section, but didn't

7    change the substance of what's set forth in the plan.

8         MR. CAMPINS:  This is -- my apologies, again.  This is

9    Nick Campins.  Can you actually read the language into the

10   record, because I still don't have a copy of the plan you're

11   reading from?

12        THE COURT:  Go ahead, Mr. Merchant, if you like.

13        MR. MERCHANT:  The defined term is "debtor releasees",

14   which means the parties defined as the debtor releasees in

15   section 13(c)(1) of the combined plan and disclosure statement.

16   Essentially, the language that was already there in the release

17   section, we grouped the parties that were set forth in that

18   provision and defined them as the debtor releasees, and then in

19   another spot the holder releasees, so that those terms could be

20   carried throughout that provision of the plan.  It doesn't

21   change the substance of what we're requesting.

22        THE COURT:  All right.  Mr. Campins, you have to take

23   Richards, Layton off your spam filter.  Maybe that's the

24   problem.

25        MR. CAMPINS:  No, I think I just -- I just got it

1  from -- I guess they sent it from the office.  They were

2  sending it from a Blackberry and it didn't come through, but I

3  finally just received it.

4           THE COURT:  Very well.

5           You may proceed, Mr. Merchant.

6           MR. MERCHANT:  Your Honor, in para -- page 13, defined

7  term number 62, equity interests?  We've added language to make

8  clear that the equity interests shall also include any claim or

9  interest that is subject to subordination to the level of any

10 equity interest, pursuant to Section 510(b) of the Bankruptcy

11 Code.

12          THE COURT:  Okay.

13          MR. MERCHANT:  Your Honor, defined term number 81,

14 which is on page 16, the definition of government education

15 claims?  We did not change the substance of what was intended

16 by this provision, we simply moved some language around to

17 clarify the claims covered by governmental education

18 claims -- government education claims.

19          The next change I'd like to point out to the Court,

20 Your Honor, is on page 19.  It's the definition of "oversight

21 board", which is definition number 109.  This language was

22 modified to make clear that the oversight board shall be a

23 three-person board consisting of one member appointed by the

24 creditors' committee, one member appointed by the

25 pre -- designated by the pre-petition secured parties, and the

1   third member will be the distribution trustee.  And this was at

2   the request of the creditors' committee, and agreed to by the

3   administrative agent.

4          THE COURT:  All right.

5          MR. MERCHANT:  Your Honor, the next change I'd like to

6   point out to the Court, and this is in definition 115 on page

7   20, and this is a concept that's carried through the plan and

8   it reflects simply an agreement between the pre-petition

9   lenders and the creditors' committee as to the treatment of the

10  pre-petition lenders' claims.  In particular, it relates to the

11  application of the -- what was referred to as the pre-petition

12  lenders' effective date cash.

13         MS. HAGLE:  Your Honor, it's Jenifer Hagle on behalf

14  of Bank of America with Sidley.  I believe we're missing the

15  word "not" be reduced by those claims?  Kind of a critical

16  difference.

17         MR. MERCHANT:  Yeah.  Sure.

18         And Your Honor, these -- I would point out that a lot

19  of these changes were made to reflect comments that we received

20  in the hour before the hearing, so there may be little nits and

21  stuff that we'll clean up in any version of the disclosure

22  statement submitted to the Court for approval.

23         Your Honor, the changes in definition 117 on page 21

24  are just further changes to reflect the overall agreement

25  between the creditors' committee and the pre-petition lenders

1   as to the pre-petition lenders' treatment.

2          THE COURT:  Okay.

3          MR. MERCHANT:  In definition 153, Your Honor, on page

4   27, this was added at the request of the creditors' committee

5   simply to make clear that any amounts in the unimpaired claims

6   cash reserve -- any amounts remaining after all claims covered

7   by that reserve are paid in full shall be returned to the

8   distribution trust.

9          Your Honor, the next change that I wanted to bring to

10  Your Honor's attention is on page 59.

11         THE COURT:  Bear with me for a minute.

12         MR. MERCHANT:  Sure.  In paragraph 9.

13      (Pause)

14         THE COURT:  Go ahead.

15         MR. MERCHANT:  In paragraph 9, Your Honor, on page 59,

16  this is -- again, this another change to strike the student

17  committee from the recommendation to vote in favor of the plan

18  for now.  We're hoping that recommendation comes, but we did

19  receive that request from them last night.

20         Your Honor, the next change I'd like to point out to

21  the Court's attention is on page 65.  And on this change, Your

22  Honor, the pre-petition lenders' treatment has been modified to

23  make clear that they're getting the zenith escrow and what

24  we've defined as the New York State grant funds.

25         And at the request of the creditors' committee, we've

1    add -- we've added the last line to that paragraph 1, which is
2    the carryover paragraph on page 65, to make clear that the
3    distribution trustee shall not administer the zenith escrow
4    account or the New York State grant funds, which are excluded
5    from the distribution trust assets, and shall have no duties to
6    assist with the realization or recovery of such amounts.

7               You're with me Your Honor?

8               Okay.  The next change, Your Honor, is on page 67.
9    And this was a change at the request of the creditors'
10   committee.  It was originally drafted that the distribution
11   trust shall be subject to a budget approved by the pre-petition
12   secured parties until the adequate protection claim is paid in
13   full.  That's been changed to be a budget approved by the
14   oversight board.

15              The next change, Your Honor, is on page 7.

16              THE COURT:  I'm there.

17              MR. MERCHANT:  Your Honor, the change here was just to
18   clarify that the distribution trustee shall be selected jointly
19   by the administrative agent and the creditors' committee and
20   identified by the debtors in the plan supplement.  There was a
21   fear that the debtors were selecting the distribution trustee.

22              The next change, Your Honor, is on page 72.  On page
23   72, Your Honor, this was added at the request of the creditors'
24   committee, but I know that they haven't reviewed this language
25   yet, so there may be some little nits here, but essentially,

1    the concept is that after a final distribution has been made,

2    to the extent that there's available cash after that, it gives

3    the distribution trustee the authority to make a charitable

4    contribution to the extent that the recovery by creditors would

5    be twenty-five dollars or less.  Essentially, it wouldn't

6    justify the cost of making the distribution.

7            The next change I'd like to point out, Your Honor, is

8    on page 86.  And the language had provided -- well, it already

9    provided that the distribution trustee will in good faith

10   cooperate with the student trustee should the student trustee

11   require access to books and records for purposes of

12   administering the student trust.  At the request of the

13   creditors' committee, we've added a reciprocal sentence with

14   regards to student books and records.

15           Your Honor, the next change is on page 90 with regards

16   to the injunction provision.  And it's the -- we've added a

17   sentence to the end of that injunction provision.  It

18   essentially provides that, notwithstanding anything in the plan

19   to the contrary, the provision shall not enjoin any action for

20   nonmonetary relief that is excepted from the automatic stay

21   pursuant to Section 362(b)(4) of the Bankruptcy Code.  And this

22   was intended to address some of the objections raised by the

23   California AG's Office.

24           The next change I'd like to point out, Your Honor, is

25   on page 97, and this relates to the Court's jurisdiction over

1  matters going forward after the effective date.  And we've

2  simply added, "as is legally permissible."

3          THE COURT:  Well, let me tell you the concern I ran

4  across in a post-confirmation dispute that was initiated

5  somewhere else, but came back here, in part, because there was

6  an exclusive jurisdiction provision in the plan and

7  confirmation order.  And it was being read, probably

8  correctly -- or accurately, I'll say it better that way -- to

9  require that adversary proceedings lawsuits be brought here

10 rather than somewhere else.

11         And I've come to the view, as a result of that, that

12 any jurisdiction provision -- well, and that's the purpose of

13 the addition of the language is to acknowledge the fact that

14 there's a decisional law which governs my post-confirmation

15 jurisdiction, which is reduced from pre-confirmation

16 jurisdiction.  But secondly, I've come to the view that such

17 provisions should not be used to argue that this is the only

18 place that other lawsuits can be brought post-confirmation by

19 liquidating or litigation trustees.

20         So that so long as the parties here understand that I

21 would not review -- I would not view that provision to require

22 that, I'm okay with it.

23         MR. MERCHANT:  Understood, Your Honor.

24         THE COURT:  Any questions about that?

25         MR. MERCHANT:  No.

1          THE COURT:  All right.

2          MR. CAMPINS:  Your Honor, this is Nick Campins for the

3     people of the state of California.

4          THE COURT:  Yes.

5          MR. CAMPINS:  Generally, we would object to the word

6     "exclusive" being in there anywhere.  I don't know how "as is

7     legally permissible" over -- modifies that term at all.  I

8     think that it needs to be -- "exclusive" needs to be stricken.

9          THE COURT:  In light of governing decisional law here,

10    I frankly think, at this point, "exclusive" doesn't mean very

11    much.  But I will tell you, in light of my own view, which I

12    just expressed, I'm not sure it means anything at all anymore,

13    if that gives you any comfort.  But if you maintain your

14    objection, I'll rule on it at some point.

15         MR. CAMPINS:  We would maintain it, Your Honor.

16         THE COURT:  All right.

17         MR. MERCHANT:  Thank you, Your Honor.  Your Honor, the

18    last change I simply bring to the Court's attention is on page

19    104 with regards to the dissolution of the debtors.  There was

20    some clarifying language added to that section to simply

21    clarify the effect of the provision and the consequences of the

22    debtors' being dissolved immediately upon the effective date.

23         THE COURT:  All right.

24         MR. MERCHANT:  Thank you, Your Honor.

25         MR. COLLINS:  Your Honor, I thought -- I think it

1  makes sense now to turn to the -- any outstanding objections

2  that remain by the Department of Education and/or the state of

3  California, and I'll respond to those objections.

4          THE COURT:  Okay, before we go there, can we just

5  confirm for the record that any reservation made either by the

6  student committee or the official creditors' committee have

7  been resolved?

8          MR. COLLINS:  I believe they have been, Your Honor,

9  but I'll turn it over to those parties.

10         MR. SCHWARTZ:  Good afternoon, Your Honor.  Jeffrey

11 Schwartz on behalf of the Official Committee of Unsecured

12 Creditors of Corinthian Colleges, Inc., et al.

13         We greatly appreciate the collaborative effort, and

14 that it looks like it's -- and I've been doing this a while,

15 Your Honor -- it's heading to fruition.  The committee's

16 pleased about that.

17         The only point I want to make on the record -- and we

18 don't have the final deal, Your Honor, and I haven't yet read

19 the document that's before you.  And I appreciate the efforts

20 that the debtors have made in moving the ball forward, but I

21 just want to point out one thing in particular that's of

22 concern to the committee that I'm sure we'll work through in

23 due course, but I want to make sure I get this on the record.

24         The section (m) of page 86, Privileges as to Certain

25 Causes of Action, and it seems to contemplate that the

1    distribution trust will not succeed to privilege -- legal

2    privilege in all respects with regard to assets of the estate

3    that will vest in it.  And there's a sentence here -- there are

4    a couple of sentences here that relate to -- for example, the

5    last sentence:  "The debtors' privileges, whether transferred

6    to the distribution trust or retained by the debtors will

7    remain."  That clause, if you will, is problematic because,

8    first of all, the legal privilege has to run with the assets to

9    the trust, in the committee's view, otherwise the trust will be

10   compromised.

11           Second, the debtors will be dissolute and dissolved

12   pursuant to section (r), page 104.  I don't want to debate it

13   or argue it, I just want it noted for the record, that's one

14   issue that the committee will require to be resolved in an

15   appropriate -- in a manner satisfactory for the committee.

16   Thank you, Your Honor.

17           THE COURT:  All right.  Thank you.

18           MR. COLLINS:  Your Honor, we did receive comments to

19   that provision in the last twenty-four hours or so.  We work

20   with the committee to try to resolve that.  I do think it is a

21   confirmation issue, not a disclosure issue, but we will work to

22   try to resolve any concerns the committee has in that regard.

23           THE COURT:  I agree it's an issue that can be left for

24   confirmation.

25           MR. GAUTIER:  Good afternoon, Your Honor.  Scott

1  Gautier with Robins Kaplan on behalf of the student committee.

2        We would echo a lot of the comments that have been

3  made this morning that commend counsel, particularly for the

4  debtors, in terms of the very hard work and diligent work to

5  move toward a plan that we believe is a -- is a movement toward

6  a plan that provides meaningful relief to student claims in the

7  case.

8        There were modifications -- there have been

9  modifications throughout last week and throughout the weekend.

10  We haven't had an opportunity to go over them with our client.

11  We've had an opportunity to go through them.  I would say this:

12  that more time would absolutely be better here to the extent

13  that holding up the solicitation and holding up the disclosure

14  statement is going to tank the plan on balance.  As counsel for

15  the student committee, I believe that it would be better to go

16  forward to give the plan an opportunity.

17        But at this time, as has been duly noted, the student

18  committee cannot possibly recommend support or encourage anyone

19  voting on the plan as to how to vote.  There are things that

20  the student committee -- I'm not going to go through them here,

21  unless the Court wants me to.  There's a couple things that may

22  make the plan unconfirmable, and we would reserve -- obviously,

23  we have the right to object to those at confirmation, and

24  that's the place for them.

25        We'd like to see if we can change them over the next

1   day or two in further negotiations, and I think we have the

2   opportunity to do that and will utilize that, and our aim is to

3   get to a plan that the student committee will vote and

4   encourage, both in the disclosure statement, if possible, but

5   if not, by separate means.

6           THE COURT:  All right, thank you.

7           MS. HAGLE:  Your Honor, very quickly, if I may?

8   Jennifer Hagle from Sidley on behalf of B of A as agent.  I

9   would like to comment on the timing and process.  Given that

10  this is a fairly unusual circumstance of our proceeding on a

11  very expedited basis, what I want the Court to understand and

12  appreciate is the liquidity circumstances and, at this point,

13  the fact that the lenders are taking all of the risk with

14  respect to the cash burned during this case, which Mr. Collins

15  correctly estimated will probably end up being in the 10.3 to

16  10.5 million dollar range.

17          While we hope to recover that as our 507(b) claim from

18  the distribution trust, given the nature of the assets, most of

19  which are tied up with claims of the estates against other

20  parties, there is significant inherent risk with both the

21  ultimate ability to realize on those claims and certainly with

22  respect to the timing.

23          There is simply no additional amount of money

24  available to this estate past what has been projected.  We have

25  gone through the budget, which will already need to be extended

1   from the originally contemplated expiration of the final cash

2   collateral order date of August 7th through August 31st to get

3   through confirmation.  So we've already endured a month delay

4   from that which we had initially anticipated, which will be at

5   least another couple of million dollars.

6          As Mr. Collins --

7          THE COURT:  I don't want to -- I don't want to make

8   light of the amount of the cash burned, but the original

9   estimates were probably a little bit optimistic in terms of

10  timing, in any event.  You weren't surprised by that, were you?

11         MS. HAGLE:  No.

12         THE COURT:  Okay.

13         MS. HAGLE:  But you can -- you can wish.  Even as a

14  bank lawyer.

15         THE COURT:  I think looking at the glass as being

16  half-full is always good.

17         MS. HAGLE:  I agree, actually.  Therefore, what

18  we're -- and Mr. Collins represented to Your Honor that we

19  think at this point that we can actually make the

20  administrative and priority payments at confirmation.  Which,

21  again, would be a good thing.

22         While the banks have agreed to subordinate our 507(b),

23  we'd certainly be preferent -- preferable to pay those claims

24  in cash at closing, rather than have other parties take that

25  risk.  And therefore, we have been driving hard, but also

1  stepping up and working hard with debtors' counsel and the

2  committees to work under these circumstances.

3          While we certainly acknowledge that changes have been

4  made over the weekend, over yesterday, this morning, we believe

5  that it's more than reasonable, as Mr. Collis suggested, that

6  we will spend the remainder of the week fine-tuning, tweaking,

7  and hopefully reaching a deal with the Department of Education,

8  which we all agree would be very beneficial in terms of

9  ultimately reducing the risk and expense with respect to

10 getting through confirmation.  But we think that it is very

11 doable to work with the parties, including Mr. Gautier and his

12 constituency, which has every right to read the plan, as does

13 Mr. Schwartz and his, as do my clients.

14         But that if we work toward submitting a revised plan

15 under certification of counsel for Monday, with an accompanying

16 request, I believe, to reduce the solicitation period by just a

17 couple of days, that we can get there.

18         And so I guess my point is that to the extent that the

19 objections are tied up with requests for further delay, I do

20 want Your Honor to understand that there is no room for further

21 delay of the confirmation hearing, given the cash collateral

22 situation, unless, of course, those third-parties want to fund

23 the administrative expense associated with such delay.  Thank

24 you.

25         THE COURT:  All right.  I'll hear from -- oh.  One

1   moment.

2          MR. FOX:  May it please the Court, Your Honor, Timothy

3   Fox on behalf of the United States Trustee.  I rise briefly

4   just to acknowledge that the debtors satisfied our informal

5   comments with their changes to the disclosure statement and

6   plan.  However, we reserve all of our rights with regards to

7   confirmation issues.  Thank you.

8          THE COURT:  All right.

9          MR. KRESSE:  Good afternoon, Your Honor.  John Kresse

10  for the Department of Education.  Your Honor, we've

11  also -- commend debtors' counsel and other counsel for working

12  on this plan and advancing it to this point.

13         As Mr. Collins stated, the Department of Education was

14  brought in fairly late in this process, and we did receive

15  the -- something close to the version that was filed yesterday

16  late on Monday evening, and we have been working to resolve the

17  issues that Mr. Collins addressed that we have -- we're trying

18  to modify the two-pot plan to put the United States back

19  in -- or the Department of Education back in Class 4, but we

20  have not had time to get our client to be able to fully address

21  this -- these issues.  And we're doing that while I'm

22  sitting -- while I'm standing here, Your Honor.  Back in

23  Washington, we have folks working on that.  So Mr. Randolph,

24  who was here a couple weeks ago, is leading that effort.

25         We do have two objections remaining, Your Honor, from

1   the objection that we filed.  And I have talked about it with

2   Mr. Collins today.  Just briefly, as our objection was filed,

3   it's the first objection regarding filing a combined plan and

4   disclosure statement, which, as we stated, we believe violates

5   Section 1125(f).

6       And then our second objection concerned the fact that

7   the disclosure statement does not clearly and succinctly inform

8   the average unsecured creditor what it is going to get, when it

9   is going to get it, and what contingencies are -- there are to

10  getting its distribution, as I think it's the table -- I forget

11  what page it's on now, but just shows that there is no estimate

12  for what those assets are worth.

13      Other than that, Your Honor, we're -- we support the

14  proposal to keep working on this in the next couple of days and

15  hope to have it resolved by Monday.

16      THE COURT:  So why do you think 1125(f) precludes the

17  combination of a disclosure statement and plan document?

18      MR. KRESSE:  Well, Your Honor, we believe it's the

19  size of the claims here that that subsection restricts to,

20  essentially, what would be small businesses, but I guess it is

21  2.5 million dollars in claims.  And these are -- claims here

22  are far greater.  Hundreds of millions.

23      THE COURT:  So I've -- I've visited this argument in a

24  different context, which the U.S. Trustee has begun to push

25  from time to time, but the way I view that section is geared

 1    specifically to deal with the small business debtor, but not in

 2    any way to preclude something like that under 105, for example,

 3    in other cases.  And I'm trying to figure out, apart from a

 4    construction of the statute, why for -- from a policy matter,

 5    you think a court should view it that way?

 6            MR. KRESSE:  Well, Your Honor, I would appreciate

 7    having a short period of time to consider that.  I --

 8            THE COURT:  Well, you made the --

 9            MR. KRESSE:  I'm not prepared --

10            THE COURT:  You made the --

11            MR. KRESSE:  -- to address it today.

12            THE COURT:  Well, you made the objection.

13            MR. KRESSE:  I can't --

14            THE COURT:  You make an objection --

15            MR. KRESSE:  I appreciate that, Your Honor.

16            THE COURT:  -- I expect you to stand there and stick

17    up, or say --

18            MR. KRESSE:  Well, Your Honor --

19            THE COURT:  -- you know what, Your Honor?  We just

20    kind of --

21            MR. KRESSE:  -- as far as --

22            THE COURT:  -- threw it in and --

23            MR. KRESSE:  Yes, Your Honor.

24            THE COURT:  Yeah.

25            MR. KRESSE:  Well, I don't think it's an issue of

1  policy.  It's an issue of construction.

2          THE COURT:  Well.

3          MR. KRESSE:  And so the statute says what it says.

4  It's not modified by some case law -- other case law or

5  legislative history, so that's -- we're taking it on its face.

6  And I understand.  You have -- you have a

7  different -- different view of what -- whether it restricts or

8  not.  So --

9          THE COURT:  I do.  So that --

10          MR. KRESSE:  -- that's where we are.

11          THE COURT:  -- objection's overruled, but I'd like

12  to --

13          MR. KRESSE:  Thank you, Your Honor.

14          THE COURT:  I'd like to address the second objection.

15  And under the circumstances, I suppose, I guess my question

16  would be:  how do you think the debtor could provide more

17  information under these particular circumstances, which are, at

18  least in my experience, somewhat unique?

19          MR. KRESSE:  I appreciate that, Your Honor.  I think

20  that the circumstances are difficult, and part of it is, of

21  course, the time that we've had -- that all parties have had to

22  try to assess the claims.  And for instance, the Department

23  doesn't know what claims might be asserted against -- against

24  it, because we have these allegations that the Department is at

25  fault for Corinthian's downfall.  And so there's - there's a

1  lot of uncertainty, and the debtors and other parties feel

2  likewise that they don't know exactly how much the Department

3  of Education feels it's --

4          THE COURT:  Well, the debtors, at least, as I

5  understand it, have acknowledged by how they've amended the

6  disclosure statement is that:  we don't have any claims against

7  you.  It's not that there aren't other potential plaintiffs,

8  but it seems to me a big one has been eliminated by the debtor

9  saying, we're not aware of any claims.

10          Or do I misread what the debtors' position is?

11          MR. COLLINS:  Yes, Your Honor.  With respect to claims

12  and causes of action against the lenders --

13          THE COURT:  Just the lenders?

14          MR. COLLINS:  We did note that any and all claims and

15  causes of action against the debtors' directors and officers,

16  against the Department of Education, or any other third party,

17  are all being transferred to the distribution trust for review

18  by that trust or for prosecution if they deem it meritorious.

19          THE COURT:  Okay.

20          MR. KRESSE:  So Your Honor, it seems that we still

21  have -- the Department of Education still has the potential to

22  have claims brought against it --

23          THE COURT:  So --

24          MR. KRESSE:  -- that could be significant.

25          THE COURT:  What's the magnitude of the Department's

1  claim against the debtor?

2          MR. KRESSE:  It depends on how many of these student

3  loans are discharged under the regulations, which is the

4  borrower's defense and the closed school discharge.  And

5  so -- I'm sorry, Your Honor.  I forget off the top of my head

6  what the numbers are for the closed school discharge, but the

7  borrower's defense discharge could be in the billions of

8  dollars.

9          THE COURT:  Okay, so what's the balance of the general

10 unsecured creditor body?  Do you know?  Just roughly?

11 Aggregate amount of claims?

12         MR. KRESSE:  I'm sorry, Your Honor?

13         THE COURT:  Aggregate amount of claims, if you know?

14         MR. COLLINS:  We've estim -- excuse me, we've

15 estimated general unsecured creditor claims to be somewhere

16 between 250 to 300 million dollars, inclusive, of the lenders'

17 deficiency claim.

18         THE COURT:  So maybe you control voting in the

19 unsecured creditor class?  I don't know.  That would be your

20 ultimate protection, perhaps.

21         MR. KRESSE:  Right.  At this moment, Your Honor, we

22 are -- we have the forty-five million dollars of the student

23 refund reserve, which is the liquidated claim.  There's a

24 potential for the claim of thirty million dollars that was a

25 fine levied against Corinthian or Heald.  And then, of course,

1    the other amounts are mounting with regard to the discharges,

2    which is an ongoing process.

3         THE COURT:  All right.  Well, I understand your

4    concern, but I don't know what I would order the debtor to do

5    in the way of further disclosures which would be something

6    practical, if you know what I mean.

7         All right, is there anything further?

8         MR. KRESSE:  No, Your Honor.

9         THE COURT:  Thank you.

10        MR. KRESSE:  Thank you.

11        MR. CAMPINS:  Good afternoon, Your Honor.  This is

12   Nick Campins again for the people of the state of California.

13        THE COURT:  Are you arguing for --

14        MR. CAMPINS:  You know, I've --

15        THE COURT:  Let me ask:  are you arguing for yourself

16   or for the Commonwealth of Massachusetts, as well?

17        MR. CAMPINS:  Well, the Commonwealth of Massachusetts

18   and the people have both, yes, submitted the objection -- the

19   formal objection.  We submitted the statement of insufficient

20   time by ourselves concerning the due process objection.

21        THE COURT:  I know.  I read the -- I read the

22   submissions.  My question is:  are you arguing just for

23   California, or for California and Massachusetts?

24        MR. CAMPINS:  Calif -- only California is appearing.

25        THE COURT:  All right.  Thank you, you may --

1          MR. CAMPINS:  I don't have authority to appear for --

2          THE COURT:  You may proceed.

3          MR. CAMPINS:  -- the Commonwealth.

4          THE COURT:  Go ahead.

5          MR. CAMPINS:  Okay, so the first major objection I

6    want to make sure is on the record is that we just have not had

7    a sufficient amount of time to review the disclosure statement

8    and the revised plan.  There was a revised plan and disclosure

9    statement adding twenty pages of substantive additions only

10   yesterday.

11         THE COURT:  Mr. Campins?

12         MR. CAMPINS:  There are further additions --

13         THE COURT:  Mr. Campins?

14         MR. CAMPINS:  -- that were made, apparently, during --

15         THE COURT:  Mr. Campins.

16         MR. CAMPINS:  -- the hearing today.

17         THE COURT:  Please pause for a moment.  And this is

18   why -- this is why I don't like extended argument by telephone,

19   because I find it extremely difficult to ask counsel to stop.

20   And I asked you to stop here because you will have additional

21   time.  The parties are going to come back on Monday for a final

22   hearing on disclosure.  I do agree that additional time is

23   appropriate under the circumstance.  If you want to argue on

24   Monday it's still not enough, your -- your right to reserve

25   that is still good.

1          So in light of that, why don't you move on to the next
2    objection?
3          MR. CAMPINS:  All right.  The additional objections
4    really go to the unconfirmable nature of the plan as written.
5    And I think that they still are unconfirmable.  With regard to
6    the release of the pre-petition lenders that has been
7    forwarded, there's no -- there's no disclosure about the
8    potential claims that may exist against the pre-petition
9    lenders.
10         THE COURT:  They say there aren't any.
11         MR. CAMPINS:  There's no --
12         THE COURT:  The debtor says there aren't any.
13         MR. CAMPINS:  But there's no -- there's no statement
14   of the basis for that.  And that is belied by the fact that the
15   pre-petition lenders are actually asking for an opt-out release
16   in addition from all the unsecured creditors.
17         THE COURT:  Not at --
18         MR. CAMPINS:  And there's nothing --
19         THE COURT:  Not at all --
20         MR. CAMPINS:  There's no discussion of the diligence
21   that's been -- excuse me?
22         THE COURT:  Not at all an unusual situation, but I
23   understand your position.
24         MR. CAMPINS:  Well, I would ask that we be permitted
25   space in that disclosure statement, then, to articulate our

1    position on that matter.

2              THE COURT:  Okay.

3              MR. CAMPINS:  With regard to jurisdiction, I believe

4    we addressed that previously.  Our remaining injunction has to

5    do with -- or, our remaining objection has to do with the

6    discharge injunction.  The injunction that is forwarded in this

7    plan is unconfirmable.  In particular, the debtor is not

8    entitled to a discharge provided by 11 U.S.C. 524 if the plan

9    provides for liquid -- you know, looking at paragraph 19 of our

10   objection, I don't need to read the entire thing into the

11   record, but basically, all the conditions are truth here, and

12   under Section 1141(d)(3), they're simply not -- they're simply

13   precluded from obtaining the type of injunction that they have

14   stated in this plan.

15             So the plan is unconfirmable and, as such, it should

16   not go to validate this way.  Or in the alternative, we would

17   request that we be given space in the disclosure statement to

18   make our position known.

19             THE COURT:  All right.  Anything further?

20             MR. CAMPINS:  That's all, Your Honor.

21             THE COURT:  All right, thank you.

22             Does the Commonwealth of Massachusetts wish to be

23   heard?

24             I hear no response.

25             I'll go back to the debtor if the debtor would like to

1    respond.

2            MR. COLLINS:  Briefly, Your Honor.  With respect to

3    the objection regarding the release of the pre-petition

4    lenders, we believe that is a confirmation issue.  We have

5    detailed in the disclosure statement the consideration that the

6    lenders are providing to the estate and to the beneficiaries of

7    the estate, the administrative claimants, priority claimants,

8    and others, given what they have agreed to do in order to allow

9    the plan to be confirmed.

10            THE COURT:  I agree with that.  The revised disclosure

11    statement, which I've had the opportunity to read, details that

12    considerably in what you did a very nice job of describing, Mr.

13    Collins, of describing as a very complex funding mechanisms,

14    but it includes seed money both for the distribution and

15    student trust.  It includes contribution of the student refund

16    reserve, carve-outs, the agreement to delay payment of the

17    adequate protection payment if funds at the effective date

18    aren't sufficient, allocation of other recoveries between the

19    general unsecured creditors and the lender, just to name a few

20    that come to mind.

21            So I don't think anything is -- further is required

22    with respect to the issue of whether there's been sufficient

23    disclosure with respect to justification of the releases there.

24    Of course, subject to making that evidentiary record, too, at

25    confirmation, if it's still disputed at that point.

1          MR. COLLINS:  Thank you, Your Honor.  With respect to

2    the second objection regarding the injunction language, Mr.

3    Campins speaks of the injunction provision as a discharge.  The

4    debtors are not receiving a discharge under this plan.  The

5    debtors are liquidating and will go out of business.  In fact,

6    we have very clear language in the plan that the debtors will

7    dissolve upon the effective date.

8          The injunction provision is -- the purpose of it is to

9    allow the plan distribution mechanisms to work.  But for this

10   injunction, Your Honor, post-confirmation, any creditor of the

11   debtors' could then start bringing actions in different

12   jurisdictions and the whole purpose of having a central trust

13   mechanism for fair distributions out to similarly situated

14   creditors would be lost.  And if -- without the injunction, the

15   very purpose of this plan of liquidation would be last because

16   you would have, again a race to the court house and the very

17   purpose of a fair and equitable distribution through a

18   liquidating plan would be lost.

19         THE COURT:  So I haven't actually faced this issue

20   before, so let me ask this question:  doesn't the injunction

21   here work effectively as a discharge?

22         MR. COLLINS:  It does not, Your Honor, because the

23   debtor entity is not able to move forward and have a new start

24   as a result of simply the inunction provision.  The -- a

25   discharge allows a company to emerge from bankruptcy and to

1    start anew as an operating entity.  Here, the injunction solely

2    is with respect to collection activities or claims associated

3    with the pre-petition conduct of the debtors'.  The debtor

4    itself is not going to reorganize and will not exist and

5    therefore it could not exist because it's not receiving a

6    discharge.

7            If we were somehow seeking -- if we were an operating

8    entity, we would, then, be receiving the discharge.  So Your

9    Honor, the injunction provision is really a tool of

10   implementation to allow the plan and the distribution

11   provisions to work, and it is a -- an injunction provision like

12   this has been -- needs to be in any liquidating Chapter 11

13   plan, otherwise --

14           THE COURT:  And it -- and it normally is.

15           MR. COLLINS:  It is.  Right.

16           THE COURT:  I've just never found it the subject of an

17   objection.

18           MR. COLLINS:  Yeah, and I think a lot of people do

19   equate, well, isn't this inunction akin to a discharge, and it

20   really is not, Your Honor, in the context of a true liquidating

21   plan where the debtor is dissolving upon the effective date.

22           THE COURT:  Well, since I have not encountered this

23   issue before, to the extent that the state of California wants

24   to state a position for purposes of the disclosure statement,

25   I'm inclined to allow that.  So I expect that when reasonable

1  heads are put together, appropriate language can be fashioned

2  to accomplish that.

3          MR. COLLINS:  So Your Honor would -- so we would ask,

4  then, Mr. Campins to provide us with what he would like to go

5  into the disclosure statement in this regard?

6          THE COURT:  All right, Mr. Campins?

7          MR. CAMPINS:  That's fine, Your Honor.  I will.  I do

8  want to make sure I understand the Court's ruling with regard

9  to the release.  There was an extended discussion about the

10  consideration the bank had provided, but there was no

11  discussion about the conduct that is being released, and I

12  would like to understand if the Court is denying the State the

13  opportunity to provide our view that there is conduct that is

14  being released or that there is potential conduct that may be

15  being released --

16          THE COURT:  Well --

17          MR. CAMPINS:  -- as the case may be.

18          THE COURT:  And what's your justification for that?

19          MR. CAMPINS:  Well, the justification is we have -- we

20  have been trying for weeks to get the correspondence between

21  the pre-petition lenders and the debtors, and have been unable

22  to.  We are in the process, I guess, of perhaps receiving it

23  today.  We have not received it.  And so we don't know what any

24  of that correspondence looks like.  We do know, however, as we

25  state in the objection at length, that there was a significant

1    amount of pre-petition lender involvement in a managed -- in a
2    wind-down of the debtors' affairs.
3            THE COURT:  Well, I suppose there would be.
4            MR. CAMPINS:  We know -- excuse me?
5            THE COURT:  Mr. Campins, let me move it like this:  I
6    haven't heard enough in the nature of your objection that tells
7    me it warrants additional disclosures.  However, you're still
8    free to argue at confirmation that the consideration
9    isn't -- is not sufficient for, among other reasons, the
10   argument that you make now that not sufficient diligence has
11   been done or if you come up with other information.
12           I'll add that if there's to be pre-confirmation
13   discovery and the parties have any kind of dispute about that,
14   I'd rather set a schedule earlier on, given the compressed time
15   frame here, rather than later.  So let's put that issue on for
16   Monday if, in fact, it's an issue.
17           MR. CAMPINS:  Thank you, Your Honor.
18           THE COURT:  Okay.
19           MR. COLLINS:  Your Honor, if I could also -- and Mr.
20   Campins may know this -- under the terms of the final DIP
21   order, there is an investigation period provided to the
22   creditors' committee to review any and all claims and causes of
23   action against the lenders.  That investigation period expires,
24   I believe, August 15th, which will be prior to plan
25   confirmation, and that will also provide information to all

1  parties, including the Court, at confirmation regarding the
2  propriety of release of the lenders.
3          THE COURT:  All right.  And with respect to the
4  exclusive jurisdiction issue?  Take it out.
5          MR. COLLINS:  We'll take it out, Your Honor.
6          THE COURT:  All right.
7          Mr. Campins, have I addressed all of your remaining
8  objections?
9          MR. CAMPINS:  You have, Your Honor.  Thank you.
10         THE COURT:  All right.  So are we done on disclosure?
11         MR. COLLINS:  We are, Your Honor.
12         THE COURT:  Okay.  So ideally, from the Court's
13 standpoint, if whatever revisions -- further revisions are to
14 be made could be made and filed by the close of business of
15 Friday, it would give parties the weekend to review them.  Now,
16 what I expect might be tempting is to say, well, we have the
17 weekend to try to work things out, too.  But if the
18 parties -- if the parties end up needing that time, it seems to
19 me you may face the same notice issues that California has
20 raised now.
21         So look, it's better that you do what you do to make a
22 deal, even if it happen on Sunday night, but it would be better
23 if the parties could have a little more notice, although it
24 sounds to me as if you've actually now, as of today, worked
25 through most of what would have been the major issues, so I'll

1    leave you with that.  But understanding that we'll continue
2    this hearing to 11 o'clock on Monday, July 27th.
3              MR. COLLINS:  Thank you very much, Your Honor.
4              THE COURT:  Okay.  Is there anything else that we need
5    to talk about today?
6              MR. COLLINS:  No, Your Honor.
7              THE COURT:  Thank you all very much.  That concludes
8    this hearing.  Court will stand adjourned.
9              MR. COLLINS:  Thank you, Your Honor.
10             MR. CAMPINS:  Thank you.
11        (Whereupon these proceedings were concluded at 2:12 PM)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2                              I N D E X

3

4                             RULINGS

5                                          PAGE     LINE

6   Debtors' second motion for entry of an order   7       16

7   authorizing the debtors to reject certain

8   unexpired leases and approving the

9   abandonment of any property remaining at the

10  lease locations granted

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Jennifer Hamilton, certify that the foregoing transcript is

5    a true and accurate record of the proceedings.

6

7

8                                        July 28, 2015

9    _____        _____

10   JENNIFER HAMILTON               DATE

11

12   eScribers, LLC

13   700 West 192nd Street, Suite #607

14   New York, NY 10040

15   (973)406-2250

16   operations@escribers.net

17

18

19

20

21

22

23

24

25

**1**

**1 (3)**
8:4;19:3;24:1
**10 (2)**
6:25;19:25
**10.3 (2)**
12:10;31:15
**10.5 (1)**
31:16
**104 (2)**
27:19;29:12
**105 (1)**
36:2
**109 (1)**
21:21
**11 (7)**
7:19;10:15;12:12;
16:8;43:8;46:12;50:2
**1125f (2)**
35:5,16
**1141d3 (1)**
43:12
**115 (1)**
22:6
**117 (1)**
22:23
**13 (1)**
21:6
**13c1 (1)**
20:15
**153 (1)**
23:3
**15th (1)**
48:24
**16 (1)**
21:14
**19 (2)**
21:20;43:9

**2**

**2.5 (1)**
35:21
**2:12 (1)**
50:11
**20 (1)**
22:7
**21 (1)**
22:23
**250 (1)**
39:16
**27 (1)**
23:4
**27th (1)**
50:2

**3**

**3 (1)**
19:17
**300 (1)**

**39:16**
**30th (1)**
8:1
**31st (1)**
32:2
**362b4 (1)**
25:21

**4**

**4 (3)**
11:2;13:25;34:19
**4.3 (2)**
9:12;15:24
**43 (1)**
20:1

**5**

**507b (2)**
31:17;32:22
**510b (1)**
21:10
**524 (1)**
43:8
**59 (2)**
23:10,15

**6**

**62 (1)**
21:7
**65 (2)**
23:21;24:2
**67 (1)**
24:8

**7**

**7 (1)**
24:15
**72 (2)**
24:22,23
**7th (1)**
32:2

**8**

**81 (1)**
21:13
**86 (2)**
25:8;28:24

**9**

**9 (2)**
23:12,15
**90 (1)**
25:15
**97 (1)**
25:25

**A**

**ability (1)**
31:21
**able (2)**
34:20;45:23
**absolute (1)**
8:19
**absolutely (1)**
30:12
**access (1)**
25:11
**accompanying (1)**
33:15
**accomplish (1)**
47:2
**accordance (1)**
8:19
**account (2)**
12:9;24:4
**accurately (1)**
26:8
**acknowledge (3)**
26:13;33:3;34:4
**acknowledged (1)**
38:5
**across (1)**
26:4
**Act (2)**
6:21;11:20
**action (7)**
10:9;19:23;25:19;
28:25;38:12,15;48:23
**actions (1)**
45:11
**actively (2)**
9:19;19:9
**activities (2)**
10:14;46:2
**actually (7)**
19:2;20:9;32:17,19;
42:15;45:19;49:24
**add (3)**
19:22;24:1;48:12
**added (13)**
19:18,24;20:2,5,5;
21:7;23:4;24:1,23;
25:13,16;26:2;27:20
**adding (1)**
41:9
**addition (3)**
9:15;26:13;42:16
**additional (10)**
7:5;10:3;14:4;16:22;
20:2;31:23;41:20,22;
42:3;48:7
**additions (2)**
41:9,12
**address (4)**
25:22;34:20;36:11;
37:14
**addressed (3)**

**34:17;43:4;49:7**
**adequate (5)**
12:2,4,9;24:12;44:17
**adjourned (1)**
50:8
**administer (1)**
24:3
**administering (1)**
25:12
**administrative (9)**
11:14,19,19;12:5;
22:3;24:19;32:20;33:23;
44:7
**advancing (1)**
34:12
**adversary (1)**
26:9
**advise (3)**
14:8,16;16:16
**affairs (1)**
48:2
**affect (1)**
20:3
**Afternoon (11)**
6:4,5,6,7;7:23;8:14;
18:7;28:10;29:25;34:9;
40:11
**Again (8)**
13:25;16:12;17:21;
20:8;23:16;32:21;40:12;
45:16
**against (15)**
9:10;18:23;19:23;
31:19;37:23,23;38:6,12,
15,16,22;39:1,25;42:8;
48:23
**agenda (6)**
6:9,14,20,25;7:19,19
**agent (3)**
8:9;22:3;24:19;31:8
**Aggregate (2)**
39:11,13
**ago (2)**
17:10;34:24
**agree (5)**
29:23;32:17;33:8;
41:22;44:10
**agreed (4)**
12:23;22:2;32:22;44:8
**agreement (7)**
9:14,18;14:13,15;
22:8,24;44:16
**AG's (1)**
25:23
**ahead (3)**
20:12;23:14;41:4
**aim (1)**
31:2
**akin (1)**
46:19
**al (1)**
28:12
**allegations (1)**

**37:24**
**allocation (1)**
44:18
**allow (4)**
44:8;45:9;46:10,25
**allowed (2)**
11:15;12:4
**allows (1)**
45:25
**along (2)**
17:12,14
**alternative (1)**
43:16
**although (1)**
49:23
**always (1)**
32:16
**Amanda (1)**
6:7
**ameliorate (1)**
18:4
**amended (5)**
6:13,15,19;8:13;38:5
**America (5)**
4:14,20;8:9;11:1;
22:14
**among (2)**
8:12;48:9
**amongst (2)**
8:7;14:14
**amount (8)**
12:11,24;31:23;32:8;
39:11,13;41:7;48:1
**amounts (4)**
23:5,6;24:6;40:1
**analysis (1)**
10:8
**and/or (1)**
28:2
**ANDERSON (1)**
4:19
**anew (1)**
46:1
**ANNA (1)**
4:16
**announced (1)**
8:2
**anticipated (1)**
32:4
**anymore (1)**
27:12
**apart (2)**
13:1;36:3
**apologies (2)**
17:2;20:8
**apparently (1)**
41:14
**appear (1)**
41:1
**appearing (1)**
40:24
**application (1)**
22:11

Case 15-10952-JTD    Doc 668    Filed 07/29/15    Page 54 of 62

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

July 22, 2015

**appointed (2)**
21:23,24
**appreciate (6)**
28:13,19;31:12;36:6,
15;37:19
**approach (2)**
6:16;7:10;18:9
**appropriate (4)**
15:17;29:15;41:23;
47:1
**approval (2)**
7:20;22:22
**approved (2)**
24:11,13
**approximately (1)**
12:19
**ARDAVAN (1)**
5:14
**argue (4)**
26:17;29:13;41:23;
48:8
**arguing (3)**
40:13,15,22
**argument (3)**
35:23;41:18;48:10
**around (2)**
15:12;21:16
**articulate (1)**
42:25
**ASHBY (1)**
5:2
**asserted (2)**
11:22;37:23
**assess (1)**
37:22
**assets (11)**
8:17;9:20,24,25;10:3,
6;24:5;29:2,8;31:18;
35:12
**assist (1)**
24:6
**associated (3)**
9:3;33:23;46:2
**attached (1)**
10:8
**attempt (1)**
16:21
**attention (3)**
23:10,21;27:18
**ATTORNEY (2)**
5:7;9:9
**Attorneys (8)**
4:3,9,14,20;5:3,8,13,
18
**August (3)**
32:2,2;48:24
**AUSTIN (1)**
4:13
**authority (2)**
25:3;41:1
**automatic (1)**
25:20
**available (3)**

13:23;25:2;31:24
**average (1)**
35:8
**aware (2)**
19:23;38:9

**B**

**back (9)**
10:5,18;16:4;26:5;
34:18,19,22;41:21;43:25
**balance (2)**
30:14;39:9
**BALL (2)**
4:5;28:20
**ballot (2)**
11:3,6
**Bank (7)**
4:14,20;8:9;11:1;
22:14;32:14;47:10
**Bankruptcy (3)**
21:10;25:21;45:25
**banks (1)**
32:22
**basically (1)**
43:11
**basis (3)**
7:3;31:11;42:14
**Beach (1)**
5:18
**Bear (1)**
23:11
**begun (1)**
35:24
**behalf (8)**
6:8;7:24;18:8;22:13;
28:11;30:1;31:8;34:3
**belied (1)**
42:14
**beneficial (1)**
33:8
**beneficiaries (2)**
9:6;44:6
**beneficiary (1)**
15:19
**benefit (1)**
16:1
**benefits (1)**
8:22
**BERNARD (1)**
5:14
**better (5)**
26:8;30:12,15;49:21,
22
**big (1)**
38:8
**billion (1)**
15:15
**billions (1)**
39:7
**bit (1)**
32:9
**Blackberry (1)**

21:2
**blackline (7)**
14:18;18:9,20,21,23;
19:18,25
**board (4)**
21:21,22,23;24:14
**body (1)**
39:10
**books (2)**
25:11,14
**borrower's (2)**
39:4,7
**both (5)**
8:24;31:4,20;40:18;
44:14
**brief (1)**
17:2
**briefly (4)**
15:3;34:3;35:2;44:2
**bring (2)**
23:9;27:18
**bringing (1)**
45:11
**brought (5)**
14:12;26:9,18;34:14;
38:22
**budget (3)**
24:11,13;31:25
**burned (2)**
31:14;32:8
**business (3)**
36:1;45:5;49:14
**businesses (2)**
12:13;35:20

**C**

**calculate (1)**
12:19
**calculated (1)**
12:10
**Calif (1)**
40:24
**CALIFORNIA (15)**
5:7,8,12,13;16:20;
17:2;25:23;27:3;28:3;
40:12,23,23,24;46:23;
49:19
**California's (1)**
18:5
**call (1)**
9:5
**came (1)**
26:5
**CAMPINS (52)**
5:9;6:6;17:1,1,14,17,
19,23;18:2;20:8,9,22,25;
27:2,2,5,15;40:11,12,14,
17,24;41:1,3,5,11,12,13,
14,15,16;42:3,11,13,18,
20,24;43:3,20;45:3;47:4,
6,7,17,19;48:4,5,17,20;
49:7,9;50:10

**Campus (1)**
5:3
**can (14)**
15:3;17:14,21;19:16;
20:9;26:18;28:4;29:23;
30:25;32:13,13,19;
33:17;47:1
**canceled (1)**
6:22
**cap (1)**
15:8
**carried (2)**
20:20;22:7
**carryover (1)**
24:2
**carve-outs (1)**
44:16
**case (6)**
10:15;30:7;31:14;
37:4,4;47:17
**cases (5)**
8:8,23;10:17;12:12;
36:3
**cash (12)**
10:2;11:13,25;12:11;
22:12;23:6;25:2;31:14;
32:1,8,24;33:21
**causes (6)**
10:9;19:23;28:25;
38:12,15;48:22
**caveat (1)**
11:20
**cede (1)**
7:21
**central (1)**
45:12
**certain (4)**
7:1,3;18:4;28:24
**certainly (3)**
31:21;32:23;33:3
**certification (1)**
33:15
**change (21)**
6:19;19:2;20:7,21;
21:15,19;22:5;23:9,16,
20,21;24:8,9,15,17,22;
25:7,15,24;27:18;30:25
**changed (1)**
24:13
**changes (20)**
14:4,6,19;16:16;
17:12,13,16;18:4,16,17,
18,19,22;19:4;20:2;
22:19,23,24;33:3;34:5
**Chapter (3)**
10:15;12:12;46:12
**charitable (1)**
25:3
**checking (1)**
17:20
**circumstance (2)**
31:10;41:23
**circumstances (5)**

31:12;33:2;37:15,17,
20
**Citibank (1)**
9:15
**claim (19)**
11:22;12:2,4,10,18;
13:1,2,4;15:7,9,12,15;
21:8;24:12;31:17;39:1,
17,23,24
**claimants (5)**
6:21;16:1,1;44:7,7
**claimholders (3)**
9:7,8,8
**claims (40)**
9:1,2;10:9,24;11:15,
20;12:5,8,21,21;16:2;
19:21;21:15,17,18,18;
22:10,15;23:5,6;30:6;
31:19,21;32:23;35:19,
21,21;37:22,23;38:6,9,
11,14,22;39:11,13,15;
42:8;46:2;48:22
**clarify (4)**
20:6;21:17;24:18;
27:21
**clarifying (1)**
27:20
**Class (4)**
11:2;13:25;34:19;
39:19
**clause (1)**
29:7
**clean (1)**
22:21
**clear (9)**
11:5;14:11;17:18;
21:8;22:3;23:5,23;24:2;
45:6
**clearly (1)**
35:7
**CLERK (1)**
6:2
**client (2)**
30:10;34:20
**clients (1)**
33:13
**close (2)**
34:15;49:14
**closed (2)**
39:4,6
**closing (1)**
32:24
**Code (2)**
21:11;25:21
**collaborative (1)**
28:13
**collateral (3)**
12:11;32:2;33:21
**collection (1)**
46:2
**Colleges (1)**
28:12
**Collins (49)**

6:10;7:21,23,24;
10:20,23,25;11:4,6,8,12;
12:3,7;13:3,6,13,15,17;
14:8;15:6;16:11,25;
17:9;18:1;27:25;28:8;
29:18;31:14;32:6,18;
34:13,17;35:2;38:11,14;
39:14;44:2,13;45:1,22;
46:15,18;47:3;48:19;
49:5,11;50:3,6,9
**Collis (1)**
33:5
**combination (1)**
35:17
**combined (3)**
8:4;20:15;35:3
**comfort (1)**
27:13
**coming (1)**
15:4
**commend (2)**
30:3;34:11
**comment (1)**
31:9
**comments (4)**
22:19;29:18;30:2;34:5
**Committee (37)**
4:3,9;8:10,10,21,23,
25;9:18;12:22;19:6,6,9;
21:24;22:9,25;23:4,17,
25;24:10,19,24;25:13;
28:6,6,11,22;29:14,15,
20,22;30:1,15,18,20;
31:3;48:22
**committees (2)**
14:14;33:2
**committee's (2)**
28:15;29:9
**Commonwealth (4)**
40:16,17;41:3;43:22
**comp (1)**
11:24
**company (2)**
9:11;45:25
**completely (1)**
17:5
**complex (1)**
44:13
**compressed (1)**
48:14
**compromise (1)**
8:12
**compromised (1)**
29:10
**computer (1)**
17:15
**concept (3)**
14:25;22:7;25:1
**concepts (1)**
20:1
**concern (4)**
17:9;26:3;28:22;40:4
**concerned (1)**

35:6
**concerning (1)**
40:20
**concerns (3)**
8:21,24;29:22
**concluded (1)**
50:11
**concludes (1)**
50:7
**conditions (1)**
43:11
**conduct (4)**
46:3;47:11,13,14
**conference (1)**
6:20
**confirm (1)**
28:5
**confirmation (16)**
11:24;14:24;26:7;
29:21,24;30:23;32:3,20;
33:10,21;34:7;44:4,25;
48:8,25;49:1
**confirmed (1)**
44:9
**connection (2)**
7:13;10:14
**consensual (1)**
11:1
**consent (3)**
12:1;14:22;16:13
**consequences (1)**
27:21
**consider (2)**
17:6;36:7
**considerably (1)**
44:12
**consideration (4)**
10:16;44:5;47:10;48:8
**considering (1)**
16:3
**consisting (1)**
21:23
**constituencies (1)**
8:8
**constituency (1)**
33:12
**construct (1)**
14:21
**construction (2)**
36:4;37:1
**contacted (1)**
14:15
**contained (1)**
18:17
**contemplate (1)**
28:25
**contemplated (5)**
9:6,22;12:17;13:18;
32:1
**contemplates (1)**
8:15
**context (2)**
35:24;46:20

**contingencies (1)**
35:9
**continue (2)**
9:23;50:1
**contrary (1)**
25:19
**contribution (2)**
25:4;44:15
**control (1)**
39:18
**cooperate (1)**
25:10
**copy (4)**
6:14;14:17;18:11;
20:10
**Corinthian (2)**
28:12;39:25
**Corinthian's (1)**
37:25
**correctly (2)**
26:8;31:15
**correspondence (2)**
47:20,24
**CORROON (1)**
4:19
**cost (1)**
25:6
**counsel (7)**
30:3,14;33:1,15;
34:11,11;41:19
**couple (6)**
29:4;30:21;32:5;
33:17;34:24;35:14
**course (5)**
28:23;33:22;37:21;
39:25;44:24
**COURT (137)**
6:4,12,15,17,23;7:10,
12,22;10:19,21,24;11:3,
5,7,11,21,25;12:6;13:1,
5,10,14,16;14:7,11;15:2,
5;16:6,10,18,24;17:6,17,
22,24;18:6,10,15,20,25;
19:2,15;20:12,22;21:4,
12,19;22:4,6,22;23:2,11,
14;24:16;26:3,24;27:1,4,
9,16,23;28:4;29:17,23;
30:21;31:6,11;32:7,12,
15;33:25;34:2,8;35:16,
23;36:5,8,10,12,14,16,
19,22,24;37:2,9,11,14;
38:4,13,19,23,25;39:9,
13,18;40:3,9,13,15,21,
25;41:2,4,11,13,15,17;
42:10,12,17,19,22;43:2,
19,21;44:10;45:16,19;
46:14,16,22;47:6,12,16,
18;48:3,5,18;49:1,3,6,
10,12;50:4,7,8
**courtroom (2)**
17:12;18:11
**Court's (5)**
23:21;25:25;27:18;

47:8;49:12
**covered (2)**
21:17;23:6
**creditor (5)**
35:8;39:10,15,19;
45:10
**creditors (15)**
8:10,19,25;12:20,25;
13:8,12,24;14:1;15:12;
25:4;28:12;42:16;44:19;
45:14
**creditors' (14)**
10:22;19:6;21:24;
22:9,9,25;23:4,25;24:9,
19,23;25:13;28:6;48:22
**critical (1)**
22:15
**cumulative (1)**
18:21
**current (2)**
16:15,17
**currently (7)**
9:6,13;11:17,21;
12:16;15:2;16:7

**D**

**date (13)**
10:2;11:14,15,20;
12:1,12;22:12;26:1;
27:22;32:2;44:17;45:7;
46:21
**day (2)**
8:3;31:1
**days (3)**
15:4;33:17;35:14
**deal (6)**
16:19,21;28:18;33:7;
36:1;49:22
**debate (1)**
29:12
**debtor (18)**
15:1;20:3,4,13,14,18;
36:1;37:16;38:8;39:1;
40:4;42:12;43:7,25,25;
45:23;46:3,21
**debtors (20)**
6:8;7:25;8:8;9:13;
18:8;19:23;24:20,21;
27:19;28:20;29:6,11;
30:4;34:4;38:1,4;45:4,5,
6;47:21
**debtors' (14)**
6:25;7:19;9:24;10:9;
12:14;27:22;29:5;33:1;
34:11;38:10,15;45:11;
46:3;48:2
**debtor's (1)**
10:7
**decisional (2)**
26:14;27:9
**deem (1)**
38:18

**defense (2)**
39:4,7
**deficiency (5)**
12:18;13:1,2,3;39:17
**defined (8)**
19:25;20:5,13,14,18;
21:6,13;23:24
**definition (6)**
21:14,20,21;22:6,23;
23:3
**definitive (1)**
9:18
**delay (5)**
32:3;33:19,21,23;
44:16
**delays (1)**
9:2
**delineated (1)**
10:7
**denying (1)**
47:12
**DEPARTMENT (25)**
5:12;9:9;14:11,16,20,
23;15:1,7,9,14,18,22;
16:3,13,17;28:2;33:7;
34:10,13,19;37:22,24;
38:2,16,21
**Department's (2)**
15:12;38:25
**depends (1)**
39:2
**describing (2)**
44:12,13
**designated (1)**
21:25
**detail (1)**
10:7
**detailed (1)**
44:5
**details (1)**
44:11
**development (1)**
9:19
**developments (1)**
14:9
**devised (1)**
9:4
**difference (1)**
22:16
**different (4)**
35:24;37:7,7;45:11
**difficult (2)**
37:20;41:19
**diligence (2)**
42:20;48:10
**diligent (1)**
30:4
**DIP (1)**
48:20
**directors (1)**
38:15
**discharge (12)**
39:4,6,7;43:6,8;45:3,4,

Case 15-10952-JTD    Doc 668    Filed 07/29/15    Page 56 of 62

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

July 22, 2015

21,25;46:6,8,19
**discharged (1)**
39:3
**discharges (1)**
40:1
**disclosure (31)**
6:11;7:20,20;8:3,5,13;
14:4;16:6;18:5;20:15;
22:21;29:21;30:13;31:4;
34:5;35:4,7,17;38:6;
41:7,8,22;42:7,25;43:17;
44:5,10,23;46:24;47:5;
49:10
**disclosures (2)**
40:5;48:7
**disclosure-type (1)**
18:18
**discovery (1)**
48:13
**discussion (3)**
42:20;47:9,11
**discussions (1)**
14:10
**dispute (2)**
26:4;48:13
**disputed (3)**
11:22;12:8;44:25
**dissolute (1)**
29:11
**dissolution (1)**
27:19
**dissolve (1)**
45:7
**dissolved (2)**
27:22;29:11
**dissolving (1)**
46:21
**distributed (2)**
9:25;10:1
**distribution (34)**
9:16,17,21;10:5;11:9,
16;12:23;13:25;15:8,10,
16,19,22,23;22:1;23:8;
24:3,5,10,18,21;25:1,3,6,
9;29:1,6;31:18;35:10;
38:17;44:14;45:9,17;
46:10
**distributions (3)**
8:18;10:4;45:13
**doable (1)**
33:11
**docket (1)**
18:13
**document (5)**
17:15;18:17,19;28:19;
35:17
**dollar (2)**
15:15;31:16
**dollars (18)**
9:12,16;12:10,17,20;
13:17,20,22;15:10,19,
24;25:5;32:5;35:21;
39:8,16,22,24

**done (2)**
48:11;49:10
**down (1)**
15:16
**downfall (1)**
37:25
**drafted (1)**
24:10
**drew (1)**
19:20
**driving (1)**
32:25
**due (2)**
28:23;40:20
**duly (1)**
30:17
**during (2)**
31:14;41:14
**duties (1)**
24:5

**E**

**earlier (2)**
6:14;48:14
**echo (1)**
30:2
**economic (1)**
15:11
**Education (16)**
9:9;12:21;14:11;
15:22;16:13;21:14,17,
18;28:2;33:7;34:10,13,
19;38:3,16,21
**Education's (2)**
15:7,9
**effect (1)**
27:21
**effective (10)**
10:1;11:14,20;12:1;
22:12;26:1;27:22;44:17;
45:7;46:21
**effectively (1)**
45:21
**effort (2)**
28:13;34:24
**efforts (1)**
28:19
**either (2)**
17:14;28:5
**eliminated (2)**
15:21;38:8
**else (5)**
7:13;15:15;26:5,10;
50:4
**e-mail (1)**
17:20
**e-mailed (1)**
17:10
**embodied (1)**
8:13
**emerge (1)**
45:25

**employees (1)**
12:15
**encountered (1)**
46:22
**encourage (3)**
19:12;30:18;31:4
**encouraged (1)**
19:7
**end (4)**
19:18;25:17;31:15;
49:18
**endured (1)**
32:3
**enjoin (1)**
25:19
**enough (2)**
41:24;48:6
**entered (1)**
6:21
**entire (1)**
43:10
**entitled (1)**
43:8
**entity (3)**
45:23;46:1,8
**entry (1)**
7:1
**equate (1)**
46:19
**equitable (1)**
45:17
**equity (3)**
21:7,8,10
**escrow (3)**
9:14;10:2;23:23;24:3
**ESKANDARI (1)**
5:14
**ESQ (10)**
4:4,5,10,15,16,21;5:4,
9,14,19
**Essentially (5)**
20:16;24:25;25:5,18;
35:20
**estate (5)**
10:14;29:2;31:24;
44:6,7
**estates (3)**
10:7,10;31:19
**estim (1)**
39:14
**estimate (1)**
35:11
**estimated (2)**
31:15;39:15
**estimates (1)**
32:9
**et (1)**
28:12
**even (3)**
17:6;32:13;49:22
**evening (1)**
34:16
**event (1)**

32:10
**everyone (3)**
6:4;14:24;15:15
**evidentiary (1)**
44:24
**exactly (1)**
38:2
**example (4)**
9:9;15:14;29:4;36:2
**excepted (1)**
25:20
**exchange (1)**
17:16
**excluded (1)**
13:12;24:4
**Excluding (1)**
13:2
**exclusive (5)**
26:6;27:6,8,10;49:4
**exculpation (1)**
10:13
**excuse (3)**
39:14;42:21;48:4
**Exhibit (1)**
10:8
**exist (4)**
9:23;42:8;46:4,5
**expect (3)**
36:16;46:25;49:16
**expedite (1)**
14:24
**expedited (1)**
31:11
**expense (4)**
11:19;14:25;33:9,23
**experience (1)**
37:18
**expiration (1)**
32:1
**expires (1)**
48:23
**expressed (1)**
27:12
**extended (3)**
31:25;41:18;47:9
**extent (5)**
11:13;25:2,4;30:12;
33:18;46:23
**extremely (1)**
41:19

**F**

**face (2)**
37:5;49:19
**faced (1)**
45:19
**fact (8)**
8:4;16:2;26:13;31:13;
35:6;42:14;45:5;48:16
**fair (2)**
45:13,17
**fairly (4)**

14:12;16:17;31:10;
34:14
**faith (2)**
8:7;25:9
**far (2)**
35:22;36:21
**fashioned (1)**
47:1
**fault (1)**
37:25
**favor (3)**
19:7,13;23:17
**fear (1)**
24:21
**feel (1)**
38:1
**feels (1)**
38:3
**few (2)**
17:10;44:19
**fiduciaries (1)**
10:14
**fifteen (3)**
12:17;13:6,7
**fifty-fifty (1)**
13:18
**figure (1)**
36:3
**file (1)**
8:3
**filed (12)**
6:13;8:14;9:10;14:5;
17:18,19;18:13,24;
34:15;35:1,2;49:14
**filing (3)**
8:4;15:15;35:3
**filter (1)**
20:23
**final (6)**
7:18;25:1;28:18;32:1;
41:21;48:20
**finally (1)**
21:3
**find (1)**
41:19
**fine (2)**
39:25;47:7
**fine-tuning (1)**
33:6
**Finger (3)**
6:8;7:24;18:8
**finish (1)**
10:19
**first (10)**
6:24;8:13;10:5;11:16;
14:13;17:24;19:1;29:8;
35:3;41:5
**five (4)**
9:16;13:20,20;15:19
**fixed (1)**
15:13
**fluid (1)**
14:2

Case 15-10952-JTD    Doc 668    Filed 07/29/15    Page 57 of 62
CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

July 22, 2015

**folks (1)**
34:23
**follow (1)**
17:14
**Following (5)**
12:7,16;13:9,22;16:21
**forget (2)**
35:10;39:5
**form (1)**
7:7
**formal (1)**
40:19
**forth (2)**
20:7,17
**forty (2)**
12:24;13:7
**forty-five (2)**
15:10;39:22
**forward (6)**
6:25;16:15;26:1;
28:20;30:16;45:23
**forwarded (2)**
42:7;43:6
**found (1)**
46:16
**FOX (2)**
34:2,3
**frame (1)**
48:15
**framework (1)**
14:15
**frankly (1)**
27:10
**free (1)**
48:8
**Friday (1)**
49:15
**fruition (1)**
28:15
**full (2)**
23:7;24:13
**fully (3)**
11:14;15:21;34:20
**fund (1)**
33:22
**Funding (2)**
5:3;44:13
**funds (4)**
12:8;23:24;24:4;44:17
**further (12)**
16:5;18:9;22:24;31:1;
33:19,20;40:5,7;41:12;
43:19;44:21;49:13

**G**

**GAUTIER (4)**
4:4;29:25;30:1;33:11
**geared (1)**
35:25
**GEDDES (1)**
5:2
**GENERAL (9)**

5:7;10:22;12:20,25;
13:11;14:1;39:9,15;
44:19
**Generally (1)**
27:5
**generals (1)**
9:10
**given (8)**
9:1;14:2;31:9,18;
33:21;43:17;44:8;48:14
**gives (2)**
25:2;27:13
**glass (1)**
32:15
**global (1)**
8:11
**Good (14)**
6:5,6,7;7:23;8:6;18:7;
25:9;28:10;29:25;32:16,
21;34:9;40:11;41:25
**governing (1)**
27:9
**government (4)**
12:21;16:1;21:14,18
**governmental (3)**
9:7,8;21:17
**governs (1)**
26:14
**grant (2)**
23:24;24:4
**greater (1)**
35:22
**greatly (1)**
28:13
**grouped (1)**
20:17
**guess (6)**
14:9;21:1;33:18;
35:20;37:15;47:22
**GUMPORT (1)**
4:16

**H**

**HAGLE (8)**
4:15;22:13,13;31:7,8;
32:11,13,17
**half-full (1)**
32:16
**hand (1)**
17:11
**handed (1)**
18:21
**happen (3)**
15:4;16:14;49:22
**hard (3)**
30:4;32:25;33:1
**head (1)**
39:5
**heading (1)**
28:15
**heads (1)**
47:1

**Heald (1)**
39:25
**hear (5)**
7:15;14:20;16:4;
33:25;43:24
**heard (4)**
7:13;16:7;43:23;48:6
**hearing (10)**
7:2,4;16:7;17:15;
22:20;33:21;41:16,22;
50:2,8
**history (1)**
37:5
**holder (2)**
20:4,19
**holders (2)**
19:7,13
**holding (2)**
30:13,13
**Hon (1)**
10:23
**Honor (119)**
6:7,13,24;7:11,18,23;
8:1,6,15;9:4;10:3,12,23;
11:12,17;12:16;13:9,18;
14:2,6,9;15:6;16:5,11,
15,16,25;17:1,4,8,9,11;
18:1,3,7,9,14,16,19,23;
19:1,17,25;21:6,13,20;
22:5,13,18,23;23:3,9,15,
20,22;24:7,8,15,17,22,
23;25:7,15,24;26:23;
27:2,15,17,17,24,25;
28:8,10,15,18;29:16,18,
25;31:7;32:18;33:20;
34:2,9,10,22,25;35:13,
18;36:6,15,18,19,23;
37:13,19;38:11,20;39:5,
12,21;40:8,11;43:20;
44:2;45:1,10,22;46:9,20;
47:3,7;48:17,19;49:5,9,
11;50:3,6,9
**Honor's (1)**
23:10
**hope (3)**
11:22;31:17;35:15
**hopeful (1)**
16:4
**hopefully (1)**
33:7
**hoping (1)**
23:18
**hour (1)**
29:19
**hours (1)**
29:19
**house (1)**
45:16
**Hundreds (1)**
35:22

**I**

**ideally (1)**
49:12
**identified (2)**
10:3;24:20
**immediately (2)**
14:17;27:22
**implementation (1)**
46:10
**important (1)**
15:11
**Inc (1)**
28:12
**inclined (1)**
46:25
**include (2)**
19:11;21:8
**included (1)**
11:1
**includes (2)**
44:14,15
**including (4)**
12:13;13:3;33:11;49:1
**inclusive (1)**
39:16
**inform (1)**
35:7
**informal (1)**
34:4
**information (3)**
37:17;48:11,25
**informed (1)**
19:8
**inherent (1)**
31:20
**initially (2)**
19:5;32:4
**initiated (1)**
26:4
**injunction (15)**
25:16,17;43:4,6,6,13;
45:2,3,8,10,14,20;46:1,9,
11
**instance (1)**
37:22
**insufficient (1)**
40:19
**intended (2)**
21:15;25:22
**intending (1)**
8:2
**interest (2)**
21:9,10
**interested (1)**
8:23
**interests (2)**
21:7,8
**interruption (1)**
17:3
**into (8)**
9:5,12,20,23;10:6;
20:9;43:10;47:5
**introduction (1)**
19:4

**injunction (2)**
45:24;46:19
**investigation (2)**
48:21,23
**involved (2)**
9:19;19:9
**involvement (1)**
48:1
**issue (13)**
29:14,21,21,23;36:25;
37:1;44:4,22;45:19;
46:23;48:15,16;49:4
**issues (6)**
8:20;34:7,17,21;
49:19,25
**item (3)**
6:24,25;7:19

**J**

**Jeffrey (1)**
28:10
**Jenifer (1)**
22:13
**JENNIFER (2)**
4:15;31:8
**JEREMY (1)**
4:21
**JESSICA (1)**
5:19
**job (1)**
44:12
**John (1)**
34:9
**jointly (1)**
24:18
**July (2)**
8:4;50:2
**June (1)**
8:1
**jurisdiction (7)**
25:25;26:6,12,15,16;
43:3;49:4
**jurisdictions (2)**
9:11;45:12
**JUSTICE (1)**
5:12
**justification (3)**
44:23;47:18,19
**justify (1)**
25:6

**K**

**KAPLAN (2)**
4:2;30:1
**KATONA (1)**
4:10
**KATTEN (1)**
5:17
**keep (1)**
35:14
**key (1)**

8:7

**Kind (3)**
22:15;36:20;48:13

**knowing (1)**
15:12

**known (1)**
43:18

**Kresse (23)**
34:9,9;35:18;36:6,9,
11,13,15,18,21,23,25;
37:3,10,13,19;38:20,24;
39:2,12,21;40:8,10

## L

**language (17)**
19:5,11,14;20:2,6,9,
16;21:7,16,21;24:24;
25:8;26:13;27:20;45:2,
6;47:1

**last (10)**
7:2;8:1;19:8;23:19;
24:1;27:18;29:5,19;
30:9;45:15

**late (3)**
19:8;34:14,16

**late-breaking (1)**
14:9

**later (1)**
48:15

**law (1)**
26:14;27:9;37:4,4

**lawsuits (3)**
9:10;26:9,18

**lawyer (1)**
32:14

**Layton (4)**
6:8;7:24;18:8;20:23

**leading (1)**
34:24

**leases (4)**
7:1,3,6,9

**least (6)**
8:12;14:25;18:4;32:5;
37:18;38:4

**leave (1)**
50:1

**led (1)**
8:11

**left (1)**
29:23

**legal (2)**
29:1,8

**legally (2)**
26:2;27:7

**legislative (1)**
37:5

**LEIGH-ANNE (1)**
5:4

**lender (3)**
10:1;44:19;48:1

**lenders (23)**
8:9,24;10:16;12:2,9,

22,23;13:7;14:1,14;22:9,
25;31:13;38:12,13;42:6,
9,15;44:4,6;47:21;
48:23;49:2

**lenders' (6)**
12:24;22:10,12;23:1,
22;39:16

**lender's (1)**
12:18

**length (1)**
47:25

**less (1)**
25:5

**level (1)**
21:9

**levied (1)**
39:25

**liabilities (1)**
8:17

**light (4)**
27:9,11;32:8;42:1

**likewise (1)**
38:2

**limited (2)**
10:12;16:17

**line (2)**
14:3;24:1

**liquid (1)**
43:9

**liquidated (1)**
39:23

**liquidating (6)**
9:1;26:19;45:5,18;
46:12,20

**liquidation (2)**
10:8;45:15

**liquidity (1)**
31:12

**litigate (1)**
15:16

**litigation (4)**
11:21,23;15:14;26:19

**little (4)**
22:20;24:25;32:9;
49:23

**LLC (2)**
5:3,18

**LLP (4)**
4:2,13,19;5:17

**loans (1)**
39:3

**Long (2)**
5:18;26:20

**look (2)**
11:3;49:21

**looking (3)**
17:24;32:15;43:9

**looks (2)**
28:14;47:24

**LORIE (1)**
4:5

**lost (2)**
45:14,18

**lot (4)**
22:18;30:2;38:1;46:18

## M

**magnitude (1)**
38:25

**maintain (3)**
12:13;27:13,15

**major (2)**
41:5;49:25

**makes (1)**
28:1

**making (2)**
25:6;44:24

**managed (1)**
48:1

**manner (1)**
29:15

**many (1)**
39:2

**Mark (1)**
7:24

**Massachusetts (4)**
40:16,17,23;43:22

**material (2)**
14:19;18:19

**matter (6)**
7:14,19;16:8,8;36:4;
43:1

**matters (1)**
26:1

**May (23)**
6:16,17;7:10;14:16;
16:14,14;18:9,10;19:11,
12;21:5;22:20;24:25;
30:21;31:7;34:2;40:25;
41:2;42:8;47:14,17;
48:20;49:19

**maybe (3)**
16:12;20:23;39:18

**mean (2)**
27:10;40:6

**meaningful (1)**
30:6

**means (3)**
20:14;27:12;31:5

**meant (1)**
13:11

**mechanism (1)**
45:13

**mechanisms (2)**
44:13;45:9

**member (3)**
21:23,24;22:1

**Merchant (26)**
14:5;17:7,11,16;18:7,
8,14,16,23;19:1,17;
20:12,13;21:5,6,13;22:5,
17;23:3,12,15;24:17;
26:23,25;27:17,24

**Merchant's (1)**
16:22

**meritorious (1)**
38:18

**MICKELSEN (1)**
5:19

**might (3)**
15:4;37:23;49:16

**Mike (1)**
18:7

**million (17)**
9:12,16;12:10,17,19;
13:6,17,20;15:10,19,24;
31:16;32:5;35:21;39:16,
22,24

**millions (2)**
13:22;35:22

**mind (1)**
44:20

**minute (1)**
23:11

**minutes (1)**
17:10

**misread (1)**
38:10

**missing (1)**
22:14

**modifications (5)**
14:21;16:22;17:7;
30:8,9

**modified (6)**
8:15;14:22;16:13;
21:22;23:22;37:4

**modifies (1)**
27:7

**modify (2)**
15:1;34:18

**moment (5)**
10:18;14:6;34:1;
39:21;41:17

**Monday (10)**
14:16;16:7,9;33:15;
34:16;35:15;41:21,24;
48:16;50:2

**monetary (1)**
16:2

**money (3)**
13:23;31:23;44:14

**monies (1)**
12:8

**month (1)**
32:3

**more (6)**
15:17;18:19;30:12;
33:5;37:16;49:23

**morning (3)**
6:9;30:3;33:4

**most (4)**
18:16,22;31:18;49:25

**motion (2)**
7:1,5

**motions (1)**
6:10

**mounting (1)**
40:1

**move (6)**
15:6;16:15;30:5;42:1;
45:23;48:5

**moved (1)**
21:16

**movement (1)**
30:5

**moving (1)**
28:20

**much (4)**
27:11;38:2;50:3,7

**MUCHIN (1)**
5:17

## N

**name (1)**
44:19

**nature (4)**
14:2;31:18;42:4;48:6

**need (3)**
31:25;43:10;50:4

**needed (1)**
14:13

**needing (1)**
49:18

**needs (3)**
27:8,8;46:12

**negotiations (8)**
8:7,11;12:22;14:3,10,
12;19:9;31:1

**net (1)**
13:6

**New (3)**
23:24;24:4;45:23

**news (1)**
14:23

**next (20)**
8:3;12:8,17;13:6,17,
20,20;21:19;22:5;23:9,
20;24:8,15,22;25:7,15,
24;30:25;35:14;42:1

**nice (1)**
44:12

**NICHOLAS (1)**
5:9

**Nick (4)**
17:1;20:9;27:2;40:12

**night (3)**
19:8;23:19;49:22

**ninety (1)**
12:19

**ninety-five (1)**
12:19

**nits (2)**
22:20;24:25

**nonmonetary (1)**
25:20

**normally (1)**
46:14

**note (2)**
6:20;38:14

**noted (2)**

Case 15-10952-JTD    Doc 668    Filed 07/29/15    Page 59 of 62

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)                                                      July 22, 2015

29:13;30:17
**notice (2)**
  49:19,23
**notwithstanding (1)**
  25:18
**November (1)**
  15:14
**number (7)**
  7:19;15:17;19:19;
  20:1;21:7,13,21
**numbered (1)**
  19:3
**numbers (1)**
  39:6

**O**

**object (3)**
  17:4;27:5;30:23
**objection (22)**
  7:8;16:19;27:14;35:1,
  2,3,6;36:12,14;37:14;
  40:18,19,20;41:5;42:2;
  43:5,10;44:3;45:2;
  46:17;47:25;48:6
**objections (12)**
  7:8;16:17,21;18:5;
  19:19;25:22;28:1,3;
  33:19;34:25;42:3;49:8
**objection's (1)**
  37:11
**obtain (1)**
  14:22
**obtaining (2)**
  8:23;43:13
**obviously (1)**
  30:22
**o'clock (1)**
  50:2
**off (2)**
  20:23;39:5
**OFFICE (3)**
  5:7;21:1;25:23
**officers (1)**
  38:15
**official (4)**
  8:10,25;28:6,11
**once (1)**
  14:14
**one (11)**
  6:10;9:4;11:20;16:8;
  18:12;21:23,24;28:21;
  29:13;33:25;38:8
**ongoing (1)**
  40:2
**only (9)**
  6:15,19;8:17;10:6;
  18:21;26:17;28:17;
  40:24;41:9
**operating (2)**
  46:1,7
**operations (1)**
  12:14

**opportunity (6)**
  30:10,11,16;31:2;
  44:11;47:13
**opposed (1)**
  18:17
**optimistic (1)**
  32:9
**opt-out (2)**
  11:4;42:15
**opts (1)**
  11:8
**order (9)**
  6:21;7:1,7,16;26:7;
  32:2;40:4;44:8;48:21
**original (3)**
  8:16;9:22;32:8
**originally (4)**
  8:16;9:21;24:10;32:1
**others (2)**
  17:12;44:8
**otherwise (2)**
  29:9;46:13
**ourselves (1)**
  40:20
**out (24)**
  8:18;9:16;11:8,16;
  12:17,23;13:20,23;15:9,
  20;19:2;21:19;22:6,18;
  23:20;25:7,24;28:21;
  36:3;45:5,13;49:4,5,17
**outstanding (1)**
  28:1
**over (11)**
  7:21;15:20;17:16;
  19:9;25:25;27:7;28:9;
  30:10,25;33:4,4
**overall (1)**
  22:24
**overruled (1)**
  37:11
**oversight (1)**
  21:20,22;24:14
**own (1)**
  27:11

**P**

**PA (1)**
  5:2
**page (27)**
  19:3,3,3,4,17,25;21:6,
  14,20;22:6,23;23:3,10,
  15,21;24:2,8,15,22,22;
  25:8,15,25;27:18;28:24;
  29:12;35:11
**pages (1)**
  41:9
**paid (2)**
  23:7;24:12
**para (1)**
  21:6
**paragraph (6)**
  19:19;23:12,15;24:1,

2;43:9
**part (3)**
  15:11;26:5;37:20
**participate (2)**
  9:15;15:18
**participating (2)**
  9:1;15:23
**particular (4)**
  22:10;28:21;37:17;
  43:7
**particularly (1)**
  30:3
**parties (21)**
  8:12;19:20,24;20:14,
  17;21:25;24:12;26:20;
  28:9;31:20;32:24;33:11;
  37:21;38:1;41:21;48:13;
  49:1,15,18,18,23
**party (2)**
  11:8;38:16
**past (1)**
  31:24
**pause (3)**
  14:8;23:13;41:17
**pay (3)**
  11:14,18;32:23
**payment (5)**
  12:7,14,14;44:16,17
**payments (1)**
  32:20
**PC (1)**
  4:8
**PDF (1)**
  17:10
**people (7)**
  15:3,10;17:2;27:3;
  40:12,18;46:18
**percent (5)**
  12:24,24;13:7,7,11
**perhaps (2)**
  39:20;47:22
**period (4)**
  33:16;36:7;48:21,23
**permissible (2)**
  26:2;27:7
**permitted (1)**
  42:24
**petition (3)**
  10:14;12:12;19:24
**place (2)**
  26:18;30:24
**plaintiffs (1)**
  38:7
**plan (69)**
  8:3,5,13,15,16,17,20;
  9:22;10:11,15;11:10;
  14:4,22,23,24;16:5,13,
  15,17,23;17:3,6;18:18,
  24;19:7,7,10,12,13;20:7,
  10,15,20;22:7;23:17;
  24:20;25:18;26:6;30:5,
  6,14,16,19,22;31:3;
  33:12,14;34:6,12,18;

35:3,17;41:8,8;42:4;
  43:7,8,14,15;44:9;45:4,
  6,9,15,18;46:10,13,21;
  48:24
**plan-related (1)**
  18:17
**please (3)**
  6:3;34:2;41:17
**pleased (2)**
  14:20;28:16
**PM (1)**
  50:11
**podium (2)**
  6:11;7:21
**point (18)**
  11:23;19:2,12;21:19;
  22:6,18;23:20;25:7,24;
  27:10,14;28:17,21;
  31:12;32:19;33:18;
  34:12;44:25
**pointed (1)**
  19:19
**policy (1)**
  36:4;37:1
**POLSINELLI (1)**
  4:8
**position (6)**
  16:12;38:10;42:23;
  43:1,18;46:24
**positive (1)**
  14:10;16:4
**possession (1)**
  9:14
**possible (1)**
  31:4
**possibly (1)**
  30:18
**post- (1)**
  10:13
**post-confirmation (4)**
  26:4,14,18;45:10
**pot (1)**
  8:17
**potential (8)**
  9:2;10:24;14:21;38:7,
  21;39:24;42:8;47:14
**POTTER (1)**
  4:19
**practical (1)**
  40:6
**pre (1)**
  21:25
**pre- (1)**
  19:23
**preclude (1)**
  36:2
**precluded (1)**
  43:13
**precludes (1)**
  35:16
**pre-confirmation (2)**
  26:15;48:12
**preferable (1)**

32:23
**preferent (1)**
  32:23
**premises (1)**
  7:3
**prepared (1)**
  36:9
**pre-petition (17)**
  10:1;19:20;21:25;
  22:8,10,11,25;23:1,22;
  24:11;42:6,8,15;44:3;
  46:3;47:21;48:1
**present (1)**
  6:10
**presentation (1)**
  16:22
**presented (2)**
  7:2;17:4
**pre-trial (1)**
  6:20
**pretty (1)**
  11:12
**previously (1)**
  43:4
**primarily (2)**
  10:2;14:13
**primary (1)**
  14:19
**principle (1)**
  17:5
**prior (3)**
  7:4;11:24;48:24
**priori (1)**
  11:22
**priority (7)**
  8:19;11:15,19,22;
  12:5;32:20;44:7
**privilege (3)**
  29:1,2,8
**Privileges (2)**
  28:24;29:5
**pro (3)**
  8:18;12:23;13:25
**probably (3)**
  26:7;31:15;32:9
**problem (1)**
  20:24
**problematic (1)**
  29:7
**proceed (2)**
  21:5;41:2
**proceeding (1)**
  31:10
**proceedings (2)**
  26:9;50:11
**proceeds (3)**
  11:16,18;15:9
**process (7)**
  9:3;14:23;31:9;34:14;
  40:2,20;47:22
**productive (1)**
  8:7
**professionals (2)**

Case 15-10952-JTD    Doc 668    Filed 07/29/15    Page 60 of 62

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)    July 22, 2015

10:17;12:14
**projected (1)**
　31:24
**properties (1)**
　7:5
**proposal (2)**
　16:3;35:14
**propose (1)**
　16:14
**proposed (3)**
　7:7;10:21;15:1
**propriety (1)**
　49:2
**prosecution (1)**
　38:18
**protection (6)**
　12:2,4,9;24:12;39:20;
　44:17
**provide (5)**
　8:22;37:16;47:4,13;
　48:25
**provided (6)**
　19:5;25:8,9;43:8;
　47:10;48:21
**provides (3)**
　25:18;30:6;43:9
**providing (2)**
　10:16;44:6
**provision (18)**
　10:13;11:6;20:18,20;
　21:16;25:16,17,19;26:6,
　12,21;27:21;29:19;45:3,
　8,24;46:9,11
**provisions (2)**
　26:17;46:11
**purpose (5)**
　26:12;45:8,12,15,17
**purposes (2)**
　25:11;46:24
**pursuant (4)**
　19:21;21:10;25:21;
　29:12
**push (1)**
　35:24
**put (4)**
　15:3;34:18;47:1;48:15

## Q

**quickly (1)**
　31:7

## R

**race (1)**
　45:16
**raised (4)**
　8:21,24;25:22;49:20
**ran (1)**
　26:3
**Randolph (1)**
　34:23
**range (1)**

31:16
**RAPORT (1)**
　5:4
**rata (3)**
　8:18;12:23;13:25
**rather (4)**
　26:10;32:24;48:14,15
**reaching (1)**
　33:7
**read (9)**
　19:16;20:9;26:7;
　28:18;33:12;40:21,21;
　43:10;44:11
**reading (1)**
　20:11
**realization (1)**
　24:6
**realize (1)**
　31:21
**really (8)**
　8:22;9:23;12:11;
　14:24;15:11;42:4;46:9,
　20
**reasonable (2)**
　33:5;46:25
**reasons (1)**
　48:9
**receive (6)**
　11:9;13:19;17:19;
　23:19;29:18;34:14
**received (5)**
　17:17,18;21:3;22:19;
　47:23
**receiving (5)**
　17:15;45:4;46:5,8;
　47:22
**recently (2)**
　14:12;18:22
**reciprocal (1)**
　25:13
**recommend (1)**
　30:18
**recommendation (2)**
　23:17,18
**record (10)**
　7:24;15:3;20:10;28:5,
　17,23;29:13;41:6;43:11;
　44:24
**records (2)**
　25:11,14
**recover (1)**
　31:17
**recoveries (1)**
　44:18
**recovery (2)**
　24:6;25:4
**reduce (3)**
　12:23;14:25;33:16
**reduced (2)**
　22:15;26:15
**reducing (1)**
　33:9
**referred (1)**

22:11
**reflect (4)**
　18:21;19:5;22:19,24
**reflects (1)**
　22:8
**refund (3)**
　9:13;39:23;44:15
**regard (7)**
　29:2,22;40:1;42:5;
　43:3;47:5,8
**regarding (4)**
　35:3;44:3;45:2;49:1
**regards (4)**
　25:14,15;27:19;34:6
**regulations (1)**
　39:3
**reject (2)**
　7:1,6
**rejecting (1)**
　7:3
**relate (1)**
　29:4
**relates (2)**
　22:10;25:25
**release (9)**
　10:15;11:2;20:6,16;
　42:6,15;44:3;47:9;49:2
**released (5)**
　10:10;19:21;47:11,14,
　15
**releasees (6)**
　20:4,4,13,14,18,19
**releases (8)**
　10:12,19,21;19:20,22;
　20:3,3;44:23
**relief (3)**
　8:22;25:20;30:6
**remain (2)**
　28:2;29:7
**remainder (1)**
　33:6
**remaining (6)**
　9:24;23:6;34:25;43:4,
　5;49:7
**remember (1)**
　7:2
**reminding (1)**
　10:25
**rent (1)**
　12:15
**reorganize (1)**
　46:4
**represented (2)**
　8:9;32:18
**request (10)**
　11:1;22:2;23:4,19,25;
　24:9,23;25:12;33:16;
　43:17
**requesting (1)**
　20:21
**requests (1)**
　33:19
**require (4)**

25:11;26:9,21;29:14
**required (1)**
　44:21
**reserv (1)**
　12:7
**reservation (2)**
　12:8;28:5
**reserve (8)**
　9:13;23:6,7;30:22;
　34:6;39:23;41:24;44:16
**resolve (5)**
　11:23;18:4;29:20,22;
　34:16
**resolved (3)**
　28:7;29:14;35:15
**respect (15)**
　7:8;9:2;10:13,16,22;
　31:14,22;33:9;38:11;
　44:2,22,23;45:1;46:2;
　49:3
**respects (1)**
　29:2
**respond (2)**
　28:3;44:1
**response (2)**
　7:15;43:24
**restricts (2)**
　35:19;37:7
**result (2)**
　26:11;45:24
**retained (2)**
　10:17;29:6
**returned (1)**
　23:7
**review (6)**
　14:18;26:21;38:17;
　41:7;48:22;49:15
**reviewed (1)**
　24:24
**reviewing (1)**
　19:10
**revised (6)**
　8:13;16:5;33:14;41:8,
　8;44:10
**revisions (2)**
　49:13,13
**Richards (4)**
　6:8;7:24;18:8;20:23
**right (33)**
　7:22;12:3;13:14;15:5;
　16:24;18:6,15,25;19:16;
　20:22;22:4;27:1,16,23;
　29:17;30:23;31:6;33:12,
　25;34:8;39:21;40:3,7,
　25;41:24;42:3;43:19,21;
　46:15;47:6;49:3,6,10
**rights (1)**
　34:6
**rise (2)**
　6:2;34:3
**risk (2)**
　31:13,20;32:25;33:9
**ROBINS (2)**

4:2;30:1
**rolling (1)**
　7:3
**room (1)**
　33:20
**ROSENMAN (1)**
　5:17
**roughly (1)**
　39:10
**rule (1)**
　27:14
**ruling (2)**
　8:19;47:8
**run (1)**
　29:8
**RYAN (1)**
　4:21

## S

**sale (1)**
　16:8
**same (2)**
　13:25;49:19
**satisfactory (1)**
　29:15
**satisfied (1)**
　34:4
**saying (1)**
　38:9
**schedule (1)**
　48:14
**scheduled (1)**
　6:24
**scheduling (1)**
　6:20
**school (2)**
　39:4,6
**SCHWARTZ (3)**
　28:10,11;33:13
**SCOTT (2)**
　4:4;29:25
**seated (1)**
　6:3
**second (5)**
　6:15;29:11;35:6;
　37:14;45:2
**secondly (1)**
　26:16
**section (11)**
　20:6,15,17;21:10;
　25:21;27:20;28:24;
　29:12;35:5,25;43:12
**secured (4)**
　19:20,24;21:25;24:12
**seed (1)**
　44:14
**seek (1)**
　7:5
**seeking (1)**
　46:7
**seems (4)**
　28:25;38:8,20;49:18

**selected (1)**
24:18
**selecting (1)**
24:21
**send (1)**
17:21
**sending (1)**
21:2
**sense (1)**
28:1
**sent (2)**
14:17;21:1
**sentence (6)**
19:18,22;25:13,17;
29:3,5
**sentences (1)**
29:4
**separate (1)**
31:5
**set (4)**
16:7;20:7,17;48:14
**settlement (1)**
11:24
**shall (8)**
21:8,22;23:7;24:3,5,
11,18;25:19
**SHANTI (1)**
4:10
**short (1)**
36:7
**show (1)**
17:7
**shows (1)**
35:11
**sic (1)**
9:10
**SIDLEY (3)**
4:13;22:14;31:8
**signed (1)**
7:17
**significant (5)**
15:13;17:14;31:20;
38:24;47:25
**similarly (1)**
45:13
**SIMON (1)**
5:19
**simply (14)**
19:5,10,22;20:5;
21:16;22:8;23:5;26:2;
27:18,20;31:23;43:12,
12;45:24
**single (1)**
8:17
**sit (1)**
11:17
**sitting (1)**
34:22
**situated (1)**
45:13
**situation (2)**
33:22;42:22
**sixty (3)**

12:24;13:7,11
**size (1)**
35:19
**small (2)**
35:20;36:1
**sole (1)**
9:22
**solely (2)**
10:13;46:1
**solicitation (2)**
30:13;33:16
**somehow (1)**
46:7
**somewhat (1)**
37:18
**somewhere (3)**
26:5,10;39:15
**soon (1)**
14:17
**sorry (4)**
13:10,15;39:5,12
**sounds (1)**
49:24
**space (2)**
42:25;43:17
**spam (1)**
20:23
**speaks (1)**
45:3
**specifically (1)**
36:1
**spend (1)**
33:6
**split (1)**
13:18
**spot (1)**
20:19
**stand (2)**
36:16;50:8
**standing (1)**
34:22
**standpoint (1)**
49:13
**start (3)**
45:11,23;46:1
**State (14)**
5:8,13;9:9;16:19;17:2;
23:24;24:4;27:3;28:2;
40:12;46:23,24;47:12,25
**stated (3)**
34:13;35:4;43:14
**statement (28)**
6:11;7:20,20;8:3,5,14;
14:4;16:6;18:5;20:15;
22:22;30:14;31:4;34:5;
35:4,7,17;38:6;40:19;
41:7,9;42:13,25;43:17;
44:5,11;46:24;47:5
**States (2)**
34:3,18
**statute (2)**
36:4;37:3
**stay (2)**

15:21;25:20
**STEELE (9)**
6:7,8,13,16,19,24;
7:11,18;18:3
**stepping (1)**
33:1
**stick (1)**
36:16
**still (12)**
11:9;13:23;15:24;
19:10;20:10;38:20,21;
41:24,25;42:5;44:25;
48:7
**stop (2)**
41:19,20
**straightforward (1)**
11:13
**stricken (1)**
27:8
**strike (1)**
23:16
**structure (3)**
8:16;9:4,19
**Student (39)**
4:3,9;5:3;8:9,21,23,
25;9:5,6,7,13,15,18,25;
12:21;13:19;15:7,20,24,
25;16:1;19:6,8;23:16;
25:10,10,12,14;28:6;
30:1,6,15,17,20;31:3;
39:2,22;44:15,15
**students (1)**
19:15
**stuff (1)**
22:21
**subject (7)**
7:5;13:23;15:13;21:9;
24:11;44:24;46:16
**submissions (1)**
40:22
**submit (2)**
16:5,12
**submitted (3)**
22:22;40:18,19
**submitting (1)**
33:14
**subordinate (1)**
32:22
**subordinating (1)**
12:3
**subordination (1)**
21:9
**subsection (1)**
35:19
**substance (3)**
20:7,21;21:15
**substantive (1)**
41:9
**succeed (1)**
29:1
**succinctly (1)**
35:7
**sufficient (8)**

11:13,18,25;41:7;
44:18,22;48:9,10
**suggested (1)**
33:5
**Sunday (1)**
49:22
**supplement (1)**
24:20
**support (3)**
19:12;30:18;35:13
**supported (1)**
19:6
**suppose (2)**
37:15;48:3
**Sure (7)**
22:17;23:12;27:12;
28:22,23;41:6;47:8
**surprised (1)**
32:10
**surrendered (1)**
7:4

**T**

**table (2)**
15:12;35:10
**talk (1)**
50:5
**talked (1)**
35:1
**tangible (1)**
10:6
**tank (1)**
30:14
**taught (1)**
19:16
**telephone (2)**
16:20;41:18
**TELEPHONICALLY (5)**
4:5,16;5:9,14,19
**tells (1)**
48:6
**tempting (1)**
49:16
**ten (2)**
13:17,22
**term (7)**
19:25;20:3,5,13;21:7,
13;27:7
**terms (7)**
11:9;15:2;20:19;30:4;
32:9;33:8;48:20
**Terranova (1)**
7:2
**Therefore (3)**
32:17,25;46:5
**third (4)**
6:13,19;22:1;38:16
**third-parties (1)**
33:22
**Third-party (2)**
10:21;11:2
**thirty (1)**

39:24
**though (1)**
9:16
**thought (3)**
13:10,11;27:25
**three (2)**
7:4,9
**three-person (1)**
21:23
**threw (1)**
36:22
**throughout (3)**
20:20;30:9,9
**tied (2)**
31:19;33:19
**timing (3)**
31:9,22;32:10
**Timothy (1)**
34:2
**today (11)**
6:14,25;7:4;11:17;
17:10;35:2;36:11;41:16;
47:23;49:24;50:5
**together (2)**
17:25;47:1
**tool (1)**
46:9
**top (2)**
19:4;39:5
**toward (3)**
30:5,5;33:14
**tranche (1)**
13:21
**transferred (2)**
29:5;38:17
**treatment (4)**
15:8;22:9;23:1,22
**true (1)**
46:20
**trust (42)**
8:16,22;9:1,5,6,12,15,
17,19,21,22,23,25;10:3,
5,6;11:16;12:18;13:19;
15:7,8,10,16,19,20,22,
23,25,25,25;23:8;24:5,11;
25:12;29:1,6,9,9;31:18;
38:17,18;44:15;45:12
**trustee (10)**
22:1;24:3,18,21;25:3,
9,10,10;34:3;35:24
**trustees (1)**
26:19
**trusts (1)**
13:19
**truth (1)**
43:11
**try (4)**
29:20,22;37:22;49:17
**trying (3)**
34:17;36:3;47:20
**turn (2)**
28:1,9
**tweaking (1)**

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

July 22, 2015

33:6

**twenty (1)**
    41:9
**twenty-five (1)**
    25:5
**twenty-four (1)**
    29:19
**two (6)**
    13:19;14:14;16:21;
    20:1;31:1;34:25
**two- (1)**
    8:15
**two-pot (1)**
    34:18
**two-trust (1)**
    9:4
**type (1)**
    43:13

**U**

**ultimate (2)**
    31:21;39:20
**ultimately (1)**
    33:9
**umber (1)**
    6:25
**unable (1)**
    47:21
**uncertainties (1)**
    9:2
**uncertainty (1)**
    38:1
**unconfirmable (5)**
    30:22;42:4,5;43:7,15
**under (13)**
    10:10;11:9;15:8;33:2,
    15;36:2;37:15,17;39:3;
    41:23;43:12;45:4;48:20
**Understood (1)**
    26:23
**unfair (1)**
    17:5
**unimpaired (1)**
    23:5
**unique (1)**
    37:18
**UNISON (1)**
    6:5
**United (2)**
    34:3,18
**unless (2)**
    30:21;33:22
**unpaid (1)**
    12:4
**unsecured (15)**
    8:10,25;10:22;12:20,
    25;13:11,24;14:1;28:11;
    35:8;39:10,15,19;42:16;
    44:19
**unusual (2)**
    31:10;42:22
**up (15)**

9:16;10:5;13:19,20;
    17:11;22:21;30:13,13;
    31:15,19;33:1,19;36:17;
    48:11;49:18
**upon (3)**
    27:22;45:7;46:21
**USC (1)**
    43:8
**used (2)**
    12:11;26:17
**utilities (1)**
    12:15
**utilize (1)**
    31:2
**utilized (1)**
    15:25

**V**

**validate (1)**
    43:16
**various (2)**
    9:10,11
**version (7)**
    17:11,18,19,21;18:24;
    22:21;34:15
**vest (1)**
    29:3
**view (9)**
    26:11,16,21;27:11;
    29:9;35:25;36:5;37:7;
    47:13
**violates (1)**
    35:4
**visited (1)**
    35:23
**vote (5)**
    19:7,13;23:17;30:19;
    31:3
**voting (2)**
    30:19;39:18

**W**

**wait (1)**
    12:2
**walk (5)**
    6:9;14:5,18;17:11;
    18:18
**wants (2)**
    30:21;46:23
**WARN (2)**
    6:21;11:20
**warrants (1)**
    48:7
**Washington (1)**
    34:23
**waterfall (6)**
    9:16;10:4,18;11:12;
    13:24;15:20
**Watt (1)**
    5:18
**way (6)**

26:8;35:25;36:2,5;
    40:5;43:16
**week (2)**
    30:9;33:6
**weekend (4)**
    30:9;33:4;49:15,17
**weeks (2)**
    34:24;47:20
**welcome (1)**
    19:1
**weren't (1)**
    32:10
**what's (4)**
    20:7;38:25;39:9;47:18
**whatsoever (1)**
    20:3
**Whereupon (1)**
    50:11
**whole (1)**
    45:12
**wind-down (2)**
    12:13;48:2
**wish (3)**
    7:13;32:13;43:22
**within (1)**
    8:3
**without (1)**
    45:14
**wonderful (1)**
    14:23
**word (3)**
    16:4;22:15;27:5
**work (13)**
    16:16;28:22;29:19,21;
    30:4,4;33:2,11,14;45:9,
    21;46:11;49:17
**worked (1)**
    49:24
**working (5)**
    33:1;34:11,16,23;
    35:14
**worth (1)**
    35:12
**written (1)**
    42:4

**Y**

**yesterday (11)**
    8:14;14:5,20;16:23;
    17:13,18,20;18:24;33:4;
    34:15;41:10
**York (2)**
    23:24;24:4

**Z**

**zenith (3)**
    10:2;23:23;24:3