IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | Re: Docket No. 621 |

-----------------------------------------------------------

**DEBTORS' RESPONSE TO THE MOTION FOR AN ORDER ALLOWING
STUDENT COMMITTEE TO FILE A COLLECTIVE PROOF OF CLAIM PURSUANT
TO 11 U.S.C. §§ 105(a), 501, AND 502 AND GRANTING RELATED RELIEF**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby file this response (the "**Response**") to the *Motion for an Order Allowing the Student Committee to File a Collective Proof of Claim Pursuant to 11 U.S.C. §§ 105(a), 501, and 502 and Granting Related Relief* [Docket No. 621] (the "**Motion**"), filed by the Official Committee of Student Creditors (the "**Student Committee**"). In support of this Response, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

By the Motion, the Student Committee seeks authority to file a collective proof of claim, in the amount of $2.5 billion, on behalf of all students that attended the Debtors' colleges but failed to file a proof of claim in advance of the July 20, 2015 general claims bar date (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

"**General Bar Date**"). The Student Committee asserts, among other things, that the requested relief is necessary to preserve the rights of all former students to participate in any collective treatment afforded to students pursuant to the *Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan* [Docket No. 655] (the "**Plan**"). On that basis, the Debtors do not object to the Student Committee's request to file a collective proof of claim, provided that (i) such relief is conditioned on confirmation and consummation of the Plan,[2] and (ii) the rights of the Debtors, their estates or any successor under the Plan to substantively object to the collective proof of claim, if deemed appropriate, are fully preserved.

While the Debtors are not objecting to the relief requested in the Motion (subject to the provisos noted above), the Debtors do take issue with a number of the assertions made by the Student Committee in the Motion. The requested relief is premised upon allegations of misconduct by the Debtors (which the Student Committee asserts caused harm to all former students). As the Court is aware, the Debtors have vigorously (and publicly) contested these allegations and, despite the number and magnitude of the allegations extending over a period of many years, no government agency or plaintiff has established them before a neutral third party or in a court of law.[3] Consistent with the Debtors' focus on students, the Debtors do not object to the Student Committee's efforts to preserve the rights of students to participate in collective relief afforded under the Plan (which may include outreach programs and assistance in seeking a discharge or release of student loan obligations), but the Debtors do take issue with the strongly disputed allegations of misconduct (which have never been adjudicated) serving as the basis for a

---

[2] If the Plan is not confirmed by the Court or if the effective date does not occur for any reason, the Debtors hereby request that the Motion be re-noticed for a hearing date in September 2015 or later so that the relief requested in the Motion can be considered in light of these changed circumstances.

[3] Even if the allegations are true (which they are not), proof of causation and damages - particularly for the tens of thousands of students who obtained employment following receipt of education services with the Debtors' schools - is tenuous at best.

collective $2.5 billion claim against the Debtors' estates. Accordingly, all rights of the Debtors, their estates or any successor thereto to object to the substance of such claim must be fully preserved.

## BACKGROUND

A. **General Background**

1. On May 4, 2015, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). The Debtors are operating their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2. On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**"). Additionally, the U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

3. Corinthian was founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. Corinthian offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, Corinthian operated over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees. It also offered degrees online.

4. Among its acquisitions, in January 2010, Corinthian purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**"). Heald, through its subsidiaries, operated Heald College, a 150-year-old regionally accredited institution with 12 campuses

offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

5.   Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10].

### B.   The Bar Dates

6.   Pursuant to an order [Docket 429] (the "**Bar Date Order**") of the Court, dated June 18, 2015, the Debtors established (i) July 20, 2015 at 5:00 p.m. (Eastern Time) as the General Bar Date for creditors (other than governmental units (as defined under section 101(27) of the Bankruptcy Code)) to file proofs of claim in these chapter 11 cases; and (ii) November 2, 2015 at 5:00 p.m. (Eastern Time) (together with the General Bar Date, the "**Bar Dates**") as the deadline for governmental units (as defined under section 101(27) of the Bankruptcy Code) to file proofs of claim in these chapter 11 cases.

7.   Pursuant to and in accordance with the the Bar Date Order, notice of the Bar Dates and a proof of claim form were sent to over 18,000 students that attended the Debtors' colleges on or after September 27, 2014. Additionally, after working closely with the Student Committee, the Debtors agreed to serve a postcard notice of the Bar Dates on an additional 85,652 students that attended the Debtors' colleges between June 20, 2014[4] and September 27, 2014. In total, the Debtors served notice of the Bar Dates on 150,425 potential creditors

---

[4]   This date is contemporaneous with the Debtors entering into that certain memorandum of understanding (the "**MOU**") with the Department of Education. The MOU established a framework for a transaction plan that would later be memorialized in an operating agreement. The transition plan (as contained in the subsequent operating agreement) provided for, among other things, the Debtors' agreement to "teach out" twelve (12) schools and to pursue the sale of their remaining schools. Accordingly, notice of the Bar Dates was intended to reach any and all students that could have been harmed by the sudden closure of the Debtors' campus locations.

(inclusive of students) of the Debtors' estates. In addition to the notice discussed above, the Debtors published notice of the Bar Dates in (i) *The Los Angeles Times*, (ii) *The San Francisco Chronical*, (iii) *The Sacramento Bee* and (iv) the national edition of *USA Today*.

8. As of the filing of this Response, 3,786 proofs of claim have been filed in these chapter 11 cases, including 2,412 proofs of claim filed by former students.

C. **Combined Plan and Disclosure Statement**

9. On July 1, 2015, the Debtors filed their combined disclosure statement (the "**Disclosure Statement**") and Plan, which was subsequently amended on July 24, 2015 and July 27, 2015 [Docket Nos. 520, 646 ad 655, respectively]. On July 27, 2015, the Court entered an order [Docket No. 658] (the "**Solicitation Procedures Order**") approving the Disclosure Statement and procedures regarding the solicitation and tabulation of votes in connection with the Plan. Pursuant to the Solicitation Procedures Order, the deadline for voting to accept or reject the Plan is August 21, 2015, and the hearing to consider confirmation of the Plan has been set for August 26 2015.

10. The Plan is the result of extensive negotiations between the Debtors, the Creditors' Committee, the Student Committee and Bank of America, as Agent to the Prepetition Secured Parties. The Plan contemplates the creation of two separate trusts: (i) the Distribution Trust[5], which, pursuant to the terms of the Plan and the Distribution Trust Agreement, shall be for the benefit of all Holders of Allowed Claims other than Student Claims and Government Education Claims; and (ii) the Student Trust, which, pursuant to the terms of the Plan and the Student Trust Agreement, shall be for the benefit of Allowed Student Claims and Allowed Government Education Claims. Significantly, the Combined Plan and Disclosure Statement

---

[5] Capitalized terms not otherwise defined in this Response shall have the meanings given to them in the Plan.

provides for the Prepetition Secured Parties to release any liens they may otherwise have upon, and forgo any recoveries from, the Student Refund Reserve, thereby enabling the Debtors to transfer their rights and interests in those funds (in the approximate amount of $4.3 million) to the Student Trust, which, subject to the terms of the Student Trust Agreement, may result in the implementation of one or more programs for the benefit of holders of Allowed Student Claims (more specifically defined in the Plan as the "Student Claims Benefits Programs").

## DEBTORS' RESPONSE

### A. The Debtors Consent to the Filing of a Collective Proof of Claim Solely to Preserve the Rights of Students to Participate in Any Program Implemented Pursuant to the Plan.

11. As discussed above, the Debtors have made a good faith effort (including working with the Student Committee) to provide actual and publication notice of the Bar Dates to all potential creditors of the Debtors' estates. The Debtors submit that such notice was quite expansive and was carried out in accordance with the Bar Date Order. That said, the Debtors do not object to the Student Committee's request to file a collective proof of claim to the extent such relief is conditioned on confirmation and consummation of the Plan (thereby preserving the rights of all former students to participate in any Student Claims Benefit Program implemented in accordance with the terms of the Plan).[6] While the exact programs to be afforded will be determined by the Student Trustee (with oversight from the Managing Board) in accordance with the Student Trust Agreement, the Debtors believe that the Plan affords the Student Trustee with a mechanism for providing student creditors that were harmed by the sudden shut down of the Debtors' schools with immediate and impactful benefits that could include outreach programs

---

[6] As noted above, the Plan is the product of extensive negotiations between the Debtors, the Creditors' Committee, the Student Committee and the prepetition lenders. The Student Committee expressly supports the Plan and recently issued a letter to the Holders of Class 5 Student Claims and Government Education Claims urging their acceptance of the Plan.

and assistance for students in seeking discharges or releases of their student loan obligations. However, in the event that the Plan is not confirmed or is not consummated for any reason, the Debtors request that the Motion be re-noticed for a hearing date in September 2015 or later so that the relief requested in the Motion can be considered in light of these changed circumstances.[7]

12.     Additionally, all rights of the Debtors, their estates or any successor under the Plan to substantively object to the collective proof of claim, if deemed appropriate, should be fully preserved.  As noted herein, the Debtors vigorously dispute any claim premised on allegations of misconduct by the Debtors or their employees.  Accordingly, the Debtors and their estates need to retain the right to object to the substance of such claim at a later date.

### B.     Response to Allegations of Misconduct Relied Upon in Support of Motion

13.     In support of their Motion, the Student Committee again relies on numerous allegations contained in various politically charged reports and documents that have never been proven or adjudicated.  As the Court is aware, the Debtors have vigorously contested each of these allegations and, despite the number and magnitude of the allegations extending over a period of many years, no government agency or plaintiff has established them before a neutral third party or in a court of law.[8]  A summary of the Debtors' responses to the various

---

[7]     For example, in any context of these chapter 11 cases other than the one in which the Plan is confirmed and is later consummated, the Debtors would raise numerous objections to the Motion, including (a) the Student Committee's allegation that notice of the Bar Dates was not sufficient, and (b) the proposed asserted amount of $2.5 billion for the collective proof of claim, which amount (i) appears arbitrary, (ii) is not supported by any explanation in the Motion, (iii) is disputed by the Debtors (and, as such, should at best be filed in an unliquidated amount), and (iv) could be used to improperly affect the voting either in favor of or in opposition to an alternative plan.

[8]     Not only do the allegations against Debtors remain unproven, their contingent nature is highlighted in a recent preliminary injunction order in a strikingly similar case which found in favor of the school and against the government on all counts.  *See State of Colorado, et al. v. Center of Excellence in Higher Education, et al.,* Order on Preliminary Injunction (D. Colo., July 16, 2015) (finding no threat of future harm regarding discontinued wage advertisements [which the Debtors never made] and no likelihood of

allegations is set forth in the *Debtors' Response to the Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant to 11 U.S.C. §§ 362(a) and 105(a) and Granting Related Relief* [Docket No. 465] (the "**Stay Relief Response**").  Rather than burden the Court with a retort to the various allegations in this Response, the Debtors incorporate by reference the Stay Relief Response as if fully set forth herein.

---

(continued…)

success on the merits on claims regarding enrollment process and institutional lending).  A copy of the Preliminary Injunction Order is attached hereto as Exhibit A.

8

RLF1 12744311v.2

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court take into consideration the Debtors' Response in granting any relief requested by the Student Committee in connection with the Motion.

Dated: August 7, 2015
       Wilmington, Delaware

                                        Mark D. Collins (No. 2981)
                                      Michael J. Merchant (No. 3854)
                                      Marisa A. Terranova (No. 5396)
                                      Amanda R. Steele (No. 5530)
                                      RICHARDS, LAYTON & FINGER, P.A.
                                      920 N. King Street
                                      Wilmington, Delaware 19801
                                      Telephone:  302-651-7700
                                      Facsimile:  302-651-7701
                                      Email: collins@rlf.com
                                                 merchant@rlf.com
                                                 terranova@rlf.com
                                                 steele@rlf.com

                                      *Attorneys for the Debtors and Debtors in Possession*