**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: § | |
| § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] § | |
| § | Case No. 15-10952 (KJC) |
| § | |
| § | Jointly Administered |
| Debtors. § | |
| § | **Hearing Date: Aug. 26, 2015 @ 1:00 p.m. (EDT)** |
| § | **Obj. Deadline: Aug. 19, 2015 @ 4:00 p.m. (EDT)** |

---

### DEBTORS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW AMERICAN INSURANCE GROUP TO REIMBURSE, PAY AND/OR ADVANCE CERTAIN DEFENSE COSTS UNDER INSURANCE POLICIES

Corinthian Colleges, Inc. ("**Corinthian**") and certain of its affiliates in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), hereby move this Court for the entry of an order pursuant to section 362 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), (i) granting relief from the automatic stay, to the extent applicable, to allow the Debtors' third party insurance provider, American Insurance Group and its affiliates or subsidiaries (collectively, "**AIG**"), to reimburse the Debtors for covered defense costs pursuant to the E&O Policy (as defined below) incurred in connection with the E&O Covered Actions (as defined below), (ii) granting relief from the automatic stay, to the extent applicable, to allow AIG to pay and/or advance covered defense costs pursuant to the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

RLF1 12741700v.2

EPL Policies (as defined below) that have or may be incurred by the former and current directors, officers, and employees of the Debtors (collectively, the "**Individual Insureds**") in connection with the various EPL Covered Actions (as defined below), and (iii) granting certain related relief. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[2]

## BACKGROUND

**A.    General Background**

2. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3. On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**"). Additionally, the U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

4. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of*

---

[2]    Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

2

*William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10].

**B.     The E&O Policy and E&O Covered Actions**

5.     The Debtors have an Errors and Omissions (Miscellaneous Professional Liability) Insurance Policy No. 01-571-57-87 (the "**E&O Policy**") for the policy year February 15, 2009 through March 31, 2010 from American International Specialty Lines Insurance Company, a member company of AIG.  Pursuant to the E&O Policy, coverage is provided to the Debtors for any wrongful act in rendering or failing to render professional services for others during the policy period, but only if such wrongful act first occurs on or after the retroactive date (February 15, 2005) and prior to the end of the policy period (March 31, 2010).  The E&O Policy contains a policy limit of $5,000,000 for each wrongful act and in the aggregate.  Further, the E&O Policy contains a self-insured retention amount of $250,000 for each wrongful act.  Importantly, the E&O Policy specifically states that the bankruptcy or insolvency of the Debtors does not relieve AIG of its obligations under the policy.  It is the Debtors' understanding that approximately $505,000 remains under the policy limit.

6.     Prior to the Petition Date, various lawsuits or demands for arbitration, including certain class actions, were filed against the Debtors alleging various misrepresentations during the enrollment process at the Debtors' educational institutions (collectively, the "**E&O Covered Actions**").  *See Muniz, et al. v. Corinthian Colleges, Inc. et al.*, No. SACV11-0025 CJC (MLGx) filed in the United States District Court in the Central District of California; *Ferguson, et al. v. Corinthian Colleges, Inc., et al.*, Case No.  SACV 11-00127 DOC (AJWx) filed in the United States District Court in the Central District of California; *Austin v. Corinthian Colleges, Inc.*, AAA Case No. 334200003513; *Montgomery, et al. v. Corinthian Colleges, Inc.,*

*et al.*, Case No. 10 CH 50281 filed in the Circuit Court of Cook County, Illinois which was subsequently removed to the United States District Court in the Northern District of Illinois; *Arevalo, et al. v. Corinthian Schools, Inc., et al.* AAA Case No. 72 420 E 00284 11 Mavi; *Cordoba v. Everest College,* Case No. 13 001900 in the County Court of the Thirteenth Judicial Circuit, in and for Hillsborough Country, Florida Circuit Civil Division.  The Debtors are generally entitled to payment of costs and expenses, in excess of the retention, incurred in connection with the E&O Covered Actions.  Prior to the Petition Date, the Debtors incurred certain defense costs and expenses in connection with the E&O Covered Actions that they submitted to AIG for reimbursement.  To date, AIG has not reimbursed the Debtors for these costs and expenses.  AIG has expressed a willingness to reimburse the Debtors for the previously incurred costs and expenses in connection with the E&O Covered Actions, but only upon entry of an order that clarifies that the automatic stay does not restrict AIG's ability to reimburse the Debtors pursuant to the E&O Policy.

**B.    The EPL Policies and EPL Covered Actions**

7.    The Debtors also have certain Employment Practices Liability Insurance Policies (collectively, the "**EPL Policies**") from Chartis, Inc., an affiliate of AIG.[3]  Each EPL Policy provides coverage to Individual Insureds for acts they allegedly committed in their capacities as directors, officers or employees of the Debtors, including but not limited to, wrongful dismissal, discharge or termination, harassment, discrimination, and employment related misrepresentations during the periods March 31, 2008 through March 31, 2015.[4]  The EPL Policies contain a policy limit of $5,000,000.  The EPL Policies also contain a self-insured

---

[3]    The relevant EPL Policy numbers and related policy periods are as follows: 3642286 (2008-2009), 01-754-61-21 (2009-2010), 01-691-54-38 (2010-2011), 01-674-41-09 (2011-2012), 01-710-72-79 (2012-2013), 01-879-30-63 (2013-2014), 02-793-76-87 (2014-2015).

[4]    The terms of the each EPL Policy are generally similar unless noted herein.

retention of $1,000,000 for a Class Action Retention (as defined in the EPL Policies) and $250,000 for a Third-Party Retention (as defined in the EPL Policies) and for all other Loss to which a retention applies. The EPL Policies also provide that if the Debtors are unable to pay the applicable retention due to a bankruptcy then the Insurer shall commence advancing cost and expenses within the retention, provided however that (a) in no event shall any such advancement by AIG relieve the Debtors of any duty it may have to provide advancement, payment or indemnification to any Individual Insured; and (b) AIG shall be entitled to recover the amount of cost and expenses advanced within the retention from the Debtors pursuant to subrogation provision of the policy. Further, the EPL Policies between 2011 and 2014 contain a bankruptcy and insolvency provision, which provides that in the event of bankruptcy, "the Insurer and each Organization and Individual Insured agree to cooperate in any efforts … to obtain relief for the benefit of the Individual Insureds from any stay or injunction applicable to the distribution of the policy proceeds." *See* 2011-2012 EPL Policy, Clause 11.A.

8. Prior to the Petition Date, several actions alleging violations of employment practices were filed asserting claims against certain of the Debtors and, in some cases, the Individual Insureds (collectively the "**EPL Covered Actions**"). A list of the open EPL Covered Actions, including case number, is attached hereto as Exhibit A. The Individual Insureds named as defendants in the EPL Covered Actions served as officers, directors or employees of the Debtors prior to the Petition Date.

9. The EPL Covered Actions have been stayed against the Debtors as a result of the commencement of these chapter 11 cases, however, some of the EPL Covered Actions against the Individual Insureds have not been stayed and are proceeding. The Individual Insureds have or will incur significant litigation costs related to the EPL Covered Actions. The

Individual Insureds have made a demand on the AIG to advance the defense costs they have or will incur in defending themselves in the EPL Covered Actions and AIG has expressed a willingness to pay ongoing defense costs and expenses to and for the benefit of the Individual Insureds but only upon entry of an order granting AIG relief from the automatic stay to do so. Therefore, the Debtors are seeking advancement and/or payment of the defense costs for the EPL Covered actions pursuant to the EPL Policies.

## RELIEF REQUESTED

10. By this Motion, the Debtors seek entry of an order, substantially in the form of Exhibit B attached hereto, (i) granting relief from the automatic stay, to the extent applicable, to allow AIG to reimburse the Debtors for covered defense costs incurred in connection with the E&O Covered Actions; (ii) granting relief from the automatic stay, to the extent applicable, to allow AIG to pay and/or advance covered defense costs to the Individual Insureds incurred in connection with the EPL Covered Actions;[5] and (iii) granting certain related relief.

## BASIS FOR RELIEF

**A. Cause Exists to Modify the Automatic Stay to Allow Reimbursement of Costs Under the E&O Policy**

11. Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate, as defined in section 541 of the Bankruptcy Code. Section 541(a)(1) of the Bankruptcy

---

[5] The Debtors are not seeking at this time a determination of AIG's obligation to pay any particular expense or claim of the Debtors or the Individual Insureds. The Debtors seek only the entry of an order modifying the automatic stay (as applicable) to allow, AIG's fulfillment of its obligations, whatever they may be, to pay claims and expenses of the Debtors and the Individual Insureds under the terms of the AIG Policies, including amounts incurred both pre- and post-petition. This Motion does not constitute a waiver of the rights of the Debtors, AIG or any of the Individual Insureds in respect of claims made against the Debtors or the Individual Insureds.

Code provides that property of the estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The proceeds of the E&O Policy are property of the Debtors' estates because the Debtors are one of the named insureds under the E&O Policy.[6] *See e.g. Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004) (noting that whether proceeds of a liability insurance policy are property of the estate depends on many factors, including on who is covered by the policy). Accordingly, the Debtors do not believe that relief from the automatic stay is required to reimburse the Debtors for these costs, however, out of an abundance of caution and at the request of AIG, the Debtors request relief from the automatic stay, to the extent applicable.

12. Cause exists for granting relief from the automatic stay in order to permit AIG to reimburse the Debtors for the costs incurred in connection with the E&O Covered Actions under E&O Policy. The Debtors have incurred the costs at issue and are entitled to the payment of those amounts to them under the terms of the subject policies. If AIG does not reimburse such costs and expenses, the Debtors will lose access to the proceeds of the E&O Policy to which they currently are entitled, and thereby suffer irreparable harm.. As noted above, the Debtors believe that they currently are entitled to a reimbursement of at least $505,000 (the remaining amount under policy limit) in defense costs and expenses in connection with the E&O Covered Actions, and that all of the conditions (if any) for AIG's immediate payment of such amounts to the Debtors have been satisfied. Accordingly, modifying the automatic stay (to the extent applicable) not only will provide the Debtors with the benefit of their bargain but it also will result in significant value being received by the Debtors for the benefit of the Debtors and

---

[6] The named insureds under the E&O Policy also includes the Debtors' past, present or future officer, director, trustee or employee of the Debtors.

7

their estates. Therefore, the Debtors believe cause exists to grant AIG relief from the automatic stay, to the extent applicable.

**B.      The Proceeds of the EPL Policies are not Exclusively Property of the Estate**

13.     With respect to the EPL Policies, the Insured Individuals are entitled to the proceeds of those policies because such proceeds are not property of the Debtors' estates. Although insurance policies are considered property of the estate and covered by the automatic stay provisions of Section 362(a)(3) of the Bankruptcy Code, the proceeds of a policy are evaluated separately from the debtor's interest in the policy itself. *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004); *see also In re Cont'l Airlines*, 203 F.3d 203, 216 (3d Cir. 2000) (stating that the ownership of an insurance policy does not necessarily entail ownership of the proceeds of that policy (citing *First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993))).

14.     In determining whether the proceeds of a liability insurance policy are property of the estate, courts review the "language and scope of the specific policies at issue." *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010). Moreover, the prevailing "question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep the proceeds when the insurer paid on a claim." *In re Pelullo*, No. 98-6181, 1991 WL 773509 (E.D. Pa. Sept. 30, 1999); *see also First Fidelity Bank v. McAteer*, 985 F.2d 114 (3d Cir. 1993) (determining that the estate in bankruptcy only includes property to which a debtor would have a right if the debtor were solvent).

15.     Here, the language and the scope of the EPL Policies permit AIG to make payment and/or advancement of defense costs to the Individual Insureds. In fact, the EPL Policies specifically provide that former and current directors, officers and employees of the

Debtors are Individual Insureds. The defense costs of the Individual Insureds were incurred or will be incurred in connection with EPL Covered Actions and therefore payable with proceeds from the EPL Policies. *See In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (holding that individual insureds maintain a right to use the policies' proceeds to cover their defense and settlement costs in litigation). Moreover, the Debtors do not, nor do they have a right to, receive and keep any insurance proceeds relating to the Individual Insureds' costs associated with the EPL Covered Actions. Accordingly, such proceeds are not property of the estate under section 541 of the Bankruptcy Code and the automatic stay is inapplicable. *See In re Pelullo*, 1999 WL 773509, at *5 (finding that insurance proceeds that the debtor does not have a right to keep are not property of the estate).

C. **Cause Exists to Modify the Automatic Stay to Allow Payment of Defense Costs Under the EPL Policies**

16. Regardless of whether the Debtors' estates have an interest in the proceeds of the EPL Policies, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay, to the extent applicable, to allow the payment of defense costs of the Individual Insureds under the EPL Policies. In addition, it is not uncommon for courts to grant relief to allow payment of defense costs to directors, officers and employees. *In re Allied Digital*, 306 B.R. at 513.

17. Specifically, the Debtors do not have the resources necessary to pay or advance the defense costs. The Debtors are in the process of winding down their estates and working towards confirmation of a plan of liquidation. Accordingly, without payment of their defense costs from the EPL Policies, the Individual Insureds will be unable to conduct a meaningful defense and will suffer irreparable harm. *See id.* at 514 (stating that "[w]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense to

9

the … claims and may suffer substantial and irreparable harm."). On the other hand, modifying the automatic stay will benefit the Debtors' estates. Given the number and complexity of such EPL Covered Actions, if the Individual Insureds cannot obtain adequate representation, it is foreseeable that a finding of wrongdoing or liability against the Individual Insureds may be used to judicially prejudice or prosecute claims against the Debtors. Accordingly, the Debtors believe that sufficient cause exists to modify the automatic stay, to the extent applicable, to allow AIG to pay and/or advance the defense costs of Individual Insureds incurred in connection with the EPL Covered Actions.

## NOTICE

18.     The Debtors will provide notice of this Motion to: (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the Creditors' Committee; (iii) counsel to the Student Committee; (iv) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the Lenders; (v) the Department of Education; (vi) AIG; and (vii) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

## NO PRIOR MOTION

19.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

RLF1 12741700v.2

WHEREFORE, the Debtors respectfully request that this Court enter the order, substantially in the form attached hereto as <u>Exhibit B</u>, (i) granting relief from the automatic stay, to the extent applicable, to allow AIG to reimburse the Debtors for covered defense costs incurred in connection with E&O Covered Actions; (ii) granting relief from the automatic stay, to the extent applicable, to allow AIG to pay and/or advance covered defense costs the Individual Insureds incurred in connection with EPL Covered Actions, and (iii) granting certain related relief.

Dated: August 7, 2015
    Wilmington, Delaware

*/s/ Amanda R. Steele*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
      merchant@rlf.com
      terranova@rlf.com
      steele@rlf.com

Counsel for the Debtors and Debtors in Possession