## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | **Re: Docket No. 638** |

-----------------------------------------------------------------

## DECLARATION OF WILLIAM J. NOLAN
## IN SUPPORT OF SALE OF CERTAIN INTELLECTUAL
## PROPERTY ASSETS TO THOMAS EDUCATION VENTURES, LLC

I, William J. Nolan, declare as follows:

## BACKGROUND

1.      I am a Senior Managing Director in the Corporate Finance/Restructuring practice of FTI Consulting, Inc. ("**FTI**").   I have over twenty years of diverse financial consulting and management experience.  FTI was engaged by Corinthian Colleges, Inc. ("**Corinthian**") and its debtor-subsidiaries (collectively, the "**Debtors**") on May 30, 2014, and on July 1, 2014, I was appointed Chief Restructuring Officer ("**CRO**") by the Debtors' Board of Directors.

2.      I submit this Declaration in support of the Debtors' motion for approval of the sale of certain intellectual property assets (collectively, the "**Heald Assets**") free and clear of all

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

liens, claims and encumbrances (the "**Sale Motion**") [Docket No. 638].[2]  In my capacity as CRO

of the Debtors, I have personal knowledge of the matters set forth in the Sale Motion (or have

gained knowledge of such matters from the Debtors' representatives or retained advisors that

report to me in the ordinary course of my responsibilities).

## THE MARKETING PROCESS

3.      The Debtors commenced the above-captioned cases on May 4, 2015 (the

"**Petition Date**").  After the Petition Date, the Debtors, in consultation with their advisors, began

the process of identifying all potential intellectual property assets of the Debtors that could

generate value for the benefit of the Debtors' and their estates.   The Debtors reviewed the

individual intellectual property assets with their advisors, outside intellectual property brokers

and internal resources to determine potential interest and costs associated with the marketing and

sale of each asset.   Specifically, the Debtors contacted eight (8) firms that specialize in

intellectual property sales and valuation to determine (i) the interest in assisting the Debtors with

the sale of any intellectual property, (ii) if the Debtors had overlooked any areas of potential

intellectual property, and (iii) their views as to the value of the Debtors' intellectual property.

The Debtors had detailed conversations with three (3) of the firms contacted.  These firms did

not uncover any other potential intellectual property and expressed the view that the market for

the intellectual property assets was limited and that, due to the publicity surrounding the

Debtors' closure, the value for the assets was difficult to determine.   Two (2) of the firms

declined to submit offers to assist in the sale of the intellectual property given the size of the

transaction.  One (1) firm submitted an offer to assist the Debtors with the sale process of their

intellectual property.

---

[2]      Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Sale
Motion.

4.      In evaluating whether to engage the firm to assist the Debtors' with the marketing and sale of the intellectual property assets, the Debtors, in consultation with their advisors, considered:  (i) the costs of using an outside firm; (ii) the time it would take for an outside firm to become familiar with the assets; (iii) the limited universe of potential buyers; and (iv) the value of the indications of interest for the assets previously received.  The Debtors ultimately determined that the only offer received by a firm to assist the Debtors with the sale of the intellectual property was disproportionate compared to the anticipated value to be recovered from any transaction.   As a result, the Debtors, in consultation with their advisors, determined that it would be in the best interests of their estates and creditors to utilize internal resources, with the assistance of their advisors, to conduct the sale process of the intellectual property rather than engage an outside firm to assist in the process.  Following the Debtors' decision to use internal resources to market the assets, the Debtors determined that the Heald Assets were likely to generate the most value.  The Debtors then consulted with counsel and advisors to Bank of America, N.A., as Administrative Agent to the prepetition lenders (the "**Administrative Agent**"), and the Official Committee of Unsecured Creditors (the  "**Creditors' Committee**") regarding the process for the sale of the Heald Assets.

5.      The Debtors identified 160 parties as potential purchasers of the Heald Assets (collectively, the "**Interested Parties**").  The Debtors prepared a teaser describing the Heald Assets that was sent to Interested Parties on or about June 24, 2015.  The teaser requested that bids for the Heald Assets be received on or before July 10, 2015.  Six (6) Interested Parties expressed an interest in the Heald Assets.  Two (2) Interested Parties submitted bids for the Heald Assets.  Following receipt of the bids, the Debtors contacted the two (2) bidders with follow-up questions and in an effort to get each bidder to improve their respective bids.  Each

3

bidder subsequently submitted a revised bid reflecting substantial improvements requested by the Debtors.   After carefully reviewing the revised bids, the Debtors, in consultation with their advisors, determined that they should request that each bidder submit their best and final offer for the Heald Assets.  Following the receipt of the best and final offers from each bidder and after careful review and consideration by the Debtors and their advisors, the Debtors determined that Perry Enterprises ("**Perry**") submitted the highest and best bid for the Heald Assets.

6.      On July 21, 2015, the Debtors Heald College, LLC and Corinthian and Perry entered into that certain Purchase Agreement (the "**Perry Purchase Agreement**") with respect to the sale of the Heald Assets.  On July 23, 2015, the Debtors filed the Sale Motion seeking approval of the Perry Purchase Agreement and the sale of the Heald Assets to Perry.  I have been informed and it is my understanding that the Debtors provided notice of the Sale Motion to all Interested Parties previously contacted regarding the sale of the Heald Assets.

## THE THOMAS EDUCATION OBJECTION AND AUCTION

7.      On August 6, 2015, Thomas Education Ventures, LLC ("**Thomas Education**") filed an objection [Docket No. 716] (the "**Thomas Education Objection**") to the Sale Motion. In the Thomas Education Objection, Thomas Education offered to purchase the Heald Assets for $90,000 (the "**Thomas Bid**"), a bid of $10,000 greater than the consideration to be provided by Perry pursuant to the Perry Purchase Agreement.   After receiving the Thomas Education Objection, counsel for the Debtors contacted counsel to Thomas Education to confirm the terms of the Thomas Bid, that Thomas Education had sufficient funds to consummate the transaction and that Thomas Education was able to close the transaction in accordance with the timeframe outlined in the Sale Motion.

8.      I believe that the process conducted by the Debtors to market and sell the Heald Assets was adequate and appropriately structured to maximize the value received for the Heald Assets.  Nevertheless, in light of Thomas Education's stated willingness to improve upon the purchase price set forth in the Perry Purchase Agreement, and in an effort to maximize value, the Debtors, in consultation with their advisors, determined it was in the best interest of the Debtors and their estates to conduct a telephonic auction (the "**Auction**").  The Debtors and their advisors contacted counsel for Perry and Thomas Education and informed them that the Auction would be conducted for the Heald Assets on August 10, 2015 at 3:00 p.m. (ET).  The Debtors also invited advisors to the Administrative Agent and the Creditors' Committee to attend the Auction.

9.      At the beginning of the Auction, the Debtors informed the bidders of the guidelines for the Auction.  Bidding at the Auction commenced with Thomas Education's bid of $90,000, with the requirement that any overbids be in increments of at least $2,500.  Each bidder was given two (2) minutes to consider their next bid, with the Debtors reserving their right to extend such time if deemed appropriate to maximize value at the Auction.  In addition to informing all parties of their next bid telephonically, each bidder was required to follow-up such bid with an email to all parties confirming their bid amount.

10.     After 4 rounds of competitive bidding, the Debtors determined that Thomas Education had submitted the highest and best bid of $100,000 for the Heald Assets.  On August 11, 2015, Debtors Corinthian and Heald College, LLC and Thomas Education entered into that certain Purchase Agreement (the "**Thomas Education Purchase Agreement**") with respect to the sale of the Heald Assets.  I believe the terms of the Thomas Education Purchase Agreement were negotiated by the Debtors and Thomas Education at arm's-length and in good faith.  To the best of my knowledge, neither Thomas Education, nor any of its principals, officers, directors

5

nor affiliates is an insider of the Debtors.  Further, I am not aware of any indication of fraud, or collusion between Thomas Education and the Debtors or any similar conduct that would taint the sale process for the Heald Assets.

11.    I believe that the Debtors' decision to sell the Heald Assets pursuant to the Thomas Education Purchase Agreement is based upon an exercise of their sound business judgment.  Given the marketing process and auction process described above, the Debtors believe that Thomas Education's bid of $100,000 represents the highest and best offer received for the Heald Assets.  In addition, the proposed transaction will facilitate a quick and efficient disposition of the Heald Assets.  Accordingly, I believe that the sale of the Heald Assets to Thomas Education is in the best interest of the Debtors and their estates.

[*Remainder of Page Intentionally Left Blank*]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 12, 2015, at Santa Ana, California.

*/s/ William J. Nolan*
William J. Nolan
Chief Restructuring Officer
Corinthian Colleges, Inc., *et al.*