

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | Case No. 15-10952 (KJC) |
| | Jointly Administered |
| Debtors. | |
| | **Proposed Hearing Date: 8/26/15 @ 1:00 p.m. (EDT)** |
| | **Obj. Deadline: To Be Determined** |

## DEBTORS' MOTION TO APPROVE SETTLEMENT AND MUTUAL RELEASE AGREEMENT BETWEEN DEBTORS AND ZENITH EDUCATION GROUP, INC.

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") respectfully request the entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Order**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving that certain *Settlement and Mutual Release Agreement*, in the form attached as <u>Exhibit 1</u> to the Order (the "**Settlement Agreement**"),[2] by and between the Debtors and Zenith Education Group, Inc. ("**Zenith**" and together with the Debtors, the "**Parties**"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).[3]

**BACKGROUND**

A. **General Background**

2. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

3. On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**"). Additionally, the U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

4. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10].

5. On July 1, 2015, the Debtors filed the *Debtors' Combined Disclosure Statement* (the **"Disclosure Statement"**) *and Chapter 11 Plan of Liquidation* (the **"Plan"**), which was subsequently amended on July 24, 2015 and July 27, 2015 [Docket Nos. 520, 646 ad 655, respectively]. On July 27, 2015, the Court entered an order [Docket No. 658] (the

---

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

"**Solicitation Procedures Order**") approving the Disclosure Statement and procedures regarding the solicitation and tabulation of votes in connection with the Plan. Pursuant to the Solicitation Procedures Order, the deadline for voting to accept or reject the Plan is August 21, 2015, and the hearing to consider confirmation of the Plan (the **"Confirmation Hearing"**) has been set for August 26 2015.

### B.     The Escrow Account

6.     On November 19, 2014, certain of the Debtors (collectively, the "**Debtor Sellers**") entered into that certain Asset Purchase Agreement (the "**Asset Purchase Agreement**") whereby the Debtor Sellers agreed to, among other things, sell, convey, transfer, assign and deliver to Zenith all of the Debtor Sellers' right, title and interest in and to all of the assets, properties and rights of the Debtor Sellers that were used in the operation of the Everest Plus Business (as defined in the Asset Purchase Agreement).

7.     Pursuant to Section 1.7(b) of the Asset Purchase Agreement, Zenith was required to deposit into a separate account (the "**Escrow Fund**") with the Escrow Agent (as defined below) an amount in cash equal to $8.5 million (the "**Escrow Amount**"), as collateral for certain indemnification obligations of the Debtors and certain working capital adjustments.

8.     On February 2, 2015, Zenith, Corinthian and Citibank, N.A. (the "**Escrow Agent**") entered into that certain Escrow Agreement (the "**Escrow Agreement**") relating to the Escrow Fund and Zenith deposited the Escrow Amount into the Escrow Fund.

9.     In addition, on February 2, 2015, the Debtors and Zenith entered into a transition services agreement (the "**Transition Services Agreement**") whereby Zenith agreed to provide certain support services for a limited period of time to facilitate the Debtors' continued operations of post-secondary educational institutions that were not acquired by Zenith under the Asset Purchase Agreement.

10. On April 16, 2015, the Parties instructed the Escrow Agent to distribute $988,521.00 from the Escrow Account to Zenith in connection with satisfaction of certain obligations under the Transition Services Agreement.

11. On or about July 20, 2015, Zenith filed proofs of claim [Claim Nos. 2410, 2411, 2415, 2418, 2420, 2428, 2433, 2439, 2443, 2448, 2455, 2462 & 2469] (the "**Zenith Claims**") against certain of the Debtors asserting claims for indemnity, contribution, equitable claims, rights to payments, rights to receive performance, breaches of contract, failure to perform obligations, fraudulent inducement, rights to setoffs and/or recoupment arising out of, related to and in connection with the Asset Purchase Agreement, including the working capital adjustment set forth therein.

12. The Debtors and Zenith have engaged in good faith negotiations to settle, resolve and release all claims, disputes and issues among them arising under the Asset Purchase Agreement, including, but not limited to, the claims asserted under the Zenith Claims arising under the Asset Purchase Agreement. As a result of such good faith negotiations, the Debtors and Zenith have entered into the Settlement Agreement. For the avoidance of doubt, the Settlement Agreement is not intended to address outstanding disputes between the Parties relating to amounts owed under the Transition Services Agreement.

## RELIEF REQUESTED

13. The Debtors respectfully request the entry of the Order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement with Zenith.

14. The material terms of the Settlement Agreement are set forth below[4]:

---

[4] Reference is made to the Settlement Agreement for a complete description of its terms. To the extent any summaries and/or descriptions of the terms of the Settlement Agreement contained in the Motion differ in any way from those contained in the Settlement Agreement, the Settlement Agreement shall govern. All capitalized terms that are used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

A. On the Effective Date (as defined in the Settlement Agreement), the Parties shall issue joint instructions to the Escrow Agent instructing that (i) two thirds of the Escrowed Funds held in the Escrow Account, net one-half of any expenses incurred by the Escrow Agent in accordance with the Escrow Agreement, be delivered to Zenith (the "**Zenith Escrowed Settlement Amount**"); (ii) one third of the Escrowed Funds held in the Escrow account, net one-half of any expenses incurred by the Escrow Agent in accordance with the Escrow Agreement, be delivered to the Debtors or their designee[5] (the "**Debtors Escrowed Settlement Amount**" and together with Zenith Escrowed Settlement Amount, the "**Escrowed Settlement Amounts**"); and (iii) the Escrow Agreement is terminated.

B. On the Effective Date, the Debtors fully, finally and completed remise, release, acquire and forever discharge the Zenith Parties (as defined in the Settlement Agreement) from any and all Claims, complaints, rights, manner of action or actions, Avoidance Actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money controversies, damages, accounts and liabilities of every kind and nature whatsoever, whether at law or in equity, from the beginning of time until the Execution Date, that arise from, or are based on, in connection with, alleged in or related in any way to the Chapter 11 Cases or the Asset Purchase Agreement, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, or foreseen or unforeseen.

C. On the Effective Date, Zenith hereby fully, finally, and completely remises, releases, acquit, and forever discharges the Debtor Parties from any and all Claims, complaints, rights, manner of action or actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts and liabilities of every kind and nature whatsoever, whether at law or in equity, from the beginning of time until the Execution Date, that arise from, or are based on, connected with, alleged in or related in any way to the Chapter 11 Cases or the Asset Purchase Agreement, whether liquidated or unliquidated, fixed or contingent, matured or un-matured, known or unknown, or foreseen or unforeseen.

D. Nothing in the Settlement Agreement is intended to, and shall not be construed to release, waive, relinquish, discharge or otherwise affect any Party's claims, causes of action or any other rights that may be asserted under the Transition Services Agreement arising before, on or after the Execution Date. Moreover, nothing in the Settlement Agreement is intended to constitute an assumption or rejection of

---

[5] Notwithstanding anything to the contrary herein, the Debtors Escrowed Settlement Amount remains subject to the liens of Bank of America, N.A., as administrative agent (the "**Administrative Agent**") for the prepetition lenders under that certain Fourth Amended and Restated Credit Agreement, dated May 17, 2012, pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Granting Related Relief* [Docket No. 346] (the "**Final Cash Collateral Order**") and the Prepetition Loan Documents (as defined in the Final Cash Collateral Order) and will be held by the Debtors pending disbursement to holders of Class 1 Prepetition Lenders Secured Claims under the Plan or as otherwise authorized by the Court.

5

the Transition Services Agreement under section 365 of the Bankruptcy Code, as the Parties are continuing to discuss and negotiate the treatment of the Transition Services Agreement on a going forward basis.

## BASIS FOR RELIEF REQUESTED

15. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.,* 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979).

16. "[T]he decision whether to approve a compromise under Bankruptcy Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

17. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved. The four

enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry, Inc.*, 390 U.S. 414, 424 (1968); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

        18.    The compromise embodied in the Settlement Agreement is fair and equitable. The Debtors and their professionals have analyzed the claims asserted by Zenith and, in their business judgment, believe that the Settlement Agreement represents an appropriate compromise. Specifically, the Settlement Agreement resolves disputes between the Debtors and Zenith regarding complex working capital calculations, indemnification obligations of the Debtors pursuant to the Asset Purchase Agreement, including, but not limited to, the DCP Deficiency Amount (as defined in the Asset Purchase Agreement), and other amounts Zenith claims are payable by the Debtors pursuant to the Asset Purchase Agreement. The Settlement Agreement is a result of lengthy good faith and arm's length negotiations between the Debtors and Zenith to resolve these significant claims. In fact, the Debtors have been engaged in negotiations with Zenith regarding their claims since May. Due to the complexity of these claims, if the Debtors were forced to resolve Zenith's claims on a claim by claim basis it would

take significantly more time and resources of the Debtors. Accordingly, the Debtors believe that the Settlement Agreement is in the best interest of the Debtors and their estates.

19. The Debtors acknowledge that pursuant to the Asset Purchase Agreement they agreed to indemnify Zenith for certain losses with respect to the breach of certain covenants therein and to release funds to Zenith for certain working capital shortfalls. The Debtors submit that certain of the claims asserted by Zenith in the Zenith Claims fall within these obligations. Further, the Escrow Fund was established to provide Zenith with collateral for the Debtors' indemnification obligations and working capital adjustments under the Asset Purchase Agreement. The Escrow Fund is not property of the Debtors' estates under section 541 of the Bankruptcy Code,[6] and as provided in the Asset Purchase Agreement, Zenith has an interest in the Escrow Fund upon certain triggering events. Accordingly, the release of the Zenith Escrow Amount to Zenith is justified and will not prejudice the Debtors' estates or their creditors.

20. Further, resolution of certain of the Zenith Claims arising under the Asset Purchase Agreement pursuant to the Settlement Agreement represents a simpler and more efficient solution than could ever be obtained through litigation and without the unnecessary expense associated with such litigation. Pursuant to the Settlement Agreement, the Zenith Claims arising under the Asset Purchase Agreement are fully resolved without the need of litigation and Zenith releases the Debtors of all future claims arising under the Asset Purchase Agreement.[7] In addition, the Settlement Agreement provides for the release of the Debtors

---

[6] *See, e.g., Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Servs., Inc.)*, 46 B.R. 661, 667-68 (Bankr. S.D.N.Y. 1985) ("'[C]ourts of bankruptcy recognize that money held in escrow is not property which vests in the trustee in bankruptcy.'") (*quoting Gulf Petroleum, S.A. v. Collazo*, 316 F.2d 257, 261 (1st Cir.1963)).

[7] As set forth in Section 4.4 of the Settlement Agreement, the Settlement Agreement does not discharge any Party's rights and obligations arising under the Transition Services Agreement or release, waive, relinquish, discharge or otherwise affect any Party's claims arising under the Transition Services Agreement. Moreover, neither the Settlement Agreement nor this Motion contemplate an assumption or rejection of the Transition Services Agreement under section 365 of the Bankruptcy Code, as the parties are continuing to discuss the treatment of the Transition Services Agreement going forward.

Escrowed Settlement Amount. If forced to litigate the Zenith Claims arising under the Asset Purchase Agreement, the release of these funds could be delayed. Simply stated, the Settlement Agreement allows the Debtors to resolve Zenith Claims arising under the Asset Purchase Agreement at very little cost to the Debtors, a result that is clearly beneficial to the Debtors' estates.

21. The Settlement Agreement (i) is fair and equitable; (ii) represents a compromise between the Debtors and Zenith that is reasonable; and (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation challenging the Zenith Claims arising under the Asset Purchase Agreement. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

22. To the extent that Section 363 of the Bankruptcy Code is implicated in connection with the settlement embodied in the Settlement Agreement, the Debtors seek authority thereunder to execute and perform their obligations under the Settlement Agreement. The Debtors submit that the terms of the Settlement Agreement have a sound business purpose and represent the exercise of their sound business judgment. Accordingly, any actions required to effectuate the terms of the Settlement Agreement should be authorized and approved pursuant to Section 363(b). *See In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); *In re Del. Hudson Ry. Co.*, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

23. Finally, authorizing the Debtors to enter into and effectuate the terms of the Settlement Agreement is well within the equitable powers of this Court. *See* 11 U.S.C. § 105(1) ("The court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*,

9

784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

24. The Settlement Agreement is in the best interests of the Debtors and their estates. Accordingly, it should be approved under Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code.

## NOTICE

25. The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Student Committee; (iv) counsel to Bank of America, N.A., in its capacity as Administrative Agent; (v) the Department of Education; (vi) Zenith; and (vii) all parties entitled to notice of this Motion pursuant to Bankruptcy Rule 2002.

**NO PRIOR MOTION**

26. The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

WHEREFORE, the Debtors respectfully request that this Court enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) approving the Settlement Agreement, (b) authorizing the Debtors to effectuate the compromise embodied therein, and (c) granting such other and further relief as the Court deems appropriate.

Dated: August 18, 2015
      Wilmington, Delaware

*/s/ Amanda R. Steele*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
      merchant@rlf.com
      terranova@rlf.com
      steele@rlf.com

Counsel for the Debtors and Debtors in Possession