## EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

------------------------------------------------------

## ORDER APPROVING SETTLEMENT AND MUTUAL RELEASE AGREEMENT
## BETWEEN DEBTORS AND ZENITH EDUCATION GROUP, INC.

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an order (this "**Order**"):

approving the Settlement Agreement between the Debtors and Zenith regarding the release of

Escrowed Settlement Amounts pursuant to the Asset Purchase Agreement and settlement of the

Zenith Claims arising under the Asset Purchase Agreement, all as more fully set forth in the

Motion; and due and sufficient notice of the Motion having been provided under the particular

circumstances, and it appearing that no other or further notice need be provided; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a

core proceeding under 28 U.S.C. § 157(b); and that this Court may enter a final order consistent

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]    Capitalized terms used but not defined in this Order have the meanings used in the Motion.

with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been held to consider the relief requested in the Motion (the "**Hearing**"); and upon the record of the Hearing, and all the proceedings before the Court; and the Court having found and determined that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors, and any parties in interest; and that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED to the extent set forth herein.

2.      The Settlement Agreement, attached hereto as <u>Exhibit 1</u>, is approved.

3.      The Escrow Agent is authorized and directed to release the Escrowed Settlement Amounts.

4.      Notwithstanding anything to the contrary herein, the Debtors Escrowed Settlement Amount remains subject to the liens of the Administrative Agent, and respective prepetition lenders pursuant to the prepetition loan documents and the Final Cash Collateral Order and will be held by the Debtors pending disbursement to holders of Class 1 Prepetition Lenders Secured Claims under the Plan or as otherwise authorized by the Court.

5.      The Debtors and their officers and agents are authorized and directed to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate and fully execute the Settlement Agreement and effectuate its terms.

6.      Nothing in the Settlement Agreement or this Order shall constitute an assumption or rejection of the Transition Services Agreement under section 365 of the Bankruptcy Code, or

RLF1 12734070v.2RLF1 12814624v.1

be construed to release, waive, relinquish, discharge or otherwise affect the Parties' rights and obligations under the Transition Services Agreement.

7.      This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated:      _____, 2015
      Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## Settlement Agreement

# SETTLEMENT AND MUTUAL RELEASE AGREEMENT

This Settlement and Mutual Release Agreement ("Agreement") is hereby made by, between and among the "Debtors" (as defined in Section 1.1.5 below) and Zenith Education Group, Inc., a Delaware nonprofit corporation ("Zenith").

## RECITALS

WHEREAS, on May 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware;

WHEREAS, prior to the Petition Date, certain of the Debtors entered into that certain Asset Purchase Agreement, dated November 14, 2014 (as amended, modified, supplemented or restated from time to time, the "APA"), with Zenith whereby they agreed to, among other things, sell, convey, transfer, assign and deliver to Zenith all of their right, title and interest in and to the assets, properties and rights of the Debtors that were used in the operation of the Everest Plus Business (as defined in the APA), except for Excluded Assets (as defined in the APA), subject in all cases, to the terms and conditions of the APA;

WHEREAS, prior to the Petition Date, the Debtors entered into that certain Transition Services Agreement, dated as of February 2, 2015 (as amended, modified, supplemented or restated from time to time, the "TSA"), with Zenith whereby Zenith agreed to provide certain support services for a limited period of time to facilitate the Debtors' continued operation of post-secondary educational institutions that were not acquired by Zenith under the APA;

WHEREAS, pursuant to the APA, Zenith established an escrow account (the "Escrow Account") with Citibank, N.A. (the "Escrow Agent") and deposited the sum of $8,500,000.00 in the Escrow Account as collateral for certain indemnification obligations under the APA;

WHEREAS, on April 16, 2015, the Parties jointly instructed the Escrow Agent to distribute the sum of $988,521.00 from the Escrow Account to Zenith in connection with satisfaction of certain obligations under the TSA;

WHEREAS, as of the Petition Date, the aggregate balance in the Escrow Account totaled $7,511,479.00;

WHEREAS certain disputes between the Debtors and Zenith have arisen and/or may arise in the future concerning the respective parties' rights and obligations under the APA;

WHEREAS, Zenith filed proofs of claim in certain of the Debtors' bankruptcy cases (the "Zenith Proof of Claims") asserting claims for indemnity, contribution, equitable claims, rights to payments, rights to receive performance, breaches of contract, failure to perform obligations, fraudulent inducement, rights of setoff and/or recoupment arising out of, related to and in connection with the APA, including the working capital adjustment called for therein, in the amount of not less than $13,584,000.00 which is partially secured by the Escrow Account;

WHEREAS, certain Debtors have asserted claims against Zenith under the APA of not less than $5,500,000.00, plus immediate release of $500,000 from the Escrow Account, plus the eventual release upon the two (2) year anniversary of the APA Closing Date (as defined in the APA) of the remainder of the Escrow Account;

WHEREAS, the Debtors and Zenith, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all claims and disputes between and among them with respect to the APA; and

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound, subject to the approval of the United States Bankruptcy Court for the District of Delaware and any other court in which the Chapter 11 Cases may be pending or that has jurisdiction over the Chapter 11 Cases (the "Bankruptcy Court"), the Debtors and Zenith hereby agree as follows:

## 1. DEFINITIONS

1.1   As used in this Agreement, the following terms shall have the meanings set forth below. Capitalized terms not defined below or herein shall have the meanings given to them in the Bankruptcy Code.

1.1.1   "Administrative Agent" means Bank of America, N.A.

1.1.2   "Avoidance Actions" means any and all rights to recover or avoid transfers or liens under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action.

1.1.3   "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.4   "Chapter 11 Cases" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as Corinthian Colleges, Inc., *et al.*, under Case No. 15-10952 (KJC), currently pending in the Bankruptcy Court.

1.1.5   "Creditor" means any Person that is the Holder of a Claim against any of the Debtors.

1.1.6   "Debtors" means collectively, Corinthian Colleges, Inc., Corinthian Schools, Inc., Rhodes Colleges, Inc., Florida Metropolitan University, Inc., Corinthian Property

Group, Inc., Titan Schools, Inc., Career Choices, Inc., Sequoia Education, Inc., ETON Education, Inc., Ashmead Education, Inc., MJB Acquisition Corporation, ECAT Acquisition, Inc., Pegasus Education, Inc., Grand Rapids Educational Center, Inc., Rhodes Business Group, Inc., Everest College Phoenix, Inc., CDI Education USA, Inc., SP PE VII-B Heald Holdings Corp., SD III-B Heald Holdings Corp., Heald Capital LLC, Heald Real Estate, LLC, Heald Education, LLC, Heald College, LLC, QuickStart Intelligence Corporation and Socle Education, Inc. and their respective bankruptcy estates.

1.1.7    "Debtor Parties" means collectively the Debtors and: (i) each of the past, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies of the Debtors, and each of their respective predecessors, successors and assigns; and (ii) any and all past and present employees, officers, directors, shareholders, principals, teachers, staff, members, boards, administrators, agents, attorneys, and representatives, in their capacity as such.

1.1.8    "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

1.1.9    "Execution Date" means the date on which the Agreement is executed by all of the Parties.

1.1.10  "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such an appeal or review has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Debtors and Zenith have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Agreement.

1.1.11  "Holder" means the beneficial holder of any Claim.

1.1.12  "Parties" means the Debtors and Zenith, and "Party" refers to them individually.

1.1.13  "Person" means an individual or Entity, including any corporation, corporation sole, partnership, association, limited liability company, proprietorship, joint venture, trust, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

1.1.14  "UST" means the Office of the United States Trustee for the District of Delaware.

1.1.15  "Zenith Parties" means collectively Zenith and each of its past, present and future parents, subsidiaries, affiliates (including, without limitation, ECMC Group, Inc.

and its affiliates and divisions), and divisions, each of their respective past, present, present and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through or in concert with them.

## 2. THE APPROVAL MOTION AND ORDER

2.1    Not later than five (5) days after the Execution Date, the Debtors shall file a motion (the "Approval Motion") that seeks the entry of an order in substantially the form attached as Exhibit A to this Agreement, with only such modifications as are acceptable to Zenith and the Debtors, entered by the Bankruptcy Court pursuant to the Federal Rules of Bankruptcy Procedure 9019 and/or under such other provisions as the Bankruptcy Court may order, approving this Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Agreement (the "Approval Order").

2.1.1    The Debtors shall provide written notice of the Approval Motion to  (i) counsel for the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases, as such committee may be reconstituted from time to time (the "Creditors Committee"); (ii) counsel for the Official Committee of Student Creditors appointed by the United States Trustee in the Chapter 11 Cases, as such committee may be reconstituted from time to time (the "Student Committee"); (iii) the UST; (iv) the Escrow Agent; (v) the Administrative Agent; and (vi) all Persons who have filed notices of appearance in the Chapter 11 Cases.

2.2    If any Person files an objection to the Approval Motion, the Debtors  shall take all reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order.  Zenith will cooperate with the Debtors, including making all appropriate submissions.

## 3. DISTRIBUTION FROM ESCROW ACCOUNT

3.1    Conditions Precedent.  Immediately upon the Approval Order becoming a Final Order (the "Effective Date"), the Parties shall issue joint instructions to the Escrow Agent, instructing that (i) two thirds (2/3s) of the funds held in the Escrow Account, net one-half of any expenses incurred by the Escrow Agent in accordance with the Escrow Agreement, be delivered to Zenith; (ii) one third (1/3) of the funds held in the Escrow Account, net one-half of any expenses incurred by the Escrow Agent in accordance with the Escrow Agreement, be delivered to the Debtors or their designee; and (iii) the Escrow Agreement be terminated.

## 4.  MUTUAL RELEASES

4.1  On the Effective Date, Debtors hereby fully, finally, and completely remise, release, acquit, and forever discharge the Zenith Parties from any and all Claims, complaints, rights, manner of action or actions, Avoidance Actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts and liabilities of every kind and nature whatsoever, whether at law or in equity, from the beginning of time until the Execution Date, that arise from, or are based on, in connection with, alleged in or related in any way to the Chapter 11 Cases or the APA, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, or foreseen or unforeseen.

4.2  On the Effective Date, Zenith hereby fully, finally, and completely remises, releases, acquit, and forever discharges the Debtor Parties from any and all Claims, complaints, rights, manner of action or actions, causes of action, suits, debts, dues, demands, obligations, charges, costs, expenses (including but not limited to attorneys' fees), sums of money, controversies, damages, accounts and liabilities of every kind and nature whatsoever, whether at law or in equity, from the beginning of time until the Execution Date, that arise from, or are based on, connected with, alleged in or related in any way to the Chapter 11 Cases or the APA, whether liquidated or unliquidated, fixed or contingent, matured or un-matured, known or unknown, or foreseen or unforeseen.

4.3  This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, discharge or otherwise affect the Parties' rights and obligations under this Agreement or the TSA.

4.4  Notwithstanding the releases set forth in this Section 4 of the Agreement, the TSA shall remain in full force and effect.  This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, discharge or otherwise affect any Party's claims, causes of action or any other rights that may be asserted under the TSA arising before, on or after the Execution Date, including Debtor's claims under section 1.04 of the TSA which Zenith disputes.  Moreover, nothing in this Agreement is intended to constitute an assumption or rejection of the TSA under section 365 of the Bankruptcy Code, as the Parties are continuing to discuss and negotiate the treatment of the TSA on a going forward basis.

## 5.  REPRESENTATIONS AND WARRANTIES OF THE PARTIES

5.1  *Representation and Warranties.*  Each Party represents and warrants to each other Party that:  (i) it is duly authorized to execute and deliver this Agreement and perform its obligations hereunder; (ii) no claim waived or released pursuant to this Agreement has been assigned or otherwise transferred; (iii) each believes it to be in that Party's best interests to settle the matters encompassed by this Agreement, as provided in this Agreement; (iv) no promise, agreement, inducement, representation, or warranties have been offered to any Party except as expressly provided in this Agreement; (v) this Agreement is not in violation of or in conflict with any other agreement of any Party; (vi) this Agreement is executed voluntarily with full knowledge of the consequences and implications of the terms and obligations

contained herein; (vii) each Party has been represented by counsel of that Party's choice throughout the negotiations that preceded the execution of this Agreement, and in connection with the preparation and execution of this Agreement; (viii) each Party has carefully and thoroughly reviewed this Agreement in its entirety and has resolved all questions concerning the meaning, legal nature, and binding effect of this Agreement with counsel of each Party's choosing; and (ix) this Agreement is contractual and not merely recital, and that each Party has read, understands, and fully agrees to the terms of this Agreement.

## 6. MISCELLANEOUS

6.1    If any proceedings are commenced to invalidate or prevent the enforcement or implementation of any of the provisions of this Agreement, the Parties agree to cooperate fully to oppose such proceedings.  In the event that any action or proceeding of any type whatsoever is commenced or prosecuted by any Person not a Party to this Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Agreement, the Parties mutually agree, represent, warrant, and covenant to cooperate fully in opposing such action or proceeding.

6.2    The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Agreement and to preserve its validity and enforceability.

6.3    The Parties shall cooperate with each other in connection with obtaining Bankruptcy Court approval of this Agreement, with such cooperation including consulting with each other upon reasonable request concerning the status of the Chapter 11 Cases, the Approval Motion and the Approval Order (including providing drafts of such documents as soon as reasonably practicable prior to any submission to the Bankruptcy Court).

6.4    This Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

6.5    This Agreement may be modified only by a written amendment signed by the Parties, and no waiver of any provision of this Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party.  The waiver by any Party of any of the provisions of this Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

6.6    By entering into this Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Agreement.  No part of this Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Agreement.  All actions taken and statements made by the Parties or by their representatives, relating to this Agreement or participation in this Agreement, including its development and implementation, shall be without prejudice or value as precedent and shall not be used as a standard by which other matters may be judged.

6.7    This Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession of liability, culpability, or wrongdoing. All related discussions, negotiations, and all prior drafts of this Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 6.7, in an action or proceeding to enforce the terms of this Agreement.

6.8    This Agreement shall be binding on the Parties, their successors, assigns, transferees, any subsequent chapter 7 trustee appointed in the Chapter 11 Cases upon or after conversion to a case under chapter 7 of the Bankruptcy Code, and any other Persons who have asserted or seek to assert Claims on behalf of or against the Debtors' estates.

6.9    Neither this Agreement nor the rights and obligations set forth in this Agreement shall be assigned without the prior written consent of the other Parties.

6.10  Section titles and/or headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

6.11  All notices, demands, or other communication to be provided pursuant to this Agreement shall be in writing and sent by e-mail and Federal Express or other overnight delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other person or address as any of them may designate in writing from time to time:

> If to the Debtors:
>
> > Corinthian Colleges, Inc.
> > 6 Hutton Drive, Suite 400
> > Santa Ana, California  92707
> > Attention: CEO and General Counsel
> > Facsimile: (714) 751-3605
> > Emails: jmassimino@cci.edu and smortensen@cci.edu
> >
> > With a copy to:
> >
> > Richards Layton & Finger, P.A.
> > One Rodney Square
> > P.O. Box 551
> > Wilmington, Delaware 19899
> > Attention: Mark D. Collins and Michael J. Merchant
> > Facsimile:  (302) 651-7701
> > Email: Collins@rlf.com
> >            merchant@rlf.com
>
> If to Zenith:

Zenith Education Group, Inc.
c/o ECMC Group, Inc.
1 Imation Place, Building 2
Oakdale, Minnesota 55128
Attention: Dan Fisher, General Counsel
Facsimile: (651) 325-4086
Email: dfisher@ecmc.com

With a copy to:

Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, Pennsylvania 19103
Facsimile: (215) 988-2757
Email: john.michel@dbr.com

and

Michael P. Pompeo
Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Facsimile: (212) 248-3141
Email: michael.pompeo@dbr.com

6.12 This Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile or other electronic image, which facsimile or other electronic image counterparts shall be deemed to be originals.

6.13 All of the Persons included in the definition of Zenith Parties or Debtor Parties are intended beneficiaries of this Agreement. Except as set forth in the preceding sentence or otherwise set forth in this Agreement, there are no third-party beneficiaries of this Agreement.

6.14 The Debtors and Zenith shall be responsible for their own fees and costs incurred in connection with the Chapter 11 Cases, this Agreement, and the implementation of this Agreement.

6.15 The following rules of construction shall apply to this Agreement:

6.15.1 Unless the context of this Agreement otherwise requires: (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein,"

"hereby," and derivative or similar words refer to this entire Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

6.15.2   References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Agreement.

6.15.3   The wording of this Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution. The wording of this Agreement shall not be construed in favor of or against any Person.

6.15.4   The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Agreement when the stated intent is not achieved.

6.15.5   If any provision of this Agreement may be construed in two or more ways, one of which would render the provision invalid or otherwise voidable or unenforceable and another of which would render the provision valid and enforceable, such provision shall have the meaning that renders it valid and enforceable.

6.16 This Agreement and any Claim related directly or indirectly to this Agreement shall be governed by and construed in accordance with the Bankruptcy Code and, to the extent not preempted by the foregoing, the laws of the State of Delaware (without regard to the principle of conflicts of law thereof that would result in the application of law of another jurisdiction).

6.17 The Bankruptcy Court shall retain jurisdiction to resolve any dispute arising out of or relating to this Agreement.

[Remainder of page left blank intentionally]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

### On behalf of the Debtors (as defined herein)

By:    /s/ Stan A. Mortensen
        Stan A. Mortensen, Executive Vice
        President and General Counsel

Date:   August 18, 2015

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the last date indicated below.

**On behalf of Zenith (as defined herein)**

By: ___Dan Fisher_____
        Dan Fisher, General Counsel

Date: ___August 18, 2015_____