**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., *et al.*[1]<br><br><br>     Debtors. | §   Chapter 11<br>§<br>§   Case No. 15-10952 (KJC)<br>§<br>§   Jointly Administered<br>§<br>§   **Re:  Docket No. 626**<br>§ |

**DEBTORS' OBJECTION TO MOTION OF AEROTEK, INC. FOR AN ORDER UNDER RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING LIMITED DISCOVERY FROM CORINTHIAN COLLEGES, INC.**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby object (this "**Objection**") to the motion (the "**Motion**") filed by Aerotek, Inc. ("**Aerotek**") for an order authorizing limited discovery from Corinthian pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Rule 2004**") [Docket No. 626]. In support of this Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.  Aerotek's Motion should be denied for several reasons. First, Aerotek is a scheduled creditor and it has filed a proof of claim in these Chapter 11 cases. The Debtors have

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

not objected to Aerotek's proof of claim and no dispute with respect to Aerotek's proof of claim otherwise is pending before this Court.  In the absence of a dispute with respect to Aerotek's claim, Aerotek has no good grounds in its capacity as a creditor to seek discovery from the Debtors.

2. Second, Aerotek's Motion should be denied because Aerotek does not seek discovery from the Debtors in its capacity as a creditor of the Debtors.  Rather, Aerotek believes that it has a legal claim against a non-debtor, third party, Zenith Education Group, Inc. ("**Zenith**"), and Aerotek seeks to impose the burdens of Rule 2004 discovery on the Debtors in aid of its claim against non-debtor Zenith.  This is not permissible Rule 2004 discovery.  Indeed, under its Motion, Aerotek is not even acting as a party in interest in these cases, but instead in its alleged capacity as a creditor of a creditor.  The Motion, therefore, should be denied because Aerotek's attempt to invoke Rule 2004 is substantively improper.

3. Third, Aerotek's Motion should be denied for the additional reasons that the Debtors have limited, remaining resources, and Aerotek's document requests impose significant burdens on the Debtors.  The Debtors have very few remaining employees, no remaining information technology employees, and limited other resources.  Moreover, it is not clear that the Debtors will be able to fully respond to Aerotek's request for "all communications," either because the Debtors cannot readily access stored electronic or other information or do not have the resources to review such information for production.  Indeed, to the extent that the Court were to grant relief requested by Aerotek under its Motion, the Debtors respectfully request that the Court (i) if necessary, preserve the Debtors' right to object to Aerotek's requests under and pursuant to applicable discovery rules and (ii) require Aerotek to pay all costs related to the Debtors' response to Aerotek's discovery requests, including but not limited to the payment of

the Debtors' professional fees and expenses, the cost (if any) for the Debtors to identify, access and/or retrieve any potentially responsive information, and the time of any personnel used by the Debtors to respond to Aerotek's discovery requests.

## BACKGROUND

4. On December 18, 2014, Corinthian and Aerotek (the "**Parties**") entered into that certain *Confidential Settlement Agreement and Release* (the "**Settlement Agreement**"). The Settlement Agreement resolved certain litigation asserted by Aerotek against Corinthian (the "**Aerotek Litigation**"). Pursuant to the Settlement Agreement, the Parties agreed that Aerotek would be paid $350,000.00 (the "**Settlement Amount**"). See Motion ¶ 9. The Settlement Agreement further provided that "liability for payment of the Settlement Amount to Aerotek will be included in the liabilities being assumed by Zenith" pursuant to a transaction (the "**Zenith Transaction**") between Corinthian and Zenith. Id. ¶ 11.

5. As of the filing of this Objection, Aerotek has not been paid the Settlement Amount and Aerotek alleges that Zenith has denied any obligation to pay Aerotek. See Motion ¶ 13. It is not clear from the Motion, however, whether Aerotek has asked Zenith to provide the documents and information it now seeks from the Debtors, including a complete copy of the asset purchase agreement (and all schedules thereto) documenting the Zenith Transaction (the "**APA**") and any communications that Zenith may have had with the Debtors regarding the APA, schedules thereto or Aerotek. See Motion ¶ 15. Aerotek certainly provided no evidence in the Motion of any such communications between it and Zenith regarding such matters. Upon information and belief, Zenith is in possession of the APA, schedules thereto and any communications with the Debtors regarding the foregoing or Aerotek.

6. As required under the Settlement Agreement, Corinthian included the Settlement Amount in a list of liabilities to be assumed by Zenith in connection with the Zenith Transaction.

3

In an effort to resolve Aerotek's Motion, the Debtors provided a copy of the relevant, subject schedule to counsel for Aerotek prior to filing this Objection.[2]

7. The Settlement Agreement further provided that if the Settlement Amount was not paid within 120 days of the Effective Date (December 18, 2014), either Party may declare the Settlement Agreement null and void. The 120 day period expired on April 17, 2015, a few weeks prior to the commencement of these Chapter 11 cases. Aerotek presumably could have -- but did not -- declare the Settlement Agreement to be null and void prior to the Petition Date.[3]

8. On May 4, 2015 (the "**Petition Date**"), the Debtors commenced these Chapter 11 cases. On June 8, 2015, Corinthian filed its schedules of assets and liabilities [Docket No. 290] listing Aerotek as a creditor holding an unsecured nonpriority claim in the amount of $350,000.00 (the "**Scheduled Claim**"). The Scheduled Claim was listed as contingent and disputed. Corinthian also listed Aerotek as a creditor holding a contingent, unliquidated and disputed unsecured nonpriority claim on account of the Aerotek Litigation.

9. On July 16, 2015, Aerotek filed Proof of Claim number 1650 (the "**POC**"). In the POC, Aerotek asserted a $350,000 general unsecured claim. Aerotek reserved the right to declare the Settlement Agreement null and void and to supplement or amend the POC to increase the claim to $810,622.52 (the full amount sought in the Aerotek Litigation). The Debtors have not filed an objection to the POC, and do not intend to do so prior to the hearing on the Motion.

10. On July 22, 2015, Aerotek filed the Motion. Pursuant to the Motion, Aerotek seeks two categories of documents in order for Aerotek to determine if it "has a claim against Zenith." See Motion ¶ 22. The first document category requested in the Motion includes *all*

---

[2] The other schedules to the APA contain potentially confidential information or sensitive business information to which Aerotek is not entitled or that should only be produced subject to a confidentiality agreement and order.

[3] Aerotek states in its POC that it reserves the right to declare the Settlement Agreement to be null and void. See infra ¶ 9. The Debtors reserve the right to dispute any such declaration on all relevant substantive and/or procedural grounds whatsoever.

4

schedules to the APA. The Debtors have provided the schedule to the APA that is applicable to Aerotek's alleged claim (against Corinthian or Zenith).

11. In addition to the APA and schedules prepared by the parties in connection with the APA, Aerotek also seeks to require the Debtors to search its electronic and other information for communications, emails, letters memoranda and other documents generated from over an 8 month period of time that refer or relate to Aerotek or more generally to the transaction with Zenith and amount payable (or not) by Zenith in connection therewith. The Debtors have not agreed to undertake a search for this broad category of requested documents.

## OBJECTION

12. While the scope of an examination under Rule 2004 is "broad and unfettered," In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002), Rule 2004 examinations are not boundless. See, e.g., Fed. R. Bankr. P. 2004(a) ("the court *may* order the examination of any entity") (emphasis added); In re Enron Corp., 281 B.R. at 840 ("the Court has the discretion to grant a request for a 2004 examination"); In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd., 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (stating Rule 2004 "give[s] the Court significant discretion"). Indeed, there are well-established limits to the scope of Rule 2004 examinations. See In re Washington Mut., Inc., 408 B.R. 45, 50 (Bankr. D. Del. 2009) ("There are, however, limits to the use of Rule 2004 examinations."); In re Kelton, 389 B.R. 812, 820 (Bankr. S.D. Ga. 2008) (enumerating examples where courts have denied Rule 2004 examinations). For example, a party seeking a Rule 2004 examination must show "good cause" for the examination requested and the examination cannot be beyond what is relevant to the inquiry. See In re Kelton, 389 B.R. at 820; In re Eagle-Picher Indus., Inc., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("the one seeking to conduct a 2004 examination has the burden of showing good cause") (citations omitted). Further, Rule 2004 examinations are limited to issues that the court has the power to

entertain. See In re Cinderella Clothing Indus., Inc., 93 B.R. 373, 377 (Bankr. E.D. Pa. 1988) (the "examination, though, must be limited to issues which the court, at that time, still has the power to entertain").

13. Finally, such examinations must be conducted by a "party in interest." Fed. R. Bankr. P. 2004(a). The Bankruptcy Code does not define the term "party in interest." Bankruptcy Code section 1109(b) states that a "party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

14. Notably absent from this list is a creditor of a Debtors' creditor. Indeed, several courts have held that a creditor of a creditor is not a party in interest in a bankruptcy case. See In re Lifeco Inv. Group, Inc., 173 B.R. 478, 487 (Bankr. D. Del. 1994) ("I find no statutory or judicial support to conclude that a creditor of a creditor has standing in a bankruptcy case") (citing In re Comcoach Corp. (Roslyn Savings Bank v. Comcoach Corp.), 698 F.2d 571, 573-74 (2d Cir. 1983) (mortgagee of property that debtor rented not a party in interest in bankruptcy case because debtor had no obligation to mortgagee)); In re Morris White Handbags Corp., 77 F.2d 827, 829 (2d Cir. 1935) (claimants of lien upon debtor's claim against another entity was not party in interest in bankruptcy proceeding); Matter of Goldman, 82 B.R. 894, 896 (Bankr. S.D. Ohio 1988) (entity must have "direct relationship with the debtor, his property or the process of administering his bankruptcy estate" to qualify as "party in interest" and term "party in interest" "does not encompass entities that are merely 'concerned' with the results of a debtor's bankruptcy proceedings"); In re Ledges Apartments, 54 B.R. 85, 85 (Bankr. D. Vt. 1985) (creditor of principals of bankrupt entity is not party in interest)); see also In re Lehman

6

Bros. Holdings Inc., 2012 WL 1057952, *3 (S.D.N.Y. Mar. 26, 2012) ("[s]ignificantly, a creditor once removed does not have party-in-interest standing"); In re Martin Paint Stores, 199 B.R. 258, 264 (Bankr. S.D.N.Y. 1996) ("a creditor of the debtor's creditor is not a party in interest, and the term does not encompass a person who is merely concerned with the results of the proceeding") (internal citations omitted).

### A.   Aerotek's Requests Relate to a Third-Party Dispute

15.   Aerotek has not demonstrated "good cause" for the discovery requests because the requests relate to a dispute that is not before this Court, and Aerotek is not a party in interest in the capacity in which it filed the Motion. Pursuant to the Motion, Aerotek is seeking information to assess whether it "has a claim against Zenith for the debt which Aerotek believes is owed by Corinthian." Any claim that Aerotek may hold against Zenith, however, is not before this Court. Accordingly, Aerotek has not shown good cause for the Court to approve the Motion.

16.   Additionally, Aerotek is seeking Rule 2004 discovery in its capacity as a creditor of a creditor, and accordingly, it is not a party in interest for the purposes of the Motion. Aerotek is a creditor in these bankruptcy proceedings. The Motion, however, does not seek discovery in connection with its claim against the Debtors. The Motion seeks discovery in connection with Aerotek's potential claim against Zenith. In this capacity, Aerotek is acting as a creditor of Zenith, which is a creditor of the Debtors,[4] on account of a claim between Aerotek and Zenith. Accordingly, Aerotek is not a party in interest for the purposes of the Motion, and the Court should refuse to approve the relief sought therein.

---

[4]   Zenith has filed thirteen proofs of claim in these Chapter 11 cases asserting $13,584,000.00 of secured and unsecured claims (the aggregate amount of Zenith's filed claims is $176,592,000.00 as Zenith asserted a $13,584,000.00 claim against thirteen of the Debtors, one of which Zenith claims is primarily liable and the remainder Zenith claims are jointly and severally liable).

**B.     The Timing of the Motion is Inappropriate**

17.     If Aerotek had filed the Motion to obtain information relating to the POC rather than to assess the possible obligations of Zenith (the Motion's clearly stated intent), then the timing of requests for that purpose is inappropriate.  Accordingly, Aerotek would still be unable to demonstrate that there is "good cause" to approve the Motion.

18.     Aerotek does not need documents from the Debtors to file a claim in these cases.  Indeed, the POC was filed in advance of the Motion.  The Debtors have not objected to the POC.  Therefore, there is no dispute relating to the POC before this Court at this time.  Further, the POC has already been asserted in a liquidated amount (subject to possible change to another liquidated amount if Aerotek decides and is permitted to declare the Settlement Agreement null and void and amend the POC).  Accordingly, discovery is not required for Aerotek to liquidate its claim against Corinthian.

**C.     Debtors' Response to the Document Requests Would Be Disruptive and Costly to the Debtors**

19.     In addition to the limitations to Rule 2004 set forth above, courts have held that Rule 2004 examinations "should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor." In re MF Global Inc., 2013 WL 74580, * 1 (Bankr. S.D.N.Y. Jan. 8, 2013) (quoting In re Texaco Inc., 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987)); In re Youk-See, 450 B.R. 312, 320 (Bankr. D. Mass. 2011) (advocating for "sliding scale" test to balance burden to debtors with benefit to creditors of Rule 2004 examination).

20.     Here, the Debtors would be unnecessarily burdened if forced to respond to Aerotek's discovery requests.  The Debtors ceased operations prior to the Petition Date and terminated many of their employees.  Other employees have left the Debtors' employ following the commencement of these Chapter 11 cases.  The Debtors' remaining employees are focused

8

RLF1 12812718v.4

on plan confirmation, set for the same date as the hearing on the Motion. Following the anticipated confirmation of the plan of liquidation, the Debtors' remaining employees will be completely focused on transitioning the Debtors' assets to the trusts established pursuant to the plan. Accordingly, refocusing the efforts of these employees to respond to discovery requests related to a third-party claim would present a significant burden on the Debtors.

21. Further, Zenith is in possession of any information sought by Aerotek and Aerotek has not demonstrated that it has exhausted -- or even tried -- to obtain relevant documents and information from Zenith. Moreover, here the Debtors already have provided certain information to Aerotek that Aerotek might use in its discussions with Zenith regarding its alleged claim. Accordingly, Aerotek should look to Zenith, not the Debtors, in the first instance.

22. Aerotek has indicated in the Motion that it believes that discovery will lead to a benefit to the Debtors and their estates because recovery for Aerotek from Zenith would mean that Aerotek would not have a claim against the Debtors. The Debtors believe that this benefit (if it is actually realized) may serve Aerotek but it comes at a disproportionate case to the Debtors and their estates. First, significant claims have been asserted against the Debtors' estates, and the Debtors do not anticipate a large distribution for general unsecured creditors. Accordingly, reducing the total pool of unsecured claims by $350,000 will not lead to any meaningful, different distribution (or potential distribution) to unsecured creditors. Second, any such potential benefit also likely would be offset in its entirety (or more) by the costs to the Debtors of complying with Aerotek's discovery requests.

23. If the Court does determine that Rule 2004 discovery is appropriate under these circumstances, then the Debtors respectfully request that the Court preserve the Debtors ability to object to Aerotek's discovery requests on any grounds permissible under the applicable

9

discovery rules, and require Aerotek the pay the Debtors' costs (including professional fees and any labor or IT costs) associated with the Debtors' collection and/or review of information for potential production to Aerotek. Aerotek seeks to require the Debtors to search for and produce documents from an extended time period and, as framed by Aerotek, its requests may require the Debtors to review each and every communication with or about Zenith or any transaction with Zenith. Assumedly, this is an immense amount of material. As noted above, the Debtors have limited remaining employees and may not have direct or ready access to information systems that might contain potentially responsive information. Moreover, Aerotek seeks to impose these burdens on the Debtors in aid of Aerotek's potential claim against a non-debtor party, and without demonstrating that it otherwise has sought such information from Zenith.

24. Accordingly, preserving the Debtors' rights to object to Aerotek's specific requests and requiring Aerotek to bear the costs of the discovery it seeks in aid of its claim against a non-debtor is both necessary and appropriate under the circumstances here presented.

## **CONCLUSION**

25. Based upon the foregoing, the Debtors submit that the relief requested in the Motion is not warranted by the facts, circumstances, or applicable law, and that to compel the Debtors to expend precious estate resources to produce documents that can only assist a creditor of a creditor in its third-party dispute would be a significant waste of estate resources and should not be allowed.

WHEREFORE the Debtors respectfully request that the Court deny the Motion in all respects, and grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: August 19, 2015<br>Wilmington, Delaware | */s/* Marisa A. Terranova<br>Mark D. Collins (No. 2981)<br>Michael J. Merchant (No. 3854)<br>Marcos A. Ramos (No. 4450)<br>Marisa A. Terranova (No. 5396)<br>Amanda R. Steele (No. 5530)<br>RICHARDS, LAYTON & FINGER, P.A.<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Telephone:  302-651-7700<br>Facsimile:  302-651-7701<br>Email: collins@rlf.com<br>         merchant@rlf.com<br>         ramos@rlf.com<br>         terranova@rlf.com<br>         steele@rlf.com<br><br>Attorneys for the Debtors and Debtors in Possession |

RLF1 12812718v.4