IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., et al., | Case No. 15-10952 (KJC) |
| Debtors. | Jointly Administered |

**Objection Deadline: August 21, 2015 @ 4:00 p.m. (Eastern)**
**Hearing Date: August 26, 2015 @ 1:00 p.m.**
**Related to Docket No. 655**

**LIMITED OBJECTION OF BRE/OC GRIFFIN, L.L.C. TO CONFIRMATION OF DEBTORS' SECOND AMENDED AND MODIFIED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
[DOCKET NO. 655]**

BRE/OC GRIFFIN, L.L.C. ("Griffin"), through its undersigned counsel, hereby submits its limited objection to confirmation of the proposed *Second Amended And Modified Combined Disclosure Statement And Chapter 11 Plan Of Liquidation* [Docket No. 655] ("Second Amended Plan").

1.     On May 4, 2015, debtors Corinthian Colleges, Inc. and Corinthian Schools, Inc. (together, "Debtors"), filed, along with their jointly-administered debtors, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  No trustee or examiner has been appointed and Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.     Griffin, as landlord, and Debtors, as tenant, are parties to that certain Office Lease dated October 7, 1996, as subsequently amended (the "Lease"), with respect to premises located at 5 and 6 Hutton Centre Drive, Santa Ana, California, commonly known as Griffin Towers (the "Premises").  The term of the Office Lease is scheduled to expire on February 29, 2016.

3.     At present, Debtors have neither assumed nor rejected the Lease and remain in possession of the Premises, which is Debtor's corporate headquarters.  Griffin currently holds a security deposit under the Lease in the amount of $98,178.41.

### The Plan Improperly Seeks to Bar Post-Confirmation Setoffs, Including for Landlord Security Deposits

4.     The injunction provided by Article XIII of the Second Amended Plan (page 90) is overbroad, improperly seeking to bar all post-confirmation setoffs and the exercise of recoupment against the Debtors or the Distribution Trust.  There is no provision in Article XIII for a creditor to seek relief from the Bankruptcy Court to permit the exercise of setoff or recoupment, which could allow a creditor such as a landlord under a rejected real property lease to apply a previous security deposit in satisfaction of a portion of its claim.  As such, such claimants will potentially receive less than they would if the debtors were liquidated under Chapter 7.  11 U.S.C. 1129(a)(7)(A)(ii).  While prohibiting the exercise of setoff and recoupment by creditors, the Second Amended Plan inequitably preserves setoffs by the Debtors and Distribution Trust.  See Article XI(J) of Second Amended Plan at pp. 85-86.

5.     It is well-settled that a landlord is permitted to recoup its damages, to the extent of an allowed claim consistent with the damages "cap" of Bankruptcy Code section 502(b)(6), against a security deposit.  In re PPI Enterprises, Inc., 324 F.3d 197, 208 (3d Cir. 2003) ("[T]he prevailing view ... favors deduction of a security deposit from the § 502(b)(6) cap of a landlord's claim"); In re APF Co., 270 B.R. 363, 364-365 (Bankr. D. Del. 2001) ("Cases have uniformly held that security deposits held by the landlord or applied by the landlord after termination of the lease will be deducted from that landlord's § 502(b)(6) claim."); see also In re PYXSYS Corp., 288 B.R. 309, 319 (Bankr. D. Mass. 2003) ("Regarding the security deposit, it is clearly the case that Congress intended the amount of a security deposit to be applied to a landlord's pre-petition

claims, whether by way or lease arrearages or lease rejection damages."); In re Atlantic Container Corp., 133 B.R. 980, 988 (Bankr. N.D. Ill. 1991) ("It is well-settled that a security deposit held by a lessor on a rejected lease must be applied against the maximum claim for lease termination damages allowed to the lessor under §502(b)(6)."). By prohibiting the exercise of setoff and recoupment, the Second Amended Plan alters this principle. If the Second Amended Plan is read literally, leasehold security deposits will potentially be subject to turnover claims by the Distribution Trust under Bankruptcy Code section 542(b) following rejection of a lease, leaving a landlord under a rejected lease with only an unsecured lease rejection claim, deprived of the benefit of any security deposit bargained for with its tenant.

6.      While there is conflicting authority as to whether the provisions of Bankruptcy Code section 553 have precedence over the discharge provided by Section 1141 and, under what circumstances, a Chapter 11 plan can abrogate a party's setoff rights, compare In re De Laurentiis Entertainment Group, Inc., 963 F.2d 1269, 1274-1277 (9th Cir. 1992) with In re Continental Airlines, 134 F.3d 536, 541-542 (3d Cir. 1998); see also United States v. Maxwell, 157 F.3d 1099, 1102 (7th Cir. 1998), there does not appear to be any such authority with respect to rights of recoupment. Indeed, preservation of recoupment rights in other contexts appears well-recognized in the Third Circuit. See, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 257-258 (3d Cir. 2000) (recoupment not extinguished by Section 363 sale); In re Rooster, Inc., 127 B.R. 560, 567-568 (Bankr. E.D. Pa. 1991). Under the Third Circuit's definition of recoupment, i.e., setting up of an obligation arising from the same transaction as a means of reducing or eliminating the claim (see Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984)), the reduction of a claim for damages for breach of lease by the amount of the security deposit involves the application of the doctrine of recoupment.

7.      Here, the injunction against set-off and recoupment rights is overbroad and improper and the Second Amended Plan should be modified to recognize a landlord's right to apply a security deposit to the extent of its allowed claim under Bankruptcy Code section 502(b).

## The Plan Improperly Provides for Rejection of Leases Upon the Effective Date, Not the Confirmation Date, Contrary To Bankruptcy Code section 365(d)(4)

8.      Article XIV(A) of the Second Amended Plan (page 96) provides, in part, that "[o]n the *Effective Date*, all Executory Contracts and unexpired leases not assumed before the Confirmation Date will be deemed rejected." (Emphasis added.)  No specific or projected Effective Date is provided for by the Second Amended Plan and, indeed, the Second Amended Plan provides that "[i]f each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived by the Debtors, ... the Confirmation Order may be vacated by the Bankruptcy Court ...." (Article XV(D) of Second Amended Plan, page 98.)  Such approach with respect to the timing of rejection of real property leases, including Debtors' Lease with Griffin, is contrary to Bankruptcy Code section 365(d)(4) and thus cannot be part of a confirmed Chapter 11 plan under Bankruptcy Code section 1129(a)(1).

9.      While assumption or rejection of a debtor's unexpired leases of nonresidential real property can be effectuated though a Chapter 11 plan of reorganization (11 U.S.C. §1123(b)(2)), there is no authority for a reorganized debtor to assume or reject leases *following confirmation of a plan of reorganization.*  Bankruptcy Code section 1123(b)(2) provides that "a plan may, *subject to Section 365* of this title, provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtor not previously rejected under this section." (Emphasis added.)

10. The general rule of the Bankruptcy Code limits a debtor's ability to assume or reject executory contracts and unexpired leases to before the date of entry of an order confirming a plan. 11 U.S.C. § 365(d)(2). Congress afforded landlords of nonresidential real property, like Griffin here, additional protections, providing a stricter and firm deadline for assumption or rejection of nonresidential leases. The language of Bankruptcy Code section 365(d)(4) is clear, limiting a debtor's ability to assume or reject executory contracts and unexpired leases to before the date of *entry of an order confirming a plan*, not the plan effective date. Indeed, the imitations of Section 365(d)(4)(A) are consistent with other authorities providing that assumption or rejection of leases is limited by the express terms of Section 365(a) to a trustee, which includes a debtor-in-possession by virtue of Section 1107(a), but does not extend to reorganized debtors. See In re Grinstead, 75 B.R. 2, 3 (Bankr. D. Minn. 1985) ("There is no debtor in possession status of a debtor post confirmation.")].

11. Bankruptcy Code section 365(d)(4), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), now provides:

(A) Subject to subparagraph (B), an unexpired lease of non-residential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that non-residential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the *earlier of*:

(i) the date that is *120 days after the date of the order for relief*; or

(ii) the date of the *entry of an order confirming a plan*.

(Emphasis added.)

12. The Supreme Court has made it clear that in interpreting a statute, a court is to "presume that a legislature says in a statute what it means and means in a statute what is says." Connecticut Nat'l Bank v. Germain, 112 S.Ct. 1146, 1149, 503 U.S. 249, 253-254 (1992). "[T]here is a strong and longstanding view that the words of a statute are supreme and, if they are

clear, they should be taken as fully embodying what the legislature intended.  If the text is not ambiguous, that is the end of the inquiry."  In re Kane, 336 B.R. 477, 486 (Bankr. D. Nev. 2006).

13.    Landlords should not be exposed to continued periods of uncertainty, outside the parameters of the Bankruptcy Code, as to whether and when these liquidating Debtors will vacate leased properties.  It is important to note that Debtors have not obtained an extension of time to assume or reject real property leases under Bankruptcy Code section 365(d)(4)(B) and the initial 120-day period to assume or reject under Section 365(d)(4)(A) will expire on September 1, 2015.  Bankruptcy Code section 365(d)(4) is self-executing.  In re Tubular Technologies, Inc., 348 B.R. 699, 709-710 (Bankr. D. S.C. 2006); see also Southwest Aircraft Servs., Inc. v. City of Long Beach (In re Southwest Aircraft Servs., Inc.) 831 F.2d 848 (9th Cir. 1987), cert. denied 487 U.S. 1206, 101 L.Ed.2d 885, 108 S. Ct. 2848 (1988).  Even under Debtors' approach (i.e., reliance on the plan Effective Date rather than Confirmation Date), Debtors' real property leases would be deemed rejected by operation of law on September 1, 2015 (120 days after the May 4, 2015 Petition Date) and Debtors would have a duty to immediately vacate the leased premises.  See, e.g., Anderson v. Elm Inn, Inc. (In re Elm Inn, Inc.), 942 F.2d 630, 633 (9th Cir. 1991) ("By operation of law, the debtor's possessory interest in the lease terminated on [the date of rejection], and the lessor's right to immediate surrender of the property simultaneously accrued."); In re Deli Den, LLC, 425 B.R. 725, 726-727 (Bankr. S.D. Fla. 2010); In re Ames Department Stores, Inc., 306 B.R. 43, 52 (Bankr. S.D.N.Y. 2004) ("[A]fter rejection, the debtor has no right to continued occupancy of the premises it occupied under the now-rejected lease.") In re Chris-Kay Foods East, Inc., 118 B.R. 70, 72 (Bankr. E.D. Mich. 1990) ("A majority of courts which have addressed this question have held that § 365(d)(4) prevails over contrary state law, and that a lessor of non-residential property is

therefore entitled to immediate possession."); In re Giles Associates, Ltd., 92 B.R. 965, 968 (Bankr. W.D. Tex. 1988) (immediate surrender is mandatory).

14.    The Second Amended Plan, as proposed, would effectively permit the Debtors to circumvent the requirements of Bankruptcy Code section 365(d)(4) and use and occupy leased premises beyond entry of the confirmation order.  There is no authority that would permit the Debtors to do so and then place the burden on landlords to take action should the Effective Date not occur.  It is widely accepted that the purpose of Bankruptcy Code section 365(d)(4) was to prevent trustees and debtors-in-possession from taking too much time in deciding whether to assume, assume and assign or reject unexpired nonresidential real property leases.  See In re Channel Home Centers, Inc., 989 F.2d 682, 686 (3rd Cir. 1993).  Allowing the exercise of rights under Bankruptcy Code section 365 after confirmation of a Chapter 11 plan is contrary to the legislative objective of advancing, rather than delaying, a trustee or debtor-in-possession's action on unexpired nonresidential real property leases.

### The Second Amended Plan Includes Improper Third-Party Releases

15.    Section XIII.C.2 of the Second Amended Plan includes broad third-party party releases to the "Administrative Agent, the Prepetition Lenders, [and] their respective Related Persons."  Such third-party releases are impermissible except in rare circumstances.  In re Washington Mutual, Inc., 442 B.R. 314, 352 (Bankr. D. Del. 2011) ("This Court has previously held that it does not have the power to grant a third party release of a non-debtor.").  Indeed, "'non-consensual releases by a non-debtor of other non-debtor third parties are to be granted only in 'extraordinary cases,' and that the 'hallmarks of a permissible non-consensual release' were 'fairness, necessity to the reorganization, and specific factual findings to support these conclusions.'"  In re Tribune Co., 464 B.R. 126, 178 (Bankr. D. Del. 2011) (Carey, J.) (quoting

Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 212-214 (3d Cir. 2000).)

16.    Moreover, the Washington Mutual, Inc. court "conclude[d] that the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place)." 442 B.R. at 355.  Indeed, "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release." Id.

17.    Here, not only have Debtors failed to show that this is an "extraordinary case" allowing for third-party releases, but they have also failed to demonstrate how the third-party releases are fair, why they are necessary to the reorganization, and what specific factual findings, if any, support the releases.  While the Debtors provide for an affirmative "opt-out" box on the Plan Ballot, a creditor would still be held to "consent" to the third-party releases if the box remained unchecked or if the creditor did not return a ballot and, thus, this is exactly the practice that was criticized in In re Washington Mutual, Inc., 442 B.R. at 352

18.    The Court should not hesitate to deny confirmation of Debtors' Second Amended Plan on this ground alone, or, at a minimum, require the Second Amended Plan and Ballot to be revised to provide that only those creditors that vote in favor of the Plan *and* affirmatively "opt-in" to the third-party releases are bound by such releases.

### Joinder

19.    To the extent not inconsistent with the foregoing, Griffin joins in the objections to confirmation of Debtors' Second Amended Plan asserted by Debtors' other landlords.

### Conclusion

20.    In sum, the Second Amended Plan should be modified to remove the many unfair and unlawful provisions that seek to strip the rights of creditors and other interested parties,

including the injunction against set-off and recoupment for landlord security deposits and the third-party releases.   The hearing on confirmation of the Second Amended Plan should be continued so that Debtors may properly reject their remaining leases and vacate leased premises prior to entry of a confirmation order, as contemplated by Bankruptcy Code section 365(d)(4).

Dated: August 21, 2015

Ivan M. Gold
ALLEN MATKINS LECK GAMBLE &
 MALLORY LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA  94111-4015
(415) 837-1515
igold@allenmatkins.com

-and-

/s/ Karen C. Bifferato
Karen C. Bifferato (Bar No. 3279)
CONNOLLY GALLAGHER LLP
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 888-6221
kbifferato@connollygallagher.com

Attorneys for BRE/OC GRIFFIN, L.L.C.

#05187019