# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:           Case No. 15-10952-KJC
In re                                              :           (Chapter 11/Jointly Administered)
:
CORINTHIAN COLLEGES, INC., *et al.*     :           Hearing Date:
:              August 26, 2015 at 1:00 p.m.
Debtors.              :
---------------------------------------------------------------x           Re: Docket Number 655

## UNITED STATES' OBJECTION TO CONFIRMATION

The United States files this objection to confirmation of the Debtors' proposed liquidation plan ("Plan" [Docket No. 655]).[1] In support of this objection, the United States submits as follows[2]:

## INTRODUCTION

1. In order for the Court to confirm the Debtors' Plan, it must find that the Plan complies with all applicable provisions of the Bankruptcy Code. As set forth below, to the extent the Plan (i) fails to comply with the absolute priority rule, (ii) improperly seeks to distribute funds that are ED's property and not property of the Debtors' estates, and (iii) contains improper release language, the Plan is unconfirmable, as written.

2. The Debtors participated in the grant and loan programs under Title IV of the Higher Education Act of 1965 ("HEA"), as amended, 20 U.S.C. §§ 1070 *et seq.* and 42 U.S.C. §§ 2751 *et seq.* (Title IV, HEA programs). Pursuant to this participation, the Debtors received substantial amounts of funds from the Department of Education ("ED") on behalf of students

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[2] Debtors filed their Notice of Filing of Modification to Injunction Provision of Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation on August 20, 2015 at 8:23 p.m. ("Revised Injunction") [Docket No. 805]. The United States has not had sufficient time to review the Revised Injunction and reserves its rights to object to the Revised Injunction up to the confirmation hearing on August 26, 2015.

attending the Debtors' schools in the form of loans between students and ED under Title IV, Part D, 20 U.S.C. §§1087a *et seq.* ("Direct Loans"). When the Debtors closed abruptly on April 27, 2015, some students who received Direct Loans had money on deposit with the Debtors, entitling them to priority under section 507(a)(7) of the Bankruptcy Code. The Plan impermissibly accords no priority to these Direct Loans students. The Court should not approve the Plan absent changes to preserve the students' rights in conformance with the Bankruptcy Code.

3. Additionally, the Debtors' receipt of these federal funds carried significant obligations, including that such funds were held in trust for ED until properly disbursed ("Federal Trust Funds"). As explained below, on the Petition Date, Federal Trust Funds may have been in the Debtors' possession. To the extent of such funds, the Plan impermissibly allocates and distributes these Federal Trust Funds, which are not property of the estate. The Court should not approve the Plan absent changes to carve out these Federal Trust Funds.

## ARGUMENT

### A. The Plan Cannot be Confirmed to the Extent it Violates the Bankruptcy Code's Priority Rules

4. The Court cannot confirm the Plan unless it "complies with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Here, the Plan cannot be confirmed because its treatment of students' priority claims under section 507(a)(7) violates the Bankruptcy Code.

5. Section 507(a)(7) provides for priority treatment of "allowed unsecured claims of individuals, to the extent of $2,775 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the . . . purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). This priority applies to a student's claim for the refund of tuition paid to

a Debtor school before the Petition Date where the student was denied the education promised because the Debtor closed operations. *See In re Longo*, 144 B.R. 305, 312 (Bankr. D. Md. 1992) (holding that tuition refund claims are entitled to the priority afforded under the predecessor to section 507(a)(7)).

6. The Plan violates section 507(a)(7) in two ways. First, it impermissibly excludes Direct Loan (Title IV, Part D) recipients from the definition of section 507(a)(7) priority:

> "Student 507(a)(7) Deposit Claims" means the Claims of Students arising from the deposit prior to the Petition Date with any of the Debtors' schools by or on behalf of a Student (*other than from grant monies for which the Student is not personally liable or Title IV, Part C* [sic] *funds*)[3] but for which education was not provided due to the Debtors' cessation of educational programs or campus operations, which are entitled to priority treatment under section 507(a)(7) of the Bankruptcy Code.

Plan § II.A.143. (emphasis added).[4] The Plan provides no legal basis for this exclusion, nor could it. The plain language of section 507(a)(7) provides no basis for excluding from priority cash deposits derived from Title IV, Part D funds. Nor have courts considering the issue drawn such a distinction. *See Longo*, 144 B.R. at 312; *see also In re Four Star Fin. Servs.*, LLC, 469 B.R. 30, 34 (C.D. Cal. 2012) (noting that tuition payments fall within the predecessor to section 507(a)(7)'s priority); *In re Glass*, 203 B.R. 61, 63 (Bankr. W.D. Va. 1996) (same). Unless the Plan ensures that Direct Loan recipients are entitled to section 507(a)(7) priority, the Plan violates the Bankruptcy Code and cannot be confirmed.

7. To the extent a Direct Loan student had a deposit with the Debtors on the Petition Date, the availability of a discharge for the Direct Loan does not relieve the Debtors from

---

[3] Based upon communications with Debtors' counsel, the United States understands that this provision of the Plan will be amended to read "Title IV, Part D funds."

[4] Possibly, because they are carved out of the definition of Student 507(a)(7) Deposit Claims, Title IV, Part D, Direct Loan recipients may be treated as Class 3 Other Priority Claims, but if that is the case, the Plan should be amended to so reflect.

complying with the Bankruptcy Code. While some Direct Loan students that attended Debtors' schools may be entitled to a discharge of their federal loans simply because the school closed ("Closed School Discharge"), *see* 20 U.S.C. §§ 1087(c)(1), 1087a(b)(2), 34 C.F.R. § 685.214(a)(1), the Closed School Discharge is not automatic, and some Direct Loan students are not entitled to such a discharge. First, the Direct Loan student must apply for such relief, 34 C.F.R. § 685.214(c), and while thousands have applied, thousands have not. *See ¶* 10, below. Second, Direct Loan students must meet certain rules and requirements before a Closed School Discharge is granted. *See, e.g.*, 34 C.F.R. § 685.214(c)(1)(iii) (requiring borrower to cooperate with ED enforcement actions and provide documentation before granting discharge). If the Direct Loan student fails to meet those requirements, the recipient will not receive a Closed School Discharge. Finally, Direct Loan students who transfer from a closed school (like the Debtors' schools) and into a new school are not entitled to a Closed School Discharge. *See id.* at § 685.214(c)(1)(i)(C). Because the Debtors did not negotiate a teach-out with other schools, without a section 507(a)(7) priority claim, these students will lose the money on deposit with the Debtors at the time of their closure. Thus, some and likely many Direct Loan students who attended Debtors' schools are either (a) not eligible for or (b) will not apply to receive a Closed School Discharge. Those students are entitled to section 507(a)(7) priority.

8. Second, the Plan does not ensure that Allowed Student 507(a)(7) Deposit Claims will have priority over General Unsecured Claims as required by the Bankruptcy Code. Under the Plan, payment of Allowed Student 507(a)(7) Deposit Claims is limited to the net proceeds of the Student Trust Assets, which the Plan values at $4.3 million.[5] Plan at § X.C; Plan at § I. Holders of Allowed General Unsecured Claims, on the other hand, will be paid 70 percent of all

---

[5] This number appears to only be $4.05 million as Student Trust expenses will be paid before payment of Allowed Student 507(a)(7) Deposit Claims. *See* Student Trust Agreement, Section 3.4 [Docket No. 767, Exhibit B to Plan Supplement].

of the General Unsecured Creditors Recovery Fund Assets. Plan at § VIII.4.c. Thus, in the event that Allowed Student 507(a)(7) Deposit Claims exceed the value of "net proceeds of the Student Trust Assets," Holders of Allowed General Unsecured Claims will receive distributions on account of their claims even though Holders of Allowed Student 507(a)(7) Claims are not paid in full. Plan at § X.C. Because that result would contravene section 507(a)(7), the Plan cannot be confirmed.

9. Furthermore, the Debtors have represented that they would file amended Schedules of Assets and Liabilities, which would include Allowed Student 507(a)(7) Claims they have identified. But Debtors have not yet filed the amended schedules. Thus, to determine the amount of claims the Debtors estimate to be outstanding is impossible. The Plan provides no contingency in the event that such claims exceed $4.3 million. If Direct Loan students (who have not received a Closed School Discharge) are properly included in the definition of Student 507(a)(7) Deposit Claims, such claims will likely exceed $4.3 million.

10. Indeed, ED estimates that over 13,500 former CCI students were Title IV, Part D loan recipients who were attending one of the Debtors' schools when they closed. Appel Decl. ¶ 25, June 23, 2015 [Docket No. 461-1 (Exhibit 1 to United States' Objection to Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant to 11 U.S.C. §§ 362(a) and 105(a) and Granting Related Relief (Corrected))]. But about 10,000 of those loan recipients had not filed a Closed School Discharge application with ED as of mid-June. *Id.* Even if only one-third of those 10,000 students never receive a Closed School Discharge and are entitled to the full payment under section 507(a)(7), they would be owed over $9 million.[6]

11. Even if Direct Loans are not entitled to section 507(a)(7) priority status, the students' non-federal payments to the Debtors could exceed $4.3 million. Because CCI was a

---

[6] Those who apply must still meet the regulatory requirements for the Closed School Discharge to be granted.

for-profit institution, ten percent of their educational costs had to be paid with private money – either loans or grants or personal funds – and, therefore, non-federal funds. 34 C.F.R. § 668.14(b)(16). Debtors' schools were charging $20,000 or more for a year of higher education.[7] Thus, even if a student's program-year was divided into quarterly sessions, each quarter's tuition and fees would be about $5,000. The required ten percent of $5,000 for private funds is $500 for each quarter. The more than 13,500 students who were attending a Debtor's school when it closed in April 2015, therefore, could have paid Debtors $6.75 million in private funds.

12. Finally, given the notice issues raised by the Student Committee in this case,[8] several late claims may be filed by non-Direct Loan recipients that should be accorded section 507(a)(7) priority. Thus, the Plan cannot be confirmed unless it provides for the payment of all potential section 507(a)(7) claims.

### B. Undisbursed Title IV Funds Are Not Property of the Estate and Cannot Be Used to Fund the Plan

13. Under ED's regulations, "funds received by an institution under the title IV, HEA programs are held in trust for the intended student beneficiaries [and] the Secretary [of Education]," and "[t]he institution, as a trustee of Federal funds, may not use or hypothecate (i.e., use as collateral) title IV, HEA program funds for any other purpose." 34 C.F.R. § 668.161(b);

---

[7] *See* U.S. Senate Health, Ed., Labor & Pensions Comm. Majority Comm. Staff Report & Accompanying Minority Comm. Staff Views, "For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success," Pt. II at 385 (July 30, 2012) (available at http://www.help.senate.gov/imo/media/for_profit_report/PartII/Corinthian.pdf ) ("[A] Medical Assistant diploma program at Corinthian's Heald College in Fresno, CA, costs $22,275. . . An Associate degree in paralegal studies at Corinthian-Owned Everest College in Ontario, CA, costs $41,149. . . . Everest College charges $82,280 for a Bachelor's Degree in Business.").

[8] *See* Student Comm. Mtn. at 2 [Docket No. 621] ("Given the complexity of issues related to the Debtors' bankruptcy, the speed at which these Bankruptcy Cases are progressing and the breadth of the Debtors' former student body, Students have not received notice that is effective to inform them of the existence of these Bankruptcy Cases, their right to file a claim, the basis of such claims or the importance of filing a proof of claim.").

*see also* 34 C.F.R. § 668.163(a) ("An institution must maintain title IV, HEA program funds in a bank or investment account . . . [i]ncluding in the name of each account the phrase 'Federal Funds'"). Further, funds held in trust for the United States and students are not property of the Debtors' estate. *See, e.g.*, *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) ("Congress clearly intended the exclusion created by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *In re Kornblum & Co., Inc.*, 81 F.3d 280, 284 (2d Cir. 1996) ("[T]he Bankruptcy Code excludes PACA trust assets from the bankruptcy estate.").[9]

14. Thus, to the extent that the Debtors' accounts contain Title IV funds that have not been disbursed to students—*i.e.*, funds for tuition and fees or other institutional charges that were not credited to a student's account, or for living expenses that were not disbursed directly to a student by check—such funds are not property of the estate and may not be distributed under the Plan. *Cf. In re Joliet-Will County Community Action Agency*, 847 F.2d 430, 432 (7th Cir. 1988) (holding that federal grant funds were not property of the estate because the recipient acted as a "trustee, custodian or other intermediary" for the benefit of others).[10] The total amount of undisbursed Title IV funds in the Debtors' accounts remains unclear. The Debtors' practice was to transfer Title IV funds from the 34 "T4 Accounts" in which the funds were initially deposited

---

[9] Statutes or regulations can create a trust even in the absence of express trust language. *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206 (1983) (holding that certain timber management statutes and accompanying regulations, established a statutory trust for Indian tribes even though trust language did not explicitly provide for a trust); *In re Arctic Exp. Inc.*, 636 F.3d 781, 795 (6th Cir. 2011) (holding that regulations of the Motor Carrier Act "implicitly creates a statutory trust for the benefit of owner-operators"). Here, as ED's regulations clearly state that the Title IV funds are held in trust, an express statutory trust has been created.

[10] Students can qualify to receive federal student financial assistance to cover the costs of tuition, books, fees, and other institutional charges, and living expenses. 20 U.S.C. § 1087ll. ED's regulations require a school to disburse grant or loan funds that are intended to satisfy tuition and institutional charges by crediting the grant or loan amount against the tuition and fees owed. 34 C.F.R. § 668.164(a)(1). The school may initially credit to the student's account at the school the full amount of aid, including that planned for living expenses; such a credit creates a "credit balance" on the student's school account. 34 C.F.R. § 668.164(e). The school must then deliver that amount to the student by "direct payment" —by issuing a check to the student. 34 C.F.R. § 668.164(c), (e); *see also* Docket No. 9 ¶ 19.


to a "T4 Concentration Account," and then to various operating accounts, including the "BofA Concentration Account," the "BMO Harris Concentration Account," and the "Union Concentration Account." [Docket No. 9 ¶¶ 16-17.] So far, the United States has been unable to trace undisbursed Title IV funds—including funds for living expenses that the Debtors did not deliver to students—through the Debtors' various accounts. The Debtors' T4 Accounts and T4 Concentration Account, however, do appear to contain undisbursed Title IV funds. Specifically, the Debtors' May 2015 Operating Report shows that Debtors' T4 Accounts and T4 Concentration Account collectively had a balance of $111,484 on May 31, 2015. [Docket No. 636 at 5; Docket No. 9 at 46-47.] In any event, the United States objects to the Plan to the extent it would distribute Title IV funds that have not been disbursed to students, which are not property of the Debtors' estate.[11]

### C. The United States' Right of Offset

15. Section 553 of the Bankruptcy Code preserves a creditor's setoff right. 11 U.S.C. § 553; *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995). Specifically, it states (with exceptions not applicable here) that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under [the Bankruptcy Code] against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a).

16. A creditor has the right to set off mutual pre-petition debts and claims as well as mutual post-petition debts and claims. *Zions First Nat'l Bank, N.A. v. Christiansen Bros. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560, 1569 (10th Cir. 1995); *Palm Beach County Bd. of*

---

[11] The United States has also sought to preserve its rights to any federal funds held in trust by the Debtors by moving to extend the "challenge period" under the Cash Collateral Order [Docket No. 346] until the Effective Date of the Plan. United States' Motion To Extend The Investigation Termination Date In The Cash Collateral Order [Docket No. 765].

*Pub. Instr. v. Alfar Dairy, Inc. (In re Alfar Dairy, Inc.)*, 458 F.2d 1258, 1262 (5th Cir. 1972).

Accordingly, to the extent that the United States owes a debt to any of the Debtors, the United States may exercise its setoff right with respect to a liability of any of the Debtors.

       17. Section XIII.A of the Plan provides, in relevant part:

> Except as otherwise provided in the [Plan] or to the extent necessary to enforce the terms and conditions of the [Plan], the Confirmation Order or a separate Order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or interests in the Debtors shall be permanently enjoined from taking any of the following actions against the Debtors, their Estates, the Distribution Trust, or any of their respective property or assets on account of any such Claims or interests: . . . (d) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, except as otherwise set forth in Section XI.J. of the [Plan]."

(Plan at § XIII.A.)

       18. Further, section XI.J provides, in relevant part:

> Rights of a setoff of any Entity or Person are preserved for the purposes of asserting such rights as a defense to any Claims or Causes of Actions of the Debtors, their Estates, or the Distribution Trustee or Student Trustee, as applicable, and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

(Plan at § XI.J.)

       19. While the Plan appears to preserve the United States' setoff rights, the United States objects to the Plan to the extent it purports to enjoin the United States from asserting its setoff rights. In any event, this objection is a timely assertion of the United States' right of setoff prior to confirmation with respect to any debts that may be owed by the United States to the Debtors,[12] and, as such, its right of setoff is "preserved under § 553 in [the] bankruptcy proceeding." *United States v. Continental Airlines (In re Continental Airlines)*, 134 F.3d 536, 541 (3d Cir. 1998).

---

[12] For example, the Consumer Financial Protection Bureau filed a proof of claim in the amount of $467,748,584. (POC No. 156.)

20. "Recoupment, on the other hand, allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be 'setoff' under 11 U.S.C. § 553." *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984). "The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Id*. Accordingly, the Plan should also recognize that it does not impact the United States' recoupment rights.

### D. The Plan Releases Non-Debtor Third Parties

21. The Plan may improperly discharge all debts of the Debtors in exchange for any Allowed Claims by ED in either Class 4 or Class 5: "Holders of Allowed Student Claims and Allowed Government Education Claims [,which may include ED claims], . . . shall receive, ***in full satisfaction and settlement of and in exchange for such Allowed Claims***, a pro rata share of the Student Trust Assets" (emphasis added). Plan § VIII.A.4.c ("Treatment"). Class 4—General Unsecured Creditors—which may include ED if it submits a proof of claim—are treated with the same offending language. Plan § VIII.A.4.c. Although the word "discharge" does not appear in this provision, ED objects to this clause because the effect is potentially the same as a discharge. Discharge of the Debtors may be used in future proceedings to protect the Debtors' principals from administrative, civil, or criminal consequences.

22. Specifically, ED could deny Title IV participation to schools at which the Debtors' principals may be involved because of the existing debt incurred by a Debtor school. 34 C.F.R. § 668.15(c).

23. In addition, while such discharge language may be permitted in a chapter 11 reorganization, it is not appropriate in a liquidation plan. Code section 524(e) "states generally that a discharge of a debtor's obligations in bankruptcy does not relieve non-debtor parties of liability for debts." *Gillman v. Continental Airlines* (*In re Continental Airlines*), 203 F.3d 203, 207-08 (3d Cir. 2000). Thus, the discharge does not normally affect those who have "not formally availed themselves of the benefits and burdens of the bankruptcy process." *Id.* at 211. In *Gillman*, non-debtors objected to the discharge in a reorganization plan of their claims against the debtors' directors and officers (who were also non-debtors). 203 F.3d at 207. The court found that the district court's order "was not accompanied by any findings that the release was fair to the [third parties] and necessary to the . . . Debtors' reorganization. Without such findings, a release and permanent injunction cannot stand on their merits under any of the standards set forth in the case law of other circuits." *Id.* at 214. *Cf. In re U.S. Brass*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) (approving disclosure statement providing that a third party would not be released if it did not make substantial monetary contribution).

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny confirmation of the Plan unless:

(1) The definition of "Student 507(a)(7) Deposit Claims" is modified to include Direct Loans;

(2) the Plan ensures that Allowed Student 507(a)(7) Deposit Claims will be paid pursuant to the Bankruptcy Code's priority rules;

(3) any funds held in trust for the United States are preserved and not distributed under the Plan;

(4) the United States' setoff and recoupment rights are preserved;

    (5)  the Debtors receive no greater discharge than that permitted under the Bankruptcy Code.

Dated:  August 21, 2015                              Respectfully submitted,

                                                   BENJAMIN C. MIZER
                                                   Principal Deputy Assistant Attorney General

                                                   CHARLES M. OBERLY, III
                                                   United States Attorney

                                                   ELLEN SLIGHTS
                                                   Assistant United States Attorney

                                                   /s/ Danielle A. Pham
                                                   RUTH A. HARVEY
                                                   TRACY J. WHITAKER
                                                   LLOYD H. RANDOLPH
                                                   (D. C. Bar No. 376009)
                                                   MICHAEL R. SEW HOY
                                                   JOHN R. KRESSE
                                                   DAVID H. DECELLES
                                                   DANIELLE A. PHAM
                                                  Civil Division
                                                   U. S. Department of Justice
                                                   P. O. Box 875
                                                   Ben Franklin Station
                                                   Washington, D.C.  20044-0875
                                                   (202) 307-0356

                                                   ATTORNEYS FOR THE UNITED STATES

CERTIFICATE OF SERVICE

I, Danielle A. Pham, hereby certify that on the 21st day of August, 2015, I caused a true and correct copy of the foregoing **UNITED STATES' OBJECTION TO CONFIRMATION** to be served electronically through the Court's ECF system upon those who have entered an appearance in this proceeding, and through electronic mail on the parties listed below.

Dated: August 21, 2015

/s/Danielle A. Pham
DANIELLE A. PHAM

COUNSEL TO THE STUDENT COMMITTEE
Christopher A. Ward, Esq.
Shanti M. Katona, Esq.
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
cward@polsinelli.com
skatona@polsinelli.com

Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
Cynthia C. Hernandez, Esq.
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, California 90067
sgautier@robinskaplan.com
lball@robinskaplan.com
chernandez@robinskaplan.com

Mark Rosenbaum, Esq.
Anne Richardson, Esq.
Alisa Hartz, Esq.
Dexter Rappleye, Esq.
PUBLIC COUNSEL LLP
610 S. Ardmore Avenue
Los Angeles, CA 90005
mrosenbaum@publiccounsel.org
arichardson@publiccounsel.org
ahartz@publiccounsel.org
drappleye@publiccounsel.com

COUNSEL TO THE DEBTORS
Mark D. Collins, Esq.
Michael J. Merchant, Esq.
Marisa A. Terranova, Esq.
Amanda R. Steele, Esq.
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
collins@rlf.com
merchant@rlf.com
terranova@rlf.com
steele@rlf.com

COUNSEL TO BANK OF AMERICA, N.A., IN ITS CAPACITY AS ADMINISTRATIVE AGENT FOR THE LENDERS
POTTER ANDERSON & CORROON LLP
Jeremy W. Ryan
Etta R. Mayers
1313 North Market Street, Sixth Floor
Wilmington, DE 19899-0951
jryan@potteranderson.com
emayers@potteranderson.com

SIDLEY AUSTIN LLP
Jennifer C. Hagle
Anna Gumport
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
jhagle@sidley.com
agumport@sidley.com

<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>
Jeffrey H. Schwartz, Esq.
Bennet S. Silverberg, Esq.
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
jschwartz@brownrudnick.com
bsilverberg@brownrudnick.com

Frederick B. Rosner, Esq.
Julia B. Klein, Esq.
The Rosner Law Group LLC
824 Market St. Suite 810
Wilmington, DE 19801
rosner@teamrosner.com
klein@teamrosner.com


<u>OFFICE OF THE UNITED STATES TRUSTEE</u>
Richard L. Schepacarter, Esq.
Timothy Jay Fox, Jr., Esq.
Office of the United States Trustee
U. S. Department of Justice
844 King Street, Suite 2207
Lockbox #35
Wilmington, DE 19801
timothy.fox@usdoj.gov
richard.schepacarter@usdoj.gov