IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| CORINTHIAN COLLEGES, INC., *et al.*, | ) | Case No. 15-10952 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | RE: D.I. 655 |

**OBJECTION OF
GUY REYNOLDS AND CHRISTINE SEYMOUR, ON
BEHALF OF THEMSELVES AND OTHERS SIMILARLY
SITUATED, TO CONFIRMATION OF DEBTORS' SECOND
AMENDED AND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION**

Guy Reynolds and Christine Seymour (the "Plaintiffs"), on behalf of themselves and all others similarly situated (the "WARN Claimants"), submit this objection (the "Objection") to the Debtors' Second Amended and Modified Chapter 11 Plan of Liquidation (D.I. 655, the "Plan").[1]

**INTRODUCTION**

1. The WARN Claimants object to confirmation of the Plan because the Plan does not establish an adequate claims reserve for the WARN Claimants' $6-$9 million priority wage claim; as such, the Plan is not feasible.

**FACTUAL BACKGROUND**

**A.    General Background**

2. The Debtors were engaged in the business of providing educational services.

3. As detailed in the Plan, most of the Debtors' funding came from the Department of Education under Title IV of the United States Code. Plan, pp. 29-40.

4. The Debtors ran into trouble with regulators and eventually sold or shut down many of their operations. *Id.*

---

[1] The Plan comprises a combined plan and disclosure statement but is referred to herein as the "Plan".

### B. Background of the WARN Claims

5.  Debtors employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

6.  Debtors were "employers," as that term is defined in section 2101(a)(1) of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 – 2109 (the "Federal WARN Act"), and continued to operate as a business until they decided to order mass layoffs or plant closings at their facilities (the "Facilities").

7.  Beginning on or about April 26, 2015, Debtors ordered mass layoffs and/or plant closings at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i).

8.  The mass layoffs or plant closings at the Facilities resulted in "employment losses" as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Debtors' employees as well as thirty-three percent (33%) of Debtors' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01 (a)(8).

9.  The WARN Claimants were terminated by Debtors without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Debtors at the Facilities.

10. The WARN Claimants are "affected employees" of Debtors, within the meaning of 29 U.S.C. § 210l (a)(5).

11. Debtors were required by the WARN Act to give the WARN Claimants at least 60 days advance written notice of their terminations.

12. Debtors failed to give the WARN Claimants written notice that complied with the requirements of the WARN Act.

13. The WARN Claimants are "aggrieved employees" of the Debtors as that term is defined in 29 U.S.C. § 2104(a)(7).

14. Debtors failed to pay the WARN Claimants their respective wages, salary, commissions, bonuses, accrued vacation and personal time off for 60 days following their respective terminations, and failed to make the pension and 401(k) contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

15. Plaintiffs together with other employees similarly situated who worked at the Debtors' Freemont, Hayward, Long Beach, Stockton, Roseville, Modesto, San Francisco, Rancho Cordova, Fresno, Salinas, Milpitas, and Concord California Facilities, and other "covered establishments", are former "employees," of Debtors as defined in section 1400(h) of the California Labor Code, part of the California Worker Adjustment and Retraining Notification Act, California Labor Code §§ 1400-1408 (the "California WARN Act", or with the WARN Act, the "WARN Acts").  Similarly situated employees who worked at Debtors' Portland, Oregon, and Honolulu, Hawaii, and Everest College Phoenix campuses in Phoenix and Mesa, Arizona, and elsewhere were terminated in a mass layoff or shutdown at Facilities under the Federal WARN Act.

16. Debtors terminated Plaintiffs' employment and the employment of approximately 500-800 other similarly situated employees, pursuant to a "mass layoff," "relocation" or "termination" as defined in Cal. Labor Code § 1400, on or about April 26, 2013 or thereafter.

17. Debtors are "employers" as defined in Cal. Labor Code § 1400(b).

18.     Debtors violated Cal. Labor Code § 1401 by ordering a "mass layoff," "relocation" or "termination" in California without giving written notice at least 60 days before the order took effect to (1) the employees affected by the order and (2) the Employment Development Department, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff, relocation or termination occurred.

19.     As a result of Debtors' violation of Cal. Labor Code § 1401, Plaintiffs and the other similarly situated employees are entitled to damages under Cal. Labor Code § 1402(a).

20.     Plaintiffs have incurred and the other similarly situated employees will incur attorney's fees in prosecuting their claims and are entitled to an award of attorney's fees under Cal. Labor Code § 1404.

21.     The facts surrounding the termination of the employment of the WARN Claimants are largely if not entirely uncontested.  Hence, the WARN Claimants will readily establish their *prima facia* case under the WARN Acts.

22.     Moreover, the Debtors are precluded from asserting any affirmative defenses under the Federal WARN Act because they did not distribute any notices 60 days prior to the late-April terminations, nor any writing thereafter that contained "a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).  Absent such writings, the Debtors are precluded from pursuing the federal "faltering company" or "unforeseen business circumstances" affirmative defenses. *In re Dewey & LeBoeuf LLP*, 507 B.R. 522, 531 (Bankr. S.D.N.Y. 2014)(striking affirmative defenses because written notices did not provide a brief statement explaining the reason for shortened notice). *See Sides v. Macon Cnty. Greyhound Park, Inc.,* 725 F.3d 1276 (11th Cir. 2013).

23. These requirements are equally in force under the California WARN Act, which explicitly incorporates the requirements of Federal WARN Act notification. Cal. Labor Code §1401(b).

24. Defendants are precluded from asserting any affirmative defenses under the California WARN Act. That statute does not provide an "unforeseen business circumstances" defense. Defendants cannot raise that statute's "faltering company" defense, because, on information and belief, the California Department of Industrial Relations has not determined that Defendants have met the required predicate conditions for that defense to apply. Cal. Labor Code § 1402.5.

25. The Claims held by the WARN Claimants against the Debtors under the WARN Acts (the "WARN Claims") comprise, in whole or in part, priority claims under 11 U.S.C. §§ 507(a)(4) and (a)(5) because they are wage and benefit claims arising within the earlier of 180 days before the Debtors' bankruptcy filing or the date of the cessation of the Debtors' business.

26. The WARN Claimants estimate that the priority portion of the WARN Claims is between $6 million and $9 million (the "Priority WARN Claims").

27. The WARN Claimants commenced a class action adversary proceeding against debtor Corinthian Colleges, Inc. on May 5, 2015, and amended their adversary complaint on August 20, 2015. This adversary proceeding is pending at Adv. Pro. No. 15-50309 (KJC).

**C. The Plan**

28. The Plan classifies claims and interests into seven classes and two groups of unclassified claims (tax and administrative claims). Plan, pp. 53-54.

29. Other than tax and administrative claims, priority claims are classified into Class 3 ("Other Priority Claims") and Class 5 (Student Claims and Government Education Claims[2]). Plan, p. 54.

30. As required by 11 U.S.C. § 1129(a)(9), the Plan provides for the payment of Other Priority Claims in cash in full "on or as soon as reasonably practicable after, the later of the Effective Date or the date such Other Priority Claim becomes a[n] Allowed [Claim]." Plan p. 67.

31. Payment of Other Priority Claims is to be made from the Unimpaired Claims Cash Reserve. *Id.* However, "[t]o the extent the Unimpaired Claims Cash Reserve is insufficient to pay . . .[such claims] . . . then the Holders of such Allowed Claims shall be paid from the first net proceeds of the Distribution Trust Assets following satisfaction of all Allowed Administrative Expense Claims." *Id.*

32. The Plan defines "Unimpaired Claims Cash Reserve" as follows:

> **157**. "Unimpaired Claims Cash Reserve" means Cash held by the Debtors as of the Effective Date in an amount necessary to pay in full (or reserve for) accrued but unpaid Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Tax Claims[3] (other than Student 507(a)(7) Deposit Claims), as of the Effective Date. . . .
>
> Plan, p. 28.

33. The Plan defines Distribution Trust Assets, essentially, as the residual assets of the estate, including Causes of Action and D&O Policies. Plan, p. 12.

---

[2] Class 5 apparently includes both non-priority and priority claims of these claimants. *E.g.*, Plan.def. 138 ("Student Claims").

[3] At several points throughout the Plan there is a reference to "Other Priority Tax Claims", a term that is not defined. The WARN Claimants assume this is a typographical error and that the reference is intended to be to "Other Priority Claims."

34. The table on page 54 of the Plan states that "Other Priority Claims" are estimated to be $550,000.

## ARGUMENT

35. The Plan is unconfirmable because it is not feasible. 11 U.S.C. § 1129(a)(11).

36. Section 1129(a)(9) requires that priority claims be paid in full.

37. While the Plan provides for Other Priority Claims to be paid in full, it does not contain sufficient means to accomplish this. Where a plan does not contain sufficient means to pay priority claims in full, it is not feasible. *See In re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007) (bankruptcy court erred in confirming plan where it did not consider impact of appeal of conditionally disallowed claim on plan feasibility); *In re Holmes*, 301 B.R. 911, 915 (Bankr. M.D. Ga. 2003) (chapter 11 plan not feasible where debtor merely hoped to compromise IRS claim and "[d]ebtor does not have the ability to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months as proposed in his Chapter 11"); *In re Thornhill*, 268 B.R. 570, 573 (Bankr. E.D. Cal. 2001) (chapter 13 plan not feasible where it did not provide for payment of priority and secured claims in full).

38. Particularly in the case of a liquidating estate such as this, the proper method of addressing priority claims is to establish a disputed claims reserve sufficient to pay all disputed priority claims in full. While the Plan says it will do this by establishing an Unimpaired Claims Cash Reserve sufficient to pay all such claims, the Plan appears to be predicated on the assumption that Other Priority Claims will be only $550,000.

39. This amount is far from sufficient to pay the Priority WARN Claims should they become Allowed Claims. The Priority WARN Claims are estimated to be between $6 million and $9 million.

40. The Plan appears to contain a tacit acknowledgement that the Unimpaired Claims Cash Reserve may be insufficient to pay Other Priority Claims in full because the Plan expressly contemplates that possibility and provides that priority claims will then be paid from the Distribution Trust Assets. Plan, p. 67. Indeed, the Plan contemplates that this reserve may be insufficient even to pay *administrative* claims—suggesting that there may be *no* money to pay Other Priority Claims. Plan, p. 61. The assets of the Distribution Trust, however, appear to consist entirely of litigation and related assets, and hence their value is highly uncertain—the table on p. 54 shows the distribution to general unsecured claims as "undetermined." There is certainly no guaranty that this fund will ever have anything like $6 - $9 million to pay the Priority WARN Claims.

41. Because the Plan does not provide an adequate means of paying the Priority Wage Claims, it is not feasible under 11 U.S.C. § 1129(a)(11).

42. The WARN Claimants also object to the language that provides that priority claims will be paid "as soon as reasonably practicable" after the claims become allowed. This vague language, while commonplace, is not found in the Bankruptcy Code and does not set out any clear limitation as to the timing of payment.

**CONCLUSION**

For all of these reasons, this Court should either deny confirmation of the Plan or require that the Debtors expressly reserve for the full value of all priority claims, including the Priority WARN Claims.

DATED: August 21, 2015

/s/ Christopher D. Loizides
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE  19801
Telephone:     (302) 654-0248
Facsimile:      (302) 654-0728
Email:            loizides@loizides.com

- and -

Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY  10016
Telephone:     (212) 245-1000
E-mail:           jar@outtengolden.com
                      rsr@outtengolden.com