**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 15-10952 (KJC) |
| CORINTHIAN COLLEGES, INC., *et al.*,[1] | (Jointly Administered) |
| Debtors. | Hearing Date: August 26, 2015 at 1:00 p.m. (EDT) |
| | Objections Due: August 21, 2015 at 4:00 p.m. (EDT) |
| | Related to Docket No. 655 |

**LIMITED OBJECTION OF WATT MANAGEMENT COMPANY TO DEBTORS' SECOND AMENDED AND MODIFIED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION**

TO THE HONORABLE KEVIN J. CAREY,
UNITED STATES BANKRUPTCY JUDGE:

Watt Management Company, as agent for Watt Long Beach, LLC (collectively, the "Landlord") hereby files this limited objection (the "Objection") to Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"),[2] and respectfully represents as follows:

**I.    BACKGROUND FACTS**

1.    Corinthian Colleges, Inc., and its affiliated co-debtors (collectively, the "Debtors") filed their voluntary petition for relief under Chapter 11 of Title 11 of the United

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Disclosure Statement and Plan.

States Code on May 4, 2015.  The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2.The Debtors lease commercial space (the "Premises") from the Landlords where they operated one of their college campuses known as a Wyotech Location, pursuant to two leases of nonresidential real property: (a) one for premises (the "2131 Premises") located at 2131 Technology Place, Long Beach, California (the "2131 Lease"); and (b) one for premises (the "2161 Premises," and together with the 2131 Premises, the "Premises") located at 2161 Technology Place, Long Beach, California (the "2161 Lease," and together with the 2131 Lease, the "Leases"), all of which is more commonly known as the CSULB Technology Park.

3.The Debtors ceased operating at the 2161 Premises on or about May 26, 2015, and largely vacated the 2161 Premises as of that date.  Since that date, the parties continue to negotiate a consensual rejection date for the 2161 Lease, as well as the terms of removal of certain hazardous materials and other personal property of the Debtors from the 2161 Premises.  The Debtors have yet to seek to reject the 2131 Lease, and Debtors continue to utilize and occupy the 2131 Premises to conduct their ongoing auction of their remaining property pursuant to a prior order of this Court.  In connection with this sale of property of the Debtors' estates largely for the benefit of its secured lenders, the Debtors are not only selling property that was previously at the Premises, but Landlord understands that the Debtors have collected their property from other campuses shipped to the 2131 Premises for inclusion in the auction and sale.

4.The Debtors filed the Plan, as amended, on July 27, 2015.  The Landlord does not object to the Debtors confirming their Plan.  However, Landlords do object to any injunction or releases affecting their ability to properly assert claims that have yet to billed under the Leases, affecting their setoff and recoupment rights, as well as their ability to assert appropriate defenses

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

or bring claims against the Debtors, their successors, or any appropriate third parties that may be unknown at this time due to the continuing use and occupancy of the Premises.

## II. ARGUMENT

### A. The injunction provisions need revision to protect Landlords' legitimate claims.

5. The expansive provisions relating to injunction, exculpation and releases potentially compromise Landlord's rights to assert legitimate claims under the Leases that survive confirmation, as well as potentially claims based upon the use and occupancy of the 2131 Premises that remains in the Debtors' possession. *See* Plan at Article XIII (A) – (C) (page 90 – 96). The Plan should not preclude Landlord from asserting claims for year-end adjustments and reconciliations under the Leases that have accrued or are accruing, but which remained unbilled at this time. These claims accrue throughout the year, both prior to and after the Effective Date. The Debtors cannot use plan confirmation to avoid liability for these Lease charges. In addition, the Debtors are continuing to conduct an auction of assets at the 2131 Premises. Landlord does not know what claims, if any, may result from the sale and auction at the 2131 Premises, but the Plan should not prejudice any rights Landlord may have to assert any claims that may result from the auction and sale, including indemnity claims that exist under the Leases. The Plan cannot extinguish the Landlord's rights under the Leases, and the Plan should specifically provide that Landlords can amend their claims to assert claims such as the above, as and when they come due or are discovered in the ordinary course.

6. The injunction provision of the Plan is also overbroad with respect to other enforceable rights of Landlord in seeking to prohibit rights of setoff and recoupment. *See* Plan at Article XIII(A)(d) (pages 91). Landlord is entitled to exercise its right to assert setoffs or recoupment irrespective of plan confirmation either defensively, or in connection with the application of security deposit balances. Landlord has security deposits it is holding with respect to the Leases, and it must be allowed apply such security deposits to any outstanding pre-petition and rejection damages owing by the Debtors, at least up to the amount of the rejection damages cap of Section 502(b)(6). *See* In re PPI Enterprises, Inc., 324 F.3d 197, 208 (3d Cir. 2003).

Courts have held that Section 553 takes precedence over the discharge of Section 1141 and that plan confirmation does not steamroll a party's right to setoff. *See* Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entertainment Group Inc.), 963 F.2d 1269 (9th Cir. 1992), *cert. denied* 506 U.S. 918 (1992) (setoff rights survive plan confirmation); *see also* In re Luongo, 259 F.3d 323, 333 (5th Cir. 2001).  The same analysis applies to recoupment, which is similarly unaffected by a debtor's discharge.  *See* In re Madigan, 270 B.R. 749, 754 (9th Cir. BAP 2001); *see also*, Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 257 - 261 (3rd Cir. 2000) (recoupment defense survives free and clear sale of debtor's assets). While the Plan contains a limited exception to the prohibition on asserting setoff rights, the exception does not reference recoupment, is limited in scope, and does not seem to encompass the application of a security deposit.  *See* Plan at Article XI(J) (pages 85).  In contrast, this provision inequitably reserves all rights of the Debtors to assert setoff against claims of other parties.  The Plan should not limit any ability of Landlord to assert setoff or recoupment rights, and Article XIII(A)(d) of the Plan should be modified accordingly.

**B.    The Plan includes improper third party releases.**

7.    The Plan includes broad third-party party releases to the "Administrative Agent, the Prepetition Lenders, [and] their respective Related Persons."  *See* Plan at Article XIII(C)(2) (page 93 - 94).  Allowing such releases of non-debtor parties should not be granted absent extraordinary circumstances.  In re Washington Mutual, Inc., 442 B.R. 314, 352 (Bankr. D. Del. 2011); In re Tribune Co., 464 B.R. 126, 178 (Bankr. D. Del. 2011)(*quoting* Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 212-214 (3d Cir. 2000)).[4] Landlord does not believe that Debtors have shown any extraordinary circumstance for the requested third-party releases, and requests that no such releases be granted with respect to any

---

[4] Landlord is especially concerned about the use of the ballot to provide an opt-out option to creditors, and does not believe this is sufficient to provide a release in favor of such parties. *See* Washington Mutual, 442 B.R. at 355 (the opt out mechanism is not sufficient to support the third party releases anyway, particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place).

4

claims Landlords may have arising from the sale and auction at their Premises. As set forth above, the Debtors still occupy the 2131 Premises, and Landlord does not know what claims, if any, may result from the sale and auction at the 2131 Premises. Landlords have no knowledge at this time of potential damages resulting from transferring property into or out of the 2131 Premises, nor does Landlord know the type of property was transferred to the 2131 Premises for the purposes of the auction and sale. Landlord also does not know who purchased or removed such property. Because of the ongoing use of the 2131 Premises and unknown nature of any claims that may arise from the auction and sale, the Plan should not provide for the release of the Debtors, or any third party, with respect such potential claims by Landlord.

**C.      The Debtors need to provide a deadline for rejection of the Lease.**

8.      The Debtors are seeking confirmation of their Plan prior to the rejection of all of their leases, and the Plan only states that the leases will be rejected on the "Effective Date." See Plan at Article XIV(A) (page 96). Since the Effective Date remains subject to various conditions, Landlord does not know when the Debtors intend to return possession of the 2131 Premises to Landlord. The Bankruptcy Code does not allow for such uncertainty as of plan confirmation, and post-confirmation rejection is not permitted under the Bankruptcy Code. While assumption of a debtor's unexpired leases of nonresidential real property can be effectuated though a Chapter 11 plan of reorganization (11 U.S.C. §1123(b)(2)), there is no authority for a reorganized debtor to assume or reject leases *following confirmation of a plan of reorganization.* This is consistent with Section 365(d)(4), which limits the time to assume or reject to the earlier of: (a) 120 days after the petition date; and (b) entry of an order confirming a plan. *See* Section 365(d)(4)(A)(i) & (ii).

9.      As set forth above, while Landlord objects to any language in the Plan that does not preserve its rights to assert all claims that it may have against the appropriate parties, Landlord does not necessarily object to the Debtors rejecting the Leases post-confirmation. Landlord does object to the uncertain timing of such rejection. Landlord needs certainty as to when it will regain possession of the Premises so it can move forward with mitigating its

5

damages. The Debtors should provide Landlord with a date by which it will vacate the Premises post-confirmation, and agree that to the extent Debtors do not vacate the Premises by such date, Landlord may seek immediate turnover of the Premises on an expedited basis.

**D.    Landlord joins in the objections of other creditors.**

10.    To the extent not inconsistent with the objections raised herein, Landlord joins in any opposition to Plan raised by other creditors or the Creditors' Committee.

**III.    CONCLUSION**

The Landlords request that any order confirming the Plan incorporate the objections set forth above, and that the Court grant such other and further relief that it deems just and proper under the circumstances.

Dated:  June 16, 2015
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Matthew G. Summers, Esquire (No. 5533)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  summersm@ballardspahr.com
         heilmanl@ballardspahr.com

and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (SBN:  174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com

Attorneys for Watt Management Company, as agent for Watt Long Beach, LLC