**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | § |
| | § Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § |
| | § Case No. 15-10952 (KJC) |
| | § |
| | § Jointly Administered |
| Debtors. | § |
| | § |

---------------------------------------------------------

**DECLARATION OF WILLIAM J. NOLAN IN SUPPORT OF
CONFIRMATION OF DEBTORS' THIRD AMENDED AND MODIFIED COMBINED
DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION**

Under 28 U.S.C. § 1746, I, William J. Nolan, declare as follows under penalty of perjury:

1.      I am the Chief Restructuring Officer (the "**CRO**") of Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"). I am a Senior Managing Director in the Corporate Finance/Restructuring practice of FTI Consulting, Inc. ("**FTI**"). I have over twenty years of diverse financial consulting and management experience. Corinthian engaged FTI on May 30, 2014, and on July 1, 2014, I was appointed CRO by Corinthian's Board of Directors.

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

2.      As part of my duties as CRO, my review of public and non-public documents, and my discussions with other representatives of the Debtors, I am generally familiar with the Debtors' financial condition, financial and cash management policies and procedures, day-to-day activities and books and records.  I have also played an active role, working with outside counsel, in the formulation of the *Debtors' Combined Disclosure Statement* (the "**Disclosure Statement**") *and Chapter 11 Plan of Liquidation* (the "**Plan**"),[2] as amended on July 24, 2015, July 27, 2015 and August 25, 2015 [Docket Nos. 520, 646, 655 and 863, respectively].  I am familiar with the terms of the Plan, as well as the negotiations that led to its development.  I submit this declaration (the "**Declaration**") in support of the Debtors' request for confirmation of the Plan.

3.      Except as otherwise indicated herein, all statements set forth in this Declaration are based upon my personal knowledge; my review of relevant documents; my discussions with other members of the Debtors' management team; my opinion based upon my experience, expertise and knowledge of the Debtors' operations and financial condition; and/or information and materials that the Debtors' personnel and advisors, including the Debtors' legal advisors, have gathered, prepared, verified, and/or provided to me.  If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

## THE PLAN

4.      I believe that the Plan: (a) complies with all applicable provisions of title 11 of the United States Code (the "**Bankruptcy Code**"), as required by section 1129(a)(1) of the Bankruptcy Code; (b) satisfies the other mandatory requirements of section 1129(a) of the Bankruptcy Code; and (c) complies with the requirements of sections 1129(b) and (d) of the

---

[2]    Capitalized terms used but not otherwise defined in herein shall have the meanings set forth in the Plan.

2

Bankruptcy Code. Moreover, for the reasons set forth herein, I believe that the Court should approve the Debtors Releases, the Holder Releases and the Exculpation and Injunction provisions provided for in the Plan.

I.    **The Plan Complies with All Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))**

5.    I believe that the Plan complies with section 1129(a)(1) of the Bankruptcy Code which requires the Plan to comply with sections 1122 and 1123 of the Bankruptcy Code in all respects. Specifically, the Plan complies with both sections 1122 and 1123, and all other applicable provisions of the Bankruptcy Code because the classification provided by the Plan reflects, among other things, different legal rights, priorities, and/or interests with respect to classified Claims, as further discussed herein. Accordingly, I believe the Plan satisfies section 1129(a)(1) of the Bankruptcy Code.

A.    **Sections 1122 and 1123(a)(1)**

6.    It is my understanding that the Plan complies with section 1123(a)(1) of the Bankruptcy Code because the Plan designates a total of seven (7) Classes of Claims against and Equity Interests in the Debtors. I believe that this classification scheme complies with section 1122 of the Bankruptcy Code because each Class contains only Claims or Equity Interests that are substantially similar to each other. Furthermore, the classification scheme created by the Plan is based on the similar nature of Claims or Equity Interests contained in each Class and not on an impermissible purpose. Finally, similar Claims have not been placed into different Classes to affect the outcome of the vote on the Plan.

7.    The Plan contemplates the creation of two separate trusts: (i) the Distribution Trust, which pursuant to the terms of the Plan and the Distribution Trust Agreement, shall be for the benefit of all Holders of Allowed Claims other than Student Claims and Government

3

Education Claims; and (ii) the Student Trust, which, pursuant to the terms of the Plan and the Student Trust Agreement, shall be for the benefit of the Allowed Student Claims and Allowed Government Education Claims.  Accordingly, the Plan has classified all General Unsecured Claims other than Student Claims and Government Education Claims in Class 4 and all Student Claims and Government Education Claims in Class 5.  I believe that the Student Claims and the Government Education Claims are substantially similar to each other because such Claims are related to the Debtors' educational programs, including but not limited to, alleged misconduct by the Debtors in connection with the educational programs.  Further, as set forth in the Plan, the classification of the Student Claims and Government Education Claims and the establishment of the Student Trust for the benefit of the Holders of such Claims is the result of extensive negotiations between the Debtors and the Student Committee and the Student Committee supports confirmation of the Plan.  Accordingly, I believe that this classification scheme complies with section 1122 of the Bankruptcy Code because each Class contains only Claims or Equity Interests that are substantially similar to each other.

**B.** **Sections 1123(a)(2) and 1123(a)(3)**

8. I believe that the Plan also satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code.  I have been advised that Section VIII of the Plan specifies the Classes of Claims and Equity Interests that are unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code.  It is also my understanding that Article VIII of the Plan also specifies the treatment of each Class of Claims and Equity Interests that is impaired, as required by section 1123(a)(3) of the Bankruptcy Code.

RLF1 12820424v.3

**C.      Section 1124(a)(4)**

9.      I understand that the Plan satisfies section 1123(a)(4) of the Bankruptcy Code because Article VIII of the Plan generally provides the same treatment to each Claim or Equity Interest in each particular Class.

**D.      Section 1123(a)(5)**

10.     It is my understanding that the Plan satisfies section 1123(a)(5) of the Bankruptcy Code because Section XII of the Plan sets forth specific means for the Plan's execution and implementation.  Among other things, Section XII of the Plan provides for:

- The transfer of the Distribution Trust Seed Money and the Distribution Trust Assets to the Distribution Trust, to be utilized, administered and distributed by the Distribution Trustee in accordance with the terms and conditions of the Plan, the Confirmation Order and the Distribution Trust Agreement;

- The transfer of the Student Trust Assets to the Student Trust, to be utilized, administered and distributed by the Student Trustee in accordance with the terms and conditions of the Plan, the Confirmation Order, and the Student Trust Agreement;

- Authorization for the Debtors, as applicable, to take all actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan;

- The exemption from registration under Securities Act of 1933, as amended and applicable state and local laws requiring registration of securities; and

- The exemption from mortgage recording taxes and other taxes of any transfers of property pursuant to the Plan under section 1146(a) of the Bankruptcy Code.

**E.      Section 1123(a)(6)**

11.     The Plan is a liquidating plan and no equity securities are being issued under the Plan.  Indeed, the Debtors have closed their businesses and all remaining assets of the Debtors will be disposed of or transferred in accordance with the Plan with the proceeds thereof being distributed to the Holders of Allowed Claims in accordance with the terms thereof.  Accordingly,

I believe that section 1123(a)(6) of the Bankruptcy Code that otherwise addresses the issuance of equity securities under a plan is not applicable.

**F.      Section 1123(a)(7)**

12.      Immediately following the distribution of all of the Debtors' and the Estates' property pursuant to the terms of the Plan, on the Effective Date, the Debtors' directors and officers and any remaining employees shall be deemed to have resigned.    Each of the trusts will have a trustee appointed to administer the assets of the respective trusts.   The Distribution Trustee and the Student Trustee shall be identified by the Debtors and/or the Committees prior to entry of the Confirmation Order and the Court shall consider and if, appropriate, ratify the selection of the trustees.   Accordingly, I believe that section 1123(a)(7) of the Bankruptcy Code has been satisfied.

**G.      Section 1123(b)(1)**

13.      Article VIII of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims or Equity Interests under the Plan.   Accordingly, I believe that the Plan satisfies section 1123(b)(1) of the Bankruptcy Code.

**H.      Section 1123(b)(2)**

14.      Pursuant to Section XIV of the Plan, all Executory Contracts not assumed, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date will be deemed rejected and the Confirmation Order shall constitute an order approving such rejection as of the Effective Date.   Accordingly, I believe that the Plan satisfies section 1123(b)(2) of the Bankruptcy Code.

6

**II.**    **The Plan Satisfies the Other Requirements of Section 1129(a) of the Bankruptcy Code**

    **A.**    **Section 1129(a)(2)**

    15.    To the best of my knowledge, the Debtors, as proponents of the Plan, have complied with the Bankruptcy Code in proposing the Plan and with the order approving the solicitation procedures [Docket No. 658] in commencing and conducting the solicitation of acceptances or rejections of the Plan.

    **B.**    **Section 1129(a)(3)**

    16.    I understand that section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be proposed in good faith and not by any means forbidden by law.  I believe that the Plan meets these requirements.  The Debtors negotiated, developed and proposed the Plan in good faith in accordance with the requirements of this section.  The Debtors engaged in vigorous and extensive negotiations with major stakeholders to build consensus between the parties.  The Plan reflects the extensive negotiations undertaken with, and is supported by, among others, the Administrative Agent, the Creditors' Committee and the Student Committee.  Accordingly, I believe that the Plan will achieve a result consistent with the objectives and purposes of section 1129(a)(3) of the Bankruptcy Code.

    **C.**    **Section 1129(a)(4)**

    17.    It is my understanding that except as otherwise provided in the Plan or certain prior orders of this Court, any payments made or to be made for services or for costs and expenses incurred in connection with these Chapter 11 Cases are subject to this Court's approval. For example, fees and expenses to be paid to the Debtors', Creditor Committee's or Student Committee's retained professionals are subject to this Court's approval, through the fee

7

application process.  Based on the foregoing, I am advised and believe that the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

**D.      Section 1129(a)(5)**

18.      I have been informed that section 1129(a)(5) of the Bankruptcy Code requires the proponent of a plan to disclose the identity of any post-confirmation directors, officers or voting trustees to serve the debtor or a successor to the debtor under a proposed plan.  The Debtors and/or the Committees have disclosed, or intend to disclose prior to entry of the Confirmation Order, the identity, affiliations and compensation of the Distribution Trustee and the Student Trustee.  Further, prior to the entry of the Confirmation Order, the initial members of the Oversight Board and the Managing Board shall be identified.

**E.      Section 1129(a)(6)**

19.      I have been informed that section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.  The Plan does not provide for or contemplate any rate change that would require the approval of any regulatory agency.  Therefore, I am advised and believe that section 1129(a)(6) of the Bankruptcy Code is inapplicable.

**F.      Section 1129(a)(7)**

20.      It is my understanding that the plan must satisfy the "best interest of creditors" test of section 1129(a)(7) of the Bankruptcy Code.  As can be seen in the liquidation analysis attached as Exhibit B to the Plan, the Plan provides each holder of an Allowed Claim in each impaired Class with a recovery greater than or equal to the value of any distributions that would be made if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code (other than potentially Class 1 - Prepetition Lenders Secured Claims).

8

21.     Specifically, because the majority of the Debtors' assets have already been liquidated to Cash, the value of any Distributions if the Debtors' Chapter 11 Cases were converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan.  This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals.  The "learning curve" that the trustee and new professionals would be faced with comes with potentially additional costs to the Estates and with a delay compared to the time of Distributions under the Plan (and prosecution of Causes of Action).  Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions of the already monetized assets made to creditors.  Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured creditors, would instead be paid to the chapter 7 trustee.

22.     As a result, I believe that the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they would if the Plan is confirmed, and therefore Holders of Claims in all impaired Classes (other than potentially Class 1 - Prepetition Lenders Secured Claims) will recover less than in the hypothetical chapter 7 cases.  In addition, the Plan contains a number of concessions by the Prepetition Secured Parties that will likely result in a greater recovery for the Holders of Allowed General Unsecured Claims, Allowed Student Claims and Allowed Government Education Claims.  Among other things, the Prepetition Secured Parties have agreed to: (i) satisfy first out of their collateral all outstanding Administrative Claims, Priority Claims and Other Priority Claims; (ii) to reduce the Pro Rata share of any Distributions from the Distribution Trust on account of the Prepetition Lenders Deficiency Claims by approximately fifteen (15) percent so that Holders of General Unsecured Claims may

9

receive a greater Pro Rata share of such Distributions; (iii) release their Liens on the proceeds of Avoidance Actions, and allow such proceeds to be transferred to the Distribution Trust for the benefit of all Beneficiaries thereof; and (iv) release their Liens on Cash Collateral to allow the use of the Distribution Trust Seed Money to provide necessary funding for the Distribution Trust.  The consideration being provided by the Prepetition Secured Parties would not be available in a hypothetical chapter 7 liquidation, thereby reducing the potential recoveries to other Holders of Allowed General Unsecured Claims.

23.    Moreover, the Prepetition Secured Parties are forgoing any recoveries from, and releasing any Liens they may otherwise have had on funds released from, the Student Refund Reserve, which has an estimated value of approximately $4.3 million, for the benefit of the Beneficiaries of the Student Trust.  Absent the compromises contained in the Plan, this value would constitute property of the Debtors' estates subject to Distribution in accordance with the priorities afforded under the Bankruptcy Code.  In turn, that would mean that there would be no funding of any Student Claims Benefit Program, which may include outreach programs and assistance for Students in seeking discharges or releases of their student loan obligations.  The Student Claims Benefit Programs will be an immediate and impactful benefit to all Holders of Allowed Student Claims.

24.    Without the structure of the Plan, and the settlements contained therein, all of the Creditors with Claims of lower priority than Secured Claims would likely receive a diminished recovery on account of their Claims.  Accordingly, I believe the "best interests of creditors" test contained in section 1129(a)(7) of the Bankruptcy Code has been satisfied with respect to all applicable Classes.

10

G.    **Section 1129(a)(8)**

25.    I have been informed that section 1129(a)(8) of the Bankruptcy Code requires that with respect to each class of claims or interests such class has accepted the plan or such class is not impaired under the plan.  Class 2 (Other Secured Claims) and Class 3 (Other Priority Claims) are not impaired by the Plan and are conclusively presumed to have voted to accept the Plan. Class 6 (Intercompany Claims) and Class 7 (Equity Interests) will receive no distributions under the Plan and therefore deemed to have rejected the Plan and are not entitled to vote.  Based upon by review of the certification of ballots [Docket No. 849] (the "**Voting Certification**") prepared by Rust Omni and upon information and belief, Class (1) (Prepetition Lenders Secured Claims), Class 4 (General Unsecured Claims) and Class 5 (Student Claims and Government Education Claims) voted to accept the Plan.  Accordingly, I believe that section 1129(a)(8) has been satisfied.

H.    **Section 1129(a)(9)**

26.    I have been advised that section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive specified deferred cash payments.

27.    It is my understanding that the Plan generally provides that each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to any unpaid portion of such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed, or within seven (7) Business Days thereafter.  Such payments to Holders of Allowed Administrative Expense Claims shall be paid by the Debtors from the Unimpaired Claims Cash Reserve (except in the case of the Prepetition Lenders Adequate Protection Claims, which shall be paid from the Distribution Trust Available Cash), and, to the extent the Unimpaired Claims Cash Reserve is insufficient to pay all such

11

Allowed Administrative Expense Claims, then by the Distribution Trustee from the first net proceeds of the Distribution Trust Assets.

28.     In addition, it is my understanding that the Plan generally provides that each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim (as determined in accordance with section 1129(a)(9)(C)) on the Effective Date or within seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, whichever is later, or as soon thereafter as is practicable; or (b) cash in an amount agreed to by the Debtors (if prior to the Effective Date) or the Distribution Trustee (if after the Effective Date) and such Holder.  Such payments to Holders of Allowed Priority Tax Claims shall be paid by the Debtors from the Unimpaired Claims Cash Reserve, after payment in full to all Allowed Administrative Expense Claims, and, to the extent the Unimpaired Claims Cash Reserve is insufficient to pay all such Allowed Priority Tax Claims in full, then by the Distribution Trustee from the first net proceeds of the Distribution Trust Assets following satisfaction of all Allowed Administrative Expense Claims.

29.     Further, it is my understanding that the Plan generally provides that each Holder of an Allowed Other Priority Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, and release of, and in exchange for, such Allowed Other Priority Claim, Cash from the Unimpaired Claims Cash Reserve (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets).  To the extent the Unimpaired Claims Cash Reserve is insufficient to pay the Allowed Other Priority Claims in full (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets), then the

Holders of such Allowed Claims shall be paid from the first net proceeds of the Distribution Trust Assets following satisfaction of all Allowed Administrative Expense Claims.

30.    Finally, it is my understanding that the Plan generally requires that Holders of Allowed Student 507(a)(7) Deposit Claims shall be paid in full from the net proceeds of the Student Trust Assets.

31.    Accordingly, to the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, including discussions with the Debtors' legal advisors, I believe that the Debtors have satisfied the requirements of section 1129(a)(9) of the Bankruptcy Code.

**I.    Section 1129(a)(10)**

32.    I have been informed that section 1129(a)(10) of the Bankruptcy Code requires that if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.  As set forth in the Voting Certification, Classes 1, 4 and 5, each of which is impaired, have voted to accept the Plan within the meaning of section 1126 of the Bankruptcy Code, without the need to include any acceptance of any insider.    Therefore, I believe that the Plan fully complies with and satisfies all of the requirements of section 1129(a)(10) of the Bankruptcy Code.

**J.    Section 1129(a)(11)**

33.    It is my understanding that section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible and confirmation is not likely to be followed by the liquidation or further financial reorganization of the Debtors.  The Plan itself calls for liquidation of the Debtors, therefore, confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

**K.       Section 1129(a)(12)**

34.       I understand that section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.  It is also my understanding that Section VI.E of the Plan provides that all Statutory Fees to the extent unpaid through the Confirmation Date, shall be paid by the Debtors in Cash within seven (7) Business Days after the Confirmation Date.  From and after the Confirmation Date through the closing of the Chapter 11 Cases, all Statutory Fees shall be paid by the Debtors (if prior to the Effective Date) or the Distribution Trustee (if after the Effective Date); provided that the Debtors and the Distribution Trustee shall remain jointly and severally liable for such Statutory Fees.  Accordingly, I believe the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**L.       Section 1129(a)(13)**

35.       I am advised and believe that the Debtors do not provide "retiree benefits" as such term is defined in section 1144 of the Bankruptcy Code.  Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

**M.       Section 1129(a)(14)**

36.       I am advised and believe that section 1129(a)(14) of the Bankruptcy, relating to domestic support obligations, is inapplicable to the Debtors.

**N.       Section 1129(a)(15)**

37.       I am advised and believe that section 1129(a)(15) of the Bankruptcy Code, relating to individual debtors, is inapplicable to the Debtors.

**O.       Section 1129(a)(16)**

38.       I am advised that section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business or commercial corporation or trust be made in accordance with applicable provisions of nonbankruptcy law.

14

Because the Debtors are moneyed, business, or commercial corporations, this section is not applicable.

### III.    The Plan Complies with the Requirements of Sections 1129(b) and (d) of the Bankruptcy Code

#### A.    Section 1129(b)

39.    Classes 1, 4 and 5 are unimpaired Classes under the Plan.  Classes 2 and 3 are unimpaired and, as such are conclusively presumed to have accepted the Plan pursuant to the Bankruptcy Code.  Classes 6 and 7 will receive no distribution and retain no interest under the Plan and have conclusively rejected the Plan pursuant to the Bankruptcy Code.  No holder of Claims or Equity Interests junior to the Intercompany Claims or Equity Interests in Classes 6 or 7 will receive or retain any property under the Plan on account of such junior Claim or Equity Interest, and no class of Claims senior to Classes 6 and 7 is receiving more than full payment on account of the Claims in such Class.  Accordingly, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6 and 7; therefore, the Plan complies with section 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding Classes 6 and 7's deemed rejection of the Plan.

#### B.    Section 1129(d)

40.    The Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933.  Thus, I am advised and believe that section 1129(d) of the Bankruptcy Code does not bar confirmation of the Plan.

### CERTAIN SPECIFIC TERMS OF THE PLAN

### I.    The Plan's Debtor Releases Should Be Approved

41.    It is my understanding that Section XIII.D.1 of the Plan (the "**Debtor Releases**") provides for certain releases by the Debtors solely with respect to the Administrative Agent, the

15

Prepetition Lenders, their respective Related Persons and the Professionals, in their respective capacities as such (collectively the "**Debtor Releasees**").  I believe the Debtors exercised their reasonable business judgment in proposing the Debtor Releases and that the Debtor Releases are reasonable and satisfy the standard that courts generally apply when reviewing settlements, as such standard has been explained to me.

42.    Specifically, as a result of the consideration and various concessions provided by the Prepetition Secured Parties, the Plan provides for meaningful benefits to the Holders of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims, Student Claims and Government Education Claims.  The Prepetition Secured Parties have agreed to, among other things, (i) allow the Debtors or the Distribution Trustee to satisfy first out of the Prepetition Secured Parties' collateral all Allowed and accrued, but unpaid, Administrative, Priority Tax and Other Priority Claims (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets); (ii) reduce the Prepetition Secured Parties' Pro Rata share of any Distributions from the Distribution Trust on account of the Prepetition Lenders Deficiency Claims by approximately fifteen (15) percent; (iii) release their Liens on the proceeds of Avoidance Actions (in addition to various other remaining assets of the Debtors and their Estates), and allow such proceeds to be transferred to the Distribution Trust free and clear of such Liens for the benefit of all Beneficiaries thereof; and (iv) as described above, release any Liens they may otherwise have on funds in, and forgo any recoveries from, the Student Refund Reserve; and (v) release their Liens on Cash Collateral to allow the use of the Distribution Trust Seed Money to provide necessary initial funding for the Distribution Trust.  I believe that these concessions by the Prepetition Secured Parties constitute substantial consideration without which confirmation and implementation of the Plan and the

16

benefits contained herein would not be possible.  In exchange for this consideration, the Plan provides for the Debtor Releases.

43.     While the Debtors are aware of a potential preference action pursuant to section 547 against the Administrative Agent and the Prepetition Lenders in the approximate amount of $3 million, given the amount of the Prepetition Lenders Adequate Protection Claim, the protections afforded to such Claim in the Final Cash Collateral Order, and the consideration being provided to the Debtors' Estates in return for such releases, the Debtors do not believe that the pursuit of this potential cause of action would provide a net benefit to the Debtors' Estates.

44.     Moreover, the Debtor Releases were the subject of extensive negotiations among the Debtors, the Creditors' Committee, the Student Committee and the Prepetition Secured Parties and are an essential part of the Plan.  Accordingly, I believe that the Debtor Releases are well-considered and reasonable and represent a valid settlement of whatever claims or causes of action the Debtors may have against the Debtor Releasees.

**II.     The Plan's Holder Releases Should Be Approved**

45.     It is my understanding that Section XIII.D.2 of the Plan (the "**Holder Releases**") provides certain releases by the Holders of Claims which are Beneficiaries of the Distribution Trust entitled to vote on acceptance or rejection of the Plan of the Administrative Agent, the Prepetition Lenders, their respective Related persons in their capacity as such, and the Professionals (collectively, the "**Holder Releasees**").  I have been advised that a court's determination of whether a third-party release is appropriate is highly factual in nature, and considers whether the debtor exercised sound business judgment.  In addition, a court will consider whether the release is objectively fair, reasonable, and in the best interests of the estate. I believe the proposed Holder Releases are in the best interests of the Debtors' Estates.  As set forth in more detail above, the Holder Releasees were active participants in the development of

17

the Plan and made numerous concessions without which confirmation and implementation of the Plan would not be possible.

46.     It is also significant that the Holder Releases only bind parties who do not opt out of the Holder Releases.  In an effort to promote complete transparency and notice, the language pertaining to the Holder Releases was bolded on the various ballots approved for and utilized in the solicitation process.  Indeed, several of the parties that voted on the Plan elected to opt out of the Holder Releases.

47.     For each of these reasons, I believe the Holder Releases are essential to the Plan, and that their approval is warranted under the circumstances of these Chapter 11 Cases.

**III.    The Plan's Exculpation Provision Should Be Approved**

48.     It is my understanding that Section XIII.C of the Plan (the "**Exculpation**") exculpates certain parties (the "**Exculpated Parties**") from liability for any act or omission in connection with, relating to, or arising out of, the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, except for their willful misconduct or gross negligence.

49.     As set forth above, the Debtors formulated the Plan after negotiating extensively with numerous parties in good faith.  These negotiations made a consensual Plan possible.  I believe negotiation and compromise were vital to the formulation and success of the Plan and could not have occurred without the protection from liability that the Exculpation provisions provide to the constituents involved in negotiating and supporting the Plan.  Finally, I would reiterate that the Exculpation excludes, among other things, an Exculpated Party's willful misconduct or gross negligence.  Thus, in light of all the circumstances, I believe the Exculpation provisions contained in the Plan are necessary to the Plan.

18

**IV.    The Plan's Corresponding Injunction Provisions Should Be Approved**

50.    It is my understanding that Section XIII.A of the Plan sets out the Plan's injunction provisions (the "**Injunction**"), which permanently enjoins all Persons and Entities who have held, hold or may hold Claims against the Debtors arising prior to the Effective Date or interests in the Debtors, from taking certain actions against the Estates, the Distribution Trust, the Student Trust, or any of their respective property or assets on account of any such Claims or interests.

51.    Further, Section XIII.B of the Plan provides that the injunction shall not apply to the Debtors.   In addition, the Debtors are not receiving a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

52.    I believe the Injunction is necessary to implement the Plan's two trust structure and to protect the trusts' respective assets from actions or litigations by prepetition creditors after the Effective Date, and is narrowly tailored to achieve that purpose. I further believe that the Injunction is a key component of the Debtors' liquidation.

CONCLUSION

53.    I have worked extensively with various members of the Debtors' senior management and the Debtors' restructuring and financial advisors to develop the Plan.   In addition, I have examined and evaluated almost all facets of the Plan and am familiar with the material provisions of the Plan.   Based upon the foregoing, and based on the facts and circumstances known to me at this time, I believe that the Plan represents the best alternative available to the Debtors under the circumstances and is designed to provide the best means for a possible recovery by parties in interest.   I further believe that the overwhelming support of the holders of Classes 1, 4 and 5 who voted on the Plan reflects the overall fairness and

19

reasonableness of the Plan and that the Plan has been proposed in good faith and for proper purposes.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of August, 2015.

William J. Nolan
Chief Restructuring Officer of
Corinthian Colleges, Inc., *et al.*

20