<u>**Exhibit A**</u>

**Proposed Confirmation Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re: Docket Nos. 521, 646, 655 & 863** |
| | § | |

--------------------------------------------------------------

### ORDER CONFIRMING DEBTORS' THIRD
### AMENDED AND MODIFIED COMBINED DISCLOSURE
### STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION

A HEARING HAVING BEEN HELD BY THE COURT on August 26, 2015 (the "**Confirmation Hearing**"), to consider confirmation of the *Debtors' Third Amended and Modified Combined Disclosure Statement* (the "**Disclosure Statement**") *and Chapter 11 Plan of Liquidation* (the "**Plan**") [Docket No. 863], and a final version of which is attached hereto as Exhibit A, proposed by Corinthian Colleges, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**");

THE COURT NOTING that on July 27, 2015, the Court entered the *Order (A) Approving Disclosure Statement, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan of Liquidation, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time and Place for the*

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

*Confirmation Hearing and the Deadline for Filing Objections thereto, and (F) Approving Related Notice Procedures* [Docket No. 658] (the "**Solicitation Procedures Order**"), approving, among other things, the Disclosure Statement and the Tabulation Procedures (as each term is defined in the Solicitation Procedures Order);

IT APPEARING TO THE COURT that on July 27, 2015, the Debtors filed the *Notice of (I) Deadline for Casting Votes to Accept or Reject the Debtors' Plan of Liquidation, (II) the Hearing to Consider Confirmation of the Combined Plan and Disclosure Statement and (III) Certain Related Matters* [Docket No. 659] and caused such notice to be served, along with copies of the Plan and the Ballots, where applicable, on the parties set forth in that certain *Affidavit of Service* [Docket No. 712] (the "**AOS**") on July 30, 2015;

IT APPEARING TO THE COURT that the Court-approved solicitation and noticing procedures have been followed as set forth in the *Declaration of Catherine Nownes Whitaker Regarding Analysis of Ballots for Accepting or Rejecting Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, dated August 24, 2015 [Docket No. 849] (the "**Rust/Omni Declaration**");

IT FURTHER APPEARING TO THE COURT that the Debtors have filed with the Court the (I) *Notice of Filing Plan Supplement* [Docket No. 767] containing the following: (a) a draft of the Distribution Trust Agreement,[2] and (b) a draft of the Student Trust Agreement; and (II) the *Notice of Filing Amendment to Plan Supplement* [Docket No. ____], identifying Causes of Action being retained by the Debtors and transferred to the Distribution Trust pursuant to the Plan (collectively, the "**Plan Supplements**," with all documents contained in the Plan Supplements collectively, the "**Plan Documents**");

---

[2] Capitalized terms used herein without definition have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively.

IT FURTHER APPEARING TO THE COURT that the deadline for filing objections to the Plan has passed and the following objections have been filed:  (a) the *Letter Response from Dennis Erroll Harvey, Jr.* [Docket No. 742]; (b) the *Texas Comptroller of Public Accounts' Objection to Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 776]; (c) the *Statement of Wisconsin's Position Regarding the Objection of the People of the State of California and the Commonwealth of Massachusetts to Debtors' Chapter 11 Plan of Liquidation* [Docket No. 794]; (d) the *Objection of the Consumer Financial Protection Bureau to Debtors' Chapter 11 Plan of Liquidation* [Docket No. 808]; (e) the *Objection to the Debtors' Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (Arlington ISD and Eagle Mountain Saginaw ISD) [Docket No. 815]; (f) the *Limited Objection of BRE/OC Griffin, L.L.C. to Confirmation of Debtors' Section Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 818]; (g) the *United States' Objection to Confirmation* [Docket No. 819]; (h) the *Objection by the Internal Revenue Service to Debtor's Plan of Liquidation* [Docket No. 823]; (i) *Objection of Guy Reynolds and Christine Seymour, on Behalf of Themselves and Others Similarly Situated, to Confirmation of Debtors' Second Amended and Modified Chapter 11 Plan of Liquidation* [Docket No. 824]; (j) *Limited Objection of Watt Management Company to Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 825]; (k) *Objection of the Commonwealth of Massachusetts to Debtors' Chapter 11 Plan of Liquidation* [Docket No. 826]; and (l) the *Limited Response of the Official Committee of Student Creditors in Support of Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 827] (collectively, the "**Objections**");

IT FURTHER APPEARING TO THE COURT that the deadline for casting ballots to accept or reject the Plan has passed and that the results of voting have been certified by Rust Bankruptcy/Omni Consulting, acting as voting agent, as set forth in the Rust/Omni Declaration;

IT FURTHER APPEARING TO THE COURT that (a) the Debtors have filed the *Declaration of William J. Nolan in Support of Confirmation of Debtors' Second Amended and Modified Combined Disclosure Statement and Chapter 11 Plan Of Liquidation* [Docket No. 866] (the "**Nolan Declaration**"), (b) the Debtors have presented testimony, evidence and argument of counsel in support of confirmation of the Plan, and (c) other parties in interest have had the opportunity to present additional testimony, evidence or argument of counsel;

NOW, THEREFORE, based upon the Court's review of (a) the Plan, (b) the Plan Documents, (c) the Nolan Declaration, (d) the Rust/Omni Declaration, (e) the Objections, (f) all of the evidence proffered or adduced at, filings in connection with, and arguments of counsel made at, the Confirmation Hearing, and (g) the entire record of the Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefor, and for the reasons set forth on the record at the Confirmation Hearing;

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    *Jurisdiction; Venue; Core Proceeding*.    The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) upon which this Court may issue a final order, and confirmation of a plan by this Court is a constitutional exercise of the jurisdiction conferred by Congress on this Court.  This

---

[3]    The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to the proceeding by Fed. R. Bankr. P. 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    *Judicial Notice*.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed with, all orders entered by, and all evidence and argument made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

C.    *Transmittal and Mailing of Solicitation Materials and Notices*.  The solicitation materials and notices prescribed by the Solicitation Procedures Order were served in compliance with the Solicitation Procedures Order, and such service was appropriate and sufficient. Appropriate and sufficient notice of the Confirmation Hearing and the other deadlines and matters required to be noticed pursuant to the Solicitation Procedures Order was given in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.

D.    *Adequacy of Solicitation Procedures*.  All procedures used to distribute the solicitation materials to the appropriate creditors and interest holders entitled to vote on the Plan and to tabulate the ballots returned by creditors and interest holders were fair and were conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order.  Votes for acceptance or rejection of the Plan were solicited and cast in good faith, and only after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with 11 U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 3017 and 3018.

E.    *Good Faith Solicitation -- 11 U.S.C. § 1125(e)*.  Based upon the record before the Court, the Debtors and their Professionals, as well as the Committees and the Prepetition Secured

5

Parties have acted in good faith within the meaning of 11 U.S.C. §§ 1125(e) and 1129(a)(3), and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Procedures Order in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in 11 U.S.C. § 1125, and are entitled to the protections afforded by 11 U.S.C. § 1125(e) and, to the extent applicable, the exculpation and injunctive provisions set forth in Article XIII of the Plan.

F.      *Impaired Classes that Have Voted to Accept or Reject the Plan*.  Classes 1, 4 and 5 are each impaired under and entitled to vote on the Plan.  As evidenced by the Rust/Omni Declaration, which certified both the method and results of the voting, Classes 1, 4, and 5 have voted to accept the Plan pursuant to the requirements of 11 U.S.C. §§ 1124 and 1126.

G.      *Classes Deemed to Accept Plan*.  Classes 2 and 3 are unimpaired under the Plan.  Pursuant to 11 U.S.C. § 1126(f), holders of such unimpaired Claims are conclusively presumed to have accepted the Plan.

H.      *Classes Deemed to Reject the Plan*.  Classes 6 and 7 are impaired and will not receive or retain any property under the Plan.  Pursuant to 11 U.S.C. § 1126(g), holders of such impaired Claims are conclusively presumed to have rejected the Plan.

I.      *Releases, Exculpations and Injunctions*.  The release, exculpation and injunction provisions set forth in Section XIII of the Plan: (a) are within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b) and 1334(d); (b) are essential to the successful implementation of the Plan pursuant to 11 U.S.C. § 1123(a)(5); (c) are an integral element of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtors, the Estates and their creditors; and (e) are consistent with 11 U.S.C. §§ 105, 1123 and 1129, and other applicable provisions of the Bankruptcy Code.  With respect to the releases provided pursuant to Section XIII.C.2 of the Plan by the Holders of Claims who did not opt out

6

of such releases, such releases are (a) consensual, (b) in exchange for the good and valuable consideration provided by the Holder Releasees, representing a good faith settlement and compromise of any claims released therein; (c) in the best interests of the Debtors and all holders of Claims; (d) narrowly tailored; (e) fair, equitable and reasonable; and (f) a bar to any of the releasing parties' assertion of any claim released by such provisions.   The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the release, exculpation and injunction provisions contained in the Plan.

J.      *Administrative Consolidation*.   Section XVII.Q provides for the administrative consolidation of the Estates for administrative purposes.   The Disclosure Statement expressly advised the Holders of Claims and Equity Interests of such consolidation and no such Holder objected to such consolidation.   The Plan provides that Holders of Claims and Equity Interests against more than one Debtor are classified in consolidated classes of Claims against and Equity Interests in all Debtors in Section VII of the Plan for administrative convenience with respect to voting and the making of Distributions on account of Claims and Equity Interests.   Such administrative consolidation shall not affect:   (a) the legal and corporate structures of the Debtors; (b) Equity Interests between and among the Debtors; (c) Distributions from any Insurance Policies or proceeds of such policies; (d) the vesting of assets in the Distribution Trust or the Student Trust; or (e) the reporting of disbursements and the payment of Statutory Fees, including those under 28 U.S.C. § 1930(a)(6). In addition, such administrative consolidation shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.   Accordingly, the administrative consolidation provided for in the Plan is consistent with the requirements of the Bankruptcy Code.

RLF1 12812184v.3

K.      _Plan Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(1)_.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(1).

(i)      _Proper Classification -- 11 U.S.C. §§ 1122, 1123(a)(1)_.  Aside from Administrative Expense Claims and Priority Tax Claims, which need not be classified, the Plan designates seven Classes of Claims and Equity Interests against the Debtors. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate among holders of Claims and Interests.  Thus, the Plan satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).

(ii)      _Specify Unimpaired Classes -- 11 U.S.C. § 1123(a)(2)_.  Section VII of the Plan specifies that Classes 2 and 3 are unimpaired under the Plan, thereby satisfying 11 U.S.C. § 1123(a)(2).

(iii)      _Specify Treatment of Impaired Classes -- 11 U.S.C. § 1123(a)(3)_.  Section VII of the Plan specifies that Classes 1, 4, 5, 6 and 7 are impaired, and Sections VII.A.1 and VII.A.4 - VII.A.7 of the Plan specify the treatment of Claims and Equity Interests in those Classes, thereby satisfying 11 U.S.C. § 1123(a)(3).

(iv)      _No Discrimination -- 11 U.S.C. § 1123(a)(4)_.  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying 11 U.S.C. § 1123(a)(4).

(v)    *Implementation of Plan -- 11 U.S.C. § 1123(a)(5)*.  The Plan provides adequate and proper means for its implementation, thereby satisfying 11 U.S.C. § 1123(a)(5).

(vi)    *Non-Voting Equity Securities -- 11 U.S.C. § 1123(a)(6)*.  The Debtors have settled and closed their businesses.  Moreover, the Plan provides for the disposal and conveyance of the Debtors' remaining assets and for the distribution of the proceeds thereof to the Holders of Allowed Claims in accordance with the terms thereof.  As a result, upon the Effective Date, the Debtors shall be deemed dissolved for all purposes and of no further legal existence under any applicable state or federal law.  Accordingly, no securities will be issued by the Debtors.  Therefore, 11 U.S.C. § 1123(a)(6) is not applicable.

(vii)    *Selection of Distribution Trustee and Student Trustee -- 11 U.S.C. § 1123(a)(7)*.  The Debtors and/or the Committees have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as (a) the Distribution Trustee and (b) the Student Trustee, and the manner of selection and appointment of such individuals is consistent with the interests of Holders of Claims and with public policy and, accordingly satisfies the requirements of 11 U.S.C. § 1123(a)(7).

(viii)    *Additional Plan Provisions -- 11 U.S.C. § 1123(b)*.  The Plan's additional provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(ix)    *Compliance with Fed. R. Bankr. P. 3016*.  The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).  The filing of the Disclosure Statement with the Court satisfies Fed. R. Bankr. P. 3016(b).  Further, the

9

Plan and Disclosure Statement describe in specific and conspicuous language all acts to be enjoined and identify the entities that are subject to the injunction, satisfying Fed. R. Bankr. P. 3016(c) to the extent applicable.

(x)     *Compliance with Fed. R. Bankr. P. 3017*.   The Debtors have given notice of the Confirmation Hearing as required by Fed. R. Bankr. P. 3017(d) and the Solicitation Procedures Order.   As reflected by, among other things, the AOS and the Rust/Omni Declaration, the solicitation materials prescribed by the Solicitation Procedures Order were transmitted to creditors and interest holders entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 3017(d).

(xi)     *Compliance with Fed. R. Bankr. P. 3018*.   The solicitation of votes to accept or reject the Plan satisfies Fed. R. Bankr. P. 3018.   The Plan was transmitted to all creditors and interests holders entitled to vote on the Plan, sufficient time was prescribed for such creditors and interest holders to accept or reject the Plan, and the solicitation materials used and solicitation procedures followed comply with 11 U.S.C. §§ 1125 and 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018.

L.     *Compliance with Bankruptcy Code -- 11 U.S.C. § 1129(a)(2)*.   The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying 11 U.S.C. § 1129(a)(2).

M.     *Plan Proposed in Good Faith -- 11 U.S.C. § 1129(a)(3)*.   The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying 11 U.S.C. § 1129(a)(3).   In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan.   The Debtors filed these Chapter 11 Cases and the Plan was proposed with legitimate and honest purposes including, among other things, maximization of the recovery to creditors and interest holders

10

under the circumstances of the case. The Plan and the agreements implemented by the Plan are the result of extensive, arm's-length, good faith negotiations between and among the principal constituencies in these Chapter 11 Cases. Furthermore, the Plan is consistent with the best interests of the Estates, creditors, interest holders and other stakeholders.

N.      *Payments for Services or Costs and Expenses -- 11 U.S.C. § 1129(a)(4)*. All payments made or to be made by the Debtors or by a person acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying 11 U.S.C. § 1129(a)(4).

O.      *Director, Officers and Insiders -- 11 U.S.C. § 1129(a)(5)*. Immediately upon the Effective Date, the Debtors' directors and officers shall be deemed to have resigned. Additionally, as set forth above, the Debtors and/or the Committees have properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as (a) the Distribution Trustee and (b) the Student Trustee, as well as the identities of the initial members of the Oversight Board for the Distribution Trust and the Managing Board for the Student Trust.

P.      *No Rate Changes -- 11 U.S.C. § 1129(a)(6)*. There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and no rate change provided for in the Plan requiring approval of any such commission. Therefore, 11 U.S.C. § 1129(a)(6) is not applicable.

Q.      *Best Interests of Creditors -- 11 U.S.C. § 1129(a)(7)*. The Plan satisfies 11 U.S.C. § 1129(a)(7). The liquidation analysis included in the Disclosure Statement, including, but not limited to Section III.H thereof, and any other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and

(c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Because the majority of the Debtors' assets have already been liquidated to Cash, the value of any Distributions if the Debtors' Chapter 11 Cases were converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Plan. This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals. The "learning curve" that the trustee and new professionals would be faced with comes with potentially additional costs to the Estates and with a delay compared to the time of Distributions under the Plan (and prosecution of Causes of Action). Worse still, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions of the already monetized assets made to creditors. Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured creditors, would instead be paid to the chapter 7 trustee.

As a result, the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they will upon confirmation of the Plan, and therefore Holders of Claims in all Impaired Classes (other than potentially Class 1 - Prepetition Lenders Secured Claims) will recover less than in the hypothetical chapter 7 cases. In addition, the Plan contains a number of concessions by the Prepetition Secured Parties that will likely result in a greater recovery for the Holders of Allowed General Unsecured Claims, Allowed Student Claims and Allowed Government Education Claims. Among other things, the Prepetition Secured Parties have agreed to: (i) satisfy first out of their collateral all outstanding Administrative Claims, Priority Claims and Other Priority Claims; (ii) to reduce the Pro Rata share of any Distributions from the

Distribution Trust on account of the Prepetition Lenders Deficiency Claims by approximately fifteen (15) percent so that Holders of General Unsecured Claims may receive a greater Pro Rata share of such Distributions; (iii) release their Liens on the proceeds of Avoidance Actions, and allow such proceeds to be transferred to the Distribution Trust for the benefit of all Beneficiaries thereof; and (iv) release their Liens on Cash Collateral to allow the use of the Distribution Trust Seed Money to provide necessary funding for the Distribution Trust.  The consideration being provided by the Prepetition Secured Parties would not be available in a hypothetical chapter 7 liquidation, thereby reducing the potential recoveries to other Holders of Allowed General Unsecured Claims.  The Prepetition Secured Parties are also forgoing any recoveries from, and releasing any Liens they may otherwise have had on funds released from, the Student Refund Reserve, which has an estimated value of approximately $4.3 million, for the benefit of the Beneficiaries of the Student Trust.  Absent the compromises contained in the Plan, this value would constitute property of the Debtors' estates subject to Distribution in accordance with the priorities afforded under the Bankruptcy Code.  In turn, that would mean that there would be no funding of any Student Claims Benefit Program, which may include outreach programs and assistance for Students in seeking discharges or releases of their student loan obligations.  The Student Claims Benefit Programs will be an immediate and impactful benefit to all Holders of Allowed Student Claims.  Without the structure of the Plan, and the settlements contained therein, all of the Creditors with Claims of lower priority than Secured Claims would likely receive a diminished recovery on account of their Claims.  Accordingly, the "best interests" test of Bankruptcy Code section 1129 is satisfied.

R.      *Acceptance or Rejection by Certain Classes -- 11 U.S.C. § 1129(a)(8)*.  Classes 2 and 3 are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan

under 11 U.S.C. § 1126(f). Classes 1, 4 and 5 are impaired and have voted to accept the Plan. Classes 6 and 7 are impaired and deemed to have rejected the Plan.

S.     *Treatment of Administrative Expense Claims and Priority Tax Claims -- 11 U.S.C. § 1129(a)(9).*   The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Sections VI.B and VI.C of the Plan satisfies the requirements of 11 U.S.C. §§ 1129(a)(9)(A), (B) and (C).

T.     *Acceptance by Impaired Class -- 11 U.S.C. § 1129(a)(10).*   All of the Classes entitled to vote have voted to accept the Plan in accordance with 11 U.S.C. § 1126(c). The accepting Classes have accepted the Plan even without the votes of insiders with Allowed Claims. Therefore, the requirement of 11 U.S.C. § 1129(a)(10) that at least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

U.     *Feasibility -- 11 U.S.C. § 1129(a)(11).*   The Disclosure Statement, the Nolan Declaration and other evidence proffered or adduced by the Debtors at or prior to the Confirmation Hearing with respect to feasibility (a) are persuasive and credible, (b) have not been controverted by other evidence or challenged in any objection, and (c) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of either the Distribution Trust or the Student Trust. Based upon the foregoing, the Court finds that the Debtors have satisfied the requirements of 11 U.S.C. § 1129(a)(11).

V.     *Payment of Fees -- 11 U.S.C. § 1129(a)(12).*   All fees payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid within seven (7) Business Days after the Confirmation Date pursuant to Section VI.E of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12).

14

W.     *Continuation of Retiree Benefits -- 11 U.S.C. § 1129(a)(13)*.  The Debtors do not provide "retiree benefits" as such term is defined in section 1144 of the Bankruptcy Code. Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

X.     *Transfers of Property – 11 U.S.C. § 1129(a)(16)*.   None of the Debtors are a nonprofit corporation and, therefore, 11 U.S.C. § 1129(a)(16) is not applicable.

Y.     *Fair and Equitable; No Unfair Discrimination as to Rejecting Classes -- 11 U.S.C. § 1129(b)*.  Classes 6 and 7 are deemed to reject the Plan.  The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 6 and 7 as required by 11 U.S.C. § 1129(b)(1).  Thus, the Plan may be confirmed notwithstanding 11 U.S.C. § 1129(a)(8).  Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of Classes 6 and 7 and meets the criteria of 11 U.S.C. § 1129(b)(2)(C)(i).  In addition, because no Class lower in the capital structure of the Debtors than Class 7 will retain any interest, and Class 7 Equity Interest Holders will receive what the market has determined is the value of their Equity Interests.

Z.     *Only One Plan -- 11 U.S.C. § 1129(c)*.  Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases.  Accordingly, the requirements of 11 U.S.C. § 1129(c) have been satisfied.

AA.    *Principal Purpose -- 11 U.S.C. § 1129(d)*.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of Section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of 11 U.S.C. § 1129(d).

BB.    *Status of Student 507(a)(7) Deposit Claims Arising from the Deposit of Title IV Funds*.  Following the closure of the Debtors' schools, the Debtors and/or their agents attempted to (i) reverse all charges to student accounts for current Students attending quarter based

programs for the terms that were scheduled to run from April 2015 to July 2015, (ii) credit all student accounts for current Students attending diploma programs (including "clock hour") for the portion of the program they were unable to attend due to such closure, and (iii) credit all student accounts for Students that had a credit balance outstanding regardless of whether or not a check for such credit balance was actually issued to the Student, but was never cashed or honored (collectively, the "**Credits and/or Reversals**").  The Debtors and/or their agents then performed return to Title IV calculations on all student accounts in all programs, and then sent student level return files to the Dept. of ED so that all Credits and/or Reversals could properly be applied to Students' federal loan accounts and other sources of Title IV aid.  As a result of the foregoing Credit and Reversal process and the ability to reconcile and any correct any mistakes in this regard pursuant to Section X.H. of the Plan, the Debtors do not believe that any Student holds (or should hold) a Student 507(a)(7) Deposit Claim arising from the deposit of Title IV funds.

CC.    _No Objection to Disposition of Contracts and Leases_.  No party to an executory contract or unexpired lease to be assumed by the Debtors pursuant to the Plan or rejected by the Debtors pursuant to the Plan has objected to the assumption or rejection thereof.   Each rejection of an executory contract or unexpired lease under the Plan shall be legal, valid and binding upon the Debtors, the Trusts and all non-Debtor parties to such executory contract or unexpired leases, all to the same extent as if the rejection had been effectuated by motion.

DD.    _Retention and Preservation of Causes of Action_.  It is in the best interests of the Debtors' Estates and their Creditors that Causes of Action be retained by, and transferred to, the Distribution Trust, and as specified in the Plan Documents, they are so retained and transferred, subject, however, to any releases provided in the Combined Plan and Disclosure Statement, the Confirmation Order, the Final Cash Collateral Order, or any other Final Order of this Court.

EE.     *Engagement in Business*.  Because the Debtors will cease to exist following the Effective Date, and therefore will not engage in business following consummation of the Plan, 11 U.S.C. § 1141(d)(3) is not applicable.

FF.     *Burden of Proof*.  The Debtors have met their burden of proving the elements of 11 U.S.C. §§ 1129(a) and (b) by a preponderance of the evidence.

GG.     *Satisfaction of Confirmation Requirements*.  The Plan satisfies the requirements for confirmation set forth in 11 U.S.C. § 1129.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     <u>Confirmation of Plan</u>.  The Plan is approved and confirmed under 11 U.S.C. § 1129.  The terms of each of the Plan Documents (including, without limitation, the Distribution Trust Agreement and the Student Trust Agreement) are approved, incorporated by reference into, and an integral part of the Plan, and all parties are authorized to comply with the terms thereof.

2.     <u>Overruling of Objections</u>.  The Objections, and any other objections raised at or before the Confirmation Hearing, which were not otherwise withdrawn or resolved herein, to the extent not resolved, are overruled.

3.     <u>Incorporation of Terms and Provisions of Plan</u>.  The terms and provisions of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.  Each term and provision of the Plan is valid, binding and enforceable as though fully set forth herein.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.  The failure specifically to include or reference any particular term or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such term and provision, it being the intent of the Court that the Plan be confirmed in its entirety.

4.      <u>Binding Effect</u>.  Pursuant to section 1141 of the Bankruptcy Code, effective on the Effective Date, and except as expressly provided in this Confirmation Order, the Plan and its provisions shall be binding upon the Debtors, the Creditors' Committee, the Student Committee, the Distribution Trust, the Student Trust, the Distribution Trustee, the Student Trustee, any individual or entity acquiring or receiving property or a distribution under the Plan and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a) and the provisions of this Confirmation Order, from and after the Effective Date, the Debtors, the Creditors' Committee, the Student Committee, the Distribution Trust, the Student Trust, the Distribution Trustee, the Student Trustee shall comply with the Plan, the Plan Documents and all other Plan-related documents, and the Plan, the Plan Documents and all other Plan-related documents shall be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

5.      <u>Notice</u>.  Good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan and confirmation thereof has been provided, which notice is hereby approved.

6.      <u>Application of Absolute Priority Rule</u>.  The Plan satisfies the requirements of 11 U.S.C. § 1129(b) with respect to Class 7.  Therefore, the treatment of the Equity Interests in Classes 7 is approved.

7.      <u>Releases</u>.  The release provisions of Section XIII.C of the Plan are approved, are incorporated by reference into and are an integral part of this Confirmation Order.  Such provisions shall be effective in accordance with their terms.

RLF1 12812184v.3

8.      <u>Injunction</u>.  The injunction provisions of Section XIII.A of the Plan are approved, are incorporated by reference into and are an integral part of this Confirmation Order.  Such provisions shall be effective in accordance with their terms.

9.      <u>Exculpation</u>.   The exculpation provisions of Section XIII.B of the Plan are approved, are incorporated by reference into and are an integral part of this Confirmation Order. Such provisions shall be effective in accordance with their terms.

10.     <u>Cancellation of Interests</u>.  Pursuant to Section VIII.A.7.c of the Plan, except as otherwise specifically provided in the Plan or in this Confirmation Order, all Equity Interests shall be cancelled, deemed terminated and of no further force and effect.

11.     <u>Plan Implementation Authorization</u>.   All implementing actions required or contemplated by the Plan, including the appointments of the Distribution Trustee and the Student Trustee, and the vesting of the Distribution Trust Assets in the Distribution Trust and the Student Trust Assets in the Student Trust, are hereby authorized and approved in all respects in accordance with the Plan.  The Distribution Trust and the Student Trust shall be deemed for all purposes to have been created in connection with the Plan and this Confirmation Order.  The Distribution Trustee and the Student Trustee are authorized to take any action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan or any exhibit thereto, without further order of the Court or further action by the Debtors or either trust (as applicable) or any other person.  For the avoidance of doubt, the Debtors and their respective officers and directors and the Distribution Trust, Distribution Trustee, Student Trust and Student Trustee are authorized and empowered to take any and all actions necessary or desirable to implement the transactions contemplated by the Plan and this Confirmation Order, including, without limitation, (i) executing, delivering and performing under the Plan Documents and all other Plan-related

documents and (ii) dissolving the Debtors, in each case without any requirement of further vote, consent, approval, authorization or other action by the stockholders, officers or directors, or notice to, order of, or hearing before this Court.  Further, the Debtors, the Distribution Trust or the Distribution Trustee, as applicable, are authorized to file the required documents providing for such dissolution with the State of Delaware or any other applicable state without bringing franchise taxes current and regardless of whether the entities are in good standing.

12.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

13.    <u>Dissolution of the Committees</u>.    Upon the occurrence of the Effective Date, the Creditors' Committee and the Student Committee shall dissolve automatically, whereupon their members, professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) applications for payment of fees and reimbursement of expenses of Professionals, and (iii) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Combined Plan and Disclosure Statement).

14.    <u>Dissolution of the Debtors.</u>  Immediately following the distribution of all of the Debtors' and the Estates' property pursuant to the terms of the Plan, on the Effective Date, the Debtors' directors and officers and any remaining employees shall be deemed to have resigned and the Debtors shall be deemed dissolved for all purposes and of no further legal existence

20

under any applicable state or federal law.  The Debtors and the Distribution Trustee are further authorized to take all such further action as is necessary following the Confirmation Date to implement the foregoing.

15.     <u>Exemption from Certain Transfer Taxes</u>.  Pursuant to 11 U.S.C. § 1146(a), any transfers from the Debtors to the Distribution Trust, the Student Trust or any other person pursuant to, in contemplation of, or in connection with the Plan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement and all documents necessary to evidence and implement any of the transactions and actions described in the Plan or the Plan Supplement.  For the avoidance of doubt, the Sale and all other pre-confirmation transfers or sales do not qualify for an exemption pursuant to Section 1146(a) of the Bankruptcy Code.

16.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to 11 U.S.C. §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

17.     <u>Approval of Rejection of Contracts and Leases</u>.   On the Effective Date, all Executory Contracts and unexpired leases not assumed, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date will be

deemed rejected pursuant to this Confirmation Order; provided, however, for the avoidance of doubt, that no interest of the Debtors or their Estates in any policy of insurance, including, without limitation, the D&O Policies, is rejected.

18.    <u>Claims Based on Rejection of Executory Contracts</u>.    Claims created by the rejection of Executory Contracts pursuant to Section XIV.A of the Plan must be filed with the Claims Agent by no later than thirty (30) days after the later of (i) notice of entry of this Confirmation Order and the occurrence of the Effective Date, and (ii) other notice that the Executory Contract has been rejected.    Except as expressly provided in the Plan or this Confirmation Order, any Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to Section XIV.A for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties.

19.    <u>Administrative Consolidation; Closing of Cases Other than Case No. 15-10952 (KJC)</u>.    The administrative consolidation of the Debtors' estates for all purposes of the Chapter 11 Cases and the Plan, as set forth more fully in Section XVII.Q of the Plan, is hereby approved and shall be deemed to occur on the Effective Date.    All of the Chapter 11 Cases of the Debtors other than Corinthian Colleges, Inc., Case No. 15-10952 (KJC) (the "**CCI Case**") shall be closed upon the entry of this Confirmation Order.

20.    <u>Transfers by Debtors; Vesting of Assets</u>.    All transfers of property of the Estates, including, without limitation, the vesting of the Distribution Trust Assets in the Distribution Trust and the vesting of the Student Trust Assets in the Student Trust, (a) are legal, valid and effective transfers of property, (b) vest the transferees with good title to such property free and clear of all Claims, interests, Liens, charges or other encumbrances, except as expressly provided in the Plan or this Confirmation Order, (c) do not and will not constitute avoidable transfers

under the Bankruptcy Code or under applicable law, (d) do not and will not subject the Distribution Trust, the Distribution Trustee, the Student Trust or the Student Trustee to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor, transferee or stamp or recording tax liability, and (e) are for good consideration and value.  All Distribution Trust Assets shall vest in the Distribution Trust free and clear of all Claims, interests, Liens, charges and other encumbrances.  All Student Trust Assets shall vest in the Student Trust free and clear of all Claims, interests, Liens, charges and other encumbrances.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

21.    Retention and Preservation of Causes of Action.  Pursuant to the Plan, the Causes of Action, including those identified in the Plan Supplement, shall be and are hereby preserved and retained, and shall, upon the Effective Date, be transferred to, the Distribution Trust, subject, however, to any releases provided in the Combined Plan and Disclosure Statement, the Confirmation Order, the Final Cash Collateral Order, or any other Final Order of this Court.

22.    Transfer of Documents from the Student Committee to the Student Trust.  The Student Committee is hereby authorized to turn over any and all documents, materials, or other information that it has received to the Student Trust as a successor in interest and the Student Trustee shall be bound by any agreements to which the Student Committee was a party with respect to receipt of such documents.

23.    Ratification of Distribution Record Dates.  To facilitate the distribution process, the Court hereby confirms that the Distribution Record Date applicable to Allowed Claims is (i) the General Bar Date for all non-governmental Entities and Persons; and (ii) the Governmental Bar Date for Governmental Units.   The Distribution Trust, the Distribution Trustee, the Student Trust, the Student Trustee and each of their respective agents, successors, and assigns shall have

23

no obligation to recognize, and may disregard without any liability, any transfer of Claims occurring after the Distribution Record Date.

24.    <u>Effect of Conflict Between Plan and Confirmation Order</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

25.    <u>Modification</u>.  The Plan may be modified in accordance with Section XVII.A of the Plan.

26.    <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, in the absence of a stay of this Confirmation Order, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtors', the Distribution Trust's, the Distribution Trustee's, the Student Trust's or the Student Trustee's receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

27.    <u>Authorization to Consummate Plan</u>.  Notwithstanding Fed. R. Bankr. P. 3020(e), this Confirmation Order shall take effect immediately upon its entry and the Debtors are

authorized to consummate the Plan immediately after entry of this Confirmation Order and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan.  The Plan shall only become effective on the Effective Date.

28.   <u>Administrative Expense Bar Date</u>.   Requests for payment of Administrative Expense Claims (other than Fee Claims, the Prepetition Lenders Adequate Protection Claims and Claims subject to section 503(b)(1)(D)) must be filed no later than sixty (60) days after the Effective Date.   Holders of Administrative Expense Claims (other than Fee Claims, the Prepetition Lenders Adequate Protection Claims and Claims subject to section 503(b)(1)(D)) that do not file requests for the allowance and payment therefore on or before the Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors or their Estates.

29.   <u>Bar Date for Professional Fee Claims</u>.  Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Distribution Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 45 days after the Effective Date.

30.   <u>Credit and/or Reversal</u>.  If it is later determined upon audit by the Dept. of ED or the Student Trust that any Credit and/or Reversal was inadvertently missed or miscalculated or was not correctly transmitted to the Dept. of ED or correctly posted by the Dept. of ED to such student's file, then (i) the Dept. of ED and/or the Student Trust is fully authorized and directed to make such Credits and/or Reversals to student files after the Effective Date, or (ii) the Court may enter an order after notice and a hearing directing that such Credit and/or Reversal be made

31.   <u>Resolution of IRS Objection</u>.  Notwithstanding any provision to the contrary in this Order or in any Plan Documents, nothing shall: (a) affect the ability of the Internal Revenue

Service (the "**IRS**") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Estates; (b) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (c) cause IRS penalties to be automatically disallowed and such penalties shall be treated, assessed and collected in accordance with applicable federal law; or (d) require the IRS to file an administrative claim in order to receive payment for any liability described in sections 503(b)(1)(B) and (C).  To the extent that Allowed Priority Tax Claims held by the IRS (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, such Allowed Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622.  IRS Administrative Expense Claims that are Allowed pursuant to section 503 of the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Moreover, nothing in this Order or the Plan Documents shall: (a)  effect a release, discharge or otherwise preclude any Claim whatsoever against any Debtor by or on behalf of the IRS relating to any liability arising out of any unfiled pre-petition tax return or any pending audit or audit which may be performed with respect to any pre-petition tax return; and (b) nothing shall enjoin the IRS from amending any claim against any Debtor with respect to any tax liability arising as a result of the filing of an unfiled return or a pending audit or audit that may be performed with respect to any pre-petition or administrative tax return. Further, any liability arising as a result of an unfiled return or final resolution of a pending audit or audit that may be performed with respect to any pre-petition tax return shall be paid in accordance with sections 1129(a)(9)(A) and (C) to the extent required thereunder.

32.    <u>Notice of Effective Date</u>.  Within five (5) Business Days following the occurrence of the Effective Date, the Distribution Trustee shall file notice of the Effective Date with the

Court and serve a copy of such notice on the parties that have requested notice pursuant to Bankruptcy Rule 2002; which notice shall also serve as notice of the entry of this Order under Bankruptcy Rule 2002(f).

33.    <u>Substantial Consummation</u>.    Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

34.    <u>Final Decree; Dissolution</u>.    After the Distribution Trust fulfills the standards necessary in order to close the CCI Case, the Distribution Trustee shall file a final decree motion requesting the entry of a final decree pursuant to section 350(a) of the Bankruptcy Code.

35.    <u>Continuation of Automatic Stay</u>.    Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate Order of this Court, all injunctions or stays provided for in the Chapter 11 cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existences on the Confirmation Date, shall remain in full force and effect until the occurrence of the Effective Date.

36.    <u>Retention of Jurisdiction</u>.    This Court shall retain  exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)    hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(b)    enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(c)    issue such Orders in aid of execution and consummation of the Plan, the Distribution Trust Agreement and the Student Trust Agreement, to the extent authorized by section 1142 of the Bankruptcy Code;

(d)      consider any amendments to or modifications of the Plan, the Distribution Trust Agreement and the Student Trust Agreement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(e)      hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

(f)      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Distribution Trust Agreement and the Student Trust Agreement;

(g)      hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(h)      hear any other matter not inconsistent with the Bankruptcy Code;

(i)      enter a final decree closing the Chapter 11 Cases;

(j)      ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, the Distribution Trust Agreement and the Student Trust Agreement;

(k)      decide or resolve any motions, adversary proceedings, contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(l)      issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, the Distribution Trust Agreement or the Student Trust Agreement, except as otherwise provided in the Plan;

(m)    determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, the Distribution Trust Agreement, the Student Trust Agreement, or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Plan, the Distribution Trust Agreement or the Student Trust Agreement;

(n)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(o)    resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(p)    resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Dates, the Administrative Expense Bar Date, the Governmental Bar Date, and/or the hearing on the approval of the Plan for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

(q)    resolve any other matter or for any purpose specified in the Plan, the Confirmation Order, the Distribution Trust Agreement, the Student Trust Agreement, or any other document entered into in connection with any of the foregoing.

Dated: August _____, 2015
       Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

RLF1 12812184v.3

# Exhibit A

## Plan of Liquidation

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |

------------------------------------------------------------

## DEBTORS' THIRD AMENDED AND MODIFIED
## COMBINED DISCLOSURE STATEMENT
## AND CHAPTER 11 PLAN OF LIQUIDATION

Dated: Wilmington, Delaware
August 25, 2015

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. DEFINITIONS AND CONSTRUCTION OF TERMS .......................................................2

III. BACKGROUND AND DISCLOSURES ......................................................................18

IV. SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES ....32

V. CONFIRMATION AND VOTING PROCEDURES ........................................................33

VI. TREATMENT OF UNCLASSIFIED CLAIMS ............................................................37

VII. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS;
    ESTIMATED RECOVERIES ....................................................................................39

VIII. TREATMENT OF CLAIMS AND EQUITY INTERESTS .......................................40

IX. PROVISIONS REGARDING THE DISTRIBUTION TRUST ....................................44

X. PROVISIONS REGARDING THE STUDENT TRUST ................................................47

XI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER
    THE COMBINED PLAN AND DISCLOSURE STATEMENT ...........................50

XII. IMPLEMENTATION AND EFFECT OF CONFIRMATION OF
    COMBINED PLAN AND DISCLOSURE STATEMENT ....................................54

XIII. INJUNCTION, EXCULPATION AND RELEASES .................................................55

XIV. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ....................................58

XV. CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND
    THE EFFECTIVE DATE ..........................................................................................58

XVI. RETENTION OF JURISDICTION ...........................................................................60

XVII. MISCELLANEOUS PROVISIONS ........................................................................61

RLF1 12573713v.10

**NOTICE**

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS COMBINED PLAN AND DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN.  THIS COMBINED PLAN AND DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION AND BELIEF.   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED PLAN AND DISCLOSURE STATEMENT ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.

HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.  THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND COMBINED PLAN AND DISCLOSURE STATEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY.

# I.  **INTRODUCTION**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby propose the Debtors' Combined Plan and Disclosure Statement  pursuant to sections 1125 and 1129 of the Bankruptcy Code.  While the Debtors are the proponents of the Combined Plan and Disclosure Statement within the meaning of section 1129 of the Bankruptcy Code, the Combined Plan and Disclosure Statement, as amended, is the culmination of extensive negotiations between the Debtors, the Creditors' Committee, the Student Committee and the Administrative Agent, resulting in a consensual liquidating chapter 11 plan among the parties for the Debtors.  The Creditors' Committee and the Student Committee support the Combined Plan and Disclosure Statement and encourage the Holders of General Unsecured Claims, Student Claims and Government Education Claims to support the Combined Plan and Disclosure Statement.

The Combined Plan and Disclosure Statement is the result of extensive negotiations between the Debtors, the Creditors' Committee, the Student Committee and the Prepetition Secured Parties as to the Distribution of the Debtors' assets already liquidated or to be liquidated over time to the Holders of Allowed Claims in accordance with the terms of the Combined Plan and Disclosure Statement and the priority of claims provisions of the Bankruptcy Code.  The Combined Plan and Disclosure Statement contemplates the creation of two separate trusts:  (i) the Distribution Trust, which, pursuant to the terms of this Combined Plan and Disclosure Statement and the Distribution Trust Agreement, shall be for the benefit of all Holders of Allowed Claims other than Student Claims and Government Education Claims; and (ii) the Student Trust, which, pursuant to the terms of the Combined Plan and Disclosure Statement and the Student Trust Agreement, shall be for the benefit of Allowed Student Claims and Allowed Government Education Claims.  Significantly, the Combined Plan and Disclosure Statement provides for the Prepetition Secured Parties to release any Liens they may otherwise have upon, and forgo any recoveries from, the Student Refund Reserve, thereby enabling the Debtors to transfer their rights and interest in those funds (in the approximate amount of $4.3 million) to the Student Trust, which, subject to the terms of the Student Trust Agreement, may result in the implementation of one or more Student Claims Benefit Programs.

The Student Claims Benefit Programs have the potential to assist all Students harmed by the sudden shut down of the Debtors' schools.  Importantly, the Student Claims Benefit Programs may include outreach programs and assistance for Students in seeking discharges or releases of their student loan obligations.  Accordingly, the Student Claims Benefit Programs could provide an immediate and impactful benefit to all Holders of Student Claims. The immediate establishment of programs dedicated to debt relief for Students has an intangible value far higher than any Distributions that might be made to Holders of Student Claims.

As a result of the consideration and various concessions provided by the Prepetition Secured Parties, the Combined Plan and Disclosure Statement provides for meaningful benefits to the Holders of Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, General Unsecured Claims, Student Claims and Governmental Education Claims.  The Prepetition Secured Parties have agreed to, among other things, (i) allow the Debtors or the Distribution Trustee to satisfy first out of the Prepetition Secured Parties' collateral all Allowed and accrued, but unpaid, Administrative, Priority Tax and Other Priority

Claims (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets); (ii) reduce the Prepetition Secured Parties' Pro Rata share of any Distributions from the Distribution Trust on account of the Prepetition Lenders Deficiency Claims by approximately fifteen (15) percent; (iii) release their Liens on the proceeds of Avoidance Actions (in addition to various other remaining assets of the Debtors and their Estates), and allow such proceeds to be transferred to the Distribution Trust free and clear of such Liens for the benefit of all Beneficiaries thereof; and (iv) as described above, release any Liens they may otherwise have on funds in, and forgo any recoveries from, the Student Refund Reserve; and (v) release their Liens on Cash Collateral to allow the use of the Distribution Trust Seed Money to provide necessary initial funding for the Distribution Trust. The Debtors submit that these concessions by the Prepetition Secured Parties constitute substantial consideration without which confirmation and implementation of this Combined Plan and Disclosure Statement and the benefits contained herein would not be possible. In exchange for this consideration, Section XII.C. of the Combined Plan and Disclosure Statement provides the Administrative Agent, the Prepetition Lenders and their Related Persons, in their capacities as such, with a release of all causes of action the Debtors or their Estates may hold against the Prepetition Secured Parties. In further consideration, the Combined Plan and Disclosure Statement also provides that Holders of Allowed Class 4 General Unsecured Claims entitled to vote on the acceptance or rejection of the Combined Plan and Disclosure Statement will release the Administrative Agent, the Prepetition Lenders, and their respective Related Persons, in their capacities as such, from any claims or causes of action such Holders may have against the Administrative Agent, the Prepetition Lenders, and their Related Persons, in their capacities as such, unless such Holders affirmatively "opt out" of providing such releases on their Ballots. Notwithstanding the proposed releases contained in the Combined Plan and Disclosure Statement, the Debtors are not aware of any Causes of Action against the Administrative Agent, the Prepetition Lenders or their Related Persons that would provide a net benefit to the Debtors' Estates. While the Debtors are aware of a potential preference action pursuant to section 547 against the Administrative Agent and the Prepetition Lenders in the approximate amount of $3 million, given the amount of the Prepetition Lenders Adequate Protection Claim, the protections afforded to such Claim in the Final Cash Collateral Order, and the consideration being provided to the Debtors' Estates in return for such releases, the Debtors do not believe that the pursuit of this potential cause of action would provide a net benefit to the Debtors' Estates.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVII.A. of the Combined Plan and Disclosure Statement, the Debtors expressly reserve the right to alter, amend or modify the Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times, before substantial consummation thereof, including as disclosed more fully in Section III.G. of this Combined Plan and Disclosure Statement.

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

1.      **"Administrative Agent"**   means that party defined as the Administrative Agent in Section III.B. of the Combined Plan and Disclosure Statement.

2.      **"Administrative Expense Bar Date"**   means the Business Day that is sixty (60) days after the Effective Date.

3.      **"Administrative Expense Claim"**   means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estates under section 1930 of chapter 123 of Title 28 of the United States Code, (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code, and (e) the Prepetition Lenders Adequate Protection Claims.

4.      **"Allowed"**   means, with respect to Claims: (a) any Claim, proof of which was timely Filed (or for which Claim, under the Combined Plan and Disclosure Statement, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be Filed); (b) any Claim which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no Proof of Claim has been Filed; or (c) any Claim allowed pursuant to the Combined Plan and Disclosure Statement or a Final Order of the Bankruptcy Court; provided that with respect to any Claim described in clauses (a) and (b) shall be considered Allowed only if and to the extent that with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period fixed by the Combined Plan and Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such objection is interposed and the Claim is subsequently Allowed by a Final Order; provided, further, that Claims allowed solely for purposes of voting on the Combined Plan and Disclosure Statement pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

5.      **"Approved Budget"**   has the meaning ascribed to such term under the Final Cash Collateral Order.

6.      **"Asset Purchase Agreement"**   means that agreement defined as the Asset Purchase Agreement in Section III.D. of the Combined Plan and Disclosure Statement.

7.      **"Avoidance Actions"**   means any and all rights to recover or avoid transfers or liens under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, Bankruptcy Code sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions; subject, however, to any releases thereof provided in the Combined Plan and Disclosure Statement, the Confirmation Order, the Final Cash Collateral Order, or any other Final Order of the Bankruptcy Court.

**8.**     "**Ballot**"  means the ballot on which each Holder of a Claim entitled to vote on the acceptance or rejection of this Combined Plan and Disclosure Statement casts such vote.

**9.**     "**Bankruptcy Code**"  means title 11 of the United States Code, as amended from time to time.

**10.**     "**Bankruptcy Court**" or "**Court**"  means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

**11.**     "**Bankruptcy Exceptions**"  means the exception to the recognition of COD Income under section 108(a)(l)(A) of the Tax Code when a taxpayer discharging indebtedness is under the jurisdiction of a court in a case under title 11 of the Bankruptcy Code and when the discharge is granted, or is effected pursuant to a plan approved, by a United States Bankruptcy Court.

**12.**     "**Bankruptcy Rules**"  means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended from time to time.

**13.**     "**Bar Dates**"  means those dates and times defined as the Bar Dates in Section III.E.7.c. of this Combined Plan and Disclosure Statement.

**14.**     "**Barclays**"  means Barclays PLC.

**15.**     "**Beneficiary**"  means (i) with respect to the Distribution Trust, Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims (other than Student 507(a)(7) Deposit Claims), the Allowed Prepetition Lenders Secured Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims; and (ii) with respect to the Student Trust, Holders of Student 507(a)(7) Deposit Claims, Allowed Student Claims and Allowed Government Education Claims.

**16.**     "**Books and Records**"  means the books and records defined as the Books and Records in Section XI.L. of the Combined Plan and Disclosure Statement

**17.**     "**Borrowers**"  means those parties defined as Borrowers in Section III.B. of the Combined Plan and Disclosure Statement.

**18.**     "**Business Day**"  means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**19.**     "**Canadian Borrower**"  means that borrower defined as the Canadian Borrower in Section III.B. of the Combined Plan and Disclosure Statement.

RLF1 12573713v.10

20.    **"Canadian Guaranty"** means that guaranty defined as the Canadian Guaranty in Section III.B. of the Combined Plan and Disclosure Statement.

21.    **"Cash"** means legal tender of the United States of America and equivalents thereof.

22.    **"Causes of Action"** means the Avoidance Actions and all other claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all claims and causes against the Dept. of ED and any and all commercial tort claims against any party, including the Debtors' current and former directors and officers and all claims and causes of action identified in the Plan Supplement; and subject, however, to any releases provided in the Combined Plan and Disclosure Statement, the Confirmation Order, the Final Cash Collateral Order, or any other Final Order of the Bankruptcy Court.

23.    **"Chapter 11 Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled as Corinthian Colleges, Inc., *et al.*, under Case No. 15-10952 (KJC), currently pending in the Bankruptcy Court.

24.    **"Claim"** means the definition set forth in section 101(5) of the Bankruptcy Code.

25.    **"Claims and Balloting Agent"** means Rust Consulting/Omni Bankruptcy.

26.    **"Claims Objection Deadline"** means one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

27.    **"Class"** means any group of substantially similar Claims or Equity Interests classified by the Combined Plan and Disclosure Statement pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

28.    **"Clerk"** means the clerk of the Bankruptcy Court.

29.    **"COD"** means cancellation of indebtedness.

30.    **"Combined Plan and Disclosure Statement"** means this combined disclosure statement and chapter 11 plan of liquidation including, without limitation, all exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time through the Confirmation Date.

31.    **"Committees"** means, collectively, the Creditors' Committee and the Student Committee.

32.    **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket.

33.   **"Confirmation Hearing"**   means the hearing held by the Bankruptcy Court to consider confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

34.   **"Confirmation Notice"**   means that notice defined as the Confirmation Notice in Section V.A.7. of the Combined Plan and Disclosure Statement.

35.   **"Confirmation Order"**   means the order of the Bankruptcy Court confirming the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.

36.   **"Corinthian"**   means Corinthian Colleges, Inc.

37.   **"Credit Agreement"**   means that agreement defined as the Credit Agreement in Section III.B. of the Combined Plan and Disclosure Statement.

38.   **"Creditor"**   means any Person that is the Holder of a Claim against any of the Debtors.

39.   **"Creditors' Committee"**   means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee.

40.   "**Credits and/or Reversals**" means the student ledger credits and/or reversals defined as Credits and/or Reversals in Section X.H. of the Combined Plan and Disclosure Statement.

41.   **"D & O Policies"**   means all of the director and officer liability insurance policies of the Debtors.  In the five (5) years preceding the Petition Date, the D&O Policies consisted of (i) $30 million in coverage and $10 million in Side A Difference-in-Conditions (DIC) coverage for the 2010-2011 policy year; (ii) $25 million in coverage and $15 million in Side A Difference-in-Conditions (DIC) coverage for the 2011-2012 policy year; (iii) $25 million in coverage and $15 million in Side A Difference-in-Conditions (DIC) coverage for the 2012-2013 policy year; (iv) $25 million in coverage and $15 million in Side A Difference-in-Conditions (DIC) coverage for the 2013-2014 policy year; (v) $25 million in coverage and $15 million in Side A Difference-in-Conditions (DIC) coverage for the 2014-2015 policy year; and (vi) $10 million in Side A coverage for the 2015-2016 policy year; provided, however, that the figures listed above relate to the total coverage provided under the D&O Policies for each referenced policy year and may not be reflective of the remaining available coverage under the D&O Policies.

42.   "**De Minimis Asset Sale Order**" means that order defined as the De Minimis Asset Sale Order in Section III.E.1. of the Combined Plan and Disclosure Statement.

43.   **"Debtors"**   means, collectively, Corinthian Colleges, Inc., Corinthian Schools, Inc., Rhodes Colleges, Inc., Florida Metropolitan University, Inc., Corinthian Property Group, Inc., Titan Schools, Inc., Career Choices, Inc., Sequoia Education, Inc., ETON Education, Inc., Ashmead Education, Inc., MJB Acquisition Corporation, ECAT Acquisition, Inc., Pegasus Education, Inc., Grand Rapids Educational Center, Inc., Rhodes Business Group, Inc., Everest College Phoenix, Inc., CDI Education USA, Inc., SP PE VII-B Heald Holdings Corp., SD III-B

Heald Holdings Corp., Heald Capital LLC, Heald Real Estate, LLC, Heald Education, LLC, Heald College, LLC, QuickStart Intelligence Corporation and Socle Education, Inc.

**44.**    "**Debtor Releasees**" means the parties defined as the Debtor Releasees in Section XIII.C.1. of the Combined Plan and Disclosure Statement.

**45.**    "**Debtors-in-Possession**"    means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

**46.**    "**Dept. of ED**" means the United States Department of Education.

**47.**    "**Disputed**"    means any Claim that is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part prior to the Claim Objection Deadline that has not been resolved by settlement or Final Order.

**48.**    "**Distribution**" means any distribution to the Holders of Allowed Claims.

**49.**    "**Distribution Record Date**"    means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be (i) the General Bar Date for all non-governmental Entities and Persons; and (ii) the Governmental Bar Date for Governmental Units.

**50.**    "**Distribution Trust**"    means the trust established under the Combined Plan and Disclosure Statement and the Distribution Trust Agreement.

**51.**    "**Distribution Trust Account**"    means one or more segregated interest bearing accounts established by the Distribution Trust into which shall be deposited (a) the Distribution Trust Seed Money, and (b) the proceeds of the liquidation of all other Distribution Trust Assets, until otherwise distributed pursuant to the Combined Plan and Disclosure Statement.

**52.**    "**Distribution Trust Agreement**" means the trust agreement that establishes the Distribution Trust and governs the powers, duties, and responsibilities of the Distribution Trustee and the Oversight Board.   The Distribution Trust Agreement shall be part of the Plan Supplement.

**53.**    "**Distribution Trust Assets**"    means all rights, title and interests of any and every kind owned or otherwise held by the Debtors and their Estates in any and all property of any kind and regardless of whether of any such property is listed in the Schedules, except for:   (i) the Unimpaired Claims Cash Reserve, (ii) the Distribution Trust Seed Money, (iii) the Prepetition Lenders Effective Date Cash, (iv) the Zenith Escrow Interests (or the Zenith Escrow Account), (v) the NY State Grant Funds, and (vi) the Student Trust Assets.   Included within the Distribution Trust Assets, and not by way of limitation, are all interests of any kind of the Debtors and their Estates in the D&O Policies and all Causes of Action.

**54.**    "**Distribution Trust Available Cash**"    means the Cash on deposit in the Distribution Trust Account at any time, less the Distribution Trust Operating Reserve.

**55.** "**Distribution Trust Objections**" means those objections defined as the Distribution Trust Objections in Section XI.B. of the Combined Plan and Disclosure Statement.

**56.** "**Distribution Trust Seed Money**" means the sum of $500,000 in Cash to be paid, on the Effective Date, by the Debtors to the Distribution Trustee.

**57.** "**Distribution Trustee**" means the Person appointed to administer the Distribution Trust with such rights, duties, and obligations as set forth in the Distribution Trust Agreement, subject to the authority of the Oversight Board.

**58.** "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

**59.** "**Domestic Guaranty**" means that guaranty defined as the Domestic Guaranty in Section III.B. in the Combined Plan and Disclosure Statement.

**60.** "**ED Intent to Fine Letter**" means that letter defined as the ED Intent to Fine Letter in Section III.D. of the Combined Plan and Disclosure Statement.

**61.** "**ED Claim for Unearned Tuition**" means the Claim held by the Dept. of ED, in the approximate amount of $45 million, for Title IV funds which were advanced to the Debtors for educational purposes but for which education was not provided due to the cessation of campus operations in April 2015, and which was subject to review by an independent auditor.

**62.** "**Effective Date**" means the date on which the conditions specified in Section XIV of the Combined Plan and Disclosure Statement have been satisfied or waived.

**63.** "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

**64.** "**Equity Interests**" means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares or membership interests together with any warrants, options or contract rights to purchase or acquire such interests at any time or any Claim or interest that is subject to subordination to the level of any equity interest pursuant to section 510(b) of the Bankruptcy Code.

**65.** "**Estate Assets**" means those assets defined as Estate Assets in Section XIII.A. of the Combined Plan and Disclosure Statement.

**66.** "**Estates**" means the estates of the Debtors created upon the commencement of the Chapter 11 Cases, including all of the Debtors' property pursuant to section 541 of the Bankruptcy Code.

**67.** "**Executory Contract**" means any executory contract or unexpired lease as of the Commencement Date between the Debtors and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Combined Plan and Disclosure Statement.

68.     **"Fee Claim"** means a claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

69.     **"Fee Order"** means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 201] entered by the Bankruptcy Court on May 26, 2015.

70.     **"File", "Filed", or "Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

71.     **"Final Fee Application"** means an application for final allowance of the Professional's aggregate Fee Claim.

72.     **"Final Order"** means an Order of the Bankruptcy Court or a Court of competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

73.     **"Final Cash Collateral Order"** means the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Granting Related Relief [Docket No. 346] entered by the Bankruptcy Court on June 8, 2015, as the same may be extended or otherwise modified by further order of the Bankruptcy Court upon the prior written consent of the Debtors, the Administrative Agent, and the Committees.

74.     **"First Day Motions"** means those motions defined as the First Day Motions in Section III.E. of the Combined Plan and Disclosure Statement.

75.     "**First Miscellaneous Asset Order**" means that order defined as the First Miscellaneous Asset Order in Section III.E.5.b. of the Combined Plan and Disclosure Statement.

76.     "**FSA Programs**" means those programs defined as FSA Programs in Section III.A.3. of the Combined Plan and Disclosure Statement.

77.     "**FTI Order**" means the Amended Order (I) Authorizing the Retention and Employment of FTI Consulting, Inc. as Crisis Manager and (II) Designating William J. Nolan as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date [Docket No. 235] entered by the Court on May 29, 2015.

78.     **"GAGP"** means Great American Global Partners LLC.

79.     "**GAGP Consulting Agreement**" means that consulting agreement defined as the GAGP Consulting Agreement in Section III.E.5.c.

80.    "**General Bar Date**   means the date and time that is defined as the General Bar Date in Section III.E.7.c. of this Combined Plan and Disclosure Statement.

81.    "**General Unsecured Claim**" means any Claim against the Debtors that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date and that is not:  (i) an Other Secured Claim, (ii) an Administrative Expense Claim, (iii) a Priority Tax Claim, (iv) an Other Priority Claim or any other Claim entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, (v) a Student Claim, (vi) a Government Education Claim, (vii) an Intercompany Claim, or (viii) any Claims that constitute an Equity Interest. For the avoidance of doubt,, General Unsecured Claims shall include Prepetition Lenders Deficiency Claims, but shall not include the Prepetition Lenders Secured Claim or the Prepetition Lenders Adequate Protection Claims.  For the further avoidance of doubt, General Unsecured Claims shall include the ED Claim for Unearned Tuition, but shall not include any other Claims of the Dept. of ED.

82.    "**General Unsecured Creditors Recovery Fund Assets**" means the Distribution Trust Assets less such funds as are necessary to pay in full any unpaid Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Tax Claims and the Prepetition Lenders Adequate Protection Claims.

83.    "**Governmental Lawsuits**" means the lawsuits filed against the Debtors defined in Section III.C. of the Combined Plan and Disclosure Statement.

84.    "**Government Education Claims**"  means any claim against the Debtors that arose or is deemed by the Bankruptcy Code or the Bankruptcy Court, as the case may be, to have arisen before the Petition Date that is held by (i) a Governmental Unit and refers or relates to alleged misconduct by the Debtors in connection with the educational programs offered by the Debtors, including, but not limited to, any Claims alleged in the Governmental Lawsuits and any claims relating to allegations of unlawful debt collection practices, violation of consumer protection laws, and misrepresentations relating to placement rates, employment opportunities, earnings of graduates, the nature, character and quality of programs, the transferability of credits, the availability of externships and the nature and availability of financial aid, and (ii) any Claims of the Dept. of ED other than the ED Claim for Unearned Tuition (which shall constitute a General Unsecured Claim).

85.    "**Governmental Bar Date**"  means the date and time that is defined as the Governmental Bar Date in Section III.E.7.c. of this Combined Plan and Disclosure Statement.

86.    "**Governmental Unit**" means the definition set forth in section 101(27) of the Bankruptcy Code.

87.    "**Guaranteed Amount**"  means that amount defined as the Guaranteed Amount in Section III.E.5.c.

88.    "**Guaranties**" mean those guaranties defined as the Guaranties in Section III.B. of the Combined Plan and Disclosure Statement.

89.    "**Guarantors**" mean those parties defined as Guarantors in Section III.B. of the Combined Plan and Disclosure Statement.

90.    "**Heald**" means Heald Capital, LLC.

91.    "**Higher Education Act**" means 20 U.S.C. §§ 1001 *et seq*.

92.    "**Holder**" means the beneficial holder of any Claim or Equity Interest.

93.    "**Holder Releasees**" means the parties defined as the Holder Releasees in Section XIII.C.2. of the Combined Plan and Disclosure Statement.

94.    "**Insurance Policies**" means all insurance policies of the Debtors, including but not limited to, the D&O Policies.

95.    "**Intercompany Claims**" means (i) any account reflecting intercompany book entries by one Debtor with respect to any other Debtor, or (ii) any Claim that is not reflected in such book entries and is held by a Debtor against any other Debtor, in each case accruing before or after the Petition Date, including, but not limited to, any claim for reimbursement, payment as guarantor or surety, or any claim for contribution or expenses that were allocable between multiple Debtors.

96.    "**IRS**" means Internal Revenue Service.

97.    "**January 2014 Letter**" means that letter defined as the January 2014 Letter in Section III.D. of the Combined Plan and Disclosure Statement.

98.    "**June 12 Letter**" means that letter defined as the June 12 Letter in Section III.D. of the Combined Plan and Disclosure Statement.

99.    "**Letters of Credit**" shall have the meaning ascribed to such term in the Credit Agreement.

100.    "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including and "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

101.    "**Managing Board**" means the up to five (5) Person board consisting of at least four (4) members appointed by the Student Committee, and, if they timely designate, one (1) member appointed by the attorney generals' offices for the states or commonwealths that have filed Claims in the cases, to oversee, direct, and approve the actions of the Student Trustee, in accordance with the Student Trust Agreement. The initial members of the Managing Board shall be identified in the Plan Supplement.

102.    "**Miscellaneous Asset Sale Orders**" means those orders defined as the Miscellaneous Asset Sale Orders in Section III.E.3. of the Combined Plan and Disclosure Statement.

103. **"Miscellaneous Asset Sales"** mean those sales defined as the Miscellaneous Asset Sales in Section III.E. of the Combined Plan and Disclosure Statement.

104. **"Monitor"** means the monitor selected by the Dept. of ED under the Operating Agreement as defined in Section III.D. of this Combined Plan and Disclosure Statement.

105. **"MOU"** means that memorandum of understanding defined as the MOU in Section III.D. of the Combined Plan and Disclosure Statement.

106. **"NY State Grant Funds"** mean the funds earned by the Debtors pursuant to the New York State Tuition Assistance Fund.

107. **"Operating Agreement"** means that agreement defined as the Operating Agreement in Section III.D. of the Combined Plan and Disclosure Statement.

108. **"Order"** means an order or judgment of the Bankruptcy Court as entered on the Docket.

109. **"Other Priority Claim"** means any Claim accorded priority in right of payment under Bankruptcy Code section 507(a), other than a Priority Tax Claim or an Administrative Claims.

110. **"Ordinary Course Professionals Order"** means the order defined as the Ordinary Course Professionals Order in Section III.E.4.a. of the Combined Plan and Disclosure Statement.

111. **"Other Secured Claims"** means a Secured Claim other than the Prepetition Lenders Secured Claim.

112. **"Oversight Board"** means the three (3) Person board consisting of one (1) member appointed by the Creditors' Committee, one (1) member designated by the Prepetition Secured Parties, and the third member being the Distribution Trustee, to oversee, direct, and approve the actions of the Distribution Trustee in accordance with the Distribution Trust Agreement. The initial members of the Oversight Board shall be identified in the Plan Supplement.

113. **"Person"** means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

114. **"Petition Date"** means May 4, 2015.

115. **"Plan Documents"** means the Combined Plan and Disclosure Statement, the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing.

116. **"Plan Injunction"** means the injunction defined as the Plan Injunction in Section XIII.A. of the Combined Plan and Disclosure Statement.

117. **"Plan Supplement"** means the appendix of schedules and exhibits to be Filed with the Bankruptcy Court at least five (5) days prior to the Confirmation Objection Deadline, containing, among other things, the Distribution Trust Agreement and the Student Trust Agreement, as may be modified and/or supplemented.

118. **"Prepetition Lenders"** means those parties defined as the Prepetition Lenders in Section III.B of the Combined Plan and Disclosure Statement.

119. **"Prepetition Lenders Adequate Protection Claims"** means any and all Claims for adequate protection of the Prepetition Secured Parties, including, without limitation, under the Final Cash Collateral Order, section 507(b) of the Bankruptcy Code, or any other Order of the Bankruptcy Court, which shall be an Allowed Administrative Claim under the Combined Plan and Disclosure Statement. The Prepetition Lenders Adequate Protection Claims shall continue to accrue through the Effective Date, but shall not be reduced by (i) any proceeds realized from the Zenith Escrow Interests, (ii) the NY State Grant Funds, and (iii) any adequate protection payments made to the Prepetition Secured Parties or their professionals under the Final Cash Collateral Order, provided, however, that nothing in the Combined Plan and Disclosure Statement shall alter, amend, impair or otherwise prejudice the Prepetition Secured Parties' right to receive continued adequate protection payments until the Effective Date, solely to the extent authorized in the Final Cash Collateral Order.

120. **"Prepetition Lenders Claims"** means the Claims of the Prepetition Secured Parties, against the Debtors arising from, related to, arising under, or in connection with the Prepetition Loan Documents, for any and all outstanding obligations thereunder incurred through and including the Effective Date, and taking into account the sum of all payments or other distributions made by any of the Debtors to the Administrative Agent or the Prepetition Lenders prior to the Effective Date on account of such Claims (pursuant to the Cash Collateral Orders, any other Final Order of the Bankruptcy Court, or otherwise). The Prepetition Lenders Claims include the Prepetition Lenders Secured Claims, the Prepetition Lenders Adequate Protection Claim, and the Prepetition Lenders Deficiency Claims.

121. **"Prepetition Lenders Deficiency Claims"** means that portion of the Prepetition Lenders Claims remaining unsatisfied after taking into account receipt by the Administrative Agent of (i) realized proceeds of the Zenith Escrow Interests, (ii) the NY State Grant Fund, and (iii) the Allowed Prepetition Lenders Adequate Protection Claims.

122. **"Prepetition Lenders Effective Date Cash"** means all of the Cash held by the Debtors as of the Effective Date, including any funds cash-collateralizing Letters of Credit that have been terminated or expired according to their terms, less the Unimpaired Claims Cash Reserve and the Distribution Trust Seed Money.

123. **"Prepetition Lenders Secured Claims"** means the outstanding balance under the Prepetition Loan Documents as of the Petition Date, plus any claims of the Prepetition Secured Parties under the Prepetition Loan Documents on account of postpetition draws on Letters of Credit. The Prepetition Lenders Secured Claims shall be Allowed in the full amount of the Prepetition Lenders Secured Claims.

13

124.    **"Prepetition Loan Documents"**    means those documents defined as the Prepetition Loan Documents in Section III.B. of the Combined Plan and Disclosure Statement.

125.    **"Prepetition Secured Parties"**    means those parties defined as the Prepetition Secured Parties in Section III.B. of the Combined Plan and Disclosure Statement.

126.    **"Priority Tax Claim"**    means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

127.    **"Privilege"**    means the attorney client privilege, work product protections or other immunities (including those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

128.    **"Pro Rata"**    means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

129.    **"Professional"**    means any professional person employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of the Bankruptcy Court, including FTI Consulting Inc., as Crisis Managers, and William J. Nolan, as Chief Restructuring Officer.

130.    **"Qui Tam Claims"**    means any Claim brought under the Federal False Claims Act, 31 U.S.C § 3729 et seq., on the behalf of the United States of America.

131.    "**Related Persons**"    means, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them.

132.    "**Rust Omni**"    means Rust Consulting/Omni Bankruptcy.

133.    **"Schedules"**    means the schedules of assets and liabilities, the list of Holders of Equity Interests and the statement of financial affairs filed by each of the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

134.    **"Second Miscellaneous Asset Sale Order"**    means that order defined as the Second Miscellaneous Asset Sale Order in Section III.E.5.b. of the Combined Plan and Disclosure Statement."

135.    **"Secured Claim"**    means a Claim (i) that is secured by a Lien on property in which the Estates have an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which

(A) is undisputed by the Debtors or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Distribution Trustee and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

136.   **"Settlement Percentage"** means the respective Pro Rata percentage for Holders of Allowed Prepetition Lenders Deficiency Claims and Allowed General Unsecured Claims (other than the Allowed Prepetition Lenders Deficiency Claims) on account of any Distribution of the General Unsecured Creditors Recovery Fund Assets, which shall be:  (i) thirty (30) percent to the Administrative Agent, for the benefit of the Prepetition Secured Parties, on account of the Allowed Prepetition Lenders Deficiency Claims and (ii) seventy (70) percent to the Holders of Allowed General Unsecured Claims (other than the Allowed Prepetition Lenders Deficiency Claims).

137.   **"States"** means, collectively, the People of California and the Commonwealth of Massachusetts, as defined in Section XIII.A. of the Combined Plan and Disclosure Statement.

138.   **"Statutory Fees"** means any and all fees payable to the UST pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

139.   **"Student"** means any individual who has matriculated with any of the Debtors' schools whether in person or online.

140.   **"Student Books and Records"** means all Books and Records in the Debtors' actual or constructive possession, custody or control as of the Effective Date which contain academic transcripts, student loan files or other Books and Records which contain Student-specific information about a Student's attendance at any of the Debtors' schools.

141.   **"Student Claims"** means any Claims against the Debtors that arose or are deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Petition Date that is held by a Student and refers or relates to:  (i) such Student's matriculation with any of the Debtors' schools whether in person or online or (ii) any alleged misconduct by the Debtors in connection with the educational programs offered by the Debtors, including, but not limited to, any claims relating to allegations of unlawful debt collection practices, violation of consumer protection laws, and misrepresentations relating to placement rates, employment opportunities, earnings of graduates, the nature, character and quality of programs, the transferability of credits, the availability of externships and the nature and availability of financial aid.  For the avoidance of doubt, the Student Claims shall not include any Claims held by Students wholly unrelated to either such Student's matriculation with any of the Debtors' schools or alleged misconduct by the Debtors in connection with the educational programs offered by the Debtors.

142.   **"Student Claims Benefits Program"**   means any program that may be established pursuant to and in accordance with the terms of the Student Trust Agreement, which shall be for the benefit of Holders of Allowed Student Claims and Allowed Government Education Claims, including, by way of example only, the potential investigation and prosecution of any claims or causes of action of Students, against any entity, related to any alleged misconduct of the Debtors and outreach programs designed to notify Holders of such

Claims of their rights and obligations in connection with their Claims, and such other services as deemed appropriate from time to time by the Student Trustee in accordance with the Student Trust Agreement. Notwithstanding anything in the Combined Plan and Disclosure Statement, the Student Trust Agreement or the Confirmation Order to the contrary, the proceeds of the Student Reserve Fund shall not be used by the Student Trustee or the Student Trust to pursue, investigate, commence and/or prosecute claims or causes of action against (i) the Prepetition Secured Parties or their Related Persons, in their capacities as such (as the Debtors' rights and interests in the Student Reserve Fund are being conveyed to the Student Trust based solely on the agreement of the Prepetition Secured Parties' to release any Liens they may have on the Student Reserve Fund and to forgo any recoveries therefrom); and (ii) the Debtors' current and former officers' and directors (as the D & O Policies and any Causes of Action against the Debtors' current and former officers' and directors constitute Distribution Trust Assets).

143. "**Student Committee**" means that committee defined as the Student Committee in Section III.E.3. of the Combined Plan and Disclosure Statement

144. "**Student Committee Fee Overage**" means the amount by which the Allowed Fee Claims of the Student Committee Professionals exceed the amounts allocated to such Student Committee Professionals in the Approved Budget.

145. "**Student Committee Professionals**" means the Professionals retained by the Student Committee in the Chapter 11 Cases.

146. "**Student 507(a)(7) Deposit Claims**" means the Claims of Students arising from the deposit prior to the Petition Date with any of the Debtors' schools by or on behalf of a Student  but for which education was not provided due to the Debtors' cessation of educational programs or campus operations, which are entitled to priority treatment under section 507(a)(7) of the Bankruptcy Code.

147. "**Student Refund Reserve**" means that reserve defined as the Student Refund Reserve in Section III.D. of the Combined Plan and Disclosure Statement.

148. "**Student Trust**" means the trust established pursuant to the Combined Plan and Disclosure Statement, for the benefit of Holders of Allowed Student Claims and Allowed Government Education Claims, as more fully described in Section X of this Combined Plan and Disclosure Statement.

149. "**Student Trust Assets**" means all interests of any and every kind owned or otherwise held by the Debtors and their Estates in any and all of the following property:  (i) the Student Refund Reserve; and (ii) the Student Books and Records.  All rights, title, and interest of the Debtors in and to the Student Trust Assets shall, on the Effective Date, be transferred by the Debtors to the Student Trust.

150. "**Student Trustee**" means the Person appointed to administer the Student Trust, with such rights, duties, and obligations as set forth in the Student Trust Agreement.

151. "**Student Trust Objections**" means those objections defined as the Student Trust Objections in Section XI.B. of the Combined Plan and Disclosure Statement

16

152. **"Student Trust Operating Expenses"** means the reasonable costs and expenses, including professional fees, of the Student Trustee in administering the Student Trust, consistent with the Student Trust Agreement.

153. **"Student Trust Operating Reserve"** means such reserve of Cash determined from time to time by the Student Trustee pursuant to the Student Trust Agreement to be reasonably necessary to pay Student Trust Operating Expenses related solely to administering the Student Trust, including (a) the unpaid liabilities, debts, or obligations of the Student Trust; (b) the fees and expenses of the Student Trustee; (c) all fees and expenses of professionals retained by the Student Trustee; and (d) any and all other costs associated with the liquidation or preservation of the Student Trust Assets. The Student Trust Operating Reserve shall be initially funded with Cash from the Student Refund Reserve.

154. **"Tax Code"** means the Internal Revenue Code of 1986, as amended.

155. **"Title IV"** means Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070, *et seq*.

156. **"Transferred Assets"** mean those assets defined as the Transferred Assets in Section III.E.5.a. of the Combined Plan and Disclosure Statement.

157. **"Transition Services Agreement"** means that agreement defined as the Transition Services Agreement in Section III.D. of the Combined Plan and Disclosure Statement.

158. **"Unclaimed Distribution"** means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

159. **"Unclaimed Distribution Deadline"** means ninety (90) days from the date the Distribution Trustee makes a Distribution of Cash or other property under the Combined Plan and Disclosure Statement to a Holder of an Allowed Claim.

160. **"Unimpaired Claims Cash Reserve"** means Cash held by the Debtors as of the Effective Date in an amount necessary to pay in full (or reserve for) accrued but unpaid Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Tax Claims (other than Student 507(a)(7) Deposit Claims), as of the Effective Date; provided that any amount remaining in the Unimpaired Claims Cash Reserve following the payment of all Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Tax Claims (other than Student 507(a)(7) Deposit Claims) shall be transferred to the Distribution Trust and treated as Distribution Trust Assets to be distributed in accordance with Section IX.C. of the Combined Plan and Disclosure Statement.

161. **"Voting Deadline"** means that date and time defined as the voting deadline in Section V.A.8. of the combined Plan and Disclosure Statement.

162. **"UST"** means the Office of the United States Trustee for the District of Delaware.

**163.** **"WyoTech Assets"** mean those assets defined as the WyoTech Assets in Section III.E.5.a.

**164.** **"WyoTech Locations"** mean those locations defined as the WyoTech Locations in Section III.E.5.a. of the Combined Plan and Disclosure Statement.

**165.** **"Zenith"** means that entity Zenith Education Group, Inc.

**166.** **"Zenith Escrow Account"** means that account defined as the Zenith Escrow Account in Section III.D. of the Combined Plan and Disclosure Statement.

**167.** **"Zenith Escrow Interests"** means all rights, title and interests of the Debtors in the Zenith Escrow Account.

**B.**     **Interpretation; Application of Definitions and Rules of Construction**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Combined Plan and Disclosure Statement are to the respective section in, Article of, Schedule to, or Exhibit to the Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in the Combined Plan and Disclosure Statement. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of the Combined Plan and Disclosure Statement.

## III. BACKGROUND AND DISCLOSURES

On the Petition Date, the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code initiating these Chapter 11 Cases. After the Petition Date, the Debtors have remained in possession of their assets and management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**A.**     **The Debtors' Business and Corporate Structure**

**1.**     **Overview of the Debtors' Business**

The Debtors were founded in February 1995, and through acquisitions became one of the largest for-profit post-secondary education companies in the United States and Canada. The Debtors offered career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades and information technology. As of March 31, 2014, the Debtors operated

over 100 campuses and provided educational opportunities to more than 74,000 students and had more than 10,000 employees. The Debtors also offered degrees online.

Among their acquisitions, in January 2010, the Debtors purchased Heald Capital, LLC, a Delaware limited liability company ("**Heald**"). Heald, through its subsidiaries, operated Heald College, a 150 year old regionally accredited institution with twelve (12) campuses offering associate degree curricula in, among other fields, healthcare, business, legal, and information technology.

## 2.     The Debtors' Corporate Structure

A chart reflecting the Debtors' corporate structure, including the state of formation and Employer Identification Number for each entity, is attached hereto as Exhibit A.

## 3.     The Regulatory Environment

The Dept. of ED and various state regulatory agencies and national accrediting bodies regulate for-profit educators. As proprietary post-secondary institutions, the Debtors relied on funding from the Dept. of ED, pursuant to Title IV. Title IV funds accounted for nearly ninety (90) percent of the Debtors' revenue prior to the Petition Date.

The federal government provides financial support for students attending post-secondary educational institutions in the United States through the federal student aid programs administered by the Dept. of ED under the Higher Education Act ("**FSA Programs**"). The Dept. of ED promulgates regulations under the HEA and enforces the regulatory and statutory provisions governing the administration of federal student aid funds to students through post-secondary institutions. Post-secondary institutions must apply for and receive approval from the Dept. of ED in order to be eligible to participate in the FSA Programs. Once an institution has been certified by the Dept. of ED to participate in the FSA Programs, it is assigned an OPEID number and may disburse federal student aid funds to eligible students attending an approved program. Many students rely principally on these federal student aid funds to finance their education.

The Dept. of ED conducts periodic reviews—generally, every six years—to determine whether to renew the eligibility and certification of every institution participating in the FSA Programs. Post-secondary schools are also subject to audits and program compliance reviews by various external agencies, including the Dept. of ED, its Office of Inspector General and state licensing and accrediting agencies. The HEA and its implementing regulations also require that the administration of FSA Program funds be audited annually by an independent accounting firm. Additionally, to participate in the FSA Programs, an institution must be (a) legally authorized by a state to provide post-secondary education programs in that state and (b) accredited by an agency recognized by the Dept. of ED as a reliable authority on institutional quality and integrity. Accordingly, institutions participating in FSA Programs, such as the Debtors, are subject to extensive regulation and review by various agencies, which can vary from state to state. In the past several years, the Debtors, as well as the entire for-profit education sector, have faced increased scrutiny and review by various regulatory bodies, including the Dept. of ED.

**B.**     **The Debtors' Prepetition Secured Indebtedness**

In May 2012, Corinthian and Everest Colleges Canada, Inc. (the "**Canadian Borrower**," and together with Corinthian, the "**Borrowers**") entered into that certain Fourth Amended and Restated Credit Agreement dated as of May 17, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**," and together with the other Loan Documents as defined therein, the "**Prepetition Loan Documents**"), with certain lenders party thereto (the "**Prepetition Lenders**") and Bank of America, N.A., as Domestic Administrative Agent (the "**Administrative Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**").    Pursuant to that certain Third Amended and Restated Guaranty (Domestic Borrower Obligations), dated May 17, 2012 (as the same has been amended, restated, supplemented or otherwise modified from time to time, the "**Domestic Guaranty**"), all of the Debtors other than Corinthian (collectively, the "**Guarantors**"), guaranteed Corinthian's obligations under the Credit Agreement.    Additionally, pursuant to that certain Third Amended and Restated Guaranty (Canadian Borrower Obligations), dated May 17, 2012 (as the same has been amended, restated, supplemented or otherwise modified from time to time, the "**Canadian Guaranty**," and together with the Domestic Guaranty, the "**Guaranties**"), Corinthian and the Guarantors guaranteed the Canadian Borrower's obligations under the Credit Agreement.

The Credit Agreement provided for an aggregate credit facility of up to $145 million, of which $135 million was a domestic facility and $10 million was a Canadian facility. As of the Petition Date, the outstanding obligations of Corinthian, as borrower and as guarantor for the obligations of the Canadian Borrower, and each of the other Debtors, as guarantors for the obligations of Corinthian and the Canadian Borrower under the Credit Agreement, were approximately $94.4 million in aggregate principal amount, in respect of prepetition domestic loans, approximately $8.9 million in aggregate principal amount, in respect of domestic letters of credit issued, and approximately CAD $2.3 million in aggregate principal amount, in respect of Canadian letters of credit issued.    Further, the foregoing amounts were in addition to unpaid interest with respect thereto and any additional fees, costs, expenses, and other obligations incurred in connection therewith (including any payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses chargeable or reimbursable under the Prepetition Loan Documents).    Pursuant to the Prepetition Loan Documents, and as security for the payment and performance of the Debtors' obligations thereunder, the Debtors granted the Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, a first priority security interest in substantially all of the Debtors' assets and proceeds thereof.

**C.**     **The Governmental Lawsuits**

In recent years, U.S. private sector post-secondary education providers, such as the Debtors, have come under intense legislative, regulatory, political and press scrutiny.    This atmosphere resulted in a number of investigations and other actions being taken by the Dept. of ED and other governmental entities, including the filing of the following complaints (the "**Governmental Lawsuits**"):    (i) the *Commonwealth of Massachusetts v. Corinthian Colls., Inc. and Corinthian Schools, Inc.*, Case No. 14-093, filed in the Superior Court of the Commonwealth of Massachusetts; (ii) *The People of the State of California v. Heald Coll., LLC, et al.*, Case No. CGC-13-537494, filed in the Superior Court for the State of California, County

of San Francisco; (iii) the *Consumer Fin. Prot. Bureau v. Corinthian Colls., Inc. d/b/a Everest Coll., Everest Inst., Everest Univ., Everest Univ. Online, Everest Coll. Phoenix, Everest Coll. Online, WyoTech and Heald Coll.*, Case No. 14-7194, filed in the United States District Court, Northern District of Illinois, Eastern Division; and (iv) the *State of Wisconsin v. Corinthian Colls., Inc.*, Case No. 2014-CX-00006, filed in the Circuit Court for the State of Wisconsin, Milwaukee County.

The Governmental Lawsuits contain allegations that the Debtors, among other things, subjected students to unlawful debt-collection practices, violated consumer protection laws, misrepresented facts relating to the urgency of enrollment, the schools' placement statistics, the earnings of graduates, the quality of the schools' programs, the transferability of credits the availability of externships, and the nature and availability of financial aid. The Debtors have vigorously (and publicly) contested each of the allegations made in connection with the Governmental Lawsuits.

D.    **Events Precipitating the Chapter 11 Filing**

In January 2014, the Debtors received a letter from the Dept. of ED (the "**January 2014 Letter**") that requested extensive information from the Debtors regarding various educational statistics reported by the Debtors. The Debtors devoted significant resources to responding to such requests and ultimately delivered to the Dept. of ED, in electronic or paper format, the equivalent of more than 1.2 million pages of responsive data from January to August 2014.

On June 12, 2014, the Debtors received a letter from the Dept. of ED (the "**June 12 Letter**"), in which the Dept. of ED made additional information requests, asked questions about the documents and data that the Debtors had provided to that date, and stated that certain information requested in the January 2014 Letter remained outstanding. In addition, and without notice, by the June 12 Letter, the Dept. of ED imposed the following: (a) a twenty-one (21) day delay in the ability to draw down further Title IV funds, (b) monthly updates on student information and disclosures, (c) disclosures relating to adverse regulatory, accreditor or business actions, and (d) immediate notice of the Debtors' intent to sell or close any location.

The imposition of a twenty-one (21) day delay in access to Title IV funds by the Dept. of ED created a significant liquidity crisis for the Debtors. As noted, nearly ninety (90) percent of revenues came from Title IV funds and the three-week delay in revenue created an immediate and significant reduction in projected cash receipts. This impact was exacerbated by the delay occurring in the last month of the fiscal year, historically a low point for the Debtors' liquidity during a time that the Debtors were fully drawn under their credit facility and had no borrowing capacity. The Debtors immediately began discussions with the Dept. of ED to regain access to Title IV funds to avoid an immediate closure of more than 100 schools. After ten (10) days of negotiations, on June 22, 2014, Corinthian and the Dept. of ED entered into a memorandum of understanding ("**MOU**") that provided for the immediate release of certain Title IV funds and established the framework for a transition plan to be memorialized in an operating agreement.

On July 8, 2014, the Debtors and the Dept. of ED entered into that certain operating agreement (the "**Operating Agreement**").[2]   Under the Operating Agreement, the Debtors agreed to "teach-out" twelve (12) schools (meaning that the schools continued to teach existing students to allow them to complete their education before the school closes, but no new students were admitted), and to pursue the sale of its remaining schools.   Under the Operating Agreement, among other things, the Dept. of ED permitted the Debtors to continue drawing Title IV funds (subject to weekly audit verification by an agreed upon third party FSA audit firm) to operate the schools, and the Debtors agreed to produce certain additional documents within an agreed upon schedule, restrict Title IV funds from being used for certain prohibited expenditures, make refunds available to students in certain circumstances, and work with the Dept. of ED to establish a reserve for student refunds.   The Operating Agreement also provided for oversight of the Debtors' compliance with the Operating Agreement and Title IV funding requirements by a monitor selected by the Dept. of ED.   On July 18, 2014, the Dept. of ED selected Patrick Fitzgerald of Skadden, Arps, Slate, Meagher & Flom LLP as the monitor (the "**Monitor**") under the Operating Agreement.   Under the terms of the Operating Agreement, the Monitor had significant oversight obligations relating to, among other things, the Debtors' draw-down and expenditure of Title IV funds, the implementation of the teach-out locations and the sales process (as described below).

The Debtors and the Dept. of ED entered into three amendments to the Operating Agreement.   The Debtors and the Dept. of ED entered into the First Amendment to the Operating Agreement, dated July 17, 2014, which, among other things, relieved the Monitor of his responsibility for "monitor[ing] the status of all school sales processes and provid[ing] monthly reports to the Department", as provided for in Section III.C.5 of the Operating Agreement.   On September 12, 2014, pursuant to the Operating Agreement, the Debtors established a separate, segregated escrow account with Citibank NA (the "**Student Refund Reserve**") that would be available for student refunds.[3]   On that same date, the Debtors and the Dept. of ED entered into the Second Amendment to Operating Agreement, dated September 12, 2014, which, among other things, established certain parameters with respect to the funding and release of funds from the Student Refund Reserve.   Additionally, the Debtors and the Dept. of ED entered into the Third Amendment to Operating Agreement, dated December 9, 2014, relating to, among other things, the draw-down of Title IV funds, use of the Student Refund Reserve to provide refunds to the Dept. of ED for students who had discontinued their education and the application of proceeds under the Asset Purchase Agreement with Zenith.   The Third Amendment to the Operating Agreement authorized the Debtors to make student refunds from the Student Refund Reserve in the ordinary course, including $7,255,300.51 in refund payments in December 2014 that were pre-approved by the Dept. of ED.   The Student Refund Reserve had a balance of approximately $4.3 million as of the Petition Date.

The Debtors conducted an extensive marketing and sales process for all of its schools.   In May 2014, the Debtors engaged Barclays to explore strategic options for the Debtors, including a potential sale of some or all of its schools and operations.   Following entry

---

[2]    On July 23, 2015, the Debtors filed a motion [Docket No. 637] seeking to reject the Operating Agreement, including all amendments thereto, pursuant to section 365 of the Bankruptcy Code.

[3]    The Student Refund Reserve escrow account is not subject to the Administrative Agent's security interest under the Prepetition Loan Documents, but it is an asset of the Debtors' Estates.

into the Operating Agreement, the Debtors directed Barclays to conduct a sale process, during which a substantial number of financial and strategic potential buyers were contacted, and various interested parties conducted extensive diligence. The Debtors negotiated with a number of parties concerning the purchase of all of the schools or certain groups of schools operated by the Debtors.

On November 19, 2014, the Debtors entered into an asset purchase agreement with Zenith Education Group, Inc. ("**Zenith**"), a subsidiary of Education Credit Management Corp. Group, for the sale of fifty-six (56) Everest and WyoTech schools (the "**Asset Purchase Agreement**"). Zenith also agreed to complete the teach-out process at twelve (12) additional schools and entered into subleases with the Debtors for those locations. The subleases expire upon the completion of Zenith's teach-out obligations with respect to such locations. Just before signing the definitive agreement, the Everest and WyoTech schools in California were excluded from the sale because the California Attorney General sought to impose significant economic and operational demands on Zenith as a buyer. Zenith found those demands unacceptable and decided to exclude all of those California schools from the Asset Purchase Agreement.

The sale to Zenith closed in early February 2015. As part of the sale, approximately 40,000 students were able to continue their studies and thousands of employees retained their jobs through Zenith. In addition, Zenith acquired the right to related Title IV funding and other school-related and accounting-related back office operations and information of the Debtors. To retain access to the back office services for the Debtors' continued operations following the transaction, the Debtors and Zenith entered into a transition services agreement (the "**Transition Services Agreement**") for the remaining schools owned by the Debtors. Additionally, as part of the sale, pursuant to the Asset Purchase Agreement, the parties established an escrow account (the "**Zenith Escrow Account**"), which was funded with $8.5 million, consisting of an escrow of $500,000 for certain working capital and deferred tuition revenue adjustments and an escrow of $8 million for certain indemnification obligations of the Debtors. On April 16, 2015, the parties jointly instructed Citibank NA to distribute $988,521 from the Zenith Escrow Account to Zenith in connection with satisfaction of certain obligations under the Asset Purchase Agreement and the Transition Services Agreement. As of the Petition Date, the aggregate balance in the Zenith Escrow Accounts totaled approximately $7.5 million.

Following the sale of non-California Everest and WyoTech campuses to Zenith, the Debtors continued to operate the Heald schools, all Everest and WyoTech schools in California, and 14 schools in Canada (through a non-Debtor Canadian subsidiary). In February 2015, the Debtors' 14 career schools in Canada were shut down by the Province of Ontario as a result of the worsening financial condition of the Canadian subsidiaries and the Debtors, and the Canadian subsidiaries commenced insolvency proceedings in Canada shortly thereafter, which proceedings remain pending.

The Debtors pursued sale options and teach-out options for the remaining schools through Barclays and through another consultant who specializes in educational institution advice and transactions, Eduvize LLC. Several parties engaged in diligence, and the Debtors entered into negotiations with at least three potential buyers for the Heald schools, and held discussions with several other parties regarding the teach-out of the remaining thirteen (13) Everest and WyoTech schools in California.

23

The signing of a definitive transaction agreement to sell Heald was to occur on April 15, 2015. Ultimately, however, no agreement was reached for the sale or teach-out of any of the remaining schools because, on April 14, 2015, the Dept. of ED issued an intent-to-fine letter (the "**ED Intent to Fine Letter**")[4] seeking to impose a $30 million fine against the Heald schools and prohibiting Heald from enrolling new students. Despite multiple efforts by the Debtors and their advisors, as well as potential purchasers of Heald, to negotiate terms with the Dept. of ED for the sale of Heald, the Dept. of ED sought to impose significant financial and operational conditions on both Corinthian and the potential buyers that were not acceptable to the buyers or capable of performance. The California Attorney General also held negotiations with potential buyers over the terms under which it would agree not to pursue any buyer for the claims it had asserted in a lawsuit against Corinthian. These negotiations, while protracted, were not successful. As a result of the Dept. of ED requirements and conditions and the unsuccessful negotiations with the California Attorney General's office, on April 22, 2014, the last potential buyer withdrew from the Heald sale process.

When sale efforts for the remaining schools ceased to be viable, both for the Heald schools and remaining Everest and WyoTech schools in California, the Debtors pursued teach-out arrangements with third parties in an effort to permit students to complete their education with minimal disruption. Ultimately, however, the Dept. of ED continued to insist that unaffiliated teach-out partners assume undefined liabilities of the Debtors in order to conduct teach-outs at the affected campuses on economically viable terms. Without the Dept. of ED's cooperation, no teach-out partners were willing to proceed.

In the absence of a sale or teach-out options, the Debtors had no ability to continue operating in light of their cash position and cash forecast. Moreover, the Dept. of ED mandated that the Debtors post a significant letter of credit by May 17, 2015 to maintain eligibility for Title IV funds. After thoroughly considering their alternatives, the Debtors commenced the wind-down of operations on April 23, 2015. On Sunday, April 26, 2015, the Debtors announced the closure of their remaining 29 schools effective Monday, April 27, 2015 and provided notice to the relevant regulatory bodies. The Chapter 11 Cases were commenced on the Petition Date, May 4, 2015.

### E.      The Chapter 11 Cases

The following is a brief description of certain material events that have occurred during these Chapter 11 Cases.

### 1.      First Day Orders (other than Cash Collateral Orders)

On the Petition Date, in addition to the voluntary petitions for relief filed by the Debtors, the Debtors filed a number of motions and applications (collectively, the "**First Day Motions**") seeking certain "first day" relief. A summary of the relief obtained pursuant to the First Day Motions is set forth below:

---

[4]      On May 5, 2015, the Debtors submitted a written request for a hearing and motion to dismiss the ED Intent to Fine Letter.

- **Joint Administration Motion.**  Pursuant to the Debtors' Motion for Entry of an Order Directing Joint Administration of Chapter 11 Cases [Docket No. 2], the Court entered an order [Docket No. 19] authorizing the joint administration of the Chapter 11 Cases for procedural purposes only.

- **Application to Retain Rust Consulting/Omni Bankruptcy.**  Pursuant to the Debtors' Application for Entry of an Order Authorizing Employment and Retention of Rust Consulting/Omni Bankruptcy as Claims and Noticing Agent, Nunc Pro Tunc to the Petition Date [Docket No. 4], the Court entered an order [Docket No. 20] authorizing the Debtors to retain Rust Consulting/Omni Bankruptcy ("**Rust Omni**") as claims and noticing agent for the Chapter 11 Cases.[5]

- **Employee Wages/Benefits Motion.**  Pursuant to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (a) Pay Certain Employee-Related Expenses and (b) Continue Their Workers' Compensation Policy and Pay All Obligations in Respect Thereof and (II) Granting Related Relief [Docket No. 5], the Court entered interim and final orders [Docket Nos. 21 and 343] authorizing the Debtors to (i) pay certain reimbursable expenses, prepetition payroll obligations, payroll-related benefits, and healthcare premiums, and (ii) continue their workers' compensation policy on an uninterrupted basis and pay certain insurance obligations.

- **Utilities Motion.**  Pursuant to the Debtors' Motion for Entry of Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service; (II) Approving the Debtors' Proposed Form of Adequate Assurance of Payment for Utilities; and (III) Establishing Procedures for Resolving Objections to the Debtors' Proposed Form of Adequate Assurance [Docket No. 6], the Court entered interim and final orders [Docket Nos. 22 and 223] authorizing and approving the provision of adequate assurance of payment to the Debtors' utility service providers under section 366 of the Bankruptcy Code, while allowing the Debtors to avoid the threat of imminent termination of their utility services from those utility companies.

- **First-Day De Minimis Asset Sale Motion.**  Pursuant to the Debtors' Motion for an Order Authorizing the Debtors to Conduct De Minimis Asset Sales of $25,000 or Less without Further Order of the Court [Docket No. 7] (the "**De Minimis Asset Sale Order**"), the Court entered an order authorizing the Debtors to consummate asset sales of limited size at certain identified former campus locations without the need for further Court approval.  See Section III.E.5.b. herein for further discussion of sales consummated pursuant to the De Minimis Asset Sale Order.

- **Cash Management Motion.**  Pursuant to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Existing Cash Management System and Bank Accounts; (II) Waiving Certain United States Trustee Requirements; (III) Authorizing Continued Performance of Intercompany Transactions; and (IV) Granting

---

[5]    Additionally, on May 26, 2015, the Court entered an order [Docket No. 203] authorizing the Debtors to retain Rust Omni, pursuant to section 327(a) of the Bankruptcy Code, to serve as administrative agent to the Debtors in providing certain administrative services falling outside the scope of 28 U.S.C. § 156(c).

Related Relief [Docket No. 9], the Debtors obtained the entry of interim and final orders [Docket Nos. 25 and 199] that, among other things, (i) authorized the Debtors to continue to use (a) their current centralized cash management system, and (b) their existing bank accounts, checks and business forms, including authorizing the Debtors to open and close certain bank accounts; (ii) waived certain bank account and related requirements of the Office of the United States Trustee; (iii) extended the time to comply with Bankruptcy Code section 345(b); (iv) authorized all banks participating in the cash management system to honor certain transfers and charge bank fees and certain other amounts; and (v) authorized certain intercompany transactions consistent with historical practice and granted administrative expense priority to certain intercompany transactions.

### 2.    Cash Collateral Orders

On the Petition Date, the Debtors also filed the Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (i) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [Docket No. 8], requesting, among other things, the entry of interim and finals orders (i) authorizing the Debtors' use of Cash Collateral (as defined in section 363(a) Bankruptcy Code), subject to an agreed rolling cash-flow budget, (ii) authorizing the Debtors to provide adequate protection in the form of, among other things, replacement liens, superpriority claims, and the payment of postpetition and certain prepetition professional fees, costs and expenses of the Prepetition Secured Parties to protect against any diminution in value arising from the Debtors' use of Cash Collateral or the imposition of the automatic stay under section 362 of the Bankruptcy Code, and (iii) granting certain related relief.  The Court entered an interim order [Docket No. 24] and the Final Cash Collateral Order granting the requested relief.

The Debtors would not have had sufficient available sources of working capital and financing to, among other things, effectuate an orderly sale of their assets, continue the wind down of their estates, and satisfy other short-term operational needs without the use of Cash Collateral.  Indeed, absent authority to use Cash Collateral, the Debtors' business and Estates would have suffered immediate and irreparable harm, including, without limitation, the inability to close the schools and complete the related Title IV closeout audit in an orderly and efficient manner, wind down the Debtors' operations and sell their remaining assets.  Thus, entry of the Cash Collateral Orders was necessary to preserve, maintain and enhance the value of the Debtors' remaining assets for the benefit of the Debtors' stakeholders.

### 3.    Appointment of Official Committees

On May 13, 2015, the UST appointed the Creditors' Committee consisting of the following five (5) members:  (a) Campus Student Funding, LLC; (b) McKinley Avenue, LLC; (c) Lampert at 25500 Industrial Blvd., LLC; (d) Guy Q. Reynolds; and (e) Marriot Hotels Services, Inc. McKinley Avenue, LLC serves as the chairperson of the Creditors' Committee.

On May 15, 2015, the UST appointed the Official Committee of Student Creditors (the "**Student Committee**").  The members of the Student Committee are as follows:  (a) Tasha

Courtright; (b) Jessica King; (c) Amber Thompson; (d) Crystal Loeser; (e) Michael Adorno-Miranda; (f) Krystle Powell; and (g) Brittany Ann Smith Jackl.

### 4.    Employment of Professionals and Advisors

#### a.    Debtors' Professionals

On May 29, 2015, the Court entered an amended order [Docket No. 235] authorizing the Debtors to retain FTI Consulting, Inc. as crisis manager to the Debtors and designating William J. Nolan as chief restructuring officer to the Debtors.  Additionally, the Court entered an order [Docket No. 202] authorizing the Debtors to retain Richards, Layton & Finger, P.A. as general bankruptcy counsel to the Debtors on May 26, 2015.  On June 29, 2015, the Court entered an order [Docket No. 496] authorizing the retention PricewaterhouseCoopers, LLC as tax advisor to the Debtors.  The Debtors have also retained numerous ordinary course professionals in the Chapter 11 Cases pursuant to the procedures set forth in the *Order Authorizing the Employment and Compensation of Certain Professionals Utilized in the Ordinary Course of Business, Nunc Pro Tunc to the Petition Date* [Docket No. 225] (the "**Ordinary Course Professionals Order**").

#### b.    Creditors' Committee Professionals

On June 23, 2015, the Court entered an order [Docket No. 450] authorizing the Creditors' Committee to retain Brown Rudnick LLP as co-counsel to the Creditors' Committee. On June 23, 2015, the Court entered an order [Docket No. 458] authorizing the retention of Rosner Law Group LLC, as co-counsel to the Creditors' Committee.  Additionally, the Court entered an order [Docket No. 457] on June 23, 2015 authorizing the retention as Gavin/Solomonese LLC as financial advisors to the Creditors' Committee.

#### c.    Student Committee's Professionals

On June 18, 2015, the Student Committee filed applications [Docket Nos. 438 and 436] seeking to retain Robins Kaplan LLP and Polsinelli PC, respectively, to serve as co-counsel to the Student Committee.  The Student Committee has also filed an application [Docket No. 437] seeking to retain Public Counsel as special counsel to represent the Student Committee in connection with, among other things, the rights of students under the HEA and other laws affecting student loan debt.  The hearing on each of these applications is scheduled for July 22, 2015.

### 5.    Sale of Assets

#### a.    Strategy Implemented for Selling Assets

As discussed above, the Debtors closed each of their campus locations effective as of April 27, 2015, and immediately began the process of liquidating their assets and winding down operations.  In devising a strategy for liquidating the furniture and equipment at their former campus locations, the Debtors needed to be mindful of the administrative rent obligations accumulating under the related real property leases.  Accordingly, the Debtors, in the sound

exercise of their business judgment, identified the process described below for maximizing the net proceeds to be received from the sale of their personal property.

Two of the Debtors' campus locations, Fremont and Long Beach, CA (the "**WyoTech Locations**"), were campuses of the Debtors' WyoTech brand. The WyoTech Locations were multi-building campuses that contained assets with significant value, including, but not limited to, auto repair and HVAC related equipment. Accordingly, the decision was made to remain at the WyoTech Locations until such time as the Debtors could perform and complete a fulsome sale process for the assets located at these facilities. The Debtors' remaining locations, however, consisted of former Everest and Heald campuses and other administrative offices, which contained furniture and equipment of considerably less value. The Debtors instructed the campus presidents at each of these remaining locations to log and ship all equipment worth over $5,000 that was easily transportable (the "**Transferred Assets**") to the nearer of the two WyoTech Locations to allow the Debtors additional time to properly market the assets. The assets at the WyoTech Locations included machinery, equipment, vehicles, tooling, parts, accessories, manuals, rolling stock, material handling equipment, office furnishings, as well as the Transferred Assets (collectively, the "**WyoTech Assets**"). The assets not transferred to the WyoTech Locations consisted mainly of office furniture and equipment, including, but not limited to, lab equipment (*i.e.*, dental chairs and x-ray machines), electronic blackboards or "smartboards", medical lab equipment and supplies and other items utilized in connection with the instruction provided at each respective campus location.

The Debtors commenced an orderly process for the marketing and solicitation of bids for their assets immediately following the closing of their campus locations on April 27, 2015. With the assistance of their professional advisors, the Debtors contacted over 300 potential buyers, including liquidators and competitors, in an effort to solicit interest in the assets. The Debtors received numerous bids for the assets, which they then analyzed based on, among other things, (i) the purchase price offered, (ii) the timeline associated with obtaining Court approval of the proposed transaction and removal of the assets from the campus locations, and (iii) any administrative rent obligations of the Debtors accruing during such time periods. This process resulted in the Debtors pursuing and consummating multiple asset sales (as summarized below).

### b.    Miscellaneous Asset Sale Orders

Pursuant to the *De Minimis* Asset Sale Order, the Debtors were able to consummate a number of transactions involving the transfer of $25,000 or less in total consideration to a single buyer or group of related buyers per location (with total sales to a single buyer or group of buyers not to exceed $125,000 in the aggregate). The *De Minimis* Asset Sale Order authorized the Debtors to consummate smaller asset sales on forty-eight (48) hours' notice without further order of the Court, provided that an objection was not received from any of the identified notice parties. An expedited notice process was required for these sales, as the proposed consideration from the smaller transactions did not justify further delaying the rejection of the underlying real property leases due to the accruing rent obligations.

On May 27, 2015, the Court entered a separate order [Docket No. 224] (the "**First Miscellaneous Asset Sale Order**") establishing procedures for the sale of miscellaneous assets

at the Debtors' former campus locations where the proposed consideration exceeded the thresholds set forth in the *De Minimis* Asset Sale Order.  Moreover, on June 29, 2015, the Court entered an order [Docket No. 488] (the "**Second Miscellaneous Asset Sale Order**" and together with the De Minimis Asset Sale Order and the First Miscellaneous Asset Sale Order, the "**Miscellaneous Asset Sale Orders**") establishing procedures for the sale of assets located at former Zenith teach-out locations and other locations not covered by the previous orders.

To date, the Debtors have realized in excess of $560,000 in gross proceeds (including the offset of rent obligations) as a result of sales conducted in accordance with the Miscellaneous Asset Sale Orders.

### c.   Sale of the WyoTech Assets

As noted above, the Debtors determined that the potential value to be recovered from the WyoTech Assets justified conducting a more extended sale process (and incurring the rent associated with occupying such locations for a longer duration).  Accordingly, following an extended bid process which involved more extensive conversations with interested bidders, the receipt of multiple improvements upon the bids and a telephonic auction for the WyoTech Assets being held on June 1, 2105, Great American Global Partners, LLC ("**GAGP**") was determined to be the highest and best bidder for the WyoTech Assets.  Pursuant to the terms of that certain consulting agreement between the Debtors and GAGP (the "**GAGP Consulting Agreement**"), GAGP agreed to serve as independent consultant to the Debtors in connection with an orderly liquidation sale of the WyoTech Assets to be conducted by GAGP on behalf of the Debtors, followed by an auction of the WyoTech Assets at the WyoTech Locations and/ or on the Internet.

Under the terms of the GAGP Consulting Agreement, as subsequently modified, GAGP, guaranteed the Debtors that the proceeds generated from the sale of the WyoTech Assets shall be no less than $1.485 million (the "**Guaranteed Amount**").  The Guaranteed Amount will subsequently be reimbursed to GAGP from the first $1.485 million in proceeds collected from the sale of the WyoTech Assets, with the next $100,000 in available proceeds being paid to GAGP to cover sale related expenses (direct operating expenses reasonably incurred by GAGP in connection with the sale).  Any additional proceeds received from the sale of the WyoTech Assets (above $1.585 million) will then be split ninety-five (95) percent to the Debtors and five (5) percent to GAGP.  GAGP will also charge buyers (i) a fifteen (15) percent buyer's premium with regards to assets sold, and (ii) a three (3) percent bidding surcharge with regards to assets sold pursuant to online bidding.

On July 1, 2015, the Court entered an order [Docket No. 519] approving the retention of GAGP and authorizing the sale of the WyoTech Assets in accordance with the terms of the GAGP Consulting Agreement.  It is anticipated that the process to sell the WyoTech Assets will take approximately sixty (60) days and will conclude on or before August 29, 2015.

### 6.   Rejection of Executory Contracts and Unexpired Leases

As of July 1, 2015 the Debtors have filed five motions seeking to reject approximately 448 contracts and approximately 76 unexpired leases [D.I. 16, 46, 171, 378 &

511].  The Court has entered orders approving three of these motions (two in full, one in part) and authorizing the rejection of approximately 48 leases [D.I. 200, 234, 266 & 504].  The leases that the Debtors have rejected are for the Debtors' former campus locations and related ancillary property (parking lots and garages, storage facilities, etc.).  Because the Debtors ceased providing instruction prior to the Petition Date, they no longer required the use of these locations.  Similarly, the contracts that the Debtors have rejected were related to the Debtors instruction business and were no longer required upon the termination of instruction prior to the Petition Date.

### 7.    Claims Process and Bar Date

#### a.    Section 341(a) Meeting of Creditors

On June 12, 2015, the UST commenced the meeting of creditors in these Chapter 11 Cases conducted pursuant to section 341(a) of the Bankruptcy Code.  The meeting was adjourned and is scheduled to resume on August 13, 2015.

#### b.    Schedules and Statements

Each of the Debtors filed its Schedules with the Court on June 8, 2015.

#### c.    Bar Dates

Pursuant to an order [Docket 429] of the Court, dated June 18, 2015, the Debtors have established (i) July 20, 2015 at 5:00 p.m. (ET) (the "**General Bar Date**") as the deadline for Creditors (other than governmental units (as defined under section 101(27) of the Bankruptcy Code)) to file proofs of Claim in these Chapter 11 Cases; and (ii) November 2, 2015 at 5:00 p.m. (ET) (the "**Governmental Bar Date**", and together with the General Bar Date, the "**Bar Dates**") as the deadline for governmental units (as defined under section 101(27) of the Bankruptcy Code) to file proofs of Claim in these Chapter 11 Cases.  Notice of the Bar Dates was served on all potential creditors of the Debtors' estates on or before June 20, 2015.

### F.    Certain Federal Income Tax Consequences

The confirmation and execution of the Combined Plan and Disclosure Statement may have tax consequences to Holders of Claims and Interests.  The Debtors do not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Interests as a result of the confirmation of the Combined Plan and Disclosure Statement.  All Holders of Claims and Interests are urged to consult their own tax advisors with respect to the federal, state, local and foreign tax consequences of the Combined Plan and Disclosure Statement.  This Combined Plan and Disclosure Statement is not intended, and should not be construed, as legal or tax advice to any Creditor, Interest Holder, or other party in interest.

### G.    Alternate Plan

If the Combined Plan and Disclosure Statement is not confirmed, the Debtors, the Creditors' Committee, the Student Committee or any other party in interest could attempt to

formulate a different plan.  However, the additional costs, including, among other things, additional professional fees or asserted substantial contribution claims, all of which would constitute Administrative Expense Claims (subject to allowance), may be so significant that one or more parties in interest could request that the Chapter 11 Cases be converted to chapter 7. Moreover, it is unlikely that the Prepetition Secured Parties would consent to the use of their Cash Collateral (as defined in section 363 of the Bankruptcy Code) to cover such costs. Accordingly, the Debtors believe that the Combined Plan and Disclosure Statement enables creditors to realize the best return under the circumstances.

## H.    Best Interests Test and Liquidation Analysis

As described above, section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Combined Plan and Disclosure Statement or (b) receive or retain under the Combined Plan and Disclosure Statement property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  A hypothetical chapter 7 liquidation analysis is attached to this Combined Plan and Disclosure Statement as Exhibit B. Because the majority of the Debtors' assets have already been liquidated to Cash, the value of any Distributions if the Debtors' Chapter 11 Cases were converted to a case under Chapter 7 of the Bankruptcy Code would be less than the value of Distributions under the Combined Plan and Disclosure Statement.  This is because conversion of the Chapter 11 Cases to chapter 7 cases would require the appointment of a chapter 7 trustee, and in turn, such chapter 7 trustee's likely retention of new professionals.  The "learning curve" that the trustee and new professionals would be faced with comes with potentially additional costs to the Estates and with a delay compared to the time of Distributions under the Combined Plan and Disclosure Statement (and prosecution of Causes of Action).  Worse still, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions of the already monetized assets made to creditors.  Accordingly, a portion of the cash currently available for Distribution to Holders of Claims, including unsecured creditors, would instead be paid to the chapter 7 trustee.

As a result, the Debtors believe that the Estates would have fewer funds to be distributed in a hypothetical chapter 7 liquidation than they would if the Combined Plan and Disclosure Statement is confirmed, and therefore Holders of Claims in all Impaired Classes (other than potentially Class 1 - Prepetition Lenders Secured Claims) will recover less than in the hypothetical chapter 7 cases.  In addition, the Combined Plan and Disclosure Statement contains a number of concessions by the Prepetition Secured Parties that will likely result in a greater recovery for the Holders of Allowed General Unsecured Claims, Allowed Student Claims and Allowed Government Education Claims.  Among other things, the Prepetition Secured Parties have agreed to: (i) satisfy first out of their collateral all outstanding Administrative Claims, Priority Claims and Other Priority Claims; (ii) to reduce the Pro Rata share of any Distributions from the Distribution Trust on account of the Prepetition Lenders Deficiency Claims by approximately fifteen (15) percent so that Holders of General Unsecured Claims may receive a greater Pro Rata share of such Distributions; (iii) release their Liens on the proceeds of Avoidance Actions, and allow such proceeds to be transferred to the Distribution Trust for the benefit of all Beneficiaries thereof; and (iv) release their Liens on Cash Collateral to allow the use of the Distribution Trust Seed Money and the Student Trust Seed Money to provide necessary funding for the Distribution Trust and the Student Trust, respectively.  The

31

consideration being provided by the Prepetition Secured Parties would not be available in a hypothetical chapter 7 liquidation, thereby reducing the potential recoveries to other Holders of Allowed General Unsecured Claims.

Moreover, the Prepetition Secured Parties are forgoing any recoveries from, and releasing any Liens they may otherwise have had on funds released from, the Student Refund Reserve, which has an estimated value of approximately $4.3 million, for the benefit of the Beneficiaries of the Student Trust. Absent the compromises contained in the Combined Plan and Disclosure Statement, this value would constitute property of the Debtors' estates subject to Distribution in accordance with the priorities afforded under the Bankruptcy Code. In turn, that would mean that there would be no funding of any Student Claims Benefit Program, which may include outreach programs and assistance for Students in seeking discharges or releases of their student loan obligations. The Student Claims Benefit Programs will be an immediate and impactful benefit to all Holders of Allowed Student Claims.

Without the structure of the Combined Plan and Disclosure Statement, all of the Creditors with Claims of lower priority than Secured Claims would likely receive a diminished recovery on account of their Claims. Accordingly, the Debtors believe that the "best interests" test of Bankruptcy Code section 1129 is satisfied.

## IV. SUMMARY OF TREATMENT OF CLAIMS AND ESTIMATED RECOVERIES

The following chart provides a summary of treatment of each Class of Claims (other than Administrative and Priority Tax Claims) and an estimate of the recoveries of each class.[6] The treatment provided in this chart is for information purposes only and is qualified in its entirety by Section VII of the Combined Plan and Disclosure Statement.

| Class | Estimated Allowed Claims | Treatment | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|---|
| Class 1 – Prepetition Lenders Secured Claims | $107,000,000 | Impaired - Entitled to Vote | 5% - 10% |
| Class 2 – Other Secured Claims | 0 | Unimpaired - Not entitled to Vote - Deemed to Accept | 100% |

---

[6] These amounts represent estimated Allowed Claims, and do not represent amounts actually asserted by creditors in proofs of claim or otherwise. The Debtors have not completed their analysis of Claims in the Chapter 11 Cases and objections to such Claims have not been fully litigated. Therefore, there can be no assurances of the exact amount of the Allowed Claims at this time. Rather, the actual amount of the Allowed Claims may be greater or lower than estimated.

RLF1 12573713v.10

| Class | Estimated Allowed Claims | Treatment | Estimated Recovery to Holders of Allowed Claims |
|---|---|---|---|
| Class 3 – Other Priority Claims | $550,000 | Unimpaired - Not entitled to Vote - Deemed to Accept | 100% |
| Class 4 – General Unsecured Claims | $300 million | Impaired - Entitled to Vote | Undetermined |
| Class 5 – Student Claims and Government Education Claims | Undetermined | Impaired - Entitled to Vote | Undetermined |
| Class 6 – Intercompany Claims | N/A | Impaired - Deemed to Reject Plan - Not Entitled to Vote | Cancelled - No Distribution |
| Class 7 – Equity Interests | N/A | Impaired - Deemed to Reject Plan - Not Entitled to Vote | Cancelled - No Distribution |

## V. CONFIRMATION AND VOTING PROCEDURES

### A.    Confirmation Procedure

#### 1.    Confirmation Hearing

A hearing before the Honorable Kevin J. Carey has been scheduled for August 26, 2015 at 1:00 p.m. (ET), at the Bankruptcy Court, 824 North Market Street, 5th Floor, Courtroom No. 5, Wilmington, Delaware 19081 to consider confirmation of the Combined Plan and Disclosure Statement pursuant to section 1129 of the Bankruptcy Code.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.

#### 2.    Procedure for Objections

Any objection to approval or confirmation of the Combined Plan and Disclosure Statement must be made in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.  Responses and

objections, if any, to the Combined Plan and Disclosure Statement must:  (i) be in writing, (ii) conform to the Bankruptcy Rules and Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware and (iii) be filed with the Court and served so as to be actually received on or before 4:00 p.m. (ET) on August 21, 2015 on (i) counsel for the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn.:  Mark D. Collins, Esq. and Michael J. Merchant, Esq.); (ii) counsel to Bank of America, N.A, Sidley Austin LLP, 555 West Fifth Street, Suite 4000, Los Angeles, California 90013 (Attn.:  Jennifer C. Hagle, Esq. and Anna Gumport, Esq.) and Potter Anderson Corroon LLP, 1313 North Market Street, Sixth Floor, P.O. Box 951, Wilmington, Delaware 19899 (Attn.:  Jeremy W. Ryan, Esq. and Etta R. Mayers, Esq.); (iii) the UST, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn.:  Timothy Jay Fox, Jr., Esq. and Richard L. Schepacarter, Esq.); (iv) counsel for the Creditors' Committee, Brown Rudnick LLP, Seven Times Square, New York, New York, 10036 (Attn.:  H. Jeffrey Schwartz, Esq. and Bennett S. Silverberg, Esq.) and The Rosner Law Group LLC, 824 Market Street, Suite 810, Wilmington, Delaware 19801 (Attn.:  Frederick B. Rosner, Esq. and Julia B. Klein, Esq.); and (v) counsel to the Student Committee, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, California 90067 (Attn.:  Scott F. Gautier, Esq., Lorie A. Ball, Esq., and Cynthia C. Hernandez, Esq.) and Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn.:  Christopher A. Ward, Esq. and Shanti M. Katona, Esq.).  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court.

### 3.      Requirements for Confirmation

The Bankruptcy Court will confirm the Combined Plan and Disclosure Statement only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among the requirements for confirmation in these Chapter 11 Cases is that the Combined Plan and Disclosure Statement be:  (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that the Combined Plan and Disclosure Statement "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible.  The Bankruptcy Court must also find that:

    a.      the Combined Plan and Disclosure Statement has classified Claims and Interests in a permissible manner;

    a.      the Combined Plan and Disclosure Statement complies with the technical requirements of Chapter 11 of the Bankruptcy Code; and

    b.      the Combined Plan and Disclosure Statement has been proposed in good faith.

### 4.      Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code requires the Combined Plan and Disclosure Statement to place a Claim or Equity Interest in a particular Class only if such Claim or Equity Interest is substantially similar to the other Claims or Equity Interests in such Class.  The Combined Plan and Disclosure Statement creates separate Classes to deal respectively with

Secured Claims, General Unsecured Claims, Student Claims and Government Education Claims and Equity Interests.  The Debtors believe that the Combined Plan and Disclosure Statement's classifications place substantially similar Claims or Equity Interests in the same Class and thus meet the requirements of section 1122 of the Bankruptcy Code.

5.    **Impaired Claims or Equity Interests**

Pursuant to section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Combined Plan and Disclosure Statement and receiving a payment or Distribution under the Combined Plan and Disclosure Statement may vote on the Combined Plan and Disclosure Statement.  Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Combined Plan and Disclosure Statement alters the legal, equitable or contractual rights of the Holders of such Claims or Interests treated in such Class.  The Holders of Claims not Impaired by the Combined Plan and Disclosure Statement are deemed to accept the Combined Plan and Disclosure Statement and do not have the right to vote on the Combined Plan and Disclosure Statement.  The Holders of Claims or Interests in any Class which will not receive any payment or Distribution or retain any property pursuant to the Combined Plan and Disclosure Statement are deemed to reject the Combined Plan and Disclosure Statement and do not have the right to vote.

6.    **Eligibility to Vote on the Combined Plan and Disclosure Statement**

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Class 1, 4 and/or 5 may vote on the Combined Plan and Disclosure Statement.  In order to vote on the Combined Plan and Disclosure Statement, you must hold a Claim in Class 1, 4 and/or 5 and have timely filed a proof of Claim or have a Claim that is identified on the Schedules that is not listed as disputed, unliquidated or contingent, or be the Holder of a Claim that is Allowed or has been temporarily Allowed for voting purposes only under Bankruptcy Rule 3018(a).

7.    **Solicitation Notice**

All Holders of Allowed Claims in Class 1, 4 and/or 5 will receive (i) notice of the confirmation hearing on the Combined Plan and Disclosure Statement (the "**Confirmation Notice**"), (ii) a form of ballot, and (iii) a copy of the Combined Plan and Disclosure Statement. All other creditors and parties in interest not entitled to vote on the Combined Plan and Disclosure Statement will only receive a copy of the Confirmation Notice.

8.    **Procedure/Voting Deadlines**

In order for your Ballot to count, you must (1) complete, date and properly execute the ballot and (2) properly deliver the Ballot to the Balloting Agent by either (a) mail, overnight courier to the Balloting Agent at the following address:  Rust Consulting Omni Bankruptcy Attn: Corinthian Colleges Balloting Agent, 5955 DeSoto Avenue, Suite 100, Woodland Hills, CA 91367; (b) email at CorinthianColleges@omnimgt.com; or (c) uploading the ballot on the Balloting Agent's website at www.omnimgt.com/corinthiancolleges.

The Balloting Agent must RECEIVE ballots on or before **August 21, 2015, at 5:00 p.m.** (prevailing Eastern Time) (the "**Voting Deadline**").  (Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Balloting Agent.)

Any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Combined Plan and Disclosure Statement will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Combined Plan and Disclosure Statement.

Holders of class 4 Claims who do not want to provide the releases to the Prepetition Secured Parties and their related persons set forth in Section XIII.C. herein must affirmatively indicate so by checking the "opt out" box on the Ballot.

The following Ballots will not be counted or considered for any purpose in determining whether the Combined Plan and Disclosure Statement has been accepted or rejected:

a.  any Ballot submitted received after the Voting Deadline, unless the Court grants an extension of the Voting Deadline with respect to such ballot;

b.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

c.  any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Combined Plan and Disclosure Statement;

d.  any Ballot cast for a Claim designated as unliquidated, contingent or disputed or as zero or unknown in amount and for which no Bankruptcy Rule 3018(a) motion has been filed by the Bankruptcy Rule 3018(a) motion deadline;

e.  any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Combined Plan and Disclosure Statement or that indicates both acceptance and rejection of the Combined Plan and Disclosure Statement;

f.  any unsigned Ballot; or

g.  any ballot that is submitted by fax.

## 9.    Acceptance of the Combined Plan and Disclosure Statement

As a Creditor, your acceptance of the Combined Plan and Disclosure Statement is important.  In order for the Combined Plan and Disclosure Statement to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept the Combined Plan and Disclosure Statement.  At least one impaired Class of Creditors, excluding

the votes of insiders, must actually vote to accept the Combined Plan and Disclosure Statement. The Debtors, the Creditors' Committee and the Student Committee urge that you vote to accept the Combined Plan and Disclosure Statement. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

      10.    **Elimination of Vacant Classes**

      Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## VI.   TREATMENT OF UNCLASSIFIED CLAIMS

**A.    Administrative Expense Bar Date**

      Requests for payment of Administrative Expense Claims (other than Fee Claims,the Prepetition Lenders Adequate Protection Claims and Claims subject to section 503(b)(1)(D)) must be filed no later than the Administrative Expense Bar Date. Holders of Administrative Expense Claims (other than Fee Claims,the Prepetition Lenders Adequate Protection Claims and Claims subject to section 503(b)(1)(D)) that do not file requests for the allowance and payment thereof on or before the Administrative Expense Bar Date shall forever be barred from asserting such Administrative Expense Claims against the Debtors or their Estates.

**B.    Administrative Expense Claims**

      Except for Statutory Fees and to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a different treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to any unpaid portion of such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes Allowed, or within seven (7) Business Days thereafter. Such payments to Holders of Allowed Administrative Expense Claims shall be paid by the Debtors from the Unimpaired Claims Cash Reserve (except in the case of the Prepetition Lenders Adequate Protection Claims, which shall be paid from the Distribution Trust Available Cash), and, to the extent the Unimpaired Claims Cash Reserve is insufficient to pay all such Allowed Administrative Expense Claims, then by the Distribution Trustee from the first net proceeds of the Distribution Trust Assets. Notwithstanding anything to the contrary in this Combined Plan and Disclosure Statement, the amount paid to each Professional on account of Allowed Fee Claims shall be capped at the amounts allocated to such Professionals in the Approved Budget; provided, however, that any Student Committee Fee Overage may be satisfied from the Student Trust Assets, and any Allowed Fee Claims of Richards, Layton & Finger, as counsel to the Debtors, and the Professionals to the Creditors Committee (identified in the Approved Budget as "UCC Professionals") in excess of the line items set forth in the Approved

Budget for such fees and expenses may be satisfied from the Unimpaired Claims Cash Reserve or, to the extent necessary, from the Distribution Trust Assets (as Allowed Administrative Expense Claims) in an aggregate amount not to exceed $500,000 for all such Professionals (to be shared on a pro rata basis, as necessary).

## C.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed Priority Tax Claim (as determined in accordance with section 1129(a)(9)(C)) on the Effective Date or within seven (7) Business Days after such Allowed Priority Tax Claim becomes an Allowed Claim, whichever is later, or as soon thereafter as is practicable; or (b) Cash in an amount agreed to by the Debtors (if prior to the Effective Date) or the Distribution Trustee (if after the Effective Date) and such Holder. Such payments to Holders of Allowed Priority Tax Claims shall be paid by the Debtors from the Unimpaired Claims Cash Reserve, after payment in full to all Allowed Administrative Expense Claims, and, to the extent the Unimpaired Claims Cash Reserve is insufficient to pay all such Allowed Priority Tax Claims in full, then by the Distribution Trustee from the first net proceeds of the Distribution Trust Assets following satisfaction of all Allowed Administrative Expense Claims.

## D.    Prepetition Lenders Adequate Protection Claims

The Distribution Trustee shall satisfy the Adequate Protection Claims, which are currently estimated at approximately $10.6 million, from the first net proceeds of the Distribution Trust available for Distribution following satisfaction of all Allowed Administrative Expense Claims, Priority Tax Claims and Other Priority Claims (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets), which net proceeds shall be distributed to the Administrative Agent, for the benefit of the Prepetition Secured Parties, to be distributed in accordance with the Prepetition Loan Documents.

## E.    Payment of Statutory Fees

All Statutory Fees, to the extent unpaid through the Confirmation Date, shall be paid by the Debtors in Cash within seven (7) Business Days after the Confirmation Date. From and after the Confirmation Date through the closing of the Chapter 11 Cases, all Statutory Fees shall be paid by the Debtors (if prior to the Effective Date) or the Distribution Trustee (if after the Effective Date); provided that the Debtors and the Distribution Trustee shall remain jointly and severally liable for such Statutory Fees.

## F.    Bar Dates for Professional Fee Claims

Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Distribution Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than 45 days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such

compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order; and provided further that, in accordance with the FTI Order, neither FTI Consulting, Inc., as Crisis Managers, nor William J. Nolan, as Chief Restructuring Officer, shall be required to File a Final Fee Application, but nothing in this Combined Plan and Disclosure Statement shall excuse them of any obligation under the FTI Order to file reports of compensation earned or expenses incurred.  A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be Filed and served on the Distribution Trustee and the requesting party by the later of (1) 66 days after the Effective Date or (2) 21 days after the Filing of the applicable Final Fee Application.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Fee Claims; provided that such Claims shall remain subject to the Approved Budget as provided herein (with Student Trust Assets being available to satisfy any Student Committee Fee Overage of the Student Committee Professionals).  Any pending, Filed interim requests for a Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

## VII.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS; ESTIMATED RECOVERIES

Claims, other than Administrative Expense Claims, and Priority Tax Claims, are classified for all purposes, including voting, confirmation and Distribution pursuant to the Combined Plan and Disclosure Statement, as follows:

| Class | Type | Status Under Plan | Voting Status |
|-------|------|-------------------|---------------|
| 1 | Prepetition Lenders Secured Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Student Claims and Government Education Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests | Impaired | Deemed to Reject |

## VIII.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    **Treatment of Claims**

    1.    **Class 1 – Prepetition Lenders Secured Claims**

        a.    **Classification**

Class 1 consists of the Prepetition Lenders Secured Claims.

        b.    **Impairment and Voting**

Class 1 is Impaired by the Combined Plan and Disclosure Statement.  Each Holder of Class 1 Allowed Claim, is entitled to vote to accept or reject the Combined Plan and Disclosure Statement in accordance with the Prepetition Loan Documents.

        c.    **Treatment**

On the Effective Date, the Administrative Agent, for the benefit of the Prepetition Secured Parties, shall receive, on account of the Class 1 Claim for distribution to the Holders of such Claims:  (i) the Prepetition Lenders Effective Date Cash; (ii) all rights, title and interests of the Debtors in the Zenith Escrow and the NY State Grant Funds, to be applied and maintained or distributed, as applicable, by the Administrative Agent to the Prepetition Secured Parties in accordance with the Prepetition Loan Documents; and (iii) an Allowed Class 4 General Unsecured Claim for the Prepetition Lender Deficiency Claim.  For the avoidance of doubt, the Distribution Trustee shall not administer the Zenith Escrow Account or the NY State Grant Funds (which are excluded from the Distribution Trust Assets) and shall have no duties to assist with the realization or recovery of such amounts.

    2.    **Class 2 – Other Secured Claims**

        a.    **Classification**

Class 2 consists of all Other Secured Claims, if any.

        b.    **Impairment and Voting**

Class 2 is Unimpaired by the Combined Plan and Disclosure Statement.  Holders of Allowed Class 2 Other Secured Claims as of the Distribution Record Date are deemed to have accepted the Combined Plan and Disclosure Statement, and thus are not entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

        c.    **Treatment**

Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable or different treatment, on, or as soon as reasonably practical after, the Effective Date or the date such Claim becomes an Allowed Other Secured Claim, each Holder of such

Allowed Other Secured Claim as of the Distribution Record Date shall receive, as the Debtors or the Distribution Trustee, as applicable, determines, (i) the collateral securing such Allowed Other Secured Claim (to the extent such collateral is not subject to Liens securing the Prepetition Lenders Secured Claims or the Prepetition Lenders Adequate Protection Claims under the Final Cash Collateral Order, or, if such collateral is subject to such Liens, to the extent that the Lien securing such Allowed Other Secured Claim is senior to such Liens), or (ii) such other treatment as renders such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124(1) or (2) of the Bankruptcy Code; provided, however, that any Deficiency Claims of Holders of Class 2 Other Secured Claims shall not constitute Class 2 Other Secured Claims and shall be treated as Class 4 General Unsecured Claims hereunder.

### 3.  Class 3 – Other Priority Claims

#### a.  Classification

Class 3 consists of all Other Priority Claims.

#### b.  Impairment and Voting

Class 3 is Unimpaired.  Holders of Allowed Other Priority Claims in Class 3 shall be deemed to have accepted the Combined Plan and Disclosure Statement, and thus are not entitled to vote to accept or to reject the Combined Plan and Disclosure Statement.

#### c.  Treatment

Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable or different treatment, on, or as soon as reasonably practicable after, the later of the Effective Date or the date such Other Priority Claim becomes an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim as of the Distribution Record Date shall receive in full satisfaction, settlement, and release of, and in exchange for, such Allowed Other Priority Claim, Cash from the Unimpaired Claims Cash Reserve (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets).  To the extent the Unimpaired Claims Cash Reserve is insufficient to pay the Allowed Other Priority Claims in full (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets), then the Holders of such Allowed Claims shall be paid from the first net proceeds of the Distribution Trust Assets following satisfaction of all Allowed Administrative Expense Claims.

### 4.  Class 4 – General Unsecured Creditors

#### a.  Classification

Class 4 consists of all General Unsecured Claims.

#### b.  Impairment and Voting

Class 4 is Impaired.  Holders of Allowed General Unsecured Claims in Class 4 are entitled to vote to accept or to reject the Combined Plan and Disclosure Statement.

RLF1 12573713v.10

c.      **Treatment**

Holders of Allowed General Unsecured Claims, as of the Distribution Record Date, shall receive their Pro Rata share based upon the Settlement Percentage of all of the General Unsecured Creditors Recovery Fund Assets (or the proceeds thereof); provided, however, that all Distributions to Holders of Allowed General Unsecured Claims shall be subject to the Distribution Trustee first paying in full, and reserving for as reasonable and appropriate, the reasonable costs and expenses, including professional fees, of the Distribution Trust, in the time and manner provided in the Combined Plan and Disclosure Statement and the Distribution Trust Agreement; provided further, however, that the costs and expenses of the Distribution Trust shall be subject to a budget approved by the Oversight Board.

5.      **Class 5 – Student Claims and Government Education Claims**

b.      **Classification**

Class 5 consists of all Student Claims and Government Education Claims.  For the avoidance of doubt, any and all Qui Tam Claims shall be Class 5 Claims under the Combined Plan and Disclosure Statement.

c.      **Impairment and Voting**

Class 5 is Impaired.    Holders of Allowed Student Claims and Allowed Government Education Claims in Class 5 are entitled to vote to accept or reject the Combined Plan and Disclosure Statement.

d.      **Treatment**

Holders of Allowed Student Claims and Allowed Government Education Claims, as of the Distribution Date, shall receive a pro rata share of the Student Trust Assets; provided, however, that all distributions to Holders of Allowed Student Claims or Allowed Government Education Claims shall be subject to the Student Trustee first paying in full, and reserving for as reasonable and appropriate, the Student Trust Operating Expenses, in the time and manner provided in the Combined Plan and Disclosure Statement and the Student Trust Agreement.  The Holders of Allowed Student Claims may participate in any Student Claims Benefit Program provided by the Student Trustee in accordance with the Student Trust Agreement.

6.      **Class 6 – Intercompany Claims**

a.      **Classification**

Class 7 consists of all Intercompany Claims.

### b.    **Impairment and Voting**

Class 7 is Impaired.  Because Holders of Intercompany Claims will receive no Distribution under the Combined Plan and Disclosure Statement, Class 6 shall be deemed to have voted to reject the Combined Plan and Disclosure Statement.

### c.    **Treatment**

On the Effective Date, all Intercompany Claims will be reviewed and adjusted or cancelled by the Debtors or the Distribution Trustee, as applicable, by, among other things, releasing, canceling, or waiving such claims.  Holders of Intercompany Claims shall not be entitled to participate in any of the Distributions on account of Claims under any other Sections of the Combined Plan and Disclosure Statement and shall only be entitled to the treatment provided in this Section of the Combined Plan and Disclosure Statement.

### 7.    **Class 7 – Equity Interests**

### a.    **Classification**

Class 7 consists of the Equity Interests.

### b.    **Impairment and Voting**

Class 7 is Impaired.  Because Holders of Equity Interests will receive no Distribution under the Combined Plan and Disclosure Statement, Class 7 shall be deemed to have voted to reject the Combined Plan and Disclosure Statement.

### c.    **Treatment**

On the Effective Date, all Equity Interests (including any and all options or rights to exercise warrants or options or to otherwise acquire any Equity Interests) shall be cancelled, deemed terminated, and of no further force and effect, and the Holders of Equity Interests shall not receive or retain any Distribution or property on account of such Equity Interests.

## B.    **Modification of Treatment of Claims and Equity Interests**

The Debtors reserve the right to modify the treatment of any Allowed Claim or Equity Interest in any manner adverse only to the Holder of such Claim or Equity Interest at any time after the Effective Date upon the consent of the Holder of the Claim or Equity Interest whose Allowed Claim or Equity Interest, as the case be, is being adversely affected.

## C.    **Cramdown and No Unfair Discrimination**

In the event that any impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Combined Plan and Disclosure Statement, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Combined Plan and Disclosure Statement in accordance with

RLF1 12573713v.10

section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Combined Plan and Disclosure Statement shall constitute a motion for such relief.

## IX.  PROVISIONS REGARDING THE DISTRIBUTION TRUST

### A.  Arrangements with the Distribution Trustee

The Distribution Trustee shall be selected jointly by the Administrative Agent and the Creditors' Committee and shall be identified by the Debtors in the Plan Supplement.  At the Confirmation Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Distribution Trustee.  All compensation for the Distribution Trustee shall be paid from the Distribution Trust Seed Money and the Distribution Trust Assets in accordance with the Distribution Trust Agreement.  The approved person shall serve as the Distribution Trustee upon execution of the Distribution Trust Agreement on the Effective Date.  The Distribution Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  The Distribution Trust Agreement shall be provided in the Plan Supplement.  On the Effective Date, all Beneficiaries of the Distribution Trust shall be deemed to have ratified and become bound by the terms and conditions of the Distribution Trust Agreement.

### B.  Funding of the Distribution Trust

In accordance with Section XII.A.1. of the Combined Plan and Disclosure Statement, on the Effective Date the Debtors shall transfer and shall be deemed to have irrevocably transferred to the Distribution Trustee free and clear of any Claims or Liens the following:  (i) the Distribution Trust Seed Money and (ii) the Distribution Trust Assets, together with such other amount that may be agreed to by the Debtors, the Administrative Agent, and the Committees at any time up to the Confirmation Hearing, with no reversionary interest in the Debtors.  The Distribution Trust Seed Money and the Distribution Trust Assets shall be used by the Distribution Trustee in a manner provided for in the Combined Plan and Disclosure Statement and in the Distribution Trust Agreement.  For the avoidance of doubt, all of the interests of the Debtors and their Estates in and to the D & O Policies, if any, shall be transferred to and vest in the Distribution Trust as a representative of the Debtors and their Estates under section 1123(b)(3) of the Bankruptcy Code.

### C.  Distributions by the Distribution Trust

Distributions by the Distribution Trustee shall be made in accordance with, and as set forth in the Distribution Trust Agreement.  The net proceeds of the Distribution Trust Assets, including Distribution Trust Available Cash, shall be utilized by the Distribution Trustee as follows:  (i) first, to make payments to the Holders of Allowed Administrative Expense Claims (to the extent not satisfied from the Unimpaired Claims Cash Reserve), until such Claims are paid in full, subject to the limitation on Professional Fee Claims set forth in Section VI.B.; (ii) second, to make payments to Holders of Allowed Priority Tax Claims and Allowed Other Priority Claims (other than Student 507(a)(7) Deposit Claims, which shall be satisfied from the Student Trust Assets), until such Allowed Claims are paid in full; (iii) third, to pay the Prepetition Lenders Adequate Protection Claims to the Administrative Agent for Distribution to

Holders of the Allowed Prepetition Lenders Adequate Protection Claims in accordance with the Prepetition Loan Documents; and (iv) fourth, to make Distributions to Holders of Allowed General Unsecured Claims, including the Prepetition Lenders Deficiency Claims, on a Pro Rata basis subject to the Settlement Percentage. For the avoidance of doubt, no Distributions shall be made from the Distribution Trust to Holders of Allowed General Unsecured Claims on account of such Claims until the Prepetition Lenders Adequate Protection Claims have paid in full. After final Distributions have been made in accordance with the Combined Plan and Disclosure Statement, the Distribution Trustee may, without the need for a further order of the Bankruptcy Court, donate any remaining Cash to a charity to the extent that any further Distribution would result in the Holders of Allowed General Unsecured Claims receiving a Distribution of less than $25 on account of their Claim.

## D.    Withholding and Reporting Requirements

In connection with the Combined Plan and Disclosure Statement and all Distributions thereunder, the Distribution Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Distribution Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of the Combined Plan and Disclosure Statement (a) each Holder of an Allowed Claim that is to receive a Distribution from the Distribution Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Combined Plan and Disclosure Statement unless and until such Holder has made arrangements satisfactory to the Distribution Trustee to allow it to comply with its tax withholding and reporting requirements. Any property to be distributed by the Distribution Trust shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Distribution Trustee, as the case may be, until such time as the Distribution Trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

## E.    Insurance Policies

Nothing in the Combined Plan and Disclosure Statement, the Confirmation Order, or the Distribution Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies of the Debtors or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.

For the avoidance of doubt, individual insureds under the D&O Policies shall continue to have access to proceeds of the D&O Policies, consistent with the *Order Granting Motion of Current and Former Directors and Officers of Corinthian Colleges, Inc. for Relief from the Automatic Stay, to the Extent Applicable, to Allow Payment of Defense Costs and Other*

*Loss Under Directors and Officers Liability Insurance Policies* [Docket No. 287], which shall remain in effect pending further order of the Bankruptcy Court.  In addition, all of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may be beneficiaries, including the D&O Policies, shall vest with the Distribution Trust for the benefit of the Beneficiaries of the Distribution Trust and all of the beneficiaries of such policies; and the Distribution Trustee and/or the Debtors shall not take any action that would impair or alter the coverage currently in place for the individual insureds under the D&O Policies and/or similar policies, as such coverage shall remain in full force and effect for benefit of such individual insureds and for the Estates pursuant to the terms of all such policies.  The Debtors and the Distribution Trust shall have no monetary obligations with respect to the Insurance Policies other than with respect to any General Unsecured Claims and/or Other Secured Claims (as applicable, and to the extent set forth in the subsequent sentence) properly and timely asserted in the Chapter 11 Cases, to the extent that such Claims are Allowed.  Specifically, to the extent that a Claim of an insurer (or third-party administrator) is properly secured by virtue of such party's having previously been granted collateral (including letters of credit), such Claim shall continue to be secured by and to the extent of such collateral and shall be deemed to be (a) an Other Secured Claim in accordance with the Combined Plan and Disclosure Statement and Bankruptcy Code section 506(a) and shall be treated as Class 2 Claims under the Combined Plan and Disclosure Statement, provided that any excess collateral shall be returned to the Debtors or the Distribution Trustee, as applicable, in accordance with the Insurance Policies or court order (to be further distributed in the manner set forth in Section IX.C. of the Plan) and (b) to the extent of any collateral deficiency, a General Unsecured Claim to be treated as a Class 4 Claim under the Combined Plan and Disclosure Statement, in each case subject to the filing of a proof of Claim therefor and the Allowance thereof.  Notwithstanding the foregoing, this Section IX.E does not apply with respect to funds cash collateralizing Letters of Credit that have been terminated or expired according to their terms, which funds shall constitute Prepetition Lenders Effective Date Cash in accordance with Section VIII.A hereof.

## F.     Powers and Authority of the Distribution Trustee

The Distribution Trustee shall, in addition to any powers and authority specifically set forth in other provisions of the Combined Plan and Disclosure Statement and the Distribution Trust Agreement, and subject to the terms and conditions in the Combined Plan and Disclosure Statement and the Distribution Trust Agreement and the rights of the Oversight Board, be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement and Distribution Trust Agreement, (ii) establish, as necessary, disbursement accounts for the deposit and Distribution of all amounts distributed under the Distribution Trust; (iii) make Distributions in accordance with the Combined Plan and Disclosure Statement, (iv) object to Claims, as appropriate; (v) employ and compensate professionals to represent it with respect to its responsibilities, (vi) assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses, and (vii) exercise such other powers as may be vested in the Distribution Trustee by order of the Bankruptcy Court, pursuant to the Combined Plan and Disclosure Statement and the Distribution Trust Agreement.  The Distribution Trustee, subject to the terms and conditions of the Distribution Trust Agreement and the rights of the Oversight Board, may take any and all actions which it deems reasonably necessary or appropriate to defend against any Claim, including, without limitation, the right to: (a) exercise any and all

judgment and discretion with respect to the manner in which to defend against or settle any Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements, provided that such settlement is entered into by the Distribution Trust in good faith.

## G.    Post-Confirmation Date Expenses of the Distribution Trustee

As provided for in the Distribution Trust Agreement, the Distribution Trustee shall receive reasonable compensation for services rendered pursuant to the Combined Plan and Disclosure Statement and Distribution Trust Agreement without further Court order. In addition, except as otherwise ordered by the Bankruptcy Court, the amount of reasonable fees and expenses incurred by the Distribution Trustee on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) shall be paid without further Court order.

## X. PROVISIONS REGARDING THE STUDENT TRUST

## A.    Arrangements with the Student Trustee

In the Plan Supplement the Debtors shall identify the Student Trustee for the Student Trust. At the Confirmation Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Student Trustee. All compensation for the Student Trustee shall be paid from the Student Trust Operating Reserve, in accordance with the Student Trust Agreement. The approved person shall serve as the Student Trustee upon execution of the Student Trust Agreement on the Effective Date. The Student Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Student Trust Agreement shall be provided in the Plan Supplement. On the Effective Date, each Holder of a Student Claim or a Government Education Claim shall be deemed to have ratified and become bound by the terms and conditions of the Student Trust Agreement.

## B.    Funding of the Student Trust

In accordance with Section XII.A.1. of the Combined Plan and Disclosure Statement, on the Effective Date the Debtors shall transfer and shall be deemed to have irrevocably transferred the Student Trust Assets to the Student Trust, with no reversionary interest in the Debtors or their Estates, and free and clear of any and all Liens and Claims of the Prepetition Secured Parties. The Student Trust Assets shall be used by the Student Trustee in a manner provided for in the Combined Plan and Disclosure Statement and in the Student Trust Agreement.

## C.    Distributions by the Student Trust

Distributions by the Student Trustee shall be made in accordance with, and as set forth in the Student Trust Agreement. The net proceeds of the Student Trust Assets shall be distributed (or properly reserved for) (i) first, to the Holders of Allowed Student 507(a)(7) Deposit Claims; and (ii) second, to the Holders of Allowed Student Claims and Allowed

Government Education Claims on a Pro Rata Basis, provided that after all Allowed Student 507(a)(7) Deposit Claims have been paid in full or properly reserved for, the Student Trustee may establish any Student Claims Benefit Program subject to the terms of the Combined Plan and Disclosure Statement and the Student Trust Agreement.

**D.      Withholding and Reporting Requirements**

In connection with the Combined Plan and Disclosure Statement and all Distributions thereunder, the Student Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Student Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Student Claim or Government Education Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder.  Notwithstanding any other provision of the Combined Plan and Disclosure Statement (a) each Holder of an Allowed Student Claim or Government Education Claim that is to receive a Distribution pursuant to the Combined Plan and Disclosure Statement shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Combined Plan and Disclosure Statement unless and until such Holder has made arrangements satisfactory to the Student Trustee, as applicable, to allow such trustee to comply with its tax withholding and reporting requirements.  Any property to be distributed pursuant to the Combined Plan and Disclosure Statement shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution to be held by the Student Trustee, as the case may be, until such time as such trustee is satisfied with the Holder's arrangements for any withholding tax obligations.

**E.      Insurance Policies**

Nothing in the Combined Plan and Disclosure Statement, the Confirmation Order, or the Student Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies of the Debtors or modifies the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies.

**F.      Powers and Authority of the Student Trustee**

The Student Trustee shall, in addition to any powers and authority specifically set forth in other provisions of the Combined Plan and Disclosure Statement and the Student Trust Agreement, and subject to the terms and conditions in the Student Trust Agreement and the rights of the Managing Board, be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Combined Plan and Disclosure Statement and Student Trust Agreement, (ii) establish, as necessary, disbursement accounts for the deposit and Distribution of all amounts distributed under the Student Trust;

(iii) make Distributions in accordance with the Combined Plan and Disclosure Statement, (iv) object to Student Claims or Government Education Claims, as appropriate; (v) employ and compensate professionals to represent it with respect to its responsibilities, and (vi) exercise such other powers as may be vested in the Student Trustee by order of the Bankruptcy Court, pursuant to the Combined Plan and Disclosure Statement and Student Trust Agreement.  The Student Trustee, subject to the terms and conditions of the Student Trust Agreement and the rights of the Managing Board, may take any and all actions that it deems reasonably necessary or appropriate to defend against any Student Claim or Government Education Claim, including, without limitation, the right to:  (a) exercise any and all judgment and discretion with respect to the manner in which to defend against or settle any such Claim, including, without limitation, the retention of professionals, experts and consultants; and (b) enter into a settlement agreement or agreements, provided that such settlement is entered into by the Student Trustee in good faith.

## G.      Post-Confirmation Date Expenses of the Student Trustee

As provided for in the Student Trust Agreement, the Student Trustee shall receive reasonable compensation for services rendered pursuant to the Combined Plan and Disclosure Statement and Student Trust Agreement without further Court order.  In addition, except as otherwise ordered by the Bankruptcy Court, the amount of reasonable fees and expenses incurred by the Student Trustee on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) shall be paid without further Court order.

## H.      Student 507(a)(7) Deposit Claims

Following the closure of the Debtors' schools, the Debtors and/or their agents attempted to (i) reverse all charges to student accounts for current Students attending quarter based programs for the terms that were scheduled to run from April 2015 to July 2015, (ii) credit all student accounts for current Students attending diploma programs (including "clock hour") for the portion of the program they were unable to attend due to such closure, and (iii) credit all student accounts for Students that had a credit balance outstanding regardless of whether or not a check for such credit balance was actually issued to the Student, but was never cashed or honored (collectively, the "**Credits and/or Reversals**").  The Debtors and/or their agents then performed return to Title IV calculations on all student accounts in all programs, and then sent student level return files to the Department of Education so that all Credits and/or Reversals could properly be applied to Students' federal loan accounts and other sources of Title IV aid. As a result of the foregoing Credit and Reversal process, the Debtors do not believe that any Student should hold a Student 507(a)(7) Deposit Claim arising from the deposit of Title IV funds.  If, however, it is later determined upon audit by the Department of Education or the Student Trust that any Credit and/or Reversal was inadvertently missed or miscalculated or was not correctly transmitted to the Department of Education or correctly posted by the Department of Education to such student's file, then (i) the Department of Education and/or the Student Trust is fully authorized and directed to make such Credits and/or Reversals to student files after the Effective Date, or (ii) the Court may enter an order after notice and a hearing directing that such Credit and/or Reversal be made.

## XI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE COMBINED PLAN AND DISCLOSURE STATEMENT

### A. Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Combined Plan and Disclosure Statement shall be made by check drawn on a domestic bank or an electronic wire.

### B. Objections to and Resolution of Claims

Subject to the terms and conditions of the Distribution Trust Agreement and the rights of the Oversight Board, the Distribution Trustee shall have the right to file objections ("**Distribution Trust Objections**") to Claims being administered by the Distribution Trust after the Effective Date. All Distribution Trust Objections shall be litigated to entry of a Final Order; provided, however, that only the Distribution Trustee, subject to the Distribution Trust Agreement and any Oversight Board input, shall have the authority to compromise, settle, otherwise resolve or withdraw any Distribution Trust Objections, without approval of the Bankruptcy Court. The Distribution Trustee shall not compromise, settle, otherwise resolve or withdraw any Distribution Trust Objections to Administrative Expense Claims, Priority Tax Claims and Other Priority Claims without the written consent of the Oversight Board (as governed by the terms of the Distribution Trust Agreement), which consent shall not be unreasonably withheld.

Subject to the terms and conditions of the Student Trust Agreement and the rights of the Managing Board, the Student Trustee shall have the right to file objections ("**Student Trust Objections**") to Claims being administered by the Student Trust after the Effective Date. All Student Trust Objections shall be litigated to entry of a Final Order; provided, however, that only the Student Trustee, subject to the Student Trust Agreement and any Managing Board input, shall have the authority to compromise, settle, otherwise resolve or withdraw any Student Trust Objections, without approval of the Bankruptcy Court.

### C. Claims Objection Deadline

The Distribution Trustee, the Student Trustee, and any other party in interest to the extent permitted pursuant to section 502(a) of the Bankruptcy Code, shall file and serve any objection to any Claims no later than the Claims Objection Deadline; provided, however, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Distribution Trustee or the Student Trustee for cause.

### D. No Distribution Pending Allowance

Notwithstanding any other provision of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement, or the Student Trust Agreement, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Combined Plan and Disclosure Statement.

## E.     Escrow of Cash Distributions

On any date that Distributions are to be made under the terms of the Combined Plan and Disclosure Statement, the Distribution Trustee and/or Student Trustee, as applicable, shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto. The Distribution Trustee and/or Student Trustee, as applicable, shall also segregate any interest, dividends or proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

## F.     Distribution After Allowance

Within the later of (i) seven (7) Business Days after such Claim becomes an Allowed Claim and (ii) thirty (30) days after the expiration of the Claims Objection Deadline, the Distribution Trustee (with respect to Claims administered by the Distribution Trust) and the Student Trustee (with respect to Claims administered by the Student Trust), shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder of an Allowed Claim is then entitled.

## G.     Investment of Segregated Cash and Property

To the extent practicable, the Distribution Trustee and the Student Trustee may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable Distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, that the Distribution Trustee and the Student Trustee shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## H.     Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made:  (1) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Distribution Trustee after the date of any related proof of Claim; or (3) at the address reflected in the Schedules if no proof of Claim is filed and the Distribution Trustee (as to Claims administered by the Distribution Trust) and the Student Trustee (as to Claims administered by the Student Trust) has not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Distribution Trustee or Student Trustee as undeliverable, no further Distribution shall be made to such Holder unless and until the Distribution Trustee, or the Student Trustee, as applicable,  is notified in writing of such Holder's then current address.  Undeliverable Distributions shall remain in the possession of the Distribution Trustee or the Student Trustee, as applicable, until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes

51

an unclaimed Distribution pursuant to Section XI.I. of the Combined Plan and Disclosure Statement.

Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section XI.I. of the Combined Plan and Disclosure Statement, within 30 days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, the Distribution Trustee or the Student Trustee, as applicable, shall make Distributions of all Cash and property that has become deliverable during the preceding quarter.  Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

The Distribution Trustee, and the Student Trustee, as applicable, shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, nothing contained in the Combined Plan and Disclosure Statement shall require the Distribution Trustee or the Student Trustee, as applicable, to locate any Holder or an Allowed Claim.

All Distributions on account of the Prepetition Lenders Claims shall be made to the Administrative Agent for the benefit of the Prepetition Lenders, and shall be applied and maintained or disbursed, as applicable, by the Administrative Agent in accordance with the terms of the Prepetition Loan Documents.

## I.    **Unclaimed Distributions**

Any Cash or other property to be distributed under the Combined Plan and Disclosure Statement shall revert to the Distribution Trustee, or the Student Trustee, as applicable, if it is not claimed by the Entity within three (3) months after the date of such Distribution.  If such Cash or other property is not claimed on or before such date, the Distribution made to such Entity shall be deemed to be reduced to zero.

## J.    **Set-Off**

Except as otherwise provided herein, the Debtors retain the right to reduce any Claim by way of setoff in accordance with their books and records.  Rights of a setoff and recoupment of any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of the Debtors, their Estates, or the Distribution Trustee or Student Trustee, as applicable, and regardless of whether such Entity or Person is the Holder of an Allowed Claim.

Notwithstanding anything to the contrary herein, all Claims of the Administrative Agent or Prepetition Lenders in Class 1 and Class 4, and the Prepetition Lenders' Adequate Protection Claim shall be deemed Allowed and neither such Allowed Claims nor any Distributions in respect thereof shall be subject to defense, setoff, counterclaim, or reduction.

RLF1 12573713v.10

**K.**    **Postpetition Interest**

Interest shall not accrue on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.  No prepetition Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for Holders of Secured Claims under section 506(b) of the Bankruptcy Code.

**L.**    **Books and Records**

On the Effective Date, (i) the Debtors' books and records in the Debtors' actual or constructive possession, custody or control (excluding the Student Books and Records) (the "**Books and Records**") shall be transferred to the Distribution Trust and (ii) the Student Books and Records shall be transferred to the Student Trust.  The Distribution Trustee shall be free, in its discretion, upon prior written notice to the Administrative Agent and the Student Trustee, to abandon, destroy, or otherwise dispose of any Books and Records in compliance with applicable non-bankruptcy law at any time on and after the Effective Date, without the need for any other or further court order.  Upon request of the Student Trustee and at the expense of the Student Trust, the Distribution Trustee will provide copies of any and all Books and Records requested by the Student Trustee, subject to any applicable privilege that the Distribution Trustee is legally entitled to maintain.  The Student Trustee shall likewise in good faith cooperate with the Distribution Trustee should the Distribution Trustee require access to the Student Books and Records for purposes of administering the Distribution Trust.

The Debtors' Books and Records shall refer to all writings, communications, documents, recordings, of any kind, that are in the Debtors' actual or constructive possession, custody, or control as of the Effective Date, including, but not limited to: any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic, or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed, or stored, whether an original, a draft, or copy, however produced or reproduced, whether sent or received or neither, including notes, memoranda, correspondence, text messages, instant messages, letters, facsimiles and facsimile transmittals, reports, communications, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, video, audio and digital recordings, television commercials, website or other spot advertisements, prototypes, products, calendars, charts, diaries, drawings, sketches, messages, lab notebooks, photographs, and any "active" or "backup" data contained in or accessible through any electronic data processing system, including computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof, and all other memorializations of any conversations, meetings and conferences, by telephone or otherwise, which shall include every copy of a document, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery, or any other difference or modification of any kind.

**M.**     **Privileges as to Certain Causes of Action**

All Privileges of the Debtors relating to the Distribution Trust Assets shall be transferred, assigned, and delivered to the Distribution Trust, without waiver or release, and shall vest with the Distribution Trust.  The Distribution Trustee shall hold and be the beneficiary of all such Privileges and entitled to assert such Privileges.  No such Privilege shall be waived by disclosures to the Distribution Trustee of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors.  The Debtors' Privileges relating to the Distribution Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement.

## XII.  IMPLEMENTATION AND EFFECT OF CONFIRMATION OF COMBINED PLAN AND DISCLOSURE STATEMENT

**A.**     **Means for Implementation of the Combined Plan and Disclosure Statement**

In addition to the provisions set forth elsewhere in the Combined Plan and Disclosure Statement, the following shall constitute the means for implementation of the Combined Plan and Disclosure Statement:

**1.**     **Funding of Liabilities and Distributions**

On the Effective Date, the Debtors and the Debtors' Estates shall transfer to:  (a) the Distribution Trust, the Distribution Trust Seed Money and the Distribution Trust Assets, to be utilized, administered and distributed by the Distribution Trustee in accordance with the terms and conditions of this Combined Plan and Disclosure Statement, the Confirmation Order and the Distribution Trust Agreement and (b) the Student Trust, the Student Trust Assets, to be utilized, administered and distributed by the Student Trustee in accordance with the terms and conditions of the Combined Plan and Disclosure Statement, the Confirmation Order, and that Student Trust Agreement.

**2.**     **Corporate Action; Effectuating Documents; Further Transactions**

On the Effective Date, all matters and actions provided for under the Combined Plan and Disclosure Statement that would otherwise require approval of the directors and officers, or members or managers of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the directors and officers, or members and managers of the Debtors. The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement.

**3.**     **Exemption from Securities Laws**

Under section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Distribution Trust and the Student Trust under the Combined Plan and Disclosure Statement shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

### 4.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument or transfer from a Debtor to the Distribution Trust or Student Trust, or to any other Person pursuant to the Combined Plan and Disclosure Statement, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the forgoing instruments or other documents without the payment of any such tax or governmental assessment.  Without limiting the forgoing, any issuance, transfer or exchange of a security or any making or payment of any and all transfer taxes (including but not limited to any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of the Combined Plan and Disclosure Statement and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

## XIII.    INJUNCTION, EXCULPATION AND RELEASES

### A.    Injunction to Protect Estate Assets

**From and after the Effective Date, all Persons and Entities who have held, hold or may hold Claims against the Debtors arising prior to the Effective Date or interests in the Debtors are permanently enjoined from taking any of the following actions against the Estates, the Distribution Trust, the Student Trust, or any of their respective property or assets (collectively, the "Estate Assets") on account of any such Claims or interests (the "Plan Injunction"): (a) commencing or continuing, in any manner or in any place, any action or other proceeding seeking to collect or to recover in any manner against the Estate Assets; (b) enforcing, attaching, collecting, or recovering in any manner against the Estate Assets any judgment, award, decree or order; (c) creating, perfecting, or enforcing any Lien or encumbrance against the Estate Assets; and (d) asserting a setoff unless such setoff was formally asserted in a timely filed proof of claim or in a pleading filed with the Bankruptcy Court prior to entry of the Confirmation Order or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors, except as otherwise set forth in Section XI.J. of the Combined Plan and Disclosure Statement; provided, however, that such Persons and Entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Combined Plan and Disclosure Statement or the Confirmation Order.**

B.      **Status of Debtors Post-Effective Date**

**All injunctions or stays provided for the Debtors in the Chapter 11 Cases under, *inter alia*, sections 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, at which time they will terminate.  As the Debtors are distributing the Estate Assets and immediately thereafter dissolving on the Effective Date in accordance with the terms of the Plan, the Plan Injunction shall not apply to the Debtors.  In addition, given the complete liquidation of the Debtors' property pursuant to the terms of the Plan, the Debtors are not receiving a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code in these Chapter 11 Cases.**

C.      **Exculpation**

        **Except as otherwise specifically provided in the Combined Plan and Disclosure Statement, the Debtors and the Committees, and any of their respective members, officers, directors, employees, advisors, Professionals, attorneys, representatives, financial advisors, investment bankers, agents or other professionals and any of such parties' successors and assigns, solely in their capacities as such, shall not have or incur any liability for any claim, action, proceeding, cause of action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or Claim (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any claim Holder or interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission solely and only to the extent originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Combined Plan and Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, the administration of the Combined Plan and Disclosure Statement, or the property to be liquidated and/or distributed under the Combined Plan and Disclosure Statement, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement.**

D.      **Releases**

        1.      **Debtor Releases**

        **As of the Effective Date, for good and valuable consideration, the Debtors (in their individual capacities and as Debtors and Debtors-in-Possession) shall, solely with respect to the Administrative Agent, the Prepetition Lenders, their respective Related**

**Persons, and the Professionals, in their respective capacities as such (collectively, the "Debtor Releasees"), release forever, waive, and discharge such Debtor Releasees of and from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including Avoidance Actions), and liabilities (other than the rights of the Debtors to enforce this Combined Plan and Disclosure Statement, and the other Plan Documents) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences, whether direct or derivative, taking place on or prior to the Effective Date in connection with, or related to the Debtors, the Prepetition Loan Documents, the Chapter 11 Cases, and the Combined Plan and Disclosure Statement.**

2.    **Holder Releases**

**Unless affirmatively indicated by checking the "opt out" box on their Ballot, Holders of Claims which are Beneficiaries of the Distribution Trust entitled to vote on acceptance or rejection of the Combined Plan and Disclosure Statement shall be deemed to have released the Administrative Agent, the Prepetition Lenders, their respective Related Persons, in their capacities as such (collectively, the "Holder Releasees"), and the Professionals, and release forever, waive, and discharge such Holder Releasees of and from all claims obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce this Combined Plan and Disclosure Statement, and the contracts, instruments, releases, indentures, and other agreement or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences, whether direct or derivative, taking place on or prior to the Effective Date in connection with, or related to the Debtors, the Estates, the Chapter 11 Cases, and the Combined Plan and Disclosure Statement.**

3.    **Reservation of Rights**

**Except as specifically provided in the Combined Plan and Disclosure Statement or in the Confirmation Order, nothing contained in the Combined Plan and Disclosure Statement or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors have immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Combined Plan and Disclosure Statement. Except as specifically provided in the Combined Plan and Disclosure Statement or in the Confirmation Order, the Debtors or the Distribution Trustee, as the case may be, shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, or other legal or equitable defenses which they or any of them had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all legal and equitable rights of any Debtors respecting any Claim left unimpaired by the Combined Plan and Disclosure Statement may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced. the Distribution Trustee's right**

**to commence and prosecute causes of action shall not be abridged or altered in any manner by reason of confirmation of the Combined Plan and Disclosure Statement. no defendant party to any causes of action brought by the Debtors or the Distribution Trustee shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Combined Plan and Disclosure Statement, and confirmation of the Combined Plan and Disclosure Statement shall not have any res judicata or collateral estoppel effect upon the commencement and prosecution of the causes of action.**

## XIV.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, all Executory Contracts and unexpired leases not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective  Date will be deemed rejected.  The Confirmation Order shall constitute an order approving such rejection as of the Effective Date.

### B.    Deadline for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Combined Plan and Disclosure Statement

If the rejection by the Debtors, pursuant to the Combined Plan and Disclosure Statement or otherwise, of an Executory Contract or unexpired leases gives rise to a Claim, a proof of Claim must be filed with the Claims Agent at Corinthian Colleges, Inc. Claims Processing, c/o Rust Consulting/Omni Bankruptcy, 5955 DeSoto Avenue, Suite 100, Woodland Hills, CA 91367, by no later than thirty (30) days after the later of (i) notice of entry of the Confirmation Order, and (ii) other notice that the Executory Contract or unexpired lease has been rejected.  Any proofs of Claim not filed and served within such time periods will be forever barred from assertion against the Debtors and their Estates.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as General Unsecured Claims under the Combined Plan and Disclosure Statement.

## XV.  CONDITIONS PRECEDENT TO AND OCCURRENCE OF CONFIRMATION AND THE EFFECTIVE DATE

### A.    Conditions Precedent to Confirmation

The following are conditions precedent to Confirmation that must be satisfied or waived:

1.    The Confirmation Order shall be reasonably acceptable in form and substance to the Debtors, the Administrative Agent and the Committees.

2.    The Plan Supplement and any other exhibits or schedules incorporated as part of the Combined Plan and Disclosure Statement are in form and substance acceptable to the Debtors, the Administrative Agent and the Committees.

**B.**    **Conditions Precedent to the Effective Date**

The Combined Plan and Disclosure Statement shall not become effective unless and until the following conditions shall have been satisfied or waived:

1.    The Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect, and shall be acceptable to the Debtors, the Administrative Agent and the Committees.

2.    The Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending.

3.    The appointment of the Distribution Trustee and the Student Trustee shall have been confirmed by the Confirmation Order or other order of the Bankruptcy Court.

4.    All actions, documents and agreements necessary or appropriate to implement the Combined Plan and Disclosure Statement, including the Distribution Trust Agreement and the Student Trust Agreement, shall have been effected or executed.

**C.**    **Establishing the Effective Date**

The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions the Effective Date, which date will be selected by the Debtors, after reasonable consultation with the Administrative Agent and the Committees.

**D.**    **Effect of Failure of Conditions**

If each condition to the Effective Date has not been satisfied or duly waived within forty-five (45) days after the Confirmation Date, then upon motion by any party in interest, made before the time that each of the conditions has been satisfied or duly waived by the Debtors, with the express written consent of the Administrative Agent and the Committees, if applicable, and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such motion, the Confirmation Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived by the Debtors, with the express written consent of the Administrative Agent and the Committees, if applicable, before the any Order granting such relief becomes a Final Order.  If the Confirmation Order is vacated pursuant to this Section, the Combined Plan and Disclosure Statement shall be deemed null and void in all respects and nothing contained herein shall (i) constitute a waiver or release of any Claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtors.

**E.**    **Waiver of Conditions to Confirmation and Effective Date**

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtors with the affirmative written consent of the Administrative Agent and the

Committees, without notice or an Order of the Bankruptcy Court, provided, however, the Debtors shall provide written notice to the Creditors' Committee and the Student Committee of any such waiver.

## XVI.  RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, following the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases as is legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the interests and purposes of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and the Student Trust Agreement are carried out.  The Bankruptcy Court shall have jurisdiction, as is legally permissible, over all matters arising out of, and related to, the Chapter 11 Cases, the Combined Plan and Disclosure Statement,  the Distribution Trust Agreement and/or the Student Trust Agreement pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.      To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

2.      To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

3.      To issue such Orders in aid of execution and consummation of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and the Student Trust Agreement, to the extent authorized by section 1142 of the Bankruptcy Code;

4.      To consider any amendments to or modifications of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and the Student Trust Agreement, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

5.      To hear and determine all requests for compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code;

6.      To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and the Student Trust Agreement;

7.      To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

8.      To hear any other matter not inconsistent with the Bankruptcy Code;

9.      To enter a final decree closing the Chapter 11 Cases;

10.     To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and the Student Trust Agreement;

11.     To decide or resolve any motions, adversary proceedings, contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

12.     To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Combined Plan and Disclosure Statement, the Distribution Trust Agreement or the Student Trust Agreement, except as otherwise provided herein;

13.     To determine any other matters that may arise in connection with or related to the Combined Plan and Disclosure Statement, the Confirmation Order, the Distribution Trust Agreement, the Student Trust Agreement,  or any contract, instrument, release, indenture or other agreement or document created or implemented in connection with the Combined Plan and Disclosure Statement, the Distribution Trust Agreement or the Student Trust Agreement;

14.     To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, exculpations, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

15.     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

16.     To resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Cases, the Bar Dates, the Administrative Expense Bar Date, the Governmental Bar Date, and/or the hearing on the approval of the Combined Plan and Disclosure Statement for the purpose of determining whether a Claim, or Equity Interest is discharged and/or enjoined hereunder or for any other purpose; and

17.     To resolve any other matter or for any purpose specified in the Combined Plan and Disclosure Statement, the Confirmation Order, the Distribution Trust Agreement, the Student Trust Agreement, or any other document entered into in connection with any of the foregoing.

## XVII.  MISCELLANEOUS PROVISIONS

### A.     Amendment or Modification of the Combined Plan and Disclosure Statement

Alterations, amendments or modifications of the Combined Plan and Disclosure Statement may be proposed in writing by the Debtors, at any time before the Confirmation Date, provided that the Combined Plan and Disclosure Statement, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  Any such alterations, amendments or

modifications shall be in form and substance acceptable to the Administrative Agent and the Committees.

## B.      Severability

In the event the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Combined Plan and Disclosure Statement is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interest as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidability or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Combined Plan and Disclosure Statement.

## C.      Revocation or Withdrawal of the Combined Plan and Disclosure Statement

The Debtors reserve the right to revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date. If the Debtors revoke or withdraw the Combined Plan and Disclosure Statement before the Confirmation Date, then the Combined Plan and Disclosure Statement shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors, the Distribution Trustee or the Student Trustee or to prejudice in any manner the rights of either of the Debtors, the Distribution Trustee or the Student Trustee in any further proceedings involving the Debtors.

## D.      Binding Effect

The Combined Plan and Disclosure Statement shall be binding upon and inure to the benefit of the Debtors, the Holders of Claims, and the Holders of Equity Interests, and their respective successors and assigns.

## E.      Notices

All notices, requests and demands to or upon the Debtors, the Distribution Trustee or the Student Trustee to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as shall be set forth in the Confirmation Order.

## F.      Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Combined Plan and Disclosure Statement provides otherwise, the rights and obligations arising under the Combined Plan and Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**G.**      **Withholding and Reporting Requirements**

In connection with the consummation of the Combined Plan and Disclosure Statement, the Debtors, the Distribution Trustee and the Student Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.

**H.**      **Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Combined Plan and Disclosure Statement is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**I.**      **Headings**

Headings are used in the Combined Plan and Disclosure Statement for convenience and reference only, and shall not constitute a part of the Combined Plan and Disclosure Statement for any other purpose.

**J.**      **Exhibits/Schedules**

The Plan Documents are an integral part of the Combined Plan and Disclosure Statement, and are hereby incorporated by reference and made a part thereof.

**K.**      **Filing of Additional Documents**

On or before substantial consummation of the Combined Plan and Disclosure Statement, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Combined Plan and Disclosure Statement; provided that the Plan Supplement shall be Filed at least five (5) Business Days prior to the Confirmation Objection Deadline.

**L.**      **No Admissions**

Notwithstanding anything herein to the contrary, nothing contained in the Combined Plan and Disclosure Statement shall be deemed as an admission by any Entity with respect to any matter set forth herein.

**M.**      **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Combined Plan and Disclosure Statement shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person or Entity.

**N.**     **Reservation of Rights**

Except as expressly set forth herein, the Combined Plan and Disclosure Statement shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Combined Plan and Disclosure Statement, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Combined Plan and Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims or Equity Interest before the Effective Date.

**O.**     **Implementation**

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Combined Plan and Disclosure Statement.

**P.**     **Inconsistency**

In the event of any inconsistency among the Combined Plan and Disclosure Statement, the Distribution Trust Agreement, the Student Trust Agreement, or any other instrument or document created or executed pursuant to the Combined Plan and Disclosure Statement, the provisions of the Combined Plan and Disclosure Statement shall govern.

**Q.**     **Administrative Consolidation**

The classification and manner of satisfying all Claims and Interests under the Combined Plan and Disclosure Statement take into consideration the rights of Holders of Claims and Interests, whether arising under contract, law or equity, that a Holder of a Claim or Interest may have against each of the Debtors. Holders of Claims or Interests against more than one Debtor are classified in consolidated classes of Claims against and Interests in all Debtors in Section VII. above for administrative convenience with respect to voting and the making of Distributions on account of Claims and Interests. The Confirmation Order shall approve this administrative consolidation.

Such administrative consolidation shall not affect: (a) the legal and corporate structures of the Debtors; (b) Interests between and among the Debtors; (c) Distributions from any Insurance Policies or proceeds of such policies; (d) the vesting of assets in the Distribution Trust or the Student Trust; or (e) the reporting of disbursements and the payment of Statutory Fees, including those under 28 U.S.C. § 1930(a)(6). In addition, such administrative consolidation shall not constitute a waiver of the mutuality requirement for setoff under section 553 of the Bankruptcy Code.

This Combined Plan and Disclosure Statement serves as a motion seeking entry of an order consolidating the Estates for administrative purposes only, as set forth above and the closing of the Chapter 11 Cases for all of the Debtors other than Corinthian Colleges, Inc. Case No. 15-10952 (KJC). Unless an objection to such consolidation or case closing is made in writing by any creditor affected by the Combined Plan and Disclosure Statement, filed with the Bankruptcy Court and served on the Debtors on or before the Combined Plan and Disclosure

Statement objection deadline as established by the Bankruptcy Court, the consolidation and case closing order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto shall occur at or before the hearing on confirmation of the Combined Plan and Disclosure Statement.

**R.**     **Dissolution of the Debtors**

Immediately following the distribution of all of the Debtors' and the Estates' property pursuant to the terms of the Plan, on the Effective Date, the Debtors' directors and officers and any remaining employees shall be deemed to have resigned and the Debtors shall be deemed dissolved for all purposes and of no further legal existence under any applicable state or federal law.  The Debtors are further authorized to take all such further action as is necessary following the Confirmation Date to implement the foregoing.

**S.**     **Dissolution of the Committees**

Upon the occurrence of the Effective Date, the Creditors' Committee and the Student Committee shall dissolve automatically, whereupon their members, professionals and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (i) obligations arising under confidentiality agreements, which shall remain in full force and effect, (ii) applications for payment of fees and reimbursement of expenses of Professionals, and (iii) any pending motions or motions for other actions seeking enforcement of implementation of the provisions of the Combined Plan and Disclosure Statement).

RLF1 12573713v.10

Dated: August 25, 2015
      Wilmington, Delaware

CORINTHIAN COLLEGES, INC. (for itself and
on behalf of its debtor affiliates)

By: _____

Jack D. Massimino
Chairman of the Board and Chief Executive
Officer

## **Exhibit A**

**Debtors' Corporate Structure**



# Corinthian Colleges Organization
## Legal Structure



[1] – This organization legal structure chart does not include Canadian entities. Everest Colleges Canada, Inc. and Career Canada C.F.P filed for Canadian bankruptcy protections under the *Bankruptcy and Insolvency Act*.
[2] – Heald Capital, LLC ownership is split between Corinthian Colleges, Inc. (86.19%), SP PE VII-B Heald Holdings Corp. (11.77%), and SD III-B Heald Holdings Corp. (2.04%)

**<u>Exhibit B</u>**

**Hypothetical Chapter 7 Liquidation Analysis**

**Corinthian Colleges, Inc.**
*Hypothetical Chapter 7 Liquidation Analysis*

**The amounts presented in the chart below are estimates. The actual results are subject to significant uncertainty and could vary materially from what is presented here.**

| | Claims* | | Recovery | | | | | Comments |
|---|---|---|---|---|---|---|---|---|
| | Low | High | Low | % | | High | % | |
| Cash at 8/31/15 | | | $   5,454 | | | $   5,454 | | Includes assumptions about receipts and disbursements from 8/7/15 to 8/18/15. |
| Professional Fee Carve-Out | 1,383 | 1,383 | (1,383) | *100%* | | (1,383) | *100%* | Accrued and unpaid fees as of 8/28. |
| Potential Additional Sources of Recovery: | | | | | | | | |
| Laramie Land | | | 350 | | | 1,000 | | Estimated value based on appraisal, net of selling costs. |
| AIG Reimbursement | | | 500 | | | 500 | | |
| McKinley Garnishment | | | 1,000 | | | 1,000 | | |
| Cal Grants | | | - | | | 3,000 | | |
| Student Accounts Receivable | | | TBD | | | TBD | | |
| Tax Refunds | | | 400 | | | 1,200 | | |
| Intellectual Property | | | - | | | 100 | | |
| Zenith Escrow | | | 2,500 | | | 2,500 | | |
| Student Refund Escrow | | | - | | | 4,300 | | |
| Causes of Action | | | Unknown | | | Unknown | | |
| Assets Available for Secured Lenders | | | 8,821 | | | 17,671 | | |
| Chapter 7 Trustee Fees and Expenses | | | (465) | | | (630) | | |
| Initial Distribution to Secured Lenders | 107,000 | 107,000 | 8,357 | *8%* | | 17,041 | *16%* | |
| Remaining Assets for Other Creditors | | | TBD | | | TBD | | Dependent on Trustee's ability to recover from causes of action. |
| Additional Distributions to Pre-petition Secured Creditors | 107,000 | 107,000 | TBD | | | TBD | | Dependent on Trustee's ability to recover from causes of action. |
| Distributions to Administrative Creditors | 1,300 | 1,200 | TBD | | | TBD | | Includes post-petition rent for rejected real property locations. Recovery to administrative creditors is dependent on Trustee's ability to recover from causes of action. |
| Distributions to Priority Unsecured Creditors | 850 | 1,000 | TBD | | | TBD | | Includes Students' 507(a)(7) Deposit Claims. Recovery to priority claims is dependent on Trustee's ability to recover from causes of action. |
| Distributions to General Unsecured Creditors | 285,000 | 350,000 | TBD | | | TBD | | Includes Prepetition Lenders Deficiency Claim. Recovery is dependent on Trustee's ability to recover from causes of action. |
| Distributions to Student Creditors | TBD | TBD | TBD | | | TBD | | Dependent on Trustee's ability to recover from causes of action. |

* Claim estimates are based on the Debtors' Schedules of Liabilities, which may vary materially from actual claims filed.

Preliminary - Subject to Change

**Corinthian Colleges, Inc.**
*Proposed Chapter 11 Recovery Analysis*

**The amounts presented in the chart below are estimates. The actual results are subject to significant uncertainty and could vary materially from what is presented here.**

| | Claims* | | Recovery | | | | Comments |
|---|---|---|---|---|---|---|---|
| | Low | High | Low | % | High | % | |
| Cash at 8/31/15 (Assumed Effective Date) | | | $ 5,454 | | $ 5,454 | | |
| Outstanding Administrative Expenses | 1,300 | 1,200 | (1,300) | *100%* | (1,200) | *100%* | Includes post-petition rent for rejected real property leases. In Ch. 7, recoveries to Administrative claims are dependent on the Trustee's ability to recover on causes of action. |
| Professional Fee Carve-Out | 1,383 | 1,383 | (1,383) | *100%* | (1,383) | *100%* | Accrued and unpaid fees as of 8/28. |
| Cash Available for Priority Claims | | | 2,771 | | 2,871 | | |
| Distribution to Estimated Priority Claims | 600 | 750 | (600) | *100%* | (750) | *100%* | In Ch. 7, recoveries to Priority claims are dependent on the Trustee's ability to recover on causes of action. |
| Cash Available for Distribution Trust and Student Trust | | | 2,171 | | 2,121 | | |
| General Unsecured Creditors' Distribution Trust Seed Money | | | (500) | | (500) | | There is no funding of the Distribution Trust in Chapter 7. |
| Prepetition Lenders Effective Date Cash | | | 1,671 | | 1,621 | | |
| Zenith Escrow | | | 2,500 | | 2,500 | | |
| Distribution Available to Prepetition Lenders | | | 4,171 | | 4,121 | | |
| Effective Date Distribution to Prepetition Lenders | 107,000 | 107,000 | (4,171) | | (4,121) | | Pre-petition Secured Claims are estimated to be $107M. Balance remaining, after payment of $10M Super Priority Claim, will share pari-passu with General Unsecured Creditors. |
| **Funding of the Distribution Trust** | | | | | | | |
| Distribution Trust Seed Money | | | 500 | | 500 | | |
| Laramie Land | | | 500 | | 1,000 | | Estimated value based on appraisal, net of selling costs. |
| AIG Reimbursement | | | 500 | | 500 | | |
| McKinley Garnishment | | | 1,000 | | 1,000 | | |
| Cal Grants | | | - | | 3,000 | | |
| Student Accounts Receivable | | | TBD | | TBD | | |
| Tax Refunds | | | 400 | | 1,200 | | |
| Intellectual Property | | | - | | 100 | | |
| Causes of Action | | | Unknown | | Unknown | | |
| **Assets Available for Adequate Protection Claim** | 10,700 | 10,700 | 2,900 | 27% | 7,300 | 68% | Super Priority Claim pursuant to Cash Collateral Order. |
| Distribution Trust Expenses | | | (500) | | (500) | | |
| Distribution to Lenders Adequate Protection Claim | | | (2,400) | | (6,800) | | |
| *Total Distributions to Prepetition Lenders Before Unknown Recoveries and Deficiency Claim* | 107,000 | 107,000 | 6,571 | 6% | 10,921 | 10% | |
| Assets Available for Unsecured Creditors Before Causes of Action | 285,000 | 350,000 | - | | - | | Recoveries to Unsecured Creditors will be dependent on recoveries from Causes of Action. Estimated claim amount includes Prepetition Lenders Deficiency Claim |
| **Funding of the Student Trust** | | | | | | | |
| Student Refund Escrow | | | 4,300 | | 4,300 | | |
| **Assets Available for Student 507(a)(7) Deposit Claims, Student Claims and Government Education Claims** | TBD | TBD | 4,300 | | 4,300 | | |

* Claim estimates are based on the Debtors' Schedules of Liabilities, which may vary materially from actual claims filed.