## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | ) | Case No.15-10952 (KJC) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: August 26, 2015 at 1:00 p.m.** |
| | ) | |
| | ) | **Re: Docket Nos. 765, 766 & 768** |

## OBJECTION OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR THE PREPETITION LENDERS, TO UNITED STATES' MOTION TO EXTEND THE TERMINATION DATE IN THE CASH COLLATERAL ORDER

Bank of America, N.A., in its capacity as Administrative Agent for the Prepetition Lenders as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, and (III) Granting Related Relief* [D.I. 346] (the "Final Cash Collateral Order"),[2] hereby submits this objection (the "Objection") to the United States' Motion to Extend the Investigation Termination Date in the Cash Collateral Order [D.I. 765] (the "Motion to Extend"). In support of this Objection, the Administrative Agent respectfully represents as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Final Cash Collateral Order or, if not defined in the Final Cash Collateral Order, the meaning ascribed to such terms in the Plan (as defined below).

## PRELIMINARY STATEMENT

1.      By the Motion to Extend, the United States seeks, on behalf of the Department of Education, to extend the Investigation Termination Date under the Final Cash Collateral Order until the Effective Date of the Debtors' Plan (as defined below) based on newly-raised concerns that some unidentified portion of the funds in the Debtors' accounts may be held in trust for the United States under federal regulations and, as such, do not constitute property of the Debtors' Estates.  The Motion to Extend fails to establish sufficient cause to justify the relief requested therein, and should be denied for the following reasons.

2.      First, the United States' stated concerns focus on whether certain funds constitute property of the Debtors' Estates or are held in trust for the benefit of the United States.  The Final Cash Collateral Order only addresses liens against the Debtors' property.  If the United States is correct in its argument, funds held in trust are not the Debtors' property and there is no assertion of a lien on such funds by the Administrative Agent.  The United States has raised no challenge to the validity, extent, or enforceability of the Administrative Agent's prepetition liens on the Debtors' property, nor has the United States articulated any claims or causes of action that may be asserted against the Prepetition Secured Parties.  Thus, the United States' concerns do not implicate the lien/claim validation or release provisions of the Final Cash Collateral Order or the Investigation Termination Date governing Challenges thereto.

3.      Second, the United States has not offered any persuasive basis for extending the Investigation Termination Date.  The United States asserts that it needs more time because it has been too busy to sort through the Debtors' "complex" financial affairs, but offers no indication as to what, if any, steps it took to investigate its concerns prior to raising them now, at the eleventh hour.  The United States actively monitored the Debtors' financial affairs and cash management

system for nearly a year prior to the Petition Date, and thus should have substantial familiarity with the "complex" accounting processes involved and the information relevant to its trust arguments. Moreover, the United States has actively participated in proceedings throughout the Chapter 11 Cases and was provided with timely notice of all relevant pleadings filed therein, yet waited until two days before the Investigation Termination Date (more than 100 days after the Petition Date) to raise its concerns. Under the circumstances, the United States' alleged need for additional time based on the United States' own failure to seek a timely resolution of its concerns over the last three months – despite ample access to information and adequate notice of both the relevant issues and the fast-paced nature of these Chapter 11 Cases – does not constitute "cause" for an extension. The United States had every opportunity to raise its concerns on any number of occasions, including at the interim and final cash collateral hearings, and failed to do so.

4.     Third, the prejudice to the Prepetition Secured Parties, as well as to the Debtors and their Estates, weighs heavily against granting an extension of the Investigation Termination Date. The United States' requested extension would jeopardize the Plan by subjecting these parties to precisely the type of extended risk and expense that the Investigation Termination Date was designed to prevent, and would unfairly deprive the Prepetition Secured Parties of the benefit of their good-faith bargain under the Cash Collateral Orders.

5.     The United States will have an opportunity to raise its concerns with the Debtors in the appropriate time and context – the Confirmation Hearing – but should not be permitted to use those concerns now or post-confirmation as a basis for extending the Investigation Termination Date.

PAC 1200425v.1

## BACKGROUND

### I.     General Background

6.      On May 4, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.   The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

7.      On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Creditors' Committee").   Additionally, the U.S. Trustee appointed an official committee of student creditors (the "Student Committee") on May 15, 2015.

8.      Additional information on the Debtors' business and capital structure, as well as a description of the United States' regulatory oversight of the Debtors under the Operating Agreement and through the Monitor, is set forth in the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [D.I. 10] and the *Debtors' Omnibus Response to Objections to Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [D.I. 862] (the "Debtors' Omnibus Response").

### II.    The Cash Collateral Orders

9.      On May 4, 2015, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral; (II) Granting Adequate Protection to Prepetition Secured Parties; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 8] (the "Cash Collateral Motion".

10.     On May 5, 2015, this Court entered the *Interim Order Pursuant to 11 U.S.C. §§*

4

*105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [D.I. 24], which, among other things, authorized the Debtors' use of Cash Collateral pursuant to an interim budget attached as an exhibit thereto. In exchange, the Interim Cash Collateral Order granted certain adequate protection to the Prepetition Secured Parties and provided for certain stipulations and releases by the Debtors, which stipulations and releases would become binding as to third parties if not timely challenged by a specified date.

11.    On June 8, 2015, this Court entered the Final Cash Collateral Order (together with the Interim Cash Collateral Order, the "Cash Collateral Orders"), which, "on a final basis," authorized the Debtors' use of cash collateral, granted certain adequate protection to the Prepetition Secured Parties, and provided for certain stipulations and releases by the Debtors, which stipulations and releases would become binding as to third parties if not timely challenged by a specified date.

12.    Specifically, Paragraph F(iv) of the Final Cash Collateral Order provides for a stipulation by the Debtors that "all of the Debtors' cash and cash equivalents" (other than certain funds held in escrow pursuant to an agreement with the United States) constitutes Cash Collateral subject to the Administrative Agent's liens.

13.    Additionally, Paragraph 12 of the Final Cash Collateral Order provides, in relevant part:

> The Committees and any other non-debtor party-in-interest shall have through and including the earlier of (i) confirmation of a plan of liquidation for the Debtors or (ii) August 15, 2015 (the "**Investigation Termination Date**") to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Secured Obligations, or to assert any other claims or causes of action against the Prepetition Secured Parties. If either Committee or any non-debtor party-in-interest hereafter vested with authority by this Court, determines that there may be a challenge to the Prepetition Secured Parties by the Investigation Termination

Date, such party shall be permitted to file and prosecute an objection or claim related thereto (each, a "**Challenge**"), and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action (it being understood that a timely and properly filed motion for standing and authority to prosecute such Challenge with a copy of the proposed complaint attached shall satisfy this requirement).

Paragraph 12 further provides that if a Challenge is not filed on or before the Investigation Termination Date, the stipulations, claims and releases granted for the benefit of the Prepetition Secured Parties thereunder shall be binding on the Debtors, their Estates, and other parties-in-interest.

14.     On August 5, 2015, the Debtors filed the *Certification of Counsel Regarding Stipulation to Extend the Scheduled Termination Date under the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 507 (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Related Relief* [D.I. 706], which sought approval of a stipulation with the Administrative Agent to extend the operative Approved Budget through August 28, 2015 based on the timing of the Confirmation Hearing (the "Budget Extension Stipulation").  The Court approved the Budget Extension Stipulation in an order entered that same day [D.I. 708].

15.     On August 11, 2015, the Creditors' Committee filed the *Certification of Counsel Submitting Stipulation* and *Agreed Order Further Extending the Investigation Termination Date Relating to the Prepetition Liens and Prepetition Secured Obligations of the Prepetition Secured Parties and Other Claims* [D.I. 736], which sought approval of stipulation with the Administrative Agent providing for an extension of the Investigation Termination Date – solely as to the Creditors' Committee – until the Effective Date of the Plan, as may be further amended or modified with the consent of the Administrative Agent (the "Committee Extension

Stipulation," and together with the Budget Extension Stipulation, the "Cash Collateral Stipulations"). The Committee Extension Stipulation further provided that if the Plan was not confirmed or was confirmed but did not become effective, the Investigation Termination Date, and the right of a chapter 7 trustee to file and prosecute Challenges in the event the cases were converted to chapter 7 of the Bankruptcy Code as provided in Paragraph 12 of the Final Cash Collateral Order, would not be deemed to have expired or been otherwise waived.

16.    The United States did not file any objections or responsive pleadings with respect to the Cash Collateral Motion, the Cash Collateral Orders, or the Cash Collateral Stipulations prior to filing the Motion to Extend in mid-August.

**III.    The United States' Motion to Extend**

17.    On August 13, 2015, the United States first contacted counsel for the Administrative Agent seeking an extension of the Investigation Termination Date through the Effective Date as to the United States based on concerns that some unidentified portion of the cash in the Debtors' bank accounts may constitute funds held in trust for the United States under federal regulations (the "Trust Fund Objections").

18.    After the Administrative Agent declined to agree to the requested extension, the United States filed the Motion to Extend, along with a motion seeking to have the Motion to Extend heard on shortened notice on August 26, 2015 [D.I. 766] (the "Motion to Shorten"), on August 14, 2015.

19.    On August 14, 2015, the Court entered an order [D.I. 766] granting the United States' Motion to Shorten and setting the Motion to Extend to be heard on August 26, 2015, along with the Confirmation Hearing, with objections due by 4:00 p.m. (ET) on August 25, 2015.

IV.    **The United States' Confirmation Objection**

20.    On July 1, 2015, the Debtors filed the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, which was subsequently amended on July 24, 2015 and July 27, 2015 [D.I. 520], [D.I. 646] & [D.I. 655] (as so amended, the "Disclosure Statement" or the "Plan," as applicable).  As noted in the Disclosure Statement, the Plan is the product of extensive negotiations between, and is supported by, the Debtors, the Prepetition Secured Parties, and the Committees.

21.    On July 15, 2015, the United States filed an objection to the Disclosure Statement [D.I. 580] (the "Disclosure Statement Objection").  The United States raised numerous issues in that objection, including certain objections relating to the student refund reserve established under the Operating Agreement, but did not assert the Trust Fund Objections or demand additional time to investigate its rights.

22.    On July 27, 2015, the Court entered an order [D.I. 658] (the "Solicitation Procedures Order") approving the Disclosure Statement and procedures regarding the solicitation and tabulation of votes in connection with the Plan.  Pursuant to the Solicitation Procedures Order, the deadline for objections to confirmation of the Plan was set for August 21, 2015, and the hearing to consider confirmation of the Plan (the "Confirmation Hearing") was set for August 26, 2015.

23.    On August 21, 2015, the United States filed an objection to confirmation of the Plan [D.I. 819] (the "Confirmation Objection") wherein (among other objections not relevant here), the United States raised its Trust Fund Objections and its desire for additional time to investigate those objections.

24.    On August 25, 2015, the Debtors filed the Debtors' Omnibus Response, joined by

8

the Creditors' Committee, *see* [D.I. 872], which, among other things, responded to the Confirmation Objection.    Additionally, the Student Committee filed an omnibus reply responding to, among other things, the United States' Confirmation Objection. *See* [D.I. 874].

**V.    The United States' Active Participation in the Chapter 11 Cases**

25.    The United States filed a notice of appearance on May 11, 2015, *see* [D.I. 82], and was sent notice throughout the Chapter 11 Cases, including, without limitation:  notice of the filing of the Petitions and first-day hearings, *see* [D.I. 63]; notice of the Cash Collateral Motion and the Interim Cash Collateral Order, *see* [D.I. 78]; notice of the Final Cash Collateral Order, *see* [D.I. 381], notice of the Disclosure Statement and Plan (as defined below), *see* [D.I. 533], [D.I. 644], [D.I. 670], [D.I. 690]; notice of the Confirmation Hearing (as defined below), *see* [D.I. 712]; notice of the Budget Extension Stipulation, *see* [D.I. 758]; and notice of the Committee Extension Stipulation, *see* [D.I. 740].

26.    Additionally, counsel for the Monitor appointed by the United States in connection with the Operating Agreement participated in the May 5, 2015 hearing on the Cash Collateral Motion and likewise filed a notice of appearance and request for notice on May 13, 2015. *See* [D.I. 26] (hearing sign-in sheet), [D.I. 99] (notice of appearance).

27.    Although the United States has filed various responsive pleadings in addition to the Disclosure Statement Objection and the Confirmation Objection, *see* [D.I. 461], [D.I. 707], at no time prior to August 13, 2015, did the United States raise the Trust Fund Issues with the Administrative Agent or, upon information and belief, with the Debtors.

**OBJECTION**

**I.    General Standard**

28.    Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

PAC 1200425v.1

Rules") governs the extension of deadlines and provides, in relevant part, that "when an act is required or allowed to be done at or within a specified period . . . , the court for cause shown may at any time in its discretion . . . order the period enlarged if the request therefor is made before the expiration of the period originally prescribed . . ." Fed. R. Bankr. P. 9006(b)(1). As the movant, the United States bears the burden of demonstrating the requisite "cause" to extend the Investigation Termination Date. *See, e.g., In re Bajan Resorts, Inc.*, 71 B.R. 52, 54 (Bankr. D. Utah 1987) ("[B]y the clear construction of [Bankruptcy Rule 9006(b)(1)] the movant must sustain a threshold burden of demonstrating sufficient 'cause'" to extend the applicable period).

29.     The Bankruptcy Rules do not define "cause," but Bankruptcy Rule 1001 provides that the Bankruptcy Rules are to be used "to secure the just, speedy, and inexpensive determination of every case and proceeding." Fed. R. Bankr. P. 1001; *see also* 10 *Collier on Bankr.* ¶ 9006.06[2] (Alan N. Resnick & Henry J. Sommers, eds., 16th ed.) ("The requirement of cause should be taken seriously and proceedings not delayed without reason.").

30.     As set forth below, the Motion fails to demonstrative the requisite "cause" justifying extension of the Investigation Termination Date because (i) the United States' stated concerns do not legitimately implicate the Final Collateral Order or the Investigation Date thereunder; (ii) any urgency is merely the product of the United States' own failure to act diligently; and (iii) the requested extension represents an inappropriate attempt to circumvent the confirmation proceedings, infuse uncertainty into the process and unduly delay closure for all parties.

## II.     The Requested Extension Is Unwarranted

### A.     The United States' Trust Fund Objections Do Not Implicate the Final Cash Collateral Order

31.     The Trust Fund Objections do not legitimately implicate the Final Cash Collateral

Order or the Investigation Termination Date thereunder, and thus do not constitute "cause" to extend the Investigation Termination Date.

32.    As described in its Motion to Extend, the United States disputes whether some portion of the cash in the Debtors' accounts is, in fact, property of the Debtors or their Estates. However, the United States has not raised any dispute as to the validity, perfection and enforceability of the Administrative Agent's liens on property belonging to the Debtors or their Estates, nor has the United States articulated, much less asserted, any claims against or objections to claims of the Prepetition Secured Parties. As would be expected, the Final Cash Collateral Order provides liens in favor of the Administrative Agent only on property of the Debtors' Estates. There is thus no need to extend the Investigation Termination Date because the Trust Fund Objections, whether or not valid, do not give rise to a Challenge under the Final Cash Collateral Order.

33.    Rather, the Trust Fund Objections are, if anything, a confirmation objection, and the United States has separately asserted them as such. Granting the United States an extension of the Investigation Termination Date on the basis of the Trust Fund Objections until the Effective Date would effectively permit a confirmation objection disguised as a Challenge under the Final Cash Collateral Order to ride through the confirmation process. Such relief is neither necessary nor appropriate under the circumstances.

**B.    The United States Fails to Demonstrate "Cause" for an Extension**

34.    Even if the Investigation Termination Date were implicated (which it is not), the United States has not demonstrated any persuasive basis for an extension.

35.    As noted above, the United States waited until just two days before the expiration of the current Investigation Date – more than three months into the Debtors' bankruptcy cases – before raising its vague and unsupported concerns for the first time with the Administrative

11

Agent and, upon information and belief, the Debtors. To the extent the United States now complains about the difficulty of tracing the Debtors' accounting transactions, this difficulty is in large part a product of the United States' own failure to timely raise its concerns.

36.    As noted in the Debtors' Omnibus Response, the United States was engaged in extensive prepetition oversight of the Debtors' financial affairs under the Operating Agreement, and had the benefit of a federally-appointed Monitor whose principal duty was to oversee movement and use of Title IV funds by the Debtors for nearly a year prior the Petition Date. *See* Debtors' Omnibus Resp. ¶ 24; *id.* Ex. C (Operating Agreement). Accordingly, the United States and/or the Monitor (whose counsel appeared at the Debtors' first-day hearings) should have substantial familiarity with both the Debtors' cash management system and the regulatory issues associated with the Debtors' use of Title IV funds that form the basis of the Trust Fund Objections. If the United States believed its significant existing resources were insufficient, it could have and should have raised the issue sooner.

37.    The United States has been actively involved in the bankruptcy proceedings since the Petition Date and received notice and opportunity to be heard with respect to the Cash Collateral Motion, the entry of the Final Cash Collateral Order, and all other key pleadings (including, without limitation, the Debtors' solicitation materials), yet the United States' pleadings contain no indication of what efforts, if any, the United States made to investigate the Trust Fund Objections, nor any persuasive justification for its failure to bring them to the attention of the Debtors or Administrative Agent during the months since the filing of the Cash Collateral Motion.

38.    Although the United States claims that its personnel have been preoccupied with other bankruptcy-related matters, it does not explain why the other interested parties who have

12

been diligently working to bring these cases to a successful conclusion should pay the price.  The strain of having to address multiple complex issues within a limited timeframe is hardly unique to the United States, which was, if anything, better-positioned to foresee and address its bankruptcy-related issues than most creditors.

39.    The issues underlying the Trust Fund Objections are not new, and the United States' failure to diligently investigate them after due notice does not constitute cause for an extension of the Investigation Termination Date.

### C.    The Requested Extension Would Unfairly Prejudice the Prepetition Secured Parties, the Debtors, Their Estates and Creditors

40.    The relief requested in the United States' Motion to Extend would also unfairly prejudice the Administrative Agent and the other Prepetition Secured Parties and would jeopardize the Plan by needlessly extending the very risk of litigation and expense that the Investigation Termination Date was designed to avoid.

41.    The Investigation Termination Date is the product of good faith, arm's-length negotiations, and carefully balanced the need for finality and certainty against the need to allow adequate investigation in a case where funding and, consequently, the time and opportunity to confirm and consummate a plan are extremely limited.  These exigencies have been repeatedly emphasized in the bankruptcy proceedings and should come as no surprise to the United States.

42.    Granting the United States an extension of the Investigation Termination Date would penalize the Prepetition Secured Parties, as well as all of the other creditors and parties-in-interest (including the very students the United States is meant to protect) who would be forced to bear the risk and expense associated with the prolonged uncertainty of an extended investigation period, for the United States' delay in asserting its alleged rights.

43.    Although the United States suggests that its requested extension is the same as

13

that granted under the Committee Extension Stipulation, the two extensions have dramatically different implications. The Administrative Agent agreed to extend the Investigation Termination Date as to the Creditors' Committee so that the Creditors' Committee, as a fiduciary for creditors, could ensure that any potential Challenges were preserved in the event the Plan was not successfully consummated. However, the Creditors' Committee has already determined to support the Plan, including the releases and treatment granted to the Prepetition Secured Parties thereunder, and, consequently, the Creditors' Committee's extension does not impose the same risk and uncertainty as the extension requested by the United States, a third party that is actively opposing confirmation of the Plan.

44.    To the extent the United States apparently also seeks to ensure that the Investigation Termination Date is not deemed waived as to a chapter 7 trustee, *see* Mot. to Extend at 2, this protection is already provided under the Committee Extension Stipulation.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Administrative Agent respectfully requests that this Court enter an order denying the Motion to Extend and granting such other and further relief as this Court deems just and proper. The Administrative Agent does not waive (and expressly reserves) all of its rights and remedies under the Final Cash Collateral Order.

PAC 1200425v.1

Dated: August 25, 2015
      Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

Jeremy W. Ryan (No. 4057)
Etta R. Mayers (No. 4164)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

-and-

**SIDLEY AUSTIN LLP**
Jennifer C. Hagle
Anna Gumport
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

*Counsel for Bank of America, N.A.*

15