1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF DELAWARE

4  Case No. 15-10952 (KJC)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  CORINTHIAN COLLEGES, INC., ET AL.,

9

10            Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            824 North Market Street

16            Wilmington, Delaware

17

18            August 26, 2015

19            2:09 PM

20

21  B E F O R E:

22  HON. KEVIN J. CAREY

23  U.S. BANKRUPTCY JUDGE

24

25  ECR OPERATOR:  AL LUGANO

1

2  BB&S Development, LLC's Motion for Relief from the Automatic

3  Stay to Permit BB&S to Immediately Apply Debtors' Security

4  Deposit to its Claim [Docket No. 710 - filed August 5, 2015]

5

6  United States' Motion to Extend the Investigation Termination

7  Date in the Cash Collateral Order [Docket No. 765 - filed

8  August 14, 2015]

9

10  Debtors' Motion to Approve Settlement and Mutual Release

11  Agreement Between Debtors and Zenith Education Group, Inc.

12  [Docket No. 774 - filed August 18, 2015]

13

14  Application for Entry of an Order Pursuant to Bankruptcy Code

15  Sections 328(a) and 1103(a) Approving the Employment and

16  Retention of Willkie Farr & Gallagher LLP as Special Insurance

17  Counsel to the Official Committee of Unsecured Creditors, Nunc

18  Pro Tunc to August 10, 2015 [Docket No. 791 - filed

19  August 20, 2015]

20

21  Motion of Commonwealth of Massachusetts, People of the State of

22  California, and State of Wisconsin for Determination that the

23  Automatic Stay Provision Does Not Apply to the States' Actions

24  Against Debtors[Docket No. 578 - filed July 15, 2015]

25

1

2   Motion of Aerotek, Inc. for an Order Under Rule 2004 of the

3   Federal Rules of Bankruptcy Procedures Authorizing Limited

4   Discovery from Corinthian Colleges, Inc. [Docket No. 626 -

5   filed July 22, 2015]

6

7   Motion of California Bureau for Private Postsecondary Education

8   for Determination that the Automatic Stay Provisions Does Not

9   Apply to Its Disciplinary Action [Docket No. 689 - filed July

10   31, 2015]

11

12   Debtors' Limited Response and Request to Continue Motions for

13   Determination that Automatic Stay Does Not Apply [Docket No.

14   783 - filed August 19, 2015]

15

16   Debtors' Second Amended and Modified Combined Disclosure

17   Statement and Chapter 11 Plan of Liquidation [Docket No. 655 -

18   filed July 27, 2015]

19

20

21

22

23

24

25   Transcribed by:  Sharona Shapiro

4

1

2  A P P E A R A N C E S :

3  RICHARDS, LAYTON & FINGER, P.A.

4       Attorneys for Debtors

5  BY:   MARK D. COLLINS, ESQ.

6       AMANDA R. STEELE, ESQ.

7       Michael J. MERCHANT, ESQ.

8       MARCOS A. RAMOS, ESQ.

9

10

11  UNITED STATES DEPARTMENT OF JUSTICE

12       Office of the United States Trustee

13  BY:   TIMOTHY J. FOX, JR., ESQ.

14       RICHARD L. SCHEPACARTER, ESQ.

15

16

17  UNITED STATES DEPARTMENT OF JUSTICE

18       Department of Education

19  BY:   JOHN R. KRESSE, ESQ.

20       MICHAEL SEW HOY, ESQ.

21       DANIELLE PHAM, ESQ.

22

23

24

25

1

2  CALIFORNIA DEPARTMENT OF JUSTICE

3       State of California

4  BY:   BERNARD ARDAVAN ESKANDARI, ESQ.

5

6

7  WILLKIE FARR & GALLAGHER LLP

8       Attorneys for Official Committee of Unsecured Creditors

9  BY:   CHRISTOPHER S. KOENIG, ESQ.

10       MARC ABRAMS, ESQ. (TELEPHONICALLY)

11

12

13  PUBLIC COUNSEL OPPORTUNITY UNDER LAW

14       Attorneys for Committee of Student Creditors

15  BY:   ANNE RICHARDSON, ESQ.

16

17

18  BROWN RUDNICK LLP

19       Attorneys for Official Committee of Unsecured Creditors

20  BY:   H. JEFFREY SCHWARTZ, ESQ.

21

22

23

24

25

1

2    OUTTEN & GOLDEN LLP

3         Attorneys for Reynolds - WARN Act claimant

4    BY:   JACK A. RAISNER, ESQ.

5

6

7    CONNOLLY GALLAGHER LLP

8         Attorneys for BRE/OC Griffin, L.L.C.

9    BY:   KAREN C. BIFFERATO, ESQ.

10

11

12   POLSINELLI PC

13        Attorneys for the Student Committee

14   BY:   CHRISTOPHER A. WARD, ESQ.

15        SHANTI M. KATONA, ESQ.

16

17

18   POTTER ANDERSON & CORROON, LLP

19        Attorneys for Bank of America

20   BY:   JEREMY RYAN, ESQ.

21

22

23   SIDLEY AUSTIN LLP

24        Attorneys for Bank of America

25   BY:   JENNIFER C. HAGLE, ESQ.

1

2  ASHBY & GEDDES, P.A.

3         Attorneys for Campus Student Funding, LLC

4  BY:   LEIGH-ANNE M. RAPORT, ESQ.

5

6

7  THE ROSNER LAW GROUP LLC

8         Attorneys for Official Committee of Unsecured Creditors

9         Creditors

10 BY:   JULIA KLEIN, ESQ.

11

12

13 ROBINS KAPLAN LLP

14         Attorneys for the Student Committee

15 BY:   SCOTT F. GAUTIER, ESQ.

16         LORIE A. BALL, ESQ.

17

18

19 DRINKER BIDDLE & REATH LLP

20         Attorneys for Zenith Education Group, Inc.

21 BY:   HOWARD A. COHEN, ESQ.

22         MICHAEL P. POMPEO, ESQ.

23

24

25

1

2

3   LOIZIDES, P.A.

4       Attorneys for WARN claimants

5   BY:   CHRIS LOIZIDES, ESQ.

6

7

8   STEVENS & LEE P.C.

9   BY:   JOSEPH H. HUSTON, JR. (TELEPHONICALLY)

10

11

12   SULLIVAN HAZELTINE ALLINSON LLC

13       Attorneys for Aerotek, Inc.

14   BY:   WILLIAM A. HAZELTINE, ESQ.

15

16

17   OFFICE OF THE ATTORNEY GENERAL

18       Commonwealth of Massachusetts

19   BY:   PETER LEIGHT, ASSISTANT ATTORNEY GENERAL

20

21

22   OFFICE OF THE ATTORNEY GENERAL

23       California Bureau for Private Post Secondary Education

24   CARTER OTT, DEPUTY ATTORNEY GENERAL (TELEPHONICALLY)

25

1

2  OFFICE OF THE ATTORNEY GENERAL

3        Texas Controller of Public Accounts

4  BY:   COURTNEY HULL, ASSISTANT ATTORNEY GENERAL

5        (TELEPHONICALLY)

6

7

8  KATTEN MUCHIN ROSENMAN LLP

9        Attorneys for Watt Management Company

10 BY:   DUSTIN P. BRANCH, ESQ. (Telephonically)

11

12

13 PUBLIC COUNSEL

14        Attorneys for the Student Committee

15 BY:   ANNE RICHARDSON, ESQ. (TELEPHONICALLY)

16

17

18 ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS

19        Attorneys for BRE/OC Griffin

20 BY:   IVAN M. GOLD, ESQ. (TELEPHONICALLY)

21

22

23

24

25

1

2   ALSO PRESENT (TELEPHONICALLY):

3           CAROLYN G. WADE, Oregon Department of Justice

4           GLENN MELCHER, The Consumer Financial Protection Bureau

5           CATHERINE NOWNES-WHITAKER, Omni Management Group

6           GEOFFREY L. BERMAN, DSI Domestic Violence

7             Specialists, Inc.

8           OWEN SONIK, Perdue Brandon Fielder Collins and Mott, LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Good afternoon, everyone.

4          UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

5          MR. COLLINS:  Good afternoon, Your Honor.  For the

6  record, Mark Collins of Richards, Layton & Finger, on behalf of

7  the debtors.

8          THE COURT:  Mr. Collins, I understand that the parties

9  have asked for additional time, in addition to the additional

10  time they already requested --

11          MR. COLLINS:  Yes, Your Honor.

12          THE COURT:  -- to work through an issue, which,

13  frankly, you need not describe to me, and I will gladly give

14  you the time.  But it's now 2 o'clock in the afternoon.  I know

15  some of the objections may have been resolved.  I don't know

16  what remains, and how much time you would expect to consume

17  once we get started, which I hope we will do at some point

18  today.

19          MR. COLLINS:  Right.

20          THE COURT:  Can you shed any light on that?

21          MR. COLLINS:  Yes, Your Honor.  We have been working

22  through one outstanding issue.  We are prepared to move forward

23  now and put our case on.  And we'll, at the end, ask Your Honor

24  to confirm our plan.  But we are ready to proceed.

25          THE COURT:  Okay.  So you now do -- bless you.

1       MR. COLLINS:  Bless you.

2       THE COURT:  You now do not want an hour?

3       MR. COLLINS:  No, Your Honor, I don't think an hour

4  would do much other than waste another hour.

5       THE COURT:  All right.  Let's get started then.

6       MR. COLLINS:  Thank you, Your Honor.  Turning to

7  today's agenda, we would like to go, for efficiency's sake, a

8  little bit out of order in the agenda.  And with that, I would

9  like to start with agenda item number 8, which is the

10  committee's motion to retain Willkie Farr.  And if that's

11  acceptable to Your Honor, I'll turn the podium over to

12  committee counsel.

13       THE COURT:  It is.

14       MR. COLLINS:  Thank you.

15       MS. KLEIN:  Good afternoon, Your Honor.  For the

16  record, Julia Klein of The Rosner Law Group, appearing on

17  behalf of the committee.

18       We filed a motion to have Willkie Farr & Gallagher

19  retained as special insurance counsel to the committee.  And

20  here with me today is Mr. Chris Koenig, of the Willkie Farr

21  firm, and Mr. Abrams is on the phone.  So I would turn the

22  podium over, if Your Honor has any questions.

23       THE COURT:  I don't have any questions.  I'll note

24  this came to hearing on shortened notice.  The objection

25  deadline has passed as of a little over an hour ago.

1        Let me ask if anyone else wishes to be heard in

2   connection with this application.

3        MS. HAGLE:  Good morning, Your Honor -- or good

4   afternoon, Your Honor.  Jennifer Hagle, Sidley Austin, on

5   behalf of Bank of America as administrative agent.

6        We just wish to clarify that our understanding is that

7   any fees that Willkie Farr incurs is going to be covered under

8   the existing line item for the committee, and that it will not

9   result in any scheduled increase in fees under the cash

10  collateral budget.

11       MR. FOX:  Good afternoon, Your Honor.  Tim Fox on

12  behalf of the United States Trustee.

13       I rise briefly just to indicate that we were informed

14  of this motion's filing on shortened notice, in advance of it

15  being filed, and were able to review it and have worked out any

16  issues we had with the application.  We understand there are

17  extraordinary circumstances for this retention, and would not

18  approve things on such an expedited basis in other cases, but

19  under the facts and circumstances here, we're okay with the

20  retention.

21       THE COURT:  All right.  Thank you.

22       MR. SCHWARTZ:  Good morning, Your Honor.  Jeffrey

23  Schwartz, Brown Rudnick, on behalf of the committee.

24       Yes, I want to thank the United States Trustee's

25  office for their positive collaboration in this matter.  And

1    yes, I do confirm that -- Ms. Hagle's statement that the

2    Willkie fees will come under the line item for the committee

3    professionals.  Thank you so much.

4              THE COURT:  Thank you.

5              Does anyone else wish to be heard?

6              I hear no further response.  Do you have a form of

7    order for me?

8              MR. SCHWARTZ:  I would ask the Court to excuse Mr.

9    Koenig from Willkie Farr.

10             THE COURT:  And miss the exciting conclusion of

11   today's proceedings?

12             MR. ABRAMS:  Mr. Abrams as well, Your Honor.

13             THE COURT:  You are free to go.  Thank you.

14             MR. KOENIG:  Thank you, Your Honor.

15             MR. ABRAMS:  Thank you.

16             THE COURT:  I need a one-sided order.  You can submit

17   it later.

18             MR. MERCHANT:  Good afternoon, Your Honor.  Mike

19   Merchant of Richards, Layton & Finger, on behalf of the

20   debtors.

21             If it's acceptable to the Court, we'd like to next

22   address agenda item number 7, which is the proposed -- it's the

23   9019 motion relating to a proposed settlement with Zenith.

24             THE COURT:  All right.

25             THE MERCHANT:  The proposed settlement resolves

1   certain claims asserted by Zenith under the APA agreement, and

2   provides for a release of certain amounts under the escrow

3   fund.

4        There have been no objections to the relief requested

5   in the motion or to the settlement, but we have been having a

6   number of conversations with the committee and Zenith regarding

7   the scope of the Zenith release with respect to the settlement

8   agreement, and we do have a revised form of order reflecting

9   some changes that have been made, if I can approach.

10        THE COURT:  You may.  Thank you.

11        MR. MERCHANT:  Your Honor, the changes that have been

12   made change the defined term "Zenith parties" under the APA.

13   In addition, there's clarification in here that to the extent

14   that any of the releases -- to the extent -- essentially, to

15   the extent any Zenith employees were officers and directors of

16   the debtors, at some point, they are only being released in

17   their capacity with Zenith; they're not being released in

18   whatever capacity they were employed with at the debtors.

19        In addition to that, Your Honor, I believe counsel for

20   Zenith is in the courtroom, and the committee has asked that

21   they make certain clarifying statements on the record regarding

22   the releases.

23        THE COURT:  All right.

24        MR. POMPEO:  Good afternoon, Your Honor.  Michael

25   Pompeo, Drinker Biddle & Reath, here on behalf of Zenith

1   Education Group.

2        Your Honor, there was a debate about what the scope of

3   the releases -- what they cover and who they cover.  We

4   clarified, in the order that was handed up to the Court, the

5   specific Zenith entities that would be covered by the releases.

6   The intent is that all claims are being released against them,

7   with the exception of any claims that may exist under what's

8   called the transitional services agreement, or TSA.  So those

9   claims will survive.

10        I am not aware of any other claims asserted against

11   those Zenith entities, other than what has arisen in this

12   court, under this case or under the asset purchase agreement.

13   And that's my presentation to the Court.

14        THE COURT:  All right.  Thank you.

15        Does anyone else wish to be heard?

16        MR. SCHWARTZ:  Good afternoon again, Your Honor.

17   Briefly, Jeffrey Schwartz, Brown Rudnick, on behalf of the

18   committee.

19        The point of this negotiation with Zenith was that, as

20   Your Honor knows, an exhibit to the plan identifies the

21   retained causes of action that will go into the distribution

22   trust.  The concern, on the part of the committee, was that

23   with the original very broad language releasing Zenith and its

24   officers, directors, employees in the world, including future

25   ones, that it was clear it created issues of risk, of

1    impairment, of very valuable -- what we hope to be very

2    valuable assets claims that are flowing to the trust.

3           So what we believe has now been achieved is that

4    Zenith has advised the committee that it is not aware of there

5    being any claims on that retained causes-of-action exhibit that

6    are being released under this Zenith arrangement.  Clearly, the

7    claims against Zenith, and so forth, they should be released.

8    And so that is the purpose for the now newer release, and we

9    appreciate that cooperation in achieving that.  Thank you so

10   much, Your Honor.

11          THE COURT:  Thank you.

12          Does anyone else wish to be heard in connection with

13   this motion?

14          I hear no further response.  I don't have any

15   questions, and I'm prepared to grant the relief that's been

16   requested.

17          MR. MERCHANT:  Thank you, Your Honor.

18          THE COURT:  That order has been signed.

19          MR. COLLINS:  Your Honor, the last item that we would

20   like to take up,

21    before turning to confirmation, is agenda item number 10, and

22   that is the motion of Aerotek, under Bankruptcy Rule 2004.  And

23   I'll turn the podium over to the movant.

24          MR. HAZELTINE:  Good afternoon, Your Honor.  William

25   Hazeltine on behalf of Aerotek.

1        This motion relates to a settlement agreement that

2    Aerotek and Corinthian entered into in December of 2014,

3    settling litigation for unpaid accounts receivable.  And the

4    resolution -- the unpaid accounts receivables total just over

5    810,000 dollars.  The settlement was that Aerotek would receive

6    350,000 dollars, and Corinthian, in connection with that

7    settlement agreement, represented and warranted that the

8    payments would be -- the obligation would be assumed by Zenith

9    in connection with the asset purchase agreement that was, I

10   think, dated November of 2014, but I understand closed in

11   February of 2015.

12       THE COURT:  And then alas, what happened?  No payment

13   was forthcoming.

14       MR. HAZELTINE:  Surprise.  Your Honor, and the

15   settlement agreement also provides that we can declare the

16   agreement void after 120 days if we haven't received payment.

17   And we have not declared the agreement void, as of yet, but

18   depending on how things go, we certainly reserve the right to

19   do so.

20       We had originally requested, essentially, all of the

21   documents connected with the APA.  We do have the APA and

22   amendments that are --

23       THE COURT:  Including the schedules, right?

24       MR. HAZELTINE:  We want -- we have one schedule, and

25   we're asking for -- what we're asking for, essentially, is the

1   closing binder.  And we had requested communications, including

2   e-mails.  We're not pressing that at this time, although we're

3   not waiving the right to do so.  But we do think -- I mean,

4   we're kind of in a quandary because the debtor had taken the

5   position, as I understand it, that the obligation was assumed

6   by Zenith.  They certainly represented and warranted that it

7   was.  And now Zenith is taking the position that it's not, and

8   they're pointing to a specific provision in an amendment to the

9   APA.  But we certainly think that, given the uncertainty and

10  confusion here, we're entitled to review the entire APA and not

11  rely on any representations that we've gotten all of the

12  relevant provisions of the APA.

13          Your Honor, I can address the arguments as to whether

14  my client is a creditor or a party-in-interest or has a right

15  to seek relief under Rule 2004, if Your Honor would like.  I

16  mean, I think my client is clearly a creditor of the debtors,

17  and has a claim, right now, for 350,000 dollars, that could

18  increase to 810,000 dollars.  We have an interest in -- so

19  we're not just a -- while we may be a creditor of Zenith, which

20  still needs to be determined, we're certainly at least a

21  contingent creditor of the debtor.

22          THE COURT:  Well, have you filed a proof of claim?

23          MR. HAZELTINE:  We have.

24          THE COURT:  Okay.  Has it been objected to?

25          MR. HAZELTINE:  It has not.

1          THE COURT:  Okay.  And if it's objected to, wouldn't

2    you be able to ask for the same things you've asked for here?

3          MR. HAZELTINE:  Well, I mean, the issue is that we

4    filed the proof of claim in the amount of 350,000 dollars with

5    the right to -- and preserved our right to declare the

6    settlement agreement void and amend a proof of claim to assert

7    the 810,000 dollars in the claim.  So that would put us in the

8    quandary of -- I don't think that the claim is going to be

9    objected to at 350,000 dollars, but if we assert the

10   810,000-dollar claim, then we would have had to first void the

11   settlement agreement, which we certainly don't want to do

12   because that could be interpreted as giving up any right of

13   payment we may have against Zenith.  So we're in the position

14   where we can't really wait until an objection to a proof of

15   claim that might never come.

16         THE COURT:  So the debtor says the point of the motion

17   really is to get discovery, not really from the debtor but from

18   a third party.  How do you respond to that?

19         MR. HAZELTINE:  Well, it's an attempt to get discovery

20   from the debtor that the third party refuses -- has refused to

21   provide to us and that is also in the debtors' possession.  And

22   right now there is not a proceeding where Aerotek could seek

23   discovery against Zenith.  And Aerotek certainly does not want

24   to file a complaint against Zenith without doing due diligence

25   to confirm that it has a claim and a right to file a complaint.

1      THE COURT:  But that's -- and that's the point of the
2  debtors' argument, that you're not seeking this information to
3  assert a claim against the debtor; you're seeking this
4  information in connection with whatever claim you have against
5  a third party.

6      MR. HAZELTINE:  But that's not true, Your Honor,
7  because we're seeking the information, in part, to determine
8  whether we have a 350,000-dollar claim or an 810,000-dollar
9  claim against the debtor.  So it does directly affect the
10  estate.  It'll affect the distribution to unsecured creditors,
11  probably in some minimal amount, but it does affect the estate.
12  At this point in time, given that we've limited the request to
13  the APA, it's not going to be any burden at all to the debtor
14  to provide that information, other than directing a
15  confidentiality agreement, which we have agreed to enter into.

16      So Your Honor, I understand now that the point really
17  is confidentiality, and Zenith doesn't want us to have the
18  agreement.  So one has to wonder why Zenith doesn't want us to
19  have the agreement.  And I think we have a right to get it from
20  the debtor, under Rule 2004, and it's not going to be a burden
21  to the debtor, and so I think, with the limited relief that
22  we're now requesting, that we should be entitled to get the
23  information.

24      THE COURT:  Thank you.  I'll hear from the debtor.
25      MR. RAMOS:  Good afternoon, Your Honor.  Marcos Ramos,

1    Richards, Layton & Finger, on behalf of the debtor.

2            Your Honor, I'll try to be brief.  You obviously have

3    read our papers, and I think we've put into the papers the

4    concerns that the debtors have with regard to the request.

5            We certainly appreciate that Aerotek now is limiting

6    its request to the APA and schedules to the APA.  Obviously,

7    before, really, yesterday and today, that was not the case; it

8    was a much broader request that was being made.

9            As the debtors indicated in their filing, Aerotek

10   currently is in and has a copy of the APA.  My understanding,

11   it has, as well, copies of the amendments to the APA.  And the

12   debtors, in the attempt to resolve Aerotek's motion, did

13   provide it one schedule, that was in connection with the APA,

14   as it was originally executed in November of 2014.  And that

15   was the schedule, Your Honor, that we had found that had

16   identified Aerotek.  So we gave that to Aerotek as well.

17           Obviously, there are amendments to the APA, and under

18   the fourth amendment to the APA, the schedule that we provided

19   to Aerotek is deleted from the APA.  Aerotek knows that.

20   Perhaps our filing with the Court was not as clear on that

21   point, but I wanted to make sure that Your Honor was clear

22   about that and the record was clear about that as well.

23           Your Honor, my understanding, there are

24   confidentiality concerns with regards to the schedules.  We're

25   not aware of another schedule that identifies Aerotek, other

 1  than the one that we provided to Aerotek.  And certainly,

 2  again, we understand there are confidentiality issues with

 3  regards to the provision of schedules that include a lot of

 4  information, none of which, we understand, relates to Aerotek

 5  or its claim.

 6        As was discussed briefly by counsel for Aerotek, they

 7  have a claim against the estate.  It's not been objected to.

 8  They filed a proof of claim; it's not been objected to.  And

 9  certainly the parameters of its potential claim are known,

10  whether it be the 350,000-dollar amount or the amount that's

11  pled by Aerotek under the proof of claim for invoices and

12  amounts unpaid.

13        But for the other reasons identified in our motion,

14  Your Honor, we didn't feel that the request for 2004 discovery

15  from the debtors, as it was framed by Aerotek under its motion,

16  was proper.  And certainly we felt that the burden and expense

17  should not fall on the debtors with regards to the compliance

18  with the discovery requests.

19        And for all of those reasons, we pray for the motion

20  to be denied.

21        THE COURT:  Well, what would be the burden involved in

22  providing the APA, all schedules and all amendments to the APA?

23        MR. RAMOS:  Your Honor, certainly less than what was

24  prayed for under the motion.  But again, I understand there are

25  confidentiality issues, and I understand that Zenith believes

1  that there are confidentiality issues as well.  So there would

2  need to be discussions regarding an appropriate and acceptable

3  form of confidentiality agreement, to the extent that we

4  weren't allowed to redact non-Aerotek-related information.  But

5  certainly if it was limited to those documents, it's

6  substantially less than Zenith -- excuse me, Aerotek moved for.

7          But again, Your Honor, I think that the issue there is

8  confidentiality on those documents.  But the debtor does have

9  its other concerns, as expressed under its motion, with regards

10  to the propriety of the relief.

11          THE COURT:  Thank you.

12          MR. RAMOS:  Thank you.

13          MR. HAZELTINE:  Your Honor, William Hazeltine for

14  Aerotek again.

15          Your Honor, I really think, at this point, it boils

16  down to a confidentiality issue.

17          THE COURT:  I agree.

18          MR. HAZELTINE:  Thank you, Your Honor.

19          THE COURT:  How about that?

20          Subject to entering into the appropriate

21  confidentiality agreement, I will order that the APA and all

22  schedules and all amendments are to be produced.

23          MR. HAZELTINE:  Thank you, Your Honor.

24          THE COURT:  I'd like counsel to confer and submit the

25  appropriate form of order under certification.

CORINTHIAN COLLEGES, INC., ET AL.

1       MR. HAZELTINE:  Thank you, Your Honor.  And just to
2   reiterate, not -- I don't know exactly the mechanics of this,
3   but we're not waiving our right to seek the additional
4   discovery, if necessary, but we are -- this will resolve our
5   concerns for now.  Thank you, Your Honor.
6       THE COURT:  Very well.
7       MR. COLLINS:  Your Honor, turning back to the agenda,
8   Mark Collins, again, for the record.
9       If we could -- I think at this point it makes sense to
10  turn to plan confirmation.  The remaining items on the agenda
11  really might very well be resolved through confirmation of the
12  debtors' plan, if the debtor so confirms the plan.  And that
13  certainly applies with respect to the various Attorney
14  Generals' motion for an order confirming that those actions are
15  not stayed by the automatic stay, because as we noted in our
16  response, under the terms of the plan itself, the automatic
17  stay would go away on the effective date, and the debtors will
18  not be a party to the plan injunction.  And so we think it
19  makes sense to put those matters after confirmation.
20      Similarly, Your Honor, the United States, through the
21  Department of Education, has filed a motion to extend the
22  investigation period.  Much of the justifications, or really
23  the opposition to that motion to extend, will come up in
24  confirmation regarding its allegation that there are certain
25  trust funds, which we believe has been raised very late.  And

1  we don't believe they have a -- they don't have a case to put

2  on today regarding that.  And we think that that also may

3  educate the Court on the issues that would be involved in that

4  agenda item number 6.

5         THE COURT:  I agree that the issues are intertwined.

6  I do agree we should proceed with confirmation.  However, I'll

7  assure the other movants, apart from confirmation, I will not

8  rule on confirmation until I've heard arguments on the other

9  motions or decided, in connection with the debtors' request,

10  that arguments on those motions be continued to another time.

11         MR. COLLINS:  Thank you, Your Honor.

12         THE COURT:  So let's proceed.  I'd like, before you

13  begin, Mr. Collins, to just get an idea from everybody of what

14  their presentations will consist.

15         MR. COLLINS:  Your Honor, we will be relying upon the

16  affidavit of Mr. Nolan to support confirmation of standards

17  under the Bankruptcy Code, as well as legal argument.  I think

18  a number of the outstanding objections really just go to legal

19  argument and not really factual issues.  So I think our case

20  will be fairly straightforward, and we'll rely upon argument of

21  counsel, along with showing a lot of the changes we have made

22  to the plan, as well as the confirmation order, to resolve, to

23  the extent we can, outstanding objections.

24         THE COURT:  All right.  Let me ask other parties, does

25  any other party intend to make any evidentiary presentation,

1  either in the way of live testimony or other evidence?

2          I hear no response.  All right.  Let's proceed.

3          MR. COLLINS:  Okay.  Thank you, Your Honor.  I want to

4  provide some background and really to put on the record the

5  events that have transpired since Your Honor approved the

6  disclosure statement on July 27th.  I'd like to walk the Court

7  through the filings that we have made in order to be here

8  today.

9          First, Your Honor, we did -- as evidenced on the

10 docket, the disclosure statement was approved on July 27th.  On

11 July 30th, solicitation packages, including ballots, were sent

12 to all creditors entitled to vote.  There was also a notice

13 sent to all creditors who are not entitled to vote regarding

14 the plan confirmation process.  That affidavit of service has

15 been filed with respect to and can be found at docket number

16 712.

17         On August 4th, the debtors objected to certain

18 disputed claims for voting purposes only.  No objections were

19 received to that motion, and as a result, Your Honor entered an

20 order, on August 21, granting that relief.

21         On August 14th, the debtors filed a plan supplement,

22 which included drafts of the distribution trust agreement as

23 well as the student trust agreement.

24         On August 20th, the Court approved a stipulation, for

25 voting purposes, between the debtors and the administrative

1    agent, to temporarily allow the claims, for voting purposes, of

2    both Class 1 and Class 4.

3           On August 20th, the debtors filed a modified plan

4    injunction provision to address certain concerns that were

5    raised by various objecting parties.  We did that in advance of

6    the objection deadline, as we wanted those objecting parties to

7    see what it is we are now going to propose with respect to plan

8    injunction and discharge provisions.

9           On August 21, that was the objection deadline; we did

10   receive twelve objections.  So on August 21 was the voting

11   deadline.

12          On August 24th, we filed the declaration of Rust Omni,

13   our voting and tabulation agent, indicating that all classes

14   had overwhelmingly voted in favor of the plan.  In fact, I

15   believe Class 5, a student class, a government claimed class,

16   voted in the very high ninety-percent range, in both claim

17   amount and claim number, in favor of the plan.  And that is

18   equally true with respect to Class 4, as the votes and the

19   amounts of claims voting all exceeded ninety percent in favor

20   of the plan.

21          Now what I would like to do, at this point, is admit

22   into evidence, the declaration of Catherine Whitaker of Rust

23   Omni in support of our plan confirmation.

24          THE COURT:  Is she present in the courtroom?

25          MR. COLLINS:  She is not, Your Honor, but she is on

1  the phone.

2       THE COURT:  Does anyone have an objection to the

3  admission of the Nownes-Whitaker declaration?  It's at docket

4  number 849.

5       I hear no response.  It's admitted without objection.

6  (Declaration of Catherine Nownes-Whitaker was hereby received

7  into evidence as of this date.)

8       MR. COLLINS:  Thank you, Your Honor.

9       On August 25th, the debtors filed a number of

10  pleadings, first our omnibus response to the objections that

11  were filed, docket number 862.  We also filed our third amended

12  and modified combined disclosure statement and plan, docket

13  number 863.  We filed the declaration of William J. Nolan, in

14  support of confirmation, at docket number 866, along with the

15  proposed form of confirmation order, docket number 867.  And

16  then a list of retained causes of action, as an addition to the

17  plan supplement, which can be found at docket number 881.

18       The creditors' committee filed a joinder to the

19  debtors' response, as well as supplemental information

20  identifying the initial members of the oversight board and a

21  trustee for the distribution trust.  Similarly, the student

22  committee filed information identifying the student trustee and

23  members of that trust managing board.  Also, the student

24  committee did file an omnibus reply to the objections by the

25  United States of America and various Attorney Generals.

1        Your Honor, then turning to the objections, and what I

2   thought I would do is walk through them quickly, tell Your

3   Honor which objections we believe have been fully resolved, and

4   then determine what of remaining objections are outstanding,

5   and if any of those objections have been limited due to the

6   changes to the plan confirmation order.

7        THE COURT:  Bear with me.  Let me get to your

8   response.  Hold on.  All right.

9        MR. COLLINS:  Thank you.  Your Honor, the first is the

10  letter response from Dennis Harvey, Jr.  The objection --

11  informal objection, we really think just raises issues of the

12  Bankruptcy Code itself, and we believe that that objection does

13  not have any merit and should be overruled.  So that objection

14  is outstanding, Your Honor.

15        THE COURT:  Let me ask, for the record, is Dennis

16  Erroll Harvey present in the courtroom or on the telephone, or

17  is anyone here or on the phone on his behalf?

18        I hear no response.  The objection is overruled.

19        MR. COLLINS:  Thank you, Your Honor.

20        Next objection is from the Texas Comptroller, docket

21  number 776.  Your Honor, we have modified language in the plan,

22  as requested in the objection, and we have received

23  confirmation that that objection has been resolved.  And I

24  believe somebody is on the phone from the Texas Comptroller's

25  office.  You can confirm that.

1          THE COURT:  Does the Texas Comptroller's office wish

2     to be heard?

3          I hear no response.

4          MR. COLLINS:  Your Honor, but we can represent that

5     they did confirm that that matter had been resolved.

6          THE COURT:  Very well.

7          MR. COLLINS:  And Your Honor, the three objections of

8     the Attorney Generals, Attorney Generals of Wisconsin,

9     California, and Massachusetts, those objections remain

10    unresolved, and we'll have argument with respect to those

11    objections.

12         That is similarly true for the objection of the

13    Consumer Financial Protection Bureau.

14         The objection of Arlington ISD, that objection has

15    been resolved, and I believe they have filed a notice

16    withdrawing that objection on the docket.

17         Your Honor, the two landlord objections, one from

18    BRE/OC Griffin, docket number 818, and Watt Management Company,

19    docket number 825, we believe will be resolved by putting on

20    certain language on the record, and if I could do that now,

21    Your Honor?

22         THE COURT:  Go ahead.

23         MR. COLLINS:  First, Your Honor, the debtors can

24    confirm that both BRE/OC Griffin, as well as Watt Management,

25    have timely asserted their rights of setoff in these Chapter 11

1    cases.  We will also clarify on the record that to the extent a

2    proof of claim is timely filed after the confirmation date,

3    such proof of claim can include that reserved setoff claim.  As

4    Your Honor may recall, the governmental bar date, for example,

5    is after the plan confirmation date, and there will be certain

6    rejections of executory contracts where the rejection bar date

7    will also be after plan confirmation date.

8         We also, Your Honor, confirm that the premises covered

9    by the leases of these two landlords will be surrendered no

10   later than August 31st, 2015.  The order approving rejection

11   will include language relating to abandoned property that has

12   appeared in other lease rejection orders submitted to and

13   approved by the Court.

14        We'll also clarify, Your Honor, that any party that

15   submitted a ballot that elects to opt out of the release

16   provisions of the plan, but does not vote in favor of or

17   against the plan, will not be bound by the third-party release

18   provision in the plan.

19        With those statements, Your Honor, I believe that

20   resolves those two objections.

21        THE COURT:  All right.  Do either BRE/OC Griffin or

22   Watt Management wish to be heard?

23        MR. BRANCH:  Good afternoon, Your Honor.  Dustin

24   Branch, Katten Muchin Rosenman, on behalf of Watt Management.

25        I'll just confirm that the statements read on the

1    record, by debtors' counsel, are consistent with our

2    understanding of our deal.

3            THE COURT:  Thank you.

4            MS. BIFFERATO:  Good afternoon, Your Honor --

5            MR. GOLD:  Also, Your Honor, Ivan Gold of Allen

6    Matkins, for BRE/OC Griffin.  Counsel has correctly stated our

7    agreement.  Thank you.

8            THE COURT:  Thank you.

9            MS. BIFFERATO:  Good afternoon, Your Honor.  Karen

10   Bifferato on behalf of BRE/OC.  And my cocounsel, Ivan Gold,

11   just stated that our objection is withdrawn based on Mr.

12   Collins' comments.

13           THE COURT:  Thank you.

14           MS. BIFFERATO:  Thank you.

15           MR. COLLINS:  The next objection, Your Honor, is from

16   the United States.  That matter, I believe, is unresolved, at

17   least with respect to, I believe, the trust fund argument.  But

18   I understand that there are issues relating to student deposit

19   priority claims, under 507(a)(7), that have been resolved, and

20   I'd like confirmation of that.

21           MR. SEW HOY:  Good afternoon, Your Honor.  Michael

22   Sew Hoy, United States Department of Justice, Civil Division,

23   along with my colleagues John Kresse and Danielle Pham, who are

24   in the courtroom, represent Department of Education.

25           Mr. Collins is correct.  We filed an objection with

1    respect to four issues.  Three of those issues:  the setoff

2    issue, the discharge issue, and the student priority 507(a)(7)

3    issue have been resolved by the third amended plan and proposed

4    confirmation order.

5           If I may, Your Honor, I'd like to raise a discrete

6    issue with you now that arose yesterday afternoon.  The student

7    committee filed a response to the governmental objections

8    yesterday afternoon, and in it they requested specific language

9    in the confirmation order.  And the objectional language, from

10   our perspective, is at page 5, on paragraph 1, which asks that

11   the Court retains jurisdiction "to determine the enforceability

12   of and to enjoin the collection of any students' obligations

13   for Title IV funds disbursed by the debtors, that through the

14   debtors' conduct, were wrongfully or incorrectly charged to

15   students".

16       As Your Honor may recall, the student committee moved for

17   this Court to enjoin the Education Department's collection

18   efforts with respect to these Title IV funds, but, as part of

19   an agreement with the Education Department, withdrew, with

20   prejudice, that motion.  And due to that withdrawal, Your Honor

21   did not make a ruling -- or did not specifically rule on

22   whether it had jurisdiction to enjoin these third parties.

23       To the extent that Your Honor confirms a plan, enters a

24   confirmation order, the Court should not add language to the

25   confirmation order that is inconsistent with this withdrawal

1  with prejudice or inconsistent with Your Honor's nonruling on
2  the jurisdictional issue, an issue that was contested.  If the
3  student committee would like to try again and obtain a ruling
4  on jurisdiction, it should file an appropriate motion or
5  adversary proceeding, with proper notice and hearing, but it
6  should not be able to obtain what is a de facto ruling on
7  jurisdiction, in a response to objections to a plan the day
8  before confirmation.

9          THE COURT:  Thank you.

10         MR. COLLINS:  Your Honor, the next objection is the
11 objection of the WARN Act claimants at docket number 822.  I am
12 very pleased to report to the Court that we have resolved that
13 objection through a settlement with the WARN Act claimants.

14         THE COURT:  I'm pleased to hear it too.

15         MR. COLLINS:  Yes.  If I could put on the record, Your
16 Honor, the terms of that settlement, which would then be
17 embedded in the terms of the plan, if Your Honor does confirm
18 the plan.

19         First, Your Honor, is that the WARN Act claimants will
20 receive an allowed 507(a)(4) claim in these cases, in the
21 amount of 300,000 dollars.  That amount would be funded by
22 150,000 dollars that would otherwise have gone to the student
23 trust, out of the 4.3 million dollars it is receiving, and then
24 150,000 dollars from the distribution trust, which will be all
25 the remaining assets of the debtor.

1        In addition to that, Your Honor, they would also

2   receive a subordinated allowed 507(a)(4) claim in the amount of

3   600,000 dollars.  That amount would be part of the distribution

4   trust side of the ledger, and that claim would sit below the

5   superpriority administrative expense claim of the pre-petition

6   secured parties, which is 10.6 million dollars.

7        So under that side of the plan structure, Your Honor,

8   we would pay allowed admin claims, allowed priority tax claims,

9   allowed other priority claims, including the 150,000 dollars,

10  to the WARN Act claimants.  The balance then goes to previously

11  secured parties on account of their superpriority adequate

12  protection claim.  And then the next 600,000 dollars would go

13  to the WARN Act claimants.  The balance then would go to the

14  general unsecured creditors.

15        THE COURT:  All right.  Do the WARN Act claimants wish

16  to be heard?

17        MR. RAISNER:  Thank you, Your Honor.  Jack Raisner,

18  Outten & Golden, on behalf of Reynolds and the WARN Act class.

19        Mr. Collins has accurately outlined the structure of

20  this settlement.  Obviously, it will result in our coming

21  forward, Your Honor, with a motion under 9019 and Rule 23 for

22  approval of the settlement, and then the normal noticing to the

23  class to opt in or to opt out and object, but then hopefully

24  we'll be able to make a distribution on the effective date, for

25  the first part of this amount, or at least have it in

1    segregated funds for a distribution, with the approval of the

2    entirety of the settlement approved by Your Honor for money

3    that is distributed.

4             THE COURT:  Thank you.

5             MR. RAISNER:  Thank you.

6             MS. HAGLE:  Your Honor, Jennifer Hagle, for Sidley

7    Austin, on behalf of Bank of America as administrative agent.

8             Mr. Collins did set froth the settlement.  Just one

9    clarification.  Our 503(b) claim has not been fixed at 10.6

10   million dollars.  Every day that the administrative expenses

11   tick in this case, that claim is subject to fluctuation.  So it

12   is what it is, but it basically will equal whatever the

13   administrative costs of the case end up being, which I believe

14   are currently estimated to be at 10.6 million dollars, but

15   could be higher.

16            Secondly, we had understood that the arrangement with

17   respect to the WARN claimants was going to be effected through

18   a plan amendment and not a separate 9019 motion, but I'll defer

19   to counsel for the debtors on that; whatever is the most

20   efficient way to get it done is what we would, obviously,

21   propose.

22            MR. COLLINS:  Your Honor, the settlement will be

23   included in the terms of the plan.  I understand from counsel

24   to the WARN Act plaintiffs that the appropriate way to also do

25   this is through a Rule 23 and 9019 motion, and we'll have that

1  filed in due course as well.

2        THE COURT:  I think he pretty much has to do it that

3  way.

4        MR. COLLINS:  Yeah.

5        THE COURT:  All right.

6        MR. COLLINS:  Your Honor, the next objection is that

7  from the Internal Revenue Service.  I'm also pleased to report

8  that we have fully resolved that objection through language

9  we've included, at the request, in the confirmation order.

10        THE COURT:  All right.

11        MR. COLLINS:  The last objection I have on my list,

12  Your Honor, is the student committee's response, which I think

13  in some ways tags along with the Attorney General's objection,

14  so that that issue with respect to the plan injunction language

15  and dissolution issues remain outstanding.

16        With that, Your Honor, I think it would be helpful for

17  us to have a ten-minute break just to allow us to gather the

18  right people together, make sure that as we go forward on these

19  objections we do so in a very efficient and organized matter.

20        THE COURT:  Okay.  Let me just offer one thought.  I

21  don't want to get into a discussion of the objections yet, but

22  with respect to the jurisdictional issue, my views about that

23  haven't changed from the disclosure statement stage where it

24  was an issue, and that is there's not going to be an exclusive

25  jurisdiction provision.  I'd be reluctant to order any special

 1    exclusive -- special jurisdiction provision.  Frankly, the
 2    bounds of this Court's jurisdiction are pretty clearly set out
 3    by not just Supreme Court but Third Circuit law, which is very
 4    specific with respect to, particularly, post-confirmation
 5    jurisdiction.  And that's all the guidance I think I need for
 6    now, and would be reluctant to add anything more to the plan
 7    now.
 8            Now, I'll hear arguments, but I wanted to leave you
 9    with that thought, as long as there is going to be a break.
10            MR. COLLINS:  All right.  Thank you, Your Honor.
11            THE COURT:  Stand in recess.
12            MR. COLLINS:  Thanks.
13        (Recess from 2:53 p.m. until 3:03 p.m.)
14            THE CLERK:  All rise.  Be seated, please.
15            THE COURT:  While in chambers just now, I did sign the
16    Willkie Farr order.
17            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.
18            MR. COLLINS:  Your Honor, what I think makes sense is
19    to hear from the objecting parties, as I think they're
20    primarily legal issues, regarding language in the plan,
21    including the injunction provision, the 1141(d)(3) language.
22    And I think it makes sense to turn the podium over to the
23    Attorney Generals in the first instance.
24            THE COURT:  Okay.
25            MR. ESKANDARI:  Good afternoon, Your Honor.  Bernard

1  Eskandari on behalf of the People of the State of California.

2  We have a number of objections still outstanding to the plan.

3  I think it makes sense to just go through them sort of in

4  serial.

5      Several objections, or a couple of the objections have

6  been resolved, and I appreciate working with debtors' counsel

7  on that.  The full satisfaction and settlement language has

8  been struck.  The debtors have been struck from the plan

9  injunction.  And I think we have resolved the dissolution

10 issue.

11     I will briefly address the problems with dissolution.

12 We spell it out in our papers.  But Third Circuit law is clear

13 that a debtor can't dissolve under a plan.  Dissolution is a

14 matter of state law.  So we believe everything in the plan and

15 confirmation order dealing with dissolution needs to be struck.

16 Moreover, the plan and confirmation order go even a step beyond

17 simple dissolution, purport to terminate all legal existence

18 under state or federal law as well.  And I think that's clearly

19 problematic for a number of reasons.

20     THE COURT:  I'm sorry, did you say this had been

21 resolved?

22     MR. ESKANDARI:  I'm putting in on the record.  I'm not

23 exactly sure what debtors plan on doing with this.  I need to

24 see the language.  I'm confident we can probably get there, but

25 people have been close to deals and they haven't come through.

1        THE COURT:  That's why I'm here.

2        MR. ESKANDARI:  Not debtors' counsel --

3        THE COURT:  To push you over the hill.

4        MR. ESKANDARI:  So I think we're close.  But all

5    dissolution language needs to be struck, and all language

6    supposedly terminating the legal existence of debtors under

7    state -- at least state and federal law, needs to go as well.

8        THE COURT:  Well, look.  I've preliminarily reached a

9    view, frankly, without consultation on decisional law, that

10   it's, I think, fair for the plan to authorize the debtor to

11   undertake dissolution, but the process would need to be

12   completed under applicable state law.

13       MR. ESKANDARI:  That's our position as well.

14       THE COURT:  Yeah.

15       MR. ESKANDARI:  Thank you, Your Honor.  The injunction

16   now contains language at the end of it, in an attempt to, I

17   think, appease our concerns that this plan just isn't clear

18   enough.  We're still uncomfortable with that language.  We

19   think that the process of getting here has revealed numerous

20   attempts to discharge the debtors.  We think our language, our

21   proposed language to clarify that this is not providing debtors

22   with a discharge, it's not releasing any causes of action,

23   limiting any causes of action for current cases pending against

24   debtors is language we're entitled to.  It's language that

25   would make this extremely clear.  And it would give us comfort

1  that there's nothing buried in the confirmation order or plan

2  that would prejudice us.

3          THE COURT:  Okay.  So I frankly think, as you've just

4  stated it, the debtor, based on what I understand its position

5  to be, would generally agree with it.  So if that's true, it

6  seems to me, you ought to come to some language that ought to

7  be satisfactory to each of you, frankly, without going too far

8  your way, but far enough to make it clear that as the debtor

9  says, the only injunction -- well, the only stay -- to be more

10 correct about it, I guess, as it's proposed in the plan, is

11 intended to do, is to allow the things that under a confirmed

12 plan are supposed to happen.  Other than that, the debtors'

13 fair game, as I understand what the plan at least intends.

14         And if that's the case, and you both agree on that,

15 then you ought to be able to work something out.

16         MR. ESKANDARI:  So I really like that term "fair

17 game".  I think I've been using it, at least internally with my

18 team as that's how I understand the law as well.  And I think

19 debtors' communicating that to us.  But I'm just not seeing

20 that in here.  I see hedging.  I see trying to protect certain

21 assets.  And this dovetails nicely with our continued

22 objection --

23         THE COURT:  Well, and to the extent the plan's

24 confirmed, the assets that are being placed into the respective

25 trusts and the rights that the trusts have to pursue and for

1  distribution purposes, ought to be protected.  So but I don't

2  think you'd necessarily disagree with that either, would you?

3          MR. ESKANDARI:  No.

4          THE COURT:  Okay.

5          MR. ESKANDARI:  We don't.  We just disagree with the

6  belt and suspenders mechanism that's being implemented with the

7  plan.  And which I segue into the bigger problem with the

8  injunction is, we believe it should just be struck.  It

9  serves --

10          THE COURT:  Okay, so let me tell you, that's a

11  nonstarter.  Tell me what it is you want to do?

12          MR. ESKANDARI:  We want to be able to continue our

13  prosecution, our state court prosecutions of debtors that were

14  pending before the petition date to judgment.  And nothing in

15  this plan or confirmation order should prevent that.

16          THE COURT:  And again, I don't get the

17  sense -- although the language as it's presently styled may not

18  give you that sense of comfort, I don't get the sense that the

19  debtor is opposed to that.  Am I wrong?

20          MR. ESKANDARI:  I am not entirely sure what the debtor

21  if in favor of or opposed to, given that as of yesterday, or

22  even as of five minutes ago, this document still says debtors

23  are dissolving under state law and will cease to exist for

24  all --

25          THE COURT:  Well, they're going to -- look, we've

1  talked about that.

2         MR. ESKANDARI:  Right, right, so --

3         THE COURT:  The plan's going to authorize the debtor

4  to undertake the appropriate dissolution process under state

5  law.  And to the extent there are things that happen in that

6  process, then they'll happen in that process.  And I don't

7  think the debtor intends to block that either.  If I'm wrong,

8  the debtor will tell me.

9         MR. ESKANDARI:  Again, getting to this point, which

10  is -- has not been easy.  There have been various hurdles and

11  there have been various language in here that we've had to get

12  past.  And so I don't think it's been clear, and I still don't

13  think this document is clear.  And we still have issues -- at

14  least one issue to work through.

15         THE COURT:  Well, if -- let me put it this way.  If,

16  as I've expressed it, that is the general intent of the debtor,

17  you'll get to language.

18         MR. ESKANDARI:  Our concern over the broader

19  injunction issue, and I know Your Honor has called it maybe a

20  nonstarter, is that 1141(c) says that all property assets dealt

21  with under the plan are transferred free and clear.  These

22  injunctions provide no additional comfort for debtor other than

23  belt and suspenders, and it causes us heartburn because it may

24  be interpreted -- these injunctions may be interpreted to bleed

25  over and somehow affect our state court litigation.

1       THE COURT:  Okay.  Let me give you my view about this.

2       MR. ESKANDARI:  Sure.

3       THE COURT:  The debtor is entitled to a provision, if

4  the plan gets confirmed, which assures that what the plan

5  provides and what the Court has approved, if in fact we get

6  that far, will be unmolested by things like what you're talking

7  about.  And if that's the debtors' intent, I think it's

8  appropriate.  And that's just through the effective date.

9       The debtors intend to go away here.  So in a way, as I

10  look at this situation, while there may be some right to be

11  vindicated, whether it's discouraging future conduct by others,

12  that after they're dead you're going to kick them, that's okay,

13  so long as it doesn't interfere with the implementation of the

14  plan.  You understand my point, right?

15       MR. ESKANDARI:  I do, Your Honor.

16       THE COURT:  You might not agree with my language, but

17  you understand the point I'm trying to make here.

18       MR. ESKANDARI:  For the record, we're not trying to

19  kick anyone.

20       THE COURT:  Well --

21       MR. ESKANDARI:  There's certain collateral

22  consequences that students can take advantage of through

23  various guarantee funds and the like, if we get a judgment,

24  so --

25       THE COURT:  And the student committee has said, yay,

 1   we like that idea.

 2           MR. ESKANDARI:  Right.

 3           THE COURT:  I get it.

 4           MR. ESKANDARI:  As to our larger injunction point, I

 5   don't think we are off base here.  We've cited authorities in

 6   our papers squarely holding that third-party nondebtor

 7   injunctions in a liquidating Chapter 11 like this are

 8   prohibited.  The debtor gets exactly the sort of protection

 9   Your Honor is talking about through 1141(c).  No one is going

10   to molest anything that isn't fair game for molesting.

11           Our intent isn't to derail anything, but the Code says

12   what the Code says, and the debtors' rights are the debtors'

13   rights.  It shouldn't -- the plan confirmation order should not

14   go beyond that.

15           THE COURT:  Look, you know, I -- on the court on which

16   I previously sat I had a colleague who was of the belief that

17   confirmation ought to consist of one thing:  approved.  Okay?

18   But bells and whistles get added, and for good reason, in many

19   cases.  And I will tell you, based on my experience in this

20   case with the divergent interests alone, this is a case that

21   calls for specificity.

22           You want it, frankly; and the debtor wants it.  And I

23   think you both can have it.  And hopefully before we leave here

24   today, you will.

25           MR. ESKANDARI:  Should I address my other

1  noninjunction-related objections now?

2           THE COURT:  Yes.

3           MR. ESKANDARI:  Does that make sense?

4           THE COURT:  You should

5           MR. ESKANDARI:  We have, I suppose, for similar

6  concerns the pre-petition secured lender releases, we don't

7  think they're appropriate under the plan.  524(e) again, says

8  that no nondebtor parties should receive discharge, injunction,

9  release, under a plan.  Circuits are sort of split on how

10 strong that is.  The Third Circuit has said that the hallmarks

11 of a permissible nonparty release are fairness, necessity to

12 the reorganization, and specific factual findings that support

13 these conclusions.  This is a liquidation, not a

14 reorganization.  So the hallmarks fail right there.

15         Debtor has pointed us to some authority that this is

16 not an absolute prohibition on nonparty releases in a

17 liquidating plan.  That point is well-taken.  Other authority

18 that was not cited says that in a liquidation context, the

19 extraordinary nature of nonparty releases is even heightened,

20 making it extraordinary upon extraordinary.  And we would

21 submit that this is not a situation like that.

22         A settlement of release of the pre-petition lender

23 claims needs to comply roughly with the procedures of a Rule

24 9019 compromise:  fair, reasonable, in the best interests of

25 the estate.  I don't know how, on the record before us, Your

1   Honor can make that determination.  I understand that the pre-

2   petition lenders are providing some amount of consideration.

3   What debtor is giving up or releasing in exchange for that is

4   entirely unclear.  In fact, I think it's debtors' position

5   still that there are no causes of action against the pre-

6   petition lenders, which leads to the question of why the

7   substantial consideration, then?

8           The other way to attack this is through the Zenith or

9   Master Mortgage factors.  There are five of them.  We don't

10  believe any are met here.  I can run through them quickly.

11          THE COURT:  No need to.

12          MR. ESKANDARI:  Okay.  For the record, we would say

13  that none or substantially all of them are not met here,

14  rendering a nonparty release inappropriate under that standard.

15          Finally, we will say that -- I was going through the

16  confirmation order earlier, and as Your Honor pointed out, it

17  still mentions exclusive jurisdiction, and I think that issue

18  was resolved at the disclosure hearing.

19          THE COURT:  I thought so.

20          MR. ESKANDARI:  We still have our sort of comfort

21  order or stay relief -- I hesitate to use "stay relief" because

22  I don't even believe it applies -- but our stay determination

23  motion pending.  I can address that now as well or address that

24  at the appropriate time.

25          THE COURT:  Why don't you address that now?

1          MR. ESKANDARI:  I'm sorry, separately, Your Honor or?

2          THE COURT:  Now.

3          MR. ESKANDARI:  Now?

4          THE COURT:  Yeah.

5          MR. ESKANDARI:  Well, on the table, the debtor has

6   requested to continue it.  We think that's entirely

7   inappropriate.  The issue is ripe now.  It's ready to go.  The

8   relief that we seek -- the State seeks is, to put it

9   colloquially, is a no-brainer.  364(b)(4) clearly exempts

10  automatically our state prosecutions from the automatic stay.

11  The enforcement action was brought by the California Attorney

12  General, and the various other states, in the name of the

13  People, under California's Unfair Competition Law and False

14  Advertising Law, which are fundamentally law enforcement

15  actions to protect the health, safety, and welfare of

16  California consumers.

17          THE COURT:  So what conduct of the debtors now would

18  you be proposing to stop, which would affect the health and

19  safety of the public, in a situation in which the debtors have

20  no operations?

21          MR. ESKANDARI:  Well, I submit that that's the

22  incorrect inquiry, Your Honor.  I'm happy to answer that

23  question.  I mean, sort of justice delayed is justice denied.

24  We have students out there who, again, have an opportunity to

25  potentially seek relief from other sources, and a delay in

Case 15-10952-JTD   Doc 921   Filed 09/02/15   Page 50 of 107

CORINTHIAN COLLEGES, INC., ET AL.                    50

1   reaching some sort of conclusion to that litigation is
2   prohibiting those students, potentially, from receiving those
3   funds.

4           THE COURT:  Well, let me ask you to pause there.  One
5   question I do have directed to the debtors, is the plan
6   provides for preconditions to the effective date, as plans
7   typically do.  What is anticipated to be the time between
8   confirmation and the effective date?

9           MR. COLLINS:  Your Honor, we're expecting to go
10  effective by middle of September.  We have a hearing on
11  September 18th to approve a settlement which will bring in
12  approximately a million dollars into the estate, which will
13  help fund effective date payments.  So we're looking to see
14  whether we should go effective a little bit before or right
15  after that hearing.

16          THE COURT:  Okay.  So if that's the case, is delay
17  really an issue here?  If that's the case?

18          MR. ESKANDARI:  Yeah, I think that's a big if.  It
19  relies on confirmation.  And this is relief that we're -- quite
20  frankly, debtors didn't stipulate to, at least for us.  They
21  did stipulate as to the Wisconsin matter.  So that one's free
22  to go.  I don't know why, given 364(b)(4), its clear language,
23  all relevant authority is in accord, why we've been delayed
24  even these forty-five days.  This is --

25          THE COURT:  Well, if you're so certain, why are you

1  here?

2          MR. ESKANDARI:  We had a notice of bankruptcy or

3  something to that effect filed in our case.  And state court

4  judges, rightfully so, get quite nervous when they see those,

5  and want comfort from judges like Your Honor here.  And so out

6  of an abundance of caution, we'll follow that procedure.  But

7  it's been met with resistance and now further delay.

8          We think we're clearly entitled to this.  It's not

9  moot.  As debtors' counsel just said, it's going to be at least

10  another fifteen days, twenty days.  I don't see any basis to

11  wait.

12          THE COURT:  Thank you.

13          MR. ESKANDARI:  Thank you, Your Honor.

14          MR. OTT:  Your Honor, this is Carter Ott at the

15  Attorney General's Office, on behalf of the Bureau for Private

16  Post Secondary Education in California.  I had some further

17  points with regard to our motion.

18          THE COURT:  I think, Mr. Collins, I probably should

19  hear from all the objectors first before you respond.

20          MR. COLLINS:  Okay.

21          THE COURT:  Go ahead.

22          MR. OTT:  Thank you, Your Honor.  Just to add to the

23  point that with regard to our motion is somewhat different,

24  particularly in that we don't see damages or rescission.  The

25  debtors had referenced an approximate 5,000 dollars that they

1    allege we seek through our disciplinary matter.  We don't seek

2    that.

3            What that is, is an amount that was not disclosed in

4    the operative pleadings that was filed in the case.  Actually,

5    that was an amount taken from a confidential proposed

6    settlement agreement that the Bureau offered to Corinthian

7    Colleges back in July.  I think that given that Corinthian has

8    decided to disclose that confidential settlement offer in this

9    proceeding speaks volumes to what they're trying to do with

10   regard to the disciplinary matter.

11           Just by way of background, the debtors are alleging

12   that essentially the disciplinary action is moot because they

13   have surrendered their license, which are referred to as

14   approval to operate.  That isn't the case.

15           Under California Business and Professionals Code

16   Section 118 Subdivision B, the Bureau is entitled to discipline

17   a licensee's license regardless of whether they have

18   unilaterally surrendered it or not.  And the reason for that is

19   so that a professional who is facing discipline can't simply

20   surrender their license and avoid it, and then a year or two

21   later come back and seek a new license or seek renewal of their

22   license.

23           What Section 118 provides is that a board or bureau

24   can go in and discipline a license, and if the professional who

25   surrendered their license comes back and seeks renewal, the

1   board or bureau can have a written decision from an

2   administrative law judge as a record of the prior discipline to

3   use in denying the application.

4          And what would happen here would be that Corinthian

5   would come back in a year or so, seek renewal of their approval

6   to operate or seek new ones.  If the Bureau denied that

7   application, then they could -- that is Corinthian -- could

8   appeal that decision through administrative process, and the

9   Bureau would use the disciplinary decision that would be issued

10  in this case in that future case as grounds for why denial was

11  appropriate.

12         The other issue is that the debtors state that we

13  should wait until the plan is confirmed.  The grounds are the

14  proviso that the debtor will be -- the will really be no delay

15  because of mootness.  My issue is that -- my understanding is

16  that some of the objectors might appeal, in which case, the

17  confirmation of the plan could be delayed.  And although the

18  debtors state that there'll be no prejudice to any of the

19  parties, I'm right now prepared to set hearing in a couple

20  days.  I've conferred with my witnesses.  But if we delay this

21  disciplinary action, it makes it very difficult for me to get

22  the people -- the witnesses that I need at hearing.

23         And certainly memories fade over time.  And if we're

24  talking about a couple of months or a couple of years, it makes

25  it very difficult for me to wrangle those people into a

1  hearing.  The prejudice would be to the Bureau to have any

2  delay.

3          And given that this case is a professional

4  disciplinary case which is extremely similar to the cases I

5  cited which the debtors didn't even attempt to distinguish, I

6  think it makes sense to grant the Bureaus' motion.  Thank you,

7  Your Honor.

8          THE COURT:  Thank you.

9          We did California.  Who else do we have?

10          MR. LEIGHT:  Your Honor, Peter Leight.  I'm Assistant

11  Attorney General of Massachusetts.

12          We have generally agreed with the California

13  objection, so I'd just like to make a couple of points.

14          THE COURT:  All right.

15          MR. LEIGHT:  One is that from our perspective up

16  North, this seems like a fairly simple issue.  We just want to

17  continue our case.  The debtors say it won't prejudice us to

18  wait.  It'll hardly prejudice them to continue it.  My

19  understanding is they don't plan to appear or to contest the

20  case.  We're preparing to move for summary judgment.

21          It's pretty important for a lot of our students to

22  obtain a judgment in order to be able to use that to obtain

23  debt relief.  And there is, as far as we can see, no particular

24  reason to delay, given the fact that the law is quite clear

25  here and that this will not affect this proceeding at all.  We

1    obviously don't intend to obtain any recovery through the

2    assets here.  We just want to prosecute the case and get a

3    judgment so that we can use it to help our students.

4           And again, this is nothing that will affect this case.

5    It will not cost them any money.  They're not going to defend

6    it, as far as I understand.  They're not going to appear.  And

7    there's no particular reason to wait a month, two months,

8    whatever the confirmation process goes through, to continue

9    that case.

10          I'd also like to say that I know that you indicated

11   that the fact that the law is clear means that the state judges

12   should understand it as well.  Our Attorney General is -- in

13   the interest of federal and state comity, is just concerned

14   that we didn't want to go to the state court --

15          THE COURT:  Look, you know, I was only half serious in

16   asking that question.  I appreciate --

17          MR. LEIGHT:  Okay.

18          THE COURT:  -- the concern and caution that the state

19   courts take when a bankruptcy proceeding is filed.  And I agree

20   that it's usually a good thing to come back here, even if it's

21   only "in an abundance of caution".

22          MR. LEIGHT:  Thank you, Your Honor.  The other thing

23   that I -- this is just kind of a personal comment.  These

24   issues seem pretty simple.  We're just looking for a simple

25   statement from Your Honor and in the confirmation order itself

1    that the cases can go forward.

2            We are certainly willing to stipulate that we do not

3    seek recovery against any of the assets in any of the trusts,

4    but we just want to prosecute the cases.  So again, it seems

5    like a pretty simple result.  Why we haven't gotten there yet,

6    I'm not really sure.  But since we are here, we'd like Your

7    Honor to help with that process.  Thank you.

8            THE COURT:  All right, thank you.

9            MR. COLLINS:  Your Honor, Mark Collins on behalf of

10   the debtors.  A couple of initial points.  One is with respect

11   to the exclusive jurisdiction provision in the confirmation

12   order, that word "exclusive" was included by mistake.  We've

13   already taken that word out and have that with a blackline

14   here.

15           THE COURT:  I have it, Mr. Collins, I suppose?

16           MR. COLLINS:  Yes.  The other issue, Your Honor, is

17   with dissolution.  We understand Your Honor's ruling.  And we

18   will modify language in both the plan and the confirmation

19   order that provides the debtors with appropriate corporate

20   authority to move forward with the dissolution process in

21   accordance with applicable state law.  So we'll delete the

22   offending language of "immediately cease to exist".

23           The other issues that were raised by California are

24   really not as simple as counsel makes it out to be.  I have

25   spent untold hours trying to work language with the Attorney

1    Generals that would affect what their purpose and intent is

2    without harming the debtors' estates and going too far.

3           And Your Honor, what we did is we spent a lot of time

4    and we worked on modifying Article 13 in the plan.  And I

5    wanted to make sure we kept it simple and straightforward.  And

6    I think we did that.  First, we have fully deleted the debtors

7    from the plan injunction.  It only covers estate assets, which

8    is appropriate, as Your Honor has mentioned.

9           We also included a clarifying paragraph, which is

10   Article 13(b).  And it does exactly what the State Attorneys

11   Generals should want it to do.  And I'd like to read it for

12   Your Honor.

13          THE COURT:  I read it.

14          MR. COLLINS:  Okay.

15          THE COURT:  Unless it's changed since the last

16   submission.

17          MR. COLLINS:  No.  But in summary, it says automatic

18   stay goes away on the effective date.  We are not part of the

19   plan injunction, and we are not receiving a discharge under

20   1141(d)(3), full stop.

21          If Your Honor could turn to the objection that

22   California filed, you'll see certain arguments that really do

23   not comply with counsel's argument.  They go beyond what he

24   said.  For example, on page 6 of their objection, they talk

25   about how the plan impermissibly discharges nondebtor parties,

1    including a permanent injunction barring actions against the

2    distribution trust and the student trust.  So that is a clear

3    concern that we have regarding their pleading and their

4    argument.

5           They also want language in the confirmation order that

6    says:  nothing in the plan or confirmation order discharges,

7    releases, precludes, enjoins, or stays an action against

8    debtors, their estates, or their property or assets.  That

9    again, is a problem.

10          Their next statement that they want in the

11   confirmation order is nothing in the plan or confirmation order

12   divests any tribunal of any jurisdiction it may have to

13   adjudicate actions against the debtors.  That again, is too

14   broad, Your Honor.

15          We have a bar date.  We have a claims process here

16   with respect to the debtors' assets.  And that language can be

17   read to really override the very careful language we have in

18   both the plan injunction and the clarifying language on

19   discharge and the automatic stay.

20          To try to include this language, I personally don't

21   believe we will ever reach agreement with the Attorney General,

22   just because of what we've already gone through.  And we do

23   believe our language is more than sufficient and complies with

24   the Bankruptcy Code.

25          I also think, Your Honor, in many respects, this

 1  language is either in the guise of an inappropriate comfort

 2  order or is asking Your Honor to make determinations,

 3  declaratory-judgment-type decisions about the jurisdiction of

 4  other state courts when an entity has gone through Chapter 11,

 5  has fully disbursed all of its assets, and is in dissolution

 6  under applicable state law.

 7       I don't know if those actions affect a tribunal's

 8  jurisdiction.  I don't know if that tribunal would want to

 9  continue to maintain an action and spend time and resources on

10  an action where the defendant no longer exists and has no

11  assets.

12       THE COURT:  Well, that's not for me to decide.

13       MR. COLLINS:  I agree, Your Honor.  I think this

14  language could be used inappropriately by the Attorney

15  Generals, as your approval that those actions should go

16  forward.  And I think that should be determined by applicable

17  nonbankruptcy law and by the judge in that particular

18  litigation.  So those are the reasons why we have not included

19  their language.

20       Your Honor, turning to the lender releases.  I don't

21  think this case could be more clear for why the lenders are

22  entitled to a debtor release.  This is not a 524(e) issue.

23       THE COURT:  Well, they're getting a holder release as

24  well, right?

25       MR. COLLINS:  Only by consent, Your Honor.

1      THE COURT:  Understood.

2      MR. COLLINS:  And the debtors -- this is a compromise

3  with the lenders.  And under 9019 and under 1129, plans of

4  reorganization and liquidation can provide for settlements and

5  releases, and that's exactly what has happened here.  But for

6  the agreement of the lenders, we would have been in Chapter 7

7  long ago, and we would not have a student trust established for

8  the benefit of former students.  We would not have admin and

9  priority claims being paid in full.  We would not have WARN Act

10  claimants receiving funds.  No one would receive anything in

11  this case other than the lenders.

12      Now, are they doing it entirely out of the goodness of

13  their heart?  Of course not.  There's benefit to lenders in

14  seeing a liquidating Chapter 11 happen.  But they have

15  certainly paid the freight in satisfying all administrative

16  expense claims through these cases, which has given rise to

17  their superpriority adequate protection claim, which they are

18  now subordinating to allowed admin and priority claimants.

19      I would also note, Your Honor, that there's been a

20  full investigation period of claims and causes of action

21  against the lenders that has been conducted by the official

22  creditors' committee, and Mr. Schwartz could speak to what they

23  have found in that regard, if it is at all helpful.

24      Turning, Your Honor, to the arguments especially with

25  respect to California and why there's an issue here.  If I may

1  approach, Your Honor, with a copy of their complaint that they

2  would like to move forward with in California?

3        THE COURT:  Yes.  Thank you.

4        MR. COLLINS:  I've tabbed the page I'd like Your Honor

5  to turn to.  It's pages 38 and 39 of their complaint.  Turning

6  to -- starting at around "Prayer for relief 11", this complaint

7  seeks an order disgorging all profits and compensation obtained

8  by Corinthian Colleges as a result of certain violations.

9        Prayer for relief 12, they want an order requiring

10  Corinthian Colleges to make restitution to the purchasers of

11  its common stock in the principal amount paid by each purchaser

12  by means of the allegations of unlawful conduct.

13        They want -- prayer for relief 13 -- an order awarding

14  damages to the purchasers of the Corinthian College's common

15  stock in an amount sufficient to compensation those purchasers.

16        Your Honor, that is why we have not consented to, out

17  of the box, that this complaint meets 362(b)(4).  We don't

18  think it does, at least on those grounds.  And instead of

19  having to get into argument regarding this, if the plan is

20  confirmed, 362 goes away entirely.  And if they want to

21  continue to pursue these actions, they can do so in California.

22  But I don't believe that those allegations fit within the

23  rubric of 362(b)(4).

24        Massachusetts is interesting, because they said it was

25  hopefully very simple, but yet everything Massachusetts has

1    done is simply joined in the arguments of California.  So they

2    have not made it simple, because California has added in

3    arguments that really are not appropriate, both with respect to

4    plan injunction, the language they want in the confirmation

5    order, as well as the scope of the automatic stay relief they

6    want under 362(b)(4).

7            So for all of those reasons, Your Honor, we think the

8    objection should be overruled.  We believe the language in

9    Article 13 is abundantly clear what the impact of what this

10   plan is doing is not violating any of the provisions of the

11   Bankruptcy Code.  And we also believe that their motions to

12   allow this kind of complaint to go forward should be denied.

13           And one other thought, Your Honor.  Massachusetts

14   stated -- or maybe it was California -- that we don't intend to

15   defend ourselves.  That is absolutely not true.  The debtors

16   will defend themselves if these actions go forward, for as long

17   as we exist.  And we will have to incur estate expenses on a

18   shoestring budget to do so.

19           The debtors, throughout all of these proceedings, have

20   adamantly denied the allegations.  They would love to have

21   their day in court to defend them.  And while we are here and

22   still an existing corporation, we will do so.  So for that

23   reason as well, Your Honor, we think it's appropriate to have

24   that matter continued to after confirmation.

25           THE COURT:  Thank you.  Should I hear from the other

 1  objectors now?

 2          MS. HAGLE:  Your Honor, Jennifer Hagle from Sidley.

 3  May I be heard briefly in response to the objections to the

 4  lender releases?

 5          THE COURT:  Of course, yes.

 6          MS. HAGLE:  Very quickly, Your Honor.  I don't want to

 7  reiterate Mr. Collins' articulate response, although I do want

 8  to reiterate one phrase he made which could not be truer, and

 9  that is the lenders in this case have paid the freight.  Unlike

10  every other entity or party in this room, we have completely

11  funded the expenses here to date with nothing more than a shot

12  at getting those back, subordinate to the payment of

13  administrative and priority claims.

14          THE COURT:  And I'll be you didn't even get a single

15  thank-you note for all that?

16          MS. HAGLE:  I'm still waiting.

17          Let me talk about timing.  The states' Attorney

18  Generals do not need to worry about undue delay, because there

19  will be no more money after somewhere near the middle of

20  September.  So I don't see us even getting to the end of

21  September.  It's been a minor miracle that we've made it as far

22  along as we have.  But I can truly represent, having vetted

23  these numbers endlessly with FTI, that the end is near one way

24  or another.  And I hope it's a happy ending, but the end is

25  here one way or another.

1       With respect to the lender releases, just to clarify,

2   these releases are completely consensual, which under this

3   District, I believe it's well-established that as long as there

4   is justification under whatever settlement standard -- Zenith,

5   Master Mortgage -- applies, these are appropriate.

6       THE COURT:  Well, the issue is, is failing to opt out

7   considered consent?  There are divergent views among my

8   colleagues.  And I understand that distinction.

9       MS. HAGLE:  I understand, Your Honor.  We obviously

10  take the position that with respect to ballots that are

11  returned -- and I don't believe we're looking for releases from

12  ballots that are not returned, which is another

13  distinction -- the opt-out is appropriate notice and

14  justification for the releases --

15      THE COURT:  Actually, I think the debtor is looking

16  for releases from those who failed to return ballots.

17      MS. HAGLE:  That's how it's drafted?  Okay.  I thought

18  you'd conceded that.

19      I think it's also notable -- I want to make another

20  point and just reiterate that in connection with the releases,

21  they are an underpinning of this plan.  They're central to the

22  global settlement.  And the lenders have paid significant

23  consideration in exchange for those releases, including, as

24  noted, the fact that we've released liens on the cash

25  collateral to fund confirmation, payment of administrative

1  expenses and priority claims, releasing liens on the cash to be
2  able to provide the initial funding for the distribution trust,
3  releasing liens on the assets of the trusts to made available
4  after payment of our 503(b) payment of general unsecured claims
5  in general, releases on the student refund reserve, which is in
6  excess of four million dollars, which is something that is
7  certainly subject to our claims in a Chapter 7, and reducing
8  our pro rata deficiency claim by a significant amount.  All of
9  those add up to significant concessions in exchange for the
10 releases.

11       I also think it's important for Your Honor to know
12 that the State of California did end up engaging in extensive
13 discovery against Bank of America and collected thousands of
14 pages of documents and e-mails from us, and have not been able
15 to articulate after that any sort of a claim against the
16 lenders.  So I think it's also important that as they are
17 articulating their concern about these releases, they are
18 unable to articulate a concern about specifically what sort of
19 claims might be released.

20       THE COURT:  Who are the lenders?

21       MS. HAGLE:  The Bank of America is the administrative
22 agent.  There are three other lenders in the syndicate.

23       THE COURT:  Have the positions traded during the 11 or
24 have they --

25       MS. HAGLE:  No.

1           THE COURT:  -- remained the same?

2           MS. HAGLE:  Remained the same.

3           THE COURT:  All right.  I take it none of them are

4    insiders?

5           MS. HAGLE:  No.

6           THE COURT:  I haven't seen them identified anywhere.

7    That's why I ask.

8           MS. HAGLE:  No.  It's Bank of the West; OneWest Bank;

9    U.S. Bank, and Union Bank.

10          THE COURT:  Thank you.

11          MS. HAGLE:  They're all major, large institutional

12   lenders.

13          So I think that's also very important.  And I think

14   it'll be reiterated by the unsecured creditors' committee as

15   well, that undertook an extensive investigation of our liens.

16   And at no time, with the exception of a claim for preference

17   that's been discussed, has anybody raised any specific claims

18   or concerns about claims that are being released that might be

19   of more benefit to the estate than the obvious benefits that

20   are inuring to the estate from the concessions we've made.

21          THE COURT:  Thank you.

22          Okay, now I'd like to hear from the remaining

23   objectors.

24          MR. KRESSE:  Good afternoon, Your Honor.  John Kresse

25   from the United States on behalf of the Department of

1    Education.

2         Your Honor, I'm here on our motion to extend the

3    termination date regarding the challenge to the cash collateral

4    order and also in favor of the Department of Education's

5    objection to the plan to the extent the plan does not carve out

6    any funds for federal trust funds.

7         And to get right to the point, Your Honor, I think the

8    government has established that there was an express trust per

9    according to regulations.  And the express trust is -- we don't

10   know the amount.  We have not been provided any documentation

11   regarding the amount.  We are aware of the several bank

12   accounts that might have contained and may yet contain trust

13   funds.  But we have not received any documentation from either

14   the debtors or from Zenith, which apparently has possession of

15   bank account information.

16        So the debtors are the trustee of these trust account

17   funds.  The money, more specifically, was at the end of the

18   debtors' existence as ongoing entities as schools, they were

19   receiving on a weekly basis essentially millions of dollars of

20   federal student aid, loans and grants.

21        And so in April, it was, by the Education Department's

22   estimate, roughly thirty-five million dollars.  And so on a

23   weekly basis, you can figure that's maybe eight or nine, ten,

24   twelve million dollars, right to the end.

25        And from that money, on average, as far as -- and this

1  is our understanding, Your Honor.  I don't have a declaration,

2  but we have spoken with people who were formerly employed by

3  the debtors and currently employed by Zenith, and their

4  understanding is and what they've been told and what they've

5  seen is that roughly fifteen percent of federal student aid

6  would ultimately be paid to the students for their living

7  expenses, which is permitted under federal law.  And so this

8  fifteen percent of -- if you took the last week and said let's

9  say 10 million dollars in the last week was paid from the

10 Department of Education to the Corinthian schools, fifteen

11 percent of that would be 1.5 million dollars.

12        We obviously don't have the bank account information.

13 We cannot trace the funds right now, Your Honor.  We're asking

14 for more time, just like the unsecured creditors' committee

15 has, to look into this issue and try to determine what amount

16 might still remain.  And of course the amount that was there on

17 the petition date we have reason to believe it's much smaller.

18 And in fact, it may have been a much larger amount in the

19 appropriate accounts that were used to dispense -- or to pay

20 the student living expenses may have been much greater on April

21 27th when the schools closed.

22        Our understanding is that what happened was money was

23 put into those accounts and then the checks would have been

24 cut, but for the fact that the schools closed, and so that

25 money was then moved elsewhere at some point in time.  We don't

1  know when.

2          But I don't think there's a disagreement that that

3  money was federal trust fund money.  The debtors were the

4  trustee.  And the United States as well as the students were

5  the beneficiaries.

6          THE COURT:  Thank you.

7          MR. ESKANDARI:  Bernard Eskandari on behalf of the

8  People of the State of California.  Thank you for the

9  opportunity to respond, Your Honor.  I'll just go through very

10 quickly and hopefully I hit them in order.

11         What I hear from debtors' counsel, again, the issue

12 with our language is more belt and suspenders.  The estate is

13 not going to exist after confirmation.  It's going to have no

14 assets.  So why language saying that we can -- clarification

15 language saying that actions against the debtors, their

16 estates, or estate assets would be a problem, gives me concern.

17         The very last line in our clarification language about

18 the tribunal, debtors' counsel's point is well taken.  However,

19 our language says that nothing in the plan or confirmation

20 order should divest any tribunal of actions against the debtor.

21 We were very circumspect there.  The debtor is not receiving a

22 discharge.  Any actions against the debtor should be able to

23 proceed.  We don't have any other entities there.

24         As to the Bank of America and other pre-petition

25 lender -- yeah, pre-petition lender releases, again, I just

1    want to flag that under Rule 9019, I'm not sure how we have

2    enough information here to determine that the release is fair.

3    As to the holder releases, Your Honor points out the

4    problematic negative opt-out.  I would also like to point

5    out --

6            THE COURT:  I didn't say it was problematic.  I said I

7    identified the issue.

8            MR. ESKANDARI:  I'm sorry to call Your Honor's take on

9    that.  We would also like to point out that it's also without

10   consideration.  Whether or not a creditor opts in or opts out,

11   they're getting the same treatment under the plan.  The

12   confirmation order, I believe, or the -- I believe it's the

13   confirmation order, states that the holder releases are in

14   exchange for fair consideration, and that would just seem

15   flatly false.  There is no consideration.

16           THE COURT:  Well, I will tell you one thing that I

17   think weighs heavily in favor of permitting the opt out consent

18   as the debtor has proposed here, and that is creditor receives

19   a ballot, and for the price of a postage stamp and a couple of

20   marks on a piece of paper, can say I vote against the plan

21   and/or I choose not to opt out.  It seems such a light burden

22   to impose on a creditor when faced with what would otherwise

23   operate as a release of any claim this creditor might have.

24   And I just -- it's a hurdle I just -- as I approach this, I

25   can't get over.  So help me do that.

1          MR. ESKANDARI:  Yes.  I think Your Honor makes a very
2    interesting point.  I think if there was some actual
3    consideration given for the release then it would not be too
4    much of  a burden to ask.  And that's not our situation here,
5    but following Your Honor's hypothetical, I could imagine yes,
6    that isn't too much of a burden to say in exchange for this you
7    give me a postage stamp and a few ticks on a ballot and you
8    will get something.
9          Here, whether a creditor ticks the box, sends back the
10   ballot, they're getting the exact same treatment under the
11   plan.  It's a meaningless gesture.  It's a gratuitous gesture.
12          THE COURT:  Well, here's one way to look at it, and
13   that is in this case -- and it's not always the case -- the
14   debtor releases are the same as the holder releases.  Okay?
15   And the debtors have argued, and the bank, of course, has
16   supported that argument, what are you talking about?  We gave
17   plenty here.  We funded the 11.  We paid cash.  We're losing
18   money.  We've subordinated.  We've given up liens.  Frankly, if
19   that's good enough to get the debtor releases, it seems to me
20   that's good enough to get the holder releases.
21          So you ask what consideration.  It seems to me the
22   same would apply to the holder releases here in a plan that
23   received overwhelming creditor support.  Don't always have
24   that.  Here it exists.
25          MR. ESKANDARI:  I don't think, and the pre-petition

1   lenders can correct me, I don't think they went into this plan

2   saying we need to get a certain number of holder releases in

3   order to make this worth our while.  Those were just icing on

4   the cake.

5           THE COURT:  No, they probably said what a lot of

6   parties said, let's see what we can get.  And whatever we can

7   get, we'll take it.  And I don't want to -- the lender can --

8           MR. ESKANDARI  If everyone had said I want to opt out,

9   every class or creditor, I'd question whether Bank of America

10  or the pre-petition lenders would be saying we don't want to go

11  through with this.

12          THE COURT:  I don't necessarily disagree with that.

13          MR. ESKANDARI:  So, yes, it's icing on the cake.  It's

14  a gratuitous release.  Class 4 is getting the exact same

15  treatment whether they tick the box or not.  It's basically a

16  gotcha for creditors.

17          THE COURT:  Well, actually that the courts generally

18  do that is a good thing.

19          MR. ESKANDARI:  It's sort of a gotcha for the unwary

20  creditor.  And maybe they're all big people, and they

21  understand their rights, but I deal with consumer protection,

22  and consumers -- lay people are often very confused.  And so

23  this seems like a gotcha to me.  Hey, we will give you nothing.

24  Please give us a release.

25          The final point I would like to make, and debtors'

1  counsel raises a very fair point about our motion for relief

2  from stay.  We do have a couple or several investor claims.

3  This is the first that debtors' counsel has posed this is a

4  problem to the -- to simple relief we seek.  If that's the only

5  hurdle, I'm sure I can get very fast approvals to stipulate to

6  that.

7           THE COURT:  All right.  Thank you.

8           I will say I've become convinced, despite my earlier

9  optimism, that the debtor is right, that no matter how much you

10  talk you will not be able to agree on language.  So I'm going

11  to grant the debtors' motion to continue the hearings on the

12  motions that request a determination that the automatic stay

13  does not apply to the hearing now set for September 18th.

14           I say that, and communicate this to the debtor.  I

15  fully expect that I would grant these motions, Mr. Collins,

16  absent some extraordinary situation that may occur on or before

17  September 18th.  I would have preferred that the parties could

18  have reached language today which would have satisfied them

19  both, but I've become convinced that doesn't seem possible.

20           The delay is just a little bit over three weeks.  I

21  don't think that's harmful to anyone.

22           I've said enough.  Are there any questions?

23           MR. COLLINS:  No, Your Honor.

24           THE COURT:  All right.

25           MR. ESKANDARI:  Thank you, Your Honor.

1        MR. COLLINS:  Your Honor, I think that simply leaves

2   outstanding the Department of Education's trust fund argument.

3   And, Your Honor, as we noted in our papers as well as, I

4   believe, Bank of America and others, the Student Committee,

5   Department of Education comes here today with no evidence

6   whatsoever.  They have no witnesses.  They served no discovery

7   upon the debtors or any other party with respect to this

8   argument.  They have been an active party in this case since

9   May 4th.  They had full notice of the proceedings here.  And

10  for them to come in at confirmation and say well, there might

11  be trust funds somewhere, in some accounts, and we spoke to a

12  couple of people, and it might be some fifteen percent, because

13  that's what it might have been in the past, simply does not

14  carry the day.

15        For them to have an extension of the investigation

16  period to do a full tracing of debtor funds would cause our

17  case to convert.  It's simply too late for them to come in

18  without evidence to support this proposition.  The debtors --

19        And let me also note, Your Honor, it's really hard to

20  hear the Department of Education say they don't have sufficient

21  information regarding the debtors and the debtors' finances.

22        As we noted in our pleadings, the Department of

23  Education has been all over this company for well over a year.

24  They had an operating agreement, which we attached to our

25  response, which noted all of the information that they were

1   entitled to received.  They also had an independent monitor.

2   They have also been in regular contact with Zenith, who holds

3   all of our books and records.  And for them to come here today

4   and say Your Honor, you have to deny confirmation because of

5   this potential trust fund argument, without any evidence and no

6   preparation whatsoever, we think that should be overruled.

7          THE COURT:  All right.  Before I go back to the

8   government, I noticed that the bank did file a response to the

9   request to extend the investigation period.  Would you like to

10  be heard in connection with that?

11         MS. HAGLE:  Thank you, Your Honor.  That makes sense,

12  because I think a lot of the same issues overlap.

13         We agree with the prospect that it is far too late in

14  this case for the Department of Ed to suddenly blindside all of

15  the constituencies that have worked so hard with this so-called

16  trust fund claim, especially given the fact that having lived

17  and died this case for the last fifteen or sixteen months,

18  there was no party more involved in the debtors' day-to-day

19  accounting operations, with a monitor in place, on site,

20  Patrick Fitzgerald, represented here throughout the case.  They

21  are well aware.

22         If they had been so concerned about a trust fund

23  argument, they should have been here on the first day.  They

24  should have been here on the second day arguing cash

25  collateral, participating in the budget.

1           The point we're trying to make in our papers is this

2      really is an issue between them and the debtors.

3           And, by the way, if the Department of Education is

4      asserting a trust fund argument on millions of dollars of the

5      estate's cash, Mr. Collins is right.  This case is over.  They

6      have no solution for an alternative.  It's just over, and it

7      goes to a conversion.

8           THE COURT:  Well, they're not required to offer one.

9           MS. HAGLE:  I agree.  But if we are all trying

10     constructively to do the right thing here, I think the point

11     has been made that my clients probably stand to get the

12     greatest benefit out of a conversion.

13           It's a fine line.  We've come this far.  Mr. Collins

14     is right.  It would be better for us to have an infrastructure

15     in place for an organized liquidation of the remaining assets.

16     But let's be clear.  If the case is converted, I'm still

17     standing, and I still stand to get -- my clients still stand to

18     get the majority of the benefits.

19           The students will get nothing.  The unsecured

20     creditors will get nothing.

21           THE COURT:  You know, you make an interesting point

22     that occurred to me as I was preparing for the hearing today.

23     And I expected, actually, someone to say it earlier.  But I

24     tend to agree with you about the effect of this plan not being

25     confirmed and the benefit, largely, on a conversion going to

 1   you.

 2            MS. HAGLE:  Correct.  So we really have tried to do

 3   the right thing.

 4            With respect to the specific issue of the lien

 5   validation, again, this is an issue between the government and

 6   the debtors.  We're not asserting liens on nonproperty of the

 7   estate.  If there is property out there in the world that is

 8   not property of Corinthian Colleges, we are not asserting a

 9   lien on it.  So it is simply not related to come and say they

10   want to tie us into that debate and extend our lien validation

11   deadline.  Again, any number of parties, including the State of

12   California and the unsecured creditors, have done a deep dive,

13   and to the extent that the government is asserting trust

14   claims, that is not an issue as between competing liens on

15   collateral.  It would mean that that amount of cash is not

16   property of the estate and therefore not within the purview of

17   our liens, and therefore there is no basis for them to come

18   forward now, at the eleventh hour, and seek this extension of

19   time to object to our liens.

20            THE COURT:  Thank you.

21            MR. KRESSE:  Your Honor, if, in fact, the trust funds'

22   balances do exist, and in some significant amount, which, of

23   course, we do not know, and the -- okay, it is -- today

24   is -- today we don't have any information.  But when we filed

25   the motion for an extension, the bank was well aware of what we

1  were looking for.  The debtors were well aware of what we were

2  looking for.

3          Yes.  Okay.  It is three months from the first day.

4          THE COURT:  Almost four.

5          MR. KRESSE:  Correct, Your Honor.  So I can't argue

6  about that.  But the reality is is that the bank account

7  statements for the known bank accounts, which were disclosed,

8  granted, at the outset, for student refund accounts, which is

9  what they call them, oddly, even though they're for student

10  living expenses.  Everyone agrees on that.  So we don't need

11  evidence of that, Your Honor.  That's what they were for.  All

12  right?

13          So we don't need evidence that there was an express

14  trust, because no one disagrees.  All right?  So it would say

15  no evidence.  Well, there is evidence of an express trust.

16  There's evidence of bank accounts that held the money that was

17  supposed to be going to students for living expenses.  Those

18  were trust funds.  No one argues that.

19          So the only issue remaining is what is the amount,

20  okay?  And the only amount that we would be -- that the

21  government would be entitled to at this point, we concede, is

22  the lowest intermediate balance, all right, which is,

23  essentially, what's left over after all these months of not

24  establishing what the amount was.

25          And so two weeks ago -- almost two weeks ago now, the

1  debtors, Zenith, maybe Bank of America, since they're Bank of

2  America accounts.  Maybe that doesn't matter, but they were

3  Bank of America accounts.  They could have provided us with

4  bank statements.  We didn't have the bank statements.

5       Yes, there was a monitor.  The monitor's job was not

6  to look at every transaction in the bank account, all right?

7  The basic job of the monitor, as I understand it, Your Honor,

8  was to make sure that when the government disbursed Title IV

9  funds, that there were students who were signed up for courses

10  or programs who were entitled to those funds, and that the

11  money would then be sent.  This was a -- and, again, I could be

12  wrong.  I'm willing to listen to the other attorneys here on

13  this who may be more expert.  But the reason the monitor was

14  there was to make sure the right amount of Title IV funds in

15  the macro went to the schools when they were entitled to them,

16  based on their students who were there.

17       So it's a different analysis.  And, again, the monitor

18  stopped working the day Corinthian closed, is my understanding.

19  All right?  So on April 27th, the monitor's job was done.  No

20  more money was being dispensed.  But there was money.  Our

21  allegation, yes, is that there was money in these student

22  refund accounts, three of them, on that day.  And we don't know

23  how much.  It would be simple for the trustee, the debtors, the

24  trustees -- all of the schools were trustees of those

25  funds -- to provide us with those bank accounts.  And at a

 1  minimum we would have some place to start.  And at the end

 2  of -- now, if there's money in the accounts, that could be

 3  100,000.  Could be 200,000.  It could be zero, Your Honor.  We

 4  would at least have a chance.  And, again, those documents

 5  could have provided us to (sic) a week and a half ago.

 6          THE COURT:  How do you respond to the agent's

 7  assertion that you didn't file any objections or responsive

 8  pleadings with respect to the cash collateral motion or orders

 9  or the various stipulations before now?

10          MR. KRESSE:  Your Honor, I think, as counsel for the

11  secured lenders stated, this is not an objection that relates

12  to their lien on cash collateral.  These are trust funds that

13  aren't part of the estate.  So it may be a fine distinction,

14  but they're the ones who make it.

15          So this money didn't belong in the estate in the first

16  place.  And, frankly, we understand that what's happened is if

17  this money did exist -- let's say it's two million dollars on

18  April 27th -- and it was then sent to other accounts that were

19  used for other purposes since then, then it's gone, and we

20  can't get it.  It's not coming back to the Department of

21  Education.  We understand that.  So the estate has benefitted

22  from funds that it wasn't entitled to in the first place.

23          Again, they're trustees.  They knew full well what

24  this money was.  They knew they weren't entitled to it.  They

25  knew they weren't entitled to spend it.  But as far as we know,

 1   that's what happened.

 2         THE COURT:  Thank you.

 3         MR. KRESSE:  Thank you, Your Honor.

 4         MR. COLLINS:  May I be heard, Your Honor, just on that

 5   last point?

 6         THE COURT:  Yes.

 7         MR. COLLINS:  The operating agreement makes very clear

 8   that Title IV funds that are received by the debtors are

 9   entitled to be utilized for operational expenses.  Monies that

10   came in from Title IV go into first a Title IV account and then

11   are immediately disbursed into the debtors' concentration

12   accounts and then utilized for operational expenses.  So for

13   counsel to the Department of Education to say we didn't have

14   the authority to spend those funds, that's simply not correct.

15   We had every authority to dispense, to utilize those funds for

16   operating expenses during the Chapter 11 cases.  And they never

17   once claimed that we did not have that authority.

18         THE COURT:  All right.  Thank you.

19         Well, this issue goes both to the United States'

20   motion to extend the investigation termination date under the

21   cash collateral order and to confirmation, because an escrow

22   has been requested, but, frankly, even if the government is

23   right that there may be some evidence out there, frankly, the

24   evidence on this record is insufficient for me to conclude

25   either that there's a trust fund claim or, even if there were,

1  in what amount?

2          And the government truly has come late on this issue.

3  The case is almost four months old.  It's not like it came in

4  just at the inception of the case.  I understand that

5  government feels a responsibility to chase whatever dollars it

6  can, and I don't blame it for filing the motion.

7          I just can't, on this record, make a principle

8  decision either that the extension of the termination date

9  should be granted or that some escrow, in any amount, should be

10  fixed as a condition of confirmation.

11          So I'll deny the United States' motion to extend the

12  investigation termination date, and, secondly, to the extent

13  that it is an objection to confirmation I will overrule that.

14          I've yet to hear from the Student Committee.  Does the

15  Student Committee wish to be heard?

16          MR. GAUTIER:  I keep trying to get up, and they keep

17  knocking me down.

18          THE COURT:  Well, there's a lot to be said today.

19  That's all.

20          MR. GAUTIER:  I don't believe there's any pending

21  objections left.  They didn't leave anything for me.

22          Mark, you could have left me something.  I think you

23  tried at the end.

24          I'll stop the routine.

25          Your Honor, Scott Gautier with Robins Kaplan.  I'm

1    here with my colleague, Lorie Ball, who's also in the

2    courtroom, and our local counsel, Chris Ward and Shanti Katona

3    from Polsinelli firm.

4           I'll keep our comments short, because I really don't

5    think there's any remaining objections to plan confirmation.

6    If there are, Your Honor, please let me know and I'll address

7    them.

8           But in Insilco Technologies, which is a Third Circuit

9    2007 case, the Third Circuit noted what we noted to the other

10   constituents at the beginning of this case and what Ms. Hagle

11   has touched on in her comments today, that liquidation in a

12   Chapter 11, through a plan, can provide meaningful and creative

13   relief to all creditors that would not be available in a

14   liquidation under Chapter 7.  This two-part plan is a result of

15   negotiations, creative thinking, concessions, professionalism

16   by counsel for the debtors, by the committee, by the lenders.

17   And, frankly, there's been professionalism, I would add, by

18   counsel for ED in California and all the AGs involved.  I think

19   there's been a very high level of professionalism and

20   creativity and hard work to reach what will hopefully be

21   confirmed as a plan today.

22          I've never been involved in a case where -- a Chapter

23   11 liquidate case where the result to be achieved is so far

24   removed from what could possibly be achieved in a Chapter 7.

25   This is a step for students.  Students are not going to see a

1  lot of relief here, but with respect to these estates, I think

2  they are getting the beset relief that they can.  This gives

3  them resources to go forward to find out to what extent they

4  were damaged or victimized by any conduct or alleged misconduct

5  by the debtors.  And if there was misconduct, if there was harm

6  to the students, it gives them resources to go and get

7  discharges of over two or three billion dollars of student loan

8  debt that still exists.  That type of relief could not be

9  afforded by the estate alone.  This trust fund is so vital and

10 is so important, and is so much more meaningful than funds that

11 might be recovered two or three or four years down the road,

12 after much litigation.

13         So we see the confirmation as a necessary step

14 forward.  Again, I had all these comments about objections that

15 were made.  I think they have been addressed.  I think the

16 Court has overruled them all.  And so unless the Court has

17 questions or issues that it believes are still open, I will

18 conclude my comments.

19         THE COURT:  No questions of you.  Thank you.

20         MR. GAUTIER:  Thank you, Your Honor.

21         THE COURT:  Is there anyone from whom I've not yet

22 hear who wishes to be heard in the way of an objection?

23         All right.  I think we have corralled them all.

24         Mr. Collins, does the debtor have any further

25 evidentiary record to present?

1        MR. COLLINS:  Your Honor, simply to -- which I don't

2   think I did this earlier -- admit into evidence the declaration

3   of William Nolan in support of, really, the uncontested, I

4   think, 1129 factors; make that part of the record, Your Honor.

5

6        THE COURT:  Is there any objection to the admission of

7   the Nolan declaration, which is at docket number 866?

8        I hear none.  It's admitted without objection.

9   (Declaration of William Nolan was hereby received into evidence

10  as Debtors' Exhibit, as of this date.)

11       THE COURT:  I'll hear whatever closing remarks the

12  debtor has and any other closing remarks that people would like

13  to make.

14       MR. COLLINS:  Your Honor, no further remarks.  I

15  simply would like to thank the Court for all of your time and

16  attention on this matter and express the same gratitude that

17  Mr. Gautier did as well with respect to the other professionals

18  in these cases.

19       It's been a difficult case, been an interesting case.

20  Of a part, these really did all work together.  Even if we did

21  not agree, at least we did so in a professional manner.  And we

22  would respectfully request confirmation of our third amended

23  combined plan.

24       THE COURT:  All right.  Anyone else wish to be heard?

25       MR. ESKANDARI:  Just very briefly, Your Honor.  I echo

1   all those sentiments too.  This has been, sort of, a pleasure

2   to be involved with due to all the -- Bernard Eskandari on

3   behalf of the people -- due to all the professionalism.  And

4   then thank you for taking care of me in Delaware.

5          THE COURT:  We take care of everyone here.

6          MR. ESKANDARI:  Yes.  I just wanted to say that since

7   I'm a little bit unfamiliar with the procedures out here,

8   depending on the timing of Your Honor's decision -- I don't

9   know if it's going to happen right now -- we would like to,

10  depending on if the plan is confirmed and subject to us

11  reviewing it, preserving any Bankruptcy Rule 8007 request to

12  you to stay entry of that order or stay effectiveness of that

13  order seeking any appeals.

14         THE COURT:  Well, let me do first things first, and

15  that is I don't think I specifically addressed the release

16  issue, and so that the record is clear, I find the releases,

17  both the debtor releases and the holder releases are warranted

18  under the circumstances here.  California and the other AGs

19  have argued well, there's no evidence to that.  The evidence is

20  in the disclosure statement and the plan.  It reveals the

21  concessions that the agent for the banks here have made,

22  specifically with respect to funding the conduct of the Chapter

23  11 proceeding and administrative and priority claims, releasing

24  liens on cash assets that it could otherwise have asserted its

25  lien on.

1       I also look at the result that if this plan is not

2    approved, and the case likely converted to Chapter 7, it's

3    really the bank who will come ahead of everybody, to the

4    exclusion of everyone else.  And I don't see how that benefits

5    the creditors generally.

6       I note also, both in connection with the releases,

7    that this is a plan that received overwhelming creditor

8    support.  I think that weighs heavily in favor of the release

9    situation and for confirmation of the plan.  But also,

10   specifically, I will conclude, in connection with these

11   circumstances, that I will deem consent to have occurred with

12   respect to the third-party releases with respect to those

13   creditors who are entitled to vote but who have not submitted

14   opt-out ballots, that it seems to me that the burden of having

15   to submit that is so light, when compared to the consequences

16   of not moving forward as the debtor has proposed, on the other

17   hand, are adverse, really, to all of the creditors of the

18   estate.

19      So for all of these reasons I will overrule all of the

20   objections that have not otherwise been resolved and will

21   provide -- will act on a proposed confirmation order.

22      Now, let's talk about timing.

23      Mr. Collins, when would you expect to have an order

24   for me in final form?

25      MR. COLLINS:  Your Honor, I think by first thing

1   tomorrow morning.  The changes that we need to make with

2   respect to the dissolution provisions are very minor.  I think

3   we'd have the time to have it over to you early mid-morning.

4           THE COURT:  Okay.  To answer the question on a request

5   for stay pending appeal, if it turns out there is to be such a

6   request, please make that known to chambers immediately.  It's

7   likely I would consider that by conference telephone, but you

8   would actually have to file something for me to do that.

9           I will tell you it's unlikely I would grant such a

10  stay, but I understand under the rules it's probably best for

11  you to come here first before you go across the street, and I

12  understand that.

13          Is there anything else that I need to address today

14  that's remained unaddressed or is there anything else we need

15  to discuss?

16          MR. COLLINS:  No, Your Honor.  Not from the debtor,

17  anyway.

18          THE COURT:  All right.  Thank you all very much.  That

19  concludes this hearing.  Court will stand adjourned.

20          (Whereupon these proceedings were concluded at 4:18 PM)

21

22

23

24

25

1

2                              **I N D E X**

3

4                              EXHIBITS

5    DEBTORS'             DESCRIPTION         PAGE

6                         Declaration of      29

7                         Catherine

8                         Nownes-Whitaker

9                         Declaration of      85

10                        William Nolan

11

12

13   (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                I N D E X (Continued)

3

4                                     RULINGS

5                                              PAGE      LINE

6   Debtors' motion to approve settlement         17        18

7   agreement with Zenith Education

8   Group, Inc. is granted.

9   Motion of Aerotek, Inc. for limited          24        19

10  discovery from Corinthian Colleges granted.

11  Committee's motion to retain Willkie Farr     39        15

12  & Gallagher as special insurance counsel

13  is granted.

14  Debtors' Request to Continue Motions for      73        10

15  Determination that Automatic Stay Does Not

16  Apply is Granted.

17  United States' Motion to Extend the           82        11

18  Investigation Termination Date in the Cash

19  Collateral Order is denied.

20  Debtors' Second Amended and Modified          87        19

21  Combined Disclosure Statement and

22  Chapter 11 Plan of Liquidation is Confirmed.

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    *Sharona Shapiro*

8                                           August 27, 2015

9    _____        _____

10   SHARONA SHAPIRO                         DATE

11   AAERT Certified Electronic Transcriber CET**D 492

12

13   eScribers, LLC

14   700 West 192nd Street, Suite #607

15   New York, NY 10040

16   (973)406-2250

17   operations@escribers.net

18

19

20

21

22

23

24

25

**1**

**1 (2)**
 28:2;34:10
**1.5 (1)**
 68:11
**10 (2)**
 17:21;68:9
**10.6 (3)**
 36:6;37:9,14
**100,000 (1)**
 80:3
**11 (11)**
 31:25;46:7;59:4;
 60:14;61:6;65:23;71:17;
 81:16;83:12,23;86:23
**1129 (2)**
 60:3;85:4
**1141c (2)**
 44:20;46:9
**1141d3 (2)**
 39:21;57:20
**118 (2)**
 52:16,23
**12 (1)**
 61:9
**120 (1)**
 18:16
**13 (3)**
 57:4;61:13;62:9
**13b (1)**
 57:10
**14th (1)**
 27:21
**150,000 (3)**
 35:22,24;36:9
**18th (3)**
 50:11;73:13,17

**2**

**2 (1)**
 11:14
**2:53 (1)**
 39:13
**200,000 (1)**
 80:3
**2004 (4)**
 17:22;19:15;21:20;
 23:14
**2007 (1)**
 83:9
**2014 (3)**
 18:2,10;22:14
**2015 (2)**
 18:11;32:10
**20th (2)**
 27:24;28:3
**21 (3)**
 27:20;28:9,10
**23 (2)**
 36:21;37:25

**24th (1)**
 28:12
**25th (1)**
 29:9
**27th (5)**
 27:6,10;68:21;79:19;
 80:18

**3**

**3:03 (1)**
 39:13
**300,000 (1)**
 35:21
**30th (1)**
 27:11
**31st (1)**
 32:10
**350,000 (4)**
 18:6;19:17;20:4,9
**350,000-dollar (2)**
 21:8;23:10
**362 (1)**
 61:20
**362b4 (3)**
 61:17,23;62:6
**364b4 (2)**
 49:9;50:22
**38 (1)**
 61:5
**39 (1)**
 61:5

**4**

**4 (3)**
 28:2,18;72:14
**4.3 (1)**
 35:23
**4:18 (1)**
 88:20
**4th (2)**
 27:17;74:9

**5**

**5 (2)**
 28:15;34:10
**5,000 (1)**
 51:25
**503b (2)**
 37:9;65:4
**507a4 (2)**
 35:20;36:2
**507a7 (2)**
 33:19;34:2
**524e (2)**
 47:7;59:22

**6**

**6 (2)**
 26:4;57:24

**600,000 (2)**
 36:3,12

**7**

**7 (6)**
 14:22;60:6;65:7;
 83:14,24;87:2
**712 (1)**
 27:16
**776 (1)**
 30:21

**8**

**8 (1)**
 12:9
**8007 (1)**
 86:11
**810,000 (3)**
 18:5;19:18;20:7
**810,000-dollar (2)**
 20:10;21:8
**818 (1)**
 31:18
**822 (1)**
 35:11
**825 (1)**
 31:19
**849 (1)**
 29:4
**862 (1)**
 29:11
**863 (1)**
 29:13
**866 (2)**
 29:14;85:7
**867 (1)**
 29:15
**881 (1)**
 29:17

**9**

**9019 (7)**
 14:23;36:21;37:18,25;
 47:24;60:3;70:1

**A**

**abandoned (1)**
 32:11
**able (11)**
 13:15;20:2;35:6;
 36:24;42:15;43:12;
 54:22;65:2,14;69:22;
 73:10
**ABRAMS (5)**
 5:10;12:21;14:12,12,
 15
**absent (1)**
 73:16
**absolute (1)**

**47:16**
**absolutely (1)**
 62:15
**abundance (2)**
 51:6;55:21
**abundantly (1)**
 62:9
**acceptable (3)**
 12:11;14:21;24:2
**accord (1)**
 50:23
**accordance (1)**
 56:21
**according (1)**
 67:9
**account (7)**
 36:11;67:15,16;68:12;
 78:6;79:6;81:10
**accounting (1)**
 75:19
**Accounts (17)**
 9:3;18:3,4;67:12;
 68:19,23;74:11;78:7,8,
 16;79:2,3,22,25;80:2,18;
 81:12
**accurately (1)**
 36:19
**achieved (3)**
 17:3;83:23,24
**achieving (1)**
 17:9
**across (1)**
 88:11
**Act (11)**
 6:3;35:11,13,19;
 36:10,13,15,18;37:24;
 60:9;87:21
**action (12)**
 16:21;29:16;41:22,23;
 48:5;49:11;52:12;53:21;
 58:7;59:9,10;60:20
**actions (11)**
 25:14;49:15;58:1,13;
 59:7,15;61:21;62:16;
 69:15,20,22
**active (1)**
 74:8
**actual (1)**
 71:2
**Actually (5)**
 52:4;64:15;72:17;
 76:23;88:8
**adamantly (1)**
 62:20
**add (5)**
 34:24;39:6;51:22;
 65:9;83:17
**added (2)**
 46:18;62:2
**addition (5)**
 11:9;15:13,19;29:16;
 36:1
**additional (4)**

**11:9,9;25:3;44:22**
**address (10)**
 14:22;19:13;28:4;
 40:11;46:25;48:23,23,
 25;83:6;88:13
**addressed (2)**
 84:15;86:15
**adequate (1)**
 36:11;60:17
**adjourned (1)**
 88:19
**adjudicate (1)**
 58:13
**admin (3)**
 36:8;60:8,18
**administrative (13)**
 13:5;27:25;36:5;37:7,
 10,13;53:2,8;60:15;
 63:13;64:25;65:21;
 86:23
**admission (2)**
 29:3;85:6
**admit (2)**
 28:21;85:2
**admitted (2)**
 29:5;85:8
**advance (2)**
 13:14;28:5
**advantage (1)**
 45:22
**adversary (1)**
 35:5
**adverse (1)**
 87:17
**Advertising (1)**
 49:14
**advised (1)**
 17:4
**Aerotek (21)**
 8:13;17:22,25;18:2,5;
 20:22,23;22:5,9,16,16,
 19,19,25;23:1,4,6,11,15;
 24:6,14
**Aerotek's (1)**
 22:12
**affect (9)**
 21:9,10,11;44:25;
 49:18;54:25;55:4;57:1;
 59:7
**affidavit (2)**
 26:16;27:14
**afforded (1)**
 84:9
**afternoon (20)**
 11:3,4,5,14;12:15;
 13:4,11;14:18;15:24;
 16:16;17:24;21:25;
 32:23;33:4,9,21;34:6,8;
 39:25;66:24
**again (24)**
 16:16;23:2,24;24:7,
 14;25:8;35:3;43:16;
 44:9;47:7;49:24;55:4;

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 93 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

56:4;58:9,13;69:11,25;
77:5,11;79:11,17;80:4,
23;84:14
**against (24)**
16:6,10;17:7;20:13,
23,24;21:3,4,9;23:7;
32:17;41:23;48:5;56:3;
58:1,7,13;60:21;65:13,
15;69:15,20,22;70:20
**agenda (8)**
12:7,8,9;14:22;17:21;
25:7,10;26:4
**agent (6)**
13:5;28:1,13;37:7;
65:22;86:21
**agent's (1)**
80:6
**ago (6)**
12:25;43:22;60:7;
78:25,25;80:5
**agree (13)**
24:17;26:5,6;42:5,14;
45:16;55:19;59:13;
73:10;75:13;76:9,24;
85:21
**agreed (2)**
21:15;54:12
**agreement (26)**
15:1,8;16:8,12;18:1,7,
9,15,16,17;20:6,11;
21:15,18,19;24:3,21;
27:22,23;33:7;34:19;
52:6;58:21;60:6;74:24;
81:7
**agrees (1)**
78:10
**AGs (1)**
83:18;86:18
**ahead (3)**
31:22;51:21;87:3
**aid (2)**
67:20;68:5
**alas (1)**
18:12
**allegation (2)**
25:24;79:21
**allegations (3)**
61:12,22;62:20
**allege (1)**
52:1
**alleged (1)**
84:4
**alleging (1)**
52:11
**ALLEN (2)**
9:18;33:5
**ALLINSON (1)**
8:12
**allow (4)**
28:1;38:17;42:11;
62:12
**allowed (7)**
24:4;35:20;36:2,8,8,9;

60:18
**Almost (3)**
78:4,25;82:3
**alone (2)**
46:20;84:9
**along (5)**
26:21;29:14;33:23;
38:13;63:22
**alternative (1)**
76:6
**although (4)**
19:2;43:17;53:17;63:7
**always (2)**
71:13,23
**amend (1)**
20:6
**amended (3)**
29:11;34:3;85:22
**amendment (3)**
19:8;22:18;37:18
**amendments (5)**
18:22;22:11,17;23:22;
24:22
**America (13)**
6:19,24;13:5;29:25;
37:7;65:13,21;69:24;
72:9;74:4;79:1,2,3
**among (1)**
64:7
**amount (29)**
20:4;21:11;23:10,10;
28:17;35:21,21;36:2,3,
25;48:2;52:3,5;61:11,
15;65:8;67:10,11;68:15,
16,18;77:15,22;78:19,
20,24;79:14;82:1,9
**amounts (3)**
15:2;23:12;28:19
**analysis (1)**
79:17
**and/or (1)**
70:21
**ANDERSON (1)**
6:18
**ANNE (2)**
5:15;9:15
**anticipated (1)**
50:7
**APA (19)**
15:1,12;18:21,21;
19:9,10,12;21:13;22:6,6,
10,11,13,17,18,19;23:22,
22;24:21
**apart (1)**
26:7
**apparently (1)**
67:14
**appeal (3)**
53:8,16;88:5
**appeals (1)**
86:13
**appear (2)**
54:19;55:6

**appeared (1)**
32:12
**appearing (1)**
12:16
**appease (1)**
41:17
**applicable (4)**
41:12;56:21;59:6,16
**application (4)**
13:2,16;53:3,7
**applies (3)**
25:13;48:22;64:5
**apply (2)**
71:22;73:13
**appreciate (4)**
17:9;22:5;40:6;55:16
**approach (3)**
15:9;61:1;70:24
**appropriate (17)**
24:2,20,25;35:4;
37:24;44:4;45:8;47:7;
48:24;53:11;56:19;57:8;
62:3,23;64:5,13;68:19
**approval (5)**
36:22;37:1;52:14;
53:5;59:15
**approvals (1)**
73:5
**approve (2)**
13:18;50:11
**approved (8)**
27:5,10,24;32:13;
37:2;45:5;46:17;87:2
**approving (1)**
32:10
**approximate (1)**
51:25
**approximately (1)**
50:12
**April (4)**
67:21;68:20;79:19;
80:18
**ARDAVAN (1)**
5:4
**argue (1)**
78:5
**argued (2)**
71:15;86:19
**argues (1)**
78:18
**arguing (1)**
75:24
**argument (15)**
21:2;26:17,19,20;
31:10;33:17;57:23;58:4;
61:19;71:16;74:2,8;
75:5,23;76:4
**arguments (8)**
19:13;26:8,10;39:8;
57:22;60:24;62:1,3
**arisen (1)**
16:11
**Arlington (1)**

31:14
**arose (1)**
34:6
**around (1)**
61:6
**arrangement (2)**
17:6;37:16
**Article (3)**
57:4,10;62:9
**articulate (3)**
63:7;65:15,18
**articulating (1)**
65:17
**ASHBY (1)**
7:2
**assert (3)**
20:6,9;21:3
**asserted (4)**
15:1;16:10;31:25;
86:24
**asserting (4)**
76:4;77:6,8,13
**assertion (1)**
80:7
**asset (2)**
16:12;18:9
**assets (17)**
17:2;35:25;42:21,24;
44:20;55:2;56:3;57:7;
58:8,16;59:5,11;65:3;
69:14,16;76:15;86:24
**ASSISTANT (3)**
8:19;9:4;54:10
**assumed (2)**
18:8;19:5
**assure (1)**
26:7
**assures (1)**
45:4
**attached (1)**
74:24
**attack (1)**
48:8
**attempt (4)**
20:19;22:12;41:16;
54:5
**attempts (1)**
41:20
**attention (1)**
85:16
**ATTORNEY (20)**
8:17,19,22,24;9:2,4;
25:13;29:25;31:8,8;
38:13;39:23;49:11;
51:15;54:11;55:12;
56:25;58:21;59:14;
63:17
**Attorneys (19)**
5:8,14,19;6:3,8,13,19,
24;7:3,8,14,20;8:4,13;
9:9,14,19;57:10;79:12
**August (10)**
27:17,20,21,24;28:3,9,

10,12;29:9;32:10
**AUSTIN (3)**
6:23;13:4;37:7
**authorities (1)**
46:5
**authority (7)**
47:15,17;50:23;56:20;
81:14,15,17
**authorize (2)**
41:10;44:3
**automatic (7)**
25:15,16;49:10;57:17;
58:19;62:5;73:12
**automatically (1)**
49:10
**available (2)**
65:3;83:13
**average (1)**
67:25
**avoid (1)**
52:20
**awarding (1)**
61:13
**aware (7)**
16:10;17:4;22:25;
67:11;75:21;77:25;78:1
**away (4)**
25:17;45:9;57:18;
61:20

**B**

**back (10)**
25:7;52:7,21,25;53:5;
55:20;63:12;71:9;75:7;
80:20
**background (1)**
27:4;52:11
**balance (3)**
36:10,13;78:22
**balances (1)**
77:22
**BALL (2)**
7:16;83:1
**ballot (4)**
32:15;70:19;71:7,10
**ballots (5)**
27:11;64:10,12,16;
87:14
**Bank (30)**
6:19,24;13:5;37:7;
65:13,21;66:8,8,9,9;
67:11,15;68:12;69:24;
71:15;72:9;74:4;75:8;
77:25;78:6,7,16;79:1,1,
3,4,4,6,25;87:3
**Bankruptcy (8)**
17:22;26:17;30:12;
51:2;55:19;58:24;62:11;
86:11
**banks (1)**
86:21
**bar (3)**

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)                                                                                    August 26, 2015

32:4,6;58:15

**barring (1)**
58:1

**base (1)**
46:5

**based (4)**
33:11;42:4;46:19;
79:16

**basic (1)**
79:7

**basically (2)**
37:12;72:15

**basis (5)**
13:18;51:10;67:19,23;
77:17

**Bear (1)**
30:7

**become (2)**
73:8,19

**begin (1)**
26:13

**beginning (1)**
83:10

**behalf (21)**
11:6;12:17;13:5,12,
23;14:19;15:25;16:17;
17:25;22:1;30:17;32:24;
33:10;36:18;37:7;40:1;
51:15;56:9;66:25;69:7;
86:3

**belief (1)**
46:16

**believes (2)**
23:25;84:17

**bells (1)**
46:18

**belong (1)**
80:15

**below (1)**
36:4

**belt (3)**
43:6;44:23;69:12

**beneficiaries (1)**
69:5

**benefit (5)**
60:8,13;66:19;76:12,
25

**benefits (3)**
66:19;76:18;87:4

**benefitted (1)**
80:21

**BERMAN (1)**
10:6

**BERNARD (4)**
5:4;39:25;69:7;86:2

**beset (1)**
84:2

**best (2)**
47:24;88:10

**better (1)**
76:14

**beyond (3)**
40:16;46:14;57:23

**BIDDLE (2)**
7:19;15:25

**BIFFERATO (2)**
6:9;33:4,9,10,14

**big (2)**
50:18;72:20

**bigger (1)**
43:7

**billion (1)**
84:7

**binder (1)**
19:1

**bit (4)**
12:8;50:14;73:20;86:7

**blackline (1)**
56:13

**blame (1)**
82:6

**bleed (1)**
44:24

**bless (2)**
11:25;12:1

**blindside (1)**
75:14

**block (1)**
44:7

**board (4)**
29:20,23;52:23;53:1

**boils (1)**
24:15

**books (1)**
75:3

**both (12)**
28:2,16;31:24;42:14;
46:23;56:18;58:18;62:3;
73:19;81:19;86:17;87:6

**bound (1)**
32:17

**bounds (1)**
39:2

**box (3)**
61:17;71:9;72:15

**BRANCH (3)**
9:10;32:23,24

**Brandon (1)**
10:8

**BRE/OC (7)**
6:8;9:19;31:18,24;
32:21;33:6,10

**break (2)**
38:17;39:9

**brief (1)**
22:2

**briefly (6)**
13:13;16:17;23:6;
40:11;63:3;85:25

**bring (1)**
50:11

**broad (2)**
16:23;58:14

**broader (2)**
22:8;44:18

**brought (1)**

49:11

**BROWN (3)**
5:18;13:23;16:17

**budget (3)**
13:10;62:18;75:25

**burden (8)**
21:13,20;23:16,21;
70:21;71:4,6;87:14

**Bureau (11)**
8:23;10:4;31:13;
51:15;52:6,16,23;53:1,6,
9;54:1

**Bureaus' (1)**
54:6

**buried (1)**
42:1

**Business (1)**
52:15

---

**C**

**cake (2)**
72:4,13

**CALIFORNIA (24)**
5:2,3;8:23;31:9;40:1;
49:11,16;51:16;52:15;
54:9,12;56:23;57:22;
60:25;61:2,21;62:1,2,14;
65:12;69:8;77:12;83:18;
86:18

**California's (1)**
49:13

**call (2)**
70:8;78:9

**called (2)**
16:8;44:19

**calls (1)**
46:21

**came (3)**
12:24;81:10;82:3

**Campus (1)**
7:3

**Can (38)**
11:20;14:16;15:9;
18:15;19:13;26:23;
27:15;29:17;30:25;31:4,
23;32:3;40:24;45:22;
46:23;48:1,10,23;52:24;
53:1;54:23;55:3;56:1;
58:16;60:4;61:21;63:22;
67:23;69:14;70:20;72:1,
6,6,7;73:5;82:6;83:12;
84:2

**capacity (2)**
15:17,18

**care (2)**
86:4,5

**careful (1)**
58:17

**CAROLYN (1)**
10:3

**carry (1)**
74:14

**CARTER (2)**
8:24;51:14

**carve (1)**
67:5

**case (46)**
11:23;16:12;22:7;
26:1,19;37:11,13;42:14;
46:20,20;50:16,17;51:3;
52:4,14;53:10,10,16;
54:3,4,17,20;55:2,4,9;
59:21;60:11;63:9;71:13,
13;74:8,17;75:14,17,20;
76:5,16;82:3,4;83:9,10,
22,23;85:19,19;87:2

**cases (11)**
13:18;32:1;35:20;
41:23;46:19;54:4;56:1,
4;60:16;81:16;85:18

**cash (12)**
13:9;64:24;65:1;67:3;
71:17;75:24;76:5;77:15;
80:8,12;81:21;86:24

**CATHERINE (3)**
10:5;28:22;29:6

**cause (1)**
74:16

**causes (7)**
16:21;29:16;41:22,23;
44:23;48:5;60:20

**causes-of-action (1)**
17:5

**caution (3)**
51:6;55:18,21

**cease (2)**
43:23;56:22

**central (1)**
64:21

**certain (7)**
15:1,2,21;25:24;
27:17;28:4;31:20;32:5;
42:20;45:21;50:25;
57:22;61:8;72:2

**certainly (17)**
18:18;19:6,9,20;
20:11,23;22:5;23:1,9,16,
23;24:5;25:13;53:23;
56:2;60:15;65:7

**certification (1)**
24:25

**challenge (1)**
67:3

**chambers (2)**
39:15;88:6

**chance (1)**
80:4

**change (1)**
15:12

**changed (2)**
38:23;57:15

**changes (5)**
15:9,11;26:21;30:6;
88:1

**Chapter (13)**

31:25;46:7;59:4;60:6,
14;65:7;81:16;83:12,14,
22,24;86:22;87:2

**charged (1)**
34:14

**chase (1)**
82:5

**checks (1)**
68:23

**choose (1)**
70:21

**CHRIS (3)**
8:5;12:20;83:2

**CHRISTOPHER (2)**
5:9;6:14

**Circuit (5)**
39:3;40:12;47:10;
83:8,9

**Circuits (1)**
47:9

**circumspect (1)**
69:21

**circumstances (4)**
13:17,19;86:18;87:11

**cited (3)**
46:5;47:18;54:5

**Civil (1)**
33:22

**claim (37)**
19:17,22;20:4,6,7,8,
10,15,25;21:3,4,8,9;
23:5,7,8,9,11;28:16,17;
32:2,3,3;35:20;36:2,4,5,
12;37:9,11;60:17;65:8,
15;66:16;70:23;75:16;
81:25

**claimant (1)**
6:3

**claimants (10)**
8:4;35:11,13,19;
36:10,13,15;37:17;
60:10,18

**claimed (2)**
28:15;81:17

**claims (30)**
15:1;16:6,7,9,10;17:2,
5,7;27:18;28:1,19;
33:19;36:8,8,9;47:23;
58:15;60:9,16;63:12,13;
65:1,4,7,19;66:17,18;
73:2;77:14;86:23

**clarification (4)**
15:13;37:9;69:14,17

**clarified (1)**
16:4

**clarify (5)**
13:6;32:1,14;41:21;
64:1

**clarifying (3)**
15:21;57:9;58:18

**Class (10)**
28:2,2,15,15,18;
36:18,23;72:9,14

**classes (1)**
28:13

**clear (20)**
16:25;22:20,21,22;
40:12;41:17,25;42:8;
44:12,13,21;50:22;
54:24;55:11;58:2;59:21;
62:9;76:16;81:7;86:16

**Clearly (6)**
17:6;19:16;39:2;
40:18;49:9;51:8

**CLERK (2)**
11:2;39:14

**client (2)**
19:14,16

**clients (2)**
76:11,17

**close (2)**
40:25;41:4

**closed (4)**
18:10;68:21,24;79:18

**closing (3)**
19:1;85:11,12

**cocounsel (1)**
33:10

**Code (7)**
26:17;30:12;46:11,12;
52:15;58:24;62:11

**COHEN (1)**
7:21

**collaboration (1)**
13:25

**collateral (9)**
13:10;45:21;64:25;
67:3;75:25;77:15;80:8,
12;81:21

**colleague (2)**
46:16;83:1

**colleagues (2)**
33:23;64:8

**collected (1)**
65:13

**collection (2)**
34:12,17

**Colleges (4)**
52:7;61:8,10;77:8

**College's (1)**
61:14

**Collins (64)**
10:8;11:5,6,8,11,19,
21;12:1,3,6,14;17:19;
25:7,8;26:11,13,15;27:3;
28:25;29:8;30:9,19;
31:4,7,23;33:15,25;
35:10,15;36:19;37:8,22;
38:4,6,11;39:10,12,18;
50:9;51:18,20;56:9,9,15,
16;57:14,17;59:13,25;
60:2;61:4;73:15,23;
74:1;76:5,13;81:4,7;
84:24;85:1,14;87:23,25;
88:16

**Collins' (2)**

**colloquially (1)**
49:9

**combined (2)**
29:12;85:23

**comfort (6)**
41:25;43:18;44:22;
48:20;51:5;59:1

**coming (2)**
36:20;80:20

**comity (1)**
55:13

**comment (1)**
55:23

**comments (5)**
33:12;83:4,11;84:14,
18

**Committee (32)**
5:8,14,19;6:13;7:8,14;
9:14;12:12,17,19;13:8,
23;14:2;15:6,20;16:18,
22;17:4;29:18,22,24;
34:7,16;35:3;45:25;
60:22;66:14;68:14;74:4;
82:14,15;83:16

**committee's (2)**
12:10;38:12

**common (2)**
61:11,14

**Commonwealth (1)**
8:18

**communicate (1)**
73:14

**communicating (1)**
42:19

**communications (1)**
19:1

**Company (3)**
9:9;31:18;74:23

**compared (1)**
87:15

**compensation (2)**
61:7,15

**competing (1)**
77:14

**Competition (1)**
49:13

**complaint (7)**
20:24,25;61:1,5,6,17;
62:12

**completed (1)**
41:12

**completely (2)**
63:10;64:2

**compliance (1)**
23:17

**complies (1)**
58:23

**comply (2)**
47:23;57:23

**compromise (2)**
47:24;60:2

**Comptroller (1)**

**Comptroller's (2)**
30:24;31:1

**concede (1)**
78:21

**conceded (1)**
64:18

**concentration (1)**
81:11

**concern (7)**
16:22;44:18;55:18;
58:3;65:17,18;69:16

**concerned (2)**
55:13;75:22

**concerns (8)**
22:4,24;24:9;25:5;
28:4;41:17;47:6;66:18

**concessions (4)**
65:9;66:20;83:15;
86:21

**conclude (3)**
81:24;84:18;87:10

**concluded (1)**
88:20

**concludes (1)**
88:19

**conclusion (2)**
14:10;50:1

**conclusions (1)**
47:13

**condition (1)**
82:10

**conduct (6)**
34:14;45:11;49:17;
61:12;84:4;86:22

**conducted (1)**
60:21

**confer (1)**
24:24

**conference (1)**
88:7

**conferred (1)**
53:20

**confident (1)**
40:24

**confidential (2)**
52:5,8

**confidentiality (10)**
21:15,17;22:24;23:2,
25;24:1,3,8,16,21

**confirm (9)**
11:24;14:1;20:25;
30:25;31:5,24;32:8,25;
35:17

**confirmation (61)**
17:21;25:10,11,19,24;
26:6,7,8,16,22;27:14;
28:23;29:14,15;30:6,23;
32:2,5,7;33:20;34:4,9,
24,25;35:8;38:9;40:15,
16;42:1;43:15;46:13,17;
48:16;50:8,19;53:17;
55:8,25;56:11,18;58:5,6,

**11,11;62:4,24;64:25;**
69:13,19;70:12,13;
74:10;75:4;81:21;82:10,
13;83:5;84:13;85:22;
87:9,21

**confirmed (8)**
42:11,24;45:4;53:13;
61:20;76:25;83:21;
86:10

**confirming (1)**
25:14

**confirms (2)**
25:12;34:23

**confused (1)**
72:22

**confusion (1)**
19:10

**connected (1)**
18:21

**connection (11)**
13:2;17:12;18:6,9;
21:4;22:13;26:9;64:20;
75:10;87:6,10

**CONNOLLY (1)**
6:7

**consensual (1)**
64:2

**consent (4)**
59:25;64:7;70:17;
87:11

**consented (1)**
61:16

**consequences (2)**
45:22;87:15

**consider (1)**
88:7

**consideration (8)**
48:2,7;64:23;70:10,
14,15;71:3,21

**considered (1)**
64:7

**consist (2)**
26:14;46:17

**consistent (1)**
33:1

**constituencies (1)**
75:15

**constituents (1)**
83:10

**constructively (1)**
76:10

**consultation (1)**
41:9

**consume (1)**
11:16

**Consumer (3)**
10:4;31:13;72:21

**consumers (2)**
49:16;72:22

**contact (1)**
75:2

**contain (1)**
67:12

**contained (1)**
67:12

**contains (1)**
41:16

**contest (1)**
54:19

**contested (1)**
35:2

**context (1)**
47:18

**contingent (1)**
19:21

**continue (8)**
43:12;49:6;54:17,18;
55:8;59:9;61:21;73:11

**continued (3)**
26:10;42:21;62:24

**contracts (1)**
32:6

**Controller (1)**
9:3

**conversations (1)**
15:6

**conversion (3)**
76:7,12,25

**convert (1)**
74:17

**converted (2)**
76:16;87:2

**convinced (2)**
73:8,19

**cooperation (1)**
17:9

**copies (1)**
22:11

**copy (2)**
22:10;61:1

**Corinthian (12)**
18:2,6;52:6,7;53:4,7;
61:8,10,14;68:10;77:8;
79:18

**corporate (1)**
56:19

**corporation (1)**
62:22

**corralled (1)**
84:23

**correctly (1)**
33:6

**CORROON (1)**
6:18

**cost (1)**
55:5

**costs (1)**
37:13

**COUNSEL (24)**
5:13;9:13;12:12,19;
15:19;23:6;24:24;26:21;
33:1,6;37:19,23;40:6;
41:2;51:9;56:24;69:11;
73:1,3;80:10;81:13;
83:2,16,18

**counsel's (2)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 96 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

57:23;69:18

**couple (9)**
40:5;53:19,24,24;
54:13;56:10;70:19;73:2;
74:12

**course (6)**
38:1;60:13;63:5;
68:16;71:15;77:23

**courses (1)**
79:9

**COURT (171)**
11:3,8,12,20,25;12:2,
5,13,23;13:21;14:4,8,10,
13,16,21,24;15:10,23;
16:4,12,13,14;17:11,18;
18:12,23;19:22,24;20:1,
16;21:1,24;22:20;23:21;
24:11,17,19,24;25:6;
26:3,5,12,24;27:6,24;
28:24;29:2;30:7,15;
31:1,6,22;32:13,21;33:3,
8,13;34:11,17,24;35:9,
12,14;36:15;37:4;38:2,5,
10,20;39:3,11,15,24;
40:20;41:1,3,8,14;42:3,
23;43:4,10,13,16,25;
44:3,15,25;45:1,3,5,16,
20,25;46:3,15,15;47:2,4;
48:11,19,25;49:2,4,17;
50:4,16,25;51:3,12,18,
21;54:8,14;55:14,15,18;
56:8,15;57:13,15;59:12,
23;60:1;61:3;62:21,25;
63:5,14;64:6,15;65:20,
23;66:1,3,6,10,21;69:6;
70:6,16;71:12;72:5,12,
17;73:7,24;75:7;76:8,
21;77:20;78:4;80:6;
81:2,6,18;82:18;84:16,
16,19,21;85:6,11,15,24;
86:5,14;88:4,18,19

**COURTNEY (1)**
9:4

**courtroom (5)**
15:20;28:24;30:16;
33:24;83:2

**courts (3)**
55:19;59:4;72:17

**Court's (1)**
39:2

**cover (2)**
16:3,3

**covered (3)**
13:7;16:5;32:8

**covers (1)**
57:7

**created (1)**
16:25

**creative (2)**
83:12,15

**creativity (1)**
83:20

**creditor (13)**

19:14,16,19,21;70:10,
18,22,23;71:9,23;72:9,
20;87:7

**Creditors (16)**
5:8,14,19;7:8,9;21:10;
27:12,13;36:14;72:16;
76:20;77:12;83:13;87:5,
13,17

**creditors' (4)**
29:18;60:22;66:14;
68:14

**current (1)**
41:23

**currently (3)**
22:10;37:14;68:3

**cut (1)**
68:24

---

## D

**damaged (1)**
84:4

**damages (2)**
51:24;61:14

**Danielle (1)**
33:23

**date (22)**
25:17;29:7;32:2,4,5,6,
7;36:24;43:14;45:8;
50:6,8,13;57:18;58:15;
63:11;67:3;68:17;81:20;
82:8,12;85:10

**dated (1)**
18:10

**day (9)**
35:7;37:10;62:21;
74:14;75:23,24;78:3;
79:18,22

**days (5)**
18:16;50:24;51:10,10;
53:20

**day-to-day (1)**
75:18

**de (1)**
35:6

**dead (1)**
45:12

**deadline (5)**
12:25;28:6,9,11;77:11

**deal (2)**
33:2;72:21

**dealing (1)**
40:15

**deals (1)**
40:25

**dealt (1)**
44:20

**debate (2)**
16:2;77:10

**debt (2)**
54:23;84:8

**debtor (49)**
19:4,21;20:16,17,20;

21:3,9,13,20,21,24;22:1;
24:8;25:12;35:25;40:13;
41:10;42:4,8,4;43:19,20;
44:3,7,8,16,22;45:3;
46:8,22;47:15;48:3;
49:5;53:14;59:22;64:15;
69:20,21,22;70:18;
71:14,19;73:9,14;74:16;
84:24;85:12;86:17;
87:16;88:16

**debtors (63)**
11:7;14:20;15:16,18;
19:16;22:4,9,12;23:15,
17,25:17;27:17,21,25;
28:3;29:9;31:23;34:13;
37:19;40:8,23;41:6,20,
21,24;43:13,22;45:9;
49:17,19;50:5,20;51:25;
52:11;53:12,18;54:5,17;
56:10,19;57:6;58:8,13;
60:2;62:15,19;67:14,16;
68:3;69:3,15;71:15;
74:7,18,21;76:2;77:6;
78:1;79:1,23;81:8;
83:16;84:5

**debtors' (28)**
20:21;21:2;25:12;
26:9;29:19;33:1;34:14;
40:6;41:2;42:12,19;
45:7;46:12,12;48:4;
51:9;57:2;58:16;67:18;
69:11,18;72:25;73:3,11;
74:21;75:18;81:11;
85:10

**December (1)**
18:2

**decide (1)**
59:12

**decided (2)**
26:9;52:8

**decision (5)**
53:1,8,9;82:8;86:8

**decisional (1)**
41:9

**decisions (1)**
59:3

**declaration (9)**
28:12,22;29:3,6,13;
68:1;85:2,7,9

**declaratory-judgment-type (1)**
59:3

**declare (2)**
18:15;20:5

**declared (1)**
18:17

**deem (1)**
87:11

**deep (1)**
77:12

**defend (4)**
55:5;62:15,16,21

**defendant (1)**
59:10

**defer (1)**
37:18

**deficiency (1)**
65:8

**defined (1)**
15:12

**Delaware (1)**
86:4

**delay (9)**
49:25;50:16;51:7;
53:14,20;54:2,24;63:18;
73:20

**delayed (3)**
49:23;50:23;53:17

**delete (1)**
56:21

**deleted (2)**
22:19;57:6

**denial (1)**
53:10

**denied (5)**
23:20;49:23;53:6;
62:12,20

**Dennis (2)**
30:10,15

**deny (2)**
75:4;82:11

**denying (1)**
53:3

**DEPARTMENT (17)**
5:2;10:3;25:21;33:22,
24;34:19;66:25;67:4;
68:10;74:2,5,20,22;
75:14;76:3;80:20;81:13

**Department's (2)**
34:17;67:21

**depending (3)**
18:18;86:8,10

**deposit (1)**
33:18

**DEPUTY (1)**
8:24

**derail (1)**
46:11

**describe (1)**
11:13

**despite (1)**
73:8

**determination (3)**
48:1,22;73:12

**determinations (1)**
59:2

**determine (5)**
21:7;30:4;34:11;
68:15;70:2

**determined (2)**
19:20;59:16

**died (1)**
75:17

**different (2)**
51:23;79:17

**difficult (3)**
53:21,25;85:19

**diligence (1)**
20:24

**directed (1)**
50:5

**directing (1)**
21:14

**directly (1)**
21:9

**directors (2)**
15:15;16:24

**disagree (3)**
43:2,5;72:12

**disagreement (1)**
69:2

**disagrees (1)**
78:14

**disbursed (4)**
34:13;59:5;79:8;81:11

**discharge (8)**
28:8;34:2;41:20,22;
47:8;57:19;58:19;69:22

**discharges (3)**
57:25;58:6;84:7

**disciplinary (6)**
52:1,10,12;53:9,21;
54:4

**discipline (4)**
52:16,19,24;53:2

**disclose (1)**
52:8

**disclosed (2)**
52:3;78:7

**disclosure (6)**
27:6,10;29:12;38:23;
48:18;86:20

**discouraging (1)**
45:11

**discovery (8)**
20:17,19,23;23:14,18;
25:4;65:13;74:6

**discrete (1)**
34:5

**discuss (1)**
88:15

**discussed (2)**
23:6;66:17

**discussion (1)**
38:21

**discussions (1)**
24:2

**disgorging (1)**
61:7

**dispense (2)**
68:19;81:15

**dispensed (1)**
79:20

**disputed (1)**
27:18

**dissolution (13)**
38:15;40:9,11,13,15,
17;41:5,11;44:4;56:17,
20;59:5;88:2

**dissolve (1)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 97 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

40:13
dissolving (1)
43:23
distinction (3)
64:8,13;80:13
distinguish (1)
54:5
distributed (1)
37:3
distribution (11)
16:21;21:10;27:22;
29:21;35:24;36:3,24;
37:1;43:1;58:2;65:2
District (1)
64:3
dive (1)
77:12
divergent (2)
46:20;64:7
divest (1)
69:20
divests (1)
58:12
Division (1)
33:22
docket (14)
27:10,15;29:3,11,12,
14,15,17;30:20;31:16,
18,19;35:11;85:7
document (2)
43:22;44:13
documentation (2)
67:10,13
documents (5)
18:21;24:5,8;65:14;
80:4
dollars (29)
18:5,6;19:17,18;20:4,
7,9;35:21,22,23,24;36:3,
6,9,12;37:10,14;50:12;
51:25;65:6;67:19,22,24;
68:9,11;76:4;80:17;
82:5;84:7
Domestic (1)
10:6
done (4)
37:20;62:1;77:12;
79:19
dovetails (1)
42:21
down (3)
24:16;82:17;84:11
drafted (1)
64:17
drafts (1)
27:22
DRINKER (2)
7:19;15:25
DSI (1)
10:6
due (6)
20:24;30:5;34:20;
38:1;86:2,3

during (2)
65:23;81:16
DUSTIN (2)
9:10;32:23

**E**

earlier (4)
48:16;73:8;76:23;85:2
early (1)
88:3
easy (1)
44:10
echo (1)
85:25
Ed (2)
75:14;83:18
educate (1)
26:3
Education (17)
7:20;8:23;16:1;25:21;
33:24;34:17,19;51:16;
67:1,21;68:10;74:5,20,
23;76:3;80:21;81:13
Education's (2)
67:4;74:2
effect (2)
51:3;76:24
effected (1)
37:17
effective (9)
25:17;36:24;45:8;
50:6,8,10,13,14;57:18
effectiveness (1)
86:12
efficiency's (1)
12:7
efficient (2)
37:20;38:19
efforts (1)
34:18
eight (1)
67:23
either (8)
27:1;32:21;43:2;44:7;
59:1;67:13;81:25;82:8
elects (1)
32:15
eleventh (1)
77:18
else (9)
13:1;14:5;16:15;
17:12;54:9;85:24;87:4;
88:13,14
elsewhere (1)
68:25
e-mails (2)
19:2;65:14
embedded (1)
35:17
employed (2)
15:18;68:2,3
employees (2)

15:15;16:24
end (11)
11:23;37:13;41:16;
63:20,23,24;65:12;
67:17,24;80:1;82:23
ending (1)
63:24
endlessly (1)
63:23
enforceability (1)
34:11
enforcement (2)
49:11,14
engaging (1)
65:12
enjoin (3)
34:12,17,22
enjoins (1)
58:7
enough (6)
41:18;42:8;70:2;
71:19,20;73:22
enter (1)
21:15
entered (2)
18:2;27:19
entering (1)
24:20
enters (1)
34:23
entire (1)
19:10
entirely (5)
43:20;48:4;49:6;
60:12;61:20
entirety (1)
37:2
entities (4)
16:5,11;67:18;69:23
entitled (18)
19:10;21:22;27:12,13;
41:24;45:3;51:8;52:16;
59:22;75:1;78:21;79:10,
15;80:22,24,25;81:9;
87:13
entity (2)
59:4;63:10
entry (1)
86:12
equal (1)
37:12
equally (1)
28:18
Erroll (1)
30:16
escrow (3)
15:2;81:21;82:9
ESKANDARI (46)
5:4;39:25;40:1,22;
41:2,4,13,15;42:16;43:3,
5,12,20;44:2,9,18;45:2,
15,18,21;46:2,4,25;47:3,
5;48:12,20;49:1,3,5,21;

50:18;51:2,13;69:7,7;
70:8;71:1,25;72:8,13,19;
73:25;85:25;86:2,6
especially (2)
60:24;75:16
ESQ (22)
5:4,9,10,15,20;6:4,9,
14,15,20,25;7:4,10,15,
16,21,22;8:5,14;9:10,15,
20
essentially (6)
15:14;18:20,25;52:12;
67:19;78:23
established (2)
60:7;67:8
establishing (1)
78:24
estate (18)
21:10,11;23:7;47:25;
50:12;57:7;62:17;66:19,
20;69:12,16;77:7,16;
80:13,15,21;84:9;87:18
estates (4)
57:2;58:8;69:16;84:1
estate's (1)
76:5
estimate (1)
67:22
estimated (2)
37:14
even (13)
40:16;43:22;47:19;
48:22;50:24;54:5;55:20;
63:14,20;78:9;81:22,25;
85:20
events (1)
27:5
everybody (2)
26:13;87:3
everyone (5)
11:3;72:8;78:10;86:5;
87:4
evidence (17)
27:1;28:22;29:7;74:5,
18;75:5;78:11,13,15,15,
16;81:23,24;85:2,9;
86:19,19
evidenced (1)
27:9
evidentiary (2)
26:25;84:25
exact (2)
71:10;72:14
exactly (5)
25:2;40:23;46:8;
57:10;60:5
example (2)
32:4;57:24
exceeded (1)
28:19
exception (2)
16:7;66:16
excess (1)

65:6
exchange (5)
48:3;64:23;65:9;
70:14;71:6
exciting (1)
14:10
exclusion (1)
87:4
exclusive (5)
38:24;39:1;48:17;
56:11,12
excuse (2)
14:8;24:6
executed (1)
22:14
executory (1)
32:6
exempts (1)
49:9
exhibit (3)
16:20;17:5;85:10
exist (7)
16:7;43:23;56:22;
62:17;69:13;77:22;
80:17
existence (3)
40:17;41:6;67:18
existing (2)
13:8;62:22
exists (3)
59:10;71:24;84:8
expect (3)
11:16;73:15;87:23
expected (1)
76:23
expecting (1)
50:9
expedited (1)
13:18
expense (3)
23:16;36:5;60:16
expenses (11)
37:10;62:17;63:11;
65:1;68:7,20;78:10,17;
81:9,12,16
experience (1)
46:19
expert (1)
79:13
express (5)
67:8,9;78:13,15;85:16
expressed (2)
24:9;44:16
extend (5)
25:21,23;67:2;75:9;
77:10;81:20;82:11
extension (4)
74:15;77:18,25;82:8
extensive (2)
65:12;66:15
extent (3)
15:13,14,15;24:3;
26:23;32:1;34:23;42:23;

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 98 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

44:5;67:5;77:13;82:12;
84:3
**extraordinary (5)**
13:17;47:19,20,20;
73:16
**extremely (2)**
41:25;54:4

## F

**faced (1)**
70:22
**facing (1)**
52:19
**fact (10)**
28:14;45:5;48:4;
54:24;55:11;64:24;
68:18,24;75:16;77:21
**facto (1)**
35:6
**factors (2)**
48:9;85:4
**facts (1)**
13:19
**factual (2)**
26:19;47:12
**fade (1)**
53:23
**fail (1)**
47:14
**failed (1)**
64:16
**failing (1)**
64:6
**fair (8)**
41:10;42:13,16;46:10;
47:24;70:2,14;73:1
**fairly (2)**
26:20;54:16
**fairness (1)**
47:11
**fall (1)**
23:17
**False (2)**
49:13;70:15
**far (12)**
42:7,8;45:6;54:23;
55:6;57:2;63:21;67:25;
75:13;76:13;80:25;
83:23
**FARR (7)**
5:7;12:10,18,20;13:7;
14:9;39:16
**fast (1)**
73:5
**favor (8)**
28:14,17,19;32:16;
43:21;67:4;70:17;87:8
**February (1)**
18:11
**federal (8)**
40:18;41:7;55:13;
67:6,20;68:5,7;69:3

**feel (1)**
23:14
**feels (1)**
82:5
**fees (3)**
13:7,9;14:2
**felt (1)**
23:16
**few (1)**
71:7
**Fielder (1)**
10:8
**fifteen (6)**
51:10;68:5,8,10;
74:12;75:17
**figure (1)**
67:23
**file (7)**
20:24,25;29:24;35:4;
75:8;80:7;88:8
**filed (26)**
12:18;13:15;19:22;
20:4;23:8;25:21;27:15,
21;28:3,12;29:9,11,11,
13,18,22;31:15;32:2;
33:25;34:7;38:1;51:3;
52:4;55:19;57:22;77:24
**filing (1)**
13:14;22:9,20;82:6
**filings (1)**
27:7
**final (2)**
72:25;87:24
**Finally (1)**
48:15
**finances (1)**
74:21
**Financial (2)**
10:4;31:13
**find (2)**
84:3;86:16
**findings (1)**
47:12
**fine (2)**
76:13;80:13
**Finger (3)**
11:6;14:19;22:1
**firm (2)**
12:21;83:3
**first (20)**
20:10;27:9;29:10;
30:9;31:23;35:19;36:25;
39:23;51:19;57:6;73:3;
75:23;78:3;80:15,22;
81:10;86:14,14;87:25;
88:11
**fit (1)**
61:22
**Fitzgerald (1)**
75:20
**five (2)**
43:22;48:9
**fixed (2)**

37:9;82:10
**flag (1)**
70:1
**flatly (1)**
70:15
**flowing (1)**
17:2
**fluctuation (1)**
37:11
**follow (1)**
51:6
**following (1)**
71:5
**form (6)**
14:6;15:8;24:3,25;
29:15;87:24
**former (1)**
60:8
**formerly (1)**
68:2
**forth (1)**
17:7
**forthcoming (1)**
18:13
**forty-five (1)**
50:24
**forward (13)**
11:22;36:21;38:18;
56:1,20;59:16;61:2;
62:12,16;77:18;84:3,14;
87:16
**found (4)**
22:15;27:15;29:17;
60:23
**four (5)**
34:1;65:6;78:4;82:3;
84:11
**fourth (1)**
22:18
**Fox (2)**
13:11,11
**framed (1)**
23:15
**frankly (12)**
11:13;39:1;41:9;42:3,
7;46:22;50:20;71:18;
80:16;81:22,23;83:17
**free (3)**
14:13;44:21;50:21
**freight (2)**
60:15;63:9
**froth (1)**
37:8
**FTI (1)**
63:23
**full (7)**
40:7;57:20;60:9,20;
74:9,16;80:23
**fully (5)**
30:3;38:8;57:6;59:5;
73:15
**fund (12)**
15:3;33:17;50:13;

64:25;69:3;74:2;75:5,
16,22;76:4;81:25;84:9
**fundamentally (1)**
49:14
**funded (3)**
35:21;63:11;71:17
**Funding (3)**
7:3;65:2;86:22
**funds (25)**
25:25;34:13,18;37:1;
45:23;50:3;60:10;67:6,
6,13,17;68:13;74:11,16;
78:18;79:9,10,14,25;
80:12,22;81:8,14,15;
84:10
**funds' (1)**
77:21
**further (6)**
14:6;17:14;51:7,16;
84:24;85:14
**future (3)**
16:24;45:11;53:10

## G

**GALLAGHER (3)**
5:7;6:7;12:18
**GAMBLE (1)**
9:18
**game (3)**
42:13,17;46:10
**gather (1)**
38:17
**GAUTIER (6)**
7:15;82:16,20,25;
84:20;85:17
**gave (2)**
22:16;71:16
**GEDDES (1)**
7:2
**GENERAL (14)**
8:17,19,22,24;9:2,4;
36:14;44:16;49:12;
54:11;55:12;58:21;65:4,
5
**generally (4)**
42:5;54:12;72:17;87:5
**Generals (8)**
29:25;31:8,8;39:23;
57:1,11;59:15;63:18
**Generals' (1)**
25:14
**General's (2)**
38:13;51:15
**GEOFFREY (1)**
10:6
**gesture (2)**
71:11,11
**gets (2)**
45:4;46:8
**given (11)**
19:9;21:12;43:21;
50:22;52:7;54:3,24;

60:16;71:3,18;75:16
**gives (3)**
69:16;84:2,6
**giving (2)**
20:12;48:3
**gladly (1)**
11:13
**GLENN (1)**
10:4
**global (1)**
64:22
**goes (6)**
36:10;55:8;57:18;
61:20;76:7;81:19
**GOLD (4)**
9:20;33:5,5,10
**GOLDEN (2)**
6:2;36:18
**Good (24)**
11:3,4,5;12:15;13:3,3,
11,22;14:18;15:24;
16:16;17:24;21:25;
32:23;33:4,9,21;39:25;
46:18;55:20;66:24;
71:19,20;72:18
**goodness (1)**
60:12
**gotcha (3)**
72:16,19,23
**government (10)**
28:15;67:8;75:8;77:5,
13;78:21;79:8;81:22;
82:2,5
**governmental (2)**
32:4;34:7
**grant (5)**
17:15;54:6;73:11,15;
88:9
**granted (2)**
78:8;82:9
**granting (1)**
27:20
**grants (1)**
67:20
**gratitude (1)**
85:16
**gratuitous (2)**
71:11;72:14
**greater (1)**
68:20
**greatest (1)**
76:12
**Griffin (6)**
6:8;9:19;31:18,24;
32:21;33:6
**grounds (1)**
53:10,13;61:18
**GROUP (5)**
7:7,20;10:5;12:16;
16:1
**guarantee (1)**
45:23
**guess (1)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 99 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

42:10

**guidance (1)**
39:5

**guise (1)**
59:1

# H

**HAGLE (21)**
6:25;13:3,4;37:6,6;
63:2,2,6,16;64:9,17;
65:21,25;66:2,5,8,11;
75:11;76:9;77:2;83:10

**Hagle's (1)**
14:1

**half (2)**
55:15;80:5

**hallmarks (2)**
47:10,14

**hand (1)**
87:17

**handed (1)**
16:4

**happen (6)**
42:12;44:5,6;53:4;
60:14;86:9

**happened (5)**
18:12;60:5;68:22;
80:16;81:1

**happy (2)**
49:22;63:24

**hard (3)**
74:19;75:15;83:20

**hardly (1)**
54:18

**harm (1)**
84:5

**harmful (1)**
73:21

**harming (1)**
57:2

**Harvey (2)**
30:10,16

**HAZELTINE (16)**
8:12,14;17:24,25;
18:14,24;19:23,25;20:3,
19;21:6;24:13,13,18,23;
25:1

**health (2)**
49:15,18

**hear (19)**
14:6;17:14;21:24;
27:2;29:5;30:18;31:3;
35:14;39:8,19;51:19;
62:25;66:22;69:11;
74:20;82:14;84:22;85:8,
11

**heard (14)**
13:1;14:5;16:15;
17:12;26:8;31:2;32:22;
36:16;63:3;75:10;81:4;
82:15;84:22;85:24

**hearing (11)**

12:24;35:5;48:18;
50:10,15;53:19,22;54:1;
73:13;76:22;88:19

**hearings (1)**
73:11

**heart (1)**
60:13

**heartburn (1)**
44:23

**heavily (2)**
70:17;87:8

**hedging (1)**
42:20

**heightened (1)**
47:19

**held (1)**
78:16

**help (4)**
50:13;55:3;56:7;70:25

**helpful (2)**
38:16;60:23

**hereby (1)**
29:6;85:9

**here's (1)**
71:12

**hesitate (1)**
48:21

**Hey (1)**
72:23

**high (2)**
28:16;83:19

**higher (1)**
37:15

**hill (1)**
41:3

**hit (1)**
69:10

**Hold (1)**
30:8

**holder (8)**
59:23;70:3,13;71:14,
20,22;72:2;86:17

**holding (1)**
46:6

**holds (1)**
75:2

**Honor (173)**
11:4,5,11,21,23;12:3,
6,11,15,22;13:3,4,11,22;
14:12,14,18;15:11,19,
24;16:2,16,20;17:10,17,
19,24;18:14;19:13,15;
21:6,16,25;22:2,15,21,
23;23:14,23;24:7,13,15,
18,23;25:1,5,7,20;26:11,
15;27:3,5,9,19;28:25;
29:8;30:1,3,9,14,19,21;
31:4,7,17,21,23;32:4,8,
14,19,23;33:4,5,9,15,21;
34:5,16,20,23;35:10,16,
17,19;36:1,7,17,21;37:2,
6,22;38:6,12,16;39:10,
17,18,25;41:15;44:19;

45:15;46:9;48:1,16;
49:1,22;50:9;51:5,13,14,
22;54:7,10;55:22,25;
56:7,9,16;57:3,8,12,21;
58:14,25;59:2,13,20,25;
60:19,24;61:1,4,16;62:7,
13,23;63:2,6;64:9;
65:11;66:24;67:2,7;
68:1,13;69:9;70:3;71:1;
73:23,25;74:1,3,19;75:4,
11;77:21;78:5,11;79:7;
80:3,10;81:3,4;82:25;
83:6;84:20;85:1,4,14,25;
87:25;88:16

**Honor's (5)**
35:1;56:17;70:8;71:5;
86:8

**hope (3)**
11:17;17:1;63:24

**hopefully (5)**
36:23;46:23;61:25;
69:10;83:20

**hour (5)**
12:2,3,4,25;77:18

**hours (1)**
56:25

**HOWARD (1)**
7:21

**HOY (2)**
33:21,22

**HULL (1)**
9:4

**hurdle (2)**
70:24;73:5

**hurdles (1)**
44:10

**HUSTON (1)**
8:9

**hypothetical (1)**
71:5

# I

**icing (2)**
72:3,13

**idea (2)**
26:13;46:1

**identified (4)**
22:16;23:13;66:6;70:7

**identifies (2)**
16:20;22:25

**identifying (2)**
29:20,22

**imagine (1)**
71:5

**immediately (3)**
56:22;81:11;88:6

**impact (1)**
62:9

**impairment (1)**
17:1

**impermissibly (1)**
57:25

**implementation (1)**
45:13

**implemented (1)**
43:6

**important (5)**
54:21;65:11,16;66:13;
84:10

**impose (1)**
70:22

**inappropriate (3)**
48:14;49:7;59:1

**inappropriately (1)**
59:14

**Inc (3)**
7:20;8:13;10:7

**inception (1)**
82:4

**include (4)**
23:3;32:3,11;58:20

**included (6)**
27:22;37:23;38:9;
56:12;57:9;59:18

**including (9)**
16:24;18:23;19:1;
27:11;36:9;39:21;58:1;
64:23;77:11

**inconsistent (2)**
34:25;35:1

**incorrect (1)**
49:22

**incorrectly (1)**
34:14

**increase (2)**
13:9;19:18

**incur (1)**
62:17

**incurs (1)**
13:7

**independent (1)**
75:1

**indicate (1)**
13:13

**indicated (2)**
22:9;55:10

**indicating (1)**
28:13

**informal (1)**
30:11

**information (15)**
21:2,4,7,14,23;23:4;
24:4;29:19,22;67:15;
68:12;70:2;74:21,25;
77:24

**informed (1)**
13:13

**infrastructure (1)**
76:14

**initial (3)**
29:20;56:10;65:2

**injunction (17)**
25:18;28:4,8;38:14;
39:21;40:9;41:15;42:9;
43:8;44:19;46:4;47:8;

57:7,19;58:1,18;62:4

**injunctions (3)**
44:22,24;46:7

**inquiry (1)**
49:22

**insiders (1)**
66:4

**Insilco (1)**
83:8

**instance (1)**
39:23

**instead (1)**
61:18

**institutional (1)**
66:11

**insufficient (1)**
81:24

**insurance (1)**
12:19

**intend (4)**
26:25;45:9;55:1;62:14

**intended (1)**
42:11

**intends (2)**
42:13;44:7

**intent (5)**
16:6;44:16;45:7;
46:11;57:1

**interest (2)**
19:18;55:13

**interesting (4)**
61:24;71:2;76:21;
85:19

**interests (2)**
46:20;47:24

**interfere (1)**
45:13

**intermediate (1)**
78:22

**Internal (1)**
38:7

**internally (1)**
42:17

**interpreted (3)**
20:12;44:24,24

**intertwined (1)**
26:5

**into (21)**
16:21;18:2;21:15;
22:3;24:20;28:22;29:7;
38:21;42:24;43:7;50:12;
53:25;61:19;68:15,23;
72:1;77:10;81:10,11;
85:2,9

**inuring (1)**
66:20

**investigation (7)**
25:22;60:20;66:15;
74:15;75:9;81:20;82:12

**investor (1)**
73:2

**invoices (1)**
23:11

**involved (6)**
23:21;26:3;75:18;
83:18,22;86:2
**ISD (1)**
31:14
**issue (38)**
11:12,22;20:3;24:7,
16;34:2,2,3,6;35:2,2;
38:14,22,24;40:10;
44:14,19;48:17;49:7;
50:17;53:12,15;54:16;
56:16;59:22;60:25;64:6;
68:15;69:11;70:7;76:2;
77:4,5,14;78:19;81:19;
82:2;86:16
**issued (1)**
53:9
**issues (19)**
13:16;16:25;23:2,25;
24:1;26:3,5,19;30:11;
33:18;34:1,1;38:15;
39:20;44:13;55:24;
56:23;75:12;84:17
**item (7)**
12:9;13:8;14:2,22;
17:19,21;26:4
**items (1)**
25:10
**IV (7)**
34:13,18;79:8,14;
81:8,10,10
**IVAN (3)**
9:20;33:5,10

**J**

**JACK (2)**
6:4;36:17
**JEFFREY (3)**
5:20;13:22;16:17
**JENNIFER (4)**
6:25;13:4;37:6;63:2
**JEREMY (1)**
6:20
**job (3)**
79:5,7,19
**John (1)**
33:23;66:24
**joinder (1)**
29:18
**joined (1)**
62:1
**JOSEPH (1)**
8:9
**JR (2)**
8:9;30:10
**judge (2)**
53:2;59:17
**judges (3)**
51:4,5;55:11
**judgment (5)**
43:14;45:23;54:20,22;
55:3

**JULIA (2)**
7:10;12:16
**July (4)**
27:6,10,11;52:7
**jurisdiction (13)**
34:11,22;35:4,7;
38:25;39:1,2,5;48:17;
56:11;58:12;59:3,8
**jurisdictional (2)**
35:2;38:22
**JUSTICE (5)**
5:2;10:3;33:22;49:23,
23
**justification (2)**
64:4,14
**justifications (1)**
25:22

**K**

**KAPLAN (2)**
7:13;82:25
**KAREN (2)**
6:9;33:9
**KATONA (2)**
6:15;83:2
**KATTEN (2)**
9:8;32:24
**keep (3)**
82:16,16;83:4
**kept (1)**
57:5
**kick (2)**
45:12,19
**kind (3)**
19:4;55:23;62:12
**KLEIN (3)**
7:10;12:15,16
**knew (3)**
80:23,24,25
**knocking (1)**
82:17
**known (3)**
23:9;78:7;88:6
**knows (2)**
16:20;22:19
**KOENIG (4)**
5:9;12:20;14:9,14
**Kresse (7)**
33:23;66:24,24;77:21;
78:5;80:10;81:3

**L**

**landlord (1)**
31:17
**landlords (1)**
32:9
**language (48)**
16:23;30:21;31:20;
32:11;34:8,9,24;38:8,14;
39:20,21;40:7,24;41:5,5,
16,18,20,21,24,24;42:6;

43:17;44:11,17;45:16;
50:22;56:18,22,25;58:5,
16,17,18,20,23;59:1,14,
19;62:4,8;69:12,14,15,
17,19;73:10,18
**large (1)**
66:11
**largely (1)**
76:25
**larger (2)**
46:4;68:18
**last (8)**
17:19;38:11;57:15;
68:8;69:17;75:17;81:5
**late (4)**
25:25;74:17;75:13;
82:2
**later (3)**
14:17;32:10;52:21
**LAW (23)**
5:13;7:7;12:16;39:3;
40:12,14,18;41:7,9,12;
42:18;43:23;44:5;49:13,
14,14;53:2;54:24;55:11;
56:21;59:6,17;68:7
**lay (1)**
72:22
**Layton (3)**
11:6;14:19;22:1
**leads (1)**
48:6
**lease (1)**
32:12
**leases (1)**
32:9
**least (12)**
19:20;33:17;36:25;
41:7;42:13,17;44:14;
50:20;51:9;61:18;80:4;
85:21
**leave (3)**
39:8;46:23;82:21
**leaves (1)**
74:1
**LECK (1)**
9:18
**ledger (1)**
36:4
**LEE (1)**
8:8
**left (3)**
78:23;82:21,22
**legal (5)**
26:17,18;39:20;40:17;
41:6
**LEIGH-ANNE (1)**
7:4
**LEIGHT (6)**
8:19;54:10,10,15;
55:17,22
**lender (8)**
47:6,22;59:20;63:4;
64:1;69:25,25;72:7

**lenders (18)**
48:2,6;59:21;60:3,6,
11,13,21;63:9;64:22;
65:16,20,22;66:12;72:1,
10;80:11;83:16
**less (2)**
23:23;24:6
**letter (1)**
30:10
**level (1)**
83:19
**license (7)**
52:13,17,20,21,22,24,
25
**licensee's (1)**
52:17
**lien (5)**
77:4,9,10;80:12;86:25
**liens (10)**
64:24;65:1,3;66:15;
71:18;77:6,14,17,19;
86:24
**light (3)**
11:20;70:21;87:15
**likely (2)**
87:2;88:7
**limited (4)**
21:12,21;24:5;30:5
**limiting (2)**
22:5;41:23
**line (2)**
13:8;14:2;69:17;76:13
**liquidate (1)**
83:23
**liquidating (3)**
46:7;47:17;60:14
**liquidation (6)**
47:13,18;60:4;76:15;
83:11,14
**list (2)**
29:16;38:11
**listen (1)**
79:12
**litigation (5)**
18:3;44:25;50:1;
59:18;84:12
**little (5)**
12:8,25;50:14;73:20;
86:7
**live (1)**
27:1
**lived (1)**
75:16
**living (4)**
68:6,20;78:10,17
**LLC (3)**
6:8;7:3,7;8:12
**LLP (10)**
5:7,18;6:2,7,18,23;
7:13,19;9:8;10:8
**loan (1)**
84:7
**loans (1)**

**lenders (18)**

67:20
**local (1)**
83:2
**LOIZIDES (2)**
8:3,5
**long (5)**
39:9;45:13;60:7;
62:16;64:3
**longer (1)**
59:10
**look (9)**
41:8;43:25;45:10;
46:15;55:15;68:15;
71:12;79:6;87:1
**looking (6)**
50:13;55:24;64:11,15;
78:1,2
**LORIE (2)**
7:16;83:1
**losing (1)**
71:17
**lot (8)**
23:3;26:21;54:21;
57:3;72:5;75:12;82:18;
84:1
**love (1)**
62:20
**lowest (1)**
78:22

**M**

**macro (1)**
79:15
**maintain (1)**
59:9
**major (1)**
66:11
**majority (1)**
76:18
**makes (12)**
25:9,19;39:18,22;
40:3;53:21,24;54:6;
56:24;71:1;75:11;81:7
**making (1)**
47:20
**MALLORY (1)**
9:18
**Management (6)**
9:9;10:5;31:18,24;
32:22,24
**managing (1)**
29:23
**manner (1)**
85:21
**many (2)**
46:18;58:25
**MARC (1)**
5:10
**Marcos (1)**
21:25
**Mark (4)**
11:6;25:8;56:9;82:22

Case 15-10952-JTD   Doc 921   Filed 09/02/15   Page 101 of 107
CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

**marks (1)**
70:20
**Massachusetts (6)**
8:18;31:9;54:11;
61:24,25;62:13
**Master (2)**
48:9;64:5
**MATKINS (2)**
9:18;33:6
**matter (12)**
13:25;31:5;33:16;
38:19;40:14;50:21;52:1,
10;62:24;73:9;79:2;
85:16
**matters (1)**
25:19
**may (25)**
11:15;15:10;16:7;
19:19;20:13;26:2;32:4;
34:5,16;43:17;44:23,24;
45:10;58:12;60:25;63:3;
67:12;68:18,20;73:16;
74:9;79:13;80:13;81:4,
23
**maybe (6)**
44:19;62:14;67:23;
72:20;79:1,2
**mean (5)**
19:3,16;20:3;49:23;
77:15
**meaningful (2)**
83:12;84:10
**meaningless (1)**
71:11
**means (2)**
55:11;61:12
**mechanics (1)**
25:2
**mechanism (1)**
43:6
**meets (1)**
61:17
**MELCHER (1)**
10:4
**members (2)**
29:20,23
**memories (1)**
53:23
**mentioned (1)**
57:8
**mentions (1)**
48:17
**MERCHANT (5)**
14:18,19,25;15:11;
17:17
**merit (1)**
30:13
**met (3)**
48:10,13;51:7
**MICHAEL (3)**
7:22;15:24;33:21
**middle (2)**
50:10;63:19

**mid-morning (1)**
88:3
**might (13)**
20:15;25:11;45:16;
53:16;65:19;66:18;
67:12;68:16;70:23;
74:10,12,13;84:11
**Mike (1)**
14:18
**million (11)**
35:23;36:6;37:10,14;
50:12;65:6;67:22,24;
68:9,11;80:17
**millions (2)**
67:19;76:4
**minimal (1)**
21:11
**minimum (1)**
80:1
**minor (2)**
63:21;88:2
**minutes (1)**
43:22
**miracle (1)**
63:21
**misconduct (2)**
84:4,5
**miss (1)**
14:10
**mistake (1)**
56:12
**modified (3)**
28:3;29:12;30:21
**modify (1)**
56:18
**modifying (1)**
57:4
**molest (1)**
46:10
**molesting (1)**
46:10
**money (19)**
37:2;55:5;63:19;
67:17,25;68:22,25;69:3,
3;71:18;78:16;79:11,20,
20,21;80:2,15,17,24
**Monies (1)**
81:9
**monitor (6)**
75:1,19;79:5,7,13,17
**monitor's (2)**
79:5,19
**month (1)**
55:7
**months (6)**
53:24;55:7;75:17;
78:3,23;82:3
**moot (2)**
51:9;52:12
**mootness (1)**
53:15
**more (14)**
39:6;42:9;58:23;

59:21;63:11,19;66:19;
67:17;68:14;69:12;
75:18;79:13,20;84:10
**Moreover (1)**
40:16
**morning (3)**
13:3,22;88:1
**Mortgage (2)**
48:9;64:5
**most (1)**
37:19
**motion (35)**
12:10,18;14:23;15:5;
17:13,22;18:1;20:16;
22:12;23:13,15,19,24;
24:9;25:14,21,23;27:19;
34:20;35:4;36:21;37:18,
25;48:23;51:17,23;54:6;
67:2;73:1,11;77:25;
80:8;81:20;82:6,11
**motions (5)**
26:9,10;62:11;73:12,
15
**motion's (1)**
13:14
**Mott, (1)**
10:8
**movant (1)**
17:23
**movants (1)**
26:7
**move (4)**
11:22;54:20;56:20;
61:2
**moved (3)**
24:6;34:16;68:25
**moving (1)**
87:16
**much (17)**
11:16;12:4;14:3;
17:10;22:8;25:22;38:2;
68:17,18,20;71:4,6;73:9;
79:23;84:10,12;88:18
**MUCHIN (2)**
9:8;32:24

## N

**name (1)**
49:12
**NATSIS (1)**
9:18
**nature (1)**
47:19
**near (2)**
63:19,23
**necessarily (2)**
43:2;72:12
**necessary (2)**
25:4;84:13
**necessity (1)**
47:11
**need (15)**

11:13;14:16;24:2;
39:5;40:23;41:11;48:11;
53:22;63:18;72:2;78:10,
13;88:1,13,14
**needs (5)**
19:20;40:15;41:5,7;
47:23
**negative (1)**
70:4
**negotiation (1)**
16:19
**negotiations (1)**
83:15
**nervous (1)**
51:4
**new (2)**
52:21;53:6
**newer (1)**
17:8
**next (7)**
14:21;30:20;33:15;
35:10;36:12;38:6;58:10
**nicely (1)**
42:21
**nine (1)**
67:23
**ninety (1)**
28:19
**ninety-percent (1)**
28:16
**no-brainer (1)**
49:9
**Nolan (5)**
26:16;29:13;85:3,7,9
**non-Aerotek-related (1)**
24:4
**nonbankruptcy (1)**
59:17
**nondebtor (3)**
46:6;47:8;57:25
**none (4)**
23:4;48:13;66:3;85:8
**noninjunction-related (1)**
47:1
**nonparty (4)**
47:11,16,19;48:14
**nonproperty (1)**
77:6
**nonruling (1)**
35:1
**nonstarter (2)**
43:11;44:20
**normal (1)**
36:22
**North (1)**
54:16
**notable (1)**
64:19
**note (5)**
12:23;60:19;63:15;
74:19;87:6
**noted (7)**
25:15;64:24;74:3,22,

25;83:9,9
**notice (8)**
12:24;13:14;27:12;
31:15;35:5;51:2;64:13;
74:9
**noticed (1)**
75:8
**noticing (1)**
36:22
**November (2)**
18:10;22:14
**NOWNES-WHITAKER (3)**
10:5;29:3,6
**number (24)**
12:9;14:22;15:6;
17:21;26:4,18;27:15;
28:17;29:4,9,11,13,14,
15,17;30:21;31:18,19;
35:11;40:2,19;72:2;
77:11;85:7
**numbers (1)**
63:23
**numerous (1)**
41:19

## O

**object (2)**
36:23;77:19
**objected (6)**
19:24;20:1,9;23:7,8;
27:17
**objecting (3)**
28:5,6;39:19
**objection (39)**
12:24;20:14;28:6,9;
29:2,5;30:10,11,12,13,
18,20,22,23;31:12,14,14,
16;33:11,15,25;35:10,
11,13;38:6,8,11,13;
42:22;54:13;57:21,24;
62:8;67:5;80:11;82:13;
84:22;85:6,8
**objectional (1)**
34:9
**objections (31)**
11:15;15:4;26:18,23;
27:18;28:10;29:10,24;
30:1,3,4,5;31:7,9,11,17;
32:20;34:7;35:7;38:19,
21;40:2,5,5;47:1;63:3;
80:7;82:21;83:5;84:14;
87:20
**objectors (4)**
51:19;53:16;63:1;
66:23
**obligation (2)**
18:8;19:5
**obligations (1)**
34:12
**obtain (5)**
35:3,6;54:22,22;55:1
**obtained (1)**

61:7

**obvious (1)**
66:19

**obviously (8)**
22:2,6,17;36:20;
37:20;55:1;64:9;68:12

**occur (1)**
73:16

**occurred (2)**
76:22;87:11

**o'clock (1)**
11:14

**oddly (1)**
78:9

**off (1)**
46:5

**offending (1)**
56:22

**offer (3)**
38:20;52:8;76:8

**offered (1)**
52:6

**OFFICE (7)**
8:17,22;9:2;13:25;
30:25;31:1;51:15

**officers (1)**
15:15;16:24

**Official (4)**
5:8,19;7:8;60:21

**often (1)**
72:22

**old (1)**
82:3

**Omni (3)**
10:5;28:12,23

**omnibus (2)**
29:10,24

**once (2)**
11:17;81:17

**one (24)**
11:22;18:24;21:18;
22:13;23:1;31:17;37:8;
38:20;44:14;46:9,17;
50:4;54:15;56:10;60:10;
62:13;63:8,23,25;70:16;
71:12;76:8;78:14,18

**ones (3)**
16:25;53:6;80:14

**one's (1)**
50:21

**one-sided (1)**
14:16

**OneWest (1)**
66:8

**ongoing (1)**
67:18

**only (11)**
15:16;27:18;42:9,9;
55:15,21;57:7;59:25;
73:4;78:19,20

**open (1)**
84:17

**operate (3)**
52:14;53:6;70:23

**operating (3)**
74:24;81:7,16

**operational (2)**
81:9,12

**operations (2)**
49:20;75:19

**operative (1)**
52:4

**OPPORTUNITY (3)**
5:13;49:24;69:9

**opposed (2)**
43:19,21

**opposition (1)**
25:23

**opt (7)**
32:15;36:23,23;64:6;
70:17,21;72:8

**optimism (1)**
73:9

**opt-out (3)**
64:13;70:4;87:14

**opts (2)**
70:10,10

**order (53)**
12:8;14:7,16;15:8;
16:4;17:18;24:21,25;
25:14;26:22;27:7,20;
29:15;30:6;32:10;34:4,
9,24,25;38:9,25;39:16;
40:15,16;42:1;43:15;
46:13;48:16,21;54:22;
55:25;56:12,19;58:5,6,
11,11;59:2;61:7,9,13;
62:5;67:4;69:10,20;
70:12,13;72:3;81:21;
86:12,13;87:21,23

**orders (2)**
32:12;80:8

**Oregon (1)**
10:3

**organized (2)**
38:19;76:15

**original (1)**
16:23

**originally (2)**
18:20;22:14

**others (2)**
45:11;74:4

**otherwise (4)**
35:22;70:22;86:24;
87:20

**OTT (4)**
8:24;51:14,14,22

**ought (5)**
42:6,6,15;43:1;46:17

**ourselves (1)**
62:15

**out (30)**
12:8;13:15;32:15;
35:23;36:23;39:2;40:12;
42:15;48:16;49:24;51:5;
56:13,24;60:12;61:16;

64:6;67:5;70:3,5,9,10,
17,21;72:8;76:12;77:7;
81:23;84:3;86:7;88:5

**outlined (1)**
36:19

**outset (1)**
78:8

**outstanding (8)**
11:22;26:18,23;30:4,
14;38:15;40:2;74:2

**OUTTEN (2)**
6:2;36:18

**over (19)**
12:11,22,25;17:23;
18:4;39:22;41:3;44:18,
25;53:23;70:25;73:20;
74:23,23;76:5,6;78:23;
84:7;88:3

**overlap (1)**
75:12

**override (1)**
58:17

**overrule (2)**
82:13;87:19

**overruled (5)**
30:13,18;62:8;75:6;
84:16

**oversight (1)**
29:20

**overwhelming (2)**
71:23;87:7

**overwhelmingly (1)**
28:14

**OWEN (1)**
10:8

**P**

**PA (2)**
7:2;8:3

**packages (1)**
27:11

**page (3)**
34:10;57:24;61:4

**pages (2)**
61:5;65:14

**paid (8)**
60:9,15;61:11;63:9;
64:22;68:6,9;71:17

**paper (1)**
70:20

**papers (6)**
22:3,3;40:12;46:6;
74:3;76:1

**paragraph (2)**
34:10;57:9

**parameters (1)**
23:9

**part (9)**
16:22;21:7;34:18;
36:3,25;57:18;80:13;
85:4,20

**participating (1)**

75:25

**particular (3)**
54:23;55:7;59:17

**particularly (2)**
39:4;51:24

**parties (15)**
11:8;15:12;26:24;
28:5,6;34:22;36:6,11;
39:19;47:8;53:19;57:25;
72:6;73:17;77:11

**party (10)**
20:18,20;21:5;25:18;
26:25;32:14;63:10;74:7,
8;75:18

**party-in-interest (1)**
19:14

**passed (1)**
12:25

**past (2)**
44:12;74:13

**Patrick (1)**
75:20

**pause (1)**
50:4

**pay (2)**
36:8;68:19

**payment (7)**
18:12,16;20:13;63:12;
64:25;65:4,4

**payments (2)**
18:8;50:13

**PC (2)**
6:12;8:8

**pending (5)**
41:23;43:14;48:23;
82:20;88:5

**people (13)**
38:18;40:1,25;49:13;
53:22,25;68:2;69:8;
72:20,22;74:12;85:12;
86:3

**per (1)**
67:8

**percent (5)**
28:19;68:5,8,11;74:12

**Perdue (1)**
10:8

**Perhaps (1)**
22:20

**period (4)**
25:22;60:20;74:16;
75:9

**permanent (1)**
58:1

**permissible (1)**
47:11

**permitted (1)**
68:7

**permitting (1)**
70:17

**personal (1)**
55:23

**personally (1)**

58:20

**perspective (2)**
34:10;54:15

**PETER (2)**
8:19;54:10

**petition (4)**
43:14;48:2,6;68:17

**Pham (1)**
33:23

**phone (4)**
12:21;29:1;30:17,24

**phrase (1)**
63:8

**piece (1)**
70:20

**place (5)**
75:19;76:15;80:1,16,
22

**placed (1)**
42:24

**plaintiffs (1)**
37:24

**plan (93)**
11:24;16:20;25:10,12,
12,16,18;26:22;27:14,
21;28:3,7,14,17,20,23;
29:12,17;30:6,21;32:5,7,
16,17,18;34:3,23;35:7,
17,18;36:7;37:18,23;
38:14;39:6,20;40:2,8,13,
14,16,23;41:10,17;42:1,
10,12,13;43:7,15;44:21;
45:4,4,14;46:13;47:7,9,
17;50:5;53:13,17;54:19;
56:18;57:4,7,19,25;58:6,
11,18;61:19;62:4,10;
64:21;67:5,5;69:19;
70:11,20;71:11,22;72:1;
76:24;83:5,12,14,21;
85:23;86:10,20;87:1,7,9

**plans (2)**
50:6;60:3

**plan's (2)**
42:23;44:3

**pleading (1)**
58:3

**pleadings (4)**
29:10;52:4;74:22;80:8

**please (4)**
39:14;72:24;83:6;88:6

**pleased (3)**
35:12,14;38:7

**pleasure (1)**
86:1

**pled (1)**
23:11

**plenty (1)**
71:17

**pm (3)**
39:13,13;88:20

**podium (4)**
12:11,22;17:23;39:22

**point (31)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 103 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

11:17;15:16;16:19;
20:16;21:1,12,16;22:21;
24:15;25:9;28:21;44:9;
45:14,17;46:4;47:17;
51:23;64:20;67:7;68:25;
69:18;70:4,9;71:2;
72:25;73:1;76:1,10,21;
78:21;81:5
**pointed (2)**
47:15;48:16
**pointing (1)**
19:8
**points (4)**
51:17;54:13;56:10;
70:3
**POLSINELLI (2)**
6:12;83:3
**POMPEO (3)**
7:22;15:24,25
**posed (1)**
73:3
**position (7)**
19:5,7;20:13;41:13;
42:4;48:4;64:10
**positions (1)**
65:23
**positive (1)**
13:25
**possession (2)**
20:21;67:14
**possible (1)**
73:19
**possibly (1)**
83:24
**Post (2)**
8:23;51:16
**postage (2)**
70:19;71:7
**post-confirmation (1)**
39:4
**potential (2)**
23:9;75:5
**potentially (2)**
49:25;50:2
**POTTER (1)**
6:18
**pray (1)**
23:19
**prayed (1)**
23:24
**Prayer (3)**
61:6,9,13
**pre- (2)**
48:1,5
**precludes (1)**
58:7
**preconditions (1)**
50:6
**preference (1)**
66:16
**preferred (1)**
73:17
**prejudice (7)**

34:20;35:1;42:2;
53:18;54:1,17,18
**preliminarily (1)**
41:8
**premises (1)**
32:8
**preparation (1)**
75:6
**prepared (3)**
11:22;17:15;53:19
**preparing (2)**
54:20;76:22
**pre-petition (7)**
36:5;47:6,22;69:24,
25;71:25;72:10
**PRESENT (4)**
10:2;28:24;30:16;
84:25
**presentation (2)**
16:13;26:25
**presentations (1)**
26:14
**presently (1)**
43:17
**preserved (1)**
20:5
**preserving (1)**
86:11
**pressing (1)**
19:2
**pretty (5)**
38:2;39:2;54:21;
55:24;56:5
**prevent (1)**
43:15
**previously (2)**
36:10;46:16
**price (1)**
70:19
**primarily (1)**
39:20
**principal (1)**
61:11
**principle (1)**
82:7
**prior (1)**
53:2
**priority (9)**
33:19;34:2;36:8,9;
60:9,18;63:13;65:1;
86:23
**Private (2)**
8:23;51:15
**pro (1)**
65:8
**probably (6)**
21:11;40:24;51:18;
72:5;76:11;88:10
**problem (4)**
43:7;58:9;69:16;73:4
**problematic (3)**
40:19;70:4,6
**problems (1)**

40:11
**procedure (1)**
51:6
**procedures (2)**
47:23;86:7
**proceed (5)**
11:24;26:6,12;27:2;
69:23
**proceeding (6)**
20:22;35:5;52:9;
54:25;55:19;86:23
**proceedings (4)**
14:11;62:19;74:9;
88:20
**process (11)**
27:14;41:11,19;44:4,
6,6;53:8;55:8;56:7,20;
58:15
**produced (1)**
24:22
**professional (4)**
52:19,24;54:3;85:21
**professionalism (4)**
83:15,17,19;86:3
**professionals (3)**
14:3;52:15;85:17
**profits (1)**
61:7
**programs (1)**
79:10
**prohibited (1)**
46:8
**prohibiting (1)**
50:2
**prohibition (1)**
47:16
**proof (8)**
19:22;20:4,6,14;23:8,
11;32:2,3
**proper (2)**
23:16;35:5
**property (6)**
32:11;44:20;58:8;
77:7,8,16
**propose (2)**
28:7;37:21
**proposed (11)**
14:22,23,25;29:15;
34:3;41:21;42:10;52:5;
70:18;87:16,21
**proposing (1)**
49:18
**proposition (1)**
74:18
**propriety (1)**
24:10
**prosecute (2)**
55:2;56:4
**prosecution (1)**
43:13
**prosecutions (2)**
43:13;49:10
**prospect (1)**

75:13
**protect (2)**
42:20;49:15
**protected (1)**
43:1
**Protection (6)**
10:4;31:13;36:12;
46:8;60:17;72:21
**provide (10)**
20:21;21:14;22:13;
27:4;44:22;60:4;65:2;
79:25;83:12;87:21
**provided (5)**
22:18;23:1;67:10;
79:3;80:5
**provides (6)**
15:2;18:15;45:5;50:6;
52:23;56:19
**providing (3)**
23:22;41:21;48:2
**provision (9)**
19:8;23:3;28:4;32:18;
38:25;39:1,21;45:3;
56:11
**provisions (5)**
19:12;28:8;32:16;
62:10;88:2
**proviso (1)**
53:14
**PUBLIC (4)**
5:13;9:3,13;49:19
**purchase (2)**
16:12;18:9
**purchaser (1)**
61:11
**purchasers (3)**
61:10,14,15
**purport (1)**
40:17
**purpose (2)**
17:8;57:1
**purposes (5)**
27:18,25;28:1;43:1;
80:19
**pursue (2)**
42:25;61:21
**purview (1)**
77:16
**push (1)**
41:3
**put (7)**
11:23;20:7;22:3;
25:19;26:1;27:4;35:15;
44:15;49:8;68:23
**putting (2)**
31:19;40:22

**Q**

**quandary (2)**
19:4;20:8
**quickly (4)**
30:2;48:10;63:6;69:10

**quite (3)**
50:19;51:4;54:24

**R**

**raise (1)**
34:5
**raised (4)**
25:25;28:5;56:23;
66:17
**raises (2)**
30:11;73:1
**RAISNER (4)**
6:4;36:17,17;37:5
**Ramos (4)**
21:25;25:23;23;24:12
**range (1)**
28:16
**RAPORT (1)**
7:4
**rata (1)**
65:8
**reach (2)**
58:21;83:20
**reached (2)**
41:8;73:18
**reaching (1)**
50:1
**read (5)**
22:3;32:25;57:11,13;
58:17
**ready (2)**
11:24;49:7
**reality (1)**
78:6
**really (28)**
20:14,17,17;21:16;
22:7;24:15;25:11,22;
26:18,19;27:4;30:11;
42:16;50:17;53:14;56:6,
24;57:22;58:17;62:3;
74:19;76:2;77:2;83:4;
85:3,20;87:3,17
**reason (7)**
46:18;52:18;54:24;
55:7;62:23;68:17;79:13
**reasonable (1)**
47:24
**reasons (6)**
23:13,19;40:19;59:18;
62:7;87:19
**REATH (2)**
7:19;15:25
**recall (2)**
32:4;34:16
**receivable (1)**
18:3
**receivables (1)**
18:4
**receive (6)**
18:5;28:10;35:20;
36:2;47:8;60:10
**received (10)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 104 of 107

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

18:16;27:19;29:6;
30:22;67:13;71:23;75:1;
81:8;85:9;87:7
**receives (1)**
70:18
**receiving (6)**
35:23;50:2;57:19;
60:10;67:19;69:21
**recess (2)**
39:11,13
**record (21)**
11:6;12:16;15:21;
22:22;25:8;27:4;30:15;
31:20;32:1;33:1;35:15;
40:22;45:18;47:25;
48:12;53:2;81:24;82:7;
84:25;85:4;86:16
**records (1)**
75:3
**recovered (1)**
84:11
**recovery (2)**
55:1;56:3
**redact (1)**
24:4
**reducing (1)**
65:7
**referenced (1)**
51:25
**referred (1)**
52:13
**reflecting (1)**
15:8
**refund (3)**
65:5;78:8;79:22
**refused (1)**
20:20
**refuses (1)**
20:20
**regard (5)**
22:4;51:17,23;52:10;
60:23
**regarding (12)**
15:6,21;24:2;25:24;
26:2;27:13;39:20;58:3;
61:19;67:3,11;74:21
**regardless (1)**
52:17
**regards (4)**
22:24;23:3,17;24:9
**regular (1)**
75:2
**regulations (1)**
67:9
**reiterate (4)**
25:2;63:7,8;64:20
**reiterated (1)**
66:14
**rejection (3)**
32:6,10,12
**rejections (1)**
32:6
**related (1)**

77:9
**relates (3)**
18:1;23:4;80:11
**relating (3)**
14:23;32:11;33:18
**release (18)**
15:2,7;17:8;32:15,17;
47:9,11,22;48:14;59:22,
23;70:2,23;71:3;72:14,
24;86:15;87:8
**released (8)**
15:16,17;16:6;17:6,7;
64:24;65:19;66:18
**releases (35)**
15:14,22;16:3,5;47:6,
16,19;58:7;59:20;60:5;
63:4;64:1,2,11,14,16,20,
23;65:5,10,17;69:25;
70:3,13;71:14,14,19,20,
22;72:2;86:16,17,17;
87:6,12
**releasing (6)**
16:23;41:22;48:3;
65:1,3;86:23
**relevant (2)**
19:12;50:23
**relief (22)**
15:4;17:15;19:15;
21:21;24:10;27:20;
48:21,21;49:8,25;50:19;
54:23;61:6,9,13;62:5;
73:1,4;83:13;84:1,2,8
**relies (1)**
50:19
**reluctant (2)**
38:25;39:6
**rely (2)**
19:11;26:20
**relying (1)**
26:15
**remain (3)**
31:9;38:15;68:16
**remained (3)**
66:1,2;88:14
**remaining (7)**
25:10;30:4;35:25;
66:22;76:15;78:19;83:5
**remains (1)**
11:16
**remarks (3)**
85:11,12,14
**removed (1)**
83:24
**rendering (1)**
48:14
**renewal (3)**
52:21,25;53:5
**reorganization (3)**
47:12,14;60:4
**reply (1)**
29:24
**report (2)**
35:12;38:7

**represent (3)**
31:4;33:24;63:22
**representations (1)**
19:11
**represented (3)**
18:7;19:6;75:20
**request (13)**
21:12;22:4,6,8;23:14;
26:9;38:9;73:12;75:9;
85:22;86:11;88:4,6
**requested (9)**
11:10;15:4;17:16;
18:20;19:1;30:22;34:8;
49:6;81:22
**requesting (1)**
21:22
**requests (1)**
23:18
**required (1)**
76:8
**requiring (1)**
61:9
**rescission (1)**
51:24
**reserve (2)**
18:18;65:5
**reserved (1)**
32:3
**resistance (1)**
51:7
**resolution (1)**
18:4
**resolve (3)**
22:12;25:4;26:22
**resolved (16)**
11:15;25:11;30:3,23;
31:5,15,19;33:19;34:3;
35:12;38:8;40:6,9,21;
48:18;87:20
**resolves (2)**
14:25;32:20
**resources (3)**
59:9;84:3,6
**respect (28)**
15:7;25:13;27:15;
28:7,18;31:10;33:17;
34:1,18;37:17;38:14,22;
39:4;56:10;58:16;60:25;
62:3;64:1,10;74:7;77:4;
80:8;84:1;85:17;86:22;
87:12,12;88:2
**respectfully (1)**
85:22
**respective (1)**
42:24
**respects (1)**
58:25
**respond (4)**
20:18;51:19;69:9;80:6
**response (18)**
14:6;17:14;25:16;
27:2;29:5,10,19;30:8,10,
18;31:3;34:7;35:7;

38:12;63:3,7;74:25;75:8
**responsibility (1)**
82:5
**responsive (1)**
80:7
**restitution (1)**
61:10
**result (8)**
13:9;27:19;36:20;
56:5;61:8;83:14,23;87:1
**retain (1)**
12:10
**retained (4)**
12:19;16:21;17:5;
29:16
**retains (1)**
34:11
**retention (2)**
13:17,20
**return (1)**
64:16
**returned (2)**
64:11,12
**revealed (1)**
41:19
**reveals (1)**
86:20
**Revenue (1)**
38:7
**review (2)**
13:15;19:10
**reviewing (1)**
86:11
**revised (1)**
15:8
**Reynolds (2)**
6:3;36:18
**Richards (3)**
11:6;14:19;22:1
**RICHARDSON (2)**
5:15;9:15
**Right (62)**
11:19;12:5;13:21;
14:24;15:23;16:14;
18:18,23;19:3,14,17;
20:5,5,12,22,25;21:19;
25:3;26:24;27:2;30:8;
32:21;36:15;38:5,10,18;
39:10;44:2,2;45:10,14;
46:2;47:14;50:14;53:19;
54:14;56:8;59:24;66:3;
67:7,24;68:13;73:7,9,24;
75:7;76:5,10,14;77:3;
78:12,14,22;79:6,14,19;
81:18,23;84:23;85:24;
86:9;88:18
**rightfully (1)**
51:4
**rights (5)**
31:25;42:25;46:12,13;
72:21
**ripe (1)**
49:7

**rise (4)**
11:2;13:13;39:14;
60:16
**risk (1)**
16:25
**road (1)**
84:11
**ROBINS (2)**
7:13;82:25
**room (1)**
63:10
**ROSENMAN (2)**
9:8;32:24
**ROSNER (2)**
7:7;12:16
**roughly (3)**
47:23;67:22;68:5
**routine (1)**
82:24
**rubric (1)**
61:23
**RUDNICK (3)**
5:18;13:23;16:17
**Rule (10)**
17:22;19:15;21:20;
26:8;34:21;36:21;37:25;
47:23;70:1;86:11
**rules (1)**
88:10
**ruling (4)**
34:21;35:3,6;56:17
**run (1)**
48:10
**Rust (2)**
28:12,22
**RYAN (1)**
6:20

**S**

**safety (2)**
49:15,19
**sake (1)**
12:7
**same (10)**
20:2;66:1,2;70:11;
71:10,14,22;72:14;
75:12;85:16
**sat (1)**
46:16
**satisfaction (1)**
40:7
**satisfactory (1)**
42:7
**satisfied (1)**
73:18
**satisfying (1)**
60:15
**saying (4)**
69:14,15;72:2,10
**schedule (5)**
18:24;22:13,15,18,25
**scheduled (1)**

13:9

**schedules (6)**
18:23;22:6,24;23:3,
22;24:22

**schools (6)**
67:18;68:10,21,24;
79:15,24

**SCHWARTZ (7)**
5:20;13:22,23;14:8;
16:16,17;60:22

**scope (3)**
15:7;16:2;62:5

**SCOTT (2)**
7:15;82:25

**seated (1)**
39:14

**second (1)**
75:24

**Secondary (2)**
8:23;51:16

**Secondly (2)**
37:16;82:12

**Section (2)**
52:16,23

**secured (4)**
36:6,11;47:6;80:11

**seeing (2)**
42:19;60:14

**seek (14)**
19:15;20:22;25:3;
49:8,25;52:1,1,21,21;
53:5,6;56:3;73:4;77:18

**seeking (4)**
21:2,3,7;86:13

**seeks (3)**
49:8;52:25;61:7

**seem (3)**
55:24;70:14;73:19

**seems (8)**
42:6;54:16;56:4;
70:21;71:19,21;72:23;
87:14

**segregated (1)**
37:1

**segue (1)**
43:7

**sends (1)**
71:9

**sense (11)**
25:9,19;39:18,22;
40:3;43:17,18,18;47:3;
54:6;75:11

**sent (4)**
27:11,13;79:11;80:18

**sentiments (1)**
86:1

**separate (1)**
37:18

**separately (1)**
49:1

**September (6)**
50:10,11;63:20,21;
73:13,17

**serial (1)**
40:4

**serious (1)**
55:15

**served (1)**
74:6

**serves (1)**
43:9

**service (2)**
27:14;38:7

**services (1)**
16:8

**set (4)**
37:8;39:2;53:19;73:13

**setoff (3)**
31:25;32:3;34:1

**settlement (24)**
14:23,25;15:5,7;18:1,
5,7,15;20:6,11;35:13,16;
36:20,22;37:2,8,22;40:7;
47:22;50:11;52:6,8;
64:4,22

**settlements (1)**
60:4

**settling (1)**
18:3

**Several (3)**
40:5;67:11;73:2

**SEW (2)**
33:21,22

**SHANTI (2)**
6:15;83:2

**shed (1)**
11:20

**shoestring (1)**
62:18

**short (1)**
83:4

**shortened (2)**
12:24;13:14

**shot (1)**
63:11

**showing (1)**
26:21

**sic (1)**
80:5

**side (2)**
36:4,7

**SIDLEY (4)**
6:23;13:4;37:6;63:2

**sign (1)**
39:15

**signed (2)**
17:18;79:9

**significant (4)**
64:22;65:8,9;77:22

**similar (2)**
47:5;54:4

**Similarly (3)**
25:20;29:21;31:12

**simple (1)**
40:17;54:16;55:24,24;
56:5,24;57:5;61:25;

62:2;73:4;79:23

**simply (9)**
52:19;62:1;74:1,13,
17;77:9;81:14;85:1,15

**single (1)**
63:14

**sit (1)**
36:4

**site (1)**
75:19

**situation (6)**
45:10;47:21;49:19;
71:4;73:16;87:9

**sixteen (1)**
75:17

**smaller (1)**
68:17

**so-called (1)**
75:15

**solicitation (1)**
27:11

**solution (1)**
76:6

**somebody (1)**
30:24

**somehow (1)**
44:25

**someone (1)**
76:23

**somewhat (1)**
51:23

**somewhere (2)**
63:19;74:11

**SONIK (1)**
10:8

**sorry (3)**
40:20;49:1;70:8

**sort (10)**
40:3;46:8;47:9;48:20;
49:23;50:1;65:15,18;
72:19;86:1

**sources (1)**
49:25

**speak (1)**
60:22

**SPEAKER (2)**
11:4;39:17

**speaks (1)**
52:9

**special (3)**
12:19;38:25;39:1

**Specialists (1)**
10:7

**specific (7)**
16:5;19:8;34:8;39:4;
47:12;66:17;77:4

**specifically (6)**
34:21;65:18;67:17;
86:15,22;87:10

**specificity (1)**
46:21

**spell (1)**
40:12

**spend (3)**
59:9;80:25;81:14

**spent (2)**
56:25;57:3

**split (1)**
47:9

**spoke (1)**
74:11

**spoken (1)**
68:2

**squarely (1)**
46:6

**stage (1)**
38:23

**stamp (2)**
70:19;71:7

**Stand (5)**
39:11;76:11,17,17;
88:19

**standard (2)**
48:14;64:4

**standards (1)**
26:16

**standing (1)**
76:17

**start (2)**
12:9;80:1

**started (2)**
11:17;12:5

**starting (1)**
61:6

**State (27)**
5:3;40:1,14,18;41:7,7,
12;43:13,23;44:4,25;
49:8,10;51:3;53:12,18;
55:11,13,14,18;56:21;
57:10;59:4,6;65:12;
69:8;77:11

**stated (5)**
33:6,11;42:4;62:14;
80:11

**statement (8)**
14:1;27:6,10;29:12;
38:23;55:25;58:10;
86:20

**statements (6)**
15:21;32:19,25;78:7;
79:4,4

**States (10)**
13:12,24;25:20;29:25;
33:16,22;49:12;66:25;
69:4;70:13

**states' (3)**
63:17;81:19;82:11

**stay (16)**
25:15,17;42:9;48:21,
21,22;49:10;57:18;
58:19;62:5;73:2,12;
86:12,12;88:5,10

**stayed (1)**
25:15

**stays (1)**
58:7

**step (3)**
40:16;83:25;84:13

**STEVENS (1)**
8:8

**still (17)**
19:20;40:2;41:18;
43:22;44:12,13;48:5,17,
20;62:22;63:16;68:16;
76:16,17,17;84:8,17

**stipulate (4)**
50:20,21;56:2;73:5

**stipulation (1)**
27:24

**stipulations (1)**
80:9

**stock (2)**
61:11,15

**stop (3)**
49:18;57:20;82:24

**stopped (1)**
79:18

**straightforward (2)**
26:20;57:5

**street (1)**
88:11

**strong (1)**
47:10

**struck (5)**
40:8,8,15;41:5;43:8

**structure (2)**
36:7,19

**Student (31)**
5:14;6:13;7:3,14;9:14;
27:23;28:15;29:21,22,
23;33:18;34:2,6,16;35:3,
22;38:12;45:25;58:2;
60:7;65:5;67:20;68:5,
20;74:4;78:8,9;79:21;
82:14,15;84:7

**students (16)**
34:15;45:22;49:24;
50:2;54:21;55:3;60:8;
68:6;69:4;76:19;78:17;
79:9,16;83:25,25;84:6

**students' (1)**
34:12

**styled (1)**
43:17

**Subdivision (1)**
52:16

**Subject (4)**
24:20;37:11;65:7;
86:10

**submission (1)**
57:16

**submit (5)**
14:16;24:24;47:21;
49:21;87:15

**submitted (3)**
32:12,15;87:13

**subordinate (1)**
63:12

**subordinated (2)**

Case 15-10952-JTD    Doc 921    Filed 09/02/15    Page 106 of 107
CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

August 26, 2015

36:2;71:18
**subordinating (1)**
60:18
**substantial (1)**
48:7
**substantially (2)**
24:6;48:13
**suddenly (1)**
75:14
**sufficient (3)**
58:23;61:15;74:20
**SULLIVAN (1)**
8:12
**summary (2)**
54:20;57:17
**superpriority (3)**
36:5,11;60:17
**supplement (2)**
27:21;29:17
**supplemental (1)**
29:19
**support (8)**
26:16;28:23;29:14;
47:12;71:23;74:18;85:3;
87:8
**supported (1)**
71:16
**suppose (2)**
47:5;56:15
**supposed (2)**
42:12;78:17
**supposedly (1)**
41:6
**Supreme (1)**
39:3
**sure (11)**
22:21;38:18;40:23;
43:20;45:2;56:6;57:5;
70:1;73:5;79:8,14
**Surprise (1)**
18:14
**surrender (1)**
52:20
**surrendered (4)**
32:9;52:13,18,25
**survive (1)**
16:9
**suspenders (3)**
43:6;44:23;69:12
**syndicate (1)**
65:22

**T**

**tabbed (1)**
61:4
**table (1)**
49:5
**tabulation (1)**
28:13
**tags (1)**
38:13
**talk (4)**

57:24;63:17;73:10;
87:22
**talked (1)**
44:1
**talking (4)**
45:6;46:9;53:24;71:16
**tax (1)**
36:8
**team (1)**
42:18
**Technologies (1)**
83:8
**telephone (2)**
30:16;88:7
**TELEPHONICALLY (8)**
5:10;8:9,24;9:5,10,15,
20;10:2
**temporarily (1)**
28:1
**ten (1)**
67:23
**tend (1)**
76:24
**ten-minute (1)**
38:17
**term (2)**
15:12;42:16
**terminate (1)**
40:17
**terminating (1)**
41:6
**termination (4)**
67:3;81:20;82:8,12
**terms (1)**
25:16;35:16,17;37:23
**testimony (1)**
27:1
**Texas (4)**
9:3;30:20,24;31:1
**Thanks (1)**
39:12
**thank-you (1)**
63:15
**therefore (2)**
77:16,17
**there'll (1)**
53:18
**thinking (1)**
83:15
**third (12)**
20:18,20;21:5;29:11;
34:3,22;39:3;40:12;
47:10;83:8,9;85:22
**third-party (3)**
32:17;46:6;87:12
**thirty-five (1)**
67:22
**though (1)**
78:9
**thought (6)**
30:2;38:20;39:9;
48:19;62:13;64:17
**thousands (1)**

65:13
**three (8)**
31:7;34:1;65:22;
73:20;78:3;79:22;84:7,
11
**throughout (2)**
62:19;75:20
**tick (2)**
37:11;72:15
**ticks (2)**
71:7,9
**tie (1)**
77:10
**Tim (1)**
13:11
**timely (2)**
31:25;32:2
**timing (3)**
63:17;86:8;87:22
**Title (7)**
34:13,18;79:8,14;
81:8,10,10
**today (16)**
11:18;12:20;22:7;
26:2;27:8;46:24;73:18;
74:5;75:3;76:22;77:23,
24;82:18;83:11,21;
88:13
**today's (2)**
12:7;14:11
**together (2)**
38:18;85:20
**told (1)**
68:4
**tomorrow (1)**
88:1
**took (1)**
68:8
**total (1)**
18:4
**touched (1)**
83:11
**trace (1)**
68:13
**tracing (1)**
74:16
**traded (1)**
65:23
**transaction (1)**
79:6
**transferred (1)**
44:21
**transitional (1)**
16:8
**transpired (1)**
27:5
**treatment (3)**
70:11;71:10;72:15
**tribunal (4)**
58:12;59:8;69:18,20
**tribunal's (1)**
59:7
**tried (2)**

77:2;82:23
**true (5)**
21:6;28:18;31:12;
42:5;62:15
**truer (1)**
63:8
**truly (2)**
63:22;82:2
**trust (35)**
16:22;17:2;25:25;
27:22,23;29:21,23;
33:17;35:23,24;36:4;
58:2,2;60:7;65:2;67:6,8,
9,12,16;69:3;74:2,11;
75:5,16,22;76:4;77:13,
21;78:14,15,18;80:12;
81:25;84:9
**Trustee (6)**
13:12;29:21,22;67:16;
69:4;79:23
**trustees (1)**
79:24,24;80:23
**Trustee's (1)**
13:24
**trusts (4)**
42:25,25;56:3;65:3
**try (4)**
22:2;35:3;58:20;68:15
**trying (8)**
42:20;45:17,18;52:9;
56:25;76:1,9;82:16
**TSA (1)**
16:8
**turn (7)**
12:11,21;17:23;25:10;
39:22;57:21;61:5
**Turning (7)**
12:6;17:21;25:7;30:1;
59:20;60:24;61:5
**turns (1)**
88:5
**twelve (2)**
28:10;67:24
**twenty (1)**
51:10
**two (10)**
31:17;32:9,20;52:20;
55:7;78:25,25;80:17;
84:7,11
**two-part (1)**
83:14
**type (1)**
84:8
**typically (1)**
50:7

**U**

**ultimately (1)**
68:6
**unable (1)**
65:18
**unaddressed (1)**

88:14
**uncertainty (1)**
19:9
**unclear (1)**
48:4
**uncomfortable (1)**
41:18
**uncontested (1)**
85:3
**UNDER (54)**
5:13;13:7,9,19;14:2;
15:1,2,12;16:7,12,12;
17:6,22;19:15;21:20;
22:17;23:11,15,24;24:9,
25;25:16;26:17;33:19;
36:7,21;40:13,18;41:6,
12;42:11;43:23;44:4,21;
47:7,9;48:14;49:13;
52:15;57:19;59:6;60:3,
3;62:6;64:2,4;68:7;70:1,
11;71:10;81:20;83:14;
86:18;88:10
**underpinning (1)**
64:21
**understood (2)**
37:16;60:1
**undertake (2)**
41:11;44:4
**undertook (1)**
66:15
**undue (1)**
63:18
**Unfair (1)**
49:13
**unfamiliar (1)**
86:7
**UNIDENTIFIED (2)**
11:4;39:17
**unilaterally (1)**
52:18
**Union (1)**
66:9
**United (10)**
13:12,24;25:20;29:25;
33:16,22;66:25;69:4;
81:19;82:11
**unlawful (1)**
61:12
**Unless (2)**
57:15;84:16
**Unlike (1)**
63:9
**unlikely (1)**
88:9
**unmolested (1)**
45:6
**unpaid (3)**
18:3,4;23:12
**unresolved (2)**
31:10;33:16
**Unsecured (10)**
5:8,19;7:8;21:10;
36:14;65:4;66:14;68:14;

**CORINTHIAN COLLEGES, INC., et al.**
Case No. 15-10952 (KJC)

August 26, 2015

76:19;77:12
**untold (1)**
    56:25
**unwary (1)**
    72:19
**up (12)**
    16:4;17:20;20:12;
    25:23;37:13;48:3;54:15;
    65:9,12;71:18;79:9;
    82:16
**upon (4)**
    26:15,20;47:20;74:7
**use (5)**
    48:21;53:3,9;54:22;
    55:3
**used (3)**
    59:14;68:19;80:19
**using (1)**
    42:17
**usually (1)**
    55:20
**utilize (1)**
    81:15
**utilized (2)**
    81:9,12

**V**

**validation (2)**
    77:5,10
**valuable (2)**
    17:1,2
**various (8)**
    25:13;28:5;29:25;
    44:10,11;45:23;49:12;
    80:9
**vetted (1)**
    63:22
**victimized (1)**
    84:4
**view (2)**
    41:9;45:1
**views (2)**
    38:22;64:7
**vindicated (1)**
    45:11
**violating (1)**
    62:10
**violations (1)**
    61:8
**Violence (1)**
    10:6
**vital (1)**
    84:9
**void (4)**
    18:16,17;20:6,10
**volumes (1)**
    52:9
**vote (5)**
    27:12,13;32:16;70:20;
    87:13
**voted (2)**
    28:14,16

**votes (1)**
    28:18
**voting (6)**
    27:18,25;28:1,10,13,
    19

**W**

**WADE (1)**
    10:3
**wait (5)**
    20:14;51:11;53:13;
    54:18;55:7
**waiting (1)**
    63:16
**waiving (2)**
    19:3;25:3
**walk (2)**
    27:6;30:2
**wants (1)**
    46:22
**WARD (2)**
    6:14;83:2
**WARN (12)**
    6:3;8:4;35:11,13,19;
    36:10,13,15,18;37:17,
    24;60:9
**warranted (3)**
    18:7;19:6;86:17
**waste (1)**
    12:4
**Watt (5)**
    9:9;31:18,24;32:22,24
**way (14)**
    27:1;37:20,24;38:3;
    42:8;44:15;45:9;48:8;
    52:11;63:23,25;71:12;
    76:3;84:22
**ways (1)**
    38:13
**week (3)**
    68:8,9;80:5
**weekly (2)**
    67:19,23
**weeks (3)**
    73:20;78:25,25
**weighs (2)**
    70:17;87:8
**welfare (1)**
    49:15
**well-established (1)**
    64:3
**well-taken (1)**
    47:17
**weren't (3)**
    24:4;80:24,25
**West (1)**
    66:8
**what's (3)**
    16:7;78:23;80:16
**whatsoever (2)**
    74:6;75:6
**Whereupon (1)**

88:20
**whistles (1)**
    46:18
**Whitaker (1)**
    28:22
**who's (1)**
    83:1
**WILLIAM (6)**
    8:14;17:24;24:13;
    29:13;85:3,9
**willing (2)**
    56:2;79:12
**WILLKIE (8)**
    5:7;12:10,18,20;13:7;
    14:2,9;39:16
**Wisconsin (2)**
    31:8;50:21
**wish (9)**
    13:6;14:5;16:15;
    17:12;31:1;32:22;36:15;
    82:15;85:24
**wishes (2)**
    13:1;84:22
**withdrawal (2)**
    34:20,25
**withdrawing (1)**
    31:16
**withdrawn (1)**
    33:11
**withdrew (1)**
    34:19
**within (2)**
    61:22;77:16
**without (9)**
    20:24;29:5;41:9;42:7;
    57:2;70:9;74:18;75:5;
    85:8
**witnesses (3)**
    53:20,22;74:6
**wonder (1)**
    21:18
**word (2)**
    56:12,13
**work (6)**
    11:12;42:15;44:14;
    56:25;83:20;85:20
**worked (3)**
    13:15;57:4;75:15
**working (3)**
    11:21;40:6;79:18
**world (2)**
    16:24;77:7
**worry (1)**
    63:18
**worth (1)**
    72:3
**wrangle (1)**
    53:25
**written (1)**
    53:1
**wrong (3)**
    43:19;44:7;79:12
**wrongfully (1)**

34:14

**Y**

**yay (1)**
    45:25
**year (3)**
    52:20;53:5;74:23
**years (2)**
    53:24;84:11
**yesterday (4)**
    22:7;34:6,8;43:21

**Z**

**Zenith (34)**
    7:20;14:23;15:1,6,7,
    12,15,17,20,25;16:5,11,
    19,23;17:4,6,7;18:8;
    19:6,7,19;20:13,23,24;
    21:17,18;23:25;24:6;
    48:8;64:4;67:14;68:3;
    75:2;79:1
**zero (1)**
    80:3