**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re: Docket No. 781** |

**DEBTORS' OBJECTION TO MOTION OF JENNIFER STEVENS FOR
RELIEF FROM THE AUTOMATIC STAY/CONFIRMATION INJUNCTION**

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby file their objection (the "**Objection**") to the *Motion of Jennifer Stevens for Relief from the Automatic Stay/Confirmation Injunction*, filed on August 19, 2015 [Docket No. 781] (the "**Motion for Relief from Stay**"). In support of their Objection, the Debtors respectfully represents as follows.

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

## Background

**A.     The Bankruptcy Cases**

1. On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under Bankruptcy Code sections 1107 and 1108.

2. On May 13, 2015, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the "**Creditors' Committee**"). The U.S. Trustee appointed an official committee of student creditors (the "**Student Committee**") on May 15, 2015.

3. Additional information on the Debtors' business and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Declaration of William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 10].

4. On July 1, 2015, the Debtors filed the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, which was subsequently amended on July 24, 2015, July 27, 2015, August 25, 2015, and August 28, 2015 [Docket Nos. 520, 646, 655, 863, 906, and 909, respectively] (as amended, the "**Plan**"). On August 28, 2015, the Court entered the *Order Confirming Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 913] (the "**Confirmation Order**") confirming the Debtor's Plan. The Plan provides for the creation of a two trust structure: (i) the Distribution Trust[2], for the benefit of Holders of Allowed General Unsecured Claims (other than Student Claims and Government Education Claims); and (ii) the Student Trust, for the benefit of Holders of Allowed Student Claims and Government Education Claims. The Plan has not yet gone effective, but the

---

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

RLF1 12969472v.2

Debtors anticipate that the Plan will go effective prior to the hearing to consider the Motion for Relief from Stay.

**B.     The Motion for Relief from Stay/Confirmation Injunction**

2.     On December 22, 2014, Jennifer Stevens ("**Stevens**") commenced a civil action in the Superior Court for the State of California for the County of San Francisco (the "**California Action**") naming one of the Debtors, Heald College LLC ("**Heald**"), and two former employees of the Debtors as defendants.  Heald employed Stevens prior to the Petition Date.  Stevens alleges that Heald and the other defendants harassed her on the basis of her pregnancy and related medical conditions and that Stevens was unlawfully terminated from her employment.

3.     Heald and one of the other defendants have answered the complaint in the California Action.  Other than the filing of the answer and initial institution of discovery, very little has happened in the California Action.  The California Action was stayed pursuant to the automatic stay and will remain stayed as against the Estates following the Effective Date pursuant to the injunction language in the Plan.

4.     Stevens has filed two identical proofs of claim in these Chapter 11 cases.  One seeking not less than $1 million from Heald and the other seeking the same amount from Corinthian Colleges, Inc.

5.     Steven's harassment and wrongful termination cause of action (the "**Stevens Claim**") is covered by Debtors' Employee Practices Liability Insurance Policy (the "**EPL Policy**").  Pursuant to the EPL Policy, any loss under the policy, including defense costs, is subject to a self-insured $250,000 retention.  The EPL Policy further provides that the Debtors are required to defend against any claims that are covered under the EPL Policy.  Accordingly, to the extent that the Motion for Relief from Stay is approved, the Estates (through the Distribution

3

Trust) may be required to put on a defense in the California Action and to fund the first $250,000 of the defense costs.

6. Notably, the Motion for Relief from Stay also appears to seek relief from the injunctions contained in the Plan. The Debtors note that the request for relief from the confirmation injunction only appears in the title of the Motion for Stay Relief and in the proposed form of order approving the Motion for Stay Relief. The Motion for Stay Relief itself does not set for the standard for obtaining such relief.

## The Objection

7. The Debtors respectfully submit that the Motion for Relief from Stay should be denied, and that the Stevens Claim should be adjudicated as part of the claims process in the Chapter 11 cases like all disputed claims other than claims for damages due to personal injury and wrongful death.

### A. Legal Precedent

8. The Motion for Relief from Stay requests relief from the automatic stay pursuant to Section 362(d)(1) of the Bankruptcy Code, which provides in relevant part:

> (d) On request of party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . .
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

Whether "cause" exists to lift the automatic stay is a decision entrusted to the sound discretion of the bankruptcy court. *See*, *e.g.*, *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007). Because Section 362(d)(1) does not define "cause," courts are left to determine what constitutes cause based on the totality of the circumstances and on a case-by-case basis. *See In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

4

9. Similarly, a claimant must obtain relief from a plan injunction in order to pursue a claim against a debtor's estate for monetary damages. *See In re Kaiser Aluminum Corp.*, 399 B.R. 596 (D. Del. 2009). Further, like relief from the automatic stay, a movant must establish cause exists to modify a confirmation injunction to allow a state court action to proceed.

10. In determining whether cause exists to lift the automatic stay or provide for relief from the confirmation injunction to allow a prior pending action to proceed, courts have employed a balancing test that considers whether: "(a) [a]ny great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, (b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (c) the creditor has a probability of prevailing on the merits." *Id.* at 576 (citations omitted). Courts have considered other factors as well, including the degree of interference with the debtor's bankruptcy case and whether permitting the litigation to proceed would prejudice the interests of other creditors. *See, e.g., In re SCO Group, Inc.*, 395 B.R. at 857; *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009). "Even slight interference with the administration [of the debtor's estates] may be enough to preclude relief in the absence of a commensurate benefit." *In re W.R. Grace & Co.*, No. 01-01139, 2007 Bankr. LEXIS 1214, at *9 n.7 (Bankr. D. Del. Apr. 13, 2007) (*quoting In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); *see also In re DBSI, Inc.*, 407 B.R. at 167 ("Courts also place emphasis on whether lifting the automatic stay will impeded [sic] the orderly administration of the debtor's estate.").

**B.    Lifting the Stay Will Prejudice the Debtors' Estates**

11. Granting the relief requested in the Motion for Stay Relief may result in significant administrative costs to the Debtors' Estates. While the Stevens Claim is covered by the EPL Policy, any loss under the policy, including defense costs, is subject to a self-insured

$250,000 retention. Thus, the Estates would be required to continue funding defense costs up to $250,000 before any insurance coverage is available. Alternatively, should the Estates be unable to fund administrative defense costs, they risk the entry of a significant default judgment in the California Action that would dilute any distribution to unsecured creditors and potentially void any potential coverage under the EPL Policy.

12. Allowing the Stevens Claim to be resolved through the Debtors' claim adjudication process, on the other hand, would provide a more expeditious and less expensive mechanism through which the Estates and Stevens may continue exploring, in conjunction with the Debtors' insurer under the EPL Policy, the possibility of settlement in resolution of the Claim. If, however, the parties are unable to fully resolve the Stevens Claim through settlement, this Court should serve as the forum to liquidate the Stevens Claim as part of the Debtors' claim resolution process to be conducted by the Distribution Trust. Granting stay relief to a claimant with a disputed claim in order to allow the claimant an opportunity to liquidate her claim in the chosen forum would undermine the Debtors' claims resolution process - a fundamental, core proceeding. *See, e.g., Tarragon Corp. v. Northland Portfolio, L.P. (In re Tarragon Corp.)*, 2009 Bankr. LEXIS 2106, at *20 (Bankr. D. N.J. July 27, 2009) ("one of the fundamental purposes of the bankruptcy system is to adjudicate and conciliate all competing claims to a debtor's property in one forum.").

C.  **Stevens Will Not Be Prejudiced by Maintaining the Stay**

13. The second factor considered by courts is whether the hardship to the movant considerably outweighs the hardship to the debtors and their estates. *See, e.g., In re W.R. Grace & Co.*, 2007 Bankr. LEXIS 1214, at *11 (holding that the party seeking relief from the stay "bears 'the heavy and possibly insurmountable burden of proving that the balance of hardships

tips *significantly* in favor of granting relief.'") (emphasis added) (*quoting In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D. Pa. 1990)); *see also In re RNI Wind Down Corp.*, 348 B.R. 286, 299 (Bankr. D. Del. 2006) ("[T]he party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" (*quoting In re Am. Classic Voyages Co.*, 298 B.R. 222, 225 (D. Del. 2003)). Here, Stevens cannot demonstrate any real harm from the continuation of the stay at this time.

14. Continuing the automatic stay or the confirmation injunction will not result in prejudice to Stevens, as it is in the very early stages and no trial date has been set in the California Action. Further, any potential proceeds available to Stevens under the EPL Policy will not be jeopardized because the claim has been reported to the insurer under the EPL Policy. Accordingly, the Stevens Claim should not be treated any differently than other unsecured creditors in the Debtors' claim adjudication process.

**D.    Stevens' Likelihood of Success on the Merits**

15. The final factor courts consider when determining whether to grant stay relief or plan injunction relief is whether the moving party has demonstrated a likelihood of success on the merits in the state court action. The Debtors submit that it is too early in the process of the California Action to determine whether Stevens' claim will succeed if the California Action were to go forward. While this may mean that this factor of the test is neutral (rather than favoring the Debtors), it only lends further support to the Debtors' argument that the second factor favors denying the Motion for Relief from Stay. If the California Action is too preliminary for the parties to argue whether Stevens is likely to succeed, there cannot be a prejudice to Stevens to deny stay relief and require her to adjudicate her claim as a part of the claims process in these cases.

**Conclusion**

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that the Court sustain the Objection and deny the Motion for Relief from the Stay.

Dated: September 14, 2015  
      Wilmington, Delaware

*/s/* Marisa A. Terranova  
Mark D. Collins (No. 2981)  
Michael J. Merchant (No. 3854)  
Marisa A. Terranova (No. 5396)  
Amanda R. Steele (No. 5530)  
RICHARDS, LAYTON & FINGER, P.A.  
920 N. King Street  
Wilmington, Delaware 19801  
Telephone: 302-651-7700  
Facsimile: 302-651-7701  
Email: collins@rlf.com  
      merchant@rlf.com  
      terranova@rlf.com  
      steele@rlf.com

Counsel for the Debtors and Debtors in Possession