## Exhibit A

**(Answer)**

IRELL & MANELLA LLP
John C. Hueston (164921)
Brian J. Hennigan (86955)
Andra B. Greene (123931)
Khaldoun Shobaki (232864)
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:    (310) 277-1010
Facsimile:    (310) 203-7199
E-mail:        jhueston@irell.com
                bhennigan@irell.com
                agreene@irell.com
                kshobaki@irell.com

Attorneys for Defendants

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>   Plaintiff,<br><br> vs.<br><br>HEALD COLLEGE, LLC; CORINTHIAN COLLEGES, INC.; CORINTHIAN SCHOOLS, INC.; SEQUOIA EDUCATION, INC.; CAREER CHOICES, INC.; MJB ACQUISITION CORPORATION; TITAN SCHOOLS, INC.; RHODES COLLEGES, INC.; FLORIDA METROPOLITAN UNIVERSITY, INC.; EVEREST COLLEGE PHOENIX, INC.; and DOES 1 through 100, INCLUSIVE,<br><br>   Defendants. | Case No. CGC-13-534793<br><br>THE SCHOOL'S VERIFIED ANSWER<br><br>Assigned to Hon. Curtis E.A. Karnow, Dept. 304<br><br>Action Filed: October 10, 2013 |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1    Pursuant to California Code of Civil Procedure § 446, Defendants Heald College LLC,

2    Corinthian Colleges, Inc., Corinthian Schools, Inc., Sequoia Education, Inc., Career Choices, Inc.,

3    MJB Acquisition Corporation, Titan Schools, Inc., Rhodes Colleges, Inc., Florida Metropolitan

4    University, Inc. and Everest College Phoenix, Inc. (collectively, "the School") hereby answer the

5    numbered paragraphs of the People of the State of California's (hereinafter, "the Government")

6    Complaint for Civil Penalties, Permanent Injunction, and Other Relief ("Complaint") as follows:

7                                   **PRELIMINARY STATEMENT**

8    The Government's false allegations and the aspersions cast on the School's relationship with

9    its students are offensive and demeaning—to the School and its employees; to its students who are

10   striving for a career and a better life; and to the employers who hire its thousands of qualified

11   graduates.  The Government's Complaint also implies that state regulators and accreditation

12   agencies have failed to provide proper oversight of the School.  This is ill informed and

13   demonstrably untrue.

14   The Complaint suggests that the School's employees go to work every day for the express

15   purpose of preying on students.  This is insulting and preposterous.  The School and its employees

16   are passionately dedicated to providing quality career education, to helping students overcome

17   academic and personal obstacles that stand in the way of completing their programs, and to

18   helping graduates find meaningful work in their fields of study.  Most of the School's students

19   have not succeeded in a traditional academic environment; over 40% have tried community

20   college before enrolling at one of its institutions.  The School's students have few people in their

21   lives who can provide the support and encouragement they need to achieve a career goal.  The

22   School and its employees are committed to honoring the trust that its students place in its

23   institutions.  Its campus teams work in concert to teach, mentor, counsel, coach and cheerlead their

24   students to success.  Across the School's network of campuses, it has one career services

25   employee for every 108 students; in a typical community college, that ratio is one counselor for

26   approximately 1,000 students, including all types of counseling, from personal to academics to

27   career.  The School's substantial and on-going investment in placement services has helped tens of

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 2 -

The School's Verified Answer (Case No. CGC-13-534793)

1  thousands of graduates find work in their fields, even during the recent deep and prolonged

2  recession.

3       As a career institution, the School is subject to a complex, oft-times conflicting, and extensive

4  web of federal and state regulation, along with myriad accreditation, licensing and reporting

5  requirements.  The School has been, and continues to be an industry leader in its commitment to

6  integrity and to the implementation and enhancement of processes and training to promote

7  compliance.  The School has devoted substantial resources to not only meet these regulatory

8  requirements, but to exceed them.  Rather than acknowledging and commending the School's

9  aspirational goals, the Government is seeking to punish the School.  The Complaint is replete with

10 selective, misleading and out-of-context quotations that attempt to turn the School's commitment

11 to high standards against it.

12      In California, the School has cooperated extensively with the Government.  It has done so

13 openly and because it has confidence in its internal controls and its people.  The School provided

14 several hundred thousand pages of documents, voice recordings and answers to new questions

15 posed on an almost-weekly basis by the Government.  The School repeatedly offered to present

16 information and explanation on any issues about which the Government had concerns.  Without

17 accepting those offers and without any notice, the Government filed this Complaint—a document

18 built on a foundation of misquoted, deceptively excerpted, and—at best—misunderstood

19 materials.  For example, the Government cites a slide from a presentation in paragraph 51(e) for

20 the proposition that there was a "placement file error rate of 53.6 percent to 70.6 percent."  In

21 reality, that slide does not even include the word "placement," and the internal review in question

22 did not reflect a single suspect, let alone false placement, contrary to the Government's

23 insinuation.

24      The School will address and expose those mischaracterizations in due course before this Court

25 in a process that begins with this Verified Answer.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 3 -

The School's Verified Answer (Case No. CGC-13-534793)

**INTRODUCTION**

1.     The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the Government's representations about its purported reasons for bringing this action, and denies the allegations in paragraph 1 on that basis.  What's past is prologue:  In 2007, the Government received $4,300,000 to distribute to students as part of the stipulated judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior Court).  More than *six years* later, over $4.2 million still sits in the Government's coffers because it has failed to diligently locate and disburse the funds to the students.  The balance of the allegations in paragraph 1 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 1.

2.     The School vehemently denies that it engages in "unlawful, unfair and fraudulent practices" as alleged in paragraph 2.  The School admits that the costs and fees for the programs listed in paragraph 2 are accurate.  Education costs have risen significantly for all education sectors, and have been driven higher by the federal government's 90/10 rule in the proprietary sector.  Except as expressly admitted herein, the School denies the allegations in paragraph 2.

3.     The School serves non-traditional students with varied demographics. The School's research has revealed insights about how these students *view themselves*, and what kinds of models and services the School can provide to help these students succeed in their stated educational goals.  In the Complaint, the Government selectively quoted from a slide contained in a presentation in an attempt to cast the School's view of its students in a negative light.  A copy of the complete slide is attached hereto as **Exhibit A**.  For students who described themselves as "isolated," the School saw a need for a "[s]ense of belonging, place where they can succeed."  For students who described themselves as having "low self esteem," the School saw a need for a "[c]onfident, capable, real adult, role model for kids."  For those who said they have "few people in their lives who care about them," the School saw a need to provide "[e]ncouragement, someone who believes in them."  And for those who said they were "[s]tuck, unable to see and plan well for the future," the School offered "[s]omeone who can show them how so they can gain independence."  The School admits that it is proud to offer a meaningful, nurturing environment

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  that responds to the self-professed needs of its students.  The School admits that it uses Internet,

2  telemarketing and television advertisement to publicize its programs and encourage students to

3  better their lives through education.  Except as expressly admitted herein, the School denies the

4  allegations in paragraph 3.

5      4.    The School admits that the stipulated judgment in *People v. Corinthian Schools, Inc.,*

6  *et al.*, No. BC374999 (Los Angeles Superior Court) includes injunctive relief.  The stipulated

7  judgment speaks for itself, including the obligation of the Government to distribute funds to

8  students, which it has failed to do.  Except as expressly admitted herein, the School denies the

9  allegations in paragraph 4.

10      5.    The allegations in paragraph 5 are conclusions of law and a prayer for relief, to which

11  no response is required.  To the extent that they may be construed as factual allegations, the

12  School denies the allegations in paragraph 5.  Nonetheless, the School prays that the Government

13  take nothing by the Complaint, that the requested injunctive and equitable relief be denied, that the

14  School be awarded judgment in this action.

15  **THE PARTIES**

16      6.    The School admits that Kamala D. Harris is the Attorney General of the State of

17  California.  The allegations in paragraph 6 are conclusions of law to which no response is

18  required.  Except as expressly admitted herein, the School denies the allegations in paragraph 6.

19      7.    The School admits the factual allegations of paragraph 7, noting that Heald College

20  LLC is an indirect subsidiary of Corinthian Colleges, Inc.

21      8.    The allegation in paragraph 8 is the Government's definition of what it means when it

22  uses the term "Heald," and no responsive pleading is required, except that Heald College LLC has

23  no subsidiaries.

24      9.    The School admits the factual allegations of paragraph 9 related to Corinthian

25  Colleges, Inc.'s incorporation, principal place of business, subsidiary ownership and enrollment of

26  students in California.

27      10.    The School admits the factual allegations regarding its stock symbol and listing in

28  paragraph 10.  The remaining allegations in paragraph 10 are conclusions of law to which no

**IRELL & MANELLA LLP**
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

response is required.  Except as expressly admitted herein, the School denies the allegations in paragraph 10.

11.    The allegation in paragraph 11 is the Government's definition of what it means when it uses the term "Corinthian Colleges, Inc.," and no responsive pleading is required.

12.    The School admits the factual allegations regarding Corinthian Schools, Inc.'s incorporation, principal place of business and nature as a wholly-owned subsidiary found in paragraph 12, but denies that Corinthian Schools, Inc. owns the Ontario Metro campus, and denies that Corinthian Schools, Inc. currently owns the Los Angeles – Wilshire, San Francisco, Hayward and San Jose campuses.

13.    The allegation in paragraph 13 is the Government's definition of what it means when it uses the term "Corinthian Schools, Inc.," and no responsive pleading is required.

14.    The School admits the factual allegations regarding Sequoia Education, Inc.'s incorporation, principal place of business and ownership.

15.    The allegation in paragraph 15 is the Government's definition of what it means when it uses the term "Sequoia Education, Inc.," and no responsive pleading is required.

16.    The School admits the factual allegations regarding Career Choices, Inc.'s incorporation, principal place of business, subsidiary ownership and nature as a wholly-owned subsidiary.

17.    The allegation in paragraph 17 is the Government's definition of what it means when it uses the term "Career Choices, Inc.," and no responsive pleading is required.

18.    The School admits the factual allegations regarding MJB Acquisition Corporation's incorporation, principal place of business and ownership.

19.    The allegation in paragraph 19 is the Government's definition of what it means when it uses the term "MJB Acquisition Corporation," and no responsive pleading is required.

20.    The School admits the factual allegations regarding Titan Schools, Inc.'s incorporation, principal place of business, subsidiary ownership and nature as a wholly-owned subsidiary.

21.    The allegation in paragraph 21 is the Government's definition of what it means when it uses the term "Titan School, Inc.," and no responsive pleading is required.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 6 -

2914172

The School's Verified Answer (Case No. CGC-13-534793)

22.    The School admits the factual allegations regarding Rhodes Colleges, Inc.'s incorporation, principal place of business, subsidiary ownership, nature as a wholly-owned subsidiary and that it conducts business in California.

23.    The allegation in paragraph 23 is the Government's definition of what it means when it uses the term "Rhodes Colleges, Inc.," and no responsive pleading is required.

24.    The School admits the factual allegations regarding Florida Metropolitan University, Inc.'s incorporation, principal place of business, subsidiary ownership, nature as a wholly-owned subsidiary and that it conducts business in California.

25.    The allegation in paragraph 25 is the Government's definition of what it means when it uses the term "Florida Metropolitan University, Inc.," and no responsive pleading is required.

26.    The School admits the factual allegations regarding Everest College Phoenix, Inc.'s incorporation, principal place of business and ownership and that it conducts business in California.

27.    The allegation in paragraph 27 is the Government's definition of what it means when it uses the term "Everest College Phoenix, Inc.," and no responsive pleading is required.

28.    The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 28 and denies the allegations on that basis.

29.    The allegation in paragraph 29 is the Government's definition of what it means when it uses the term "DOE Defendants 1 to 50," and no responsive pleading is required.

30.    The allegation in paragraph 30 is the Government's definition of what it means when it uses the term "DOE Defendants 51 to 100," and no responsive pleading is required.

31.    The allegation in paragraph 31 is the Government's explanation of what it means when it uses the terms "CCI" or "Defendants," and no responsive pleading is required.

32.    No responsive pleading is required to paragraph 32.

33.    The allegations in paragraph 33 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 33.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 7 -

The School's Verified Answer (Case No. CGC-13-534793)

34.     The allegations in paragraph 34 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 34.

35.     No responsive pleading is required to paragraph 35.

36.     The allegations in paragraph 36 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 36.

37.     The allegations in paragraph 37 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 37.

38.     The allegation in paragraph 38 is a conclusion of law to which no response is required.

39.     The allegations in paragraph 39 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 39.

## JURISDICTION AND VENUE

40.     The allegation in paragraph 40 is a conclusion of law to which no response is required.

41.     The allegation in paragraph 41 is a conclusion of law to which no response is required.

42.     The allegation in paragraph 42 is a conclusion of law to which no response is required. To the extent that this is construed as a factual allegation, the School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in paragraph 42, and denies the allegation on that basis.

43.     The allegation in paragraph 43 is a conclusion of law to which no response is required.

44.     The allegation in paragraph 44 is a conclusion of law to which no response is required.

45.     The allegation in paragraph 45 is a conclusion of law to which no response is required. The Government bases its claim of jurisdiction on the July 31, 2007 Final Judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior Court).  The judgment speaks for itself, including the Government's obligation to distribute funds to students and the benefit to the Government should it fail to do so.  In the judgment, the Los Angeles Superior Court

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 8 -

The School's Verified Answer (Case No. CGC-13-534793)

1    retained jurisdiction over actions to enforce the terms of the judgment.  Instead of seeking to

2    enforce the judgment before the court that entered it, the Government has chosen to bring this case

3    in a venue more than 400 miles away from the School's headquarters, operations center and many

4    potential trial witnesses in Santa Ana, California.

5    <u>**THE GOVERNMENT'S ALLEGATIONS**</u>

6    46.    The School admits that it educates students through nationally and regionally

7    accredited campuses and online, including the identified schools.

8    <u>**The School Accurately Reports Job Placement Rates to Students and Accreditors**</u>

9    47.    The School calculates and reports student placement statistics based on formulae and

10   criteria established by a variety of regulatory bodies.  The nature of these calculations varies

11   widely between, on the one hand, accreditors like ACCSC and ACICS and on the other hand,

12   reports mandated by the United States Department of Education's Program Integrity Rules and the

13   State of California's Bureau for Private Postsecondary Education.  The School has robust

14   compliance, accreditation and licensing processes in place to ensure that its reports are accurate

15   and comply with the applicable rules and regulations.  The School denies that its July 1, 2012

16   disclosures do not "match or agree" with the School's placement data.  The Government's

17   allegations in paragraph 47 are vague and ambiguous as to the purported representations and

18   advertisements at issue.  As such, the School is without knowledge or information sufficient to

19   form a belief as to the truth or falsity of the Government's allegations in paragraph 18 about

20   "representations and advertisements," and denies them on that basis.  To the extent the allegation

21   is based on the out-of-context and misleading documents cited in paragraph 51, see the School's

22   response to that paragraph.  Except as expressly admitted herein, the School denies the allegations

23   in paragraph 47.

24   48.    The School admits that Executive Vice President of Operations, Bob Bosic, wrote in a

25   November 30, 2011 e-mail quoted by the Government in paragraph 48 that: "Successfully placing

26   our students in quality jobs is extremely important to [the School].  Our students come to us

27   primarily to gain skills and find a position that will help them launch a successful career."  This

28   statement reflects the School's long-standing and continued commitment to the success of its

graduates.  The School admits that a 2012 marketing study on student enrollment decisions at

Everest campuses showed that for some students, those decisions were driven primarily by

"affordability & placement concerns," while other students were "more driven by programmatic

virtues."  Except as expressly admitted herein, the School denies the allegations in paragraph 48.

49.     The School admits that it issues standardized disclosures for each campus.  These

disclosures are related to, among other things, job placement, in order to assist prospective

students in making the best educational decision for themselves with the help of their trusted

advisors.  The School encourages prospective students to visit and tour a campus prior to

enrollment and to bring family and trusted advisors with them.  The School denies that it makes

these disclosures to "help sell its programs to prospective students" as alleged by the Government

in paragraph 49.  While such disclosures may benefit a student's informed enrollment decision,

their existence and content are mandated by the United States Department of Education's Program

Integrity Rules and the State of California's Bureau for Private Postsecondary Education.  Thus,

the School makes these disclosures to assist students and to comply with requirements put in place

by Government agencies.  The School admits that the standardized disclosures "contain placement

rates for each program" where such information is available.  Except as expressly admitted herein,

the School denies the allegations in paragraph 49.

50.     The School admits that published placement rates for some cohorts and programs are

accurately as high as 100 percent.  The School's enrollment documents, catalog and training to

admissions representatives are unmistakably clear that post-graduation placement is not

guaranteed.  The School collects information to support its disclosures as is prudent and required

by regulatory agencies.  The School is without knowledge or information sufficient to form a

belief as to the truth or falsity of the allegation about the beliefs of prospective students in

paragraph 50 and denies the allegations on that basis.  Except as expressly admitted herein, the

School denies the allegations in paragraph 50.

51.     The School denies the out-of-context and intentionally-misleading allegations in

paragraph 51.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 10 -

The School's Verified Answer (Case No. CGC-13-534793)

1      a.  The School's Executive Leadership Team meets periodically to discuss strategic

2           initiatives and plans.  During these strategic planning sessions, the leadership

3           engages in frank discussions of potential issues the School faces.  The School

4           admits that CEO Jack Massimino circulated a 64-page presentation prior to the

5           team meeting in September 2011.  The school admits that, in the context of a series

6           of slides discussing Government funding, the presentation includes one slide titled

7           "Implications," with the following text: "We had a [cohort default rate] problem

8           and fixed it.  We had a retention compliance problem and got back into compliance.

9           We have a placement compliance problem now *and need to get back into*

10          *compliance*.  Do we need to execute against standards higher than just

11          compliance?"  (emphasis added).  The concerns expressed in this slide about

12          placement compliance refer to the fact that the School had too many programs on

13          placement reporting status with its accreditors—meaning that in a challenging

14          employment environment amid the worst recession in generations, School

15          leadership was concerned about not placing a sufficient number of its graduates.

16          This slide does not, as the Government insinuates, mean that the School's

17          leadership believed that the School had issues with the falsification of student

18          placements.  Except as expressly admitted herein, the School denies the allegations

19          in paragraph 51(a).

20      b.  The School admits that by letter dated December 7, 2011, ACCSC granted Everest

21          College Hayward a renewal of accreditation for five years subject to a single

22          stipulation.  The School admits that the selectively, and misleadingly, quoted

23          portions of the ACCSC communications are part of a broader dialogue between the

24          School and ACCSC related to the renewal of Hayward's accreditation.  What the

25          Government fails to mention is that the School provided ACCSC with

26          documentation showing that the placements with Select Staffing were paid,

27          sustainable, appropriate based on the educational objectives of the Medical

28          Assistant diploma program, aligned with the objectives of and directly related to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 11 -

The School's Verified Answer (Case No. CGC-13-534793)

1    that program.  These were not just single-day or two-day assignments, but rather

2    repeated work at varying health fairs throughout the Bay Area.  Such variety and

3    flexible scheduling are appealing characteristics of employment to some graduates.

4    Further, ACCSC accepted the documentation regarding the sustainable nature of

5    the placements with Select Staffing, removed the stipulation and on March 6, 2013,

6    provided written notice that the stipulation had been satisfied.  Except as expressly

7    admitted herein, the School denies the allegations in paragraph 51(b).

8    c.    The School admits that Executive Vice President of Operations, Bob Bosic and

9        West Division President Nicole Carnagey exchanged a series of e-mails on

10       February 10, 2012 about job placement issues at Everest College Hayward and

11       Everest College San Francisco.  This e-mail discussion demonstrates that

12       leadership moves swiftly and decisively to deal with any alleged irregularities.  The

13       Government fails to include that the questionable student placements were

14       investigated, removed and never reported to accreditors or included on a student

15       disclosure form.  Except as expressly admitted herein, the School denies the

16       allegations in paragraph 51(c).

17   d.    The School admits that an Unannounced Compliance Audit Report for Everest

18       College San Francisco covering the period from July 1, 2011 to March 3, 2012 was

19       circulated by e-mail to the School's senior executives and management on March

20       19, 2012.  Unannounced compliance audits are regularly conducted by the School

21       to promote compliant, ethical behavior and to identify and remedy irregularities.

22       Such self-critical analysis is a hallmark of the School's efforts to do what is right

23       by students and to comply with multiple layers of regulation—an effort the

24       Government seeks to punish.  Internal audit reports such as this are routinely

25       circulated to senior executives and management as part of the School's effort to

26       demonstrate to the campuses the importance of these compliance audits.  The

27       School admits that the report includes a finding that Career Services was missing

28       employment verification forms for eight of fifteen students randomly sampled

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172        The School's Verified Answer (Case No. CGC-13-534793)

during the audit.  The audit report does not include a finding that those students were not in fact placed, only that some hard-copy documentation was missing from the student files.  The Government omits the report's finding of exceptions in only 2.03% of the campus's Career Services Department.  Except as expressly admitted herein, the School denies the allegations in paragraph 51(d).

e.    The School admits that a 69-page document titled "Quarter 3 Compliance Review: EOU Divisional" was e-mailed to Executive Vice President David Poldoian on April 13, 2013.  The document is a summary of a self-audit conducted to promote compliance with accreditor, governmental and auditor standards.  The School denies that the document shows "a placement file error rate of 53.6 percent to 70.6 percent."  The Government's deceptive quotation is highlighted by:  a) the document itself identifying that the percentages are based on the measurement of individual *attributes* and not *files*; and b) the quoted page clearly indicating the vast majority of findings relate, not to placement, but to retention of students in various programs.  The page of the presentation from which the Government has plucked these percentages does not even include the words "placement" or "placement file."  Not one of the findings relates to an improper placement.  Except as expressly admitted herein, the School denies the allegations in paragraph 51(e)**.**

f.    The School admits that Executive Vice President of Operations Bob Bosic sent an e-mail containing the language quoted in paragraph 51(f).  Contrary to the Government's aspersions, the e-mail shows that the School's executives are focused on continually improving internal processes and addressing and resolving audit issues that come to their attention.

g.    The School admits that Executive Vice President of Operations Bob Bosic sent an e-mail attaching an eleven-page presentation containing the language quoted in paragraph 51(g).  The presentation is a summary of a call between campus and regional representatives and Michelle Reed, the Vice President of Compliance.  On that call, the campus representatives expressed their frustration about the time

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 13 -

The School's Verified Answer (Case No. CGC-13-534793)

1   required for the Compliance Employment Verification Team to re-confirm job

2   placements made by the campuses.  Contrary to the Government's insinuation, at

3   this time the School had a comprehensive written policy on placements (RA023) in

4   addition to the long-standing accreditor guidelines defining job placements.  The

5   definitional issue resulted not from the absence of guidelines, but rather multiple,

6   competing and contradictory definitions from different sources combined with the

7   inherent subjectivity in determining a placement.  The presentation reflects a

8   discussion about suggestions for methods to streamline second-pass verification so

9   that it did not create bottlenecks for the campuses or dissatisfaction among

10  employers.  Far from reflecting a lack of verification as the Government suggests,

11  the document includes claims that employers were being contacted *from three up to*

12  *six times* to confirm placements.

13  h.   The School admits that on May 18, 2012, Western Division President Nicole

14       Carnagey and Executive Vice President of Operations Bob Bosic engaged in the e-

15       mail exchange excerpted by the Government in paragraph 51(h).  In this e-mail,

16       Carnagey and Bosic discussed the fact that Everest Renton had failed an internal

17       audit.  The type of forms required internally by the School for record-keeping in

18       student files was changed in the middle of the audit year, causing some confusion

19       on campuses about the correct form to use.  At the Renton campus student data was

20       re-recorded on the newer version of those forms for dates before that version of the

21       form was created.  This irregularity was found and reported by internal audit,

22       leading to a failing score for the campus.  To the extent that the Government's

23       characterization in paragraph 51(h) differs from the plain language of the e-mail

24       exchange, the School denies those allegations.  Except as expressly admitted

25       herein, the School denies the allegations in paragraph 51(h).

26  i.   The School admits that on June 14, 2012, Executive Vice President of Operations

27       Bob Bosic forwarded the e-mail message selectively quoted by the Government.

28       The forwarded message is a preliminary assessment of needs to support an

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 14 -

The School's Verified Answer (Case No. CGC-13-534793)

1    information-technology platform to, among other things, better link the campuses

2    with the School's placement verification team.  The author of the message, Greg

3    McHugh, is an outside consultant who had just started working to understand the

4    project needs and was unfamiliar at this time with the operational details of

5    placement verification and re-verification and the relevant policy guidance

6    documents.  The School, at this time, had a written placement evaluation policy

7    (RA023), placement definitions from accreditors and a suite of supporting materials

8    to help the School's employees assess the validity of student job placements.  The

9    exchange clearly denotes continuous improvement, not danger of falsified

10   placements.  To the extent that the Government's characterization in paragraph

11   51(i) differs from the plain language of the e-mail exchange, or selectively omits

12   information that is necessary to convey the context and full meaning of the e-mail

13   exchange, the School denies those allegations.  Except as expressly admitted

14   herein, the School denies the allegations in paragraph 51(i).

15   j.    The School admits that on July 13, 2012, Vice President of Compliance Michelle

16        Reed e-mailed Executive Vice President Beth Wilson about some irregularities that

17        Reed had investigated with regards to self-employed job placements at the Long

18        Beach Wyotech campus.  The School discovered and investigated these placement

19        issues through its internal controls, and, after a rigorous review of records, removed

20        a number of job placements on its own initiative.  Contrary to the Government's

21        unfounded assertion, the removed students were not part of a cohort that was

22        reported in student disclosures published in July 2012, and thus, contrary to the

23        Government's insinuation, there was no need for an amendment of any disclosures.

24        The School admits that the July 2012 student disclosures for the Long Beach

25        Wyotech campus have not been amended as there was no need to do so.  To the

26        extent that the Government's characterization in paragraph 51(j) differs from the

27        plain language of Ms. Reed's e-mail, the School denies those allegations.  Except

28        as expressly admitted herein, the School denies the allegations in paragraph 51(j).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 15 -

The School's Verified Answer (Case No. CGC-13-534793)

k.   The School admits that Christian Dieckmann, Assistant Vice President of Student Outcomes, sent the e-mail partially and misleadingly quoted in paragraph 51(k). The Government fails to quote the next line, which states that directors of career services "and campuses have been requesting that we provide more clarity on what procedures to follow in order to stay consistent with current Internal Audit and Compliance requirements."  In other words, the operations and audit/compliance divisions of the School were working together to ensure that campuses could understand and comply with the requirements of, among other things, the Compliance Employment Verification Team.  This e-mail reflects the School's commitment to continuous improvement in processes.  The standard operating procedures discussed in the email were additional documents to be created on top of already-existing standards for job placement.

l.   The School admits that the results of a third-party audit conducted by Hyper Core Solutions on behalf of ACCSC were e-mailed to Executive Vice President Beth Wilson and Chief Academic Officer Richard Simpson on August 28, 2012.  The School submitted responses and supporting documentation from its files to ACCSC for each of the student job placements identified by Hyper Core.  ACCSC accepted the School's submissions without any further requests for information.  The audit report and related communications speak for themselves and demonstrate the challenges of employment verification, particularly by those with undeveloped skills conducting verifications long after the placement was made.  To the extent that the Government's characterization in paragraph 51(l) differs from the plain language of the audit report and accompanying communications, or selectively omits information necessary to convey the context and full meaning of these communications, the School denies those allegations.  Except as expressly admitted herein, the School denies the allegations in paragraph 51(l).

52.   The School denies the allegations in paragraph 52.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

**The School's Accurate Statements to Investors**

53.    The School denies the allegations in paragraph 53.

    a.    The School admits the allegation in paragraph 53(a) that quotes a statement contained in the School's 2012 Annual Report (Form 10-K).

    b.    The School admits that the statement "CY 11 placement 68.1% vs. 67.6% in CY 10" appears in investor presentations dated August 20, 2012 and October 31, 2012. This statement is included as a sub-bullet on a slide that is identical in both twenty-three page presentations, titled "Focused on Student Perspectives."  Except as expressly admitted herein, the School denies the allegations in paragraph 53(b).

    c.    The School admits that on January 24, 2013 it completed a Registration Statement (Form S-8), for the School's Employee Stock Purchase Plan, and that the S-8 incorporated by reference, among other things, the School's 2012 Annual Report (Form 10-K).  The Form S-8 is a document that speaks for itself.

    d.    The School admits that presentations prepared for investors and dated January 31, 2013, March 11, 2013, and April 30, 2013 include a slide with a bar chart that shows 48,930 "eligible graduates by cohort" for 2011, with 33,316 "eligible graduates placed in field" for 2011, and that the School's CEO used the March 11, 2013 document as part of a presentation to investors.  Except as expressly admitted herein, the School denies the allegations in paragraph 53(d).

    e.    The School admits the allegations in paragraph 53(e).

    f.    The School admits the allegations in paragraph 53(f).

54.    The School denies that statements made about the 2011 graduation cohort were false when made and that its senior executives made knowing false statements.  The School's own data and files indicate that the statements are materially accurate.  The School denies the allegations in paragraph 54.

    a.    The School admits that on July 31, 2012 Executive Vice President Beth Wilson exchanged communications by e-mail about excluding graduates from closed campuses in calculating placement rates.  The School denies that any such decision

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 17 -

The School's Verified Answer (Case No. CGC-13-534793)

1    or instruction was made "to bring the placement rate higher." The teach-outs of the

2    campuses at Fife, Washington, Ft. Lauderdale, Florida, Chicago, Illinois, Decatur,

3    Georgia and Arlington, Texas were disclosed to investors in the School's 2012

4    Form 10-K, among other places. Except as expressly admitted herein, the School

5    denies the allegations in paragraph 54(d).

6       b.  The School denies the allegations in paragraph 54(b) and does not believe it has

7    included placements from outside the cohort period.

8       c.  The Government's allegations in paragraph 54(c) are vague and ambiguous as to

9    what it means by a "substantial number of double-counted placements." The

10   School believes that it properly counts placements. As such, the School is without

11   knowledge or information sufficient to form a belief as to the truth or falsity of the

12   Government's allegations in paragraph 54(c) and denies them on that basis.

13      d.  The School admits that on November 16, 2012, Michelle Reed e-mailed a

14   spreadsheet related to the transition of the School's Compliance Employment

15   Verification Team to a new database management system for tracking their second-

16   level re-verifications of student job placements or waivers. Such re-verification is

17   not required and is an example of the School going above and beyond to promote

18   accuracy in record keeping and reporting. As required by ACCSC and ACICS,

19   each of the student job placements or waivers listed in the spreadsheet cited by the

20   Government had already been verified at least once by a campus-level career

21   services representative who assisted the student in finding employment. No further

22   verification was required by those accrediting agencies or any other regulator. The

23   spreadsheet relied upon by the Government for its false accusation simply identifies

24   the open student verification files at the time of database transition that had neither

25   been confirmed nor refuted by the Compliance Employment Verification Team.

26   Except as expressly admitted herein, the School denies the allegations in paragraph

27   54(d).

28   55.    The School denies the allegations in paragraph 55.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 18 -

The School's Verified Answer (Case No. CGC-13-534793)

1    56.    The School denies the allegations in paragraph 56 particularly in light of the reliance

2  on the misleadingly misquoted documents from paragraph 51.

3    57.    The School denies the allegations in paragraph 57.

4    58.    The allegations in paragraph 58 are conclusions of law to which no response is

5  required.  To the extent that they may be construed as factual allegations, the School denies the

6  allegations in paragraph 58.

7        a.    To the extent that the statements in paragraph 58(a) are construed as allegations and

8           not argument or conclusions of law, the School denies the allegations in paragraph

9           58(a).

10        b.    The School admits that the ACCSC and ACICS have minimum accreditation

11           placement rates which are not the same as the benchmark rates.  The standards

12           quoted by the Government in paragraph 58(b) are not minimum compliance

13           standards although the Government implies they are.  To the extent that the other

14           statements in paragraph 58(b) are construed as allegations and not argument or

15           conclusions of law, the School denies the allegations in paragraph 58(b).

16        c.    The School admits that the cohort default rate (CDR) is a measure used by some

17           regulators.  To the extent that the other statements in paragraph 58(c) are construed

18           as allegations and not argument or conclusions of law, the School denies the

19           allegations in paragraph 58(c).

20        d.    To the extent that the statements in paragraph 58(d) are construed as allegations

21           and not argument or conclusions of law, the School denies the allegations in

22           paragraph 58(d).

23    59.    The School sets high standards for itself in serving students.  When considerable effort

24  has been expended and those standards are not met and students are less likely to obtain

25  employment in a certain city, then the School will close the campus.  The e-mail cited in

26  paragraph 59 speaks for itself.  The Government's allegations in paragraph 59 about it being the

27  School's "strategy" to close schools imply that the School is attempting to manipulate placement

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 19 -

The School's Verified Answer (Case No. CGC-13-534793)

figures when the School is actually acting in the students' best interest for a particular geography. Except as expressly admitted herein, the School denies the allegations in paragraph 59.

**Internet Advertising**

60.    The School admits the allegations in paragraph 60.

61.    The School denies the allegations in paragraph 61.  Many prospective students searching for more information about educational opportunities do not know with specificity what programs interest them.  They may begin their search broadly or specifically based on a recent doctor's visit or following an ultrasound or X-ray.  The School provides such prospective students with the opportunity to learn more about its allied health offerings in the clearly marked, shaded section labeled "Ads related to" in Google searches.  The landing pages accessed from these ads clearly identify the programs offered by the School's campuses.  These ads and the associated web pages are not misleading.  Indeed, not a single prospective student who clicked on the ads attached as Exhibit A to the Complaint actually started at any School.

62.    The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 62 and denies the allegations on that basis.  To the best of the School's knowledge, no students have been "routinely tricked" by related ads as stated in paragraph 61.

63.    The School denies the allegations in paragraph 63.  The School's enrollment process is designed to be low pressure and to encourage prospective students to ask many questions, tour the campus and bring their trusted advisors to assist them.  A simple review of the Government Accountability Office recordings of the School's admissions representatives reveals how unthreatening, low pressure and information-filled the enrollment process is.  The School trains its admissions representatives to be open, honest and truthful in their interactions with potential students.

64.    The School denies the allegations in paragraph 64.  The School trains its employees to be honest and truthful in conversations with everyone.  It does not discipline employees, including call center employees, for being honest.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 20 -

The School's Verified Answer (Case No. CGC-13-534793)

1     **Military Advertising**

2     65.    The School denies the allegations in paragraph 65.

3     66.    The School denies the allegation in paragraph 66.  The School denies that the Armed

4 Services seals were displayed "prominently" or implied any endorsement by the various branches.

5     67.    The School values its military students, providing quality educational experiences with

6 the respect veterans and their family members deserve.  All of the School's California Everest and

7 Heald campuses are recognized by the Department of Veteran's Affairs for participation in the

8 Yellow Ribbon Program and are recognized by organizations such as Military Friendly Schools,

9 which employs a vigorous vetting process.  The School admits that the official seals of the United

10 States Department of the Army, the United States Department of the Navy, the United States

11 Department of the Air Force, the United States Marine Corps and the United States Coast Guard

12 (collectively, "Armed Services") were displayed the web site www.healdmilitary.com from 2012

13 through April 2013.  The School denies that the Armed Services seals were displayed

14 "prominently" or implied any endorsement by the various branches.  The Government's

15 allegations in paragraph 67 are vague and ambiguous as to where and how Armed Forces seals

16 "continue to be prominently displayed in online ads run by Heald."  The School denies that it

17 continues to use the Armed Services seals in online advertisements, and denies that the example

18 advertisement attached as Exhibit B to the Complaint is an advertisement "run by" or otherwise

19 authorized by the School.  Except as expressly admitted herein, the School denies the allegations

20 in paragraph 67.

21     68.    The Government's allegations in paragraph 68 are vague and ambiguous as to what

22 constitutes an "express connection with or approval by" the Armed Services.  As such, the School

23 is without knowledge or information sufficient to form a belief as to the truth or falsity of the

24 Government's allegations in paragraph 68.  The School is committed to meeting the needs of

25 veterans of the Armed Services, is a participant in the Yellow Ribbon Program and has numerous

26 programs in California and nationally that have been approved by Veterans Administration.

27 Except as expressly admitted herein, the School denies the allegations in paragraph 68.

28     69.    The allegation in paragraph 69 is a conclusion of law to which no response is required.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 21 -

The School's Verified Answer (Case No. CGC-13-534793)

1    **Enrollment Agreements**

2    70.    The School admits that its current enrollment agreements contain clauses substantially

3    identical to the language cited in paragraph 70, noting that each such clause—including the one

4    quoted—also contains an opt-out provision for each student.  The other allegations in paragraph

5    70 are conclusions of law to which no response is required.  Except as expressly admitted herein,

6    the School denies the allegations in paragraph 70.

7    71.    The allegations in paragraph 71 are conclusions of law to which no response is

8    required.

9    72.    The allegations in paragraph 72 are conclusions of law to which no response is

10   required.

11   **FIRST CAUSE OF ACTION**

12   **(ALL DEFENDANTS)**

13   73.    No responsive pleading is required to paragraph 73.  The School realleges and

14   incorporates its answer to the paragraphs enumerated in paragraph 73.

15   74.    The allegations in paragraph 74 are conclusions of law to which no response is

16   required.  The School realleges and incorporates its answer to the paragraphs enumerated in

17   paragraph 74.  Except as expressly admitted herein, the School denies the allegations in paragraph

18   74.

19            a.   The School denies the allegations in paragraph 74(a).  The School realleges and

20                incorporates its answers to paragraphs 47 to 52.

21            b.   The School denies the allegations in paragraph 75(b).  The School realleges and

22                incorporates its answers to paragraphs 60 to 64.

23            c.   The School denies the allegations in paragraph 75(c).  The School realleges and

24                incorporates its answers to paragraphs 65 to 69.

25   75.    The School denies the allegations in paragraph 75.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 22 -

The School's Verified Answer (Case No. CGC-13-534793)

1

## SECOND CAUSE OF ACTION

2

## (ALL DEFENDANTS)

3      76.      No responsive pleading is required to paragraph 76.  The School realleges and

4 incorporates its answer to the paragraphs enumerated in paragraph 76.

5      77.      The allegations in paragraph 77 are conclusions of law to which no response is

6 required.  To the extent that they may be construed as factual allegations, the School denies the

7 allegations in paragraph 77.

8      78.      The allegations in paragraph 78 are conclusions of law to which no response is

9 required.

10           a.   The allegations in paragraph 78(a) are conclusions of law to which no response is

11                required.  To the extent that they may be construed as factual allegations, the

12                School denies the allegations in paragraph 78(a).

13           b.   The allegations in paragraph 78(b) are conclusions of law to which no response is

14                required.  To the extent that they may be construed as factual allegations, the

15                School denies the allegations in paragraph 78(b).

16           c.   The allegations in paragraph 78(c) are conclusions of law to which no response is

17                required.  To the extent that they may be construed as factual allegations, the

18                School denies the allegations in paragraph 78(c).

19           d.   The allegations in paragraph 78(d) are conclusions of law to which no response is

20                required.  To the extent that they may be construed as factual allegations, the

21                School denies the allegations in paragraph 78(d).

22           e.   The allegations in paragraph 78(e) are conclusions of law to which no response is

23                required.  To the extent that they may be construed as factual allegations, the

24                School denies the allegations in paragraph 78(e).

25           f.   The allegations in paragraph 78(f) are conclusions of law to which no response is

26                required.  To the extent that they may be construed as factual allegations, the

27                School denies the allegations in paragraph 78(f).

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 23 -

The School's Verified Answer (Case No. CGC-13-534793)

g. The allegations in paragraph 78(g) are conclusions of law to which no response is required. To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 78(g).

79. The allegations in paragraph 79 are conclusions of law to which no response is required.

a. The allegations in paragraph 79(a) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(a).

b. The allegations in paragraph 79(b) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(b).

c. The allegations in paragraph 79(c) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(c).

d. The allegations in paragraph 79(d) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(d).

e. The allegations in paragraph 79(e) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(e).

f. The allegations in paragraph 79(f) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(f).

g. The allegations in paragraph 79(g) are conclusions of law to which no response is required. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(g).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 24 -

The School's Verified Answer (Case No. CGC-13-534793)

h. The allegations in paragraph 79(h) are conclusions of law to which no response is required.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 79(h).

80. The allegation in paragraph 80 is a conclusion of law to which no response is required.

    a. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 80(a) and denies the allegations on that basis.

    b. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 80(b) and denies the allegations on that basis.

    c. The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 80(c) and denies the allegations on that basis.

    d. The allegations in paragraph 80(d) include conclusions of law to which no response is required.  The School is without knowledge or information sufficient to form a belief as to the truth or falsity of the factual allegations of paragraph 80(d) and denies the allegations on that basis.

    e. The School denies the allegations in paragraph 80(e).

81. The allegations in paragraph 81 are conclusions of law to which no response is required.

## THIRD CAUSE OF ACTION

## (CORINTHIAN COLLEGES, INC.)

82. No responsive pleading is required to paragraph 82.  The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 82.

83. The California Corporations Code speaks for itself, and the interpretation of the code is a matter of law as to which no response is required.

84. The School admits that the common stock of Corinthian Colleges, Inc. is traded on the Nasdaq National Market System.  The remaining allegations are conclusions of law to which no

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 25 -

The School's Verified Answer (Case No. CGC-13-534793)

1  response is required.  Except as expressly admitted herein, the School denies the allegations in
2  paragraph 84.

3      85.      The School admits that on February 1, 2013 it filed a Registration Statement (Form S-
4  8), for the School's Employee Stock Purchase Plan.  The remaining allegations are conclusions of
5  law to which no response is required.  Except as expressly admitted herein, the School denies the
6  allegations in paragraph 85.

7      86.      The allegations in paragraph 86 are conclusions of law to which no response is
8  required.

9      87.      The allegations in paragraph 87 are conclusions of law to which no response is
10 required.

11     88.      The allegations in paragraph 88 are conclusions of law to which no response is
12 required.  To the extent that they may be construed as factual allegations, the School denies the
13 allegations in paragraph 88.

14     89.      The allegations in paragraph 89 are conclusions of law to which no response is
15 required.  To the extent that they may be construed as factual allegations, the School denies the
16 allegations in paragraph 89.

17     90.      The School denies that, as alleged in paragraph 90, it misrepresented "the job
18 placement rate of its graduates; the methodology it used to calculate the job placement rate of its
19 graduates; the number of graduates it placed; the number of eligible graduates; the reliability of its
20 placement and placement verification process; the stringency of its definitions regarding job
21 placements; its compliance with accreditor mandated policies; and its compliance with its own
22 policies."  The remaining allegations in paragraph 90 are conclusions of law to which no response
23 is required.  Except as expressly admitted herein, the School denies the allegations in paragraph
24 90.

25                    **FOURTH CAUSE OF ACTION**
26                    **(CORINTHIAN COLLEGES, INC.)**

27     91.      No responsive pleading is required to paragraph 91.  The School realleges and
28 incorporates its answer to the paragraphs enumerated in paragraph 91.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 26 -

The School's Verified Answer (Case No. CGC-13-534793)

92.     The California Corporations Code speaks for itself, and the interpretation of the code is a matter of law as to which no response is required.

93.     The Government's allegations in paragraph 93 are vague, ambiguous and unintelligible as to whether it asserts that "others" or the School's stock are traded "on the Nasdaq National Market System."  As such, the School is without knowledge or information sufficient to form a belief as to the truth or falsity of the Government's allegations in paragraph 93 about "others" and denies them on that basis.  The remaining allegations are conclusions of law to which no response is required.  Except as expressly admitted herein, the School denies the allegations in paragraph 93.

94.     The School admits that on February 1, 2013 it filed a Registration Statement (Form S-8), for the School's Employee Stock Purchase Plan.  The remaining allegations are conclusions of law to which no response is required.  Except as expressly admitted herein, the School denies the allegations in paragraph 94.

95.     The allegations in paragraph 95 are conclusions of law to which no response is required.

96.     The allegations in paragraph 96 are conclusions of law to which no response is required.

97.     The allegations in paragraph 97 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 97.

98.     The allegations in paragraph 98 are conclusions of law to which no response is required.  To the extent that they may be construed as factual allegations, the School denies the allegations in paragraph 98.

99.     The School denies that, as alleged in paragraph 99, it misrepresented "the job placement rate of its graduates; the methodology it used to calculate the job placement rate of its graduates; the number of graduates it placed; the number of eligible graduates; the reliability of its placement and placement verification process; the stringency of its definitions regarding job placements; its compliance with accreditor mandated policies; and its compliance with its own

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 27 -

The School's Verified Answer (Case No. CGC-13-534793)

policies." The remaining allegations in paragraph 99 are conclusions of law to which no response is required. Except as expressly admitted herein, the School denies the allegations in paragraph 99

100.    The School denies the allegations made in paragraph 100.

## FIFTH CAUSE OF ACTION

## (CORINTHIAN SCHOOLS, INC.)

101.    No responsive pleading is required to paragraph 101. The School realleges and incorporates its answer to the paragraphs enumerated in paragraph 101.

102.    The School admits that on July 31, 2007 the Los Angeles Superior Court entered a final judgment pursuant to a stipulation between the parties in *People v. Corinthian Schools, Inc., et al.*, No. BC374999. The text of the final judgment speaks for itself. To the extent that the interpretation of the final judgment is an issue of law, no response is required. To the extent that the Government's characterization in paragraph 102 differs from the terms and correct interpretation of the final judgment, the School denies those allegations. Except as expressly admitted herein, the School denies the allegations in paragraph 102.

      a.    The text of the final judgment speaks for itself. To the extent that the interpretation of the final judgment is an issue of law, no response is required. To the extent that the Government's characterization in paragraph 102(a) differs from the terms and correct interpretation of the final judgment, the School denies those allegations. Except as expressly admitted herein, the School denies the allegations in paragraph 102(a).

      b.    The text of the final judgment speaks for itself. To the extent that the interpretation of the final judgment is an issue of law, no response is required. To the extent that the Government's characterization in paragraph 102(b) differs from the terms and correct interpretation of the final judgment, the School denies those allegations. Except as expressly admitted herein, the School denies the allegations in paragraph 102(b).

      c.    The text of the final judgment speaks for itself. To the extent that the interpretation of the final judgment is an issue of law, no response is required. To the extent that

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 28 -

The School's Verified Answer (Case No. CGC-13-534793)

1    the Government's characterization in paragraph 102(c) differs from the terms and

2    correct interpretation of the final judgment, the School denies those allegations.

3    Except as expressly admitted herein, the School denies the allegations in paragraph

4    102(c).

5    103.    The School denies the allegations in paragraph 103.

6        a.    The School denies the allegations in paragraph 103(a).  The School realleges and

7            incorporates its answers to paragraphs 47 to 52.

8        b.    The School denies the allegations in paragraph 103(b).  The School realleges and

9            incorporates its answers to paragraphs 60 to 64.

10        c.    The School denies the allegations in paragraph 103(c).  The School realleges and

11            incorporates its answers to paragraphs 65 to 69.

12    104.    The allegations in paragraph 104 are conclusions of law to which no response is

13    required.

## SIXTH CAUSE OF ACTION

## (CORINTHIAN SCHOOLS, INC.)

16    105.    No responsive pleading is required to paragraph 105.  The School realleges and

17    incorporates its answer to the paragraphs enumerated in paragraph 105.

18    106.    The School admits that on July 31, 2007 the Los Angeles Superior Court entered a

19    final judgment pursuant to a stipulation between the parties in *People v. Corinthian Schools, Inc.,*

20    *et al.*, No. BC374999.  The text of the final judgment speaks for itself.  To the extent that the

21    interpretation of the final judgment is an issue of law, no response is required.  To the extent that

22    the Government's characterization in paragraph 106 differs from the terms and correct

23    interpretation of the final judgment, the School denies those allegations.  Except as expressly

24    admitted herein, the School denies the allegations in paragraph 106.

25        a.    The text of the final judgment speaks for itself.  To the extent that the interpretation

26            of the final judgment is an issue of law, no response is required.  To the extent that

27            the Government's characterization in paragraph 106(a) differs from the terms and

28            correct interpretation of the final judgment, the School denies those allegations.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 29 -

The School's Verified Answer (Case No. CGC-13-534793)

1    Except as expressly admitted herein, the School denies the allegations in paragraph

2    106(a).

3    b.   The text of the final judgment speaks for itself.  To the extent that the interpretation

4    of the final judgment is an issue of law, no response is required.  To the extent that

5    the Government's characterization in paragraph 106(b) differs from the terms and

6    correct interpretation of the final judgment, the School denies those allegations.

7    Except as expressly admitted herein, the School denies the allegations in paragraph

8    106(b).

9    c.   The text of the final judgment speaks for itself.  To the extent that the interpretation

10    of the final judgment is an issue of law, no response is required.  To the extent that

11    the Government's characterization in paragraph 106(c) differs from the terms and

12    correct interpretation of the final judgment, the School denies those allegations.

13    Except as expressly admitted herein, the School denies the allegations in paragraph

14    106(c).

15    107.   The School denies the allegations in paragraph 107.

16    a.   The School denies the allegations in paragraph 107(a).  The School realleges and

17    incorporates its answers to paragraphs 47 to 52.

18    b.   The School denies the allegations in paragraph 107(b).  The School realleges and

19    incorporates its answers to paragraphs 60 to 64.

20    c.   The School denies the allegations in paragraph 107(c).  The School realleges and

21    incorporates its answers to paragraphs 65 to 69.

22    108.   The allegations in paragraph 108 are conclusions of law to which no response is

23    required.

24    Except as expressly admitted in the preceding responsive paragraphs, the School denies the

25    allegations in the Complaint.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 30 -

The School's Verified Answer (Case No. CGC-13-534793)

**AFFIRMATIVE DEFENSES**

Without admitting or acknowledging that the School bears the burden of proof as to any of them, the School asserts the following affirmative defenses as to all causes of action:

**First Affirmative Defense**

**(Failure to State a Claim)**

109.     The Complaint fails to state a claim upon which relief may be granted.

**Second Affirmative Defense**

**(Statute of Limitations)**

110.     The Complaint is barred in whole or in part by the statute of limitations prescribed by, but not limited to, Civil Code § 1783, Code of Civil Procedure §§ 337, 337.5(b), 338(a), 340(a), 340(b), 343, 359, Business and Professions Code § 17208 and Corporations Code § 25506.

**Third Affirmative Defense**

**(Unclean Hands)**

111.     The Complaint is barred because the Government has unclean hands with respect to the claims alleged therein, and particularly with regard to its attempts to enforce the stipulated judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior Court) after it has failed to distribute funds to students as required by that judgment.

**Fourth Affirmative Defense**

**(Laches)**

112.     The Complaint is barred by the doctrine of laches.

**Fifth Affirmative Defense**

**(Waiver)**

113.     The Complaint is barred by the doctrine of waiver.

**Sixth Affirmative Defense**

**(Mootness)**

114.     The Complaint is moot in whole or in part.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 31 -

The School's Verified Answer (Case No. CGC-13-534793)

**Seventh Affirmative Defense**

**(Ripeness)**

115.    The Complaint is barred in whole or in part because the claims are not ripe for adjudication.

**Eighth Affirmative Defense**

**(Alternate Remedies Exist at Law)**

116.    The Complaint is barred in whole or in part because the Government has adequate alternate remedies at law.

**Ninth Affirmative Defense**

**(Collateral Estoppel and Res Judicata)**

117.    The Complaint is barred in whole or in part by the doctrines of collateral estoppel and res judicata.

**Tenth Affirmative Defense**

**(Judicial Estoppel)**

118.    The Complaint is barred in whole or in part by the doctrine of judicial estoppel.

**Eleventh Affirmative Defense**

**(Standing)**

119.    The Government lacks standing to bring the claims asserted.

**Twelfth Affirmative Defense**

**(No Damages)**

120.    The Complaint fails to plead facts showing that the Government has suffered any cognizable damages.

**Thirteenth Affirmative Defense**

**(No Injury)**

121.    The Complaint fails to plead facts showing that the Government has suffered any cognizable injury.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 32 -

The School's Verified Answer (Case No. CGC-13-534793)

1

## **Fourteenth Affirmative Defense**

2

## **(Lack of Jurisdiction)**

3      122.      This Court lacks jurisdiction over this Complaint for reasons identified in other

4    affirmative defenses and because Judge Kenneth R. Freeman retained jurisdiction over the Final

5    Judgment in *People v. Corinthian Schools, Inc., et al.*, No. BC374999 (Los Angeles Superior

6    Court).

7

## **Fifteenth Affirmative Defense**

8

## **(Discretion Not to Exercise Jurisdiction)**

9      123.      Even if this Court had jurisdiction, which it does not, it should decline to exercise

10    jurisdiction here.

11

## **Sixteenth Affirmative Defense**

12

## **(Lack of Redressability)**

13      124.      The Complaint is barred in whole or in part because any injury alleged by the

14    Government cannot be redressed by the relief sought in the Complaint.

15

## **Seventeenth Affirmative Defense**

16

## **(Inconsistent Judgments)**

17      125.      The Complaint is barred in whole or in part because it seeks to subject the School to

18    inconsistent obligations under court orders.

19

## **Eighteenth Affirmative Defense**

20

## **(Equity)**

21      126.      Principles of equity bar the Government from seeking the relief it request.

22

## **Nineteenth Affirmative Defense**

23

## **(Preemption)**

24      127.      The Complaint is barred in whole or in part because it conflicts with or is preempted by

25    federal law.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 33 -

The School's Verified Answer (Case No. CGC-13-534793)

1

## **Twentieth Affirmative Defense**

2

### **(Reservation)**

3      128.    The School reserves the right to allege other affirmative defenses as they may become

4  known during the course of discovery.

5

## **PRAYER FOR RELIEF**

6      WHEREFORE, the School prays that the Government take nothing by the Complaint, that the

7  requested injunctive and equitable relief be denied, that the School be awarded judgment in this

8  action and costs of suit incurred herein, and for other such relief as the Court deems just and

9  proper.

10

11  Dated:  November 12, 2013                    IRELL & MANELLA LLP
                                                John C. Hueston
12                                              Brian J. Hennigan
                                                Andra B. Greene
13                                              Khaldoun Shobaki

14

15                                              By: _____/s/  John C. Hueston_____

16                                                  John C. Hueston (164921)
                                                    Attorneys for Defendants
17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

- 34 -

The School's Verified Answer (Case No. CGC-13-534793)

# Exhibit A

Demand
Generation

## Summary of insights about our prospects

| Who they are | What they need |
|---|---|
| • Low self-esteem, few base hits | • Confident, capable, real adult, role model for kids |
| • Stuck, unable to see and plan well for future | • Someone who can show them how so they can gain independence |
| • Few people in their lives who care about them | • Encouragement, someone who believes in them |
| • Isolated | • Sense of belonging, place where they can succeed |
| • Authenticity rules! | • Don't BS me, tell it like it is |
| • Peers are most credible | • Trust is earned, not automatic |
| • Impatient, want quick solutions | • Can't afford to waste time, need quick solutions |

9

www.cci.edu

**VERIFICATION**

I, Michelle Reed, declare as follows:

I have read the forgoing THE SCHOOL'S VERIFIED ANSWER and know its contents.

I am employed by Corinthian Colleges, Inc., a party to this action, and am authorized to make this verification for and on its behalf. The facts stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief; as to those matters I am informed and believe that they are true.

Executed this 12th day of November, 2013, at Santa Ana , California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Michelle Reed

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2914172

Verification (Case No. CGC-13-534793)

1

### PROOF OF SERVICE

2    I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and not a party to the within action.  My business address is 1800 Avenue of the Stars, Suite 900,
3    Los Angeles, California 90067-4276.

4    On November 12, 2013, at approximately 1:50 PM Pacific Time, I served the foregoing
document described as **The School's Verified Answer** on each interested party, as follows:
5

6              Kamala D. Harris
              Frances T. Grunder
              Nicklas A. Akers
7              Nicholas G. Campins
              California Department of Justice
8              455 Golden Gate Avenue, Suite 11000
              San Francisco, CA 94102-7004
9

10    ☒         (BY ELECTRONIC FILING AND SERVICE)  I posted the foregoing document
              on the Court's File & ServeXpress web site.
11
      Executed on November 12, 2013, at Los Angeles, California.
12
      I declare under penalty of perjury under the laws of the State of California that the
13    foregoing is true and correct.

14

15    _____          _____
              Khaldoun Shobaki                              (Signature)
16         (Type or print name)

17

18

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations