## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Hearing Date: October 14, 2015 @ 3:00 p.m. (ET)** |
| | § | **Obj. Deadline: October 7, 2015 @ 4:00 p.m. (ET)** |

---------------------------------------------------

## DEBTORS' MOTION TO (I) ASSUME AND ASSIGN TRANSITION SERVICES AGREEMENT (AS AMENDED) WITH ZENITH EDUCATION GROUP, INC. TO DISTRIBUTION TRUST AND (II) APPROVE AMENDMENT TO TRANSITION SERVICES AGREEMENT AND THE SETTLEMENTS CONTAINED THEREIN

Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), respectfully request the entry of an order, pursuant to sections 105(a), 363 and 365(a) and (f) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) authorizing the Debtors to assume and assign that certain Transition Services Agreement, dated February 2, 2015 (as amended, the "**TSA**"), as modified by the First Amendment to Transition Services Agreement, dated as of September 18, 2015 (the "**TSA Amendment**"), between Corinthian and Zenith Education Group, Inc. ("**Zenith**", and together

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

with Corinthian, the "**Parties**") to the Distribution Trust (as defined herein); and (ii) approving

the TSA Amendment and the related settlements and releases between the Parties contained

therein.  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157

and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

under 28 U.S.C. § 157(b).[2]

## BACKGROUND

### A.      General Background

2.      On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a

voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  The

Debtors continue to manage and operate their businesses as debtors in possession under

Bankruptcy Code sections 1107 and 1108.

3.      On May 13, 2015, the Office of the United States Trustee for the District

of Delaware (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors (the

"**Creditors' Committee**").   The U.S. Trustee appointed an official committee of student

creditors (the "**Student Committee**") on May 15, 2015.

4.      Additional information on the Debtors' business and capital structure, as

well as a description of the reasons for filing these cases, is set forth in the *Declaration of*

*William J. Nolan in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket

No. 10] (the "**First Day Declaration**").

---

[2]      Under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States
Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors hereby confirm their
consent to the entry of a final order by this Court in connection with this Motion if it is later determined
that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith
consistent with Article III of the United States Constitution.

RLF1 12988467v.1

B. **The Zenith APA and Related Settlement**

      5.     Prior to the Petition Date, certain of the Debtors entered into that certain Asset Purchase Agreement, dated November 14, 2014 (as amended, modified, supplemented or restated from time to time, the "**APA**"), with Zenith whereby they agreed to, among other things, sell, convey, transfer, assign and deliver to Zenith all of their right, title and interest in and to the assets, properties and rights of the Debtors that were used in the operation of the Everest Plus Business (as defined in the APA), except for Excluded Assets (as defined in the APA), subject in all cases, to the terms and conditions of the APA.

      6.     Pursuant to Section 1.7(b) of the APA, Zenith was required to deposit into a separate account (the "**Escrow Fund**") with the Escrow Agent (as defined below) an amount in cash equal to $8.5 million (the "**Escrow Amount**"), as collateral for certain indemnification obligations of the Debtors and certain working capital adjustments. On February 2, 2015, Zenith, Corinthian and Citibank, N.A. (the "**Escrow Agent**") entered into that certain Escrow Agreement (the "**Escrow Agreement**") relating to the Escrow Fund and Zenith deposited the Escrow Amount into the Escrow Fund.

      7.     In addition, on February 2, 2015, the Debtors and Zenith entered into the TSA whereby Zenith agreed to provide certain support services to facilitate the Debtors' continued operations of post-secondary educational institutions that were not acquired by Zenith under the APA. The TSA provided, among other things, that the transitional services being provided (and identified on Exhibits A and B to the TSA) could be modified by agreement of the Parties or upon notice pursuant to Section 2.02 of the TSA. Moreover, the TSA provides that the Services Fees and the Services Advance Account (as such terms are defined therein) should be

reduced based on good faith negotiations between the Parties to reflect any cancellation of services.

8. On or about July 20, 2015, Zenith filed proofs of claim [Claim Nos. 2410, 2411, 2415, 2418, 2420, 2428, 2433, 2439, 2443, 2448, 2455, 2462 & 2469] (the "**Zenith Claims**") against certain of the Debtors asserting claims for indemnity, contribution, equitable claims, rights to payments, rights to receive performance, breaches of contract, failure to perform obligations, fraudulent inducement, rights to setoffs and/or recoupment arising out of, related to and in connection with the APA, including the working capital adjustment set forth therein.

9. After a series of good faith negotiations, the Parties entered into that certain Settlement and Mutual Release Agreement (the "**APA Settlement Agreement**"), which provided for a settlement and release of all claims, disputes and issues among them arising under the APA, including, but not limited to, the claims asserted under the Zenith Claims. On August 26, 2015, the Court entered an order [Docket No. 892] approving the terms of the APA Settlement Agreement. The APA Settlement Agreement and the releases provided thereunder, however, specifically excluded all outstanding disputes between the Parties relating to obligations or amounts due and owing under the TSA.

**C.      The Plan and the Treatment of Executory Contracts Thereunder**

10. On July 1, 2015, the Debtors filed the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, which was subsequently amended on July 24, 2015, July 27, 2015, August 25, 2015, and August 28, 2015 [Docket Nos. 520, 646, 655, 863, 906, and 909, respectively] (as amended, the "**Plan**"). On August 28, 2015, the Court entered the *Order Confirming Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 913] (the "**Confirmation Order**") confirming

RLF1 12988467v.1

the Debtor's Plan. The Plan provides for the creation of a two trust structure: (i) the Distribution Trust[3], for the benefit of Holders of Allowed General Unsecured Claims (other than Student Claims and Government Education Claims); and (ii) the Student Trust, for the benefit of Holders of Allowed Student Claims and Government Education Claims. The Debtors are currently attempting to work with the respective trustees for each trust on transition issues in advance of the Effective Date.

        11.     Section XIV of the Plan provides that "[o]n the Effective Date, all Executory Contracts, not previously assumed and/or assigned, not subject to a pending motion to assume and/or assign as of the Effective Date, or not rejected before the Effective Date will be deemed rejected." Accordingly, the Debtors have up until the Effective Date of the Plan to file a motion seeking to assume and assign any executory contracts or unexpired leases that have yet to be assumed or rejected in these chapter 11 cases (otherwise such contracts and leases will be deemed rejected upon the Effective Date). The Debtors anticipate that the Effective Date of the Plan will be on or around September 18, 2015.

**D.**      **The TSA Amendment**

        12.     As discussed in the First-Day Declaration, the Debtors stopped operating at all of their remaining campus locations effective as of April 27, 2015. As a result, the Debtors ceased the request of certain services and reduced the scope of other services required under the TSA. The Parties reached agreement on this reduced level of services (and operated under such understanding during the course of the chapter 11 cases) while negotiating the terms of an amendment to the TSA that would document the same. Moreover, it is anticipated that the

---

[3]      Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

RLF1 12988467v.1

Distribution Trustee, as successor to the Debtors, will continue to need transition services, on a much reduced level, following the Effective Date of the Plan.

13.    Accordingly, the Parties have entered into the TSA Amendment, which provides, *inter alia*, (i) for a reduced scope of services as set forth on Amended Exhibit A to the TSA Amendment through the Effective Date of the Plan; (ii) for the provision of services post-Effective Date upon the request of the Distribution Trustee, which shall be billed at the cost of providing such services (other than the Tax Form Services and Physical Record Services which shall be provided for a fixed amount); (iii) satisfaction of all amounts due and owing through the Effective Date relating to each Parties' respective obligations under the TSA; (iv) resolution of all outstanding disputes relating to the TSA, including amounts allegedly due with respect to that certain lease pertaining to property (the "**Garden of the Gods Center**") located at 1575 Garden of the Gods Road, Colorado Springs, Colorado 80907; and (v) certain related amendments to the TSA. A copy of the TSA and TSA Amendment are attached hereto as Exhibit A.

14.    To avoid the deemed rejection of the TSA on the Effective Date of the Plan, the Debtors seek to assume and assign the TSA (as modified by the TSA Amendment) to the Distribution Trust.    The Debtors also seek approval of the TSA Amendment and the settlements and releases contained therein, including, but not limited to, resolution of the Garden of the Gods Center dispute and the satisfaction of all amounts due and owing as of the Effective Date under the TSA.

## RELIEF REQUESTED

15.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as Exhibit B, (i) authorizing the Debtors to assume and assign the TSA (as modified by the TSA Amendment) to the Distribution Trust; and (ii) approving the TSA Amendment and the settlements and releases contained therein, including, but not limited to,

6

resolution of the Garden of the Gods Center dispute and the satisfaction of any all amounts owed

as of the Effective Date under the TSA.

## BASIS FOR RELIEF REQUESTED

**I.      Assumption and Assignment of the TSA (as Modified by the TSA Amendment ) to the Distribution Trust is a Sound Exercise of the Debtors' Business Judgment.**

### A.      Applicable Law

16.      Section 365(a) of the Bankruptcy Code provides that a debtor in

possession, "subject to the court's approval, may assume or reject any executory contract or

unexpired lease." 11 U.S.C. § 365(a). The decision whether an executory contract or unexpired

lease should be assumed and assigned is based on the debtor's exercise of its "business

judgment." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (describing business

judgment test as "traditional"); *In re III Enterprises Inc. V*, 163 B.R. 453, 469 (Bankr. E. D. Pa

1994) (explaining that "[ge]nerally, a court will give great deference to a debtor's decision to

assume or reject the contract. A debtor need only show that its decision to assume or reject the

contract is an exercise of sound business judgment – a standard which we have concluded many

times is not difficult to meet.") (citations omitted).

17.      Section 365(b)(1) of the Bankruptcy Code codifies the requirements for

assuming an unexpired lease or executory contract of a debtor. This subsection provides:

> If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or
> lease unless, at the time of assumption of such contract or lease,
> the trustee –
>
> (A)      cures, or provides adequate assurance that the trustee will
> promptly cure, such default . . . ;
>
> (B)      compensates, or provides adequate assurance that the
> trustee will promptly compensate, a party other than the debtor to
> such contract or lease, for any actual pecuniary loss to such party
> resulting from such default; and

> (C)    provides adequate assurance of future performance under
> such contract or lease.

11 U.S.C. § 365(b)(1).  Further, subsection (b)(2) of section 365 of the Bankruptcy Code

provides in pertinent part that:

> Paragraph (1) of this subsection does not apply to a default that is a
> breach of a provision relating to –
>
> (A)    the insolvency or financial condition of the debtor at any
> time before the closing of the case;
>
> (B)    the commencement of a case under this title; . . . .

11 U.S.C. § 365(b)(2).

18.    Lastly, section 365(f)(2) of the Bankruptcy Code provides in pertinent part

that:

> The trustee may assign an executory contract or unexpired lease of
> the debtor only if –
>
> (A)    the trustee assumes such contract or lease in accordance
> with the provisions of this section; and
>
> (B)    adequate assurance of future performance by the assignee
> of such contract or lease is provided, whether or not there has been
> a default in such contract or lease.

11 U.S.C. § 365(f)(2).

19.    The words "adequate assurance of future performance" must be given a

"practical, pragmatic construction" in light of the proposed assumption. *In re Fleming Cos.*, 499

F.3d 300 (3d Cir. 2007); *see also Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103

B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y.

1985) (providing that adequate assurance of future performance does not mean absolute

assurance that debtor will thrive and pay rent).

**B.**    **Assumption of the TSA (as Amended)**

20.    The proposed assumption and assignment of the TSA (as modified by the TSA Amendment) is a sound exercise of the Debtors' business judgment. The TSA Amendment will, among other things, document the level of services agreed upon by the Parties following the Petition Date and the reduced payment structure relating to the same. Moreover, the TSA Amendment documents the agreement between Zenith, on the one hand, and the Debtors and the Distribution Trust, on the other hand, relating the provision of services going forward, including, but not limited to, services related to (i) the issuance of IRS W-2 forms to all employees of the Debtors for the 2015 tax year; (ii) the issuance of IRS 1098-T forms to any student that paid "qualified education expenses" for the 2015 tax year; and (iii) closeout filings with applicable state payroll tax agencies (the "**Tax Form Services**"). Zenith's assistance with the Tax Form Services is absolutely essential, as the records and electronic systems necessary to provide the Tax Form Services are all within Zenith's custody and control.

21.    Additionally, the TSA Amendment includes an agreement to provide the Distribution Trust with copies of the Debtors' books and records currently within Zenith's control subject to the payment of Zenith's actual cost for providing such data or on such other terms as may be mutually agreeable. As such, assumption of the TSA (as modified by the TSA Amendment) will provide the Distribution Trust with a means for obtaining information necessary to the administration of the Distribution Trust that is currently in Zenith's custody and control. Accordingly, for these reasons, the Debtors submit that assumption and assignment of the TSA (as modified by the TSA Amendment) to the Distribution Trust is a sound exercise of the Debtors' business judgment.[4]

---

[4]    Given the resolutions contained in the TSA Amendment, there are no outstanding defaults under the TSA and therefore no cure obligations in connection with the assumption and assignment of the TSA.

II.    **The TSA Amendment and the Settlements and Releases Contained Therein Should be Approved.**

22.    Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979).

23.    "[T]he decision whether to approve a compromise under Bankruptcy Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). Courts should not, however, substitute their judgment for that of the debtor, but instead canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986); *In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see also In re World Health*, 344 B.R. at 296 ("The court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

---

Moreover, given the prepayment structure contemplated under the TSA Amendment and Zenith's agreement thereto, no further showing of adequate assurance of future payment is required.

24.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (finding that the *Martin* factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); *see also TMT Trailer Ferry, Inc.*, 390 U.S. 414, 424 (1968); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test boils down to whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." *In re Penn Cent.*, 596 F.2d at 1114 (citations omitted); *see In re Pa. Truck Lines, Inc.*, 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

25.     The TSA Amendment embodies a settlement of numerous issues between the Debtors and Zenith under the TSA. First, as discussed above, the Debtors have required a reduced level of transition services from Zenith since the closure of all campus locations shortly before the Petition Date. The TSA Amendment documents this reduced level of services and the payment structure that has been employed between the Debtors and Zenith since the Petition Date. The TSA contemplated a greater level of services at a much increased rate. Accordingly, the TSA Amendment resolves all such issues and eliminates the possibility of Zenith subsequently asserting additional administrative claims against the Debtors for the provision of postpetition services.

11

26.    Additionally, the TSA Amendment resolves any and all issues regarding outstanding lease payments relating to the Garden of the Gods Center.  Pursuant to the TSA, Zenith subleased this space from the Debtors and was required to reimburse the Debtors for any rent obligations under the underlying lease.  A dispute arose postpetition after the landlord for the Garden of the Gods Center informed the Debtors that neither the Debtors nor Zenith had paid postpetition pre-rejection rent under the lease.  The Debtors subsequently entered into a settlement agreement with the landlord whereby all outstanding postpetition obligations under the lease (estimated to be as much as $275,363.30) were forgiven in exchange for the Debtors' transfer of furniture, equipment and other miscellaneous assets located at the Garden of the Gods Center.    The Debtors, however, specifically reserved their right to pursue Zenith for reimbursement of such amounts in accordance with the TSA.  While the Debtors attempted to recover the full $275,363.30 from Zenith under the TSA, Zenith raised various defenses to the request, including, but not limited, valuation of the property that was conveyed to the landlord in satisfaction of the outstanding lease obligations.  The Debtors and Zenith have agreed to resolve this dispute for a cash payment to the Distribution Trust in the amount of $200,000.  The Debtors submit that the settlement amount is fair and equitable in light of the defenses raised by Zenith and the litigation costs that would likely be incurred in pursuing a greater recovery from Zenith under the TSA.

27.    To the extent that section 363 of the Bankruptcy Code is implicated in connection with the settlements embodied in the TSA Amendment, the Debtors seek authority thereunder to execute and perform their obligations under the TSA Amendment.  The Debtors submit that the terms of the TSA Amendment have a sound business purpose and represent the exercise of their sound business judgment.  Accordingly, any actions required to effectuate the

12

terms of the TSA Amendment should be authorized and approved pursuant to Section 363(b). *See In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a 363(b) application expressly find from the evidence presented before him a good business reason to grant the application."); *In re Del. Hudson Ry. Co.*, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

28.     Finally, authorizing the Debtors to enter into and effectuate the terms of the TSA Amendment is well within the equitable powers of this Court. *See* 11 U.S.C. § 105(1) ("The court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

### WAIVER OF STAYS PROVIDED UNDER
### BANKRUPTCY RULES 6004(h) AND 6006(d)

29.     Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Similarly, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Debtors request that any order approving this Motion be effective immediately

by providing that the fourteen-day (14-day) stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

## NOTICE

30.     The Debtors will provide notice of this Motion to:  (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Student Committee; (iv) counsel to Bank of America, N.A., in its capacity as Administrative Agent for the prepetition lenders; (v) the Internal Revenue Service; (vi) Zenith; and (vii) any party that has requested notice pursuant to Bankruptcy Rule 2002(i).  The Debtors submit that no other or further notice is necessary under the circumstances.

## NO PRIOR MOTION

31.     The Debtors have not made any prior motion for the relief sought in this Motion to this Court or any other.

RLF1 12988467v.1

WHEREFORE, the Debtors respectfully request that the Court enter the order, substantially in the form attached hereto as <u>Exhibit B</u>, (i) authorizing the Debtors to assume and assign the TSA (as modified by the TSA Amendment) to the Distribution Trust; and (ii) approving the TSA Amendment and the settlements and releases contained therein, including, but not limited to, resolution of the Garden of the Gods Center dispute and the satisfaction of any all amounts owed to date under the TSA.

Dated: September 18, 2015
      Wilmington, Delaware

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Marisa A. Terranova (No. 5396)
Amanda R. Steele (No. 5530)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
      merchant@rlf.com
      terranova@rlf.com
      steele@rlf.com

Counsel for the Debtors and Debtors in Possession

RLF1 12988467v.1