# **EXHIBIT A**

**Trust Agreement**

MASTER TRUST AGREEMENT
FOR
CORINTHIAN COLLEGES, INC.
DEFERRED COMPENSATION PLAN

THIS MASTER TRUST AGREEMENT ("Master Trust Agreement") is made and entered into as of *April 1*, 2013 (the "Effective Date"), between Corinthian Colleges, Inc., a Delaware corporation (the "Company"), and First American Trust, FSB, as trustee (the "Trustee"), to evidence the master trust (the "Trust") to be established, pursuant to the Plans for the benefit of a select group of management or highly compensated employees of the Company and those subsidiaries of the Company, if any, that participate in the Plans (collectively, "Subsidiaries," or singularly, "Subsidiary").

ARTICLE 1
Name, Intentions, Irrevocability,
Deposit and Definitions

1.1 **Name.** The name of the Trust created by this Agreement (the "Trust") shall be:

MASTER TRUST AGREEMENT FOR
CORINTHIAN COLLEGES, INC.
DEFERRED COMPENSATION PLAN

1.2 **Intentions.** The Company wishes to establish the Trust and to contribute to the Trust assets that shall be held therein, subject to the claims of the Company's and the Subsidiaries' creditors in the event of their Insolvency (as defined below) until paid to Participants and their Beneficiaries in such manner and at such times as specified in the Plans. It is the intention of the parties that this Trust shall constitute an unfunded arrangement and shall not affect the status of the Plans as unfunded plans maintained for the purpose of providing supplemental compensation for a select group of management, highly compensated employees and/or Directors for purposes of Title I of ERISA (as defined below). In addition, it is the intention of the Company and the Subsidiaries to make contributions to the Trust to provide themselves with a source of funds to assist them in the meeting of their liabilities under the Plans.

1.3 **Irrevocability; Creditor Claims.** The Trust hereby established shall be irrevocable. Except as otherwise provided in Sections 2.2, 2.4 and 9.2, the principal of the Trust, and any earnings thereon, shall be held separate and apart from other funds of the Company and the Subsidiaries and shall be used exclusively for the uses and purposes of the Participants and the general creditors of the Company and the Subsidiaries as herein set forth. The Participants and their Beneficiaries shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. Any rights created under the Plans and this Master Trust Agreement shall be mere unsecured contractual rights of the Participants and their Beneficiaries against the Company and the Subsidiaries. Any assets held by the Trust will be subject to the claims of the Company's and the Subsidiaries' general creditors under federal and state law in the event of Insolvency.

-1-

1.4 **Initial Deposit.** The Company hereby deposits with the Trustee an amount, which shall become the principal of the Trust to be held, administered and disposed of by the Trustee as provided in this Master Trust Agreement.

1.5 **Additional Definitions.** Unless otherwise provided in this Master Trust Agreement, the capitalized terms in this Master Trust Agreement shall have the same meaning as under the Plans. In addition to the definitions set forth above, for purposes hereof, unless otherwise clearly apparent from the context, the following terms have the following indicated meanings:

(a) "Beneficiary" shall mean one or more persons, trusts, estates or other entities, designated in accordance with a Plan, that are entitled to receive benefits under a Plan upon the death of a Participant.

(b) "Board" shall mean the board of directors of the Company.

(c) "Change in Control" shall mean the occurrence of a Change in Control Event as such term is defined in the Company's 2003 Performance Award Plan as in effect on the Effective Date.

(d) "Committee" shall mean the administrative committee appointed by the Board to administer this Trust.

(e) "Director" shall mean any member of the board of directors of the Company or any Subsidiary.

(f) "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.

(g) "Insolvent" shall have the meaning set forth in Section 3.6(a) below.

(h) "Insolvent Entity" shall have the meaning set forth in Section 3.6(a) below.

(i) "IRS" shall mean the Internal Revenue Service.

(j) "Participant" shall mean a person who is a participant in one or more of the Plans in accordance with their terms and conditions.

(k) "Payment Schedule" shall have the meaning set forth in Section 3.5 below.

(l) "Plan(s)" shall mean (i) the Corinthian Colleges, Inc. Deferred Compensation Plan, as it may be amended from time to time, and (ii) any successor executive deferral plan or other arrangement, identified in Exhibit A of this Master Trust Agreement, that is (a) adopted by the Company within 18 months of the Effective Date of this Master Trust Agreement, and (b) acknowledged in writing by the Trustee as an additional Plan subject to the terms of this Master Trust Agreement; and (c) intended to apply to a select group of management or highly compensated employees, which is comparable to the group identified in the plan or arrangement described in (i) above. The Trustee's duties and responsibilities with respect to any successor executive deferral plan or other arrangement which is added as a Plan to this Master Trust Agreement shall not commence until the Trustee acknowledges the addition of the Plan in writing. The addition of any qualifying successor plans or other arrangements in accordance with this Section 1.5(l) to Exhibit A

          of this Master Trust Agreement, shall not constitute or be deemed to be an amendment to this Master Trust Agreement under Section 9.1 below.

    (m)    "Plan Year" shall mean, for purposes of Trust reporting, the calendar year unless the Trustee is notified that a different Plan Year has been chosen for this Master Trust Agreement by the Board.

    (n)    "Trust Fund" shall mean the assets held by the Trustee pursuant to the terms of this Master Trust Agreement and for the purposes of the Plans.

1.6    **Grantor Trust.** The Trust is intended to be a "grantor trust," of which the Company and the Subsidiaries are the grantors, within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1986, as amended (the "Code"), and the Trust shall be construed accordingly.

## ARTICLE 2
## General Administration

2.1    **Committee Directions and Administration.** The Committee shall direct the Trustee as to the administration of the Trust in accordance with the following provisions:

    (a)    The Committee shall be identified to the Trustee by a copy of the resolution of the Board appointing the Committee. In the absence thereof, the Board shall be the Committee. Persons authorized to give directions to the Trustee on behalf of the Committee shall be identified to the Trustee by written notice from the Committee, and such notice shall contain specimens of the authorized signatures. The Trustee shall be entitled to rely on such written notice as evidence of the identity and authority of the persons appointed until a written cancellation of the appointment, or the written appointment of a successor, is received by the Trustee.

    (b)    Directions by the Committee, or its delegate, to the Trustee shall be in writing and signed by the Committee or persons authorized by the Committee, or may be made by such other method as is acceptable to the Trustee.

    (c)    The Trustee may conclusively rely upon directions from the Committee in taking any action with respect to this Master Trust Agreement, including the making of payments from the Trust Fund and the investment of the Trust Fund pursuant to this Master Trust Agreement. The Trustee shall have no liability for actions taken, or for failure to act, where so directed by the Committee. The Trustee shall have no liability for failure to act in the absence of proper written directions.

    (d)    The Trustee may request instructions from the Committee and shall have no duty to act or liability for failure to act if such instructions are not forthcoming from the Committee. If requested instructions are not received within a reasonable time, the Trustee may, but is under no duty to, act on its own discretion to carry out the provisions of this Master Trust Agreement in accordance with this Master Trust Agreement and the Plans.

2.2    **Contributions.** Except as provided in any Plan, the Company and the Subsidiaries, in their sole discretion, may at any time, or from time to time, make additional deposits of cash or other

-3-

property acceptable to the Trustee in trust with the Trustee to augment the principal to be held, administered and disposed of by the Trustee as provided in this Master Trust Agreement. Neither the Trustee nor any Participant or Beneficiary shall have any right to compel such additional deposits. The Trustee shall have no duty to collect or enforce payment to it of any contributions or to require that any contributions be made, and shall have no duty to compute any amount to be paid to it nor to determine whether amounts paid comply with the terms of the Plans.

2.3  **Trust Fund.** The contributions received by the Trustee from the Company and the Subsidiaries shall be held and administered pursuant to the terms of this Master Trust Agreement as a single fund without distinction between income and principal and without liability for the payment of interest thereon except as expressly provided in this Master Trust Agreement. During the term of this Trust, all income received by the Trust, net of expenses and taxes, shall be accumulated and reinvested. Notwithstanding anything to the contrary contained herein, and unless otherwise provided in a separate written agreement to which the Trustee is a party, the Company or its designees, and not the Trustee, shall be solely responsible for maintaining records evidencing the respective interests of the Company and the Subsidiaries in the Trust Fund and for maintaining records evidencing the respective interests of the Participants and Beneficiaries in the Trust Fund and making those records available to the Trustee and/or the Administrator designated pursuant to the applicable provisions of the Plans as described herein.

2.4  **Distribution of Excess Trust Fund to Employers.** In the event that the Committee determines that the Trust Fund exceeds one-hundred and ten percent (110%) of the anticipated benefit obligations and administrative expenses that are to be paid under the Plans, the Trustee, at the direction of the Committee, shall distribute to the Company and the Subsidiaries such excess portion of the Trust Fund. The Trustee shall be entitled to obtain, at the reasonable expense of the Company or the Trust, and rely on a verification from an independent professional advisor either selected by the Trustee or reasonably acceptable to the Trustee with respect to the calculation of the excess, if any, of the Trust Fund to be distributed to the Company and the Subsidiaries.

## ARTICLE 3
### Powers and Duties of Trustee

3.1  **Investment Directions.** Except as provided in Section 3.2 below, the Committee shall provide the Trustee with all investment and investment-related instructions. Except as provided in Section 3.2, the Trustee shall neither affect nor change investments of the Trust Fund, except as directed in writing by the Committee, and shall have no right, duty or responsibility to recommend investments or investment changes; provided, that the Trustee may (i) deposit cash on hand from time to time in any bank savings account, certificate of deposit, or other instrument creating a deposit liability for a bank, including the Trustee's own banking department, if the Trustee is a bank, without such prior direction, or (ii) if the Trustee undertakes in writing to do so, invest in government securities, bonds with specific ratings, equities, or mutual funds composed of such investments, all within broad investment guidelines established by the Committee from time to time. Except as provided in Section 3.2 below, the Trustee shall have

no duty or responsibility with respect to: (i) the truth or accuracy of any representation or warranty made in any application or related document provided to the insurer in connection with the issuance or renewal of any insurance policies or insurance contracts, including the representation that the person on whose life an application is being made is eligible to have a contract issued on his or her life; (ii) the selection or monitoring (ongoing or periodic) of any insurance or annuity policies or contracts held in the Trust or the insurers issuing such policies or contracts; (iii) the payment of any premiums with respect to such policies or contracts except as directed in writing by the Company; or (iv) the exercise of any rights relating to any such policies or contracts except as directed in writing by the Company.

3.2 **Management of Investments.** Subject to Section 3.1 above, the Trustee shall have, without exclusion, all powers conferred on the Trustee by applicable law, unless expressly provided otherwise herein, and all rights associated with assets of the Trust shall be exercised by the Trustee or the person designated by the Trustee, and shall in no event be exercisable by or rest with Participants or their Beneficiaries. Subject to Section 3.1 above, the Trustee shall have full power and authority to invest and reinvest the Trust Fund in any investment permitted by law, exercising the judgment and care that persons of prudence, discretion and intelligence would exercise under the circumstances then prevailing, considering the probable income and safety of their capital, including, without limiting the generality of the foregoing, the power:

(a) To invest and reinvest the Trust Fund, together with the income therefrom, in common stock, preferred stock, convertible preferred stock, mutual funds, bonds, debentures, convertible debentures and bonds, mortgages, notes, time certificates of deposit, commercial paper and other evidences of indebtedness (including those issued by the Trustee or any of its affiliates), other securities, policies of life insurance, annuity contracts, options to buy or sell securities or other assets, and other property of any kind (personal, real, or mixed, and tangible or intangible); provided, however, that in no event may the Trustee invest in securities (including stock or rights to acquire stock) or obligations issued by the Company or the Subsidiaries, other than a de minimis amount held in common investment vehicles in which the Trustee invests;

(b) To deposit or invest all or any part of the assets of the Trust Fund in savings accounts or certificates of deposit or other deposits which bear a reasonable interest rate in a bank, including the commercial department of the Trustee, if such bank is supervised by the United States or any State;

(c) To hold, manage, improve, repair and control all property, real or personal, forming part of the Trust Fund and to sell, convey, transfer, exchange, partition, lease for any term, even extending beyond the duration of this Trust, and otherwise dispose of the same from time to time in such manner, for such consideration, and upon such terms and conditions as the Trustee shall determine;

(d) To have, respecting securities, all the rights, powers and privileges of an owner, including the power to give proxies, pay assessments and other sums deemed by the Trustee to be necessary for the protection of the Trust Fund, to vote any corporate stock either in person or by proxy, with or without power of substitution, for any purpose; to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers

and liquidations, and in connection therewith to deposit securities with and transfer title to any protective or other committee under such terms as the Trustee may deem advisable; to exercise or sell stock subscriptions or conversion rights; and, regardless of any limitation elsewhere in this instrument relative to investment by the Trustee, to accept and retain as an investment any securities or other property received through the exercise of any of the foregoing powers;

(e) To hold in cash, without liability for interest, such portion of the Trust Fund which, in its discretion, shall be reasonable under the circumstances, pending investments, or payment of expenses, or the distribution of benefits;

(f) To take such actions as may be necessary or desirable to protect the Trust Fund from loss due to the default on mortgages held in the Trust including the appointment of agents or trustees in such other jurisdictions as may seem desirable, to transfer property to such agents or trustees, to grant such powers as are necessary or desirable to protect the Trust or its assets, to direct such agents or trustees, or to delegate such power to direct, and to remove such agents or trustees;

(g) To employ such agents including custodians and counsel as may be reasonably necessary and to pay them reasonable compensation, which shall be paid pursuant to Section 3.7; to settle, compromise or abandon all claims and demands in favor of or against the Trust assets;

(h) To cause title to property of the Trust to be issued, held or registered in the individual name of the Trustee, or in the name of its nominee(s) or agents, or in such form that title will pass by delivery;

(i) To exercise all of the further rights, powers, options and privileges granted, provided for, or vested in trustees generally under the laws of the State whose laws are applicable to this Master Trust Agreement, as provided in Section 10.5, below, so that the powers conferred upon the Trustee herein shall not be in limitation of any authority conferred by law, but shall be in addition thereto;

(j) To borrow money from any source (including the Trustee) and to execute promissory notes, mortgages or other obligations and to pledge or mortgage any Trust assets as security;

(k) To lend certificates representing stocks, bonds, or other securities to any brokerage or other firm selected by the Trustee;

(l) To institute, compromise and defend actions and proceedings; to pay or contest any claim; to settle a claim by or against the Trustee by compromise, arbitration, or otherwise; to release, in whole or in part, any claim belonging to the Trust to the extent that the claim is uncollectible;

(m) To use securities depositories or custodians and to allow such securities as may be held by a depository or custodian to be registered in the name of such depository or its nominee or in the name of such custodian or its nominee;

    (n)    To invest the Trust Fund from time to time in one or more investment funds, which funds shall be registered under the Investment Company Act of 1940; and

    (o)    To do all other acts necessary or desirable for the proper administration of the Trust Fund, as if the Trustee were the absolute owner thereof.

However, nothing in this section shall be construed to mean the Trustee assumes any responsibility for the performance of any investment made by the Trustee in its capacity as trustee under the operations of this Master Trust Agreement. Notwithstanding any powers granted to the Trustee pursuant to this Master Trust Agreement or to applicable law, the Trustee shall not have any power that could give this Trust the objective of carrying on a business and dividing the gains therefrom, within the meaning of section 301.7701-2 of the Procedure and Administrative Regulations promulgated pursuant to the Internal Revenue Code of 1986, as amended.

3.3    **Securities.** Voting or other rights in securities shall be exercised by the person or entity responsible for directing such investments, and the Trustee shall have no duty to exercise voting or proxy or other rights relating to any investment managed or directed by the Committee. If any foreign securities are purchased pursuant to the direction of the Committee, it shall be the responsibility of the person or entity responsible for directing such investments to advise the Trustee in writing of any laws or regulations, either foreign or domestic, that apply to such foreign securities or to the receipt of dividends or interest on such securities.

3.4    **Substitution.** Notwithstanding any provision of any Plan or the Trust to the contrary, the Company and/or any Subsidiary shall at all times have the power to reacquire the Trust Fund by substituting readily marketable securities (other than stock, a debt obligation or other security issued by the Company or any Subsidiary) and/or cash of an equivalent value and such other property shall, following such substitution, constitute the Trust Fund.

3.5    **Distributions.**

    (a)    The establishment of the Trust and the payment or delivery to the Trustee of money or other property shall not vest in any Participant or Beneficiary any right, title, or interest in and to any assets of the Trust. To the extent that any Participant or Beneficiary acquires the right to receive payments under any of the Plans, such right shall be no greater than the right of an unsecured general creditor of the Company and the Subsidiaries and such Participant or Beneficiary shall have only the unsecured promise of the Company and the Subsidiaries that such payments shall be made.

    (b)    The Company shall direct the Trustee with respect to the amount and timing of any payment to be made to Plan Participants or their Beneficiaries. The Company may appoint an agent to direct the Company with respect to the amount and timing of such payments. The Trustee shall have no duty or responsibility to supervise the Company or any such agent regarding payments to be made to Plan Participants or their Beneficiaries under the Trust.

    (c)    Direct Payment by the Company. The Company may make payments of benefits directly to Plan Participants or their Beneficiaries as they become due under the terms of the Plan and may obtain reimbursement for such benefit payments from the Trust (or offset

required contributions to the Trust) within twelve (12) months following the date such payments are made. In addition, if the principal of the Trust, and any earnings thereon, are not sufficient to make payments of benefits in accordance with the terms of the Plan, the Company shall make the balance of each such payment as it falls due. The Trustee shall notify the Company when principal and earnings are not sufficient to make payments the Trustee has been directed to make by the Company or applicable agent.

 (d) The Company shall direct the Trustee to make provisions for reporting and withholding of any federal, state or local taxes that may be required to be withheld with respect to the payment of benefits by the Trustee pursuant to the terms of the Plan and to pay amounts withheld to the Company for remittance to the appropriate taxing authorities. The Company shall have the responsibility for reporting and withholding of all federal, state or local taxes required to be withheld with respect to such payments and for paying such amounts withheld to the appropriate taxing authorities. The Trustee shall have no duty or responsibility with respect to the reporting and withholding or payment of such taxes and shall have no responsibility to determine that the Company has provided for the reporting, withholding and payment of such taxes. The Company shall indemnify and hold harmless the Trustee from any and all losses, liabilities, claims, penalties or damages which may occur as a result of the Trustee following in good faith the written direction of the Company to remit payments to or reimburse the Company for payments made hereunder to or on behalf of Participants or arising from the Company's tax reporting, withholding and payment obligations hereunder. This indemnification shall survive termination of this Agreement and shall be binding upon the parties, their successors and assigns.

3.6 **Trustee Responsibility Regarding Payments on Insolvency.**

 (a) The Trustee shall cease payment of benefits to Participants and their Beneficiaries if the Company, or any Subsidiary, is Insolvent (the "Insolvent Entity"). The Insolvent Entity shall be considered "Insolvent" for purposes of this Master Trust Agreement if:

  (i) the Insolvent Entity is unable to pay its debts as they become due, or

  (ii) the Insolvent Entity is subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

 For purposes of this Section 3.6, if an entity is determined to be Insolvent, each Subsidiary in which such entity has an equity interest shall also be deemed to be an Insolvent Entity. However, the insolvency of a Subsidiary will not cause a parent corporation to be deemed Insolvent.

 (b) At all times during the continuance of this Trust, as provided in Section 1.3 above, the principal and income of the Trust shall be subject to claims of the general creditors of the Company and its Subsidiaries under federal and state law as set forth below:

  (i) The president of the Company shall have the duty to inform the Trustee in writing of the Company's or any Subsidiary's Insolvency. If a person claiming to be a creditor of the Company or any Subsidiary alleges in writing to the Trustee that the Company or any Subsidiary has become Insolvent, the Trustee shall determine

      whether the Company or any Subsidiary is Insolvent and, pending such determination, the Trustee shall discontinue payment of benefits to the Insolvent Entity's Participants or their Beneficiaries. The Trustee may conclusively rely on any determination it receives from the president of the Company with respect to the Insolvency of the Company or any Subsidiary.

  (ii)  Unless the Trustee has actual knowledge of the Company's or a Subsidiary's Insolvency, or has received notice from the Company, a Subsidiary, or a person claiming to be a creditor alleging that the Company or a Subsidiary is Insolvent, the Trustee shall have no duty to inquire whether the Company or any Subsidiary is Insolvent. The Trustee may in all events reasonably rely on such evidence concerning the Company's or any Subsidiary's solvency as may be furnished to the Trustee and that provides the Trustee with a reasonable basis for making a determination concerning the Company's or any Subsidiary's solvency. In this regard, the Trustee may rely upon a letter from the Company's or a Subsidiary's independent auditors as to the Company's or any Subsidiary's financial status.

  (iii)  If at any time the Trustee has determined that the Company or any Subsidiary is Insolvent, the Trustee shall discontinue payments to the Insolvent Entity's Participants or their Beneficiaries, and shall hold the portion of the assets of the Trust allocable to the Insolvent Entity for the benefit of the Insolvent Entity's general creditors. Nothing in this Master Trust Agreement shall in any way diminish any rights of Participants or their Beneficiaries to pursue their rights as general creditors of the Insolvent Entity with respect to benefits due under the Plans or otherwise.

  (iv)  The Trustee shall resume the payment of benefits to Participants or their Beneficiaries in accordance with this Article 3 of this Master Trust Agreement only after the Trustee has determined that the alleged Insolvent Entity is not Insolvent (or is no longer Insolvent).

(c)  Provided that there are sufficient assets, if the Trustee discontinues the payment of benefits from the Trust pursuant to Section 3.6(b) hereof and subsequently resumes such payments, the first payment following such discontinuance shall include the aggregate amount of all payments due to Participants or their Beneficiaries under the terms of the Plans for the period of such discontinuance, less the aggregate amount of any payments made to Participants or their Beneficiaries by the Company or any Subsidiary in lieu of the payments provided for hereunder during any such period of discontinuance. The Committee shall instruct the Trustee as to such amounts.

3.7  **Costs of Administration.** The Trustee is authorized to incur reasonable obligations in connection with the administration of the Trust, including reasonable attorneys' fees and other administrative fees and appraisal fees. Such obligations shall be paid by the Company and the Subsidiaries. The Trustee is authorized to pay such amounts from the Trust Fund if the Company or the Subsidiaries fail to pay them within 60 days of presentation of a statement of the amounts due.

3.8 **Trustee Compensation and Expenses.** The Trustee shall be entitled to reasonable compensation for its services as from time to time agreed upon between the Trustee and the Company. The Trustee shall be entitled to additional compensation for the performance of extraordinary services, including services rendered in the event of Insolvency of the Company or a Subsidiary or in the event of a Change in Control. If the Trustee and the Company fail to agree upon a compensation, or following a Change in Control, the Trustee shall be entitled to compensation at a rate equal to the rate generally charged by the Trustee for similar services rendered by it during the current fiscal year for other trusts similar to this Trust. The Trustee shall be entitled to reimbursement for reasonable expenses incurred by it in the performance of its duties as the Trustee, including reasonable fees for legal counsel. The compensation and expenses of the Trustee contemplated by this Section 3.8 shall be paid by the Company and the Subsidiaries. The Trustee is authorized to withdraw such amounts from the Trust Fund if the Company or the Subsidiaries fail to pay them within 60 days of presentation of a statement of the amounts due.

3.9 **Professional Advice.** The Company and the Subsidiaries specifically acknowledge that the Trustee may find it desirable or expedient to retain legal counsel (who may also be legal counsel for the Company generally) or other professional advisors to advise it in connection with the exercise of any duty under this Master Trust Agreement, including, but not limited to, any matter relating to or following a Change in Control or the Insolvency of the Company or any Subsidiary. The Trustee shall be fully protected in acting reasonably upon the advice of such legal counsel or advisors.

3.10 **Payment on Court Order.** To the extent permitted by law, the Trustee is authorized to make any payments directed by court order in any action in which the Trustee has been named as a party. The Trustee is not obligated to defend actions in which the Trustee is named, but shall notify the Company or Committee of any such action and may tender defense of the action to the Company, Committee, Participant or Beneficiary whose interest is affected. The Trustee may in its discretion defend any action in which the Trustee is named, and any expenses reasonably incurred by the Trustee shall be paid by the Company and the Subsidiaries. The Trustee is authorized to pay such amounts from the Trust Fund if the Company or the Subsidiaries fail to pay them within sixty (60) days of presentation of a statement of the amounts due.

3.11 **Protective Provisions.** Notwithstanding any other provision contained in this Master Trust Agreement to the contrary, the Trustee shall have no obligation to (i) determine the existence of any conversion, redemption, exchange, subscription or other right relating to any securities purchased of which notice was given prior to the purchase of such securities and shall have no obligation to exercise any such right unless the Trustee is advised in writing by the Committee both of the existence of the right and the desired exercise thereof within a reasonable time prior to the expiration of the right to exercise, or (ii) advance any funds to the Trust. Furthermore, the Trustee is not a party to the Plans.

3.12 **Indemnifications.**

(a) The Company and the Subsidiaries shall indemnify and hold the Trustee harmless from and against all loss or liability (including expenses and reasonable attorneys' fees and disbursements) to which it may be subject by reason of its execution of its duties under this Trust, or by reason of any acts taken in good faith in accordance with any directions,

or acts omitted in good faith due to absence of directions, from the Company, the Committee or a Participant, in each case to the extent contemplated by this Master Trust Agreement in the administration of this Trust, unless such loss or liability is due to the Trustee's gross negligence or willful misconduct. The indemnity described herein shall be provided by the Company and the Subsidiaries.

(b) In the event that the Trustee is named as a defendant in a lawsuit or proceeding involving one or more of the Plans or the Trust Fund (in its capacity as Trustee), the Trustee shall be entitled to receive on a current basis the indemnity payments provided for in this Section, provided however that if the final judgment entered in the lawsuit or proceeding holds that the Trustee was grossly negligent or had engaged in willful misconduct with respect to the Trust Fund, the Trustee shall be required to refund the indemnity payments that it has received.

(c) All releases and indemnities provided in this Master Trust Agreement shall survive the termination of this Master Trust Agreement.

## ARTICLE 4
### Insurance Contracts

4.1 **Types of Contracts.** To the extent that the Trustee is directed by the Committee to invest part or all of the Trust Fund in insurance contracts, the type and amount thereof shall be specified by the Committee. The Trustee shall be under no duty to make inquiry as to the propriety of the type or amount so specified.

4.2 **Ownership.** Each insurance contract issued shall provide that the Trustee shall be the owner thereof with the power to exercise all rights, privileges, options and elections granted by or permitted under such contract or under the rules of the insurer. The exercise by the Trustee of any incidents of ownership under any contract shall be subject to the direction of the Committee.

4.3 **Restrictions on Trustee's Rights.** The Trustee shall have no power to name a beneficiary of the policy other than the Trust, to assign the policy (as distinct from conversion of the policy to a different form) other than to a successor Trustee, or to loan to any person the proceeds of any borrowing against such policy. Despite the foregoing, the Trustee may in its sole discretion (i) loan to the Company or any Subsidiary the proceeds of any borrowing against an insurance policy held in the Trust Fund or (ii) assign all, or any portion, of a policy to the Company or any Subsidiary if under other provisions of this Master Trust Agreement the Company or any Subsidiary is entitled to receive assets from the Trust.

## ARTICLE 5
### Trustee's Accounts

5.1 **Records.** The Trustee shall maintain accurate records and detailed accounts of all investments, receipts, disbursements and other transactions hereunder. Such records shall be available at all reasonable times for inspection by the Company and Subsidiaries or their authorized representative.

-11-

5.2 **Annual Accounting; Final Accounting.** Within 60 days following the end of each Plan Year and within 60 days after the removal or resignation of the Trustee or the termination of the Trust, the Trustee shall file with the Committee a written account setting forth a description of all properties purchased and sold, all receipts, disbursements and other transactions effected by it during the Plan Year or, in the case of removal, resignation or termination, since the close of the previous Plan Year, and listing the properties held in the Trust Fund as of the last day of the Plan Year or other period and indicating their values.

5.3 **Valuation.** The assets of the Trust Fund shall be valued at their respective fair market values on the date of valuation, as determined by the Trustee based upon such sources of information as it may deem reliable, including, but not limited to, stock market quotations, statistical valuation services, newspapers of general circulation, financial publications, advice from investment counselors, brokerage firms or insurance companies, or any combination of sources. The Committee shall instruct the Trustee as to the value of assets for which market values are not readily obtainable by the Trustee. If the Committee fails to provide such values, the Trustee may take whatever action it deems reasonable, including employment of attorneys, appraisers, life insurance companies or other professionals, the expense of which shall be an expense of administration of the Trust Fund and payable by the Company and the Subsidiaries.

5.4 **Delegation of Duties.** The Company or the Committee, or both, may at any time employ the Trustee as their agent to perform any act, keep any records or accounts and make any computations that are required of the Company, any Subsidiary or the Committee by this Master Trust Agreement or the Plans. The Trustee may be compensated for such employment and such employment shall not be deemed to be contrary to the Trust. Nothing done by the Trustee as such agent shall change or increase its responsibility or liability as Trustee hereunder.

# ARTICLE 6
## Resignation or Removal of Trustee

6.1 **Resignation; Removal.** The Trustee may resign at any time by written notice to the Company, which shall be effective 60 days after receipt of such notice unless the Company and the Trustee agree otherwise. The Trustee may be removed by the Company on 60 days notice or upon shorter notice accepted by the Trustee.

6.2 **Successor Trustee.** If the Trustee resigns or is removed, a successor shall be appointed by the Company, in accordance with this Section, by the effective date of the resignation or removal under Section 6.1 above. The successor shall be a bank, trust company, or similar independent third party that is granted corporate trustee powers under state or federal law. If no such appointment has been made within six months, the Trustee may apply to a court of competent jurisdiction for appointment of a successor or for instructions. All reasonable expenses of the Trustee in connection with the proceeding shall be allowed as administrative expenses of the Trust.

6.3 **Settlement of Accounts.** Upon resignation or removal of the Trustee and appointment of a successor Trustee, all assets shall subsequently be transferred to the successor Trustee. The transfer shall be completed within 90 days after receipt of notice of resignation, removal or

transfer, unless the Company extends the time limit. Upon the transfer of the assets, the successor Trustee shall succeed to all of the powers and duties given to the Trustee in this Master Trust Agreement. The resigning or removed Trustee shall render to the Committee an account in the form and manner and at the time prescribed in Section 5.2. The approval of such accounting and discharge of the Trustee shall be as provided in such Section.

## ARTICLE 7
### Controversies, Legal Actions and Counsel

7.1 **Controversy.** If any controversy arises with respect to the Trust, the Trustee shall take action as directed by the Committee or, in the absence of such direction, as it reasonably deems advisable, whether by legal proceedings, compromise or otherwise. The Trustee may retain the funds or property involved without liability pending settlement of the controversy. The Trustee shall be under no obligation to take any legal action of whatever nature unless there shall be sufficient property in the Trust to indemnify the Trustee with respect to any expenses or losses to which it may be subjected.

7.2 **Joinder of Parties.** In any action or other judicial proceedings affecting the Trust, it shall be necessary to join as parties the Trustee, the Committee, the Company and the Subsidiaries. No Participant or other person shall be entitled to any notice or service of process. Any judgment entered in such a proceeding or action shall be binding on all persons claiming under the Trust. Nothing in this Master Trust Agreement shall be construed as to deprive a Participant or Beneficiary of his or her right to seek adjudication of his or her rights by administrative process or by a court of competent jurisdiction.

7.3 **Employment of Counsel.** The Trustee may consult with legal counsel of its choosing (who may be counsel for the Company or any Subsidiary) and shall be fully protected with respect to any action reasonably taken or omitted by it in good faith pursuant to the advice of counsel.

## ARTICLE 8
### Insurers

8.1 **Insurer Not a Party.** No insurer shall be deemed to be a party to the Trust and an insurer's obligations shall be measured and determined solely by the terms of contracts and other agreements executed by it.

8.2 **Authority of Trustee.** An insurer shall accept the signature of the Trustee to any documents or papers executed in connection with such contracts. The signature of the Trustee shall be conclusive proof to the insurer that the person on whose life an application is being made is eligible to have a contract issued on his or her life and is eligible for a contract of the type and amount requested.

# ARTICLE 9
## Amendment and Termination

9.1 **Amendment.** Subject to the limitations set forth in this Section 9.1, this Master Trust Agreement may be amended by a written instrument executed by the Trustee and the Company. Notwithstanding the foregoing, no such amendment shall conflict with the terms of the Plans or shall make the Trust revocable after it has become irrevocable in accordance with Section 1.3 above. Any amendment, change or modification shall be subject to the following rules:

(a) General Rule. Subject to Sections 9.1(b), (c) and (d) below, this Master Trust Agreement may be amended:

  (i) By the Company and the Trustee, provided, however, that if an amendment would materially and adversely affect the rights accrued under the Plans in the Trust Fund by Participant(s) or Beneficiary(ies) such amendment is subject to approval by (A) a majority of the Participants and (B) the consent of Participants who together hold not less than half the then-accrued but unsatisfied benefit obligations under the Plans (determined on a present value basis) and (C) by any Participant and Beneficiary who is singled out by such amendment (as opposed to, and not required for, amendments of general applicability); and

  (ii) By the Company and the Trustee as may be necessary to comply with laws which would otherwise render the Trust void, voidable or invalid in whole or in part.

(b) Limitation. Notwithstanding that an amendment may be permissible under Section 9.1(a) above, this Master Trust Agreement shall not be amended by an amendment that would:

  (i) Cause any of the assets of the Trust to be used for or diverted to purposes other than for the exclusive benefit of Participants and Beneficiaries as set forth in the Plans, or payment of expenses of the Trust, except as is required to satisfy the claims of the Company's or a Subsidiary's general creditors; or

  (ii) Be inconsistent with the terms of any Plan, including the terms of any Plan regarding termination, amendment or modification of the Plan.

(c) Writing and Consent. Any amendment to this Master Trust Agreement shall be set forth in writing and signed by the Company and the Trustee and, if consent of any Participant or Beneficiary is required under Section 9.1(a), the Participant(s) or Beneficiary(ies) whose consent is required. Any amendment may be current, retroactive or prospective, in each case as provided therein.

(d) The Company and Trustee. In connection with the exercise of the rights under this Section 9.1, the Trustee shall have no responsibility to determine whether any proposed amendment complies with the terms and conditions set forth in Sections 9.1(a) and (b) above and may conclusively rely on the directions of the Committee with respect thereto.

(e) Taxation. This Master Trust Agreement shall not be amended, altered, changed or modified in a manner that would cause the Participants and/or Beneficiaries under any Plan to be taxed on the benefits under any Plan in a year other than the year of actual receipt of benefits.

(f) <u>Addition of Successor Plans not an Amendment</u>. Notwithstanding the foregoing, the addition of any successor plans or other arrangements in accordance with Section 1.5(l), to Exhibit A of this Master Trust Agreement, shall not constitute or be deemed to be an amendment to this Master Trust Agreement.

9.2 **Final Termination.** The Trust shall not terminate until the date on which Participants and their Beneficiaries are no longer entitled to benefits pursuant to the terms of the Plans and all of the expenses of the Trust have been paid, and on such date the Trust shall terminate. Upon termination of the Trust, any assets remaining in the Trust shall be returned to the Company and the Subsidiaries. Such remaining assets shall be paid by the Trustee to the Company and the Subsidiaries in such amounts and in the manner instructed by the Company, whereupon the Trustee shall be released and discharged from all obligations hereunder. From and after the date of termination and until final distribution of the Trust Fund, the Trustee shall continue to have all of the powers provided herein as are necessary or expedient for the orderly liquidation and distribution of the Trust Fund.

## ARTICLE 10
## Miscellaneous

10.1 **Taxes** The Company and the Subsidiaries shall from time to time pay taxes of any and all kinds whatsoever that at any time are lawfully levied or assessed upon or become payable in respect of the Trust Fund, the income or any property forming a part thereof, or any security transaction pertaining thereto. To the extent that any taxes lawfully levied or assessed upon the Trust Fund are not paid by the Company and the Subsidiaries, the Trustee shall have the power to pay such taxes out of the Trust Fund and shall seek reimbursement from the Company and the Subsidiaries. Prior to making any payment, the Trustee may require such releases or other documents from any lawful taxing authority as it shall deem necessary. The Trustee shall contest the validity of taxes in any manner deemed appropriate by the Company or its counsel, but at the Company's and the Subsidiaries' expense, and only if it has received an indemnity bond or other security satisfactory to it to pay any such expenses. The Trustee (i) shall not be liable for any nonpayment of tax when it distributes an interest hereunder on directions from the Committee, and (ii) shall have no obligation to prepare or file any tax return on behalf of the Trust Fund, any such return being the sole responsibility of the Committee. The Trustee shall cooperate with the Committee in connection with the preparation and filing of any such return.

10.2 **Third Persons.** All persons dealing with the Trustee are released from inquiring into the decisions or authority of the Trustee and from seeing to the application of any moneys, securities or other property paid or delivered to the Trustee.

10.3 **Nonassignability; Nonalienation.** Benefits payable to Participants and their Beneficiaries under this Master Trust Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy, execution or other legal or equitable process.

10.4 **The Plans.** The Trust and the Plans are parts of a single, integrated employee benefit plan system and shall be construed together. In the event of any conflict between the terms of this

Master Trust Agreement and the agreements that constitute the Plans, such conflict shall be resolved in favor of this Master Trust Agreement.

10.5 **Applicable Law.** Except to the extent, if any, preempted by ERISA, this Master Trust Agreement shall be governed by and construed in accordance with the internal laws of the State of California. Any provision of this Master Trust Agreement prohibited by law shall be ineffective to the extent of any such prohibition, without invalidating the remaining provisions hereof.

10.6 **Notices and Directions.** Whenever a notice or direction is given by the Committee to the Trustee, it shall be in the form required by Section 2.1. Actions by the Company shall be by the Board, Committee or a duly authorized officer, with such actions certified to the Trustee by an appropriately certified copy of the action taken. The Trustee shall be protected in acting upon any such notice, resolution, order, certificate or other communication believed by it to be genuine and to have been signed by the proper party or parties.

10.7 **Successors and Assigns.** This Master Trust Agreement shall be binding upon and inure to the benefit of the Company, the Subsidiaries and the Trustee and their respective successors and assigns.

10.8 **Gender and Number.** Words used in the masculine shall apply to the feminine where applicable, and when the context requires, the plural shall be read as the singular and the singular as the plural.

10.9 **Headings.** Headings in this Master Trust Agreement are inserted for convenience of reference only and any conflict between such headings and the text shall be resolved in favor of the text.

10.10 **Counterparts.** This Master Trust Agreement may be executed in an original and any number of counterparts, each of which shall be deemed to be an original of one and the same instrument.

10.11 **Beneficial Interest.** The Company and the Subsidiaries are the true beneficiaries hereunder in that the payment of benefits, directly or indirectly to or for a Participant or Beneficiary by the Trustee, is in satisfaction of the Company's and the Subsidiaries' liability therefor under the Plans. Nothing in this Master Trust Agreement shall establish any beneficial interest in any person other than the Company and the Subsidiaries.

10.12 **The Trust and Plans.** This Trust, the Plans and each Participant's Plan Agreement (if any) are part of and constitute a single, integrated employee benefit plan and trust, shall be construed together as the entire agreement between the Company, the Trustee, the Participants and the Beneficiaries with regard to the subject matter thereof, and shall supersede all previous negotiations, agreements and commitments with respect thereto; provided, however, that the Trustee's duties and responsibilities shall be determined solely by reference to this Master Trust Agreement.

10.13 **No Legal, Tax or Accounting Services.** In no event will the Trustee have any obligation to provide, and in no event will the Trustee provide, any legal, tax, accounting, audit or other advice to the Company with respect to the Plans or this Trust. The Company acknowledges that it will rely exclusively on the advice of its accountants and/or attorneys with respect to all legal, tax, accounting, audit and other advice required or desired by the Company with respect to the Plans or this Trust. The Company acknowledges that the Trustee has not made any representations of

any kind, and will not make any representations of any kind, concerning the legal, tax, accounting, audit or other treatment of the Plans or this Trust.

10.14 **Trustee Not an Advisor.** The Company acknowledges that the Trustee is not an advisor concerning or a promoter with respect to the Plans or this Trust, but merely is a service provider offering the Trust services expressly set forth in this Agreement. In particular, the Company acknowledges that the Trustee is not a joint venturer or partner with the Company's accountants, auditors, consultants or with any other party, with respect to the Plans or this Trust, and that the Trustee and the Company's accountants, auditors and consultants at all times remain independent parties dealing at arm's length, and independently, with each other and with the Company.

10.15 **Section 409A.** It is intended that the Trust not result in any tax, penalty or interest under Section 409A of the Code. Notwithstanding anything to the contrary herein, if a Plan participant is a "specified employee" (within the meaning of Section 409A(a)(2)(B)(i) of the Code), any amounts otherwise payable to or in respect of him pursuant to this Master Trust Agreement shall be delayed until the earliest date permitted by Section 409A(a)(2) of the Code, to the extent such a delay is required to avoid any tax, penalty or interest under Section 409A of the Code. In addition, notwithstanding anything to the contrary herein, no new contribution to the Trust will be permitted during any "restricted period" (within the meaning of Section 409A(b)(3)(B) of the Code), to the extent such contribution would result in any tax, penalty or interest under Section 409A of the Code.

IN WITNESS WHEREOF the Company and the Trustee have signed this Master Trust Agreement as of the Effective Date.

TRUSTEE:
First American Trust, FSB, As Trustee

By: _[signature]_
Title: DENISE C MEHUS
VICE PRESIDENT

By: _[signature]_
Title: ~~Steven R. Hubbs~~
**Executive Vice President**

THE COMPANY:
CORINTHIAN COLLEGES, INC.

By: _[signature]_
Title: EVP, Chief Financial Officer

**EXHIBIT A**
**Plans**

1. <u>Corinthian Colleges, Inc. Deferred Compensation Plan</u>