**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | |
| Debtors. | Case No. 15-10952-KJC |
| | **Objection Deadline: November 27, at 4:00 p.m. (ET)**<br>**Hearing Date: December 10, 2015 at 1:00 p.m. (ET)** |

**FIRST AND FINAL FEE APPLICATION OF ROBINS KAPLAN LLP FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES AS CO-COUNSEL TO
THE OFFICIAL COMMITTEE OF STUDENT CREDITORS FOR THE PERIOD FROM
MAY 16, 2015 THROUGH SEPTEMBER 21, 2015**

| | |
|---|---|
| Name of Applicant: | Robins Kaplan LLP |
| Authorized to Provide Professional Services to: | Official Committee of Student Creditors |
| Date of Retention: | *nunc pro tunc* to May 16, 2015 |
| Period for which compensation and reimbursement is sought: | May 16, 2015 to September 21, 2015 |
| Final Amount of Compensation sought as actual, reasonable and necessary: | $898,548.00 |
| Final Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $20,349.03 |
| This is a(n): | ____ Monthly   ____ Interim   ✓ Final application |

This is the **first** and **final** fee application filed in this case.

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425, Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Educations, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477).  The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

### Summary of Robins Kaplan's Monthly Fee and Expenses

| Compensation Period | 100% Fees | 100% Expenses | Total |
|---|---|---|---|
| May 16, 2015 – May 30, 2015 | $145,749.50 | $38.31 | $145,787.81 |
| June 1, 2015 – June 30, 2015 | $321,281.00 | $3,211.99 | $324,492.99 |
| July 1, 2015 – July 31, 2015 | $266,294.50 | $11,579.78 | $277,874.28 |
| August 1, 2015 – August 31, 2015 | $133,958.50 | $3505.65 | $137,464.15 |
| September 1, 2015 – September 30, 2015 | $31,264.50 | $2,013.30 | $33,277.80 |
| TOTAL: | $898,548.00 | $20,349.03 | $918,897.03 |

### Final Compensation Period Timekeeper Summary[2]

| Name of Professional Person | Description | Total Billed Hours | Hourly Billing Rate (including voluntary reduction) | Total Compensation |
|---|---|---|---|---|
| Roman M. Silberfeld | Partner since March 1, 1995; Member of the California Bar since 1974 | 5.7 | $810.00 | $4,617.00 |
| Howard Weg[3] | Joined firm as Partner in 2014. Member of California Bar since 1979 | 60.3 | $795.00 | $47,938.50 |
| Scott F. Gautier | Joined firm as partner in 2014; Member of California bar since 2000 and Illinois bar since 1997 | 452 | $675.00 | $305,100.00 |
| David B. Shemano | Joined firm as partner in 2014; Member of California bar since 1995 | 17 | $675.00 | $11,475.00 |

---

[2] Information provided pursuant to Local Form 102.
[3] Howard Weg, Scott Gautier, David Shemano and Lorie Ball, the bankruptcy lawyers working on this matter, all joined Robins Kaplan in June, 2014. Prior to that time, they were attorneys at Peitzman Weg LLP, a Los Angeles bankruptcy boutique. The rates charged by these attorneys did not change at the time of their move to Robins Kaplan.

| Name of Professional Person | Description | Total Billed Hours | Hourly Billing Rate (including voluntary reduction) | Total Compensation |
|---|---|---|---|---|
| James P. Menton, Jr. | Joined firm as partner in 2014; Member of California bar since 1992 | 17.4 | $650.00 | $11,310.00 |
| Amy Churan | Partner, joined firm 2001. Member of the California State Bar since 2001 | 18.1 | $420.00 | $7,602.00 |
| Lorie A. Ball | Joined firm as associate in 2014.  Member of California Bar since 2000 | 568.1 | $450.00 | $255,645.00 |
| Cynthia C. Hernandez | Joined as associate in 2009. Member of the California bar since 2012 and Minnesota bar since 2009 | 397.9 | $470.00 | $187,013.00 |
| Denise Wymore | Paralegal since 1990 joined firm in 2014 | 187 | $225.00 | $42,075.00 |
| Diana Tehranfar | Paralegal since 2010  joined firm in 2014 | 52 | $225.00 | $11,700.00 |
| Alejandro J. Castro | Summer Law Clerk 2015 | 19.2 | $175.00 | $3,360.00 |
| Lara Grines | Summer Law Clerk 2015 | 24.6 | $175.00 | $4,305.00 |

| Name of Professional Person | Description | Total Billed Hours | Hourly Billing Rate (including voluntary reduction) | Total Compensation |
|---|---|---|---|---|
| Ediscovery Consultant | Consultant | 8.3 | $295.00 | $2,448.50 |
| Ediscovery Project Manager | Project Manager | 21.4 | $185.00 | $3,959.00 |
| Grand Total: $898,548.00 | | | | |
| Blended Rate all billing partners:  $680.17 | | | | |
| Blended Rate for all billing associates:  $458.23 | | | | |
| Blended Rate for all billing attorneys: $540.64 | | | | |
| Blended Rate for all billing timekeepers: $485.96 | | | | |

**Table of Customary and Comparable Compensation Disclosures with Fee Applications**

| Category of Timekeeper (using categories already maintained by the firm) | BLENDED HOURLY RATE | |
|---|---|---|
| | HOURS BILLED<br><br>Los Angeles Office for preceding year, excluding bankruptcy | HOURS BILLED<br><br>In this fee application |
| Partner | $550.04 | $680.17 |
| Associate | $423.94 | $437.53 |
| Paralegal | $228.20 | $225.00 |
| Law Clerks | $175.00 | $175.00 |
| EDiscovery Consultant | $286.07 | $295.00 |
| EDiscovery Project Manager | $179.68 | $185.00 |
| **All Timekeepers Aggregate** | $412.28 | $485.96 |

**Summary of Final Compensation Requested by Project Category**

| Category | Hours | Value |
|---|---|---|
| Asset Analysis and Recovery | 45.00 | $20,367.00 |
| Asset Sale and Disposition | 9.40 | $4,230.00 |
| Audit and Accounting Matters | 1.50 | $965.00 |
| Business Operations | 3.50 | $612.50 |
| Case Administration | 211.30 | $72,925.00 |
| Claims Administration and Objection | 244.20 | $113,511.00 |
| Creditor's Committee Matters | 179.40 | $99,843.50 |
| Employee Benefits and Pensions | 0.40 | $180.00 |
| Executory Contracts and Leases | 9.10 | $3,420.00 |
| Fee/Employment Applications | 109.30 | $41,959.00 |
| Fee/Employment Objections | 9.10 | $4,050.00 |
| Financing and Cash Collateral | 21.20 | $12,021.00 |
| Litigation - Misc. | 219.70 | $113,093.50 |
| Litigation - Relief from Stay Matters | 476.10 | $233,998.50 |
| Meeting of Creditors | 18.10 | $12,217.50 |
| Plan and Disclosure Statement | 291.20 | $164,929.50 |
| Tax Matters | 0.50 | $225.00 |
| Total | 1,849.00 | $898,548.00 |

**<u>Summary of Final Expense Reimbursement Requested by Category</u>**

| Category | Amount |
|---|---:|
| Express Delivery | $34.49 |
| Hotel | $2,423.65 |
| Lexis | $1,406.20 |
| Meals | $1,048.75 |
| Messenger Service | $17.31 |
| Ediscovery and Data Conversion | $506.46 |
| Pacer | $404.80 |
| Photocopies | $788.31 |
| Telephone | $776.93 |
| Travel/Airfare | $12,942.13 |
| TOTAL | $20,349.03 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | Case No. 15-10952-KJC |
| Debtors. | |
| | **Objection Deadline: November 27, 2015 at 4:00 p.m. (ET)** |
| | **Hearing Date: December 10, 2015 at 1:00 p.m. (ET)** |

### FIRST AND FINAL FEE APPLICATION OF ROBINS KAPLAN LLP FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO THE OFFICIAL COMMITTEE OF STUDENT CREDITORS FOR THE PERIOD FROM MAY 16, 2015 THROUGH SEPTEMBER 21, 2015

Robins Kaplan LLP ("**Robins Kaplan**"), counsel to the Official Committee of Student Creditors (the "**Student Committee**") in the above-captioned chapter 11 cases of Corinthian Colleges, Inc. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), hereby submits its first and final fee application (the "**Application**") for entry of an order pursuant to 11 U.S.C. §§ 330 and 331 for allowance of its compensation and reimbursement of expenses for the period from May 16, 2015 through September 21, 2015. In support of this Application, Robins Kaplan respectfully represents as follows:

### I. JURISDICTION, VENUE AND STATUTORY PREDICATES FOR RELIEF SOUGHT

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District*

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425, Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Educations, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

*Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 1103 and 330, Bankruptcy Rule 2016, and Local Rule 2016-2 and the order governing interim compensation of professionals entered in this case.

## II. <u>BACKGROUND</u>

2.     On May 4, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing the above-captioned chapter 11 cases (the "**Cases**"). The factual background regarding the Debtors, including their business operations and the events leading to the filing of these Cases, is set forth in detail in the *Declaration of William J. Nolan In Support of Chapter 11 Petitions and First Day Motions* [Docket No. 10].

3.     On May 13, 2015, the Office of the United States Trustee (the "**UST**") appointed a Committee of Unsecured Creditors in connection with the cases [Docket No. 100].

4.     On May 15, 2015, the UST subsequently appointed the Student Committee pursuant to Section 1102(a)(1) of the Bankruptcy Code [Docket No. 120]. The seven Student Committee members include: Tasha Courtright, Jessica King, Amber Thompson, Crystal Loeser, Michael Adorno-Miranda, Krystle Powell, and Brittany Ann Smith Jackl.

5.     The Student Committee retained Robins Kaplan as its bankruptcy counsel, Public Counsel as its special counsel, and Polsinelli PC as its co-counsel.

6.      On July 20, 2015, this Court entered an Order (the "**Retention Order**") approving the retention of Robins Kaplan as bankruptcy counsel to the Student Committee, *nunc pro tunc* to May 16, 2015 [Docket No. 597].

7.      This Court confirmed the *Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* on August 28, 2015 (the "**Plan**") [Docket No. 913], the effective date for which occurred on September 21, 2015.

### III.  FEES AND EXPENSES

8.      All services for which compensation is requested by Robins Kaplan were performed for or on behalf of the Student Committee.  Robins Kaplan has received no payment and no promises for payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application for the Compensation Period (as defined below).  There is no agreement or understanding between Robins Kaplan and any persons for the sharing of compensation to be received for services rendered in these cases.

9.      Robins Kaplan has continuously rendered services on behalf of the Student Committee for the period from May 16, 2015 through September 21, 2015 (the "**Compensation Period**"), totaling 1,849 hours, representing 1,536.5 hours of professional services, 268.7 hours of paraprofessional services and 43.8 hours of law clerk services.

10.      In the ordinary course of Robins Kaplan's practice, Robins Kaplan maintains computerized records of the time expended to render professional services required by the Student Committee as well as a record of expenses incurred while rendering professional services to the Student Committee.

11.     In accordance with Rule 2016-2(e)(iii) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), all copying charges are billed at $0.09 per page.

12.     The total sum due to Robins Kaplan for professional services rendered on behalf of the Student Committee for the Compensation Period is $898,548.00.  Robins Kaplan also expended costs on behalf of the Student Committee that became due during the Compensation Period in the sum of $20,349.03.

13.     Attached hereto as Exhibit A is a full and detailed statement for the Compensation Period setting forth:   (i) a detailed description of the professional services rendered by each Robins Kaplan attorney and paraprofessional, listed by Bankruptcy Project Codes; and (ii) a detailed list of costs incurred by Robins Kaplan on behalf of the Student Committee.

14.     The fees charged by Robins Kaplan are billed in accordance with Robins Kaplan's existing billing rates and procedures in effect during the Compensation Period.

## IV.  SERVICES RENDERED

15.     This Application is the first and final fee application for compensation that Robins Kaplan has filed with the Court in these cases.  During the Compensation Period, Robins Kaplan provided significant professional services to the Student Committee in its efforts to protect the interests of former students that may have been harmed by the Debtors' misconduct in connection with, among other things, misrepresentations related to the students' capabilities with respect to certain academic programs, chances of completing an educational program, expected debt to be incurred in connection with an academic program and expected employment and salary prospects upon completion of an academic program.

16.     It is important to note that in contrast to typical unsecured creditors in a chapter 11 case, student claims are unique—the claims arise principally from the Debtors' tortious activities that manifest in massive student loan debt that the students are obligated to repay to the United States government and third-party lenders.  In these cases, the massive debts on which the students are obligated is estimated to exceed $20 billion and, while there is no easy calculation to determine the amount of the debt that resulted from the Debtors' misconduct, it was clear from the beginning of these cases that the Debtors' assets were not going to provide direct meaningful relief to the student class of creditors.

17.     Accordingly, Robins Kaplan focused on the fact that the students' interests extend well beyond any financial recovery in the bankruptcy case and include, primarily, the ability for each student that has suffered harm to seek cancellation of debt that was incurred in the pursuit of any misrepresented academic programs.

18.     In broad terms, Robins Kaplan's work focused on three key objectives: (i) attempt to stop all collection efforts for student debt that resulted from the Debtors' misconduct; (ii) get students involved in the chapter 11 process in order to start the process of calculating actual damages caused to students by the Debtors' misconduct; and (iii) assert significant pressure on key constituents so that, among other things, the Student Committee could promote a Plan that delivered some value that could be used to protect student interests following the dissolution of the Debtors' business entities without subjecting individual student creditors to protracted litigation (i.e. claims objections) from the Estates' larger corporate unsecured creditor interests.

19.     On its face, Robins Kaplan's tasks included those day-to-day tasks that are commonly undertaken by corporate chapter 11 committee counsel; Robins Kaplan (i) prepared

various pleadings, motions, responses and other documents in order to promote and protect student interests during the pendency of the chapter 11 proceedings; (ii) met with and advised Student Committee members on a regular basis to keep them apprised of the chapter 11 process and the relief sought by other entities throughout the cases; (iii) regularly responded to numerous calls from student creditors seeking information and guidance on the bankruptcy process; (iv) attended and actively participated in hearings of particular concern to student interests; (v) took a lead role in formulating and negotiating a "two-pot" plan that was designed to provide benefits to all creditor constituencies and to minimize post-confirmation disputes among unsecured creditors; and (vi) performed all of the other professional services that are described in detail in the attached time records.

### A.        Summary of Services By Project

The majority of services rendered by Robins Kaplan during the Compensation Period can be grouped into the categories set forth below. These categories are generally described below, with a more detailed identification of the actual services provided set forth on the attached Exhibit A. The attorneys and paraprofessionals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category, in Exhibit A attached hereto.

Asset Analysis and Recovery

Fees: $20,367.00        Total Hours:  45.0

Time billed in this category includes time that Robins Kaplan devoted to analysis of those assets that might be available for distributions to creditors, including a review of Director and Officer Insurance proceeds that might be available to the Estates.  The analysis of contingent litigation assets, including recovery from "director and officer litigation" was key to understanding value available to unsecured creditors and played a key role in the negotiation of

the Plan with the General Unsecured Creditors Committee ("**GUCC**").  While future contingent

assets would be unlikely to directly benefit students as — individual student claims would no

doubt be destroyed in the claims objection process because corporate creditors with more

concentrated claims would have an incentive to fight against student creditors' claims—

understanding the value that could be traded was an important negotiating tool.

Asset Sale and Disposition

Fees: $4,230.00          Total Hours: 9.4

Time in this category was limited to Robins Kaplan's review of the Debtors' motions to

sell limited assets remaining in the Estates and to insure that the procedures were fair to the

protection of any unsecured creditors' rights with respect to such sales.  Robins Kaplan

coordinated efforts with counsel for the GUCC and deferred primarily to the GUCC's review of

the secured creditors' interests in the collateral and sale proceeds to avoid duplication of efforts.

Audit and Accounting

Fees: $965.00          Total Hours: 1.5

A minimal amount of time was billed to this category related to targeted discovery of the

Debtors' accounting and financial systems.

Business Operations

Fees: $612.50          Total Hours: 3.5

A minimal amount of time was billed to this category related to research regarding

operating agreements and restrictions in bankruptcy.

Case Administration/ Miscellaneous Matters

Fees: $72,925.00          Total Hours: 211.3

This category includes all matters related to Robins Kaplan's administrative task of monitoring the cases and determining how to interact with the client, the Court and other constituents.  The tasks billed included filing documents with the Court, service thereof, maintenance of calendars, communications with the UST, review of work in process reports, review of court docket and pleadings.  In particular, Robins Kaplan attorneys reviewed every pleading filed in the case to determine its effect on the case and students' interests.  To the extent that a motion was uncontested by the Student Committee, the review of such case generally would be recorded in this category.  As well, strategizing regarding the use of the process to promote student goals would be recorded in this category.  Other significant time and expense billed in this category includes (i) the strategic preparation of a motion to convert the cases to chapter 7, which strategy was later abandoned, but was critical to help bring about the "two pot" plan that was ultimately confirmed in these cases and (ii) analysis and strategy regarding how the chapter 11 process would affect individual student's ability to obtain cancellation of their student-loan debt.

Claims Administration and Objection

Fees: $113,511.00          Total Hours:  244.2

Time billed in this category relates primarily to work by Robins Kaplan to promote the filing of representative student claims in the bankruptcy cases.  Given the massive and widespread former student body, Robins Kaplan recognized from the outset of the case that getting claims in the "record" so that student interests would be afforded a strong voice in the chapter 11 process was an important goal.  Robins Kaplan worked throughout the case to

answer and address questions by individual student creditors.  Robins Kaplan worked with

Public Counsel to conceive and implement a social media project to inform students of the

claims process and to provide instructional video that would be disseminated through action

groups to reach as many former Corinthian students as possible.  Robins Kaplan also actively

negotiated the claims notice language and the size of the Debtors' efforts on noticing that would

be dedicated to former students.  Robins Kaplan also negotiated for more time for students to

file claims in a case that moved very quickly.  For important strategic reasons, among others to

preserve some measure of claims for students that failed to file individual claims by the bar

date, Robins Kaplan dedicated a significant amount of resources to promoting a collective claim

for student interests.  Robins Kaplan researched and moved the Court, through difficult

negotiations with other key constituents to implement a plan that allowed a student collective

claim of $2.5 billion.  As well, in a late stage of the case, Robins Kaplan needed to quickly and

efficiently address significant and controversial issues raised by the Department of Education

with respect to priority 507(a)(7) student claims in a way that protected student interests both

with respect to such claims, but also with respect to the passage of the heavily negotiated Plan.

 Creditor's Committee Matters

  Fees: $99,843.50  Total Hours: 179.4

This category includes all time billed to communications with the client, the Student

Committee, including significant time dedicated to analysis and strategizing regarding proposals

to be made to the client as to how to respond to motions and activities and how to define and

achieve the client's goals in these cases.  Significant time was also dedicated to communicating

with the larger community of students, including strategizing press releases, coordination with

other groups and participating in interviews and phone calls with the press and student groups.

This communication was pivotal in providing students with a sense that their interests were being represented in the chapter 11 process—a process that students found confusing and unsettling because it ultimately lead to the dissolution of the entity at the center of the students' suffering.

<u>Meetings</u>

      Fees: $12,217.50        Total Hours: 18.1

This category includes all matters related to preparing for and attending meetings with the student creditors' committees, individual student creditors, the UST and co-counsel.  Robins Kaplan also attended the 341(a) meeting of creditors, though it proved to be uneventful.

<u>Employee Benefits and Pension</u>

Fees: $180.00        Total Hours:  .4

Applicant billed an insignificant amount of time in connection with response to a student inquiry.

<u>Executory Contracts/Unexpired Leases</u>

      Fees: $3,420.00        Total Hours:  9.1

This category includes all matters related to contract and lease analysis and matters related to assumption, assignment or rejection of executory contracts and unexpired leases.

<u>Fee/Employment Applications</u>

      Fees: $41,959.00        Total Hours:  109.3

This category includes time related to the review of all professionals' employment applications, the preparation of Robins Kaplan's employment application (including extensive conflicts checks) and the preparation of an employment application for Public Counsel.  Robins Kaplan also prepared budgets and discussed those budgets with the client representative.  Robins Kaplan reviewed monthly fee requests filed by other professionals in these cases.  Robins

Kaplan's time in preparing this fee application is largely unrecorded and unbilled to these Estates.

Fee/Employment Objections

Fees: $4,050.00          Total Hours:  9.1

This category addresses a minimal amount of time that was spent addressing the UST's concerns on Robins Kaplan's and Public Counsel's employment applications.  Robins Kaplan, as an experienced chapter 11 practitioner, assisted Public Counsel in understanding and complying with the UST requirements.

Financing and Cash Collateral

Fees: $12,021.00          Total Hours: 21.2

This category addresses time spent reviewing and negotiations related to the Debtors' cash collateral budget, including provisions for carve-outs of replacement liens on avoidance actions and carve-outs for professional fees in these cases.  In coordination with the GUCC, Robins Kaplan left most of the work related to the review of the primary secured lenders' liens to the GUCC so as to avoid large duplication of effort in these cases by the two committees.

Litigation  - Misc.

Fees: $113,093.50          Total Hours:  219.7

This category addresses time spent on the prosecution of discovery that was utilized by the Student Committee during the cases for negotiation with key constituents, and will also be used by the CCI Student Creditor Trust, the post-Effective Date student trust, on behalf of students going forward.  Robins Kaplan worked with Public Counsel to analyze and strategize whether it was appropriate or advisable for the Department of Education and other lenders to be sued in the bankruptcy proceedings for relief from student debt as co-conspirators, or in aiding

and abetting the Debtors' misrepresentations and misconduct.  Time billed in this category includes significant discovery efforts, which discovery was provided to the CCI Student Creditor Trust and will be utilized in future efforts to obtain student debt discharges.  Such claims and actions will likely proceed outside of the bankruptcy court, but adversary proceedings may still be possible in connection with the Debtors' culpability and the liability of any co-conspirators.

Litigation - Automatic Stay/Adequate Protection

Fees: $233,998.50          Total Hours:  476.1

This category reflects one of the primary undertakings by the Student Committee—attempts to put a hold on the collection of improper student loan debt.  Time recorded includes all matters related to and including all motions to modify the automatic stay, issues related to the effect of the automatic stay on pending matters, and all other types of actions where adequate protection is the central issue.  This category represents a significant amount of the Student Committee's efforts in these cases.  The Student Committee embarked upon a very novel and creative path to attempt to deliver wide-spread relief to the Debtors' former students.

Robins Kaplan dedicated a significant amount of time attempting to create an opportunity to stretch the parameters of the "automatic stay" such that it would apply to the collection of any student loans on the theory, among other things, that due to the Debtors' misconduct, the students' loans for academic programs that were misrepresented were actually liabilities of the Estates.  Moreover, the Student Committee argued that the continued collection of wrongful student loans would make it difficult or impossible to work together with the students, the Debtors, the government and other private lenders on a consensual plan that would lead to a "successful result" in these cases.  On June 8, 2015, Robins Kaplan filed the "Motion of the Committee of Student Creditors for an Order Applying the Automatic Stay Pursuant to 11 U.S.C.

Section 362(A) and 105(A) and Granting Related Relief" (" the "**Stay Motion**" )[Docket no. 363].  Although the Motion eventually resulted in only a few minor concessions from the Department of Education as to the administration and collection of outstanding student loans, the Stay Motion served as an important negotiating tool for the Student Committee and other student groups in pressuring the Department of Education to improve the process by which former Corinthian students have access to student loan relief.  The process of revising the debt relief rules for former Corinthian students is an ongoing project of the CCI Student Creditor Trust.

Plan of Reorganization/Disclosure Statement

Fees: $164,929.50        Total Hours:  291.2

This category includes all matters related to review, formulation, negotiation, preparation and promulgation of plans of liquidation, disclosure statements, and related corporate documentation and research relating thereto.  The Debtors initially filed a traditional pot-plan, which would have resulted in no relief and almost assured long-term litigation among all unsecured plan participants without any notion of whether any funds, at all, would be available to any unsecured creditors.  The Student Committee recognized the fact, as well, that even if tens of millions of dollars would be available to unsecured creditors in these cases, *pari pasu* distribution of such funds to students that have incurred tens of billions of dollars of student loans based on the Debtors' misrepresentations would be virtually meaningless to any individual student creditor.  Accordingly, Robins Kaplan negotiated with the key constituencies, created and negotiated for the adoption of a two-pot Plan that provided separation of the interests of student creditors from the other unsecured creditors in these cases; thus preventing extended claims litigation among unsecured creditors fighting with student creditors for the same assets. As well, Robins Kaplan together with the Student Committee, created a mechanism through

which funds in the student-pot could be used to further the interests of all former students, rather than fund *de minimis pro rata* distributions.  The negotiations to have the Plan adopted by the Debtors over the strong objections of the Department of Education, as well as the litigation and lengthy negotiations related to confirmation of the Plan were hard fought and required significant research, creativity, strategy and negotiating skill.  Robins Kaplan also spent considerable time negotiating for modification of injunctive portions of the Plan such that litigation designed to promote students' interests in obtaining a discharge of student loan debt would be able to proceed post-confirmation and post-effective date.

In addition to the administrative responsibilities to be funded with approximately half of the funds dedicated to the Student Trust, approximately half of the funds in the Trust will be utilized to fund Student Benefit Programs—programs that advance the interests of the collective group of former Corinthian students that were negatively affected by the Debtors' misconduct. The Student Committee believes that the Student Benefit Programs will be a primary contributor to efforts to obtain student loan discharge relief for former Corinthian students and to educate students about their rights to discharge relief.

Tax

Fees: $225.00        Total Hours: .5

Applicant spent an insignificant amount of time in this category reviewing a motion to pay pre-petition taxes.

Non-Working Travel

Fees: $0.00        Total Hours: 0.0

This category includes all travel time that is not chargeable.  Given the significant distance from California, where the majority of the Debtors' operations were located and the majority of

students likely reside, and the bankruptcy court in Delaware, Robins Kaplan incurred significant (estimated to exceed $75,000) of fees related to non-working travel that it typically bills to clients.  This time was either not recorded for this matter or was deleted and "written off" in favor of the Student Committee.

20.     Robins Kaplan submits that the professional services it rendered on behalf of the Student Committee during this time were reasonable and necessary under the circumstances of the cases, and the services performed by Robins Kaplan were in the best interests of the Student Committee and other parties in interest.  The compensation sought for the services as requested is commensurate with the complexity and importance of the issues involved.  The professional services were performed in an efficient manner and Robins Kaplan took all reasonable measures to avoid duplicative work.

21.     In all respects, Robins Kaplan's fees and expenses meet the standard for allowance under 11 U.S.C. § 330, as well as the standards that govern the review and allowance of bankruptcy professionals' fees in this circuit.

22.     In compliance with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "**UST Guidelines**"), Robins Kaplan represents as follows:

a.   Robins Kaplan has not agreed to any variations from, or alternatives to, the standard or customary billing arrangements for this engagement.

b.   The fees sought by Robins Kaplan in this Application are within the cumulative fees budgeted pursuant to the budgets shared with the Student Committee early in the cases and prior to filing the Application.

c.   No professionals from Robins Kaplan covered by the Application have varied their hourly rates based upon the geographical location of these cases.

d.   To the best of the undersigned's knowledge, the fees covered by this Application include less than 3.0 hours reviewing invoices to ensure that

the time entries attached to this application are properly coded to comply with the UST Guidelines.

e.    To the best of the undersigned's knowledge, the fees covered by this Application do not include any time spent reviewing time records to redact any privileged or other confidential information.

23.    The facts set forth in this Application are true and correct to the best of the undersigned's knowledge, information and belief.

24.    The undersigned hereby attests that he has reviewed the requirements of Local Rule 2016-1 and this Application conforms to such requirements.

WHEREFORE, Robins Kaplan hereby requests that the Court approve the Application, pursuant to 11 U.S.C. §§ 330 and 331, granting it final compensation for professional services rendered in the amount of $898,548.00, and the sum of $20,349.03 for reimbursement of actual and necessary costs expended as counsel to the Student Committee for the period from May 16, 2015 through September 21, 2015.

Dated: November 5, 2015        **ROBINS KAPLAN LLP**
      Los Angeles, CA

By:   */s/ Scott F. Gautier*
Scott F. Gautier (CA State Bar No. 211742) (pro hac vice)
Lorie A. Ball (CA Bar No. 210703)
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
sgautier@robinskaplan.com
lball@robinskaplan.com
COUNSEL FOR THE OFFICIAL COMMITTEE OF STUDENT CREDITORS