IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*,[1] | Case Nos. 15-10952 (KJC), *et seq.* |
| Debtors. | **Hearing Date: December 10, 2015 at 1:00 p.m.**<br>**Objection Deadline: December 3, 2015 at 4:00 p.m.** |

## QUALITY INVESTMENT PROPERTIES SACRAMENTO, LLC'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §503(b)(1)(A)

Quality Investment Properties Sacramento, LLC ("QTS"), by and through its undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 503(b)(1)(A), respectfully moves the Court to enter an Order allowing QTS a priority administrative expense claim against the Debtors' estates in the amount of $31,306.10 and directing payment thereof as requested herein. In support of this Motion, QTS respectfully states as follows:

### INTRODUCTION

1.    After the Debtors' bankruptcy cases were filed, QTS continued to provide valuable services to the Debtors by providing power, connectivity and safely and securely storing the Debtors' servers and related equipment at its Sacramento, California data center. QTS's data centers provide customers with fully-redundant, high-density power and cooling capacities and integrated UPS systems linked by site-wide security and fire protection systems in order to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201). Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709); Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665) and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

provide secure, dependable infrastructure.  QTS provided those storage and data services pursuant to a Master Space Agreement.  Maintaining a secure environment for the Debtors' IT equipment and applications is obviously a top priority and QTS benefited the estate and its creditors by providing those services, which resulted in costs that were both actual and necessary for the preservation of the Debtors' estates.  For these reasons, and others set forth below, QTS respectfully asks the Court to enter an order allowing QTS an administrative expense claim in the amount of $31,306.10, and directing payment in accordance with the terms of the confirmed Plan.

## JURISDICTION

2.      The statutory basis for the relief sought herein is 11 U.S.C. § 503(b).  The Court has jurisdiction over QTS's Motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b), this is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court constitutes the proper venue both for this proceeding and for QTS's Motion pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On May 4, 2015 (the "Petition Date"), Corinthian Colleges, Inc. and its affiliated debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors thereafter continued in possession of their respective properties pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      Both prior to and following the Petition Date, QTS provided power, connectivity and a secure location for the Debtors' IT equipment and applications and safely and securely stored the Debtors' servers and related equipment at its data center.  QTS provided those services pursuant to a Master Space Agreement dated February 4, 2014 (the "Agreement," which includes an addendum to the Agreement that is not attached for proprietary reasons), attached hereto as

**Exhibit A**. QTS continued to provide such services during the pendency of the Debtors' bankruptcy cases.

5.      This Agreement was rejected by the Debtors pursuant to the order dated June 30, 2015 (D.I. 505).  While the order provided for rejection *nunc pro tunc* to June 2, 2015, it did so based on the Debtors' assertion that such relief was appropriate because contract counterparties, including QTS "will not be unduly prejudiced if the Executory Contracts are rejected *nunc pro tunc* because the Debtors have advised them of their intent to reject the Executory Contracts." (D.I. 378)  QTS, however, was not made aware of the Debtors' intent to reject the contract until after the motion to reject was filed on June 9, 2015.  Accordingly, QTS requests allowance of an administrative expense through and including June 8, 2015.

6.      QTS continued to provide such services during the pendency of the Debtors' bankruptcy cases both before and after the Debtors sought to reject the Agreement.  Specifically, in the period following the Petition Date to the date the motion to reject the Agreement was filed, QTS provided $21,332.10 worth of services to the Debtors pursuant to the Agreement.  *See* Invoice # SAC-INV06754 dated April 28, 2015 attached hereto as **Exhibit B** (QTS provided $16,331.77 in services from May 5, 2015 through and including May 31, 2015); and Invoice # SAC-INV06865 dated May 27, 2015 attached hereto as **Exhibit C** (QTS provided $5,000.33 in services from June 1 through and including June 8).

7.      Additionally, until August 19, 2015, QTS safely and securely stored a considerable amount of the Debtor's servers and related IT equipment.  That equipment took up valuable space and resources that QTS could have re-sold to other customers.  QTS attempted to contact the Debtors and its Chief Restructuring Officer multiple times to facilitate the removal of the Debtors' equipment post-rejection.  However, it took considerable time to facilitate its

removal and the Debtors' equipment was ultimately not removed from QTS's data center until August 19, 2015–more than two months after the Debtors sought to reject the Agreement. During that time period, QTS nevertheless stored the Debtors' servers and IT equipment at its data center facility in Sacramento, California, providing an additional $8,804.00 worth of services that were both actual and necessary for the preservation of the Debtors' estates. *See e.g.,* **Exhibit B** (*per diem* value of storage space is $124.00, and QTS continued to store the Debtors' equipment from June 9, 2015 through August 19, 2015 (71 days), providing an additional $8,804.00 of value to the Debtors' estates).

8.      Lastly, as the Debtors' Chief Restructuring Officer is aware, QTS's representatives assisted the Chief Restructuring Officer's representative with the removal of the equipment on August 19, 2015. QTS submits an additional modest administrative expense of $1,170.00 is appropriate for the labor and assistance QTS supplied to the Debtors' representative in recovering the servers and other IT equipment from QTS's data center. *See* Invoice # SAC-INV07509 dated August 24, 2015 attached hereto as **Exhibit D** ($1,170.00 for services rendered to facilitate the Debtors' equipment removal on August 19). QTS's assistance provided further value to the estate, and QTS believes this modest expense is reasonable under the circumstances.

## ARGUMENT

9.      QTS is entitled to an administrative expense claim in the amount of $31,306.10 pursuant to section 503 of the Bankruptcy Code. Section 503 states, in relevant part:

> (b)      After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1)(A)   the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. § 503(b)(1)(A).

10.     Administrative expense priority "is available to contract parties when the debtor enjoys the benefits of the contract pending assumption or rejection."   *In re ID Liquidation One, LLC*, 503 B.R. 392, 399 (Bankr. D. Del. 2013) (citations omitted).  *See also In re Goody's Family Clothing Inc.*, 610 F.3d 812, 817 (3rd Cir. 2010) ("Post-petition obligations are ordinarily given payment priority as administrative expenses" so long as such obligations are deemed to be "actual, necessary expenses of preserving the estate").  The test to determine whether a party is entitled to allowance of an administrative expense claim pursuant to Section 503(b)(3) is "whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors."  *See, e.g.*, *In re AM Intern., Inc.*, 203 B.R. 898, 904 (D. Del. 1996) (citing *Lebron v. Mechem Financial, Inc.,* 27 F.3d 937, 944 (3rd Cir. 1994) (citations omitted)).

11.     In instances where a debtor-in-possession "elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume a contract, the debtor-in-possession is obligated to pay for the reasonable value of those services." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984) (noting that the reasonable value of those services often is the amount specified in the applicable contract).  *See also ID Liquidation One,* 503 B.R. at 399 ("Pending assumption or rejection, a debtor must pay the 'reasonable value of the services received'"  and, "there is a presumption that the contract terms and rate represent the reasonable value of the services or goods provided under the contract").

12.    Additionally, QTS is entitled to an administrative expense following the rejection of the Agreement where the Debtors continued to utilize QTS's secure storage space and services, and assisted the Debtors' representative with the removal of the substantial servers and related IT equipment.  *See, e.g., In re DVI, Inc.*, 308 B.R. 703, 708 (Bankr. D. Del. 2004) (where holdover lessee continued to use premises post-rejection, "a benefit has been conferred upon the estate which constitutes an administrative expense under section 503(b)").  It cannot be disputed that the safety and security of the Debtors' servers and other IT equipment is an actual, necessary cost and expense and that QTS's services benefited the estate and its creditors by keeping the servers and other IT equipment in a secure and controlled environment until the Debtors chose to retrieve it. QTS is entitled to an administrative expense based on the fair market value of the post-rejection storage as well as the costs of assisting the Debtors' representative with the equipment's removal.

13.    Based on the foregoing, QTS is entitled to an allowed priority administrative expense claim against the Debtors' estate in the amount of $31,306.10.

WHEREFORE, QTS respectfully requests that this Court enter an order, substantially in the form attached hereto, allowing QTS's Administrative Expense Claim as an administrative

expense in the amount of $31,306.10 under § 503(b) of the Bankruptcy Code, directing payment

to QTS pursuant to the terms of the confirmed Plan, and granting such further relief as this Court

deems just and proper.

Dated: November 20, 2015                     Respectfully submitted,
      Wilmington, Delaware

                                                  HILLER & ARBAN, LLC


                                                   **/s/ Adam Hiller**
                                                  Adam Hiller (DE No. 4105)
                                                  Brian Arban (DE No. 4511)
    1500 North French Street, 2nd Floor
    Wilmington, Delaware 19801
    (302) 442-7676 telephone
    *ahiller@hillerarban.com*

    -and-

    Edwin H. Caldie, Esquire
    Amanda K. Schlitz, Esquire
    Stinson Leonard Street LLP
    150 South Fifth Street, Suite 2300
    Minneapolis, MN  55402
    (612) 335-1404
    *amanda.schlitz@stinson.com*


    *Attorneys for Quality Investment*
    *Properties Sacramento, LLC*