IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | **Re: Docket No. 1098** |

-------------------------------------------------------------

**DISTRIBUTION TRUSTEE'S OBJECTION TO QUALITY
INVESTMENT PROPERTIES SACRAMENTO, LLC'S MOTION
FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

Craig R. Jalbert, the distribution trustee (the "**Distribution Trustee**") for the distribution trust (the "**Distribution Trust**") established pursuant to the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 909] (the "**Plan**")[2], hereby submits this objection (this "**Objection**") to *Quality Investment Properties Sacramento, LLC's Motion for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [Docket No. 1098] (the "**Administrative Expense Motion**") filed by Quality Investment Properties Sacramento, LLC ("**QTS**"). In support of this Objection, the Distribution Trustee respectfully represents as follows:

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

[2] Capitalized terms not otherwise defined herein have the meaning given to them in the Plan or Administrative Expense Motion (as defined below).

RLF1 13477777v.1

## BACKGROUND

A.  **General Background**

1.  On May 4, 2015 (the "**Petition Date**"), Corinthian Colleges, Inc. ("**Corinthian**") and its affiliated debtors (collectively, the "**Debtors**") each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

2.  Corinthian, through acquisitions was one of the largest for-profit post-secondary education companies in the United States and Canada, offering career-oriented diploma and degree programs in diverse fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology.

3.  On August 28, 2015, the Court entered the *Order Confirming Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 913] (the "**Confirmation Order**") confirming the Plan. The Effective Date of the Plan occurred on September 21, 2015 [Docket No. 1014].

B.  **The Rejection of the QTS Agreement**

4.  The Debtors closed each of their operating campus locations effective April 27, 2015 and began the process of liquidating their assets and winding down their operations. Accordingly, shortly after the Petition Date, because the Debtors operations were limited to the wind-down process, the Debtors rejected those executory contracts in which they no longer required the goods and services provided by such executory contract.

5.  On June 9, 2015, the Debtors filed the *Debtors' First Omnibus Motion for Entry of an Order Authorizing the Debtors to Reject Certain Executory Contracts, Effective* Nunc Pro Tunc *to June 2, 2015* [Docket No. 378] (the "**Rejection Motion**"), pursuant to which the Debtors sought authority to reject numerous contracts which constituted burdensome obligations

providing no reciprocal benefit to the Debtors' estates. One of the contracts the Debtors sought to reject by the Rejection Motion was agreement with QTS (the "**Agreement**").

6.    On June 30, 2015, the Court entered the *Order Authorizing the Debtors' to Reject Certain Executory Contracts, Effective* Nunc Pro Tunc *to June 2, 2015* [Docket No. 505] (the "**Rejection Order**"). Pursuant to the Rejection Order, the Court granted the relief requested in the Rejection Motion, thereby rejecting the Agreement effective as of June 2, 2015.

7.    On November 20, 2015, QTS filed the Administrative Expense Motion, asserting that it is entitled to a priority administrative expense claim for amounts allegedly owed postpetition and prior to the rejection of the Agreement and certain amounts for storage after the rejection of the Agreement.

## ARGUMENT

### I.    QTS Has Failed to Demonstrate Pursuant to 11 U.S.C. § 503(b) That It Has Conferred an Actual Benefit to the Estate

8.    QTS has failed to demonstrate that it conferred an actual benefit to the Debtors' estates, as required pursuant to 11 U.S.C. § 503(b) in order to have a valid administrative claim. Section 503(b)(3)(D) of the Bankruptcy Code provides, in relevant part:

> After notice and a hearing, there shall be allowed administrative expenses . . . , including . . . the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a creditor . . . , in making a substantial contribution in a case under chapter 9 or 11 of this title . . . .

11 U.S.C. § 503(b)(3)(D). It takes more than just a post-petition transaction with a debtor in possession to create an entitlement to an administrative expense priority. An administrative claimant must also prove that what it gave to the estate in return for the claimed administrative expense conferred an actual and necessary benefit upon the estate. See Calpine Corp. v. O'Brien

3

Envt'l Energy, Inc. (In re O'Brien Envt'l Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (citing Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950,954 (1st Cir. 1976)) ("the debt must arise from a transaction with a debtor in possession *and the consideration supporting the claimant's right to payment must be beneficial to the debtor in possession in the operation of the business*.") (emphasis supplied).

9.  Further, only expenses providing an actual and concrete benefit to the estate deserve administrative status ahead of other creditors.  One of the underlying purposes of granting such benefits administrative priority is because the estate, as the recipient of an actual benefit, would otherwise be unjustly enriched.  See In re Cont'l Airlines, Inc., 146 B.R. 520 (Bankr. D. Del. 1992).  But "only those expenses that genuinely inure to the benefit of the estate deserve payment ahead of other claimants." Id. at 526 (emphasis supplied).  "If the estate has not benefited, the administrative claim results in unnecessary depletion of assets to the detriment of all creditors." Id.

10.  Accordingly, if a creditor confers only a potential benefit upon the estate rather than an actual benefit, the creditor should not be awarded an administrative claim.  See In re ICS Cybernetics, Inc. 111 B.R. 32, 36 (Bankr. N.D.N.Y. 1989).  The Cybernetics court, in rejecting a broad interpretation of the term "actual," stated that:

> This more narrow interpretation requires actual use of the creditor's property by the debtor, thereby conferring a concrete benefit on the estate before a claim is allowable as an administrative expense. Accordingly, the mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense.  The court's administrative expense inquiry centers upon whether the estate has received an actual benefit, as opposed to the loss a creditor might experience by virtue of the debtor's possession of its property.

Id. (emphasis supplied).  Applying this principle, the court denied administrative expense status

4

to a creditor for equipment that a debtor held in storage but never actually used. Id. at 38. The court held that although keeping equipment for purpose of assuring availability to end-users at a later date was a prudent business practice, it conferred only a potential benefit upon the estate, not an actual benefit, because the estate never ended up using the equipment Id.; see also In re Enron Corp., 279 B.R. 695, 706 (Bankr. S.D.N.Y. 2002) (and cases cited therein) ("[t]he mere possession of the claimant's property by the debtor does not warrant administrative claim status [and] the 'option' to use the property that is inherent in possession is considered not sufficient to establish benefit to the estate if the debtor does not actually use the property.") (internal citations omitted).

11. The Delaware Bankruptcy Court in Continental adopted a similar narrow interpretation of "actual benefit." In re Cont'l Airlines, Inc., 146 B.R. at 527-28 (refusing to award administrative expense status to damages arising from a debtor's postpetition breach of an airplane lease). The Continental Court noted the importance of proving an actual benefit to the estate arising from the breach -- the fact that a debtor's breach presumably makes available to the estate the money that the debtor would have used to perform is not an "actual benefit." All breaches have that effect and therefore the analysis "omits the 'actual, necessary' requirement of section 503(b)(1)(A)." Id. at 527-28. Instead, what must be shown is whether the estate is unjustly enriched -- in other words, whether the consideration that the creditor provided the estate in return for the money it seeks to recover as an administrative expense conferred an actual and concrete benefit upon the estate.

12. First, there is a significant issue as to whether the equipment of QTS is owned by the Debtors (as opposed to Zenith (as defined herein). Nevertheless, QTS has failed to prove that the post-petition storage of the equipment provided an actual and concrete benefit upon the

Debtors' estate. Before and after the rejection of the QTS Agreement, QTS merely stored valueless property. As set forth by the Court in Cybernetics, the mere possession and storage of the property is not enough to entitle QTS to administrative expense claim. QTS must show that the Debtors used the property post-petition in the ordinary course of the Debtors' business. See Id. at 527 (holding that the requirement for an administrative expense claim is that the property was used by the debtor post-petition in the ordinary course of business). QTS has not and cannot prove that the Debtors used the equipment stored by QTS post-petition. As set forth above, as of April 27, 2015, the Debtors ceased all operations and began to wind-down their estates. Accordingly, the Debtors had no use for the equipment stored by QTS following April 27, 2015, and while the equipment was stored with QTS, the Debtors did not use the equipment postpetition.

13.    Moreover, the Debtors believe that the equipment is property of Zenith Education Group, Inc. ("**Zenith**") pursuant to the prepetition sale of certain of the Debtors' schools. Nevertheless, at the request of QTS, the Debtors removed the equipment from the QTS storage location and moved it to a storage location in West Sacramento, California that was jointly shared by Zenith. The Distribution Trustee believes that the equipment was subsequently moved from the facility by Zenith. The Distribution Trustee submits that the equipment was of little, if any, value and that he would be unable to realize any return through the sale of the equipment (assuming arguendo that it was owned by the Debtors). Accordingly, QTS' storage of the equipment provided no actual benefit to the Debtors' estates and QTS' request for a priority administrative expense claim should be denied,

**CONCLUSION**

19. For the foregoing reasons, QTS is not entitled to a priority administrative expense claim pursuant to section 503(b) of the Bankruptcy Code and the Administrative Expense Motion should be denied.

WHEREFORE, based upon the foregoing, the Distribution Trustee respectfully requests that the Court sustain the Objection and deny the Administrative Expense Motion in its entirety.

Dated: December 3, 2015  
       Wilmington, Delaware

*/s/ Amanda R. Steele*  
Mark D. Collins (No. 2981)  
Michael J. Merchant (No. 3854)  
Amanda R. Steele (No. 5530)  
RICHARDS, LAYTON & FINGER, P.A.  
920 N. King Street  
Wilmington, Delaware 19801  
Telephone:  302-651-7700  
Facsimile:  302-651-7701  
Email: collins@rlf.com  
      merchant@rlf.com  
      steele@rlf.com

*Counsel for the Distribution Trustee*