1

2  UNITED STATES BANKRUPTCY COURT

3  DISTRICT OF DELAWARE

4  Case No. 15-10952(KJC)

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  CORINTHIAN COLLEGES, INC., et al.,

9

10            Debtors.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            824 North Market Street

16            Wilmington, Delaware

17

18            December 10, 2015

19            1:03 PM

20

21  B E F O R E:

22  HON. KEVIN J. CAREY

23  U.S. BANKRUPTCY JUDGE

24

25  ECR OPERATOR:  AL LUGANO

1

2  Motion of the Commonwealth of Massachusetts to Dismiss Debtors'

3  Objection and Response to Debtors' Objection (Docket No. 968)

4  [Docket No. 1041 - Filed October 9, 2015]

5

6  Quality Investment Properties Sacramento, LLC's Motion for

7  Allowance and Payment of Administrative Expense Claim Pursuant

8  to 11 U.S.C. Section 503(b)(1)(A) [Docket No. 1098 - Filed

9  November 20, 2015]

10

11  Final Fee Applications

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Aliza Chodoff

1

2 A P P E A R A N C E S :

3 RICHARDS, LAYTON & FINGER, P.A.

4      Attorneys for Distribution Trustee

5 BY:   MICHAEL J. MERCHANT, ESQ.

6      AMANDA STEELE, ESQ.

7

8

9 ROBINS KAPLAN LLP

10      Attorneys for Student Committee

11 BY:   LORIE A. BALL, ESQ.

12

13

14 POLSINELLI PC

15      Attorneys for Student Committee

16 BY:   SHANTI M. KATONA, ESQ.

17

18

19 UNITED STATES DEPARTMENT OF JUSTICE

20      Office of the United States Trustee

21 BY:   TIMOTHY J. FOX, JR., ESQ.

22

23

24

25

1

2 BROWN RUDNICK LLP

3       Attorneys for GUC Committee

4 BY:   BENNETT S. SILVERBERG, ESQ.

5

6

7 THE ROSNER LAW GROUP LLC

8       Attorneys for GUC Committee

9 BY:   JULIA KLEIN, ESQ.

10

11

12 HILLER & ARBAN, LLC

13       Attorneys for Quality Investment Properties Sacramento

14          LLC

15 BY:   BRIAN L. ARBAN, ESQ.

16

17

18 WILLKIE FARR & GALLAGHER LLP

19       Attorneys for General Counsel

20 BY:   MARC ABRAMS, ESQ. (TELEPHONICALLY)

21

22

23 OFFICE OF THE ATTORNEY GENERAL OF CALIFORNIA

24       Attorneys for California Department of Justice

25 BY:   BERNARD ESKANDARI, DAG (TELEPHONICALLY)

1

2   OFFICE OF THE ATTORNEY GENERAL

3        Attorneys for Commonwealth of Massachusetts

4   BY:   PETER LEIGHT, AAG (TELEPHONICALLY)

5

6

7   PUBLIC COUNSEL

8        Attorneys for Committee of Student Creditors

9   BY:   ANNE K. RICHARDSON, ESQ. (TELEPHONICALLY)

10

11  ALSO PRESENT:

12        ANDREA CLARK SMITH, PricewaterhouseCoopers LLP

13          (TELEPHONICALLY)

14        PAUL DEUTCH, ESQ., Rust Consulting/Omni Management, LLC

15          (TELEPHONICALLY)

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE CLERK:  All rise.

3           Please be seated.

4           THE COURT:  Good afternoon, everyone.

5           IN UNISON:  Good afternoon.

6           MR. MERCHANT:  Good afternoon, Your Honor.  Mike

7    Merchant of Richards, Layton & Finger on behalf of the

8    distribution trustee.

9           There are a couple of matters on the agenda today.  I

10   believe there's only one matter actually scheduled still as

11   going forward other than the final fee applications.  Running

12   through the agenda quickly, an order has been entered on the

13   first matter.  The second matter, an admin matter by Thomson

14   Reuters, was continued to a later date, which brings us to the

15   third matter on the agenda, which is the motion of the

16   Commonwealth of Massachusetts.

17          I believe that they may be on the telephone today.

18          MR. LEIGHT:  Pete Leight for Massachusetts.

19          THE COURT:  Go ahead.

20          MR. LEIGHT:  Thank you, Your Honor.  I guess an

21   objection to our claim a couple of days before the effective

22   date and move to dismiss it on a number of grounds.  Nobody's

23   actually opposed that motion, although the trustee filed a

24   limited response to it.  I can go over, if you'd like, the

25   grounds in our motion.

1        First ground is objection did not comply with local

2   rules, because it did not set a hearing for the objection.  And

3   I guess our view on that is that the rule is actually there

4   because it is expected to be followed.  And with respect to an

5   objection to a claim, the expectation is that the objection

6   will be made by a party-in-interest that will pursue the

7   objection and that it will effect some issue or distribution in

8   the case.  None of those is the case here.

9        The second ground is that the objection does not

10  comply with the statute.  The statue lists a certain number of

11  grounds for objection.  And (break in audio) grounds that the

12  Court can (break in audio) value of the claim.  The section

13  asks the Court to -- in a number of places, asks the Court to

14  get rid of (break in audio), which is, again, not appropriate

15  under the statute.  The distribution trustee, in its limited

16  response, states that section is simply to confirm that the

17  claims are disputed.  That is not what the (break in audio)

18  does or what the order attached to the objection does.  It asks

19  the Court to disallow the claims, and that is not permitted.

20  For that reason, we believe (break in audio).

21       The third issue (break in audio) of debtors to raise

22  the objection in the first place.  Debtors, as you know,

23  receive no distribution from the trust, from the estate at all.

24  As of the time they filed the objection, they were two days

25  from the effective date, and they have since dissolved.  It's

1  not a party-in-interest under the statute, and therefore have

2  no standing to raise an objection.  For that reason, the

3  objection should be dismissed.

4          And finally, this objection is moot because the

5  attorneys -- the Commonwealth of Massachusetts and the other

6  states (break in audio) and therefore there is no controversy.

7  This does not affect any rights in the case.

8          I should also note that the distribution trustee

9  plainly indicated that it has no stake in the objection.  The

10  only possible (break in audio) stake that anybody could have in

11  the objection is the student trustee.  And the student trust

12  has not objected.

13          So those are the reasons, Your Honor, that we believe

14  the objection should be dismissed.  We also submitted a

15  response to the objection (break in audio) as well.  The

16  objection was pretty formulaic.  It did not really address any

17  of the issues in our case.  It referred to certain problems

18  that alleged -- that were connected to the complaint.  But

19  there was never a motion filed to dismiss the complaint or for

20  summary judgment or anything else.  And as we (break in audio)

21  in our papers, the complaint -- perhaps they didn't read the

22  complaint, either, because the complaint actually alleges all

23  the things that he said that -- all the things the objection

24  says are not there.

25          The other point that we'd like to make is that (break

1   in audio) objection was filed without any evidence, and the law

2   is pretty clear that some kind of evidence has to be presented

3   in an objection (break in audio) and provide some basis for the

4   objection.

5           So I guess we would like Your Honor to have an order

6   entered dismissing the objection.  If you have any questions,

7   I'd be glad to answer them.

8           THE COURT:  I do not at this moment, thank you.

9           I'll hear from the distribution trustee if he wishes

10  to be heard further.

11          MR. MERCHANT:  Very briefly, Your Honor.  We did

12  represent the debtors in the case, and I know the debtor and

13  the debtors' principals wholeheartedly disputed the claim that

14  was filed.  But I think -- I don't know that I agree with a lot

15  of what Mr. Leight said.  But the reality is the debtors filed

16  this, the debtors no longer exist, so there's nobody left to

17  prosecute that objection.

18          Now, whatever claim Massachusetts may have would be a

19  Class 5 claim under the plan.  And that would fall within the

20  purview of the student trust.  So the distribution trustee is

21  not looking to prosecute that objection.  It really has no

22  stake in this.  It's a student trust issue.  I would note that

23  counsel for the student trust is here today, and their deadline

24  for objection to claims is actually -- it could be extended.

25  It currently is sometime in March, so I imagine they may want

1   to reserve that right to file whatever objection they may have.

2   But I'll let them speak as to that issue.

3          THE COURT:  So let me ask you a question.  How many

4   other situations like this potentially are there?  And the

5   occasion -- the question is occasioned because, literally

6   minutes before I took the bench, the Illinois Attorney

7   General -- we received from the Illinois Attorney General an

8   opposition to the debtors' objection to its claim.  I guess I'm

9   trying to figure out how many of these -- it seems to me to

10  be useless exercises am I going to have to go through.

11         MR. MERCHANT:  I --

12         THE COURT:  If you know.

13         MR. MERCHANT:  -- I understand, Your Honor.  I'm going

14  to look to Ms. Steele, because I think she was involved in

15  drafting a few of them.  My guess is around five, certainly no

16  more than ten -- five.  She's saying five is the right number.

17         THE COURT:  Okay.  I'll hear from the student trustee.

18         MS. BALL:  Good afternoon, Your Honor.  Laurie Ball of

19  Robins Kaplan, here on behalf of the CCI Student Creditors

20  Trust.

21         And Mr. Merchant mentioned, this objection was the

22  debtors' objection.  While we were not involved in the

23  objection, we do have until 180 days, I believe, from the

24  confirmation -- the effective date to file objections.  I'm not

25  sure that we anticipate filing an objection, but we would

1   reserve our rights to file an objection at a later time.

2          THE COURT:  Okay.  So one of the things the

3   distribution trustee says in its submission is that it really

4   isn't conceivable that there will be any distribution to this

5   movant in this case.  Do you agree with that position?

6          MS. BALL:  Your Honor, we are in the process of trying

7   to determine what in fact we are going to do with the student

8   trust.  So at this point in time, I'm not -- it's not clear

9   whether there will be distributions or not on behalf of the

10  student trust.  So that's part of the reason why we'd need to

11  reserve our rights.

12         THE COURT:  All right.  Frankly, I've

13  actually -- well, I'll tell you this.  I did decide, I think in

14  the case in which I was sitting in Philadelphia -- I think it

15  was a no asset Chapter 7 case in which there was a claim

16  objection.  Under the Pacor standard, even in a core matter, if

17  the outcome of the dispute wouldn't have any bearing on the

18  administration of the estate, I wonder whether the Court has

19  jurisdiction, even -- apart from any Stern issues -- to make

20  that determination.  I don't have a record here that tells me

21  that.  So I'm not going to make, at least at this point, that

22  ruling in this case.

23         So does anyone else wish to be heard?

24         MR. MERCHANT:  Your Honor, the only thing I would add

25  is, there -- under the plan, there's the distribution trust,

1   which is -- will be pursuing litigation.

2           THE COURT:  Right.

3           MR. MERCHANT:  And then there is the student trust.

4   And there was a pot of cash transferred to the student trust.

5   I think the issue of whether there's a distribution or not

6   comes down to whatever decision the student trustee decides.

7   It may be -- the relief may be in the form of student benefit

8   programs as opposed to a distribution.  But my understanding is

9   that there are some assets in that trust.

10          THE COURT:  Okay.  So let me ask another question.

11  And again, either the distribution trustee or the student

12  trustee can answer.  And that is, if others do happen to come

13  along -- and I guess at some point there'll be a hearing

14  scheduled on the Illinois submission -- is there any reason why

15  we shouldn't just resolve them by saying the -- here, it's the

16  motion would be granted, but without prejudice, to any party-

17  in-interest who may have the right to do so to assert an

18  objection at some future date.  Shouldn't they -- and again,

19  not to foreclose the rights of any other party coming along to

20  argue to the contrary.  But isn't that generally how you think

21  the parties think this might be best resolved in the future, at

22  least today and in the future?

23          MR. MERCHANT:  Well, Your Honor, on behalf of the

24  distribution trust -- I mean, they're all government education

25  claims that fall under Class 5 --

 1          THE COURT:  Yeah.

 2          MR. MERCHANT:  -- and they're not coming after

 3   distribution trust assets, we don't have a stake in that game,

 4   and we're not going to prosecute those objections.

 5          MS. BALL:  Your Honor, I think we'd say something

 6   similar, which is, to the extent that they do fall within the

 7   Class 5 and are covered within the CCI student trust, that we

 8   would like to reserve our rights and think that's probably the

 9   proper way to address these.

10          THE COURT:  Okay.  So that's the kind of order I'm

11   prepared to enter in this matter and would ask the parties to

12   confer and submit a form of order under certification that so

13   provides.  And should other things of similar nature be

14   scheduled, I'd ask that the other state AGs be advised that's

15   how I ruled on this one and suggest that -- again, assuming the

16   circumstances are the same as what I'm seeing today, I'd be

17   inclined to consider the same result.  And maybe it would save

18   people some time and money.

19          If --

20          MR. LEIGHT:  Your Honor, Peter Leight.  I was

21   wondering if it would be helpful if we conferred with the other

22   state AGs and tried to put together a single order with the

23   parties that resolves all of these.

24          THE COURT:  Well, if it comes in with the consent of

25   all concerned, I would consider that.

1          MR. LEIGHT:  Okay.  Well, we'll talk to the other

2    parties about that then.

3          THE COURT:  All right.  Thank you very much.

4          MR. LEIGHT:  Thank you.

5          THE COURT:  Okay.

6          MR. MERCHANT:  Thank you, Your Honor.  Agenda item

7    number 4 was the administrative claim motion of Quality

8    Investment Properties Sacramento, LLC.

9          THE COURT:  Yes.

10          MR. MERCHANT:  Their counsel is in the courtroom.  I'm

11    very thankful to their counsel for working with us.  We were

12    able to negotiate a resolution of that motion, and I think

13    we'll be submitted an order under certification of counsel, if

14    that's acceptable to the Court.

15          THE COURT:  All right.  Would Quality Investment like

16    to be heard?

17          MR. ARBAN:  Good afternoon, Your Honor.  Brian Arban

18    on behalf of Quality Investment.

19          And counsel's assertions on the record are correct.

20    We will be submitting a form of order under COC.

21          THE COURT:  All right.  It seems to me it's the type

22    of matter that ought to be resolved, and I appreciate that

23    development.  Thank you.

24          MR. ARBAN:  Thank you.

25          MR. MERCHANT:  Your Honor, that leaves the final fee

1  applications of the professionals.  I know there have been a

2  number of concessions in response to concerns raised by the

3  Office of the United States Trustee.  I believe they've all

4  been resolved, and we thank Mr. Fox for working through those

5  with us.  And I understand that the Court has a number of

6  questions as well.

7          THE COURT:  I did, so let's -- well, let's just go

8  through everybody's favorite exercise.  I didn't have any

9  questions with respect to Gavin/Solmonese, didn't have any

10 questions with respect to Rosner.

11         Let me turn to Brown Rudnick.  Is anyone here or on

12 the phone?

13         MR. SILVERBERG:  Yes, Your Honor.  I --

14         THE COURT:  Oh.

15         MR. SILVERBERG:  -- I wasn't aware -- Ben

16 Silverberg -- Bennett Silverberg from Brown Rudnick --

17         THE COURT:  Hello.

18         MR. SILVERBERG:  -- former, I guess, counsel to the

19 committee.  I didn't know whether Your Honor was going to go

20 through your issues all at once.

21         THE COURT:  All right.  Do you have your application

22 handy?  I didn't have any specific time or expense detail

23 question.  What I had was the -- of the total time, fifty-four

24 percent of it was senior partner time.  We're talking some of

25 it being over 1,000-dollars-an-hour time, and I was wondering

 1   why that was the case.

 2          MR. SILVERBERG:  Yes, Your Honor.  I believe you're

 3   making reference to the time perhaps billed by myself and my

 4   partner, Jeffrey Schwartz, who actually apologized for not

 5   being able to be here.  He was traveling.

 6          Your Honor, you'll recall that this was a fairly short

 7   case, and there weren't terribly -- it wasn't a terrible great

 8   number of pleadings that were actually filed.  Most of the

 9   involvement of Brown Rudnick on behalf of the committee was

10   actually negotiating live in real time with -- whether it be

11   the debtors, the student committee, Bank of America, as agent

12   for the lenders, and the various Attorney Generals out there,

13   in addition to ensuring that the assets were properly preserved

14   and transferred over to the distribution trust.  So Mr.

15   Schwartz was responsible for most of those negotiations.

16          And then, to the extent there actually were any

17   pleadings to be reviewed, whether it was a plan disclosure

18   statement to conform to the settlement, the principles that

19   were agreed to with the party, it was principally my

20   responsibility to make sure that those -- the deal was properly

21   reflected in the pleadings.

22          THE COURT:  Okay.  Look, I'm well aware of the

23   difficulties of this case, and somewhat aware, based on what's

24   happened, of what went before you came to visit.  But I accept

25   that explanation, and it does not surprise me.  Thank you.

1          MR. SILVERBERG:  Thank you, Your Honor.

2          THE COURT:  I don't have any questions about

3   Rust/Omni.

4          Let me turn to Richards, Layton.

5          Well, don't be nervous.  It's not that hard.

6      (Pause)

7          THE COURT:  Okay.  Let me ask you to turn to the

8   expense summary, August 1 through August 31st.  Let me know

9   when you're there.

10          MS. STEELE:  We're there, Your Honor.

11          THE COURT:  Okay.  I'm looking at the top of the

12   second page, which shows an August 4th expense for dinner for

13   one at Mikimotos.  You see that?

14          MS. STEELE:  Yes, Your Honor.

15          THE COURT:  It's fifty-five dollars.  It just sounded

16   like a lot to me for dinner at Mikimotos.  And heck, the one at

17   the Washington Ale House which follows was only twenty-seven

18   dollars.

19          MR. MERCHANT:  Your Honor, I think the explanation for

20   that is probably when whoever that person was may

21   have -- unfortunately, it wasn't me working that week.  There's

22   usually a delivery charge associated with it.  So even if you

23   order for one, there's a delivery charge, may it be Blue Marble

24   or whoever, which makes the cost of the meal look a lot more

25   than it actually probably was.  But we're in the fortunate or

1    unfortunate position in this case that profe -- the payment of

2    professional fees are capped under the plan, and they're capped

3    such that Richards, Layton has roughly 70,000 dollars in fees

4    that aren't going to get paid.

5            So if it would make the Court feel more comfortable,

6    we can simply agree to reduce the amount by the amount of that

7    meal.

8            THE COURT:  The -- under those circumstances, no, it

9    wouldn't make me more comfortable, but I guess I would just

10   say -- I thought what you were going to tell me, well, maybe it

11   was for more than one person.  But it seems to me that whatever

12   the reason, just -- in the future, I would avoid fifty-five-

13   dollar dinners from Mikimotos.

14           MR. MERCHANT:  Understood, Your Honor.

15           THE COURT:  Okay.  And then I had one other question.

16   I probably asked this question before, but forgive me if I have

17   and you've answered it.  What's the Richards, Layton, Finger

18   Service Corp.?

19           MR. MERCHANT:  We have -- I guess you could call it an

20   affiliated entity.  It's essentially a registered agent, and I

21   don't know the particular expense or citation here.

22           THE COURT:  Well, the -- I'm looking at a October 15,

23   2015 invoice that shows a 5,607-dollar charge.  What would that

24   be for?

25           MR. MERCHANT:  That may -- let me check with Ms.

1   Steele.  I'm guessing it probably had something to do with

2   filing documents with the Secretary of State regarding the

3   dissolution of the entities, but I can check.

4           MS. STEELE:  That's right.

5           MR. MERCHANT:  She's nodding her head yes, Your Honor.

6           THE COURT:  All right, thank you.  I'm satisfied with

7   those explanations.  Thank you very much.

8           MR. MERCHANT:  Thank you, Your Honor.

9           THE COURT:  Okay.  Let me go next to Polsinelli.

10          MS. KATONA:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.  I'm looking at invoice

12  detail -- it's page 118, dated October 23, 2015.  Let me know

13  when you're there.

14          MS. KATONA:  I am there, Your Honor.

15          THE COURT:  The top line shows document reproduction,

16  $572.40.  What was that?

17          MS. KATONA:  That's in-house document reproduction.

18  Whenever we don't use a vendor for in-house binder preparation

19  or deliveries to chambers or deliveries -- in-house -- rather

20  in-town hand delivery service.

21          THE COURT:  Okay.  Let me see if I have any other

22  questions.

23          No, that was it, thank you.

24          MS. KATONA:  Thank you.

25          THE COURT:  No questions about PricewaterhouseCoopers.

1          Let me turn to Willkie Farr.

2          MS. KLEIN:  Your Honor, Julia Klein for the Rosner Law

3   Group.  Willkie Farr, I believe, is on the phone to answer

4   questions for you.

5          MR. ABRAMS:  Your Honor, it's Marc Abrams from

6   Willkie.  I'm participating by phone.

7          THE COURT:  Good afternoon.

8          MR. ABRAMS:  How are you?

9          THE COURT:  Oh, just dandy, thank you.

10         MR. ABRAMS:  Good.

11         THE COURT:  Okay.  There was a taxi car service travel

12  charge on August 18, 2015 that shows that it's incurred by an

13  individual, Clancy.

14         MR. ABRAMS:  Yes, Your Honor.

15         THE COURT:  But there wasn't any travel time shown for

16  him or her.

17         MR. ABRAMS:  No, he -- correct, Your Honor.  Willkie's

18  policy with respect to taxi service utilization is that if an

19  attorney works on a matter past 8 p.m., the firm allows that

20  attorney to order a taxi service for travel to one's home.  But

21  the time spent in the car is not billable unless, in fact, the

22  attorney was working, which apparently, Mr. Clancy was not.  So

23  the charge shown here reflects merely the out-of-pocket expense

24  of the firm for that particular transportation service.

25         THE COURT:  Okay, standard practice.  I appreciate the

1    explanation.  Thank you.

2              MR. ABRAMS:  You're welcome, Your Honor.

3              THE COURT:  And that was it.  Let me turn to the

4    Public Counsel application.

5              MS. RICHARDSON:  Thank you, Your Honor.  This is Anne

6    Richardson of Public Counsel.  I'm appearing telephonically.

7              THE COURT:  Good afternoon.

8              MS. RICHARDSON:  Good afternoon.

9              THE COURT:  I'm looking at the time detail.  It's page

10   17 of 29.  Let me know when you're there.

11             MS. RICHARDSON:  Let's see.  I have it on my computer

12   rather than printed out.  What's the date at the top?

13             THE COURT:  Well, the time -- the first time entry is

14   August 14, 2015.

15             MS. RICHARDSON:  Got it, yes.

16             THE COURT:  Okay.  About -- a little bit past halfway

17   down the page is a travel entry, 1.4 hours.  It doesn't look

18   like it was billed at fifty percent.  Was it working travel?

19             MS. RICHARDSON:  That was probably not working travel;

20   however, we did reduce all of our time by fifty percent.

21             THE COURT:  Okay.  That answers my question, thank

22   you.

23             MS. RICHARDSON:  Thank you, Your Honor.

24             THE COURT:  And then, finally, Robins Kaplan.  Let me

25   take you to page 133 of Expense Detail.

1            MS. BALL:  I am there, Your Honor.

2            THE COURT:  Okay.  Looking at the June 30 entries for,

3    I guess, meals at the Columbus Inn Lobby Lounge.

4            MS. BALL:  Your Honor, is it 133 or -- because on 133,

5    I have all Lexis charges.

6            THE COURT:  No, it's 133 in my copy.  It's

7    behind -- it's part of Exhibit A.  Oh, okay.  At the top of the

8    page, it says 135.

9            MS. BALL:  Oh, okay.  Give me just a second.  And Your

10   Honor, wouldn't you know that I am missing pages 135 and 136 of

11   my --

12           THE COURT:  Okay.

13           MS. BALL:  Thank you -- of my copy that was made.

14           THE COURT:  I'll hand it to you.

15           MS. BALL:  Sorry.

16           THE COURT:  That's all right.  You can approach and

17   take it if you like.

18           MS. BALL:  I got it from --

19           THE COURT:  Oh.

20           MS. BALL:  -- debtors' counsel.

21           THE COURT:  All right, thank you.

22           MS. BALL:  Okay, so meals and --

23           THE COURT:  Yeah, there's three entries.

24           MS. BALL:  June 30th, correct.

25           THE COURT:  Mr. Gautier -- how many people?

1          MS. BALL:  There were six people.  That was one of the
2     times when the student committee members actually flew out.
3     And so we actually prepaid or paid for their flights and paid
4     for their travel, including their meals, meals at the hotel,
5     cab rides, hotel fares.  So there was more than just Mr.
6     Gautier.

7          THE COURT:  Okay.  Well, this is just meals.

8          MS. BALL:  Yes.

9          THE COURT:  So if you take seven people -- well, first
10    of all, those three entries -- "Corinthian student dinner,
11    dinner with students, refreshment with students" -- comes to
12    658 dollars.  And if you divide it by seven, I get ninety-four
13    dollars a person.  That seems high to me.

14         MS. BALL:  I would agree, Your Honor, that it does
15    sound a little bit high.

16         THE COURT:  Any explanation?

17         MS. BALL:  I believe that -- well, it was just -- it
18    was a group meeting.  I believe there were only six or seven
19    people there, and it was just a one-group meeting.  It was just
20    a one-time thing where we flew the students out.  They actually
21    met with the Department of Education, so I'm not sure if
22    anybody happened to stop by from any other of the parties in
23    the case.  But it was a one-time charge.

24         I recognize that it seems a little bit high.  We have
25    agreed to other reductions, and we did --

1        THE COURT:  How much --

2        MS. BALL:  -- write off --

3        THE COURT:  -- how much in the way of reductions?

4        MS. BALL:  We agreed to a couple things.  One is in

5   drafting our original application, Your Honor, we voluntarily

6   waived all of our nonworking travel time.  So the travel time,

7   that was about 75,000 dollars.  We bill it at fifty percent, so

8   we actually wrote off about 37-, 38,000 dollars.

9        THE COURT:  Okay.

10        MS. BALL:  In addition, in talking with the United

11   States Trustee, we agreed to a total reduction of about

12   $13,693.28.

13        THE COURT:  All right.  I'm not going to -- let's just

14   put it this way.  If you come back here -- and I'm delighted to

15   have you -- be a little bit more careful about that.

16        MS. BALL:  I will tell Mr. Gautier.

17        THE COURT:  All right, thank you.

18        I'm also looking at the -- page 137, and those are the

19   various airfares.  And again, consistent with what you told me,

20   you flew students out.

21        MS. BALL:  Yes.

22        THE COURT:  The airfares, there's a huge discrepancy

23   among them.  And I was just wondering, were some of them last

24   minute?

25        MS. BALL:  Yes, Your Honor, and some of them we did

 1  have to book a nonrefundable -- or fully refundable, sorry -- I

 2  had it backwards -- because we weren't sure if the hearing was

 3  going to go forward or not.  And we had six people that

 4  were -- that we were flying out here.  So --

 5          THE COURT:  Understood.  Okay.  I accept that

 6  explanation.

 7          All right.

 8          MS. BALL:  And they were also flying from different

 9  places, so --

10          THE COURT:  Understood.

11          MS. BALL:  Yeah.

12          THE COURT:  Does the U.S. Trustee wish to be heard?

13          MR. FOX:  Good afternoon, Your Honor.  Tim Fox on

14  behalf of the United States Trustee.

15          I just rise briefly to indicate that all of the

16  representations made by counsel on the record as it relates to

17  our negotiations and ultimate resolution are correct.

18          With Robins Kaplan's expenses, we were a little

19  concerned about those numbers.  But in light of the other

20  accommodations we reached, we were okay with that.  And we

21  would just hopefully have weeded those out had there been

22  interim applications.  But with the final fee application

23  arrangement that was made in this case, there wasn't an

24  opportunity to impose any billing discipline earlier in the

25  process.

1        THE COURT:  I appreciate that, and I always -- as

2   always, appreciate the U.S. Trustee's help in this respect.

3   And I was aware that counsel here were getting squeezed, not to

4   put too elegant a term on it.  But I'm required to look at

5   these things, and so we do.  And as tedious as it is for

6   everybody, the exercise, I think, is required.  But I'm happy

7   it's over.

8        MR. FOX:  And one more matter, just as it relates to

9   the Rosner Law Group's application, counsel has represented to

10  me that one of the timekeepers was billed as a law clerk when,

11  in actuality, she was serving in paralegal functions, which is

12  why our office didn't require any write-down of the time.

13        THE COURT:  All right, thank you.

14        Okay.  Does somebody have a form of order for me?

15        MR. MERCHANT:  I do, Your Honor.  I have an omnibus

16  form of order, if I may approach?

17        THE COURT:  You may.

18        Thank you.

19        That order has been signed.

20        Is there anything else we need to talk about today?

21        MR. MERCHANT:  Nothing further for today, Your Honor.

22  Thank you.

23        THE COURT:  All right, thank you very much.

24        MR. MERCHANT:  Thank you.

25        THE COURT:  That concludes this hearing.  The Court

1    will stand in recess.

2              MR. MERCHANT:  Thank you.

3              IN UNISON:  Thank you, Your Honor.

4         (Whereupon these proceedings were concluded at 1:35 PM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                                   I N D E X

3

4                                    RULINGS

5                                                    PAGE      LINE

6  Motion of the Commonwealth of Massachusetts  13        11

7  denied as specified

8  Final fee applications approved              26        19

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Aliza Chodoff, certify that the foregoing transcript is a
true and accurate record of the proceedings.

December 11, 2015

_____          _____

ALIZA CHODOFF                            DATE

AAERT Certified Electronic Transcriber CET**D-634

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

Case 15-10952-JTD    Doc 1129    Filed 12/17/15    Page 30 of 35

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

December 10, 2015

**$**

**$13,693.28 (1)**
24:12
**$572.40 (1)**
19:16

**1**

**1 (1)**
17:8
**1,000-dollars-an-hour (1)**
15:25
**1.4 (1)**
21:17
**1:35 (1)**
27:4
**118 (1)**
19:12
**133 (4)**
21:25;22:4,4,6
**135 (2)**
22:8,10
**136 (1)**
22:10
**137 (1)**
24:18
**14 (1)**
21:14
**15 (1)**
18:22
**17 (1)**
21:10
**18 (1)**
20:12
**180 (1)**
10:23

**2**

**2015 (4)**
18:23;19:12;20:12;
21:14
**23 (1)**
19:12
**29 (1)**
21:10

**3**

**30 (1)**
22:2
**30th (1)**
22:24
**31st (1)**
17:8
**37- (1)**
24:8
**38,000 (1)**
24:8

**4**

**4 (1)**
14:7
**4th (1)**
17:12

**5**

**5 (3)**
9:19;12:25;13:7
**5,607-dollar (1)**
18:23

**6**

**658 (1)**
23:12

**7**

**7 (1)**
11:15
**70,000 (1)**
18:3
**75,000 (1)**
24:7

**8**

**8 (1)**
20:19

**A**

**AAG (1)**
5:4
**able (2)**
14:12;16:5
**ABRAMS (8)**
4:20;20:5,5,8,10,14,
17;21:2
**accept (2)**
16:24;25:5
**acceptable (1)**
14:14
**accommodations (1)**
25:20
**actuality (1)**
26:11
**actually (15)**
6:10,23;7:3;8:22;9:24;
11:13;16:4,8,10,16;
17:25;23:2,3,20;24:8
**add (1)**
11:24
**addition (2)**
16:13;24:10
**address (2)**
8:16;13:9
**admin (1)**
6:13
**administration (1)**
11:18
**administrative (1)**
14:7
**advised (1)**
13:14
**affect (1)**
8:7
**affiliated (1)**
18:20
**afternoon (11)**
6:4,5,6;10:18;14:17;
19:10,11;20:7;21:7,8;
25:13
**again (5)**
7:14;12:11,18;13:15;
24:19
**agenda (4)**
6:9,12,15;14:6
**agent (2)**
16:11;18:20
**agree (4)**
9:14;11:5;18:6;23:14
**agreed (4)**
16:19;23:25;24:4,11
**AGs (2)**
13:14,22
**ahead (1)**
6:19
**airfares (2)**
24:19,22
**Ale (1)**
17:17
**alleged (1)**
8:18
**alleges (1)**
8:22
**allows (1)**
20:19
**along (2)**
12:13,19
**although (1)**
6:23
**always (2)**
26:1,2
**America (1)**
16:11
**among (1)**
24:23
**amount (2)**
18:6,6
**ANDREA (1)**
5:12
**ANNE (2)**
5:9;21:5
**answered (1)**
18:17
**anticipate (1)**
10:25
**apart (1)**
11:19
**apologized (1)**
16:4
**apparently (1)**
20:22
**appearing (1)**
21:6
**application (5)**
15:21;21:4;24:5;
25:22;26:9
**applications (3)**
6:11;15:1;25:22
**appreciate (4)**
14:22;20:25;26:1,2
**approach (2)**
22:16;26:16
**appropriate (1)**
7:14
**ARBAN (5)**
4:12,15;14:17,17,24
**argue (1)**
12:20
**around (1)**
10:15
**arrangement (1)**
25:23
**assert (1)**
12:17
**assertions (1)**
14:19
**asset (1)**
11:15
**assets (3)**
12:9;13:3;16:13
**associated (1)**
17:22
**assuming (1)**
13:15
**attached (1)**
7:18
**ATTORNEY (8)**
4:23;5:2;10:6,7;16:12;
20:19,20,22
**Attorneys (8)**
4:3,8,13,19,24;5:3,8;
8:5
**audio (12)**
7:11,12,14,17,20,21;
8:6,10,15,20;9:1,3
**August (5)**
17:8,8,12;20:12;21:14
**avoid (1)**
18:12
**aware (4)**
15:15;16:22,23;26:3

**B**

**back (1)**
24:14
**backwards (1)**
25:2
**BALL (25)**
10:18,18;11:6;13:5;
22:1,4,9,13,15,18,20,22,
24;23:1,8,14,17;24:2,4,

**10,16,21,25;25:8,11**
**Bank (1)**
16:11
**based (1)**
16:23
**basis (1)**
9:3
**bearing (1)**
11:17
**behalf (7)**
6:7;10:19;11:9;12:23;
14:18;16:9;25:14
**behind (1)**
22:7
**Ben (1)**
15:15
**bench (1)**
10:6
**benefit (1)**
12:7
**BENNETT (2)**
4:4;15:16
**BERNARD (1)**
4:25
**best (1)**
12:21
**bill (1)**
24:7
**billable (1)**
20:21
**billed (3)**
16:3;21:18;26:10
**billing (1)**
25:24
**binder (1)**
19:18
**bit (4)**
21:16;23:15,24;24:15
**Blue (1)**
17:23
**book (1)**
25:1
**break (12)**
7:11,12,14,17,20,21;
8:6,10,15,20,25;9:3
**BRIAN (2)**
4:15;14:17
**briefly (2)**
9:11;25:15
**brings (1)**
6:14
**BROWN (4)**
4:2;15:11,16;16:9

**C**

**cab (1)**
23:5
**CALIFORNIA (2)**
4:23,24
**call (1)**
18:19
**came (1)**

Case 15-10952-JTD   Doc 1129   Filed 12/17/15   Page 31 of 35

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

December 10, 2015

16:24
**can (6)**
  6:24;7:12;12:12;18:6;
  19:3;22:16
**capped (2)**
  18:2,2
**car (2)**
  20:11,21
**careful (1)**
  24:15
**case (15)**
  7:8,8;8:7,17;9:12;
  11:5,14,15,22;16:1,7,23;
  18:1;23:23;25:23
**cash (1)**
  12:4
**CCI (2)**
  10:19;13:7
**certain (2)**
  7:10;8:17
**certainly (1)**
  10:15
**certification (2)**
  13:12;14:13
**chambers (1)**
  19:19
**Chapter (1)**
  11:15
**charge (6)**
  17:22,23;18:23;20:12,
  23;23:23
**charges (1)**
  22:5
**check (2)**
  18:25;19:3
**circumstances (2)**
  13:16;18:8
**citation (1)**
  18:21
**claim (9)**
  6:21;7:5,12;9:13,18,
  19;10:8;11:15;14:7
**claims (4)**
  7:17,19;9:24;12:25
**Clancy (2)**
  20:13,22
**CLARK (1)**
  5:12
**Class (3)**
  9:19;12:25;13:7
**clear (2)**
  9:2;11:8
**CLERK (2)**
  6:2;26:10
**COC (1)**
  14:20
**Columbus (1)**
  22:3
**comfortable (2)**
  18:5,9
**coming (2)**
  12:19;13:2
**Committee (7)**

4:3,8;5:8;15:19;16:9,
11;23:2
**Commonwealth (3)**
  5:3;6:16;8:5
**complaint (5)**
  8:18,19,21,22,22
**comply (2)**
  7:1,10
**computer (1)**
  21:11
**conceivable (1)**
  11:4
**concerned (2)**
  13:25;25:19
**concerns (1)**
  15:2
**concessions (1)**
  15:2
**concluded (1)**
  27:4
**concludes (1)**
  26:25
**confer (1)**
  13:12
**conferred (1)**
  13:21
**confirm (1)**
  7:16
**confirmation (1)**
  10:24
**conform (1)**
  16:18
**connected (1)**
  8:18
**consent (1)**
  13:24
**consider (2)**
  13:17,25
**consistent (1)**
  24:19
**Consulting/Omni (1)**
  5:14
**continued (1)**
  6:14
**contrary (1)**
  12:20
**controversy (1)**
  8:6
**copy (2)**
  22:6,13
**core (1)**
  11:16
**Corinthian (1)**
  23:10
**Corp (1)**
  18:18
**cost (1)**
  17:24
**Counsel (13)**
  4:19;5:7;9:23;14:10,
  11,13;15:18;21:4,6;
  22:20;25:16;26:3,9
**counsel's (1)**

14:19
**couple (3)**
  6:9,21;24:4
**COURT (83)**
  6:4,19;7:12,13,13,19;
  9:8;10:3,12,17;11:2,12,
  18;12:2,10;13:1,10,24;
  14:3,5,9,14,15,21;15:5,7,
  14,17,21;16:22;17:2,7,
  11,15;18:5,8,15,22;19:6,
  9,11,15,21,25;20:7,9,11,
  15,25;21:3,7,9,13,16,21,
  24;22:2,6,12,14,16,19,
  21,23,25;23:7,9,16;24:1,
  3,9,13,17,22;25:5,10,12;
  26:1,13,17,23,25,25
**courtroom (1)**
  14:10
**covered (1)**
  13:7
**Creditors (2)**
  5:8;10:19
**currently (1)**
  9:25

**D**

**DAG (1)**
  4:25
**dandy (1)**
  20:9
**date (6)**
  6:14,22;7:25;10:24;
  12:18;21:12
**dated (1)**
  19:12
**days (3)**
  6:21;7:24;10:23
**deadline (1)**
  9:23
**deal (1)**
  16:20
**debtor (1)**
  9:12
**debtors (6)**
  7:21,22;9:12,15,16;
  16:11
**debtors' (4)**
  9:13;10:8,22;22:20
**decide (1)**
  11:13
**decides (1)**
  12:6
**decision (1)**
  12:6
**delighted (1)**
  24:14
**deliveries (2)**
  19:19,19
**delivery (3)**
  17:22,23;19:20
**Department (1)**
  4:24;23:21

14:19
**detail (4)**
  15:22;19:12;21:9,25
**determination (1)**
  11:20
**determine (1)**
  11:7
**DEUTCH (1)**
  5:14
**development (1)**
  14:23
**different (1)**
  25:8
**difficulties (1)**
  16:23
**dinner (4)**
  17:12,16;23:10,11
**dinners (1)**
  18:13
**disallow (1)**
  7:19
**discipline (1)**
  25:24
**disclosure (1)**
  16:17
**discrepancy (1)**
  24:22
**dismiss (2)**
  6:22;8:19
**dismissed (2)**
  8:3,14
**dismissing (1)**
  9:6
**dispute (1)**
  11:17
**disputed (2)**
  7:17;9:13
**dissolution (1)**
  19:3
**dissolved (1)**
  7:25
**distribution (16)**
  6:8;7:7,15,23;8:8;9:9,
  20;11:3,4,25;12:5,8,11,
  24;13:3;16:14
**distributions (1)**
  11:9
**divide (1)**
  23:12
**document (2)**
  19:15,17
**documents (1)**
  19:2
**dollar (1)**
  18:13
**dollars (7)**
  17:15,18;18:3;23:12,
  13;24:7,8
**down (2)**
  12:6;21:17
**drafting (2)**
  10:15;24:5

**E**

**earlier (1)**
  25:24
**education (2)**
  12:24;23:21
**effect (1)**
  7:7
**effective (3)**
  6:21;7:25;10:24
**either (2)**
  8:22;12:11
**elegant (1)**
  26:4
**else (3)**
  8:20;11:23;26:20
**ensuring (1)**
  16:13
**enter (1)**
  13:11
**entered (1)**
  6:12;9:6
**entities (1)**
  19:3
**entity (1)**
  18:20
**entries (3)**
  22:2,23;23:10
**entry (2)**
  21:13,17
**ESKANDARI (1)**
  4:25
**ESQ (6)**
  4:4,9,15,20;5:9,14
**essentially (1)**
  18:20
**estate (2)**
  7:23;11:18
**even (3)**
  11:16,19;17:22
**everybody (1)**
  26:6
**everybody's (1)**
  15:8
**everyone (1)**
  6:4
**evidence (2)**
  9:1,2
**exercise (2)**
  15:8;26:6
**exercises (1)**
  10:10
**Exhibit (1)**
  22:7
**exist (1)**
  9:16
**expectation (1)**
  7:5
**expected (1)**
  7:4
**expense (6)**
  15:22;17:8,12;18:21;

Case 15-10952-JTD    Doc 1129    Filed 12/17/15    Page 32 of 35

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)                                    December 10, 2015

20:23;21:25
expenses (1)
　25:18
explanation (5)
　16:25;17:19;21:1;
　23:16;25:6
explanations (1)
　19:7
extended (1)
　9:24
extent (2)
　13:6;16:16

**F**

fact (2)
　11:7;20:21
fairly (1)
　16:6
fall (3)
　9:19;12:25;13:6
fares (1)
　23:5
FARR (3)
　4:18;20:1,3
favorite (1)
　15:8
fee (3)
　6:11;14:25;25:22
feel (1)
　18:5
fees (2)
　18:2,3
few (1)
　10:15
fifty (3)
　21:18,20;24:7
fifty-five (1)
　17:15
fifty-five- (1)
　18:12
fifty-four (1)
　15:23
figure (1)
　10:9
file (3)
　10:1,24;11:1
filed (7)
　6:23;7:24;8:19;9:1,14,
　15;16:8
filing (2)
　10:25;19:2
final (3)
　6:11;14:25;25:22
finally (2)
　8:4;21:24
Finger (2)
　6:7;18:17
firm (2)
　20:19,24
first (5)
　6:13;7:1,22;21:13;
　23:9

five (3)
　10:15,16,16
flew (3)
　23:2,20;24:20
flights (1)
　23:3
flying (2)
　25:4,8
followed (1)
　7:4
follows (1)
　17:17
foreclose (1)
　12:19
forgive (1)
　18:16
form (5)
　12:7;13:12;14:20;
　26:14,16
former (1)
　15:18
formulaic (1)
　8:16
fortunate (1)
　17:25
forward (2)
　6:11;25:3
Fox (4)
　15:4;25:13,13;26:8
Frankly (1)
　11:12
fully (1)
　25:1
functions (1)
　26:11
further (2)
　9:10;26:21
future (4)
　12:18,21,22;18:12

**G**

GALLAGHER (1)
　4:18
game (1)
　13:3
Gautier (3)
　22:25;23:6;24:16
Gavin/Solmonese (1)
　15:9
General (5)
　4:19,23;5:2;10:7,7
generally (1)
　12:20
Generals (1)
　16:12
glad (1)
　9:7
Good (12)
　6:4,5,6;10:18;14:17;
　19:10,11;20:7,10;21:7,8;
　25:13
government (1)

12:24
granted (1)
　12:16
great (1)
　16:7
ground (2)
　7:1,9
grounds (4)
　6:22,25;7:11,11
GROUP (3)
　4:7;20:3;23:18
Group's (1)
　26:9
GUC (2)
　4:3,8
guess (10)
　6:20;7:3;9:5;10:8,15;
　12:13;15:18;18:9,19;
　22:3
guessing (1)
　19:1

**H**

halfway (1)
　21:16
hand (2)
　19:20;22:14
handy (1)
　15:22
happen (1)
　12:12
happened (2)
　16:24;23:22
happy (1)
　26:6
hard (1)
　17:5
head (1)
　19:5
hear (2)
　9:9;10:17
heard (4)
　9:10;11:23;14:16;
　25:12
hearing (4)
　7:2;12:13;25:2;26:25
heck (1)
　17:16
Hello (1)
　15:17
help (1)
　26:2
helpful (1)
　13:21
high (3)
　23:13,15,24
HILLER (1)
　4:12
home (1)
　20:20
Honor (45)
　6:6,20;8:13;9:5,11;

10:13,18;11:6,24;12:23;
13:5,20;14:6,17,25;
15:13,19;16:2,6;17:1,10,
14,19;18:14;19:5,8,10,
14;20:2,5,14,17;21:2,5,
23;22:1,4,10;23:14;24:5,
25;25:13;26:15,21;27:3
hopefully (1)
　25:21
hotel (2)
　23:4,5
hours (1)
　21:17
House (1)
　17:17
huge (1)
　24:22

**I**

Illinois (3)
　10:6,7;12:14
imagine (1)
　9:25
impose (1)
　25:24
inclined (1)
　13:17
including (1)
　23:4
incurred (1)
　20:12
indicate (1)
　25:15
indicated (1)
　8:9
individual (1)
　20:13
in-house (3)
　19:17,18,19
in-interest (1)
　12:17
Inn (1)
　22:3
interim (1)
　25:22
in-town (1)
　19:20
Investment (4)
　4:13;14:8,15,18
invoice (2)
　18:23;19:11
involved (2)
　10:14,22
involvement (1)
　16:9
issue (5)
　7:7,21;9:22;10:2;12:5
issues (3)
　8:17;11:19;15:20
item (1)
　14:6

**J**

Jeffrey (1)
　16:4
judgment (1)
　8:20
JULIA (2)
　4:9;20:2
June (2)
　22:2,24
jurisdiction (1)
　11:19
Justice (1)
　4:24

**K**

Kaplan (2)
　10:19;21:24
Kaplan's (1)
　25:18
KATONA (4)
　19:10,14,17,24
kind (3)
　9:2;13:10
KLEIN (3)
　4:9;20:2,2

**L**

last (1)
　24:23
later (2)
　6:14;11:1
Laurie (1)
　10:18
LAW (5)
　4:7;9:1;20:2;26:9,10
Layton (4)
　6:7;17:4;18:3,17
least (2)
　11:21;12:22
leaves (1)
　14:25
left (1)
　9:16
LEIGHT (9)
　5:4;6:18,18,20;9:15;
　13:20,20;14:1,4
lenders (1)
　16:12
Lexis (1)
　22:5
light (1)
　25:19
limited (2)
　6:24;7:15
line (1)
　19:15
lists (1)
　7:10
literally (1)

10:5

**litigation (1)**
12:1

**little (5)**
21:16;23:15,24;24:15;
25:18

**live (1)**
16:10

**LLC (5)**
4:7,12,14;5:14;14:8

**LLP (3)**
4:2,18;5:12

**Lobby (1)**
22:3

**local (1)**
7:1

**longer (1)**
9:16

**look (5)**
10:14;16:22;17:24;
21:17;26:4

**looking (7)**
9:21;17:11;18:22;
19:11;21:9;22:2;24:18

**lot (3)**
9:14;17:16,24

**Lounge (1)**
22:3

## M

**makes (1)**
17:24

**making (1)**
16:3

**Management (1)**
5:14

**many (3)**
10:3,9;22:25

**Marble (1)**
17:23

**MARC (2)**
4:20;20:5

**March (1)**
9:25

**Massachusetts (5)**
5:3;6:16,18;8:5;9:18

**matter (10)**
6:10,13,13,15;
11:16;13:11;14:22;
20:19;26:8

**matters (1)**
6:9

**may (12)**
6:17;9:18,25;10:1;
12:7,7,17;17:20,23;
18:25;26:16,17

**maybe (2)**
13:17;18:10

**meal (2)**
17:24;18:7

**meals (5)**
22:3,22;23:4,4,7

**mean (1)**
12:24

**meeting (2)**
23:18,19

**members (1)**
23:2

**mentioned (1)**
10:21

**MERCHANT (23)**
6:6,7;9:11;10:11,13,
21;11:24;12:3,23;13:2;
14:6,10,25;17:19;18:14,
19,25;19:5,8;26:15,21,
24;27:2

**merely (1)**
20:23

**met (1)**
23:21

**might (1)**
12:21

**Mike (1)**
6:6

**Mikimotos (3)**
17:13,16;18:13

**minute (1)**
24:24

**minutes (1)**
10:6

**missing (1)**
22:10

**moment (1)**
9:8

**money (1)**
13:18

**moot (1)**
8:4

**more (8)**
10:16;17:24;18:5,9,
11;23:5;24:15;26:8

**Most (2)**
16:8,15

**motion (7)**
6:15,23,25;8:19;
12:16;14:7,12

**movant (1)**
11:5

**move (1)**
6:22

**much (5)**
14:3;19:7;24:1,3;
26:23

**myself (1)**
16:3

## N

**nature (1)**
13:13

**need (2)**
11:10;26:20

**negotiate (1)**
14:12

**negotiating (1)**

16:10

**negotiations (2)**
16:15;25:17

**nervous (1)**
17:5

**next (1)**
19:9

**ninety-four (1)**
23:12

**nobody (1)**
9:16

**Nobody's (1)**
6:22

**nodding (1)**
19:5

**None (1)**
7:8

**nonrefundable (1)**
25:1

**nonworking (1)**
24:6

**note (2)**
8:8;9:22

**number (8)**
6:22;7:10,13;10:16;
14:7;15:2,5;16:8

**numbers (1)**
25:19

## O

**objected (1)**
8:12

**objection (36)**
6:21;7:1,2,5,5,7,9,11,
18,22,24;8:2,3,4,9,11,14,
15,16,23;9:1,3,4,6,17,21,
24;10:1,8,21,22,23,25;
11:1,16;12:18

**objections (2)**
10:24;13:4

**occasion (1)**
10:5

**occasioned (1)**
10:5

**October (2)**
18:22;19:12

**off (2)**
24:2,8

**OFFICE (4)**
4:23;5:2;15:3;26:12

**omnibus (1)**
26:15

**once (1)**
15:20

**one (12)**
6:10;11:2;13:15;
17:13,16,23;18:11,15;
23:1;24:4;26:8,10

**one-group (1)**
23:19

**one's (1)**
20:20

**one-time (2)**
23:20,23

**only (5)**
6:10;8:10;11:24;
17:17;23:18

**opportunity (1)**
25:24

**opposed (2)**
6:23;12:8

**opposition (1)**
10:8

**order (13)**
6:12;7:18;9:5;13:10,
12,22;14:13,20;17:23;
20:20;26:14,16,19

**original (1)**
24:5

**others (1)**
12:12

**ought (1)**
14:22

**out (8)**
10:9;16:12;21:12;
23:2;20:24:20;25:4,21

**outcome (1)**
11:17

**out-of-pocket (1)**
20:23

**over (4)**
6:24;15:25;16:14;26:7

## P

**Pacor (1)**
11:16

**page (7)**
17:12;19:12;21:9,17,
25;22:8;24:18

**pages (1)**
22:10

**paid (3)**
18:4;23:3,3

**papers (1)**
8:21

**paralegal (1)**
26:11

**part (2)**
11:10;22:7

**participating (1)**
20:6

**particular (2)**
18:21;20:24

**parties (5)**
12:21;13:11,23;14:2;
23:22

**partner (2)**
15:24;16:4

**party (2)**
12:19;16:19

**party- (1)**
12:16

**party-in-interest (2)**
7:6;8:1

**past (2)**
20:19;21:16

**PAUL (1)**
5:14

**Pause (1)**
17:6

**payment (1)**
18:1

**people (6)**
13:18;22:25;23:1,9,
19;25:3

**percent (4)**
15:24;21:18,20;24:7

**perhaps (2)**
8:21;16:3

**permitted (1)**
7:19

**person (3)**
17:20;18:11;23:13

**Pete (1)**
6:18

**PETER (2)**
5:4;13:20

**Philadelphia (1)**
11:14

**phone (3)**
15:12;20:3,6

**place (1)**
7:22

**places (2)**
7:13;25:9

**plainly (1)**
8:9

**plan (4)**
9:19;11:25;16:17;18:2

**pleadings (3)**
16:8,17,21

**Please (1)**
6:3

**pm (2)**
20:19;27:4

**point (4)**
8:25;11:8,21;12:13

**policy (1)**
20:18

**Polsinelli (1)**
19:9

**position (2)**
11:5;18:1

**possible (2)**
8:10

**pot (1)**
12:4

**potentially (1)**
10:4

**practice (1)**
20:25

**prejudice (1)**
12:16

**prepaid (1)**
23:3

**preparation (1)**
19:18

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

December 10, 2015

**prepared (1)**
13:11
**PRESENT (1)**
5:11
**presented (1)**
9:2
**preserved (1)**
16:13
**pretty (2)**
8:16;9:2
**PricewaterhouseCoopers (2)**
5:12;19:25
**principally (1)**
16:19
**principals (1)**
9:13
**principles (1)**
16:18
**printed (1)**
21:12
**probably (6)**
13:8;17:20,25;18:16;
19:1;21:19
**problems (1)**
8:17
**proceedings (1)**
27:4
**process (2)**
11:6;25:25
**profe (1)**
18:1
**professional (1)**
18:2
**professionals (1)**
15:1
**programs (1)**
12:8
**proper (1)**
13:9
**properly (2)**
16:13,20
**Properties (2)**
4:13;14:8
**prosecute (3)**
9:17,21;13:4
**provide (1)**
9:3
**provides (1)**
13:13
**PUBLIC (3)**
5:7;21:4,6
**pursue (1)**
7:6
**pursuing (1)**
12:1
**purview (1)**
9:20
**put (3)**
13:22;24:14;26:4

**Q**

**Quality (4)**

4:13;14:7,15,18
**quickly (1)**
6:12

**R**

**raise (2)**
7:21;8:2
**raised (1)**
15:2
**rather (2)**
19:19;21:12
**reached (1)**
25:20
**read (1)**
8:21
**real (1)**
16:10
**reality (1)**
9:15
**really (3)**
8:16;9:21;11:3
**reason (5)**
7:20;8:2;11:10;12:14;
18:12
**reasons (1)**
8:13
**recall (1)**
16:6
**receive (1)**
7:23
**received (1)**
10:7
**recess (1)**
27:1
**recognize (1)**
23:24
**record (3)**
11:20;14:19;25:16
**reduce (1)**
18:6;21:20
**reduction (1)**
24:11
**reductions (2)**
23:25;24:3
**reference (1)**
16:3
**referred (1)**
8:17
**reflected (1)**
16:21
**reflects (1)**
20:23
**refreshment (1)**
23:11
**refundable (1)**
25:1
**regarding (1)**
19:2
**registered (1)**
18:20
**relates (2)**
25:16;26:8

**relief (1)**
12:7
**represent (1)**
9:12
**representations (1)**
25:16
**represented (1)**
26:9
**reproduction (2)**
19:15,17
**require (1)**
26:12
**required (2)**
26:4,6
**reserve (4)**
10:1;11:1,11;13:8
**resolution (2)**
14:12;25:17
**resolve (1)**
12:15
**resolved (3)**
12:21;14:22;15:4
**resolves (1)**
13:23
**respect (5)**
7:4;15:9,10;20:18;
26:2
**response (4)**
6:24;7:16;8:15;15:2
**responsibility (1)**
16:20
**responsible (1)**
16:15
**result (1)**
13:17
**Reuters (1)**
6:14
**reviewed (1)**
16:17
**Richards (4)**
6:7;17:4;18:3,17
**RICHARDSON (8)**
5:9;21:5,6,8,11,15,19,
23
**rid (1)**
7:14
**rides (1)**
23:5
**right (18)**
10:1,16;11:12;12:2,
17;14:3,15,21;15:21;
19:4,6;22:16,21;24:13,
17;25:7;26:13,23
**rights (5)**
8:7;11:1,11;12:19;
13:8
**rise (2)**
6:2;25:15
**Robins (3)**
10:19;21:24;25:18
**ROSNER (4)**
4:7;15:10;20:2;26:9
**roughly (1)**

18:3
**RUDNICK (4)**
4:2;15:11,16;16:9
**rule (1)**
7:3
**ruled (1)**
13:15
**rules (1)**
7:2
**ruling (1)**
11:22
**Running (1)**
6:11
**Rust (1)**
5:14
**Rust/Omni (1)**
17:3

**S**

**Sacramento (2)**
4:13;14:8
**same (2)**
13:16,17
**satisfied (1)**
19:6
**save (1)**
13:17
**saying (2)**
10:16;12:15
**scheduled (3)**
6:10;12:14;13:14
**Schwartz (2)**
16:4,15
**seated (1)**
6:3
**second (4)**
6:13;7:9;17:12;22:9
**Secretary (1)**
19:2
**section (2)**
7:12,16
**seeing (1)**
13:16
**seems (5)**
10:9;14:21;18:11;
23:13,24
**senior (1)**
15:24
**Service (6)**
18:18;19:20;20:11,18,
20,24
**serving (1)**
26:11
**set (1)**
7:2
**settlement (1)**
16:18
**seven (3)**
23:9,12,18
**short (1)**
16:6
**shown (2)**

20:15,23
**shows (4)**
17:12;18:23;19:15;
20:12
**signed (1)**
26:19
**SILVERBERG (8)**
4:4;15:13,15,16,16,18;
16:2;17:1
**similar (2)**
13:6,13
**simply (2)**
7:16;18:6
**single (1)**
13:22
**sitting (1)**
11:14
**situations (1)**
10:4
**six (3)**
23:1,18;25:3
**SMITH (1)**
5:12
**somebody (1)**
26:14
**sometime (1)**
9:25
**somewhat (1)**
16:23
**Sorry (2)**
22:15;25:1
**sound (1)**
23:15
**sounded (1)**
17:15
**speak (1)**
10:2
**specific (1)**
15:22
**spent (1)**
20:21
**squeezed (1)**
26:3
**stake (4)**
8:9,10;9:22;13:3
**stand (1)**
27:1
**standard (2)**
11:16;20:25
**standing (1)**
8:2
**state (3)**
13:14,22;19:2
**statement (1)**
16:18
**states (5)**
7:16;8:6;15:3;24:11;
25:14
**statue (1)**
7:10
**statute (3)**
7:10,15;8:1
**Steele (5)**

**CORINTHIAN COLLEGES, INC., et al.**
Case No. 15-10952 (KJC)

10:14;17:10,14;19:1,4

**Stern (1)**
11:19

**still (1)**
6:10

**stop (1)**
23:22

**Student (19)**
5:8;8:11,11;9:20,22,
23;10:17,19;11:7,10;
12:3,4,6,7,11;13:7;
16:11;23:2,10

**students (4)**
23:11,11,20;24:20

**submission (2)**
11:3;12:14

**submit (1)**
13:12

**submitted (2)**
8:14;14:13

**submitting (1)**
14:20

**suggest (1)**
13:15

**summary (2)**
8:20;17:8

**sure (4)**
10:25;16:20;23:21;
25:2

**surprise (1)**
16:25

---

**T**

---

**talk (2)**
14:1;26:20

**talking (2)**
15:24;24:10

**taxi (3)**
20:11,18,20

**tedious (1)**
26:5

**telephone (1)**
6:17

**TELEPHONICALLY (7)**
4:20,25;5:4,9,13,15;
21:6

**tells (1)**
11:20

**ten (1)**
10:16

**term (1)**
26:4

**terrible (1)**
16:7

**terribly (1)**
16:7

**thankful (1)**
14:11

**therefore (2)**
8:1,6

**there'll (1)**
12:13

---

**third (2)**
6:15;7:21

**Thomson (1)**
6:13

**thought (1)**
18:10

**three (2)**
22:23;23:10

**Tim (1)**
25:13

**timekeepers (1)**
26:10

**times (1)**
23:2

**today (7)**
6:9,17;9:23;12:22;
13:16;26:20,21

**together (1)**
13:22

**told (1)**
24:19

**took (1)**
10:6

**top (4)**
17:11;19:15;21:12;
22:7

**total (2)**
15:23;24:11

**transferred (2)**
12:4;16:14

**transportation (1)**
20:24

**travel (9)**
20:11,15,20;21:17,18,
19;23:4;24:6,6

**traveling (1)**
16:5

**tried (1)**
13:22

**trust (16)**
7:23;8:11;9:20,22,23;
10:20;11:8,10,25;12:3,4,
9,24;13:3,7;16:14

**trustee (16)**
6:8,23;7:15;8:8,11;
9:9,20;10:17;11:3;12:6,
11,12;15:3;24:11;25:12,
14

**Trustee's (1)**
26:2

**trying (2)**
10:9;11:6

**turn (5)**
15:11;17:4,7;20:1;
21:3

**twenty-seven (1)**
17:17

**two (1)**
7:24

**type (1)**
14:21

---

**U**

---

**ultimate (1)**
25:17

**under (11)**
7:15;8:1;9:19;11:16,
25;12:25;13:12;14:13,
20;18:2,8

**Understood (3)**
18:14;25:5,10

**unfortunate (1)**
18:1

**unfortunately (1)**
17:21

**UNISON (2)**
6:5;27:3

**United (3)**
15:3;24:10;25:14

**unless (1)**
20:21

**use (1)**
19:18

**useless (1)**
10:10

**usually (1)**
17:22

**utilization (1)**
20:18

---

**V**

---

**value (1)**
7:12

**various (2)**
16:12;24:19

**vendor (1)**
19:18

**view (1)**
7:3

**visit (1)**
16:24

**voluntarily (1)**
24:5

---

**W**

---

**waived (1)**
24:6

**Washington (1)**
17:17

**way (3)**
13:9;24:3,14

**weeded (1)**
25:21

**week (1)**
17:21

**welcome (1)**
21:2

**weren't (2)**
16:7;25:2

**what's (3)**
16:23;18:17;21:12

---

**Whenever (1)**
19:18

**Whereupon (1)**
27:4

**wholeheartedly (1)**
9:13

**WILLKIE (4)**
4:18;20:1,3,6

**Willkie's (1)**
20:17

**wish (2)**
11:23;25:12

**wishes (1)**
9:9

**within (3)**
9:19;13:6,7

**without (2)**
9:1;12:16

**wonder (1)**
11:18

**wondering (3)**
13:21;15:25;24:23

**working (6)**
14:11;15:4;17:21;
20:22;21:18,19

**works (1)**
20:19

**write (1)**
24:2

**write-down (1)**
26:12

**wrote (1)**
24:8

---