## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Case No. 15-10952 (KJC) |
| CORINTHIAN COLLEGES, INC., et al.,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: July 19, 2016 at 10:00 a.m. (ET)**<br>**Objection Deadline: June 21, 2016 at 4:00 p.m. (ET)** |

### MOTION OF JACK P. MASSIMINO, KENNETH S. ORD, AND ROBERT C. OWEN FOR CONFIRMATORY ORDER ALLOWING PAYMENT OF PROPOSED SETTLEMENT UNDER DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICIES

This motion (the "Motion")[2] is brought by Jack P. Massimino, Kenneth S. Ord,

and Robert C. Owen (collectively, "Movants" or the "Individual Defendants"), each a former

director, officer, and/or employee of Corinthian Colleges, Inc. ("Corinthian" or, together with its

debtor-subsidiaries and the Distribution Trustee (defined below), the "Debtors"). Movants seek

entry of an order, substantially in the form attached hereto as **Exhibit A**, confirming that (a) the

Plan Injunction (as defined in the Debtors' Third Amended and Modified Combined Disclosure

Statement and Chapter 11 Plan of Liquidation (the "Plan")) does not apply to the proceeds of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes
Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc.
(2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739),
ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation
(1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational
Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI
Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings
Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC
(1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle
Education, Inc. (3477).

[2]     Capitalized terms not defined herein are defined in the Motion of Current and Former Directors and
Officers of Corinthian Colleges, Inc., for Relief from the Automatic Stay, to the Extent Applicable, to
Allow Payment of Defense Costs and Other Loss Under Directors and Officers Liability Insurance
Policies [D.I. 149] (the "Stay Relief Motion").

certain directors and officers liability insurance policies (the "D&O Policies") and (b) that such proceeds may be used pursuant to the *Order Granting Motion of Current and Former Directors and Officers of Corinthian Colleges, Inc., for Relief from the Automatic Stay, to the Extent Applicable, to Allow Payment of Defense Costs and Other Loss Under Directors and Officers Liability Insurance Policies* [D.I. 287] (the "Comfort Order") to settle a putative federal securities class action against Corinthian and Movants.   The Plan and Comfort Order entitle Movants to access the proceeds of the D&O Policies in accordance with their terms, and the D&O Policies expressly cover the Settlement Amount and any related defense costs.   Movants therefore request this confirmatory order only out of an abundance of caution, and at the request of the Insurers as a condition to the settlement.   In the alternative, Movants seek entry of an order granting immediate relief from the Plan Injunction, to the extent it can be argued to apply, to allow the Insurers to pay the Settlement Amount (defined below) with the insurance proceeds, consistent with the terms and conditions of the D&O Policies.   In support of this Motion, Movants respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion, and venue is proper in this district, pursuant to the Plan and *Order Confirming Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [D.I. 913] (the "Confirmation Order").[3]

---

[3]   "This Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to: (f) hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan . . . ."  Confirmation Order ¶ 36.

## RELEVANT BACKGROUND

### A.    The Bankruptcy Proceedings

2.    On May 4, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    On May 18, 2015, Movants, among others, filed the Stay Relief Motion, seeking an order that the automatic stay did not apply to the D&O Policies.  Alternatively, to the extent the stay applied, Movants requested an order granting relief from the stay to allow Movants to receive payments from the Insurers, consistent with Movants' rights under the D&O Policies, to fund accrued and future defense costs and other losses incurred in connection with various lawsuits and investigations involving the Movants, each in his capacity as a director, officer, and/or employee of Corinthian.

4.    On June 8, 2015, the Court entered the Comfort Order, which modified the automatic stay, to the extent applicable, "to allow the Insurers to make payments or advancements of proceeds to the Movants under the D&O Policies in accordance with the terms and conditions of the D&O Policies and this Order."  Comfort Order ¶ 9.  The Comfort Order did not modify the D&O Policies and all parties reserved their rights thereunder.  *See* Comfort Order ¶ 5.

5.    On August 28, 2015, the Court entered the Confirmation Order.  The confirmed Plan expressly preserves Movants' rights to access the D&O Policies in accordance with the policies' terms and consistent with the Comfort Order.  *See* Plan § IX.E ("For the avoidance of doubt, individual insureds under the D&O Policies shall continue to have access to proceeds of the D&O Policies, consistent with the [Comfort Order] . . . [and] such coverage shall

remain in full force and effect for [the] benefit of such individual insureds . . . pursuant to the terms of [the D&O Policies].").

6.      On September 22, 2015, the Plan went effective and the automatic stay imposed by section 362 of the Bankruptcy Code terminated and was replaced with the Plan Injunction.  *See* D.I. 1014; Plan § XIII.  On the same date, Craig R. Jalbert became distribution trustee (the "Distribution Trustee") for the distribution trust (the "Distribution Trust") established in accordance with the Plan.  The Distribution Trust was vested with "all of the Debtors' rights and their Estates' rights under . . . the D&O Policies . . . for the benefit of the Beneficiaries of the Distribution Trust and all of the beneficiaries of such policies."  Plan IX.E.

**B.      The D&O Policies**

7.      Before the Petition Date, Corinthian purchased the D&O Policies for the benefit of its directors, officers, and employees (collectively, the "Insured Persons").  The D&O Policies are "claims-made" policies that insure against any Loss arising from any Claim against the Insured Persons, and in some cases Corinthian itself, that is made (or deemed to be made) during the applicable policy period.

8.      Although the D&O Policies cover Corinthian and the other Debtors for certain Claims, that coverage is contractually subordinate to the coverage afforded to the Insured Persons.  In particular, the D&O Policies include or incorporate order-of-payments clauses (the "Order-of-Payments Clauses"), which expressly give priority to payments due to the Insured Persons for Losses on covered Claims, as compared to any coverage owed to or on behalf of the Debtors.  In other words, covered Losses of all Insured Persons must be paid *before* any Losses of the Debtors.  By virtue of the Order-of-Payments Clauses, the rights of Insured Persons to the proceeds of the D&O Policies are superior to any rights of the Debtors to such proceeds.  Subject

4

to certain conditions not relevant to this Motion, Movants and the other Insured Persons are entitled under the D&O Policies, Comfort Order, Confirmation Order, and Plan to have the Insurers cover Losses suffered in connection with covered Claims.  Under the express terms of the D&O Policies, Losses include *settlements* up to policy limits.

C.      **The California Action and Proposed Settlement**

9.      On June 20, 2013, a putative class action (the "California Action") was filed against Corinthian and Movants (together with Corinthian, the "Defendants"), generally alleging violations of federal securities laws on behalf of a purported class of Corinthian investors (the "Class Action Plaintiffs," and together with Movants, the "Class Action Parties") over the period from February 1, 2011, to October 11, 2013.  The case was originally filed in the United States District Court for the Southern District of New York, but was subsequently transferred to the United States District Court for the Central District of California and captioned *Erickson v. Corinthian et al.*, Case No. 2:13-cv-07466-GHK-PJW (C.D. Cal.).  Although all litigation against Corinthian was automatically stayed as a result of its bankruptcy filing, the dispute proceeded as to Movants.

10.     After almost three years of litigation and mediation, the Class Action Parties have reached and entered into the attached Second Amended Stipulation of Settlement (the "Stipulation"),[4] which sets forth the terms of an agreement (the "Proposed Settlement") resolving the California Action, subject to approval by the Court in that action.  On May 25, 2016, the Court in the California Action preliminarily approved the Stipulation pursuant to the *Order Preliminarily Approving Settlement and Providing for Notice* attached hereto as **Exhibit C**.

---

[4]     A copy of the Second Amended Stipulation of Settlement is attached hereto as **Exhibit B**.

11.    Among other things, the Proposed Settlement provides certain releases to Corinthian and Movants[5] in exchange for a settlement payment of $3,500,000 (the "Settlement Amount") into a settlement fund (the "Settlement Fund") to be distributed pursuant to the Proposed Settlement.[6]  The Proposed Settlement is conditioned upon, among other things, this Court confirming that the Settlement Amount may be paid from the proceeds of the D&O Policies pursuant to the Plan and Comfort Order.

## RELIEF REQUESTED

12.    By this Motion, Movants respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, confirming that the proceeds of the D&O Policies are not subject to the Plan Injunction and may be used by the Insurers to fund the Settlement Amount in accordance with the Comfort Order or, in the alternative, granting immediate relief from the Plan Injunction to allow the Insurers to pay the Settlement Amount, consistent with the terms and conditions of the D&O Policies.

## BASIS FOR RELIEF REQUESTED

13.    Movants seek relief by the Motion only out of an abundance of caution. As mentioned above, the Plan and Comfort Order entitle Movants to access the proceeds of the

---

[5]    The Stipulation defines "Released Parties" as "Corinthian Colleges, Inc., the Individual Defendants, and each of Corinthian's or an Individual Defendant's past or present directors, officers, employees, partners, principals, members, insurers, co-insurers, re-insurers, controlling shareholders, attorneys, advisors, accountants, auditors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, estates, executors, administrators, heirs, related or affiliated entities, any entity in which Corinthian or an Individual Defendant has a controlling interest, any member of any Individual Defendant's immediate family, or any trust of which any Individual Defendant is the settlor or which is for the benefit of any member of an Individual Defendant's immediate family."  Stipulation ¶ 1.31.  The Stipulation further clarifies that "[a]ll Released Parties (other than the Individual Defendants) are intended third-party beneficiaries of this Stipulation of Settlement."  Id.  Simply stated, all of the Debtors and Movants are released from the Settled Claims (as defined in the Stipulation).

[6]    The Settlement Amount shall be funded by the Insurers under the D&O Policies.  Movants have no personal obligation to pay the Settlement Amount or any portion thereof.

6

D&O Policies in accordance with their terms.  The D&O Policies expressly cover the Settlement

Amount and any related defense costs.  Accordingly, Movants respectfully submit that they are

entitled to the insurance proceeds in connection with the California Action without having to

obtain relief from the Plan Injunction because the Plan Injunction does not apply to the insurance

proceeds.[7]  Nevertheless, out of an abundance of caution and at the request of the Insurers as a

condition to the settlement, Movants seek relief from the Plan Injunction to the extent it can be

argued to apply.

## A.     The Standard for Relief from a Plan Injunction is "Cause"

14.     Courts apply the "cause" standard found in section 362(d)(1) of the

Bankruptcy Code, which governs relief from the automatic stay, by analogy to requests for relief

from a plan injunction.  *See, e.g., In re WorldCom, Inc.*, 2006 WL 2270379, at *2 (S.D.N.Y.

Aug. 8, 2006) (noting that the bankruptcy court treated a motion to lift the automatic stay as a

request to lift the plan injunction and the district court likewise considered whether lifting the

plan injunction was appropriate "by analogy" to a decision to lift the automatic stay).  Similar to

the automatic stay prior to the effective date, a chapter 11 plan injunction will typically operate

to bar the commencement or continuation of any action to recover assets of the debtor in

contravention of the plan.  *See In re Bi-Lo, LLC*, 2010 WL 5591691, at *4 (Bankr. D.S.C. Aug.

13, 2010).  Accordingly, courts apply the same "cause" standard in the plan injunction context.

*See id.*; *In re WorldCom, Inc.*, 325 B.R. 511, 523 (Bankr. S.D.N.Y. 2005) (finding that cause is

the standard for modifying a plan injunction); *In re Fucilo*, 2002 WL 1008935, at *9 (Bankr.

S.D.N.Y. Jan. 24, 2002) ("Determining whether relief from the permanent injunction is

---

[7]     Even if the Plan did not expressly authorize Movants to access the insurance proceeds, the Plan
Injunction would not apply because proceeds payable to Movants under the D&O Policies are not
property of the estate.  *See First Fidelity Bank v. McAteer*, 985 F.2d 114, 117–19 (3d Cir. 1993).  The
following discussion provides further justification for granting the relief requested by this Motion.

warranted under appropriate circumstances should be analyzed pursuant to a cause standard.").

15.     Specifically, section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"    11 U.S.C. § 362(d)(1).   In considering whether to grant relief from the stay, and from a plan injunction by analogy, the Court should consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether the hardship to the non-bankrupt party by maintenance of the stay considerable outweighs the hardship to the debtor." *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).[8]

## B.     Cause Exists to Modify the Plan Injunction, to the Extent Applicable, to Allow Payment of the Settlement Amount

16.     For the same reasons that cause existed to lift the automatic stay pursuant to the Comfort Order, cause exists to modify the Plan Injunction to allow payment of the Settlement Amount under the D&O Policies.   *See Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512–14 (Bankr. D. Del. 2004) (holding that proceeds of a directors and officers liability insurance policy, which also provided direct and indemnification coverage to the debtor, were not property of the estate, and alternatively holding that even if they were, cause existed to lift the stay and allow payments

---

[8]     In *Downey*, the Court also referenced "[t]he probability of the creditor prevailing on the merits" as a factor in determining whether relief from the automatic stay was appropriate. *Downey*, 428 B.R. at 609.   Movants submit that this factor does not apply here.   If Movants were seeking to pursue litigation *against* the Debtors, the merits of that litigation may be relevant to whether the Plan Injunction should be lifted. *See, e.g.*, *In re Cont'l Airlines*, 152 B.R. 420, 424 (Bankr. D. Del. 1993). But Movants do not seek to pursue litigation against the Debtors.   And the relief that Movants do seek—access to the proceeds of the D&O Policies, consistent with their terms—is not contingent on the merits of any litigation claim, but instead follows from the plain and unambiguous terms of the D&O Policies.

under the policy); *In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001) (holding that proceeds of a directors and officers liability insurance policy, which provided direct and indemnification coverage to the debtor, ear-marked to fund a securities class action settlement were not estate property and finding cause to lift the stay for a portion of the proceeds subject to indemnification claims that were possibly property of the estate).

17.    First, there will be no prejudice to the Debtors from lifting the Plan Injunction to allow the Insurers to transfer the Settlement Amount to the Settlement Fund.  Even if the Debtors have an interest in the proceeds of the D&O Policies, that interest would not be impaired by lifting the Plan Injunction because any coverage for those entities is contractually subordinate to the rights of Movants and other Insured Persons. *See In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008) ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid.").  Indeed, the "owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition." *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995).  As such, the Debtors are not prejudiced by being held to the terms of the D&O Policies through the Court's authorization of the settlement payment. *See, e.g.*, *In re Cont'l Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal citations omitted).

18.    Moreover, authorizing payment of the Settlement Amount will not interfere with the Debtors' reorganization because the relief requested herein is consistent with

the Debtors' confirmed Plan and does not impair any of the Debtors' rights under the D&O

Policies.  As the Plan states, "coverage [under the D&O Policies] shall remain in full force and

effect for [the] benefit of such individual insureds and for the Estates pursuant to the terms of all

such policies."  Plan § IX.E.  Accordingly, any order granting the relief requested herein will

only further the intent behind and rights provided in the Plan.

19.    Second, absent relief from the Plan Injunction, Movants would suffer

substantial hardship.  Without payment of the Settlement Amount, Movants would be forced to

continue litigating the California Action until a final judicial resolution.  Given the complexity of

the underlying claims, litigation would likely—and needlessly—persist for months, if not years,

placing a significant burden on Movants to further defend against the claims asserted.  This

burden is heightened by the fact that the coverage under the D&O Policies is already

substantially depleted.[9]   Similarly, denying payment of the Settlement Amount from the

insurance proceeds would be tantamount to requiring Movants to be personally liable for any

damages awarded to the Class Action Plaintiffs.  Such a result would impose a significant and

potentially debilitating financial burden on Movants.  Conversely, if the requested relief is

granted, the Debtors would be entitled to the same rights under the D&O Policies that the

Debtors enjoyed prepetition and thus would suffer no harm.

20.    In short, the balance of equities is not a close question here.  Absent relief

from the Plan Injunction, Movants face significant and potentially irreparable harm, as they

would be deprived of the critical funds that they need—and to which they are unambiguously

entitled—to fund the Proposed Settlement.  By contrast, the Debtors would not be harmed by

---

[9]    As of the filing of this Motion, the coverage under the D&O Policies has been
substantially depleted.  If the California Action were to proceed to trial, any remaining
coverage under the D&O Policies would be consumed by defense counsel fees and
expenses, leaving the Movants with no coverage to fund their defense.

modifying the Plan Injunction because they are not entitled to the proceeds payable on behalf of the Insured Persons.

21.     For the foregoing reasons, Movants respectfully submit cause exists for the Court to modify the Plan Injunction, to the extent applicable, to allow the Insurers to advance the Settlement Amount to the Settlement Fund, pursuant to the terms and conditions of the D&O Policies.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

22.     To the extent applicable, Movants request a waiver of the 14-day stay period set forth in Bankruptcy Rule 4001(a)(3).  Specifically, Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).  A decision to waive the stay is committed to the sound discretion of the bankruptcy court.  *Foster v. Wynne*, 2012 WL 4458476, at *3 (W.D. Va. June 5, 2012) ("the rule does not require the bankruptcy court to find that there is 'good cause' or any other similar type of condition for waiving this default stay period").  Because Movants merely to seek to enforce their rights under the Comfort Order and Plan and no party would be prejudiced by an order granting the relief requested herein, Movants respectfully submit that the circumstances justify a waiver of Bankruptcy Rule 4001(a)(3), if applicable.

## NOTICE

23.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Distribution Trustee; (iii) counsel to the Student Trustee; and (iv) all parties that have requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, Movants submit that no other or

further notice is necessary.

## NO PRIOR REQUEST

24.    No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Movants respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) confirming that the proceeds of the D&O Policies are not subject to the Plan Injunction and may be used by the Insurers to fund the Settlement Amount in accordance with the Comfort Order or, in the alternative, granting immediate relief from the Plan Injunction to allow the Insurers to pay the Settlement Amount with the insurance proceeds, and (ii) granting such other relief as may be just and proper.


Dated:  June 7, 2016                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP
        Wilmington, Delaware

                                                    */s/ Erin R. Fay*
                                                    Robert J. Dehney (No. 3578)
                                                    Curtis S. Miller (No. 4583)
                                                    Erin R. Fay (No. 5268)
                                                    1201 North Market Street
                                                    P.O. Box 1347
                                                    Wilmington, Delaware 19899-1347
                                                    Telephone: (302) 658-9200
                                                    Facsmile: (302) 658-3989
                                                    rdehney@mnat.com
                                                    cmiller@mnat.com
                                                    efay@mnat.com

                                                    *Counsel to Jack P. Massimino, Kenneth S. Ord,
                                                    and Robert C. Owen*

10131680.1