**<u>EXHIBIT B</u>**

**2008-09 Policy**

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

91222 (7/06)

# AIG AIG EXECUTIVE LIABILITY SM

Insurance provided by the following member of American International Group, Inc.

## National Union Fire Insurance Company of Pittsburgh, Pa. ®

A capital stock company

### EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

POLICY NUMBER: *364-21-32*          REPLACEMENT OF POLICY NUMBER: *713-21-87*

### DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED ENTITY:**  *CORINTHIAN COLLEGES INC* (herein "**Named Entity**") | |
| 1(a) | MAILING ADDRESS:  *6 HUTTON CENTRE DRIVE SUITE 400 SANTA ANA, CA 92707* | |
| 1(b) | STATE OF INCORPORATION/FORMATION: *Delaware* | |
| 2 | **POLICY PERIOD:**  From: *March 31, 2008*      To: *March 31, 2009* 12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | **POLICY AGGREGATE LIMIT OF LIABILITY** (herein "**Limit of Liability**") For all **Loss**, in  the aggregate, under this policy including **Defense Costs:**                                    *$10,000,000* | |
| 4 | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** –          (See Clause 6 for details.) | |
| 4(a) | **Securities Claims:**  *$1,000,000* | 4(b)  **Employment Practices Claims:** *$1,000,000* |
| 4(c) | All other **Claims:**    *$1,000,000* | |

*7037045*

| | |
|---|---|

**ITEMS** (continued)

| 5. | **CONTINUITY DATE** (herein "**Continuity Date**") | | |
|---|---|---|---|
| 5(a) | Coverages A and B, other than **Outside Entity Executive** coverage: *July 1, 1995* | 5(b) | **Outside Entity Executive** coverage, including Coverage C: — The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity**. |
| 5(c) | Coverage D: *February 4, 2002* | | |

**6**    **PREMIUM:** *$484,000*

      *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $14,097 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
      *A copy of the TRIA disclosure sent with the original quote is attached hereto.*

| 7 | **CRISISFUND**<sup>SM</sup> limit: | | |
|---|---|---|---|
| 7(a) | **Crisis Loss:** *$50,000* | 7(b) | Additional **CRISISFUND**<sup>SM</sup> for **Delisting Crisis Loss:** *$25,000* |

**8**    **NAME AND ADDRESS OF INSURER** (herein "**Insurer**"):
*National Union Fire Insurance Company of Pittsburgh, Pa.*
*175 Water Street*
*New York, NY 10038*

This policy is issued only by the insurance company indicated in this Item 8.

*7037045*

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (APPLICABLE TO CERTIFIED AND NON-CERTIFIED ACTS)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury-in concurrence with the Secretary of State, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *CORINTHIAN COLLEGES INC*

Policy Number: *364-21-32*
Policy Period Effective Date From: *March 31, 2008*     To: *March 31, 2009*

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.


_Elizabeth M. Tuck_
SECRETARY

PRESIDENT

AUTHORIZED REPRESENTATIVE


COUNTERSIGNATURE & DATE

COUNTERSIGNED AT


ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES
505 N BRAND BLVD
STE 600
GLENDALE, CA 91203-3018


7037045

75010 (2/00)   **COPY**

# AIG AIG EXECUTIVE LIABILITY SM

Insurance provided by the following member of American International Group, Inc.

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability.* This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person:* This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

### COVERAGE D: CRISISFUND SM INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund** SM, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

## 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

the **Insurer,** or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

    (1) a written demand for monetary, non–monetary or injunctive relief;

    (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non–monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

    (3) a civil, criminal, administrative or regulatory investigation of an **Insured Person:**

        (i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

        (ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person.**

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim.**

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund** $^{SM}$ " means:

    (1) in the case of all **Crisis Loss,** other than **Delisting Crisis Loss,** the dollar amount set forth in Item 7(a) of the Declarations; and

    (2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured,** but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization.**

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization,** whether such employee is in a supervisory, co–worker or subordinate position or otherwise, including any full–time, part–time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation.**

(i) "**Employment Practices Violation**" means any actual or alleged:

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, "**Employment Practices Violation**" shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) "**Executive**" means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(k) "**Foreign Jurisdiction**" means any jurisdiction, other than the United States or any of its territories or possessions.

(l) "**Foreign Policy**" means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then "**Foreign Policy**" means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term "**Foreign Policy**" shall not include any partnership managerial, pension trust or professional liability coverage.

(m) "**Indemnifiable Loss**" means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n) **"Insured"** means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) **"Insured Person"** means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive**:

(p) **"Loss"** means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, **"Loss"** (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd–2(g)(2)(B); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non–Indemnifiable Loss** in connection therewith.

(q) **"Management Control"** means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by–laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) **"No Liability"** means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) **"Non–Indemnifiable Loss"** means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(t) **"Organization"** means:

    (1) the **Named Entity**;

    (2) each **Subsidiary**; and

    (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

(u) **"Outside Entity"** means any: (1) not-for-profit entity; or (2) other entity listed as an **"Outside Entity"** in an endorsement attached to this policy.

(v) **"Outside Entity Executive"** means any: (1) **Executive** of an **Organization** who is or was acting at the specific written request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(w) **"Policy Period"** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. **"Waste"** includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) **"Securities Claim"** means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

    (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

        (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

        (b) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

    (2) brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**.

Notwithstanding the foregoing, the term **"Securities Claim"** shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

(z) **"Subsidiary"** means: (1) any for-profit entity that is not formed as a partnership of which the **Named Entity** has **Management Control** ("Controlled Entity") on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**; and (2) any not-for-profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an **Organization**.

(aa) **"Wrongful Act"** means:

    (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**:

(i) with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Organization**, but solely in regard to a **Securities Claim**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 4. EXCLUSIONS

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

(1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

(2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

(3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

(4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

(5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

**5. LIMIT OF LIABILITY (FOR ALL LOSS–INCLUDING DEFENSE COSTS)**

The **Limit of Liability** stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund**$^{SM}$ shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund**$^{SM}$. The **CrisisFund**$^{SM}$ shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.*

## 6.  RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i)  Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii)  Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii)  Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

## 7.  NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a)  An **Organization** or an **Insured** shall, as acondition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1)  the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2)  within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

(b)   If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c)   If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured**  and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

8.   **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The **Insurer** does not, however, under this policy, assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them. The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this policy. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the **Insurer**.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organization** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non-**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right, to requestan offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

    (1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a "**Transaction**"), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions*: "**Subsidiary**" also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

    (1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

    (2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a "**Subsidiary**" only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter "**Auto-Subsidiary Period**");

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives*: Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes*: In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Organization** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An Organization ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

## 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

## 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

## 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**ALASKA**

**Davis Wright Tremaine**
*David W. Oesting*
701 W. Eighth Avenue, Suite 800, Anchorage, AK 99501–3468 (907)257–5300
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer*
1007 W. Third Ave., Ste. 100, Anchorage, AK 99501 (907)222–7100
Class Action Approved

**CALIFORNIA**

**Bingham McCutchen, LLP**
*David M. Balabanian / Dale E. Barnes*
3 Embarcadero Center, San Francisco, CA 94111 (415)393–2626
Class Action Approved

*Mary T. Huser*
1900 University Avenue, East Palo Alto, CA 94303–1212 (650)849–4914
Class Action Approved

*Susan L. Hoffman*
355 South Grand Avenue, Los Angeles, CA 90071–1560 (213)680–6416
Class Action Approved

**Cooley Godward Kronish, LLP**
*William E. Grauer (858)550-6050 / Philip C. Tencer (858)550-6068 / Koji F. Fukumura (858)550-6008*
4401 Eastgate Mall, San Diego, CA 92121–1909 (858)550–6000
Class Action Approved

*Stephen C. Neal (650)843-5182 / William S. Freeman (650)843-5037 / John C. Dwyer (650)843-5228*
3175 Hanover Street, Palo Alto, CA 94304–1130 (650)843–5000
Class Action Approved

*Paul A. Renne (415)693-2073 / John C. Dwyer (650)843-5228*
One Maritime Plaza, 20th Floor, San Francisco, CA 94111–3580 (415)693–2000
Class Action Approved

**Davis Wright Tremaine**
*Martin Fineman*
One Embarcadero Center, Suite 600, San Francisco, CA 94111–3834 (415)276–6500
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Shirli Fabbri Weiss / David Priebe*
2000 University Avenue, East Palo Alto, CA 94303 (650)833–2000
Class Action Approved

*Shirli Fabbri Weiss / Robert Brownlie*
4365 Executive Drive, Suite 1100, San Diego, CA 92121 (858)677–1400
Class Action Approved

Revised (2/08)                              Page 1

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Fenwick & West, LLP**
*Susan S. Muck*
Embarcadero Center West, 275 Battery Street, San Francisco, CA 94111 (415)875-2300
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*Dean J. Kitchens (213)229-7413*
333 S. Grand Avenue, Los Angeles, CA 90071-3197 (213)229-7413
Class Action Approved

*Wayne W. Smith / Meryl L. Young*
Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, CA 92614-8557 (949)451-3800
Class Action Approved

**Heller, Ehrman, White & McAuliffe**
*Douglas M. Schwab / M. Laurence Popofsky / Michael J. Shepard*
333 Bush Street, San Francisco, CA 94104-2878 (415)772-6000
Class Action Approved

*Darryl L. Snider / Jerry L. Marks*
601 South Figueroa Street, 40th Floor, Los Angeles, CA 90017-5758 (213)689-0200
Class Action Approved

*Norman J. Blears*
275 Middlefield Road, Menlo Park, CA 94025-3506 (650)324-7000
Class Action Approved

*David E. Kleinfeld*
4350 La Jolla Village Drive, 7th Floor, San Diego, CA 92122-1246 (858)450-8400
Class Action Approved

**Irell & Manella, LLP**
*David Siegel / Daniel P. Lefler*
1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276 (310)277-1010
Class Action Approved

**Katten Muchin Rosenman, LLP**
*Bruce Vanyo (310)788-4401*
2029 Century Park East, Suite 2600, Los Angeles, CA 90067-3012 (310)788-4400
Class Action Approved

**Latham & Watkins**
*Paul H. Dawes (650)463-2626 / John C. Tang (650)328-4600*
135 Commonwealth Drive, Menlo Park, CA 94025-1105 (650)328-4600
Class Action Approved

*Miles N. Ruthberg (213)891-8754 / Pamela S. Palmer (213)891-8435 / Mark W. Rappel (213)891-8156 / Peter W. Devereaux (213)891-8622 / Charles W. Cox (213)891-8178 / Jamie L. Wine (213)485-1234*
633 West Fifth Street, Suite 4000, Los Angeles, CA 90071 (213)485-1234
Class Action Approved

*Michael J. Weaver (619)238-3012 / Peter H. Benzian (619)236-1234 / Julia E. Parry (619)236-1234*
600 West Broadway, Suite 1800, San Diego, CA 92101-3375 (619)236-1234
Class Action Approved

Revised (2/08)                          Page 2

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

*Paul H. Dawes (650)463-2626 / Peter A. Wald (415)395-8006 / Darius C. Ogloza (415)391-0600 / James K. Lynch (415)395-8265 / Michele F. Kyrouz*
505 Montgomery Street, Suite 1900, San Francisco, CA 94111-2562 (415)391-0600
Class Action Approved

*Miles N. Ruthberg (213)891-8754 / Peter W. Devereaux (213)891-8622 / Pamela S. Palmer (213)891-8435 / Jon D. Anderson (714)755-8217 / Virginia S. Grogan (714)755-8206*
650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626 (714)540-1235
Class Action Approved

**Morrison & Foerster, LLP**
*Melvin R. Goldman (415)268-7311 / Paul T. Friedman (415)268-7444 / Jordan D. Eth (415)268-7176 / Darryl P. Rains (650)813-5866*
425 Market Street, San Francisco, CA 94105 (415)268-7000
Class Action Approved

*Robert S. Stern (213)892-5484 / Mark R. McDonald (213)892-5810*
555 West 5th Street, Suite 3500, Los Angeles, CA 90013 (213)892-5200
Class Action Approved

**Munger, Tolles & Olson**
*Marc Dworsky (213)683-9256 / Robert Dell Angelo (213)683-9540*
355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 (213)683-9100
Class Action Approved

**O'Melveny & Myers, LLP**
*Seth Aronson (213)430-7486 / Amy J. Longo (213)430-8351*
400 South Hope St., 15th Floor, Los Angeles, CA 90071-2899 (213)430-6000
Class Action Approved

*Michael G. Yoder (949)823-7936 / Phillip R. Kaplan*
610 Newport Center, 17th Floor, Newport Beach, CA 92660 (949)760-9600
Class Action Approved

*Daniel H. Bookin (415)984-8786 / Michael F. Tubach*
275 Battery Street, San Francisco, CA 94111 (415)984-8700
Class Action Approved

**Orrick Herrington & Sutcliffe, LLP**
*W. Reece Bader*
1000 Marsh Road, Menlo Park, CA 94025 (650)614-7400
Class Action Approved

*William F. Alderman / Michael D. Torpey (415)773-5932 / James E. Burns, Jr. (415)773-5935*
Old Federal Reserve Bank Building, 400 Sansome Street, San Francisco, CA 94111
(415)392-1122
Class Action Approved

**Paul, Hastings, Janofsky & Walker, LLP**
*Howard M. Privette / William F. Sullivan / John A. Reding / Peter M. Stone / Christopher H. McGrath*
515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (213)683-6000
Class Action Approved

Revised (2/08)                    Page 3

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Pillsbury Winthrop Shaw Pittman, LLP**
*Bruce A. Ericson (415)983-1560*
50 Fremont Street, San Francisco, CA 94105 (415)983-1000
Class Action Approved

*Bruce A. Ericson (415)983-1560*
2475 Hanover Street, Palo Alto, CA 94304-1114 (650)233-4500
Class Action Approved

725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017 (213)488-7100
Class Action Approved

*Richard M. Segal*
101 West Broadway, Suite 1800 (SBC Building), San Diego, CA 92101 (619)234-5000
Class Action Approved

**Shearman & Sterling**
*Jeffrey S. Facter (415)616-1205 / Stephen D. Hibbard (415)616-1174*
555 California Street, San Francisco, CA 94104 (415)616-1100
Class Action Approved

**Simpson Thacher & Bartlett**
*Chet Kronenberg / Seth A. Ribner*
1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067 (310)407-7500
Class Action Approved

*George M. Newcombe / James G. Kreissman*
3373 Hillview Avenue, Palo Alto, CA 94304 (650)251-5000
Class Action Approved

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*James E. Lyons (415)984-6470*
Four Embarcadero Center, San Francisco, CA 94111 (415)984-6400
Class Action Approved

**Sullivan & Cromwell**
*Robert A. Sacks*
1888 Century Park East, Los Angeles, CA 90067-1725 (310)712-6600
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Boris Feldman / Steven M. Schatz / Jerome Birn (650)320-4858 / Nicki Locker (650)320-4888 /*
*Douglas Clark (650)320-4824 / Keith Eggleton (650)320-4893*
650 Page Mill Road, Palo Alto, CA 94304-1050 (650)493-9300
Class Action Approved

**COLORADO**

**Cooley Godward Kronish, LLP**
*James E. Nesland*
380 Interlocken Crescent, Suite 900, Broomfield, CO 80021-8023 (720)566-4000
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*George Curtis*
1801 California Street, Suite 4100, Denver, CO 80202 (303)298-5700
Class Action Approved

Revised (2/08)                              Page 4

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Hogan & Hartson**
*Daniel F. Shea*
One Tabor Center, 1200 Seventeenth St., Suite 1500, Denver, CO 80202 (303)899-7300
Class Action Approved

## DELAWARE

**Blank Rome, LLP**
*Thomas P. Preston / Neal C. Belgam*
Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801 (302)425-6473
Class Action Approved

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Barry Klayman*
Wilmington Trust Center, 1100 N. Market Street, Suite 1001, Wilmington, DE 19801
(302)777-5860
Class Action Approved

## DISTRICT OF COLUMBIA

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000
Class Action Approved

**Cahill Gordon & Reindel**
*Donald J. Mulvihill*
1990 K Street, N.W., Suite 950, Washington, DC 20006 (202)862-8900
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*David Clarke, Jr. (202)861-6300 / Robert J. Mathias (410)580-4209 / James D. Mathias / Mark Muedeking (202)861-3900 / Deborah R. Meshulam (202)861-6470*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900
Class Action Approved

**Fulbright & Jaworski, LLP**
*Stephen M. McNabb*
Market Square, 801 Pennsylvania Ave., NW, Washington, DC 20004-2623 (202)662-0200
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*F. Joseph Warin / John C. Millian*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500
Class Action Approved

**Greenberg Traurig, LLP**
*Joe R. Reeder / Alan Foster*
800 Connecticut Avenue, NW, Suite 500, Washington, DC 20006 (202)331-3100
Class Action Approved

**Hogan & Hartson**
*Ty Cobb*
555 Thirteenth Street, NW, Washington, DC 20004 (202)637-5600
Class Action Approved

Revised (2/08)                         Page 5

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / William R. Baker, III*
*(202)637-1001 / Everett C. (Kip) Johnson, Jr. (202)637-2260 / Christian Word (703)456-5226*
555 Eleventh Street, NW, Suite 1000, Washington, DC 20004-1304 (202)637-2200
Class Action Approved

**LeBoeuf, Lamb, Greene & MacRae, LLP**
*Ralph C. Ferrara (202)986-8020 / Lyle Roberts (202)986-8029*
1875 Connecticut Avenue, NW, Suite 1200, Washington, DC 20009-5715 (202)986-8000
Class Action Approved

**O'Melveny & Myers, LLP**
*Jeffrey Kilduff (202)383-5383*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300
Class Action Approved

**Shearman & Sterling**
*Jonathan L. Greenblatt (202)508-8070 / Thomas S. Martin (202)508-8040*
801 Pennsylvania Ave., N.W., Washington, DC 20004-2604 (202)508-8000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Thomas C. Green (202)736-8069 / Mark D. Hopson (202)736-8188 / Michael D. Warden*
*(202)736-8080*
1501 K Street, N.W., Washington, DC 20005 (202)736-8000
Class Action Approved

**Sullivan & Cromwell**
*Daryl A. Libow / Margaret K. Pfeiffer*
1701 Pennsylvania Avenue, N.W., Washington, DC 20006-5805 (202)956-7500
Class Action Approved

**Williams & Connolly, LLP**
*John K. Villa*
725 Twelfth Street, N.W., Washington, DC 20005 (202)434-5000
Class Action Approved

**Willkie Farr & Gallagher**
*Kevin B. Clark (202)303-1105*
1875 K Street, N.W., Washington, DC 20006-1238 (202)303-1000
Class Action Approved

**WilmerHale**
*Andrew Weissman (202)663-6612 / John Valentine (202)663-6131*
2445 M Street, N.W., Washington, DC 20037 (202)663-6000
Class Action Approved

**FLORIDA**

**Akerman Senterfitt & Eidson, PA**
*Brian P. Miller (305)982-5626*
SunTrust International Center, 28th Floor, Miami, FL 33131 (305)374-5600
Class Action Approved

Revised (2/08)                              Page 6

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

*J. Thomas Cardwell*
CNL Center II at City Commons, 420 South Orange Avenue, Suite 1200, Orlando, FL 32801
(407)423-4000
Class Action Approved

**Carlton Fields**
*Steven J. Brodie (305)539-7302 / Nancy H. Henry*
4000 International Place, 100 S.E. 2nd Street, Suite 4000, Miami, FL 33131 (305)530-0050
Class Action Approved

*Gary L. Sasso*
One Progress Plaza, 200 Central Avenue, Suite 2300, St. Petersburg, FL 33701-4352
(727)821-7000
Class Action Approved

*Steven J. Brodie (305)539-7302*
4221 West Boy Scout Boulevard, 10th Floor, Tampa, FL 33607 (813)223-7000
Class Action Approved

**Greenberg Traurig, LLP**
*Bradford D. Kaufman*
777 South Flagler Drive, Suite 300, East, West Palm Beach, FL 33401 (561)650-7900
Class Action Approved

*Hilarie Bass, Esq.*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500
Class Action Approved

**Holland & Knight, LLP**
*Tracy A. Nichols / George E. Schulz, Jr.*
50 North Laura Street, Suite 3900, Jacksonville, FL 32202 (904)353-2000
Class Action Approved

*Tracy A. Nichols / Mitchell Eliot Herr / Gregory A. Baldwin / Louise Brais*
701 Brickell Avenue, Suite 3000, Miami, FL 33131 (305)374-8500
Class Action Approved

*Tracy A. Nichols / Michael L. Chapman*
100 North Tampa Street, Suite 4100, Tampa, FL 33602 (813)227-8500
Class Action Approved

*Robert R. Feagin, III / Elizabeth L. Bevington*
315 South Calhoun Street, Suite 600, Tallahassee, FL 32301 (850)224-7000
Class Action Approved

*Tracy A. Nichols / Scott Newman*
625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401 (561)833-2000
Class Action Approved

*William Wilson*
200 South Orange Avenue, Suite 2600, Orlando, FL 32801 (407)425-8500
Class Action Approved

**McGuireWoods, LLP**
*David M. Wells / Stephen D. Busch (804)775-4378*
Bank of America Tower, 50 North Laura Street, Jacksonville, FL 32202 (904)798-3200
Class Action Approved

Revised (2/08)                                    Page 7

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Squire Sanders & Dempsey, LLP**
*Lewis F. Murphy (305)577-2957 / Wendy Leavitt (305)577-2894*
200 South Biscayne Boulevard, Suite 4000, Miami, FL 33131-2398 (305)577-7000
Class Action Approved

**White & Case, LLP**
*Charles C. Kline, Esq.*
Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4900, Miami, FL 33131-2352
(305)371-2700
Class Action Approved

**GEORGIA**

**Alston & Bird, LLP**
*Peter Q. Bassett (404)881-7343 / Todd R. David (404)881-7357*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000
Class Action Approved

**King & Spalding**
*M. Robert Thornton / Michael R. Smith*
1180 Peachtree Street, Atlanta, GA 30309 (404)572-4600
Class Action Approved

**Paul, Hastings, Janofsky & Walker, LLP**
*J. Allen Maines*
600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308-2222 (404)815-2400
Class Action Approved

**Smith, Gambrell & Russell, LLP**
*John G. Despriet*
Promenade II, Suite 3100, 1230 Peachtree Rd., N.E., Atlanta, GA 30309-3592 (404)815-3730
Class Action Approved

**Womble, Carlyle, Sandridge & Rice**
*Robert R. Ambler, Jr. (404)879-2424 / Nisbet S. Kendrick (404)888-7488*
One Atlantic Center, 1201 West Peachtree, Suite 3500, Atlanta, GA 30309 (404)872-7000
Class Action Approved

**ILLINOIS**

**DLA Piper Rudnick Gray Cary US, LLP**
*Samuel B. Isaacson / Michael S. Poulos*
203 North LaSalle Street, Suite 1900, Chicago, IL 60601-1293 (312)368-4000
Class Action Approved

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen Hennessy / Bonita L. Stone*
525 W. Monroe Street, Suite 1600, Chicago, IL 60661-3693 (312)902-5200
Class Action Approved

**Kirkland & Ellis**
*Robert J. Kopecky*
200 East Randolph Drive, Chicago, IL 60601 (312)861-2000
Class Action Approved

Revised (2/08)                           Page 8

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**McDermott Will & Emery, LLP**
*Joel G. Chefitz (312)984-6484 / Steven P. Handler / Steven S. Scholes / William P. Schuman*
227 West Monroe Street, Chicago, IL 60606 (312)372-2000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Hillie R. Sheppard / Eugene A. Schoon / Walter C. Carlson*
1 South Dearborn Street, Chicago, IL 60603 (312)853-7734
Class Action Approved

**Sonnenschein, Nath & Rosenthal**
*Christopher Q. King*
8000 Sears Tower, Chicago, IL 60606 (312)876-8224
Class Action Approved

## MARYLAND

**DLA Piper Rudnick Gray Cary US, LLP**
*Mark Muedeking (410)580-3000*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000
Class Action Approved

## MASSACHUSETTS

**Bingham McCutchen, LLP**
*Jordan D. Hershman*
150 Federal Street, Boston, MA 02110-1726 (617)951-8000
Class Action Approved

**Edwards Angell Palmer & Dodge, LLP**
*John D. Hughes*
101 Federal Street, Boston, MA 02110-1800 (617)951-3373
Class Action Approved

**Foley Hoag, LLP**
*Nicholas C. Theodorou (617)832-1163 / Lisa C. Wood (617)832-1117*
Seaport World Trade Center West, 155 Seaport Boulevard, Boston, MA 02210-2600
(617)832-1000
Class Action Approved

**Goodwin Procter, LLP**
*Stephen D. Poss / Brian E. Pastuszenski / R. Todd Cronan / James S. Dittmar / Carl E. Metzger*
Exchange Place, 53 State Street, Boston, MA 02109-2881 (617)570-1000
Class Action Approved

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**
*Peter M. Saparoff / Patrick J. Sharkey*
One Financial Center, Boston, MA 02111 (617)542-6000
Class Action Approved

**Ropes & Gray**
*John D. Donovan, Jr.*
One International Place, Boston, MA 02110-2624 (617)951-7566
Class Action Approved

Revised (2/08)                    Page 9

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Thomas J. Dougherty*
One Beacon Street, Boston, MA 02108 (617)573-4820
Class Action Approved

**WilmerHale**
*Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson*
60 State Street, Boston, MA 02109 (617)526-6000
Class Action Approved

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Edward J. Pluimer / J. Jackson / Peter W. Carter (612)340-5635 / Roger J. Magnuson*
50 South Sixth Street, Suite #1500, Minneapolis, MN 55402-1498 (612)340-2600
Class Action Approved

**Faegre & Benson, LLP**
*Robert L. Schnell / Thomas L. Kimer*
90 South Seventh Street, Minneapolis, MN 55402-3901 (612)336-3000
Class Action Approved

**Winthrop & Weinstine, PA**
*David P. Pearson (612)604-6692 / Thomas H. Boyd*
Suite 3500, 225 South 6th Street, Minneapolis, MN 55402-4629 (612)604-6400
Class Action Approved

**NEW YORK**

**Arnold & Porter**
*Kent A. Yalowitz / Scott B. Schreiber (202)942-5672*
399 Park Avenue, New York, NY 10022-4690 (212)715-1000
Class Action Approved

**Blank Rome, LLP**
*Robert J. Mittman (212)885-5555*
The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (212)885-5555
Class Action Approved

**Cadwalader, Wickersham & Taft**
*Gregory A. Markel / Howard R. Hawkins, Jr. / Jonathan M. Hoff*
One World Financial Center, New York, NY 10281 (212)504-6000
Class Action Approved

**Cahill Gordon & Reindel**
*Charles A. Gilman (212)701-3403 / David G. Januszewski (212)701-3352 / Thomas J. Kavaler (212)701-3406 / Jonathan D. Thier (212)701-3992*
Eighty Pine Street, New York, NY 10005 (212)701-3000
Class Action Approved

**Clifford Chance US, LLP**
*James B. Weidner / John K. Carroll / Mark Holland*
31 West 52nd Street, New York, NY 10019-6131 (212)878-8000
Class Action Approved

Revised (2/08)                    Page 10

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Cravath, Swaine & Moore**
*Evan R. Chesler / Francis P. Barron / Julie A. North / Keith R. Hummel / Paul C. Saunders / Peter*
*T. Barbur / Richard W. Clary / Robert H. Baron / Ronald S. Rolfe / Rory O. Millson / Thomas G.*

*Rafferty*
Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475 (212)474-1000
Class Action Approved

**DLA Piper Rudnick Gray Cary US, LLP**
*Joseph G. Finnerty, III / Keara M. Gordon / David E. Nachman / John J. Clarke*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000
Class Action Approved

**Fried, Frank, Harris, Shriver & Jacobson**
*William G. McGuinness / Alexander R. Sussman / Debra M. Torres / Douglas H. Flaum / Gregg*
*L. Weiner / John A. Borek*
One New York Plaza, New York, NY 10004-1980 (212)859-8000
Class Action Approved

**Fulbright & Jaworski, LLP**
*Robert D. Owen / Daniel R. Murdock (212)318-3385 / Philip M. Smith (212)318-3329*
666 Fifth Avenue, New York, NY 10103-3198 (212)318-3000
Class Action Approved

**Gibson, Dunn & Crutcher, LLP**
*Wesley G. Howell / Robert F. Serio / Mitchell A. Karlan (212)351-3827*
200 Park Avenue, New York, NY 10166-0193 (212)351-4000
Class Action Approved

**Greenberg Traurig, LLP**
*Brian S. Cousin (212)801-9200 / Geoffrey Berman / Karen Bitar / William Briendel / Michael*
*Burrows / Adam Cole / Roger Kaplan / Robert A. Horowitz / Ronald Lefton / Jeffrey Mann / Alan*
*Mansfield / Stephen Saxl / Jeffrey Sklaroff / Toby Soli / Kenneth A. Lapatine*
200 Park Avenue, New York, NY 10022 (212)801-9200
Class Action Approved

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Robert W. Gottlieb / Joel W. Sternman*
575 Madison Avenue, New York, NY 10022-2585 (212)940-8800
Class Action Approved

**Kaye Scholer, LLP**
*Fredric W. Yerman (212)836-8663 / Phillip A. Geraci (212)836-8659*
425 Park Avenue, New York, NY 10022 (212)836-8663
Class Action Approved

**Kramer Levin Naftalis & Frankel, LLP**
*Gary P. Naftalis / Alan R. Friedman / Robert N. Holtzman / Jonathan M. Wagner*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100
Class Action Approved

**Mayer, Brown Rowe & Maw**
*Richard A. Spehr / Steven Wolowitz / Joseph DeSimone*
1675 Broadway, New York, NY 10019 (212)506-2500
Class Action Approved

Revised (2/08)                    Page 11

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Milbank, Tweed, Hadley & McCloy**
*Michael L. Hirschfeld / Scott A. Edelman*
1 Chase Manhattan Plaza, New York, NY 10005 (212)530-5149
Class Action Approved

**Morrison & Foerster, LLP**
*Anthony M. Radice (212)468-8020 / Jack C. Auspitz (212)468-8046*
1290 Avenue of the Americas, New York, NY 10104 (212)468-8000
Class Action Approved

**Paul, Hastings, Janofsky & Walker, LLP**
*Barry Sher / James D. Wareham*
Park Avenue Tower, 75 E. 55th Street, New York, NY 10022 (212)318-6000
Class Action Approved

**Paul, Weiss, Rifkind, Wharton & Garrison**
*Daniel J. Beller / Martin Flumenbaum / Claudia Hammerman / Brad S. Karp / Daniel J. Kramer / Mark F. Pomerantz / Richard A. Rosen*
1285 Avenue of the Americas, New York, NY 10019-6064 (212)373-3000
Class Action Approved

**Proskauer Rose, LLP**
*Gregg M. Mashberg*
1585 Broadway, New York, NY 10036-8299 (212)969-3000
Class Action Approved

**Schulte Roth & Zabel, LLP**
*Betty Santangelo / Howard O. Godnick / Irwin J. Sugarman / Robert M. Abrahams*
919 Third Avenue, New York, NY 10022 (212)756-2000
Class Action Approved

**Shearman & Sterling**
*Jeremy G. Epstein (212)848-4169 / Steven F. Molo (212)848-7456 / Brian H. Polovoy (212)848-4703 / Stuart J. Baskin (212)848-4974*
599 Lexington Avenue, New York, NY 10022 (212)848-8000
Class Action Approved

**Sidley Austin Brown & Wood, LLP**
*Theodore N. Miller (213)896-6646 / Barry W. Rashkover / Steven M. Bierman / Robert Pietrzak*
787 Seventh Avenue, New York, NY 10019 (212)839-5300
Class Action Approved

**Simpson Thacher & Bartlett**
*Bruce D. Angiolillo / Michael J. Chepiga / Paul C. Curnin / Roy L. Reardon*
425 Lexington Avenue, New York, NY 10017 (212)455-2000
Class Action Approved

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Jonathan J. Lerner*
Four Times Square, New York, NY 10036 (212)735-2550
Class Action Approved

**Stroock & Stroock & Lavan, LLP**
*Laurence Greenwald / Melvin A. Brosterman / Robert Lewin*
180 Maiden Lane, New York, NY 10038 (212)806-5400
Class Action Approved

Revised (2/08)                                        Page 12

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Sullivan & Cromwell**
*D. Stuart Meiklejohn / Gandolfo V. DiBlasi / John L. Hardiman / John L. Warden / Philip L. Graham, Jr. / Richard H. Klapper*
125 Broad Street, New York, NY 10004-2498 (212)558-4000
Class Action Approved

**Wachtell, Lipton, Rosen & Katz**
*Paul Vizcarrondo (212)403-1208 / Ted Mirvis*
51 W. 52nd Street, 29th Floor, New York, NY 10019 (212)403-1000
Class Action Approved

**Weil, Gotshal & Manges, LLP**
*Greg A. Danilow / Irwin H. Warren / Joseph Allerhand / Jonathan D. Polkes (212)310-8881*
767 Fifth Avenue, New York, NY 10153 (212)310-8000
Class Action Approved

**Willkie Farr & Gallagher**
*Michael R. Young / Richard L. Posen / Stephen W. Greiner*
787 Seventh Avenue, New York, NY 10019-6099 (212)728-8000
Class Action Approved

**WilmerHale**
*Peter Vigeland / Robert B. McCaw*
520 Madison Ave., New York, NY 10022 (212)230-8800
Class Action Approved

## OHIO

**Jones, Day, Reavis & Pogue**
*John M. Newman, Jr. / John W. Edwards, II*
North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (216)586-3939
Class Action Approved

## OREGON

**Davis Wright Tremaine**
*John F. McGrory*
2300 First Interstate Tower, 1300 S.W. Fifth Avenue, Portland, OR 97201 (503)241-2300
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
101 S.W. Main Street, 15th Floor, Portland, OR 97204-3223 (503)221-0607
Class Action Approved

**Lane Powell Spears Lubersky, LLP**
*Milo Petranovich / Robert E. Maloney*
601 S.W. Second Avenue, Suite 2100, Portland, OR 97204 (503)778-2100
Class Action Approved

**Stoel Rives, LLP**
*Lois O. Rosenbaum*
900 SW 5th Avenue, Suite 2600, Portland, OR 97204 (503)224-3380
Class Action Approved

Revised (2/08)                    Page 13

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

### PENNSYLVANIA

**Blank Rome, LLP**
*Ian M. Comisky / Alan J. Hoffman*
One Logan Square, Philadelphia, PA 19103 (215)569-5500
Class Action Approved

**Buchanan Ingersoll & Rooney, PC**
*John R. Leathers*
One Oxford Centre, 20th Floor, 301 Grant Street, Pittsburgh, PA 15219-8800 (412)562-8800
Class Action Approved

**Dechert, LLP**
*Jeffrey G. Weil (215)994-2538 / Seymour Kurland (215)994-2235*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000
Class Action Approved

**Morgan, Lewis & Bockius, LLP**
*Marc Sonnenfeld (215)963-5572*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000
Class Action Approved

**Pepper Hamilton, LLP**
*Barbara W. Mather / Jon A. Baughman / Laurence Z. Shiekman (215)981-4347 / M. Duncan Grant / Robert L. Hickok (215)981-4583 / Thomas E. Zemaitis*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799 (215)981-4000
Class Action Approved

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Jerome J. Shestack / M. Norman Goldberger / Mark L. Alderman*
1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097 (215)977-2058
Class Action Approved

### TEXAS

**Akin, Gump, Strauss, Hauer & Feld, LLP**
*Paul R. Bessette (512)499-6250 / Edward S. Koppman / Orrin L. Harrison, III*
1700 Pacific Avenue, Suite 4100, Dallas, TX 75201 (214)969-2800
Class Action Approved

*Paul R. Bessette (512)499-6250*
1111 Louisiana Street, 44th Floor, Houston, TX 77002-5200 (713)220-5800

**Beirne, Maynard & Parsons, LLP**
*Jeffrey R. Parsons (713)960-7302*
1300 Post Oak Boulevard, Suite 2500, Houston, TX 77056-3000 (713)623-0887
Class Action Approved

**Carrington, Coleman, Sloman & Blumenthal, LLP**
*Fletcher L. Yarbrough / Bruce W. Collins / Tim Gavin*
901 Main Street, Suite 5500, Dallas, TX 75202 (214)855-3000
Class Action Approved

Revised (2/08)                         Page 14

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

# APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Fulbright & Jaworski, LLP**
*Frank G. Jones / Robert S. Harrell / Gerard G. Pecht*
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151
Class Action Approved

*Karl G. Dial / Michael A. Swartzendruber*
2200 Ross Avenue, Suite 2800, Dallas, TX 75201 (214)855-8000
Class Action Approved

**King & Spalding**
*Mark K. Glasser*
1100 Louisiana, Suite 4000, Houston, TX 77002 (713)751-3212
Class Action Approved

**Locke Liddell & Sapp, LLP**
*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
2200 Ross Avenue, Suite 2200, Dallas, TX 75201-6776 (214)740-8000
Class Action Approved

*Charles R. Parker (713)226-1469*
3400 JPMorgan Chase Tower, 600 Travis, Houston, TX 77002 (713)226-1200
Class Action Approved

*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
100 Congress Avenue, Suite 300, Austin, TX 78701-4042 (512)305-4700
Class Action Approved

**Thompson & Knight, LLP**
*Timothy R. McCormick*
1700 Pacific Avenue, Suite 3300, Dallas, TX 75201 (214)969-1103
Class Action Approved

*Timothy R. McCormick*
98 San Jacinto Boulevard, Suite 1200, Austin, TX 78701 (512)469-6100
Class Action Approved

*Timothy R. McCormick*
333 Clay Street, Suite 3300, Houston, TX 77002 (713)654-8111
Class Action Approved

*Timothy R. McCormick*
Burnett Plaza, Suite 1600, 801 Cherry Street, Unit #1, Fort Worth, TX 76102-6881 (817)347-1700
Class Action Approved

**Vinson & Elkins, LLP**
*Walter B. Stuart / N. Scott Fletcher*
First City Tower, 1001 Fannin St., Suite 2300, Houston, TX 77002-6760 (713)758-2222
Class Action Approved

Revised (2/08)                    Page 15

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Weil, Gotshal & Manges, LLP**
*Ralph I. Miller*
100 Crescent Court, Dallas, TX 75201 (214)746–7700
Class Action Approved

*Ralph I. Miller*
700 Louisiana, Suite 1600, Houston, TX 77002 (713)546–5000
Class Action Approved

**VIRGINIA**

**Cooley Godward Kronish, LLP**
*Robert R. Vieth, Partner / Michael Klisch*
One Freedom Square, Reston Town Ctr., 11951 Freedom Dr., Reston, VA 20190–5656
(703)456–8000
Class Action Approved

**Greenberg Traurig, LLP**
*John Scalia (703)749-1300*
1750 Tysons Boulevard, 12th Fl., Tysons Corner, VA 22102 (703)749–1300
Class Action Approved

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / Christian Word (703)456-5226*
Two Freedom Square, 11955 Freedom Drive, Suite 500, Reston, VA 20190–5651 (703)456–1000
Class Action Approved

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378*
One James Center, 901 East Cary Street, Richmond, VA 23219 (804)775–1000
Class Action Approved

*Stephen D. Busch (804)775-4378 / Charles McIntyre*
1750 Tysons Boulevard, Suite 1800, McLean, VA 22102 (703)712–5000
Class Action Approved

**WilmerHale**
*Andrew Weissman (202)663-6612 / John Valentine (202)663-6131*
1600 Tysons Boulevard, 10th Floor, Tysons Corner, VA 22102 (703)251–9700
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Lyle Roberts / Trevor Chaplick (703)734-3100*
2 Fountain Square, Reston Town Ct., 11921 Freedom Drive, Suite 600, Reston, VA 20190–5634
(703)734–3100
Class Action Approved

**WASHINGTON**

**Davis Wright Tremaine**
*Stephen M. Rummage / Ladd B. Leavens*
2600 Century Square, 1501 Fourth Avenue, Seattle, WA 98101–1688 (206)622–3150
Class Action Approved

Revised (2/08)                    Page 16

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**DLA Piper Rudnick Gray Cary US, LLP**
*Stellman Keehnel*
701 Fifth Avenue, Suite 7000, Seattle, WA 98104 (206)839–4800
Class Action Approved

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
1111 Third Avenue, Suite 3400, Seattle, WA 98101-3299 (206)447-8998
Class Action Approved

**Heller, Ehrman, White & McAuliffe**
*George E. Greer*
701 Fifth Avenue, Suite 6100, Seattle, WA 98104-7098 (206)447-0900
Class Action Approved

**Lane Powell Spears Lubersky, LLP**
*James B. Stoetzer (206)277-9511 / Rudy A. Englund / Larry S. Gangnes / Christopher B. Wells*
1420 Fifth Avenue, Suite 4100, Seattle, WA 98101-2338 (206)223-7000
Class Action Approved

**Perkins Coie, LLP**
*Harry H. Schneider, Jr. / Ronald L. Berenstain*
1201 Third Avenue, Ste. 4800, Seattle, WA 98101-3099 (206)583-8888
Class Action Approved

**Wilson, Sonsini, Goodrich & Rosati**
*Barry M. Kaplan*
701 Fifth Avenue, Suite 5100, Seattle, WA 98104 (206)883-2500
Class Action Approved

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX B

**I.    DEFINITIONS**

(a)    "Crisis" means:

    (1)    a **Delisting Crisis**; or

    (2)    one of the following events which, in the good faith opinion of the Chief Financial Officer of an **Organization** did cause or is reasonably likely to cause a "**Material Effect on an Organization's Common Stock Price**":

        (i)    *Negative earning or sales announcement*

        The public announcement of an **Organization's** past or future earnings or sales, which is substantially less favorable than any of the following: (i) an **Organization's** prior year's earnings or sales for the same period; (ii) an **Organization's** prior public statements or projections regarding earnings or sales for such period; or (iii) an outside securities analyst's published estimate of an **Organization's** earnings or sales.

        (ii)    *Loss of a patent, trademark or copyright or major customer or contract*

        The public announcement of an unforeseen loss of: (i) an **Organization's** intellectual property rights for a patent, trademark or copyright, other than by expiration; (ii) a major customer or client of an **Organization**; or (iii) a major contract with an **Organization**.

        (iii)    *Product recall or delay*

        The public announcement of the recall of a major product of an **Organization** or the unforeseen delay in the production of a major product of an **Organization**.

        (iv)    *Mass tort*

        The public announcement or accusation that an **Organization** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

        (v)    *Employee layoffs or loss of key executive officer(s)*

        The public announcement of layoffs of **Employees** of an **Organization**. The death or resignation of one or more key **Executives** of the **Named Entity**.

        (vi)    *Elimination or suspension of dividend*

        The public announcement of the elimination or suspension of a regularly scheduled dividend previously being paid by an **Organization**.

        (vii)    *Write-off of assets*

        The public announcement that an **Organization** intends to write off a material amount of its assets.

75013 (2/00)    *COPY*

(viii)  *Debt restructuring or default*

> The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix)  *Bankruptcy*

> The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x)  *Governmental or regulatory litigation*

> The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)  *Unsolicited takeover bid*

> An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**^SM has been exhausted.

(b)  "**Crisis Firm**" means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)  "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)  "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

(e)   "**Delisting Crisis**" means written notice to an **Organization** that such **Organization**'s securities will be or have been delisted from an **Exchange**.

(f)   "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)   "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization**'s common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.   EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i)   any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii)   the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii)   the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.   PRE-APPROVED CRISIS FIRMS

(a)   For all **Crisis** (including a **Delisting Crisis**), **Crisis Firm(s)** means any public relations firm listed in (1) – (7) below:

(1)   ABERNATHY MACGREGOR
SCANLON
501 Madison Avenue
New York, NY 10022
(212) 371-5999
Contact: James T. M ᵃᶜ Gregor

(4)   KEKST AND COMPANY
437 Madison Avenue
New York, NY 10022
(212) 593-2655
Contact: Andrew Baer

(2)   BURSON-MARSTELLER
230 Park Avenue South
New York, NY 10003-1566
(212) 614-5236
Contact: Michael Claes

(5)   ROBINSON LERER & MONTGOMERY
75 Rockefeller Plaza, 6 ᵗʰ floor
New York, NY 10019
(212) 484-7721
Contact: Michael Gross

(3)   PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, D.C., 20037
(202) 457-6000
Contact: Thomas H. Boggs

(6)   SARD VERBINNEN & CO.
630 Third Avenue
New York, NY 10017
(212) 687-8080
Contact: Paul Verbinnen or George Sard

    (7)    SITRICK & COMPANY
            2029 Century Park East
            Suite 1750
            Los Angeles, CA 90067
            (310) 788−2850
            Contact: Michael Sitrick

(b)    Solely for **Delisting Crisis**, "**Crisis Firm(s)**" shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

**ENDORSEMENT# *1***

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CALIFORNIA AMENDATORY ENDORSEMENT**

Wherever used in this endorsement: 1) "Insurer" mean the insurance company which issued this policy;  and 2), "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Entity, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following is added any supersedes any provision to the contrary:

CANCELLATION

The First Named Insured shown in the declarations may cancel the policy by mailing or delivering to the Insurer advance written notice of cancellation.

If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

(1)    Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

(2)    A judgment by a court or an administrative tribunal that the named Insured has violated any law of this state of or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

(3)    Discovery of fraud or material misrepresentation by either of the following:

a)    The Insured or Other Insured(s) or his or her representative in obtaining the insurance; or

b)    The named Insured or his or her representative in pursuing a claim under the policy.

(4)    Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the named Insured or Other Insured(s) or a representative of same, which materially increase any of the risks insured against.

(5)    Failure by the named Insured or Other Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan if the failure materially increases any of the risks insured against.

(6)    A determination by the commissioner that the loss of, or changes in, an insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

*END 001*

ENDORSEMENT# *1*   (continued)

(7)   A determination by the commissioner that a continuation of the policy coverage could place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

(8)   A change by the named Insured or Other Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

Notice of cancellation shall be delivered or mailed to the producer of record and the named Insured at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

CONDITIONAL RENEWAL AND NONRENEWAL

If the Insurer decides not to renew the policy, or to increase the deductible, reduce the limits, eliminate coverages or raise premium more than 25%, the Insurer shall mail or deliver to the producer of record and the named Insured notice of nonrenewal at least sixty (60) days but no more than 120 days prior to the end of the policy period. The notice shall contain the reason for nonrenewal of the policy.

A notice of nonrenewal shall not be required in the following situations:

(1)   If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between the Insurer and a member of the insurance group.

(2)   If the policy has been extended for 90 days or less, provided that notice has been given in accordance with the nonrenewal notice requirements noted above.

(3)   If the Named Insured has obtained replacement coverage, or has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

(4)   If the policy is for a period of no more than 60 days and the Insured is notified at the time of issuance that it will not be renewed.

(5)   If the First Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

(6)   If the Insurer has made a written offer to the First Named Insured, in accordance with timeframes shown above to renew the policy under changed terms or conditions or at an increased premium rate.

If the Insurer fails to give timely notice, the policy of insurance shall be continued, with no change in its terms or conditions, for a period of 60 days after the Insurer gives notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 001*

**ENDORSEMENT# 2**

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### STATE AMENDATORY INCONSISTENT

In consideration of the premium charged, it is hereby understood and agreed that in the event that there is an inconsistency between a state amendatory attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law, the **Insurer** shall apply those terms and conditions of either the amendatory or the policy which are more favorable to the **Insured**.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**COPY**        **END 2**

**ENDORSEMENT# *3***

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number    *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that any
coverage provided under this policy for punitive, exemplary or multiple damages is
subject to any limitation of such coverage provided by California law, if applicable.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 003*

90143 (12/05)    *COPY*                    Page 1 of 1

**ENDORSEMENT# 4**

This endorsement, effective *12:01 am      March 31, 2008*          forms a part of
policy number    *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)   **Nuclear Material**  located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**; or

   (3)   the furnishing by an Insured or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear facility**" means:

   (a)   any nuclear reactor;

   (b)   any equipment or device designed or used for

      (1)   separating the isotopes of uranium or plutonium,

*END 004*

<u>ENDORSEMENT# *4*</u>   (continued)

(2)   processing or utilizing spent fuel, or

(3)   handling, processing or packaging wastes;

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear Material"** means source material, special nuclear material or byproduct material.

**"Nuclear Reactor"** means any apparatus designed or used to sustain nuclear fission in a self−supporting chain reaction or to contain a critical mass of fissionable material.

**"Source Material," "Special Nuclear Material,"** and **"Byproduct Material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent Fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

**"Waste"** means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 004*

**ENDORSEMENT#** *5*

This endorsement, effective *12:01 am*      *March 31, 2008*            forms a part of
policy number    *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
(WITH SECURITIES CLAIM CARVE-OUT)**

In consideration of the premium charged, it is hereby understood and agreed that the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured** alleging, arising out of, based upon or attributable to the
**Organization's** or any **Insured's** performance of or failure to perform professional
services for others, or any act(s), error(s) or omission(s) relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement
shall not apply to any **Securities Claim**, provided that such **Securities Claim** is instigated
and continued totally independent of, and totally without the solicitation of, or assistance
of, or active participation of, or intervention of, the **Organization** or any **Insured**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 005*

83569 (10/07)    *COPY*                    Page 1 of 1

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am      March 31, 2008*      forms a part of
policy number  *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS

In consideration of the premium charged, it is hereby understood and agreed that with
respect to the **Limit of Liability** of this policy $9,000,000 excess of the first $1,000,000
**Limit of Liability** of this policy, the **Insurer** shall not be liable for any **Loss** in connection
with any **Claim** (including but not limited to any derivative or representative class action(s))
made against any **Insured** alleging, arising out of, based upon or attributable to, as of the
February 4, 1999, any pending or prior: (1) litigation; or (2) administrative or regulatory
proceeding or investigation of which an **Insured** had notice, or alleging or derived from the
same or essentially the same facts as alleged in such pending or prior litigation or
administrative or regulatory proceeding or investigation.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**COPY**          **END 6**

ENDORSEMENT# 6

This endorsement, effective *12:01 am*     *March 31, 2008*     forms a part of
policy number   *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS

In consideration of the premium charged, it is hereby understood and agreed that with respect to the **Limit of Liability** of this policy $9,000,000 excess of the first $1,000,000 **Limit of Liability** of this policy, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class action(s)) made against any **Insured** alleging, arising out of, based upon or attributable to, as of the February 4, 1999, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**         **END 6**

ENDORSEMENT# 7

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ADDITION TO TERM DIRECTORS OR OFFICERS

In consideration of the premium charged, it is hereby understood and agreed that the term "Insured(s)" or "Director(s) or Officer(s)" is amended to include any "Governing Board Members of the Board of Directors" of the Company.

Further provided that for the purposes of the applicability of this endorsement, the Company will be conclusively deemed to have indemnified such individuals to the extent that the Company is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract or the Charter or By-laws of the Company (which are hereby deemed to adopt the broadest provisions of the law which determines or defines such rights of indemnity). The Company hereby agrees to indemnify the individuals to the fullest extent permitted by law including the making in good faith of any required application for court approval.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**          **END 7**

ENDORSEMENT# 8

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FOR-PROFIT EDUCATIONAL ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended as follows:

The Definition of **Insured Person** shall be amended to include the following at the end thereof:

> **Insured Person** shall also include any past, present or future member of the faculty, student teacher, teaching assistant, faculty aide, representative to an education association of which the **Organization** is a member, and any president, regent, chancellor, provost, treasurer, vice-president, dean, personnel director, governor, executive director, risk manager, university counsel, or other comparable senior administrator of the **Organization**, regardless of whether they are considered as an Employee of the **Organization** or as an independent contractor. **Insured Person** shall also include any administrator, association member, member manager or alumni council member of the **Organization**.

The Definition of **Loss** shall be amended to include the following at the end thereof:

GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

> Loss shall not include the return of funds which were received from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; provided, however, that with regard to **Claims** for **Wrongful Acts** arising out of the return, or request to return such funds, this policy shall pay Defense Costs up to an amount not to exceed $1,000,000 ("Government Funding Defense Costs Sublimit"). This Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability stated in the Item of the Declarations entitled Limit of Liability. With respect to any Defense Costs coverage afforded pursuant to this paragraph, it is understood that: the Insurer shall be liable to pay 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit, and subject to the Limit of Liability listed on the Declarations Page. It being a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the **Insureds** at their own risk and be uninsured.

It is further understood and agreed that solely with respect to the Governmental Funding Defense Cost coverage provided pursuant to the above paragraph, the No Liability retention waivers located in the section of the policy entitled RETENTION CLAUSE are deleted in their entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*        *END 8*

**ENDORSEMENT# *9***

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number    *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## "NO LIABILITY" PROVISION DELETED
### (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS ARISING OUT OF A SECURITIES CLAIM)

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

(1)    The Definition of and all provisions referring to **"No Liability"** are hereby deleted in their entirety.

(2)    Clause 6 **RETENTION CLAUSE** is deleted in its entirety and replaced by the following:

**6.    RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

(i)    Item 4(a) applies to **Loss** that arises out of a **Securities Claim**;

(ii)    Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii)    Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss**.

(3)    Item 4 of the Declarations is hereby deleted in its entirety and replaced by the following:

| 4 | RETENTION: Not applicable to **Non-Indemnifiable Loss** | | |
|---|---|---|---|
| 4(a) | Securities Claims: *$1,000,000* | 4(b) | Employment *$1,000,000* Practices Claims: |
| 4(c) | All other **Claims**: *$1,000,000* | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 009*

89371 (5/05)    *COPY*    Page 1 of 1

ENDORSEMENT# 10

( )                                                                     ( )

This endorsement, effective *12:01 am*      *March 31, 2008*          forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## AJG 2-2000 ENDORSEMENT

In consideration of the premium charged it is hereby understood and agreed that the policy
is hereby amended as follows:

### DEFINITION OF DEFENSE COSTS

(1)     Definition (f), **Defense Costs**, is hereby deleted in its entirety and replaced by the
        following:

   " **Defense Costs**" means reasonable and necessary fees, costs and expenses
   consented to by the **Insurer**, such consent not to be unreasonably withheld,
   provided that the **Company** and the **Insured** shall have complied with all of the
   terms and conditions of Clause 8, (including premiums for any appeal bond,
   attachment bond or similar bond arising out of a covered judgment, but without any
   obligation to apply for or furnish any such bond) resulting solely from the
   investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but
   excluding any compensation of any **Insured Person** or any **Employee** of an
   **Organization**.

(2)     Definition (p), **Loss**, is hereby amended by adding the following additional
        paragraphs at the end thereof:

   Notwithstanding the foregoing, with respect to all **Claims** (other than **Securities
   Claims** for which coverage is provided in paragraph (2) of this Definition (p), and
   other than **Employment Practices Claims**) subject to the policy's other terms,
   conditions and exclusions, including but not limited to exclusions relating to
   personal profit or advantage, illegal remuneration, deliberate fraud or criminal acts,
   **Loss** shall include punitive and/or exemplary damages imposed upon any **Insured(s)**.
   It is further understood and agreed that the enforceability of this paragraph shall be
   governed by such applicable law that most favors coverage for punitive and/or
   exemplary damages.

   It is further understood and agreed that, solely in regard to the coverage provided
   by the foregoing paragraph, the **Insurer** shall not be liable to make any payment for
   **Loss** in connection with any **Claim** made against an **Insured** arising out of, based
   upon or attributable to the committing of any dishonest act or any willful violation
   of any statute, rule or law by the **Insured** if a judgment of final adjudication or an
   alternative dispute resolution proceeding adverse to the Insured(s) establishes that
   such dishonest act or any willful violation of any statute, rule or law was
   committed; provided, that, the facts pertaining to and knowledge possessed by any
   **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of
   determining the applicability of the foregoing exclusion.

*COPY*                *END 10*

ENDORSEMENT# *10*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2008*        forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*


(3)    Definition (aa)(1)(ii) is hereby deleted in its entirety and replaced by the following:

    (ii)    with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim** and **Employment Practices Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(4)    The second paragraph of Clause 3 is hereby deleted in its entirety and replaced by the following:

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency, if requested in writing by the **Named Entity** prior to payment, or, in United States of America dollars, if such written request is not received, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

(5)    Exception (2) to Clause 4 Exclusion (i) is hereby deleted in its entirety and replaced by the following:

    (2)    any **Employment Practices Claim** brought by an **Insured Person,** other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of the **Named Entity**;

(6)    Clause 7(a)(2) is hereby deleted in its entirety and replaced by the following:

    (2)    within 60 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or **Discovery Period** (if applicable).


*COPY*            *END 10*

**ENDORSEMENT# *10*   (Co  nued)**

This endorsement, effective *12:01 am      March 31, 2008*                forms a part of
policy number  *364–21–32*
issued to   *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

(7)     Clause 12 (b)(1)  and 12(b)(2) are  hereby deleted  in their entirety  and replaced  by
        the following:

    (1)     whose assets total  less than 15%  of the total  consolidated assets of  each
        and every  **Organization** as  of the  creation  or acquisition  of such  for-profit
        entity; or

    (2)     whose assets total 15% or  more than the total consolidated  assets of each
        and every **Organization** as of the creation or acquisition, but such entity shall
        be a " **Subsidiary**" only: (i) for a  period of sixty (60)  days from the  date the
        **Named Entity** first  had **Management Control** of such  entity; or  (ii) until  the
        end of  the **Policy Period**, which  ever  ends  or occurs  first (hereinafter "
        **Auto-Subsidiary Period**");

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**              **END 10**

ENDORSEMENT# 11

This endorsement, effective *12:01 am*      *March 31, 2008*          forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CLAUSE 7(a)(2) AMENDATORY

## (45 DAYS)

In consideration of the premium charged, it is hereby understood and agreed that Clause
7(a)(2) is hereby deleted in its entirety and replaced with the following:

    (2)    within 45 days after the end of the **Policy Period** or the **Discovery Period** (if
    applicable), as long as such **Claim** was first made against an **Insured** within
    the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 11*

ENDORSEMENT# 12

This endorsement, effective *12:01 am*    *March 31, 2008*       forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CONDUCT EXCLUSIONS – FINAL ADJUDICATION

In consideration of the premium charged, it is hereby understood and agreed that in Clause
4. **EXCLUSIONS**, paragraphs (a), (b) and (c) are deleted in their entirety and replaced with
the following:

(a)   arising out of, based upon or attributable to the gaining of any profit or
      advantage to which any final adjudication establishes the **Insured** was not
      legally entitled;

(b)   arising out of, based upon or attributable to payments to an **Insured** of any
      remuneration without the previous approval of the stockholders or members
      of an **Organization**, once any such unapproved payments shall be established
      by any final adjudication to have been illegal;

(c)   arising out of, based upon or attributable to the committing of any deliberate
      criminal or deliberate fraudulent act by the **Insured** if any final adjudication
      establishes that such deliberate criminal or deliberate fraudulent act was
      committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

(c) American International Group, Inc.  All rights reserved.

_____
AUTHORIZED REPRESENTATIVE

**COPY**          **END 12**

**ENDORSEMENT# 13**

( )                                                                    ( )

This endorsement, effective  *12:01 am*     *March 31, 2008*          forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SUBROGATION CLAUSE AMENDED – FINAL ADJUDICATION

In consideration of  the premium charged,  it is hereby  understood and agreed  that **Clause
13. SUBROGATION** shall be deleted in its entirety and replaced with the following:

## 13. SUBROGATION

In the event of  any payment under this  policy, the **Insurer**  shall be subrogated to  the
extent of such payment to all of each and  every **Organization's** and **Insured's** rights of
recovery thereof,  and  each such  **Organization**  and **Insured**  shall  execute  all papers
required and shall do everything that may be necessary to secure  such rights including
the execution of any and  all documents necessary to enable  the **Insurer** effectively to
bring suit in the name  of each such **Organization** and  each such **Insured**. In  no event,
however, shall the **Insurer**  exercise its rights  of subrogation against  an **Insured** under
this policy unless such **Insured** has  been convicted of a deliberate  criminal act; or has
committed a deliberate  fraudulent act,  if any final  adjudication establishes  that such
deliberate fraudulent act  was committed; or  has obtained  any profit or  advantage to
which any final adjudication establishes the **Insured** was not legally entitled.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

(c) American International Group, Inc.  All rights reserved.

_____
AUTHORIZED REPRESENTATIVE

*COPY*            *END 13*

**ENDORSEMENT# 14**

This endorsement, effective *12:01 am    March 31, 2008*         forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EXCLUSION (m) AMENDED
### (FAIR LABOR STANDARDS ACT)

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), Clause 4. EXCLUSIONS is hereby amended as follows:

1)   Exclusion (m) is hereby deleted in its entirety and replaced with the following:

   (m)   for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto;

2)   The following exclusion is hereby added to the thereof:

   (aa)   alleging, arising out of, based upon or attributable to, directly or indirectly, claims for unpaid wages or overtime pay for hours actually worked or labor actually performed by any **Employee** of an **Organization**, for improper payroll deductions or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*            *END 14*

ENDORSEMENT# 15

This endorsement, effective *12:01 am    March 31, 2008*   forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SPECIFIC CLAIM EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of Clause 4. **EXCLUSIONS** (d) or (e) of the policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions referred to in items (1) through (11) below; (hereinafter " **Events"**); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

### EVENTS

(1)   Conway Investment Club, et al. v. Corinthian Colleges, Inc., et al., Case No. 2:04-CV-05025-R-CW in the United States District Court, Central District of California;

(2)   Jonathan Collet, et. al. v. David G. Moore, et al. and Frederick Davila, et. al. v. David G. Moore, et al., Lead Case No. 04-CC-07844 (consolidated with Case No. 04-CC-07895) in the Superior Court of the State of California, County of Orange;

(3)   Adrienne L. Travis, v. Rhondes Colleges, Inc., et al., Case No. 04-CA-1999 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(4)   Michael Satz, v. Rhodes Colleges, Inc et al., Case No. 04-CA-3954 in the Circuit Court for the Seventeenth Judicial Circuit of the State of Florida;

(5)   Jennifer Baker, et al. v. Corinthian Colleges, Inc., et al., Case No. 04-CA-4116 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(6)   Alan Alvarez, et al. v. Rhodes Colleges, Inc., et al., Case No. 04-CA-11323 in the Circuit Court for the Thirteenth Judicial Circuit of the State of Florida;

(7)   Nancy Tsai, et al. v. Corinthian Colleges, Inc., et al., Case No. BC326573 in the Superior Court of the State of California, County of Los Angeles;

(8)   (Alisa Kaputikyan v. Bryman College, et al., Case No. SC084791 in the Superior Court of the State of California, County of Los Angeles;

**COPY**          **END 15**

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number    *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(9)    Litigation served upon the Organization on February 4, 2005, and brought by twenty-four current or former medical assisting students from the Organization's National Institute of Technology campus in Long Beach, California, as referenced in the Organization's Form 10-Q dated February 9, 2005;

(10)    SEC informal inquiry of the Organization commenced by September 16, 2004 notification from SEC;

(11)    Inquiry by the California Attorney General's Office, including request by the Office that the Organization provide documentation regarding three of the Organization's California Bryman Colleges and certain other general Organization policies and procedures, as referenced in the Organization's Form 10-Q dated February 9, 2005;

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with:

(A)    any restatement, retraction, amendment or revision of in part or in whole:

(i)    any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports);

resulting from, arising out, based upon or attributable to any **Event** or the resolution of said **Events**; and

(B)    any **Claim** alleging, arising out of, based upon, attributable to or in any way related to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an "**Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in any **Event(s)**.

*COPY*        *END 15*

**ENDORSEMENT# 15    (Continued)**

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is understood and agreed that in the event a Claim is excluded pursuant to this endorsement, then such Claim shall be deemed to be noticed  to the Insurer pursuant to an in satisfaction of Clause 7 (b) of Policy No. 931-86-09 issued to the Named Entity, subject to all terms conditions and conditions of such policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**           **END 15**

ENDORSEMENT# 16

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to  *CORINTHIAN COLLEGES INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF THE APPLICATION ENDORSEMENT

### (FULL INDIVIDUAL SEVERABILITY; TOP 3 ORGANIZATION POSITIONS IMPUTED TO ORGANIZATION; NON-RESCINDABLE)

In consideration of the premium charged, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

## SEVERABILITY

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

With respect to any statements, warranties and representations contained in the **Application**, and solely with respect to the issue of whether coverage shall be afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**. However, in the event that any of the statements, warranties or representations is not accurately and completely disclosed in the **Application**, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations under:

(1)  Clause 1. Insuring Agreements, COVERAGE A, with respect to any **Insured Person** who knew of such inaccurate or incomplete statements, warranties or representations;

(2)  Clause 1, Insuring Agreements, Coverage B(ii), with respect to any **Organization** to the extent it indemnifies any **Insured Person** referenced in (i), above; and

(3)  Clause 1, Insuring Agreements, Coverage B(i), with respect to any **Organization** if any past or present chief executive officer. chief operating officer or chief financial officer of the **Named Entity** knew of such inaccurate or incomplete statements, warranties or representation,

whether or not such **Insured Person** knew that such facts were not accurately and completely disclosed in the **Application**.

*COPY*      *END 16*

**ENDORSEMENT# 16    (Continued)**

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number    *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*


by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


The **Insurer** shall not be entitled under any circumstances to rescind coverage under the
Policy with respect to any **Insured**, but such coverage will be subject to all other terms,
conditions and exclusions of the policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


AUTHORIZED REPRESENTATIVE

*COPY*        *END 16*

ENDORSEMENT# 17

This endorsement, effective *12:01 am*      *March 31, 2008*      forms a part of
policy number  *364-21-32*
issued to  *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### SECURITIES CLAIM DEFINITION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 2,
**DEFINITIONS**, " Securities Claim" is deleted in its entirety and replaced with the following:

" **Securities Claim**" means a **Claim**, other than an administrative or regulatory
proceeding against, or investigation of an **Organization**, made against any **Insured**:

1.    alleging a violation of any law, regulation or rule, whether statutory or
common law (including, but not limited to, the purchase or sale or offer or
solicitation of an offer to purchase or sell securities) which is:

  (i)    brought by any person or entity alleging, arising out of, based upon or
attributable to the purchase or sale or offer or solicitation of an offer
to purchase or sell any securities of an **Organization**; or

  (ii)    brought by a security holder or purchaser or seller of securities of an
**Organization**, with respect to such security holder's, purchaser's or
seller's interest in securities of such **Organization**; or

2.    brought derivatively on behalf of an **Organization** by a security holder of such
**Organization**.

Notwithstanding the foregoing, the term " **Securities Claim**" shall include an
administrative or regulatory proceeding against an **Organization**, but only if and only
during the time that such proceeding is also commended and continuously
maintained against an **Insured Person**.

The foregoing definition of **Securities Claim** shall not include any **Claim** brought by
any **Executive** or **Employee** of an **Organization** alleging, arising out of, based upon or
attributable to the loss of, or failure to receive or obtain, the benefit of stock, stock
warrants, stock options or other securities of an **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*            *END 17*

ENDORSEMENT# 18

This endorsement, effective *12:01 am*    *March 31, 2008*         forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### QUESTION 9 DELETED FROM RENEWAL APPLICATION

In consideration of the premium charged, it is hereby understood and agreed that Question
9 contained in the EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY
RENEWAL APPLICATION submitted by  the **Insureds** to the  **Insurer** in connection  with the
following policy:

        TITLE OF POLICY:
        POLICY NO.:
        POLICY PERIOD:

   shall be deleted from such application in its entirety.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE

*COPY*            *END 18*

( )    **ENDORSEMENT# 19**    ( )

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number    *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4.
EXCLUSIONS, paragraph(i) is deleted in its entirety and replaced with the following:

(i)    which is brought by or on behalf of an **Organization** or any **Insured Person**, other
than an **Employee** of an **Organization**; or which is brought by any security holder
or member of an **Organization**, whether directly or derivatively, unless such
security holder's or member's **Claim** is instigated and continued totally
independent of, and totally without the solicitation of, or assistance of, or active
participation of, or intervention of, any **Executive** of an **Organization** or any
**Organization**; provided, however, this exclusion shall not apply to:

(1)    any **Claim** brought by an **Insured Person** in the form of a cross-claim or
third-party claim for contribution or indemnity which is part of, and results
directly from, a **Claim** that is covered by this policy;

(2)    any **Employment Practices Claim** brought by an **Insured Person**, other than
an **Insured Person** who is or was a member of the Board of Directors (or
equivalent governing body) of an **Organization**;

(3)    in any bankruptcy proceeding by or against an **Organization**, any **Claim**
brought by the examiner, trustee, receiver, liquidator, rehabilitator or
creditors' committee (or any assignee thereof) of such **Organization**, if any;

(4)    any **Claim** brought by any past **Executive** of an **Organization** who has not
served as a duly elected or appointed director, officer, trustee, governor,
management committee member, member of the management board,
General Counsel or Risk Manager (or equivalent position) of or consultant
for an **Organization** for at least three (3) years prior to such **Claim** being
first made against any person; or

(5)    any **Claim** brought by an **Executive** of an **Organization** formed and operating
in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof,
provided that such **Claim** is brought and maintained outside the United
States, Canada or any other common law country (including any territories
thereof);

(6)    any **Securities Claim**, provided that such **Securities Claim** is instigated and
continued totally independent of, and totally without the solicitation of, or
assistance of, or active participation of, or intervention of, any **Organization**
or any **Executive** of an **Organization**; provided, however, solely with respect
to this subsection (6):

*COPY*        *END 19*

**ENDORSEMENT# *19*    (Co  ued)**

This endorsement, effective *12:01 am*        *March 31, 2008*              forms a part of
policy number    *364-21-32*
issued to    *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(a)  an **Executive's** engaging in any protected activity specified in 18
U.S.C. 1514A(a) ("whistleblower" protection pursuant to the
Sarbanes-Oxley Act of 2002) or any protected activity specified in
any other "whistleblower" protection pursuant to any similar state,
local or foreign securities laws; shall not be deemed to trigger this
exclusion.

Notwithstanding the forgoing exception, this exclusion (i) shall apply where the
actions of any **Executive** includes the filing of any proceeding or voluntarily
testifying, voluntarily participating in or voluntarily assisting (other than de
minimis assistance) in the filing or prosecution of any proceeding against an
Insured relating to any violation of any rule or regulation of the Securities and
Exchange Commission or any similar provision of any federal, state, local or
foreign rule or law relating to fraud against shareholders, other than such actions
in connection with a proceeding that is brought by the Securities and Exchange
Commission, any similar state, local or foreign regulatory body that regulates
securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

(c) American International Group, Inc.  All rights reserved.

AUTHORIZED REPRESENTATIVE

**COPY**            **END 19**

ENDORSEMENT# 20

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DOMESTIC PARTNER EXTENSION

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), such coverage as is afforded by this policy pursuant to Clause 20. **SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION** to the lawful spouse of any **Insured Person** under this policy shall also be extended to the legally recognized domestic partner of such **Insured Person.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**        **END 20**

ENDORSEMENT# 21

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADVANCEMENT OF LOSS AND RIGHT OF DIRECT RECOVERY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy
is amended as follows:

1.    Clause 6. **RETENTION CLAUSE** is amended to  include the following paragraph at the
end of such Clause:

It is further  understood and  agreed that  in the  event an  **Organization** refuses  or is
unable to pay  **Indemnifiable Loss** due  to **Financial Insolvency**,  then the **Insurer**  shall
commence advancing  such **Indemnifiable Loss** within  the  Retention, and  shall pay
such **Indemnifiable Loss**  in  excess  of the  Retention,  subject  to the  other terms,
conditions and exclusions of this policy,  provided that the **Insurer** shall be  entitled to
recover the amount of  such **Indemnifiable Loss** advanced within  the  Retention from
the **Organization** pursuant  to Clause  13.  **SUBROGATION AND  RIGHT  OF  DIRECT
RECOVERY AGAINST INSUREDS,** as amended herein.

" **Financial Insolvency**" means the:  (i)  appointment by  any state  or  federal official,
agency or court of a  receiver, conservator, liquidator, trustee,  rehabilitator or similar
official to take control of,  supervise, manage  or  liquidate an  **Organization**; (ii)  the
**Organization** becoming  a  debtor-in-possession pursuant  to  the  United  States
bankruptcy law;  or (iii)  a bankruptcy petition  is filed by  or against the  **Organization**,
and as to (i), (ii) or (iii), the  equivalent status outside the United States of America.

2.    Clause 13.  **SUBROGATION**  shall be  deleted  in  its entirety  and  replaced with  the
following:

### 13.   SUBROGATION AND RIGHT OF DIRECT RECOVERY AGAINST INSUREDS

(a)    In the  event of any payment under this policy, the  **Insurer** shall be
subrogated to  the  extent  of such  payment  to all  of each  and  every
**Organization's** and  **Insured's** rights of recovery thereof, and  each such
**Organization** and  **Insured** shall  execute  all papers  required and shall  do
everything that may be  necessary  to secure  such  rights (including,
without limitation, the  assertion of  indemnification or contribution rights),
including the execution of any and all documents  necessary to enable the
**Insurer** effectively to bring suit in the  name of each such **Organization** and
each such  **Insured**. In  no event,  however,  shall the  **Insurer** exercise  its
rights of subrogation against an  **Insured** under this policy  unless the
**Insurer** is  seeking  recovery  from  the  **Organization** pursuant  to
subparagraph (b)(i) of this Clause.

*COPY*          *END 21*

**ENDORSEMENT# 21    (Continued)**

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to  *CORINTHIAN COLLEGES INC*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (b)   In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss**, the **Insurer**:

        (i)   shall be subrogated to the **Insured Person's** right of recovery from the **Organization**, or in the event of a bankruptcy of the **Organization**, from the debtor-in-possession (or equivalent status outside the United States), of the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Organization** (hereinafter " **Retention Loss**"); and

        (ii)  shall have a direct contractual right under the policy to recover from the **Organization**, or in the event of a bankruptcy of the **Organization**, from the debtor-in-possession (or equivalent status outside the United States), the **Retention Loss**. Such direct contractual right of recovery against the **Organization** shall be in addition to and independent of the **Insurer's** subrogation rights pursuant to subparagraph (i) above.

    (c)   The **Insurer** shall have a direct contractual right under the policy to recover **Loss** paid under the policy from each and every **Insured**, severally and according to their respective interests, in the event and to the extent that such I nsureds shall not be entitled under this policy to payment of such **Loss**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**COPY**        **END 21**

ENDORSEMENT # 22

This endorsement, effective *12:01 am    March 31, 2008*    forms a part of
policy number  *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY EXECUTIVE
### (NO WRITTEN REQUEST)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 2. **DEFINITIONS**, paragraph (v), " **Outside Entity Executive**," is deleted in its entirety and replaced with the following:

(v)      " **Outside Entity Executive**" means any: (1) **Executive** of an **Organization** who is or was acting at the specific request or direction of, or with the knowledge and consent of, an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

In the event of a disagreement between the **Organization** and an **Outside Entity Executive** as to whether such **Insured** was acting "at the specific request or direction of the **Organization**," it is hereby understood and agreed that this policy shall abide by the determination of the **Organization** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** against such **Outside Entity Executive** is made. In the event no determination is made within such period, this policy shall apply as if the **Organization** determined that such **Outside Entity Executive** was not acting at the **Organization's** specific request or direction.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 22*

ENDORSEMENT# 23

( )                                                                            ( )

This endorsement, effective *12:01 am*      *March 31, 2008*          forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

## PUBLIC OFFERING ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that Clause 2.
**DEFINITIONS**, paragraph (p) " **Loss**," is amended by deleting subparagraph (6) thereof in its
entirety and replacing it with the following:

    (6)    matters which may be deemed uninsurable under  the law pursuant to which
this policy shall be construed, including but not limited to damages or
settlements which are in the nature of restitution, disgorgement or the return
of ill-gotten gains. Notwithstanding the foregoing subparagraph (6), the
**Insurer** shall not assert that the portion of any settlement in a  **Securities
Claim** arising out of  an initial public offering  or a subsequent  public offering
of securities of the  **Organization** constitutes uninsurable  loss due to  alleged
violations of Section 11 or 12 of the Securities Act of 1933 as amended.

It is further understood and agreed that Clause  **4. EXCLUSIONS** is amended by adding the
following at the end thereof:

    Notwithstanding anything  stated in  Clause 4.  **EXCLUSIONS** above,  Exclusions (a)
and (b) shall not apply to any **Securities Claim** arising out of an initial public  offering
or a subsequent public offering of securities of the **Organization**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 23*

ENDORSEMENT# 24

This endorsement, effective *12:01 am*   *March 31, 2008*      forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXCLUSION (j) AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that in Clause
4. **EXCLUSIONS**, paragraph (j) is deleted in its entirety and replaced with the following:

(j)     for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive**
of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any
**Executive** thereof; or which is brought by any security holder of the **Outside
Entity**, whether directly or derivatively, unless such security holder's **Claim** is
instigated and continued totally independent of, and totally without the
solicitation of, or assistance of, or active participation of, or intervention of
the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or
any **Executive** of an **Organization**; provided, however, this exclusion shall not
apply to:

(1)     any **Claim** brought by any **Executive** of the **Outside Entity** in the form of
a cross-claim or third-party claim or other claim for contribution or
indemnity which results directly from a **Claim** that is covered by this
policy;

(2)     any **Employment Practices Claim** brought by an **Executive** of the **Outside
Entity**, other than an **Executive** of the **Outside Entity** who is or was a
member of the Board of Directors (or equivalent governing body) of an
**Outside Entity**;

(3)     in any bankruptcy proceeding by or against an **Outside Entity**, any **Claim**
brought by the examiner, trustee, receiver, liquidator or rehabilitator (or
any assignee thereof) of such **Outside Entity**, if any;

(4)     any **Claim** brought by any past **Executive** of an **Outside Entity** who has
not served as a duly elected or appointed director, officer, trustee,
governor, management committee member, member of the management
board, General Counsel or Risk Manager (or equivalent position) of or
consultant for an **Outside Entity** for at least four (4) years prior to such
**Claim** being first made against any person; or

(5)     any **Claim** brought by an **Executive** of an **Outside Entity** formed and
operating in a **Foreign Jurisdiction** against any **Outside Entity Executive**
of such **Outside Entity**, provided that such **Claim** is brought and
maintained outside the United States, Canada or any other common law
country (including any territories thereof);

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 24*

**ENDORSEMENT#** *25*

This endorsement, effective *12:01 am      March 31, 2008*          forms a part of
policy number    *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

_____
AUTHORIZED REPRESENTATIVE

***END 025***

ENDORSEMENT# 26

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DISCOVERY CLAUSE AMENDED

### ONE YEAR BILATERAL PREMIUM @ 125%
### ALL OTHERS TBD

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. **DISCOVERY CLAUSE**) is hereby amended to the extent necessary for the policy to provide the following:

1.  Clause 10. **DISCOVERY CLAUSE** is deleted in its entirety and replaced with the following:

    **10.   DISCOVERY CLAUSE**

    Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of up to six years following the effective date of such cancellation or nonrenewal (the " Discovery Period"), upon payment of an " Additional Premium Amount" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

    The **Additional Premium Amount** for: (1) one year shall be 125% of the **Full Annual Premium** in the event of nonrenewal by the Insurer, and shall be 125% of the **Full Annual Premium** in the event of cancellation or nonrenewal by the **Named Entity**; and (2) two to six years in an amount as shall be determined by the **Insurer** in its sole and absolute discretion. As used herein, " Full Annual Premium" means the premium level in effect immediately prior to the end of the policy period.

    In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

*COPY*          *END 26*

**ENDORSEMENT# 26    (Continued)**

This endorsement, effective *12:01 am*    *March 31, 2008*    forms a part of
policy number   *364-21-32*
issued to   *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

The **Discovery Period** is not cancelable and the additional premium charged
shall be fully earned at inception.   This Clause 10 shall not apply to any
cancellation resulting from non-payment of premium.  The rights contained in
this Clause 10 shall terminate unless written notice of election of a
**Discovery Period** together with any additional premium due is received by the
**Insurer** no later than thirty (30) days subsequent to the effective date of the
nonrenewal or **Transaction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 26*

**ENDORSEMENT# *27***

This endorsement, effective *12:01 am*     *March 31, 2008*          forms a part of
policy number   *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 75010 | 02/00 | D00200 ADMITTED - DEC |
| 81285 | 01/03 | TRIA DEC DISCLOSURE FORM |
| 75011 | 02/00 | D00200 ADMITTED - POLICY |
| APPMAN | 02/08 | SECURITIES CLAIM PANEL COUNSEL LIST (PLEASE SEE WWW.BRIEFBASE.COM FOR THE CURRENT LIST OF PANEL COUNSEL FIRMS.) |
| 75013 | 02/00 | APPENDIX B CRISISFUND |
| 52133 | 03/07 | CALIFORNIA AMENDATORY - CANCELLATION/NONRENEWAL |
| MNSCPT | | STATE AMENDATORY INCONSISTENT |
| 90143 | 12/05 | CALIFORNIA PUNITIVE DAMAGES LAW ENDORSEMENT |
| 83550 | 11/03 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| 83569 | 10/07 | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION (WITH SECURITIES CLAIM CARVE-OUT) |
| MNSCPT | | PENDING AND PRIOR LITIGATION EXCLUSION FOR EXCESS LIMITS |
| MNSCPT | | ADDITION TO TERM DIRECTORS OR OFFICERS |
| MNSCPT | | FOR-PROFIT EDUCATIONAL ENDORSEMENT |
| 89371 | 05/05 | "NO LIABILITY" PROVISION DELETED (SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS ARISING OUT OF A SECURITIES CLAIM) |
| MNSCPT | | AJG 2-2000 ENDORSEMENT |
| MNSCPT | | CLAUSE 7(a)(2) AMENDATORY |
| MNSCPT | | CONDUCT EXCLUSIONS - FINAL ADJUDICATION |
| MNSCPT | | SUBROGATION CLAUSE AMENDED - FINAL ADJUDICATION |
| MNSCPT | | EXCLUSION (m) AMENDED |
| MNSCPT | | SPECIFIC CLAIM EXCLUSION |
| MNSCPT | | SEVERABILITY OF THE APPLICATION ENDORSEMENT |

*END 027*

## ENDORSEMENT# 27

This endorsement, effective *12:01 am     March 31, 2008*                    forms a part of
policy number   *364-21-32*
issued to *CORINTHIAN COLLEGES INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | SECURITIES CLAIM DEFINITION AMENDED |
| MNSCPT | | QUESTION 9 DELETED FROM RENEWAL APPLICATION |
| MNSCPT | | INSURED V. INSURED EXCLUSION AMENDED |
| MNSCPT | | DOMESTIC PARTNER EXTENSION |
| MNSCPT | | ADVANCEMENT OF LOSS AND RIGHT OF DIRECT RECOVERY ENDORSEMENT |
| MNSCPT | | OUTSIDE ENTITY EXECUTIVE |
| MNSCPT | | PUBLIC OFFERING ENDORSEMENT |
| MNSCPT | | EXCLUSION (j) AMENDATORY ENDORSEMENT |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| MNSCPT | | DISCOVERY CLAUSE AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 027*