IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 )<br>) Case No. 15-10952 (KJC) |
| CORINTHIAN COLLEGES, INC., *et al.,* | ) )<br>) Jointly Administered |
| Debtors. | ) )<br>) **Related D.I.: 1225** |

**OBJECTION OF ANTHEM BLUE CROSS LIFE AND HEALTH
INSURANCE COMPANY TO DISTRIBUTION TRUSTEE'S MOTION TO
REQUIRE ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE
COMPANY TO TURN OVER CERTAIN RECORDS OF
CORINTHIAN COLLEGES, INC.'S SELF-FUNDED HEALTH PLAN**

Creditor Anthem Blue Cross Life and Health Insurance Company ("Blue Cross") hereby submits its Objection (the "Objection") to the Distribution Trustee's Motion to Require Anthem Blue Cross Life and Health Insurance Company to Turn Over Certain Records of Corinthian Colleges, Inc.'s Self-Funded Health Plan [Dkt. No. 1225] ("Motion") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Despite the characterization in the Motion as a dispute regarding the refusal of Blue Cross to turn over records of the Debtor, Corinthian Colleges, Inc. ("Debtor") to Craig Jalbert, the distribution trustee for the distribution trust ("Trustee"), what is really at issue is whether or not the Trustee is entitled to certain trade secrets of Blue Cross. The Trustee seeks disclosure from Blue Cross of information identifying its service providers with whom Blue Cross has contracted, which is proprietary, highly confidential and protected as a trade secret. The documents and information the Trustee is asking for are not found within the books and records of the Debtor nor related to the

Debtors' property or financial affairs; they are only found within the records of Blue Cross.

2. It is not uncommon for Blue Cross to receive requests from its insureds or from those companies it is providing administrative services seeking information related to the services Blue Cross has performed on their behalf.  Blue Cross has an established protocol for providing this information and prides itself on its relationships with its insured and the transparency with which it operates.  As is the case here, Blue Cross consistently provides its insureds with all non-confidential information they require to perform an audit of Blue Cross' services.  Blue Cross is treating the request by the Trustee the same as it does all of the requests it receives from its insureds, and in fact, has gone above what it normally provides to its other customers.  However, its cooperation has some boundaries and confidentiality obligations, and the information the Trustee has requested in the Motion crosses those boundaries.

3. As of the filing of this Objection, Blue Cross has turned over, or has agreed to turn over all of the Debtor's records, as well as other non-Debtor information and records that Blue Cross has compiled as the plan administrator in an effort to address the Trustee's requests.  However, Blue Cross is unwilling to produce information or records identifying its providers, which is irrelevant to the analysis that the Trustee is undertaking, and more importantly, that contain proprietary, confidential information of Blue Cross.  This information is protected by the Uniform Trade Secrets Act, and will substantially prejudice Blue Cross if disclosed.  Moreover, the Provider Information (defined hereafter) is subject to certain other confidentiality provisions.

4.      The only argument proffered in support of the Trustee's purported need for the names and other identifying information of the providers is that "whether a provider is an individual or a group affects whether [Blue Cross'] coding of a claim is correct." *See* Motion, ¶19.  First, whether or not a provider is an individual or a group does not affect the coding of the claim.  Second, even if it did, it is not relevant to the Trustee's inquiry of whether or not the Debtor was overbilled by Blue Cross.  All of the relevant information to make that determination has been or will be turned over the Trustee, including the names of the employees, their identification numbers, the procedures performed, the total cost of the procedures as well as the cost to the employee and the Debtor.  Whether or not the provider was an individual or a large hospital adds nothing to the coding of the claim or the Trustee's analysis.

5.      Since the filing of the Motion, Blue Cross and the Trustee have had further discussions and exchanges of information.  As a result of those discussions, Blue Cross has turned over, or has agreed to turn over, all of the information requested on Exhibit A to the Motion, with one exception.  Blue Cross is unwilling to turn over any of the information identifying or relating to the independent providers Blue Cross contracted with to provide services to Blue Cross' insureds, including the employees of the Debtor.  Specifically, Blue Cross is unwilling to produce the following information regarding its providers:  the provider name; provider address; provider tax ID number, and provider NPI number (collectively, the "Provider Information").

6.      The Provider Information is proprietary and highly protected as a trade secret under the Uniform Trade Secrets Act.  Moreover, the Provider Information is itself protected by a confidentiality provision contained in the contracts between Blue Cross

and their providers that prevents Blue Cross from disclosing the information requested. The Provider Information is neither the Debtor's property nor related to its property or financial affairs and is neither necessary nor relevant to complete the Trustee's analysis.

7. Finally, the Trustee's request to compel the immediate production of the Provider Information under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") deprives Blue Cross of its rights and protections afforded under the Bankruptcy Rules and applicable law.

## I. The Provider Information Is Not Subject To Disclosure Under 11 U.S.C. § 542(e).

8. Section 542(e) of the Bankruptcy Code provides that "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee. 11 U.S.C. § 542(e).

9. The Provider Information is a trade secret subject to certain confidentiality provisions and therefore subject to protection from disclosure. Further, the Provider Information is not the Debtor's property nor related to the Debtor's property or financial affairs and is not relevant.

### A. The Provider Information Constitutes Trade Secrets and Is Protected From Disclosure

10. The Uniform Trade Secrets Act, which has been adopted by both Delaware and California, defines a trade secret as:

> (4) "Trade secret" shall mean information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

C:\NRPortbl\iManage\ASTITZER\2240026_1.doc
2240026v1
000001.00023

      (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

      (ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*See* 6 Del. C §§2001 through 2009; California Civil Code §§3426 through 3426.11.

      "Information' has a broad meaning under the [UTSA]." (Trade Secrets Practice in Cal., *supra,* § 1.4, p. 1–5; see also *Forro Precision, Inc. v. International Business Machines Corp.* (9th Cir.1982) 673 F.2d 1045, 1057.) "The definition of trade secret is ... unlimited as to any particular class or kind of matter and may be contrasted with matter eligible for patent or copyright protection, which must fall into statutorily defined categories." (1 Milgrim on Trade Secrets (2013) Definitional Aspects, § 1.01, p. 1–4.) '[A] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device or list of customers [citations].'" (*Sinclair v. Aquarius Electronics, Inc.* (1974) 42 Cal.App.3d 216, 221, 116 Cal.Rptr. 654, italics omitted.). *See Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* 226 Cal App 4th 26, 52, 171 Cal Rptr. 3d 714, 735 (2014).

    11.    The Bankruptcy Code recognizes the need for protection of trade secrets from disclosures and provides in relevant part:

    (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may -

    (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; . . . 11 U.S.C. 107(b)(1).

    12.    As explained more fully in the Declaration of Janet Andrea In Support of Objection of Anthem Blue Cross Life and Health Insurance Company to the Distribution Trustee's Motion to Require Anthem Blue Cross Life and Health Insurance Company to

Turn Over Certain Records of Corinthian Colleges, Inc.'s Self-Funded Health Plan (the "Andrea Decl."), filed in support of and contemporaneously with the Objection, Blue Cross and the Trustee have reached agreement on the production of all of the categories of documents the Trustee has requested in the Motion, with one exception, the Provider Information.  Specifically, Blue Cross has agreed to provide the Trustee with the amounts it has paid out for each of the Debtor's employees.  It has agreed to provide the dollar amounts the employees were required to pay and the amounts the Debtor paid on each of the claims.  Blue Cross has also provided a unique numerical identifier linked to each provider that provided the services on the claim.  Based on this information, the Trustee, his consultants, and anyone reviewing the information, could glean the rates charged by the practitioner, hospital or clinic for each service and determine the benefits and plan funds paid on each claim.

        13.      However, Blue Cross is unwilling and unable to produce any identifying information relating to the particular providers with whom Blue Cross has contracted and who provide services to Blue Cross' employer groups, including the Debtor and its employees.  If the Trustee was given the names of the providers or the other Provider Information requested, he, or anyone who gained access to that information, could calculate the rates that Blue Cross negotiated with those providers.  The rates negotiated with providers are highly confidential information that provides an economic value to Blue Cross and competitive advantage over its competitors and that is subject to confidentiality provisions with the providers.  Thus, the Provider Information and the rates that Blue Cross negotiates with its providers is proprietary and, as such, protected as a trade secret and not subject to disclosure.

### B. The Trustee Has Failed To Establish that the Provider Information Is Relevant Or Necessary.

14. In determining whether or not to issue a protective order preventing the disclosure of proprietary information (by opposing the Motion, Blue Cross is essentially seeking an order protecting its trade secrets), Federal Courts have applied a three part test in analyzing whether or not requested information should be turned over in discovery.

> "For over a quarter century, federal courts have consistently applied a three-part balancing test when a party seeks an order protecting trade secrets from discovery. *See generally* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2043 (2d ed.1994). First, the party opposing discovery must show that the information sought is a "trade secret or other confidential research, development, or commercial information" and that disclosure would be harmful. Fed.R.Civ.P. 26(c)(7). Then the burden shifts to the party seeking discovery to show that the information is relevant and necessary to bring the matter to trial. If both parties satisfy their burden, the court must weigh the potential harm of disclosure against the need for the information in reaching a decision. *In re Remington Arms Co., Inc.,* 952 F.2d 1029 (8th Cir.1991)."

*Bridgestone Americas Holding, Inc. v. Mayberry,* 878 N.E. 2d 189, 193 (Ind. 2007).

15. As attested to in the Andrea Decl. and as discussed herein, the information that the Trustee is seeking regarding the identity of the providers is the type of information that "… gives … (Blue Cross) an opportunity to obtain an advantage over competitors who do not know or use it," *see Altavion, Inc.,* 226 Cal App 4th at 52, and therefore is protected as a trade secret, the disclosure of which would be significantly harmful to Blue Cross. Accordingly, the burden shifts to the Trustee to show why the Provider Information is both relevant and necessary to his investigation of Blue Cross. The Trustee has failed to meet his burden.[1]

---

[1] Because the Trustee has failed to meet his burden, the Court does not need to weigh the potential harm of disclosure before denying the Motion.

16. In the unlikely event that the Trustee can meet his burden of establishing that the Provider Information is relevant and necessary for his advisors to complete their investigation of Blue Cross, the potential harm to Blue Cross far outweighs any possible harm the Trustee may incur if the information is not provided and therefore the Motion should be denied. "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *See Phillips v. General Motors Corp.* 307 F 3d 1206, 1211 (9th Cir. 2002).

17. Blue Cross contracted with its providers to provide services to not only to the Debtor and its employees, but also to a number of other employer groups which contract with Blue Cross. The specific elements of the contracts between the Debtor and its providers, including the rate structure, are the subject of extensive negotiations between Blue Cross and its providers and are highly confidential. Blue Cross is informed and believes that the specific details of the Provider Information and the contracted rate structure are a substantial part of its competitive edge over other insurance carriers. Indeed, if the specific details of the Provider Information were to get into the market place, it would have a significant impact, not only on the contractual relationship between Blue Cross and its providers, but also between Blue Cross and its other insureds, which, in turn, could put those insureds' contracts in jeopardy. Because the disclosure of the Provider Information could substantially prejudice Blue Cross in its ongoing relationship with its providers as well as with its other insureds, Blue Cross should not be required to provide the requested information to the Trustee.[2]

---

[2] While Blue Cross acknowledges that the Trustee has executed a confidentiality agreement, Blue Cross should not be required to bear the risk of an inadvertent disclosure of its

## C. The Provider Information and Contracts Are Subject to Confidentiality Provisions

18. Disclosure of the Provider Information is protected by its own confidentiality provisions, and therefore Blue Cross would be in breach of its obligations to the providers if it produced the information requested by the Trustee. Attached hereto and incorporated herein by reference as Exhibit "1" to the Andrea Decl. is a true and correct copy of a sample confidentiality provision found in a standard provider contract.

19. While it is correct that the Trustee has agreed to execute a confidentiality agreement with regard to the information requested, the confidentiality provisions of the provider agreements do not permit the disclosure of the Provider Information regardless of what may be in the confidentiality agreement entered into between the Trustee and Blue Cross.

## D. The Confidentiality Agreement Between the Trustee and Blue Cross Does Not Sufficiently Protect the Interests of Blue Cross

20. Blue Cross acknowledges that the Trustee has executed a confidentiality agreement which, in a perfect world, should give Blue Cross the peace of mind that the information disclosed to the Trustee, his staff and his advisors, would never be disclosed to any other parties. Unfortunately, we don't live in a perfect world. We live in a world where information is often leaked or disclosed either intentionally or inadvertently. Blue Cross has no doubt that the Trustee will do all that he can to protect the information from such disclosure, but he cannot ensure, with 100% certainty, that the Provider Information will not be disclosed to third parties, and it is this possibility that causes Blue Cross great

---

highly confidential trade secrets when the Provider Information is not relevant or necessary to the Trustee's analysis.

consternation and concern, and why the Provider Information cannot be turned over the Trustee and his consultants.

21.     As the Motion discloses, the Trustee has retained Remnant Capital LLC ("Remnant") to perform the review of the information provided by Blue Cross.  Remnant is described in the Motion as a "firm experienced in dealing with employee benefit issues for distressed companies."  *See* Motion, ¶10.  While Blue Cross is not aware of any breach in security at Remnant or any issues of improper disclosure, given its experience in the industry, and undoubtedly its contacts with competitors of Blue Cross, there is a real possibility that the Provider Information may be compromised. This is a risk that Blue Cross should not be forced to bear, especially when viewed in the light of their full cooperation with the Trustee in turning over all of the other information he has requested, and the limited, at best, relevance, the Provider Information has to the analysis Remnant was engaged to perform.

**E.  The Information Requested By the Trustee Is Neither Property of the Debtor Nor Related to the Debtor's Property or Financial Affairs**

22.     The Provider Information is not, by any stretch of the imagination, property of the Debtor, and therefore is not subject to turnover under 11 U.S.C. §542(e). As explained above and in the Andrea Decl., the limited Provider Information that is the subject of this dispute relates to the providers with whom Blue Cross contracted.  The provider agreements are separate and apart from the third party administrative agreement Blue Cross entered into with the Debtor.  The Provider Information is not property of the Debtor and is not a part of the Debtor's books and records.  In fact, nothing in the Provider Information is specific to the Debtor.  The reality is just the opposite.  The Provider Information is proprietary to Blue Cross, that if released, would cause

substantial economic harm to Blue Cross while providing no discernable benefit to the Trustee or the creditors of these estates.

23. The Trustee argues that even if this Court determines that the Provider Information is not of the Debtor, that it should still be turned over under 11 U.S.C. §542(e), because subsection (e) does not require that the requested information belong to the Debtor's Estate. While §542(e) may not be limited to information that is property of the debtor, the Trustee still must establish that the Provider Information relates to the Debtor's property or financial affairs. *See, Dzikowski v. Tri-O-Clean Systems, Inc. (In re Tri-O-Clean Systems. Inc.)* 230 B.R. 192-199-200 (Bankr.S.D. Fla. 1998). As argued above, the Provider Information does not relate to the Debtor's property or financial affairs and therefore is not discoverable by the Trustee or subject to turn over.

## II. The Trustee Is Not Entitled to the Provider Information Under Rule 2004 of the Bankruptcy Rules

24. By the Motion, the Trustee seeks the entry of an order under Rule 2004 of the Bankruptcy Rules compelling Blue Cross to immediately produce the information requested, including the Provider Information. The Trustee's request to compel the immediate production of the information and documents deprives Blue Cross of its rights and protections afforded under the Bankruptcy Rules and applicable law.

25. While a party seeking discovery under Rule 2004 may be granted broad latitude over what they can ask and what a responding party is required to produce, Rule 2004 does not abrogate all of the protections a responding party is provided under the law "[T]he availability of Rule 2004 as a discovery tool is not unlimited." *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D.Col.1991).

26. By its terms, Rule 2004 contemplates a two-step process for obtaining discovery. Subsection (a) provides that a party must first make a motion requesting the Court to order an examination. *See* Fed. R. Bankr. P. 2004(a) ("On motion of any party in interest, the court may order the examination of any entity."). Subsection (c) then provides that once an examination has been ordered, compelling attendance of a non-debtor entity for an examination or for the production of documents is to be accomplished using the procedures in Rule 9016 of the Bankruptcy Rules. *See* Fed. R. Bankr. P. 2004(c) ("The attendance of an entity for examination and for the production of documents . . . may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.").[3]

27. Bankruptcy Rule 9016, in turn, incorporates all of the substantive and procedural requirements and protections to third parties subject to subpoena under Federal Rule of Civil Procedure 45, including the right to object after the subpoena has been authorized, issued and served, *see* Fed. R. Civ. P. 45(d)(2)(B), and protection from imposition of undue burden and expense, *see* Fed. R. Civ. P. 45(d)(1). Most importantly, Federal Rule of Civil Procedure 45 provides for the quashing of a subpoena if it requires disclosure of trade secrets or other confidential information, and states in relevant part, as follows:

---

[3] "Pursuant to these rules, when a party in interest obtains an order compelling an entity other than the debtor to be examined, the party should obtain a subpoena and serve it with the order." 8 *Norton Bankruptcy Law and Practice* § 163:72 (3d ed. 2014); *see also, e.g.*, *In re Aston-Nevada Ltd. P'ship*, 391 B.R. 84, 105 n.36 (Bankr. D. Nev. 2006) ("Rule 2004(c) . . . require[s] those who wish to compel the production of documents to issue or obtain a subpoena for such documents in accordance with Bankruptcy Rule 9016 (which incorporates Rule 45 of the Federal Rules of Civil Procedure)."), *aff'd*, No. 06 Civ. 00141 (D. Nev. Feb. 28, 2008), *vacated on other grounds*, 409 F. App'x 107 (9th Cir. 2010). Once a valid subpoena is served, a recipient may then object to the subpoena under Rule 45. *See In re Town Sky, Inc.*, 2011 WL 6833950, at *1-2 (Bankr. N.D. Cal. Dec. 27, 2011) (sustaining objections to subpoena authorized under Rule 2004); *In re Smith*, 2010 WL 5420264, at *2 (Bankr. D.D.C. Dec. 23, 2010) ("An entity may . . . seek to quash or modify an otherwise permissible Rule 2004 subpoena."); *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 253-65 (Bankr. S.D.N.Y. 2005) (partially denying motion to compel production of documents under subpoena previously authorized under Rule 2004).

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

. . .

(3) *Quashing or Modifying a Subpoena.*

. . .

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

. . .

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

*See* Fed. R. Civ. P. 45(d)(3).

28.  As discussed above, the Provider Information is a trade secret and confidential commercial information of Blue Cross and its disclosure would substantially disadvantage Blue Cross against its competitors in the marketplace. As filed, the Motion and proposed order seek to compel the immediate production of the information and documents sought, including the Provider Information, thereby depriving Blue Cross of the rights afforded to it under Rule 9016 of the Bankruptcy Rules to object and seek to quash the subpoena. Rule 2004 is not intended to deprive third parties of the rights and protections afforded by Bankruptcy Rule 9016.

## CONCLUSION

Blue Cross has agreed to turn over or has already turned over to the Trustee all of the documents in its possession that are responsive to the Trustee's requests with the sole exception of the Provider Information.  The Provider Information contains trade secrets of Blue Cross, is protected under the Uniform Trade Secrets Act and therefore not subject to turn over or discovery.  The information does not relate to the Debtor's property or financial affairs, and it is not necessary for the Trustee's advisors to complete their analysis.  For these reasons, the Motion should be denied with prejudice.

Dated:  September 9, 2016

          MACELREE HARVEY, LTD.

          *s/ Ashley B. Stitzer*
          Ashley B. Stitzer, Esq. (DE No. 3891)
          5721 Kennett Pike
          Centreville, DE 19807
          Telephone:  (302) 654-4454
          Facsimile:  (302) 654-4954
          Email:  astitzer@macelree.com

          - and -

          Stuart I. Koenig (SBN 102764)
          CREIM, MACIAS KOENIG & FREY LLP
          633 W. Fifth Street, 48th Floor
          Los Angeles, CA  90071
          Telephone:  (213) 614-1944
          Facsimile:  (213) 614-1961

          *Counsel for Anthem Blue Cross Life and Health Insurance Company*