**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., et al. [1] | Case No. 15-10952 (KJC) |
| Debtors. | Jointly Administered |
| | **Response Deadline: November 7, 2016 at 4:00 p.m. (ET)**<br>**Hearing Date: November 15, 2016 at 2:00 p.m. (ET)** |

**MOTION OF STUDENT TRUST FOR ENTRY OF AN ORDER
ESTABLISHING PROCEDURES REGARDING THE RETENTION,
ABANDONMENT, OR DISPOSAL OF STUDENT RECORDS**

Development Specialists, Inc., solely in its capacity as Trustee (the "Student Trustee")

of the CCI Student Creditors Trust (the "Student Trust"), hereby moves this Court (the

"Motion"), pursuant to sections 105(a), 363, and 554 of Title 11 of the United States Code (the

"Bankruptcy Code"), and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for entry of an order establishing procedures for the management of

books and records related to former Students[2] that attended the Debtors' colleges, including the

abandonment, disposal, and/or destruction of certain of the Student Records (as defined in

section III, paragraph 9, below).  In support of the Motion, the Student Trust has filed the

---

[1] The Debtors' bankruptcy cases are: Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

[2] As defined in section II(A)(140) of the Plan, the term "Student" means any individual who has matriculated with any of the Debtors' schools whether in person or online.

Declarations of Geoffrey Berman (the "Berman Declaration") and Kevin D. Meek (the "Meek Declaration") concurrently herewith and respectfully states as follows:

## I.
## INTRODUCTION

Pursuant to the Debtor's Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), the Student Trust was established for the benefit of hundreds of thousands of the Debtors' former students that were affected by the Debtors' misconduct. The Student Trust performs several vital functions, including: (1) maintaining Student Records; (2) communicating with Students regarding student debt relief and developments in the Debtors' cases; (3) administering Student 507(a)(7) Deposit Claims; and (4) advocating for expansion of federal and private student debt relief. Berman Declaration, at ¶4.

The Student Trust is charged with preservation of the Student Records that were abandoned in the bankruptcy process. Following an initial investigation, the Student Trust learned that upon the closing of the Debtors' campuses, the Debtors moved the Student Records to four warehouse facilities in three different states – California, Oregon and Hawaii. The Student Trust estimates that 30,000-40,000 boxes containing approximately 60,000,000 to 100,000,000 pages of Student Records were housed in the four warehouse facilities. Berman Declaration, at ¶5.

While certain of the boxes are organized by campus, the boxes are largely uncategorized and unlabeled. Documents for any given Student may be located in multiple boxes in different sections of a warehouse, depending on the department that was responsible for packing the documents. At present, if an individual Student requests documents related to his/her attendance, the Student Trust would be required to cull through thousands of boxes to determine

whether the requested documents exist, at a great cost to the Student Trust, with little guaranty that the particular Student Record would be located.  Berman Declaration, at ¶6.

Based on its initial assessment, the Student Trust has determined that the maintenance and administration of the Student Records in their current state is both labor-intensive and cost-prohibitive especially in light of the limited resources the Student Trust was funded with, and provides Students with little to no value.  While the Student Trust has condensed warehouses and moved all of the documents from Hawaii to California in an effort to minimize costs, the Student Trust continues to work with the Trustee of the Corinthian Distribution Trust to obtain the Student Records stored in the California warehouse that is under the control of the Distribution Trust.  The cost to store and maintain the Student Records is approximately $25,000 per month.  This expense is unsustainable and will ultimately exhaust the Student Trust's limited funds.  In addition, the cost of scanning the entirety of the Student Records could be as high as $5-10 million, which exceeds the funds transferred upon creation of the Student Trust, let alone the funds that remain with the Student Trust.  Berman Declaration, at ¶¶ 7 and 9.

Unfortunately, the Plan provides no guidance regarding management of Student Records as well as when, and under what circumstances, the Student Trust may dispose of the records.  By this Motion, the Student Trust is seeking approval from the Bankruptcy Court for Student Record Procedures (as defined below) that will provide notice and records to Students and entities fighting on their behalf and preserve Student Trust assets.

As further outlined in this Motion, the proposed Student Record Procedures provide that records critical to Students for purposes of job prospects, educational history, litigation, or debt relief will be scanned and preserved electronically, and provided to Students at no cost to the

Student (the "<u>Critical Documents</u>").[3]  To the extent that a Student or other entity requires documents other than the Critical Documents, the proposed Student Record Procedures set forth a process for obtaining such records if certain other conditions are met.  All Student Records that are scanned or not requested by a Student or other entity will be destroyed.  While the cost of implementing the Student Record Procedures is substantial, approximately $1 million, the Student Trust believes that the Student Record Procedures provide the greatest benefit to Students under the circumstances.[4]

For the reasons set forth below, in order for the Student Trust to maximize its benefit to Students, the proposed Student Record Procedures should be approved, pursuant to the Court's authority under sections 105(a), 363(b), and 554 of the Bankruptcy Code.

## II.
## JURISDICTION AND VENUE

1.       The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.       Section XVI of the Debtors' Third Amended And Modified Combined Disclosure Statement And Chapter 11 Plan of Liquidation provides that this Court retains jurisdiction over

---

[3] During the pendency of the Debtors' cases, certain governmental agencies, including the California Department of Consumer Affairs, Bureau for Private Postsecondary Education (the "<u>BPPE</u>"), were provided with access to Student Records by the Debtors in order to preserve a limited number of documents in accordance with respective state law. The Student Trust is informed and believes that the BPPE reviewed certain of the Student Records contained in the California warehouses and set aside transcripts for students enrolled prior to 2000.  In addition, the Student Trust is informed and believes the BPPE received electronic copies of transcripts from Zenith Education Group ("<u>Zenith</u>") following the sale of many of the Debtor's campuses to Zenith.  However, it is unclear whether the BPPE obtained all transcripts contained in the 30,000 to 40,000 boxes and, in any event, Students will need additional documents such as diplomas, enrollment agreements and account ledgers to obtain employment and debt relief.

[4] The Student Trust continues to seek out the most cost-effective manner of preserving the greatest number of Student Records.  To the extent the Student Trust determines that additional Student Records can be maintained at a reasonable cost, the Student Trust reserves the right to expand the Student Record Procedures to include the preservation of such additional Student Records.

"all matters arising out of, and related to, the Chapter 11 Cases, the Combined Plan and Disclosure Statement, the Distribution Trust Agreement and/or the Student Trust Agreement." Plan, Page 62, Section XVI.

3.      The statutory predicates for the relief requested herein are sections 105(a), 363, and 554 of the Bankruptcy Code, and Bankruptcy Rule 6007.

### III.
### BACKGROUND

**Bankruptcy Background**

4.      The factual background regarding the Debtors, including their business operations, corporate structures, and the events leading to the filing of their bankruptcy cases is set forth in detail in the Debtors' Third Amended And Modified Combined Disclosure Statement And Chapter 11 Plan of Liquidation filed with the Court on August 28, 2015 (the "Plan") [Docket No. 909] and is fully incorporated herein by reference.[5]

5.      On May 4, 2015 (the "Petition Date"), each of the Debtors commenced a voluntary case with this Court under chapter 11 of the Bankruptcy Code.

6.      On August 28, 2015, the Court entered the Order Confirming the Debtors' Third Amended And Modified Combined Disclosure Statement And Chapter 11 Plan of Liquidation (the "Confirmation Order") [Docket No. 913].  The Plan's Effective Date was September 21, 2015 (the "Effective Date").

7.      The Plan approved the creation of two separate trusts: (i) the Student Trust for the benefit of Allowed Student Claims and Allowed Government Education Claims; and (i) the Distribution Trust for the benefit of all Holders of Allowed Claims other than Student Claims and Government Education Claims (the "Distribution Trust").

---

[5] Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

**The Student Records**

8.     Pursuant to sections II(A)(150) and XI(L) of the Plan, all rights, title, and interest of the Debtors in and to the Student Records were transferred to the Student Trust on the Effective Date of the Plan.

9.     Section II(A)(141) of the Plan defines Student Records as "all Books and Records in the Debtors' actual or constructive possession, custody or control as of the Effective Date which contain academic transcripts, student loan files or other Books and Records which contain Student-specific information about a Student's attendance at any of the Debtors' schools." (collectively, the "Student Records").

10.    Upon the Debtors' closing, the Debtors shipped approximately 30,000 to 40,000 boxes containing approximately 60,000,000 to 100,000,000 pages of Student Records to warehouses in California, Oregon, and Hawaii.  Through the Student Trust's efforts, the boxes contained in the Hawaii warehouse were transported to the Sacramento, California warehouse. Berman Declaration, at ¶¶5 and 7.

11.    The boxes shipped to the various warehouses were in a state of disarray.  The boxes are uncategorized, unlabeled, unindexed, and contain a significant number of unorganized, extraneous documents that appear to be unrelated to the Student Records.  In addition, it appears that Student Records for some Students are scattered across multiple boxes, further diminishing effective search or evaluation of the documents.   Berman Declaration, at ¶ 6.   Attached as Exhibit 1 to the Meek Declaration are photos of the boxes that are stored in the warehouse located in Sacramento, California.

12.    As a result of the state in which the Student Trust received the boxes, searching for specific documents within the millions of pages of Student Records is prohibitively costly

and time-consuming.  In their current form, the Student Records are of limited, if any, use to Students.  Berman Declaration, at ¶ 7.

14.    Moreover, the current maintenance of the Student Records diverts limited Student Trust resources.  Berman Declaration, at ¶ 8.

14.    The current cost to the Student Trust to store the Student Records is approximately $25,000 per month.  Berman Declaration, at ¶ 7.

15.    The Student Trust does not have sufficient resources to scan the entirety of the Student Records.  Based on estimates from scanning services, the cost of scanning the entirety of the Student Records could cost as much as $5 million to $10 million, depending on how many documents are contained in each box.  Berman Declaration, at ¶ 9.

16.    While the Student Trust has received informal requests from counsel for the Debtors' former officers (the "Former Officers") for certain documents in connection with anticipated litigation that may be brought by the Distribution Trust, to the extent that such parties require the continued maintenance of certain or all of the Student Records, the Former Officers should bear the cost associated with any such requests rather than the Students who have been affected by the schools' closing.  Berman Declaration, at ¶12.

**Proposed Procedures For Student Records**

17.    In order to provide Students with the opportunity to obtain necessary records and to preserve critical documents and Student Trust resources, the Student Trust respectfully requests the Court approve the following procedures regarding the maintenance, scanning, and disposal of Student Records (the "Student Record Procedures"):[6]

---

[6] The Student Trust continues to seek out the most cost-effective manner of preserving the greatest number of Student Records.  To the extent the Student Trust determines that additional Student Records can be maintained at a reasonable cost, the Student Trust reserves the right to expand the Student Record Procedures to include the preservation of such additional Student Records.

a.  A limited number of critical documents will be scanned in an identifiable and searchable format for any Student for whom the Student Trust received documents (the "Critical Documents").  The Critical Documents will be preserved electronically.  Copies of the Critical Documents will be provided to Students at no charge upon request from the Student.  The types of Critical Documents that will be scanned will be limited to: (i) diplomas; (ii) transcripts; (iii) student ledgers; (iv) enrollment agreements; and (v) loan documents;

b.  For any Student that sends a written request to the Student Trust no later than 90 days after service of this Motion, the Student Trust, or its professionals, will: (i) attempt to identify all records pertaining to that Student; (ii) scan the documents for that Student; and (iii) provide that Student with electronic copies at no cost. To the extent that the number of requests from Students becomes too voluminous, such that locating and scanning the documents becomes cost-prohibitive, the Student Trust may modify or withdraw this option at its discretion;

c.  For any non-Student that requests Student Records that are in the possession of the Student Trust, the person or entity making such request (the "Non-Student Party") must identify the Student(s) for which the Non-Student Party seeks records, and provide the Student Trust with either: (a) the consent of the Student to turn-over the requested Student Records to the Non-Student Party; or (b) a Court order granting the Non-Student Party with access to the requested Student Records.  The Non-Student Party must post a deposit for the anticipated cost of locating and scanning the requested Student Records and will be required to pay all costs and fees associated with such efforts; and

d.  All Student Records that are scanned or not requested by a Student or other entity will be destroyed.

18.    The Student Trust estimates that the cost of scanning the Critical Documents for the benefit of Students could likely be in excess of $1 million.  While the cost of implementing the Student Record Procedures is substantial and would significantly diminish the funds available to the Student Trust to undertake other measures on behalf of all Students, the Student Trust believes that failure to preserve the Critical Documents could prejudice students that need such documents for debtor relief or job placement in the future.  Berman Declaration, at ¶ 10.

## IV.
## RELIEF REQUESTED

19.    By this Motion, the Student Trust respectfully requests that this Court enter an order authorizing the proposed Student Record Procedures, including the abandonment, disposal,

and/or destruction of certain of the Student Records pursuant to sections 105(a), 363(b), and 554 of the Bankruptcy Code, and Bankruptcy Rule 6007.

## V.
### BASIS FOR RELIEF

20.    Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); In re Quanta Resources Corp., 739 F.2d 912, 915 (3d Cir. 1984) ("The abandonment power embodied in section 554 enables the trustee to rid the estate of burdensome or worthless assets, and so speeds the administration of the estate … and also protects the estate from diminution."). Liquidating trustees are often afforded the same process and procedures as those specified in the Bankruptcy Code, including abandonment of property.  In re Contifinancial Corp., No. BKR. 00-12184 (AJG), 2010 WL 2522732, at *3 (Bankr. S.D.N.Y. June 17, 2010) ("The Liquidating Trustee abandoned [property of the estate] under § 554 of the Bankruptcy Code which allows the trustee to 'abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.");  In re Catamount Dyers, Inc., 50 Bankr. 790, 791-94 (Bankr. D. Vt. 1985) (liquidating trustee authorized to abandon property under section 554).

21.    The Court should apply the business judgment standard in reviewing the Student Trust's decision to abandon property that is either of inconsequential value or burdensome to the Student Trust.   See In re Slack, 290 B.R. 282, 284 (Bankr.  D.  N.J. 2003)  ("The trustee's power to abandon  property is discretionary … The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the Trustee's scope of authority.") (internal citations omitted); Reich  v. Burke (In re Reich), 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an

asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' he may abandon it."); In re Frostbaum v. Ochs, 277 B.R. 470, 475 (E.D.N.Y. 2002) (a trustee is to use "his best business judgment in deciding when … to renounce title and to abandon burdensome property" pursuant to section 554 of the Bankruptcy Code.).

22.     Section 363(b)(1) of the Bankruptcy Code further provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of the assets is within the trustee's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389, 395 (3d. Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

23.     As noted above, the Student Trust performs many critical functions on behalf of Students, in addition to maintenance and administration of Student Records. The Student Trust is involved in efforts to obtain federal and private debt cancellation for Students and is a source of communication for Students regarding debt relief and the Debtors' cases.

24.     The proposed Student Record Procedures will provide a benefit to Students while preserving Critical Documents for Students. As such, the proposed Student Record Procedures represents the best option for the Student Trust as well as Students. In their current disorganized state, the Student Records are of very little, if any, use to Students. The cost of continued storage

of Student Records from the limited resources of the Student Trust is unsustainable and diverts

significant funds that would otherwise be used towards efforts to expand debt relief or provide

other benefits to Students.  The cost of scanning all documents is greater than the funds currently

possessed by the Student Trust, and thus is not a realistic option.

25.    Accordingly, the Student Trust submits that continued possession and

maintenance of all Student Records is excessively costly and burdensome to the Student Trust,

while providing little benefit to Students.

26.    While the Student Trust has received relatively few requests for access to Student

Records from Students to date, the Student Trust recognizes the importance of maintaining the

Student Records and, with more notice to Students, additional Students may request and require

the Critical Documents for years to come. Berman Declaration, at ¶ 11.  The Student Trust's

proposal preserves Critical Documents in electronic form that Students or other entities may

need, protects the Student Trust from diminution by eliminating significant storage and scanning

costs, and allows the Student Trust greater resources to obtain meaningful debt relief for

Students.  As a result, the proposed Student Record Procedures satisfy the business judgment

standards set forth by sections 554(a) and 363(b).

27.    To the extent that a Student wishes to obtain Student Records for any reason, the

proposed Student Record Procedures expressly provide Students with the ability to obtain his or

her Student Records, at no cost to the Student; and Non-Student Parties, such as the Former

Officers, the ability to obtain the requested Student Records if certain conditions are met.

Therefore, neither Students nor any other entity are unduly prejudiced by the proposed Student

Record Procedures.

28.    Case law is unclear as to whether the Student Trust is subject to the privacy

restrictions enumerated in the Family Education Rights Privacy Act, 20 U.S.C. § 1232

("FERPA").  While it is clear that FERPA applies to all schools that receive funds under an applicable program of the U.S. Department of Education, the definition and related case law do not state whether the "educational agency or institution" includes a trust formed due to the bankruptcy of the educational institution.  Of the few cases in which FERPA issues arise in the bankruptcy context, such cases generally involve collection actions against Students.  See, e.g., Odom v. Columbia Univ., 906 F. Supp. 188 (S.D.N.Y. 1995) (holding that Columbia University's post-discharge collection efforts on student's tuition debt, and related failure to provide records to student, did not violate FERPA or the automatic stay).  Given that the Debtors' cases reflect a situation that is not addressed by FERPA, and the lack of any authority prohibiting the Student Trust's proposed relief, it is appropriate for this Court to approve the Student Record Procedures.

29.    Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  To the extent that the relief sought does not fall within the abandonment provisions of section 554, or section 363, the Student Trust submits that the Court should grant the requested relief pursuant to its authority under section 105.  Relief under section 105 is appropriate given: (i) the adequacy of the proposed Student Record Procedures; (ii) the excessive cost of maintaining the Student Records, particularly given the Student Trust's limited resources; (iii) the Student Trust's debt relief efforts; and (iv) the lack of prejudice to any party.

30.    Accordingly, the Student Trust's abandonment and destruction of certain Student Records pursuant to the proposed Student Record Procedures is therefore warranted under sections 105(a), 363(b), and 554(a).

## VI.
## <u>NOTICE</u>

31.     Rule 6007 of the Bankruptcy Rules provides, in pertinent part, that "[u]nless otherwise directed by the Court, the trustee … shall give notice of a proposed abandonment or disposition of property to the United States Trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code."  Fed. R. Bankr. P. 6007(a).

32.     A copy of the Motion has been provided to the Office of the United States Trustee, Region 3 District of Delaware.  In order to conserve the resources of the Student Trust, the two-page Notice of Motion that was filed contemporaneously with the Motion has been provided to: (a) all creditors known to the Student Trust; (b) any parties known by the Student Trust who may have an interest in any of the Student Records that is the subject of this Motion, including the Students via U.S. mail and, to the extent available, e-mail at the last known address in the Student Trust's records; and (c) any party filing a request for notice pursuant to Fed. R. Bankr. P. 2002.  In addition, the Student Trust has posted a copy of the Motion on the Student Trust's informational WebPage (https://www.donlinrecano.com/Clients/cci/Index) and is attempting to provide additional notice via social media mediums such as Facebook and websites hosted by student advocacy groups.  In light of the nature of the relief requested herein, the Student Trust submits that no other or further notice is necessary or required.

## VII.
## <u>NO PRIOR REQUEST</u>

33.     No previous request for the relief sought herein has been made by the Student Trust to this or any other Court.

WHEREFORE the Student Trust respectfully requests entry of the Order, attached hereto

as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just.

Dated:  October 18, 2016
        Wilmington, Delaware

**POLSINELLI PC**

  _/s/ Shanti M. Katona_
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone:  (302) 252-0920
Facsimile:  (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com

-and-

**ROBINS KAPLAN LLP**
Scott F. Gautier, Esq.
Lorie A. Ball, Esq.
2049 Century Park East, Suite 3400
Los Angeles, California 90067
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
sgautier@robinskaplan.com
lball@robinskaplan.com

*Attorneys for CCI Student Creditors Trust*