# EXHIBIT B
# BERMAN DECLARATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., et al. [1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10952 (KJC)<br><br>Jointly Administered<br><br>Response Deadline: November 7, 2016 at 4:00 p.m. (ET)<br>Hearing Date: November 15, 2016 at 2:00 p.m. (ET) |

## DECLARATION OF GEOFFREY L. BERMAN IN SUPPORT OF THE MOTION OF STUDENT TRUST FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES REGARDING THE RETENTION, ABANDONMENT, OR DISPOSAL OF STUDENT RECORDS

I, Geoffrey L. Berman, pursuant to section 1746 of title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am a Senior Managing Director at Development Specialists, Inc., the Student Trustee of the CCI Student Creditors Trust that was established by the Plan filed by the above-captioned debtors (the "Debtors").

2. I submit this declaration (the "Declaration") in support of the Motion of Student Trust For Entry Of An Order Establishing Procedures Regarding The Retention, Abandonment, or Disposal of Student Records (the "Motion").[2]

---

[1] The Debtors' bankruptcy cases are: Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

3. I am authorized to submit this Declaration on behalf of the Student Trust. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge and belief upon my review of certain information and documents of the Debtors and discussions with counsel for the Debtors and the Student Trust. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth herein.

4. The Student Trust performs several vital functions, including: (1) maintaining Student Records; (2) communicating with Students regarding student debt relief and developments in the Debtors' cases; (3) administering Student 507(a)(7) Deposit Claims; and (4) advocating for expansion of federal and private student debt relief.

5. Following an initial investigation, the Student Trust learned that upon the closing of the Debtors' campuses, the Debtors moved the Student Records to four warehouse facilities in three different states – California, Oregon and Hawaii. The Student Trust estimates that 30,000-40,000 boxes containing approximately 60,000,000 to 100,000,000 pages of Student Records were housed in the four warehouse facilities.

6. I have been provided with information from the Student Trust's professionals that while certain of the boxes are organized by campus, the boxes are largely uncategorized and unlabeled. Documents for any given Student may be located in multiple boxes in different sections of a warehouse, depending on the department that was responsible for packing the documents. At present, if an individual Student requests documents related to his/her attendance, the Student Trust would be required to cull through thousands of boxes to determine whether the requested documents exist, at a substantial cost to the Student Trust, with little guaranty that the particular Student Record would be located.

---

.... *footnote continued from prior page*

[2] Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

7. Based on its initial assessment, the Student Trust has determined that the maintenance and administration of the Student Records in their current state is both labor-intensive and cost-prohibitive, and provides Students with little to no value. While the Student Trust has condensed warehouses and moved all of the documents from Hawaii to California in an effort to minimize costs, the Student Trust continues to work with the Trustee of the Distribution Trust to obtain the Student Records stored in the Oregon and California warehouses that are under the control of the Distribution Trust. The current cost to the Student Trust to store and maintain the Student Records is approximately $25,000 per month. This expense is unsustainable and will ultimately exhaust the Student Trust's limited funds.

8. Moreover, the current maintenance of the Student Records limits that which the Student Trust otherwise is trying to accomplish.

9. The Student Trust likely does not have sufficient resources to scan the entirety of the Student Records. Based on estimates from scanning services, the cost of scanning the entirety of the Student Records could be as much as $5 million to $10 million, depending on how many documents are contained in each box.

10. I have received from the Student Trust's professionals the estimates for the costs to the Student Trust of scanning the Critical Documents for the benefit of Students and the cost is likely to be in excess of $1 million. While the cost of implementing the Student Record Procedures is substantial and would significantly diminish the funds available to the Student Trust to undertake other measures on behalf of all Students, the Student Trust believes that failure to preserve the Critical Documents could prejudice students that need such documents for debtor relief or job placement in the future.

11. The Student Trust has received relatively few requests for access to Student Records from Students to date, however the Student Trust recognizes the importance of maintaining the Student Records and, with more notice to Students, additional Students may request and require the Critical Documents for years to come.

12. The Student Trust has received informal requests from counsel for the Former Officers for certain documents in connection with anticipated litigation that may be brought by the Distribution Trust.

13. The Student Record Procedures preserve Critical Documents in electronic form that Students or other entities may need, protects the Student Trust from diminution by eliminating significant storage and scanning costs, and allows the Student Trust greater resources to obtain meaningful debt relief for Students.

14. Based upon the foregoing, the Student Trustee submits that there are good, sufficient, and sound business reasons for the Student Trust to implement the Student Record Procedures. Maintenance of the Student Records in their current state is burdensome and provides very little, if any, benefit to Students. The proposed Student Records Procedures will provide a benefit to Students while preserving assets of the Student Trust that will enable the Student Trust to pursue expanded debt relief or other benefits for Students. As such, the proposed Student Record Procedures represent the best option for the Student Trust as well as Students.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 14th day of October, 2016

*Geoffrey L. Berman*
Geoffrey L. Berman
Senior Managing Director of the Development Specialists, Inc., the Student Trustee