1

2   UNITED STATES BANKRUPTCY COURT

3   DISTRICT OF DELAWARE

4   Case No. 15-10952(KJC); Adv. Proc. No. 15-50309(KJC)

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7   CORINTHIAN COLLEGES, INC., et al.,

8            Debtors.

9   - - - - - - - - - - - - - - - - - - - -x

10   GUY REYNOLDS, on behalf of himself and all

11   others similarly situated,

12            Plaintiff,

13   v.

14   CORINTHIAN COLLEGES, INC.,

15            Defendant.

16   - - - - - - - - - - - - - - - - - - - -x

17              United States Bankruptcy Court

18              824 North Market Street

19              Wilmington, Delaware

20              October 13, 2016

21              10:00 AM

22   B E F O R E:

23   HON. KEVIN J. CAREY

24   U.S. BANKRUPTCY JUDGE

25   ECR OPERATOR:  AL LUGANO

1

2  Distribution Trustee's Motion to Require Anthem Blue Cross Life

3  and Health Insurance Company to Turn Over the Records of

4  Corinthian Colleges, Inc.'s Self-Funded Health Plan [Docket No.

5  1225 - filed August 17, 2016]

6

7  Amended Class Action Adversary Complaint for Violation of WARN

8  Act 29 U.S.C. Sections 2101, et seq. and California Labor Code

9  Sections 1400, et seq., Reynolds v. Corinthian Colleges, Inc.,

10  15-50309(KJC) [Adv. Docket No. 30 - filed August 20, 2016]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Paul T. Abramson

1

2   A P P E A R A N C E S :

3   RICHARDS, LAYTON & FINGER, PA

4           Attorneys for Distribution Trust

5   BY:   CORY D. KANDESTIN, ESQ.

6           ROBERT C. MADDOX, ESQ.

7

8   MACELREE HARVEY, LTD.

9           Attorneys for Anthem Blue Cross

10  BY:   ASHLEY B. STITZER, ESQ.

11

12

13  OUTTEN & GOLDEN LLP

14           Attorneys for Guy Reynolds

15  BY:   JACK A. RAISNER, ESQ. (TELEPHONICALLY)

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.  Be seated, please.

3          THE COURT:  Good morning, everyone.

4          IN UNISON:  Good morning, Your Honor.

5          MR. MADDOX:  Good morning, Your Honor.  For the

6    record, Robert C. Maddox of Richards, Layton & Finger on behalf

7    of the Distribution Trustee.

8          Your Honor, looking at today's agenda, there are two

9    matters, items number 1 and 2, that have been continued or

10   resolved.  The first one, docket -- sorry, agenda item 1, the

11   administrative expense motion of Thomson Reuters, has been

12   continued to a date to be determined, and the second, the

13   Distribution Trustee's motion to extend the claims objection

14   deadline has now an order entered on that matter.  So those

15   have been resolved.

16         There are two matters slated to go forward.  Agenda

17   item 3, which is the Distribution Trustee's motion for turnover

18   of certain documents and a status conference in the WARN Act

19   adversary proceeding.  If we may, Your Honor, we'd like to

20   actually proceed with those in reverse order, as I believe that

21   the status conference will be substantially shorter than the

22   argument on the motion.

23         THE COURT:  Let's proceed in that fashion, then.

24         MR. MADDOX:  Thank you, Your Honor.  With respect to

25   the status conference and the WARN Act claims, I believe that

1  plaintiff's counsel is on the line.

2           MR. RAISNER:  I am.  Jack Raisner of Outten & Golden.

3  Good morning, Your Honor.

4           THE COURT:  Good morning.

5           MR. MADDOX:  Briefly, if I may, as the Court may

6  recall, the WARN Act adversary proceeding was resolved and a

7  settlement was put on the record of the confirmation hearing.

8  That settlement subsequently was placed into the plan and

9  confirmation order of these cases.

10          Subsequent to that time and after the effective date,

11  the parties have been negotiating a form of settlement

12  agreement.  The settlement also contemplates a 9019 motion

13  being filed in addition to the plan and confirmation order.

14  And so the parties have continued to work on that form of

15  settlement agreement.  We expect to have it finalized in the

16  near future.

17          THE COURT:  There seems to be no sense of urgency

18  here.  Can you explain that?

19          MR. MADDOX:  I'll defer to plaintiff's counsel on

20  that.

21          MR. RAISNER:  Your Honor, a substantial portion of the

22  settlement, as you may recall, was contingent on the estate

23  being able to collect funds and distribute funds.  And we were

24  hesitant to accelerate or move the settlement towards a

25  completion with notification to all the class members until we

1   had a better idea or handle at least on the likelihood of being

2   able to make the substantial part of the payment.  And so we've

3   been monitoring the progress of the case, not seeking to jump

4   ahead, but trying to calibrate what we would be telling the

5   class members with what the realistic expectations were.  So I

6   think we've come to a point where, from the information that we

7   have from our position as having been part of the creditors'

8   committee, and now, in a sense, oversight in seeing the

9   distribution plan -- the distribution, we are able to finalize

10   this agreement.  We have the motion papers and all the things

11   we need pretty much in place.

12          THE COURT:  All right.  Thank you.  I don't have any

13   further comments or questions.

14          MR. MADDOX:  Thank you, Your Honor.  My colleague,

15   Cory Kandestin will be handling argument on the turnover

16   motion.

17          THE COURT:  Okay.  Mr. Raisner, you're welcome to

18   remain on the phone if you like, but you may be excused at this

19   point if you wish.

20          MR. RAISNER:  Thank you, Your Honor.

21          MR. KANDESTIN:  Thank you, Your Honor.

22          THE COURT:  I have some -- I have a preliminary

23   question for both sides and then individualized questions for

24   each to begin, after which I'll give you the opportunity to

25   make whatever presentation you would like.  I have reviewed the

1  submissions.

2       But my first question is, having come as far as you

3  have, is there no hope for compromise on this last issue?

4       MR. KANDESTIN:  We wouldn't be here today if there

5  was, Your Honor.  We've had multiple settlements -- multiple

6  discussions to try to reach a consensual resolution.  We've one

7  category of information that's left.  It's information that we

8  absolutely need and that Anthem absolutely refuses to give us.

9  And there's really no possible middle ground that we can reach.

10      THE COURT:  Okay then.  Let me ask a question of

11 Anthem, if I may.  I guess -- well, I have two questions anyway

12 to start.  The first is:  is this a situation in which you are

13 guarding your virtue and have feared that if you relinquish it

14 here, you will be asked to do so in other cases?

15      MS. STITZER:  No, Your Honor.  My understanding is

16 that these types of reviews are often -- often occur with my

17 client.  And this particular information that's being requested

18 isn't generally requested.  I don't want to get too far into

19 the argument because I know Your Honor asked a specific

20 question.  We have -- just to answer the original question that

21 Your Honor posed, we have engaged in multiple conversations,

22 we've thrown around different ideas on how we can try to get

23 identification of particular providers without relinquishing

24 the provider information which is comprised of the names,

25 addresses, NPIs and the TID -- the tax identification numbers.

1  But neither side -- we haven't been able to figure out a way to

2  get it done.

3       Your Honor, my client's concern with turning over this

4  information in addition to it being a trade secret is also that

5  it has confidentiality obligations to the providers under these

6  other third party agreements and doesn't feel under the

7  language or -- its understanding of those agreements is that it

8  cannot voluntarily turn over without being compelled by court

9  order.  So that ultimately is why we're here today.

10       THE COURT:  Okay.  So let me -- while I have you --

11  apart from the understandable desire -- if having to give up

12  information, you do so because a court has made you, which may

13  give you some insulation with respect to your counterparties in

14  your various agreements, apart from that issue, I'm hard-

15  pressed to discern the harm that such a disclosure would cause,

16  given the nature of the party on the other side.  It's not a

17  competitor.  There are confidentiality -- there is an agreement

18  or agreements.  I think other than the principle -- it's just

19  harmful as a matter of principle -- what's really the harm to

20  Anthem if I would direct that this information be turned over?

21       MS. STITZER:  My client's concern is the more global

22  disclosure and in today's world the risk of its provider rates

23  being disclosed out in the marketplace -- inadvertently or in

24  today's world happens more intent -- can happen intentionally,

25  not that we think that's going to occur in this case.  So it's

1   a concern about them being disclosed out into the marketplace,
2   disadvantaging it with its creditors.  To the extent, Your
3   Honor's thinking --
4           THE COURT:  Isn't it more likely that the Russians
5   would find it from hacking you than it would it be from the
6   trustee here?
7           MS. STITZER:  Again, in today's world, it -- yes, Your
8   Honor, I would agree with that statement.  To the extent Your
9   Honor's inclined to compel production, what we are asking for
10  is a protective order that -- under the confidentiality
11  agreement, first of all, Your Honor, that agreement is between
12  the advisor and Anthem.  It's not between the trust and Anthem.
13  Also, although it requires that the parties maintain
14  confidentiality of the data and utilize that data only for the
15  specified purpose under the agreement, there is a provision
16  that also provides that the advisors shall not in any report or
17  other medium refer to the provider by name.  Just to clarify,
18  Your Honor, by identification of the provider itself, it allows
19  for determination of the provider rates that was negotiated
20  with the providers.
21          Although that last provision I just referenced
22  arguably may require documents or filings with the Court under
23  the seal, it doesn't specifically say that.  It's not expressly
24  stated, I think, or clearly stated, so we would request that
25  any order include a requirement that any filing that identifies

1    provider information be done under seal either by the trust or

2    the advisor through the trust.

3              THE COURT:  Okay.  So let me ask you to be seated for

4    a moment --

5              MS. STITZER:  Certainly.

6              THE COURT:  -- and direct my primary question to the

7    Distribution Trustee here.  And as I did read the submissions,

8    and I think I have an understanding of the process that you're

9    undertaking -- but I am struggling a little bit with the

10   relevance of the last bit of information that you're requesting

11   here.  And I guess just generally, what's the magnitude of the

12   exercise that your consultant, if you can call him that, is

13   going through in terms of dealing with these claims.  I mean,

14   are we talking about a couple of bucks or a couple of a million

15   bucks or more?

16             MR. KANDESTIN:  Just to give it context, in the single

17   year before bankruptcy, based on what we've seen, there's about

18   fifty million dollars in benefits that Corinthian paid out.  So

19   it would be a subset of that.

20             THE COURT:  That were paid out?

21             MR. KANDESTIN:  Fifty million dollars that Corinthian

22   paid in benefits under its health plan.

23             THE COURT:  Okay.  So at the end of the day, is the

24   Distribution Trustee thinking these are funds that it may,

25   based on their reports, move to recover, or are we dealing with

1  possible claims objections based upon the information that

2  you're seeking?

3          MR. KANDESTIN:  It would be a recovery, most likely.

4          THE COURT:  And why is this so relevant?

5          MR. KANDESTIN:  Without this particular information,

6  it's impossible to review it for certain kinds of errors.  It's

7  a very technical review that's being undertaken, so we

8  submitted a declaration that explains some of the --

9          THE COURT:  I read it.

10          MR. KANDESTIN:  Okay.  For the record, we have agreed

11  with Anthem that we can proceed on the declarations today

12  without live witnesses.

13          THE COURT:  All right.  Well, begin your presentation,

14  if you like, since it's your motion.

15          MR. KANDESTIN:  Okay.  May it please the Court, Cory

16  Kandestin for the Trust.  This matter's been fully briefed, and

17  we have filed declarations that will be in lieu of witnesses

18  today.

19          As you know from the briefs, Anthem is the third-party

20  administrator for Corinthian's self-funded health plan, and as

21  the third-party manager, Anthem holds its books and records.

22  Today we're asking for an order requiring Anthem to turn over

23  the records of that plan that we requested, and in particular,

24  what we're talking about are records identifying to whom Anthem

25  paid Corinthian's money -- what's been called the provider

1   information in the briefs.

2          And there are two reasons that I'll talk about today

3   about why the Court should grant that relief.  The first is

4   that it falls squarely within Section 542(e).  And the second,

5   as the Court has already hit upon with its questions, is that

6   we already have an existing confidentiality agreement that

7   covers this information, and I will address Ms. Stitzer's

8   statements in my presentation today.  There's nothing that she

9   said that we wouldn't agree to.

10          In terms of background, Your Honor, there are only two

11  key facts here.  The first is that Corinthian's plan was self-

12  funded.  So unlike a traditional health plan, Corinthian paid

13  benefits directly from its own money.

14          The second key fact is that Corinthian hired Anthem to

15  process the claims to be paid by Corinthian.  So what Anthem

16  would do is they would receive the claim forms that are

17  submitted to the health plan, look at the information in those

18  claim forms, and then it would determine the amount of benefits

19  and then pay those benefits with Corinthian's money.

20          THE COURT:  Yes.  It doesn't seem to me that any of

21  the underlying facts about how and what happened are in any way

22  disputed.  Focus for a moment, if you wouldn't mind -- I'll

23  tell you what.  Been on the bench long enough that if I've had

24  this issue before, I've long since forgotten about it.  But I

25  know I haven't had a lot of experience with the Uniform Trade

1   Secrets Act.  Does that apply here?  And what do you say in

2   response to Anthem's argument?

3           MR. KANDESTIN:  Two things.  The first is regardless

4   of whether you consider this information a trade secret,

5   disclosure should still be ordered because under the three-part

6   test that we go over in our reply, it's Anthem's burden to show

7   a specific harm that would arise from disclosure, and they

8   can't do that here.

9           The second is that it's not appropriate to consider

10  this matter a trade secret because to be a trade secret, the

11  information has to be a secret.  And here, the information is

12  disclosed to employees in the course of Anthem's duties.  So

13  when you get in the mail the statement -- the explanation of

14  benefits -- it's the letter that says this is not a bill -- it

15  has all this information on it:  the name of the provider, the

16  amount of the charge by the hospital, and the amount paid to

17  the hospital.  And just by looking at the amounts charged by

18  the hospital and the amount paid, you can look at -- you can

19  know Anthem's discount at that hospital.  So this is

20  information that goes out in letters to every single employee

21  who are -- and each employee is under no duty to keep it

22  confidential.  So it's not a trade secret.

23          We don't go into that in too much detail in our reply

24  because, in the end, it's not even something the Court needs to

25  address because of the first reason I gave:  regardless of

1  whether this is a trade secret, it should be disclosed.

2         And the three-prong test that I just talked about is

3  we can really just focus on the first prong because that's the

4  prong that Anthem doesn't overcome.  Anthem has to show that

5  the information is a trade secret first.  That's its burden of

6  proof.  The second, that there would be a harm.  And the harm

7  that it has to show is the harm of disclosing to the Trust

8  under a protective order, not the harm of a public disclosure

9  which is what Anthem focuses so much on in its briefing.  And

10 that's the standard that Anthem can't overcome.

11        The Trust is not a competitor, as Your Honor

12 recognized.  We have a confidentiality agreement that

13 specifically covers provider information within its scope.  It

14 specifically covers provider rates.  It specifically covers any

15 trade secrets.  It requires us to keep the information strictly

16 confidential.  It limits our use of the information to the

17 agreed-upon purposes in the confidentiality agreement which is

18 the medical claims review.

19        So we have an order here that really serves -- an

20 agreement here that really serves the same purposes as a

21 protective order.

22        Anthem's counsel mentioned --

23        THE COURT:  Well, would you have an objection to the

24 Court entering a protective order that contains the provision

25 that Anthem has said should be in such an order?

1    MR. KANDESTIN:  I don't think we do if it's the same
2    terms as the confidentiality agreement.  I mean, we expect to
3    keep this information confidential.  It's health law.  It's
4    required under the health law.
5        The two things that Anthem mentioned were, first, the
6    agreement itself was between our advisor and Anthem.  The Trust
7    has signed a letter separately to keep the information
8    confidential, but it's happy to sign on to this agreement as
9    well.
10       The second was having a provision stating that if
11   there is any public filing, it needs to be under seal.  We're
12   happy to sign on to -- we're happy to agree to that whether
13   it's in the confidentiality agreement or whether it's through
14   an order.
15       And with those two -- addressing those two concerns by
16   Anthem, I don't see any other harm that can arise from
17   disclosing this information to us.
18       I'll briefly touch on the two arguments that Anthem
19   makes in its objection.  We go through it in our reply, so I
20   won't go into too much detail.
21       The first argument that Anthem makes about harm is
22   that this information might end up in the public because the
23   Trust might breach the confidentiality agreements.  But the
24   only justification that Anthem gives for saying that the Trust
25   may breach is that interior breach could happen.  We don't live

1  in a perfect world.  You never know.  Anthem doesn't give

2  specific reason to think why the Trust might breach, and it's

3  Anthem's burden to show with specificity a harm that could

4  arise from disclosing to us, and it hasn't done that here.  To

5  the extent there ever is a possibility of breach, it's

6  something that will be dealt with under the remedies that

7  Anthem would have under the confidentiality agreement if it

8  ever happens.

9         The other argument that Anthem raised at the podium

10  was that it apparently is prohibited from giving us this

11  information by confidentiality provisions in other contracts,

12  and it attached sample provisions to its declaration.

13         We talk about this at length in paragraphs 10 and 11

14  of the reply.  If you look at the actual language, it doesn't

15  prohibit Anthem from turning over its own rate information.

16  But even if it did, there are exceptions, and one of those

17  exceptions, which is a standard one, is that Anthem can

18  disclose when required by law.  And when you have a court

19  order, or a subpoena, or a discovery request, but in

20  particular, a court order, that falls into that exception.  So

21  if Your Honor were to grant the motion here, there would be

22  nothing prohibiting Anthem from turning over this information.

23         I'll turn back briefly to Section 542(e) just to show

24  why it's satisfied, and then I'll conclude.  Section 542(e)

25  requires us to show that Anthem holds recorded information that

1  relates to the debtors' property or financial affairs.  Here

2  we're asking for records of the claims that Anthem processed

3  under our health plan.  So the entities whose identity Anthem

4  doesn't want to disclose to us are the entities who submitted

5  claims to the plan and have received payments of Corinthian's

6  money from the plan.

7            We're asking for the payment records for those claims.

8  And those are a part of the plans, books, and records.  And

9  because Corinthian was the payor, they relate to Corinthian's

10  financial affairs, so it's Corinthian's money.

11            Anthem's only argument to the contrary is that its

12  master contracts to health providers aren't part of the health

13  plan.  That's really a straw man because we're not asking for

14  its master contracts with its providers.  We're asking only for

15  the processing of claims that were submitted to Corinthian's

16  plan for which Corinthian's money was paid.  And Anthem's real

17  concern is confidentiality that those records might let us see

18  things they consider as confidential, but the proper way to

19  handle that is through confidentiality agreements or a

20  protective order.

21            Finally, Your Honor, we did move in the alternative

22  under Rule 2004.  Anthem's only objection for Rule 2004 is that

23  it incorporates Federal Rule 45, which provides that the Court

24  may protect from trade secrets, but it's the same three-prong

25  test that applies and that we discussed in our reply.  So

1   regardless of whether we move under Bankruptcy Rule 2004 or

2   Bankruptcy Code 542(e), the results should be the same.

3          Anthem can't overcome the first prong of the test,

4   because it hasn't met its burden of proving a specific harm.

5   If it did overcome the first part of the test, then it would be

6   our burden to show why the information is relevant and needed.

7   We have our declaration that sets out those reasons.  We

8   explained it in our reply as well.  The bottom line is that

9   without this information, we cannot review for certain errors.

10  And there are over 100,000 claim entries in the data for which

11  we don't even know the specialties of the particular doctors

12  who submitted claims.  And that's something we need to know.

13          And then if the Court did reach the second prong, we

14  would satisfy it; we would reach the third prong where we'd

15  have to balance the harm that Anthem proves under the first

16  prong against our need for the information under the second

17  prong.  And because there is no harm to counterbalance our

18  need, the balance will tilt in favor of disclosure.  And that's

19  consistent with the case law which recognizes that disclosure

20  is favored, and orders prohibiting disclosure are rare, and

21  that protective orders are the proper way to deal with

22  disclosure of alleged trade secrets.

23          So for those reasons, we ask that the Court grant the

24  motion.  We need the information about who was paid, how much,

25  and why to do this medical claims review.  The information is

1  part of the health plan's records, and because Corinthian was

2  the payor, it relates to Corinthian's financial affairs.  And

3  because we have the confidentiality agreements, there is just

4  no harm that Anthem can demonstrate.  And we are willing to

5  agree to the sealing provisions and have the trust sign onto

6  the agreements as Anthem raised before.

7           So unless Your Honor has any questions for me.  That

8  concludes my presentation.

9           THE COURT:  I do not.  Thank you.

10          MS. STITZER:  For the record, Your Honor, Ashley

11  Stitzer on behalf of Anthem Blue Cross Life and Health

12  Insurance Company.

13          Your Honor, just to touch on the relevance issue that

14  you raised previously, Anthem is not sure -- my understanding

15  of the plan and how it operates with the providers is that the

16  providers submit the claim and actually submit it under the

17  appropriate code.  So Anthem does not understand, presently,

18  why what Remnant is seeking to do has recourse against Anthem

19  at this point.  Also, it's my understanding that under the --

20  the plan provides that any recourse is against the particular

21  providers, not against Anthem.  But having said that, I think

22  that's an argument for another day, not for purposes of today's

23  hearing.

24          Your Honor, Anthem has turned over all of the data

25  that has been requested with the exception of the four items,

1   the provider information that we are arguing over today.

2          With respect to trade secrets, Anthem's provider rates

3   that are negotiated with its providers are proprietary and

4   highly confidential and protected as a trade secret for the

5   reasons stated in Janet Andrea's declaration that was filed in

6   support of the objection.  Anthem contracts with each of its

7   providers with respect to the provider rates and provides its

8   services not only to the debtor but also to all of its

9   insureds.  It provides an economic value to Anthem and a

10  competitive advantage in the marketplace.  The disclosure of

11  those rates would have a significant impact on Anthem with

12  respect to its contractual relationships with its providers and

13  also with its others, insureds, and place those relationships

14  in jeopardy, and in addition, Your Honor, would significantly

15  disadvantage to Anthem with its competitors in the marketplace.

16         To respond to you an argument made by Trust's counsel

17  with respect to employees having access to or being able to

18  determine a provider rate based on an EOB, Your Honor, Anthem

19  submits that an employee being able to figure out a provider

20  rate for one or two of its providers is a significantly

21  different situation and has a significantly different impact on

22  Anthem in the marketplace versus thousands of its provider

23  rates getting out through disclosure.

24         Again, Your Honor, it's Anthem's position that, under

25  its confidentiality agreements with its providers, that it

1    cannot voluntarily disclose this information.  Specifically the

2    agreements provide that all information and material provided

3    by either -- and I'm referring to the provider agreement, not

4    necessarily the confidentiality agreement with the advisor --

5    "all information and material provided by either party in

6    contemplation of or in connection with the agreement remains

7    proprietary to the disclosing party and that neither party

8    shall disclose any information proprietary to the other or use

9    such information and material except in limited circumstances."

10   The Trust makes the argument that it is proprietary solely to

11   Anthem.  Anthem disputes that, Your Honor.  Obviously a

12   provider rate for a doctor through Anthem that is significantly

13   lower than its rates for its other patients and plans would be

14   something that would be proprietary to that particular doctor

15   as well.

16       Notwithstanding the Trust's reading of those

17   confidentiality agreements, it's Anthem's interpretation and

18   understanding of those obligations and that it cannot

19   voluntarily turn over the information unless required by law or

20   regulation.  Again, Your Honor, the Trust would certainly

21   comply with any order of the Court and disclose the information

22   if compelled, but it is requesting a protective order, as I

23   stated earlier, with respect to the sealing if any subsequent

24   information for the reason stated previously.

25       Thank you, Your Honor.

1        THE COURT:  Thank you.  All right.  Well, I will

2  consider, in addition to arguments of counsel in their written

3  submissions in the form of pleadings, the Woodward (ph.) and

4  Andrea declarations, respectively, as part of this record as

5  the parties have agreed.

6        I'm satisfied, based upon this record, that the

7  Distribution Trustee has demonstrated the relevance of this

8  information to the exercise that its consultant is undertaking

9  to determine whether certain funds should be recovered.  I'm

10  also satisfied that with the fact that the Distribution Trustee

11  is not a competitor of Anthem, and I think that puts it in a

12  different category here then were the other side a competitor,

13  plus, the entry of a protective order will, if not eliminate,

14  certainly reduce any harm that Anthem might suffer, and

15  frankly, absent that greater harm to the Distribution Trustee

16  for not being able to fully undertake the exercise that it

17  described, there's been little enough available for creditors

18  in this case for reasons everybody already knows, I think.

19        So I will grant the motion for those reasons, and

20  under those circumstances, I will ask counsel for Anthem to

21  take the laboring oar in drafting a protective order.  And if

22  it turns out that despite the Distribution Trustee's indication

23  that he would agree to such an order, if there's a problem with

24  the language, I ask counsel to reach out to me by conference

25  telephone and I'll resolve any remaining disputes, but

1    hopefully there will be none.

2              Are there any questions?

3              MS. STITZER:  No, Your Honor.

4              MR. KANDESTIN:  No, Your Honor.

5              THE COURT:  All right.  Thank you all very much.  That

6    concludes this hearing.  Court will stand adjourned.

7              MS. STITZER:  Thank you, Your Honor.

8              MR. KANDESTIN:  Thank you, Your Honor.

9          (Whereupon these proceedings were concluded at 10:29 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    I N D E X

3                     RULINGS

4                                    Page     Line

5  Motion for turnover of documents is granted  22        19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

25

1

2                  C E R T I F I C A T I O N

3

4          I, Paul T. Abramson, certify that the foregoing

5   transcript is a true and accurate record of the proceedings.

6

7

8                                        October 18, 2016

9   _____        _____

10  PAUL T. ABRAMSON                        DATE

11

12

13

14  eScribers

15  700 West 192nd Street, Suite #607

16  New York, NY 10040

17

18

19

20

21

22

23

24

25

Case 15-10952-JTD    Doc 1256    Filed 10/20/16    Page 26 of 31

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

October 13, 2016

## A

**able (7)**
5:23;6:2,9;8:1;
20:17,19;22:16
**absent (1)**
22:15
**absolutely (2)**
7:8,8
**accelerate (1)**
5:24
**access (1)**
20:17
**Act (4)**
4:18,25;5:6;13:1
**actual (1)**
16:14
**actually (2)**
4:20;19:16
**addition (4)**
5:13;8:4;20:14;
22:2
**address (2)**
12:7;13:25
**addresses (1)**
7:25
**addressing (1)**
15:15
**adjourned (1)**
23:6
**administrative (1)**
4:11
**administrator (1)**
11:20
**advantage (1)**
20:10
**adversary (2)**
4:19;5:6
**advisor (4)**
9:12;10:2;15:6;
21:4
**advisors (1)**
9:16
**affairs (3)**
17:1,10;19:2
**Again (3)**
9:7;20:24;21:20
**against (4)**
18:16;19:18,20,21
**agenda (3)**
4:8,10,16
**agree (5)**
9:8;12:9;15:12;
19:5;22:23
**agreed (2)**
11:10;22:5
**agreed-upon (1)**
14:17
**agreement (19)**
5:12,15;6:10;8:17;
9:11,11,15;12:6;
14:12,17,20;15:2,6,

8,13;16:7;21:3,4,6
**agreements (11)**
8:6,7,14,18;15:23;
17:19;19:3,6;20:25;
21:2,17
**ahead (1)**
6:4
**alleged (1)**
18:22
**allows (1)**
9:18
**alternative (1)**
17:21
**although (2)**
9:13,21
**amount (4)**
12:18;13:16,16,18
**amounts (1)**
13:17
**Andrea (1)**
22:4
**Andrea's (1)**
20:5
**Anthem (54)**
7:8,11;8:20;9:12,
12;11:11,19,21,22,
24;12:14,15;14:4,4,
9,10,25;15:5,6,16,18,
21,24;16:1,7,9,15,17,
22,25;17:2,3;18:3,
15;19:4,6,11,14,17,
18,21,24;20:6,9,11,
15,18,22;21:11,11,
12;22:11,14,20
**Anthem's (12)**
13:2,6,12,19;
14:22;16:3;17:11,16,
22;20:2,24;21:17
**apart (2)**
8:11,14
**apparently (1)**
16:10
**applies (1)**
17:25
**apply (1)**
13:1
**appropriate (2)**
13:9;19:17
**arguably (1)**
9:22
**arguing (1)**
20:1
**argument (10)**
4:22;6:15;7:19;
13:2;15:21;16:9;
17:11;19:22;20:16;
21:10
**arguments (2)**
15:18;22:2
**arise (3)**
13:7;15:16;16:4
**around (1)**
7:22

**Ashley (1)**
19:10
**attached (1)**
16:12
**available (1)**
22:17

## B

**back (1)**
16:23
**background (1)**
12:10
**balance (2)**
18:15,18
**bankruptcy (3)**
10:17;18:1,2
**based (5)**
10:17,25;11:1;
20:18;22:6
**begin (2)**
6:24;11:13
**behalf (2)**
4:6;19:11
**bench (1)**
12:23
**benefits (6)**
10:18,22;12:13,18,
19;13:14
**better (1)**
6:1
**bill (1)**
13:14
**bit (2)**
10:9,10
**Blue (1)**
19:11
**books (2)**
11:21;17:8
**both (1)**
6:23
**bottom (1)**
18:8
**breach (5)**
15:23,25,25;16:2,5
**briefed (1)**
11:16
**briefing (1)**
14:9
**Briefly (3)**
5:5;15:18;16:23
**briefs (2)**
11:19;12:1
**bucks (2)**
10:14,15
**burden (5)**
13:6;14:5;16:3;
18:4,6

## C

**calibrate (1)**
6:4

**call (1)**
10:12
**called (1)**
11:25
**Can (12)**
5:18;7:9,22;8:24;
10:12;11:11;13:18,
18;14:3;15:16;
16:17;19:4
**case (4)**
6:3;8:25;18:19;
22:18
**cases (2)**
5:9;7:14
**category (2)**
7:7;22:12
**cause (1)**
8:15
**certain (4)**
4:18;11:6;18:9;
22:9
**Certainly (3)**
10:5;21:20;22:14
**charge (1)**
13:16
**charged (1)**
13:17
**circumstances (2)**
21:9;22:20
**claim (4)**
12:16,18;18:10;
19:16
**claims (12)**
4:13,25;10:13;
11:1;12:15;14:18;
17:2,5,7,15;18:12,25
**clarify (1)**
9:17
**class (2)**
5:25;6:5
**clearly (1)**
9:24
**CLERK (1)**
4:2
**client (1)**
7:17
**client's (2)**
8:3,21
**Code (2)**
18:2;19:17
**colleague (1)**
6:14
**collect (1)**
5:23
**comments (1)**
6:13
**committee (1)**
6:8
**Company (1)**
19:12
**compel (1)**
9:9
**compelled (2)**

**competitive (1)**
20:10
**competitor (4)**
8:17;14:11;22:11,
12
**competitors (1)**
20:15
**completion (1)**
5:25
**comply (1)**
21:21
**comprised (1)**
7:24
**compromise (1)**
7:3
**concern (4)**
8:3,21;9:1;17:17
**concerns (1)**
15:15
**conclude (1)**
16:24
**concluded (1)**
23:9
**concludes (2)**
19:8;23:6
**conference (4)**
4:18,21,25;22:24
**confidential (6)**
13:22;14:16;15:3,
8;17:18;20:4
**confidentiality (18)**
8:5,17;9:10,14;
12:6;14:12,17;15:2,
13,23;16:7,11;17:17,
19;19:3;20:25;21:4,
17
**confirmation (3)**
5:7,9,13
**connection (1)**
21:6
**consensual (1)**
7:6
**consider (4)**
13:4,9;17:18;22:2
**consistent (1)**
18:19
**consultant (2)**
10:12;22:8
**contains (1)**
14:24
**contemplates (1)**
5:12
**contemplation (1)**
21:6
**context (1)**
10:16
**contingent (1)**
5:22
**continued (3)**
4:9,12;5:14
**contracts (4)**
16:11;17:12,14;

Case 15-10952-JTD    Doc 1256    Filed 10/20/16    Page 27 of 31

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

October 13, 2016

20:6
**contractual (1)**
  20:12
**contrary (1)**
  17:11
**conversations (1)**
  7:21
**Corinthian (7)**
  10:18,21;12:12,14,
  15;17:9;19:1
**Corinthian's (10)**
  11:20,25;12:11,
  19;17:5,9,10,15,16;
  19:2
**Cory (2)**
  6:15;11:15
**counsel (7)**
  5:1,19;14:22;
  20:16;22:2,20,24
**counterbalance (1)**
  18:17
**counterparties (1)**
  8:13
**couple (2)**
  10:14,14
**course (1)**
  13:12
**COURT (38)**
  4:3,23;5:4,5,17;
  6:12,17,22;7:10;8:8,
  10,12;9:4,22;10:3,6,
  20,23;11:4,9,13,15;
  12:3,5,20;13:24;
  14:23,24;16:18,20;
  17:23;18:13,23;
  19:9;21:21;22:1;
  23:5,6
**covers (4)**
  12:7;14:13,14,14
**creditors (2)**
  9:2;22:17
**creditors' (1)**
  6:7
**Cross (1)**
  19:11

**D**

**data (4)**
  9:14,14;18:10;
  19:24
**date (2)**
  4:12;5:10
**day (2)**
  10:23;19:22
**deadline (1)**
  4:14
**deal (1)**
  18:21
**dealing (2)**
  10:13,25
**dealt (1)**
  16:6

**debtor (1)**
  20:8
**debtors' (1)**
  17:1
**declaration (4)**
  11:8;16:12;18:7;
  20:5
**declarations (3)**
  11:11,17;22:4
**defer (1)**
  5:19
**demonstrate (1)**
  19:4
**demonstrated (1)**
  22:7
**described (1)**
  22:17
**desire (1)**
  8:11
**despite (1)**
  22:22
**detail (2)**
  13:23;15:20
**determination (1)**
  9:19
**determine (3)**
  12:18;20:18;22:9
**determined (1)**
  4:12
**different (4)**
  7:22;20:21,21;
  22:12
**direct (2)**
  8:20;10:6
**directly (1)**
  12:13
**disadvantage (1)**
  20:15
**disadvantaging (1)**
  9:2
**discern (1)**
  8:15
**disclose (5)**
  16:18;17:4;21:1,8,
  21
**disclosed (4)**
  8:23;9:1;13:12;
  14:1
**disclosing (4)**
  14:7;15:17;16:4;
  21:7
**disclosure (11)**
  8:15,22;13:5,7;
  14:8;18:18,19,20,22;
  20:10,23
**discount (1)**
  13:19
**discovery (1)**
  16:19
**discussed (1)**
  17:25
**discussions (1)**
  7:6

**disputed (1)**
  12:22
**disputes (2)**
  21:11;22:25
**distribute (1)**
  5:23
**Distribution (11)**
  4:7,13,17;6:9,9;
  10:7,24;22:7,10,15,
  22
**docket (1)**
  4:10
**doctor (2)**
  21:12,14
**doctors (1)**
  18:11
**documents (2)**
  4:18;9:22
**dollars (2)**
  10:18,21
**done (3)**
  8:2;10:1;16:4
**drafting (1)**
  22:21
**duties (1)**
  13:12
**duty (1)**
  13:21

**E**

**earlier (1)**
  21:23
**economic (1)**
  20:9
**effective (1)**
  5:10
**either (3)**
  10:1;21:3,5
**eliminate (1)**
  22:13
**employee (3)**
  13:20,21;20:19
**employees (2)**
  13:12;20:17
**end (3)**
  10:23;13:24;15:22
**engaged (1)**
  7:21
**enough (2)**
  12:23;22:17
**entered (1)**
  4:14
**entering (1)**
  14:24
**entities (2)**
  17:3,4
**entries (1)**
  18:10
**entry (1)**
  22:13
**EOB (1)**
  20:18

**errors (2)**
  11:6;18:9
**estate (1)**
  5:22
**even (3)**
  13:24;16:16;18:11
**everybody (1)**
  22:18
**everyone (1)**
  4:3
**except (1)**
  21:9
**exception (2)**
  16:20;19:25
**exceptions (2)**
  16:16,17
**excused (1)**
  6:18
**exercise (3)**
  10:12;22:8,16
**existing (1)**
  12:6
**expect (2)**
  5:15;15:2
**expectations (1)**
  6:5
**expense (1)**
  4:11
**experience (1)**
  12:25
**explain (1)**
  5:18
**explained (1)**
  18:8
**explains (1)**
  11:8
**explanation (1)**
  13:13
**expressly (1)**
  9:23
**extend (1)**
  4:13
**extent (3)**
  9:2,8;16:5

**F**

**fact (2)**
  12:14;22:10
**facts (2)**
  12:11,21
**falls (2)**
  12:4;16:20
**far (2)**
  7:2,18
**fashion (1)**
  4:23
**favor (1)**
  18:18
**favored (1)**
  18:20
**feared (1)**
  7:13

**Federal (1)**
  17:23
**feel (1)**
  8:6
**fifty (2)**
  10:18,21
**figure (2)**
  8:1;20:19
**filed (3)**
  5:13;11:17;20:5
**filing (2)**
  9:25;15:11
**filings (1)**
  9:22
**finalize (1)**
  6:9
**finalized (1)**
  5:15
**Finally (1)**
  17:21
**financial (3)**
  17:1,10;19:2
**find (1)**
  9:5
**Finger (1)**
  4:6
**first (15)**
  4:10;7:2,12;9:11;
  12:3,11;13:3,25;
  14:3,5;15:5,21;18:3,
  5,15
**Focus (2)**
  12:22;14:3
**focuses (1)**
  14:9
**forgotten (1)**
  12:24
**form (3)**
  5:11,14;22:3
**forms (2)**
  12:16,18
**forward (1)**
  4:16
**four (1)**
  19:25
**frankly (1)**
  22:15
**fully (2)**
  11:16;22:16
**funded (1)**
  12:12
**funds (4)**
  5:23,23;10:24;
  22:9
**further (1)**
  6:13
**future (1)**
  5:16

**G**

**gave (1)**
  13:25

Case 15-10952-JTD   Doc 1256   Filed 10/20/16   Page 28 of 31

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

October 13, 2016

**generally (2)**
7:18;10:11
**given (1)**
8:16
**gives (1)**
15:24
**giving (1)**
16:10
**global (1)**
8:21
**goes (1)**
13:20
**Golden (1)**
5:2
**Good (5)**
4:3,4,5;5:3,4
**grant (4)**
12:3;16:21;18:23;
22:19
**greater (1)**
22:15
**ground (1)**
7:9
**guarding (1)**
7:13
**guess (2)**
7:11;10:11

**H**

**hacking (1)**
9:5
**handle (2)**
6:1;17:19
**handling (1)**
6:15
**happen (2)**
8:24;15:25
**happened (1)**
12:21
**happens (2)**
8:24;16:8
**happy (3)**
15:8,12,12
**hard- (1)**
8:14
**harm (16)**
8:15,19;13:7;14:6,
6,7,8;15:16,21;16:3;
18:4,15,17;19:4;
22:14,15
**harmful (1)**
8:19
**health (11)**
10:22;11:20;
12:12,17;15:3,4;
17:3,12,12;19:1,11
**hearing (3)**
5:7;19:23;23:6
**hesitant (1)**
5:24
**highly (1)**
20:4

**hired (1)**
12:14
**hit (1)**
12:5
**holds (2)**
11:21;16:25
**Honor (36)**
4:4,5,8,19,24;5:3,
21;6:14,20,21;7:5,
15,19,21;8:3;9:8,11,
18;12:10;14:11;
16:21;17:21;19:7,10,
13,24;20:14,18,24;
21:11,20,25;23:3,4,
7,8
**Honor's (2)**
9:3,9
**hope (1)**
7:3
**hopefully (1)**
23:1
**hospital (4)**
13:16,17,18,19

**I**

**idea (1)**
6:1
**ideas (1)**
7:22
**identification (3)**
7:23,25;9:18
**identifies (1)**
9:25
**identifying (1)**
11:24
**identity (1)**
17:3
**impact (2)**
20:11,21
**impossible (1)**
11:6
**inadvertently (1)**
8:23
**inclined (1)**
9:9
**include (1)**
9:25
**incorporates (1)**
17:23
**indication (1)**
22:22
**individualized (1)**
6:23
**information (47)**
6:6;7:7,7,17,24;
8:4,12,20;10:1,10;
11:1,5;12:1,7,17;
13:4,11,15,16;15:3,
7,17,22;16:11,15,22;
25;18:6,9,16,24,25;
20:1;21:1,2,5,8,9,19,

21,24;22:8
**insulation (1)**
8:13
**Insurance (1)**
19:12
**insureds (2)**
20:9,13
**intent (1)**
8:24
**intentionally (1)**
8:24
**interior (1)**
15:25
**interpretation (1)**
21:17
**into (6)**
5:8;7:18;9:1;
13:23;15:20;16:20
**issue (4)**
7:3;8:14;12:24;
19:13
**item (2)**
4:10,17
**items (2)**
4:9;19:25

**J**

**Jack (1)**
5:2
**Janet (1)**
20:5
**jeopardy (1)**
20:14
**jump (1)**
6:3
**justification (1)**
15:24

**K**

**Kandestin (14)**
6:15,21;7:4;10:16,
21;11:3,5,10,15,16;
13:3;15:1;23:4,8
**keep (4)**
13:21;14:15;15:3,
7
**key (2)**
12:11,14
**kinds (1)**
11:6
**knows (1)**
22:18

**L**

**laboring (1)**
22:21
**language (3)**
8:7;16:14;22:24
**last (3)**
7:3;9:21;10:10

**law (5)**
15:3,4;16:18;
18:19;21:19
**Layton (1)**
4:6
**least (1)**
6:1
**left (1)**
7:7
**length (1)**
16:13
**letter (2)**
13:14;15:7
**letters (1)**
13:20
**lieu (1)**
11:17
**Life (1)**
19:11
**likelihood (1)**
6:1
**likely (2)**
9:4;11:3
**limited (1)**
21:9
**limits (1)**
14:16
**line (2)**
5:1;18:8
**little (2)**
10:9;22:17
**live (2)**
11:12;15:25
**long (2)**
12:23,24
**look (3)**
12:17;13:18;16:14
**looking (2)**
4:8;13:17
**lot (1)**
12:25
**lower (1)**
21:13

**M**

**MADDOX (6)**
4:5,6,24;5:5,19;
6:14
**magnitude (1)**
10:11
**mail (1)**
13:13
**maintain (1)**
9:13
**makes (3)**
15:19,21;21:10
**man (1)**
17:13
**manager (1)**
11:21
**marketplace (5)**
8:23;9:1;20:10,15,

22
**master (2)**
17:12,14
**material (3)**
21:2,5,9
**matter (3)**
4:14;8:19;13:10
**matters (2)**
4:9,16
**matter's (1)**
11:16
**may (12)**
4:19;5:5,5,22;
6:18;7:11;8:12;9:22;
10:24;11:15;15:25;
17:24
**mean (2)**
10:13;15:2
**medical (2)**
14:18;18:25
**medium (1)**
9:17
**members (2)**
5:25;6:5
**mentioned (2)**
14:22;15:5
**met (1)**
18:4
**middle (1)**
7:9
**might (5)**
15:22,23;16:2;
17:17;22:14
**million (3)**
10:14,18,21
**mind (1)**
12:22
**moment (2)**
10:4;12:22
**money (6)**
11:25;12:13,19;
17:6,10,16
**monitoring (1)**
6:3
**more (4)**
8:21,24;9:4;10:15
**morning (5)**
4:3,4,5;5:3,4
**most (1)**
11:3
**motion (11)**
4:11,13,17,22;
5:12;6:10,16;11:14;
16:21;18:24;22:19
**move (4)**
5:24;10:25;17:21;
18:1
**much (6)**
6:11;13:23;14:9;
15:20;18:24;23:5
**multiple (3)**
7:5,5,21

## N

**name (2)**
9:17;13:15
**names (1)**
7:24
**nature (1)**
8:16
**near (1)**
5:16
**necessarily (1)**
21:4
**need (6)**
6:11;7:8;18:12,16,
18,24
**needed (1)**
18:6
**needs (2)**
13:24;15:11
**negotiated (2)**
9:19;20:3
**negotiating (1)**
5:11
**neither (2)**
8:1;21:7
**none (1)**
23:1
**notification (1)**
5:25
**Notwithstanding (1)**
21:16
**NPIs (1)**
7:25
**number (1)**
4:9
**numbers (1)**
7:25

## O

**oar (1)**
22:21
**objection (5)**
4:13;14:23;15:19;
17:22;20:6
**objections (1)**
11:1
**obligations (2)**
8:5;21:18
**Obviously (1)**
21:11
**occur (2)**
7:16;8:25
**often (2)**
7:16,16
**one (5)**
4:10;7:6;16:16,17;
20:20
**only (7)**
9:14;12:10;15:24;
17:11,14,22;20:8
**onto (1)**

19:5
**operates (1)**
19:15
**opportunity (1)**
6:24
**order (22)**
4:14,20;5:9,13;
8:9;9:10,25;11:22;
14:8,19,21,24,25;
15:14;16:19,20;
17:20;21:21,22;
22:13,21,23
**ordered (1)**
13:5
**orders (2)**
18:20,21
**original (1)**
7:20
**others (1)**
20:13
**out (11)**
8:1,23;9:1;10:18,
20;13:20;18:7;
20:19,23;22:22,24
**Outten (1)**
5:2
**over (11)**
8:3,8,20;11:22;
13:6;16:15,22;
18:10;19:24;20:1;
21:19
**overcome (4)**
14:4,10;18:3,5
**oversight (1)**
6:8
**own (2)**
12:13;16:15

## P

**paid (10)**
10:18,20,22;
11:25;12:12,15;
13:16,18;17:16;
18:24
**papers (1)**
6:10
**paragraphs (1)**
16:13
**part (7)**
6:2,7;17:8,12;
18:5;19:1;22:4
**particular (8)**
7:17,23;11:5,23;
16:20;18:11;19:20;
21:14
**parties (4)**
5:11,14;9:13;22:5
**party (5)**
8:6,16;21:5,7,7
**patients (1)**
21:13
**pay (1)**

12:19
**payment (2)**
6:2;17:7
**payments (1)**
17:5
**payor (2)**
17:9;19:2
**perfect (1)**
16:1
**ph (1)**
22:3
**phone (1)**
6:18
**place (2)**
6:11;20:13
**placed (1)**
5:8
**plaintiff's (2)**
5:1,19
**plan (16)**
5:8,13;6:9;10:22;
11:20,23;12:11,12,
17;17:3,5,6,13,16;
19:15,20
**plans (2)**
17:8;21:13
**plan's (1)**
19:1
**pleadings (1)**
22:3
**please (2)**
4:2;11:15
**plus (1)**
22:13
**podium (1)**
16:9
**point (3)**
6:6,19;19:19
**portion (1)**
5:21
**posed (1)**
7:21
**position (2)**
6:7;20:24
**possibility (1)**
16:5
**possible (2)**
7:9;11:1
**preliminary (1)**
6:22
**presentation (4)**
6:25;11:13;12:8;
19:8
**presently (1)**
19:17
**pressed (1)**
8:15
**pretty (1)**
6:11
**previously (2)**
19:14;21:24
**primary (1)**
10:6

**principle (2)**
8:18,19
**problem (1)**
22:23
**proceed (3)**
4:20,23;11:11
**proceeding (2)**
4:19;5:6
**proceedings (1)**
23:9
**process (2)**
10:8;12:15
**processed (1)**
17:2
**processing (1)**
17:15
**production (1)**
9:9
**progress (1)**
6:3
**prohibit (1)**
16:15
**prohibited (1)**
16:10
**prohibiting (2)**
16:22;18:20
**prong (7)**
14:3,4;18:3,13,14,
16,17
**proof (1)**
14:6
**proper (2)**
17:18;18:21
**property (1)**
17:1
**proprietary (5)**
20:3;21:7,8,10,14
**protect (1)**
17:24
**protected (1)**
20:4
**protective (9)**
9:10;14:8,21,24;
17:20;18:21;21:22;
22:13,21
**proves (1)**
18:15
**provide (1)**
21:2
**provided (2)**
21:2,5
**provider (18)**
7:24;8:22;9:17,18,
19;10:1;11:25;
13:15;14:13,14;20:1,
2,7,18,19,22;21:3,12
**providers (13)**
7:23;8:5;9:20;
17:12,14;19:15,16,
21;20:3,7,12,20,25
**provides (5)**
9:16;17:23;19:20;
20:7,9

**proving (1)**
18:4
**provision (4)**
9:15,21;14:24;
15:10
**provisions (3)**
16:11,12;19:5
**public (3)**
14:8;15:11,22
**purpose (1)**
9:15
**purposes (3)**
14:17,20;19:22
**put (1)**
5:7
**puts (1)**
22:11

## R

**raised (3)**
16:9;19:6,14
**RAISNER (5)**
5:2,2,21;6:17,20
**rare (1)**
18:20
**rate (4)**
16:15;20:18,20;
21:12
**rates (8)**
8:22;9:19;14:14;
20:2,7,11,23;21:13
**reach (5)**
7:6,9;18:13,14;
22:24
**read (2)**
10:7;11:9
**reading (1)**
21:16
**real (1)**
17:16
**realistic (1)**
6:5
**really (6)**
7:9;8:19;14:3,19,
20;17:13
**reason (3)**
13:25;16:2;21:24
**reasons (5)**
12:2;18:7,23;20:5;
22:18,19
**recall (2)**
5:6,22
**receive (1)**
12:16
**received (1)**
17:5
**recognized (1)**
14:12
**recognizes (1)**
18:19
**record (6)**
4:6;5:7;11:10;

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

October 13, 2016

19:10;22:4,6
recorded (1)
  16:25
records (8)
  11:21,23,24;17:2,
  7,8,17;19:1
recourse (2)
  19:18,20
recover (1)
  10:25
recovered (1)
  22:9
recovery (1)
  11:3
reduce (1)
  22:14
refer (1)
  9:17
referenced (1)
  9:21
referring (1)
  21:3
refuses (1)
  7:8
regardless (3)
  13:3,25;18:1
regulation (1)
  21:20
relate (1)
  17:9
relates (2)
  17:1;19:2
relationships (2)
  20:12,13
relevance (3)
  10:10;19:13;22:7
relevant (2)
  11:4;18:6
relief (1)
  12:3
relinquish (1)
  7:13
relinquishing (1)
  7:23
remain (1)
  6:18
remaining (1)
  22:25
remains (1)
  21:6
remedies (1)
  16:6
Remnant (1)
  19:18
reply (6)
  13:6,23;15:19;
  16:14;17:25;18:8
report (1)
  9:16
reports (1)
  10:25
request (2)
  9:24;16:19

requested (4)
  7:17,18;11:23;
  19:25
requesting (2)
  10:10;21:22
require (1)
  9:22
required (3)
  15:4;16:18;21:19
requirement (1)
  9:25
requires (3)
  9:13;14:15;16:25
requiring (1)
  11:22
resolution (1)
  7:6
resolve (1)
  22:25
resolved (3)
  4:10,15;5:6
respect (7)
  4:24;8:13;20:2,7,
  12,17;21:23
respectively (1)
  22:4
respond (1)
  20:16
response (1)
  13:2
results (1)
  18:2
Reuters (1)
  4:11
reverse (1)
  4:20
review (5)
  11:6,7;14:18;18:9,
  25
reviewed (1)
  6:25
reviews (1)
  7:16
Richards (1)
  4:6
right (4)
  6:12;11:13;22:1;
  23:5
rise (1)
  4:2
risk (1)
  8:22
Robert (1)
  4:6
Rule (4)
  17:22,22,23;18:1
Russians (1)
  9:4

S

same (4)
  14:20;15:1;17:24;

18:2
sample (1)
  16:12
satisfied (3)
  16:24;22:6,10
satisfy (1)
  18:14
saying (1)
  15:24
scope (1)
  14:13
seal (3)
  9:23;10:1;15:11
sealing (2)
  19:5;21:23
seated (2)
  4:2;10:3
second (8)
  4:12;12:4,14;13:9;
  14:6;15:10;18:13,16
secret (9)
  8:4;13:4,10,10,11,
  22;14:1,5;20:4
Secrets (5)
  13:1;14:15;17:24;
  18:22;20:2
Section (3)
  12:4;16:23,24
seeing (1)
  6:8
seeking (3)
  6:3;11:2;19:18
seem (1)
  12:20
seems (1)
  5:17
self- (1)
  12:11
self-funded (1)
  11:20
sense (2)
  5:17;6:8
separately (1)
  15:7
serves (2)
  14:19,20
services (1)
  20:8
sets (1)
  18:7
settlement (7)
  5:7,8,11,12,15,22,
  24
settlements (1)
  7:5
shall (2)
  9:16;21:8
shorter (1)
  4:21
show (7)
  13:6;14:4,7;16:3,
  23,25;18:6
side (3)

8:1,16;22:12
sides (1)
  6:23
sign (3)
  15:8,12;19:5
signed (1)
  15:7
significant (1)
  20:11
significantly (4)
  20:14,20,21;21:12
single (2)
  10:16;13:20
situation (1)
  7:12;20:21
slated (1)
  4:16
solely (1)
  21:10
sorry (1)
  4:10
specialties (1)
  18:11
specific (4)
  7:19;13:7;16:2;
  18:4
specifically (5)
  9:23;14:13,14;
  21:1
specificity (1)
  16:3
specified (1)
  9:15
squarely (1)
  12:4
stand (1)
  23:6
standard (2)
  14:10;16:17
start (1)
  7:12
stated (5)
  9:24,24;20:5;
  21:23,24
statement (2)
  9:8;13:13
statements (1)
  12:8
stating (1)
  15:10
status (3)
  4:18,21,25
still (1)
  13:5
STITZER (8)
  7:15;8:21;9:7;
  10:5;19:10,11;23:3,7
Stitzer's (1)
  12:7
straw (1)
  17:13
strictly (1)
  14:15

struggling (1)
  10:9
submissions (3)
  7:1;10:7;22:3
submit (2)
  19:16,16
submits (1)
  20:19
submitted (5)
  11:8;12:17;17:4,
  15;18:12
subpoena (1)
  16:19
Subsequent (2)
  5:10;21:23
subsequently (1)
  5:8
subset (1)
  10:19
substantial (2)
  5:21;6:2
substantially (1)
  4:21
suffer (1)
  22:14
support (1)
  20:6
sure (1)
  19:14

T

talk (2)
  12:2;16:13
talked (1)
  14:2
talking (2)
  10:14;11:24
tax (1)
  7:25
technical (1)
  11:7
telephone (1)
  22:25
telling (1)
  6:4
terms (3)
  10:13;12:10;15:2
test (5)
  13:6;14:2;17:25;
  18:3,5
thinking (2)
  9:3;10:24
third (2)
  8:6;18:14
third-party (2)
  11:19,21
Thomson (1)
  4:11
thousands (1)
  20:22
three-part (1)
  13:5

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(5) recorded - three-part

CORINTHIAN COLLEGES, INC., et al.
Case No. 15-10952 (KJC)

October 13, 2016

**three-prong (2)**
14:2;17:24
**thrown (1)**
7:22
**TID (1)**
7:25
**tilt (1)**
18:18
**today (8)**
7:4;8:9;11:11,18,
22;12:2,8;20:1
**today's (5)**
4:8;8:22,24;9:7;
19:22
**touch (2)**
15:18;19:13
**towards (1)**
5:24
**trade (13)**
8:4;12:25;13:4,10,
10,22;14:1,5,15;
17:24;18:22;20:2,4
**traditional (1)**
12:12
**trust (13)**
9:12;10:1,2;11:16;
14:7,11;15:6,23,24;
16:2;19:5;21:10,20
**Trustee (7)**
4:7;9:6;10:7,24;
22:7,10,15
**Trustee's (3)**
4:13,17;22:22
**Trust's (2)**
20:16;21:16
**try (2)**
7:6,22
**trying (1)**
6:4
**turn (4)**
8:8;11:22;16:23;
21:19
**turned (2)**
8:20;19:24
**turning (3)**
8:3;16:15,22
**turnover (2)**
4:17;6:15
**turns (1)**
22:22
**two (11)**
4:8,16;7:11;12:2,
10;13:3;15:5,15,15,
18;20:20
**types (1)**
7:16

**U**

**ultimately (1)**
8:9
**under (23)**
8:5,6;9:10,15,22;

10:1,22;13:5,21;
14:8;15:4,11;16:6,7;
17:3,22;18:1,15,16;
19:16,19;20:24;
22:20
**underlying (1)**
12:21
**understandable (1)**
8:11
**undertake (1)**
22:16
**undertaken (1)**
11:7
**undertaking (2)**
10:9;22:8
**Uniform (1)**
12:25
**UNISON (1)**
4:4
**unless (2)**
19:7;21:19
**unlike (1)**
12:12
**up (2)**
8:11;15:22
**upon (3)**
11:1;12:5;22:6
**urgency (1)**
5:17
**use (2)**
14:16;21:8
**utilize (1)**
9:14

**V**

**value (1)**
20:9
**various (1)**
8:14
**versus (1)**
20:22
**virtue (1)**
7:13
**voluntarily (3)**
8:8;21:1,19

**W**

**WARN (3)**
4:18,25;5:6
**way (4)**
8:1;12:21;17:18;
18:21
**welcome (1)**
6:17
**what's (3)**
8:19;10:11;11:25
**Whereupon (1)**
23:9
**whose (1)**
17:3
**willing (1)**

19:4
**wish (1)**
6:19
**within (2)**
12:4;14:13
**without (5)**
7:23;8:8;11:5,12;
18:9
**witnesses (2)**
11:12,17
**Woodward (1)**
22:3
**work (1)**
5:14
**world (4)**
8:22,24;9:7;16:1
**written (1)**
22:2

**Y**

**year (1)**
10:17

**1**

**1 (2)**
4:9,10
**10 (1)**
16:13
**10:29 (1)**
23:9
**100,000 (1)**
18:10
**11 (1)**
16:13

**2**

**2 (1)**
4:9
**2004 (3)**
17:22,22;18:1

**3**

**3 (1)**
4:17

**4**

**45 (1)**
17:23

**5**

**542e (4)**
12:4;16:23,24;
18:2

**9**

**9019 (1)**

5:12