**Exhibit 1**

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("Agreement"), effective as of the last date signed below, is entered into by Anthem, Inc. on behalf of itself and its affiliates and subsidiaries (each an "Anthem Company" and collectively "Anthem") and Remnant Capital LLC ("Recipient"). Anthem and Recipient may be referred to each as a "Party" and collectively as the "Parties."

1. **Scope.** The Parties acknowledge and agree that: (a) Anthem is a third party administrator and/or insurer for certain self-funded and fully insured group health plans operated on behalf of employers (each a "Plan" and collectively the "Plans"); (b) pursuant to separate agreements between the Plans and Recipient, Recipient performs services necessary for the administration of the Plans; (c) the Parties reasonably anticipate that certain Plans have requested or will request that Anthem provide to Recipient certain information; and (d) the terms and conditions of this Agreement shall govern Recipient's use and disclosure of Anthem's P/C Information (as defined herein) contained in the information provided by Anthem to Recipient, regardless of the Plan involved.

2. **Specifications and Permitted Purpose.** "Information" shall mean the data that Anthem agrees to release to Recipient pursuant to each Plan request. The Information shall conform to the specifications set forth in an Anthem Data Release Specifications form, and shall be for Recipient's use only in accomplishing the particular purpose ("Permitted Purpose") identified thereon and as stated in Section 5. A sample of Anthem's Data Release Specifications form is attached as Exhibit A. Each Data Release Specifications form agreed to by the Parties shall be deemed incorporated into this Agreement by reference.

3. **P/C Information.** Recipient acknowledges that the Information includes Anthem's Proprietary Information and Anthem's Confidential Information. "Anthem's Proprietary Information" means the non-public, trade secret, commercially valuable, or competitively sensitive information of an Anthem Company, or other material and information relating to the products, business, or activities of an Anthem Company, including but not limited to: (i) Information about the Anthem Company's provider networks, provider negotiated fees, provider discounts, and provider contract terms; (ii) information about the systems, procedures, methodologies, and practices used by an Anthem Company in performing its services such as underwriting, claims processing, claims payment, and health care management activities; and (iii) combinations of data elements that could enable information of this kind to be derived or calculated. "Anthem's Confidential Information" means information that an Anthem Company is obligated by law or contract to protect, including but not limited to: (i) Social Security Numbers; (ii) provider tax identification numbers (TINs); (iii) National Provider Identification Numbers (NPIs); (iv) provider names, provider addresses, and other identifying information about providers; and (v) drug enforcement administration (DEA) numbers, pharmacy numbers, and other identifying information about pharmacies. Anthem's Proprietary Information and Anthem's Confidential Information may be referred to together as the "P/C Information." "Anthem Company," as used in the definitions set forth in this Section 3 and for purposes of this Agreement also includes a licensee of the Blue Cross and Blue Shield Association (each a "Blue Plan"), to the extent Anthem provides such Blue Plan's Information to Recipient.

4. **Business Associate Status and Obligations.** The Parties acknowledge and agree that: (a) the Information may include protected health information ("PHI"), as that term is defined and used in the Health Insurance Portability and Accountability Act of 1996 and the regulations promulgated thereunder at 45 C.F.R. §§ 160-164 (collectively, "HIPAA"); (b) each Party may be the Plans' Business Associate as defined and governed by HIPAA; (c) to the extent required by HIPAA, each Plan has required or will require such Party separately to enter into a Business Associate Agreement with the Plan, setting forth its obligations pursuant to 45 C.F.R 164.502(e); and (d) Recipient's use and disclosure of the P/C Information shall be governed by this Agreement; however, Anthem's disclosure of PHI to Recipient and Recipient's subsequent use and disclosure of the PHI separate and apart from the P/C Information shall be governed by HIPAA and the Plans' applicable Business Associate Agreements.

5. **Permitted and Non-permitted Uses.** Recipient shall use the P/C Information for the Permitted Purpose set forth in the applicable Data Release Specifications form and to develop related reports and information for the applicable Plan(s). Recipient shall not, without Anthem's advance written consent: (a) use the P/C Information, or reports or summaries arising therefrom, for any other purpose; (b) combine the P/C Information with other data to create or add to an aggregated database for Recipient's own internal use or analysis or for use in producing analyses, reports, extracts, or summaries that contain nonpublic personal information or personally identifiable information that will or could be made available to any person or entity other than the applicable Plan; (c) combine the P/C Information provided for a particular Permitted Purpose with P/C Information provided for another purpose; (d) sell or disclose the P/C Information to any other person or entity, including without limitation affiliates of Recipient, except as expressly permitted herein; or (e) except to accomplish the Permitted Purpose, use the P/C Information for its own internal use and analysis. The provisions of this section shall survive the termination of this Agreement.

6. **Permitted and Non-permitted Disclosures.** Recipient shall maintain the P/C Information in strict confidence. Recipient may disclose the P/C Information associated with a particular request to the applicable Plan, but shall not disclose it to any other person or entity, including but not limited to another carrier or vendor, except as expressly permitted herein. At the direction of the applicable Plan, Recipient may disclose the minimum amount of P/C Information necessary to a consultant or vendor of the Plan who has entered into a confidentiality agreement with Anthem (or amended its existing confidentiality agreement with Anthem via the addition of a Data Release Specifications form) with respect to the disclosure. Additionally, Recipient may disclose the minimum amount of P/C Information necessary to Recipient's own consultants or vendors who need to know the P/C Information to fulfill the Permitted Purpose, but only if Recipient: (a) enters into a Confidentiality Agreement with the consultant or vendor containing provisions regarding the use and disclosure of such P/C Information at least as stringent as those contained in this Agreement; and (b) provides Anthem with advance written notice of the identity of the consultant or vendor to whom the disclosure is to be made. Anthem reserves the right to require such consultant or vendor to enter into a Confidentiality Agreement with Anthem prior to such disclosure by Recipient.

7. **Data Protections and Security.** Recipient shall afford the P/C Information the same protections it would employ if the P/C Information were its own proprietary and confidential information, but no less than a reasonable degree of protection. Recipient shall implement reasonable and appropriate safeguards and technical controls designed to use, store, transmit, and dispose of the P/C Information in a manner intended to ensure that the P/C Information will only be used for the Permitted Purpose and that the P/C Information will be protected against reasonably anticipated threats to its security. If Recipient receives the Information from Anthem via electronic means such as FTP transmission, Recipient shall use reasonable physical and software-based security measures commonly used in the electronic data interchange field to protect the P/C Information. Recipient shall implement and comply with, and shall not attempt to circumvent or bypass, Anthem's security procedures for the use of the electronic method of Information transmission

8. **Systems Access.** If Anthem grants Recipient the right to access Anthem's benefits administration or other electronic systems ("Systems") in order to view, use, or facilitate the transfer of the Information, the following conditions shall apply: (a) the Systems, and any passwords, user identification codes, and documentation with respect to the Systems shall be treated as Anthem's Proprietary Information for purposes of this Agreement; (b) Recipient's right to access the Systems is nonexclusive and nontransferable, and Recipient shall not share, lease or otherwise transfer its right to access and use the Systems to any other person or entity; (c) all rights, title and interest in the Systems remain Anthem's; (d) Recipient shall only access the Information described on the applicable Data Release Specifications form which is necessary to accomplish the Permitted Purpose; (e) all Systems access shall be achieved through the interfaces and protocols provided or authorized by Anthem, and Recipient shall comply with any and all reasonable restrictions and limitations pertaining to such access as shall be communicated to Recipient by Anthem in writing; and (f) Recipient shall immediately notify Anthem of any unauthorized use of Recipient's access credentials or other unauthorized access to the Systems.

9. **Providers.** Except in reports provided to the applicable Plan as permitted by this Agreement, Recipient shall not in any report, or in any other medium, refer to any provider of health care or pharmacy by name or by any other identifying reference. Recipient shall not contact any provider of health care or pharmacy concerning any information obtained pursuant to this Agreement unless the contact is coordinated by Anthem.

10. **Disclaimer.** Anthem provides the Information on an "as-is" basis.

11. **Disposition of the P/C Information.** Upon termination of this Agreement, Recipient shall destroy the P/C Information, return it to Anthem, or retain it in accordance with Recipient's reasonable record retention policies and procedures in accordance with applicable law; provided, however, that Recipient shall continue to be bound by the confidentiality terms of this Agreement with respect to the P/C Information for as long as such P/C Information is retained.

12. **Excepted Information.** This Agreement shall not be construed to restrict the disclosure by Recipient of information that (a) other than as a result of breach of this Agreement, has been previously published, is now public knowledge, or becomes public knowledge; (b) other than in violation of this Agreement, is independently developed by Recipient; (c) is made available to Recipient by any person or entity other than Anthem, provided the source of such information is not subject to any confidentiality obligations with respect to it; or (d) is required to be disclosed pursuant to law, order, regulation, or judicial or administrative process, but only to the extent of such required disclosures.

13. **Investigation of Suspected Breach.** If Anthem reasonably believes that Recipient has breached this Agreement, Anthem shall have the right to investigate. Recipient shall permit Anthem or its designee to observe and review onsite Recipient's processes and records relating to how the P/C Information has been stored, used, and disclosed, and shall reasonably cooperate with Anthem. Anthem shall give Recipient at least seventy-two (72) hours' advance notice and shall perform any onsite review at its own cost and expense, during normal business hours, and in a manner reasonably designed to protect the confidentiality of Recipient's confidential information and to avoid interfering with Recipient's business operations. If Anthem's review confirms that a breach has occurred, then notwithstanding any other provision of this Agreement and in addition to any other available remedies: (a) Anthem shall have the right, at its sole option, to discontinue any ongoing releases of Information to Recipient and terminate this Agreement immediately upon notice to Recipient; and (b) notwithstanding the terms of Section 11, Recipient shall immediately return all P/C Information then in its possession to Anthem.

14. **Equitable Relief.** Recipient acknowledges that irreparable injury could result to Anthem and its business if Recipient breaches its obligations under this Agreement. Without prejudice to any other rights and remedies available to it, Anthem shall be entitled to seek a restraining order, injunction or other equitable relief to prevent any actual, intended, or likely injuries which may result from a breach by Recipient.

15. **Legal Prohibition.** In the event that any local, state or federal law now in existence or hereafter enacted or decided (including rulings of regulatory agencies) prohibits Anthem from providing any or all of the Information, Anthem shall be relieved of any obligation to do so and shall notify Recipient in writing.

16. **Successors and Assigns.** This Agreement shall inure to the benefit of all successors and assigns of the Parties.

17. **Severability.** The unenforceability or nullity of any of the provisions of this Agreement, either in whole or in part, shall not render any other provision unenforceable or null and void.

18. **Headings.** All headings used in this Agreement are used for reference purposes only, and shall not affect the meaning or interpretation of any provision of this Agreement.

19. **Governing Law.** The validity, interpretation, and enforcement of this Agreement shall be governed by the laws of the State of Indiana.

20. **Multiple Counterparts.** This Agreement and any subsequent amendment to it may be executed in several counterparts and by each of the Parties on a separate counterpart, each of which, when so executed and delivered shall be an original, but all of which together shall constitute but one and the same instrument. A facsimile signature shall be deemed equivalent to an original ink signature. This Agreement (and any subsequent amendment) shall not become binding on either of the Parties until each Party has transmitted to the other Party a counterpart executed by the transmitting Party.

21. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties, superseding any and all earlier agreements, either oral or written, between the parties with respect to the subject matter hereof, and no earlier agreement, statement or promise relating to the subject matter of this Agreement will be valid or binding.

22. **Termination.** Unless earlier terminated pursuant to Section 13, this Agreement shall remain in effect until such time as either Party provides at least ninety (90) days' written notice to the other Party of its decision to terminate this Agreement; provided, however, that the obligations related to the use, disclosure, and protection of the P/C Information shall have no expiration.

In consideration of the mutual obligations contained in this Agreement, the sufficiency of which is hereby acknowledged, the Parties agree to the terms and conditions herein. Each of the undersigned represents, warrants, and covenants that he or she has the authority and the right to enter into this Agreement binding the Party on whose behalf the Agreement is hereby executed:

| ANTHEM: | RECIPIENT: |
|---|---|
| Anthem, Inc. on behalf of itself and its affiliates and subsidiaries | Remnant Capital LLC |
| | *[signature]* |
| Signature | Signature |
| | MIKE MASON |
| Printed Name | Printed Name |
| | PRESIDENT |
| Title | Title |
| | JUNE 1, 2016 |
| Date | Date |

# EXHIBIT A
# SAMPLE ONLY

## DATA RELEASE SPECIFICATIONS*

This Data Release Specifications form supplements and is incorporated into the Confidentiality Agreement previously entered into between the Parties.

**Name of Employer for whom data release is requested:** Corinthian Colleges, Inc.

**Incurred Date Range of requested historical data (if applicable):** January 1, 2014 to December 31, 2014

**Paid Date Range of requested historical data (if applicable):** Same

**Requested frequency of ongoing data releases (if applicable):** RDX modified Medical and RDX modified Membershup extracts on a one-time basis.

**Purpose for which data is requested. Describe in full detail how the data will be used and/or disclosed by Recipient:**

Account is in bankruptcy so the Trystee is doing a claim and benfit analysis on behalf of the Group Health Plan._

**List all other parties, if any, to whom Recipient wishes to disclose the P/C Information (name and address).** (Each may be required to enter into a Confidentiality Agreement with Anthem.)

**File Layout Specifications** – Attach requested file layout, which will be subject to Anthem's approval.

| RECIPIENT: | ANTHEM: |
|---|---|
| REMNANT CAPITAL, LLC | ANTHEM, INC. ON BEHALF OF ITSELF AND ITS AFFILIATES AND SUBSIDIARIES |
| Signature: _____ | Signature: _____ |
| Printed Name: Michael A. Mason | Printed Name: _____ |
| Title: President | Title: _____ |
| Date: June 1, 2016 | Date: _____ |

* By signing this Data Release Specifications form, the Parties acknowledge and agree that, to the extent applicable, it will satisfy the requirement for a "File Record Layout Form" and will serve the same purpose with respect to any confidentiality agreements requiring the use of a File Record Layout Form, effective on and after December 3, 2014.