# EXHIBIT B

**Blackline**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | |
| Debtors. | Case No. 15-10952-KJC |
| | Jointly Administered |
| | Re: D.I. _____ |

## ORDER APPROVING SETTLEMENT BY AND AMONG
## DISTRIBUTION TRUST AND OUTSIDE DIRECTORS

Upon consideration of the motion (the "**Motion**") of the Distribution Trust for entry of an order (this "**Order**") approving the Settlement[2] between the Distribution Trust, on the one hand, and Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial (collectively, the "**Outside Directors**"), on the other hand, on the terms and subject to the conditions set forth in the Stipulation of Settlement and its exhibits (the "**Settlement**

---

[1] The Debtors in these cases (the 'Debtors"), along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Settlement Agreement, as applicable.

Agreement"); and the Court having found that it has jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28

U.S.C. §157(b)(2); and that the Court may enter a final order consistent with Article III of the

United States Constitution; and the Court having found that venue of this proceeding and the

Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having

found that notice of the Motion and opportunity for hearing on the Motion were appropriate and

no other notice needed to have been provided; and the Court having heard the statements in

support of the relief requested therein at a hearing, if, any, before the Court (the "**Hearing**"); and

the Court having found that approval of the Settlement Agreement and relief sought in the Order

is within the sound discretion of the Court; and the Court having found that the relief requested

in the Motion is fair and equitable and in the best interests of the Distribution Trust, creditors and

other parties in interest; and the Court having determined that the legal and factual bases set forth

in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and

upon all of the proceedings had before the Court; and after deliberation and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Motion is GRANTED in all respects.

2.     The Settlement Agreement, a copy of which is attached hereto as **Exhibit 1**, is

approved pursuant to Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of

Bankruptcy Procedure.

3.     Within five (5) business days after the Effective Date (as defined in the Settlement

Agreement), the Outside Directors shall cause their insurer(s) to pay $1,000,000 to the

Distribution Trust, at the direction of the Distribution Trustee.

4.      The Distribution Trustee and all other Releasors are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Trustee's Claims Against Outside Directors, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint.

5.      All persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit or other proceeding on behalf of, for the benefit of, or derivatively for any Releasor as to the Releasees, if such other lawsuit is based on or related in any way to the Released Trustee's Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint.

6.      All Outside Directors, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Directors' Mutually Released Claims or the Released Directors' Claims.

7.      4. All persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the Claim is or arises from a Released

3

Trustee's Claim Against Outside Directors and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor, including any Claim in which a person or entity seeks to recover from any of the Releasees *(i)* any amounts that such person or entity has or might become liable to pay to the Distribution Trustee or any other Releasor and/or *(ii)* any costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other Releasor.  All such Claims against the Releasees are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions hereof are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Trustee's Claim Against Outside Directors and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor; *provided, however*, that if the Distribution Trustee or any other Releasor obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Trustee's Claim Against Outside Directors for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of *(i)* an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Distribution Trustee or other Releasor(s) or *(ii)* the Settlement Amount.

**8.**    5. Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the Claim is

4

or arises from a Released Trustee's Claim Against Outside Directors and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Distribution Trustee or any other Releasor, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) *(i)* any amounts that any such Releasee has or might become liable to pay to the Distribution Trustee or any other Releasor and/or *(ii)* any costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other Releasor.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

9.    6. Each and every Outside Director is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Outside Director arising under any federal, state, or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Directors' Mutually Released Claim.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

10.    7. The Distribution Trustee is enjoined from seeking relief or collecting judgment against any person or entity in such a manner that fails to conform to the terms of this Order, including the judgment credit provision set forth in paragraph 4 of this Order.

11.    8. Notwithstanding anything stated in this Order, if any person or entity (for purposes of this paragraph, a "**petitioner**") commences against any of the Releasees any action either *(i)* asserting a Claim that is or arises from a Released Trustee's Claim Against Outside Directors and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Distribution Trustee or any other Releasor or *(ii)* seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this Order or is otherwise not barred, neither this Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such

5

petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this paragraph in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in this Order or the Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

12.   9. If any term of this Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Trustee's Claim Against Outside Directors or any Directors' Mutually Released Claim, as applicable.

13.   10. Notwithstanding this Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that potentially provides coverage respecting the conduct at issue in the Complaint or for any other Released Trustee's Claim Against Outside Directors.

14.   11. This Order and the Settlement Agreement shall be binding on the Parties, any trustees appointed in the Chapter 11 Cases, any trustees appointed in any subsequent chapter 7 cases relating to the Debtors, and all other parties in interest in accordance with and subject to the terms of the Settlement Agreement.

75750396.1 75783752.1

15. ~~12.~~ The Distribution Trust and all other Parties to the Settlement Agreement are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

16. ~~13.~~ The Court shall retain continuing and exclusive jurisdiction to hear and determine all matters arising or related to the implementation, interpretation and/or enforcement of the Settlement Agreement and this Order.

Dated: _____, 2017
     Wilmington, Delaware

                                  _____
                                    THE HONORABLE KEVIN J. CAREY
                                    UNITED STATES BANKRUPTCY JUDGE

~~75750396.1~~ 75783752.1

## Exhibit 1

**Settlement**

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Settlement Agreement") is made and entered into by and between Craig R. Jalbert (the "Distribution Trustee"), as Distribution Trustee of the Corinthian Distribution Trust (the "Distribution Trust"), on the one hand, and the Outside Directors (as defined herein), on the other hand.

## RECITALS

WHEREAS, on May 4, 2015, Corinthian Colleges, Inc. ("Corinthian") and its twenty-four domestic direct and indirect subsidiaries (together with Corinthian, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on May 5, 2015, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only and directing their joint administration under case no. 15-10952 (KJC); and

WHEREAS, the Debtors were authorized to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on August 28, 2015, the Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), which became effective on or about September 21, 2015; and

WHEREAS, the Plan provided for the establishment of the Distribution Trust to facilitate implementation of the Plan; and

WHEREAS, Corinthian (on behalf of itself and the other Debtors), Craig R. Jalbert (the Distribution Trustee), and Wilmington Trust, National Association (as Delaware Resident

Trustee) entered into the Corinthian Distribution Trust Agreement made as of September 18, 2015 (the "Distribution Trust Agreement"); and

WHEREAS, on the Effective Date of the Plan, the Distribution Trust Assets (as defined in the Plan), including the Causes of Action (as defined in the Plan), were transferred to the Distribution Trust in accordance with the terms and conditions of the Plan, the Confirmation Order and the Distribution Trust Agreement; and

WHEREAS, pursuant to the Plan, the Confirmation Order, and the Distribution Trust Agreement, the Distribution Trustee was appointed to administer the Distribution Trust, including to act as representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Action (as defined in the Plan), including the alleged claims against the Outside Directors resolved pursuant to the terms of this Settlement Agreement; and

WHEREAS, on approximately October 5, 2016, counsel for the Distribution Trustee sent a draft of a Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets (the "Complaint") *(i)* to counsel for certain members of Corinthian's former management (the "Management Defendants") and *(ii)* to counsel for the former outside, non-management members of Corinthian's Board of Directors (the "Outside Directors," and, together with Management Defendants, the "Defendants"); and

WHEREAS, the respective attorneys for the Distribution Trustee and for the Defendants agreed to attempt to mediate the Distribution Trustee's claims to avoid dissipating potentially available insurance resources on adversarial litigation; and

2

WHEREAS, the Distribution Trustee, his counsel, and Defendants' counsel participated in a two-day mediation on January 4-5, 2017 (the "Mediation") with retired California Superior Court Judge Daniel Weinstein (the "Mediator"); and

WHEREAS, at the end of the Mediation, counsel for the Distribution Trustee and counsel for the Outside Directors agreed in principle to the basic terms of a settlement of the Distribution Trustee's potential claims against the Outside Directors; and

WHEREAS, counsel for the Distribution Trustee and counsel for the Outside Directors signed a Term Sheet, dated February 7, 2017, embodying the principal terms of their agreement, subject to (among other things) execution of a definitive Stipulation of Settlement and approval by the Court; and

WHEREAS, throughout these proceedings and the settlement negotiations, the Distribution Trustee and the Outside Directors have been advised by counsel competent in lawsuits asserting claims such as those in the Complaint; and

WHEREAS, based on the Distribution Trustee's investigation and evaluation of the facts and law relating to the claims alleged in the Complaint, the Distribution Trustee has agreed to settle his claims pursuant to the terms of this Settlement Agreement after considering, among other things, (*i*) the substantial benefits that the terms of this Settlement Agreement would provide; (*ii*) the attendant risks of litigation, especially in complex actions such as this one, the alleged defenses asserted by the Outside Directors, and the difficulties and delays inherent in such litigation; (*iii*) the desirability of consummating this Settlement Agreement promptly to obtain effective relief and to avoid expenditures of insurance proceeds on adversarial proceedings; and (*iv*) the Distribution Trustee's belief that this Settlement Agreement is fair,

reasonable, and adequate in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure; and

WHEREAS, the Outside Directors expressly deny the wrongdoing alleged in the Complaint and do not concede any wrongdoing or liability in connection with any facts or Claims that have been or could have been alleged in the Complaint, but nevertheless consider it desirable for the Claims in the Complaint to be settled and released as to them because the proposed Settlement would, among other things, (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with litigation of the Claims asserted in the Complaint, (*ii*) avoid expenditures of insurance proceeds on adversarial proceedings, and (*iii*) finally put to rest those Claims and the underlying matters; and

WHEREAS, this Settlement Agreement, seeking Court approval of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by the Outside Directors or the other Releasees, or any of them individually, of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned, including the Distribution Trustee (in his representative capacity) and the Outside Directors, by and through their duly authorized counsel, that the Complaint and the matters raised by it are hereby settled and compromised as to the Outside Directors, that the Released Trustee's Claims Against Outside Directors will be released as to the Releasees, that

4

the Released Directors' Claims will be released as to the Releasors, and that the Directors'

Mutually Released Claims will be released as to the Outside Directors, all based upon the terms

and conditions set forth in this Settlement Agreement, subject to the Court's approval and such

approval's becoming Final.

## I.    <u>DEFINITIONS</u>

### A.    Definitions

As used in this Settlement Agreement, the following terms have the meanings set forth

herein:

1.      "Affiliate" or "Affiliated" means such persons or entities as are defined in

17 C.F.R. Part 210.1-02(b).

2.      "Approval Hearing" means the hearing at which the Court will be asked to

approve the Settlement Agreement and grant the Settlement Motion.

3.      "Bar Order" means the bar order whose text is set forth in Subsection V.B

below.  The Bar Order will be part of the proposed Settlement Order.

4.      "Case" means the jointly administered chapter 11 cases of Corinthian

Colleges, Inc. and its twenty-four domestic direct and indirect subsidiaries in the United States

Bankruptcy Court for the District of Delaware and captioned *In re Corinthian Colleges, Inc., et.*

*al*., Case No. 15-10952 (KJC).

5.      "Claim" or "Claims" means any and all actions, causes of action,

proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts,

dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants,

trespasses, damages, demands (whether written or oral), agreements, promises, liabilities,

controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in

admiralty, or in equity, and whether based on any U.S. federal or state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims.

   6. "Complaint" means the draft Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets that the Distribution Trustee's Counsel sent to Outside Directors' Counsel on approximately October 5, 2016.

   7. "Corinthian" means Corinthian Colleges, Inc.; *provided, however*, that, for purposes of descriptions of Corinthian's or the Debtors' pre-bankruptcy conduct and operations, the term "Corinthian" also includes Corinthian's Affiliates and the Debtors.

   8. "Court" means the United States Bankruptcy Court for the District of Delaware.

   9. "Debtors" means Corinthian and its twenty-four domestic direct and indirect subsidiaries that filed for bankruptcy protection in the Court and were debtors and debtors in possession in the Case.

   10. "Defendants" means Jack D. Massimino, Kenneth S. Ord, Robert D. Bosic III, Beth A. Wilson, Robert C. Owen, Stan A. Mortensen, Nicole Carnagey, Christian Dieckmann, Michelle Reed Zagorski, Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial.

   11. "Directors' Mutually Released Claims" means each and every Claim arising out of or relating to any or all of the acts, failures to act, omissions, misrepresentations, facts, events, matters, transactions, occurrences, or oral or written statements or representations

that were or could have been alleged under the facts and circumstances pled in the Complaint, including the matters described in Subsections I.A.27 below.

12.    "Distribution Trust" means the trust established under the Plan and the Distribution Trust Agreement.

13.    "Distribution Trust Agreement" means the Corinthian Distribution Trust Agreement made as of September 18, 2015, by and among Corinthian, on behalf of itself and the other Debtors, the Distribution Trustee, and Wilmington Trust, National Association, as Delaware Resident Trustee.

14.    "Distribution Trustee" means Craig R. Jalbert.

15.    "Distribution Trustee's Counsel" means the law firm of Robins Kaplan LLP.

16.    "Effective Date" means the date on which all of the following conditions precedent have occurred:  (*i*) the Court has entered the Settlement Order on the docket, and (*ii*) the Settlement Order shall have become Final.

17.    "Execution Date" means the date by which this Settlement Agreement has been executed by all Settling Parties.

18.    "Final" means when the Court shall have entered the Settlement Order and (i) the Settlement Order shall have become no longer subject to a motion to alter or amend under Rule 9023 of the Federal Rules of Bankruptcy Procedure, or if such a motion was made, it shall have been denied; (ii) the Settlement Order shall have become final and no longer subject to appeal (including, without limitation, any appeal from the denial of a motion to alter or amend), or, if an appeal is taken from the Settlement Order, on the date on which all appeals therefrom – including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for

7

certiorari or any other form of review, and any related appeals or petitions, including as to any

appeal bond – have been finally disposed of, such that the time to appeal therefrom (including

any potential extension of time) has expired, in a manner resulting in an affirmance of the

Settlement Order; and (iii) no request for a stay of the Settlement Order is pending before any

court.

19.    "Final Settlement Order" means the Settlement Order has become Final.

20.    "Management Defendants" means Jack D. Massimino, Kenneth S. Ord,

Robert D. Bosic III, Beth A. Wilson, Robert C. Owen, Stan A. Mortensen, Nicole Carnagey,

Christian Dieckmann, and Michelle Reed Zagorski.

21.    "Mediation" means the mediation sessions held on January 4-5, 2017,

involving the Distribution Trustee, his counsel, counsel for the Management Defendants and for

the Outside Directors, and the Mediator.

22.    "Mediator" means retired California Superior Court Judge Daniel

Weinstein or, if his services are further needed pursuant to the terms of this Settlement

Agreement, but he is unavailable, someone of similar stature upon whom the Settling Parties

agree.

23.    "Outside Directors" means Paul R. St. Pierre, Terry O. Hartshorn, Hank

Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan,

Sharon P. Robinson, and Marc H. Morial.

24.    "Outside Directors' Counsel" means the law firm of Proskauer Rose LLP.

25.    "Oversight Board" means the Oversight Board of the Distribution Trust.

26.    "Released Directors' Claims" means each and every Claim that could have

been or could be asserted in any proceeding by any Releasee, including any Outside Director or

the successors and assigns of any Outside Director, against the Distribution Trustee, the

Oversight Board, or any member thereof, or their respective attorneys and that arises out of or

relates in any way to the potential institution, prosecution, or settlement of the Claims alleged in

the Complaint, except for claims to enforce the Settlement.

           27.     "Released Trustee's Claims Against Outside Directors" means each and

every Claim that *(i)* was asserted in the Complaint or *(ii)* could have been asserted or could be

asserted in connection with the facts and circumstances alleged in the Complaint, whether arising

under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or

other forum, that relates directly or indirectly to the Outside Directors' (or any individual

Outside Director's) alleged acts, omissions, inaction, statements, or representations as former

members of Corinthian's Board of Directors or to any other facts and circumstances relating to

the operation of Corinthian and/or its Affiliates (including any alleged conduct by Corinthian's

former management), including, without limitation, matters relating to:

           a.     Corinthian's dealings with, or representations or submissions to,

the United States Department of Education (the "ED") or any accreditor or licensor of

Corinthian's schools;

           b.     The certification or provisional certification of, or denial of

certification to, Corinthian or any of its schools or campuses;

           c.     Corinthian's annual and quarterly financial statements and reports;

           d.     Corinthian's requests for, use of, or other actions relating to funds

available under Title IV of the Higher Education Act;

           e.     Corinthian's educational programs, including their effectiveness or

alleged ineffectiveness;

9

 

f.      Corinthian's marketing practices;

g.      Corinthian's student-recruiting and student-enrollment processes and practices, or any payments allegedly made or promised in connection with student recruitment or enrollment;

h.      Financial aid for Corinthian students, Corinthian's military connections, transferability of Corinthian credits to other institutions, student loans, loan-default rates, job placement, and Corinthian students' or graduates' potential future earnings;

i.      The compensation, training, and evaluation of Corinthian's admissions personnel;

j.      Corinthian's degree-completion metrics and student recruitment;

k.      Corinthian's job-placement metrics (including job placements and salaries);

l.      Any payments allegedly made in connection with the placement of Corinthian's students or graduates, including any payments to actual or potential employers;

m.      Conduct, activities, or other matters in connection with loans offered to or taken by Corinthian's students, including defaults on those loans;

n.      Corinthian's records and recordkeeping practices, including records of attendance, grades, or matriculation, student job-placement documents, student employment-verification forms (signed or unsigned), and student self-employment documentation, and any error rates in Corinthian's records;

o.      Corinthian's compliance with ED financial and capital requirements, educational standards (including gainful-employment rules), and relevant operating metrics;

10

p.      External and internal audits of (or alleged failures to audit) Corinthian's operations and practices;

q.      The sale or closure of Corinthian's campuses or operations, including any efforts (or allegedly inadequate efforts) made to sell or teach out campuses or other assets (including portfolios of student loans), and prices obtained for sales of campuses or other assets;

r.      Salaries, bonuses, fees, and other compensation paid to, and any purchases or sales of Corinthian stock by, Corinthian's directors, officers, and employees;

s.      The activities of, or alleged failures to act by, Corinthian's Board of Directors and/or any committees of the Board, including the Audit Committee, the Compliance Committee, and the Transactions/Operations Committee;

t.      Corinthian's internal controls, policies, practices, and procedures;

u.      Complaints filed or made by Corinthian's students or employees, and Corinthian's responses to those complaints;

v.      Private-plaintiff or federal, state, or local governmental subpoenas or investigations of, or lawsuits or other proceedings against, Corinthian or any of its schools, including Corinthian's responses to those subpoenas, investigations, or proceedings and any fees, expenses, judgments, settlements, or other payments incurred in connection with those matters; and

w.      Releasees' reports or statements about, disclosures or characterizations of, advertising about, or alleged omissions concerning any or all of the above matters.

11

The term "Released Trustee's Claims Against Outside Directors" also includes any Claim relating to the proposed litigation, settlement, or dissemination of notice concerning the Distribution Trustee's Claims; *provided, however*, that the term "Released Trustee's Claims Against Outside Directors" does not include any claims to enforce this Settlement Agreement.

28.    "Releasee" means each and every one of, and "Releasees" means all of, the Outside Directors and any and all of their heirs, trustees, administrators, successors, representatives, agents, assigns, attorneys (including Outside Directors' Counsel), advisors, fiduciaries, consultants, representatives, accountants, insurers, and reinsurers, solely in their capacity as such.  For the avoidance of any doubt, the Distribution Trustee and the Outside Directors intend to exclude, and hereby expressly exclude, the Management Defendants, and each of them, from the meaning of the terms "Releasee" and "Releases" and any person or entity provided or included therein, and the Management Defendants, and each of them, shall not be construed to be included in the meaning thereof in any way for purposes of, or in connection with or related to, the Settlement and this Settlement Agreement.

29.    "Releases" means the release provisions set out in Section IV.A below.

30.    "Releasor" means each and every one of, and "Releasors" means all of, *(i)* the Distribution Trustee, on behalf of the Distribution Trust, *(ii)* any and all of their heirs, trustees, administrators, successors, representatives, agents, assigns, attorneys (including Distribution Trustee's Counsel), advisors, fiduciaries, consultants, representatives, accountants, insurers, and reinsurers, solely in their capacity as such, and *(iii)* all other persons and entities for whom or which the Distribution Trustee is able to grant a release to the Releasees.

31.    "Settlement" means the settlement contemplated by this Settlement Agreement.

32.    "Settlement Agreement" means this Stipulation of Settlement and any accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

33.    "Settlement Amount" means one million United States dollars ($1,000,000.00).

34.    "Settlement Motion" means the motion the Distribution Trustee shall file requesting that the Court approve this Settlement Agreement and enter the Settlement Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

35.    "Settlement Order" means the Order entered by the Court approving the Settlement Agreement and granting the Settlement Motion, as contemplated in Section V of this Settlement Agreement, which Order shall be substantially in the form annexed hereto as Exhibit A.

36.    "Settling Parties" means the Distribution Trustee and the Outside Directors.

37.    "Unknown Claims" means any and all Released Trustee's Claims Against Outside Directors that the Distribution Trustee does not know or suspect to exist in his favor at the time of the release of the Releasees, and any Released Directors' Claims or Directors' Mutually Released Claims that any Outside Director does not know or suspect to exist in his or her favor, which, if known by the Distribution Trustee or any Outside Director, might have affected his or her decision concerning the Settlement.  As to any and all Released Trustee's Claims Against Outside Directors, Released Directors' Claims, and Directors' Mutually Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date and payment of the Settlement Amount, the Distribution Trustee and the Outside Directors shall

13

expressly waive, and each other Releasor and Releasee shall be deemed to have waived, and by

operation of the Final Settlement Order shall have expressly waived, any and all provisions,

rights, and benefits conferred by any law of any state or territory of the United States or of any

other country, or any principle of common law, that is similar, comparable, or equivalent to Cal.

Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

The Distribution Trustee and the Outside Directors acknowledge that the inclusion of "Unknown

Claims" in the definition of Released Trustee's Claims Against Outside Directors, Released

Directors' Claims, and Directors' Mutually Released Claims was separately bargained for and

was a key element of the Settlement.

### B.    Capitalized Terms

1.    Capitalized terms used in this Settlement Agreement, but not defined

below, shall have the meanings ascribed to them in Subsection I.A, above.

## II.    TERMS AND CONDITIONS OF THE SETTLEMENT

### A.    Payment of Settlement Amount

1.    The Outside Directors shall cause their insurer(s) to pay the Settlement

Amount to the Distribution Trustee within five (5) business days after the Effective Date.  If the

Settlement Amount is not paid within that period, Distribution Trustee's Counsel shall notify

Outside Directors' Counsel that the payment has not occurred, and the Outside Directors shall

have two (2) business days to obtain compliance with the obligation to pay the Settlement

Amount.  If payment has still not occurred after the additional period of two (2) business days,

the Distribution Trustee may terminate this Settlement Agreement through notice to Outside Directors' Counsel.

2.    Payment of the Settlement Amount shall be made in readily available funds by check or wire transfer to an account designated by the Distribution Trustee, or by such other payment method as the Settling Parties may agree.

3.    The Settlement Amount shall be "non-recapture," meaning that no portion of it shall revert to the Outside Directors or any other payor after the Settlement Order becomes Final pursuant to this Settlement Agreement, except to the extent otherwise provided in Subsections II.B and II.C.

4.    The Outside Directors hereby represent to the Distribution Trustee that their insurer(s) have agreed to pay the Settlement Amount on the terms provided for herein.

**B.    Cooperation**

1.    Outside Directors' Counsel agrees to recommend that the Outside Directors provide cooperation to the Distribution Trustee and his counsel.  Such cooperation is a material condition to the Trustee in entering into the Settlement.

2.    Such cooperation shall consist of (*i*) agreeing to be interviewed by Distribution Trustee's Counsel, (*ii*) agreeing to appear without subpoena for deposition and at any trial involving the Management Defendants, or any of them, and (*iii*) agreeing to produce to the Distribution Trustee, without subpoena, documents reasonably requested by the Distribution Trustee.

3.    To the extent that the Outside Directors agree to cooperate, they agree to truthfully answer the Distribution Trustee's questions.

4.      Each Outside Director shall be entitled to make his or her own decision about whether to cooperate with the Distribution Trustee.

5.      The Distribution Trustee agrees to pay for counsel fees that the Outside Directors incur in producing documents and/or providing interviews or testimony as described above; provided that, for any cooperation provided pursuant to this Settlement Agreement, only one attorney shall appear for each Outside Director at any interview or testimony.

**C.      Payments by Distribution Trustee**

1.      The Distribution Trustee has agreed to pay up to $45,000.00 to Outside Directors' Counsel to prepare this Stipulation of Settlement.

2.      Outside Directors' Counsel shall submit an invoice to the Distribution Trustee for preparing this Stipulation of Settlement, which invoice shall identify the timekeepers involved, their hourly rates and the time each expended in connection with such preparation. The Distribution Trustee shall make payment with respect to such invoice within ten (10) business days after receiving the Settlement Amount.

3.      The Settlement Amount shall be the sole source of payment to Outside Directors' Counsel for any amounts incurred or paid by the Distribution Trustee pursuant to the Settlement, except to the extent otherwise provided in this Settlement Agreement.

**D.      Additional Conditions**

1.      The Trustee will not file a Complaint naming the Outside Directors.

2.      The Settlement Agreement is conditioned on the approvals of the Distribution Trustee, the Outside Directors, and the Outside Directors' insurer(s) (as applicable). If any such person or entity does not approve this Settlement Agreement, notice thereof shall be provided in accordance with Section VII.P. below.

16

**III.    PROCEDURE FOR SEEKING APPROVAL OF SETTLEMENT**

A.    Within five (5) business days after the Execution Date, the Distribution Trustee shall file the Settlement Motion and request that the Court schedule the Approval Hearing.

B.    The Distribution Trustee shall timely serve notice of the Settlement Motion on *(i)* the Office of the United States Trustee for the District of Delaware, *(ii)* parties entitled to notice pursuant to Federal Bankruptcy Procedure Rule 2002(i) and Local Bankruptcy Rule 2002-1(b), *(iii)* the parties listed on Exhibit B annexed hereto, and *(iv)* the Outside Directors' insurer(s) (as applicable).

C.    Upon filing the Settlement Motion, the Distribution Trustee's Counsel shall serve the Settlement Motion, the Settlement Agreement, and all appendices and exhibits thereto by electronic mail or overnight courier on counsel representing the Management Defendants listed on Exhibit B annexed hereto.

**IV.    RELEASE AND WAIVER**

**A.    Release and Waiver**

1.    Subject to Subsection IV.A.4 below, upon the Effective Date and payment in full of the Settlement Amount as described in Section II.A., without further action by anyone, the Distribution Trustee, on behalf of the Distribution Trust and the other Releasors (including Distribution Trustee's Counsel), for good and sufficient consideration, shall be deemed to have, and by operation of law and of the Final Settlement Order shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.    all Released Trustee's Claims Against Outside Directors against each and every one of the Releasees;

b.      all Claims, damages, and liabilities as to each and every one of the Releasees to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, (*i*) the potential prosecution, defense, or settlement of the Claims in the Complaint and/or (*ii*) the facts and circumstances of this Settlement Agreement, the Settlement terms, and their implementation; and

c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Distribution Trustee's Counsel or any other counsel representing the Distribution Trustee in connection with or related in any manner to the Complaint or the settlement of the Claims in the Complaint, except to the extent otherwise specified in this Settlement Agreement.

2.      Subject to Subsection IV.A.4 below, upon the Effective Date, without further action by anyone, each and all Releasees, for good and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Settlement Order shall have, fully, finally, and forever released, relinquished, settled, and discharged the Distribution Trustee, the Distribution Trust, the Oversight Board, and the Distribution Trustee's Counsel from any and all Released Directors' Claims, except to the extent otherwise specified in this Settlement Agreement.

3.      Subject to Subsection IV.A.4 below, upon the Effective Date, without further action by anyone, the Outside Directors, on behalf of themselves, their heirs, executors, administrators, predecessors, successors, Affiliates, assigns, and any person or entity claiming by, through, or on behalf of any of them, for good and sufficient consideration, the receipt and

adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Settlement Order shall have, fully, finally, and forever released, relinquished, settled, and discharged each other from any and all Directors' Mutually Released Claims.

4.    Notwithstanding Subsections IV.A.1 through IV.A.3 above, nothing in this Settlement Agreement or the Final Settlement Order shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of this Settlement Agreement or the Final Settlement Order.

5.    The releases and waivers contained in this Section IV were separately bargained for and are essential elements of this Settlement Agreement.

6.    Nothing in this Section IV is intended to release or waive, or shall be construed as releasing or waiving, any Claim or Cause of Action (as defined in the Plan) that the Distribution Trust has, had, or may in the future have against the Management Defendants, or any of them.

**B.    Settlement Order**

1.    The Settling Parties will seek and obtain from the Court a Settlement Order as further described in Section V below.

**V.    <u>APPROVAL OF SETTLEMENT</u>**

A.    If the Court approves the Settlement contemplated by this Settlement Agreement, and grants the Settlement Motion, the Settling Parties shall jointly request that the Court enter a Settlement Order substantially in the form annexed hereto as Exhibit A.  The Settlement Order shall include, among other provisions, a permanent injunction providing that:

1.    The Distribution Trustee and all other Releasors are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits

or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Releasees based on or relating in any way to the Released Trustee's Claims Against Outside Directors, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint;

2.      All persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit or other proceeding on behalf of, for the benefit of, or derivatively for any Releasor as to the Releasees, if such other lawsuit is based on or related in any way to the Released Trustee's Claims, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint; and

3.      All Outside Directors, and anyone else purporting to act on behalf of, for the benefit of, or derivatively for any of such persons, are permanently enjoined from commencing, prosecuting, intervening in, or participating in any claims or causes of action relating to the Directors' Mutually Released Claims or the Released Directors' Claims.

B.      The Settling Parties shall also request that the Court enter a Bar Order in the Settlement Order.  The Bar Order shall provide as follows:

1.      All persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the Claim is or arises from a

20

Released Trustee's Claim Against Outside Directors and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor, including any Claim in which a person or entity seeks to recover from any of the Releasees (i) any amounts that such person or entity has or might become liable to pay to the Distribution Trustee or any other Releasor and/or (ii) any costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other Releasor.  All such Claims against the Releasees are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions of this Subsection V.B are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Trustee's Claim Against Outside Directors and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor; *provided, however*, that if the Distribution Trustee or any other Releasor obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Trustee's Claim Against Outside Directors for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of *(i)* an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Distribution Trustee or other Releasor(s) or *(ii)* the Settlement Amount.

2.      Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated,

including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the

Claim is or arises from a Released Trustee's Claim Against Outside Directors and the alleged

injury to such Releasee arises from that Releasee's alleged liability to the Distribution Trustee or

any other Releasor, including any Claim in which any Releasee seeks to recover from any person

or entity (including another Releasee) (*i*) any amounts that any such Releasee has or might

become liable to pay to the Distribution Trustee or any other Releasor and/or (*ii*) any costs,

expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other

Releasor.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

3.      Each and every Outside Director is permanently barred, enjoined, and

restrained from commencing, prosecuting, or asserting any Claim against any other Outside

Director arising under any federal, state, or foreign statutory or common-law rule, however

styled, where the Claim is or arises from a Directors' Mutually Released Claim.  All such Claims

are hereby extinguished, discharged, satisfied, and unenforceable.

4.      The Distribution Trustee is enjoined from seeking relief or collecting

judgment against any person or entity in such a manner that fails to conform to the Bar Order,

including the judgment-credit provision set forth in Subsection V.B.1.

5.      Notwithstanding anything stated in the Bar Order, if any person or entity

(for purposes of this Subsection V.B.5, a "petitioner") commences against any of the Releasees

any action either (*i*) asserting a Claim that is or arises from a Released Trustee's Claim Against

Outside Directors and where the alleged injury to such petitioner arises from that petitioner's

alleged liability to the Distribution Trustee or any other Releasor or (*ii*) seeking contribution or

indemnity for any liability or expenses incurred in connection with any such Claim, and if such

action or Claim is not barred by a court pursuant to this Subsection V.B. or is otherwise not

22

barred by the Bar Order, neither the Bar Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this Subsection V.B.5 in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in the Bar Order or this Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

6.     The Distribution Trustee will use reasonable efforts, in settling with any other person or entity any Claim based upon, arising out of, or relating to the Complaint or any of the Released Trustee's Claims Against Outside Directors that such person or entity might have against any of the Releasees, to obtain from such person or entity a release of any and all such Claims.

7.     If any term of the Bar Order entered by the Court is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Trustee's Claim Against Outside Directors or any Directors' Mutually Released Claim, as applicable.

8.     Notwithstanding the Bar Order or anything else in this Settlement Agreement or the Final Settlement Order, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance,

or indemnity policy that potentially provides coverage respecting the conduct at issue in the

Complaint or for any other Released Trustee's Claim Against Outside Directors.

## VI.   MODIFICATION OR TERMINATION OF SETTLEMENT AGREEMENT

A.      The terms and provisions of this Settlement Agreement may not be altered or

modified except by a written instrument executed by counsel for each of the Settling Parties.

Additionally, after entry of the Final Settlement Order, Distribution Trustee's Counsel (on behalf

of the Distribution Trustee) and Outside Directors' Counsel (on behalf of the Outside Directors)

may by written agreement effect any amendments, modifications, or expansions of this

Settlement Agreement and its implementing documents (including all exhibits to this Settlement

Agreement) without notice to or approval by the Court if such changes are not materially

inconsistent with the Court's Final Settlement Order.

B.      Subject to Section VII below, if the Court does not enter the Settlement Order in

the form substantially similar to the form annexed hereto as Exhibit A, Outside Directors'

Counsel (on behalf of the Outside Directors) and/or Distribution Trustee's Counsel (on behalf of

the Distribution Trustee) shall have the right to terminate this Settlement Agreement by

providing notice through counsel listed in Section VII.L.1, within ten (10) days after entry of the

Court's ruling.  If the Settlement Order is appealed and subsequently reversed, modified, or

vacated, such that it no longer is substantially similar to the form annexed hereto as Exhibit A,

and the reversal, modification or vacatur is not subject to further appeal (including a petition for

certiorari) or the time to take such an appeal has expired and none was taken, Outside Directors'

Counsel (on behalf of the Outside Directors) and/or Distribution Trustee's Counsel (on behalf of

the Distribution Trustee) shall have the right to terminate this Settlement Agreement by

providing notice through counsel listed in Section VII.L.1, below, within ten (10) days after

entry of the reversal, modification, or vacatur or expiration of the time to take an appeal, whichever is later.

## VII.    GENERAL MATTERS AND RESERVATIONS

A.      If an option to terminate this Settlement Agreement arises under this Settlement Agreement, (*i*) neither the Outside Directors nor the Distribution Trustee will be required for any reason or under any circumstance to exercise that option, and (*ii*) if the Outside Directors or the Distribution Trustee exercise the option to terminate the Settlement, they shall exercise that option in good faith.

B.      If this Settlement Agreement is not approved or this Settlement Agreement is otherwise terminated pursuant to its terms, or if the Releases contemplated in Section V.A. do not become effective, or if the Settlement otherwise does not become Final by operation of law, then:

1.      This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section VII;

2.      This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of the Outside Directors and the Distribution Trustee, all of whom shall be restored to their respective positions existing as of February 7, 2017 (including as to statutes of limitations);

3.      Releasees and their current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all defenses, arguments, and motions as to all Claims that have been or might later be asserted against them;

4.    The Distribution Trustee and his current and former predecessors, successors, heirs, Affiliates, agents, attorneys, representatives, and assigns expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted against the Outside Directors;

5.    Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of Sections VI and VII; and

6.    Except as specifically provided herein, nothing in this Settlement Agreement shall create any obligation on the part of any Settling Party to pay any other Settling Party's fees or expenses.

C.    The Settling Parties, individually and collectively: *(i)* acknowledge that it is their intent to consummate this Settlement Agreement; and *(ii)* agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

D.    The Settling Parties shall enter into a tolling stipulation with respect to the Claims that are the subject of this Settlement Agreement, which tolling stipulation shall be substantially in the form annexed hereto as Exhibit C.  The tolling stipulation shall be fully executed on or before April 3, 2017, subject to the Settling Parties' mutually agreeing to extend such deadline. The tolling stipulation shall be effective by its terms but submitted to the Court for approval. Such approval shall be sought substantially in the form annexed hereto as Exhibit D.

E.    Notwithstanding anything stated in this Settlement Agreement, the Settling Parties shall bear their own costs, attorneys' fees, and all other expenses (without prejudice to any right

26

to claim insurance coverage) in connection with or relating to the negotiation, preparation, execution, and approval of this Agreement and the granting the Settlement Motion by the Court, including responding to any objection or opposition filed to the Settlement Agreement or the Settlement Motion, or subsequent proceedings or litigation, except as otherwise expressly set forth herein.

      F.     Except as provided in this Section VII, or as may otherwise be required by law:

      1.     The Settling Parties and their counsel agree to keep the contents of this Settlement Agreement and all related negotiations confidential until the Settlement Motion has been filed with the Court; *provided, however,* that (*i*) this Section VII shall not prevent earlier disclosure of such information by the Settling Parties or their counsel to any person or entity (such as clients, courts, regulatory entities, insurers, reinsurers, and/or administrators) to whom disclosure must be made to effectuate the terms and conditions of this Settlement Agreement, and (*ii*) the Outside Directors, in their sole discretion, may otherwise determine.

      2.     The Settling Parties will not issue any press releases or other media statements concerning the proposed Settlement.

      3.     Notwithstanding any other provision of this Section VII, the Settling Parties shall be entitled to make any and all disclosures regarding this Settlement Agreement that they believe might be required or appropriate, including to regulators, governmental entities or bodies, stock exchanges, attorneys, accountants, auditors, financial institutions, lenders, insurers, and reinsurers; *provided, however,* that any such disclosures or statements shall be balanced, fair, and accurate and shall, to the extent possible, not use the Outside Directors' names.

      G.     Any exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

H.      The Settling Parties acknowledge that the recitals to this Settlement Agreement are true and correct and are hereby incorporated into the body of this Settlement Agreement by reference.

I.      The Settling Parties intend that the Settlement Agreement shall be a final and complete resolution of all disputes that were, could have been, or could be asserted as to the Released Trustee's Claims Against Outside Directors, the Released Directors' Claims, and the Directors' Mutually Released Claims.  Accordingly, the Settling Parties agree not to assert in any forum that any conduct of the Distribution Trustee and/or the Outside Directors, or any of them, in connection with the Complaint, the settlement of the Claims in the Complaint, or any of the Released Trustee's Claims Against Outside Directors, Released Directors' Claims, or Directors' Mutually Released Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure, Rule 9011 of the Federal Rules of Bankruptcy Procedure, or any state-law equivalent, relating to the prosecution, defense, or settlement of the Claims in the Complaint.

J.      The Settling Parties agree that the amount paid and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel and under the auspices of the Mediator.

K.      Each Settling Party's counsel signing this Settlement Agreement represents that he or she is authorized to enter into this Settlement Agreement on behalf of his or her clients.

L.      The Distribution Trustee, through his counsel, represents that he (*i*) has consulted with counsel about the Complaint, this Settlement Agreement, and the obligations of a Distribution Trustee and (*ii*) supports the terms embodied in this Settlement Agreement.

28

M.      This Settlement Agreement sets forth the entire agreement among the Settling

Parties as to the Settlement.  The Distribution Trustee and the Outside Directors expressly

acknowledge that there are no agreements, arrangements, or understandings among or between

them concerning the subject matter of this Settlement Agreement other than those expressed or

referred to in this Settlement Agreement.  In entering into this Settlement Agreement, no Settling

Party has relied upon any representation or warranty not set forth expressly herein.

N.      This Settlement Agreement shall be governed by and interpreted according to the

laws of the State of Delaware, excluding Delaware's conflict-of-laws provisions.

O.      Any action arising under or to enforce this Settlement Agreement shall be

commenced and maintained only in the Court, which shall retain continuing and exclusive

jurisdiction over all matters relating to the Settlement.  All Settling Parties and their counsel

agree to submit to the Court's jurisdiction for purposes of any such proceedings.

P.      Whenever this Settlement Agreement requires or contemplates that a Settling

Party shall or may give notice to the other, notice shall be provided by facsimile, e-mail, and/or

next-day (excluding Saturday, Sunday, and legal holidays) express-delivery service as follows

and shall be deemed effective upon such facsimile or e-mail transmission or delivery to the

facsimile number, e-mail address, or street address, as the case may be, below:

      1.      If to the Outside Directors, then to:

      Ralph C. Ferrara
      Proskauer Rose LLP
      1001 Pennsylvania Avenue, N.W.
      Suite 600 South
      Washington, D.C.  20004
      Telephone: (202) 416-5820
      Facsimile:  (202) 416-6899
      rferrara@proskauer.com

> Jonathan E. Richman
> Proskauer Rose LLP
> Eleven Times Square
> New York, NY  10036-8299
> Telephone:  (212) 969-3448
> Facsimile:  (212) 969-2900
> jerichman@proskauer.com


2.    If to the Distribution Trustee, then to:

> Christopher P. Sullivan
> Robins Kaplan LLP
> 800 Boylston Street, Suite 2500
> Boston, MA 02199
> Telephone:  (617) 267-2300
> Facsimile:  (617) 267-8288
> Csullivan@RobinsKaplan.com

> James P. Menton, Jr.
> Robins Kaplan LLP
> 2049 Century Park East, Suite 3400
> Los Angeles, CA  90067
> Telephone:  (310) 552-0130
> Facsimile:  (310) 229-5800
> Jmenton@RobinsKaplan.com

Q.    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Subsection, "legal holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr.,

Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal or Delaware state holiday.

R.    The Settling Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

S.    All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's length.  There shall not be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

T.    This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Releasees of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Released Trustee's Claims Against Outside Directors.  In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in any action or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement Agreement. Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including the Outside Directors, or as a waiver by the Outside Directors of any applicable defense.

31

U.      The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

V.      The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

W.      This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or e-mail in PDF format shall be fully and legally binding on a Settling Party.

X.    All Releasees who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Effective Date to enforce the terms of the Release set forth in this Settlement Agreement.  For avoidance of any doubt, the Management Defendants are not Releasees under this Settlement Agreement, and the Distribution Trustee and the Outside Directors hereby agree that the Management Defendants, and each of them, are not intended third-party beneficiaries, and expressly exclude the Management Defendants, and each of them, from being intended third-party beneficiaries.

Agreed to as of this 3rd day of April 2017.

Christopher P. Sullivan
James P. Menton, Jr.
Robins Kaplan LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:  (617) 267-2300
Facsimile:  (617) 267-8288

Ralph C. Ferrara
Jonathan E. Richman
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C.  20004
Telephone:  (202) 416-5820
Facsimile:  (202) 416-6899

ON BEHALF OF THE DISTRIBUTION
TRUSTEE

ON BEHALF OF THE OUTSIDE
DIRECTORS

**<u>Exhibit A</u>**

**Order Approving Settlement**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | Case No. 15-10952-KJC |
| Debtors. | Jointly Administered |
| | **Re: D.I. _____** |

## ORDER APPROVING SETTLEMENT BY AND AMONG
## DISTRIBUTION TRUST AND OUTSIDE DIRECTORS

Upon consideration of the motion (the "**Motion**") of the Distribution Trust for entry of an order (this "**Order**") approving the Settlement[2] between the Distribution Trust, on the one hand, and Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial (collectively, the "**Outside Directors**"), on the other hand, on the terms and subject to the conditions set forth in the Stipulation of Settlement and its exhibits (the "**Settlement Agreement**"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b)(2); and that the Court may enter a final order consistent with Article III of the

---

[1] The Debtors in these cases (the 'Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Settlement Agreement, as applicable.

United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that notice of the Motion and opportunity for hearing on the Motion were appropriate and no other notice needed to have been provided; and the Court having heard the statements in support of the relief requested therein at a hearing, if, any, before the Court (the "**Hearing**"); and the Court having found that approval of the Settlement Agreement and relief sought in the Order is within the sound discretion of the Court; and the Court having found that the relief requested in the Motion is fair and equitable and in the best interests of the Distribution Trust, creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.     The Motion is GRANTED in all respects.

2.     The Settlement Agreement, a copy of which is attached hereto as **Exhibit 1**, is approved pursuant to Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

3.     Within five (5) business days after the Effective Date (as defined in the Settlement Agreement), the Outside Directors shall cause their insurer(s) to pay $1,000,000 to the Distribution Trust, at the direction of the Distribution Trustee.

4.     All persons and entities are permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any Releasee arising under any federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or

contribution or otherwise denominated, including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the Claim is or arises from a Released Trustee's Claim Against Outside Directors and the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor, including any Claim in which a person or entity seeks to recover from any of the Releasees *(i)* any amounts that such person or entity has or might become liable to pay to the Distribution Trustee or any other Releasor and/or *(ii)* any costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other Releasor.  All such Claims against the Releasees are hereby extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if necessary.  The provisions hereof are intended to preclude any liability of any of the Releasees to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from a Released Trustee's Claim Against Outside Directors and where the alleged injury to such person or entity arises from that person's or entity's alleged liability to the Distribution Trustee or any other Releasor; *provided, however*, that if the Distribution Trustee or any other Releasor obtains any judgment against any such person or entity based upon, arising out of, or relating to any Released Trustee's Claim Against Outside Directors for which such person or entity and any of the Releasees are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of *(i)* an amount that corresponds to such Releasee's or Releasees' percentage of responsibility for the loss to the Distribution Trustee or other Releasor(s) or *(ii)* the Settlement Amount.

5.     Each and every Releasee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other person or entity (including any other Releasee) arising under any federal, state, or foreign statutory or common-law rule,

3

however styled, whether for indemnification or contribution or otherwise denominated, including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the Claim is or arises from a Released Trustee's Claim Against Outside Directors and the alleged injury to such Releasee arises from that Releasee's alleged liability to the Distribution Trustee or any other Releasor, including any Claim in which any Releasee seeks to recover from any person or entity (including another Releasee) *(i)* any amounts that any such Releasee has or might become liable to pay to the Distribution Trustee or any other Releasor and/or *(ii)* any costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other Releasor.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

6.      Each and every Outside Director is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Outside Director arising under any federal, state, or foreign statutory or common-law rule, however styled, where the Claim is or arises from a Directors' Mutually Released Claim.  All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

7.      The Distribution Trustee is enjoined from seeking relief or collecting judgment against any person or entity in such a manner that fails to conform to the terms of this Order, including the judgment credit provision set forth in paragraph 4 of this Order.

8.      Notwithstanding anything stated in this Order, if any person or entity (for purposes of this paragraph, a "**petitioner**") commences against any of the Releasees any action either *(i)* asserting a Claim that is or arises from a Released Trustee's Claim Against Outside Directors and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Distribution Trustee or any other Releasor or *(ii)* seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such

4

action or Claim is not barred by a court pursuant to this Order or is otherwise not barred, neither this Order nor the Settlement Agreement shall bar Claims by that Releasee against (*a*) such petitioner, (*b*) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (*c*) any person or entity that participated with any of the preceding persons or entities described in items (*a*) and (*b*) of this paragraph in connection with the assertion of the Claim brought against the Releasee(s); *provided, however,* that nothing in this Order or the Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

9.      If any term of this Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Releasees the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any Released Trustee's Claim Against Outside Directors or any Directors' Mutually Released Claim, as applicable.

10.     Notwithstanding this Order or anything else in the Settlement Agreement, nothing shall release, interfere with, limit, or bar the assertion by any Releasee of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that potentially provides coverage respecting the conduct at issue in the Complaint or for any other Released Trustee's Claim Against Outside Directors.

11.     This Order and the Settlement Agreement shall be binding on the Parties, any trustees appointed in the Chapter 11 Cases, any trustees appointed in any subsequent chapter 7

cases relating to the Debtors, and all other parties in interest in accordance with and subject to the terms of the Settlement Agreement.

12.      The Distribution Trust and all other Parties to the Settlement Agreement are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

13.      The Court shall retain continuing and exclusive jurisdiction to hear and determine all matters arising or related to the implementation, interpretation and/or enforcement of the Settlement Agreement and this Order.

Dated: _____, 2017
     Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

75750396.1

**<u>Exhibit B</u>**

**Special Service List**

*In re: Corinthian Colleges, Inc., 15-10952 (KJC)*
**Special Service List**

*Counsel for Beth Wilson*
Janet I. Levine
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071

*Counsel for Jack D. Massimino*
John W. Spiegel
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426

*Counsel for Robert Bosic*
John C. Hueston
Hueston Hennigan LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA  92660

*Counsel for Robert Owen*
Nicola T. Hanna
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612-4412

*Counsel for Michelle Reed Zagorski*
Daniel H. Bookin
O'Melveny & Myers LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3823

*Counsel for Nicole Carnagey*
Thomas S. McConville
Orrick, Herrington & Sutcliffe LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255

*Counsel for Nicole Carnagey*
Thomas S. McConville
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street
Suite 3200
Los Angeles, CA 90017-5855

*Counsel for Christian Dieckman & Kenneth Ord*
Thomas H. Bienert, Jr.
Bienert, Miller & Katzman LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673

*Counsel to Michelle Reed Zagorski, Beth Wilson, Robert Bosic, Nicole Carnagey, Christian Dieckman, Jack Massimino, Robert Owen, Kenneth Ord, David Moore, Barbara Gordon, Eva Deshon, Karen Rose, Terry Rawls, David Poldoian, Sumi Shrishrimal & Peter Waller*
Robert J. Dehney
Curtis S. Miller
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19801

*Counsel for Stan Mortensen*
Mark Holscher
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071

Beth Wilson
26512 Broken Bit Lane
Laguna Hills, CA 92653

Robert Donald Bosic III
312 Gulf Blvd., Apt. D
Indian Rocks Beach, FL 33785

Nicole Carnagey
312 Gulf Blvd., Unit D
Indian Rocks Beach, FL 33785

Nicole Carnagey
5242 Pinehurst Ct.
Oldsmar, FL 34677

Stan Mortenson
1518 Galaxy
Newport Beach, CA 92660

*Counsel for AIG*
Jessica P. Corley
Alston & Bird
One Atlantic Center,
1201 West Peachtree Street
Suite 4900
Atlanta, GA  30309-3424

*Counsel for ACE and Chubb*
Angelo G. Savino
Cozen O'Connor
45 Broadway, 16th Floor
New York, NY 10006

*Counsel for ACE and Chubb*
Angelo G. Savino
Cozen O'Connor
277 Park Avenue
New York, NY 10172

*Counsel for RSUI*
Kevin G. Mikulaninec
Walker Wilcox Matousek LLP
1 N. Franklin Street
Suite 3200
Chicago, IL 60606

*Counsel for Outside Directors*
Ralph C. Ferrara
Proskauer Rose LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, DC 20004-2533

and

Jonathan E. Richman
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299

## Exhibit C

**Tolling Agreement and Stipulation**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| | **Case No. 15-10952-KJC** |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | |
| | **(Jointly Administered)** |
| Debtors. | |

## TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER OUTSIDE DIRECTORS OF CORINTHIAN COLLEGES, INC.

This Tolling Agreement and Stipulation (the "Stipulation") is made and entered into as of February 7, 2017 (the "Stipulation Effective Date"), by and between Craig R. Jalbert ("Distribution Trustee"), as Distribution Trustee of the Corinthian Distribution Trust (the "Distribution Trust"), on the one hand, and each of Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial (the "Outside Directors"), on the other hand, by and through their respective counsel. Each party may be referred to individually as a "Party" and all parties may be referred to

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

herein collectively as the "Parties."  This Stipulation is made with reference to the

following facts:

<u>**RECITALS**</u>

WHEREAS, on May 4, 2015, Corinthian Colleges, Inc. ("Corinthian") and its

twenty-four domestic direct and indirect subsidiaries (together with Corinthian, the

"Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"); and

WHEREAS, on August 28, 2015, the Bankruptcy Court entered an order (the

"Confirmation Order") confirming the Debtors' Third Amended and Modified

Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), which

became effective on or about September 21, 2015; and

WHEREAS, the Plan provided for the establishment of the Distribution Trust to

facilitate implementation of the Plan; and

WHEREAS, Corinthian (on behalf of itself and the other Debtors), Craig R.

Jalbert (the Distribution Trustee), and Wilmington Trust, National Association (as

Delaware Resident Trustee) entered into the Corinthian Distribution Trust Agreement

made as of September 18, 2015 (the "Distribution Trust Agreement"); and

WHEREAS, on the Effective Date of the Plan, the Distribution Trust Assets (as

defined in the Plan), including the Causes of Action (as defined in the Plan), were

transferred to the Distribution Trust in accordance with the terms and conditions of the

Plan, the Confirmation Order and the Distribution Trust Agreement; and

- 2 -

WHEREAS, pursuant to the Plan, the Confirmation Order and the Distribution Trust Agreement, the Distribution Trustee was appointed to administer the Distribution Trust, including to act as representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Action; and

WHEREAS, on approximately October 5, 2016, counsel for the Distribution Trustee sent a draft of a Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets (the "Complaint") (i) to counsel for certain members of Corinthian's former management (the "Management Defendants") and (ii) to counsel for the Outside Directors (and together with Management Defendants, the "Defendants"); and

WHEREAS, the Distribution Trustee, his counsel, and Defendants' counsel participated in a two-day mediation on January 4-5, 2017 (the "Mediation"); and

WHEREAS, at the end of the Mediation, counsel for the Distribution Trustee and counsel for the Outside Directors agreed in principle to the basic terms of a settlement of the Distribution Trustee's potential claims against the Outside Directors; and

WHEREAS, counsel for the Distribution Trustee and counsel for the Outside Directors signed a Term Sheet, dated February 7, 2017, embodying the principal terms of their agreement, subject to (among other things) execution of a definitive Stipulation of Settlement with exhibits (the "Settlement Agreement") and approval by the Bankruptcy Court; and

WHEREAS, the Bankruptcy Court has scheduled a hearing to consider approval of the Settlement Agreement for April 24, 2017; and

- 3 -

WHEREAS, the Outside Directors expressly deny the wrongdoing alleged in the Complaint and do not concede any wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Complaint; and

WHEREAS, the Distribution Trustee wishes, and the Outside Directors agree, to toll and extend any statute, statute of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline for the commencement or filing of any matter, proceeding or other action by the Distribution Trust or the Distribution Trustee (collectively, "Claimants") against the Outside Directors, or any of them, thereby to preserve any rights, claims and defenses that the Claimants may have against the Outside Directors (collectively, the "Claims") as of the Stipulation Effective Date, under any legal theory or applicable law, whether asserted by claim, counterclaim, cross-claim, or otherwise, including, without limitation, the causes of action contained in the Complaint; and

WHEREAS, the Parties are willing to enter into this Stipulation to preserve all Claims, if any, that the Claimants may have against the Outside Directors as of the Stipulation Effective Date according to the terms set forth herein.

## <u>STIPULATION</u>

In consideration of the mutual promises set forth herein and in the Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    The recitals set forth above are incorporated herein by reference.

- 4 -

2.      Any statute, statue of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline (collectively, the "Limitation Deadline") for the commencement or filing of any matter, proceeding or action by the Claimants, or either of them, against the Outside Directors, or any of them, applicable to any of the Claims, including, without limitation, sections 108 and 546 of the Bankruptcy Code, are hereby tolled and extended for the Claimants, and each of them, from the Stipulation Effective Date, through and including (i) full consummation of the Settlement Agreement (meaning that the Bankruptcy Court shall have entered the Settlement Order, the Settlement Order shall have become Final, and the Settlement Amount shall have been paid in accordance with the Settlement Agreement) or (ii) sixty (60) days after the earliest of (a) the date notice is provided by the Distribution Trust, the Outside Directors, or any of them, or any applicable insurer(s) that he, she, it or they do not approve the Settlement Agreement, (b) the date on which the Bankruptcy Court rules that the Settlement Agreement is not approved, (c) the date on which the Settlement Agreement is terminated pursuant to its terms, or (d) the date on which the Settlement Agreement otherwise becomes null and void pursuant to its terms (collectively, the "Stipulation Termination Date").  The Limitation Deadline is not tolled or extended for anyone other than the Claimants or for claims against anyone other than the Outside Directors.

3.      The Parties agree that: (a) sections 108(a) and 546 of the Bankruptcy Code and any other Limitation Deadline are not a limit on the Bankruptcy Court's

jurisdiction, and can be tolled by agreement; and (b) no Party will assert any contrary

position in any matter, proceeding or action in any court of competent jurisdiction.  If a

court nevertheless holds that it does not have jurisdiction over any Claim because the

Claim was filed after the Stipulation Effective Date, or such other date upon which any

applicable Limitation Deadline would have expired but for this Stipulation, the Parties

agree that:  (i) the Party asserting the Claim shall nevertheless have a separate and

distinct contractual right and claim against the Party subject to the Claim; and (ii) the

Party subject to such Claim will have a corresponding separate and distinct contractual

obligation to the Party asserting such Claim, in the amount, and for the remedies, if any,

that the Party asserting such Claim would have been entitled had he, she or it asserted

such Claim prior to the Stipulation Effective Date, or such other date upon which any

applicable Limitation Deadline would have expired but for this Stipulation, and

obtained a final and non-appealable judgment from the court in his, her or its favor,

subject to all available rights, claims and defenses of each Party; *provided, however,* that

the Party or Parties against whom any such Claim has been asserted shall retain all

defenses, claims, cross-claims, and counterclaims as to any such Claim.  The agreements

contained in this paragraph and the terms of the Settlement Agreement are a material

inducement to each Party to enter into this Stipulation, and are not conditioned upon

approval by any court and are effective and enforceable among the Parties immediately

upon execution of this Stipulation.  The provisions of this paragraph shall terminate

upon full consummation of the Settlement Agreement (as explained in paragraph 2(i)).

4.      Nothing in this Stipulation shall prevent the Claimants, or either of them, or any other party acting for or on his or its behalf, from filing a lawsuit with respect to any Claim against the Outside Directors, or any of them, prior to the Stipulation Termination Date; *provided, however,* that Claimants (or either of them) will not file any such suit as long as the Settlement Agreement has not been rejected by any court or has not been terminated in accordance with its terms.  So long as any Claim is filed on or prior to the Stipulation Termination Date, and would not have been barred as of the Stipulation Effective Date, the Outside Directors, and each of them, hereby waive the defense that such action is barred by the applicable Limitation Deadline.  For the avoidance of doubt, this Stipulation shall not in any manner revive, resurrect, or create any claims, rights, causes of action or suits that, as of the Stipulation Effective Date, had expired or were barred by the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, any applicable statute of limitations or repose or other rule, provision, defense or principle based upon the passage of time (including without limitation, waiver, estoppel and laches), whether statutory, contractual or otherwise, or limit in any way the assertion of any defense available as of the Stipulation Effective Date.

5.      This Stipulation shall not operate or be construed as an admission of any wrongdoing, liability, or culpability by any Party or as an admission by any Party of the existence of any claims against the other.  Neither this Stipulation nor any action taken pursuant to this Stipulation shall be offered or received in evidence or used for any purpose whatsoever, in any action or proceeding that may ensue between the Parties,

other than to refute a defense that any action brought by the Claimants, or either of

them, on or prior to the Stipulation Termination Date is time barred by any applicable

Limitation Deadline.

6.      The Parties each represent and warrant that: (i) each has the power and is

duly authorized to enter into this Stipulation described herein and upon the terms set

forth herein; and (ii) upon being duly executed and delivered, this Stipulation shall

constitute a legal, valid, and binding obligation enforceable against it in accordance

with this Stipulation's terms.

7.      This Stipulation shall be binding upon, and operate for the benefit of, the

Parties and each of their respective successors and assigns.

8.      This Stipulation shall expire at 11:59 p.m. ET on the Stipulation

Termination Date, unless renewed or extended by a written instrument signed by an

authorized representative of each Party, or, to the extent only one or more of the

Outside Directors agree to renew or extend, executed by such Outside Director and the

Distribution Trust, prior to that date and time.

9.      This Stipulation constitutes the entire agreement by and among the Parties

concerning the tolling of the Limitation Deadline, and supersedes any prior agreements

or understandings whether written or oral. This Stipulation may not be amended or

changed in any way except by written instrument signed by the Parties.

10.     The Parties intend that this Stipulation be binding and enforceable in

accordance with its terms. Accordingly, the Parties hereby irrevocably waive any right

to contend that this Stipulation is not or might not be enforceable, agree not to assert or support any such contention, and shall be estopped from raising any such contention.

11.    The obligations of each of the Outside Directors set forth in the preceding Paragraph 10 shall be contractual (as opposed to a waiver of a procedural or statutory right).

12.    This Stipulation is not intended, nor shall it be deemed, to advance or otherwise affect any Limitation Deadline occurring after the Stipulation Termination Date.

13.    This Stipulation shall be governed by and interpreted under Delaware law without regard to any conflicts-of-laws principles.

14.    The Bankruptcy Court shall have sole and exclusive jurisdiction to interpret or resolve any disputes relating to this Stipulation.

15.    The tolling and extension of the Limitation Deadline is effective whether or not the Bankruptcy Court enters an Order approving this Stipulation.  The Parties, however, agree to submit this Stipulation to the Bankruptcy Court for its approval.

16.    This Stipulation may be signed in counterparts, including by facsimile, each of which shall be deemed an original, and all of which taken together shall constitute one and the same document.

Christopher P. Sullivan
Richard B. Allyn
James P. Menton, Jr.
**ROBINS KAPLAN LLP**
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288

Ralph C. Ferrara
Jonathan E. Richman
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-5820
Facsimile: (202) 416-6899

*Counsel for The Distribution Trustee*

*Counsel for the Outside Directors*

**<u>Exhibit D</u>**

**Certification of Counsel Regarding Order Approving Tolling Agreement**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

------------------------------------------------------------

### CERTIFICATION OF COUNSEL REGARDING ORDER APPROVING TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER OUTSIDE DIRECTORS OF CORINTHIAN COLLEGES, INC.

The undersigned hereby certifies as follows:

1.      We are counsel to Craig R. Jalbert, Distribution Trustee of the Corinthian Distribution Trust (the "**Distribution Trustee**").

2.      The Distribution Trustee and certain former outside directors of Corinthian Colleges, Inc. (the "**Outside Directors**," and together with the Distribution Trustee, the "**Parties**") have entered into that certain *Tolling Agreement and Stipulation Between Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust, and Former Outside Directors of Corinthian Colleges, Inc.*, dated as of February 7, 2017 (the "**Tolling Agreement**").

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

3.      A copy of the Tolling Agreement is attached as **<u>Exhibit 1</u>** to **<u>Exhibit A</u>** hereto. Under the Tolling Agreement, the Parties agreed that the Tolling Agreement was operative by its terms, but also agreed to submit the Tolling Agreement for approval by this Court.

4.      Attached hereto as **<u>Exhibit A</u>** is the proposed form of order approved by the Parties approving the Tolling Agreement (the "**Order**").  As noted above, the executed Tolling Agreement is attached to the Order as **<u>Exhibit 1</u>**.

WHEREFORE, the Distribution Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, at its earliest convenience.

Dated: April 3, 2017
      Wilmington, Delaware

Respectfully submitted,

*/s/ Christopher M. De Lillo*
Mark D. Collins (No. 2981)
Marcos A. Ramos (No. 4450)
Amanda R. Steele (No. 5530)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email: collins@rlf.com
      ramos@rlf.com
      steele@rlf.com
      delillo@rlf.com

Christopher P. Sullivan
Richard B. Allyn
James P. Menton, Jr.
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:  (617) 267-2300
Facsimile:  (617) 267-8288
Email:  csullivan@robinsraplan.com
      rallyn@robinskaplan.com
      jmenton@robinskaplan.com

Counsel to the Distribution Trustee

## EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re:  D.I. ____** |

-------------------------------------------------------------

## ORDER APPROVING TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER OUTSIDE DIRECTORS OF CORINTHIAN COLLEGES, INC.

This matter coming before the Court upon the *Certification of Counsel Regarding Order Approving Tolling Agreement and Stipulation Between Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust, and Former Outside Directors of Corinthian Colleges, Inc.* (the "**Certification**");[2] and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the retention of jurisdiction under section XVI of the plan of liquidation [D.I. 913];

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Certification.

IT IS HEREBY ORDERED THAT:

1.      The Tolling Agreement is hereby APPROVED and entered as an order of the Court.

2.      The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order.

Dated: _____, 2017
       Wilmington, Delaware               _____
                                      THE HONORABLE KEVIN J. CAREY
                                      UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Tolling Agreement**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| | **Case No. 15-10952-KJC** |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | |
| | **(Jointly Administered)** |
| Debtors. | |

## TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER OUTSIDE DIRECTORS OF CORINTHIAN COLLEGES, INC.

This Tolling Agreement and Stipulation (the "Stipulation") is made and entered into as of February 7, 2017 (the "Stipulation Effective Date"), by and between Craig R. Jalbert ("Distribution Trustee"), as Distribution Trustee of the Corinthian Distribution Trust (the "Distribution Trust"), on the one hand, and each of Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial (the "Outside Directors"), on the other hand, by and through their respective counsel.  Each party may be referred to individually as a "Party" and all parties may be referred to

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

herein collectively as the "Parties."  This Stipulation is made with reference to the

following facts:

**RECITALS**

WHEREAS, on May 4, 2015, Corinthian Colleges, Inc. ("Corinthian") and its

twenty-four domestic direct and indirect subsidiaries (together with Corinthian, the

"Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") in the United States Bankruptcy Court for the District of

Delaware (the "Bankruptcy Court"); and

WHEREAS, on August 28, 2015, the Bankruptcy Court entered an order (the

"Confirmation Order") confirming the Debtors' Third Amended and Modified

Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), which

became effective on or about September 21, 2015; and

WHEREAS, the Plan provided for the establishment of the Distribution Trust to

facilitate implementation of the Plan; and

WHEREAS, Corinthian (on behalf of itself and the other Debtors), Craig R.

Jalbert (the Distribution Trustee), and Wilmington Trust, National Association (as

Delaware Resident Trustee) entered into the Corinthian Distribution Trust Agreement

made as of September 18, 2015 (the "Distribution Trust Agreement"); and

WHEREAS, on the Effective Date of the Plan, the Distribution Trust Assets (as

defined in the Plan), including the Causes of Action (as defined in the Plan), were

transferred to the Distribution Trust in accordance with the terms and conditions of the

Plan, the Confirmation Order and the Distribution Trust Agreement; and

- 2 -

WHEREAS, pursuant to the Plan, the Confirmation Order and the Distribution Trust Agreement, the Distribution Trustee was appointed to administer the Distribution Trust, including to act as representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Action; and

WHEREAS, on approximately October 5, 2016, counsel for the Distribution Trustee sent a draft of a Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets (the "Complaint") (i) to counsel for certain members of Corinthian's former management (the "Management Defendants") and (ii) to counsel for the Outside Directors (and together with Management Defendants, the "Defendants"); and

WHEREAS, the Distribution Trustee, his counsel, and Defendants' counsel participated in a two-day mediation on January 4-5, 2017 (the "Mediation"); and

WHEREAS, at the end of the Mediation, counsel for the Distribution Trustee and counsel for the Outside Directors agreed in principle to the basic terms of a settlement of the Distribution Trustee's potential claims against the Outside Directors; and

WHEREAS, counsel for the Distribution Trustee and counsel for the Outside Directors signed a Term Sheet, dated February 7, 2017, embodying the principal terms of their agreement, subject to (among other things) execution of a definitive Stipulation of Settlement with exhibits (the "Settlement Agreement") and approval by the Bankruptcy Court; and

WHEREAS, the Bankruptcy Court has scheduled a hearing to consider approval of the Settlement Agreement for April 24, 2017; and

WHEREAS, the Outside Directors expressly deny the wrongdoing alleged in the Complaint and do not concede any wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Complaint; and

WHEREAS, the Distribution Trustee wishes, and the Outside Directors agree, to toll and extend any statute, statute of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline for the commencement or filing of any matter, proceeding or other action by the Distribution Trust or the Distribution Trustee (collectively, "Claimants") against the Outside Directors, or any of them, thereby to preserve any rights, claims and defenses that the Claimants may have against the Outside Directors (collectively, the "Claims") as of the Stipulation Effective Date, under any legal theory or applicable law, whether asserted by claim, counterclaim, cross-claim, or otherwise, including, without limitation, the causes of action contained in the Complaint; and

WHEREAS, the Parties are willing to enter into this Stipulation to preserve all Claims, if any, that the Claimants may have against the Outside Directors as of the Stipulation Effective Date according to the terms set forth herein.

## <u>STIPULATION</u>

In consideration of the mutual promises set forth herein and in the Settlement Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

1.    The recitals set forth above are incorporated herein by reference.

- 4 -

2.      Any statute, statue of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline (collectively, the "Limitation Deadline") for the commencement or filing of any matter, proceeding or action by the Claimants, or either of them, against the Outside Directors, or any of them, applicable to any of the Claims, including, without limitation, sections 108 and 546 of the Bankruptcy Code, are hereby tolled and extended for the Claimants, and each of them, from the Stipulation Effective Date, through and including (i) full consummation of the Settlement Agreement (meaning that the Bankruptcy Court shall have entered the Settlement Order, the Settlement Order shall have become Final, and the Settlement Amount shall have been paid in accordance with the Settlement Agreement) or (ii) sixty (60) days after the earliest of (a) the date notice is provided by the Distribution Trust, the Outside Directors, or any of them, or any applicable insurer(s) that he, she, it or they do not approve the Settlement Agreement, (b) the date on which the Bankruptcy Court rules that the Settlement Agreement is not approved, (c) the date on which the Settlement Agreement is terminated pursuant to its terms, or (d) the date on which the Settlement Agreement otherwise becomes null and void pursuant to its terms (collectively, the "Stipulation Termination Date").  The Limitation Deadline is not tolled or extended for anyone other than the Claimants or for claims against anyone other than the Outside Directors.

3.      The Parties agree that: (a) sections 108(a) and 546 of the Bankruptcy Code and any other Limitation Deadline are not a limit on the Bankruptcy Court's

jurisdiction, and can be tolled by agreement; and (b) no Party will assert any contrary

position in any matter, proceeding or action in any court of competent jurisdiction.  If a

court nevertheless holds that it does not have jurisdiction over any Claim because the

Claim was filed after the Stipulation Effective Date, or such other date upon which any

applicable Limitation Deadline would have expired but for this Stipulation, the Parties

agree that:  (i) the Party asserting the Claim shall nevertheless have a separate and

distinct contractual right and claim against the Party subject to the Claim; and (ii) the

Party subject to such Claim will have a corresponding separate and distinct contractual

obligation to the Party asserting such Claim, in the amount, and for the remedies, if any,

that the Party asserting such Claim would have been entitled had he, she or it asserted

such Claim prior to the Stipulation Effective Date, or such other date upon which any

applicable Limitation Deadline would have expired but for this Stipulation, and

obtained a final and non-appealable judgment from the court in his, her or its favor,

subject to all available rights, claims and defenses of each Party; *provided, however,* that

the Party or Parties against whom any such Claim has been asserted shall retain all

defenses, claims, cross-claims, and counterclaims as to any such Claim.  The agreements

contained in this paragraph and the terms of the Settlement Agreement are a material

inducement to each Party to enter into this Stipulation, and are not conditioned upon

approval by any court and are effective and enforceable among the Parties immediately

upon execution of this Stipulation.  The provisions of this paragraph shall terminate

upon full consummation of the Settlement Agreement (as explained in paragraph 2(i)).

4.      Nothing in this Stipulation shall prevent the Claimants, or either of them, or any other party acting for or on his or its behalf, from filing a lawsuit with respect to any Claim against the Outside Directors, or any of them, prior to the Stipulation Termination Date; *provided, however,* that Claimants (or either of them) will not file any such suit as long as the Settlement Agreement has not been rejected by any court or has not been terminated in accordance with its terms.  So long as any Claim is filed on or prior to the Stipulation Termination Date, and would not have been barred as of the Stipulation Effective Date, the Outside Directors, and each of them, hereby waive the defense that such action is barred by the applicable Limitation Deadline.  For the avoidance of doubt, this Stipulation shall not in any manner revive, resurrect, or create any claims, rights, causes of action or suits that, as of the Stipulation Effective Date, had expired or were barred by the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, any applicable statute of limitations or repose or other rule, provision, defense or principle based upon the passage of time (including without limitation, waiver, estoppel and laches), whether statutory, contractual or otherwise, or limit in any way the assertion of any defense available as of the Stipulation Effective Date.

5.      This Stipulation shall not operate or be construed as an admission of any wrongdoing, liability, or culpability by any Party or as an admission by any Party of the existence of any claims against the other.  Neither this Stipulation nor any action taken pursuant to this Stipulation shall be offered or received in evidence or used for any purpose whatsoever, in any action or proceeding that may ensue between the Parties,

other than to refute a defense that any action brought by the Claimants, or either of them, on or prior to the Stipulation Termination Date is time barred by any applicable Limitation Deadline.

6.      The Parties each represent and warrant that: (i) each has the power and is duly authorized to enter into this Stipulation described herein and upon the terms set forth herein; and (ii) upon being duly executed and delivered, this Stipulation shall constitute a legal, valid, and binding obligation enforceable against it in accordance with this Stipulation's terms.

7.      This Stipulation shall be binding upon, and operate for the benefit of, the Parties and each of their respective successors and assigns.

8.      This Stipulation shall expire at 11:59 p.m. ET on the Stipulation Termination Date, unless renewed or extended by a written instrument signed by an authorized representative of each Party, or, to the extent only one or more of the Outside Directors agree to renew or extend, executed by such Outside Director and the Distribution Trust, prior to that date and time.

9.      This Stipulation constitutes the entire agreement by and among the Parties concerning the tolling of the Limitation Deadline, and supersedes any prior agreements or understandings whether written or oral. This Stipulation may not be amended or changed in any way except by written instrument signed by the Parties.

10.      The Parties intend that this Stipulation be binding and enforceable in accordance with its terms. Accordingly, the Parties hereby irrevocably waive any right

to contend that this Stipulation is not or might not be enforceable, agree not to assert or support any such contention, and shall be estopped from raising any such contention.

11.     The obligations of each of the Outside Directors set forth in the preceding Paragraph 10 shall be contractual (as opposed to a waiver of a procedural or statutory right).

12.     This Stipulation is not intended, nor shall it be deemed, to advance or otherwise affect any Limitation Deadline occurring after the Stipulation Termination Date.

13.     This Stipulation shall be governed by and interpreted under Delaware law without regard to any conflicts-of-laws principles.

14.     The Bankruptcy Court shall have sole and exclusive jurisdiction to interpret or resolve any disputes relating to this Stipulation.

15.     The tolling and extension of the Limitation Deadline is effective whether or not the Bankruptcy Court enters an Order approving this Stipulation.  The Parties, however, agree to submit this Stipulation to the Bankruptcy Court for its approval.

16.     This Stipulation may be signed in counterparts, including by facsimile, each of which shall be deemed an original, and all of which taken together shall constitute one and the same document.

Christopher P. Sullivan
Richard B. Allyn
James P. Menton, Jr.
**ROBINS KAPLAN LLP**
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone: (617) 267-2300
Facsimile: (617) 267-8288

Ralph C. Ferrara
Jonathan E. Richman
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-5820
Facsimile: (202) 416-6899

*Counsel for The Distribution Trustee*

*Counsel for the Outside Directors*

- 10 -