**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br>CORINTHIAN COLLEGES, INC., *et al.*,<br>Debtors.[1] | Chapter 11<br>Case No. 15-10952 (KJC)<br>(Jointly Administered) |
| Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust,<br>Plaintiff,<br>vs.<br>Southern California Edison Company,<br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, 549 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust (the "Trustee" or "Plaintiff"), by and through his undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Southern California Edison Company (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477). The Debtors' corporate headquarters is at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707.

1

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of Corinthian Colleges, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances. Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 549 and 550 of the Bankruptcy Code any transfers that were made after the Debtors commenced their bankruptcy cases and which transfers were not authorized by the Bankruptcy Code or this Court.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of his rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States

---

[2] The "Debtors" are all entities listed in footnote 1.

Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re Corinthian Colleges, Inc., et al.,* Case No. 15-10952 (KJC), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, 549 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On May 4, 2015 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

9. On May 5, 2015, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [D.I. 19].[3]

10. On August 28, 2015, this Court entered an order confirming the *Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (the "Confirmation Order" and "Plan," respectively). [Confirmation Order, D.I. 913; Plan, 913-1].

---

[3] All docket items referenced are from Case No. 15-10952, under which the Debtors' bankruptcy cases are jointly administered.

11.     The effective date of the Plan occurred on September 21, 2015 (the "Effective Date"). [D.I. 1014]. In accordance with the Plan and Confirmation Order, the Corinthian Distribution Trust (the "Trust") was established effective on the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Corinthian Distribution Trust Agreement.

12.     Pursuant to Article VIII, Section 8.4 of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

## THE PARTIES

13.     Pursuant to paragraph 20 of the Confirmation Order and Section 9.B of the Plan, the Distribution Trust Assets, including Avoidance Actions (as defined in the Plan) arising under chapter 5 of the Bankruptcy Code, were transferred to the Trust. [D.I. 913]. Under the Plan, Confirmation Order, and the Corinthian Distribution Trust Agreement, the Trustee was appointed to administer the Trust and has standing, among other things, to settle or abandon Avoidance Actions under chapter 5 of the Bankruptcy Code, including this avoidance action.

14.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that supplied electricity services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 2244 Walnut Grove Avenue, Rosemead, CA 91770. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of California.

## FACTUAL BACKGROUND

15.     As more fully discussed in the *Declaration of William J. Nolan in Support of Chapter 11 Petitions and First Day Motions*[4] and in the Plan, prior to the Petition Date the

---

[4] D.I. 10.

Debtors were one of the largest for-profit post-secondary education companies in the United States and Canada. The Debtors provided career-oriented diploma and degree programs in fields such as health care, business, criminal justice, transportation technology and maintenance, construction trades, and information technology. As of March 31, 2014, the Debtors operated over 100 campuses and provided educational opportunities to more than 74,000 students.

16. Prior to the Petition Date, the Debtors, as providers of career-oriented diploma and degree programs, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

17. As providers of career-oriented diploma and degree programs, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors also regularly paid for services used to facilitate their business.

18. The Debtors' financial difficulties that led to the decision to file petitions for bankruptcy are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) several state and other governmental agencies filing certain lawsuits alleging that the Debtors, among other things, subjected students to unlawful debt-collection practices, violated consumer protection laws, misrepresented the schools' placement statistics, earnings of graduates, transferability of credits, and nature and availability of financial aid; (ii) the Department of Education issuing a January 2014 letter to the Debtors which requested extensive information concerning various educational statistics reported by the Debtors and which resulted in the Debtors providing the equivalent of more than 1.2 million pages of responsive data from January to August 2014; (iii) the Department of Education issuing a June 12, 2014 letter indicating that the information requests from January had not been

completely fulfilled and further indicating that the Debtors would have a twenty-one day delay in the availability to draw down on Title IV funds; (iv) the resulting liquidity crisis from the twenty-one day delay in the Debtors' ability to draw down on Title IV funds, as nearly 90% of the Debtors' revenues came from these funds; and (v) negotiations between the Department of Education and the Debtors in June and July of 2014 which resulted in an agreement that the Debtors would continue to "teach out" existing students at certain facilities but would enroll no new students, in order for students to finish their education and for the Debtors to pursue a sale of their remaining schools.

19. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, concentration, management, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of eighty bank accounts comprised of several bank account types, including depository, concentration, payroll, student refund, accounts payable, and investment accounts, which were maintained at Bank of America, Bank of the West, First Hawaiian Bank, Union Bank, U.S. Bank, N.A., Capital West, California Bank and Trust, and BMO Harris Bank, N.A. ("BMO Harris," and collectively, the "Banks")  [See D.I. No. 9].

20. Among these bank accounts, disbursements to vendors were made from a Union Bank account ending 4999 held by Corinthian Colleges, Inc., and a BMO Harris account ending 9286 held by Corinthian Colleges, Inc. (the "Disbursement Accounts"). The Disbursement Accounts were used to pay the debts incurred by the Debtors. The Debtors engaged in intercompany transactions to maintain control over funds moving within the Debtors' corporate

---

[5] More information on the cash management system can be found in the *Debtors' Motion For Entry Of Interim And Final Orders (I)Authorizing Continued Use Of Existing Cash Management System and Bank Accounts; (II) Waiving Certain United States Trustee Requirements; (III) Authorizing Continued Performance of Intercompany Transactions; And (IV) Granting Related Relief.* [D.I. 9].

group. Further, the Debtors were able to accurately and carefully trace and account for all intercompany transactions. Upon information and belief, based upon the Debtors' intercompany transactions and the tracking and tracing of these transactions, the Debtor incurring each debt directed and caused the payments on each of its debts issuing from the Disbursement Accounts.

21. During the ninety (90) days before the Petition Date, that is between February 3, 2015, and May 4, 2015 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including to pay their vendors, suppliers, distributors, and other creditors, including Defendant.

22. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. Defendant conducted business with one or more of the Debtors through and including the Petition Date pursuant to the Agreements.

24. As identified in the Agreements identified on Exhibit A, one or more of the Debtors purchased goods and/or services from Defendant or otherwise held a debt owed by one or more of the Debtors.

25.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the applicable Debtor(s) to Defendant within the Preference Period.

26.     Plaintiff has determined that one of more of the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $133,845.68 (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."  Additionally, to the extent there are any transfers that cleared the Disbursement Account(s) after the Petition Date (the "Post-Petition Transfers"), such amounts are listed on Exhibit A and incorporated herein by reference.

27.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action authorized by the Plan, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A made Transfers to or for the benefit of Defendant in an aggregate amount not less than $133,845.68.

30. Each Transfer was made from the Disbursement Account described *supra,* and constituted transfers of an interest in property of the transferring Debtor(s) as identified on Exhibit A.

31. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

32. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

33. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

34. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35. Each Transfer was made during the Preference Period, as set forth on <u>Exhibit A</u>.

36. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

37. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

38. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39. To the extent one or more of the Transfers identified on <u>Exhibit A</u> was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by one Debtor without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "<u>Potentially Fraudulent Transfers</u>"); and

      A.      The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

      B.      The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

      C.      The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

40.     Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
**(Avoidance of Unauthorized Post-Petition Transfers – 11 U.S.C. § 549)**

41.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

42.     To the extent any of the Transfer(s) identified on <u>Exhibit A</u> cleared the Disbursement Account(s) after the Petition Date, including any Post-Petition Transfers currently listed on <u>Exhibit A</u>, and such Transfers and were not authorized by the Court or the Bankruptcy Code, Plaintiff pleads in the alternative that such Post-Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

## COUNT IV
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

43.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

44.     Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b), any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548, and/or any Post-Petition Transfers pursuant to 11 U.S.C. § 549 (collectively, the "<u>Avoidable Transfers</u>").

45. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

### COUNT V
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

48. Defendant is a transferee of transfers avoidable under sections 547, 548, and/or 549 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

50. Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51. Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

A. On Plaintiff's First, Second, Third and Fourth Claims for relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b), 548, and/or 549 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fifth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Plaintiff until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C. § 502(d) and (j); and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: May 1, 2017

**THE ROSNER LAW GROUP LLC**

/s/ Jason A. Gibson
Frederick B. Rosner (DE 3995)
Jason A. Gibson (DE 6091)
824 Market Street, Suite 810
Wilmington, DE 19801

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 406-9665  ext. 850
Fax: (651) 406-9676
Email: jsteinfeld@askllp.com

*-and-*

Edward E. Neiger, Esq.
Marianna Udem, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust*