**<u>Exhibit 1</u>**

**Settlement**

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement is made and entered into by and between Craig R. Jalbert (the "Distribution Trustee"), as Distribution Trustee of the Corinthian Distribution Trust (the "Distribution Trust"), on the one hand, and the Former Employees (as defined herein), on the other hand.

## RECITALS

WHEREAS, on May 4, 2015, Corinthian and its twenty-four domestic direct and indirect subsidiaries (together with Corinthian, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, on May 5, 2015, the Court entered an order consolidating the Debtors' chapter 11 cases for procedural purposes only and directing their joint administration under case no. 15-10952 (KJC); and

WHEREAS, the Debtors were authorized to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on August 28, 2015, the Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), which became effective on or about September 21, 2015; and

WHEREAS, the Plan provided for the establishment of the Distribution Trust to facilitate implementation of the Plan; and

WHEREAS, Corinthian (on behalf of itself and the other Debtors), Craig R. Jalbert (the Distribution Trustee), and Wilmington Trust, National Association (as Delaware Resident

Trustee) entered into the Corinthian Distribution Trust Agreement made as of September 18, 2015 (the "Distribution Trust Agreement"); and

WHEREAS, on the Effective Date of the Plan, the Distribution Trust Assets, including the Causes of Action, were transferred to the Distribution Trust in accordance with the terms and conditions of the Plan, the Confirmation Order and the Distribution Trust Agreement; and

WHEREAS, pursuant to the Plan, the Confirmation Order, and the Distribution Trust Agreement, the Distribution Trustee was appointed to administer the Distribution Trust, including to act as representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Action, including the alleged Claims against the Former Employees resolved pursuant to the terms of this Settlement Agreement; and

WHEREAS, on or around October 5, 2016, counsel for the Distribution Trustee sent a draft Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets (the "Complaint") to *(i)* the Former Employees' Counsel and *(ii)* the Outside Directors' Counsel; and

WHEREAS, the Distribution Trustee, the Distribution Trustee's Counsel, the Former Employees' Counsel and the Outside Directors' Counsel participated in a two-day mediation on January 4-5, 2017 (the "Mediation") with, among others, retired California Superior Court Judge Daniel Weinstein; and

WHEREAS, the Distribution Trustee and the Former Employees did not resolve their disputes at the Mediation; and

WHEREAS, on or about April 24, 2017, the Distribution Trustee and the Former Employees agreed to the principal terms of a settlement of the Distribution Trustee's potential

2

Causes of Action against the Former Employees, subject to (among other things) execution of a definitive Stipulation of Settlement and final approval by the Court; and

WHEREAS, throughout these proceedings and the settlement negotiations, the Distribution Trustee and each of the Former Employees have been advised by independent counsel competent in lawsuits asserting claims such as those in the Complaint; and

WHEREAS, based on the Distribution Trustee's investigation and evaluation of the facts and law relating to the claims alleged in the Complaint, the Distribution Trustee has agreed to settle his alleged Claims pursuant to the terms of this Settlement Agreement after considering, among other things, (*i*) the substantial benefits that the terms of this Settlement Agreement would provide; (*ii*) the attendant risks of litigation, especially in legally and factually complex actions such as this one; (*iii*) the alleged defenses asserted by the Former Employees; (*iv*) the desirability of consummating this Settlement Agreement promptly to obtain effective relief and to avoid the continued expenditures of insurance proceeds on litigation between the Distribution Trustee and the Former Employees which would only serve to further reduce the amount of insurance proceeds available for distribution to creditors; and (*v*) the Distribution Trustee's belief that this Settlement Agreement is fair, reasonable, and adequate in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure; and

WHEREAS, the Former Employees expressly deny the wrongdoing alleged in the Complaint and do not concede any wrongdoing or liability in connection with any facts or Claims that have been or could have been alleged in the Complaint, but nevertheless consider it desirable for the Claims set forth in the Complaint to be settled and released as to them because the proposed Settlement would, among other things, (*i*) bring to an end the substantial expense, burdens, and uncertainties associated with litigation of the Claims asserted in the Complaint,

3

(*ii*) avoid expenditures of insurance proceeds on continued litigation between the Distribution Trustee and the Former Employees, and (*iii*) finally put to rest those Claims and the matters arising from or related to such Claims; and

WHEREAS, this Settlement Agreement, seeking Court approval of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed to be an admission by any of the Former Employee Parties of any wrongdoing or liability; and

WHEREAS, except as otherwise provided in this Settlement Agreement, this Settlement Agreement shall not be admissible in any judicial, administrative, or other proceeding or cause of action as an admission of liability or for any purpose other than to enforce the terms of this Settlement Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED, ACKNOWLEDGED AND AGREED, by and among the undersigned, including the Distribution Trustee (in his representative capacity) and the Former Employees, that their respective Claims are settled and resolved pursuant to the terms and conditions set forth in this Settlement Agreement, subject to the Court's approval and such approval becoming Final.

## I.    **DEFINITIONS**

### A.    **Definitions**

As used in this Settlement Agreement, the following terms have the meanings set forth herein[1]:

1.    "Affiliate" or "Affiliated" means such persons or entities as are defined in 17 C.F.R. Part 210.1-02(b).

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan.

4

2.    "Approval Hearing" means the hearing at which the Court will be asked to approve the Settlement Agreement and grant the Settlement Motion.

3.    "Bankruptcy Code" has the meaning set forth in the Recitals.

4.    "Case" means the jointly administered chapter 11 cases of Corinthian Colleges, Inc. and its twenty-four domestic direct and indirect subsidiaries in the United States Bankruptcy Court for the District of Delaware and captioned *In re Corinthian Colleges, Inc., et. al.*, Case No. 15-10952 (KJC).

5.    "Claim" or "Claims" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees, and losses whatsoever, whether in law, in admiralty, or in equity, and whether based on any U.S. federal or state or foreign statutory or common-law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future, including Unknown Claims; *provided, however*, that the term "Claim" or 'Claims" does not include any claims to enforce the terms of the Settlement.

6.    "Complaint" has the meaning set forth in the Recitals.

7.    "Confirmation Order" has the meaning set forth in the Recitals.

8.    "Corinthian" means Corinthian Colleges, Inc.; *provided, however,* that, for purposes of descriptions of Corinthian's or the Debtors' pre-bankruptcy conduct and operations, the term "Corinthian" also includes Corinthian's Affiliates and the Debtors.

9.      "Court" has the meaning set forth in the Recitals.

10.     "Covered Fees or Costs" means any fees or costs incurred or to be incurred by any Former Employee that are covered under the Policy.

11.     "Debtors" has the meaning set forth in the Recitals.

12.     "Disclosure Order" means the Order Granting Motion Of Current And Former Directors Of Corinthian Colleges, Inc., For Relief From The Automatic Stay, To The Extent Applicable, To Allow Payment Of Defense Costs And Other Loss Under Directors And Officers Liability Insurance Policies entered by the Court on June 8, 2015 in the Case [Docket No. 287].

13.     "Distribution Trust" means the trust established under the Plan and the Distribution Trust Agreement.

14.     "Distribution Trust Agreement" has the meaning set forth in the Recitals.

15.     "Distribution Trustee" has the meaning set forth in the Recitals.

16.     "Distribution Trustee's Claims Against Former Employees" means each and every Claim (i) that was asserted in the Complaint; (ii) that could have been asserted or could be asserted in connection with the facts and circumstances alleged in the Complaint, whether arising under any federal, state, or other statutory or common-law rule, in any court, tribunal, agency, or other forum; (iii) that relates directly or indirectly to the Former Employees' (or any individual Former Employee's) alleged acts, omissions, inaction, statements, or representations as Former Employees of Corinthian; or *(iv)* that relates to any other facts and circumstances relating to Corinthian and/or its Affiliates, including, without limitation, matters relating to:

6

a.  Corinthian's dealings with, or representations or submissions to, the United States Department of Education (the "ED") or any accreditor or licensor of Corinthian's schools;

b.  The certification or provisional certification of, or denial of certification to, Corinthian or any of its schools or campuses;

c.  Corinthian's annual and quarterly financial statements and reports;

d.  Corinthian's requests for, use of, or other actions relating to funds available under Title IV of the Higher Education Act;

e.  Corinthian's educational programs, including their effectiveness or alleged ineffectiveness;

f.  Corinthian's marketing practices;

g.  Corinthian's student-recruiting and student-enrollment processes and practices, or any payments allegedly made or promised in connection with student recruitment or enrollment;

h.  Financial aid for Corinthian students, Corinthian's military connections, transferability of Corinthian credits to other institutions, student loans, loan-default rates, job placement, and Corinthian students' or graduates' potential future earnings;

i.  The compensation, training, and evaluation of Corinthian's admissions personnel;

j.  Corinthian's degree-completion metrics and student recruitment;

k.  Corinthian's job-placement metrics (including job placements and salaries);

7

l.  Any payments allegedly made in connection with the placement of Corinthian's students or graduates, including any payments to actual or potential employers;

m.  Conduct, activities, or other matters in connection with loans offered to or taken by Corinthian's students, including defaults on those loans;

n.  Corinthian's records and recordkeeping practices, including records of attendance, grades, or matriculation, student job-placement documents, student employment-verification forms (signed or unsigned), and student self-employment documentation, and any error rates in Corinthian's records;

o.  Corinthian's compliance with ED financial and capital requirements (including composite score calculations), educational standards (including gainful-employment rules), and relevant operating metrics;

p.  External and internal audits of (or alleged failures to audit) Corinthian's operations and practices;

q.  The sale or closure of Corinthian's campuses or operations, including any efforts (or allegedly inadequate efforts) made to sell or teach out campuses or other assets (including portfolios of student loans), and prices obtained for sales of campuses or other assets;

8

r.  Salaries, bonuses, fees, and other compensation paid to, and any purchases or sales of Corinthian stock by, Corinthian's directors, officers, and employees;

s.  The activities of, or alleged failures to act by, Corinthian's Board of Directors and/or any committees of the Board, including the Audit Committee, the Compliance Committee, and the Transactions/Operations Committee;

t.  Corinthian's internal controls, policies, practices, and procedures;

u.  Complaints filed or made by Corinthian's students or employees, and Corinthian's responses to those complaints;

v.  Private-plaintiff or federal, state, or local governmental subpoenas or investigations of, or lawsuits or other proceedings against, Corinthian or any of its schools, including Corinthian's responses to those subpoenas, investigations, or proceedings and any fees, expenses, judgments, settlements, or other payments incurred in connection with those matters;

w.  Corinthian's production of documents and information to ED; and

x.  The Former Employee Parties' reports or statements about, disclosures or characterizations of, advertising about, or alleged omissions concerning any or all of the above matters.

The term "Distribution Trustee's Claims Against Former Employees" also includes any Claim relating to the proposed litigation, settlement, or dissemination of notice concerning the Distribution Trustee's Claims Against Former Employees; *provided, however,*

9

that the term "Distribution Trustee's Claims Against Former Employees" does not include any claims to enforce the terms of the Settlement.

17.    "Distribution Trustee's Counsel" means the law firm of Robins Kaplan LLP.

18.    "Distribution Trust Party" means each and every one of, and "Distribution Trust Parties" means all of, (i) the Distribution Trustee, on behalf of the Distribution Trust, (ii) the members of the Oversight Board, (iii) any and all of their principals, heirs, trustees, administrators, successors, representatives, agents, assigns, attorneys (including Distribution Trustee's Counsel and any counsel to a member of the Oversight Board), advisors, fiduciaries, consultants, representatives, accountants, insurers, and reinsurers, solely in their capacity as such, and (iv) all other persons and entities for whom or which the Distribution Trustee is able to grant a release to the Former Employee Parties.

19.    "Effective Date" means the date on which each of the following conditions precedent has been satisfied:  (i) the Court shall have entered the Settlement Order on the docket, and (ii) the Settlement Order shall have become Final.

20.    "Execution Date" means the date on which this Settlement Agreement has been executed by the Settling Parties.

21.    "Final" means when the Court shall have entered the Settlement Order and (i) the Settlement Order shall have become no longer subject to a motion to alter or amend under Rule 9023 of the Federal Rules of Bankruptcy Procedure, or if such a motion was made, it shall have been denied; (ii) the Settlement Order shall have become final and no longer subject to appeal (including, without limitation, any appeal from the denial of a motion to alter or amend),

10

or, if an appeal is taken from the Settlement Order, on the date on which all appeals therefrom –

including petitions for rehearing or reargument, petitions for rehearing en banc, petitions for

certiorari or any other form of review, and any related appeals or petitions, including as to any

appeal bond – have been finally disposed of, such that the time to appeal therefrom (including

any potential extension of time) has expired, in a manner resulting in an affirmance of the

Settlement Order; and (iii) no request for a stay of the Settlement Order is pending before any

court.

22.    "Final Settlement Order" means when the Settlement Order has become

Final.

23.    "Former Employee Party" means each and every one of, and "Former

Employee Parties" means all of, the Former Employees and any and all of their principals, heirs,

trustees, administrators, successors, representatives, agents, assigns, attorneys (including Former

Employees' Counsel), advisors, fiduciaries, consultants, representatives, accountants, insurers,

and reinsurers, solely in their capacity as such.

24.    "Former Employees" means Jack D. Massimino, Kenneth S. Ord,

Robert D. Bosic III, Beth A. Wilson, Robert C. Owen, Stan A. Mortensen, Nicole Carnagey,

Christian Dieckmann, Michelle Reed Zagorski, Donald King, Jr., and Robert Kenyon.

25.    "Former Employees' Claims" means each and every Claim and

counterclaim that could have been or could be asserted in any proceeding by any of the Former

Employee Parties against any or all of the Distribution Trust Parties that arises out of or relates in

any way to the potential institution, prosecution, or settlement of the Claims alleged in the

11

Complaint, *provided, however,* that the term "Former Employees' Claims" does not include any claim to enforce the terms of the Settlement.

26.    "Former Employees' Counsel" means, collectively, the law firms of Bienert, Miller & Katzman LLP; Crowell & Moring LLP; Gibson, Dunn & Crutcher LLP; Hueston Hennigan LLP; Kirkland & Ellis LLP; Munger, Tolles & Olson LLP; O'Melveny & Myers LLP; and Orrick, Herrington & Sutcliffe LLP.

27.    "Former Employees' Insurer(s)" means Federal Insurance Company, RSUI Indemnity Company and Illinois Union Insurance Company.

28.    "Initial Settlement Payment" means the payment of twelve million two hundred and fifty thousand United States dollars ($12,250,000) to the Distribution Trustee.

29.    "Karam Action" means the action *Karam v. Corinthian Colleges, Inc.*, No. 10-cv-06523 (C.D. Cal. 2010), commenced by a putative class of Corinthian shareholders that is or was on appeal to the Ninth Circuit.

30.    "Mediation" has the meaning set forth in the Recitals.

31.    "Outside Directors" means Paul R. St. Pierre, Terry O. Hartshorn, Hank Adler, Robert Lee, Alice T. Kane, John M. Dionisio, Linda Arey Skladany, Timothy J. Sullivan, Sharon P. Robinson, and Marc H. Morial.

32.    "Outside Directors' Counsel" means the law firm of Proskauer Rose LLP.

33.    "Oversight Board" means the Oversight Board of the Distribution Trust, as defined therein.

34.    "Plan" has the meaning set forth in the Recitals.

35.    "Policy" means directors and officers' insurance liability policies for the policy period from March 31, 2010 through March 31, 2011 (as applicable).

12

36.   "Releases" means the release provisions set out in Section IV.A below.

37.   "Reserve" means the funds available under the Policy after payment of the Initial Settlement Payment, to be reserved and retained by the Former Employees' Insurer(s) (as applicable) for payment of the Reserve Deductions, the Reserve Priority Settlement Payment, and the Reserve Subordinated Settlement Payment.

38.   "Reserve Deduction(s)" means the payment by the Former Employees' Insurer(s) (as applicable) from the Reserve of (i) any Covered Fees or Costs incurred by any Former Employee in connection with or arising out of the SEC Investigation, including in connection with the SEC Resolution, (ii) any fees and costs incurred by Former Employees' Counsel in connection with this Settlement, and (iii) to the extent not already paid, any fees and costs incurred by Former Employees' Counsel in connection with or arising out of, and any settlement payment made in resolution of, the Karam Action.

39.   "Reserve Deduction Final Payment Date" means the last date on which all Reserve Deductions have been made by the Former Employees' Insurer(s) (as applicable); *provided, however,* that in no event shall the Reserve Deduction Final Payment Date be more than one hundred twenty (120) days after the later of (i) the SEC Resolution and (ii) any settlement payment made in the Karam Action.

40.   "Reserve Priority Settlement Payment" means the payment by the Former Employees' Insurer(s) (as applicable) from the Remaining Reserve Funds to the Distribution Trustee of four million United States dollars ($4,000,000), to the extent there remain such funds available to make such payment.

13

41.    "Reserve Subordinated Settlement Payment" means the payment from the Remaining Reserve Funds to the Distribution Trustee by the Former Employees' Insurer(s) (as applicable) in an amount equal to 66.666% of whatever is left in the Remaining Reserve Funds after payment of the Reserve Priority Settlement Payment.

42.    "Remaining Reserve Funds" means the funds that remain in the Reserve after the Initial Settlement Payment and all Reserve Deductions have been paid as set forth herein, less the total amount of all invoices for Covered Fees or Costs that are submitted for payment by the Former Employees or Former Employees' Counsel to the Former Employees' Insurer(s) (as applicable) within 30 days of the date of the SEC Resolution.  Any such invoiced amounts fully and finally resolved as not subject to reimbursement under the Policies shall revert to, and be included within, the Remaining Reserve Funds.  Once any such amounts have been reverted to, and included within, the Remaining Reserve Funds, the portion of such amounts to which the Distribution Trustee is entitled shall be paid to the Distribution Trustee within ten (10) business days after such reversion and inclusion to the extent that the Reserve Priority Settlement Payment and the Reserve Subordinated Payment have already been paid to the Distribution Trustee at the time of such reversion and inclusion.

43.    "SEC" means the United States Securities and Exchange Commission.

44.    "SEC Investigation" means the SEC's investigation conducted pursuant to the formal order of investigation captioned In the Matter of Corinthian Colleges, Inc., FW-3761, and any supplement, lawsuit, administrative proceeding, or other SEC action related thereto.

45.    "SEC Resolution" means final resolution of the SEC Investigation as to all Wells Notice Recipients.  A final resolution as to a Wells Notice Recipient occurs either by *(i)*

14

the Wells Notice Recipient receiving a termination notice from the SEC or *(ii)* entry of a final

judgment or order that completely resolves any lawsuit or proceeding arising from the SEC

Investigation as to the applicable Wells Notice Recipient after all appeals, if any, are exhausted.

46.    "Settlement" means the settlement contemplated by this Settlement

Agreement.

47.    "Settlement Agreement" means this Stipulation of Settlement and any

accompanying exhibits, including any subsequent amendments thereto and any exhibits to such

amendments.

48.    "Settlement Amount" means the aggregate sum of *(i)* the Initial Settlement

Payment, *(ii)* the Reserve Priority Settlement Payment, and *(iii)* the Reserve Subordinated

Settlement Payment.

49.    "Settlement Motion" means the motion the Distribution Trustee shall file

requesting that the Court approve this Settlement Agreement and enter the Settlement Order

pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

50.    "Settlement Order" means the Order entered by the Court approving the

Settlement Agreement and granting the Settlement Motion, as contemplated in Section V of this

Settlement Agreement, which Order shall be substantially in the form annexed hereto as

Exhibit A.

51.    "Settling Parties" means the Distribution Trustee and the Former

Employees.

52.    "Unknown Claims" means any and all of the Distribution Trustee's

Claims Against Former Employees that the Distribution Trustee does not know or suspect to

15

exist in his favor at the time of the release of the Former Employee Parties, and any and all of the

Former Employees' Claims that any Former Employee does not know or suspect to exist in his

or her favor at the time of the release of the Distribution Trust Parties which, if known by the

Distribution Trustee or any Former Employee, might have affected his or her decision

concerning the Settlement.

53.     "Wells Notice Recipients" means (*i*) the four Former Employees who

received Wells notices from the SEC as a result of the SEC Investigation, and (*ii*) any other

Former Employee who receives a Wells notice from the SEC or is named a defendant or

respondent in a lawsuit, administrative proceeding or other action brought by the SEC as a result

of the SEC Investigation prior to the Reserve Deduction Final Payment Date.

**B.    Capitalized Terms**

1.     Capitalized terms used in this Settlement Agreement shall have the

meanings ascribed to them in Subsection I.A and in the Recitals, above.  Capitalized terms not

otherwise defined in Subsection I.A and in the Recitals shall have the meanings ascribed to them

in the Plan.

## II.    TERMS AND CONDITIONS OF THE SETTLEMENT

**A.    Payment of Settlement Amount**

1.     The Former Employees shall cause the Former Employees' Insurers to pay

the Initial Settlement Payment to the Distribution Trustee within ten (10) business days after the

Effective Date. If the Initial Settlement Payment is not paid within that period, Distribution

Trustee's Counsel shall notify Former Employees' Counsel and the Former Employees' Insurers

that the payment has not occurred, and the Former Employees' Insurers shall have two (2)

business days after notice is provided to comply with the obligation to pay the Initial Settlement

Payment. If payment has still not occurred after the additional period of two (2) business days after notice is provided, the Distribution Trustee may terminate this Settlement Agreement, effective immediately, through notice to Former Employees' Counsel, and may file a complaint for Claims against the Former Employees.

2.      The Former Employees shall cause the Former Employees' Insurers to pay an amount equal to the Reserve Priority Settlement Payment to the Distribution Trustee within (10) business days after the Reserve Deduction Final Payment Date.  If the Reserve Priority Settlement Payment is not paid within that period, the Distribution Trustee shall notify Former Employees' Counsel and the Former Employees' Insurers that the payment has not occurred.

3.      The Former Employees shall cause the Former Employees' Insurers to pay an amount equal to the Reserve Subordinated Settlement Payment within (10) business days after the Reserve Deduction Final Payment Date.  If the Reserve Subordinated Settlement Payment is not paid within that period, the Distribution Trustee shall notify Former Employees' Counsel and the Former Employees' Insurers that the payment has not occurred.

4.      Payment of the Settlement Amount shall be made by the Former Employees' Insurers in cash, by check or wire transfer to an account designated by the Distribution Trustee. Simultaneously with the execution of this Settlement Agreement, the Distribution Trustee shall provide to the Former Employees' Insurers and Former Employees' Counsel a W-9 Form and payment instructions including identity and phone number of a contact person and address where a check may be sent or wiring instructions to an account where payments of the Settlement Amount may be sent.

5.     The Former Employees shall take the necessary steps to cause the Former Employees' Insurers to make the payments required herein by *(i)* entering into an agreement with the Former Employees' Insurers that requires the Former Employees' Insurers to pay the Settlement Amount pursuant to the terms of this Settlement Agreement (the "Former Employees' Insurers Agreement"), and *(ii)* taking reasonable steps to enforce the terms of the Former Employees' Insurers Agreement in the event the Former Employees' Insurers fail to pay the Settlement Amount, or any portion thereof, pursuant to the terms of this Settlement Agreement.

6.     The Settlement Amount shall be "non-recapture," meaning that no portion of such amount (whether already paid or to be paid) shall revert to the Former Employees, the Former Employees' Insurer(s) or any other payor after the Settlement Order becomes Final pursuant to this Settlement Agreement, except to the extent that Reserve Deductions are permitted herein.

**B.     Privilege and Documents**

1.     The Settling Parties agree to reserve their respective positions regarding any privileges or protections asserted by the Former Employees with respect to documents in the custody or control of the Distribution Trustee.

2.     The cost and expenses charged by a third party vendor for the Distribution Trustee's privilege review relating to the documents subpoenaed by the SEC in the SEC Investigation shall be capped at fifty thousand United States dollars ($50,000) which shall be paid from the Policy. The Distribution Trustee shall approve raising the cap for the third party vendor if it is reasonably necessary to do so in order to substantially complete the privilege review and comply with any SEC subpoena or demand in the SEC Investigation. The Distribution Trustee's legal fees in connection with the privilege review, other than the third

18

party vendor's fees (which will be paid out of insurance funds), will be paid by the Distribution Trustee out of non-insurance funds, and the legal fees of the Former Employees incurred in connection with the documents subpoenaed or otherwise requested by the SEC in the SEC Investigation shall continue to be paid by the Former Employees' Insurer(s) (as applicable).

      3.      Notwithstanding anything in this Settlement Agreement, the Former Employee Parties and the Distribution Trust Parties, and each of them, and their agents, attorneys and representatives are obligated to maintain and preserve the documents within their possession consistent with their document preservation obligations. Additionally, should any of the Former Employee Parties or the Distribution Trust Parties receive a subpoena or court order seeking such documents, the party upon which the subpoena or court order is served is obligated to give notice within five (5) business days to the other Settling Parties of such subpoena or court order.

      4.      Upon payment of the Initial Settlement Payment, the Distribution Trust Parties will withdraw any outstanding demands for documents from the Former Employee Parties and Former Employees' Counsel.  The Distribution Trustee Parties hereby represent that they have no present intention of issuing a further such demand if the Initial Settlement Payment is paid.

### C.    Additional Conditions

      1.      On a quarterly basis, the Former Employees shall, in compliance with the Disclosure Order, provide the Distribution Trustee with the information required by the Disclosure Order. Information provided quarterly by the Former Employees shall, on a going-forward basis only, provide the Distribution Trustee (i) a total aggregate dollar amount reflecting a range of estimated defense costs and other losses (including attorneys' fees, costs and expenses) that may reasonably be incurred by the Former Employees and paid by the Former

Employees' Insurers under the Policies for the next quarter, and (ii) a break down of estimated attorneys' fees, costs and expenses, respectively, that may reasonably be incurred by the Former Employees and paid by the Former Employees' Insurers under the Policies for the next quarter. These estimates shall not be binding or relied upon by any Party, and shall not in any way alter or affect the rights or obligations of any Party hereto. The Distribution Trustee agrees to maintain the estimate in the strictest confidence and not share it with any other person or entity without the written consent of the Former Employees; *provided*, *however*, that the Distribution Trustee may share the estimate with his counsel and the members of the Oversight Board and their counsel and as required by law.

2.      Within five (5) business days after the occurrences of (i) the Reserve Deduction Final Payment Date and (ii) the SEC Resolution, the Former Employees and the Wells Notice Recipients (as applicable) shall provide notice of each such occurrence to the Distribution Trustee under Section VII.O.2 below.

3.      With respect to any Former Employee who has not been a recipient of a Wells notice from the SEC but who receives a Wells notice from the SEC or is named as a defendant or respondent in a lawsuit, administrative proceeding or other action brought by the SEC as a result of the Investigation, within two (2) business days after receipt of such Wells Notice or notice of being a defendant or respondent in such lawsuit or proceeding, Former Employees' Counsel shall provide notice thereof, including the name(s) of the Former Employees, to the Distribution Trustee. The Distribution Trustee agrees to maintain the information included in such notice in the strictest confidence and not to share the information with any other person or entity without the written consent of the recipients of the Wells notice;

20

*provided, however*, that the Distribution Trustee may share the information with his counsel and the members of the Oversight Board and their counsel and as required by law.

4.      Within ten (10) business days after the SEC Resolution, the Wells Notice Recipients agree to ask the SEC to confirm that all outstanding subpoenas will be withdrawn.

## III.    PROCEDURE FOR SEEKING APPROVAL OF SETTLEMENT

A.      Within five (5) business days after the Execution Date, the Distribution Trustee shall file the Settlement Motion and request that the Court schedule the Approval Hearing.

B.      The Distribution Trustee shall timely serve notice of the Settlement Motion on *(i)* the Office of the United States Trustee for the District of Delaware, *(ii)* parties entitled to notice pursuant to Federal Bankruptcy Procedure Rule 2002(i) and Local Bankruptcy Rule 2002-1(b), *(iii)* Outside Directors' Counsel; and *(iv)* the Former Employees' Insurer(s) and otherwise comply with all Bankruptcy Court requirements for approval of the Settlement Motion, as applicable.

C.      Upon filing the Settlement Motion, Distribution Trustee's Counsel shall serve the Settlement Motion, the Settlement Agreement, and all appendices and exhibits thereto by electronic mail or overnight courier on Outside Directors' Counsel.

## IV.    RELEASE AND WAIVER

### A.      Release and Waiver

1.      Subject to Subsection IV.A.4 below, effective upon payment in full of the Initial Settlement Payment as described in Section II.A.1, automatically and without further action required, the Distribution Trustee, on behalf of the Distribution Trust Parties, for valid and sufficient consideration, receipt and adequacy of which are hereby acknowledged, shall be

21

deemed to have, and by operation of law and of the Final Settlement Order shall have, fully, finally, and forever released, relinquished, settled, and discharged:

        a.     all of the Distribution Trustee's Claims Against Former Employees and against each and every one of the Former Employee Parties;

        b.     all Claims, damages, and liabilities as to each and every one of the Former Employee Parties to the extent that any such Claims, damages, or liabilities relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to, the potential prosecution, defense, or settlement of the Claims in the Complaint; and

        c.     all Claims against any of the Former Employee Parties for attorneys' fees, costs, or disbursements incurred by Distribution Trustee's Counsel or any other counsel representing the Distribution Trustee in connection with or related in any manner to the Complaint or the settlement of the Claims in the Complaint, except to the extent otherwise specified in this Settlement Agreement.

        2.     Subject to Subsection IV.A.4 below, effective upon payment in full of the Initial Settlement Payment as described in Section II.A.1, automatically and without further action required, each and all Former Employee Parties, for valid and sufficient consideration, the receipt and adequacy of which are hereby acknowledged, shall be deemed to have, and by operation of law and of the Final Settlement Order shall have, fully, finally, and forever released, relinquished, settled, and discharged the Distribution Trust Parties from any and all Former Employees' Claims, including all Claims against any of the Distribution Trust Parties for attorneys' fees, costs or disbursements incurred by Former Employees' Counsel or any other

22

counsel representing the Former Employees in connection with or related in any manner to the Complaint or the settlement of the Claims set forth in the Complaint, except to the extent otherwise specified in this Settlement Agreement.

      3.      As to any and all of the Claims released in Subsection IV.A.1 and IV.A.2 above, including Unknown Claims, the Distribution Trust Parties and the Former Employee Parties stipulate and agree that, upon the indefeasible payment in full of the Initial Settlement Payment, the Distribution Trust Parties and the Former Employee Parties shall expressly waive, and each of the Distribution Trust Parties and Former Employee Parties shall be deemed to have waived, and by operation of the Final Settlement Order shall have expressly waived, any and all provisions, rights, and benefits conferred by Cal. Civ. Code § 1542 and any law of any state or territory of the United States or of any other country, or any principle of common law, that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR**

The Distribution Trustee and the Former Employees acknowledge that the inclusion of "Unknown Claims" in the definition of Claims, Distribution Trustee's Claims Against Former Employees, and Former Employees' Claims was separately bargained for and was a key element of the Settlement.

      4.      Notwithstanding Subsections IV.A.1 and IV.A.2 above, nothing in this Settlement Agreement or the Final Settlement Order shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement or the Final Settlement Order.

5.    The releases and waivers contained in this Section IV were separately bargained for and are essential elements of this Settlement Agreement.

6.    Except as expressly provided in Subsection IV.A.1, nothing in this Section IV is intended to release or waive, or shall be construed as releasing or waiving, any Claim or Cause of Action (as defined in the Plan) that the Distribution Trust has, had, or may in the future have against any other third party who is not a party to this Settlement Agreement. However, notwithstanding this provision, the Distribution Trust will not assert any Claims or Causes of Action against any third party that have the effect of drawing upon or depleting the Policy or insurance proceeds designated herein to fund the Reserve, which funds have been set aside exclusively for payments made for Reserve Deductions and any Reserve Priority Settlement Payment and Reserve Subordinated Settlement Payment.

**B.    Settlement Order**

1.    The Settling Parties will seek and obtain from the Court a Settlement Order as further described in Section V below.

## V.    APPROVAL OF SETTLEMENT/INJUNCTION

A.    If the Court approves the Settlement contemplated by this Settlement Agreement, and grants the Settlement Motion, the Settling Parties shall jointly request that the Court enter a Settlement Order substantially in the form annexed hereto as Exhibit A. The Settlement Order shall include, among other provisions, a permanent injunction providing that:

1.    The Distribution Trustee Parties are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention if the person or entity filing such motion or

24

75812765.2

complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Former Employee Parties based on or relating in any way to the Distribution Trustee's Claims Against Former Employees, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint;

      2.    All persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit or other proceeding on behalf of, for the benefit of, or derivatively for any Distribution Trust Party as to the Former Employee Parties, if such other lawsuit is based on or related in any way to the Distribution Trustee's Claims Against Former Employees, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint; and

      3.    All Former Employees, and any other person purporting to act on behalf of, for the benefit of, or derivatively for any of such persons, are permanently enjoined from commencing, prosecuting, intervening in, or participating in prosecuting any Claims or causes of action against the Distribution Trust Parties relating to the Former Employees' Claims.

      4.    Nothing in this Section V.A. or in the proposed Settlement Order shall preclude any party hereto from enforcing the terms of the Settlement or the Settlement Order.

      B.    Notwithstanding anything else in this Settlement Agreement or the Final Settlement Order, nothing herein shall release, interfere with, limit, or bar the assertion by any Former Employee Party of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that potentially provides coverage respecting the conduct at issue in the Complaint or for any other Distribution Trustee's Claim Against Former Employees.

25

## VI.    <u>MODIFICATION OR TERMINATION OF SETTLEMENT AGREEMENT</u>

A.    The terms and provisions of this Settlement Agreement may not be altered or modified except by a written instrument executed by the Settling Parties.  Additionally, after entry of the Final Settlement Order, Distribution Trustee's Counsel (on behalf of the Distribution Trustee) and Former Employees' Counsel (on behalf of the Former Employees) may by written agreement effect any amendments, modifications, or expansions of this Settlement Agreement and its implementing documents (including all exhibits to this Settlement Agreement) without notice to or approval by the Court if such changes are not materially inconsistent with the Court's Final Settlement Order.

B.    Subject to Section VII below, if the Court does not enter the Settlement Order in the form substantially similar to the form annexed hereto as Exhibit A, Former Employees' Counsel (on behalf of the Former Employees) and/or Distribution Trustee's Counsel (on behalf of the Distribution Trustee) shall have the right to terminate this Settlement Agreement by providing notice through counsel listed in Section VII.O., within ten (10) days after entry of the Court's ruling.  If the Settlement Order is appealed and subsequently reversed, modified, or vacated, such that it no longer is substantially similar to the form annexed hereto as Exhibit A, and the reversal, modification or vacatur is not subject to further appeal (including a petition for certiorari) or the time to take such an appeal has expired and none was taken, Former Employees' Counsel (on behalf of the Former Employees) and/or Distribution Trustee's Counsel (on behalf of the Distribution Trustee) shall have the right to terminate this Settlement Agreement by providing notice through counsel listed in Section VII.O., below, within ten (10) days after entry of the reversal, modification, or vacatur or expiration of the time to take an appeal, whichever is later.

26

**VII.**    **GENERAL MATTERS AND RESERVATIONS**

A.    If an option to terminate this Settlement Agreement arises under this Settlement Agreement, (i) neither the Former Employees nor the Distribution Trustee will be required for any reason or under any circumstance to exercise that option, and (ii) if the Former Employees or the Distribution Trustee exercise the option to terminate the Settlement, they shall exercise that option in good faith.

B.    If this Settlement Agreement is not approved or this Settlement Agreement is otherwise terminated pursuant to its terms, or if the Releases contemplated in Section IV.A. do not become effective, or if the Settlement otherwise does not become Final by operation of law, then:

1.    This Settlement Agreement shall be null and void and shall have no force or effect, and no party to this Settlement Agreement shall be bound by any of its terms, except for the terms set out in this Section VII;

2.    This Settlement Agreement, all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of the Former Employees and the Distribution Trustee, all of whom shall be restored to their respective positions existing as of April 24, 2017 (including as to statutes of limitations and statutes of repose), although nothing herein shall nullify, void, or limit in any way any tolling stipulation or agreement entered into by the parties to this Settlement Agreement, including the tolling stipulation entered into as of April 24, 2017, the second tolling stipulation entered into as of June 21, 2017, and the third tolling stipulation entered into as of August 11, 2017, described in Section VII.D, below;

27

3.     The Former Employee Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all Claims that have been or might later be asserted against them;

4.     The Distribution Trust Parties expressly and affirmatively reserve all motions as to, and arguments in support of, all Claims that have been or might later be asserted against the Former Employees; and

5.     Neither this Settlement Agreement nor the fact of its having been made shall be admissible or entered into evidence for any purpose whatsoever, with the exception of Sections VI and VII.

C.     The Settling Parties, individually and collectively: *(i)* acknowledge that it is their intent to consummate this Settlement Agreement; and *(ii)* agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

D.     The Settling Parties entered into a tolling stipulation with respect to the Claims that are the subject of this Settlement Agreement as of April 24, 2017, pursuant to which the Limitation Deadline (defined therein) was extended through and including June 30, 2017. The tolling stipulation is effective by its terms and was submitted to the Court for approval. The Court approved the tolling stipulation by Order entered May 3, 2017.

The Settling Parties entered into a second tolling stipulation dated June 21, 2017, to further extend the Limitation Deadline until August 31, 2017. The second tolling stipulation is effective by its terms and was submitted to the Court for approval. The Court approved the second tolling

28

stipulation by Order entered June 22, 2017.  The Settling Parties entered into a third tolling stipulation dated August 11, 2017, to further extend the Limitations Deadline until September 15, 2017.  The third tolling stipulation is effective by its terms and was submitted to the Court for approval. The Court approved the third tolling stipulation by Order entered August 15, 2017. The Settling Parties shall further extend the Limitation Deadline pursuant to a fourth tolling stipulation substantially in the form annexed hereto as Exhibit B. The fourth tolling stipulation shall be fully executed on or before the date on which the Settlement Motion is filed.  The fourth tolling stipulation is effective by its terms but shall be submitted to the Court for approval. Such approval shall be sought substantially in the form annexed hereto as Exhibit C.

      E.      Except as otherwise specified herein, including in the definition of Reserve Deduction, each of the Settling Parties shall bear their own costs, attorneys' fees, and all other expenses (without prejudice to any right to claim insurance coverage) in connection with or relating to the negotiation, preparation, execution, and approval of this Settlement Agreement and the granting of the Settlement Motion by the Court, including responding to any objection or opposition filed to the Settlement or the Settlement Motion, or subsequent proceedings or litigation, except as otherwise expressly set forth herein.   For the avoidance of doubt, nothing in this paragraph shall preclude the Former Employees from obtaining funding from their insurers for their costs, attorneys' fees, and all other expenses in connection with or relating to the negotiation, preparation, execution, and approval of this Settlement Agreement and the granting of the Settlement Motion by the Court.

      F.      Except as provided in this Section VII, or as may otherwise be required by law:

1.     The Settling Parties and their counsel agree to (1) keep all negotiations related to this Settlement Agreement confidential; and (2) keep the contents of this Settlement Agreement confidential until the Settlement Motion has been filed with the Court; *provided, however*, that, subject to subsection VII.F.2, this subsection VII.F.1 shall not prevent the disclosure of such information (*i*) by the Settling Parties or their counsel to any person or entity (such as clients, courts, regulatory entities, insurers, reinsurers, and/or administrators) to whom disclosure must be made to effectuate the terms and conditions of this Settlement Agreement (*ii*) to regulators, governmental entities or bodies, stock exchanges, attorneys, accountants, auditors, financial institutions, lenders, insurers, and reinsurers only to the extent the Settling Parties reasonably believe disclosure to be required, or (*iii*) as the Former Employees, in their sole discretion, may otherwise determine.

2.     Any such disclosures or statements, including any about the Settlement Agreement or the Distribution Trustee's Claims Against Former Employees, shall be balanced, fair, and accurate and shall, to the extent possible, not use the Former Employees' names.

3.     The Settling Parties will not issue any press releases or other media statements concerning the proposed Settlement.

G.     Any exhibits attached to this Settlement Agreement are incorporated by reference as though fully set forth herein.

H.     The Settling Parties acknowledge that the recitals to this Settlement Agreement are true and correct and are hereby incorporated into the body of this Settlement Agreement by reference.

I.      The Settling Parties agree not to assert in any forum that any conduct of the Distribution Trustee and/or the Former Employees, or any of them, in connection with the Complaint, the settlement of the Claims in the Complaint, or any of the Distribution Trustee's Claims Against Former Employees, or the Former Employees' Claims was in bad faith or was unreasonable.  No Settling Party shall assert any Claim that any other Settling Party violated Rule 11 of the Federal Rules of Civil Procedure, Rule 9011 of the Federal Rules of Bankruptcy Procedure, or any state-law equivalent, relating to the prosecution, defense, or settlement of the Claims in the Complaint.

J.      The Settling Parties agree that the Settlement Amount and the other terms of the Settlement Agreement were negotiated at arm's length in good faith by the Settling Parties and reflect an agreement that was reached voluntarily, after consultation with experienced legal counsel.

K.      The Distribution Trustee, through his counsel, represents that he (*i*) has consulted with counsel about the Complaint, this Settlement Agreement, and the obligations of a Distribution Trustee and (*ii*) supports the terms embodied in this Settlement Agreement.

L.      This Settlement Agreement sets forth the entire agreement among the Settling Parties as to the Settlement.  The Distribution Trustee and the Former Employees expressly acknowledge that there are no agreements, arrangements, or understandings among or between them concerning the subject matter of this Settlement Agreement other than those expressed or referred to in this Settlement Agreement.  In entering into this Settlement Agreement, no Settling Party has relied upon any representation or warranty not set forth expressly herein.

M.      This Settlement Agreement shall be governed by and interpreted according to the laws of the State of California.

31

N.      Any action arising under or to enforce this Settlement Agreement shall be commenced and maintained only in the Court, which shall retain continuing and exclusive jurisdiction over all matters relating to the Settlement.  All Settling Parties and their counsel agree to submit to the Court's jurisdiction for purposes of any such proceedings.

O.      Whenever this Settlement Agreement requires or contemplates that a Settling Party shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturday, Sunday, and legal holidays) express-delivery service as follows and shall be deemed effective upon such e-mail transmission or delivery to the e-mail address, or street address, as the case may be, below:

1.      If to the Former Employees, then to:

*Counsel for Jack D. Massimino*

John W. Spiegel
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071-3426
Telephone: (213) 683-9152
John.Spiegel@mto.com

*Counsel for Robert Bosic*

John C. Hueston
Hueston Hennigan LLP
620 Newport Center Drive, Suite 1300
Newport Beach, CA  92660
Telephone: 949-226-6740
jhueston@hueston.com

*Counsel for Nicole Carnagey*

Thomas S. McConville
Orrick, Herrington & Sutcliffe LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone: (949) 852-7747
tmcconville@orrick.com

*Counsel for Christian Dieckmann, Kenneth Ord, Donald King, Jr., and Robert Kenyon*

Thomas H. Bienert, Jr.
Bienert, Miller & Katzman LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
tbienert@bmkattorneys.com

*Counsel for Stan Mortensen*

Mark Holscher
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 680-8190
mark.holscher@kirkland.com

*Counsel for Robert Owen*

Nicola T. Hanna
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: (949) 451-4270
nhanna@gibsondunn.com

75812765.2

*Counsel for Beth Wilson*

Janet I. Levine
Crowell & Moring LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5583
jlevine@crowell.com

*Counsel for Michelle Reed Zagorski*

Daniel H. Bookin
O'Melveny & Myers LLP
Two Embarcadero Center, 28th Floor
Francisco, California  94111-3823
Telephone: (415) 984-8786
dbookin@omm.com

2      If to the Distribution Trustee, then to:

Christopher P. Sullivan
Robins Kaplan LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:  (617) 267-2300
csullivan@RobinsKaplan.com

James P. Menton, Jr.
Robins Kaplan LLP
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
Telephone:  (310) 552-0130
jmenton@RobinsKaplan.com

75812765.2

3.  If to the Former Employees' Insurers, then to:

> Angelo G. Savino
> Cozen O'Connor
> 45 Broadway, 16th Floor
> New York, NY 10006
> asavino@cozen.com
>
> *Counsel for Federal Insurance Company and Illinois Union Indemnity Company*
>
> Kevin Mikulaninec
> Walker Wilcox Matousek LLP
> 1 N. Franklin Street
> Suite 3200
> Chicago, IL 60606
>
> *Counsel for RSUI Indemnity Company*

P.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Settlement Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in Court, a day on which weather or other conditions have made the office of the Clerk of Court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Subsection, "legal holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal or Delaware state holiday.

Q.    The Settling Parties reserve the right, subject to the Court's approval (if required), to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement.

R.    All Settling Parties agree that this Settlement Agreement was drafted by counsel for the Settling Parties at arm's length.  There shall not be any presumption for or against any Settling Party that drafted all or any portion of this Settlement Agreement.

S.    This Settlement Agreement, the offer of this Settlement Agreement, and compliance with this Settlement Agreement shall not constitute or be construed as an admission by any of the Former Employee Parties of any wrongdoing or liability.  This Settlement Agreement is to be construed solely as a reflection of the Settling Parties' desire to facilitate a resolution of the Claims in the Complaint and of the Distribution Trustee's Claims Against Former Employees.

T.    In no event shall this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in any action or any judicial, administrative, regulatory, or other proceeding, except a proceeding to enforce this Settlement .  Without limiting the foregoing, neither this Settlement Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including the Former Employees, or as a waiver by the Former Employees of any applicable defense.

U.    The Settling Parties, their successors and assigns, and their attorneys undertake to implement the terms of this Settlement Agreement in good faith and to use good faith in

36

resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

V.    The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

W.    This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or e-mail in PDF format shall be fully and legally binding on a Settling Party.

X.    All Former Employee Parties who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Effective Date to enforce the terms of the Release set forth in this Settlement Agreement.

By: _____    Date: ___8/29/17___

**Craig R. Jalbert**
Corinthian Distribution Trustee

Approved as to Form:

_____    Date: ___9/5/17___

Christopher P. Sullivan
James P. Menton, Jr.
Robins Kaplan LLP
Counsel to Corinthian Distribution Trustee

_____    Date: _____

**Jack D. Massimino**

37

75812765.2

resolving any disputes that might arise in the implementation of the terms of this Settlement Agreement.

V.    The Settling Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use all reasonable efforts to effect the prompt consummation of this Settlement Agreement and the proposed Settlement.

W.    This Settlement Agreement may be signed in counterparts, each of which shall constitute a duplicate original.  Execution by facsimile or e-mail in PDF format shall be fully and legally binding on a Settling Party.

X.    All Former Employee Parties who are not Settling Parties are intended third-party beneficiaries who are entitled as of the Effective Date to enforce the terms of the Release set forth in this Settlement Agreement.

By: _____          Date: _____
    **Craig R. Jalbert**
    Corinthian Distribution Trustee

Approved as to Form:


_____              Date: _____
Christopher P. Sullivan
James P. Menton, Jr.
Robins Kaplan LLP
Counsel to Corinthian Distribution Trustee


_____              Date: __8/30/2017__
Jack D. Massimino


37

75812765.2

**Approved as to Form:**

_____    Date: _____
John W. Spiegel
Munger, Tolles & Olson, LLP
Counsel to Jack D. Massimino


_____    Date: _8/30/17_____
Robert Owen


Approved as to Form:

_____    Date: _9/5/2017_____
Nicola Hanna
Gibson Dunn & Crutcher
Counsel to Robert Owen


_____    Date: _____
Robert D. Bosic


Approved as to Form:

_____    Date: _____
John Hueston
Hueston Hennigan LLP
Counsel to Robert D. Bosic


_____    Date: _____
Beth A. Wilson
Approved as to Form:


_____    Date: _____
Janet Levine
Crowell & Moring LLP
Counsel to Beth A. Wilson

38

Approved as to Form:

_John Spiegel_    Date: _8/31/17_
John W. Spiegel
Munger, Tolles & Olson, LLP
Counsel to Jack D. Massimino


_____    Date: _____
Robert Owen


Approved as to Form:


_____    Date: _____
Nicola Hanna
Gibson Dunn & Crutcher
Counsel to Robert Owen

_____    Date: _8.29.17_
Robert D. Bosic


Approved as to Form:

_____    Date: _8/3/17_
John Hueston
Hueston Hennigan LLP
Counsel to Robert D. Bosic


_____    Date: _____
Beth A. Wilson
Approved as to Form:


_____    Date: _____
Janet Levine
Crowell & Moring LLP
Counsel to Beth A. Wilson

38

75812765.2

Approved as to Form:

_____          Date: _____
John W. Spiegel
Munger, Tolles & Olson, LLP
Counsel to Jack D. Massimino


_____          Date: _____
**Robert Owen**

Approved as to Form:

_____          Date: _____
Nicola Hanna
Gibson Dunn & Crutcher
Counsel to Robert Owen


_____          Date: _____
**Robert D. Bosic**

Approved as to Form:

_____          Date: _____
John Hueston
Hueston Hennigan LLP
Counsel to Robert D. Bosic

_____          Date: _Aug 31, 2017_
**Beth A. Wilson**
Approved as to Form:

_____          Date: _____
Janet Levine
Crowell & Moring LLP
Counsel to Beth A. Wilson

38

75812765.2

Approved as to Form:

_____        Date: _____
John W. Spiegel
Munger, Tolles & Olson, LLP
Counsel to Jack D. Massimino


_____        Date: _____
Robert Owen


Approved as to Form:


_____        Date: _____
Nicola Hanna
Gibson Dunn & Crutcher
Counsel to Robert Owen


_____        Date: _____
Robert D. Bosic


Approved as to Form:


_____        Date: _____
John Hueston
Hueston Hennigan LLP
Counsel to Robert D. Bosic


_____        Date: _____
Beth A. Wilson
Approved as to Form:


_____        Date: Sept 1, 2017
Janet Levine
Crowell & Moring LLP
Counsel to Beth A. Wilson

38

75812765.2

_(signature)_                                    Date: 9/4/17

**Stan A. Mortensen**

Approved as to Form:

_____                          Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

                                                 Date: _____
**Michelle Reed Zagorski**

Approved as to Form:

_____                          Date: _____
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski

                                                 Date: _____
**Christian Dieckmann**

Approved as to Form:

_____                          Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____                          Date: _____
**Kenneth Ord**

39

788127v52

_____          Date: _____

**Stan A. Mortensen**


Approved as to Form:


*Mark Holscher/SH*                          Date: _8/31/17_____

Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen


_____          Date: _____

**Michelle Reed Zagorski**


Approved as to Form:


_____          Date: _____

Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski


_____          Date: _____

**Christian Dieckmann**


Approved as to Form:


_____          Date: _____

Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____          Date: _____

**Kenneth Ord**

_____        Date: _____
**Stan A. Mortensen**

Approved as to Form:


_____        Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

_____        Date: 9/3/17
Michelle Reed Zagorski

Approved as to Form:

_____        Date: 9/5/17
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski



_____        Date: _____
**Christian Dieckmann**

Approved as to Form:


_____        Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____        Date: _____
**Kenneth Ord**

39

75812765 2

Date: _____

**Stan A. Mortensen**

Approved as to Form:

_____   Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

_____   Date: _____
**Michelle Reed Zagorski**

Approved as to Form:

_____   Date: _____
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski

_____   Date:   8/28/17
**Christian Dieckmann**

Approved as to Form:

_____   Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____   Date: _____
**Kenneth Ord**

39

75812765.2

_____          Date: _____
**Stan A. Mortensen**

Approved as to Form:

_____          Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

_____          Date: _____
**Michelle Reed Zagorski**

Approved as to Form:

_____          Date: _____
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski

_____          Date: _____
**Christian Dieckmann**

Approved as to Form:

_____          Date: _9/5/17_____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____          Date: _____
**Kenneth Ord**

39

75812765.2

_____          Date: _____
**Stan A. Mortensen**

Approved as to Form:

_____          Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

_____          Date: _____
**Michelle Reed Zagorski**

Approved as to Form:

_____          Date: _____
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski

_____          Date: _____
**Christian Dieckmann**

Approved as to Form:

_____          Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____          Date: _____9/5/17_____
**Kenneth Ord**

75812765.2

Approved as to Form:                          Date: _____

Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Kenneth Ord

_____                     Date: 8-30 2017
Donald King, Jr.

Approved as to Form:

_____                     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____                     Date: _____
**Robert Kenyon**

Approved as to Form:

_____                     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann

_____                     Date: _____
**Nicole Carnagey**

Approved as to Form:

_____                     Date: _____
Thomas McConville
Orrick Herrington & Sutcliffe LLP
Counsel for Nicole Carnagey

40

Approved as to Form:

_____          Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Kenneth Ord


_____          Date: _____
**Donald King, Jr.**


Approved as to Form:


_____          Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to ~~Christian Dieckmann~~

_____          Date: 8/3i/17
**Robert Kenyon**


Approved as to Form:


_____          Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to ~~Christian Dieckmann~~
           Rob Kenyon

_____          Date: _____
**Nicole Carnagey**


Approved as to Form:


_____          Date: _____
Thomas McConville
Orrick Herrington & Sutcliffe LLP
Counsel for Nicole Carnagey

40

Approved as to Form:

_____          Date: ___9/5/17_____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Kenneth Ord


_____          Date: _____
Donald King, Jr.


Approved as to Form:

_____          Date: ___9/5/17_____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____          Date: _____
Robert Kenyon


Approved as to Form:

_____          Date: ___9/5/17_____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____          Date: _____
Nicole Carnagey


Approved as to Form:


_____          Date: _____
Thomas McConville
Orrick Herrington & Sutcliffe LLP
Counsel for Nicole Carnagey

40

75812765.2

Approved as to Form:

_____     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Kenneth Ord


_____     Date: _____
**Donald King, Jr.**


Approved as to Form:


_____     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____     Date: _____
**Robert Kenyon**


Approved as to Form:


_____     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckmann


_____     Date: 8/29/17
Nicole Carnagey


Approved as to Form:


_____     Date: 8/29/17
Thomas McConville
Orrick Herrington & Sutcliffe LLP
Counsel for Nicole Carnagey

40

75812765.2

**EXHIBIT A**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | Case No. 15-10952-KJC |
| Debtors. | Jointly Administered |
| | **Re: D.I. _____** |

## ORDER APPROVING SETTLEMENT BY AND AMONG DISTRIBUTION TRUST AND FORMER MANAGEMENT OF <u>CORINTHIAN COLLEGES, INC.</u>

Upon consideration of the motion (the "**Motion**") of the Distribution Trust for entry of an order (this "**Order**") approving the Settlement[2] between the Distribution Trust, on the one hand, and Jack D. Massimino, Kenneth S. Ord, Robert D. Bosic III, Beth A. Wilson, Robert C. Owen, Stan A. Mortensen, Nicole Carnagey, Christian Dieckmann, Michelle Reed Zagorski, Donald King, Jr., and Robert Kenyon (collectively, the "**Former Employees**"), on the other hand, on the terms and subject to the conditions set forth in the Stipulation of Settlement and its exhibits (the "**Settlement Agreement**"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding

---

[1] The Debtors in these cases (the 'Debtors'), along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. Case No. 15-10955 (KJC); Rhodes Colleges, Inc. Case No. 15-10957 (KJC); Florida Metropolitan University, Inc., Case No. 15-10962 (KJC); Corinthian Property Group, Inc. Case No. 15-10966 (KJC); Titan Schools, Inc. Case No. 15-10970 (KJC); Career Choices, Inc. Case No. 15-10972 (KJC); Sequoia Education, Case No. 15-10974 (KJC); Eton Education, Inc., Case No. 15-10961 (KJC); Ashmead Education, Inc., Case No. 15-10967(KJC); MJB Acquisition Corporation, Case No. 15-10971 (KJC); ECAT Acquisition, Inc., Case No. 15-10975; (KJC) Pegasus Education, Inc., Case No. 15-10953 (KJC); Grand Rapids Education Center, Inc., Case No. 15-10956 (KJC); Rhodes Business Group, Inc., Case No. 15-10959 (KJC); Everest College Phoenix, Inc., Case No. 15-10960 (KJC); CDI Education USA, Inc. Case No. 15-10963 (KJC); SP PE VII-B Heald Holdings Corp., Case No. 15-1096 5(KJC); SD III-B Heald Holdings Corp., Case No. 15-10968 (KJC); Heald Capital LLC, Case No. 15-10954 (KJC); Heald Real Estate, LLC, Case No. 15-10958 (KJC); Heald Education, LLC, Case No. 15-10964 (KJC); Heald College, LLC, Case No. 15-10969 (KJC); Quickstart Intelligence Corporation, Case No. 15-10973 (KJC); and Socle Education, Inc., Case No. 15-10976 (KJC).

[2] Capitalized terms used but not otherwise defined in this Order have the meanings ascribed to such terms in the Motion or the Settlement Agreement, as applicable.

pursuant to 28 U.S.C. §157(b)(2); and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that notice of the Motion and opportunity for hearing on the Motion were appropriate and no other notice needed to have been provided; and the Court having heard the statements in support of the relief requested therein at a hearing, if, any, before the Court (the "**Hearing**"); and the Court having found that approval of the Settlement Agreement and relief sought in the Order is within the sound discretion of the Court; and the Court having found that the relief requested in the Motion is fair and equitable and in the best interests of the Distribution Trust, creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.    The Motion is GRANTED in all respects.

2.    The Settlement Agreement, a copy of which is attached hereto as **Exhibit 1**, is approved pursuant to Section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

3.    The Former Employees shall cause the Former Employees' Insurers to pay the Initial Settlement Payment to the Distribution Trustee within ten (10) business days after the Effective Date.

75818276.1

4.    The Former Employees shall cause the Former Employees' Insurers to pay an amount equal to the Reserve Priority Settlement Payment to the Distribution Trustee within (10) business days after the Reserve Deduction Final Payment Date.

5.    The Former Employees shall cause the Former Employees' Insurers to pay an amount equal to the Reserve Subordinated Settlement Payment within (10) business days after the Reserve Deduction Final Payment Date.

6.    The Former Employees shall take reasonable steps to enforce the terms of the Former Employees' Insurers Agreement in the event the Former Employees' Insurers fail to pay the Settlement Amount, or any portion thereof, pursuant to the terms of the Settlement Agreement.

7.    Effective upon payment in full of the Initial Settlement Payment in cash, by check or wire transfer to an account designated by the Distribution Trustee, the Distribution Trustee Parties are permanently enjoined from filing, commencing, prosecuting, intervening in, participating in, or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding (as well as a motion or complaint in intervention if the person or entity filing such motion or complaint in intervention purports to be acting as, on behalf of, for the benefit of, or derivatively for any of the above persons or entities) or order, in any jurisdiction or forum, as to the Former Employee Parties based on or relating in any way to the Distribution Trustee's Claims Against Former Employees, including the claims and causes of action, or the facts and circumstances relating thereto, in the Complaint.

8.    Effective upon payment in full of the Initial Settlement Payment in cash, by check or wire transfer to an account designated by the Distribution Trustee, all persons are permanently enjoined from filing, commencing, or prosecuting any other lawsuit or other proceeding on

3

behalf of, for the benefit of, or derivatively for any Distribution Trust Party as to the Former

Employee Parties, if such other lawsuit is based on or related in any way to the Distribution

Trustee's Claims Against Former Employees, including the claims and causes of action, or the

facts and circumstances relating thereto, in the Complaint.

       9.      Effective upon payment in full of the Initial Settlement Payment in cash, by check

or wire transfer to an account designated by the Distribution Trustee, all Former Employees, and

any other person purporting to act on behalf of, for the benefit of, or derivatively for any of such

persons, are permanently enjoined from commencing, prosecuting, intervening in, or

participating in prosecuting any Claims or causes of action against the Distribution Trust Parties

relating to the Former Employees' Claims.

       10.     Effective upon payment in full of the Initial Settlement Payment in cash, by check

or wire transfer to an account designated by the Distribution Trustee, all persons and entities are

permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim

against any Former Employee Party arising under any federal, state, or foreign statutory or common-

law rule, however styled, whether for indemnification or contribution or otherwise denominated,

including Claims for breach of contract, misrepresentation, or breach of fiduciary duty, where the

Claim is or arises from any of the Distribution Trustee's Claims Against Former Employees and the

alleged injury to such person or entity arises from that person's or entity's alleged liability to the

Distribution Trustee or any Distribution Trust Party, including any Claim in which a person or entity

seeks to recover from any Former Employee Party *(i)* any amounts that such person or entity has or

might become liable to pay to the Distribution Trustee or any Distribution Trust Party and/or *(ii)* any

costs, expenses, or attorneys' fees from defending any Claim by the Distribution Trustee or any other

Distribution Trust Party. All such Claims against the Former Employee Parties are hereby

extinguished, discharged, satisfied, and unenforceable, subject to a hearing to be held by the Court, if

4

necessary. The provisions hereof are intended to preclude any liability of any of the Former Employee Parties to any person or entity for indemnification, contribution, or otherwise on any Claim that is or arises from any of the Distribution Trustee's Claims Against Former Employees and where the alleged injury to such person or entity arises from that person's or entity's alleged liability the Distribution Trustee or any other Distribution Trust Party; *provided, however,* that if the Distribution Trustee or any other Distribution Trust Party obtains any judgment against any such person or entity based upon, arising out of, or relating to any of the Distribution Trustee's Claims Against Former Employees for which such person or entity and any of the Former Employee Parties are found to be jointly liable, that person or entity shall be entitled to a judgment credit equal to an amount that is the greater of (i) an amount that corresponds to such Former Employee Party's or Former Employee Parties' percentage of responsibility for the loss to the Distribution Trustee or other Distribution Trustee Party/Parties or (ii) the Settlement Amount.

11.    Each and every Former Employee is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Claim against any other Former Employee arising under any federal, state, or foreign statutory or common-law rule, however styled, where the Claim arises out of or relates to any or all of the acts, failures to act, omissions, misrepresentations, facts, events, matters, transactions, occurrences, or oral or written statements or representations that were or could have been alleged under the facts and circumstances pled in the Complaint. All such Claims are hereby extinguished, discharged, satisfied, and unenforceable.

12.    Effective upon payment in full of the Initial Settlement Payment, the Distribution Trustee is enjoined from seeking relief or collecting judgment against any person or entity in such a manner that fails to conform to the terms of this Order, including the judgment credit provision set forth in paragraph 10 of this Order.

5

13.    Notwithstanding anything stated in this Order, if any person or entity (for purposes of this paragraph, a "petitioner") commences against any of the Former Employee Parties any action either (*i*) asserting a Claim that is or arises from any of the Distribution Trustee's Claims Against Former Employees and where the alleged injury to such petitioner arises from that petitioner's alleged liability to the Distribution Trustee or any other Distribution Trust Party or (*ii*) seeking contribution or indemnity for any liability or expenses incurred in connection with any such Claim, and if such action or Claim is not barred by a court pursuant to this Order or is otherwise not barred, neither this Order nor the Settlement Agreement shall bar Claims by that Former Employee Party against (a) such petitioner, (b) any person or entity who is or was controlled by, controlling, or under common control with the petitioner, whose assets or estate are or were controlled, represented, or administered by the petitioner, or as to whose Claims the petitioner has succeeded, and (c) any person or entity that participated with any of the preceding persons or entities described in items (a) and (b) of this paragraph in connection with the assertion of the Claim brought against the Former Employee Party; *provided, however*, that nothing in this Order or the Settlement Agreement shall prevent the Settling Parties from taking such steps as are necessary to enforce the terms of the Settlement Agreement.

14.    Notwithstanding anything stated in this Order, nothing in the Settlement Agreement or this Order shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement or this Order.

15.    If any term of this Order is held to be unenforceable after the date of entry, such provision shall be substituted with such other provision as may be necessary to afford all of the Former Employee Parties the fullest protection permitted by law from any Claim that is based upon, arises out of, or relates to any of the Distribution Trustee's Claims Against Former Employees or any Claim arising out of or relating to any or all of the acts, failures to act, omissions,

6

misrepresentations, facts, events, matters, transactions, occurrences, or oral or written statements or representations that were or could have been alleged under the facts and circumstances pled in the Complaint, as applicable.

16.     Notwithstanding anything else in the Settlement Agreement or the Final Settlement Order, nothing therein shall release, interfere with, limit, or bar the assertion by any Former Employee Party of any Claim for insurance coverage under any insurance, reinsurance, or indemnity policy that potentially provides coverage respecting the conduct at issue in the Complaint or for any other Distribution Trustee's Claim Against Former Employees.

17.     This Order and the Settlement Agreement shall be binding on the Parties, any trustees appointed in the Chapter 11 Cases, any trustees appointed in any subsequent chapter 7 cases relating to the Debtors, and all other parties in interest in accordance with and subject to the terms of the Settlement Agreement.

18.     The Distribution Trust and all other Parties to the Settlement Agreement are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion and to implement the terms of the Settlement Agreement without further notice, hearing or order of the Court.

19.     The Court shall retain continuing jurisdiction to hear and determine all matters arising or related to the implementation, interpretation and/or enforcement of the Settlement Agreement and this Order.


Dated: _____, 2017
           Wilmington, Delaware

                                          _____
                                          THE HONORABLE KEVIN J. CAREY
                                          UNITED STATES BANKRUPTCY JUDGE


7

**EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11**<br>**Case No. 15-10952-KJC** |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | **(Jointly Administered)** |
| Debtors. | |

### FOURTH TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER MANAGEMENT OF CORINTHIAN COLLEGES, INC.

This Fourth Tolling Agreement and Stipulation (the "Fourth Stipulation") is made and entered into as of September 5, 2017, by and between Craig R. Jalbert ("Distribution Trustee"), as Distribution Trustee of the Corinthian Distribution Trust (the "Distribution Trust"), on the one hand, and former employees of Corinthian Colleges, Inc. Jack D. Massimino, Robert Owen, Robert D. Bosic, Beth A. Wilson, Stan A. Mortensen, Michelle Reed Zagorski, Christian Dieckmann, Kenneth Ord, and Nicole Carnagey (collectively, the "Former Employees"), on the other hand. Each party may be referred to individually as a "Party" and all parties may be referred to herein

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are:  Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

75812736.2

collectively as the "Parties." This Fourth Stipulation is made with reference to the following facts:

## RECITALS

WHEREAS, on May 4, 2015, Corinthian Colleges, Inc. ("Corinthian") and its twenty-four domestic direct and indirect subsidiaries (together with Corinthian, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, on August 28, 2015, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation (the "Plan"), which became effective on or about September 21, 2015; and

WHEREAS, the Plan provided for the establishment of the Distribution Trust to facilitate implementation of the Plan; and

WHEREAS, Corinthian (on behalf of itself and the other Debtors), Craig R. Jalbert (the Distribution Trustee), and Wilmington Trust, National Association (as Delaware Resident Trustee) entered into the Corinthian Distribution Trust Agreement made as of September 18, 2015 (the "Distribution Trust Agreement"); and

WHEREAS, on the Effective Date of the Plan, the Distribution Trust Assets (as defined in the Plan), including the Causes of Action (as defined in the Plan), were transferred to the Distribution Trust in accordance with the terms and conditions of the Plan, the Confirmation Order and the Distribution Trust Agreement; and

2

75812736.2

WHEREAS, pursuant to the Plan, the Confirmation Order and the Distribution Trust Agreement, the Distribution Trustee was appointed to administer the Distribution Trust, including to act as representative of the Debtors' estates pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code to retain and enforce the Causes of Action; and

WHEREAS, on approximately October 5, 2016, counsel for the Distribution Trustee sent a draft of a Complaint for Breach of Fiduciary Duty and Waste of Corporate Assets (the "Complaint") to counsel for the Former Employees and to counsel for certain former outside directors of Corinthian; and

WHEREAS, the Parties agreed to the basic terms of a settlement (the "Settlement") of the Distribution Trustee's potential claims against the Former Employees, subject to execution of a definitive Stipulation of Settlement with exhibits (the "Settlement Agreement") and approval of the Settlement Agreement by the Bankruptcy Court; and

WHEREAS, the Former Employees expressly deny the wrongdoing alleged in the Complaint and do not concede any wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in the Complaint; and

WHEREAS, the Parties wished to toll and extend any non-expired statute, statute of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline for the commencement or filing of any matter, proceeding or other action by the Distribution Trust or the Distribution Trustee (collectively, "Claimants") against the Former

75812736.2

Employees, or any of them, thereby to preserve any rights, claims and defenses that the Claimants may have against the Former Employees (collectively, the "Claims") under any legal theory or applicable law, whether asserted by claim, counterclaim, cross-claim, or otherwise, including, without limitation, the causes of action contained in the Complaint; and

WHEREAS, in furtherance of such wishes, the Parties entered into a Tolling Agreement and Stipulation (the "First Stipulation")  as of April 24, 2017 (the "First Stipulation Effective Date"), pursuant to which they agreed, among other things, that any statute, statue of repose, statute of limitations, limitation or laches period, or other provision, whether jurisdictional or otherwise, that requires, mandates, or establishes any deadline (collectively, the "Limitation Deadline") for the commencement or filing of any matter, proceeding or action by the Claimants, or either of them, against the Former Employees, or any of them, applicable to any of the Claims, including, without limitation, sections 108 and 546 of the Bankruptcy Code, that had not expired as of the First Stipulation Effective Date, was tolled and extended for the Claimants, and each of them, from April 24, 2017, through and including June 30, 2017 (the "First Stipulation Termination Date"); and

WHEREAS, the First Stipulation, effective by its terms, was submitted to the Bankruptcy Court for approval, and the First Stipulation was approved and entered as an Order of the Bankruptcy Court on May 3, 2017 [Docket No. 1489]; and

WHEREAS, on June 21, 2017, the Parties entered into a Second Tolling Agreement and Stipulation (the "Second Stipulation") to further extend the Limitation

4

Deadline through and including August 31, 2017 (the "Second Stipulation Termination Date"); and

WHEREAS, the Second Stipulation, effective by its terms, was submitted to the Bankruptcy Court for approval, and the Second Stipulation was approved and entered as an Order of the Bankruptcy Court on June 22, 2017 [Docket No. 1503]; and

WHEREAS, on August 11, 2017, the Parties entered into a Third Tolling Agreement and Stipulation (the "Third Stipulation") to further extend the Limitation Deadline through and including September 15, 2017 (the "Third Stipulation Termination Date"); and

WHEREAS, the Third Stipulation, effective by its terms, was submitted to the Bankruptcy Court for approval, and the Third Stipulation was approved and entered as an Order of the Bankruptcy Court on August 15, 2017 [Docket No. 1527]; and

WHEREAS, the Parties have executed the Settlement Agreement, subject to approval of the Bankruptcy Court, and the Bankruptcy Court has scheduled a hearing to consider approval thereof for September 26, 2017, at 1:15 p.m. ET; and

WHEREAS, the Parties are willing to enter into this Fourth Stipulation to preserve all Claims, if any, that the Claimants may have against the Former Employees as of September 15, 2017 according to the terms set forth herein.

## STIPULATION

In consideration of the mutual promises set forth herein and the terms of the Settlement and for other good and valuable consideration, the receipt and sufficiency of

75812736.2

which are hereby acknowledged, the Parties, intending to be legally bound, hereby

agree as follows:

      1.     The recitals set forth above are incorporated herein by reference, and

terms not defined in the recitals or herein shall have the same meaning ascribed to them

in the Settlement Agreement.

      2.     Any Limitation Deadline for the commencement or filing of any matter,

proceeding or action by the Claimants, or either of them, against the Former Employees,

or any of them, applicable to any of the Claims, including, without limitation, sections

108 and 546 of the Bankruptcy Code, are hereby tolled and extended for the Claimants,

and each of them, from September 15, 2017, through and including (i) partial

consummation of the Settlement Agreement (meaning that the Bankruptcy Court shall

have entered the Settlement Order, the Settlement Order shall have become Final, and

the Initial Settlement Payment shall have been paid in accordance with the Settlement

Agreement) or (ii) sixty (60) days after the earliest of (a) the date on which the

Bankruptcy Court rules that the Settlement Agreement is not approved, (b) the date on

which the Settlement Agreement is terminated pursuant to its terms, or (c) the date on

which the Settlement Agreement otherwise becomes null and void pursuant to its terms

(collectively, the "Fourth Stipulation Termination Date"). The Limitation Deadline is

not tolled or extended for anyone other than the Claimants or for claims against anyone

other than the Former Employees pursuant to this Fourth Stipulation.

      3.     The Parties agree that: (a) sections 108(a) and 546 of the Bankruptcy Code

and any other Limitation Deadline are not a limit on the Bankruptcy Court's

jurisdiction, and can be tolled by agreement; and (b) no Party will assert any contrary position in any matter, proceeding or action in any court of competent jurisdiction. If a court nevertheless holds that it does not have jurisdiction over any Claim because the Claim was filed after September 15, 2017, or such other date upon which any applicable Limitation Deadline would have expired but for this Fourth Stipulation, the Parties agree that: (i) the Party asserting the Claim shall nevertheless have a separate and distinct contractual right and claim against the Party subject to the Claim; and (ii) the Party subject to such Claim will have a corresponding separate and distinct contractual obligation to the Party asserting such Claim, in the amount, and for the remedies, if any, that the Party asserting such Claim would have been entitled had he, she or it asserted such Claim prior to September 15, 2017, or such other date upon which any applicable Limitation Deadline would have expired but for this Fourth Stipulation, and obtained a final and non-appealable judgment from the court in his, her or its favor, subject to all available rights, claims and defenses of each Party; *provided, however,* that the Party or Parties against whom any such Claim has been asserted shall retain all defenses, claims, cross-claims, and counterclaims as to any such Claim. The agreements contained in this paragraph and the terms of the Settlement are a material inducement to each Party to enter into this Fourth Stipulation, and are not conditioned upon approval by any court and are effective and enforceable among the Parties immediately upon execution of this Fourth Stipulation.

4.      Nothing in this Fourth Stipulation shall prevent the Claimants, or either of them, or any other party acting for or on his or its behalf, from filing a lawsuit with

respect to any Claim against the Former Employees, or any of them, prior to the Fourth Stipulation Termination Date. So long as any Claim is filed on or prior to the Fourth Stipulation Termination Date, and would not have been barred as of September 15, 2017, the Former Employees, and each of them, hereby waive the defense that such action is barred by the applicable Limitation Deadline. For the avoidance of doubt, this Fourth Stipulation shall not in any manner revive, resurrect, or create any claims, rights, causes of action or suits that, as of September 15, 2017, had expired or were barred by the Bankruptcy Code or applicable nonbankruptcy law or any Limitation Deadline, including, without limitation, any applicable statute of limitations or repose or other rule, provision, defense or principle based upon the passage of time (including without limitation, waiver, estoppel and laches), whether statutory, contractual or otherwise, or limit in any way the assertion of any defense available as of September 15, 2017.

5.      This Fourth Stipulation shall not operate or be construed as an admission of any wrongdoing, liability, or culpability by any Party or as an admission by any Party of the existence of any claims against the other. Neither this Fourth Stipulation nor any action taken pursuant to this Fourth Stipulation shall be offered or received in evidence or used for any purpose whatsoever, in any action or proceeding that may ensue between the Parties, other than to refute a defense that any action brought by the Claimants, or either of them, on or prior to the Fourth Stipulation Termination Date is time barred by any applicable Limitation Deadline.

75812736.2

6.      This Fourth Stipulation does not constitute any admission or waiver regarding jurisdiction over the Parties, venue, the Parties' standing to bring suit, or the Bankruptcy Court's authority to enter a final judgment on any potential Claims.

7.      The Parties each represent and warrant that: (i) each has the power and is duly authorized to enter into this Fourth Stipulation described herein and upon the terms set forth herein; and (ii) upon being duly executed and delivered, this Fourth Stipulation shall constitute a legal, valid, and binding obligation enforceable against it in accordance with this Fourth Stipulation's terms.

8.      This Fourth Stipulation shall be binding upon, and operate for the benefit of, the Parties and each of their respective successors and assigns.

9.      This Fourth Stipulation shall expire at 11:59 p.m. ET on the Fourth Stipulation Termination Date, unless renewed or extended by a written instrument signed by each Party, or, to the extent only one or more of the Former Employees agree to renew or extend, executed by such Former Officer and the Distribution Trust, prior to that date and time.

10.     The First Stipulation, the Second Stipulation, the Third Stipulation, and this Fourth Stipulation together constitute the entire agreement by and among the Parties concerning the tolling of the Limitations Deadline, and together supersede any prior agreements or understandings whether written or oral.  This Fourth Stipulation may not be amended or changed in any way except by written instrument signed by the Parties.

9

11.      The Parties intend that this Fourth Stipulation be binding and enforceable in accordance with its terms. Accordingly, the Parties hereby irrevocably waive any right to contend that this Fourth Stipulation is not or might not be enforceable, agree not to assert or support any such contention, and shall be estopped from raising any such contention.

12.      The obligations of each of the Former Employees set forth in the preceding Paragraph 11 shall be contractual (as opposed to a waiver of a procedural or statutory right).

13.      This Fourth Stipulation is not intended, nor shall it be deemed, to advance or otherwise affect any Limitation Deadline occurring after the Fourth Stipulation Termination Date.

14.      This Fourth Stipulation shall be governed by and interpreted under Delaware law without regard to any conflicts-of-laws principles.

15.      The Bankruptcy Court shall have sole and exclusive jurisdiction to interpret or resolve any disputes relating to this Fourth Stipulation.

16.      The tolling and extension of the Limitation Deadline is effective whether or not the Bankruptcy Court enters an Order approving this Fourth Stipulation.  The Parties, however, agree to submit this Fourth Stipulation to the Bankruptcy Court for its approval.

17.      Nothing in this Fourth Stipulation shall be construed as an admission by the Claimants, or either of them, relating to the applicability of any Limitation Deadline

10

to any Claim, or to the length of any limitations period that may apply, or to the applicability of any other time-related defense.

18.    This Fourth Stipulation may be signed in counterparts, including by facsimile, each of which shall be deemed an original, and all of which taken together shall constitute one and the same document.

By: _____    Date: _____

**Craig R. Jalbert**
Corinthian Distribution Trustee

Approved as to Form:


_____    Date: _____

Christopher P. Sullivan, Esq.
David E. Marder, Esq.
James P. Menton, Jr., Esq.
Robins Kaplan LLP
Counsel to Corinthian Distribution Trustee


_____    Date: _____

**Jack D. Massimino**


Approved as to Form:


_____    Date: _____

John W. Spiegel, Esq.
Munger, Tolles & Olson, LLP
Counsel to Jack D. Massimino


_____    Date: _____

**Robert Owen**

11

75812736.2

Approved as to Form:


_____        Date: _____
Nicola Hanna
Gibson Dunn & Crutcher
Counsel to Robert Owen


_____        Date: _____
**Robert D. Bosic**


Approved as to Form:


_____        Date: _____
John Hueston
Hueston Hennigan LLP
Counsel to Robert D. Bosic



_____        Date: _____
**Beth A. Wilson**


Approved as to Form:


_____        Date: _____
Janet Levine
Crowell & Moring LLP
Counsel to Beth A. Wilson



_____        Date: _____
**Stan A. Mortensen**


Approved as to Form:


_____        Date: _____
Mark Holscher
Kirkland & Ellis LLP
Counsel to Stan A. Mortensen

_____     Date: _____
**Michelle Reed Zagorski**


Approved as to Form:


_____     Date: _____
Daniel Bookin
O'Melveny & Myers LLP
Counsel to Michelle Reed Zagorski


_____     Date: _____
**Christian Dieckmann**


Approved as to Form:


_____     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Christian Dieckman


_____     Date: _____
**Kenneth Ord**


Approved as to Form:


_____     Date: _____
Thomas Bienert
Bienert, Miller & Katzman, PLC
Counsel to Kenneth Ord

75812736.2

_____    Date: _____

**Nicole Carnagey**

Approved as to Form:


_____    Date: _____

Thomas McConville
Orrick Herrington & Sutcliffe LLP
Counsel for Nicole Carnagey

75812736.2

**EXHIBIT C**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.* [1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | |

-----------------------------------------------------------

## CERTIFICATION OF COUNSEL REGARDING ORDER APPROVING FOURTH TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER MANAGEMENT OF CORINTHIAN COLLEGES, INC.

The undersigned hereby certifies as follows:

1.     We are counsel to Craig R. Jalbert, Distribution Trustee of the Corinthian Distribution Trust (the "**Distribution Trustee**").

2.     The Distribution Trustee and certain former officers of Corinthian Colleges, Inc. (the "**Former Officers**," and together with the Distribution Trustee, the "**Parties**") have entered into that certain *Fourth Tolling Agreement and Stipulation Between Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust, and Former Management of Corinthian Colleges, Inc.*, dated as of September 5, 2017 (the "**Fourth Tolling Agreement**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

3.      A copy of the Fourth Tolling Agreement is attached as **Exhibit 1** to **Exhibit A** hereto.   Under the Fourth Tolling Agreement, the Parties agreed that the Fourth Tolling Agreement was operative by its terms, but also agreed to submit the Fourth Tolling Agreement for approval by this Court.

4.      Attached hereto as **Exhibit A** is the proposed form of order approved by the Parties approving the Fourth Tolling Agreement (the "**Order**").   As noted above, the executed Fourth Tolling Agreement is attached to the Order as **Exhibit 1**.

WHEREFORE, the Distribution Trustee respectfully requests that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, at its earliest convenience.

75812744.1

Dated: _____, 2017
        Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
Marcos Ramos  (No. 4450)
Amanda R. Steele (No. 5530)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
920 N. King Street
Wilmington, Delaware 19801
Telephone:  302-651-7700
Facsimile:  302-651-7701
Email:  collins@rlf.com
        ramos@rlf.com
        steele@rlf.com
        delillo@rlf.com

Christopher P. Sullivan
David E. Marder
Richard B. Allyn
James P. Menton, Jr.
ROBINS KAPLAN LLP
800 Boylston Street, Suite 2500
Boston, MA 02199
Telephone:  (617) 267-2300
Facsimile:  (617) 267-8288
Email:  csullivan@robinsraplan.com
        dmarder@robinskaplan.com
        rallyn@robinskaplan.com
        jmenton@robinskaplan.com

Counsel to the Distribution Trustee

3

75812744.1

## EXHIBIT A

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| CORINTHIAN COLLEGES, INC., *et al.*[1] | § | |
| | § | Case No. 15-10952 (KJC) |
| | § | |
| | § | Jointly Administered |
| Debtors. | § | |
| | § | **Re: D.I. ___** |

---------------------------------------------------------------

## ORDER APPROVING FOURTH TOLLING AGREEMENT AND STIPULATION BETWEEN CRAIG R. JALBERT, AS DISTRIBUTION TRUSTEE OF THE CORINTHIAN DISTRIBUTION TRUST, AND FORMER MANAGEMENT OF CORINTHIAN COLLEGES, INC.

This matter coming before the Court upon the *Certification of Counsel Regarding Order Approving Fourth Tolling Agreement and Stipulation Between Craig R. Jalbert, as Distribution Trustee of the Corinthian Distribution Trust, and Former Management of Corinthian Colleges, Inc.* (the "**Certification**");[2] and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the retention of jurisdiction under section XVI of the plan of liquidation [D.I. 913];

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Corinthian Colleges, Inc. (7312), Corinthian Schools, Inc. (0525), Rhodes Colleges, Inc. (7311), Florida Metropolitan University, Inc. (7605), Corinthian Property Group, Inc. (2106), Titan Schools, Inc. (3201), Career Choices, Inc. (1425), Sequoia Education, Inc. (5739), ETON Education, Inc. (3608), Ashmead Education, Inc. (9120), MJB Acquisition Corporation (1912), ECAT Acquisition, Inc. (7789), Pegasus Education, Inc. (2336), Grand Rapids Educational Center, Inc. (2031), Rhodes Business Group, Inc. (6709), Everest College Phoenix, Inc. (6173), CDI Education USA, Inc. (0505), SP PE VII-B Heald Holdings Corp. (0115), SD III-B Heald Holdings Corp. (9707), Heald Capital LLC (6164), Heald Real Estate, LLC (4281), Heald Education, LLC (1465), Heald College, LLC (9639), QuickStart Intelligence Corporation (5665), and Socle Education, Inc. (3477).

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Certification.

IT IS HEREBY ORDERED THAT:

1.      The Fourth Tolling Agreement is hereby APPROVED and entered as an order of the Court.

2.      Subject to Paragraph 6 of the Fourth Tolling Agreement, this Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order.

Dated: _____, 2017
            Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

75812744.1

**<u>Exhibit 1</u>**

**Tolling Agreement**