**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CORINTHIAN COLLEGES, INC., et al.[1]<br>Debtors. | Chapter 11<br><br>Case No. 15-10952 (JTD)<br>(Jointly Administered) |
| GUY REYNOLDS and CHRISTINE SEYMOUR, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORINTHIAN COLLEGES, INC.,<br><br>Defendant. | Adversary No. 15-50309 (JTD)<br><br>**Objection Deadline: August 15, 2019 at 4:00 p.m.**<br>**Hearing Date: August 26, 2019 at 10 00 a.m.** |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO: (I) CERTIFY THE WARN CLASS FOR SETTLEMENT PURPOSES, (II) PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT, (V) FINALLY APPROVE THE SETTLEMENT AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF**

Guy Reynolds and Christine Seymour ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Putative Class"), together with the Corinthian Distribution Trust (the "Distribution Trust")[2] for the Debtors in the case pending before the Bankruptcy Court, and styled as *In re Corinthian Colleges, Inc., et al*, Case No. 15-10952, by and through their

[1] The Debtor in these cases, along with the last four digits of its federal tax identification number, is: Corinthian Colleges, Inc. (7312). Pursuant to an order of the Court dated March 30, 2016 [D.I. 1181] Corinthian Colleges Inc.'s affiliated debtors' cases were closed.

[2] The Student Trust was terminated by order of the Court on August 27, 2018. *See* Order Granting Motion of the CCI Student Trustee to Terminate the CCI Student Creditors Trust [D.I. 1625]. Prior to its termination, the Student Trust turned over its portion of the Settlement Amount to the Distribution Trust, for payment in accordance with the terms of the Plan and Confirmation Order.

respective counsel (collectively, the Plaintiffs and the Distribution Trust are the "Parties"), jointly submit this memorandum of law in support of their motion, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, for (A) the entry of an order, substantially in the form attached hereto as Exhibit B, 1) certifying the WARN Class for settlement purposes only, including the appointment of Class Counsel and the Class Representatives; 2) preliminarily approving the Settlement Agreement (a copy of which is attached hereto as Exhibit A); 4) approving the form and manner of notice of the Settlement to the members of the Class (substantially in the form attached hereto as Exhibit C); and 5) scheduling a fairness hearing to consider final approval of the Settlement Agreement; and (B) following the Fairness Hearing, entry of a final order substantially in the form attached hereto as Exhibit D finally approving the Settlement Agreement and granting related relief. In support of the Joint Motion, the Parties respectfully represent as follows:

**INTRODUCTION**[3]

1. The Court should approve the Settlement Agreement. The Class Representatives have sued the Debtors in the above-captioned adversary proceeding (the "WARN Action") for allegedly failing to provide notice required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*., and California Labor Code § 1400 et seq. (collectively, the "WARN Act") before ordering mass layoffs and/or plant closings on or about April 26, 2015 at its facilities.

[3] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Settlement and Release Agreement (the "Settlement Agreement"). A true copy of the Settlement Agreement is attached hereto as Exhibit A.

2. In exchange for a full release for any claim for damages under the WARN Act or similar state law, severance, back pay or other benefits arising from the mass layoffs and/or plant closings, the Class shall be awarded an allowed priority claim pursuant to 11 U.S.C. §§ 507(a)(4) and (a)(5) in the amount of Nine Hundred Thousand Dollars ($900,000.00) against the Debtors' estates ("WARN Claim"). The WARN Claim is comprised of two parts: (1) a non-subordinated Three Hundred Thousand Dollar ($300,000) allowed priority claim (the "Non-Subordinated WARN Claim"); and (2) a Six Hundred Thousand Dollar ($600,000) allowed priority claim that shall be subordinated only to Allowed Administrative Claims, Priority Tax Claims, Other Priority Claims, the Prepetition Lenders Adequate Protection Claims (as those terms are defined in the Plan) and the Non-Subordinated WARN Claim for distribution purposes under the Plan (the "Subordinated WARN Claim").

3. From the perspective of each of the Parties, the Settlement Agreement is fair and reasonable. Further litigation of the above-captioned WARN class action would be protracted and expensive, and the outcome uncertain.

4. Class Counsel contends, but the Distribution Trust disputes that the events that led to the failure of the Debtors' business were foreseen and/or foreseeable and that none of the WARN Act's affirmative defenses are applicable that would provide an exception to the Debtors' liability under the statute.

5. A trial on the merits would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results.

6. Class Counsel also contends, but the Distribution Trust disputes that if the Court found that Class Members were entitled to even one additional day of notice than they were provided, then Class Members would be prevailing parties entitled to their attorneys' fees and

costs.  Thus, if the case goes to trial, Debtors face, at least a theoretical risk, of being liable for both sides' fees.

7.      In light of these factors, the Parties have determined that the terms of the settlement, set forth in the Settlement Agreement, are well within the range of reasonableness. Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the settlement under Bankruptcy Rule 9019.

8.      For the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members.  Further, it is appropriate to certify the Class for settlement purposes and appoint Class Counsel. As set forth below, for purposes of the settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

9.      Finally, the Parties request a two-step approval process to facilitate notice to Class Members.  After preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members, Class Counsel will provide notice ("Notice") to each Class Member that describes the Settlement Agreement, and informs the Class Members of their right to opt-out of the Class or object to the Settlement Agreement and of the deadlines for opting-out and/or objecting.

10.      After service of the Notice, the Parties request that the Bankruptcy Court set a fairness hearing at which it will finally approve the Settlement Agreement.

11.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

12. This Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

13. Plaintiffs allege in their Complaint that until April 26, 2015, Debtors were in the business of providing secondary and post-secondary education at facilities throughout the United States. Plaintiffs further allege that on or about April 26, 2015, Debtors terminated the employment of Plaintiffs and other Putative Class Members. Plaintiffs allege that none of the Debtors' employees received 60 days' advance written notice of their terminations as required by the WARN Act.

## PRIOR PROCEEDINGS

14. On May 4, 2015 (the "Petition Date"), Debtors, together with their affiliated entities, filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") under chapter 11 of title 11, United States Code ("Bankruptcy Code") under the case name *In re Corinthian Colleges, Inc., et al*, Case No. 15-10952 (Jointly Administered).

15. On May 5, 2015, Plaintiff Guy Reynolds filed with the Bankruptcy Court a class-action adversary complaint commencing the WARN Action against Debtors Corinthian Colleges, Inc., on behalf of himself and the Putative Class, under the case name *Reynolds, et al. v. Corinthian Colleges, Inc., et al.*, Adv. No. 15-50309 (Bankr. D. Del.). The WARN Action alleged that Debtors violated the WARN Act by ordering plant closings and/or mass layoffs on or about April 26, 2015 without providing sixty (60) days advance notice thereof. The Class

Representative further asserted that, as a consequence of this alleged failure, the Putative Class members have a priority administrative expense claim, pursuant to 11 U.S.C § 503(b)(1)(A)(ii), or alternatively, priority status, under 11 U.S.C. §§ 507(a)(4) and (a)(5), up to the $12,475 priority cap, with the balance, if any, being a general unsecured claim against Debtors for damages for the alleged sixty (60) day violation period.

16. On August 20, 2015, the Plaintiffs filed a First Amended Complaint ("Amended Complaint"), which *inter alia*, added Christine Seymour as a plaintiff and added as defendants certain Debtors who had not been named as defendants in the initial complaint.

17. On August 21, 2015, Plaintiffs filed an objection to Plan Confirmation contending that the Plan did not establish an adequate claims reserve for the WARN Claimants' estimated $6-$9 million priority wage claim. The objection was resolved upon reaching the basic terms of the settlement herein, and this was placed on the record at the hearing on Plan Confirmation on August 26, 2015.[4]

18. On August 28, 2015, the Bankruptcy Court entered an Order Confirming Debtors' Third Amended and Modified Combined Disclosure Statement and Chapter 11 Plan of Liquidation [D.I. 913]. On September 21, 2015, the Effective Date (as defined in the Plan) occurred and, as provided for in the Plan, *inter alia*, (i) the Corinthian Distribution Trust (the "Distribution Trust") and the CCI Student Trust ("Student Trust") were created, (ii) the Distribution Trust Assets vested in the Distribution Trust and the Student Trust Assets vested in the Student Trust, (iii) the Debtors dissolved in accordance with applicable law, and (iv) the

[4] As noted on the record of the hearing in this matter on October 13, 2016 [Docket No. 1256], the Parties did not believe that it was prudent to proceed with class certification until they had a reasonably accurate assessment of whether funds would potentially be available for the Subordinated Sub-Class.

Distribution Trust and the Student Trust succeeded to the Debtors' rights in connection with the WARN Action.

**ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT**

19. The Parties have reached an agreement, subject to Court approval, the terms of which have been refined and memorialized in the Settlement and Release Agreement (the "Settlement Agreement") (attached hereto as Exhibit A). The essential terms of the Settlement Agreement are as follows:[5]

1. A class will be certified for settlement purposes only (the "Class"). The Class shall be defined as: all former employees of the Debtors terminated on or about April 26, 2015, in anticipation of, related to, or as the foreseeable consequence of, the mass layoffs or plant closings ordered by the Debtors on or about April 26, 2015, and within 30 days of that date, who did not receive 60 days' advance notice of such termination, who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5) or employees within the meaning of Cal. Labor Code § 1400(h), who belong to one or both of the following two subclasses:

(a) Non-Subordinated Sub-Class: Employees who were terminated from the Debtors' campuses at: Concord, Fremont, Fresno, Hayward, Long Beach, Modesto, Rancho Cordova, Roseville, San Jose, and Stockton California;

(b) Subordinated Sub-Class: Members of the Non-Subordinated Sub-Class, and employees terminated from the Debtors' campuses at San Francisco, Salinas, and Milpitas California, Portland, Oregon, Honolulu, Hawaii, and Phoenix/Mesa, Arizona;

excluding all former employees that voluntarily terminated their employment and all former employees terminated for cause (each a "Class Member" and collectively "Class Members");

2. The $300,000 to be used for payment of the Non-Subordinated WARN Claim is held by the Distribution Trust and will be held until distribution of those funds pursuant to this Settlement;

[5] The descriptions of the Settlement Agreement contained herein are not intended to be a full recitation of the terms of the Settlement Agreement. To the extent that any description or summary of the terms of the Settlement Agreement contained herein conflict with the terms of the Settlement Agreement, the terms of the Settlement Agreement are controlling in all respects.

3.      The $600,000 amount, if available for distribution, shall be used for payment of the Subordinated WARN Claim, or if less than the full $600,000 is available for payment of that claim, as soon as a determination is made by the Distribution Trust that all of the funds that will become available for distribution for that claim, if any, are available to the Distribution Trust for such distribution.

4.      Upon payment of the Settlement Amount, any claims that have been scheduled on behalf of, or filed by, the Class Members who have not opted out, on account of any alleged violation of the WARN Act under any federal, state or local law or regulation, are disallowed in their entirety and shall be deemed withdrawn without need for any further order of the Bankruptcy Court;

5.      The Distribution Trustee shall be responsible for issuing payment to Class Members and handling all other aspects of the administration of the WARN Settlement, including withholding and paying all applicable taxes, remitting Class Counsel's Fees and Expenses, preparing all tax forms required in connection with this Settlement in accordance herewith and with any other orders of the Bankruptcy Court.   The Distribution Trust is entitled to a one-time payment of $10,000 as compensation for services rendered in connection with the Settlement Agreement and the Distribution Trustee's expenses for administering the WARN Settlement, including, without limitation, for the preparation and mailing of settlement checks and tax forms shall be paid exclusively from the Settlement Amount;

6.      The Class Representatives will each receive a one-time payment of $2,000 (the "Service Payments") as payment for the services they provided to the Class in connection with the prosecution of the WARN Action;

7.      Subject to Court approval, Class Counsel shall receive attorneys' fees of thirty-three and one third percent (33⅓%) of the Settlement Fund, net of (a) reimbursement of documented litigation expenses not to exceed $5,000 ("Class Counsel's Expenses"), and (b) the Class Representative Service Payments;

8.      On or before the Effective Date (as defined in the Settlement Agreement), Class Counsel will calculate each Class Members' individual share of the Settlement Fund, after being first reduced by (i) the Class Representative Service Payments, (ii) Class Counsel's Fees,    (iii) Class Counsel's Expenses, and (iv) the Distribution Trust's Fee and the Distribution Trust's estimated expenses, which shall be allocated to each Class Member ("Class Members' Share"), on either a pro rata basis based on the relationship that such Class Member's potential damages under the WARN Act bears to the aggregate potential damages of all Class Members under the WARN Act, or, on a per capita basis, or, if feasibility requires a different formula, at the discretion of Class Counsel, and shall be made directly to Class Members;

9.      Issuance of Class Notice:  Class Counsel shall send by first class mail to

each Class Member's last known address, a notice (the "Notice") ("Exhibit C") indicating:

    a.    that each Class Member has the right to opt-out of the Class and preserve all of his/her rights against Debtors, if any, including the released Claims;

    b.    that the Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court;

    c.    that all released claims of any Class Member who does not opt-out of the Settlement Agreement shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon; and

    d.    that such Class Member has the right to object to the Settlement Agreement, to retain counsel, and be heard at the Fairness Hearing.

9.    The Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court; and

10.    Upon the Effective Date of the Settlement Agreement, the Class Members shall release (1) the Debtors, the Estates, the Trustee and their affiliates, officers, directors, agents, etc. from all claims and all proofs of claim for all WARN Act-related claims, which proofs of claim shall be deemed withdrawn such that all WARN Act claims shall be resolved under the terms of the Settlement Agreement, with the exception of those proofs of claim filed by individuals who chose to timely opt-out of the WARN Class.

## RELIEF REQUESTED

20.    By this Joint Motion, the Parties request that the Bankruptcy Court (A) enter an order, substantially in the form attached hereto as Exhibit B, 1) certifying the WARN Class for settlement purposes only, including the appointment of Class Counsel and the Class Representatives; 2) preliminarily approving the Settlement Agreement;  3)  approving the form and manner of notice of the Settlement to the members of the Class; and 4) scheduling a fairness hearing to consider final approval of the Settlement Agreement; and (B) following the Fairness

Hearing, enter a final order, substantially in the form attached hereto as Exhibit D, finally approving the Settlement Agreement and granting related relief.

**BASIS FOR RELIEF REQUESTED**

**A. The Court Should Approve the Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.**

21. The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). *See also In re Culmtech, Ltd*., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements"). Bankruptcy Rule 9019(a) authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, and section 105(a) of the Bankruptcy Code empowers a bankruptcy court to issue any order that is "necessary or appropriate."

22. "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc*., 336 B.R. 87, 92 (Bankr. D. Del. 2005). *See also In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interest [sic] of the estate." *Key3Media,* 336 B.R. 87, 92. *See also*, *Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

23. The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram*

*Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004)). Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983). In this respect, it is unnecessary for the bankruptcy court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP 8th Cir. B.A.P. 1997).

**B. Standards for Approval of the Settlement Agreement.**

24. Courts consider the following four factors when determining whether a settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Martin*, 91 F.3d at 393; *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; Marvel, 222 B.R. at 249.

25. In addition to these criteria, bankruptcy courts have also scrutinized additional factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp*., 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

**C. Application of the *Martin* Factors.**

26. The results of a trial are uncertain and the litigation here is complex. The WARN Action involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, inter alia, (i) whether Debtors provided adequate notice to the Class Members under the WARN Act; (ii) whether Debtors can be held liable under the WARN Act in connection with the alleged acts/omissions of Debtors; (iii) whether Debtors were entitled to give fewer than sixty days' notice because of statutory exceptions under the WARN Act; (iv) whether the employees worked at sites covered by the WARN Act; (v) the computation of damages; (vi) whether damages are entitled to priority under 11 U.S.C. § 507(a)(4); (vii) whether the putative class may recover collectively from the Debtors' estate, and (viii) whether attorneys' fees are to be awarded to the Class Members if they prevail.

27. Continued litigation would be costly and time-consuming and expose the Parties to significant litigation risks. Class Counsel has asserted that the aggregated WARN Act liability of sixty (60) days' damages and benefits is approximately $6- 9 million. The settlement provides for an allowed priority claim of $300,000 and a further subordinated allowed claim of $600,000 and eliminates any further accrual of the substantial litigation expenses, which have been associated with the WARN Action. Accordingly, the Parties respectfully submit that approval of the Settlement Agreement is warranted. (In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights).

28. The Settlement Agreement is in the best interest of creditors and the estate. When determining whether a compromise is in the best interests of the estate, a bankruptcy court must

"'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *In re Key3Media Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))). *See also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the estate"). To properly balance these values, a bankruptcy court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc*., 390 U.S. at 424). *See also Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be 'apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.'") (quoting *In re Martin*, 91 F.3d at 393.

29. The paramount interest of creditors and reasonable deference to their views also favors approval of the Settlement Agreement. Moreover, as set forth above, the Settlement Agreement spares Debtors' estates the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

30. Accordingly, in light of each of the *Martin* factors, the Settlement Agreement should be approved.

**D. The Bankruptcy Court Should Certify the Class, Appoint Class Counsel, and Preliminarily Approve the Settlement Agreement Pursuant to Rule 23 of the Federal Rules of Civil Procedure.**[6]

31. Where, as in this case, the Bankruptcy Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Bankruptcy Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005).

32. "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618. *Accord Community Bank*, 418 F.3d at 299. "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299. See also, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

33. Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives." *Amchem*, 521 U.S. at 621.

**E. The Bankruptcy Court Should Certify the Settlement Class.**

34. To be certified, a class must satisfy the four requirements of Rule 23(a): (1)

---

[6] The positions taken in sections D and E of the Joint Motion are those of Class Counsel only. The Estate Representatives take no position on these matters other than to support approval of the Settlement Agreement and Class Certifications for purposes of settlement only. In the event the Settlement Agreement does not become effective, the Parties would be restored to the same position they were in prior to the filing of the Joint Motion and execution of the Settlement Agreement and all Parties could assert any claims or defenses that existed prior to the execution of the Settlement Agreement and the filing of the Joint Motion.

numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23; *Community Bank*, 418 F.3d at 302. In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* In order to certify a class under Rule 23(b)(3), the court must make two additional findings: predominance and superiority. That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation." *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa 2008).

35. The proposed settlement Class meets each of the foregoing elements.

**(i) The Rule 23(a) Criteria**

36. Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). "No single magic number exists satisfying the numerosity requirement." *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989). However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates*, 248 F.R.D. at 440 (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

37. The proposed class of over 1,000 Class Members meets the numerosity requirement and joinder of all Class Members is impractical. The class is sufficiently numerous to make joinder of all members impractical, and thus satisfies the numerosity requirement.

38. The commonality requirement requires existence of at least one question of law or fact common to the Class. FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low, (*Powers v. Lycoming*

*Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202. Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

39. Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.[7]

40. Typicality requires that the "named plaintiffs" claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55). "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

41. The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated. Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members–they were terminated on or about April 26, 2015 without receiving sixty (60) days' notice. Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

---

[7] Class Counsel recognizes that the amount of damages is particular to each Class Member. However, individualized damages calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

42. With respect to adequacy, class Representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

43. The Bankruptcy Court should find that the Class Representatives adequately represent the interests of the Class Members.

44. The Court should find that Class Counsel adequately represent the interests of the Class Members. Class Counsel are well qualified and experienced to represent the Class Members. (See Decl. of R. Roupinian, filed herewith). They have been appointed as class counsel in at least 75 WARN actions, and have been award attorneys' fees of one-third or 33⅓ % of the settlement fund in every WARN Act matter settled. Class Counsel have been class counsel in over 100 WARN active or settled certified or putative class actions, including the following in district and bankruptcy courts in the Third Circuit: *Primavera v. Crowne Architectural Systems, Inc.*, 17-1292-SLM (Bankr.N.J.) (settlement on behalf of 200-member WARN class ); *Miller v. Columbus Steel Castings Company, et al.*, Adv. Proc. No. 16-50997-CSS (Bankr.Del.)(settled on behalf of 667-member WARN class); *Rasheed v. American Home Mortgage Corp.*, Case No. 07-51688 (Bankr. D. Del.) (settled on behalf of a class of 2,300 employees); *Mekonnen, et al. v. HomeBanc Mortgage Corporation*, Case No. 07-51695 (Bankr. Del.) (settled on behalf of a class of 400 employees); *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del.) (settled on behalf of a class of 900 employees); *Jones v. Alliance Bancorp,* Case No. 07-51799

(Bankr. D. Del.) (settled on behalf of a class of about 200); *Bressmer v. Delta Financial Corporation,* Case No. 07-51808 (Bankr. D. Del.) (settled on behalf of a class of over 600); *Czyzewski, et al. v. Jevic Transportation, Inc.,* Case No. 08-50662 (Bankr. Del.) (appointed class counsel to a class of approximately 1,800 employees); *Austen. v. Archway Cookies,* Case No. 08-12323 (Bankr. D. Del.) (settled on behalf of a class of over 600 employees); *Jackson v. Qimonda* NA, Case No. 09-50192 (Bankr. D. Del.) (settled on behalf of a class of over 1,200 employees); *Willock v. Pemco World Air Services, Inc*., Case No. 12-50799 (Bankr. D. Del.) (settled on behalf of a class of approximately 500 employees); *Folk, et al. v. Monaco Coach Corporation,* Case No. 09-50402 (Bankr. D. Del.) (settled on behalf of a class of approximately 2,200 employees); *Decuir v. WL Homes LLC*, Case No. 09-52270 (Bankr. D. Del.) (settled on behalf of a class of approximately 85 employees); *Hampton v. Navigation Capital Partners, Inc*., Case No. 1:13-747 (D. Del.) (settled on behalf of a class of approximately 160 employees); *Kohlstadt* v. *Solyndra LLC,* Case No. 11-53155 (Bankr. D. Del.) (settled on behalf of a class of about 850 employees); *Bergeron v. DGI Services, LLC*, 11-2712 (Bank. D.N.J.) (WARN class certified); and *Karaniewsky v. Altegrity, Inc. et al*., Adv. Proc. No. 15-50204-LSS (Bankr. Del.) (same).

45. The Class Representatives should be awarded the Service Payments for the work they undertook on behalf of the Class. *Bradburn*, 513 F. Supp. 2d at 342 ("'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'") (citing *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000). The Class Representatives performed important services for the benefit of the Class in commencing the litigation and providing assistance and guidance to Counsel and Class Members during the course of this litigation.

46. The Class Representatives expended time and effort to assist with the preparation of the Complaint and the motion for class certification, and spent time speaking to Class Counsel regarding the matter and during the settlement negotiations. Accordingly, the Service Payments are appropriate and justified as part of the overall settlement in light of the value of their services to the Class and risks taken on behalf of the Class. *See, Bradburn*, 513 F. Supp. 2d at 344 ($75,000 incentive award to class representative approved). The Estate Representatives do not oppose the proposed award to the Class Representatives.

47. Finally, the proposed amount of the Service Payments ($2,000 each) are consistent and well within the range of service payments awarded in other WARN Act class actions. *Miller v. Columbus Steel Casting Co.*, Adv. Proc. No. 16-50997 (CSS) (Bankr.D.Del. Sept. 27, 2017)[ECF No. 69] ($10,000 service payment to class representative on behalf of a certified class of 666 for $2.1 million); *Zaikowski v. Dowling College*, Case No. 16-8187 (REG) (Bankr.E.D.N.Y.) [ECF No. 35] ($11,500 service award in $1.3 million settlement); *Aguiar v. Quaker Fabric Corp.*, Adv. Proc. No. 07-51716 (KG) (Bankr. D. Del. Aug. 27, 2008) [ECF No. 46] ($15,000 service payment to class representative on behalf of a certified class of 900 for $1 million); *Austen v. Archway Cookies*, Adv. Proc. No. 08-51530 (CSS) (Bankr. D. Del. Apr. 18, 2012) [ECF No. 73] ($10,000 service award to two class representatives in $4 million settlement); *Jones v. Alliance Bancorp.*, Adv. Proc. No. 07-51799 (CSS) (Bankr. D. Del. Mar. 1, 2011) [ECF No. 112] ($15,000 service award in $1 million settlement); *Kohlstadt v. Solyndra, LLC.*, Adv. Proc. No. 11-53155 (MFW) (Bankr. D. Del. Oct. 16, 2012) [ECF No. 51] ($20,000 combined service award to two class representatives in $3.5 million settlement); *Rasheed v. American Home Mortgage Corp.*, Adv. Proc. No. 07-51688 (CSS) (Bankr. D. Del. Dec. 14, 2009) [ECF No. 108] ($7,500 service award to six class representatives in $6.5 million

settlement); *Capizzi et al v. AWTR Liquidation, Inc.*, Adv. Proc. No. 2:13-ap-01209-NB (Bankr. C.D. Cal. Dec. 13, 2013) [ECF No. 89] ($10,000 service award to each of two class representatives in WARN Act settlement of $1 million); *Guippone v. BH S & B Holdings, LLC*, Case No. 09-cv-01029-CM (S.D.N.Y. Sept. 23, 2016) [ECF No. 122] ($10,000 service award to class representative in WARN Act settlement of $900,000 for a class of about 300 members); *Conn v. Dewey & Lebeouf LLP*, Adv. Proc. No. 12-01672 (MG) (Bankr. S.D.N.Y. Aug. 20, 2014) [ECF No. 57] ($15,000 service award to class representative in WARN settlement); *Binford v. First Magnus Capital, Inc.*, Case No. 08-01494 (GBN) (Bankr. D. Ariz. 2010) (awarding eight class representatives service payments of $7,500, totaling $60,000, from settlement fund of $2.6 million cash plus $2.9 million contingent proceeds); *Bridges v. Continental AFA Dispensing Co.*, Adv. Proc. No. 08-45921 (KSS) (Bankr. E.D. Mo. Aug. 14, 2009) [ECF No. 108] (awarding $10,000 service payment to class representative in a class settlement of $1.5 million for approximately 325 employees).

**(ii) The Rule 23(b)(3) Criteria**

48. Common questions of law and fact predominate over the individual issues (which appear to be limited to each Class Members' pay and benefits under the WARN Act). Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal or factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named Representatives must be typical of the claims or defenses of the classes." *Community Bank*, 418 F.3d at 309.

49. Just as typicality exists, predominance also exists. All of the claims arise from an alleged violation of the WARN Act resulting from the terminations that occurred on or about April 26, 2015. Accordingly, the Court should find that the predominance requirement is met.

50. Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

51. Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *Gates*, 248 F.R.D. at 443.

52. Here, a class action is superior to individual actions. First, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth

someone's (usually an attorney's) labor.") (quotation and citation omitted). It is appropriate that all the claims against the Debtors arising from the Class Representatives' allegations should be concentrated in this Court. In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members. Accordingly, the Bankruptcy Court should find that the superiority element is met.

53. Based on the foregoing, the Bankruptcy Court should certify the Class for settlement purposes only, appoint Plaintiffs as Class Representatives, and appoint Outten & Golden LLP as Class Counsel.

**F. The Bankruptcy Court Should Preliminarily Approve the Settlement.**

54. After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates*, 248 F.R.D. 434. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason."" *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995). When class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *Gates*, 248 F. R. D. at 444.

55. The Settlement Agreement has no obvious deficiencies and falls well within the

range of reason. Each of the above-cited factors favors preliminary approval of the Settlement Agreement.

56. First, the settlement is the result of good faith, arm's length negotiations between capable adversaries, both in mediation and thereafter.

57. Second, the Parties have informally exchanged information during the course of the litigation and settlement negotiations.

58. Third, counsel for all Parties, and Class Counsel in particular, has the experience and the skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. Class Counsel has litigated over 100 WARN cases in bankruptcy court, many of which have been in Delaware, and routinely has been appointed Class Counsel.

59. In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement Agreement.

**G. The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the WARN Settlement.**

60. Once a settlement is preliminarily approved, notice of the proposed settlement and of the Fairness Hearing is provided to class members. Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement. The Civil Rule 23(e) requirements is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

61. Because the Settlement Agreement in this case will be preliminarily approved pursuant to this Joint Motion, notice of the class certification and proposed settlement can be combined in one notice. *Gates*, 248 F.R.D. at 445; *Collier v. Montgomery County Housing*

*Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 30.212, at 226). At the subsequent fairness hearing, class members may formally object to the proposed settlement. *Gates*, 248 F.R.D. at 439.

62. Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude form the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and, (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

63. The proposed Class Notice and Opt-Out Notice Form (Exhibit B), will be served by Class Counsel upon each Class Member. Class Counsel proposes that within seven days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement, Class Counsel will serve the Notice and Opt-Out Notice Form substantially in the form attached hereto, upon each Class Member at the last known addresses of each Class Member according to the relevant books and records. Individual mailings to each class member's last known address is appropriate. *Varacallo*, 226 F.R.D. at 225; *Rosenau v. Unifund Corp*., 646 F.Supp.2d 743, 754-755 (E.D. Pa. 2009); *In re Brokerage Antitrust Litig.,* 282 at 110.

64. The Class Notice includes each of the facts required by Rule 23(c)(2)(B). The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy

of the pleadings in the WARN Action and a copy of the Settlement Agreement. The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs Class Members of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**H. The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.**

65. The Bankruptcy Court should set the Fairness Hearing for final approval of the Settlement. At the Fairness Hearing, the Bankruptcy Court should finally approve the Settlement Agreement.

66. Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." *Id.* Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General Motors*, 55 F.3d at 785.).

67. The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This list is not exhaustive. *Community Bank*, 2008 WL 3833272 at *6.

68. The following *Girsh* factors strongly support approval of the Settlement Agreement.

a. Litigation will be complicated, protracted and expensive.

b. The Class Representatives support the Settlement Agreement and Class Counsel believe that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will neither object to it nor opt out of it.

c. The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel and the parties had shared their respective views of the case during mediation and subsequent settlement negotiations.

d. The risk that the Class Representatives would be unable to establish liability was significant because of affirmative defenses asserted by Debtors if litigation had continued.

e. When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The settlement provides for a payment of $300,000 as soon as practicable, and a subordinated payment of $600,000. *See Community Bank*, 2008 WL 3833271 (finding that in light of the attendant risk a settlement representing 12.6% of the prayer was reasonable).

69. Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

## **CONCLUSION**

WHEREFORE, the Parties respectfully request that the Bankruptcy Court (A) enter an Order, substantially in the form attached hereto as Exhibit B, 1) certifying the WARN Class for settlement purposes only, including the appointment of Class Counsel and the Class Representatives; 2) preliminarily approving the Settlement Agreement; 3) approving the form

and manner of notice of the Settlement to the members of the Class; and 4) scheduling a fairness hearing to consider final approval of the Settlement Agreement; and (B) following the Fairness Hearing, enter a final order, substantially in the from attached hereto as Exhibit D, finally approving the Settlement Agreement and granting such other relief as the Bankruptcy Court deems necessary and appropriate.

Dated: August 1, 2019

*/s/ Jack A. Raisner*
Jack A. Raisner
René S. Roupinian
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

*Counsel for Plaintiffs and Putative Class Counsel*

*/s/ Robert C. Maddox*
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Robert C. Maddox (No. 5356)
**RICHARDS, LAYTON & FINGER, P.A.**
920 N. King Street
Wilmington, Delaware 19801
Telephone: 302-651-7700
Facsimile: 302-651-7701
Email: collins@rlf.com
stearn@rlf.com
merchant@rlf.com
steele@rlf.com
maddox@rlf.com

*Counsel for Distribution Trustee*